U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT FILED
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JUL 2 6 2004

C1, FR K. U. S. FDPS FRIC' T ( ~;'
I¹`

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO._____ |

HOLY LAND FOUNDATION FOR
RELIEF AND DEVELOPMENT (1)
    also known as the "HLF"
SHUKRI ABU BAKER (2)
MOHAMMAD EL-MEZAIN (3)
GHASSAN ELASHI (4)
HAITHAM MAGHAWRI (5)
AKRAM MISHAL (6)
MUFID ABDULQADER (7)
ABDULRAHAM ODEH (8)

3 0 4

## INDICTMENT

The Grand Jury Charges:

## INTRODUCTION

At all times material herein:

1. The Harakat al-Muqawamah al-Islamiyya is Arabic for "The Islamic Resistance
Movement" and is known by the acronym HAMAS. HAMAS, which is sometimes
referred to by its followers as "The Movement," is a terrorist organization based in the
West Bank and Gaza Strip (Gaza). HAMAS was founded in 1987 by Sheikh Ahmed
Yassin as an outgrowth of the Muslim Brotherhood. The Muslim Brotherhood is an
international Islamic fundamentalist organization founded in Egypt in 1928 and is

Indictment - Page 1

committed to the globalization of Islam through social engineering and violent *jihad* (holy war). HAMAS' charter states that the purpose of HAMAS is to create an Islamic Palestinian state throughout Israel by eliminating the State of Israel through violent *jihad*.

2. HAMAS achieves its goals through a military wing, known as the Izz el-Din al-Qassam Brigades, and a social wing, known as *Dawa* ("preaching" or "calling"). Although these two components have separate responsibilities, the organization operates seamlessly, with each component working to achieve the overall objectives of the terrorist group.

3. HAMAS' military wing is responsible for carrying out suicide bombings and other terrorist attacks within Israel, the West Bank and Gaza. These attacks have targeted civilians and have resulted in the death and injury of hundreds of individuals, including American citizens. HAMAS' social wing operates as a social welfare agency, providing food, medical care and education to Palestinians in order to generate loyalty and support for the organization and its overall goals. HAMAS supports religious and academic institutions that facilitate the teachings of HAMAS and introduce its fundamentalist ideology at the earliest stages of spiritual and educational development. This social engineering is critical to winning the hearts and minds of the Palestinian people and to creating a military and operational recruitment pool for HAMAS. Additionally, HAMAS rewards past terrorist acts, and provides incentive for future acts, by financially

subsidizing family members of HAMAS operatives who are killed, injured or imprisoned, and ensuring that the families are revered in the community.

4. HAMAS' social services are, in large part, administered by local zakat committees and other charitable organizations. "Zakat," which means "charity" or "alms giving," is one of the pillars of Islam and is an act incumbent on all practicing Muslims. These committees and organizations are controlled by HAMAS, in part, by their committee membership consisting of HAMAS members, operatives and activists. The source of money for HAMAS' social infrastructure comes from numerous sources, including individuals and entities in the United States. Additionally, due to the substantial expenditures of the HAMAS organization and the fungible nature of money, some of the money collected externally under humanitarian banners is routed to military and operational use, in addition to freeing up other funds for specific terrorist acts. Such uses include the provision of weapons, explosives, transportation services, safehouses, and salaries for operatives.

5. HAMAS' Political Bureau sits above the social and military wings and serves as the highest ranking leadership body in the HAMAS organization. The Political Bureau is responsible for setting policies and guidelines regarding HAMAS' activities, including directing and coordinating terrorist acts. By design, several high-ranking members of the political bureau, such as Khalid Mishal and Mousa Abu Marzook, have resided outside the West Bank and Gaza, and lived in such places as Jordan, Syria, and the United States.

6. The International Emergency Economic Powers Act (IEEPA) confers upon the President the authority to deal with threats to the national security or foreign policy of the United States. On January 23, 1995, pursuant to this authority, the President issued Executive Order 12947, which declared a national emergency resulting from the grave acts of violence committed by foreign terrorists designed to disrupt the Middle East Peace Process. The Executive Order prohibits transactions, including financial transactions, with organizations and individuals named in the Annex to the Order or organizations and individuals declared to be Specially Designated Terrorists by the United States Department of Treasury pursuant to the criteria articulated in the Order. The Executive Order authorizes the Depaitinent of Treasury to block all property subject to United States jurisdiction in which there is any interest held by any organization or individual declared to be a Specially Designated Terrorist. Any United States person or entity who possesses any funds in which any interest is held by a Specially Designated Terrorist, must report such interest to the proper United States authorities. Any dealings in those funds after the designation date, or any attempt to avoid acknowledgment of the funds, is unlawful.

7. To implement Executive Order 12947, the United States Department of Treasury, through the Office of Foreign Assets Control, promulgated the Terrorism Sanctions Regulations, which are detailed at Title 31, Code of Federal Regulations, Section 595. Executive Order 12947 and the Terrorism Sanctions Regulations prohibit, among other things: (a) transferring, paying, exporting, withdrawing or otherwise dealing

in property or interests in property of a Specially Designated Terrorist that are in the United States, come within the United States, or come within the possession of or control of United States persons; (b) providing funds, goods or services to a Specially Designated Terrorist; (c) any transaction for the purpose of, or which has the effect of, evading or avoiding, or which facilitates the evasion or avoidance of the Terrorism Sanctions Regulations; (d) any conspiracy formed for the purpose of engaging in a prohibited transaction.  A willful violation of any of these provisions is a criminal offense.

