## THE CHARITY COMMISSION 24 SEPTEMBER 2003

### Palestinians Relief and Development Fund

Registered Charity No. 1040094 (INTERPAL)

### Introduction

1. This report is the statement of the results of the Charity Commission's Inquiry under Section 8 of the Charities Act 1993 ("1993 Act") into the affairs of the Palestinians Relief and Development Fund, known as INTERPAL.

2. INTERPAL was registered as a charity in August 1994. INTERPAL provides aid to, assists, guides and comforts poor and needy Palestinians in the West Bank and Gaza strip, Jordan and Lebanon. It aims to relieve the hardship and suffering of these distressed persons by co-operating or working with other charitable organisations in the region. INTERPAL is based in London. Its income for the year ended 31 December 2001 was in excess of £4 million.

### Background and issues

3. INTERPAL had been subject to a Charity Commission inquiry in 1996 into allegations that some of its funds had been misappropriated for the political or violent militant activities of Hamas in Palestine. This inquiry found no evidence of inappropriate activity, and the information available indicated that INTERPAL was a well-run organisation. A small number of suggestions were made on how the charity could further improve its procedures.

4. In April 2003 the Commission contacted INTERPAL's trustees because similar allegations had been made. The Commission's aim was to determine how INTERPAL's working practises had changed, if at all, since 1996, especially in light of the increased tensions during recent years in the region. Detailed examination of INTERPAL's practises and record keeping found that it had improved its procedures and record keeping since the Commission's previous Inquiry, although these procedures could be further enhanced by introducing a greater degree of independent verification of the work done by INTERPAL's partners in the region on its behalf.

4. During the course of this correspondence the Commission learned that INTERPAL had received funds from The Al-Aqsa Foundation in the Netherlands. The Al-Aqsa Foundations in the Netherlands and various other countries had their assets frozen

under United Nations sanctions in May 2003 for allegedly supporting terrorist activities. Closer inspection of the records relating to INTERPAL's relationship with The Al-Aqsa Foundation in the Netherlands revealed that the funds received were in respect of humanitarian work already carried out by INTERPAL and then invoiced to The Al-Aqsa Foundation.

5. On 21 August 2003, in a Presidential decree, the Government of the United States of America (US Authorities) designated INTERPAL as a "Specially Designated Global Terrorist" organisation for allegedly supporting Hamas' political or violent militant activities. The Commission concluded that these were serious allegations and in line with its well-publicised policy opened an Inquiry into INTERPAL under section 8 of the Charities Act 1993 on 26 August. The principal aim of the Inquiry was to investigate these allegations with a view to determining what, if any, remedial action was necessary to address the issues.

## Actions taken

6. The Commission used its powers to act in the interests of charities and their beneficiaries under Section 18 of the 1993 Act by freezing INTERPAL's bank accounts as a temporary and protective measure on 26 August whilst it investigated the allegations. This 'freezing' order allowed INTERPAL to apply to the Commission for release of funds to fulfil its charitable purposes. In the course of the inquiry, INTERPAL applied for release of small amounts of funds. The Commission agreed to these releases.

7. Also, as part of its investigation, the Commission formally requested the US Authorities to provide evidence to support the allegations made against INTERPAL. The Commission is mindful of the possible consequences for INTERPAL's beneficiaries of the Commission's actions, and therefore requested the US Authorities to provide evidence to support their allegations within a reasonably short period of time.

## Findings and outcomes

8. The US Authorities were unable to provide evidence to support allegations made against INTERPAL within the agreed timescale

9. The Commission concluded that in the absence of any clear evidence showing INTERPAL had links to Hamas' political or violent militant activities, INTERPAL's bank accounts should be unfrozen

and the Inquiry closed. The bank accounts were 'unfrozen' and the Inquiry was closed on 24 September 2003.

## Wider issues

10. The Charity Commission is alert to the possibilities of charities being used to further or support terrorist activities. It will deal with any allegation of potential links between a charity and terrorist activity as an immediate priority. Where such allegations are made we will liaise closely with relevant intelligence, security and law enforcement agencies to facilitate a thorough investigation. As an independent statutory regulator, the Commission will make its own decisions on the law and facts of the case.

11. The Commission's own work reveals that connections or links between registered charities in England and Wales and terrorist organisations are very rare. However, any links between charities and terrorist activity are totally unacceptable and corrosive of public confidence in charities. 'Links' in this case might include fundraising or provision of facilities, but also include formal or informal links to organisations 'proscribed' under the Terrorism Act 2000, and any subsequent secondary legislation.

12. Active collaboration between charities and terrorist organisations is a police matter that may lead to serious criminal charges. Where allegations are made to the Commission or suspicions arise as a result of the Commission's work, the Commission will inform the relevant law enforcement agencies immediately and co-operate fully with the criminal investigation.

13. Where a charity's activities may give, or appear to give, support or succour to any terrorist activity, the Commission expects the charity's trustees to take immediate steps to disassociate the charity from the activity. We expect trustees to be vigilant to ensure that a charity's premises, assets, volunteers or other goods cannot be used for activities that may, or appear to, support or condone terrorist activities. Examples include the use of a charity's premises for fundraising or meetings.

14. Charities should take all necessary steps to ensure their activities could not be misinterpreted. The Commission expects trustees and charities to ensure their activities are open and transparent, for example, when transferring assets abroad. We hold trustees accountable for ensuring that procedures are put in place to ensure that terrorist organisations cannot take advantage of a charity's status, reputation, facilities or assets.