Not Reported in F.Supp.2d                                                                                                                           Page 1
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

▷

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
Klaus RENNER, Plaintiff
v.
CHASE MANHATTAN BANK, Michelino Morelli,
Townsend Financial Services Corp.,
Townsend Investment Fund, LLC, Gerald Townsend, and
Rabon Wolford, Defendants.
**No. 98 Civ. 926(CSH).**

Feb. 3, 1999.

*MEMORANDUM OPINION AND ORDER*
HAIGHT, Senior J.

***1** Plaintiff Klaus Renner, according to the allegations of his complaint, is a citizen and resident of Switzerland, an engineer, and the inventor of a snow-removing device. Renner alleges that during the course of his efforts to fund the manufacture and sale of that device, the defendants defrauded him out of $3 million. As against all or certain defendants, his complaint alleges claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.;* claims under Section 17(a) of the Securities Exchange Act of 1933, 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder; and common law claims for fraud, negligence, breach of contract, breach of fiduciary duty, and breach of the covenant of good faith. Subject matter jurisdiction in this Court does not depend upon the viability of plaintiff's federal claims, since it appears that complete diversity of citizenship exists between the parties.

The first two named defendants are the Chase Manhattan Bank ("Chase") and Michelino Morelli, identified in the complaint at ¶ 8 as at the relevant times "a senior vice-president of Chase and the manager of its Mount Vernon, New York office." [FN1] Chase now moves for an order dismissing the complaint as to it [FN2] pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted; and to dismiss the fraud-based claims pursuant to Rule 9(b) for failure to plead fraud with the requisite particularity.

> FN1. ¶ 16 of the complaint refers to "Chase's Mount Vernon *branch,"* a word that appears to be the more accurate term in banking parlance.

> FN2. The Chase Legal Department, counsel of record in the case, does not represent Morelli.

I. *Background*

Plaintiff alleges the following facts. [FN3] In or about December 1994, an international confidence man named Dr. Gustav Susse, not a party to this action, opened an account at Chase through Morelli on behalf of Hampstead Trust Ltd., an entity he controlled with defendant Rabon Wolford. Wolford, Morelli, and Susse all were members of a sham New York "Order" of a group called the "Knights of Malta," which purported to enjoy close connections with the Vatican and to perform "good deeds" around the world, but which actually served as a front for complicated fraudulent transactions. As a result of its concern with certain questionable practices, Chase closed Hampstead's account within months after it was opened. Through the assistance of Morelli, Susse then arranged to transact business at Chase through an entity called PTI and through defendant Townsend Financial, which also had set up its accounts at Chase's Mount Vernon branch. [FN4] This arrangement permitted Susse and Hampstead to continue their schemes. In or around November 1995, Hampstead swindled a "Belgian group" out of $5 million, promising to fund a purported $25 million documentary letter of credit through Chase, but instead diverting the funds to Wolford, the Knights of Malta, Susse's brother, and Townsend.

> FN3. For the purposes of Chase's Rule 12(b)(6) motion, I must take "the well-pleaded factual allegations in the complaint as true." *Papasan v. Allain,* 478 U.S. 265, 283 (1986). The requirement does not apply to allegations that are incomprehensibly vague or entirely conclusory. See additional cases cited *infra.*

> FN4. The complaint at times refers to this account

Not Reported in F.Supp.2d       Page 2
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

as the "Townsend Financial" account (referring to defendant Townsend Financial Services Corp.) and at other times as the "Townsend Fund" account (referring to defendant Townsend Investment Fund, LLC). Similarly, the complaint also refers at times just to "Townsend," leaving it unclear whether plaintiff means to refer to Townsend Financial, the Townsend Fund, or individual defendant Gerald Townsend. Accordingly, for the purpose of clarity, I will simply use "Townsend" to refer to any and all of the Townsend defendants.

In early February 1996, Renner was introduced to Hampstead as a result of his efforts to raise the necessary funds to manufacture and sell his snow-removing invention. Specifically, Hampstead, through Susse and another non-party director, Alexander Penly, represented to Renner that Hampstead engaged in transactions in "medium term bank debentures" with leading banks. Susse and Penly assured him that Hampstead would invest the money Renner needed to manufacture his invention by using its connections with these major banks to engage in trades of these debentures, guaranteeing an annual return rate of 120%. They advised Renner that Hampstead had purchased Townsend, which they said was its own securities house in the United States. They did not inform him that Townsend only had been established on January 22, 1996, presumably to facilitate the diversion of customer funds.

**\*2** Penly and Susse stressed to Renner that the funds which he invested would be kept in a sub-account at Chase, and that Hampstead had worked with Morelli for several years on transactions with other investors. He was advised that his funds were secure because no money would leave the Chase account unless a bank note or treasury bill of higher value was substituted as collateral. They further emphasized Hampstead's and Morelli's connections with the Knights of Malta and their investment of millions of dollars of Vatican money in humanitarian projects.

On February 8, 1996, Renner signed a contract with Hampstead in which he agreed to invest $3 million with it, which funds were then transferred to Morelli's attention at Chase and specifically designated for the promised Renner sub-account to Townsend's account.

On or about February 12 and 13, 1996, before the Renner money even had arrived at Chase, Morelli and Townsend specifically discussed that Renner was a client of Hampstead; that Hampstead intended to use Renner's money for a purpose not permitted under Renner's agreement with Hampstead; that Renner believed that his money was to be held in a sub-account and that he expected a custody receipt confirmation from Chase; that the defendants wished to deal only with Morelli; that Morelli's personal involvement was important to defendants; and that Chase, Morelli, and Townsend "could be held accountable" in the event of a problem.

