Westlaw.

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Peter F. RYAN, PRD Corp., Dale W. Ryan, PDR Holdings, Inc., PDR Corp. Defined
Benefit Plan & Trust, Ryan Realty Trust, Loperena Trust, Jaquith Holdings,
Inc., Peter F. Ryan Irrevocable Trust, Research & Finance Corp., Glen Guillet,
DOIT Corp., Zayin Investments, Ltd., Beny Primm, RPE Management, Inc., Daniel
Langer, Jay Sicklen, Mykerinus Holdings, Inc., and Charles Schmidt, Plaintiffs,
v.
HUNTON & WILLIAMS, Scott J. McKay Wolas, Franklin H. Stone, Christopher M.
Mason, Kathy McClesky Robb, Jerry E. Whitson, Tardino & Tardino, Victor J.
Tardino, Jr., Victor J. Tardino, Sr., Crystal Waters, N.V., Crystal
Distributors, L.P., Crystal Distributors, L.P. II, Chase Manhattan Bank f/k/a
Chemical Bank, Fleet Bank f/k/a National Westminster Bank, and Gregory Wolas,
Defendants.
**No. 99-CV-5938 (JG).**

Sept. 20, 2000.

Sigmund S. Wissner-Gross, Esq., Heller, Horowitz & Feit, P.C., New York, for Plaintiffs.

Andrew R. Kosloff, Esq., The Chase Manhattan Bank Legal Department, New York, for Defendant Chase Manhattan Bank.

MEMORANDUM AND ORDER
GLEESON, District J.

**\*1** The plaintiffs initiated this action to recover for injuries they sustained as a result of their investment in a "Ponzi" scheme operated by Scott J. McCay Wolas ("Wolas"), a partner at the New York office of Hunton & Williams ("H & W"). Defendant Chase Manhattan Bank ("Chase") has moved to dismiss the claims against it for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity pursuant to Rules 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted.

BACKGROUND
The following factual background is based on the allegations contained in the plaintiffs' complaint, which are assumed to be true for the purposes of this motion.

From 1989 to 1995, Wolas ran a "Ponzi" scheme. He induced the plaintiffs and others to invest with him by misrepresenting that their investments would be used to purchase large shipments of Scotch whiskey in Scotland for resale in the Orient. In fact, there were no such purchases; instead, Wolas used the funds to pay prior "investors" and for other unknown purposes. In 1995, Wolas absconded, and his whereabouts are still unknown. (*See* Compl. ¶ 1.)

In 1994 Chemical Bank [FN1] ("Chemical") was on notice of various of "red flags" that indicated fraudulent conduct by Wolas and/or those with whom he was associated. For example, in May 1994, John Dolan, a cohort of Wolas, tried to open an account at Chemical in the name of SEV Enterprises, Inc. ("SEV"). Chemical, however, declined to open the account because Patrick J. Connor, of Chemical's in-house fraud investigative unit, suspected that SEV was probably running an "advance fee scam." (*Id.* ¶¶ 111-12.) Then, on June 29, 1994, a lawyer representing a former associate at H & W contacted Mark E. Segal, Assistant General Counsel of Chemical, and informed him that Wolas fraudulently overbilled Manufacturers Hanover Trust, Chemical's predecessor, for work done on a litigation matter. Later that year, Chemical shut down accounts maintained by Wolas and Albert H. Wolas, Inc., a family business owned by Wolas's father and brother, after a $950,000 check to Wolas, drawn on one of the business accounts, bounced. (*See id.* ¶¶ 113-14.)

    FN1. Chemical Bank has since merged with Defendant Chase Manhattan Bank.

On March 16, 1995, just three months before the "Ponzi"

Case 1:05-cv-04622-DLI-RML Document 18-6 Filed 12/19/05 Page 2 of 10 PageID #: 387

Not Reported in F.Supp.2d  Page 2
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

scheme collapsed, Dolan opened a primary account in the name of SEV and Wolas opened a sub-account (to the SEV account) at a Chemical branch on Third Avenue in Manhattan. Although the sub-account was an attorney escrow account, Wolas authorized Dolan, a non-lawyer, to have signing authority over the sub-account. Wolas and/or Dolan further informed Chemical in-house counsel Manuel Gottlieb that the sub-account was an attorney escrow account and that all of the money passing through the sub-account was escrow money. (*See id.* ¶¶ 110, 115-16.)

