Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 2003 WL 470611 (S.D.N.Y.), Comm. Fut. L. Rep. P 29,406
**(Cite as: 2003 WL 470611 (S.D.N.Y.))**

C

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
Christos TZARAS, Plaintiff,
v.
EVERGREEN INTERNATIONAL SPOT TRADING,
INC., a/k/a Evergreen International
Trading, Inc., First Equity Enterprises, Inc., Andrei
Koudachev, Gary Farberov,
Polina Sirotina, Justin C. Fauci, Ryan Swanson, Peter J.
Papaemanuel, Gary
Gelman, Forex Intrnational, Ltd., Chase Manhattan Bank,
N.A., and John Does
Nos. 1-100, Defendants.
**No. 01 Civ. 10726(LAP).**

Feb. 25, 2003.

Investor who had invested $1.7 million in a spot trading company filed amended complaint against the company and others, including the bank in which the trading company pooled the investor's money, and alleged that the bank violated provisions of the New York Uniform Commercial Code (UCC) relating to misdescription of beneficiary and was negligent under New York Law. On bank's motion to dismiss the amended complaint, the District Court, Preska, J., held that: (1) bank had properly credited money to beneficiary's account as mentioned in the wire transfer and there was no "misdescription of beneficiary," and (2) bank owed no duty of care to investor who was not customer of bank.

Motion to dismiss granted.

West Headnotes

**[1] Banks and Banking** 188.5
52k188.5 Most Cited Cases
Payment orders did not contain misdescription of beneficiary so as to trigger provision of New York Uniform Commercial Code (UCC) requiring bank to refuse acceptance of payment order, despite wire transfer instructions for further credit to bogus sub-accounts, where payment orders also identified one proper account name and number at bank, thus indicating identifiable beneficiary. McKinney's Uniform Commercial Code § 4-A-207.

**[2] Banks and Banking** 100
52k100 Most Cited Cases

**[2] Banks and Banking** 188.5
52k188.5 Most Cited Cases
Bank that accepted wire transfers from non-customer for deposit into customer's account and that ignored non-customer's additional wire transfer instructions to credit funds to sub-accounts with the words "for further credit," owed no duty of care to non-customer and no duty to prevent its customer from defrauding non-customer, which thus precluded non-customer's negligence claim under New York law.

*MEMORANDUM AND ORDER*

PRESKA, J.

**\*1** Plaintiff Christos Tzaras ("Tzaras") brings this amended complaint ("Complaint" or "Compl.") against defendants Evergreen International Spot Trading, Inc., a/k/a Evergreen International Trading, Inc., First Equity Enterprises, Inc., Andrei Koudachev, Gary Farberov, Polina Sirotina, Justin C. Fauci, Ryan Swanson, Peter J. Papaemanuel, Gary Gelman, Forex International, Ltd., Chase Manhattan Bank, N.A., and John Does Nos. 1-100 for damages arising out of Tzaras' investment of over $1.7 million in foreign currency exchange transactions on the "spot market." (Compl.¶ 1). Counts Seven and Nine of the Complaint charge Chase Manhattan Bank, N.A. (now known as JP Morgan Chase Bank, hereafter referred to as "Chase") with violations of N.Y.U.C.C. § 4-A-207 and with common law negligence, respectively. [FN1] (Compl.¶¶ 100-106, 112-118). Chase now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Counts Seven and Nine, the only counts in which it is named as a defendant, for failure to state a claim upon which relief can be granted. For the reasons stated herein, Chase's motion is granted, and the claim is dismissed.

> FN1. Count Eight of plaintiff's Complaint also charged Chase with violation of N.Y.U.C.C. §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-04622-DLI-RML   Document 18-7   Filed 12/19/05   Page 2 of 6 PageID #: 397

Not Reported in F.Supp.2d																																				Page 2
Not Reported in F.Supp.2d, 2003 WL 470611 (S.D.N.Y.), Comm. Fut. L. Rep. P 29,406
**(Cite as: 2003 WL 470611 (S.D.N.Y.))**

4-A-303. (Compl.¶¶ 107-111). However, plaintiff withdrew this charge in his May 22, 2002 Memorandum of Law in Opposition to Defendant JP Morgan Chase Bank's Motion to Dismiss ("Pl's Opp. Br."). (Pl's Opp. Br. at 2, fn. 1).

