Not Reported in F.Supp.  Page 1
Not Reported in F.Supp., 1997 WL 289865 (S.D.N.Y.)
**(Cite as: 1997 WL 289865 (S.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Donna Lee H. WILLIAMS, Insurance Commissioner for the State of Delaware as
Receiver for National Heritage Life Insurance Company, a company in
Liquidation, Plaintiff,
v.
BANK LEUMI TRUST COMPANY of NEW YORK, a
New York Commercial Bank and Trust
Company; and Mark Yackow, Individually, Defendants.
**No. 96 CIV. 6695(LMM).**

May 30, 1997.

*MEMORANDUM AND ORDER*
McKENNA, District Judge.

***1** Defendant Bank Leumi Trust Company of New York ("Bank Leumi") moves, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss plaintiff's complaint, which chronicles an alleged "check-kiting" scheme by third parties who utilized accounts at Bank Leumi to implement the scheme.

For the reasons set forth below, Bank Leumi's motion to dismiss as to Bank Leumi is granted. [FN1]

> FN1. Bank Leumi also moves for sanctions against plaintiff on the ground that she lacks evidentiary support for her allegations. Although the Court finds plaintiff's complaint inadequate, Bank Leumi's motion for sanctions is denied.

I. Factual Background

Plaintiff is the statutory receiver for National Heritage Life Insurance Co. ("NHL"). Due to NHL's insolvency, on May 25, 1994, the Delaware Chancery Court, on plaintiff's application, entered a Rehabilitation and Injunction Order, which directed plaintiff to take possession and control of NHL's property, assets, business and affairs. On November 21, 1995, a Liquidation and Injunction Order was entered replacing the Rehabilitation Order, which directed plaintiff to maintain possession and control of the property, assets, business and affairs of NHL. Plaintiff commenced this action on behalf of NHL and all of its creditors, including all of its policyholders.

According to the complaint, in May 1990, the Delaware Insurance Department expressed serious concern regarding the sufficiency of the statutory surplus of NHL, and advised it to raise additional capital. In response to these regulatory concerns, NHL and its parent company, LifeCo Investment Group Inc. ("LifeCo"), intensified efforts to obtain additional capital for NHL. Apparently as a result of these intensified efforts, on or about June 29, 1990, a company named Tri-Atlantic Holdings, Ltd. ("Tri-Atlantic") entered into a Stock Purchase Agreement, which would provide Tri-Atlantic with control of both LifeCo and NHL.

Tri-Atlantic and its unnamed principals engaged an attorney, Michael Blutrich, to assist it in obtaining a loan from Bank Leumi through co-defendant Mark Yackow for the purpose of fulfilling its $4 million obligation under the Stock Purchase Agreement. Shortly before the scheduled closing of the Stock Purchase Agreement, Bank Leumi refused to provide the loan.

On or about August 9, 1990, a bank account was opened in NHL's name by an unnamed individual at Bank Leumi's Centre Street Branch (the "Centre Street Branch"). The NHL account was to serve as the depository of the $4 million to be paid by Tri-Atlantic for the purchase of LifeCo stock pursuant to the Stock Purchase Agreement. On or about September 5, 1990, Tri-Atlantic and Blutrich caused a bank account in the name of Capital Comparisons, Inc. ("CCI") to be opened at the Centre Street Branch. On that date Tri-Atlantic and/or Blutrich caused $1 million to be deposited into the CCI account. On or about September 7, 1990, Blutrich caused a bank account in his name to be opened at the Centre Street Branch with a one hundred dollar deposit. Also on September 7, 1990, Tri-Atlantic and/or Blutrich caused $1 million to be transferred from the CCI account to the Blutrich account. Plaintiff alleges, upon information and belief, that Yackow assisted in the opening

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1997 WL 289865 (S.D.N.Y.)
**(Cite as: 1997 WL 289865 (S.D.N.Y.))**

of the NHL, the CCI, and the Blutrich accounts. (Compl.¶¶ 37, 41, 43.)

**\*2** On or about Friday, September 7, 1990, at approximately 5:30 p.m., Tri-Atlantic and Blutrich commenced the closing of the Stock Purchase Agreement. The complaint does not specify the other participants, if any, at the closing. At the closing, Blutrich and Tri-Atlantic tendered to LifeCo and NHL a check for $4 million drawn against the Blutrich account. At the time the check was presented, the Blutrich account had a balance of only $1,000,100.00. The check was tendered after business hours on Friday so that NHL could not deposit the check immediately because Blutrich and Tri-Atlantic knew the Blutrich account had insufficient funds to cover the check. Moreover, Blutrich and Tri-Atlantic did not want NHL to deposit the check before Tri-Atlantic assumed control of NHL. On September 7, 1990, immediately following the closing, Tri-Atlantic assumed control of LifeCo and NHL.

