# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS
LONDON • MOSCOW • FRANKFURT • COLOGNE
ROME • MILAN • HONG KONG • TOKYO

Writer's Direct Dial (212) 225-2840
E-Mail: lfriedman@CGSH.com

ROGER W. THOMAS
MARK A. WALKER
LESLIE B. SAMUELS
ALLAN G. SPERLING
MAX GITTER
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
STEPHEN H. SHALEN
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
EDWARD D. KLEINBARD
JONATHAN I. BLACKMAN
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN

LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
JANET L. FISHER
DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
ANA DEMEL
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
YVETTE P. TEOFAN
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
RICARDO A. ANZALDÚA-MONTOYA
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF

KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
DAVID I. GOTTLIEB
JENNIFER L. KROMAN
SANDRA L. FLOW
FRANCISCO L. CESTERO
DANA G. FLEISCHMAN
FRANCESCA LAVIN
SANG JIN HAN
WILLIAM L. MCRAE
JASON FACTOR
MARGARET E. STOWERS
LISA M. SCHWEITZER
KRISTOFER HESS
GAMAL M. ABOUALI
RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
DEBORAH E. KURTZBERG
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
MARK A. ADAMS
HEIDE H. ILGENFRITZ
GEOFFREY B. GOLDMAN
DAVID S. BERG
RESIDENT COUNSEL

January 17, 2006

BY ECF AND FACSIMILE

Magistrate Judge Kiyo A. Matsumoto
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Weiss et al. v. National Westminster Bank Plc, 05-CV-4622 (CPS) (KAM)

Dear Magistrate Judge Matsumoto:

      I am replying on behalf of defendant National Westminster Bank Plc ("NatWest") to the January 12 letter to Your Honor from Robert Swift, lead counsel to plaintiffs. Mr. Swift's letter responds to my letter of earlier that day, in which I presented the reasons why the Court should reaffirm its prior ruling deferring discovery in this matter pending Judge Sifton's ruling on NatWest's renewed dismissal motion, which will be fully briefed one month from today.

      NatWest will of course cooperate with plaintiffs to schedule any *de bene esse* depositions of plaintiffs that may be appropriate in light of one or more plaintiffs' medical condition. However, any additional discovery should remain deferred at least until Judge Sifton hears oral argument on NatWest's renewed dismissal motion, and can determine whether discovery should proceed pending his ruling on that motion.

      The issue with respect to such a stay is not condemnation of terrorism, which NatWest abhors just as much as Mr. Swift and his clients. Contrary to Mr. Swift's reckless accusations that NatWest supports HAMAS-sponsored terrorism, there should be no doubt NatWest views the HAMAS terrorist attacks on plaintiffs with horror, and has deep sympathy for

Magistrate Judge Kiyo A. Matsumoto, p. 2

plaintiffs' individual and collective tragedies. Our original dismissal brief, to which plaintiffs failed to respond, makes this clear. As an English bank based in London, NatWest itself has been exposed to the horrors of international terrorism. But the tragic consequences of these acts do not justify either plaintiffs' legally insupportable attempts to foist responsibility for their injuries upon NatWest, or their making the sort of inflammatory statements to the global press that have been attributed to plaintiffs and their counsel during the past two weeks. The fact that plaintiffs are victims of terrorism does not relieve them of the burden of pleading actionable claims against NatWest, nor does it justify beginning a process of expensive and burdensome discovery before the Court has determined whether plaintiffs' allegations can withstand a motion to dismiss. We believe they cannot.

Notably, while Mr. Swift expressly represented to Your Honor during the December 21, 2005 Initial Conference Hearing that he would offer in plaintiffs' amended complaint sufficient facts to address all of the shortcomings NatWest identified in plaintiffs' original complaint, that amended complaint utterly fails to do so at all.

First, the amended complaint does nothing at all to address NatWest's showing that, under the terms of the statutory prohibitions upon which plaintiffs rely, the type of routine banking services NatWest has provided to Interpal cannot constitute "material support" for, or the "financing" of terrorist acts. Despite Mr. Swift's rhetoric, it remains undisputed that plaintiffs accuse NatWest solely of providing routine banking services in London to its British customer, Interpal, which is regulated by the British government as a charitable organization dedicated to providing health, education and similar services to Palestinians. It also remains undisputed that while Interpal was designated a HAMAS affiliate by the United States government in 2003 – importantly, only <u>after</u> the latest of the HAMAS attacks that victimized plaintiffs – the British government that is NatWest's home regulator has <u>twice</u> cleared Interpal of any connection to HAMAS terrorism, including after considering the evidence that the United States government presented to the British government. Most importantly, as we demonstrated in our initial dismissal brief, even taking all of plaintiffs' well-pleaded allegations as true, plaintiffs simply do not have a valid legal or factual basis for accusing NatWest of providing "material support" or "financing" for terrorist acts, as they need to do under the statutes they purport to invoke.

