# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · TOKYO

Writer's Direct Dial (212) 225-2840
E-Mail lfriedman@CGSH.com

ROGER W THOMAS
MARK A WALKER
LESLIE B SAMUELS
ALLAN G SPERLING
MAX GITTER
EVAN A DAVIS
LAURENT ALPERT
VICTOR I LEWKOW
LESLIE N SILVERMAN
ROBERT L TORTORIELLO
A RICHARD SUSKO
STEPHEN H SHALEN
LEE C BUCHHEIT
JAMES M PEASLEE
THOMAS J MOLONEY
EDWARD D KLEINBARD
JONATHAN I BLACKMAN
WILLIAM F GORIN
MICHAEL L RYAN
ROBERT P DAVIS
YARON Z REICH
RICHARD S LINCER
JAIME A EL KOURY
STEVEN G HOROWITZ
ANDREA G PODOLSKY
STEVEN M LOEB
DANIEL S STERNBERG
DONALD A STERN
CRAIG B BROD
SHELDON H ALSTER
WANDA J OLSON
MITCHELL A LOWENTHAL
DEBORAH M BUELL
EDWARD J ROSEN

LAWRENCE B FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
JANET L FISHER
DAVID L SUGERMAN
HOWARD S ZELBO
DAVID E BRODSKY
ARTHUR H KOHN
ANA DEMEL
RAYMOND B CHECK
RICHARD J COOPER
JEFFREY S LEWIS
PAUL J SHIM
YVETTE P TEOFAN
STEVEN L WILNER
ERIKA W NIJENHUIS
LINDSEE P GRANFIELD
DAVID C LOPEZ
CARMEN A CORRALES
JAMES L BROMLEY
RICARDO A ANZALDUA-MONTOYA
PAUL E GLOTZER
MICHAEL A GERSTENZANG
LEWIS J LIMAN
NEIL Q WHORISKEY
JORGE U JUANTORENA
MICHAEL D WEINBERGER
DAVID LEINWAND
JEFFREY A ROSENTHAL
ETHAN A KLINGSBERG
MICHAEL D DAYAN
CARMINE D BOCCUZZI JR
JEFFREY D KARPF

KIMBERLY BROWN BLACKLOW
ROBERT J RAYMOND
DAVID I GOTTLIEB
JENNIFER L KROMAN
SANDRA L FLOW
FRANCISCO L CESTERO
DANA G FLEISCHMAN
FRANCESCA LAVIN
SANG JIN HAN
WILLIAM L MCRAE
JASON FACTOR
MARGARET E STOWERS
LISA M SCHWEITZER
KRISTOFER HESS
GAMAL M ABOUALI
RESIDENT PARTNERS

SANDRA M ROCKS
ELI EN M CREEDE
S DOUGLAS BORISKY
JUDITH KASSEL
DAVID E WEBB
DEBORAH E KURTZBERG
PENELOPE L CHRISTOPHOROU
BOAZ S MORAG
MARY E ALCOCK
GABRIEL J MESA
DAVID H HERRINGTON
MARK A ADAMS
HEIDE H ILGENFRITZ
GEOFFREY B GOLDMAN
DAVID S BERG
RESIDENT COUNSEL

March 3, 2006

BY ECF AND HAND

Hon. Charles P. Sifton
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

     Re: Weiss v. National Westminster Bank PLC, 05-CV-4622 (CPS)

Dear Judge Sifton:

    I am writing on behalf of defendant National Westminster Bank Plc ("NatWest") in response to the March 1, 2006 letter to the Court from plaintiffs' counsel, Gary M. Osen.

    1. The U.K. Charity Commission's 1996 investigation concluded that allegations that Interpal "is in effect nurturing terrorism" were "unfounded." We are pleased that Mr. Osen was able to obtain and provide to the Court a full copy of the U.K. Charity Commission's findings from its 1996 investigation that the accusations against Interpal were "unfounded," but we do need to correct several of his statements concerning this subject.

    a. The document Mr. Osen has provided to the Court does not appear to be the Commission's 1996 annual report, as Mr. Osen states, but instead its report on its 1996 investigation of Interpal.

    b. The block quote on page 10 of NatWest's reply brief is not "a *paraphrase* of the last paragraph" of the 1996 report (emphasis in original), as Mr. Osen asserts. Instead, it is a <u>verbatim</u> quotation of an extract from the Charity Commission's 1996 annual report, which we believe the Commission drew from the text of the 1996 investigation report.

