

# OSEN & ASSOCIATE, LLC

**ATTORNEYS AT LAW**
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400  FACSIMILE 201.265.0303
WWW.OSEN.US

July 7, 2006

**VIA ECF AND FEDEX**

Judge Charles P. Sifton
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Weiss, et al. v. National Westminster Bank PLC*, 05-CV-4622 (CPS) (KAM)
    *Strauss, et al. v. Crédit Lyonnais, S.A.*, 06-CV-702 (CPS) (KAM)

Dear Judge Sifton:

On behalf of the plaintiffs in the above-entitled cases, I am writing in response to Mr. Friedman's letter to the Court dated June 30, 2006, and his arguments concerning Judge Glasser's decision in *Stutts v. The De Dietrich Group, et al.*, 03-CV-4058 (ILG), a copy of which he enclosed. Mr. Friedman twice asserts that the parallels between that case and the two cases pending before Your Honor "are obvious." However, the factual allegations in that case do not even remotely resemble the allegations set forth against Crédit Lyonnais and National Westminster Bank ("NatWest").

In *Stutts*, plaintiffs (members of the U.S. armed forces) sued, *inter alia*, a group of banks (the "Bank Defendants") on the theory that, by giving letters of credit to manufacturers in the 1980s, the Bank Defendants enabled the manufacturers to sell chemicals to Iraq, which Saddam Hussein used to manufacture chemical weapons, which he then stockpiled in Iraq, which stockpiles were then bombed by U.S.-led Coalition Forces during the 1991 Gulf War, which detonated some of the Iraqi chemical weapons, releasing toxic emissions into the atmosphere, which plaintiffs inhaled, causing them inhalation injuries for which the Bank Defendants were allegedly liable. Judge Glasser incredulously summarized plaintiffs' theory of the chain of causation and foreseeability as follows:

> What the plaintiffs essentially ask the Court to accept is that by providing letters of credit to manufacturers of chemicals, the Bank Defendants should have perceived the risk that those chemicals would be sold to Iraq; that Saddam Hussein would use those chemicals to manufacture lethal weapons; that those weapons would be stockpiled in a location that would one day be bombed by coalition forces; that the bombs would hit and detonate those weapons; that the detonation would cause the toxic emissions to be released; that those emissions

would permeate the atmosphere; that the plaintiffs would be present in that atmosphere, inhale those emissions and sustain the injuries alleged. [*Stutts* Op. at * 35.]

Finding a parallel in the instant cases to the *Stutts* plaintiffs' convoluted theory is wrong for three reasons.

*First*, it is not evident that there was any act of international terrorism – the predicate for liability under 18 U.S.C. § 2333 – in *Stutts* at all. At best, the *Stutts* plaintiffs alleged that they were injured by exposure to chemicals belonging to a terror-sponsoring state. By contrast, the plaintiffs in *Weiss* and *Strauss* indisputably pled that they were injured by reason of terrorist attacks – acts of international terrorism. Further, and in contradistinction to the *Stutts* plaintiffs, the *Weiss* and *Strauss* plaintiffs allege violations of the material support statutes, 18 U.S.C. §§ 2339B and 2339C.

*Second*, the *Weiss* and *Strauss* plaintiffs allege conduct that lies at heart of the Anti-Terrorism Act (the "ATA"), which created a civil remedy that was expressly intended by Congress to "interrupt, or at least imperil, the flow of terrorism's lifeblood: money." S. Rep. No. 102-242, 102d Cong., 2d Sess. 22 (1992). *See also Boim v. Quranic Literacy Inst. and Holy Land Foundation For Relief and Development*, 291 F.3d 1000, 1019 (7th Cir. 2002) (noting that under 18 U.S.C. § 2333, "Congress' stated purpose [is] ... cutting off the flow of money to terrorists at every point along the chain of causation."). The *Weiss* and *Strauss* plaintiffs allege that by knowingly transferring funds to fronts for HAMAS, a designated Foreign Terrorist Organization ("FTO") which carried out the terror attacks that injured the plaintiffs, National Westminster Bank and Crédit Lyonnais provided material support to an FTO in violation of 18 U.S.C. § 2339B. In sharp contrast, the plaintiffs in *Stutts*, did "*not make allegations concerning ... [this] section[]* in their complaint." *Stutts* Op. at * 7 n.7.

