

# OSEN & ASSOCIATE, LLC

ATTORNEYS AT LAW
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400  FACSIMILE 201.265.0303
WWW.OSEN.US

July 24, 2006

**VIA ECF AND FEDEX**

Honorable Charles P. Sifton
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Weiss, et al. v. National Westminster Bank, PLC, 05-CV-4622 (CPS) (KAM)**
    **Strauss, et al. v. Crédit Lyonnais, S.A., 06-CV-702 (CPS) (KAM)**

Dear Judge Sifton:

      We write on behalf of plaintiffs in the above-captioned cases. As Your Honor is aware, defendants recently submitted a letter to this Court dated June 30, 2006, in which they argued that Judge Glasser's decision in *Stutts v. The DeDietrich Group*, 2006 WL 1867060 (E.D.N.Y. 2006), supports their position on proximate causation and scienter as set forth in their pending motions to dismiss. Plaintiffs submitted a responsive letter on July 7, 2006 refuting defendants' position and defendants submitted a further reply letter on July 10, 2006.

      In a case pending before Judge Gershon, *Linde, et al. v. Arab Bank, plc*, (in which this firm and our co-counsel also represent the plaintiffs), the defendant, Arab Bank, requested leave to file an immediate interlocutory appeal concerning Judge Gershon's denial, in part, of its motion to dismiss. *Linde, et al. v. Arab Bank, plc*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005). In its letter to Judge Gershon dated July 7, 2006 (attached hereto as Exhibit A), Arab Bank cited *Stutts* in support of its request, arguing that Judge Glasser's findings on issues concerning proximate causation and scienter in *Stutts* called into question Judge Gershon's conclusions regarding these issues in her decision denying its Rule 12(b)(6) motion and warranted the requested relief. The *Linde* plaintiffs, in their letter dated July 14, 2006, (attached hereto as Exhibit B) argued to the contrary. Although the factual allegations in *Linde* vary somewhat from the allegations in the above-captioned cases, both sets of cases involve claims that the provision of financial services to foreign terrorist organizations constitute violations of the material support statutes and give rise to civil liability under 18 U.S.C. § 2333(a). The *Linde* plaintiffs' position regarding proximate causation and scienter is identical to that of the *Weiss* and *Strauss* plaintiffs presented previously to this Court. On July 21, 2006, Judge Gershon having considered all papers

**Honorable Charles P. Sifton, U.S.D.J.**
**July 24, 2006**
**Page 2 of 2**

filed by Arab Bank in support of its request, including its letter regarding *Stutts*, denied Arab Bank's motion for an interlocutory appeal. We enclose for Your Honor a copy of Judge Gershon's Order denying Arab Bank's motion (attached hereto as Exhibit C).

Respectfully submitted

Gary M. Osen

Encl.


cc:     All counsel

# Exhibit A

# LeBoeuf, Lamb, Greene & MacRae LLP

NEW YORK
WASHINGTON, D.C.
ALBANY
BOSTON
CHICAGO
HARTFORD
HOUSTON
JACKSONVILLE
LOS ANGELES
PITTSBURGH
SAN FRANCISCO

125 WEST 55TH STREET
NEW YORK, NY 10019-5389
(212) 424-8000
FACSIMILE: (212) 424-8500

E-MAIL ADDRESS: KWALSH@LLGM.COM
WRITER'S DIRECT DIAL: (212) 424-8320
WRITER'S DIRECT FAX: (212) 424-649-1185

LONDON
A MULTINATIONAL PARTNERSHIP
PARIS
BRUSSELS
JOHANNESBURG
(PTY) LTD.
MOSCOW
RIYADH
AFFILIATED OFFICE
BISHKEK
ALMATY
BEIJING

