# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

TZVI WEISS, et al.,                                    :
                                                       :        Case No. CV 05 4622
                          Plaintiffs,                  :
                                                       :
       -against-                                       :        Honorable Charles P. Sifton
                                                       :
NATIONAL WESTMINSTER BANK, PLC,                        :        Magistrate Judge Kiyo A. Matsumoto
                                                       :
                          Defendant.                   :
                                                       :
----------------------------------------------------------------x

## PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS AND RELATED INTERROGATORIES DIRECTED TO DEFENDANT NATIONAL WESTMINSTER BANK, PLC

        Plaintiffs in the above-captioned action, by their undersigned attorneys, and pursuant to

Rules 36 and 33 of the Federal Rules of Civil Procedure, hereby request that defendant, National

Westminster Bank, Plc admit, in writing and under oath within thirty days of the date of service

hereof, or at such other time as counsel may agree, the truth of the following statements, with

respect to each of the documents in the categories identified below.

## I.      Definitions and Instructions

        A.      The definitions and instructions in Plaintiffs' First Set of Document Requests to

Defendant apply herein as if fully set forth.   Further, the terms "document(s)," 

"communication(s)," "person(s)," "identify," "concerning," "all/each," "and/or," and "number"

are synonymous in scope and meaning with Rule 26.3 of the Rules of the United States District

Courts for the Southern and Eastern Districts of New York. In addition, defendant is reminded of

its obligation under Fed. R. Civ. P. 26(e) to seasonally supplement its response to these

discovery requests.

B.     Unless a document or documents on Schedule A (Bates Numbered copies which are being contemporaneously provided to defendant) are specifically identified by document production number in the following Requests and Interrogatories, such Requests and Interrogatories apply to all documents on Schedule A.

C.     For each Request for Admission for which there is an Admission as to a document listed on Schedule A, please identify the document by document production number (a/k/a Bates Number).

D.     "Defendant," "you," or "your" refers to National Westminster, Plc.

E.     "Details of a transaction" denotes information including account number, account holder, currency, amount transferred, date of transfer, bank receiving or sending funds, beneficiary of funds transfer, and other information contained on the face of the document.

F.     "AML" or "terror financing compliance efforts" includes defendant's obligations under both the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, 12 U.S.C. § 1829b, and §§ 1951 – 1959, the British Government's Money Laundering Regulations 2003 (SI 2003/3075), the [British] Proceeds of Crime Act 2002, and any other applicable laws, regulations, treaties, or protocols which govern defendant's obligations and duties to monitor, detect, investigate, analyze, document, inform, report, freeze, enforce, or otherwise act in any fashion in connection with terrorism prevention efforts, including detection and prevention of financing terrorist or terrorist organization activities.

## II.     Applicable Documents

The documents on Schedule A are listed by document production number (a/k/a Bates Number) used by plaintiffs and are being contemporaneously produced to defendant in

accordance with plaintiffs' continuing discovery obligations under Fed. R. Civ. P. 26(a) and (e).

## III.   Requests For Admissions and Interrogatories

Request for Admission No. 1

Each document is a record of regularly conducted business activity of defendant within the meaning of Rule 803(6) of the Federal Rules of Evidence.

Interrogatory No. 1

For each document that you did not admit in Request for Admission No. 1, set forth the document production number and state in detail all facts which support your position why each element of Rule 803(6) of the Federal Rules of Evidence is not satisfied.

Request for Admission No. 2

Each document is an accurate reproduction of the original document that is maintained in your files.

Interrogatory No. 2(a)

For each document that you did not admit in Request for Admission No. 2, set forth the document production number and state:

(1)    if the original document is maintained in defendant's files, all ways in which the document is not an accurate reproduction of the original document that is maintained in defendant's files;

(2)    if the original document is maintained in defendant's files, please state where such files are located and identify the person(s) having custody of the files;

(3)    if the original document is maintained in defendant's files and it bears any handwriting, please identify the person(s) whose handwriting appears on the document.

3

Interrogatory No. 2(b)

For each document that you admit is an accurate reproduction of the original document that is maintained in defendant's files:

      (1)    if the original document is maintained in defendant's files, please state where such files are located and identify the person(s) having custody of the files;

      (2)    if the original document is maintained in defendant's files and it bears any handwriting, please identify the person(s) whose handwriting appears on the document.

Request for Admission No. 3

The document accurately identifies an account or accounts of a customer or customers of defendant.

Interrogatory No. 3(a)

For each document that you did not admit in Request for Admission No. 3, set forth the document production number and state the facts which evidence that the document does not accurately identify an account or accounts of a customer or customers of defendant.

Interrogatory No. 3(b)

For each document that you have admitted the document accurately identifies an account or accounts of a customer or customers state the name of the customer(s) and location of each such account and whether each such account remains in existence currently, and if not; when the account ceased to exist.

4

Request for Admission No. 4

The document accurately sets forth the details of a transaction processed by defendant.

Interrogatory No. 4(a)

For each document that you did not admit in Request for Admission No. 4, set forth the document production number and state the facts which evidence that the document does not accurately set forth the details of a transaction processed by defendant.

Interrogatory No. 4(b)

For each document that you have admitted the document accurately sets forth the details of a transaction processed by the defendant identify the name, title and office location of each employee with knowledge of this transaction.

Interrogatory No. 4(c)

For each document that you have admitted the document accurately sets forth the details of a transaction processed by defendant, state whether the transaction was identified and/or reported as a suspicious transactions by defendant's Money Laundering Reporting Officer or any other employee of defendant as part of defendant's AML or terror financing compliance efforts and identify the name, title and office location of each employee with knowledge of this fact.

Date:   July 5, 2006

OSEN & ASSOCIATE, LLC

By

Gary M. Osen (GM-5790)
Joshua D. Glatter (JG-0184)
Peter Raven-Hansen, Of Counsel
700 Kinderkamack Road
Oradell, New Jersey 07649
(201) 265-6400

5

KOHN, SWIFT & GRAF, P.C.
Robert A. Swift
Steven M. Steingard
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

GLANCY BINKOW & GOLDBERG LLP
Andrew D. Friedman (AF-6222)
Of Counsel
430 Park Avenue
New York, New York 10022
(212) 308-6300

Attorneys for Plaintiffs

| | | |
|---|---|---|
| NWPL000001 | NWPL000010 | NWPL000018 |
| NWPL000002 | NWPL000011 | NWPL000019 |
| NWPL000003 | NWPL000012 | NWPL000020 |
| NWPL000004 | NWPL000013 | NWPL000021 |
| NWPL000005 | NWPL000014 | NWPL000022 |
| NWPL000006 | NWPL000015 | NWPL000023 |
| NWPL000007 | NWPL000016 | NWPL000024 |
| NWPL000008 | NWPL000016 | NWPL000025 |
| NWPL000009 | NWPL000017 | |

# SCHEDULE A

# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

TZVI WEISS, et al.,                          :
                                             :        Case No. CV 05 4622
                         Plaintiffs,         :
                                             :
   -against-                                 :        Honorable Charles P. Sifton
                                             :
NATIONAL WESTMINSTER BANK, PLC,              :        Magistrate Judge Kiyo A. Matsumoto
                                             :
                         Defendant.          :
                                             :
------------------------------------------------------x

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT NATIONAL WESTMINSTER BANK, PLC

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs hereby request that defendant NATIONAL WESTMINSTER BANK, PLC in the above-captioned litigation produce and permit plaintiffs to inspect and copy all of the following documents which are in the possession, custody or control of defendant, and/or defendant's agents or attorneys within thirty (30) days following the date of service of these requests.

### DEFINITIONS

1.    As used herein, the following terms are defined as indicated:

    a.    "Person" is synonymous with the definition contained in Local Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules").

    b.    "Agent" shall mean any past or present director, officer, counsel, shareholder, representative, consultant, or employee of any person or entity or any person who assisted or acted or purported to act or assist for or on behalf of such person or entity.

    c.    "Communication" is synonymous with the definition contained in Local Rule 26.3.

    d.    "Meeting" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more persons for any purpose, whether planned, arranged, scheduled or not.

e.    "NatWest," "You," or "Defendant" means defendant National Westminster Bank, Plc and the scope of this definition is the same as the definition of "Parties" contained in Local Rule 26.3 and also includes any Agents, or any person acting, or purporting to act, on behalf of Defendant.

f.    "RBS" means the Royal Bank of Scotland Group and the scope of this definition is the same as the definition of "Parties" contained in Local Rule 26.3.

g.    "Employee" means, without limitation, current and former officers, directors, executives, managers, sales personnel, secretaries, clerical staff, messengers, or any other person employed by defendant.

h.    "Document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

i.    "Identify" is synonymous with the definition contained in Local Rule 26.3.

j.    "Complaint" refers to the above-captioned action.

k.    "Concerning" is synonymous with the definition contained in Local Rule 26.3.

l.    "And/Or" is synonymous with the definition contained in Local Rule 26.3.

m.    "All/Each" is synonymous with the definition contained in Local Rule 26.3.

n.    "Number" is synonymous with the definition contained in Local Rule 26.3.

o.    "Including" means "including without limitation" or "including, but not limited to."

p.    "HAMAS" means Harakat al-Muquawama al-Islamiyya or Islamic Resistance Movement as well as well as any persons acting for, or on behalf of such entities, and persons who are members or directors or employees of any such entities.

q.    "INTERPAL" means the Palestine Relief and Development Fund.

r.    "Terrorist" and "Terrorist Organizations" include but are not limited to individuals or entities designated as a Foreign Terrorist Organization ("FTO"), as that term is defined in 8 U.S.C. § 1189 of the Antiterrorism

and Effective Death Penalty Act of 1996, Specially Designated Terrorist ("SDT"), as defined by Executive Order 12947, or Specially Designated Global Terrorists ("SDGT"), as defined by Executive Order 13224, by the United States, or as a terrorist individual or organization by any other country including, but not limited to the Republic of France, the European Union individually or by its member nations, and State of Israel.

s.     "Israeli Watchlist" or "Israeli Unlawful Organizations List" means the official list prepared by the Israeli Minster of Defense and promulgated by the Israeli Ministry of Defense in the official gazette – the Announcements and Advertisements Gazette and available from the Ministry of Justice website:     *http://www.justice.gov.il/NR/rdonlyres/57C31612-EFC6-4452-A345-3C082F68D03D/4465/orgillegal2.doc*

t.     "Generated" means written, typed, or otherwise originating from or at the behest of the person or entity that created the document which is the subject of the request.

u.     "Anti-money laundering" or "AML" is synonymous with the definition used by the Financial Action Task Force on Money Laundering.

## INSTRUCTIONS

1.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these document requests shall be deemed to be continuing in nature so that if NatWest subsequently discovers or obtain possessions, custody or control of any document previously requested or required to be produced, defendant shall promptly make such document available.

