UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
COURTNEY LINDE, et al.,

                Plaintiffs,

       - v -                               CV-04-2799 (NG)(VVP)

ARAB BANK, PLC,
                Defendant.
-----------------------------------------------------------------x
PHILIP LITLE, et al.,

                Plaintiffs,

       - v -                               CV-04-5449 (NG)(VVP)

ARAB BANK, PLC,
                Defendant.
-----------------------------------------------------------------x
ORAN ALMOG, et al.,

                Plaintiffs,

       - v -                               CV-04-5564 (NG)(VVP)

ARAB BANK, PLC,
                Defendant.
-----------------------------------------------------------------x
ROBERT L. COULTER, SR., et al.,

                Plaintiffs,

       - v -                               CV-05-365 (NG)(VVP)

ARAB BANK, PLC,
                Defendant.
-----------------------------------------------------------------x
GILA AFRIAT-KURTZER, et al.,

                Plaintiffs,

       - v -                               CV-05-388 (NG)(VVP)

ARAB BANK, PLC,
                Defendant.
-----------------------------------------------------------------x
MICHAEL BENNETT et al.,

                Plaintiffs,

       - v -                               CV-05-3183 (NG)(VVP)

ARAB BANK, PLC,

                                Defendant.

-------------------------------------------------------------------x

ARNOLD ROTH, et al.,

                                Plaintiffs,

            - v -                                                            CV-05-3738 (NG)(VVP)

ARAB BANK, PLC,

                                Defendant.

-------------------------------------------------------------------x

## DECISION AND ORDER

The plaintiffs have moved for an order (1) overruling all objections made by the defendant Arab Bank, Plc to the Plaintiffs' First Set of Requests for Admissions and Related Interrogatories based on the application of the secrecy provisions of foreign banking laws and (2) imposing sanctions for the defendant's refusal to comply with discovery obligations. Although the motion attacks the defendant's responses to a limited number of discovery requests, its purpose is to remove the defendant's assertion of foreign bank secrecy laws as a bar to disclosure of numerous documents and other important information that has been requested by the plaintiffs and which the court has found relevant to the issues to be decided here. The court's decision on the bank secrecy matters presented is therefore crucial to the prosecution of the plaintiffs' claims.

## BACKGROUND

These related actions involve tort claims arising from injuries and deaths caused by suicide bombings and other attacks in Israel, the West Bank, and Gaza since the onset of the second intifada in late 2000. The plaintiffs allege that the defendant knowingly encouraged and promoted these violent acts by providing a financial system for the collection and payment of

-2-

funds in compensation and reward to the families of those who carried out the attacks. Proof concerning the flow of money, if any, from those allegedly funding the payments through the bank to the families of known participants in the attacks is essential to the plaintiffs' case. Furthermore, because the defendant denies knowing involvement in any such compensation scheme, proof concerning the arrangements for making such payments and the breadth of the payment scheme is also crucial.

The plaintiffs' First Set of Requests for Admissions and Related Interrogatories ("Requests for Admissions"), served on September 16, 2005, sought information concerning a limited number of documents that were in the possession of the plaintiffs and which either appeared to be bank records of the defendant or contained information about accounts and customers of the bank. In the defendant's responses to the Requests for Admissions, the defendant declined to provide information on the grounds that doing so would violate the bank secrecy provisions of the Palestinian territories and perhaps other jurisdictions.

Although the defendant's responses to the Requests for Admissions are the nominal object of the plaintiffs' motion, the plaintiffs have made other discovery requests which have implicated foreign bank secrecy laws and the plaintiffs seek rulings here "to overrule all of the Defendant's objections to discovery based on foreign bank secrecy laws and to compel the discovery of all information that the Defendant has withheld on that basis." Plaintiffs' Memorandum of Law in Support of Their Motion for an Order Overruling Objections, Deeming Certain Facts as Admitted, and Compelling Further Responses to Plaintiffs' First Set of Requests for Admissions and Related Interrogatories ("Pl. Mem.") at 10. Thus, for example, in June 2005, for the purpose of raising bank secrecy issues and at the court's suggestion, the plaintiffs made a

modified document request seeking information about specific bank accounts located in Jordan, Lebanon and the Palestinian territories. When the defendant raised the bank secrecy laws of those jurisdictions as a bar to disclosure, the court entered an order on July 27, 2005 (the "First Production Order") directing the parties to seek to obtain permission to disclose the information from appropriate foreign regulatory authorities. The defendant successfully obtained such permission relating to a single account located in Lebanon, but was ultimately denied permission with respect to an account located in Jordan and accounts in the Palestinian territories.[1]

The plaintiffs have also served a First Request for the Production of Documents seeking a wide range of documents concerning accounts, account holders and transactions deemed likely to be involved in the scheme alleged. In an order dated March 3, 2006 (the "Second Production Order"), the court ruled on disputes concerning the scope of the document requests, and identified documents and other information the defendant was required to disclose. The Second Production Order also required the defendant to identify, by category, the documents covered by the Order whose disclosure would violate any foreign bank secrecy laws. The Order expressly reserved, however, any ruling concerning the issues now before the court.

