UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
TZVI WEISS, et al.,                              :
                                                 :   CV 05-4622 (CPS) (KAM)
                             Plaintiffs,          :
                                                 :   DECLARATION OF
              - against -                         :   JONATHAN I. BLACKMAN
                                                 :
NATIONAL WESTMINSTER BANK PLC,    :
                                                 :
                             Defendant.           :
------------------------------------------------------- x
```

Jonathan I. Blackman declares as follows:

1. I am a Member of the Bars of the State of New York and of this Court and of the law firm of Cleary Gottlieb Steen & Hamilton LLP, attorneys for defendant National Westminster Bank Plc ("NatWest").

2. I submit this declaration in support of NatWest's Memorandum Of Law In Opposition To Plaintiffs' Motion For An Order Overruling NatWest's Objections To Plaintiffs' First Set Of Requests For Admissions And Related Interrogatories And Plaintiffs' First Request For The Production Of Documents.

3. I attach true and correct copies of the following documents as Exhibits A through H:

| Exhibit | Document |
|---------|----------|
| A | Plaintiffs' First Request for the Production of Documents to Defendant National Westminster Bank, Plc, dated June 30, 2006 |
| B | Defendant National Westminster Bank Plc's Responses and Objections to Plaintiffs' First Request for the Production of Documents, dated August 14, 2006 |

C    Defendant National Westminster Bank Plc's Responses and
      Objections to Plaintiffs' First Set of Requests for Admissions and
      Related Interrogatories, dated August 14, 2006

D    Letter from Jackie Sheftali to J. Qundil, dated July 3, 2006

E    Letter from Jackie Sheftali to Ibrahim Hewitt (inadvertently
      misdated dated July 3, 2006, but sent on July 27, 2006)

F    Letter from Lawrence B. Friedman to Cameron Doley, dated
      September 14, 2006

G    Letter from Lawrence B. Friedman to Cameron Doley, dated
      September 22, 2006

H    Facsimile from Cameron Doley to Lawrence B. Friedman, dated
      September 26, 2006

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 16, 2006
   New York, New York

_____
Jonathan I. Blackman

Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

TZVI WEISS, et al.,                        :
                                           :        Case No. CV 05 4622
                        Plaintiffs,         :
                                           :
   -against-                               :        Honorable Charles P. Sifton
                                           :
NATIONAL WESTMINSTER BANK, PLC,            :        Magistrate Judge Kiyo A. Matsumoto
                                           :
                        Defendant.         :
                                           :
---------------------------------------------------------------x

## PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF
## DOCUMENTS TO DEFENDANT NATIONAL WESTMINSTER BANK, PLC

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs hereby request that defendant NATIONAL WESTMINSTER BANK, PLC in the above-captioned litigation produce and permit plaintiffs to inspect and copy all of the following documents which are in the possession, custody or control of defendant, and/or defendant's agents or attorneys within thirty (30) days following the date of service of these requests.

### DEFINITIONS

1.      As used herein, the following terms are defined as indicated:

      a.      "Person" is synonymous with the definition contained in Local Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules").

      b.      "Agent" shall mean any past or present director, officer, counsel, shareholder, representative, consultant, or employee of any person or entity or any person who assisted or acted or purported to act or assist for or on behalf of such person or entity.

      c.      "Communication" is synonymous with the definition contained in Local Rule 26.3.

      d.      "Meeting" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more persons for any purpose, whether planned, arranged, scheduled or not.

e.    "NatWest," "You," or "Defendant" means defendant National Westminster Bank, Plc and the scope of this definition is the same as the definition of "Parties" contained in Local Rule 26.3 and also includes any Agents, or any person acting, or purporting to act, on behalf of Defendant.

f.    "RBS" means the Royal Bank of Scotland Group and the scope of this definition is the same as the definition of "Parties" contained in Local Rule 26.3.

g.    "Employee" means, without limitation, current and former officers, directors, executives, managers, sales personnel, secretaries, clerical staff, messengers, or any other person employed by defendant.

h.    "Document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

i.    "Identify" is synonymous with the definition contained in Local Rule 26.3.

j.    "Complaint" refers to the above-captioned action.

k.    "Concerning" is synonymous with the definition contained in Local Rule 26.3.

l.    "And/Or" is synonymous with the definition contained in Local Rule 26.3.

m.    "All/Each" is synonymous with the definition contained in Local Rule 26.3.

n.    "Number" is synonymous with the definition contained in Local Rule 26.3.

o.    "Including" means "including without limitation" or "including, but not limited to."

p.    "HAMAS" means Harakat al-Muquawama al-Islamiyya or Islamic Resistance Movement as well as well as any persons acting for, or on behalf of such entities, and persons who are members or directors or employees of any such entities.

q.    "INTERPAL" means the Palestine Relief and Development Fund.

r.    "Terrorist" and "Terrorist Organizations" include but are not limited to individuals or entities designated as a Foreign Terrorist Organization ("FTO"), as that term is defined in 8 U.S.C. § 1189 of the Antiterrorism

2

and Effective Death Penalty Act of 1996, Specially Designated Terrorist ("SDT"), as defined by Executive Order 12947, or Specially Designated Global Terrorists ("SDGT"), as defined by Executive Order 13224, by the United States, or as a terrorist individual or organization by any other country including, but not limited to the Republic of France, the European Union individually or by its member nations, and State of Israel.

s.    "Israeli Watchlist" or "Israeli Unlawful Organizations List" means the official list prepared by the Israeli Minster of Defense and promulgated by the Israeli Ministry of Defense in the official gazette – the Announcements and Advertisements Gazette and available from the Ministry of Justice website: *http://www.justice.gov.il/NR/rdonlyres/57C31612-EFC6-4452-A345-3C082F68D03D/4465/orgillegal2.doc*

t.    "Generated" means written, typed, or otherwise originating from or at the behest of the person or entity that created the document which is the subject of the request.

u.    "Anti-money laundering" or "AML" is synonymous with the definition used by the Financial Action Task Force on Money Laundering.

## INSTRUCTIONS

1.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these document requests shall be deemed to be continuing in nature so that if NatWest subsequently discovers or obtain possessions, custody or control of any document previously requested or required to be produced, defendant shall promptly make such document available.

2.    In producing documents and other materials, you are to furnish all documents in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

3.    In producing documents, you are requested to produce the original of each document requested, together with all non-identical copies and drafts of such documents. If the original of any document cannot be located, a copy shall be produced in lieu of thereof, and shall be legible and bound or stapled in the same manner as the original.

4.    If any requested document cannot be produced in full, you are to produce it to the extent possible, indicating which document, or portion of such document, is being withheld, and the reason that document is being withheld.

5.    Documents not otherwise responsive to these document requests shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by these document requests, or if such documents are attached to documents called for by

3

these document requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluation or similar materials.

6.     All documents shall be produced in the same order as they are kept or maintained by you in the ordinary course of your business.

7.     All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you. If for any reason the container cannot be produced, produce copies of all labels or other identifying marks.

8.     Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document's custodian(s).

9.     Documents attached to each other should not be separated.

10.    If a document once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the document and state the details concerning its loss.

11.    In responding to these requests you are to include documents (a) obtained from witnesses who gave information to any governmental agency or investigatory body; (b) that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceedings or investigations; or (c) obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

12.    If you claim the attorney-client privilege or any other privilege or work product protection for any document, provide a detailed privilege log that contains at least the information required by Local Rule 26.2 (2)(A) for each document that you have withheld.

13.    Unless a different time period is specified, the relevant time period (the "Relevant Period") for these document requests is **January 1, 1990 through the present**.

## DOCUMENTS REQUESTED

1.     All account records maintained by, or in the custody and control of Defendant that concern INTERPAL, including account opening records, bank statements, wire transactions, deposit slips and all correspondence between Defendant and INTERPAL.

2.     All documents and communications by or to Defendant concerning INTERPAL, including all internal reports and the contents of any internal investigations undertaken by Defendant that reference INTERPAL.

3. All non-privileged documents and communications by or to the Defendant from or to banking regulatory authorities in the United States, United Kingdom, or the European Union including, but not limited to, the U.S. Department of Justice, U.S. Department of the Treasury Office of the Comptroller of the Currency, U.S. Department of the Treasury Financial Crimes Enforcement Network, The Charity Commission for England and Wales, the Bank of England, the Financial Services Authority in the United Kingdom, concerning INTERPAL and or accounts maintained by the Defendant on INTERPAL's behalf.

