UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

TZVI WEISS, *et al.*,

                     Plaintiffs,

            - against -

NATIONAL WESTMINSTER BANK PLC,

                 Defendant.

--------------------------------------------------------- X

CV 05-4622 (CPS) (KAM)

## MEMORANDUM OF LAW IN SUPPORT OF
## NATIONAL WESTMINSTER BANK PLC'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

Of Counsel:

    Jonathan I. Blackman
    Lawrence B. Friedman
    Sanjay S. Mody

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 7

POINT I

THE ATTORNEY WORK PRODUCT DOCTRINE
DOES NOT SUPPORT PLAINTIFFS' OBJECTION ....................................................... 7

A.       Plaintiffs Cannot Rely On The Work Product
         Doctrine To Avoid Disclosure Of The Facts
         Requested In NatWest's Interrogatories .................................................................. 7

B.       Plaintiffs Cannot Rely On The Work Product
         Doctrine To Withhold Production Of The
         Documents Requested By NatWest .......................................................................... 8

         1.       Plaintiffs Have Failed To Satisfy Their Burden
                  To Show That The Requested Documents
                  Qualify As Work Product ............................................................................. 8

         2.       Even If The Requested Documents Qualify As
                  Work Product, NatWest Has A "Substantial Need"
                  For Them, And It Cannot Obtain Them By Any
                  Other Means................................................................................................... 11

         3.       Plaintiffs Have Waived Any Work Product Protection
                  By Placing The Information Contained In The Requested
                  Documents "At Issue" In This Case ............................................................. 13

POINT II

NATWEST'S INTERROGATORY NO. 4
IS NOT OBJECTIONABLE AS "PREMATURE".............................................................. 15

CONCLUSION................................................................................................................... 19

Page(s)

In re Steinhardt Partners, L.P.,
9 F.3d 230 (2d Cir. 1993).................................................................................................... 9, 14

John Doe Co. v. United States,
350 F.3d 299 (2d Cir. 2003)................................................................................................ 13

King v. E.F. Hutton & Co.,
117 F.R.D. 2 (D.D.C. 1987)................................................................................................ 7-8, 17

McCarthy v. Paine Webber Group, Inc.,
168 F.R.D. 448 (D. Conn. 1996)......................................................................................... 15

Nat'l Congress for Puerto Rican Rights v. City of New York,
194 F.R.D. 105 (S.D.N.Y. 2000) ........................................................................................ 11, 12

Omega Eng'g, Inc. v. Omega, S.A.,
98 Civ. 2464 (AVC), 2001 U.S. Dist. LEXIS 2016 (D. Conn. Feb. 6, 2001) .................... 9

Redvanly v. Nynex Corp.,
152 F.R.D. 460 (S.D.N.Y. 1993) ........................................................................................ 12

Sicurelli v. Jeneric/Pentron, Inc.,
03-CV-4934 (SLT) (KAM), 2006 U.S. Dist. LEXIS 29813
(E.D.N.Y. May 16, 2006) .................................................................................................... 7, 13

Status Time Corp. v. Sharp Elecs. Corp.,
95 F.R.D. 27 (S.D.N.Y. 1982) ............................................................................................ 10

Trudeau v. Alliance Publ'g Group, Inc.,
05 Civ. 1019 (GLS) (RFT), 2006 U.S. Dist. LEXIS 61901 (N.D.N.Y. July 21, 2006) ..... 14

United States v. Adlman,
134 F.3d 1194 (2d Cir. 1998).............................................................................................. 9, 10

Weber v. Paduano,
02 Civ. 3392 (GEL), 2003 U.S. Dist. LEXIS 858 (S.D.N.Y. Jan. 14, 2003) .................... 9

Zucker v. Sable,
72 F.R.D. 1 (S.D.N.Y. 1975) .............................................................................................. 10

**Other Authorities**

6 James Wm. Moore, Moore's Federal Practice § 26.70(5)(c) (3d ed. 2006) .................... 11-12

## PRELIMINARY STATEMENT

Defendant National Westminster Bank Plc ("NatWest") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, for an order compelling plaintiffs to produce documents in response to NatWest's requests, and to provide answers to NatWest's interrogatories, overruling plaintiffs' meritless objections to NatWest's proper discovery inquiries.