8.  On January 25, 1995, HAMAS was designated as a Specially Designated Terrorist by the President in the Annex to Executive Order 12947. On August 29, 1995, former HAMAS Political Bureau Chief and current Deputy Chief Mousa Abu Marzook was designated as a Specially Designated Terrorist. On August 22, 2003, current HAMAS Political Bureau Chief Khalid Mishal was designated as a Specially Designated Global Terrorist pursuant to Executive Order 13324. Executive Order 13324 was issued on September 23, 2001, pursuant to IEEPA, and prohibits transactions with organizations and individuals who, inter alia, commit, threaten to commit, or support certain acts of terrorism.

9.  On October 8, 1997, by publication in the Federal Register, the United States Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act (INA), as added by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Pursuant to the AEDPA, the

Indictment - Page 5

Secretary of State may designate a group as a Foreign Terrorist Organization if the group is (1) a foreign organization; (2) the organization engages in terrorist activity as defined by the INA; and, (3) the terrorist activity of the group threatens the national security of the United States. The AEDPA, and specifically 18 U.S.C. § 2339B, reflects Congress' recognition of the danger and design of terrorist movements such as HAMAS and, as a result, it is unlawful to provide material support and resources, to include currency or monetary instruments, financial services, personnel, transportation and other provisions, to any component of HAMAS.

10. In or around 1988, **The Holy Land Foundation For Relief and Development ("HLF")** was created by, among others, the defendants **Shukri Abu-Baker, Mohammad El-Mezain** and **Ghassan Elashi,** to provide financial and material support to HAMAS. From 1989 until 1992, the HLF was located in California and, until 1991, was known as the Occupied Land Fund (hereinafter all references to the Occupied Land Fund will be as the HLF). In 1992, the HLF relocated to Richardson, Texas and became incorporated in Texas. The HLF represented itself to be a non-profit, tax exempt, charitable organization designed primarily to assist needy individuals in the West Bank and Gaza. In addition to the main office in Richardson, Texas, the HLF maintained offices in New Jersey, California, Illinois, Jerusalem, the West Bank and Gaza.

11. The defendant **Shukri Abu Baker** was the President, Secretary and Chief Executive Officer of the HLF. The defendant **Shukri Abu Baker** was an organizer and

leader of the criminal activity involving his co-defendants' activities through the defendant HLF.

12.  The defendant **Mohammad El-Mezain** was the original Chairman of the Board until in or about 1999, when he became Director of Endowments for the HLF. The defendant **Mohammad El-Mezain** is a cousin of HAMAS Deputy Political Chief and Specially Designated Terrorist Mousa Abu Marzook. The defendant **Mohammad El-Mezain** was an organizer and leader of the criminal activity involving his co-defendants' activities through the defendant HLF.

13.  The defendant **Ghassan Elashi** was the original Treasurer and became the Chairman of the Board of the HLF in 1999. The defendant **Ghassan Elashi** is related by marriage to HAMAS Deputy Political Bureau Chief and Specially Designated Terrorist Mousa Abu Marzook. The defendant **Ghassan Elashi** was an organizer and leader of the criminal activity involving his co-defendants' activities through the defendant HLF.

14.  The defendant **Haitham Maghawri** was the Executive Director of the HLF.

15.  The defendant **Akram Mishal** was the Project and Grants Director for the HLF. The defendant **Akram Mishal** is a cousin of HAMAS Political Bureau Chief and Specially Designated Global Terrorist Khalid Mishal.

16.  The defendant **Mufid Abdulgader** was a top fundraiser for the HLF. The defendant **Mufid Abdulgader** is the half-brother of HAMAS Political Bureau Chief and Specially Designated Global Terrorist Khalid Mishal.

17.  The defendant **Abdulraham Odeh** was the New Jersey representative of the

**HLF.**

The HLF's Relationship with HAMAS

18.  During HAMAS' and the HLF's beginnings, and in furtherance of their

designed objective, the HLF provided significant financial resources to known HAMAS

leaders and key strategists. In April 1988, prior to its incorporation, the HLF sent

approximately $100,000 to HAMAS' future Political Bureau Chief Mousa Abu Marzook

and his associates. Additionally, between April 1989 and October 1989, the HLF wire

transferred approximately $725,000 to an account held by the Islamic Center of Gaza,

located in Gaza. The Islamic Center of Gaza was established by HAMAS spiritual leader

and founder Sheik Ahmed Yassin, and was used by him to coordinate and conduct

HAMAS activities. During the time that the funds were being transferred to the Islamic

Center of Gaza from the HLF, Sheik Yassin was arrested and convicted in Israeli court

for the kidnapping and murder of an Israeli soldier.