On or about February 13, 1996, Chase received Renner's money and issued two Wire Transfer Advances to Townsend, confirming receipt. Morelli confirmed on Chase letterhead that Renner's money had been credited to the Townsend account and that the funds "were received from Swiss Bank Corp., New York via Fed by Order of Klaus Renner." Plaintiff does not state how, where, or to whom Morelli sent this confirmation. On or about February 20, 1996, with Morelli silently on the line, two Chase officers told Townsend by telephone that they were concerned about Townsend's proposed transaction with investor money and asked to see authorization for its use of investor funds. Three days later, Townsend wrote directly to Morelli instructing him to wire almost all of Renner's money to Susse's common-law wife in Monaco, which instruction Chase duly followed. Shortly thereafter, upon Townsend's request, Chase wired the balance of the money to Penly's Geneva bank account. Thus, although questions had been raised at Chase as to the Hampstead and Townsend entities, the funds were transferred and Renner was told neither of the activity in the accounts nor of Chase's concerns.

On or about April 9, 1996, Morelli wrote to Townsend to advise it that Chase would be closing the account as a result of its concerns with Townsend's practices. Susse then informed plaintiff that the Townsend account had been closed; he also falsely told him that the Securities and Exchange Commission had frozen the Townsend funds, but that he intended to continue with the investment program. Having heard nothing further, plaintiff wrote to Susse on June 27, 1996, with a copy to Morelli, confirming Susse's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-04622-DLI-RML   Document 18-4   Filed 12/19/05   Page 3 of 13 PageID #: 348

Not Reported in F.Supp.2d                                                                                       Page 3
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

repeated promise to return his investment and questioning why it could not be returned immediately. Plaintiff's agents also contacted Morelli by telephone, but he disclaimed any knowledge of Renner's funds.

**\*3** Over a year and a half after plaintiff failed to obtain the return of his money, he brought the present action.

Renner's complaint alleges eleven claims for relief, as follows:

*Claim 1* (against all defendants): Substantive violation of the RICO statute, 18 U.S.C. § 1962(c).

*Claim 2* (against all defendants): RICO conspiracy, in violation of 18 U.S.C. § 1962(d).

*Claim 3* (against all defendants): Securities fraud, in violation of the 1933 and 1934 Acts and accompanying regulations, in connection with the conspirators' promise to trade with Renner's funds in "securities," namely, the "medium term bank debentures."

*Claim 4* (against all defendants): Common law fraud.

*Claim 5* (against Chase only): Negligence, in respect of its failure to "safeguard" Renner's funds on deposit with Chase.

*Claim 6* (against Chase only): Breach of contractual duty to "make sure that Townsend/Hampstead was using the Renner money for authorized purposes."

*Claim 7* (against Chase and Morelli only): Breach of "a covenant of good faith and fair dealing inherent in every contract."

*Claim 8* (against Gerald Townsend and the two Townsend corporate entities only): Breach of contract.

*Claim 9* (against Townsend defendants only): Breach of the covenant of good faith and fair dealing.

*Claim 10* (against Townsend defendants only): Breach of fiduciary duty.

*Claim 11* (against Townsend defendants only): Negligence.

Chase's motion under Rule 12(b)(6) and Rule 9(b) challenges only the claims plaintiff asserts against Chase. No other defendant has made a motion at this time or sought to adopt that of Chase.

II. *Standard of Review*

A. Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980); see Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir.1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Except in certain circumstances, consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. See Cortec Industries, Inc. v. Sum Holdings, L.P., 949 F.2d 42, 47 (2d Cir.1991); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991). On a motion to dismiss, a district court must accept plaintiff's well-pleaded factual allegations as true, Papasan v. Allain, 478 U.S. 265, 283 (1986), and the allegations must be "construed favorably to the plaintiff." LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991).

B. Rule 9(b)

**\*4** In addition, Rule 9(b) requires that in all allegations of fraud, including actions under § 10(b) and Rule 10b-5, the circumstances constituting the fraud must be stated with particularity. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127-28 (2d Cir.1994). The pleading must be particular enough to satisfy the three goals of Rule 9(b): (1) to provide a defendant with fair notice of the claims against it; (2) to protect a defendant from harm to its reputation or goodwill by unfounded allegations of fraud; and (3) to

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

reduce the number of strike suits. See *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

"[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982). A complaint alleging fraud must (1) specify the statements, oral or written, that the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent omissions; (2) identify the speaker or the writer; state where, when, and to whom the statements were made; and (3) explain why the statements were fraudulent. *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 51 (2d Cir.1995). Thus Rule 9(b) requires a plaintiff to identify which defendant caused each allegedly fraudulent communication to be spoken, written, wired or mailed, and to whom; when the communication was made; and how it furthered the fraudulent scheme. *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992). In cases with multiple defendants, Rule (9b) requires that the complaint allege facts specifying each defendant's contribution to the fraud. Although the rule does not require a plaintiff to allege scienter with great specificity, it does require plaintiff to plead a factual basis which gives rise to a strong inference of fraudulent intent. *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990). "Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* Rule 9(b)'s particularity requirements have "even greater urgency" in civil RICO actions. *Morin v. Trupin,* 778 F.Supp. 711, 716 (S.D.N.Y.1991).

III. *Discussion*

A. *The RICO Claim*

*The Private Securities Litigation Reform Act*

In his complaint, plaintiff alleged violations both of RICO and of the securities laws. Chase, moving to dismiss the RICO claim against it, argues that plaintiff's RICO claim is barred under the recently enacted Private Securities Litigation Reform Act ("Reform Act"), Pub.L. No. 104-67, 109 Stat. 737 (1995).

The Reform Act amends the RICO statute, 18 U.S.C. § 1964(c), to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." The Reform Act's legislative history shows that Congress intended to eliminate securities fraud as a RICO predicate offense, along with other offenses, such as mail or wire fraud, "if such offenses are based on conduct that would have been actionable as securities fraud." Senate Report No. 104-98, 2 U.S.C.C.A.N. 679, 698 (1995). Case law interpreting the statute has established that "where allegations of mail and wire fraud derive from conduct otherwise actionable as securities fraud, no RICO claim will lie." *ABF Capital Management v. Askin Capital Management, L.P.,* 957 F.Supp. 1308, 1319 (S.D.N.Y.1997).