From the accounts' inception, branch officer Kevin O'Dea suspected that they were a vehicle for fraudulent activity and immediately referred them to Chemical's in-house fraud investigative unit. On May 2, 1995, an employee of the fraud unit notified O'Dea and Gottlieb of the unit's concerns one year earlier when Dolan tried to open an account in the name of SEV, and urged that Chemical immediately shut down the primary and subaccounts. Then, on May 5, 1995, O'Dea notified Dolan and SEV that the accounts had to be closed by June 5, 1995, one month later. [FN2] (*See id.* ¶¶ 115, 117-18.)

> FN2. On May 30, 1995, a grand jury in the Southern District of Texas issued a subpoena, in part, to one of the two SEV sub-accounts. This subpoena was faxed to in-house counsel Gottlieb on June 1, 1995. (*See* Compl. ¶ 124.)

A. *The Account Activity*

**\*2** In April and May of 1995, O'Dea and his assistant signed or approved bank checks and transfers out of Wolas's sub-account and into the SEV primary account. Specifically, O'Dea effected the following transactions:
  (i) Beginning on April 27, 1995, O'Dea personally signed bank checks drawn on the Wolas sub-account;
  (ii) On April 25, 1995, O'Dea personally approved the internal transfer of $1 million of investor funds from the sub-account to the SEV primary account, and such transfer occurred on April 27, 1995; and
  (iii) On May 2, 1995, O'Dea's assistant approved the transfer of $1.6 million from the sub-account to the SEV primary account.
(*See* Compl. ¶ 119.)

Then, on April 27, 1995, O'Dea personally approved the issuance of two Chemical checks drawn on the SEV primary account, each in the amount of $100,000, and certified another SEV primary account check, in the amount of $28,459. Several days later, O'Dea approved a May 2, 1995, certified check for $200,000 drawn on the SEV primary account. This check was immediately altered to indicate that it was drawn on the sub-account. By no later than May 10, 1995, O'Dea knew that this certified check had been altered, and relied on this information in insisting that the accounts be closed. (*See id.* ¶ 120.)

By May 2, 1995, O'Dea was also aware that $10 million was to be wired into another SEV sub-account at Chemical. (*See id.* ¶ 121 .) O'Dea (and/or another Chemical employee or officer) specifically approved multiple wire transfers that resulted in the theft of investor funds. For example, O'Dea approved the following transactions:
  (i) the May 2, 1995, wire transfer of $50,000 from the SEV primary account to Kehle & Co., Inc. in Florida;
  (ii) the May 4, 1995, wire transfer of $40,000 to a "Keeco" entity in Washington;
  (iii) the May 4, 1995, wire transfer of $50,000 for credit to Warley, Inc.;
  (iv) the May 4, 1995, wire transfer of $7,500 to Jim Roma in Washington, with "special instructions" from "F. Kelly," which O'Dea knew was false and fraudulent since the funds did not come from F. Kelly;
  (v) the May 12, 1995, wire transfer of $10,000 to "David J. Friednbach" in Oregon; and
  (vi) the May 12, 1995, wire transfer of $500,000 to "Jack Vita, Esq. Client Trust Account," with "special instructions" from "Warley, Inc.," which O'Dea knew was false and fraudulent since the funds did not come from Warley, Inc.
(*See id.* ¶ 122.)

B. *The Relevant Plaintiffs*

1. *DOIT Corp.*

O'Dea was aware that several million dollars had been wired from the Florida Cordova Law Center ("Cordova"), in April and May 1995, to the Wolas sub-account at Chemical. However, neither O'Dea nor anyone else at Chemical

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

contacted Cordova regarding the purpose of those transfers or alerted it of Chemical's concerns. On May 16, 1995, Plaintiff DOIT Corp. ("DOIT") deposited $500,000 in escrow with the Cordova, with the expectation that the funds would then be transferred to the Wolas sub-account at Chemical. DOIT was never advised that Chemical had already taken steps to shut down the sub-account. (*See id.* ¶ 125.)

2. *Research & Finance Corp.*

**\*3** In late May 1995, the Chairman of the Research & Finance Corp. ("RFIN"), who maintained personal accounts at Chemical, contacted Chemical's Private Banking Group to confirm the status of what he believed was an H & W Client Funds account before he transferred $500,000 out of his personal account on behalf of RFIN to that account. The Chairman was advised that the H & W Client Funds account was in good standing, but was not told, among other things, (i) that the escrow account was a sub-account of SEV; (ii) that the sub-account was Wolas's and that H & W did not maintain the firm's principal attorney escrow account at Chemical; (iii) that Chemical had notified Wolas and SEV in early May 1995 to close the primary and subaccounts; and (iv) that Chemical believed that primary and subaccounts were being used for fraudulent purposes. (*See id.* ¶ 126.)