BACKGROUND

The pertinent facts with regard to this motion, as alleged by plaintiff, are as follows. From June 1999 through and including September 2001, plaintiff Christos Tzaras, a Greek shipping executive, invested more than $1.7 million with defendant Evergreen International Spot Trading, Inc. ("Evergreen"), a company that claimed to be engaged in foreign currency exchange transactions on the "spot market," a forum for currency trading in which foreign currency is purchased for immediate (as compared to future) delivery. (Compl.¶¶ 1, 18).

Tzaras first learned of Evergreen in or about May 1999, when he began receiving unsolicited telephone calls from Justin C. Fauci and Ryan Swanson, two employees of Evergreen, at his home in Monaco. (Compl.¶ 27). During the course of these conversations, which continued through June 1999, Fauci and Swanson represented to Tzaras that Evergreen was a large, well-established company with a highly successful track record of currency trading on the spot market; that Evergreen was, at the time of those conversations, actively managing over $200 million in investor assets; that Evergreen "guaranteed" a return on investment of between 20-30% per year; that none of the monies invested with Evergreen would be used for currency trading but rather would be used solely as collateral for certain loans that Evergreen would later secure; that the monies sent to Evergreen would be pooled with other monies and that the gains, commissions and clearing expenses associated with Evergreen's trades would be apportioned pro rata to each investor's account; and that although Tzaras' investment would be placed in a bank account maintained by First Equity at Chase, these monies would be immediately segregated into separate sub-accounts that bore his name. (Compl.¶ 27). These representations were later confirmed in correspondence sent by Evergreen, including letters to Tzaras dated June 2, 1999, May 19, 2000, and July 25, 2000.(Id.). As the complaint alleges, such representations were particularly important to Tzaras since, as Fauci and Swanson explained, Chase's role as a depository bank was intended to provide potential investors with "peace of mind." (Id.).

**\*2** Based upon and in reliance on the above-mentioned representations, Tzaras agreed to allow Evergreen to act as his currency trader and fiduciary. (Compl.¶ 28). Thereafter, Evergreen purported to create two sub-accounts for Tzaras at Chase: the first, which bore Account No. 62643, was to hold Tzaras' investments in United States dollars; the second, which bore Account No. 64128, was to hold Tzaras' investments in Euros. (Id.).

From June 1999 through May 2001, Tzaras caused approximately $1.7 million of his monies to be wired to the two above-referenced accounts at Chase. (Compl.¶ 29). Tzaras transferred these monies using funds from one of three sources: from an account with Compagnie Monegasque de Banque, a Monaco-based bank; from an account with Credit Agricole, a Nice-based bank; or from a securities account maintained with Prudential Securities. (Compl.¶ 30). Following Evergreen's instructions, Tzaras made each transfer with the express direction that these monies were to be deposited in First Equity's account with Chase "for further credit to" Tzaras. (Id.). In many cases, these directions specifically identified Tzaras as having "Account No. 62643" or "Account No. 64128." (Id .). From June 1999 through September 2001, Tzaras made repeated inquiries of Evergreen employees into the status of his accounts, who assured him that his funds were securely held in his Chase sub-accounts and that his investments were performing well above expectations. (Compl.¶ 36, 37).

Following the events of September 11, 2001, Tzaras learned, through a series of press accounts and disclosures, that Evergreen was merely a sham entity created in order to facilitate the theft of investor assets. (Compl.¶ 38). As set forth in plaintiff's complaint, many of the monies stolen as part of the Evergreen scheme have been transferred to secret bank accounts in Switzerland and elsewhere. (Compl.¶ 39).