On or about September 10, 1990, as part of Tri-Atlantic and Blutrich's alleged scheme to embezzle money from NHL, Tri-Atlantic caused NHL to enter into an agreement with CCI which obligated NHL to pay CCI $3 million as a fiduciary deposit. On September 10, 1990, Tri-Atlantic and/or Blutrich, through the assistance and involvement of defendants, caused $2.5 million to be transferred from the NHL account to the CCI account, and then from the CCI account to the Blutrich account.

On September 11, 1990, Tri-Atlantic and/or Blutrich, through the assistance and involvement of defendants, caused $500,000 to be transferred from the NHL account to the CCI account, and then from the CCI account to the Blutrich account. On that same day, Bank Leumi, through Yackow, received from NHL the $4 million check given to NHL by Blutrich. Bank Leumi, through Yackow, was informed by NHL that the $4 million check was for Tri-Atlantic's purchase of LifeCo stock.

The result of the alleged scheme is clear. Tri-Atlantic allegedly purchased the LifeCo stock with $3 million of NHL's money.

Plaintiff alleges that at the time Bank Leumi, through Yackow, received the $4 million check, "they knew the transfers in the total amount of three million dollars ($3,000,000.00) had been made from the NHL Account ultimately to the Blutrich Account to cover the four million dollar ($4,000,000.00) check that Blutrich had tendered to NHL on September 7, 1990, against the Blutrich Account." (Compl.¶ 67.) Upon information and belief, plaintiff alleges that Bank Leumi, through Yackow, was instructed by Blutrich or Tri-Atlantic "to delay deposit of the four million dollar ($4,000,000.00) check into the NHL Account until the transfers required to accomplish the check-kite were complete." (Compl.¶ 68.) Also upon information and belief, plaintiff alleges that Bank Leumi and Yackow assisted Tri-Atlantic and Blutrich in order to generate substantial fees and commissions for Bank Leumi. (Compl.¶ 71.)

Plaintiff further alleges that defendants acted "intentionally, recklessly or carelessly in perpetrating or aiding and abetting Tri-Atlantic's scheme to defraud NHL out of three million dollars ($3,000,000.00) in order to wrongfully gain control over the affairs of NHL." (Compl.¶ 72.) Moreover, "absent Defendants' intentional, reckless or careless handling and monitoring of the CCI Account, Blutrich Account and NHL Account, Tri-Atlantic and Blutrich would have been unable to perpetrate their fraud and/or the Delaware Insurance Department and/or NHL would have been able to detect Tri-Atlantic's fraudulent scheme." (Compl.¶ 73.) As a direct and proximate result of defendants' allegedly wrongful conduct, NHL and its policyholders and other creditors have suffered millions of dollars in damages. (Compl.¶ 76.)

**\*3** Plaintiff asserts five causes of action against both defendants: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) commercial bad faith; (4) breach of fiduciary duty; and (5) common law fraud.

## II. Discussion
### A. Standard of Review

In deciding a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court views the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court must accept the factual allegations contained in the complaint as true.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1997 WL 289865 (S.D.N.Y.)
**(Cite as: 1997 WL 289865 (S.D.N.Y.))**

*Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). The motion will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that entitle her to relief. *Scheuer,* 416 U.S. at 236 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Under Rule 9(b) of the Federal Rules of Civil Procedure:
> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.Proc. 9. Rule 9(b) furthers three goals. It provides defendants with fair notice of plaintiff's claim to enable the preparation of a defense; it protects defendants from harm to their reputation and goodwill; and it reduces the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

### B. Common Law Fraud

To establish a claim for common law fraud under New York law, a plaintiff must show:
> (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995). Plaintiff does not allege any affirmative misrepresentation by Bank Leumi, but contends that Bank Leumi "fraudulently concealed the activity in the CCI, Blutrich and NHL Accounts which resulted in NHL losing three million dollars." (Compl.¶ 121.) Plaintiff claims that Bank Leumi had a duty to disclose based upon its superior knowledge relating to the account transfers. (P1.Mem.24.) A duty to disclose may arise where: "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe,* 57 F.3d at 155.