Second, the amended complaint does nothing at all to address NatWest's showing that plaintiffs' well-pleaded allegations fall far short of adequately alleging that NatWest acted with the level of intent to support or finance terrorist acts that the statutes require. The only difference between the initial complaint and the amended complaint in this respect is the addition of (i) an allegation that NatWest maintained an account for a second charitable organization that is <u>not</u> alleged to have been designated a terrorist organization by any government (that account was in fact maintained for Interpal), and (ii) allegations that NatWest received into the Interpal accounts deposits from, and honored Interpal's instructions to transfer funds from those accounts to, entities that were allegedly designated as terrorist organizations by the United States government. But these designations were made only <u>after</u> all of those transactions occurred. Moreover, while plaintiffs continue to allege that the British government's temporary freeze of

Interpal's accounts in 1996 "first placed NatWest on Notice that it was transferring funds to HAMAS," Am. Compl. ¶ 347, plaintiffs unfairly treat this purported "notice" as a one-way ratchet. They conspicuously ignore the necessary conclusion from their premise, which is that after the British government subsequently <u>twice</u> cleared Interpal of any wrongdoing, NatWest could not have acted with the requisite bad intent when it continued to provide routine banking services to Interpal.

<u>Third</u>, the amended complaint does nothing at all to remedy plaintiffs' prior failure to allege that anything NatWest did or omitted to do proximately caused plaintiffs' injuries. To the contrary, by expanding the scope of their allegations from one HAMAS attack to ten, spanning a period of 18 months, plaintiffs underscored their inability to prove a proximate causal link between NatWest's provision of routine banking services to Interpal and plaintiffs' injuries. They have certainly not alleged facts showing such a link. It is inconceivable that discovery could cure this defect.

It is no answer to these persisting fatal defects in plaintiffs' pleading for Mr. Swift to try baselessly to analogize this lawsuit to the <u>Linde v. Arab Bank</u> lawsuit pending before Judge Gershon, or to draw upon the fact that the New York branch of the Jordanian bank defendant in that case has been closed and fined by U.S. regulators. As Mr. Swift well knows – because he is counsel of record in the <u>Linde</u> case too – the <u>Linde</u> plaintiffs accuse Arab Bank not merely of providing banking services to customers with alleged ties to terrorist organizations, but also of maintaining an account for HAMAS itself, and serving as the administrator of the "death and dismemberment benefit plan" that provides money to families of Palestinian terrorists killed in perpetrating terrorist acts. Further, the U.S. government's enforcement action against Arab Bank was based upon findings that the bank's New York branch had internal control weaknesses, particularly with regard to international funds transfers. There is nothing remotely comparable that has been or could be alleged about NatWest.

Against this background, the Court should reaffirm its prior ruling that discovery should be deferred, because that conclusion is supported by each of the considerations that bear on this subject. <u>See</u> <u>Spencer Trask Software & Info. Services, LLC v. RPost Int'l Ltd.</u>, 206 F.R.D. 367, 368 (S.D.N.Y. 2002); <u>Johnson v. N.Y. Univ. School of Educ.</u>, 205 F.R.D. 433, 434 (S.D.N.Y. 2002).

<u>First</u>, in light of plaintiffs' second failed attempt to plead sustainable claims, NatWest's dismissal motion is even more meritorious than it was when Your Honor first considered this factor and stayed discovery. As described above, the amended complaint continues to fall far short of the relevant statutory requirements. Mr. Swift's suggestion that his new allegations "leave little doubt that [NatWest] has . . . provided financial services to a Specially Designated Global Terrorist" is sheer fantasy.

<u>Second</u>, any delay from deferring discovery should be relatively short. Briefing on NatWest's renewed dismissal motion will be completed in 30 days. Oral argument is likely to

Magistrate Judge Kiyo A. Matsumoto, p. 4

occur soon thereafter. If Judge Sifton concludes then that discovery should begin while he considers NatWest's motion, he will so rule.

   Third, the burden of proceeding with discovery, other than the *de bene esse* depositions to which NatWest will agree, remains great. Again, NatWest does not currently conduct any banking business in the United States. Its compliance with initial disclosure requirements, and the extensive document and deposition requests plaintiffs have indicated they will make, will require extensive searches for documents in England.

   Fourth, plaintiffs will not be prejudiced by deferring discovery until after a ruling on NatWest's renewed dismissal motion. Plaintiffs waited more than two years after they sustained their injuries to file this lawsuit. They seek no injunctive or other time-critical relief. Further, the parties have agreed to a document preservation order, which plaintiffs' counsel should have already submitted for the Court's approval.

   Accordingly, we respectfully urge that the Court reaffirm its prior ruling, and reiterate that discovery should not proceed pending the disposition of NatWest's renewed dismissal motion.

                              Respectfully,

                              Lawrence B. Friedman

cc: All Counsel