Hon. Charles P. Sifton, p. 2

     c. Mr. Osen has not fairly presented the Commission's 1996 findings, which is perhaps attributable to the fact that he quotes only from the section on page 2 of the 1996 investigation report entitled "Scope and reasons for the investigation," rather than the section on pages 11-12 entitled "Conclusions," certainly the more plausible place in which to identify the Commission's findings. This "Conclusions" section includes both the <u>verbatim</u> language that NatWest previously quoted to the Court ("Scrutiny of the charity's publicity and documentation provided no evidence of any pro-terrorist or anti-Israeli propaganda and interviews with the trustees and staff suggested that they were motivated by faith and altruism rather than fanaticism."), and also the following most salient finding:

> <u>Although press coverage spoke about evidence being made available to the Government which showed that the charity was funding terrorist activities this has not been substantiated</u>. All of the evidence that we were able to uncover pointed to a well run and committed organization which carried out important work in a part of the world where there is great hardship and suffering. It would be impossible, and inappropriate, for the charity to ensure that its funds only go to supporters of the Israelis in this volatile area of conflict. <u>The unfounded allegation that by aiding Palestinian children the charity is in effect nurturing terrorism remains just that</u>.

(emphasis supplied)

     This finding underscores the reasons why plaintiffs have failed to plead adequately that NatWest acted with the level of <u>scienter</u> required by the statutes upon which plaintiffs rely. Again, plaintiffs do not accuse NatWest of providing banking services to HAMAS, or any other designated foreign terrorist organization. Instead, plaintiffs accuse NatWest only of providing banking services to Interpal. Thus, it is not enough for plaintiffs to plead that NatWest knew of HAMAS's terrorist activities; rather, they must properly plead facts showing that NatWest knew the services it provided to <u>Interpal</u> constituted material support or financing for (in statutory terms) or substantial assistance to (in aiding and abetting terms) HAMAS. Plaintiffs have not satisfied this pleading requirement at all. To the contrary, the U.K. Charity Commission's 1996 findings (as well as its subsequent 2003 findings), upon which NatWest was entitled to rely, <u>contradict</u> the notion that NatWest acted with the requisite level of knowledge or intent. That NatWest provided banking services to a charity which provided charitable services to impoverished Palestinian individuals who may have sympathized with HAMAS self-evidently does not make NatWest a supporter or financier of HAMAS terrorism.

     2. <u>The decision in United States v. Assi</u>. Mr. Osen has not fairly characterized the Michigan federal court's decision in <u>United States v. Assi</u>, 2006 WL 335981 (E.D. Mich. Feb. 10, 2006), or its relevance to plaintiffs' claims here.

Hon. Charles P. Sifton, p. 3

        a. <u>Assi</u> is not relevant, because again, plaintiffs do not accuse NatWest of providing banking services to HAMAS, or any other designated foreign terrorist organization, but rather only of providing banking services to Interpal. Mr. Assi, on the other hand, was charged with providing material support directly to a designated FTO, Hizbollah, by carrying in his luggage for an international flight global positioning satellite modules, night vision goggles and a thermal imaging camera, all of which he intended to be received by this FTO.

        b. Second, the <u>Assi</u> court expressly stated that it was rejecting Mr. Assi's due process challenge to the prosecution's construction of Section 2339B's <u>scienter</u> element, and was disagreeing with the decision in <u>United States v. Al-Arian</u>, 308 F. Supp. 1322 (M.D. Fla. 2004), <u>only</u> in the specific context of the charges against Mr. Assi, based upon the contents of his luggage, and his acknowledgement that he intended for these contents to be delivered to Hizbollah. The court expressly recognized that, as in <u>Al-Arian</u>, one could "conjure up a hypothetical scenario in which the statute arguably could be read as criminalizing seemingly innocuous conduct," noting Mr. Assi's argument that Section 2339B of the ATA "threatens to criminalize contributions to an FTO – <u>e.g.</u>, works of literature – that are highly unlikely to further the organization's illegal activity." <u>Assi</u> at * 14. The <u>Assi</u> court concluded <u>only</u> that <u>Mr. Assi's</u> conduct "lie[s] comfortably within the heartland of the conduct that Congress evidently meant to target through this enactment." <u>Id.</u> Obviously, the <u>Assi</u> court did not address the very different, and unquestionably non-"heartland" conduct at issue here – the provision of routine banking services not to a designated FTO, but rather to a recognized charity, whose beneficiaries are said to include supporters of terrorism, and as to which the bank's and the charity's own home government has rejected as "unfounded" the allegation that the charity is thereby "nurturing terrorism."

        Accordingly, <u>Assi</u> does not reject – and to the contrary it specifically endorses – careful scrutiny of plaintiffs' attempt here to criminalize (as they must, to invoke Section 2333(a)'s civil remedy) NatWest's provision of routine banking services to its charity customer.

                                  Respectfully,

                                    Lawrence B. Friedman

cc: All Counsel (by facsimile)