Providing financial services to FTOs like HAMAS is precisely (and expressly) the type of conduct that the ATA and the material support statutes were enacted to punish and deter. There is simply no equivalent statutory interest in the provision of letters of credit to otherwise legitimate manufacturers who, in turn, sell chemicals to a foreign state who uses them to make weapons which are ultimately detonated by U.S. military forces in an unforeseeable war ten years later. Indeed, here, the banks are alleged to have provided financial services to well-known HAMAS fronts that were themselves designated as Specially Designated Global Terrorists.

*Third*, as Judge Glasser summarized, the Bank Defendants in *Stutts* were not even charged with foreseeing that some underlying sales transaction for which they issued letters of credit would lead to Iraq's use of chemical weapons against enemies outside Iraq, a foreseeability which, if attenuated, might nevertheless have been plausible. Rather, they were expected to foresee that their letters of credit would lead to the detonation of chemical weapons stockpiles by Coalition Forces *in Iraq*. *Stutts* Op. at * 9 (emphasis in original). Unsurprisingly, Judge Glasser concluded that "[t]o attribute such foresight to the Banks is to attribute a prescience that is beyond human ken." *Id.* at * 36. Here, in contrast, the *Weiss* and *Strauss* pleadings charge the defendants with foreseeing that any fungible funds that they knowingly sent

to HAMAS, one of the world's most notorious terrorist organizations, would be used, in part, to facilitate terrorist attacks. This insight hardly requires, to use Judge Glasser's phrase, "a prescience that is beyond human ken." It is the insight that Congress expressly enacted in finding that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that *any contribution to such an organization facilitates that conduct.*" Antiterrorism Act of 1996, Pub. L. No. 104-132, sec. 301(a)(7), 110 Stat. 1247 (emphasis added). *See also Boim v. Quranic Literacy Inst.*, 127 F. Supp. 2d 1002, 1019 (N.D. Ill. 2001) (noting that "Congress believed that funding terrorists or terrorist organizations causes the harm of the terrorists' subsequent attacks."). It is this insight that is the central premise of the entire FTO designation process and related terror financing/anti-money laundering watch lists and due diligence regulations to which banks, such as defendants in the matters-at-bar, are especially subject.

"[I]f the actor should have realized that his conduct might cause harm to another in substantially the manner in which it is brought about," the *Restatement (Second) of Torts* comments, "the harm is universally regarded as the legal consequence of the actor's negligence." *Restatement (Second) Of Torts* § 435, cmt. b, pt. 1 (1979). In *Stutts*, Judge Glasser found that the Bank Defendants could not have realized that by issuing letters of credit, they would cause inhalation poisoning to persons exposed to emissions released by Coalition bombing of chemical weapons during the 1991 Gulf War. It does not follow that this Court should find as a matter of law that NatWest and Crédit Lyonnais should not have foreseen that by transferring massive amounts of money to HAMAS in the midst of a terror campaign, it would use the money to facilitate terror attacks with that money or money it freed up.

*Finally*, defendants also characterize as obvious the supposed parallel between the suits before this Court and the *Stutts* plaintiffs' pleading that the banks there "'knew or reasonably should have known' that, as a result of services they provided, Hussein's regime and its use of chemical weapons endangered[1] 'all who opposed Saddam Hussein'." (Friedman Letter at p. 2.) But neither the *Weiss* nor the *Strauss* complaint alleges that the banks "reasonably should have known." They allege actual knowledge. *See, e.g.*, Strauss Compl. at ¶ 545, Weiss Compl. at ¶¶ 338, 340. *When* evidence accumulated sufficiently to give NatWest and Crédit Lyonnais that knowledge is a *factual* question, as plaintiffs have explained previously, *see, e.g.*, Strauss Pl. Opp. Mem. at 51, citing, *inter alia, Sharp International Corp. v. State Street Bank & Trust Co.*, 302 B.R. 760, 772 (E.D.N.Y. 2003). Moreover, it is a question which turns in part on the banks' legally and self-imposed (and admittedly undertaken) due diligence, "know-your-customer," and terror financing/anti-money laundering inquiries, all affirmative duties of inquiry which were not relevant in *Stutts*. There Judge Glasser emphasized:

> [I]ssuers of letters of credit are 'third parties ignorant of the specifics of the transactions' who merely deal in documents describing the terms of the credit extended. *Oie*, 957 F. Supp. at 503. *The Court is not called upon to rule on the extent of knowledge possessed by banks issuing letters of credit.* Defendants'

---

[1] "Endangering" was apparently defined by the *Stutts* plaintiffs as leaving chemical weapon stockpiles where they could be detonated by Coalition Forces in some future war against Iraq and could thus pollute the atmosphere breathed by those forces.

argument in this regard merely provides additional evidence of the flaw in plaintiffs' complaint – that it fails to allege that the Bank Defendants actually knew that the materials being sold by the Supplier Defendants to Hussein would be used in making chemical weapons. [*Stutts* Op. at * 29 (emphasis added).]

The complaints in the pending actions repeatedly allege that the defendant banks actually knew – from government watch lists, their own inquiries, and other public sources – what Congress has expressly found in the ATA (see *supra*): that the funds the banks were transferring would be used, directly or indirectly, by Foreign Terrorist Organization HAMAS for terrorist acts. As plaintiffs have explained previously, knowledge – not specific intent – is all that they are required to allege in order to state their claims. *See, e.g.*, Strauss Pl. Opp. Mem, at pp. 44-48. *See also Linde v. Arab Bank, plc*, 384 F. Supp. 2d 571, 587 n.11 (E.D.N.Y. 2005) (rejecting any reading of *Boim* that requires more than knowledge by defendant that organization to which material support is provided is designated or is engaged in terrorist activities pursuant to 18 U.S.C. § 2339B).

In short, nothing that Judge Glasser concluded about the uniquely attenuated theory of *Stutts* provides support for dismissal of the core-ATA claims against NatWest or Crédit Lyonnais. On the contrary, the cases most directly analogous to the allegations set forth against the defendants here is *Linde*, cited above, which focuses directly on banks' provision of material support by financial transfers to terrorists and FTOs.

Accordingly, for the reasons set forth above, as well as those previously set forth in the *Weiss* and *Strauss* plaintiffs' opening memoranda of law and at oral argument, plaintiffs' respectfully request that the Court deny defendants' motions to dismiss.

Respectfully submitted,

Gary M. Osen /jdg

Gary M. Osen

cc: All counsel on attached service list.

## SERVICE LIST

**Counsel for Defendant National Westminster Bank, Plc. & Crédit Lyonnais S.A.**

Lawrence B. Friedman, Esq.
(lfriedman@cgsh.com)
Jonathan I. Blackman, Esq.
(jblackman@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, N.Y. 10006
Telephone:     (212) 225-2000
Facsimile:      (212) 225-3999

**Counsel for Weiss & Strauss Plaintiffs**

Gary M. Osen, Esq.
(gmo@osen.us)
Joshua Glatter, Esq.
(jdg@osen.us)
Peter Raven-Hansen, Esq.
(pravenhansen@gmail.com)
OSEN & ASSOCIATE, LLP
700 Kindermack Road
Oradell, N.J. 07649
Telephone:     (201) 265-6400
Facsimile:      (201) 265-0303

Robert A. Swift, Esq.
(rswift@kohnswift.com)
Steven M. Steingard, Esq.
(ssteingard@kohnswift.com)
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:     (215) 238-1700
Facsimile:      (215) 238-1968

Andrew D. Friedman, Esq.
(afriedman@gbgfriedman.com)
Of Counsel
GLANCY BINKOW & GOLDBERG LLP
430 Park Avenue
New York, NY 10022
Telephone:     (212) 308-6300
Facsimile:      (212)308-6750