July 7, 2006

**BY ELECTRONIC FILING**
Honorable Nina Gershon
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Linde, et al. v. Arab Bank, PLC*, Case No. CV 04-2799 (NG)(VVP);
     *Litle, et al. v. Arab Bank, PLC*, Case No. CV 04-5449 (NG)(VVP);
     *Coulter, et al. v. Arab Bank, PLC*, Case No. CV 05-365 (NG)(VVP);
     *Almog, et al v. Arab Bank PLC*, Case No. CV 04-5564 (NG)(VVP);
     *Afriat-Kurtzer, et al. v. Arab Bank PLC, Case No. CV 05-388 (NG)(VVP)*

Dear Judge Gershon:

We represent Arab Bank plc ("Arab Bank") in the above-referenced actions. Arab Bank's motion for the certification of an interlocutory appeal of the denial of its motion to dismiss the *Linde*, *Litle*, and *Coulter* actions on the issue of proximate causation is currently pending before your Honor. Also pending is a motion to dismiss the *Almog* and *Afriat-Kurtzer* cases.

We write to bring to your Honor's attention a recent and important decision of the United States District Court for the Eastern District of New York, *Stutts v. The De Dietrich Group, et al.*, 03-CV-04058 (Glasser, J.). We respectfully submit that the *Stutts* case, which dismisses as legally insufficient an array of allegations against twenty-nine international financial institutions pursuant to the Anti-Terrorism Act and "rules of international law," is, like the recent decision of the United States Supreme Court in *Anza v. Ideal Steel Supply Co.*, 547 U.S. ___, 126 S. Ct. 1991 (2006), directly relevant to both of Arab Bank's pending motions.

Plaintiffs in the *Stutts* case are a proposed class of military servicemen and civilian employees of certain defense contractors. These plaintiffs alleged injury as a result of exposure

Hon. Nina Gershon
June 23, 2006
Page 2

to toxic agents contained in chemical weapons possessed by the Iraqi government during the 1991 Gulf War.

The *Stutts* defendants fall into two classes: foreign suppliers that allegedly sold chemical precursors and manufacturing equipment to Iraq, and foreign banks that had issued letters of credit in favor of the suppliers and Iraqi government (the "Bank Defendants"). Arab Bank is one of twenty-nine Bank Defendants alleged to have provided these letters of credit. (*Stutts* 2nd Am. Compl. ¶ 66.) Plantiffs allege that in providing such financial services, the Bank Defendants themselves violated both the Anti-Terrorism Act and international laws involving restrictions on chemical weapons and thereby enabled the regime of Saddam Hussein to carry out extreme acts of violence.

The *Stutts* decision is one of the few to consider whether commercial banking activities qualify as prohibited acts under the Anti-Terrorism Act. The *Stutts* court held that the Bank Defendants' conduct, as alleged, did not "constitute international terrorism" because "the plain language of the Anti Terrorism Act compels the conclusion that by engaging in commercial banking activity, the Bank Defendants were not involved in 'violent acts or acts dangerous to human life'[;] [n]or were their actions designed to coerce civilians or government entities as required under § 2331." Op. at 5 (quoting 18 U.S.C. § 2331).

As an initial matter, the *Stutts* court found that the plaintiffs had failed to allege that the Bank Defendants possessed both the knowledge and intent to further the violent acts that had allegedly given rise to plaintiffs' injury. The court relied upon *Boim v. Quranic Literary Institute & Holy Land Found. For Relief & Dev.*, 291 F.3d 1000 (7th Cir. 2002), in support of its conclusion that "funding *simpliciter* does not constitute an act of international terrorism," but rather that intention to cause specific harm is necessary: "[b]ecause plaintiffs [in *Boim*] failed to allege that defendants donated money to Hamas *with the knowledge and intent that such funds would be used to support the murder of plaintiffs' son*, the court found that plaintiffs failed to state a claim under this theory of liability." Op. at 7 (emphasis supplied).