2.     In producing documents and other materials, you are to furnish all documents in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

3.     In producing documents, you are requested to produce the original of each document requested, together with all non-identical copies and drafts of such documents. If the original of any document cannot be located, a copy shall be produced in lieu of thereof, and shall be legible and bound or stapled in the same manner as the original.

4.     If any requested document cannot be produced in full, you are to produce it to the extent possible, indicating which document, or portion of such document, is being withheld, and the reason that document is being withheld.

5.     Documents not otherwise responsive to these document requests shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by these document requests, or if such documents are attached to documents called for by

these document requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluation or similar materials.

6. All documents shall be produced in the same order as they are kept or maintained by you in the ordinary course of your business.

7. All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If for any reason the container cannot be produced, produce copies of all labels or other identifying marks.

8. Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s).

9. Documents attached to each other should not be separated.

10. If a document once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the document and state the details concerning its loss.

11. In responding to these requests you are to include documents (a) obtained from witnesses who gave information to any governmental agency or investigatory body; (b) that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceedings or investigations; or (c) obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

12. If you claim the attorney-client privilege or any other privilege or work product protection for any document, provide a detailed privilege log that contains at least the information required by Local Rule 26.2 (2)(A) for each document that you have withheld.

13. Unless a different time period is specified, the relevant time period (the "Relevant Period") for these document requests is **January 1, 1990 through the present**.

## DOCUMENTS REQUESTED

1. All account records maintained by, or in the custody and control of Defendant that concern INTERPAL, including account opening records, bank statements, wire transactions, deposit slips and all correspondence between Defendant and INTERPAL.

2. All documents and communications by or to Defendant concerning INTERPAL, including all internal reports and the contents of any internal investigations undertaken by Defendant that reference INTERPAL.

3. All non-privileged documents and communications by or to the Defendant from or to banking regulatory authorities in the United States, United Kingdom, or the European Union including, but not limited to, the U.S. Department of Justice, U.S. Department of the Treasury Office of the Comptroller of the Currency, U.S. Department of the Treasury Financial Crimes Enforcement Network, The Charity Commission for England and Wales, the Bank of England, the Financial Services Authority in the United Kingdom, concerning INTERPAL and or accounts maintained by the Defendant on INTERPAL's behalf.

4. All documents and communications by or to Defendant concerning the existence of the Israeli Watchlist or Israeli Unlawful Organizations List.

5. All documents and communications by or to Defendant concerning the existence of the United States FTO, SDT or SDGT lists.

6. All documents and communications by or to Defendant concerning the contents or findings of the Israeli Watchlist or Israeli Unlawful Organizations List.

7. All documents and communications by or to Defendant concerning the contents or findings of the United States FTO, SDT or SDGT lists.

8. All documents and communications by or to Defendant concerning the "Union of Good" a/k/a Coalition of Benevolence a/k/a *I'Tilafu Al-Khayr*.

9. All documents and communications by or to Defendant concerning Yussef al-Qaradawi a/k/a Yousuf Al-Qardawi a/k/a Yousef Al-Qaradhawi a/k/a Yussuf Al-Kardawi.

10. All documents and communications by Defendant concerning the following alleged HAMAS agents or front organizations:

    a.    Holy Land Foundation For Relief and Development;

    b.    Al-Aqsa Charitable Foundation (Germany, Belgium, Denmark, and the Netherlands);

    c.    the Tulkarem Zakat Committee a/k/a Tulkarm Charitable Society a/k/a Tulkarem Charity Committee a/k/a *Lajnat Zakkah Tul-Karem*;

    d.    the Zakat and Sadadaqat Committee Ramallah Bireh a/k/a Ramallah (and Al-bireh) Charitable Society a/k/a *Lajnat Zakkah Ramallah* a/k/a *Lajinat Zakkah Ramallah wa-Al-Bireh*;

    e.    the Nablus Zakat Committee a/k/a Nablus Charitable Committee a/k/a Nablus Islamic Aid Committee a/k/a Islamic Assistance Society Nablus a/k/a *Lajnat Al-Ighatha Al-Islamia Nablus*;

f.      Al Islah Charitable Society a/k/a *Jamaiat Al-Islah Al-Khayriah/* a/k/a *Jamaiat Al-Islah Al-Khayriah Al-Ijtamiah bayt Lehem*;

g.      Orphan Care Society of Bethlehem a/k/a Bethlehem Society for Orphans a/k/a *Jamaiat Ra'iat Al-Yatim FiBayt-Lehem*;

h.      Hebron Islamic Charitable Society a/k/a Islamic Charity Society of Hebron a/k/a *l-Jamaia Al-Islamia Al-Khiria Al-Khalil*

i.      Jenin Zakat Committee a/k/a Jenin Charitable Society a/k/a *Lajnat Amwal Al-Zakkah Jenin*

j.      Nablus Al-Tadam Charitable Society a/k/a ISLAMIC SOLIDARITY (TADAMON) CHARITY SOCIETY a/k/a *Jamaiat Al-Tadamon (Al-Tadamun)*

k.      Al Salah Society – Gaza a/k/a Al-Salah Islamic Association – Gaza a/k/a Islamic Virtue Society – Gaza a/k/a *Jamaiat Al-Salah Al-Islamaia*

l.      Al Mujama al Islamiya – Gaza a/k/a ISLAMIC CENTER a/k/a Central Islamic Society – Gaza Strip

m.      Al Jama'ia al Islamiya – Gaza a/k/a The Islamic Society a/k/a ISLAMIC CHARITY SOCIETY

n.      Qalqilya Charity Committee a/k/a *Lajnat Zakkah Qalqiliya*

o.      Beit Fajar Charity Committee a/k/a Bet Fajar Zakat Committee

p.      Islamic Charitable Society in the Gaza Strip

q.      Muslim Youth Association of Hebron a/k/a Jamaiat Al-Shuban Al-Muslemia

r.      Tobas Zakat Committee

s.      Khan Yunis Zakat Committee a/k/a Lajnat Al-Zakkah Al-Rame Khan Yunes

t.      Society of Islamic Science and Culture Committee

u.      Al-Ram Zakat Committee – Jerusalem

v.      Al-Dheisha Refugee Camp Zakat Committee – Bethlehem

w.      Mercy Association for Children – Gaza

x.      Orphans and Needy Welfare Society – Gaza

y.      Kalkilya Society for the Disabled a/k/a Qalqilya Society for the Disabled

z.      Social Charitable Society – Rafa

aa.     Al-Sanabil – Saida, Lebanon

bb.     Jarach Camp

cc.     Al-Bir Wal-lhssan Camp

dd.     Azmi Al-Mufti Camp

ee.     Ma'dab Camp

ff.     Soof Camp

gg.     Al-Wahadat Camp

hh.     Al-Rasifia Camp

ii.     Jabal Al-Nadheef

jj.     Al-Hussain Camp

kk.     Al-Zarkaa Camp

ll.     Hitteen Camp

mm.     Al-Bak'aa Camp

nn.     Islamic Relief Committee – Um-Alfahm

oo.     Sowailah Camp

pp.     Al Hai'a Al-Islamiah Liri'aya – Lebanon

qq.     The Mercy Association for Children

rr.     Al-Bir Committee – Al-Koora –Jordan

ss.     Al-Bir Committee Alshoona Shamalia – Jordan

tt.     Al Ramtha Islamic Center – Jordan

7

uu.     Haiat Al Aamal Al Khairia – Jordan

vv.     Palestine Support Committee – Jordan

11.     All documents concerning Defendant's freezing of INTERPAL'S accounts maintained by NatWest in March of 1996 including any documents that were the catalyst or basis of any decision to freeze said accounts.

12.     All documents concerning Defendant's freezing of INTERPAL'S accounts maintained by NatWest in August and/or September of 2003 including any documents that were the catalyst or basis of any decision to freeze said accounts

13.     All documents concerning NatWest's anti-money laundering efforts, "Know Your Customer" procedures, or other measures NatWest used to prevent the rendering of financial services to Terrorists and Terrorist Organizations.

14.     All documents including organization charts which refer or relate to the organization of NatWest and the identity of its officers, directors, branch managers and all parents and subsidiaries.

15.     All documents including organization charts which refer or relate to the organization of RBS and the identity of its officers, directors, branch managers and all parents and subsidiaries.

16.     All documents concerning or consisting of agency agreements between RBS and NatWest.

17.     Copies of all internal NatWest documents related to the following subjects and/or departments:

    a.      Account Opening Procedures:

        i.      Documents, including manuals, instruction booklets, or procedures outlining the information to be obtained and verified before an account may be opened with NatWest;

        ii.     A copy of an account opening application;

        iii.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts.

    b.      Security Department Procedures:

        i.      Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division

responsible for maintaining appropriate security for NatWest's business operations (a "Security Department");

ii.     Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Security Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Security Department's responsibilities;

iii.    Documents concerning procedures and software used for monitoring, review and investigation of account activity;

iv.     Copies of all internal or external audit plans for account activity;

v.      Documents concerning training or procedural guidelines for Security Department members who were tasked with monitoring account activity;

vi.     Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

vii.    Copies of all information technology ("IT") protocols used to monitor accounts;

viii.   Policy and procedures for the reporting of suspicious activity;

ix.     Copies of all organizational charts for any Security Department;

x.      Provide copies of any "Corporate Code of Conduct" guidelines that apply to Security Department employees.

c.   Customer Account Department:

i.      Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup or division responsible for customer accounts ("Customer Account Department");

ii.     Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Customer Account Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Customer Account Department's responsibilities;

iii.    Documents concerning procedures and software used for the management of Customer Account Department files;

9

iv.    Documents concerning training or procedural guidelines for the maintenance of Customer Account Department files;

v.    Documents concerning procedures and protocols used to ensure the authenticity of client correspondence to officers such as signature verifications;

vi.    Copies of all IT protocols used by account officers to assist them with their files;

vii.    Documents concerning policies or procedures used to monitor compliance with the Customer Account Department filing procedures;

viii.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

ix.    Copies of all organizational charts for the Customer Account Department;

x.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Customer Account Department employees.

d.    Compliance Department Procedures:

i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for compliance with applicable banking regulations ("Compliance Department");

ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Compliance Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Compliance Department's responsibilities;

iii.    Documents concerning procedures and software used for the monitoring, review, and investigation of account activity;

iv.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

v.    Documents concerning training or procedural guidelines for Compliance Department employees;

vi.    All documents or forms used to report on the monitoring or investigation of accounts by Compliance Department employees;

vii.    Copies of all IT protocols used by Compliance Department employees to assist them in monitoring and investigating account activity;

viii.    Copies of all organizational charts for the Compliance Department;

ix.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Compliance Department employees.

e.    Internal Audit Department procedures:

i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for internal audit services for NatWest;

ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Internal Audit Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Internal Audit Department's responsibilities;

iii.    Documents concerning procedures and software used for the monitoring, review and investigation of account activity by Defendant's Internal Audit Department;

iv.    Documents concerning training or procedural guidelines for internal audit department employees or employees whose job it is/was to monitor and report on accounts;

v.    Copies of all IT protocols used by the Internal Audit Department employees to assist them in reporting on the monitoring or investigation of accounts;

vi.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

vii.    All documents or forms used to report on the monitoring or investigation of accounts by Internal Audit Department employees;

viii.    Policy and procedures for the reporting by Internal Audit Department employees of suspicious activity;

      ix.      Copies of all organizational charts for the Internal Audit Department;

      x.      Provide copies of any "Corporate Code of Conduct" guidelines that apply to Internal Audit Department employees.

f.    Bank Secrecy Department:

      i.      Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for monitoring regulating, or enforcing compliance with legal, regulatory, and reporting requirements concerning U.S. and foreign bank secrecy obligations ("Bank Secrecy Department");

      ii.      Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Bank Secrecy Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Bank Secrecy Department's responsibilities;

      iii.      Procedures and protocols concerning domestic and international bank secrecy requirements for NatWest's customers or transactions processed by NatWest;

      iv.      Copies of all guidance, policy, or procedures concerning bank secrecy laws and regulations and NatWest's compliance requirements regarding same;

      v.      Copies of all manuals or other documents created by or for Defendant concerning bank secrecy requirements and related areas of compliance;

      vi.      All documents describing the relationship and division of responsibility between the Bank Secrecy Department, Legal Department, Compliance Department, Internal Audit Department, IT and any outside entities or individuals regarding bank secrecy compliance, investigation of suspicious activity and reporting of suspicious activity;

      vii.      Documents concerning the procedures and software used for the monitoring of, or audit plans for compliance with, bank secrecy requirements;

      viii.      Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

ix.     Documents concerning training or procedural guidelines on bank secrecy compliance for NatWest employees including Bank Secrecy Department employees;

x.      All documents or forms used to monitor compliance with bank secrecy obligations;

xi.     Copies of all IT protocols used by employees responsible for bank secrecy compliance;

xii.    All documents concerning how any conflicts between bank secrecy obligations are reconciled with obligations to report suspicious activities;

xiii.   Provide copies of all suspicious activity reports or memoranda filed through or by the Bank Secrecy Department;

xiv.    Copies of all organizational charts for the Bank Secrecy Department;

xv.     Provide copies of any "Corporate Code of Conduct" guidelines that apply to the Bank Secrecy Department employees.

g.   Terror Financing Designations or Warnings:

i.      All documents concerning Defendant's system, including software, for tracking, documenting, cataloging, listing, or identifying the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body or identifying any transactions or occurrences associated with Terrorists or Terrorist Organizations;

ii.     Copies of all IT protocols or written descriptions of all software programs used to monitor the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body;

iii.    All manuals or internal protocols describing the appropriate actions to be taken by Defendant's employees to examine whether any designated Terrorists or Terrorist Organizations maintains

13

accounts, receives funds, engages in transactions or otherwise uses NatWest's services;

iv. All documents or internal manuals describing the appropriate actions to be taken if NatWest's services are being used in any manner by a Terrorist or Terrorist Organization.

18. Copy of any insurance policy which may provide coverage in whole or in part for the claims asserted in the Complaint.

19. All documents concerning any formal or informal document retention policy maintained by NatWest, any NatWest branch, or any NatWest subsidiary or affiliate.

Date: June 30, 2006

OSEN & ASSOCIATE, LLC

By _____

Gary M. Osen (GO-5790)
Joshua D. Glatter (JG-0184)
Peter Raven-Hansen, Of Counsel
Aaron Schlanger (AS-9372)
700 Kinderkamack Road
Oradell, New Jersey 07649
(201) 265-6400

KOHN, SWIFT & GRAF, P.C.
Robert A. Swift
Steven M. Steingard
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

GLANCY BINKOW &
GOLDBERG LLP
Andrew D. Friedman (AF-6222)
Of Counsel
430 Park Avenue
New York, New York 10022
(212) 308-6300

Attorneys for Plaintiffs

14

# Exhibit C-1

## &5 National Westminster Bank

FINSBURY PARK BRANCH                    21MAR1997   OUR REF.   UTFWD97032100018

PAYMENT ABROAD URGENT TRANSFER ·

Our Ref UTFWD97032100018   Branch Ref 0000   Remitter's Ref BTR/97/32

DEBIT ADVICE

Remitter's Name INTERPAL - LONDON

Paying Bank                              Beneficiary Bank
ARAB BANK LTD                            PALESTINIAN INVESTMENT BANK
P O BOX 138                              BETHLEHEM BRANCH
15 MOORGATE                              WEST BANK
LONDON EC2R 6LP

Beneficiary  .                           Beneficiary Account no
ORPHAN CARE SOCIETY                      70080
NEAR THE OLD POST OFFICE
BETHLEHEM TEL/FAX T45 094

         *** Amount remitted -          3,967.95  US DLRS    ***

Debit details              STERLING          US DLRS   EXCHANGE RATE

PAYMENT AMOUNT  -                            4,000.00

CHARGES:-

COMMISSION       -         20.00*            32.05*    1.6025
PLUS VAT         -          0.00              0.00

TRANSMISSION     -          0.00
PLUS VAT         -          0.00


         DEBIT            4,000.00  US DLRS   ACCOUNT NO 140/00/04156838


* EQUIVALENT AMOUNT FOR INFORMATION ONLY - NOT INCLUDED IN DEBIT TOTAL

National Westminster Bank Plc
Registered Number 929027 England  Registered Office 41 Lothbury, London EC2P 2BP

Member of the NatWest Life and NatWest Unit Trust Marketing Group
Member of IMRO

# Exhibit C-2

16 Aug 02 12:32    AT                              0000                        P.2

**&** NatWest 

COPY

## PAYMENT DEBIT ADVICE

000038/000478

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 9999
LONDON          NW6 1RW

Our ref:  IBCCTYO00108846
Your ref: BTR/2002/118
Date:     8th August 2002

### We confirm having remitted the following Urgent transfer.

Amount debited:  USD 10,000.00
From account:    140-00-04156838
Amount sent:     USD 9,909.08

Debit date: 8th August 2002

In favour of:
BEIT FAJJAR ZAKAT COMMITTEE

Beneficiary bank:
CAIRO-AMMAN BANK
BEITHLEHEM BRANCH.  PALESTINE

Beneficiary account number:
11034602

Payee bank:
CITIBANK N.

Payment details:
CHARITABLE ORGANISATIONS RUNNING CO
STS. STUDENT AID

Ordered by:
PRDF

Transactional information:
Requested amount;          USD 10,000.00

Rate:
Currency exchange contract:

NWB commission charges:     0.00
Agent banks charges:        0.00

RECEIVED  1 2 AUG 2002

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 31 of 34

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR.
Regulated by the Financial Services Authority.
Agency agreements exist between members of The Royal Bank of Scotland Group.

NatWest Bank PLC

C0000001000

# Exhibit C-3

16 Aug 02 12:32    AT                                    0000                    P.2

# ✿ NatWest

## We confirm having remitted the following Urgent transfer.

Amount debited:    USD  10,000.00                    Debit date:  8th August 2002
From account:      140-00-04156838
Amount sent:       USD  9,969.68

In favour of:                                        Beneficiary bank:
BEIT FAJJAR ZAKAT COMMITTEE                          CAIRO-AMMAN BANK
                                                     BEITHLEHEM BRANCH,  PALESTINE

Beneficiary account number:                          Payee bank:
11034602                                             CITIBANK N.

Payment details:                                     Ordered by:
CHARITABLE ORGANISATIONS RUNNING CO                  PRDF
STS. STUDENT AID

Transactional information:

Requested amount:           USD  10,000.00

Rate:
Currency exchange contract:

NWB commission charges:        0.00

Agent banks charges:           0.00

RECEIVED  1 2 AUG 2002

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 31 of 34

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority.
Agency agreements exist between members of The Royal Bank of Scotland Group.

**NatWest Bank PLC**

# Exhibit C-4


**NatWest**

## PAYMENT DEBIT ADVICE

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON          NW6 1RW

Our ref: IBCCTYO00121258
Your ref: BTR/Z002/109
Date.     16th August 2002

We confirm having remitted the following Urgent transfer.

Amount debited:   USD 1,749.00
From account:     140-00-04156838
Amount sent.      USD 1,718.65

Debit date: 16th August 2002

In favour of:
ITLINA ZAKAT COMMITTEE

Beneficiary bank:
CAIRO AMMAN BANK
SHALLALA STREET
HEBRON

Beneficiary account number:
0012111001017

Payee bank:
CITIBANK N.

Payment details:
SPONSOR AN ORPHAN PROGRAMME

Ordered by:
PRDF

Transactional information:

Requested amount:        USD 1,749.00

Rate:
Currency exchange contract:

NWB commission charges:      0.00

Agent banks charges:         0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

National Westminster Bank Plc. Registered in England no 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority

NWPLO00004

# Exhibit C-5

# ८ NatWest

## PAYMENT DEBIT ADVICE

0000 57/000097

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON          NW6 1RW

Our ref:   IBCCTYO00121256
Your ref:  BTR/2002/168
Date:      16th August 2002

## We confirm having remitted the following Urgent transfer.

Amount debited:   USD 5,796.00
From account:     140-00-04155838
Amount sent:      USD 5,765.65

Debit date:  16th August 2002

In favour of:
BEIT FAJJAR ZAKAT COMMITTEE

Beneficiary bank:
CAIRO AMMAN BANK
BEITHLEHEM BRANCH, PALESTINE

Beneficiary account number:
11034602

Payee bank:
CITIBANK N.

Payment details:
SPONSOR AN ORPHAN PROGRAMME

Ordered by:
PRDF

Transactional information:

Requested amount:          USD 5,796.00

Rate:
Currency exchange contract:

NWB commission charges:    0.00

Agent banks charges:       0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

Sheet 3) of 48

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR. Regulated by the Financial Services Authority.

NWPL000005

# Exhibit C-6



## PAYMENT DEBIT ADVICE

000057/000075

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON            NW6 1RW

Our ref:  IBCCTYO00121393
Your ref: BTR/2002/170
Date:     16th August 2002

### We confirm having remitted the following Urgent transfer.

Amount debited:   USD 1,906.00
From account:     140-00-04156838
Amount sent:      USD 1,875.65

Debit date: 16th August 2002

In favour of:
ORPHAN CARE SOCIETY

Beneficiary bank:
ARAB BANK PLC
(BETHLEHEM BRANCH)
MANGER STREET
BETHLEHEM
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
7099665

Payee bank:
ARABGB2LXXX

Payment details:
SPONSOR AN ORPHAN PROGRAMME

Ordered by:
PRDF

Transactional information:

Requested amount:        USD 1,906.00

Rate:
Currency exchange contract:

NWB commission charges:     0.00

Agent banks charges:        0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 13 of 48

National Westminster Bank plc. Registered in England No 929027   Registered Office: 135 Bishopsgate  London EC2M 3UR
Regulated by the Financial Services Authority.