The defendant complied with that portion of the Second Production Order concerning identification of documents prohibited from disclosure by foreign bank secrecy laws. In addition, the defendant obtained the permission of the Saudi Committee, the account holder alleged to be at the center of the compensation scheme at issue here, to disclose documents covered by the Order subject to the Saudi Committee's prior review. As a result of the Saudi

---

[1] The defendant initially obtained a ruling from a court in Jordan that this court's order requiring production of the information sought fell within the exception in that nation's bank secrecy law which permits disclosure if ordered by a court. The ruling was overturned upon an appeal filed by the account holder.

Committee's waiver and its review, which was continuing at the time of the last conference in this matter in September, the defendant has now produced some 170,000 transaction records relating to that account holder. Other documents covered by the Second Production Order, however, continue to be withheld on the basis of bank secrecy laws.

## DISCUSSION

The documents and other information sought by the plaintiffs are primarily located in the bank's branches in Jordan, Lebanon, the West Bank and Gaza.[2] Jordan and Lebanon, as well as the Palestinian Monetary Authority, an entity recognized by the United States and other countries to have jurisdiction over the financial system in the West Bank and Gaza, have all promulgated bank secrecy laws which prevent the disclosure of certain types of information about business conducted by the bank, including the identities of accountholders and the transactions occurring in their accounts, without the consent of the affected customers.[3] Violations of the laws carry criminal penalties, including fines and incarceration. Although the plaintiffs vigorously dispute that the defendant is entitled to withhold any information on the

---

[2] The bank has also apparently cited bank secrecy laws of Morocco, Great Britain, France, Austria and Switzerland as bars to some of the discovery sought by the plaintiffs.

[3] For example, Jordan's bank secrecy statute provides that "A bank shall observe full confidentiality regarding all accounts, deposits . . of its customers" and that "All present and former administrators of the bank shall be prohibited from providing any information or data on the clients or the accounts . . . or any of their transactions, or disclosing or enabling others to have access to such information and data in situations other than those permitted under this law." See Decl. of Aiman Odeh, ¶¶ 12-13. The law applicable in the Palestinian territories provides, "All present and former directors and employees of the banks shall keep confidential all information and documents regarding their customers." Decl. of Maher Masri, ¶ 5. Lebanon's bank secrecy law provides, "Managers and employees of the banking establishments referred to in article 1 . . . are bound to absolute secrecy in favor of the bank's clients and may not disclose to anyone whatsoever . . . the names of clients, their assets and facts of which they are aware . . ." Decl. of Chakib Cortbaoui, ¶ 4.

basis of those laws, they apparently do not dispute that disclosure of at least some of the information they seek would constitute a violation of those laws.

The bank secrecy laws cited above are broadly phrased and prohibit not only the bank, but also bank employees, from disclosing information. The court therefore rejects the plaintiffs' argument that the laws do not prohibit the defendant from authenticating and otherwise providing information about documents that the plaintiffs have already obtained from various sources other than the bank. The court also rejects the plaintiffs' argument that the defendant's disclosure of some documents to regulatory and investigative authorities in the United States waives bank secrecy. The bank secrecy laws do not establish a waivable privilege held by the bank, they establish confidentiality rights held by the customers of the bank, rights waivable only by the customers, not the bank.

The court is thus left to determine whether the existence of the bank secrecy laws of the above foreign jurisdictions should relieve the defendant from the discovery obligations already imposed on the defendant by the court's prior orders finding discovery sought by the plaintiffs to be appropriate. Fortunately, the Supreme Court has provided substantial guidance for resolving such issues. First, it is beyond dispute that the Federal Rules of Civil Procedure provide the court with authority to issue discovery orders requiring the disclosure of information protected by foreign bank secrecy laws. *See Société Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 204-06, 78 S. Ct. 1087,1091-92 (1958); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 520 (S.D.N.Y. 1987). Exercising that authority is a matter of discretion, however, and in *Société Nationale Industrielle Aérospatiale v. U.S. District Court*, 482 U.S. 522, 107 S. Ct. 2542 (1987), the Court reviewed at some length the