4. All documents and communications by or to Defendant concerning the existence of the Israeli Watchlist or Israeli Unlawful Organizations List.

5. All documents and communications by or to Defendant concerning the existence of the United States FTO, SDT or SDGT lists.

6. All documents and communications by or to Defendant concerning the contents or findings of the Israeli Watchlist or Israeli Unlawful Organizations List.

7. All documents and communications by or to Defendant concerning the contents or findings of the United States FTO, SDT or SDGT lists.

8. All documents and communications by or to Defendant concerning the "Union of Good" a/k/a Coalition of Benevolence a/k/a *I'Tilafu Al-Khayr*.

9. All documents and communications by or to Defendant concerning  Yussef al-Qaradawi a/k/a Yousuf Al-Qardawi a/k/a Yousef Al-Qaradhawi a/k/a Yussuf Al-Kardawi.

10. All documents and communications by Defendant concerning the following alleged HAMAS agents or front organizations:

        a.    Holy Land Foundation For Relief and Development;

        b.    Al-Aqsa Charitable Foundation (Germany, Belgium, Denmark, and the Netherlands);

        c.    the Tulkarem Zakat Committee a/k/a Tulkarm Charitable Society a/k/a Tulkarem Charity Committee a/k/a *Lajnat Zakkah Tul-Karem*;

        d.    the Zakat and Sadadaqat Committee Ramallah Bireh a/k/a Ramallah (and Al-bireh) Charitable Society a/k/a *Lajnat Zakkah Ramallah* a/k/a *Lajinat Zakkah Ramallah wa-Al-Bireh*;

        e.    the Nablus Zakat Committee a/k/a Nablus Charitable Committee a/k/a Nablus Islamic Aid Committee a/k/a Islamic Assistance Society Nablus a/k/a *Lajnat Al-Ighatha Al-Islamia Nablus*;

5

f.  Al Islah Charitable Society a/k/a *Jamaiat Al-Islah Al-Khayriah/* a/k/a *Jamaiat Al-Islah Al-Khayriah Al-Ijtamiah bayt Lehem*;

g.  Orphan Care Society of Bethlehem a/k/a Bethlehem Society for Orphans a/k/a *Jamaiat Ra'iat Al-Yatim FiBayt-Lehem*;

h.  Hebron Islamic Charitable Society a/k/a Islamic Charity Society of Hebron a/k/a *l-Jamaia Al-Islamia Al-Khiria Al-Khalil*

i.  Jenin Zakat Committee a/k/a Jenin Charitable Society a/k/a *Lajnat Amwal Al-Zakkah Jenin*

j.  Nablus Al-Tadam Charitable Society a/k/a ISLAMIC SOLIDARITY (TADAMON) CHARITY SOCIETY a/k/a *Jamaiat Al-Tadamon* (*Al-Tadamun*)

k.  Al Salah Society – Gaza a/k/a Al-Salah Islamic Association – Gaza a/k/a Islamic Virtue Society – Gaza a/k/a *Jamaiat Al-Salah Al-Islamaia*

l.  Al Mujama al Islamiya – Gaza a/k/a ISLAMIC CENTER a/k/a Central Islamic Society – Gaza Strip

m.  Al Jama'ia al Islamiya – Gaza a/k/a The Islamic Society a/k/a ISLAMIC CHARITY SOCIETY

n.  Qalqilya Charity Committee a/k/a *Lajnat Zakkah Qalqiliya*

o.  Beit Fajar Charity Committee a/k/a Bet Fajar Zakat Committee

p.  Islamic Charitable Society in the Gaza Strip

q.  Muslim Youth Association of Hebron a/k/a Jamaiat Al-Shuban Al-Muslemia

r.  Tobas Zakat Committee

s.  Khan Yunis Zakat Committee a/k/a Lajnat Al-Zakkah Al-Rame Khan Yunes

t.  Society of Islamic Science and Culture Committee

u.  Al-Ram Zakat Committee – Jerusalem

v.  Al-Dheisha Refugee Camp Zakat Committee – Bethlehem

w.  Mercy Association for Children – Gaza

x.     Orphans and Needy Welfare Society – Gaza

y.     Kalkilya Society for the Disabled a/k/a Qalqilya Society for the Disabled

z.     Social Charitable Society – Rafa

aa.     Al-Sanabil – Saida, Lebanon

bb.     Jarach Camp

cc.     Al-Bir Wal-Ihssan Camp

dd.     Azmi Al-Mufti Camp

ee.     Ma'dab Camp

ff.     Soof Camp

gg.     Al-Wahadat Camp

hh.     Al-Rasifia Camp

ii.     Jabal Al-Nadheef

jj.     Al-Hussain Camp

kk.     Al-Zarkaa Camp

ll.     Hitteen Camp

mm.     Al-Bak'aa Camp

nn.     Islamic Relief Committee – Um-Alfahm

oo.     Sowailah Camp

pp.     Al Hai'a Al-Islamiah Liri'aya – Lebanon

qq.     The Mercy Association for Children

rr.     Al-Bir Committee – Al-Koora –Jordan

ss.     Al-Bir Committee Alshoona Shamalia – Jordan

tt.     Al Ramtha Islamic Center – Jordan

uu.     Haiat Al Aamal Al Khairia – Jordan

vv.     Palestine Support Committee – Jordan

11.     All documents concerning Defendant's freezing of INTERPAL'S accounts maintained by NatWest in March of 1996 including any documents that were the catalyst or basis of any decision to freeze said accounts.

12.     All documents concerning Defendant's freezing of INTERPAL'S accounts maintained by NatWest in August and/or September of 2003 including any documents that were the catalyst or basis of any decision to freeze said accounts

13.     All documents concerning NatWest's anti-money laundering efforts, "Know Your Customer" procedures, or other measures NatWest used to prevent the rendering of financial services to Terrorists and Terrorist Organizations.

14.     All documents including organization charts which refer or relate to the organization of NatWest and the identity of its officers, directors, branch managers and all parents and subsidiaries.

15.     All documents including organization charts which refer or relate to the organization of RBS and the identity of its officers, directors, branch managers and all parents and subsidiaries.

16.     All documents concerning or consisting of agency agreements between RBS and NatWest.

17.     Copies of all internal NatWest documents related to the following subjects and/or departments:

a.      Account Opening Procedures:

i.      Documents, including manuals, instruction booklets, or procedures outlining the information to be obtained and verified before an account may be opened with NatWest;

ii.     A copy of an account opening application;

iii.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts.

b.      Security Department Procedures:

i.      Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division

responsible for maintaining appropriate security for NatWest's business operations (a "Security Department");

ii.       Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Security Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Security Department's responsibilities;

iii.      Documents concerning procedures and software used for monitoring, review and investigation of account activity;

iv.      Copies of all internal or external audit plans for account activity;

v.       Documents concerning training or procedural guidelines for Security Department members who were tasked with monitoring account activity;

vi.      Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

vii.     Copies of all information technology ("IT") protocols used to monitor accounts;

viii.    Policy and procedures for the reporting of suspicious activity;

ix.      Copies of all organizational charts for any Security Department;

x.       Provide copies of any "Corporate Code of Conduct" guidelines that apply to Security Department employees.

c.   Customer Account Department:

i.       Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup or division responsible for customer accounts ("Customer Account Department");

ii.      Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Customer Account Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Customer Account Department's responsibilities;

iii.     Documents concerning procedures and software used for the management of Customer Account Department files;

9

iv. Documents concerning training or procedural guidelines for the maintenance of Customer Account Department files;

v. Documents concerning procedures and protocols used to ensure the authenticity of client correspondence to officers such as signature verifications;

vi. Copies of all IT protocols used by account officers to assist them with their files;

vii. Documents concerning policies or procedures used to monitor compliance with the Customer Account Department filing procedures;

viii. Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

ix. Copies of all organizational charts for the Customer Account Department;

x. Provide copies of any "Corporate Code of Conduct" guidelines that apply to Customer Account Department employees.

d. Compliance Department Procedures:

i. Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for compliance   with applicable banking regulations ("Compliance Department");

ii. Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Compliance Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Compliance Department's responsibilities;

iii. Documents concerning procedures and software used for the monitoring, review, and investigation of account activity;

iv. Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

v. Documents concerning training or procedural guidelines for Compliance Department employees;

vi.     All documents or forms used to report on the monitoring or investigation of accounts by Compliance Department employees;

vii.     Copies of all IT protocols used by Compliance Department employees to assist them in monitoring and investigating account activity;

viii.     Copies of all organizational charts for the Compliance Department;

ix.     Provide copies of any "Corporate Code of Conduct" guidelines that apply to Compliance Department employees.