As described below, plaintiffs are attempting to treat discovery in this lawsuit as if it were a one-way street, making extremely broad and burdensome discovery requests of NatWest, but then attempting to stonewall NatWest's efforts to obtain meaningful discovery of plaintiffs' liability allegations. Plaintiffs are attempting to stonewall first behind a meritless assertion of work product privilege to shield documents and other information upon which plaintiffs purport to base their liability claims, and second behind the baseless argument that NatWest's carefully tailored Interrogatory No. 4 is a "contention" interrogatory that is somehow "premature." Sustaining plaintiffs' objections would deprive NatWest of a meaningful opportunity to learn the purported facts upon which plaintiffs rely in support of their claims, especially because plaintiffs themselves have no first-hand knowledge of these purported facts, and therefore deposing them on their liability allegations will be fruitless. Instead, that knowledge exists, if at all, solely with plaintiffs' lawyers, who are accusing NatWest of supporting and financing HAMAS terrorism purportedly based upon information received from sources in Israel and elsewhere.

Even worse, in objecting to NatWest's Interrogatory No. 4, plaintiffs have refused even to identify the factual bases for their allegations against NatWest on the fanciful ground that they purportedly require discovery from NatWest before they can do so. The Court cannot

condone this attempted abdication of plaintiffs' Rule 11 duty to have made only well-founded

factual allegations against NatWest, for which they have a good faith basis in fact and law. If it

were true, as plaintiffs now contend, that they cannot explain the factual bases for their

accusations without first receiving discovery from NatWest, then they cannot have satisfied their

Rule 11 obligations at all.

Accordingly, the Court should require plaintiffs to produce the documents

NatWest seeks and to answer NatWest's interrogatories in full.

## BACKGROUND

Plaintiffs seek damages from NatWest for injuries they or their relatives suffered

in terrorist attacks allegedly committed in Israel by HAMAS. They allege that NatWest, an

English bank, by maintaining in England bank accounts for the English charity Interpal, and by

transferring funds from those accounts pursuant to Interpal's instructions to alleged agents of

HAMAS, provided material support to a foreign terrorist organization and provided funds with

the knowledge that they would be used for terrorist activities.[1]  Most of plaintiffs' First Amended

Complaint (the "complaint") is devoted to describing the terrorist attacks in which they or their

relatives were injured, detailing the type of injuries they suffered, and explaining the

organizational structure of HAMAS. By contrast, the complaint offers little to no factual support

for plaintiffs' accusations that NatWest furthered these attacks. Apart from wholly conclusory

allegations, the complaint offers no detail concerning NatWest's alleged role in the terrorist

attacks at issue, or NatWest's alleged knowledge of the terrorist identities of the groups it

allegedly supported and the relationships among the alleged terrorist groups.

---

[1]  In its September 27, 2006 ruling on NatWest's dismissal motion, the Court dismissed plaintiffs' claim that NatWest also thereby aided and abetted HAMAS terrorism. Plaintiffs' counsel has indicated that plaintiffs intend to file an amended complaint pleading additional facts in an attempt to resurrect this claim.

2

In an effort to learn the factual bases for plaintiffs' allegations against it, and to prepare its defense against those allegations -- the hallmark objectives of pre-trial discovery -- NatWest propounded an initial set of document requests and limited interrogatories to plaintiffs. Plaintiffs refused to produce most of what NatWest requested, purporting to invoke the attorney work product doctrine to justify their refusal. Separately, plaintiffs refused to answer NatWest's Interrogatory No. 4, which simply asks plaintiffs to specify the purported facts underlying their accusations against NatWest, on the ground that it supposedly constitutes a "premature contention interrogatory" and that plaintiffs purportedly cannot answer this interrogatory without first receiving discovery from NatWest.

The net effect of these two objections is a classic stonewall that is calculated to deprive NatWest of the ability to defend itself in this lawsuit. Obviously, without the documents that animate plaintiffs' allegations, and a detailed description of the facts underlying those allegations, NatWest has nowhere else to turn to obtain meaningful discovery, because plaintiffs themselves have no information to provide on these subjects.

Plaintiffs' Baseless Work Product Objections

Plaintiffs have refused to disclose information NatWest requested in its Interrogatories Nos. 1 and 3-5 on the ground that each "seeks investigatory materials protected by the attorney work product doctrine." Friedman Decl. Ex. A, Plaintiffs' (amended) Objections and Responses to NatWest's First Set of Interrogatories ("Plaintiffs' Interrogatory Responses") Nos. 1, 3-5.[2] The most important of these interrogatories is the fourth one, which requests as follows:

---

[2]    Plaintiffs amended their responses and objections to NatWest's interrogatories but nowhere identified the "amended" version as such. The document attached as Exhibit A to the Declaration of Lawrence B. Friedman is plaintiffs' amended responses and objections to NatWest's interrogatories.