19.  The HLF was deeply involved with a network of Muslim Brotherhood

organizations dedicated to furthering the Islamic fundamentalist agenda espoused by

HAMAS. These organizations served in different capacities, such as propaganda

development and distribution, banking, and creating fundraising forums through which

the HLF and others raised money. Certain of these organizations, including the HLF,

have sponsored conventions, seminars and rallies in support of Palestinian and other

radical Islamic causes. At these conventions, seminars and rallies, radical Islamic sheiks and HAMAS officials were flown to the United States from overseas to energize the audience and enhance fundraising. The HLF paid for the travel of several of the sheiks and HAMAS officials, including current HAMAS leader Mahmoud Zahar and former HAMAS spokesperson Jamil Hammami. At these events, participants, including the defendant **Mufid Abdulgader,** praised HAMAS through speeches, songs and violent dramatic skits depicting the killing of Jewish people.

20.   In October 1993, in response to a United States sponsored Middle East peace initiative between the Israeli  Government and the Palestinian Liberation Organization, known as the Oslo Accords, and other significant events, the principals of the HLF met with other select United States based HAMAS activists in Philadelphia, Pennsylvania. The purpose of the meeting was to determine their course of action in support of HAMAS' opposition to the peace plan and to decide how to conceal their activities from the scrutiny of the United States government. As noted in prior paragraphs, HAMAS is opposed to any peaceful solution to the Palestinian territorial conflict, as such a proposition is at odds with HAMAS' goal of annihilating the State of Israel and establishing an Islamic state in all of historic Palestine. During the meeting, the defendants **Shukri Abu Baker, Ghassan Elashi** and **Haitham Maghawri,** and others known and unknown to the Grand Jury, expressed their support for "The Movement," (as previously stated, a term known to refer to HAMAS, whose full name is the Islamic

Resistance Movement) and affirmed that the United States should be used as a fundraising platform to further "The Movement's" goals. The attendees acknowledged the need to avoid scrutiny by law enforcement officials in the United States by masquerading their operations under the cloak of charitable exercise. To that end, the attendees discussed the need to conceal their true motives and objectives by giving nominal amounts to other non-Palestinian charities. The defendant **Shukri Abu Baker** reflected this understanding when he stated, "We can give S 100,000 to the Islamists and 55,000 to the others." The attendees noted the danger of attracting the terrorist perception, which would undoubtedly compromise their efforts in supporting the violent *jihad.*

21. One of the primary purposes of the HLF was to subsidize HAMAS' vital recruitment and reward efforts in the West Bank and Gaza. Although this financial initiative was spread broadly across the Palestinian population in order to promote HAMAS' appeal throughout the entire Palestinian community, those directly involved in furthering HAMAS' agenda were treated more favorably. In 1992, the Government of Israel deported over 400 members of HAMAS and other Islamic terrorist organizations to Southern Lebanon in response to a surge in violence by HAMAS militants against Israeli soldiers, police, and civilians. The HLF provided financial assistance to the deportees, and publically lauded itself for its response to the deportation. Deceased HAMAS leader

Sheik Abdel Rantisi was one of the deportees whose family received financial assistance from the HLF.

22. In furtherance of HAMAS' goal of garnering the support of the Palestinian people, the HLF sponsored orphans and needy families in the West Bank and Gaza. While the program was mantled with a benevolent appearance, the HLF specifically sought orphans and families whose relatives had died or were jailed as a result of furthering HAMAS' violent campaign, including suicide bombings. This      e of support was critical to HAMAS' efforts to win the hearts and minds of the Palestinian people and to create an infrastructure solidifying HAMAS' presence.

23. On December 4, 2001, the HLF was designated as a Specially Designated Global Terrorist pursuant to Executive Order 13224 and as a Specially Designated Terrorist under Executive Order 12947. The **HLF's** designation was accompanied by an order blocking all of the organization's assets.

<u>COUNT ONE</u>

Conspiracy to Provide Material Support to a Foreign Terrorist Organization -
(18 U.S.C. § 2339B(a)(1))

1.  Paragraphs one (1) through twenty-three (23) of the Introduction to this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.  Beginning from on or about October 8, 1997, and continuing until the date of this Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **Holy Land Foundation for Relief and Development (HLF), Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh,** and others known and unknown to the Grand Jury, knowingly conspired to provide material support and resources, as those terms are defined in Title 18, United States Code, Section 2339A(b), to wit, currency and monetary instruments, to HAMAS, a designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B(a)(1).

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

3.  The defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh** provided material support and resources to the designated Foreign Terrorist Organization HAMAS by raising funds in the United States and elsewhere, and sending those funds to HAMAS controlled organizations and programs in the West Bank and

**Indictment - Page 12**

Gaza, and elsewhere. The funds raised by the defendants were sent for the purpose of furthering the goals of the HAMAS terrorist network and were done so in a calculated manner designed to influence or affect the conduct of the Israeli and United States governments, by intimidation or coercion, and to retaliate against governmental conduct.

4. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader** and **Abdulrahman Odeh,** participated in fundraising events at various forums, including conventions, services at mosques, seminars, and other programs. The HLF sponsored speakers at these events whose mission was to raise funds for the HLF. Prior to the designation of HAMAS as a Foreign Terrorist Organization, the speakers sponsored by the HLF openly praised the efforts of HAMAS and its violent activities against Israel, and encouraged financial support for those efforts. After the designation, upon instruction by the HLF, the speakers changed tactics by using inflammatory language which was designed to support HAMAS and its violent activities without openly mentioning HAMAS. Some of the speakers sponsored by the HLF later became leaders and prominent spokesmen for HAMAS. Furthermore, at many of the fund-raising events, the speakers, including the defendant **Mufid Abdulgader,** performed skits and songs which advocated the destruction of the State of Israel and glorified the killing of Jewish people.

5. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh,** provided financial support to the families of HAMAS martyrs, detainees, and activists knowing and intending that such assistance would support HAMAS' terrorist infrastructure. In screening potential aid recipients and in providing funds, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh ,** distinguished between needy Palestinian families generally, and those Palestinian families who had a relative "martyred" or jailed as a result of terrorist activities. In some cases, the defendants specifically targeted families for financial aid who were related to known HAMAS terrorists who had been killed or jailed by the Israelis. In this manner, the defendants effectively rewarded past, and encouraged future, suicide bombings and terrorist activities on behalf of HAMAS.

6. In furtherance of the conspiracy, and in order to conceal the existence of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh,** took several steps which were inconsistent with the activities of a legitimate charity. The defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh,** in following counter-surveillance measures outlined in a manual

Indictment - Page 14

they possessed entitled "The Foundation's Policies and Procedures," did the following, among others: retained the services of a security company to search the premises of the HLF for listening devices; directed the defendant **Haitham Maghawri** to take training on advanced methods in the detection of wiretaps; shredded documents after board meetings; and maintained incriminating documents at off-site locations.

7. In order to provide the HLF with a cloak of legitimacy and conceal its relationship to HAMAS, the defendant **Shukri Abu Baker** discussed with the defendant **Ghassan Elashi** and others, the need to provide minimal support to legitimate charitable causes. In furtherance of the conspiracy, and in order to conceal the existence of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh,** carried out this plan, while providing a substantial amount of their financial assistance to HAMAS controlled organizations and programs, and to families of HAMAS martyrs, detainees and others.

8. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader** and **Abdulrahman Odeh,** maintained information on the arrest and prosecution of HAMAS activists in Israel, the West Bank and Gaza, including individuals who were members of the zakat committees to which the HLF sent money.

Indictment - Page 15

9. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad EI-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh,** wire transferred and caused to be wire transferred money from the HLF bank accounts in the Northern District of Texas, to HAMAS controlled zakat committees and other HAMAS controlled organizations in the West Bank and Gaza, and elsewhere.

10. In furtherance of the conspiracy, the defendants **HLF, Shukri Abu Baker, Mohammad EI-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** wire transferred money from the HLF bank accounts in the Northern District of Texas, to the HLF offices in the West Bank and Gaza, and elsewhere, for further distribution to HAMAS controlled zakat committees and other HAMAS controlled organizations in the West Bank and Gaza, as well as for direct payment to individuals whom the HLF supported on behalf of HAMAS, including the family members of martyrs and prisoners.

## OVERT ACTS (1) - (11)

11. In furtherance of the conspiracy and to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh** committed the following overt acts, among others, by issuing and causing to be issued wire transfers in the amounts indicated, among others, to be sent

from the HLF bank accounts in the Northern District of Texas to the following HAMAS

controlled organizations:

| Overt Act | Date | Amount | Organization |
|---|---|---|---|
| (1) | 11/7/97 | $9,691 | Qalgilia Zakat Committee |
| (2) | 1/6/98 | $50,000 | Dar El-Salam Hospital |
| (3) | 1/26/98 | $95,000 | Islamic Charity Society of Hebron |
| (4) | 3/27/98 | $7,218 | Tolkarem Zakat Committee |
| (5) | 3/27/98 | $11,773 | Nablus Zakat Committee |
| (6) | 1/12/99 | $50,000 | Islamic Charity Society of Hebron |
| (7) | 7/8/99 | $5,306 | Tolkarem Zakat Committee |
| (8) | 12/21/99 | $8,199 | Halhoul Zakat Committee |
| (9) | 4/11/00 | $12,604 | Ramallah Zakat Committee |
| (10) | 11/30/00 | $50,000 | Dar El-Salam Hospital |
| (11) | 6/14/01 | $40,586 | Jenin Zakat Committee |

### OVERT ACTS (12) - (171

12. In furtherance of the conspiracy and to accomplish its purposes, on or about

the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-**

**Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader**

and **Abdulrahman Odeh** committed the following overt acts, among others, by issuing

and causing to be issued wire transfers in the amounts indicated, among others, to be sent

from the HLF bank accounts in the Northern District of Texas to the HLF offices in the

West Bank and Gaza, which were then further distributed to, among others, zakat

committees and other organizations, and to family members of individuals who were

either "martyred" or jailed for terrorist related activities:

| Overt Act | Date | Amount |
|-----------|----------|-----------|
| (12) | 11/24/98 | $47,376 |
| (13) | 12/21/99 | $117,506 |
| (14) | 11/20/00 | $200,000 |
| (15) | 12/7/00 | $220,660 |
| (16) | 3/8/01 | $374,755 |
| (17) | 6/11/01 | $192,403 |

In violation of Title 18, United States Code, Section 2339B(a)(l).