**\*5** Thus the preclusive effect of the Reform Act does not depend upon whether a plaintiff has specifically alleged securities fraud as a predicate act for his RICO claims. The question turns upon the defendant's conduct, as alleged in the complaint. If that conduct "would have been actionable as securities fraud," the Reform Act bars a RICO claim, even if the pleader eschews reference to the securities laws in describing the predicate acts and dresses his claim in other clothing (as the Reform Act undoubtedly will inspire RICO-minded pleaders to do). The Senate Report, cited *supra,* makes Congress's purpose plain enough:

> The Committee intends this amendment to eliminate securities fraud as a predicate act of racketeering in a civil RICO action. In addition, a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts of racketeering under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.

In the case at bar, plaintiff alleges as predicate acts mail fraud, wire fraud, money laundering, and Travel Act violations, Complaint at ¶ 56, a list he repeats in his RICO Statement at ¶ 5a. There is no reference to securities fraud as a predicate act. Nonetheless, the pleading implicates the Reform Act, because the Third Claim for Relief, captioned "Securities Fraud," alleges that the "medium term bank

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-04622-DLI-RML   Document 18-4   Filed 12/19/05   Page 5 of 13 PageID #: 350

Not Reported in F.Supp.2d                                                                                              Page 5
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

debentures" the conspirators promised to trade with Renner's funds are "securities" within the 1933 and 1934 Acts. Complaint, ¶ 66. The Townsend defendants are identified as the architects and principal actors in the fraudulent scheme, *id.,* ¶¶ 68, 69. Paragraph 70 alleges: "Chase, Morelli and Wolford, knowing that such representations were false, *aided and abetted the securities fraud* by participating in inducing Renner to enter the transaction and then diverting the money to the conspirators." (emphasis added).

Implicitly acknowledging the preclusive effect of the Reform Act, and seeking to preserve his RICO claim, plaintiff argues in his opposing papers that the scheme he alleges "is not 'core' securities fraud that Congress aimed to prohibit from RICO," brief at 29, and then goes so far as to purport to "withdraw[ ] the securities claim in order to avoid unnecessary litigation on collateral issues," *id.* at 48 n. 11.

Those defensive maneuvers will not suffice to salvage a RICO claim if Chase's alleged conduct, whatever the label affixed to it, is "actionable as securities fraud," a question whose answer depends upon the substantive law of securities fraud.

A threshold question arises as to whether "securities" are involved at all. The complaint alleges fraudulent promises to trade in "medium term bank debentures." Such instruments certainly sound like "securities," particularly given the broad definitions of that word in the 1933 Act, 15 U.S.C. § 77b(a)(1) ("The term 'security' means any ... debenture, ... or, in general, any interest or instrument commonly known as a 'security' '); and the 1934 Act, 15 U.S.C. § 78c(a)(10) (same).

*\*6* However, the case is complicated by the fact that, on plaintiff's theory, the bank debentures did not exist and never had. In a criminal case, *United States v. Jones,* 648 F.Supp. 225, 231-32 (S.D.N.Y.1986), this Court dismissed securities fraud charges from an indictment involving a hoary "pigeon drop" scam because "[n]o actual securities existed in this case. No genuine transactions in securities occurred or were contemplated. References to securities simply formed a part of the talker's patter," *aff'd in part, rev'd in part on other grounds,* 839 F.2d 900 (2d Cir.1988).

[FN5] *Cf. United States v. Schlei,* 122 F.3d 944, 972-73 (11th Cir.1997) ("The fraud provisions are not defeated by the fact that a security purportedly traded is nonexistent or fictitious ... A contrary result would encourage rather than curb fraud."), *cert. denied,* 118 S.Ct. 1523 (1998).

> FN5. The government did not cross-appeal from the trial court's dismissal of the securities charges in *Jones,* and so the Second Circuit had no occasion to consider the question.

But I need not pursue this question further because the application of the Reform Act turns upon whether Chase's alleged conduct is "actionable" under the securities laws; and, assuming without deciding that the case falls within those laws, Chase's conduct is not actionable under them.

As noted, the complaint asserts that Chase, Morelli, and Wolford "aided and abetted" the fraudulent acts of others. [FN6] That allegation is legally insufficient because secondary liability for aiding and abetting is not a valid basis for a securities fraud claim.

> FN6. Morelli is the only Chase employee named in the complaint. Chase's vicarious liability for Morelli's acts is considered *infra* .

The Supreme Court's decision in *Central Bank v. First Interstate Bank,* 511 U.S. 164 (1994) holds that a claim under § 10(b) must allege that a defendant has personally and directly committed fraud. "[T]he statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act ... The proscription does not include giving aid to a person who commits a manipulative or deceptive act. We cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute." 511 U.S. at 177-78. Under *Central Bank,* secondary liability for "aiding and abetting" no longer is a basis for a § 10(b) claim. *Id.* at 191 ("Because the text of § 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)."). *See also Shapiro v. Cantor,* 123 F.3d 717, 721 (2d Cir.1997) (affirming dismissal and holding that an "assertion of aiding and abetting does not support a claim

Westlaw.

Not Reported in F.Supp.2d                                                                                                              Page 6
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

under § 10(b) as interpreted by the *Central Bank* Court"); *In re JWP Inc. Sec. Litigation,* 928 F.Supp. 1239, 1255-56 (S.D.N.Y.1996) (dismissing misrepresentation claim against audit committee defendants where those defendants did not actually make the alleged misrepresentations).

Here, plaintiff does not allege that defendants Chase, Morelli, or Wolford made any material misstatements or omissions in connection with the purchase or sale of any securities; rather, plaintiff alleges that they merely "aided or abetted" the Townsend defendants and Susse in carrying out the securities fraud. *Central Bank* instructs us that Chase, Morelli, and Wolford may not be held liable for such secondary actions. Accordingly, plaintiff's claim under the securities laws would fail in any event as against these defendants.

**\*7** Because plaintiff's claim would not have been "actionable" against Chase under the securities law, the mere fact that plaintiff baselessly asserted it in his complaint would not bar a RICO claim against under the Reform Act. However, plaintiff's RICO claim fails on other grounds.