On June 29, 1995, pursuant to H & W's instructions, RFIN's accountant attempted to transfer $500,000 on RFIN's behalf to the Wolas sub-account at Chemical, believing it to be an escrow account maintained by H & W. As the SEV account and Wolas sub-account had already been closed at that point, the transfer did not go through. Chemical did not disclose to RFIN, however, why the Wolas sub-account had been closed. Believing it to be an administrative matter and that H & W had moved its escrow account to another bank, RFIN transferred the funds on July 13, 1995, to an account at National Westminster Bank ("Nat West"), now known as Fleet Bank, maintained by Wolas. (*See id.* ¶ 127.)

C. *This Action*

On September 24, 1999, various investors in Wolas's "Ponzi" scheme commenced this action for damages against H & W, Wolas, and other defendants for violations of the Securities Exchange Act of 1934, the Racketeering Influenced and Corrupt Organization Act, and New York common law. Relevant to the motion before me now are the claims by DOIT and RFIC against Chase (formerly Chemical) for fraud, aiding and abetting fraud, and commercial bad faith. [FN3] Chase has moved to dismiss these claims for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity, pursuant to Rules 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.

> FN3. Although Plaintiff Glen Guillet originally asserted these claims against Chase as well, I was informed at oral argument on May 26, 2000, that Guillet's claims had been settled.

DISCUSSION

A. *The Rule 12(b)(6) Standard*

In a 12(b)(6) motion, a federal court's task in determining the sufficiency of a complaint is "necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The inquiry focuses not on whether a plaintiff might ultimately prevail on her claim, but on whether she is entitled to offer evidence in support of the allegations in the complaint. *See id.* "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* Rule 12(b)(6) warrants a dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); *see also* Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59 (2d Cir.1997). In considering a defendant's motion, the Court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff. *See* Hamilton, 128 F.3d at 59 (citing Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976)).

B. *Common Law Fraud*

**\*4** Chase contends that RFIN's fraud or fraudulent concealment claims must be dismissed because it has failed to allege the elements of the claims and sufficient facts to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-04622-DLI-RML   Document 18-6   Filed 12/19/05   Page 4 of 10 PageID #: 389

Not Reported in F.Supp.2d                                                                                                                Page 4
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

give rise to a strong inference of fraudulent intent under Rule 9(b). [FN4].

> FN4. DOIT has abandoned its fraud claim against Chase. (*See* Pls.' Mem. of Law in Opp'n at 3 n. 2.)

To state a claim of common law fraud under New York law, plaintiff must establish, by clear and convincing evidence, that (i) the defendant made a material misrepresentation; (ii) with knowledge of its falsity; (iii) with the intent to defraud the plaintiff; (iv) on which the plaintiff reasonably relied; and (v) that caused damage to the plaintiff as a result. *See Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 98 (2d Cir.1997); *Banque Arabe et Internationale D'Investissement v. Maryland National Bank,* 57 F.3d 146, 153 (2d Cir.1995).

1. *Proximate Cause*

RFIN alleges that Chemical made a material false misrepresentation when it represented to RFIN's Chairman that the Wolas sub-account was in good standing. It further alleges that it reasonably relied on this representation and suffered at least $500,000 in damages when its investment was later misappropriated by Wolas from his account at NatWest. In response, Chase contends that RFIN has failed to establish that Chemical's statement was the proximate cause of RFIN's injury. I agree.

"The absence of adequate causation is ... fatal to a common law fraud claim under New York law." *Bennett v. United States Trust Co.,* 770 F.2d 308, 316 (2d Cir.1985). A plaintiff may establish proximate cause if an injury "is the natural and probable consequence of the defrauder's misrepresentation or if the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud." ' *Citibank, N.A. v. K-H Corp.,* 968 F.2d 1489, 1496 (2d Cir.1992) (quoting *Cumberland Oil Corp. v. Thropp,* 791 F.2d 1037, 1044 (2d Cir.1986)). "The requisite causation is established only where the loss complained of is a direct result of the defendant's wrongful actions and independent of other causes." *Revak v. SEC Realty Corp.,* 18 F.3d 81, 89-90 (2d Cir.1994) (citing *Bennett,* 770 F.2d at 316).