According to plaintiff's complaint, upon information and belief, in September 2000, Chase directed the closure of two bank accounts maintained in the name of Evergreen.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 3
Not Reported in F.Supp.2d, 2003 WL 470611 (S.D.N.Y.), Comm. Fut. L. Rep. P 29,406
**(Cite as: 2003 WL 470611 (S.D.N.Y.))**

(Compl.¶ 48). Again upon information and belief, plaintiff alleges that Chase took this action because, among other things, it was concerned about certain suspicious transactions in these accounts, the same kind of transactions that were also taking place in First Equity's account. (Id.). As plaintiff alleges, "Notwithstanding its knowledge of the activities in the Evergreen accounts, Chase took no such similar action with respect to First Equity's account. Under the 'Know Your Customer' procedures and suspicious activity reporting requirements implemented in the Bank Secrecy Act ... Chase was required to monitor and report such suspicious activities." (Compl.¶ 49).

On November 28, 2001, plaintiff filed an original complaint. On December 20, 2001, plaintiff filed an amended complaint, which is the subject of the instant motion. In Count Seven of that Complaint, plaintiff alleges that Chase knew that the sub-accounts in Tzaras' name never existed. (Compl.¶ 103). According to plaintiff, Chase also knew that a conflict existed between Tzaras' wire transfer instructions, which made specific reference to such sub-accounts, and the actual accounts in existence at Chase during this period. (Id.). Therefore, plaintiff asserts in Count Seven, Chase violated N.Y.U.C.C. § 4-A-207, which requires a banking institution to refuse acceptance of payment orders where the person or account to whom a payment is to be credited is either nonexistent or unidentifiable, by accepting the payments that Tzaras made to First Equity's accounts at Chase. (Compl.¶¶ 104, 105).

**\*3** In Count Nine of the Complaint, plaintiff alleges a claim for common law negligence against Chase for breaching its duty to exercise ordinary and reasonable care. (Compl.¶¶ 113, 115). According to plaintiff, Chase was negligent in accepting wire transfers when precluded from doing so under § 4-A-207 and in ignoring suspicious activities taking place in First Equity's account. (Id.). Chase's failure to detect these activities, plaintiff contends, enabled other of the named defendants in this case to undertake their acts of conversion and theft. (Compl.¶ 116).

On March 8, 2002, Chase moved to dismiss Counts Seven, Eight and Nine of the Complaint pursuant to Rule 12(b)(6). [FN2] Chase asserts that Count Seven should be dismissed because Chase properly credited the bank account of First Equity, whose account number appeared on the wire instructions as the beneficiary, and that any additional notation information that plaintiff included is simply extraneous as to Chase's legal obligations. (Memorandum of Law in Support of JPMorgan Chase Bank's Motion to Dismiss Plaintiff's Amended Complaint, cited herein as "Def's Br.," at 2). Furthermore, Chase moves to dismiss Count Nine because: (a) the bank does not owe a duty of care to non-customers; (b) N.Y.U.C.C. Article 4A cannot be circumvented by alleging negligence claims; and (c) any obligation which Chase may have had relative to First Equity's account under applicable banking law governing a bank's duty to report "suspicious transactions" is not actionable by private parties. (Def's Br. at 3).

> FN2. As noted above, the motion to dismiss Count Eight is now moot in light of plaintiff's withdrawal of that claim in plaintiff's Opposition Brief. See n. 1, supra.

DISCUSSION

I. Standard for Rule 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), I must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. *See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); Miree v. DeKalb County, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)* (referring to "well-pleaded allegations"); *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993)*. In order to avoid dismissal, plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y.2000)* (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a][b] (3d ed.1997)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)*; accord *Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir.1994)*.