The allegations in the complaint fail to satisfy Rules 9(b) and 12(b)(6) for a number of reasons. First, the complaint fails to allege that Bank Leumi had knowledge of the check-kiting scheme with sufficient detail. The mere transfer of money between the NHL, CCI, and Blutrich accounts is insufficient to raise an inference of knowledge of the scheme. The fact that Yackow allegedly participated in all the money transfers adds a little weight to the allegation of knowledge, but these allegations are apparently made on information and belief only. "[A]llegations made on information and belief are insufficient unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief.' " *National Council of Young Israel v. Wolf,*--F.Supp.--, 1997 WL 227603, at *4 (S.D.N.Y.1997) (quoting *Spira v. Nick,* 876 F.Supp. 553, 557 (S.D.N.Y.1995)).

**\*4** The complaint does not clarify on what basis Bank Leumi or Yackow would have facts "peculiarly" within their knowledge, nor does the complaint state the factual basis for its allegations on information and belief. Also, even if Yackow participated in all the money transfers, this fact, without more, does not raise an inference that Bank Leumi had knowledge of Tri-Atlantic's alleged scheme.

Second, the complaint fails to allege that the information allegedly possessed by Bank Leumi was not readily available to NHL. Noticeably absent from the complaint are the names, with the exception of Blutrich, of any of the principle actors on behalf of NHL or Tri-Atlantic. Significantly, the allegations in the complaint do not preclude the conclusion that the unnamed principles of NHL were complicitous in the alleged scheme. Of course, this is not necessarily the case, but the complaint does not clarify who at NHL was allegedly defrauded.

Third, the complaint fails to allege who relied on Bank Leumi's alleged silence. The specific facts relating to the money transfers are vague. For example, the complaint alleges that Tri-Atlantic and/or Blutrich caused the transfers to occur. How did they cause it? Who provided Bank Leumi with the instructions to transfer money? How were those instructions conveyed and when? Did the individual providing the instructions have authority to provide them? These are facts that, at least on their face, would not seem to be peculiarly within Bank Leumi's knowledge and thus could not be alleged on information and belief.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1997 WL 289865 (S.D.N.Y.)
**(Cite as: 1997 WL 289865 (S.D.N.Y.))**

Additional questions raised by the vagueness of the complaint include, to whom at bank Leumi were the instructions to transfer money given? At what point in time was Bank Leumi aware of the scheme? How, other than the sequence of the money transfers, was Bank Leumi aware of the scheme? At the time Bank Leumi learned of the scheme or became, as plaintiff apparently claims, a participant in it, who should Bank Leumi have contacted? How would Bank Leumi have known to contact that person? [FN2] To the extent the answers to these questions can be and are based upon information and belief, what is the factual basis for plaintiff's belief?

> FN2. The Court notes that as the complaint now reads, the earliest Bank Leumi would have been aware of the scheme was on September 11, 1990, when it was presented with the $4 million check. At that time, however, Tri-Atlantic apparently already had control over NHL. Thus, it is unclear who was defrauded and who plaintiff claims Bank Leumi should have contacted.

In sum, the conclusory allegations of the complaint wholly fail to satisfy plaintiff's burden to allege the circumstances of the alleged fraud with particularity or to state a claim for fraud upon which relief can be granted.

C. Aiding and Abetting Claims

To establish aiding and abetting under New York law, plaintiff must show: (1) the existence of a violation by the primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. Morin v. Trupin, 711 F.Supp. 97, 112 (S.D.N.Y.1989) (citing elements in context of aiding and abetting breach of fiduciary duty) (quoting Samuel M. Feinberg Testamentary Trust v. Carter, 652 F.Supp. 1066, 1082 (S.D.N.Y.1987)); Moll v. U.S. Life Title Insurance Company of New York, 710 F.Supp. 476, 479 (S.D.N.Y.1989) (citing elements in context of aiding and abetting fraud). Assuming a primary violation on the part of the wrongdoer (either fraud or breach of fiduciary duty), plaintiff has failed to set forth facts sufficient to establish the second and third prongs of aider-and-abettor liability.