The Plaintiffs in the cases before this Court, like those in *Stutts*, have not alleged, and cannot allege, that Arab Bank intended to fund the particular activities that allegedly gave rise to their injuries. Rather, as in *Stutts*, plaintiffs have alleged that the Bank engaged in commercial banking activity, which activity, they contend, enabled a climate of violence. Such allegations were plainly inadequate to the *Stutts* court: "[g]iven the court's decision in *Boim* that direct funding of terrorist activity does not subject a defendant to liability under § 2333, a fortiori the actions of the Bank Defendants in issuing letters of credit to manufacturers who allegedly sold chemicals and equipment to Iraq do not constitute international terrorism." Op. at 7.

In a holding of particular importance to the related cases before this Court, the *Stutts* court concluded that plaintiffs had not adequately alleged that the Bank Defendants proximately caused their injuries. In its consideration of the issue of proximate causation, the *Stutts* court closely analyzed the Anti-Terrorism Act's requirement that a claimant must prove injury "by reason of" an act of international terrorism. The court held that such language "implies a

proximate cause requirement such that it must be reasonably foreseeable that a defendant's conduct is likely to result in violent criminal acts." Op. at 8 (citation omitted).

Notably, the *Stutts* court found that such "reasonable foreseeability" was plainly absent from plaintiffs' allegations: "[p]laintiffs allege no facts, nor can they, to demonstrate that it was reasonably foreseeable to the Bank Defendants that issuing letters of credit to manufacturers would in any way contribute to Saddam Hussein's use of chemical weapons or a fortiori 'the manufacture of chemical weapons in Iraq.'" Op. at 9. The application of common law proximate causation standards by Judge Glasser follows the guidance of the Supreme Court in *Anza* in construing identical "by reason of" statutory language. A similar deficiency in pleading proximate causation is evident in the related actions before this Court, as plaintiffs have not alleged, and concededly cannot allege, that it was reasonably foreseeable to Arab Bank that its provision of banking services would further the particular attacks in which the plaintiffs were injured.

The *Stutts* court held, moreover, that plaintiffs could not cure their failure to allege proximate causation by asserting that "widespread publicity about Iraq's use of chemical weapons" somehow put the Bank Defendants "on notice that their services 'were likely to be used in an unlawful and dangerous manner by Saddam Hussein's regime.'" Op. at 8 (quoting *Stutts* 2nd Am. Compl. ¶ 95). "Such general publicity," the court held, "does not *provide a causal link* between the Bank Defendant's conduct and the plaintiffs' injuries." Op. at 8-9 (emphasis supplied).

Plaintiffs in the related cases against Arab Bank have relied heavily, as did the *Stutts* plaintiffs, on "widespread publicity" to suggest Arab Bank had knowledge of the alleged illegitimate acts, *e.g.*, of the Saudi Committee. *E.g.*, *Linde* Am. Compl. ¶¶ 331-32, 338. The *Stutts* court plainly rejected such allegations as insufficient to overcome the absence of necessary allegations of causation. Indeed, the *Stutts* court considered the absence of such allegations of proximate causation to be fatal to most of the plaintiffs' claims, including their assertions that the Bank Defendants aided and abetted the unlawful activities of the Hussein regime: "where a plaintiff fails to show a casual link between the alleged unlawful act and defendants' participation in the commission of that act, it is more difficult to demonstrate that the defendants knowingly and substantially assisted in the unlawful activity." Op. at 13 (citation omitted).

Elsewhere in its decision, the *Stutts* court dismissed the plaintiffs' claims that the Bank Defendants had violated rules of customary international law by providing the letter of credit facilities at issue. This holding is plainly relevant to Arab Bank's pending motions to dismiss the *Almog* and *Afriat-Kurtzer* actions, and we respectfully call those provisions of the *Stutts* opinion concerning this issue to your Honor's attention as newly-decided authority.