NWPL000006

# Exhibit C-7



## PAYMENT DEBIT ADVICE

000008/000727

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:  IBCCTYO00166163
Your ref: BTR/2002/196
Date:     17th September 2002

### We confirm having remitted the following Standard transfer.

Amount debited:  GBP  6,547.00
From account:    600822-95142940
Amount sent:     GBP  6,533.00

Debit date:  17th September 2002

In favour of:
ORPHAN CARE SOCIETY

Beneficiary bank:
ARAB BANK PLC
(BETHLEHEM BRANCH)
MANGER STREET
BETHLEHEM
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
7099665

Payee bank:
ARABGB2LXXX

Payment details:
SPONSOR AN ORPHAN/NEEDY CHILD
PROGRAMME

Ordered by:
PALESTINIANS DEV FUND INTERPAL

Transactional Information:

Requested amount:        GBP  6,547.00

Rate:
Currency exchange contract:

NWB commission charges:   0.00

Agent banks charges:      0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

National Westminster Bank plc, Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority.
Agency agreements exist between members of The Royal Bank of Scotland Group

**NatWest Bank PLC**

# Exhibit C-8

Nov 02 22:11    Interpal                020 450 8004              p.2

# ॐ NatWest

## PAYMENT DEBIT ADVICE

000055/000/28

THE SECRETARY                          Our ref:  IBCCTYO00264195
PALESTINIANS RELIEF & DEV FUND         Your ref: DTP2002/053
PO BOX NO 3333                         Date:    15th November 2002
LONDON
NW6 1RW

## We confirm having remitted the following Standard transfer.

Amount debited:   GBP 2,619.00          Debit date: 15th November 2002
From account:     000022-95142940
Amount sent:      GBP 2,605.00

In favour of:                           Beneficiary bank:
ITHNA ZAKAT COMMITTEE                   CAIRO AMMAN BANK
                                        SHALLALA STREET HEBRON
                                        PALESTINE

Beneficiary account number:             Payee bank:
0012111001017                           CAIRO AMMAN

Payment details:                        Ordered by:
SPONSOR AN ORPHAN/NEEDY CHILD           PALESTINIANS DEV FUND INTERPAL
PROGRAMME RAMADAN PROJECTS

Transactional information:

Requested amount:     GBP 2,605.00

Rate:
Currency exchange contract:

NWB commission charges:   GBP 14.00

Agent banks charges:      0.00

All charges are netted with the transaction

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

set 44 of 45

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR. Regulated by the Financial Services Authority

NWPIJ000008

# Exhibit C-9

**ಲ NatWest**

## PAYMENT DEBIT ADVICE

000055/000710

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   IBCCTYO00264778
Your ref:  BTR/2002/256
Date:     15th November 2002

### We confirm having remitted the following Standard transfer.

Amount debited:  GBP 5,707.00
From account:    600822-95142940
Amount sent:     GBP 5,693.00

Debit date:  15th November 2002

In favour of:
ORPHAN CARE SOCIETY

Beneficiary bank:
ARAB BANK PLC
(BETHLEHEM BRANCH)
MANGER STREET
BETHLEHEM
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
7099665

Payee bank:
ARABGB2LXXX

Payment details:
SPONSOR AN ORPHAN/NEEDY CHILD PROGR
AMME, RAMADAM PROJECTS

Ordered by:
PALESTINIANS DEV FUND INTERPAL

Transactional information:

Requested amount:       GBP 5,707.00

Rate:
Currency exchange contract:

NWB commission charges:      0.00

Agent banks charges:      0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 78 of 45

National Westminster Bank plc  Registered in England No 929027.  Registered Office: 135 Bishopsgate, London EC2M 3UR

Regulated by the Financial Services Authority

Agency agreements exist between members of The Royal Bank of Scotland Group

**NatWest Bank PLC**

# Exhibit C-10

 **NatWest**

## PAYMENT DEBIT ADVICE

000055/000712

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   IBCCTYO00264526
Your ref:  BTR2002/257
Date:      15th November 2002

### We confirm having remitted the following Urgent transfer.

Amount debited:   GBP 5,897.00
From account:     600822-95142940
Amount sent:      GBP 5,877.00

Debit date:  15th November 2002

In favour of:
BEIT FAJJAR ZAKAT COMMITTEE

Beneficiary bank:
CAIRO -AMMAN BANK
BEITHLEHEM BRANCH
PALESTINE

Beneficiary account number:
11034602

Payee bank:
CAIRO AMMAN

Payment details:
RAMADAN PROJECTS SPONSOR AN
ORPHAN /NEEDY CHILD PROGO

Ordered by:
PALESTINIANS DEV FUND INTERPAL

**Transactional Information:**

Requested amount:          GBP 5,897.00

Note:
Currency exchange contract:

NWB commission charges:     0.00

Agent banks charges:        0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

Sheet 50 of 45

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority
Agency Agreements exist between members of The Royal Bank of Scotland Group

**NatWest Bank PLC**

NWPL0000010

# Exhibit C-11

 **NatWest**

# PAYMENT DEBIT ADVICE

D00055/000705

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:  IBCCTYO00264562
Your ref:  BTR 2002/260
Date:      15th November 2002

## We confirm having remitted the following Standard transfer.

Amount debited:  GBP 2,760.00
From account:    600822-95142940
Amount sent:     GBP 2,746.00

Debit date: 15th November 2002

In favour of:
AL-KHADER ZAKAT + SADAQAT COMMITTEE

Beneficiary bank:
EYGPTIAN ARAB BANK
BEITHLEHEM PALESTINE

Beneficiary account number:
0050002511

Payment details:
RAMADAN PROJECTS

Ordered by:
PALESTINIANS DEV FUND INTERPAL

Transactional information:

Requested amount:        GBP 2,760.00

Rate:
Currency exchange contract:

NWB commission charges:     0.00

Agent banks charges:        0.00

This notification is not confirmation of receipt of the funds by the beneficiary – the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 23 of 45

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR

Regulated by the Personal Investment Authority

Agency Arrangements exist between members of The Royal Bank of Scotland Group.

NatWest Bank Plc

# Exhibit C-12

سراج الخابضوسف
لجنة زكاة الإمام
علي ابن

**&NatWest**

## PAYMENT DEBIT ADVICE

000284/000995

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   IBCCTYO00370821
Your ref:  BTR/2003/57
Date:      24th January 2003

### We confirm having remitted the following Standard transfer.

Amount debited:   GBP  4,500.00
From account:     600822-95142967
Amount sent:      GBP  4.486.00

Debit date: 24th January 2003

In favour of:
ITHNA ZAKAT COMMITTEE

Beneficiary bank:
CAIRO-AMMAN BANK
SHALLALA STREET
HEBRON, PALESTINE

Beneficiary account number:
0012111001017

Payee bank:
CAIRO AMMAN

Payment details:
ZAKAT DISTRIBUTION, QURBANI MEAT/
PROJECTS

Ordered by:
PALESTINIANS DEV FUND INTERPAL

Transactional information:

Requested amount:        GBP  4,500.00

Rate:
Currency exchange contract:

NWB commission charges:       0.00

Agent banks charges:          0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

National Westminster Bank Plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority
Agency agreements exist between members of The Royal Bank of Scotland Group.

NatWest Bank PLC

NWPL000012

# Exhibit C-13

للسيد (الحاج) أبو سارة
...النور ...

**✿ NatWest**

## We confirm having remitted the following Standard transfer.

Amount debited:  GBP 4,500.00
From account:    600822-95142967
Amount sent:     GBP 4,486.00

Debit date:  24th January 2003

In favour of:
ITHNA ZAKAT COMMITTEE

Beneficiary bank:
CAIRO-AMMAN BANK
SHALLALA STREET
HEBRON, PALESTINE

Beneficiary account number:
0012111001017

Payee bank:
CAIRO AMMAN

Payment details:
ZAKAT DISTRIBUTION, QURBANI MEAT/
PROJECTS

Ordered by:
PALESTINIANS DEV FUND INTERPAL

**Transactional information:**

Requested amount:      GBP 4,500.00

Rate:
Currency exchange contract:

NWB commission charges:    0.00

Agent banks charges:       0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

مصل # c127

National Westminster Bank plc. Registered in England No 929027. Registered Office 135 Bishopsgate, London EC2M 3UR

Regulated by the Financial Services Authority

**NatWest Bank PLC**

Agency agreements exist between members of The Royal Bank of Scotland Group.

# Exhibit C-14

بسم الله الرحمن الر

## ✷ NatWest

## PAYMENT DEBIT ADVICE

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW5 1RW

Our ref: IBCCTYO00410266
Your ref: BTR 2003 81
Date: 19th February 2003

We confirm having remitted the following Standard transfer.

Amount debited: GBP 21,450.00
From account: 600B22-95142940
Amount sent: GBP 21,424.00

Debit date: 19th February 2003

In favour of:
TULKAREM ZAKAT COMMITTEE

Beneficiary bank:
ARAB BANK PLC
(TULKARM BRANCH)
TULKARM
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
90705000108500

Payee bank:
ARABGB2LXXX

Payment details:
SPONSORS AN ORPHAN/NEEDY CHILDPROG
RAMADAN PROJECTS QURBANI MEA

Ordered by:
PALESTINIANS DEV FUND INTERPAL

Transactional information:

Requested amount       GBP 21,450.00

Rate:
Currency exchange contract:

NWB commission charges:       0.00

Agent banks charges:       0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on this
information.

National Westminster Bank plc. Registered in England No 929027 / Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority.
Agency agreements hold licences recipient of The Royal Bank of Scotland Group.

NatWest Bank PLC

NWPI-000014

# Exhibit C-15

**&NatWest**

# PAYMENT DEBIT ADVICE

CCCC062/C01115

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   IBCCTYO00478191
~ ref: BTR/2003/133
1st April 2003

We confirm having remitted the following Standard transfer.

Amount debited:   GBP 18,000.00
From account:   600822-95142040
Amount sent:   GBP 17,974.00

Debit date:  1st April 2003

In favour of:
TULKAREM ZAKAT COMMITTEE

Beneficiary bank:
ARAB BANK PLC
(TULKARM BRANCH)
TULKARM
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
80705000106500

Payee bank:
ARABJOAX100

Payment details:
HUMANITARIAN AID

Ordered by:
PALESTINIANS DEV FUND INTERPAL

**Transactional information:**

Requested amount:      GBP 18,000.00

Rate:
Currency exchange contract:

NWB commission charges:      0.00

Agent banks charges:      0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 16 of 16

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority
Agency agreements which between them make all of The Royal Bank of Scotland Group.