difficulties encountered when discovery requests directed to foreign litigants seek documents and other information located in foreign jurisdictions whose laws prohibit their disclosure. The Court stressed the importance of comity in dealing with such situations, and cited with approval the *Restatement of Foreign Relations Law of the United States*. *See Aérospatiale*, 482 U.S. at 541-46 & n. 28. In detailing the concerns that should inform comity analysis, the Court looked to a section of the tentative draft of that Restatement then under review, which has since become section 442 of the *Restatement (Third) of The Foreign Relations Law of the United States* (1987) (hereinafter "*Restatement*"). *Id.*, 482 U.S. at n.28; *British Intern. Ins. Co. Ltd. v. Seguros La Republica, S.A.*, No. 90 Civ. 2370 (JFK)(FM), 2000 WL 713057, at *9 (S.D.N.Y. June 2, 2000). Numerous courts in this circuit have subsequently been guided by the principles set forth in that section when deciding issues involving foreign discovery. *See, e.g., Reino De Espana v. American Bureau of Shipping*, No. 03 Civ. 3573, 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005); *In re Auction Houses Antitrust Litigation*, 196 F.R.D. 444, 446 (S.D.N.Y. 2000); *Madanes v. Madanes*, 186 F.R.D. 279, 285-86 (S.D.N.Y. 1999); *Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33, 35-37 (N.D.N.Y. 1987); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 529-30 (S.D.N.Y. 1987).

Section 442 of the *Restatement* articulates a series of factors which courts have considered in deciding whether to exercise their power to compel production of protected documents and information:

> In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency in the United States should take into account the importance of the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which

-7-

>noncompliance with the request would undermine important interests of the
>United States, or compliance with the request would undermine important
>interests of the state where the information is located.

*Restatement* § 442(1)(c); *see, e.g., British Intern. Ins. Co. Ltd.,* 2000 WL 713057, at *8-9; *Madanes v. Madanes*, 186 F.R.D. at 285-86.[4] Upon consideration of those factors here, the court concludes that the bank secrecy laws cited by the defendant here should not excuse the defendant from being ordered to produce appropriately limited categories of documents and information.

The only one of the factors that arguably favors recognition of the bank secrecy laws as a bar to discovery is the fact that the vast majority of the discovery sought here concerns information that originated outside of the United States. The remaining factors, however, tilt in favor of discovery notwithstanding bank secrecy laws. As noted above, the discovery sought here is essential to the proof of the plaintiffs' case. Without it, the plaintiffs cannot prove the defendant's involvement in and knowledge of the financial transactions that are the basis of the plaintiffs' theory of liability. As to the specificity of the plaintiffs' requests, the plaintiffs' Requests for Admissions are highly specific. The requests that led to the Court's Second Production Order, on the other hand, were decidedly less specific. Nevertheless, the Second Production Order has narrowed the scope of the requests considerably, and with information that

---

[4]Relying on a prior version of the *Restatement*, courts in the Circuit have also articulated and relied on the following formulation of factors, which overlap with those in the present *Restatement* in some respects but differ in others: (1) the competing interests of the nations whose laws are in conflict, (2) the hardship of compliance on the party or witness from whom discovery is sought, (3) the importance to the litigation of the information and documents requested, and (4) the good faith of the party resisting discovery. *See, e.g., Reino De Espana*, 2005 WL 1813017, at *3 (citing *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. at 522). In the current *Restatement*, the question of good faith may affect the remedy for non-compliance with a production order instead of the question whether a production order should be issued. *See Restatement* § 442(2).

has been obtained thus far from the Saudi Committee production, the Order can be further narrowed to achieve greater specificity.

Reasonable alternative means for obtaining the discovery sought from the defendant is not available. The transactional and customer information simply cannot be obtained without disclosure of the defendant's records. The only other sources of most of that information would be customers and other participants in the transactions at issue, and their identities are largely unknown. Even if they were known, it is unlikely that those persons would willingly disclose information to the plaintiffs for fear that any information verifying their connection to the perpetrators of violent acts would expose them to retaliation.

Finally, there is no question that important interests of the United States would be undermined by noncompliance with the discovery orders issued by the court. As the court has already recognized, those interests are articulated in statutes on which some of the claims in this litigation rest: "Congress has expressly made criminal the providing of financial and other services to terrorist organizations and expressly created a civil tort remedy for American victims of international terrorism." *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 584 (E.D.N.Y. 2005). The discovery sought here is transactional and other evidence of precisely those financial and other services at which the statutes here are aimed. Without that discovery, the interests expressed in those statutes will be difficult if not impossible to vindicate in this action.