e.     <u>Internal Audit Department procedures</u>:

i.     Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for internal audit services for NatWest;

ii.     Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Internal Audit Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Internal Audit Department's responsibilities;

iii.     Documents concerning procedures and software used for the monitoring, review and investigation of account activity by Defendant's Internal Audit Department;

iv.     Documents concerning training or procedural guidelines for internal audit department employees or employees whose job it is/was to monitor and report on accounts;

v.     Copies of all IT protocols used by the Internal Audit Department employees to assist them in reporting on the monitoring or investigation of accounts;

vi.     Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

vii.     All documents or forms used to report on the monitoring or investigation of accounts by Internal Audit Department employees;

viii.     Policy and procedures for the reporting by Internal Audit Department employees of suspicious activity;

11

ix.     Copies of all organizational charts for the Internal Audit Department;

x.      Provide copies of any "Corporate Code of Conduct" guidelines that apply to Internal Audit Department employees.

f.  <u>Bank Secrecy Department</u>:

i.      Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for monitoring regulating, or enforcing compliance with legal, regulatory, and reporting requirements concerning U.S. and foreign bank secrecy obligations ("Bank Secrecy Department");

ii.     Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Bank Secrecy Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Bank Secrecy Department's responsibilities;

iii.    Procedures and protocols concerning domestic and international bank secrecy requirements for NatWest's customers or transactions processed by NatWest;

iv.     Copies of all guidance, policy, or procedures concerning bank secrecy laws and regulations and NatWest's compliance requirements regarding same;

v.      Copies of all manuals or other documents created by or for Defendant concerning bank secrecy requirements and related areas of compliance;

vi.     All documents describing the relationship and division of responsibility between the Bank Secrecy Department, Legal Department, Compliance Department, Internal Audit Department, IT and any outside entities or individuals regarding bank secrecy compliance, investigation of suspicious activity and reporting of suspicious activity;

vii.    Documents concerning the procedures and software used for the monitoring of, or audit plans for compliance with, bank secrecy requirements;

viii.   Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

ix.    Documents concerning training or procedural guidelines on bank secrecy compliance for NatWest employees including Bank Secrecy Department employees;

x.    All documents or forms used to monitor compliance with bank secrecy obligations;

xi.    Copies of all IT protocols used by employees responsible for bank secrecy compliance;

xii.    All documents concerning how any conflicts between bank secrecy obligations are reconciled with obligations to report suspicious activities;

xiii.    Provide copies of all suspicious activity reports or memoranda filed through or by the Bank Secrecy Department;

xiv.    Copies of all organizational charts for the Bank Secrecy Department;

xv.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to the Bank Secrecy Department employees.

g.    Terror Financing Designations or Warnings:

i.    All documents concerning Defendant's system, including software, for tracking, documenting, cataloging, listing, or identifying the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body or identifying any transactions or occurrences associated with Terrorists or Terrorist Organizations;

ii.    Copies of all IT protocols or written descriptions of all software programs used to monitor the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body;

iii.    All manuals or internal protocols describing the appropriate actions to be taken by Defendant's employees to examine whether any designated Terrorists or Terrorist Organizations maintains

13

accounts, receives funds, engages in transactions or otherwise uses NatWest's services;

iv.     All documents or internal manuals describing the appropriate actions to be taken if NatWest's services are being used in any manner by a Terrorist or Terrorist Organization.

18.     Copy of any insurance policy which may provide coverage in whole or in part for the claims asserted in the Complaint.

19.     All documents concerning any formal or informal document retention policy maintained by NatWest, any NatWest branch, or any NatWest subsidiary or affiliate.

Date: June 30, 2006

OSEN & ASSOCIATE, LLC

By

Gary M. Osen (GO-5790)
Joshua D. Glatter (JG-0184)
Peter Raven-Hansen, Of Counsel
Aaron Schlanger (AS-9372)
700 Kinderkamack Road
Oradell, New Jersey 07649
(201) 265-6400

KOHN, SWIFT & GRAF, P.C.
Robert A. Swift
Steven M. Steingard
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

GLANCY BINKOW &
GOLDBERG LLP
Andrew D. Friedman (AF-6222)
Of Counsel
430 Park Avenue
New York, New York 10022
(212) 308-6300

Attorneys for Plaintiffs

14

## CERTIFICATE OF SERVICE

I, Aaron Schlanger, hereby certify that a true and correct copy of Plaintiffs' First Request

for the Production of Documents to Defendant National Westminster Bank, PLC was served via

electronic mail and federal express on this 30th day of June 2006, on the following:

> Lawrence B. Friedman, Esq.
> CLEARY GOTTLIEB STEEN & HAMILTON LLP
> One Liberty Plaza
> New York, New York 10006

Aaron Schlanger

Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                          :

TZVI WEISS, *et al.*,                   :

                    Plaintiffs,       :

             - against -       :      CV 05-4622 (CPS) (KAM)

                                            :

NATIONAL WESTMINSTER BANK PLC,  :

                    Defendant.      :

-------------------------------------------------------- X

### DEFENDANT NATIONAL WESTMINSTER BANK PLC'S
### RESPONSES AND OBJECTIONS TO PLAINTIFFS'
### FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Defendant National Westminster Bank Plc ("NatWest") responds pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure to Plaintiffs' First Request for the Production of Documents, dated June 30, 2006 (the "Document Requests" and individually a "Request" or "Document Request"), as follows:

### RESERVATION OF RIGHTS

1.      To the extent NatWest produces documents in response to the Document Requests, it does so without conceding the materiality, admissibility or relevance of any such documents, or of any other substantive responses to the Document Requests.

2.      By producing a document, NatWest does not admit that such a document is responsive to the Document Requests, nor does a response to the effect that NatWest will produce a document indicate that such a document exists or can be located.

3.      NatWest reserves all objections to the use of these responses and of any documents it produces.  All such objections may be interposed by NatWest at the time of trial or as otherwise required by the rules or order of the court.

4.      NatWest reserves the right to amend or supplement its responses and objections to the Document Requests as additional documents are identified.

5.      The inadvertent production of any privileged or work product document shall not be deemed a waiver of any claim of privilege or work product as to such document, and NatWest reserves the right to require the return of all copies of any such document inadvertently produced in response to the Document Requests. Insofar as the intentional production of any document by NatWest pursuant to the Document Requests may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular document only.

## GENERAL OBJECTIONS

Each of NatWest's responses is subject to the following General Objections, and each such General Objection is incorporated by reference in NatWest's response to each Document Request as if fully set forth therein, unless such response specifically states that it is made notwithstanding such objections (in which case such objections are reserved but not relied upon to withhold documents):

1.      NatWest objects to all definitions, instructions and requests that purport to impose obligations beyond those required or permitted by Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3 of the U.S. District Court for the Eastern District of New York.

2.      NatWest objects to the Document Requests to the extent that they purport to require NatWest to produce "all documents" or "any document" because such a request is overbroad, unduly burdensome and improper. Given the size and scope of NatWest's operations, it is impossible for NatWest to conduct the type of search that appears to be contemplated by

2

certain of the Document Requests. Accordingly, NatWest's document production will be based upon a reasonable search of files that it believes may be expected to contain non-duplicative, responsive information.

      3.     NatWest objects to the Document Requests to the extent they purport to call for information or documents not within its possession, custody or control, but in the possession, custody or control of third parties or separate legal entities.

      4.     NatWest objects to the Document Requests to the extent they purport to call for the disclosure of information and/or production of documents in the public domain and not in the exclusive possession, custody or control of NatWest. Such requests are beyond the scope of permissible discovery, would impose an undue burden on NatWest, and are an attempt to require NatWest to prepare Plaintiffs' case. Such information and documents are as available to Plaintiffs as they are to NatWest.

      5.     NatWest objects to the Document Requests to the extent they seek the disclosure of information and/or production of documents (i) prepared for or in anticipation of litigation; (ii) that constitute attorney work product; (iii) reflect attorney-client communications; (iv) are subject to the bank examination privilege; or (v) are otherwise privileged.