3

Interrogatory No. 4: Explain in detail the factual bases for Plaintiffs' allegations concerning (i) the identity of the persons and/or entities that perpetrated the attacks that caused Plaintiffs' injuries, (ii) how and in what forms and by what means such persons and/or entities received material support and/or resources from NatWest; and (iii) how and by what means such material support and/or resources proximately caused Plaintiffs' injuries.

The balance of these interrogatories request as follows:

Interrogatory No. 1: Identify the persons and entities that supplied, directly or indirectly, or otherwise participated, directly or indirectly, in obtaining on behalf of Plaintiffs the documents called for by Request Numbers 1, 4 and 7-18 in NatWest's Initial Request for the Production of Documents, dated July 5, 2006.

Interrogatory No. 3: Identify all expert witnesses on whom Plaintiffs intend to rely at trial.

Interrogatory No. 5: Identify all persons who assisted in preparing responses to these Interrogatories and all documents considered, read, referred to, discussed or reviewed in preparing responses to these Interrogatories.

Friedman Decl. Ex. B, NatWest's First Set of Interrogatories, Nos. 1, 3-5.

Plaintiffs have also invoked the work product doctrine to refuse to produce what

NatWest seeks in its Document Request Nos. 1, 4 and 7-19. See Friedman Decl. Ex. C,

Plaintiffs' Objections and Responses to NatWest's Initial Request for the Production of

Documents ("Plaintiffs' Document Request Responses") Nos. 1, 4, 7-19. These requests seek

documents concerning matters that could not be more material to plaintiffs' allegations and vital

to NatWest's defense, including:

- "documents upon which Plaintiffs rely in support of their allegations" (Request No. 1);

- "documents concerning the acts that caused Plaintiffs' injuries" (Request No. 4);

- documents concerning NatWest, Interpal, and the relationship between them (Request Nos. 7-9);

- documents concerning the Union of Good and its relationship with NatWest, Interpal, and HAMAS (Request Nos. 10, 11, 15, 17);

4

- "documents concerning NatWest's alleged relationship to the acts that caused Plaintiffs' injuries" (Request No. 12);

- documents concerning NatWest's alleged knowledge of Interpal's and the Union of Good's alleged roles in the acts that caused plaintiffs' injuries (Request Nos. 13 and 14);

- "documents concerning the alleged relationship between Interpal and HAMAS" (Request No. 16);

- "documents obtained by . . . the Plaintiffs concerning the allegations in the Complaint from any governmental authority" (Request No. 18); and

- "documents referred to . . . in Plaintiffs' Initial Disclosures" (Request No. 19).

In essence, these requests seek the documents in plaintiffs' possession that relate

directly to their allegations that NatWest bears responsibility for the HAMAS attacks in which

plaintiffs or their relatives were injured.

Plaintiffs' Baseless Objection To Interrogatory
No. 4 As A "Premature" Contention Interrogatory

Plaintiffs also refused to answer NatWest's Interrogatory No. 4, which, as

described above, could not be more targeted to learning the bases for plaintiffs' allegations and

the evidence upon which they rely. It seeks the factual bases for (i) the identity of the persons

and/or entities that perpetrated the attacks that caused Plaintiffs' injuries, (ii) a statement as to

how and in what forms and by what means such persons and/or entities received material support

and/or resources from NatWest; and (iii) a statement as to how and by what means such material

support and/or resources proximately caused plaintiffs' injuries.

Plaintiffs have refused to answer this heartland interrogatory based upon their

conclusory assertion that it constitutes a "premature" contention interrogatory, and that their

"obligation to respond to the interrogatory should be postponed until the end of the discovery

period." Plaintiffs' Interrogatory Responses No. 4 and General Objection A. Remarkably,

5

plaintiffs also assert that they "will not be [in] a position to offer full and useful answers to contention interrogatories until Defendant produces responsive documents to [p]laintiffs' requests" and that NatWest will not be prejudiced by their delay in responding "because it has full access to information about its own behavior." Id. General Objection A.