## COUNTS TWO THROUGH TWELVE

Providing Material Support to a Foreign Terrorist Organization -
(18 U.S.C. § 2339B(a)(1))

1.  Paragraphs one (1) through twenty-three (23) of the Introduction to this Indictment and paragraphs three (3) through ten (10) of Count One are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.  On or about the dates set forth below, for each count below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulqader** and **Abdulrahman Odeh,** aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly provide and attempt to provide material support and resources, as those terms are defined in Title 18, United States Code, Section 2339A(b), to wit, currency and monetary instruments, to HAMAS, a designated Foreign Terrorist Organization, by issuing and causing to be issued wire transfers in the amounts indicated, from the defendant HLF bank accounts in the Northern District of Texas, to the following HAMAS controlled organizations:

| Count | Date | Amount | Organization |
|---|---|---|---|
| 2 | 8/18/98 | $11,962 | Ramallah Zakat Committee |
| 3 | 8/21/98 | $24,211 | Islamic Charity Society of Hebron |
| 4 | 12/31/98 | $8,389 | Jenin Zakat Committee |
| 5 | 5/21/99 | $12,115 | Ramallah Zakat Committee |

| 6  | 10/13/99 | $25,000 | Islamic Charity Society of Hebron |
| 7  | 12/10/99 | $10,152 | Jenin Zakat Committee |
| 8  | 12/30/99 | $50,000 | Dar El-Salam Hospital |
| 9  | 4/11/00  | $10,711 | Nablus Zakat Committee |
| 10 | 4/11/00  | $7,417  | Qalgilia Zakat Committee |
| 11 | 11/30/00 | $50,000 | Dar El-Salam Hospital |
| 12 | 6/14/01  | $7,022  | Tolkarem Zakat Committee |

In violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

## COUNT THIRTEEN

Conspiracy to Deal in the Property of a Specially Designated Terrorist -
(50 U.S.C. §§ 1701-1706)

1.  Paragraphs one (1) through twenty-three (23) of the Introduction to this
Indictment and three (3) through ten (10) of Count One are hereby re-alleged and
incorporated by reference as though fully set forth herein.

2.  Beginning from on or about January 25, 1995, and continuing until the date of
this Indictment, in the Dallas Division of the Northern District of Texas and elsewhere,
the defendants **HLF, Shukri Abu Baker, Mohammad EI-Mezain, Ghassan Elashi,
Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh,**
and others known and unknown to the Grand Jury, knowingly and willfully conspired,
confederated and agreed to violate Executive Order 12947, by contributing funds, goods
and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS,
in violation of Title 50, United States Code, Sections 1701 through 1706, and Title 31,
Code of Federal Regulations, Section 595.201 *et. seq.*

### MANNER AND MEANS OF THE CONSPIRACY

3. In furtherance of the conspiracy, on or about January 25, 1995, and continuing
until the date of this Indictment, the defendants **HLF, Shukri Abu Baker, Mohammad
El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader**
and **Abdulrahman Odeh** made regular monetary payments to zakat committees and
individuals located in the West Bank and Gaza, and elsewhere, who were acting on behalf

Indictment - Page 21

of, and under the control of a Specially Designated Terrorist, namely HAMAS.

### OVERT ACTS (1)-(18)

4. In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader** and **Abdulrahman Odeh** committed the following overt acts, among others, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, to wit, by issuing and causing to be issued wire transfers in the amounts indicated, among others, from the HLF bank accounts in the Northern District of Texas, to the following organizations:

| Overt Act | Date | Amount | Organization |
|-----------|------|--------|--------------|
| (1) | 4/3/95 | $30,000 | Islamic Charity Society of Hebron |
| (2) | 4/17/95 | $50,000 | Dar El-Salam Hospital |
| (3) | 5/3/95 | $100,000 | Dar El-Salam Hospital |
| (4) | 2/15/96 | $40,000 | Islamic Relief Committee |
| (5) | 4/22/96 | $9,758 | Islamic Science & Culture Com. |
| (6) | 11/20/96 | $8,434 | Islamic Charity Society of Hebron |
| (7) | 8/5/97 | $34,563 | Ramallah Zakat Committee |
| (8) | 11/7/97 | $10,690 | Nablus Zakat Committee |
| (9) | 3/27/98 | $4,896 | Halhul Zakat Committee |

| (10) | 3/27/98  | $12,179  | Qalgilia Zakat Committee          |
| (11) | 4/3/98   | $24,173  | Jenin Zakat Committee             |
| (12) | 6/26/98  | $75,000  | Islamic Charity Society of Hebron |
| (13) | 1/20/99  | $10,100  | Ramallah Zakat Committee          |
| (14) | 3/3/99   | $38,385  | Islamic Charity Society of Hebron |
| (15) | 12/14/99 | $17,996  | Ramallah Zakat Committee          |
| (16) | 4/11/00  | $8,409   | Jenin Zakat Committee             |
| (17) | 6/11/01  | $8,185   | Nablus Zakat Committee            |
| (18) | 6/14/01  | $7,022   | Tolkarem Zakat Committee          |