*Pattern of Continuous Activity*

To state a claim under RICO, a plaintiff must allege (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962. *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 903-04 (2d Cir.1996). Section 1962 prohibits: a) the use of income "derived ... from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce; b) the acquisition of any interest in or control of such an enterprise "through a pattern of racketeering activity"; c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity"; and (d) conspiring to do any of the above. 18 U.S.C. § 1962; *see also GICC Capital Corp. v. Technology Finance Group, Inc .,* 67 F.3d 463, 465 (2d Cir.1995), *cert. denied,* 518 U.S. 1017 (1996). The existence of a "pattern of racketeering activity" is therefore a requirement under any prong of § 1962. *See GICC Capital Corp.,* 67 F.3d at 465. [FN7] To establish such a pattern, "a plaintiff must plead at least two predicate acts, show that the acts are related and that they amount to, or pose a threat of, continuing criminal activity." *Id.; see also H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240 (1989) ("To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity.").

> FN7. Plaintiff at bar alleges violations of §§ 1962(c) and 1962(d).

In *H.J. Inc.,* the Supreme Court parsed out the two components of the continuity requirement: " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 241-42. *See also GICC Capital Corp.,* 67 F.3d at 466 ("a plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time')"); *Batra v. Pace University,* 1998 WL 684621, at \*5 (S.D.N.Y.1998). Plaintiff asserts that he has pleaded both an open-ended and a close-ended pattern of criminal activity. "Racketeering activity includes the commission of specified state-law crimes, conduct indictable under various provisions within Title 18 of the United States Code, and certain other federal offenses." *Pinnacle Consultants,* 101 F.3d at 904 (citing 18 U.S.C. § 1961(1)).

**\*8** To determine whether a threat of "open-ended" continuity exists, a court must examine the nature of either: (1) the predicate acts alleged; or (2) the enterprise at whose behest the predicate acts were performed. *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 97 (2d Cir.1997). In this case, the moving defendants are not engaged in inherently illegal enterprises. *See Giannacopolous v. Credit Suisse,* 965 F.Supp. 549, 552 (S.D.N.Y.1997); *Shamis v. Ambassadors Factors Corp.,* 1997 WL 473577, at \*13-14 (S.D.N.Y.1997). Here, as in *Shamis,* where "all the specific acts of racketeering ... arose out of the master agreement" between the parties, "the nature of the predicate acts and the enterprise alone do not support a finding of an 'open-ended'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 7
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

pattern of racketeering activity," and the Court must then "look to more general factors to determine whether the threat of continuing activity exists." *Id.* at \*14 (citations omitted). However, where, as here, the alleged scheme had as its goal the fraudulent one-time inducement of one victim to part with his money, the allegations are insufficient to state a claim of open-ended continuity. *See Schlaifer Nance, 119 F.3d at 97-98* ("the allegedly fraudulent acts, although they spanned over three years, were not continuous for RICO purposes because they were acts related to a single contract and single scheme to defraud"); *China Trust Bank of New York v. Standard Chartered Bank, PLC, 981 F.Supp. 282, 287 (S.D.N.Y.1997)* ("The Court cannot infer a threat of repeated fraud from the alleged single scheme"). There is no threat that the fraud alleged in the complaint will continue. Renner, understandably enough, is having nothing further to do with Susse and his confederates, Chase has closed the Townsend account, and Morelli and Wolford seem to have disappeared; they have not been served with process, and plaintiff's counsel noted in the Clerk's Cover Sheet that he has not been able to locate those defendants by the exercise of diligence.

In these circumstances, plaintiff cannot demonstrate RICO "open-ended" continuity.

A party demonstrates "close-ended" continuity by proving a series of related predicate acts extending over a substantial period of time. *H.J. Inc., 492 U.S. at 242,* "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.*

To determine whether closed-ended continuity exists, courts consider a number of factors, including: "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC, 67 F.3d at 467* (citations omitted); *see also Skylon Corp. v. Guilford Mills, Inc., 1997 WL 88894,* at \*5 (S.D.N.Y.1997). Plaintiff has failed to allege a close-ended pattern of RICO activity under the foregoing factors.

*Length of Time:*

**\*9** All of the racketeering acts that victimized plaintiff, as alleged in the complaint, occurred in February and March of 1996. A two-month period of time is insufficient for the purposes of the RICO statute. *See H.J., Inc., 492 U.S. at 242* ("predicate acts extending over a few weeks or months ... do not satisfy [the continuity] requirement"). In *GICC,* the Second Circuit concluded that closed-ended continuity is not satisfied where the RICO pattern alleges a one-victim scheme to defraud over a period of less than two years. *67 F.3d at 463, 467; see also North American Development, Inc, v. Shahbazi, 1996 WL 306538,* at \*6 (S.D.N.Y.1996) (collecting cases).

*Number, Nature, and Variety of Predicate Acts:*

Where the predicate acts alleged are not inherently unlawful acts, such as murder or obstruction of justice, courts normally require a longer span of time to satisfy the continuity requirement. *See, e.g., Skylon Corp., 1997 WL 88894,* at \*6. Accordingly, none of these factors are of any assistance to plaintiff, who alleges several predicate acts (none of them inherently unlawful) typical of a garden-variety fraud.

*Number of Participants:*

This factor similarly is unhelpful to plaintiff, as he does not allege a far-reaching scheme perpetrated by a host of conspirators. Instead, he implicates Chase, an officer of Chase, an officer of Hampstead, and the various Townsend defendants, who may be considered as one entity. *See R.C.M. Exec. Gallery Corp. v. Rols Capital Co., 901 F.Supp. 630, 640-41 (S.D.N.Y.1995).*

*Presence of Separate Schemes:*

Courts typically dismiss RICO claims, such as the one at bar, based upon the limited nature of the scheme alleged. *See Skylon Corp., 1997 WL 88894,* at \* 7 (collecting cases). A court may consider allegations of a "complex, multi-faceted conspiracy," in determining whether the complaint satisfies the continuity requirement, *GICC, 67 F.3d at 468-69;* however, where, as here, the allegedly criminal acts were "narrowly directed toward a single fraudulent end with a limited goal," the claim typically will

Not Reported in F.Supp.2d                                                                                                          Page 8
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

fail. *Skylon Corp.,* 1997 WL 88894, at *7 (internal citation omitted). The simple fraud alleged here, fraudulently bilking plaintiff and diverting his money, simply does not constitute the long-term criminal conduct prohibited under RICO.