In *Bennett,* the plaintiffs used the proceeds of a series of loans from the defendant bank to purchase public utility stock and then deposited the stock with the bank as collateral for the loans. *See* 770 F.2d at 310. In negotiating the loans, the bank misrepresented to the plaintiffs that the Federal Reserve's margin rules do not apply when public utility stock is deposited as collateral. The stock subsequently generated insufficient dividends to cover the interest, and its market value decreased. Thus, in addition to the plaintiffs' loss of the equity itself, they owed the bank the outstanding interest and principal in excess of the stock's depreciated value. *See id.* The district court dismissed the plaintiffs' common law fraud claim for lack of causation and the Second Circuit affirmed, concluding that the plaintiffs had only alleged "but for" causation, *i.e.,* that they would not have purchased the stock if the bank had denied the loans. *See id.* at 314-16. Noting that the plaintiffs' common law fraud and securities fraud claims were equally flawed, the court stated that there was "simply no direct or proximate relationship between the loss and the misrepresentation." *Id.* at 314, 316. The court emphasized that the plaintiffs approached the bank for a loan with the plan to purchase the public utility stock; the bank recommended neither public utility stock in general, that stock in particular, nor the investment value of any such stock. *See id.* at 313-14. Accordingly, the court concluded that the "loss at issue was caused by the [plaintiffs'] own unwise investment decisions, not by [the bank's] misrepresentation." *Id.* at 314.

*5 RFIN's fraud claim fails for precisely the same reasons. RFIN approached Chemical with the intention of investing in Wolas's whiskey scheme. Indeed, RFIN's Chairman contacted Chemical's Private Banking Group only to confirm the status of Wolas's account at Chemical prior to directing the transfer of $500,000 into the account. (*See* Compl. ¶ 126.) At that time, the Chairman was told that Wolas's account was in good standing. (*See id.*) Although RFIN insists that it would not have invested with Wolas (by depositing $500,000 in his account at Nat West after learning that the Chemical account was closed) if the Chemical officer had not made that representation or had told RFIN's Chairman of Chemical's concerns about the Wolas sub-account, these allegations at most establish "but

Not Reported in F.Supp.2d  Page 5
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

for" causation. Simply put, the direct and proximate cause of RFIN's loss was Wolas's fraud, not Chemical's representation about the status of the Wolas sub-account.

2. *Duty to Disclose*

In addition, RFIN asserts that it has a claim of fraudulent concealment based on Chemical's failure to disclose to RFIN's Chairman that (i) Chemical had notified Wolas and SEV that it would close the accounts as of June 5, 1995; (ii) Chemical suspected fraudulent activity in the accounts; (iii) H & W did not maintain an escrow account at Chemical; and (iv) Wolas's escrow account was a sub-account of the SEV account.

To establish a claim of fraudulent concealment under New York law, the plaintiff must prove the aforementioned elements of common law fraud *and* that "the defendant had a duty to disclose the material information." Banque Arabe, 57 F.3d at 153. A duty to disclose may arise in two circumstances: (i) "where the parties enjoy a fiduciary relationship" and (ii) "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir.1984).

RFIN claims that Chemical's duty to disclose arose from its superior information about the status of the Wolas sub-account. It argues that such information was not readily available to RFIN, and that Chemical knew that RFIN was acting, or attempting to act, on the basis of mistaken knowledge when RFIN attempted to transfer $500,000 to the account after it was closed.

As an initial matter, I question whether RFIN may bring a fraudulent concealment claim against Chase since such a claim "ordinarily arises only in the context of business negotiations where parties are entering a contract." *Ray Larsen Assocs., Inc. v. Nikko Am., Inc.,* No. 89 Civ. 2809(BSJ), 1996 WL 442799, at *5 (S.D.N.Y. Aug. 6, 1996); *see also Renner v. Chase Manhattan Bank,* No. 98 Civ. 926(CSH), 2000 WL 781081, at *9 n. 5 (S.D.N.Y. June 14, 2000) (questioning in *dicta* whether defendant bank had duty to disclose where plaintiff neither conducted business nor negotiated contracts with bank or bank employee); *Williams v.* Bank Leumi Trust Co., No. 96 Civ. 6695(LMM), 1998 WL 397887, at *8 (S.D .N.Y. July 15, 1998) (questioning in *dicta* whether insurance company receiver had standing to bring fraudulent concealment claim where defendant bank and insurance company "never stood on opposite sides of the same transaction").