II. Motion to Dismiss the N.Y.U.C.C. § 4-A-207 Claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 4
Not Reported in F.Supp.2d, 2003 WL 470611 (S.D.N.Y.), Comm. Fut. L. Rep. P 29,406
**(Cite as: 2003 WL 470611 (S.D.N.Y.))**

[1] In its motion to dismiss, Chase asserts that the Complaint fails to state a claim under N.Y.U.C.C. § 4-A-207 because, among other reasons, there was no "Misdescription of Beneficiary" to trigger the provisions of Article 4A. Whereas plaintiff claims that the wire transfer instructions of "for further credit" to his "sub-accounts" at Chase rendered the beneficiary unidentifiable or non-existent under § 4-A-207, Chase contends that because plaintiff's wire instructions clearly identified an account number at Chase and properly named First Equity as the beneficiary, the provisions of § 4-A-207 do not apply. (Def's Br. at 12; Pl's Opp. Br. at 6). According to Chase, since Tzaras' payment orders set forth First Equity's account number as well as the correct title associated with that account number, any other information provided by Tzaras was mere surplusage and is irrelevant to the issue of Chase's liability.

**\*4** N.Y.U.C.C. § 4-A-207(1) (entitled "Misdescription of Beneficiary") provides:
> Subject to subsection (2), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.

Subsection (2) then addresses instances where the beneficiary's name and account number do not match but, under certain conditions, the funds transfer can still go forward based on the beneficiary's account number alone. [FN3]

> FN3. N.Y.U.C.C. § 4-A-207(2)(a) provides, in pertinent part:
> "... [I]f the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person."
> Subsection (2) does not, however, apply in the instant case, because that subsection applies only when a beneficiary's bank identifies the beneficiary both by name and account number but the name and number refer to *different* persons. Here, the name and account number refer to the same entity--First Equity. Moreover, subsection (2) modifies situations where subsection (1) applies. As this Court now holds, the provisions of subsection (1) are inapplicable to the instant case.

Chase asserts that because Tzaras' payment orders provided First Equity's account number and title of the account, the electronic processing system that Chase uses to process funds transfers properly credited First Equity's accounts as a matter of law, regardless of the further information that Tzaras provided in his orders. Plaintiff, quite obviously, disagrees, insisting that the "for further credit" instructions bring the instant case under the "or other identification" clause of § 4-A-207(1), thereby rendering the beneficiary misdescribed as defined under § 4-A-207(1).

In *Donmar Enters., Inc. v. Southern Nat'l Bank of North Carolina*, 828 F.Supp. 1230, 1239-40 (W.D.N.C.1993), the court found that § 4-A-207 "straightforwardly requires banks to reject funds transfers received through the FedWire system which do not come to them bearing at least one identifiable beneficiary." The *Donmar* court, in finding that the beneficiary in question was clearly identified, declared:
> The Court finds that § 4A-207 only requires a bank to refuse a payment order when the beneficiary is unidentifiable. A beneficiary can be identified in any number of ways including the plain wording of the transfer order or the circumstances of the transfer.... There was admittedly at least one identifiable beneficiary, and since § 4A-207 requires no more, the Defendant was not required to refuse the transfer under § 4A-207.

*Id.* at 1240.

Here, plaintiff does not dispute that each of his nine wire transfer payment orders set forth the account number and name of First Equity. Instead, plaintiff maintains that the language of "for further credit to" Tzaras constitutes "other identification of the beneficiary" that refers to a non-existent or unidentifiable person or account. (Pl's Opp. Br. at 6). Plaintiff focuses on the disjunctive "or" in the language of § 4-A-207(1), arguing that if even one of the methods of identification (account number, account name, or "other identification of the beneficiary") refers to a non-existent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 5
Not Reported in F.Supp.2d, 2003 WL 470611 (S.D.N.Y.), Comm. Fut. L. Rep. P 29,406
**(Cite as: 2003 WL 470611 (S.D.N.Y.))**

account, § 4-A-207(1) applies. (Pl's Opp. Br. at 8-10). Plaintiff cites to the Hawkland treatise, in which the author warns that despite the likely intention of the drafters to the contrary, § 4-A-207(1) might apply even where a beneficiary's name and account number are the same but "other identification" is different. 6A Hawkland UCC Series § 4A-207:1 (2001).