**\*5** New York courts require actual knowledge of the primary wrong by the alleged aider and abettor. Kolbeck v. LIT America, Inc., 939 F.Supp. 240, 246 (S.D.N.Y.1996). In some paragraphs of the complaint, plaintiff alleges that Bank Leumi "knew, or recklessly disregarded," or "knew or should have known" of the primary wrongdoing. (*See, e.g.,* Compl. ¶¶ 83, 95.) These disjunctive phrases are insufficient under the actual knowledge standard. Moreover, plaintiff's conclusory allegations that Bank Leumi was aware of the scheme, *see, e.g.,* Compl. ¶ 67, also fail to satisfy plaintiff's burden to plead actual knowledge. The only apparent basis for Bank Leumi's alleged knowledge of the check-kiting scheme was the sequence of the account transfers, and the contention that Bank Leumi was informed that the purpose of the $4 million check was for the purchase of LifeCo stock. At most, these facts raise the issue of constructive knowledge which is insufficient to state a claim for aiding and abetting. Kolbeck, 939 F.Supp. at 246.

As to the third prong, the mere fact that all the participants in the alleged scheme used accounts at Bank Leumi to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability. See DePinto v. Ashley Scott, Inc., 222 A.D.2d 288, 635 N.Y.S.2d 215, 217 (1st Dep't 1995).

Thus, plaintiff has failed to satisfy her pleading burden to establish aiding and abetting liability under Rule 12(b)(6). To the extent that plaintiff's aiding and abetting claims are premised on her allegations of fraudulent conduct--which appears to be the substance of all of plaintiff's claims-- plaintiff has also failed to satisfy her pleading burden under Rule 9(b). [FN3] See ABF Capital Mgt. v. Askin Capital Mgt., L.P., 957 F.Supp. 1308, 1328 (S.D.N.Y.1997) ("claim of aiding and abetting fraud must meet the pleading requirements of Rule 9(b)"); Frota v. Prudential-Bache Securities, Inc., 639 F.Supp. 1186, 1193 (S.D.N.Y.1986) (applying Rule 9(b) to breach of fiduciary duty claims based on allegations of fraudulent conduct).

> FN3. Plaintiff has also failed to allege a primary breach of fiduciary duty. The relationship between a bank and its depositor is usually not a fiduciary relationship, but that of debtor and creditor. Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-04622-DLI-RML   Document 18-8   Filed 12/19/05   Page 5 of 5 PageID #: 336

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1997 WL 289865 (S.D.N.Y.)
**(Cite as: 1997 WL 289865 (S.D.N.Y.))**

731 F.2d 112, 122 (2d Cir.1984). Plaintiff has not supplied any facts indicating that the relationship between Bank Leumi and NHL was anything but the usual debtor-creditor relationship. *See Scott v. Dime Savings Bank of New York, FSB,* 886 F.Supp. 1073, 1078 (S.D.N.Y.1995) (finding fiduciary relationship between bank and unsophisticated depositors where bank (1) encouraged depositors to borrow $100,000 when they only wanted to borrow $5000, which provided bank with fees, interest, and a mortgage on one depositor's house; (2) induced depositors to invest substantial part of borrowed sums through its affiliate; and (3) participated with depositors in stock purchases and sales that generated commissions for bank), *aff'd,* 101 F.3d 107 (2d Cir.1996), *cert. denied,* 520 U.S. 1122, 117 S.Ct. 1260, 137 L.Ed.2d 339 (1997).

### D. Commercial Bad Faith

"A cause of action for commercial bad faith against a bank requires allegations of a scheme or acts of wrongdoing, together with allegations of the bank's actual knowledge of the scheme or wrongdoing that amounts to bad faith or allegations of complicity by bank principals in alleged confederation with the wrongdoers." *Peck v. Chase Manhattan Bank, N.A.,* 190 A.D.2d 547, 593 N.Y.S.2d 509, 510-11 (1st Dep't 1993) (citing *Prudential-Bach Securities. Inc. v. Citibank. N.A.,* 73 N.Y.2d 263, 539 N.Y.S.2d 699, 536 N.E.2d 1118 (Ct.App.1989)).

As explained above, plaintiff has not set forth facts sufficient to raise an inference of actual knowledge of the alleged scheme. Moreover, the vague allegations in the complaint are insufficient to raise an inference of bad faith or complicity on the part of Bank Leumi. Thus, the complaint fails to allege a cause of action for commercial bad faith.

### III. Conclusion

**\*6** For the reasons set forth above, Bank Leumi's motion to dismiss as to Bank Leumi is granted. The Court grants plaintiff leave to amend her complaint within thirty days of this Memorandum and Order. Bank Leumi's motion for sanctions is denied.

SO ORDERED.

Not Reported in F.Supp., 1997 WL 289865 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:96cv06695 (Docket) (Sep. 04, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.