Under these circumstances, we respectfully suggest that the *Stutts* decision is in direct conflict with the prior decision of this Court and, at very least, demonstrates that there is "a substantial ground for difference of opinion" on the critical and controlling issue of proximate

Hon. Nina Gershon
June 23, 2006
Page 4

causation. We respectfully suggest that resolution of this issue by the Court of Appeals will materially advance the ultimate termination of this litigation.

Respectfully submitted,

Kevin Walsh

cc: All counsel on attached service list

# Exhibit B



**OSEN & ASSOCIATE, LLC**

ATTORNEYS AT LAW
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400  FACSIMILE 201.265.0303
WWW.OSEN.US

July 14, 2006

**VIA ECF AND FEDEX**

Honorable Nina Gershon
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   **Linde v. Arab Bank, plc**, No. 04 Civ. 2799 (NG) (VVP)
      **Litle v. Arab Bank, plc**, No. 04 Civ. 5449 (NG) (VVP)
      **Almog v. Arab Bank, plc**, No. 04 Civ. 5564 (NG) (VVP)
      **Coulter v. Arab Bank, plc**, No. 05 Civ. 365 (NG) (VVP)
      **Afriat-Kurtzer v. Arab Bank, plc**, No. 05 Civ. 388 (NG) (VVP)
      **Bennett v. Arab Bank, plc**, No. 05 Civ. 3183 (NG) (VVP)
      **Roth v. Arab Bank, plc**, No. 05 Civ. 3738 (NG) (VVP)
      **Weiss v. Arab Bank, plc**, No. 06 Civ 1623 (NG) (VVP)

Dear Judge Gershon:

On behalf of the plaintiffs in the above-entitled cases[1] (the "Plaintiffs"), we write in response to Arab Bank's letter to the Court dated July 7, 2006, and its arguments concerning Judge Glasser's decision in *Stutts v. The De Dietrich Group, et al.*, 03-CV-4058 (ILG), a copy of which Arab Bank's counsel enclosed.

Defendant's latest effort to re-argue this Court's prior decision denying, in part, its motion to dismiss fares no better than its various prior attempts. Notwithstanding Defendant's assertion that the holding in *Stutts* is of "particular importance" to the *Linde* and *Litle* cases, the factual allegations in that case do not even remotely resemble the allegations set forth against Arab Bank by the Plaintiffs here. For the reasons set forth in brief below, Defendant's arguments again fail to support its motion for an interlocutory appeal of this Court's prior Order.

In *Stutts*, plaintiffs sued, *inter alia*, a group of banks (the "Bank Defendants") on the theory that, by giving letters of credit to manufacturers in the 1980s, the Bank Defendants enabled the manufacturers to sell chemicals to Iraq, which Saddam Hussein used to manufacture chemical weapons, which he then stockpiled in Iraq, which stockpiles were then bombed by

---

[1] The *Almog* and *Afriat-Kurtzer* plaintiffs join in the arguments set forth in this letter, and may write to the Court separately to address issues raised by Defendant's letter which go beyond the scope of claims brought under the Anti-Terrorism Act, 18 U.S.C. § 2333(a) ("ATA").

**Letter to the Honorable Judge Nina Gershon**
**July 14, 2006**
**Page 2 of 5**

U.S.-led Coalition Forces during the 1991 Gulf War, which detonated some of the Iraqi chemical weapons, releasing toxic emissions into the atmosphere, which plaintiffs (members of the U.S. armed forces) inhaled, causing them inhalation injuries for which the Bank Defendants were allegedly liable. Judge Glasser summarized the *Stutts* plaintiffs' theory of causation and foreseeability as follows:

> What the plaintiffs essentially ask the Court to accept is that by providing letters of credit to manufacturers of chemicals, the Bank Defendants should have perceived the risk that those chemicals would be sold to Iraq; that Saddam Hussein would use those chemicals to manufacture lethal weapons; that those weapons would be stockpiled in a location that would one day be bombed by coalition forces; that the bombs would hit and detonate those weapons; that the detonation would cause the toxic emissions to be released; that those emissions would permeate the atmosphere; that the plaintiffs would be present in that atmosphere, inhale those emissions and sustain the injuries alleged. [*Stutts* Op. at *35.]