**NatWest Bank PLC**

NWPL000015

# Exhibit C-16

08 May 03 09:59        Interpal              020 450 8004         P.1

**&3 NatWest**

## PAYMENT DEBIT ADVICE

C0C076/C03109

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:  IBCCTYO00526177
Your ref: BTR/2003/153
Date:    2nd May 2003

### We confirm having remitted the following Standard transfer.

Amount debited:  GBP  15,713.00
From account:   600822-95142975
Amount sent:    GBP  15,687.00

Debit date: 2nd May 2003

In favour of:
JENIN ZAKAT COMMITTEE

Beneficiary bank:
CAIRO-AMMAN BANK
JENIN BRANCH, PALESTINE

Beneficiary account number:
015002364000

Payee bank:
CAIRO AMMAN

Payment details:
SPONSOR A FAMILY PROG, SPONSOR AN
ORPHAN/NEEDY CHILD PROG

Ordered by:
PALESTINIANS DEV FUND INTERPAL

Transactional information:

Requested amount:      GBP  15,713.00

Rate:
Currency exchange contract:

NWB commission charges:    0.00

Agent banks charges:      0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 15 of 17

National Westminster Bank plc. Registered in England no 929027. Registered Office, 135 Bishopsgate, London EC2M 3UR

Regulated by the Financial Services Authority.

Agency agreements exist between members of The Royal Bank of Scotland Group.

**NatWest Bank PLC**

NWPL000016

# Exhibit C-17

**♻ NatWest**

## PAYMENT DEBIT ADVICE

010032/012000

THE SECRETARY
HUMAN APPEAL INTERNATIONAL
VICTORIA COURT
376 WILMSLOW ROAD
MANCHESTER
M14 6AX

Our ref:  IPOLVLO00806190
Your ref: JENIN
Date:     20th May 2003

### We confirm having remitted the following Standard transfer.

Amount debited:  GBP 29,559.00
From account:    010894-13822721
Amount sent:     GBP 29,559.00

Debit date:  20th May 2003

In favour of:
JENIN ZAKAT COMMITEE

Beneficiary bank:
AMMAN CAIRO BANK
JENIN BRANCH
JENIN WEST BANK
ISRAEL

Beneficiary account number:
0150023640000

Payment details:
HUMAN APPEAL ORPHANS AND PARCEL
FOOD PROJECT

Ordered by:
HUMAN APPEAL INTERNATIONAL

**Transactional information:**

Requested amount:        GBP 29,559.00

Rate:
Currency exchange contract:

NWB commission charges:   GBP 26.00

Agent banks charges:      0.00

Charges debited to account: 010894-15364828

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 1 of 1

National Westminster Bank plc, Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR

Regulated by the Financial Services Authority

NatWest Bank PLC    Agency agreements exist between members of The Royal Bank of Scotland Group.

NWAPI.000017

Exhibit C-18

01 Jul 03 14:18     Interpal                    020 450 8004          P.3

# ♻ NatWest

## PAYMENT DEBIT CONFIRMATION

0000-41003554

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   EBANKGO02356007
Your ref: +BTR/2003/21-025
Date.       27th June 2003
Delivery ref:   0020030627022818

## We confirm having remitted the following Standard transfer.

Amount debited:   GBP 2,210.00
From account       600822-95142975
Amount sent:        GBP 2,196.00

Debit date: 27th June 2003

In favour of
ITHNA ZAKAT COMMITTEE
ITHNA
HEBRON
PALESTINE

Beneficiary bank:
CAIRO-AMMAN BANK
BRANCH NO: 66
ISLAMIC BANKING DEPT, HEBRON
PALESTINE

Beneficiary account number:
0012111001017

Payee bank:
CAIRO AMMAN

Payment details:
ORPHAN SPONSORSHIP PROGRAMME
REFER TO ADVICE NOTICE FOR
FULL DETAILS

Ordered by:
INTERPAL

Transactional information:

Requested amount:         GBP 2,210.00

Rate:
Currency exchange contract:

NWB commission charges      0.00

Agent banks charges:        0.00

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

National Westminster Bank plc Registered in England No 2. 2 F Registered Office 135 Bishopsgate London EC2M 3UR

Regulated by the Financial Services Authority

# Exhibit C-19

 **NatWest**

## PAYMENT DEBIT CONFIRMATION

000191/002617

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:  EBANKGO02501572
Your ref: +BTR/03/434-036
Date:    11th July 2003
Delivery ref:  0020030711030025

### We confirm having remitted the following Standard transfer.

Amount debited:  GBP  15,330.00
From account:    600822-95142940
Amount sent:     GBP  15,330.00

Debit date: 11th July 2003

In favour of:
JENIN ZAKAT COMMITTEE
ALAWQAF BUILDING
ALHASBA STREET, JENIN
PALESTINE

Beneficiary bank:
CAIRO AMMAN BANK
NATIONAL COLLEGE STREET
RAMALLAH
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
015002364000

Payee bank:
BARCGB22XXX

Payment details:
CONTRIBUTION TOWARDS
DEIR GAZAHALA MOSQUE
PROJECT

Ordered by:
INTERPAL

Transactional information:

Requested amount:        GBP  15,330.00

Rate:
Currency exchange contract:

NWB commission charges:   GBP  11.00

Agent banks charges:      0.00

Charges debited to account: 600822-95142983

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 4 of 7

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR.
Regulated by the Financial Services Authority.
Agency agreements exist between members of The Royal Bank of Scotland Group.

**NatWest Bank PLC**

# Exhibit C-20

05 Aug 03 13:21    Interpal

 **NatWest**

## PAYMENT DEBIT CONFIRMATION

008186/002482

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   EBANKGO02676119
Your ref: +BTR/03/267-097
Date:      30th July 2003
Delivery ref:   0020030730023602

We confirm having remitted the following Standard transfer.

Amount debited:   GBP  73,757.00
From account:     600822-95142940
Amount sent:      GBP  73,757.00

Debit date: 30th July 2003

In favour of:
JENIN ZAKAT COMMITTEE
ALAWQAF BUILDING
ALHASBA STREET, JENIN
PALESTINE

Beneficiary bank:
CAIRO-AMMAN BANK
JENIN BRANCH
PALESTINE

Beneficiary account number:
015002364000

Payee bank:
CAIRO AMMAN

Payment details:
WANY RIYADH/SHARQIAH ORPHANS,
SCHOOL KIT AND NEEDY STUDENTS,
AND TWO FREEZER UNITS

Ordered by:
INTERPAL

Transactional information:

Requested amount:        GBP  73,757.00

Rate:
Currency exchange contract:

NWB commission charges:   GBP  11.00

Agent banks charges:      0.00

Charges debited to account: 600822-95142983

This notification is not confirmation of recoipt of the funds by the boneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

Sheet 29 of 31

National Westminster Bank plc. Registered In England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority.
Agency agreements exist between members of The Royal Bank of Scotland Group.

NatWest Bank PLC

NWPIT.000070

# Exhibit C-21

&#38; NatWest

## PAYMENT DEBIT CONFIRMATION

00305300053

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref: EBANKGO03242252
Your ref: +BTR/03/336-133
Date:    25th September 2003
Delivery ref:  0020030925025771

We confirm having remitted the following Standard transfer.

Amount debited:   GBP 5,000.00
From account:    600822-95142940
Amount sent:     GBP 5,000.00

Debit date: 25th September 2003

In favour of:
TULKAREM ZAKAT COMMITTEE
PO BOX 15
TULKAREM
PALESTINE

Beneficiary bank:
ARAB BANK PLC
(TULKARM BRANCH)
TULKARM
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
90705000106500

Payee bank:
ARABGB2LXXX

Payment details:
SPONSORSHIP PROGRAMME
FOR PERIOD ENDING 12/03

Ordered by:
INTERPAL

Transactional information:

Requested amount:        GBP 5,000.00

Rate:
Currency exchange contract:

NWB commission charges:     GBP 11.00

Agent banks charges:        0.00

Charges debited to account: 600822-95142983

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

National Westminster Bank plc. Registered in England No 929027. Registered Office 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority
A fully owned British subsidiary/is member of The Royal Bank of Scotland Group

NatWest Bank PLC

NWPL000021

# Exhibit C-22


## ♻ NatWest

## PAYMENT DEBIT CONFIRMATION

000092/001472

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:  EBANKGO03684066
Your ref: +BTR/03/369-178
Date:     5th November 2003
Delivery ref:  0020031105024512

**We confirm having remitted the following Standard transfer.**

Amount debited:  GBP 32,329.00
From account:    600822-95142940
Amount sent:     GBP 32,329.00

Debit date: 5th November 2003

In favour of:
JENIN ZAKAT COMMITTEE
ALAWQAF BUILDING
ALHASBA STREET, JENIN
PALESTINE

Beneficiary bank:
CAIRO-AMMAN BANK
JENIN BRANCH
PALESTINE

Beneficiary account number:
015002364000

Payee bank:
CAIRO AMMAN

Payment details:
REBUILDING OF VILLAGE MOSQUE,
RAMADAN AND SPONSORSHIP PROJECTS

Ordered by:
INTERPAL

Transactional information:

Requested amount:        GBP  32,329.00

Rate:
Currency exchange contract:

NWB commission charges:  GBP  11.00

Agent banks charges:      0.00

Charges debited to account: 600822-95142983

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

Sheet 36 of 59
National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority.
Agency agreements exist between members of The Royal Bank of Scotland Group.
NatWest Bank PLC

# Exhibit C-23

**&** **NatWest**

## PAYMENT DEBIT CONFIRMATION

005913/007271

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   EBANKGO04043706
Your ref: +BTR/03/346-217
Date:     9th December 2003
Delivery ref:   0020031209008413

### We confirm having remitted the following Standard transfer.

Amount debited:   GBP  3,678.00
From account:     600822-95142940
Amount sent:      GBP  3,678.00

Debit date:  9th December 2003

In favour of:
ISLAMIC CHARITABLE SOCIETY
PO BOX 147
AL-KHALIL
PALESTINE

Beneficiary bank:
ARAB BANK PLC
(HEBRON BRANCH)
HEBRON
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
5107500491

Payee bank:
ARABGB2LXXX

Payment details:
RAMADAN AND SPONSORSHIP PROJECTS
FOR ICS AL-SHYOUK

Ordered by:
INTERPAL

Transactional information:

Requested amount:          GBP  3,678.00

Rate: -
Currency exchange contract:

NWB commission charges:      GBP  11.00

Agent banks charges:         0.00

Charges debited to account: 600822-95142983

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept
any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the
information.

Sheet 1 of 1

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR.