Although maintaining bank secrecy is an important interest of the foreign jurisdictions where the discovery sought here resides – indeed the United States has enacted similar bank secrecy protections – that interest must yield to the interests of combating terrorism and compensating its victims. Both Jordan and Lebanon, have recognized the supremacy of those

-9-

interests over bank secrecy. As members of the Middle East and North Africa Financial Action Task Force, they have expressly adopted a policy not to rely on bank secrecy laws as a basis for protecting information relating to money laundering and terrorist financing.[5] Although the Palestinian Monetary Authority has apparently not expressly adopted any policies recognizing the subordination of bank secrecy to the interest of fighting terrorism, it is not a state, *see Estate of Ungar v. Palestinian Authority* 315 F. Supp.2d 164, 177 (D.R.I. 2004), and its interests therefore need not be accorded the same level of deference accorded to "states" in considering comity.[6] In any event, as the Palestinian Monetary Authority operates in an area governed at least in part by other authorities that have themselves engaged in terrorist activity, it would be absurd for this court to exalt the bank secrecy interests of those under the jurisdiction of the Palestinian Monetary Authority over the anti-terrorism interests of the United States and other recognized states in the region.

The court thus concludes that a discovery order overruling the defendant's objections to production on the basis of foreign bank secrecy laws is appropriate. Before granting the further

---

[5] Both Jordan and Lebanon have signed a Memorandum of Understanding Between the Governments of the Member States of the Middle East and North Africa Financial Action Task Force Against Money Laundering and Terrorist Financing, November 30, 2004 (the "MOU"). The MOU adopts Forty Recommendations on Money Laundering and the Special Recommendations on Terrorist Financing which were created by the Financial Action Task Force, an intergovernmental body established at the G-7 Summit in 1989. MOU, available at http://www.menafatf.org/images/uploadfiles/mou-eng.pdf, Objective 1.1. Among the Forty Recommendations are provisions which specifically renounce bank secrecy as a basis for refusing requests for mutual legal assistance in money laundering and terrorist financing investigations. *See* The Forty Recommendations, available at http://www.fatf-gafi.org/dataoecd/7/40/34849567.pdf, Recommendations 36, 40.

[6] The court does not mean to suggest that the enactments of the Palestinian Monetary Authority are entitled to no weight. Rather, since "[c]omity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of *other sovereign states*," *Aerospatiale*, 482 U.S. at 543 n.27 (emphasis added), its lack of status as a "sovereign state" reduces the weight of its enactments as an expression of the interests of those within its limited jurisdiction.

relief sought by the plaintiffs on their motion, however, the court believes it is appropriate to follow the guidance of one further provision of the *Restatement*. Specifically, with respect to an order requiring the disclosure of information located outside the United States which is prohibited by the law of a foreign state, "a court or agency in the United States may require the person to whom the order is directed to make a good faith effort to secure permission from the foreign authorities to make the information available." *Restatement* § 422(2)(a). It is appropriate to provide the defendant with that opportunity here. As noted above, the defendant previously unsuccessfully sought to obtain rulings from courts in Jordan and in the territories covered by Palestinian Monetary Authority that this court's orders fell within one of the exceptions to the operation of their bank secrecy laws, and successfully obtained permission from authorities in Lebanon to provide information protected by their bank secrecy laws to the plaintiffs here. Now that this court has ruled that the bank secrecy laws of those jurisdictions will not serve as a bar to discovery ordered here, the defendant may be in a position to pursue avenues for obtaining permission to disclose the information from pertinent governments and authorities through letters rogatory or other devices, and should be given a specified period of time to do so. The defendant has expressed its desire to engage in this effort.[7]

The documents and information for which the defendant is to seek permission for disclosure shall include (i) the documents that were the subject of the First Production Order and (ii) the information sought by the Requests to Admit. As to the documents and information that were the subject of the Second Production Order, in view of the documents that have been

---

[7] The defendant has already submitted a motion for the issuance of letters rogatory to the governments of Lebanon and Jordan and to the Palestinian Monetary Authority concerning the Second Production Order.

-11-

disclosed concerning the Saudi Committee, it appears that the order is broader than it needs to be to satisfy interests of comity. The parties shall be prepared to address appropriate limitations on the breadth of the order at the November 30, 2006 conference.

## CONCLUSION

For the foregoing reasons, the defendant's objections to providing discovery in this action based on foreign bank secrecy laws are overruled with respect to the documents and information that are the subjects of the First Production Order and the plaintiffs' Requests to Admit. The objections based on foreign bank secrecy laws are also overruled with respect to the Second Production Order, subject, however, to the court's further review and narrowing of that order following discussion at the next discovery conference. In all other respects, ruling on the plaintiffs' motion is deferred, pending the outcome of any attempts by the defendant to obtain approvals to disclose the above information notwithstanding applicable bank secrecy laws.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:      Brooklyn, New York
               November 25, 2006