      6.     NatWest objects to each and every request, definition and instruction contained in the Document Requests to the extent that any such request, definition or instruction contains inaccurate, incomplete or misleading descriptions of the facts, persons, relationships, events and pleadings underlying this action. The production of any information shall not constitute NatWest's agreement with or acquiescence to any such description.

3

7. NatWest objects to the Document Requests to the extent they are vague, ambiguous, overly broad, unduly burdensome, or seek the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

8. NatWest objects to the Document Requests to the extent the Relevant Period as defined therein is overbroad and, were it to apply to the Document Requests, would cause NatWest undue burden and result in the production of documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, NatWest will respond to the Document Requests as if the time period governing its search for documents responsive to the Document Requests were defined as January 1, 1996 through December 31, 2003.

9. NatWest objects to the Document Requests to the extent they seek the disclosure of information subject to applicable English bank customer secrecy laws. Pursuant to Tournier v. National Provincial and Union Bank of England, 1 K.B. 461 (C.A. 1924), and its progeny of English case law, a financial institution, and persons affiliated with and/or employed by a financial institution, are prohibited from disclosing confidential information regarding any existing or former customer, without that customer's prior consent, including but not limited to the customer's name, account information, and transfers into and from the customer's account(s) by and to third parties. Failure to protect such confidential information constitutes a civil offense under English law and could subject NatWest to liability. Such disclosure may also constitute a violation of the 8th Data Protection Principle of the U.K. Data Protection Act 1998.

NatWest has therefore asked Interpal to release NatWest from NatWest's secrecy obligations in order to permit disclosure of information in NatWest's possession relating to

4

Interpal. However, to date, NatWest has not received such a release, and therefore could be

exposed to liability under English and U.K. law if it were to disclose such information.

        10.     NatWest objects to the Document Requests to the extent they seek the

disclosure of information and/or production of documents subject to applicable U.K. anti-money

laundering laws, including Section 333 of the Proceeds of Crime Act 2002 and Section 39 of the

Terrorism Act 2000. Disclosure of the existence and/or contents of a suspicious activity report

constitutes a criminal offense under U.K law and is sanctionable by imprisonment of up to five

years and/or monetary penalties. In addition, this disclosure would be contrary to the public

interest by placing the maker of the report at risk.

## DOCUMENTS REQUESTED

### REQUEST NO. 1:

        All account records maintained by, or in the custody and control of Defendant that

concern INTERPAL, including account opening records, bank statements, wire transactions,

deposit slips and all correspondence between Defendant and INTERPAL.

### RESPONSE AND OBJECTION TO REQUEST NO. 1:

        See General Objections, including, without limitation, General Objections Nos. 2,

7, 8, 9 and 10.

### REQUEST NO. 2:

        All documents and communications by or to Defendant concerning INTERPAL,

including all internal reports and the contents of any internal investigations undertaken by

Defendant that reference INTERPAL.

5

RESPONSE AND OBJECTION TO REQUEST NO. 2:

See General Objections, including, without limitation, General Objections Nos. 2,

7, 8, 9 and 10.

REQUEST NO. 3:

All non-privileged documents and communications by or to the Defendant from

or to banking regulatory authorities in the United States, United Kingdom, or the European

Union including, but not limited to, the U.S. Department of Justice, U.S. Department of the

Treasury Office of the Comptroller of the Currency, U.S. Department of the Treasury Financial

Crimes Enforcement Network, The Charity Commission for England and Wales, the Bank of

England, the Financial Services Authority in the United Kingdom, concerning INTERPAL and

or accounts maintained by the Defendant on INTERPAL's behalf.

RESPONSE AND OBJECTION TO REQUEST NO. 3:

See General Objections, including, without limitation, General Objections Nos. 9

and 10.

REQUEST NO. 4:

All documents and communications by or to Defendant concerning the existence

of the Israeli Watchlist or Israeli Unlawful Organizations List.

RESPONSE AND OBJECTION TO REQUEST NO. 4:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

REQUEST NO. 5:

All documents and communications by or to Defendant concerning the existence

of the United States FTO, SDT or SDGT lists.

6

RESPONSE AND OBJECTION TO REQUEST NO. 5:

Subject to and without waiving the foregoing General Objections, NatWest will produce non-privileged documents responsive to this request concerning Interpal, if any.

REQUEST NO. 6:

All documents and communications by or to Defendant concerning the contents or findings of the Israeli Watchlist or Israeli Unlawful Organizations List.

RESPONSE AND OBJECTION TO REQUEST NO. 6:

Subject to and without waiving the foregoing General Objections, NatWest will produce non-privileged documents responsive to this request concerning Interpal, if any.

REQUEST NO. 7:

All documents and communications by or to Defendant concerning the contents or findings of the United States FTO, SDT or SDGT lists.

RESPONSE AND OBJECTION TO REQUEST NO. 7:

Subject to and without waiving the foregoing General Objections, NatWest will produce non-privileged documents responsive to this request concerning Interpal, if any.

REQUEST NO. 8:

All documents and communications by or to Defendant concerning the "Union of Good" a/k/a Coalition of Benevolence a/k/a *I'Tilafu Al-Khayr*.

RESPONSE AND OBJECTION TO REQUEST NO. 8:

Subject to and without waiving the foregoing General Objections, NatWest will produce non-privileged documents responsive to this request concerning Interpal, if any.

<u>REQUEST NO. 9:</u>

All documents and communications by or to Defendant concerning Yussef al-Qaradawi a/k/a Yousuf Al-Qardawi a/k/a Yousef Al-Qaradhawi a/k/a Yussef Al-Kardawi.

<u>RESPONSE AND OBJECTION TO REQUEST NO. 9:</u>

Subject to and without waiving the foregoing General Objections, NatWest will produce non-privileged documents responsive to this request concerning Interpal, if any.

<u>REQUEST NO. 10:</u>

All documents and communications by Defendant concerning the following alleged HAMAS agents or front organizations:

a.  Holy Land Foundation For Relief and Development;

b.  Al-Aqsa Charitable Foundation (Germany, Belgium, Denmark, and the Netherlands);

c.  the Tulkarem Zakat Committee a/k/a Tulkarm Charitable Society a/k/a Tulkarem Charity Committee a/k/a *Lajnat Zakkah Tul-Karem*;

d.  the Zakat and Sadadaqat Committee Ramallah Bireh a/k/a Ramallah (and Al-Bireh) Charitable Society a/k/a *Lajnat Zakkah Ramallah* a/k/a *Lajinat Zakkah Ramallah wa-Al-Bireh*;

e.  the Nablus Zakat Committee a/k/a Nablus Charitable Committee a/k/a Nablus Islamic Aid Committee a/k/a Islamic Assistance Society Nablus a/k/a *Lajnat Al-Ighatha Al-Islamia Nablus*;

f.  Al Islah Charitable Society a/k/a *Jamaiat Al-Islah Al-Khayriah/* a/k/a *Jamaiat Al-Islah Al-Khayriah Al-Ijtamiah bayt Lehem*;

g.  Orphan Care Society of Bethlehem a/k/a Bethlehem Society for Orphans a/k/a *Jamaiat Ra'iat Al-Yatim FiBayt-Lehem*;

h.  Hebron Islamic Charitable Society a/k/a Islamic Charity Society of Hebron a/k/a l-*Jamaia Al-Islamia Al-Khiria Al-Khalil*

i.  Jenin Zakat Committee a/k/a Jenin Charitable Society a/k/a *Lajnat Amwal Al-Zakkah Jenin*

8

j.    Nablus Al-Tadam Charitable Society a/k/a ISLAMIC SOLIDARITY
      (TADAMON) CHARITY SOCIETY a/k/a *Jamaiat Al-Tadamon
      (Al-Tadamun)*

k.    Al Salah Society – Gaza a/k/a Al-Salah Islamic Association – Gaza a/k/a
      Islamic Virtue Society – Gaza a/k/a *Jamaiat Al-Salah Al-Islamaia*

l.    Al Mujama al Islamiya – Gaza a/k/a ISLAMIC CENTER a/k/a Central
      Islamic Society – Gaza Strip

m.    Al Jama'ia al Islamiya – Gaza a/k/a The Islamic Society a/k/a ISLAMIC
      CHARITY SOCIETY

n.    Qalqilya Charity Committee a/k/a *Lajnat Zakkah Qalqiliya*

o.    Beit Fajar Charity Committee a/k/a Bet Fajar Zakat Committee

p.    Islamic Charitable Society in the Gaza Strip

q.    Muslim Youth Association of Hebron a/k/a Jamaiat Al-Shuban
      Al-Muslemia

r.    Tobas Zakat Committee

s.    Khan Yunis Zakat Committee a/k/a Lajnat Al-Zakkah Al-Rame Khan
      Yunes

t.    Society of Islamic Science and Culture Committee

u.    Al-Ram Zakat Committee – Jerusalem

v.    Al-Dheisha Refugee Camp Zakat Committee – Bethlehem

w.    Mercy Association for Children – Gaza

x.    Orphans and Needy Welfare Society – Gaza

y.    Kalkilya Society for the Disabled a/k/a Qalqilya Society for the Disabled

z.    Social Charitable Society – Rafa

aa.   Al-Sanabil – Saida, Lebanon

bb.   Jarach Camp

cc.   Al-Bir Wal-Ihssan Camp

dd.   Azmi Al-Mufti Camp

9

ee.    Ma'dab Camp

ff.    Soof Camp

gg.    Al-Wahadat Camp

hh.    Al-Rasifia Camp

ii.    Jabal Al-Nadheef

jj.    Al-Hussain Camp

kk.    Al-Zarkaa Camp

ll.    Hitteen Camp

mm.    Al-Bak'aa Camp

nn.    Islamic Relief Committee – Um-Alfahm

oo.    Sowailah Camp

pp.    Al Hai'a Al-Islamiah Liri'aya – Lebanon

qq.    The Mercy Association for Children

rr.    Al-Bir Committee – Al-Koora –Jordan

ss.    Al-Bir Committee Alshoona Shamalia – Jordan

tt.    Al Ramtha Islamic Center – Jordan

uu.    Haiat Al Aamal Al Khairia – Jordan

vv.    Palestine Support Committee – Jordan

RESPONSE AND OBJECTION TO REQUEST NO. 10:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request concerning Interpal, if any.