Thus, with this objection, plaintiffs seek to turn precisely on its head Rule 11's requirement that plaintiffs had a good faith basis for their allegations against NatWest when they filed their complaint. In purpose and effect, plaintiffs seek to reverse the proper sequence of first making well-founded allegations against a defendant, and then second pursuing discovery in support of those allegations, by refusing to offer any evidence supporting their allegations until after they obtain evidence from NatWest. The fact that the Court has found that these allegations are sufficient to withstand, in part, NatWest's motion to dismiss, obviously does not absolve plaintiffs of the obligation of now providing discovery of the evidence that supports their allegations. Plaintiffs quite literally purport to turn the federal framework for pleading and discovery upside down.

Plaintiffs' refusal to comply with NatWest's requests on the two grounds described above is entirely without merit. The Court should reject plaintiffs' attempt to evade their discovery obligations and to thwart NatWest's entitlement to know the bases for plaintiffs' allegations, and order plaintiffs to produce the requested information and documents without further delay.

6

## ARGUMENT

### POINT I

### THE ATTORNEY WORK PRODUCT DOCTRINE DOES NOT SUPPORT PLAINTIFFS' OBJECTION

The attorney work product doctrine provides a qualified privilege from discovery of "documents and tangible things . . . prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). In order to support a claim of privilege under the doctrine, "'[t]he material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" Sicurelli v. Jeneric/Pentron, Inc., 03-CV-4934 (SLT) (KAM), 2006 U.S. Dist. LEXIS 29813, at *5 (E.D.N.Y. May 16, 2006) (citation omitted). The burden of establishing all three elements of the doctrine rests with plaintiffs, as the party invoking the privilege. Id.

### A. Plaintiffs Cannot Rely On The Work Product Doctrine To Avoid Disclosure Of The Facts Requested In NatWest's Interrogatories

Under these well-settled principles, plaintiffs' assertion of the work product doctrine in their responses to NatWest's Interrogatories Nos. 1 and 3-5 is patently improper, because that assertion cannot satisfy the first element set forth above -- that the requested discovery "be a document or tangible thing." Each of NatWest's interrogatories, by their very terms, "seek[s] facts, not documents or tangible objects, and the proper form of response is a narrative answer, not a reference to documents or objects where the answers might be found." In re Savitt/Adler Litig., 176 F.R.D. 44, 48 (N.D.N.Y. 1997) (rejecting application of work product doctrine to interrogatory response); cf. King v. E.F. Hutton & Co., 117 F.R.D. 2, 5 n.3 (D.D.C. 1987) (endorsing magistrate's ruling that answers to interrogatories cannot be withheld based on work product doctrine because in answering "the party is only giving the factual specifics which

7

the party contends supports a claim"); ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co., 96

Civ. 6033 (BSJ) (HBP), 1998 U.S. Dist. LEXIS 8808, at *44 (S.D.N.Y June 4, 1998) (work

product doctrine "protects documents, not facts").  On this ground alone, the Court should reject

plaintiffs' reliance on the work product doctrine as to Interrogatories Nos. 1 and 3-5, and order

plaintiffs to provide the information NatWest properly seeks.[3]

**B.    Plaintiffs Cannot Rely On The Work
       Product Doctrine To Withhold Production
       Of The Documents Requested By NatWest**

Plaintiffs' assertion of the work product doctrine in their responses to NatWest's

Document Requests Nos. 1, 4 and 7-19 is improper for at least three reasons.  First, plaintiffs

have not offered any facts to satisfy their burden to show that the requested documents qualify as

work product.  Second, even assuming the requested documents qualify as work product,

NatWest has a "substantial need" for these documents and cannot obtain the equivalent through

other discovery methods.  Third, plaintiffs have waived any work product protection as to the

requested materials by placing at issue in this case the information contained in those materials.

    1.    Plaintiffs Have Failed To Satisfy Their Burden To Show
       That The Requested Documents Qualify As Work Product

Plaintiffs fail to offer any argument that the documents they purport to withhold

based on the work product privilege were (i) prepared in anticipation of litigation and (ii)

prepared by or for them.  Thus, they cannot avail themselves of the privilege for those

documents.  As noted above, as the party resisting discovery, plaintiffs carry the burden of

establishing these elements.

---

[3]    NatWest addresses in Point II below plaintiffs' objection that Interrogatory No. 4 constitutes a
       "premature" contention interrogatory.

Documents prepared in anticipation of litigation are those that, "'in light of the nature of the document and the factual situation in the particular case . . . can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original) (citation omitted). This rule is consistent with the underlying purpose of the work product doctrine to "'shelter[ ] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" In re Steinhardt Partners, L.P., 9 F.3d 230, 234 (2d Cir. 1993) (citation omitted). If a document was not prepared "because of" the prospect of litigation, then it cannot fairly be said to "shelter" an attorney's mental processes, and thus should not be entitled to the privilege.