In violation of Title 50, United States Code, Sections 1701 through 1706 and Title 31, Code of Federal Regulations, Section 595.201 *et. seq.*

<u>COUNTS FOURTEEN THROUGH TWENTY-FIVE</u>

Dealing in the Property of a Specially Designated Terrorist -
(50 U.S.C. §§ 1701-1706)

1.  Paragraphs one (1) through twenty-three (23) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and paragraph three (3) of Count Thirteen are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.  On or about the dates listed below, for each count below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader** and **Abdulrahman Odeh,** aided and abetted by each other and others known and unknown to the Grand Jury, willfully contributed funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, by issuing and causing to be issued wire transfers in the amounts indicated, from the HLF bank accounts in the Northern District of Texas, to the following HAMAS controlled organizations:

| Count | Date | Amount | Organization |
|-------|------|--------|--------------|
| 14 | 10/20/98 | $12,342 | Ramallah Zakat Committee |
| 15 | 12/31/98 | $50,000 | Islamic Charity Society of Hebron |
| 16 | 12/31/98 | $11,138 | Nablus Zakat Committee |
| 17 | 5/21/99 | $4,230 | Halhul Zakat Committee |

| 18 | 6/3/99 | $8,408 | Jenin Zakat Committee |
| 19 | 9/23/99 | $12,308 | Ramallah Zakat Committee |
| 20 | 9/23/99 | $36,066 | Islamic Charity Society of Hebron |
| 21 | 12/13/99 | $8,049 | Tolkarem Zakat Committee |
| 22 | 12/14/99 | $12,570 | Nablus Zakat Committee |
| 23 | 4/27/00 | $20,500 | Dar El Salam Hospital |
| 24 | 3/8/01 | $26,650 | Dar El Salam Hospital |
| 25 | 6/11/01 | $6,225 | Qalgilia Zakat Committee |

        In violation of Title 50, United States Code, Sections 1701 through 1706;
Title 31, Code of Federal Regulations, Section 595.201 et. seq.; and Title 18, United
States Code, Section 2.

## COUNT TWENTY-SIX

Conspiracy to Commit Money Laundering -
(18 U.S.C. § 1956(h))

1. The allegations of paragraphs one (1) through twenty-three (23) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and paragraph three (3) of Count Thirteen are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning from on or about January 25, 1995, and continuing until the date of this Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh,** and others known and unknown to the Grand Jury, in offenses involving interstate and foreign commerce, transmitted and transferred, and attempted to transmit and transfer, funds from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza, and elsewhere, with the intent to promote the carrying on of a specified unlawful activity, to wit, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b)), as set forth in Counts Thirteen through Twenty-Five of this Indictment.

Indictment - Page 26

3. In furtherance of the conspiracy, between January 25, 1995, through December 4, 2001, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abduigader and Abdulrahman Odeh,** transmitted and caused to be transmitted and transferred approximately $12,400,000 to various HAMAS controlled zakat committees and organizations.

OVERT ACTS

4. In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader** and **Abdulrahman Odeh,** committed the following overt acts, among others, by contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, by issuing and causing to be issued wire transfers in the amounts indicated, among others, from the HLF bank accounts in the Northern District of Texas, to the following HAMAS controlled organizations in the West Bank and Gaza:

| Overt Act | Date | Amount | Organization |
|-----------|------|--------|--------------|
| (1) | 4/3/95 | $30,000 | Islamic Charity Society of Hebron |
| (2) | 4/17/95 | $50,000 | Dar El-Salam Hospital |
| (3) | 5/3/95 | $100,000 | Dar El-Salam Hospital |
| (4) | 4/22/96 | $9,758 | Islamic Science & Culture Com. |
| (5) | 11/20/96 | $8,434 | Islamic Charity Society of Hebron |

| (6)  | 8/5/97   | $34,563  | Ramallah Zakat Committee          |
| (7)  | 11/7/97  | $10,690  | Nablus Zakat Committee            |
| (8)  | 3/24/98  | $4,896   | Halhul Zakat Committee            |
| (9)  | 3/27/98  | $12,179  | Qalgilia Zakat Committee          |
| (10) | 4/3/98   | $24,173  | Jenin Zakat Committee             |
| (11) | 6/26/98  | $75,000  | Islamic Charity Society of Hebron |
| (12) | 1/20/99  | $10,100  | Ramallah Zakat Committee          |
| (13) | 3/3/99   | $38,385  | Islamic Charity Society of Hebron |
| (14) | 12/14/99 | $17,996  | Ramallah Zakat Committee          |
| (15) | 4/11/00  | $8,409   | Jenin Zakat Committee             |
| (16) | 6/11/01  | $8,185   | Nablus Zakat Committee            |
| (17) | 6/14/01  | $7,022   | Tolkarem Zakat Committee          |

In violation of Title 18, United States Code, Section I 956(h).