Plaintiff attempts to demonstrate that the scheme to defraud him was part of a larger venture that stretched from late 1994 until August 1996. In support of that effort, plaintiff alleges that Hampstead opened a Chase account in December 1994, which Chase closed several months later when Hampstead "presented documentary letters of credit that were fraudulent," Complaint, ¶¶ 13-15; and that, in or around November 1995, Hampstead "induced a Belgian group to provide it with $5 million so that Hampstead would fund a purported $25 million documentary letter of credit through Chase," which Hampstead then diverted to various co-conspirators, *id.,* ¶ 17.

***10** Plaintiff may intend by these allegations of other fraudulent acts to demonstrate either open-ended continuity (by showing the threat of ongoing fraud by the enterprise) or closed-end continuity (by enlarging the relevant period of time). But these allegations are insufficient to make either showing.

First, these other acts, to the extent that they can be understood on the basis of plaintiff's barebones allegations, are unrelated in purpose or methodology to the conduct that injured plaintiff. That is significant because "acts ... [that] are unrelated to the predicate acts which allegedly injured plaintiff ... cannot be considered as part of the activity to extend the scope of the pattern." *Shamis,* 1997 WL 473577 at *15 (citation and internal quotations omitted) *See Burdick v. American Express Co.,* 865 F.2d 527, 529 (2d Cir.1989) (where plaintiff employee sued defendant bank employer for termination as a result of his complaints about fraud on customers, plaintiff could not assert RICO violation because harm to defendant's customers resulting from defendant's fraudulent practices was "too remotely related" to predicate acts alleged); *Vild v. Visconsi,* 956 F.2d 560, 566 (6th Cir.1992) (finding different types of conduct alleged to be unrelated); *Committee to Defend the United States Constitution v. Moon,* 776 F.Supp. 568, 572 (D.D.C.1991); *Shamis,* 1997 WL 473577 at *15.

Second, these allegations of other fraudulent acts fail entirely to comply with the pleading requirements of Rule 9(b), discussed *supra.* As there noted, the law of this circuit requires that allegations of fraud specify the statements made that were false or misleading, give particulars as to the respect in which it is contended that the statements were fraudulent, and state the time and place the statements were made and the identity of the persons who made them. These pleading requirements apply with full force to the allegations in a RICO complaint intended to demonstrate continuity, *Shamis,* 1997 WL 88894, at *15; and the allegations in the case at bar are wholly insufficient to support an inference that the defendants engaged in ongoing and repeated racketeering activity over a term of years, or that they are likely to do so in the future.

For the foregoing reasons, plaintiff has failed to allege a viable RICO claim against any defendant. But there is an additional reason why the RICO claim fails as against Chase.

The only Chase employee named in the complaint is Morelli, the seemingly faithless manager of Chase's Mount Vernon branch (if plaintiff's descriptions of his conduct are accurate). This Court and other district courts in the circuit have held that "corporations may not be held vicariously liable for the actions of their employees in violation of the RICO statute where the plaintiff has not alleged any facts which portray the company as an active perpetrator of the fraud or a central figure in the criminal scheme." *Oatar National Navigation & Transportation Co., Ltd. v. Citibank, N.A.,* 1992 WL 276565, at *7 (S.D.N.Y.1992) (citations and internal quotation marks omitted); *see also Schmidt v. Fleet Bank,* 1998 WL 47827, at *12 (S.D.N.Y.1998) ("Although the Second Circuit has not addressed the issue, district courts within this circuit have been reluctant to impose vicarious liability under RICO"; *held,* defendant Fleet Bank not liable under RICO for acts of its vice-president and branch manager, one Patnoi, where "the complaints do not sufficiently allege that Fleet was a central figure in the criminal scheme or that it benefitted from Patnoi's alleged participation in the scheme.").

***11** In the case at bar, plaintiff's complaint is entirely lacking in well-pleaded factual allegations that Chase (as

Case 1:05-cv-04622-DLI-RML   Document 18-4   Filed 12/19/05   Page 9 of 13 PageID #: 354

Westlaw.

Not Reported in F.Supp.2d                                                                                                         Page 9
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

opposed to its branch manager Morelli) was a central figure in the scheme or stood to benefit from it. On the contrary: plaintiff's allegations in ¶ 31 of the Complaint that two unidentified Chase officers "told Townsend by phone on February 20, 1996 that they were concerned about the Townsend Fund's proposed transactions with investor money" and demanded to see an authorization "that the money in the Townsend account could be used in that way" convincingly depict Chase as an honest bank, trying to prevent, not promote, a possibly fraudulent transfer of funds by Townsend--an effort that Morelli (silently listening to the conversation) was able to circumvent three days later. Nor is there, or could there logically be, any allegation in the complaint that Chase as an institution stood to benefit from the scheme. [FN8]

> FN8. Notwithstanding the failure of the complaint to allege any benefit to Chase, plaintiff's brief asks the reader to infer it, apparently on the theory that Chase would receive "commissions and fees" from the fraudulent transaction. Brief at 40. Quite apart from the requirement that allegations of fact should appear in the pleadings, not briefs of counsel, this requested inference makes no sense, since the Renner funds, after a brief pause in the Townsend account at Chase, were dispatched to the fraudsmen in Monaco. It is fanciful to infer that Chase profited so much from this particular transaction that it was willing to become a partner in fraud to effect it.

For the foregoing reasons, the RICO claims against Chase will be dismissed. [FN9]

> FN9. I have not found it necessary to discuss all of the grounds which Chase argues for dismissing the RICO claims against it.