**\*6** However, even if RFIN can state a fraudulent concealment claim in these circumstances, it has not done so. Chase cannot properly be held accountable for failing to disclose information about the Wolas's sub-account to RFIN. "[A] bank should keep its own customers' affairs confidential." Aaron Ferer, 731 F.2d at 123 (citing Graney Dev. Corp. v. Taksen, 400 N.Y.S.2d 717, 719 (Sup.Ct.), aff'd, 411 N.Y.S.2d 756 (4th Dep't 1978)); *see also* Graney, 400 N.Y.S.2d at 719 ("It is implicit in the contract of the bank with its customer or depositor that no information may be disclosed by the bank or its employees concerning the customer's or depositor's account.") (internal quotation marks and citations omitted); Renner, 2000 WL 781081, at *9 (citing *Aaron Ferer* and *Graney* and noting that bank officer had no duty to respond to plaintiff's letters inquiring about bank customers); *cf.* Young v. United States Dep't of Justice, 882 F.2d 633, 640-43 (2d Cir.1989) (encouraging New York courts to recognize duty of confidentiality between bank and customer). Thus, Chemical had no duty to volunteer to RFIN additional information about the alleged suspicious activity in the Wolas sub-account.

Finally, even if Chemical was obligated to disclose this additional information, there is no indication that Chemical knew that RFIN was acting on the basis of mistaken knowledge concerning the financial transaction between Wolas and RFIN. According to the plaintiff's allegations, Chemical knew only that RFIN inquired about the sub-account and attempted to transfer funds to the account after it had been closed. This attempted transfer does not support an inference that RFIN was acting on its mistaken information that Wolas was not engaging in fraud. For all Chemical knew, assuming Chemical knew of the scheme at all, RFIN was a cohort of Wolas, not a potential defrauded investor. Accordingly, RFIN has not stated claim for fraudulent concealment. [FN5]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-04622-DLI-RML   Document 18-6   Filed 12/19/05   Page 6 of 10 PageID #: 391

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

> FN5. RFIN's fraudulent concealment claim also fails due to the absence of proximate cause. *See supra.*

3. *Intent to Defraud Under Rule 9(b)*

Lastly, RFIN's fraud claim must also be dismissed for the failure to plead Chemical's intent to defraud with the requisite particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides, in pertinent part, that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The rule is designed to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." Acito v. Imcera Group, Inc., 47 F.3d 47, 52 (2d Cir.1995) (quoting O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir.1991)) (internal quotation marks omitted). Allegations of fraud, therefore, must be specific enough to provide a defendant with "a reasonable opportunity to answer the complaint and ... adequate information to frame a response." Ross v. A.H. Robins Co., 607 F.2d 545, 557-58 (2d Cir.1979).

**\*7** Four essential requirements comprise Rule 9(b). A plaintiff must (i) " 'specify the statements that the plaintiff contends were fraudulent" '; (ii) " 'identify the speaker" '; (iii) " 'state where and when the statements were made" '; and (iv) " 'explain why the statements were fraudulent." ' Acito, 47 F.3d at 51 (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)). Although a plaintiff need not plead detailed evidentiary matters, *see* Credit & Fin. Corp. v. Warner & Swasey Co., 638 F.2d 563, 566 (2d Cir.1981), it must plead "facts that give rise to a strong inference of fraudulent intent," *see* Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994). This inference may be established either (i) "by alleging facts to show that defendants had both motive and opportunity to commit fraud," or (ii) "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

RFIN concedes that it does not rely on evidence of motive and opportunity to commit fraud to satisfy its burden under Rule 9(b). Accordingly, I will restrict my analysis to whether RFIN's allegations establish circumstantial evidence of recklessness to give rise to the requisite inference of fraudulent intent.

Recklessness is established by conduct which is " 'highly unreasonable and which represents an extreme departure from the standard of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." ' *Chill v. General Elec. Co.,* 101 F.3d 263, 269 (2d Cir.1996) (quoting *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.1978)) (alteration in *Rolf* ). In some instances, an inference of recklessness may be raised by " '[a]n egregious refusal to see the obvious, or to investigate the doubtful." ' *Id.* (quoting *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.Supp. 256, 259 (S.D.N.Y.1989)). Nonetheless, the plaintiff bears a "significant burden ... in stating a fraud claim based on recklessness." *Id.* at 270.

Here, RFIN has failed to allege facts that constitute strong circumstantial evidence of recklessness. First, in March 1995, when the accounts were opened, Chemical had no actual knowledge that Dolan and Wolas had previously engaged in fraudulent activity. Rather, Chemical's officer, Bruce Whitcomb, had been "suspicious" of fraud in 1994, and had referred the matter to the fraud unit, which had concluded that it was "probably an advance fee scam." (Compl.¶ 112.) Likewise, neither the anonymous report to Chemical's Assistant General Counsel, Mark Segall, that Wolas had fraudulently overbilled Chemical's predecessor on a litigation matter nor the allegation that Chemical closed down a Wolas family business account due to a bounced check (both of which occurred in 1994) establishes that Chemical knew Wolas was engaged in fraud in 1995. (*See* Com pl. ¶¶ 113-14.) Thus, these allegations do not give rise to any inference of Chemical's fraudulent intent.