**\*5** In *New South Fed. Sav. Bank v. Flatbush Fed. Savs. & Loan Ass'n,* 01 Civ. 9024, 2002 U.S. Dist. LEXIS 20512, at \*6 (S.D.N.Y. Oct. 25, 2002), Magistrate Judge Eaton, addressing § 4-A-207(1), noted that the main purpose of the Hawkland treatise is to caution senders of payment orders to avoid including two names in order to avoid the possibility of confusion under Article 4A. Judge Eaton then proceeded to adopt instead the reasoning of Judge Potter in *Donmar,* finding that because there was admittedly one identifiable beneficiary, the requirements of § 4-A-207(1) are met, and there is no "misdescription of beneficiary." *New South,* 2002 U.S. Dist. LEXIS 20512, at \*5- 6.

Like Judge Eaton, I adopt the analysis of Judge Potter in *Donmar.* [FN4] Section 4-A-207(1) requires that there be at least one identifiable beneficiary. *See also* N.Y.U.C.C. § 4-A-207 Official Comment 1. Here, the name and the account number referred to First Equity. Therefore, I find that there was an identifiable beneficiary, that § 4-A-207(1) requires no more, that there was no "misdescription of beneficiary," and that Chase was not required to refuse plaintiff's transfer under § 4-A-207(1). Accordingly, Chase's motion to dismiss Count Seven of the Complaint is hereby GRANTED.

> FN4. Even were I not persuaded by Judge Potter's analysis, I would find that the "for further credit" language included in plaintiff's wire transfers was legally insufficient to constitute "other identification of the beneficiary" under § 4-A-207(1). Construing the pleadings in the light most favorable to plaintiff, which I am required to do on a motion to dismiss, the language of "for further credit" to Tzaras' bogus account number does not serve to identify the beneficiary. Rather, it serves to instruct the beneficiary--First Equity--how to allocate the funds among its various "subaccounts." Section 4-A-103(b) defines the beneficiary as "the person to be paid by the beneficiary's bank [here, Chase]." The "beneficiary" here, as defined by § 4-A-103(b), was First Equity, because First Equity's account would, at the very least, initially receive the funds from plaintiff's wire transfer. If plaintiff's analysis were accepted, a beneficiary would never be able to include any internal information, i.e., information recognizable to the beneficiary's internal systems but not to the receiving bank, without risking non-completion of the transfer.

III. Motion to Dismiss the Negligence Claim

[2] In its motion to dismiss, Chase also asserts that Tzaras has failed to state a claim under New York common law for negligence because Chase owed Tzaras, a non-customer, no duty of care, because Article 4A preempts the field of misdirected wire transfers and because Chase's duty to report suspicious activities does not give rise to a private cause of action. (Def's Br. at 18; Pl's Opp. Br. at 17).

To establish a prima facie case of negligence under New York law, plaintiff here must establish "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir.1998).

As an initial matter, the issue of whether, under New York common law, a duty of care is owed to plaintiff is a question of law that is properly before this Court on a motion to dismiss. *See* Purdy v. Public Adm'r of Westchester, 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513, 526 N.E.2d 4 (1988) ("whether a member or group owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts"). In the instant case, Tzaras maintains that by accepting the wire transfers to First Equity's account, Chase breached its duty to Tzaras to exercise ordinary and reasonable care. (Compl.¶ 113). Chase, in turn, counters by arguing that a bank does not owe a duty of care to a non-customer. (Def's Br. at 17).