Analogizing the instant cases to the *Stutts* plaintiffs' attenuated causation theory is wrong for five reasons.

First, the *Stutts* plaintiffs asserted only one statutory claim that is even remotely similar to the claims asserted in the *Linde* and *Litle* cases. The *Stutts* plaintiffs asserted a single claim predicated on their theory that the Bank Defendants' provision of letters of credit constituted aiding and abetting "acts of international terrorism" under 18 U.S.C. § 2331. Judge Glasser did *not*, contrary to Arab Bank's characterization, reject the proposition that 18 U.S.C. § 2333(a) gives rise to a common law claim of aiding and abetting. Instead, he held merely that the *Stutts* plaintiffs failed to plead adequately that the Bank Defendants knew that providing financing to chemical manufactures would aid and abet the subsequent manufacture of chemical weapons by a foreign regime who would store them at locations where the weapons would be detonated by U.S. forces 10 years later during a war, thereby forseeably exposing the *Stutts* plaintiffs to potential harm. In contrast, Your Honor found that plaintiffs properly pled, *inter alia*, that Arab Bank's maintenance of a "death and dismemberment benefit plan" for suicide bombers and their families, as well as provision of banking services for fronts and agents of Foreign Terrorist Organizations ("FTOs") aided and abetted a campaign of bloodshed and terrorism.

Second, it is not evident that the *Stutts* plaintiffs even alleged the commission of any act of international terrorism – the predicate for liability under 18 U.S.C. § 2333. At best, the *Stutts* plaintiffs alleged that they were injured by exposure to chemicals belonging to a terror-sponsoring state. By contrast, the plaintiffs in *Linde* and *Litle* indisputably pled that they have been injured by reason of terrorist attacks such as suicide bombings and shootings – acts of international terrorism. As this Court noted in the above-captioned cases:

> Plaintiffs' claims under the ATA are based on two factual theories of conduct. The first factual theory is that the Bank's activities in administering the death and

dismemberment benefit plan created an incentive for the commission of the terrorist acts by Palestinians in Israel which injured plaintiffs and thus substantially assisted their commission. The second factual theory concerns the banking services the Bank provides to the various organizations which plaintiffs allege are fronts for, or agents of, HAMAS, a designated foreign terrorist organization. Plaintiffs contend that, on the basis of these two factual courses of conduct, the Bank may be held secondarily liable for their injuries under theories of civil aiding and abetting and civil conspiracy. Plaintiffs also maintain that the Bank's actions constituting material support for terrorists and terrorist organizations in violation of 18 U.S.C. §§ 2339A and 2339B and financing in violation of 18 U.S.C. § 2339C create direct bases for liability.

Thus, in contradistinction to the *Stutts* plaintiffs, the *Linde* and *Litle* plaintiffs alleged iolations of the ATA's material support statutes, 18 U.S.C. §§ 2339A, 2339B and 2339C. The *Stutts* plaintiffs neither alleged that the Bank Defendants violated the material support statutes nor could they allege that the Bank Defendants provided financial services to an FTO, let alone that an FTO was responsible for the activities that caused their injuries.

Third, Plaintiffs allege conduct that lies at heart of the ATA, which creates a civil remedy expressly intended by Congress to "interrupt, or at least imperil, the flow of terrorism's lifeblood: money." S. Rep. No. 102-242, 102d Cong., 2d Sess. 22 (1992). *See also Boim v. Quranic Literacy Inst. and Holy Land Foundation For Relief and Development*, 291 F.3d 1000, 1019 (7th Cir. 2002) (noting that under 18 U.S.C. § 2333, "Congress' stated purpose [is] ... cutting off the flow of money to terrorists at every point along the chain of causation."). The *Linde* and *Litle* plaintiffs alleged hat by knowingly transferring funds to fronts for HAMAS, Palestinian Islamic Jihad ("PIJ"), and Al Aqsa Martyrs Brigade ("AAMB"), designated FTOs which carried out the terror attacks that injured most of the plaintiffs, Arab Bank provided material support to FTOs in violation of 18 U.S.C. § 2339B. In sharp contrast, the plaintiffs in *Stutts*, "*do not make allegations concerning ...* [this] *section*[] in their complaint." *Stutts* Op. at * 7 n.7.