Regulated by the Financial Services Authority.

**NatWest Bank PLC**

Agency agreements exist between members of The Royal Bank of Scotland Group.

NWPL000023

# Exhibit C-24



# PAYMENT DEBIT CONFIRMATION

0001000002002

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref:   EBANKGO04373357
Your ref: +BTR/04/43-234
Date:      13th January 2004
Delivery ref.  0020040113024014

## We confirm having remitted the following Standard transfer.

Amount debited:   GBP  17,000.00
From account:     600822-95142940
Amount sent:      GBP  17,000.00

Debit date:  13th January 2004

In favour of:
QURAN AND SUNNAH SOCIETY
QALQILYA
PALESTINE

Beneficiary bank:
ARAB BANK PLC
(QALQILIAH BRANCH)
QALQILIAH
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
5420423510

Payee bank:
ARABGB2LXXX

Payment details:
CHILD SPONSORSHIP PROGRAMME
AND QURBANI 2004 PROJECTS

Ordered by:
INTERPAL

## Transactional information:

Requested amount.       GBP  17,000.00

Rate:
Currency exchange contract:

NWB commission charges:    GBP  11.00

Agent banks charges:       0.00

Charges debited to account: 600822-95142983

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

Stage 53 of 54

Regulated by the Financial Services Authority

NatWest Bank PLC

Agency agreements exist between members of The Royal Bank of Scotland Group

# Exhibit C-25



## PAYMENT DEBIT CONFIRMATION

000105000045

THE SECRETARY
PALESTINIANS RELIEF & DEV FUND
PO BOX NO 3333
LONDON
NW6 1RW

Our ref: EBANKGO04373345
Your ref: +BTR/04/30-239
Date: 13th January 2004
Delivery ref: 0020040113024028

## We confirm having remitted the following Standard transfer.

Amount debited: GBP 3,500.00
From account: 600822-95142940
Amount sent: GBP 3,500.00

Debit date: 13th January 2004

In favour of:
ITHNA ZAKAT COMMITTEE
ITHNA
HEBRON
PALESTINE

Beneficiary bank:
CAIRO AMMAN BANK
NATIONAL COLLEGE STREET
RAMALLAH
PALESTINIAN TERRITORY (OCCUPIED)

Beneficiary account number:
0012111001017

Payee bank:
CAABJOANXXX

Payment details:
QURBANI 2004 PROJECT3

Ordered by:
INTERPAL

Transactional information:
Requested amount:        GBP 3,500.00

Rate:
Currency exchange contract:

NWB commission charges:   GBP 11.00
Agent banks charges:      0.00

Charges debited to account: 600822-95142983

This notification is not confirmation of receipt of the funds by the beneficiary - the Bank does not accept any liability whatsoever for any loss or damage arising in any way from any use of or reliance placed on the information.

National Westminster Bank plc. Registered in England No 929027. Registered Office: 135 Bishopsgate, London EC2M 3UR
Regulated by the Financial Services Authority
Agency agreements exist between members of The Royal Bank of Scotland Group.

NatWest Bank PLC

21 Jan 04 11:53      Interpal      020 450 8004      2:1

# Exhibit D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                     :

TZVI WEISS, *et al.*,                    :

                           :

               Plaintiffs,     :

                           :      CV 05-4622 (CPS) (KAM)

          - against -        :

                           :

NATIONAL WESTMINSTER BANK PLC,   :

                           :

             Defendant.     :

------------------------------------------------------------- X

### DEFENDANT NATIONAL WESTMINSTER BANK PLC'S
### RESPONSES AND OBJECTIONS TO PLAINTIFFS'
### FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

        Defendant National Westminster Bank Plc ("NatWest") responds pursuant to

Rules 26 and 34 of the Federal Rules of Civil Procedure to Plaintiffs' First Request for the

Production of Documents, dated June 30, 2006 (the "Document Requests" and individually a

"Request" or "Document Request"), as follows:

### RESERVATION OF RIGHTS

        1.      To the extent NatWest produces documents in response to the Document

Requests, it does so without conceding the materiality, admissibility or relevance of any such

documents, or of any other substantive responses to the Document Requests.

        2.      By producing a document, NatWest does not admit that such a document

is responsive to the Document Requests, nor does a response to the effect that NatWest will

produce a document indicate that such a document exists or can be located.

        3.      NatWest reserves all objections to the use of these responses and of any

documents it produces.  All such objections may be interposed by NatWest at the time of trial or

as otherwise required by the rules or order of the court.

4.     NatWest reserves the right to amend or supplement its responses and

objections to the Document Requests as additional documents are identified.

5.     The inadvertent production of any privileged or work product document

shall not be deemed a waiver of any claim of privilege or work product as to such document, and

NatWest reserves the right to require the return of all copies of any such document inadvertently

produced in response to the Document Requests. Insofar as the intentional production of any

document by NatWest pursuant to the Document Requests may be deemed to be a waiver of any

privilege or right, such waiver shall be deemed to be a limited waiver with respect to that

particular document only.

## GENERAL OBJECTIONS

Each of NatWest's responses is subject to the following General Objections, and

each such General Objection is incorporated by reference in NatWest's response to each

Document Request as if fully set forth therein, unless such response specifically states that it is

made notwithstanding such objections (in which case such objections are reserved but not relied

upon to withhold documents):

1.     NatWest objects to all definitions, instructions and requests that purport to

impose obligations beyond those required or permitted by Rule 34 of the Federal Rules of Civil

Procedure and Local Civil Rule 26.3 of the U.S. District Court for the Eastern District of New

York.

2.     NatWest objects to the Document Requests to the extent that they purport

to require NatWest to produce "all documents" or "any document" because such a request is

overbroad, unduly burdensome and improper. Given the size and scope of NatWest's operations,

it is impossible for NatWest to conduct the type of search that appears to be contemplated by

2

certain of the Document Requests. Accordingly, NatWest's document production will be based upon a reasonable search of files that it believes may be expected to contain non-duplicative, responsive information.

3.     NatWest objects to the Document Requests to the extent they purport to call for information or documents not within its possession, custody or control, but in the possession, custody or control of third parties or separate legal entities.

4.     NatWest objects to the Document Requests to the extent they purport to call for the disclosure of information and/or production of documents in the public domain and not in the exclusive possession, custody or control of NatWest. Such requests are beyond the scope of permissible discovery, would impose an undue burden on NatWest, and are an attempt to require NatWest to prepare Plaintiffs' case. Such information and documents are as available to Plaintiffs as they are to NatWest.

5.     NatWest objects to the Document Requests to the extent they seek the disclosure of information and/or production of documents (i) prepared for or in anticipation of litigation; (ii) that constitute attorney work product; (iii) reflect attorney-client communications; (iv) are subject to the bank examination privilege; or (v) are otherwise privileged.

6.     NatWest objects to each and every request, definition and instruction contained in the Document Requests to the extent that any such request, definition or instruction contains inaccurate, incomplete or misleading descriptions of the facts, persons, relationships, events and pleadings underlying this action. The production of any information shall not constitute NatWest's agreement with or acquiescence to any such description.

3

7. NatWest objects to the Document Requests to the extent they are vague, ambiguous, overly broad, unduly burdensome, or seek the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

8. NatWest objects to the Document Requests to the extent the Relevant Period as defined therein is overbroad and, were it to apply to the Document Requests, would cause NatWest undue burden and result in the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, NatWest will respond to the Document Requests as if the time period governing its search for documents responsive to the Document Requests were defined as January 1, 1996 through December 31, 2003.

9. NatWest objects to the Document Requests to the extent they seek the disclosure of information subject to applicable English bank customer secrecy laws. Pursuant to Tournier v. National Provincial and Union Bank of England, 1 K.B. 461 (C.A. 1924), and its progeny of English case law, a financial institution, and persons affiliated with and/or employed by a financial institution, are prohibited from disclosing confidential information regarding any existing or former customer, without that customer's prior consent, including but not limited to the customer's name, account information, and transfers into and from the customer's account(s) by and to third parties. Failure to protect such confidential information constitutes a civil offense under English law and could subject NatWest to liability. Such disclosure may also constitute a violation of the 8th Data Protection Principle of the U.K. Data Protection Act 1998.

NatWest has therefore asked Interpal to release NatWest from NatWest's secrecy obligations in order to permit disclosure of information in NatWest's possession relating to

4

Interpal. However, to date, NatWest has not received such a release, and therefore could be exposed to liability under English and U.K. law if it were to disclose such information.

          10.     NatWest objects to the Document Requests to the extent they seek the disclosure of information and/or production of documents subject to applicable U.K. anti-money laundering laws, including Section 333 of the Proceeds of Crime Act 2002 and Section 39 of the Terrorism Act 2000. Disclosure of the existence and/or contents of a suspicious activity report constitutes a criminal offense under U.K law and is sanctionable by imprisonment of up to five years and/or monetary penalties. In addition, this disclosure would be contrary to the public interest by placing the maker of the report at risk.

## DOCUMENTS REQUESTED

REQUEST NO. 1:

          All account records maintained by, or in the custody and control of Defendant that concern INTERPAL, including account opening records, bank statements, wire transactions, deposit slips and all correspondence between Defendant and INTERPAL.

RESPONSE AND OBJECTION TO REQUEST NO. 1:

          See General Objections, including, without limitation, General Objections Nos. 2, 7, 8, 9 and 10.

REQUEST NO. 2:

          All documents and communications by or to Defendant concerning INTERPAL, including all internal reports and the contents of any internal investigations undertaken by Defendant that reference INTERPAL.

RESPONSE AND OBJECTION TO REQUEST NO. 2:

See General Objections, including, without limitation, General Objections Nos. 2,

7, 8, 9 and 10.

REQUEST NO. 3:

All non-privileged documents and communications by or to the Defendant from

or to banking regulatory authorities in the United States, United Kingdom, or the European

Union including, but not limited to, the U.S. Department of Justice, U.S. Department of the

Treasury Office of the Comptroller of the Currency, U.S. Department of the Treasury Financial

Crimes Enforcement Network, The Charity Commission for England and Wales, the Bank of

England, the Financial Services Authority in the United Kingdom, concerning INTERPAL and

or accounts maintained by the Defendant on INTERPAL's behalf.

RESPONSE AND OBJECTION TO REQUEST NO. 3:

See General Objections, including, without limitation, General Objections Nos. 9

and 10.

REQUEST NO. 4:

All documents and communications by or to Defendant concerning the existence

of the Israeli Watchlist or Israeli Unlawful Organizations List.

RESPONSE AND OBJECTION TO REQUEST NO. 4:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

REQUEST NO. 5:

All documents and communications by or to Defendant concerning the existence

of the United States FTO, SDT or SDGT lists.