REQUEST NO. 11:

All documents concerning Defendant's freezing of INTERPAL'S accounts

maintained by NatWest in March of 1996 including any documents that were the catalyst or

basis of any decision to freeze said accounts.

10

RESPONSE AND OBJECTION TO REQUEST NO. 11:

See General Objections, including, without limitation, General Objections Nos. 9

and 10.

REQUEST NO. 12:

All documents concerning Defendant's freezing of INTERPAL'S accounts

maintained by NatWest in August and/or September of 2003 including any documents that were

the catalyst or basis of any decision to freeze said accounts.

RESPONSE AND OBJECTION TO REQUEST NO. 12:

See General Objections, including, without limitation, General Objections Nos. 9

and 10.

REQUEST NO. 13:

All documents concerning NatWest's anti-money laundering efforts, "Know Your

Customer" procedures, or other measures NatWest used to prevent the rendering of financial

services to Terrorists and Terrorist Organizations.

RESPONSE AND OBJECTION TO REQUEST NO. 13:

In addition to the foregoing General Objections, NatWest objects on the ground

that this Request is grossly overbroad and unduly burdensome, and seeks the production of

documents that are not relevant and not reasonably calculated to lead to the discovery of

admissible evidence.

REQUEST NO. 14:

All documents including organization charts which refer or relate to the

organization of NatWest and the identity of its officers, directors, branch managers and all

parents and subsidiaries.

11

RESPONSE AND OBJECTION TO REQUEST NO. 14:

In addition to the foregoing General Objections, NatWest objects on the ground
that this Request is grossly overbroad and unduly burdensome, and seeks the production of
documents that are not relevant and not reasonably calculated to lead to the discovery of
admissible evidence. Accordingly, subject to and without waiving the foregoing General
Objections, NatWest will produce in response to these requests non-privileged documents
obtained as a result of a reasonable search and without undue burden, and which documents are
reasonably related to the allegations of the First Amended Complaint.

REQUEST NO. 15:

All documents including organization charts which refer or relate to the
organization of RBS and the identity of its officers, directors, branch managers and all parents
and subsidiaries.

RESPONSE AND OBJECTION TO REQUEST NO. 15:

In addition to the foregoing General Objections, NatWest objects on the ground
that this Request is grossly overbroad and unduly burdensome, and seeks the production of
documents that are not relevant and not reasonably calculated to lead to the discovery of
admissible evidence. Accordingly, subject to and without waiving the foregoing General
Objections, NatWest will produce in response to these requests non-privileged documents
obtained as a result of a reasonable search and without undue burden, and which documents are
reasonably related to the allegations of the First Amended Complaint.

REQUEST NO. 16:

All documents concerning or consisting of agency agreements between RBS and
NatWest.

12

RESPONSE AND OBJECTION TO REQUEST NO. 16:

Subject to and without waiving the foregoing General Objections, NatWest will

produce non-privileged documents responsive to this request, if any.

REQUEST NO. 17:

Copies of all internal NatWest documents related to the following subjects and/or

departments:

      a.    Account Opening Procedures:

           i.    Documents, including manuals, instruction booklets, or procedures outlining the information to be obtained and verified before an account may be opened with NatWest;

           ii.    A copy of an account opening application;

           iii.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts.

      b.    Security Department Procedures:

           i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for maintaining appropriate security for NatWest's business operations (a "Security Department");

           ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Security Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Security Department's responsibilities;

           iii.    Documents concerning procedures and software used for monitoring, review and investigation of account activity;

           iv.    Copies of all internal or external audit plans for account activity;

           v.    Documents concerning training or procedural guidelines for Security Department members who were tasked with monitoring account activity;

           vi.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

13

    vii.    Copies of all information technology ("IT") protocols used to monitor accounts;

    viii.    Policy and procedures for the reporting of suspicious activity;

    ix.    Copies of all organizational charts for any Security Department;

    x.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Security Department employees.

c.    <u>Customer Account Department</u>:

    i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup or division responsible for customer accounts ("Customer Account Department");

    ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Customer Account Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Customer Account Department's responsibilities;

    iii.    Documents concerning procedures and software used for the management of Customer Account Department files;

    iv.    Documents concerning training or procedural guidelines for the maintenance of Customer Account Department files;

    v.    Documents concerning procedures and protocols used to ensure the authenticity of client correspondence to officers such as signature verifications;

    vi.    Copies of all IT protocols used by account officers to assist them with their files;

    vii.    Documents concerning policies or procedures used to monitor compliance with the Customer Account Department filing procedures;

    viii.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

    ix.    Copies of all organizational charts for the Customer Account Department;

    x.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Customer Account Department employees.

14

d.    Compliance Department Procedures:

    i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for compliance with applicable banking regulations ("Compliance Department");

    ii.   Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Compliance Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Compliance Department's responsibilities;

    iii.  Documents concerning procedures and software used for the monitoring, review, and investigation of account activity;

    iv.   Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

    v.    Documents concerning training or procedural guidelines for Compliance Department employees;

    vi.   All documents or forms used to report on the monitoring or investigation of accounts by Compliance Department employees;

    vii.  Copies of all IT protocols used by Compliance Department employees to assist them in monitoring and investigating account activity;

    viii. Copies of all organizational charts for the Compliance Department;

    ix.   Provide copies of any "Corporate Code of Conduct" guidelines that apply to Compliance Department employees.

e.    Internal Audit Department procedures:

    i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for internal audit services for NatWest;

    ii.   Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Internal Audit Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Internal Audit Department's responsibilities;

15

iii.    Documents concerning procedures and software used for the monitoring, review and investigation of account activity by Defendant's Internal Audit Department;

iv.    Documents concerning training or procedural guidelines for internal audit department employees or employees whose job it is/was to monitor and report on accounts;

v.    Copies of all IT protocols used by the Internal Audit Department employees to assist them in reporting on the monitoring or investigation of accounts;

vi.    Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

vii.    All documents or forms used to report on the monitoring or investigation of accounts by Internal Audit Department employees;

viii.    Policy and procedures for the reporting by Internal Audit Department employees of suspicious activity;

ix.    Copies of all organizational charts for the Internal Audit Department;

x.    Provide copies of any "Corporate Code of Conduct" guidelines that apply to Internal Audit Department employees.