In their responses to NatWest's Document Requests Nos. 1, 4 and 7-19, plaintiffs ritualistically assert their refusal to produce the requested documents "to the extent [the requests] seek[] documents protected by the attorney work product doctrine." Plaintiffs' Document Request Responses Nos. 1, 4 and 7-19. Of course, the "mere incantation" of the privilege alone is insufficient to carry plaintiffs' burden. Omega Eng'g, Inc. v. Omega, S.A., 98 Civ. 2464 (AVC), 2001 U.S. Dist. LEXIS 2016, at *11-12 (D. Conn. Feb. 6, 2001); see Weber v. Paduano, 02 Civ. 3392 (GEL), 2003 U.S. Dist. LEXIS 858, at *36 (S.D.N.Y. Jan. 14, 2003) (rejecting assertion of privilege where parties resisting disclosure "have not proffered any evidence to support their contention that [the withheld documents] were prepared in anticipation of litigation"). Absent further support for plaintiffs' assertion of the privilege, the Court should reject their effort to rely upon it to frustrate NatWest's right to meaningful discovery.

Not only do plaintiffs fail to provide any support for their assertion of the work product privilege, but it is evident from their counsel's prior statements that they are withholding

9

at least some documents that cannot have been prepared in anticipation of litigation, or prepared by or for plaintiffs at all, and thus that simply cannot qualify for the privilege. For example, plaintiffs' counsel has referred to certain "investigative reports" prepared by the Israeli government and its agencies, and subsequently obtained by plaintiffs, as a source for certain of their allegations against NatWest. Plaintiffs have not produced any of these materials to date in this litigation. Yet it is well-settled that such third party materials are not shielded by the work product privilege. See Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 41 (S.D.N.Y. 1984) ("Documents prepared by third parties contemporaneous with the events to which the documents relate cannot fairly be deemed to have been prepared in anticipation of litigation."); In re Grand Jury Subpoenas, No. M. 11-139, 2002 U.S. Dist. LEXIS 17079, at *12 (S.D.N.Y. Sept. 11, 2002) (rejecting application of privilege to "the pre-existing records of third parties, created and maintained in the ordinary course of business by those third parties without any reference to litigation"). Nor does the fact that plaintiffs' counsel may have obtained such records from the Israeli government or others in preparation for this lawsuit somehow bring them within the scope of the privilege. See Adlman,134 F.3d at 1202 ("Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation"); Status Time Corp. v. Sharp Elecs. Corp., 95 F.R.D. 27, 29 (S.D.N.Y. 1982) (rejecting application of privilege to patent applications generated before lawsuit arose and subsequently assembled by plaintiffs' counsel); Zucker v. Sable, 72 F.R.D. 1, 3 (S.D.N.Y. 1975) (rejecting application of privilege to pre-existing materials prepared for non-litigation purposes); In re Grand Jury, 2002 U.S. Dist. LEXIS 17079, at *14 (rejecting argument

10

that "merely by gathering pre-existing materials, . . . an attorney transforms them into work product").

Accordingly, at a minimum, the work product privilege cannot apply to the entire universe of the documents plaintiffs are withholding, and the Court should order plaintiffs to produce these documents.

2.    Even If The Requested Documents Qualify As Work Product, NatWest Has A "Substantial Need" For Them, And It Cannot Obtain Them By Any Other Means

A determination that a document constitutes work product does not, in and of itself, preclude discovery of that document. To the contrary, "the work product doctrine is not absolute." In re Echostar Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006). A party may discover "factual" or "non-opinion" work product if it has "substantial need of the materials in the preparation of the party's case and [shows] that the party is unable without undue hardship to obtain the substantial equivalent . . . by other means." Fed. R. Civ. P. 26(b)(3); see Garnier v. Ill. Tool Works, Inc., 04-CV-1825 (NGG) (KAM), 2006 U.S. Dist. LEXIS 28370, at *4 (E.D.N.Y. May 4, 2006) ("'Even where the applicability of the work product doctrine has been established, factual material may be ordered produced upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'") (citations omitted).