## COUNTS TWENTY-SEVEN THROUGH THIRTY-EIGHT

Money Laundering -
(18 U.S.C. § 1956(a)(2)(A))

1.  The allegations of paragraphs one (1) through twenty-three (23) of the

Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; and

paragraph three (3) of Count Thirteen are hereby re-alleged and incorporated by reference

as though fully set forth herein.

2.  On or about each of the dates set forth below, for each count below, in the

Dallas Division of the Northern District of Texas and elsewhere, the defendants HLF,

**Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri,**

**Akram Mishal, Mufid Abdulgader** and **Abdulrahman Odeh,** aided and abetted by

each other and others known and unknown to the Grand Jury, in offenses involving

interstate and foreign commerce, transmitted and transferred, and attempted to transmit

and transfer, funds in the amounts indicated, from a place within the United States,

namely the Northern District of Texas, to places outside the United States, including the

West Bank and Gaza, and elsewhere, with the intent to promote the carrying on of a

specified unlawful activity, to wit, by willfully contributing funds, goods and services to,

or for the benefit of, a Specially Designated Terrorist, namely HAMAS, in violation of

Title 50, United States Code, Sections 1701 through 1706 (IEEPA), and punishable under

Section 206 of IEEPA (also known as Title 50, United States Code, Section 1705(b)), as

set forth in Counts Thirteen through Twenty-Five of this Indictment:

| Count | Date | Amount | Organization |
|-------|------|--------|--------------|
| 27 | 10/20/98 | $12,342 | Ramallah Zakat Committee |
| 28 | 12/31/98 | $50,000 | Islamic Charity Society of Hebron |
| 29 | 12/31/98 | $11,138 | Nablus Zakat Committee |
| 30 | 5/21/99 | $4,230 | Halhul Zakat Committee |
| 31 | 6/3/99 | $8,408 | Jenin Zakat Committee |
| 32 | 9/23/99 | $12,308 | Ramallah Zakat Committee |
| 33 | 9/23/99 | $36,066 | Islamic Charity Society of Hebron |
| 34 | 12/13/99 | $8,049 | Tolkarem Zakat Committee |
| 35 | 12/14/99 | $12,570 | Nablus Zakat Committee |
| 36 | 4/27/00 | $20,500 | Dar El Salam Hospital |
| 37 | 3/8/01 | $26,650 | Dar El Salam Hospital |
| 38 | 6/11/01 | $6,225 | Qalgilia Zakat Committee |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## INTRODUCTION TO COUNT THIRTY-NINE

1.  Section 501(c)(3) of the Internal Revenue Code grants authorized charitable organizations tax exempt status, which exempts them from having to pay any income tax on the donations they receive. The organizations are required to file an annual informational return, Form 990, entitled "Return of Organization Exempt from Income Tax," with the Internal Revenue Service. In that form, the organization must report the amount of their donations and how those donations are distributed. The return is signed under the penalty of perjury.

2. In September 1989, the defendant **Ghassan Elashi** filed an application with the Internal Revenue Service to obtain tax exempt status for the HLF pursuant to Section 501(c)(3) of the Internal Revenue Code. Tax exempt status was conferred on the HLF in January 1990.

## COUNT THIRTY-NINE

Conspiracy to Impede and Impair the Internal Revenue Service and
to File False Return of Organization Exempt from Income Tax -

(18 U.S.C. § 371)

3.  The allegations of paragraphs one (1) through twenty-three (23) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; paragraph three (3) of Count Thirteen; and paragraphs one (1) and two (2) of the Introduction to this Count are hereby re-alleged and incorporated by reference as though fully set forth herein.

**Indictment - Page 31**

4. In or around and between January 1990 and continuing until the date of this Indictment, in the Dallas Division of the Northern District of Texas and elsewhere, the defendants **Shukri Abu Baker** and **Ghassan Elashi,** and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree together with themselves and others

a. to defraud the United States of America and the Internal Revenue Service ("IRS"), an agency thereof, by impeding, impairing, defeating and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment and collection of corporate income taxes, in violation of Title 18, United States Code, Section 371; and

b. to willfully make and subscribe, and aid and assist in the preparation and presentation of, United States Returns of Organization Exempt from Income Tax, Form 990, which were verified by written declarations that they were made under the penalties of perjury and were filed with the IRS, which returns they did not believe to be true and correct as to every material matter in that the returns reported payments to Program Services when in fact the payments were going to HAMAS, in violation of Title 26, United States Code, Section 7206(1).

## MANNERS AND MEANS OF THE CONSPIRACY

5. In furtherance of the conspiracy, between 1992 and 2001, the HLF received over $57,000,000 in contributions, gifts and grants.

6. In furtherance of the conspiracy, between 1992 and 2001, the defendants **Shukri Abu Baker** and **Ghassan Elashi** reported approximately $36,230,891 on Line 13 of the HLF's "Returns of Organization Exempt from Income Tax"(Form 990), as payments to Program Services, which the HLF ostensibly distributed as grants to various legitimate projects, including assistance to non-profit medical/dental clinics, orphanages, schools, refugee camps and community centers overseas, when in fact the donations were distributed to individuals associated with, and organizations controlled by, HAMAS, a terrorist organization.