B. *Securities Fraud:*

Plaintiff's claim for securities fraud is not viable, for the reasons previously stated, *supra.*

\* \* \*

Plaintiff also alleges several common law claims. Because one of the bases for this Court's jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, I must address each in turn.

C. *Common Law Fraud*

The complaint alleges at ¶ 72 that "Susse and Penly, aided and abetted by Chase, Morelli, Townsend, Townsend Financial and Townsend Fund, made knowing and intentional misrepresentations to Renner ... ".

Thus plaintiff's claim against Chase is limited to one of aiding and abetting the fraud of others. That is understandable, since the first of four elements that a plaintiff must prove by clear and convincing evidence to sustain a claim of fraud is that the defendant in question made a material false representation to the plaintiff. [FN10] *See Banque Arabe v. Maryland National Bank,* 57 F.3d 146, 153 (2d Cir.1995). The complaint contains no allegation that Morelli or anyone else at Chase made any representation to Renner which induced Renner to hand over his money to others. The only communication from anyone at Chase to plaintiff referred to in the complaint appears at ¶ 50, where it is alleged that in a telephone conversation on June 27, 1996, between Felix Renner, plaintiff's brother, and Morelli, "Morelli disclaimed knowledge about the Renner transaction and claimed to know nothing about Townsend, Hampstead or Susse." Even if that disclaimer was false, it did not induce any action on the part of plaintiff, nor did it cause him to suffer damage; according to the complaint, his money was by that time long gone. [FN11]

> FN10. The other three elements are that the defendant intended to defraud the plaintiff thereby; that the plaintiff reasonably relied upon the representation; and that the plaintiff suffered damage as the result of such reliance. *Banque Arabe,* 57 F.3d at 153.1995).

> FN11. In dealing with communications between Morelli and plaintiff, I do not lose sight of the allegation in ¶ 29 of the complaint that on or about February 15, 1996, "Morelli confirmed on Chase Mount Vernon branch letterhead that the Renner money had been credited to the Townsend Fund

Not Reported in F.Supp.2d                                                                                    Page 10
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

account and that the funds 'were received from Swiss Bank Corp., New York via Fed by Order of Klaus Renner." ' Plaintiff does not allege that this letter was sent to him; and a careful reading of the complaint suggests that Morelli sent it to Chase's customer, Townsend, which on the same day sent a "Custody Receipt Confirmation" in quite different terms to Renner. Complaint, ¶ 27.

I turn, then, to whether the complaint adequately alleges a claim against Chase for aiding and abetting the fraud of Susse and Penly.

To establish aiding and abetting under New York law, plaintiff must show (1) the existence of a violation by the primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; an (3) substantial assistance by the aider and abettor in the achievement of the primary violation. See Williams v. Bank Leumi Trust Co., 1997 WL 289865, at *4 (S.D.N.Y.1997) (collecting cases); Moll v. U.S. Life Title Insurance Co. of New York, 710 F.Supp. 476, 479 (S.D.N.Y.1989) (citing elements in context of aiding and abetting fraud).

*12 The pleading requirements of Rule 9(b), previously discussed, apply to a claim for aiding and abetting fraud. See, Williams, 1997 WL 289865, at *5; ABF Capital Management v. Askin Capital Management, L.P., 957 F.Supp. at 1328 ("claim of aiding and abetting fraud must meet the pleading requirements of Rule 9(b)"); Frota v. Prudential Bache Securities, Inc., 639 F.Supp. 1186, 1193 (S.D.N.Y.1986) (applying Rule 9(b) to breach of fiduciary duty claims based on allegations of fraudulent conduct).

The complaint at bar fails to conform to the relevant pleading requirements in several respects.

First, the complaint fails adequately to allege knowledge on the part of Chase of the fraudulent scheme that Susse and others intended to perpetrate, and did perpetrate, upon Renner. That is so even if, assuming without deciding, the knowledge of Morelli should be imputed in law to his employer, Chase.

New York law requires that an aider and abettor have actual knowledge of the primary wrong; constructive knowledge is not sufficient. See Kolbeck v. LIT America, Inc., 939 F.Supp. 240, 246 (S.D.N.Y.1996) (collecting cases); Williams, 1997 WL 289865, at *5 ("The only apparent basis for Bank Leumi's alleged knowledge of the check-kiting scheme was the sequence of the account transfers, and the contention that Bank Leumi was informed that the purpose of the $4 million check was for the purchase of LifeCo stock. At most, these facts raise the issue of constructive knowledge which is insufficient to state a claim for aiding and abetting").

Morelli, the Mt. Vernon branch manager, is the only Chase employee identified in the complaint. If there were other Chase officers or employees involved in this transaction, the complaint fails to identify or describe them, in violation of Rule 9(b).

As for Morelli, only two paragraphs of the complaint contain allegations which could be read as evidencing some degree of troublesome knowledge on Morelli's part. The first of these is ¶ 25. That paragraph alleges that on or about February 12 and 13 1996, before the Renner money had been transferred to Chase, Morelli and Townsend had a discussion about how Hampstead would use Renner's money, and how the account to which the Renner money would be paid could be structured. At the very most, these allegations raise the possibility of constructive knowledge on Morelli's part, namely, that Townsend might not be dealing with Renner in a wholly forthright manner, consistent with Renner's instructions and expectations. But the allegations fall well short of imparting to Morelli actual knowledge that, as soon as the Renner funds were received, they would be diverted to conspirators in Monaco, as the complaint alleges did occur.

Furthermore, although plaintiff does not characterize the allegations of ¶ 25 as having been made "upon information and belief," it is difficult to see how it could be otherwise; the paragraph purports to summarize the contents of a conversation between Morelli and Townsend. This is significant, since it is well settled that "allegations made on information and belief are insufficient unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must alleges facts demonstrating the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-04622-DLI-RML   Document 18-4   Filed 12/19/05   Page 11 of 13 PageID #: 356

Not Reported in F.Supp.2d                                                                                              Page 11
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

basis for the information and belief." *National Council of Young Israel v. Wolf,* 963 F.Supp. 276, 281 (S.D.N.Y.1997) (citations and internal quotation marks omitted). The complaint nowhere alleges the basis for plaintiff's information and belief.