**\*8** Second, the allegations that Chemical's branch officer, Kevin O'Dea, approved various internal transfers between the SEV account and the sub-account, (*see* Compl. ¶¶ 119-20), similarly do not satisfy Rule 9(b)'s requirement. *See Williams v. Bank Leumi Trust Co.,* No. 96 Civ.

**Westlaw.**

Not Reported in F.Supp.2d                                                                                                           Page 7
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

6695(LMM), 1997 WL 289865, at *3 (S.D.N.Y. May 30, 1997) (mere transfer of funds between accounts was insufficient to raise inference of knowledge of check-kiting scheme to satisfy Rule 9(b) or Rule 12(b)(6) for claim of fraudulent concealment).

Third, as soon as Chemical's fraud investigative unit alerted O'Dea of the prior suspected advance fee scam and urged that Chemical shut down the accounts, O'Dea notified Dolan that the SEV account and the Wolas sub-account would be closed in one month. (*See* Compl. ¶¶ 117-18.) Although Chemical may have shown greater vigilance by closing the accounts immediately, rather than continuing to approve transfers and bank checks until the accounts were closed one month later, this failing does not establish recklessness sufficient to raise a strong inference of Chemical's intent to defraud RFIN. See Chill, 101 F.3d at 269; *see also* Renner, 2000 WL 781081, at *14 (bank's failure to detect fraud sooner insufficient to satisfy Rule 9(b) burden of pleading fraudulent intent for aiding and abetting fraud claim); Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., No. 98 Civ. 4960(MBM), 1999 WL 558141, at * 7-*8 (S.D.N.Y. July 30, 1999) (bank's negligent failure to investigate several red flags and to prevent additional wire transfers after second fraudulent transfer uncovered by transferring bank did not give rise to strong inference of fraudulent intent to satisfy Rule 9(b) for claims of commercial bad faith and aiding and abetting fraud).

Finally, in light of the aforementioned case law concerning the confidential nature of bank customer information, Chemical's failure to provide information to RFIN about Wolas's sub-account beyond the representation that it was in good standing cannot give rise to an inference of an intent to defraud.

In sum, RFIN has failed its significant pleading burden. Its allegations do not raise any inference, let alone a strong inference, of an intent to defraud. Accordingly, RFIN's fraud and fraudulent concealment claims must be dismissed.

C. *Aiding and Abetting Fraud*

To establish a claim of aiding and abetting fraud under New York law, a plaintiff must establish (i) the existence of a violation by the primary wrongdoer; (ii) knowledge of this violation by the aider and abettor; and (iii) proof that the aider and abettor substantially assisted in the primary wrong. *See* Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir.1983). Chase contends, and I agree, that RFIN and DOIT have failed to allege either Chemical's knowledge of Wolas's fraud or that Chemical substantially assisted in the commission of the fraud.

1. *Actual Knowledge*

New York law requires a plaintiff to establish that the alleged aider and abettor had " 'actual knowledge" ' of the primary wrong. Renner, 2000 WL 781081, at *6 (quoting Kolbeck v. LIT Am., Inc ., 939 F.Supp. 240, 246 (S.D.N.Y.1996)); *see also* Wight v. Bankamerica Corp., 219 F.3d 79, 91 (2d Cir.2000) (stating that "knowledge of the underlying wrong" is "required element" under New York law).

**\*9** Here, the plaintiffs have failed to allege that Chemical had actual knowledge of Wolas's fraud. As explained *supra,* the allegations that Chemical suspected that Dolan and SEV were running an advance fee scam in 1994, (*see* Compl. ¶ 112), that Wolas allegedly overbilled Chemical's predecessor in connection with litigation, (*see id.* ¶ 113), and that Chemical shut down a Wolas family account in 1994 due to a bounced check, (*see id.* ¶ 114), do not establish that Chemical had actual knowledge of Wolas's fraudulent scheme in 1995.