On the issue of a bank's duty of care to non-customers, I

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                           Page 6
Not Reported in F.Supp.2d, 2003 WL 470611 (S.D.N.Y.), Comm. Fut. L. Rep. P 29,406
**(Cite as: 2003 WL 470611 (S.D.N.Y.))**

find the opinion in *Renner v. Chase Manhattan Bank,* 98 Civ. 926(CSH), 1999 U.S. Dist. LEXIS 978 (S.D.N.Y. Feb. 3, 1999), instructive. In *Renner,* the plaintiff sued Chase for, among other claims, negligence under New York common law arising out of Chase's failure to prevent Chase's customer, Townsend, from defrauding the plaintiff. *Id.* at \*40. In dismissing the negligence claim against Chase, Judge Haight declared:

> **\*6** Plaintiff's negligence claim against Chase fails because Chase did not owe plaintiff a cognizable duty of care. Whatever duty of care banks owe to their customers, Renner was not a customer of Chase. The Chase customer involved in this case was the Townsend fund, into which Chase ... paid Renner's funds when they were received through Renner's Swiss Bank.
>
> These circumstances reduce Renner to the necessity of arguing that Chase owed him a duty to prevent Chase's customer, Townsend, from defrauding Renner. But it is well settled that a bank owes no such duty to a non-customer third-party.

*Id.* at \*39-40 (internal citations omitted).

The facts in the instant case are similar to those in *Renner.* Here, Tzaras contends that Chase owed him a duty to prevent First Equity from defrauding him. However, like in *Renner,* and as Tzaras concedes, Tzaras was not a customer of Chase. Chase's involvement extended only insofar as it allowed the wire transfer from Tzaras to First Equity, Chase's customer, to be completed. Therefore, I reach the same conclusion here that Judge Haight did in *Renner* that, under New York common law, Chase owed no duty of care to Tzaras. *Id.* at \*39-40; *see also* Guidry v. Bank of LaPlace, 740 F.Supp. 1208, 1218-19 (E.D.La.1990) (as a matter of law, bank owes no duty of care to non-customer defrauded by bank customer); Century Bus. Credit Corp. v. North Fork Bank, 246 A.D.2d 395, 396, 668 N.Y.S.2d 18, 19 (1st Dept.1998) ("to hold that banks owe a duty to their depositors' creditors to monitor the depositors' financial activities ... would be to unreasonably expand banks' orbit of duty"); *Johnson v. Chase Manhattan Bank,* 98 Civ. 8173(RMB)(RLE), 2000 U.S. Dist. LEXIS 5587, at \*15 (S.D.N.Y. April 27, 2000) ("The general rule is that a bank does not owe a duty to a non-customer third-party.").

Plaintiff, in his opposition papers, attempts to manufacture a fiduciary duty arising out of Chase's alleged knowledge that the funds were to be deposited in the sub-account referenced in the "for further credit" language. However, there is no authority to support the assertion that "for further credit" language suffices to create a fiduciary duty, and I decline to adopt such a broad reading of fiduciary duty as would encompass the activities alleged by Tzaras here. Moreover, even were I to find that a fiduciary account existed, "[a]s a general rule, a bank has no duty to monitor even a fiduciary account under New York law." *Renner,* 1999 U.S. Dist. LEXIS 978, at \*41.

Because Chase owed no duty of care to plaintiff, plaintiff cannot, as a matter of New York common law, make out a cognizable claim for negligence. Even if all of the facts that plaintiff alleges were proved at trial, plaintiff would still fail to make out an essential element of negligence required under New York law. Accordingly, Chase's motion to dismiss Count Nine of the Complaint is also GRANTED. [FN5]

> FN5. Because Chase has prevailed on its motion to dismiss Count Nine on the duty of care issue, I do not address the alternative grounds argued by Chase on Count Nine, *viz.,* field preemption under Article 4A and the unavailability of a private cause of action under "suspicious activity" reporting requirements.

### CONCLUSION

**\*7** Chase's motion to dismiss Counts Seven and Nine of the Amended Complaint without leave to amend (Docket no. 12) is GRANTED.

SO ORDERED:

Not Reported in F.Supp.2d, 2003 WL 470611 (S.D.N.Y.), Comm. Fut. L. Rep. P 29,406

**Motions, Pleadings and Filings (Back to top)**

• 1:01cv10726 (Docket) (Nov. 28, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.