Providing financial services to FTOs like HAMAS, PIJ and AAMB is precisely (and expressly) the type of conduct that the ATA and the material support statutes were enacted to punish and deter. There is simply no equivalent statutory interest in the provision of letters of credit to otherwise legitimate manufacturers who, in turn, sell chemicals to a foreign state who uses them to make weapons which are ultimately detonated by U.S. military forces in an unforeseeable war ten years later. Indeed, Arab Bank is alleged to have provided financial services to well-known HAMAS and PIJ fronts, some of whom were themselves designated as Specially Designated Global Terrorists, and is also alleged to have administered a "death and dismemberment benefit plan" that provides financial incentives to suicide bombers and their families to engage in their murderous conduct.

Fourth, as Judge Glasser summarized, the Bank Defendants in *Stutts* were not even charged with foreseeing that some underlying sales transaction for which they issued letters of

credit would lead to Iraq's use of chemical weapons against enemies outside Iraq, a foreseeability which, if attenuated, might nevertheless have been theoretically plausible. Rather, the Bank Defendants, according to the *Stutts* plaintiffs, should have foreseen that their letters of credit would lead to the detonation of chemical weapons stockpiles by Coalition Forces in Iraq *a decade later*. See *Stutts* Op. at *8-9. Unsurprisingly, Judge Glasser concluded that "[t]o attribute such foresight to the Banks is to attribute a prescience that is beyond human ken." *Id.* at * 36.

Here, in contrast, the *Linde* and *Litle* pleadings chargedArab Bank with foreseeing that any fungible funds that its knowingly sent to HAMAS, Palestinian Islamic Jihad and other FTOs, as well as administering a "martyrs' insurance program" would be used, in part, to facilitate terrorist attacks. This insight hardly requires "a prescience that is beyond human ken," to quote Judge Glasser. Rather, Arab Bank asks this Court to reject Congress's express finding that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that *any contribution to such an organization facilitates that conduct*." Antiterrorism Act of 1996, Pub. L. No. 104-132, sec. 301(a)(7), 110 Stat. 1247 (emphasis added). *See also, Boim v. Quranic Literacy Inst.*, 127 F. Supp. 2d 1002, 1019 (N.D. Ill. 2001) (noting that "Congress believed that funding terrorists or terrorist organizations causes the harm of the terrorists' subsequent attacks."). This insight which Arab Bank apparently protests as unreasonable is, in fact, the *central* premise of the entire FTO designation process and related terror financing/anti-money laundering watch lists and due diligence regulations to which financial institutions, such as Arab Bank, are especially subject.

"[I]f the actor should have realized that his conduct might cause harm to another in substantially the manner in which it is brought about," the *Restatement (Second) of Torts* comments, "the harm is universally regarded as the legal consequence of the actor's negligence." *Restatement (Second) Of Torts* § 435, cmt. b, pt. 1 (1979) In *Stutts*, Judge Glasser found that the Bank Defendants could not have realized that by issuing letters of credit, they would, ten years later, cause inhalation poisoning to persons exposed to emissions released by Coalition bombing of chemical weapons in a war on Iraq. However, it does not follow that this Court should find, as a matter of law, that Arab Bank could *not* reasonably foresee that providing financial services and administering a death-and-dismemberment benefit plan for HAMAS and other FTOs, in the maelstrom of a contemporaneous and ongoing terror campaign, would substantially assist terrorist attacks of the kind that injured Plaintiffs.