6

## RESPONSE AND OBJECTION TO REQUEST NO. 5:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

## REQUEST NO. 6:

All documents and communications by or to Defendant concerning the contents

or findings of the Israeli Watchlist or Israeli Unlawful Organizations List.

## RESPONSE AND OBJECTION TO REQUEST NO. 6:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

## REQUEST NO. 7:

All documents and communications by or to Defendant concerning the contents

or findings of the United States FTO, SDT or SDGT lists.

## RESPONSE AND OBJECTION TO REQUEST NO. 7:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

## REQUEST NO. 8:

All documents and communications by or to Defendant concerning the "Union of

Good" a/k/a Coalition of Benevolence a/k/a *I'Tilafu Al-Khayr*.

## RESPONSE AND OBJECTION TO REQUEST NO. 8:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

7

REQUEST NO. 9:

All documents and communications by or to Defendant concerning Yussef al-

Qaradawi a/k/a Yousuf Al-Qardawi a/k/a Yousef Al-Qaradhawi a/k/a Yussef Al-Kardawi.

RESPONSE AND OBJECTION TO REQUEST NO. 9:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

REQUEST NO. 10:

All documents and communications by Defendant concerning the following

alleged HAMAS agents or front organizations:

        a.      Holy Land Foundation For Relief and Development;

        b.      Al-Aqsa Charitable Foundation (Germany, Belgium, Denmark, and the Netherlands);

        c.      the Tulkarem Zakat Committee a/k/a Tulkarm Charitable Society a/k/a Tulkarem Charity Committee a/k/a *Lajnat Zakkah Tul-Karem*;

        d.      the Zakat and Sadadaqat Committee Ramallah Bireh a/k/a Ramallah (and Al-Bireh) Charitable Society a/k/a *Lajnat Zakkah Ramallah* a/k/a *Lajinat Zakkah Ramallah wa-Al-Bireh*;

        e.      the Nablus Zakat Committee a/k/a Nablus Charitable Committee a/k/a Nablus Islamic Aid Committee a/k/a Islamic Assistance Society Nablus a/k/a *Lajnat Al-Ighatha Al-Islamia Nablus*;

        f.      Al Islah Charitable Society a/k/a *Jamaiat Al-Islah Al-Khayriah/* a/k/a *Jamaiat Al-Islah Al-Khayriah Al-Ijtamiah bayt Lehem*;

        g.      Orphan Care Society of Bethlehem a/k/a Bethlehem Society for Orphans a/k/a *Jamaiat Ra'iat Al-Yatim FiBayt-Lehem*;

        h.      Hebron Islamic Charitable Society a/k/a Islamic Charity Society of Hebron a/k/a l-*Jamaia Al-Islamia Al-Khiria Al-Khalil*

        i.      Jenin Zakat Committee a/k/a Jenin Charitable Society a/k/a *Lajnat Amwal Al-Zakkah Jenin*

8

j.  Nablus Al-Tadam Charitable Society a/k/a ISLAMIC SOLIDARITY (TADAMON) CHARITY SOCIETY a/k/a *Jamaiat Al-Tadamon (Al-Tadamun)*

k.  Al Salah Society – Gaza a/k/a Al-Salah Islamic Association – Gaza a/k/a Islamic Virtue Society – Gaza a/k/a *Jamaiat Al-Salah Al-Islamaia*

l.  Al Mujama al Islamiya – Gaza a/k/a ISLAMIC CENTER a/k/a Central Islamic Society – Gaza Strip

m.  Al Jama'ia al Islamiya – Gaza a/k/a The Islamic Society a/k/a ISLAMIC CHARITY SOCIETY

n.  Qalqilya Charity Committee a/k/a *Lajnat Zakkah Qalqiliya*

o.  Beit Fajar Charity Committee a/k/a Bet Fajar Zakat Committee

p.  Islamic Charitable Society in the Gaza Strip

q.  Muslim Youth Association of Hebron a/k/a Jamaiat Al-Shuban Al-Muslemia

r.  Tobas Zakat Committee

s.  Khan Yunis Zakat Committee a/k/a Lajnat Al-Zakkah Al-Rame Khan Yunes

t.  Society of Islamic Science and Culture Committee

u.  Al-Ram Zakat Committee – Jerusalem

v.  Al-Dheisha Refugee Camp Zakat Committee – Bethlehem

w.  Mercy Association for Children – Gaza

x.  Orphans and Needy Welfare Society – Gaza

y.  Kalkilya Society for the Disabled a/k/a Qalqilya Society for the Disabled

z.  Social Charitable Society – Rafa

aa.  Al-Sanabil – Saida, Lebanon

bb.  Jarach Camp

cc.  Al-Bir Wal-Ihssan Camp

dd.  Azmi Al-Mufti Camp

9

ee.  Ma'dab Camp

ff.  Soof Camp

gg.  Al-Wahadat Camp

hh.  Al-Rasifia Camp

ii.  Jabal Al-Nadheef

jj.  Al-Hussain Camp

kk.  Al-Zarkaa Camp

ll.  Hitteen Camp

mm.  Al-Bak'aa Camp

nn.  Islamic Relief Committee – Um-Alfahm

oo.  Sowailah Camp

pp.  Al Hai'a Al-Islamiah Liri'aya – Lebanon

qq.  The Mercy Association for Children

rr.  Al-Bir Committee – Al-Koora –Jordan

ss.  Al-Bir Committee Alshoona Shamalia – Jordan

tt.  Al Ramtha Islamic Center – Jordan

uu.  Haiat Al Aamal Al Khairia – Jordan

vv.  Palestine Support Committee – Jordan

## RESPONSE AND OBJECTION TO REQUEST NO. 10:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

## REQUEST NO. 11:

All documents concerning Defendant's freezing of INTERPAL'S accounts
maintained by NatWest in March of 1996 including any documents that were the catalyst or
basis of any decision to freeze said accounts.

10

RESPONSE AND OBJECTION TO REQUEST NO. 11:

      See General Objections, including, without limitation, General Objections Nos. 9 and 10.

REQUEST NO. 12:

      All documents concerning Defendant's freezing of INTERPAL'S accounts maintained by NatWest in August and/or September of 2003 including any documents that were the catalyst or basis of any decision to freeze said accounts.

RESPONSE AND OBJECTION TO REQUEST NO. 12:

      See General Objections, including, without limitation, General Objections Nos. 9 and 10.

REQUEST NO. 13:

      All documents concerning NatWest's anti-money laundering efforts, "Know Your Customer" procedures, or other measures NatWest used to prevent the rendering of financial services to Terrorists and Terrorist Organizations.

RESPONSE AND OBJECTION TO REQUEST NO. 13:

      In addition to the foregoing General Objections, NatWest objects on the ground that this Request is grossly overbroad and unduly burdensome, and seeks the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 14:

      All documents including organization charts which refer or relate to the organization of NatWest and the identity of its officers, directors, branch managers and all parents and subsidiaries.

11

RESPONSE AND OBJECTION TO REQUEST NO. 14:

In addition to the foregoing General Objections, NatWest objects on the ground that this Request is grossly overbroad and unduly burdensome, and seeks the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, subject to and without waiving the foregoing General Objections, NatWest will produce in response to these requests non-privileged documents obtained as a result of a reasonable search and without undue burden, and which documents are reasonably related to the allegations of the First Amended Complaint.

REQUEST NO. 15:

All documents including organization charts which refer or relate to the organization of RBS and the identity of its officers, directors, branch managers and all parents and subsidiaries.

RESPONSE AND OBJECTION TO REQUEST NO. 15:

In addition to the foregoing General Objections, NatWest objects on the ground that this Request is grossly overbroad and unduly burdensome, and seeks the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, subject to and without waiving the foregoing General Objections, NatWest will produce in response to these requests non-privileged documents obtained as a result of a reasonable search and without undue burden, and which documents are reasonably related to the allegations of the First Amended Complaint.

REQUEST NO. 16:

All documents concerning or consisting of agency agreements between RBS and NatWest.

12

RESPONSE AND OBJECTION TO REQUEST NO. 16:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request, if any.

REQUEST NO. 17:

Copies of all internal NatWest documents related to the following subjects and/or

departments:

- a.    Account Opening Procedures:

  - i.    Documents, including manuals, instruction booklets, or procedures outlining the information to be obtained and verified before an account may be opened with NatWest;

  - ii.   A copy of an account opening application;

  - iii.  Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts.

- b.    Security Department Procedures:

  - i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for maintaining appropriate security for NatWest's business operations (a "Security Department");

  - ii.   Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Security Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Security Department's responsibilities;

  - iii.  Documents concerning procedures and software used for monitoring, review and investigation of account activity;

  - iv.   Copies of all internal or external audit plans for account activity;

  - v.    Documents concerning training or procedural guidelines for Security Department members who were tasked with monitoring account activity;

  - vi.   Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

13

vii.    Copies of all information technology ("IT") protocols used to monitor accounts;

viii.    Policy and procedures for the reporting of suspicious activity;

ix.    Copies of all organizational charts for any Security Department;

x.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Security Department employees.

c.    Customer Account Department:

i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup or division responsible for customer accounts ("Customer Account Department");

ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Customer Account Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Customer Account Department's responsibilities;

iii.    Documents concerning procedures and software used for the management of Customer Account Department files;

iv.    Documents concerning training or procedural guidelines for the maintenance of Customer Account Department files;

v.    Documents concerning procedures and protocols used to ensure the authenticity of client correspondence to officers such as signature verifications;

vi.    Copies of all IT protocols used by account officers to assist them with their files;

vii.    Documents concerning policies or procedures used to monitor compliance with the Customer Account Department filing procedures;

viii.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

ix.    Copies of all organizational charts for the Customer Account Department;

x.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Customer Account Department employees.