f.    Bank Secrecy Department:

i.    Documents sufficient to evidence the existence of any formal or informal department, individual(s), group, subgroup, or division responsible for monitoring regulating, or enforcing compliance with legal, regulatory, and reporting requirements concerning U.S. and foreign bank secrecy obligations ("Bank Secrecy Department");

ii.    Documents sufficient to identify any outside entities, groups, individuals, or consultants who either (a) assist the Bank Secrecy Department in fulfilling its responsibilities; or (b) are directly responsible for carrying out the Bank Secrecy Department's responsibilities;

iii.    Procedures and protocols concerning domestic and international bank secrecy requirements for NatWest's customers or transactions processed by NatWest;

iv.     Copies of all guidance, policy, or procedures concerning bank secrecy laws and regulations and NatWest's compliance requirements regarding same;

v.     Copies of all manuals or other documents created by or for Defendant concerning bank secrecy requirements and related areas of compliance;

vi.     All documents describing the relationship and division of responsibility between the Bank Secrecy Department, Legal Department, Compliance Department, Internal Audit Department, IT and any outside entities or individuals regarding bank secrecy compliance, investigation of suspicious activity and reporting of suspicious activity;

vii.     Documents concerning the procedures and software used for the monitoring of, or audit plans for compliance with, bank secrecy requirements;

viii.     Copies of all forms (including blank and completed forms) used for the monitoring or investigation of accounts;

ix.     Documents concerning training or procedural guidelines on bank secrecy compliance for NatWest employees including Bank Secrecy Department employees;

x.     All documents or forms used to monitor compliance with bank secrecy obligations;

xi.     Copies of all IT protocols used by employees responsible for bank secrecy compliance;

xii.     All documents concerning how any conflicts between bank secrecy obligations are reconciled with obligations to report suspicious activities;

xiii.     Provide copies of all suspicious activity reports or memoranda filed through or by the Bank Secrecy Department;

xiv.     Copies of all organizational charts for the Bank Secrecy Department;

xv.     Provide copies of any "Corporate Code of Conduct" guidelines that apply to the Bank Secrecy Department employees.

17

g.  Terror Financing Designations or Warnings:

   i.  All documents concerning Defendant's system, including software, for tracking, documenting, cataloging, listing, or identifying the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body or identifying any transactions or occurrences associated with Terrorists or Terrorist Organizations;

   ii.  Copies of all IT protocols or written descriptions of all software programs used to monitor the designation of entities or individuals as Terrorists or Terrorist Organizations pursuant to the International Economic Emergency Powers Act by the United States Office of Foreign Asset Control; the United Nations; and/or any other government or regulatory body;

   iii.  All manuals or internal protocols describing the appropriate actions to be taken by Defendant's employees to examine whether any designated Terrorists or Terrorist Organizations maintains accounts, receives funds, engages in transactions or otherwise uses NatWest's services;

   iv.  All documents or internal manuals describing the appropriate actions to be taken if NatWest's services are being used in any manner by a Terrorist or Terrorist Organization.

## RESPONSE AND OBJECTION TO REQUEST NO. 17:

In addition to the foregoing General Objections, NatWest objects on the ground

that this Request is grossly overbroad and unduly burdensome, and seeks the production of

documents that are not relevant and not reasonably calculated to lead to the discovery of

admissible evidence.

## REQUEST NO. 18:

Copy of any insurance policy which may provide coverage in whole or in part for

the claims asserted in the Complaint.

RESPONSE AND OBJECTION TO REQUEST NO. 18:

Subject to and without waiving the foregoing General Objections, NatWest will produce non-privileged documents responsive to this request, if any.

REQUEST NO. 19:

All documents concerning any formal or informal document retention policy maintained by NatWest, any NatWest branch, or any NatWest subsidiary or affiliate.

RESPONSE AND OBJECTION TO REQUEST NO. 19:

Subject to and without waiving the foregoing General Objections, NatWest will produce non-privileged documents responsive to this request, if any.

Date: August 14, 2006

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
Lawrence B. Friedman (LF-9978)
A Member of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

19

Exhibit C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X

TZVI WEISS, *et al.*,                                    :
                                                         :
                              Plaintiffs,                :
                                                         :          CV 05-4622 (CPS) (KAM)
                 - against -                              :
                                                         :
NATIONAL WESTMINSTER BANK PLC,                           :
                                                         :
                              Defendant.                 :
                                                         :
------------------------------------------------------- X

### DEFENDANT NATIONAL WESTMINSTER BANK PLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS AND RELATED INTERROGATORIES

Defendant National Westminster Bank Plc ("NatWest") responds pursuant to Rules 26, 33 and 36 of the Federal Rules of Civil Procedure to plaintiffs' First Set of Requests for Admissions and Related Interrogatories, dated July 5, 2006, as follows:

### RESERVATION OF RIGHTS

1.      To the extent NatWest answers any of the Requests for Admissions and Related Interrogatories, it does so without conceding the materiality, admissibility or relevance of any such answers.

2.      NatWest reserves all objections to the use of its answers. All such objections may be interposed by NatWest at the time of trial or as otherwise required by the rules or orders of the Court.

3.      NatWest reserves the right to amend, supplement or withdraw its answers and objections.

           4.      Insofar as an answer by NatWest may be deemed to be a waiver of any

privilege or right, such waiver shall be deemed to be a limited waiver with respect to that

particular answer only.

           5.      Any admission made herein is for the pending action only, is not an

admission for any other purpose and may not be used in any other proceedings.

## GENERAL OBJECTIONS

           Each of NatWest's answers is subject to the following General Objections, and

each such General Objection is incorporated by reference in NatWest's answers to each of the

Requests for Admissions and Related Interrogatories as if fully set forth therein, unless such

answer specifically states that it is made notwithstanding such objections (in which case such

objections are reserved but not relied upon to withhold information):

           1.      NatWest objects to all definitions, instructions and requests that purport to

impose obligations beyond those required or permitted by Rule 34 of the Federal Rules of Civil

Procedure and Local Civil Rule 26.3 of the Eastern District of New York.

           2.      NatWest objects to the Requests for Admissions and Related

Interrogatories to the extent they seek information neither relevant nor calculated to lead to the

discovery of admissible evidence.

           3.      NatWest objects to the Requests for Admissions and Related

Interrogatories to the extent they are vague, ambiguous, overly broad or unduly burdensome, or

seek information without reference to a time period.

           4.      NatWest objects to the Requests for Admissions and Related

Interrogatories to the extent they call for information concerning events occurring after the date

of the filing of the First Amended Complaint, on the grounds that such requests are overbroad,

2

beyond the scope of the allegations in the pleadings and not reasonably calculated to lead to the discovery of admissible evidence.

5.     NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they call for the disclosure of information and/or production of documents not within NatWest's knowledge or require NatWest to seek information or documents solely in the possession, custody or control of third parties.

6.     NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they call for the disclosure of information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, law or rule.  The inadvertent disclosure of any privileged or work product information or document shall not be deemed a waiver of any claim of privilege or work product as to such information, and NatWest reserves the right to request the return of any such information inadvertently produced in response to the Requests for Admissions and Related Interrogatories.

7.     NatWest objects to the Requests for Admissions and Related Interrogatories to the extent they seek the disclosure of information subject to applicable English bank customer secrecy laws.  Pursuant to Tournier v. National Provincial and Union Bank of England, 1 K.B. 461 (C.A. 1924), and its progeny of English case law, a financial institution, and persons affiliated with and/or employed by a financial institution, are prohibited from disclosing confidential information regarding any existing or former customer, without that customer's prior consent, including but not limited to the customer's name, account information, and transfers into and from the customer's account(s) by and to third parties.  Failure to protect such confidential information constitutes a civil offense under English law and could subject NatWest

3

to liability. Such disclosure may also constitute a violation of the 8th Data Protection Principle
of the U.K. Data Protection Act 1998.

NatWest has therefore asked Interpal to release NatWest from NatWest's secrecy
obligations in order to permit disclosure of information in NatWest's possession relating to
Interpal. However, to date, NatWest has not received such a release, and therefore could be
exposed to liability under English and U.K. law if it were to disclose such information.

8.      NatWest objects to the Requests for Admissions and Related
Interrogatories to the extent they seek the disclosure of information and/or production of
documents subject to applicable U.K. anti-money laundering laws, including Section 333 of the
Proceeds of Crime Act 2002 and Section 39 of the Terrorism Act 2000. Disclosure of the
existence and/or contents of a suspicious activity report constitutes a criminal offense under U.K
law and is sanctionable by imprisonment of up to five years and/or monetary penalties. In
addition, this disclosure would be contrary to the public interest by placing the maker of the
report at risk.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST FOR ADMISSION NO. 1:

Each document is a record of regularly conducted business activity of defendant
within the meaning of Rule 803(6) of the Federal Rules of Evidence.