NatWest has a "substantial need" for these work product materials because "the information [they contain] is 'essential' to [its] defense, is 'crucial' to the determination of whether [it] could be held liable for the acts alleged, or carries great probative weight on contested issues." Nat'l Congress for Puerto Rican Rights v. City of New York, 194 F.R.D. 105, 110 (S.D.N.Y. 2000). (citations omitted); see also 6 James Wm. Moore, Moore's Federal Practice § 26.70(5)(c) (3d ed. 2006) (substantial need is established by demonstrating "that the facts contained in the requested documents are essential elements of the requesting party's prima

11

facie case"). To establish "undue burden" in obtaining these documents by other means,

NatWest need not show "absolute impossibility, but rather that it is significantly more difficult,

time-consuming or expensive to obtain the information from another source." Garnier, 2006

U.S. Dist. LEXIS 28370, at *5 (citation omitted); see also Redvanly v. Nynex Corp., 152 F.R.D.

460, 469 (S.D.N.Y. 1993) (ordering disclosure of notes of plaintiffs' counsel, which "are the

only contemporaneous written account of what occurred on this material issue" and noting that

"many other cases exist compelling disclosure in work product situations"); Compagnie

Francaise, 105 F.R.D. at 43 (rejecting assertion that the information sought through

interrogatories is readily available from other sources and by turning it over, defendant would be

doing plaintiff's trial preparation, and denying work product protection for requested

information).

Here, NatWest clearly has a substantial need for the documents at issue. The

requested documents -- concerning NatWest's alleged role in connection with plaintiffs' injuries,

the alleged transactions between NatWest's customer Interpal and the alleged terrorist groups,

and the relationships among the alleged terrorist groups -- are indisputably "'essential' to

[NatWest's] defense" and "'crucial' to the determination of whether [NatWest] could be held

liable for the acts alleged." Nat'l Congress 194 F.R.D. at 110. Moreover, NatWest does not

have alternative means of discovery at its disposal to obtain the documents or the information

they contain. It cannot, for instance, obtain the information contained in the documents by

taking depositions of the individual plaintiffs, who have no direct knowledge of NatWest or any

of the alleged terrorist groups to which the bank allegedly provided support.[4] Indeed, plaintiffs

---

[4] For instance, in the only deposition to take place so far, plaintiff Steven Averbach testified that he has no knowledge of NatWest, "no" familiarity with Interpal, does not "know of any" relationship between NatWest and Interpal, and has no knowledge of whether NatWest played any role in the attack that caused his injuries. Friedman Decl. Ex. D, Averbach Tr. at 38-39.

12

have not identified any witnesses who could testify about the circumstances underlying the

terrorist attacks causing their injuries, nor have they identified any of the individuals or entities

involved in supplying or obtaining the requested documents. In sum, there are no comparable

means of discovery by which NatWest can obtain information relevant to plaintiffs' liability

allegations and essential to its defense. Accordingly, the Court should order production of the

requested documents.

3.    Plaintiffs Have Waived Any Work Product Protection By Placing The
      Information Contained In The Requested Documents "At Issue" In This Case

A party cannot rely upon work product as a "sword" to support its claims while at

the same time relying upon the work product doctrine to protect that work product from

discovery. Sustaining plaintiffs' objection would permit them to violate this rule.

In "certain circumstances a party's assertion of factual claims can, out of

consideration of fairness to the party's adversary, result in the involuntary forfeiture of privileges

for matters pertinent to the claims asserted." John Doe Co. v. United States, 350 F.3d 299, 302

(2d Cir. 2003). Thus, where a party contends facts "to an 'adjudicating authority,' then rel[ies]

on its privileges 'to deprive its adversary of access to [the] material that might disprove,

[impeach], [effectively contest] , [rebut] or undermine the party's contention[],'" this would be

unfair and the asserted privilege would be waived. Id. at 302. In view of this fairness principle,

a party may be found to have waived work product protection when:

> (1) assertion of the privilege was the result of some affirmative act, such as filing
> suit, by the asserting party; (2) through this affirmative act, the asserting party put
> the protected information at issue by making it relevant to the case; and (3)
> application of the privilege would have denied the opposing party access to
> information vital to [its] defense.

Sicurelli, 2006 U.S. Dist. LEXIS 29813, at *11 (citation omitted).

13

Plaintiffs here have waived any work product protection that otherwise might apply to the requested documents. First, plaintiffs' assertion of the work product doctrine is the result of plaintiffs' affirmative act of filing this lawsuit against NatWest. Second, as discussed above, plaintiffs have placed directly at issue in this litigation NatWest's alleged role in a chain of events resulting in their injuries, the alleged transactions between NatWest's customer and the alleged terrorist groups, and the relationships among the alleged terrorist groups. Indeed, those allegations form the core of plaintiffs' claims against NatWest. Permitting plaintiffs to assert the work product doctrine to deprive NatWest of materials relating to these allegations would deny NatWest information that is vital to its defense against these claims. It is difficult to conceive how NatWest can properly defend itself in this litigation if it is not provided with information as to the factual bases underlying plaintiffs' allegations against the bank.