## OVERT ACTS

7. In furtherance of the conspiracy, and in order to accomplish its purposes, on or about the dates listed below, the defendants  **Shukri Abu Baker** and **Ghassan Elashi** committed the following overt acts, among others, by signing and filing the following false Returns of Organization Exempt from Income Tax, Form 990, with the Internal Revenue Service:

| Overt Act | Year | Date Filed |
|-----------|------|------------|
| (1) | 1995 | 8/19/96 |
| (2) | 1996 | 8/18/97 |
| (3) | 1997 | 4/13/98 |
| (4) | 1998 | 3/11/99 |

(5)          1999          5/8/00

(6)          2000          8/7/01

In violation of Title 18, United States Code, Section 371.

<u>COUNTS FORTY THROUGH FORTY-TWO</u>

Filing False Returns of Organization Exempt from Income Tax -
(26 U.S.C. § 7206(1))

1. The allegations of paragraphs one (1) through twenty-three (23) of the Introduction to this Indictment; paragraphs three (3) through ten (10) of Count One; paragraph three (3) of Count Thirteen; paragraphs one (1) and two (2) of the Introduction to Count Thirty-Nine; and paragraphs five (5) and six (6) of Count Thirty-Nine are hereby re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates specified below, within the Northern District of Texas and elsewhere, the defendants as listed below, did knowingly and willfully make and subscribe United States Returns of Organizations Exempt from Income Tax, Form 990, for the HLF, for the years listed below, which were verified by written declarations that they were made under the penalties of perjury and were filed with the Internal Revenue Service, which informational tax returns each defendant did not believe to be true and correct as to every material matter in that the returns reported payments to Program Services on Line 13 of said returns, whereas each defendant then and there well knew and believed the payments were not used for program services as reported on Line 13 and as required by their 501(c)(3) license:

| Count | Year | Date filed | Defendant |
|-------|------|-----------|-----------|
| 40 | 1998 | 3/11/99 | **Shukri Abu Baker** |
| 41 | 1999 | 5/8/00 | **Ghassan Elashi** |

| 42 | 2000 | 8/7/01 | **Ghassan Elashi** |

In violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE

As a- result of committing one or more of the money laundering or monetary transaction offenses in violation of Title 18, United States Code, Section 1956, alleged in Counts Twenty-Six through Thirty-Eight of this Indictment, the defendants, as listed below, shall forfeit to the United States of America, all property, real and personal, involved in the money laundering or monetary transaction offenses, and all property traceable to such property, including but not limited to the following:

Defendants **HLF, Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri, Akram Mishal, Mufid Abdulgader and Abdulrahman Odeh** shall forfeit approximately 512,400,000 in United States currency. That sum represents the sum of monies sent from a place within the United States, namely the Northern District of Texas, to places outside the United States, including the West Bank and Gaza and other places, as well as monies that were destined for places outside the United States, with the intent to promote the carrying on of a specified unlawful activity, to wit, willfully contributing funds, goods and services to, or for the benefit of, a Specially Designated Terrorist, namely HAMAS, as set forth in Counts Thirteen through Thirty-Eight, for which the defendants are jointly and severally liable.

By virtue of the commission of one or more of the felony offenses charged in Counts Twenty-Six through Thirty-Eight of this Indictment by the defendants HLF, **Shukri Abu Baker, Mohammad El-Mezain, Ghassan Elashi, Haitham Maghawri,**

Indictment - Page 37

**Akram Mishal, Mufid Abdulgader** and **Abdulrahman Odeh,** any and all interests which the defendants have in the above described sums are vested in the United States and are hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

In the event that any property, real or personal, involved in the offenses and described in Counts Twenty-Six through Thirty-Eight of this Indictment, or any property traceable to such property, as a result of any act or omission of the defendants:

     (1)     cannot be located upon exercise of due diligence;

     (2)     has been transferred or sold to, or deposited with a third party;

     (3)     has been placed beyond the jurisdiction of the court;

     (4)     has been substantially diminished in value; or

     (5)     has been co-mingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section

982(b)(1) to seek forfeiture of any other property of said defendants up to the value of the

above property.

FOREPERSON

RICHARD B. ROPER
United States Attorney

JAMES T. JACKS
First Assistant United States Attorney
1100 Commerce St., Third Floor
Dallas, Texas 75242
214.659.8600
214.767.2846 (Facsimile)
Texas State Bar No. 10449500

NATHAN F. GARETT
Assistant United States Attorney
1100 Commerce St., Third Floor
Dallas, Texas 75242
214.659.8600
214.767.2846 (Facsimile)
Missouri State Bar No. 46500

BARRY JONAS
Trial Attorney
Department of Justice, Counterterrorism
Section
601 D. Street N.W., Suite 6500
Washington, D.C. 20530
214.659.8600
214.767.2846 (Facsimile)
New York State Bar No. 2307734

MARTHA RUBIO
Trial Attorney
Department of Justice, Counterterrorism
Section
601 D. Street N.W., Suite 6500
Washington, D.C. 20530
214.659.8600
214.767.2846 (Facsimile)
California State Bar. No. 172492

**Indictment - Page 39**