**\*13** The same considerations apply to ¶ 31 of the complaint, which alleges that on or about February 20, 1996, Morelli "listened silently on the line" to a telephone conversation between two unidentified Chase officers and Townsend. The officers told Townsend, according to these allegations, that they were concerned "about the Townsend fund's proposed transactions [unspecified] with investor money [also unspecified]" and asked to see an authorization "that the money in the Townsend account could be used in that way" (there being no further description of what "that way" referred to). Again, these allegations establish nothing more than constructive knowledge of possible concerns, rather than actual knowledge of the fraud eventually perpetrated. And, since it is equally clear that plaintiff bases this allegation "upon information and belief," it is deficient in its failure to allege facts demonstrating the basis for that information and belief.

Thus it is apparent that the complaint does not sufficiently allege the second element of the claim for aiding and abetting fraud, that of actual knowledge on the part of the alleged aider and abettor.

D. *Negligence*

Plaintiff's fifth claim alleges negligence against Chase. Plaintiff alleges that by accepting Renner's funds, Chase owed a duty to Renner in connection with the funds, which Chase negligently breached by failing to protect the funds from fraudulent diversion. Complaint, ¶ 76-78.

To establish a claim for negligence under New York Law, "a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Savings Bank,* 111 F.3d 251, 259 (2d Cir.1997); *see also Stagl v. Delta Airlines, Inc.,* 52 F .3d 463, 467 (2d Cir.1995); *Solomon v. City of New York,* 66 N.Y.2d 1026, 1027 (N.Y.1985).

Plaintiff's negligence claim against Chase fails because Chase did not owe plaintiff a cognizable duty of care. Whatever duty of care banks owe to their customers, *see King,* 111 F.3d at 259, Renner was not a customer of Chase. The Chase customer involved in this case was the Townsend fund, into which Chase (acting through Morelli) paid Renner's funds when they were received through Renner's Swiss Bank.

These circumstances reduce Renner to the necessity of arguing that Chase owed him a duty to prevent Chase's customer, Townsend, from defrauding Renner. But it is well settled that a bank owes no such duty to a non-customer third-party. *See Guidry v. Bank of LaPlace,* 740 F.Supp. 1208 (E.D.La.1990) (as a matter of law, bank does not owe duty of care to non-customer defrauded by bank customer), *aff'd as modified,* 954 F.2d 278 (5 th Cir.1992); *E.F. Hutton Mortgage Corp. v. Equitable Bank, N.A.,* 678 F.Supp. 567 (D.Md.1988) (even if bank knew of or suspected customer's fraudulent scheme, it owed no duty to third-party, non-customer plaintiff and thus was not liable for negligence); *see also Century Business Credit Corp. v. North Fork Bank,* 246 A.D.2d 395, 396, 668 N.Y.S.2d 18, 19 (N.Y.App. Div. 1 st Dep't 1998) (holding that bank is not liable for negligence to customer's creditors, and stating that requiring a bank to monitor its customer's account would "unreasonably expand banks' orbit of duty."); *Stuart v. Tomasino,* 148 A.D.2d 370, 539 N.Y.S.2d 327 (N.Y.App. Div. 1 st Dep't 1989) (no duty of care owed by mortgagee bank to mortgagors in action by mortgagors against individuals who had defrauded them, resulting in default on mortgage); *Regency House, Inc. v. Citibank, N.A.,* 202 A.D.2d 655, 657, 610 N.Y.S.2d 535, 536 (N.Y.App. Div.2d Dep't 1994) (shareholders of foreclosed property failed to establish any duty owed to them by bank for negligence arising from foreclosure); *Cohen v. Standard Bank Investment Corp., Ltd.,* 1998 WL 782024, at \*7 (S.D.N.Y.1998) (no duty of care owed by bank to investor in allegedly fraudulent scheme perpetrated by bank borrower).

**\*14** The cases cited by plaintiff relate only to instances in which the bank has a fiduciary duty to the plaintiff. As a general rule, a bank has no duty to monitor even a fiduciary

Case 1:05-cv-04622-DLI-RML   Document 18-4   Filed 12/19/05   Page 12 of 13 PageID #: 357

Not Reported in F.Supp.2d                                                                                                Page 12
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

account under New York law. *See, e.g., Home Savings of America, FSB v. Amoros,* 233 A.D.2d 35, 38, 661 N.Y.S.2d 635, 637 (N.Y.App. Div. 1 st Dep't.1997) ("Ordinarily, of course, a depositary bank has no duty to monitor fiduciary accounts maintained at its branches to safeguard the funds in those accounts from fiduciary misappropriation."). However, plaintiff notes that this rule is altered where "there are facts ... indicating misappropriation." *In re Knox,* 64 N.Y.2d 434, 438 (N.Y.1985). Plaintiff asserts that because Chase had knowledge of Hampstead and Townsend before the Renner funds were deposited, it was negligent in its failure to question their motives and practices in connection with the Renner deposit.

In order for a bank to be liable for the diversion of fiduciary funds, plaintiff must show that the bank either itself benefitted from the transaction or that it had notice or knowledge that a diversion was intended or was in progress. *Knox,* 64 N.Y.2d 438; *see also Diller v. Schick,* 1998 WL 635539, at *2 (S.D.N.Y.1998) (citing *Home Savings of America,* 661 N.Y.S.2d at 637). The test is that "[f]acts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger a duty of inquiry on the part of a depositary bank, and a bank's failure to conduct a reasonable inquiry when the obligation to do so arises will result in the bank being charged with such knowledge as inquiry would have disclosed." *Home Savings of America,* N.Y.S.2d at 637 (internal citations omitted).