Turning to the allegations in 1995, O'Dea requested Chemical's fraud investigation unit to review the SEV account and the Wolas sub-account based on suspicions--not actual knowledge--of fraudulent activity. (*See id.* ¶ 115, 117.) Subsequently, upon receiving the recommendation of the fraud unit that the accounts be closed, O'Dea informed Dolan that Chemical would close the accounts in one month. (*See id.* ¶ 117-18.) Allegations that Chemical suspected fraudulent activity, however, do not raise an inference of actual knowledge of Wolas's fraud. [FN6]

> FN6. This case is closely analogous to Judge Haight's opinion in Renner, 2000 WL 781081. In

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 8
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

that case, the plaintiff alleged that Chase aided and abetted a prime bank guarantee scam. The allegation of actual knowledge on the part of Chase was based on, *inter alia,* its officials' rejection of a letter of credit proposal based on their suspicion that the letters were potential vehicles for fraud. *See id.* at *12. The court rejected this argument, however, and concluded that there was "no factual basis for the assertion that Chase officials actually knew the fraud [they suspected] was, in fact, occurring." *Id.*

Finally, O'Dea's authorization of transfers between the SEV account and the sub-account, (*see id.* ¶ 119), and his approval of multiple wire transfers, (*see id.* ¶ 122), do not create an inference of knowledge of the scheme. In *Williams,* 1997 WL 289865, a statutory receiver for an insurance company brought an action for, *inter alia,* aiding and abetting fraud, and alleged that the defendant bank had actual knowledge of a check-kiting scheme where the bank had approved various bank transfers. *See id.* at *4. The court rejected this argument, concluding that the account transfers and other allegations established only constructive knowledge on the part of the bank, which is insufficient to state a claim for aiding and abetting fraud. *See id.* Similarly, in this case, the plaintiffs have failed to establish that Chemical had any actual knowledge of Wolas's fraud, and thus, their aiding and abetting fraud claim must be dismissed. [FN7]

> FN7. The plaintiffs' remaining allegations, that Chemical improperly permitted Dolan, a non-lawyer, to be a signatory on the Wolas's attorney escrow account, (*see* Compl. ¶ 116), that Chemical knew that a check drawn on the SEV account had been altered to reflect that it was issued from the Wolas sub-account, (*see id.* ¶ 120), and that Chemical knew that H & W did not maintain a firm escrow account at Chemical, (*see id.* ¶ 123), do not establish that Chemical knew of Wolas's fraud. These allegations only support a finding that Chemical had constructive notice of the fraud.

2. *Substantial Assistance*

The second element of an aiding and abetting fraud claim is substantial assistance. "A defendant provides substantial assistance only if it 'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." ' *Nigerian Nat'l,* 1999 WL 558141, at *8 (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 284 (2d Cir.1992)) (alteration in *Nigerian Nat'l* ).

Again, the plaintiffs have failed to allege that Chemical substantially assisted Wolas's fraud. The affirmative acts of opening the accounts, approving various transfers, and then closing the accounts on the basis of suspected fraud, without more, do not constitute substantial assistance. In *Williams,* the court considered whether the use of bank accounts by the participants in the fraudulent scheme constituted substantial assistance by the bank in the participants' fraud. *See* 1997 WL 289865, at *4. Rejecting the claim, the court held that "the mere fact that all the participants in the alleged scheme used accounts at [the bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability." *Id.; see also Nigerian Nat'l,* 1999 WL 558141, at *8 (bank's execution of repeated wire transfers for millions of dollars did not constitute substantial assistance for an aiding and abetting fraud claim); *Renner,* 2000 WL 781081, at *12 (Chase did not give substantial assistance to participants of prime bank guarantee scam simply because participants used accounts at Chase).

*10 Turning to the plaintiffs' allegations of Chemical's inaction, *e.g.,* failing to shut down the accounts sooner or to inform the plaintiffs about the suspected fraud, these omissions likewise do not rise to the level of substantial assistance. As previously stated, a defendant may provide substantial assistance by failing to act only when it was required to act. *See Nigerian Nat'l,* 1999 WL 558141, at *8. Absent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance warranting aider and abettor liability. *See King v. George Schonberg & Co.,* 650 N .Y.S.2d 107, 108 (1st Dep't 1996); *see also Renner,* 2000 WL 781081, at *12 ("[A]bsent a fiduciary duty, inaction does not constitute substantial assistance."). Here,

Not Reported in F.Supp.2d                                                                                                          Page 9
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

the plaintiffs and Chemical do not have a fiduciary relationship. The relationship between a bank and its depositor is not a fiduciary one, but only that of a debtor and creditor. See *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 122 (2d Cir.1984). Thus, RFIN or RFIN's Chairman, who had an account at Chemical's Private Banking Group, did not have a fiduciary relationship with Chemical. DOIT is not even a client of Chemical. Moreover, even assuming that RFIN had a confidential relationship with Chemical by virtue of its status as a customer, *see id.* at 123 ("[A] bank should keep its own customers' affairs confidential." (citing *Graney Dev. Corp. v. Taksen,* 400 N.Y.S.2d 717, 719 (Sup.Ct.), *aff'd,* 411 N.Y.S.2d 756 (4th Dep't 1978))), Chemical was under no obligation to disclose confidential information about Wolas, another customer. The plaintiffs, therefore, have failed to establish that Chemical substantially assisted in Wolas's fraud. Accordingly, their aiding and abetting fraud claim must be dismissed.