Finally, Arab Bank again states that the "Plaintiffs in the cases before this Court ... have not alleged, and cannot allege, that Arab Bank intended[2] to fund the particular activities that

---

[2] As this Court has correctly held, knowledge – not specific intent – is all that plaintiffs are required to allege in order to state their claims under 18 U.S.C. § 2339B. *See, e.g., Linde v. Arab Bank, plc*, 384 F. Supp. 2d 571, 587 n.11 (E.D.N.Y. 2005) (rejecting any reading of *Boim* that requires more than knowledge by defendant that organization to which material support is provided is designated or is engaged in terrorist activities pursuant to 18 U.S.C. § 2339B).

allegedly give rise to their injuries." Def. Letter at 2. Your Honor has already addressed Defendant's argument "that the requisite intent is the specific intent to cause the acts of terrorism which injured the plaintiffs" and has properly and logically rejected it. Unlike the "[i]ssuers of letters of credit" in the *Stutts* case, who were "third parties ignorant of the specifics of the transactions," here Arab Bank is clearly alleged to have had knowledge of the hundreds of thousands of transactions it was processing.[3] Arab Bank, of course, is entitled to deny either that its customers are in fact fronts for HAMAS and other FTOs and/or to continue to deny that it had any knowledge of the true identity of dozens of its customers or the purpose of the hundreds of thousands of Saudi Committee transactions it processed. These issues, however, do not involve the legal sufficiency of the *Linde* and *Litle* pleadings, but the sufficiency of evidence at trial. Accordingly, Arab Bank's latest effort again fails to warrant Defendant's request for an interlocutory appeal.

In short, nothing that Judge Glasser concluded about the uniquely attenuated theory of ATA liability in *Stutts* provides support for dismissal of any of the ATA claims brought against Arab Bank. The *Stutts* decision is based upon a fact pattern distinct at several critical junctures from the one considered by this Court in *Linde* and *Litle*. Accordingly, for the reasons set forth above, Plaintiffs' respectfully submit that the Court's decision in *Linde v. Arab Bank, plc* correctly set forth the legal standards required by the ATA, and renew and reiterate their request that Defendant's motion for an interlocutory appeal of the Court's prior rejection of its motion to dismiss be denied.

                                        Respectfully submitted,

                                        Gary M. Osen

cc:     All counsel on service list.

---

[3] It is now beyond dispute that Arab Bank has, in fact, maintained numerous accounts and transferred millions of dollars for various Specially Designated Global Terrorists and HAMAS front organizations identified as such in U.S. government indictments. Moreover, Arab Bank has produced approximately 175,000 Saudi Committee transactions involving the transfer of tens of millions of dollars to HAMAS front organizations identified as such in U.S. government indictments and to hundreds, if not thousands of individuals situated within Palestinian territories.

# Exhibit C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
COURTNEY LINDE, et al.,

                        Plaintiffs,           **ORDER**
                                               04 CV 2799 (NG)(VVP)
  - against -

ARAB BANK, PLC,

                        Defendant.
-----------------------------------------------------------x
PHILIP LITLE, et al.,

                        Plaintiffs,
                                               04 CV 5449 (NG)(VVP)
  - against -

ARAB BANK, PLC,

                        Defendant.
-----------------------------------------------------------x
ROBERT L. COULTER, SR. et al.,

                        Plaintiffs,
                                               05 CV 365 (NG)(VVP)
  - against -

ARAB BANK, PLC,

                        Defendant.
-----------------------------------------------------------x

**GERSHON, United States District Judge:**

      Defendant Arab Bank moves for certification of this court's order of September 2, 2005 for an immediate interlocutory appeal pursuant to 28 U.S.C. 1292(b). Upon review of all of the papers

submitted on the motion, the court denies the motion.

**SO ORDERED.**

*/s/ Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
July 18, 2006