14

d.    Compliance Department Procedures:

    i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for compliance with applicable banking regulations ("Compliance Department");

    ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Compliance Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Compliance Department's responsibilities;

    iii.    Documents concerning procedures and software used for the monitoring, review, and investigation of account activity;

    iv.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

    v.    Documents concerning training or procedural guidelines for Compliance Department employees;

    vi.    All documents or forms used to report on the monitoring or investigation of accounts by Compliance Department employees;

    vii.    Copies of all IT protocols used by Compliance Department employees to assist them in monitoring and investigating account activity;

    viii.    Copies of all organizational charts for the Compliance Department;

    ix.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Compliance Department employees.

e.    Internal Audit Department procedures:

    i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for internal audit services for NatWest;

    ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Internal Audit Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Internal Audit Department's responsibilities;

       iii.    Documents concerning procedures and software used for the monitoring, review and investigation of account activity by Defendant's Internal Audit Department;

       iv.    Documents concerning training or procedural guidelines for internal audit department employees or employees whose job it is/was to monitor and report on accounts;

       v.    Copies of all IT protocols used by the Internal Audit Department employees to assist them in reporting on the monitoring or investigation of accounts;

       vi.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

       vii.    All documents or forms used to report on the monitoring or investigation of accounts by Internal Audit Department employees;

       viii.    Policy and procedures for the reporting by Internal Audit Department employees of suspicious activity;

       ix.    Copies of all organizational charts for the Internal Audit Department;

       x.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Internal Audit Department employees.

f.    Bank Secrecy Department:

       i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for monitoring regulating, or enforcing compliance with legal, regulatory, and reporting requirements concerning U.S. and foreign bank secrecy obligations ("Bank Secrecy Department");

       ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Bank Secrecy Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Bank Secrecy Department's responsibilities;

       iii.    Procedures and protocols concerning domestic and international bank secrecy requirements for NatWest's customers or transactions processed by NatWest;

iv.    Copies of all guidance, policy, or procedures concerning bank secrecy laws and regulations and NatWest's compliance requirements regarding same;

v.    Copies of all manuals or other documents created by or for Defendant concerning bank secrecy requirements and related areas of compliance;

vi.    All documents describing the relationship and division of responsibility between the Bank Secrecy Department, Legal Department, Compliance Department, Internal Audit Department, IT and any outside entities or individuals regarding bank secrecy compliance, investigation of suspicious activity and reporting of suspicious activity;

vii.    Documents concerning the procedures and software used for the monitoring of, or audit plans for compliance with, bank secrecy requirements;

viii.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

ix.    Documents concerning training or procedural guidelines on bank secrecy compliance for NatWest employees including Bank Secrecy Department employees;

x.    All documents or forms used to monitor compliance with bank secrecy obligations;

xi.    Copies of all IT protocols used by employees responsible for bank secrecy compliance;

xii.    All documents concerning how any conflicts between bank secrecy obligations are reconciled with obligations to report suspicious activities;

xiii.    Provide copies of all suspicious activity reports or memoranda filed through or by the Bank Secrecy Department;

xiv.    Copies of all organizational charts for the Bank Secrecy Department;

xv.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to the Bank Secrecy Department employees.

g.    Terror Financing Designations or Warnings:

   i.    All documents concerning Defendant's system, including software, for tracking, documenting, cataloging, listing, or identifying the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body or identifying any transactions or occurrences associated with Terrorists or Terrorist Organizations;

   ii.   Copies of all IT protocols or written descriptions of all software programs used to monitor the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body;

   iii.  All manuals or internal protocols describing the appropriate actions to be taken by Defendant's employees to examine whether any designated Terrorists or Terrorist Organizations maintains accounts, receives funds, engages in transactions or otherwise uses NatWest's services;

   iv.   All documents or internal manuals describing the appropriate actions to be taken if NatWest's services are being used in any manner by a Terrorist or Terrorist Organization.

## RESPONSE AND OBJECTION TO REQUEST NO. 17:

In addition to the foregoing General Objections, NatWest objects on the ground that this Request is grossly overbroad and unduly burdensome, and seeks the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 18:

Copy of any insurance policy which may provide coverage in whole or in part for the claims asserted in the Complaint.

18

RESPONSE AND OBJECTION TO REQUEST NO. 18:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request, if any.

REQUEST NO. 19:

All documents concerning any formal or informal document retention policy

maintained by NatWest, any NatWest branch, or any NatWest subsidiary or affiliate.

RESPONSE AND OBJECTION TO REQUEST NO. 19:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request, if any.

Date: August 14, 2006

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Lawrence B. Friedman (LF-9978)
A Member of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

19

# Exhibit E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

TZVI WEISS, *et al.*,

                Plaintiffs,

      - against -

NATIONAL WESTMINSTER BANK PLC,

           Defendant.

---------------------------------------------------------------- X

CV 05-4622 (CPS) (KAM)

### DEFENDANT NATIONAL WESTMINSTER BANK PLC'S
### RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF
### REQUESTS FOR ADMISSIONS AND RELATED INTERROGATORIES

Defendant National Westminster Bank Plc ("NatWest") responds pursuant to

Rules 26, 33 and 36 of the Federal Rules of Civil Procedure to plaintiffs' First Set of Requests

for Admissions and Related Interrogatories, dated July 5, 2006, as follows:

### RESERVATION OF RIGHTS

1.     To the extent NatWest answers any of the Requests for Admissions and

Related Interrogatories, it does so without conceding the materiality, admissibility or relevance

of any such answers.

2.     NatWest reserves all objections to the use of its answers. All such

objections may be interposed by NatWest at the time of trial or as otherwise required by the rules

or orders of the Court.

3.     NatWest reserves the right to amend, supplement or withdraw its answers

and objections.

4.      Insofar as an answer by NatWest may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular answer only.

5.      Any admission made herein is for the pending action only, is not an admission for any other purpose and may not be used in any other proceedings.

## GENERAL OBJECTIONS

Each of NatWest's answers is subject to the following General Objections, and each such General Objection is incorporated by reference in NatWest's answers to each of the Requests for Admissions and Related Interrogatories as if fully set forth therein, unless such answer specifically states that it is made notwithstanding such objections (in which case such objections are reserved but not relied upon to withhold information):

1.      NatWest objects to all definitions, instructions and requests that purport to impose obligations beyond those required or permitted by Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3 of the Eastern District of New York.

2.      NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they seek information neither relevant nor calculated to lead to the discovery of admissible evidence.

3.      NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they are vague, ambiguous, overly broad or unduly burdensome, or seek information without reference to a time period.

4.      NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they call for information concerning events occurring after the date of the filing of the First Amended Complaint, on the grounds that such requests are overbroad,

2

beyond the scope of the allegations in the pleadings and not reasonably calculated to lead to the discovery of admissible evidence.

    5.     NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they call for the disclosure of information and/or production of documents not within NatWest's knowledge or require NatWest to seek information or documents solely in the possession, custody or control of third parties.

    6.     NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they call for the disclosure of information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, law or rule. The inadvertent disclosure of any privileged or work product information or document shall not be deemed a waiver of any claim of privilege or work product as to such information, and NatWest reserves the right to request the return of any such information inadvertently produced in response to the Requests for Admissions and Related Interrogatories.

    7.     NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they seek the disclosure of information subject to applicable English bank customer secrecy laws. Pursuant to Tournier v. National Provincial and Union Bank of England, 1 K.B. 461 (C.A. 1924), and its progeny of English case law, a financial institution, and persons affiliated with and/or employed by a financial institution, are prohibited from disclosing confidential information regarding any existing or former customer, without that customer's prior consent, including but not limited to the customer's name, account information, and transfers into and from the customer's account(s) by and to third parties. Failure to protect such confidential information constitutes a civil offense under English law and could subject NatWest

3

to liability. Such disclosure may also constitute a violation of the 8th Data Protection Principle of the U.K. Data Protection Act 1998.

NatWest has therefore asked Interpal to release NatWest from NatWest's secrecy obligations in order to permit disclosure of information in NatWest's possession relating to Interpal. However, to date, NatWest has not received such a release, and therefore could be exposed to liability under English and U.K. law if it were to disclose such information.

8.      NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they seek the disclosure of information and/or production of documents subject to applicable U.K. anti-money laundering laws, including Section 333 of the Proceeds of Crime Act 2002 and Section 39 of the Terrorism Act 2000. Disclosure of the existence and/or contents of a suspicious activity report constitutes a criminal offense under U.K law and is sanctionable by imprisonment of up to five years and/or monetary penalties. In addition, this disclosure would be contrary to the public interest by placing the maker of the report at risk.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST FOR ADMISSION NO. 1:

Each document is a record of regularly conducted business activity of defendant within the meaning of Rule 803(6) of the Federal Rules of Evidence.

### INTERROGATORY NO. 1:

For each document that you did not admit in Request for Admission No. 1, set forth the document production number and state in detail all facts which support your position why each element of Rule 803(6) of the Federal Rules of Evidence is not satisfied.

4

RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 1 AND INTERROGATORY NO. 1:

See General Objections, including, without limitation, General Objection No. 7.

REQUEST FOR ADMISSION NO. 2:

Each document is an accurate reproduction of the original document that is maintained in your files.

INTERROGATORY NO. 2(a)

For each document that you did not admit in Request for Admission No. 2, set forth the document production number and state:

(1)     if the original document is maintained in defendant's files, all ways in which the document is not an accurate reproduction of the original document that is maintained in defendant's files;

(2)     if the original document is maintained in defendant's files, please state where such files are located and identify the person(s) having custody of the files;

(3)     if the original document is maintained in defendant's files and it bears any handwriting, please identify the person(s) whose handwriting appears on the document.

INTERROGATORY NO. 2(b):

For each document that you admit is an accurate reproduction of the original document that is maintained in defendant's files:

(1)     if the original document is maintained in defendant's files, please state where such files are located and identify the person(s) having custody of the files;

(2)     if the original document is maintained in defendant's files and it bears any handwriting, please identify the person(s) whose handwriting appears on the document.

5

## RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 2 AND INTERROGATORIES NO. 2(a) AND 2(b):

See General Objections, including, without limitation, General Objection No. 7.

## REQUEST FOR ADMISSION NO. 3:

The document accurately identifies an account or accounts of a customer or

customers of defendant.

## INTERROGATORY NO. 3(a):

For each document that you did not admit in Request for Admission No. 3, set

forth the document production number and state the facts which evidence that the document does

not accurately identify an account or accounts of a customer or customers of defendant.

## INTERROGATORY NO. 3(b):

For each document that you have admitted the document accurately identifies an

account or accounts of a customer or customers state the name of the customer(s) and location of

each such account and whether each such account remains in existence currently, and if not;

when the account ceased to exist.

## RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 3 AND INTERROGATORIES NO. 3(a) AND 3(b):

See General Objections, including, without limitation, General Objection No. 7.

## REQUEST FOR ADMISSION NO. 4:

The document accurately sets forth the details of a transaction processed by

defendant.

## INTERROGATORY NO. 4(a):

For each document that you did not admit in Request for Admission No. 4, set

forth the document production number and state the facts which evidence that the document does

not accurately set forth the details of a transaction processed by defendant.

6

INTERROGATORY NO. 4(b):

For each document that you have admitted the document accurately sets forth the details of a transaction processed by the defendant identify the name, title and office location of each employee with knowledge of this transaction.

INTERROGATORY NO. 4(c):

For each document that you have admitted the document accurately sets forth the details of a transaction processed by defendant, state whether the transaction was identified and/or reported as a suspicious transactions [sic] by defendant's Money Laundering Reporting Officer or any other employee of defendant as part of defendant's AML or terror financing compliance efforts and identify the name, title and office location of each employee with knowledge of this fact.

RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 4 AND INTERROGATORIES NO. 4(a), 4(b), AND 4(c):

See General Objections, including, without limitation, General Objections Nos. 7 and 8.

Date:   August 14, 2006

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
Lawrence B. Friedman (LF-9978)
A Member of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

7