### INTERROGATORY NO. 1:

For each document that you did not admit in Request for Admission No. 1, set
forth the document production number and state in detail all facts which support your position
why each element of Rule 803(6) of the Federal Rules of Evidence is not satisfied.

4

<u>RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 1 AND
INTERROGATORY NO. 1</u>:

        See General Objections, including, without limitation, General Objection No. 7.

<u>REQUEST FOR ADMISSION NO. 2</u>:

        Each document is an accurate reproduction of the original document that is
maintained in your files.

<u>INTERROGATORY NO. 2(a)</u>

        For each document that you did not admit in Request for Admission No. 2, set
forth the document production number and state:

        (1)    if the original document is maintained in defendant's files, all ways in
which the document is not an accurate reproduction of the original document that is maintained
in defendant's files;

        (2)    if the original document is maintained in defendant's files, please state
where such files are located and identify the person(s) having custody of the files;

        (3)    if the original document is maintained in defendant's files and it bears any
handwriting, please identify the person(s) whose handwriting appears on the document.

<u>INTERROGATORY NO. 2(b)</u>:

        For each document that you admit is an accurate reproduction of the original
document that is maintained in defendant's files:

        (1)    if the original document is maintained in defendant's files, please state
where such files are located and identify the person(s) having custody of the files;

        (2)    if the original document is maintained in defendant's files and it bears any
handwriting, please identify the person(s) whose handwriting appears on the document.

## RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 2 AND INTERROGATORIES NO. 2(a) AND 2(b):

See General Objections, including, without limitation, General Objection No. 7.

## REQUEST FOR ADMISSION NO. 3:

The document accurately identifies an account or accounts of a customer or

customers of defendant.

## INTERROGATORY NO. 3(a):

For each document that you did not admit in Request for Admission No. 3, set

forth the document production number and state the facts which evidence that the document does

not accurately identify an account or accounts of a customer or customers of defendant.

## INTERROGATORY NO. 3(b):

For each document that you have admitted the document accurately identifies an

account or accounts of a customer or customers state the name of the customer(s) and location of

each such account and whether each such account remains in existence currently, and if not;

when the account ceased to exist.

## RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 3 AND INTERROGATORIES NO. 3(a) AND 3(b):

See General Objections, including, without limitation, General Objection No. 7.

## REQUEST FOR ADMISSION NO. 4:

The document accurately sets forth the details of a transaction processed by

defendant.

## INTERROGATORY NO. 4(a):

For each document that you did not admit in Request for Admission No. 4, set

forth the document production number and state the facts which evidence that the document does

not accurately set forth the details of a transaction processed by defendant.

6

<u>INTERROGATORY NO. 4(b):</u>

For each document that you have admitted the document accurately sets forth the details of a transaction processed by the defendant identify the name, title and office location of each employee with knowledge of this transaction.

<u>INTERROGATORY NO. 4(c):</u>

For each document that you have admitted the document accurately sets forth the details of a transaction processed by defendant, state whether the transaction was identified and/or reported as a suspicious transactions [sic] by defendant's Money Laundering Reporting Officer or any other employee of defendant as part of defendant's AML or terror financing compliance efforts and identify the name, title and office location of each employee with knowledge of this fact.

<u>RESPONSE AND OBJECTION TO REQUEST FOR ADMISSION NO. 4 AND
INTERROGATORIES NO. 4(a), 4(b), AND 4(c):</u>

See General Objections, including, without limitation, General Objections Nos. 7 and 8.

Date:   August 14, 2006

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
     Lawrence B. Friedman (LF-9978)
     A Member of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

7

Exhibit D



**The Royal Bank of Scotland Group**

Your ref:

Our ref:    LIT/ Weiss/ JAS

Date:    3 July 2006

Group Litigation

1 Princes Street
London
EC2R 8PB

Mr J Qundil
Interpal
PO Box No 3333
London
NW6 1RW

**Strictly Private and Confidential**

Dear Sirs

**Tzvi Weiss, et al. -v- National Westminster Bank Plc**

In relation to the above matter and your telephone discussion with my colleague Tom Lynch last week
(28 June 2006), I write in connection with records held by National Westminster Bank Plc ("the Bank"
or "NatWest") regarding the affairs of Interpal (previously the Islamic Relief and Development Fund).
As you know, NatWest is defending a lawsuit pending in New York in which the plaintiffs allege that
NatWest aided and abetted violations of the Anti-Terrorism Act by providing banking services to
Interpal.

Under U.S. litigation procedure, subject to certain limitations, the parties in a lawsuit are entitled to
request and obtain the production of documents and information that relate to the claims and allegations
at issue. On June 30, the Bank was served with Plaintiffs' First Request for the Production of
Documents ("First Request"), which among other things calls for the production of "all account records
maintained by, or in the custody and control of Defendant that concern INTERPAL, including account
opening records, bank statements, wire transactions, deposit slips and all correspondence between
Defendant and INTERPAL." (The relevant sections of the First Request are attached). Given that the
plaintiffs' claims focus on transactions allegedly engaged in by Interpal, it is not surprising that they
would seek to obtain this kind of information in the lawsuit.

Accordingly, I hereby request your written consent for the Bank to disclose documents held in its
possession, custody and/or control pertaining to your relationship with the Bank, as identified in the First
Request, from date of opening to October 2005, which is when the proceedings were commenced. Such
disclosure would be pursuant to the conduct of the Bank's defence in the above-mentioned legal
proceedings. Further, such disclosure would be made subject to (a) a confidentiality order in the lawsuit,
which would provide for the confidential treatment of Interpal records, and (b) objections on grounds
such as burden, scope and relevance.

The Royal Bank of Scotland Group plc
Registered in Scotland No 45551
Registered Office: 36 St Andrew Square, Edinburgh EH2 2YB

Agency agreements exist between members of The Royal Bank of Scotland Group

I should be grateful if you could reply to this letter as a matter of urgency and in any event no later than close of business on Friday, 14 July 2006. If you agree to the disclosure, please indicate your consent by signing in the space provided below, this should be signed in accordance with the Mandate the Bank currently has in place. If you are not prepared to consent, I would ask that you set out your reasons in writing, since this matter could be the subject of court scrutiny in New York and/or England.

Yours faithfully

Jackie Sheftali
Solicitor

Signed for and on behalf of Interpal

_____

Name of signatory (Block Capitals)

_____

The Royal Bank of Scotland Group plc
Registered in Scotland No 45551
Registered Office: 36 St Andrew Square, Edinburgh EH2 2YB

Agency agreements exist between members of The Royal Bank of Scotland Group

Exhibit E


The Royal Bank of Scotland Group

Your ref:

Our ref:     LIT/ Weiss/ JAS

Date:        3 July 2006

Mr Ibrahim Hewitt
Interpal
PO Box No 3333
London
NW6 1RW

**Group Litigation**

1 Princes Street
London
EC2R 8PB

**Strictly Private and Confidential**

Dear Mr. Hewitt:

**Tzvi Weiss, et al.  –v– National Westminster Bank Plc**

I write in response to your letter dated July 19, 2006.  Please be advised that National Westminster Bank Plc is not in a position to pay for Interpal to seek legal advice regarding the Bank's request for consent to disclose documents.  We are happy, however, to make NatWest's U.S. counsel available to speak to your lawyer, if you think that would be helpful.

In the meantime, we renew the request for consent contained in our letter dated July 3, 2006.

Yours sincerely

Jackie Sheftali
Solicitor

Exhibit F

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS

LONDON · MOSCOW · FRANKFURT · COLOGNE

ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial (212) 225-2840
E-Mail: lfriedman@cgsh.com

September 14, 2006

<u>BY FACSIMILE</u>

Mr. Cameron Doley
Carter-Ruck & Partners
76 Shoe Lane
London, EC4A 3JB
England

Re:  <u>Weiss v. National Westminster Bank plc.</u>

Dear Mr. Doley:

This firm is counsel to National Westminster Bank plc ("NatWest") in the above-referenced lawsuit. I am writing to you in your capacity as counsel to Interpal in connection with NatWest's request of Interpal, in the bank's letter dated July 3, 2006 (a copy of which is attached), that Interpal provide its written consent for NatWest to disclose documents pertaining to Interpal's customer relationship with NatWest, pursuant to the conduct of NatWest's defense in this lawsuit. NatWest renewed this request in a letter sent to Interpal on July 27, 2006 (a copy of which is also attached). On behalf of NatWest, I write to reiterate the bank's desire for a prompt response to its request.