In short, having placed the facts contained in the requested documents at issue, plaintiffs should not now be permitted to use the work product doctrine to hide those facts from discovery. See In re Steinhardt, 9 F.3d at 235 ("We agree that selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage."); Trudeau v. Alliance Publ'g Group, Inc., 05 Civ. 1019 (GLS) (RFT), 2006 U.S. Dist. LEXIS 61901, at *46 (N.D.N.Y. July 21, 2006) ("What the court is attempting to avoid is the wielding of the . . . work product doctrine as both a shield and a sword."). For this additional reason, the Court should reject plaintiffs' assertion of the work product doctrine and order production of the documents NatWest has requested.

14

## POINT II

### NATWEST'S INTERROGATORY NO. 4 IS
### NOT OBJECTIONABLE AS "PREMATURE"

Plaintiffs' assertion that Interrogatory No. 4 is a "premature" contention

interrogatory, and thus that they are entitled to withhold the facts this interrogatory asks

plaintiffs to disclose until after the close of discovery, is meritless.

As an initial matter, the first subpart of this interrogatory, calling for "the identity

of the persons and/or entities that perpetrated the attacks that caused Plaintiffs' injuries," is not a

contention interrogatory at all, but rather is a permissible fact interrogatory calculated to

discover information that is plainly discoverable even in the early stages of discovery:

> The term "contention interrogatories" refers to several types of questions. They
> may ask another party to indicate what it contends, to state all the facts on which
> it bases its contentions, to state all the evidence on which it bases its contentions,
> or to explain how the law applies to the facts. They are distinct from
> interrogatories that request identification of witnesses or documents that bear on
> the allegations.

McCarthy v. Paine Webber Group, Inc., 168 F.R.D. 448, 450 (D. Conn. 1996) (emphasis added);

see also Everett v. USAir Group, Inc., 165 F.R.D. 1, 3 (D.D.C. 1995) ("Insofar as Interrogatory

Nos. 7, 8, and 10 request the identification of documents or witnesses, they are not contention

interrogatories."). On this ground alone, the Court should direct plaintiffs to answer the first

subpart of Interrogatory No. 4. See In re Grand Casinos, Inc., 181 F.R.D. 615, 618 (D. Minn.

1998) (rejecting characterization of interrogatory seeking identification of witnesses as

"contention interrogatory" and directing plaintiffs to answer interrogatory).

More importantly, and especially given the nature of this case and the nature of

the sources upon which plaintiffs' allegations apparently are based, plaintiffs should be required

to respond to this interrogatory in full.

15

As set forth above, the complaint offers little if any detail to support plaintiffs' essential allegation that the persons or entities that perpetrated the attacks upon plaintiffs and their relatives received material support and/or resources from NatWest, or how or by what means this support and/or resources proximately caused plaintiffs' injuries. Indeed, and astonishingly, in their objection to Interrogatory No. 4, plaintiffs appear to concede that they cannot provide any such detail, arguing that they first require evidence from NatWest before they can answer this interrogatory!  As set forth above, if that objection is truthful, it suggests that plaintiffs lack good faith basis for their allegations. But for present purposes, it is sufficient to emphasize that plaintiffs must have some factual basis for their allegations, and they have no plausible excuse for refusing to describe that basis now.

This is particularly true because this interrogatory is one of only two available means by which NatWest can learn this information, in addition to the document requests that plaintiffs are also seeking to thwart. As noted above, plaintiffs themselves have no personal knowledge of the factual bases for their allegations that NatWest has knowingly supported or financed terrorism. Therefore, the traditional discovery means of deposing plaintiffs will do nothing to illuminate the grounds for their accusations or otherwise assist NatWest in pursuing its defense. As plaintiffs' counsel has conceded, plaintiffs' allegations are the product of counsel's investigations, which purportedly have been extensive in scope. Short of deposing counsel, NatWest therefore has no discovery tool upon which to rely to learn the bases for plaintiffs' accusations other than interrogatories, especially where plaintiffs also are refusing to produce documents concerning their accusations – including third party documents not created by counsel at all – based upon a meritless work product claim.