In the case at bar, these principles avail plaintiff nothing. First, the Townsend Fund account with Chase was not a *fiduciary* account; accordingly, there is no reason to depart from the general rule that a bank cannot be held accountable for the ways in which its customers manage their accounts. Further, even if one assumes a fiduciary relationship, plaintiff has not pleaded facts sufficient to establish negligence. In those instances in which the New York courts have found that a bank has received adequate notice of a fraud, either the bank has accepted money from a fiduciary account in order to satisfy the fiduciary's personal debt to the bank, *see Bischoff v. Yorkville Bank,* 218 N.Y. 106, 112 N.E. 759 (N.Y.1916); *In re Knox,* 64 N.Y.2d 434, or there is a history of overdrafts in the fiduciary account. *Home Savings of America,* N.Y.S.2d at 637. Here, there is no allegation that any payment was made to Chase; nor is there any allegation that the Townsend account ever was overdrawn. Accordingly, plaintiff has not shown that Chase had notice of an impending or ongoing misappropriation.

E. *Breach of Contract and Breach of Covenant*

I will discuss plaintiff's last two claims against Chase together.

**\*15** Plaintiff's sixth claim alleges that in the circumstances alleged, "Chase assumed a contractual duty to make sure that Townsend/Hampstead was using the Renner money for authorized purposes." Complaint, ¶ 82.

The seventh claim alleges that plaintiff was "relying on Chase's integrity in making the investment with the belief that the funds would be safeguarded," and that by receiving Renner's funds and depositing them in the Townsend Fund account, Chase (acting through Morelli) "undertook a covenant of good faith and fair dealing inherent in every contract," which Chase broke by issuing a misleading "custody receipt confirmation" and "failing to advise Renner that the funds entrusted to Chase were being looted, or even to inquire whether Renner was aware of, and had authorized, the questionable transactions Chase detected." *Id.,* ¶¶ 86-89.

The sixth claim need not detain us. In order to form a contract under New York law, there must be an offer, acceptance, and consideration, and a showing of "a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound." *Oscar Productions, Inc. v. Zacharius,* 893 F.Supp. 250, 255 (S.D.N.Y.1995). The complaint at bar contains no allegation that plaintiff and Chase entered into an express contract, either written or oral; in the latter instance, the burden on a plaintiff is heavier because "a primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they never intended." *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir.1989) (citation and internal quotation marks omitted). Nor, given the principles of banking law discussed *supra,* may a contract binding Chase to plaintiff be implied.

Case 1:05-cv-04622-DLI-RML   Document 18-4   Filed 12/19/05   Page 13 of 13 PageID #: 358

Not Reported in F.Supp.2d                                                                                       Page 13
Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679
**(Cite as: 1999 WL 47239 (S.D.N.Y.))**

The most that can be said for plaintiff's seventh claim against Chase is that it is an inartful effort to plead a claim for "commercial bad faith." This is a cause of action against banks, sounding more in tort than in contract, that New York law recognizes in certain special circumstances. See Prudential-Bache Securities, Inc. v. Citibank, N.A., 73 N.Y.2d 263, 275-77, 536 N.E.2d 1118 (N.Y.1989); Peck v. Chase Manhattan Bank, N.A., 190 A.D.2d 547, 593 N.Y.S.2d 509 (N.Y.App.Div. 1st Dept.1993). The plaintiff need not be a customer of the defendant bank, nor related to the bank by contract. Plaintiff need only be a foreseeable victim of a fraudulent scheme executed by lower echelon bank employees; bank liability attaches if "managerial employees of the bank knew of and thus participated in the scheme." Prudential-Bache, 73 N.Y.2d at 277. In that regard, allegations charging managerial employees with "merely a lapse of wary vigilance" or "even suspicious circumstances which might well have induced a prudent banker to investigate" are insufficient, id. at 276. Individuals more exalted in the bank hierarchy than a branch assistant manager (the fraudsman in Prudential-Bache, see 73 N.Y.2d at 267, and the analogue to Morelli in the case at bar) [FN12] must have had actual knowledge of the particular scheme and, by their silence and inaction, participated in it.

> FN12. This parenthetical observation assumes without deciding that Morelli was a knowing participant in the fraud plaintiff charges, a circumstance which, as discussed *supra,* plaintiff has not adequately alleged.

**\*16** There are no allegations sufficient to make that showing in the complaint at bar; it may be contrasted in that regard with the allegations in *Prudential-Bache,* summarized at 73 N.Y.2d 276-77.

It follows that plaintiff's sixth and seventh claims against Chase must also be dismissed.

All the claims against Chase being deficient for the reasons stated, the Clerk of the Court is directed to dismiss the complaint as against defendant Chase Manhattan Bank in its entirety.

Since the Court's decision as to certain claims depends in part upon the inadequacies of the pleading, plaintiff is given leave, if he is so advised and in a position to do so consistent with Rule 11, Fed.R.Civ.P., to file and serve an amended complaint as to the first, second, and fourth claims against Chase, within forty-five (45) days of the date of this Opinion and Order. Leave to amend is denied as to plaintiff's other claims against Chase.

Counsel for all parties are directed to attend a status conference in Room 17C, 500 Pearl Street, at 2:00 p.m. on April 9, 1999.

It is SO ORDERED.

Not Reported in F.Supp.2d, 1999 WL 47239 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,438, RICO Bus.Disp.Guide 9679

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34727738 (Trial Pleading) Defendants Townsend Financial Services Corp., Townsend Investment Fund, LLC, Townsend Financial Group, Ltd and Gerald Townsend's Response to Plaintiff's Omnibus Discovery Report (2001)

• 2000 WL 34474989 (Trial Pleading) Defendants Townsend Financial Services Corp., Townsend Investment Fund, LLC, and Gerald Townsend Answer to Plaintiff's Amended Complaint (Jul. 05, 2000)

• 1999 WL 33919733 (Trial Pleading) Amended Complaint (Apr. 16, 1999)

• 1998 WL 34311486 (Trial Pleading) Answer and Affirmative Defenses of Defendants Townsend Financial Services Corp., Townsend Investment Fund, LLC, and Gerald Townsend (Apr. 20, 1998)

• 1998 WL 34311485 (Trial Pleading) Complaint (Feb. 09, 1998)

• 2:98cv00926 (Docket) (Feb. 09, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.