D. *Commercial Bad Faith*

A claim for commercial bad faith against a depository bank will lie if the "bank acts dishonestly--where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in the fraudulent scheme." *Prudential-Bache Sec., Inc. v. Citibank, N.A.,* 73 N.Y.2d 263, 275 (1989). Thus, "knowledge of the underlying wrong" is a "required element" of commercial bad faith under New York law. *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000).

As I have already concluded that the complaint fails adequately to allege that Chemical had actual knowledge of Wolas's fraud, the plaintiffs' claim for commercial bad faith must also be dismissed. At most, the plaintiffs have alleged that Chemical negligently failed to monitor the accounts adequately and close them promptly. However, pleading " 'merely a lapse of wary vigilance or even suspicious circumstances which might well have induced a prudent banker to investigate' " is insufficient to state a claim of commercial bad faith. *Renner,* 2000 WL 781081, at *17 (quoting *Prudential-Bache,* 73 N.Y.2d at 275); *see also Nigerian Nat'l,* 1999 WL 558141, at *8 (bank's alleged failure to investigate "red flags" and negligent approval of additional wire transfers, even after bank was alerted to fraudulent transfer, insufficient to state commercial bad faith claim).

*11 The plaintiffs' reliance on *Prudential-Bache,* 73 N.Y. 263, and *Peck v. Chase Manhattan Bank, N.A.,* 593 N.Y.S. 509 (1st Dep't 1993), to support their contention that Chemical had actual knowledge of Wolas's fraud is unpersuasive. Indeed, these cases support Chase's position. In *Prudential-Bache,* two bank officers were convicted of accepting bribes in connection with participation in a fraudulent scheme. The bank officers set up accounts without proper opening records and corporate resolutions, and with fictitious corporate officers, and also agreed not to prepare certain records required to be filed with the Internal Revenue Service. See 73 N.Y.2d at 267. To implement the embezzlement scheme, one of the co-conspirators cashed several checks on a single day and often left the branch with large quantities of cash or cashiers' checks. Furthermore, other bank employees, including managers, were also allegedly aware of the fraud due to a co-conspirator's frequent visits to the bank, his repeated large cash withdrawals at teller windows, and his conversations with other bank employees. See *id.* at 268. Although the bank argued that the conduct of its agents, the convicted officers, could not be imputed to it under the adverse agent doctrine, the New York Court of Appeals declined to decide that issue and held that the plaintiff had stated a commercial bad faith claim against the bank. See *id.* at 276-77. In *Peck,* the plaintiff alleged that an internal bank memorandum reflected that bank employees actually knew that checks payable to third parties were being deposited into the thief's account, but no action was taken. 593 N.Y.S.2d at 511. The trial court granted the bank's motion to dismiss, but the Appellate Division reversed, holding that the allegations of actual knowledge adequately stated a claim for commercial bad faith. *See id.*

Here, the plaintiffs' allegations fall short of these cases, which involved either active participation in the fraud by bank officials or actual knowledge on their part of the ongoing fraud, as they have failed to allege either on the part of Chemical. Accordingly, their commercial bad faith claim must be dismissed.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)  
**(Cite as: 2000 WL 1375265 (E.D.N.Y.))**

Page 10

E. *Leave to Amend*

The plaintiffs argue, in the alternative, that if I grant Chase's motion I should give them leave to replead. I decline to do so.

A district court may deny leave to amend a complaint if the amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). As the plaintiffs drafted their complaint well after discovery had been taken in a related case, *see Accousti v. Wolas,* 95-CV-5267 (JG) (E.D.N.Y. filed Dec. 20, 1995), an opportunity to amend would be futile. See Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir.1982) (denial of leave to amend not abuse of discretion where plaintiff had "access to full discovery" in a related case).

CONCLUSION

For the aforementioned reasons, Chase's motion to dismiss is granted.

**\*12** So Ordered.

Not Reported in F.Supp.2d, 2000 WL 1375265 (E.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:99cv05938 (Docket) (Sep. 24, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.