The Court presiding over this lawsuit conducted a discovery conference on September 11, 2006, during which I described to the Court the status of NatWest's request of Interpal. The Court instructed that NatWest convey the following to Interpal, an instruction the bank is fulfilling by means of this letter to you.

First, the Court expressed the wish that Interpal respond promptly to NatWest's pending request, and noted that, if Interpal does not respond promptly, the Court will consider issuing an order directing Interpal to explain to the Court why the Court should not require Interpal to respond to NatWest's request promptly.

Mr. Cameron Doley, p. 2

Second, the Court asked that, if Interpal will not respond to NatWest's request immediately, then Interpal should provide NatWest with the date by which Interpal will respond to NatWest's request.

Finally, please note that NatWest may provide a copy of this letter to counsel for plaintiffs.

Kindly inform me if you have any questions concerning this subject. I must provide the Court with a further status report no later than on September 20, and therefore I would be grateful if you would respond to this letter before that date.

Very truly yours,

Lawrence B. Friedman

Attachments



**The Royal Bank of Scotland Group**

Your ref:

**Group Litigation**

Our ref:     LIT/ Weiss/ JAS

1 Princes Street
London
EC2R 8PB

Date:     3 July 2006

Mr J Qundil
Interpal
PO Box No 3333
London
NW6 1RW

**Strictly Private and Confidential**

Dear Sirs

**Tzvi Weiss, et al. -v- National Westminster Bank Plc**

In relation to the above matter and your telephone discussion with my colleague Tom Lynch last week
(28 June 2006), I write in connection with records held by National Westminster Bank Plc ("the Bank"
or "NatWest") regarding the affairs of Interpal (previously the Islamic Relief and Development Fund).
As you know, NatWest is defending a lawsuit pending in New York in which the plaintiffs allege that
NatWest aided and abetted violations of the Anti-Terrorism Act by providing banking services to
Interpal.

Under U.S. litigation procedure, subject to certain limitations, the parties in a lawsuit are entitled to
request and obtain the production of documents and information that relate to the claims and allegations
at issue. On June 30, the Bank was served with Plaintiffs' First Request for the Production of
Documents ("First Request"), which among other things calls for the production of "all account records
maintained by, or in the custody and control of Defendant that concern INTERPAL, including account
opening records, bank statements, wire transactions, deposit slips and all correspondence between
Defendant and INTERPAL." (The relevant sections of the First Request are attached). Given that the
plaintiffs' claims focus on transactions allegedly engaged in by Interpal, it is not surprising that they
would seek to obtain this kind of information in the lawsuit.

Accordingly, I hereby request your written consent for the Bank to disclose documents held in its
possession, custody and/or control pertaining to your relationship with the Bank, as identified in the First
Request, from date of opening to October 2005, which is when the proceedings were commenced. Such
disclosure would be pursuant to the conduct of the Bank's defence in the above-mentioned legal
proceedings. Further, such disclosure would be made subject to (a) a confidentiality order in the lawsuit,
which would provide for the confidential treatment of Interpal records, and (b) objections on grounds
such as burden, scope and relevance.

The Royal Bank of Scotland Group plc
Registered in Scotland No 45551
Registered Office: 36 St Andrew Square, Edinburgh EH2 2YB

Agency agreements exist between members of The Royal Bank of Scotland Group

I should be grateful if you could reply to this letter as a matter of urgency and in any event no later than close of business on Friday, 14 July 2006. If you agree to the disclosure, please indicate your consent by signing in the space provided below, this should be signed in accordance with the Mandate the Bank currently has in place. If you are not prepared to consent, I would ask that you set out your reasons in writing, since this matter could be the subject of court scrutiny in New York and/or England.

Yours faithfully

Jackie Sheftali
Solicitor


Signed for and on behalf of Interpal


_____


Name of signatory (Block Capitals)


_____

The Royal Bank of Scotland Group plc
Registered in Scotland No 45551
Registered Office: 36 St Andrew Square, Edinburgh EH2 2YB

Agency agreements exist between members of The Royal Bank of Scotland Group



**XX RBS**
The Royal Bank of Scotland Group

Your ref:

**Group Litigation**

Our ref:     LIT/ Weiss/ JAS

1 Princes Street
London
EC2R 8PB

Date:     3 July 2006

Mr Ibrahim Hewitt
Interpal
PO Box No 3333
London
NW6 1RW


**Strictly Private and Confidential**


Dear Mr. Hewitt:

**Tzvi Weiss, et al. -v- National Westminster Bank Plc**

I write in response to your letter dated July 19, 2006.  Please be advised that National Westminster Bank Plc is not in a position to pay for Interpal to seek legal advice regarding the Bank's request for consent to disclose documents.  We are happy, however, to make NatWest's U.S. counsel available to speak to your lawyer, if you think that would be helpful.

In the meantime, we renew the request for consent contained in our letter dated July 3, 2006.

Yours sincerely

Jackie Sheftali
Solicitor

Exhibit G

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: (212) 225-2840
E-Mail: lfriedman@cgsh.com

September 22, 2006

BY FACSIMILE

Mr. Cameron Doley
Carter-Ruck & Partners
76 Shoe Lane
London, EC4A 3JB
England

Re:   Weiss v. National Westminster Bank plc.

Dear Mr. Doley:

As I noted would be required in my September 14 letter to you, on September 20 I provided to the Court a report concerning the status of the request by National Westminster Bank plc ("NatWest") to Interpal that Interpal provide its written consent for NatWest to disclose documents pertaining to Interpal's customer relationship with NatWest, and thereby comply with plaintiffs' pending discovery requests. I informed the Court that neither NatWest nor I had received any response to NatWest's prior letters or to my September 14 letter. In response to my report, the Court has issued an order requiring NatWest to submit a new status report by October 2, 2006.

On behalf of NatWest, I again reiterate the bank's desire for a prompt response to its prior requests. Because I must provide the Court with a further status report no later than October 2, I would be grateful if you would respond to this letter before that date.

Very truly yours,

Lawrence B. Friedman

Exhibit H

Direct Email :  Cameron.Doley@carter-ruck.com
Direct Fax :    020 7353 5553

Our Ref :       CD/ED/9041.11

Date :          26 September 2006



**Carter-Ruck**

**By Fax: 001 212 225-3999**

Solicitors

International Press Centre
76 Shoe Lane
London EC4A 3JB

Lawrence B. Friedman Esq
Cleary Gottlieb Steen & Hamilton LLP

Tel 020 7353 5005
Fax 020 7353 5553

DX 333 Chancery Lane

Dear Mr Friedman

Email lawyers@carter-ruck.com
Web site www.carter-ruck.com

**NatWest - Interpal**

Thank you for your facsimile letter dated 22 September 2006.

Andrew Stephenson
Alasdair Pepper
Guy Martin

I have reported the contents of your letter of 14 September 2006 to my clients.
As yet, however, I have not received their instructions further to the same.

Nigel Tait
Mark Thomson
Ruth Collard

Yours sincerely

Cameron Doley
Claire Gill
Adam Tudor
Hanna Basha

**Cameron Doley**

Partnership Secretary
Michael Croxford

Associate Firm
Bannatyne Kirkwood France & Co
Exchange House
16 Royal Exchange Square
Glasgow G1 3AG

Tel 0141 221 6020
Fax 0141 221 5120

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TZVI WEISS, et al.,

                          Plaintiff,

                -against-

National Westminster Bank PLC,

                        Defendant.

          CV-05-4622 (CPS) (KAM)

## DECLARATION OF JONATHAN I. BLACKMAN

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ATTORNEYS FOR DEFENDANT NATIONAL WESTMINSTER BANK PLC

ONE LIBERTY PLAZA
BOROUGH OF MANHATTAN
NEW YORK, N Y 10006
(212) 225-2000

COPY RECEIVED

THIS _____ DAY OF _____ 20_____

_____

_____

_____