16

In short, deeming NatWest's Interrogatory No. 4 somehow "premature" and therefore improper will essentially frustrate NatWest's pursuit of its defense by depriving it of one of only two available avenues for discovery, the other of which -- document requests -- plaintiffs are seeking to block as well.

Finally, although courts may reserve contention interrogatories for use only at the close of discovery, there is no general rule that requires this Court to adopt that approach. Notably, the Eastern District of New York has declined to adopt a rule equivalent to the Southern District of New York's Local Civil Rule 33.3, which, absent court order, requires parties to defer the use of contention interrogatories until the conclusion of discovery. The decision of whether, and when, to permit contention interrogatories is entirely within the Court's discretion. "[T]he wisdom of utilization of such contention interrogatories, and when in the process they should be permitted, will be dependent upon the circumstances of each particular case, as well as the issues implicated." Cornell Research Found., Inc. v. Hewlett Packard Co., 223 F.R.D. 55, 67 (N.D.N.Y. 2003).

Thus, contention interrogatories are allowed in the preliminary stages of a lawsuit where, as here, doing so will have a salutary effect. See, e.g., id. at 67 (ordering defendant to "flesh out the contentions associated with [its] affirmative defense in sufficient detail to allow [the plaintiff] to conduct meaningful discovery concerning it"); King, 117 F.R.D. at 7 n.5 ("Obtaining answers to contention interrogatories early on during the pretrial stage can expose a substantial basis for a motion under Rule 11 or Rule 56, and thus lead to an expeditious and inexpensive determination of a lawsuit, or can lead to an early settlement of a case where the plaintiff discloses a strong basis in support of his claim.") (citation omitted); In re Convergent Techs. Sec. Litig., 108 F.R.D. 328, 338-39 (N.D. Cal. 1985) (early answers to contention

17

interrogatories are appropriate where interrogatories are limited and "there is good reason to believe that answers to [the] well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute . . . or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56"); see also In re One Bancorp Sec. Litig., 134 F.R.D. 4, 8 (D. Me. 1991) (ordering plaintiffs to answer contention interrogatories before close of discovery on ground that "[c]onsistent with Rule 11 of the Federal Rules of Civil Procedure, Plaintiffs must have some factual basis for the allegations in their complaint").

Here, there are ample compelling reasons for the Court to require plaintiffs to answer Interrogatory No. 4. First, this interrogatory seeks information relating to issues at the heart of plaintiffs' case but as to which their complaint sheds little light. NatWest obviously is entitled to discover the factual bases for plaintiffs' allegations against it. Second, NatWest cannot conduct meaningful discovery without obtaining the requested information. Learning the facts upon which plaintiffs rely regarding (i) the identity of the perpetrators of the attacks causing plaintiffs' injuries, (ii) the means by which such persons and/or entities received material support from NatWest, and (iii) the means by which NatWest proximately caused plaintiffs' injuries, will enable NatWest to develop and pursue an effective discovery plan to support its defense, thereby ultimately conserving the time and resources of the Court and the parties.

On the other hand, plaintiffs' purported rationale for postponing their response to Interrogatory No. 4 is entirely improper. Their remarkable assertion that they cannot provide "useful answers" until after NatWest responds to plaintiffs' discovery requests contradicts Rule 11's requirement that plaintiffs must have possessed a good faith factual basis for their accusations against NatWest when they filed their complaint. If plaintiffs do not currently have

18

sufficient information to answer Interrogatory No. 4, then they could not have complied with their duties under Rule 11.

Accordingly, the Court should require plaintiffs to answer NatWest's Interrogatory No. 4 in full.

## CONCLUSION

For the foregoing reasons, the Court should grant NatWest's motion in full.

Dated: New York, New York
         October 18, 2006

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:

Jonathan I. Blackman (JB 3846)
Lawrence B. Friedman (LF 9978)
Members of the Firm

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

Of Counsel:

Sanjay S. Mody

19

## RULE 37(a)(2)(B) CERTIFICATION

NatWest has attempted in good faith in resolve the issues presented in this motion without needing to resort to motion practice.  On September 7, 2006, counsel for the parties participated in a telephone conference to discuss their disagreements.  At the September 11, 2006 Court discovery conference, NatWest advised the Court of its inability to obtain from plaintiffs the information and documents addressed in this motion, and of its intention to move under Fed. R. Civ. P. 37(a) to compel such discovery.

Lawrence B. Friedman
CLEARY GOTTLIEB STEEN & HAMILTON LLP
Attorneys for Defendant
National Westminster Bank Plc