UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TZVI WEISS, et al.,                            :
                                               :  05 CV 4622 (CPS) (KAM)
                        Plaintiffs,            :
                                               :  Honorable Charles P. Sifton
        - against -                            :
                                               :  Magistrate Judge Kiyo A. Matsumoto
NATIONAL WESTMINSTER BANK, PLC,                :
                                               :
                                               :
                        Defendant.             :
                                               :
------------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES


**GLANCY BINKOW & GOLDBERG LLP**
430 Park Avenue, Suite # 702
New York, New York 10022
Tel:     (212) 308-6300

**OSEN & ASSOCIATE, LLC**
700 Kinderkamack Road
Oradell, New Jersey 07649
Tel:     (201) 265-6400

**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite #2100
Philadelphia, Pennsylvania 19107
Tel:     (215) 238-1700

**Attorneys for Plaintiffs**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    NW's Requests and Interrogatories
         and Plaintiffs' Responses Thereto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    RESPONSES TO CONTENTION INTERROGATORY NO. 4 SHOULD BE
    DEFERRED UNTIL THE COMPLETION OF "SUBSTANTIAL
    DISCOVERY" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    NW's Interrogatory No. 4
            Is a Contention Interrogatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    Responses to Contention
            Interrogatory No. 4 Should Be Deferred
            until Some Initial Discovery Has Been Completed . . . . . . . . . . . . . . . . 10

        C.    NW Has Not Established a Justification for
            The Early Use of Contention Interrogatories . . . . . . . . . . . . . . . . . . . . . 12

        D.    NW's Interrogatory No. 4 Does Not
            Present "Well Tailored" Questions
            and Is Overbroad and Unduly Burdensome . . . . . . . . . . . . . . . . . . . . . 14

    POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    PLAINTIFFS ARE NOT REQUIRED TO DISCLOSE THE
    IDENTITIES OF PARTIES THAT HAVE COMMUNICATED WITH
    COUNSEL AND "PARTICIPATED" IN THEIR INVESTIGATION . . . . . . . . . . . . . 16

        A.    Interrogatory No. 1 Seeks Protected Information . . . . . . . . . . . . . . . . . 16

i

B.    Interrogatory No. 1 Does Not Seek Relevant
Information and Is Unduly Burdensome and Harassing  . . . . . . . . . . . . 19

POINT III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

NW HAS NOT ESTABLISHED A LEGAL BASIS FOR THE
ENTRY OF AN ORDER OVERRULING ALL OBJECTIONS TO
THE PRODUCTION OF INFORMATION AND DOCUMENTS
PROTECTED BY THE ATTORNEY WORK-PRODUCT DOCTRINE  . . . . . . . . . . . 20

A.    Plaintiffs Properly Asserted Objections
to NW's Discovery Requests Pursuant
to the Attorney Work-Product Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.    NW Has Not Established a Substantial Need
For Documents and Information Protected by
the Work-Product Doctrine, or an Inability
to Obtain Relevant Information By Other Means  . . . . . . . . . . . . . . . . . . 22

C.    Plaintiffs Have Not Waived Their Work-Product Protections  . . . . . . . . 25

POINT IV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

NW'S MOTION FOR AN ORDER COMPELLING PRODUCTION OF
UNIDENTIFIED DOCUMENTS IS PREMATURE AND SHOULD BE DENIED
WITHOUT PREJUDICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page</u>

<u>B. Braun Med. Inc. v. Abbott Lab.</u>,
    155 F.R.D. 525 (E.D. Pa 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Commonwealth of Mass. v. First Nat'l Supermarkets, Inc.</u>,
    112 F.R.D. 149 (D.Mass. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

<u>Conopco Inc. v. Warner Lambert Co.</u>,
    2000 WL 342872 (D.N.J. Jan. 26, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Construction Industry Services Corp. v. The Hanover Insurance Co.</u>,
    206 F.R.D. 43 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Cornell Rsch Found., Inc. v. Hewlett-Packard Co.</u>,
    223 F.R.D. 55 (N.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Fischer and Porter Co. v. Tolson</u>,
    143 F.R.D. 93 (E.D.Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

<u>Granite Partners v. Bear, Stearns & Co.</u>,
    184 F.R.D. 49 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-26

<u>Hickman v. Taylor</u>,
    329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 22

<u>Hollinger Int'l Inc. v. Hollinger, Inc.</u>,
    230 F.R.D. 508 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>In re Automotive Refinishing Paint Antitrust Litig.</u>,
    2006 WL 1479819 (E.D.Pa. May 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>In re Convergent Tech. Sec. Litig.</u>,
    108 F.R.D. 328 (N.D.Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

<u>In re Grand Jury Proceedings John Doe Co.</u>,
    350 F.3d 299 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

<u>In re Grand Jury Proceedings</u>,
    219 F.3d 175 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

In re Horowitz,
       482 F.2d 72 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re MTI Tech. Corp. Sec. Litig. II,
       2002 WL 32344347 (C.D. Cal. June 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Steinhardt Partners, L.P.,
       9 F.3d 230 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In re Visa Check/MasterMoney Antitrust Litig.,
       190 F.R.D. 309 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lugosch v. Congel,
       219 F.R.D. 220 (N.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

McCarthy v. Paine Webber Group, Inc.,
       168 F.R.D. 448 (D. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Moses v. Halstead,
       236 F.R.D. 667 (D.Kan. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nestle Foods Corp. v. Aetna Casualty and Surety Co.,
       135 F.R.D. 101 (D.N.J. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Phillips Electronics North America Corp. v. Universal Electronics Inc.,
       892 F. Supp. 108 (D. Del. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Roberts v. Heim,
       130 F.R.D. 424 (N.D.Cal. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Rouson v. Eichoff,
       2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ruotolo v. City of New York,
       2005 WL 823015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Seven Hanover Assoc. LLC v. Jones Lang LaSalle Americas, Inc.,
       2005 WL 3358597 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Shannon v. NYC Transit Auth.,
       2001 WL 286727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ii

Shibley v. Gould,
    1994 U.S. Dist LEXIS 4082 (D. Kan. Mar. 29, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Sicurelli v. Jeneric/Pentron, Inc.,
    2006 WL 1329709
    (E.D.N.Y. May 16, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Storie v. United States,
    142 F.R.D. 317 (E.D. Mo. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Suffolk County v. Lilco,
    1988 WL 697 (E.D.N.Y. June 13, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 12

U.S. v. Int'l Longshoremen's Assoc., AFL-CIO,
    2006 WL 2014093 (E.D.N.Y. Jul. 18, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

U.S. v. Int'l Longshoremen's Assoc., AFL-CIO,
    2006 WL 2014053 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S. v. Schwimmer,
    892 F.2d 237 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Adlman,
    134 F.3d 1194 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22, 23

United States v. Am. Tel. and Tel. Co.,
    642 F.2d 1285 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Nobles,
    422 U.S. 225 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

Upjohn Co. v. United States,
    449 U.S. 383 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

von Bulow v. von Bulow,
    811 F.2d 136 (2d Cir. 1987),
    cert. denied, 481 U.S. 1015 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Federal Rules</u>

Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Fed. R. Civ. P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 22

Fed. R. Civ. P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plaintiffs respectfully submit this Memorandum of Law opposing defendant National Westminster Bank, Plc ("NW") motion for an order overruling Plaintiffs' objections to disclosing information and documents protected by the attorney work-product doctrine in response to NW's Initial Request for the Production of Documents ("Requests") and First Set of Interrogatories ("Interrogatories" or "Rogs," and collectively, "Discovery Requests"). Defendant's motion also seeks to compel Plaintiffs to respond to two interrogatories, notwithstanding Plaintiffs' assertion of several valid objections.

As set forth below, Plaintiffs' response to the Discovery Requests was entirely appropriate and NW's motion should be denied.

## PRELIMINARY STATEMENT

Defendant's pending Motion is entirely baseless. The Plaintiffs in this case have every conceivable incentive to produce documents to establish the liability of the defendant as well as to substantiate their injuries. At the most recent status conference, the Court assured Plaintiffs' counsel that, because NW will not be required to produce substantive records until the defendant's assertions of foreign bank secrecy are addressed fully by the Court, Plaintiffs were also under no further immediate obligation to produce documents. Nevertheless, Plaintiffs' counsel informed the Court that Plaintiffs intended to produce additional records now, because of their desire to accelerate discovery in whatever avenues were available. In fact, Plaintiffs have already produced both liability and damages related documents to the defendant and will continue to do so on an ongoing basis. Defendant's assertion that Plaintiffs are somehow trying to "stonewall" discovery is simply unsupportable. Moreover, in the discussions between counsel for the parties, Plaintiffs made it abundantly clear that they had not identified any documents that required an assertion of attorney-client privilege or assertion of the attorney-work product

doctrine.  Rather, Plaintiffs objected to the form and timing of specific Requests and

Interrogatories.  As set forth more fully below, the defendant has offered no reasons whatsoever

why this Court should ignore the general disfavor with which early service of contention

interrogatories is treated in this District, and by courts generally in the Second Circuit.  Lastly,

the issue that raised the greatest contention between the parties, prior to the submission of

defendant's Motion to Compel was, in fact Interrogatory No. 1, which is facially improper.

Although defendant spends very little time on this particular subject in its brief, the information

requested therein illustrates the degree to which NW's assertions are merely a smokescreen for

an effort to delve into the investigative methods of Plaintiffs' counsel.  Contrary to defendant's

wish, neither the filing of the Complaint in this Action, nor District Judge Sifton's rejection of

the NW's motion to dismiss this case under Fed. R. Civ. P. 12(b)(6) can be read as an implied

waiver of Plaintiffs' rights under the attorney work-product doctrine.

        Specifically, in response to NW's broad Discovery Requests, Plaintiffs: (1) agreed

to produce documents responsive to the Requests and provide NW with a "privilege log"

identifying documents withheld on the basis of attorney work-product protection;[1] (2) answered

Interrogatories No. 2 and 3 seeking the identity of fact and expert witnesses; (3) objected to the

scope, burden, relevance, and disclosure of protected information, in response to Interrogatories 1

and 4 seeking information about Plaintiffs' counsel's investigation, legal opinions, theories, and

litigation strategies; and (4) objected to prematurely serving responses to Interrogatory No. 4, a

three-part contention interrogatory, at the very outset of discovery.  With respect to this last

---

[1]    See Plaintiffs' Objections and Responses to NW's First Set of Interrogatories and
Initial Document Requests attached as Exs. A and C respectively to the Declaration of Lawrence
Friedman ("Friedman Decl.").

objection, Plaintiffs requested that responses to contention interrogatories, if required by the Court, be deferred until after most, if not all, other discovery is completed.[2]

Before NW filed its motion to compel, Plaintiffs began producing documents responsive to NW's Requests and expressly advised NW's counsel that they had <u>not</u> identified, and thus were <u>not</u> withholding, any responsive documents on the ground of attorney work-product.[3]  Nevertheless, NW filed its premature motion based on two, wholly unsupported factual premises:

- Plaintiffs are "purport[ing] to withhold documents based on the work-product privilege."  (Def. Br. at 8); and

- Plaintiffs "have refused to identify the factual bases for their allegations against NW because they require discovery <u>from NatWest</u> before they can do so" (Def. Br. at 1).

In support of its motion, which essentially seeks to compel production of strictly-protected attorney work-product, NW contends that: (1) Plaintiffs have not shown that any documents responsive to its broad Discovery Requests "qualify as work product"; (2) NW has both a "substantial need" for such, yet to be identified, documents prepared in anticipation of litigation and cannot, without undue hardship, obtain the substantial equivalent of such

---

[2]      <u>See</u> e.g., <u>Suffolk County v. Lilco</u>, 1988 WL 69759 (E.D.N.Y. June 13, 1988) and additional cases in Point I.B. below.

[3]

Plaintiffs have already produced several documents concerning NW's alleged liability for providing material support to designated terrorist organizations.  Such documents include copies of business records on NW's stationary memorializing wire transfers executed by NW on behalf of its customer, Interpal/Palestinian Relief and Development Fund ("Interpal"), to entities alleged to be known agents of HAMAS.  Such wire transfers indicate that NW transferred a substantial sum of money in U.S. currency for Interpal from accounts at NW's London branch office to accounts in Palestinian branches of the Arab Bank, Plc maintained by several HAMAS controlled entities.  (Copies of 25 documents are attached hereto as Exhibit A.)

information; and (3) Plaintiffs waived their right to withhold any responsive documents covered

by the work-product doctrine because they have somehow placed all of the information in such

documents "at issue" in this Action (Def. Br. at 12).

NW contends that it is entitled to protected work-product, and a full-blown

narrative of Plaintiffs' case complete with citations to evidence, in order to address whether

Plaintiffs have complied with their obligations under Fed. R. Civ. P. 11 prior to filing their

Complaint.  This is a ridiculous contention.  Bizarrely, NW raises this spurious accusation after

the Complaint survived a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Nevertheless, NW

argues that "if it were true, as plaintiffs now contend, that they cannot explain the factual bases

for their accusations [against NW] without first receiving discovery from NatWest, then they

cannot have satisfied their Rule 11 obligations at all."  (Def. Br. at 2.)

NW's argument is based on a wholly fictitious contention.  As NW well knows,

Plaintiffs do not now, nor did they ever, "contend that they cannot explain the factual bases" for

the allegations in the Complaint "without first receiving discovery from NW."  Rather, Plaintiffs

properly objected to responding substantively to Interrogatory No. 1 because, inter alia, it would

require disclosure of irrelevant information regarding persons who will not be called as witnesses

at trial, and would reveal attorney opinion work-product.  Plaintiffs also objected to providing

similarly protected information as part of its response to Rog 4 and also properly asserted

objections to the relevance, burden, scope, and timing of that contention interrogatory.  If

responses to the three separate parts of Rog 4 are ultimately deemed required by the Court, the

responses should be deferred until after most, or all, documentary and testimonial discovery is

completed.  As discussed in detail below, well-established case law holds that: (1) information

4

about the identities of persons with whom counsel communicated, and who are not witnesses to be called at trial, need not be provided;[4] and (2) "where the plaintiffs have not had discovery of defendant's documents and no depositions have been conducted, it is futile to compel them to answer interrogatories requiring a recitation of all facts and documents and the identity of all individuals with knowledge of the facts which support the allegations of the complaint."[5]

**BACKGROUND**

A.  **The Complaint**

Plaintiffs sued NW under Section 2333 of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a).  The Plaintiffs are victims of terrorist attacks in Israel alleged to have been planned, financed, and carried out by the international terrorist organization HAMAS.[6]

In its Order largely denying NW's motion to dismiss the Complaint, the District Court summarized Plaintiffs' detailed allegations regarding the factual bases for Plaintiffs' ATA claims and cited to the paragraphs in the lengthy Complaint where such facts were set forth.  The factual allegations regarding defendant's alleged violations of Section 2333 were summarized by Judge Sifton as follows:

---

[4]  See, e.g., U.S. v. Int'l Longshoremen's Assoc., AFL-CIO, 2006 WL 2014053 (E.D.N.Y. Jul. 18, 2006) , at *3; and cases at Point II, infra.

[5]  Suffolk County v. Lilco, 1988 WL 69759, at *1 (E.D.N.Y. June 13, 1988), and cases at Point I, infra.

[6]  On September 27, 2006, District Judge Sifton issued a Memorandum Opinion and Order in which it denied NW's motion to dismiss the three ATA claims asserted in the Complaint and granted Plaintiffs leave to add allegations with respect to the claim premised on aiding and abetting that was dismissed without prejudice (the "Order").  A concise summary of Plaintiffs' claims can be found at pp. 1-2 of the Order, appended hereto as Exhibit B.

Plaintiffs allege that for more than nine years the defendant has knowingly maintained numerous accounts for Interpal and transferred and received money between these accounts and various HAMAS front organizations.  The accounts are said to include U.S. Dollar Account Number 140-00-04156838, Euro Account Number 60720508524882, and Sterling Account Number 60082295142940.  Plaintiffs also allege that NatWest provides Interpal with merchant banking services, directly and through another Royal Bank of Scotland subsidiary, thereby making it possible for Interpal to maintain merchant accounts with MasterCard, Visa and other credit card companies.

Plaintiffs identify three specific occasions on which NatWest accepted deposits on behalf of Interpal from alleged terrorist organizations:

> (1) In April 2000 Natwest accepted a deposit of $66,000.00 for Interpal from HLF.

> (2) In January 2001 NatWest accepted deposits totaling $70,000,000 on behalf of Interpal from the Al-Aqsa organization in Yemen.

> (3) On March 27, 2003, NatWest deposited at least two payments to Interpal totaling 295,000 Euros from the Dutch branch of the Al-Aqsa Foundation.

Plaintiffs also allege that NatWest transferred funds to various HAMAS front organizations on the following occasions:

> (1) On February 19, 2003, NatWest transferred £21,404 to the Tulkarem Committee.

> (2) On July 30, 2003 NatWest transferred £73,757 to the Jenin Committee, debiting Interpal's Sterling account number 600822-95142940.  This transaction is said to have been financed by WAMY.

> (3) On November 5, 2003, NatWest transferred £32,329 to the Jenin Committee also from Interpal's Sterling account.

Order at 16-17.

**B.     NW's Requests and Interrogatories
        and Plaintiffs' Responses Thereto**

NW served 17 Requests seeking a broad range of documents concerning the

factual bases for all of Plaintiffs' allegations and claims asserted it.  As conceded in NW's Brief,

its Requests demand production of all documents:

- "upon which Plaintiffs rely in support of their allegations" (Request No. 1);

- "concerning the acts that caused Plaintiffs' injuries" (Request No. 4);

- "concerning NW, Interpal, and the relationship between them (Request Nos. 7-9);

- "concerning the Union of Good and its relationship with NatWest and Interpal and HAMAS (Requests nos. 10, 11, 15, 17);

- "concerning NW's alleged relationship to the acts that caused Plaintiffs' injuries" (Request No. 10);

- "concerning NW's alleged knowledge of Interpal's and the Union of Good's alleged roles in the acts that caused Plaintiffs' injuries (Requests Nos. 13 and 14);

- "concerning the alleged relationship between Interpal and HAMAS" (Request No. 16);

- "obtained by . . . the Plaintiffs concerning the allegations in the Complaint from any governmental authority" (Request No. 18); and

- "referred to . . . in Plaintiffs' Initial Disclosures" (Request No. 19).

(Def. Br. at 4-5).

NW also propounded five Interrogatories:

1.     Identify the persons and entities that supplied, directly or indirectly, or otherwise participated, directly or indirectly, in obtaining on behalf of Plaintiffs the documents called for by Request Numbers 1, 4 and 7-13 in NW's Initial Request for the Production of Documents, dated July 5, 2006.

2.     Identify all fact witnesses on whom Plaintiffs intend to rely at trial.

3.     Identify all expert witnesses on whom Plaintiffs intend to rely at trial.

4.     Explain in detail the factual bases for Plaintiffs' allegations concerning (i) the identity of the persons and/or entities that perpetrated the attacks that caused Plaintiffs' injuries, (ii) how and in what forms and by what means such persons and/or entities received material support and/or resources from NW; and (iii) how and by what means such material support and/or resources proximately caused Plaintiffs' injuries.

5.     Identify all persons who assisted in preparing responses to these Interrogatories and all documents considered, read, referred to, discussed or reviewed in preparing responses to these Interrogatories.

See NW's First Set of Interrogatories, Nos. 1, 3-5, Friedman Decl. Ex. B.

On August 4, 2006, Plaintiffs served written responses by which they agreed to produce documents responsive to NW's Requests.  However, Plaintiffs also properly asserted their right to, inter alia, withhold documents responsive to Requests that are protected from disclosure as attorney work-product.  Had this objection not been asserted, work-product protection could have been deemed to have been waived.

Plaintiffs responded to NW's Interrogatories seeking the identity of fact and expert witnesses that they intend to rely on at trial, to the extent that such witnesses had been already identified.  Plaintiffs also objected to Interrogatories Nos. 1 and 3-5, to the extent that their answers would disclose information regarding "investigatory materials protected by the attorney work-product doctrine."

Finally, Interrogatory No. 4 is a broad contention interrogatory demanding information and legal opinions regarding the proof of specific elements of Plaintiffs' claims, and the evidence upon which Plaintiffs currently intend to rely, to prove their claims at trial. Plaintiffs objected to NW's premature service of an obvious "contention interrogatory" and

8

further noted that any response need not be provided until much later in the discovery process.[7]
Plaintiffs also noted they would not likely be in "a position to offer full and useful answers to
contention interrogatories until Defendant produces responsive documents to [p]laintiffs'
requests," and that NW would not be prejudiced by a deferral of the responses because it "has
full access to information about its own behavior."[8]  Despite NW's shameless effort to
misrepresent Plaintiffs' _actual_ objection, Plaintiffs _never_ stated they "first require evidence from
NatWest before they can answer this interrogatory!"  (Def. Br. at 16.)

## ARGUMENT

## POINT I

## RESPONSES TO CONTENTION INTERROGATORY NO. 4 SHOULD BE DEFERRED UNTIL THE COMPLETION OF "SUBSTANTIAL DISCOVERY"

### A.   NW's Interrogatory No. 4 Is a Contention Interrogatory

Interrogatory No. 4 is plainly a contention interrogatory.  Fed. R. Civ. P. 33
governs the use and timing of two basic types of interrogatories -- identification interrogatories
and contention interrogatories.  Fischer and Porter Co. v. Tolson, 143 F.R.D. 93, 95 (E.D.Pa.
1992). "Contention interrogatories" are interrogatories asking a party to state what it contends,
state all of the facts on which it bases a particular contention, identify the evidence on which it
bases its contentions, state the legal or theoretical basis for a contention, and/or explain how the
law applies to facts on which it has based any of its claims or defenses, i.e., to "spell out the legal
basis for, or theory behind, some specified contention."  See, e.g., In re Automotive Refinishing

---

[7]      See Plaintiffs' Responses to Interrogatory No. 4 and General Objection A.

[8]      Id.

9

Paint Antitrust Litig., 2006 WL 1479819 (E.D.Pa. May 26, 2006).  Accord McCarthy v. Paine

Webber Group, Inc., 168 F.R.D. 448, 450 (D. Ct. 1996);  Fischer and Porter Co., 168 F.R.D. at

450 citing In re Convergent Tech. Sec. Litig., 108 F.R.D. 328, 332 (N.D.Cal. 1985).

Interrogatory No. 4 demands that Plaintiffs "explain in detail the factual bases" for

their allegations concerning specific elements of the ATA claims they have asserted against NW.

This Interrogatory would force Plaintiffs to identify evidence that they may use to prove two

essential elements of their claims -- i.e., that NW provided "material support" to known terrorist

organizations, and that its conduct was a "proximate cause" of Plaintiffs' alleged injuries.  See

Interrogatory No. 4.  Responding to this Interrogatory will absolutely, and improperly, require

Plaintiffs to disclose their counsel's legal theories and opinions.

**B.      Responses to Contention
          Interrogatory No. 4 Should Be Deferred
          until Some Initial Discovery Has Been Completed**

Rule 33(b), which authorizes the use of contention interrogatories, states in

relevant part:

> An interrogatory otherwise proper is not necessarily
> objectionable merely because an answer to the interrogatory
> involves an opinion or contention that relates to fact or the
> application of law to fact, **but the court may order that such an
> interrogatory need not be answered until after designated
> discovery has been completed or until a pre-trial conference or
> other later time.**

Fed. R. Civ. P. 33(b) (emphasis added).

Federal courts, as well as Rule 33(b)'s drafters, acknowledge that the early use of

contention interrogatories is not useful in most cases, and is usually "problematic."  See e.g.,

Revised Report of the Special Committee on Effective Discovery in Civil Cases for the Eastern

10

District of New York to the Hon. Jack B. Weinstein, Chief Judge, dated January 31, 1984, at 44

(contention interrogatories are "too often used at the outset of a litigation to harass the opposition

knowing that the responses at that stage will provide little useful information.") (emphasis

added); Storie v. United States, 142 F.R.D. 317, 319 (E.D. Mo. 1991) ("Because discovery early

in the litigation should be focused on developing the factual bases for claims and defenses and

discovering documents which individuals who possess such facts, contention interrogatories

sought early in the case could be problematic.").  Similarly, as discussed in the Advisory

Committee's Notes to the 1970 amendment of Rule 33:

> Since contention interrogatories involving mixed questions of law
> and fact may create disputes between the parties which are best
> resolved after much or all of the other discovery has been
> completed, the court is expressly authorized to defer an answer.

The overwhelming majority of courts hold that "the interests of judicial economy

and efficiency for the litigants dictate that 'contention interrogatories are more appropriate after a

substantial amount of discovery has been conducted.'"  Nestle Foods Corp. v. Aetna Casualty

and Surety Co., 135 F.R.D. 101, 110-111 (D.N.J. 1990).  See also In re Convergent Technologies

Securities Litigation, 108 F.R.D. 328, 338 (N.D.Cal. 1985); McCarthy, 168 F.R.D. at 450 citing,

Shannon v. NYC Transit Auth., 2001 WL 286727 at *3-4 (S.D.N.Y. Mar.  22, 2001) (contention

interrogatories shall not be asserted or answered "until after designated discovery has been

completed"); B. Braun Med. Inc. v. Abbott Lab., 155 F.R.D. 525 (E.D. Pa 1994) aff'd in part and

vacated in part, 124 F.3d 1419 (Fed. Cir. 1997), citing In re Convergent, 108 F.R.D. at 336

("there is considerable support for deferring contention interrogatories until the end of the

discovery period.").

Deferring responses to contention interrogatories until the close of discovery prevents prejudice to parties who might otherwise be unfairly required to "prematurely articulate theories which have not yet been fully developed without the benefit of pre-trial discovery." Cornell Rsch Found., Inc. v. Hewlett-Packard Co., 223 F.R.D. 55, 66 (N.D.N.Y. 2003) citing Braun Med. Inc., 155 F.R.D. at 527; see also, Storie, 142 F.R.D. at 319 ("if Defendants are forced to respond, they may have to articulate theories of their case not yet fully developed.").

As previously noted, Judge Amon (during her service as a Magistrate Judge) concurs with this majority position, holding:

> [W]here the plaintiffs have not had discovery of defendant's documents and no depositions have been conducted, it is futile to compel them to answer interrogatories requiring a recitation of all facts and documents and the identity of all individuals with knowledge of the facts which support the allegations of the complaint.

Suffolk County v. Lilco, 1988 WL 69759, at *1. This is especially the case where, as here, the narrative of information sought at the outset of discovery concerns allegations regarding the defendant's own knowledge of the facts.[9]

### C. NW Has Not Established a Justification for The Early Use of Contention Interrogatories

"A party filing contention interrogatories early in the pretrial period, before substantial documentary or testimonial discovery has been completed, has the burden of

---

[9] Unlike the Southern District of New York, this District has not adopted Local Civil Rule 33.3, which expressly prohibits service of contention interrogatories prior to the completion of all other discovery. Nevertheless, courts in this District, as described in Lilco, supra, like most others, do not look favorably upon the early service of contention interrogatories, and will ordinarily defer responses thereto until after the completion of documentary and testimonial discovery.

12

justification." <u>Fischer and Porter Co.</u>, 143 F.R.D. at 96 citing <u>In re Convergent Technologies</u>

<u>Sec. Litig.</u>, 108 F.R.D. at 338.  Accordingly, the party seeking early responses to contention

interrogatories must present "specific, plausible grounds for believing that securing early answers

to its contention questions will materially advance the goals of the Federal Rules of Civil

Procedure." <u>Id.</u> quoting <u>Convergent</u>, 108 F.R.D. at 339; <u>Braun</u>, 155 F.R.D. at 527 ("[t]he party

serving contentions bears the burden of proving how an earlier response assists the goals of

discovery").

   The burden cannot be met by "vague or speculative statements about what might

happen if the interrogatories were answered." <u>Id.</u>  Rather, in order to meet the burden, a party

must show:

> that there is good reason to believe that answers to its well-tailored
> questions will contribute meaningfully to clarifying the issues in
> the case, narrowing the scope of the dispute, or setting up early
> settlement discussion, or that such answers are likely to expose a
> substantial basis for a motion under Rule 11 or Rule 56.

143 F.R.D. at 496; <u>Conopco Inc. v. Warner Lambert Co.</u>, 2000 WL 342872 at *4 (D.N.J. Jan. 26,

2000).  In cases such as the one at bar, where the complaint "is not facially infirm and when

defendants appear to have control over, or adequate access to, much of the evidence to their

alleged misconduct," the courts have emphasized that "special vigilance in the evaluation of the

proffered justification is required." <u>Id.</u>

   <u>Fischer and Porter Co.</u>, cited <u>supra</u>, is an important and relevant case in evaluating

Interrogatory No. 4's appropriateness.  In <u>Fischer</u>, the district court "denied without prejudice,

the Motion of Defendants to Compel Plaintiffs to Respond to Discovery Requests except to the

13

extent that the interrogatories seek the identity of witnesses or of documents or other tangible

evidence." 143 F.R.D. at 96.  In connection therewith, <u>Fischer</u> held:

> ". . . there is substantial reason to believe that the early . . . filing of
> sets of contention interrogatories that *systematically track all of the*
> *allegations in an opposing party's pleadings* is a serious form of
> discovery abuse." <u>Id.</u> at 337 (emphasis added).

In rejecting the defendants' motion to compel early responses to contention interrogatories, the

<u>Fischer</u> court emphasized:

> Because the present complaint is not facially infirm and defendants
> appear to have control over or adequate access to much of the
> evidence of their alleged misconduct, the evaluation of their
> proffered justification demands special vigilance. . . .
>
> Therefore, defendants in the present case have not met any of the
> conditions required for interrogatories filed early in the pretrial
> period, before substantial documentary or testimonial discovery
> has been completed.

<u>Id.</u>

Here, Plaintiffs' Complaint was upheld by the Court following Rule 12(b)(6)

motion practice and <u>no</u> discovery has occurred yet.  NW fails to provide any justification, let

alone a strong one, for its professed need for early responses to contention interrogatories.

**D.     NW's Interrogatory No. 4 Does Not**
**Present "Well Tailored" Questions**
**<u>and Is Overbroad and Unduly Burdensome</u>**

Although "the Courts generally approve of <u>appropriately timed</u> contention

interrogatories . . . at the same time, the Courts are loathe to <u>require a party to 'write basically a</u>

<u>portrait of their trial'</u> for the other parties." <u>Roberts v. Heim</u>, 130 F.R.D. 424 (N.D.Cal. 1989)

(emphasis added). "In answering Defendants' contention interrogatories, <u>Plaintiffs do not have to</u>

'start with Adam and Eve' or 'write a book' for Defendants." <u>Id.</u> at 427 (Emphasis added.) As framed by one Federal court:

> there is a significant difference between an interrogatory which, for example, asks a plaintiff to "state all facts upon which you base your contention that defendant is liable in this action" and an interrogatory which asks a plaintiff to "state all facts upon which you base your contention that defendant was in attendance at the meeting of January 10, 1989." <u>The latter is a reasonable interrogatory and the former is not</u>.

<u>Id.</u> (Emphasis added.)

Because contention interrogatories often seek counsel's legal theories, and categories of information protected under Rule 26(b), each such interrogatory "has to be judged in terms of its scope and in terms of the overall context of the case at the time it is asked." <u>Id.</u> However, "'contention interrogatories' are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, <u>such that the answering party is required to provide a narrative account of its case</u>." <u>Moses v. Halstead</u>, 236 F.R.D. 667-674 (D.Kan. 2006) (emphasis added). <u>Accord Roberts</u>, 130 F.R.D. at 427.

Interrogatory No. 4 unabashedly demands a narrative account of Plaintiffs' evidence and materials for establishing both: (1) NW's liability under the "material support" provisions of Section 2333, and (2) the element of causation tying NW's conduct to Plaintiffs' injuries. Interrogatory No. 4 is not only premature, but it is wildly overbroad and is in no way "carefully tailored" to probe the factual bases for specific allegations.

15

## POINT II

## PLAINTIFFS ARE NOT REQUIRED TO DISCLOSE THE IDENTITIES OF PARTIES THAT HAVE COMMUNICATED WITH COUNSEL AND "PARTICIPATED" IN THEIR INVESTIGATION

A.    **Interrogatory No. 1 Seeks Protected Information**

Interrogatory No. 1 demands that Plaintiffs identify parties that "supplied, directly or indirectly, or otherwise participated, directly or indirectly, in obtaining for Plaintiffs" the documents sought in NW's broad Requests, which essentially seek any and all documents in any way relevant to every allegation and claim set forth in the Complaint.  Interrogatory No. 1 does not request simply "the identity and location of persons having knowledge of any discoverable matter," as might be permissible under Fed. R. Civ. P. 26(b)(1).  Instead, the Interrogatory's scope is defined (improperly) by a person's "participation" in Plaintiffs' counsel's investigation of claims asserted in this litigation.  Interrogatory No. 1 is a transparent and inappropriate effort to obtain Plaintiffs' trial preparation and strategy by finding out the names of persons with whom counsel have communicated, and who assisted counsel's document and evidence compilation, or assisted counsel in analyzing claims.

Because all such parties who "participated" in providing evidence and information to Plaintiffs' counsel necessarily were interviewed by, and have communicated with, Plaintiffs' counsel in anticipation of the litigation, this Interrogatory is improper.  The Interrogatory makes the very act of the party's communications with, and providing assistance to, Plaintiffs and their counsel the defining criterion of whether a party's identity should be revealed.  Clearly, such a standard improperly pierces the attorney work-product doctrine protections.  See, Hickman v. Taylor, 329 U.S. 495, 510 (1947).

16

Courts regularly find "interrogatories which seek the names of persons interviewed by an adverse party's attorney" to be "improper." Commonwealth of Mass. v. First Nat'l Supermarkets, Inc., 112 F.R.D. 149, 153 (D.Mass. 1986). Accord Shibley v. Gould, 1994 U.S. Dist. LEXIS 4082 at *5 (D. Kan. Mar. 29, 1994) (extending work-product doctrine protect against the disclosure to cover the "identity of persons contacted and/or interviewed during an investigation . . . in anticipation of litigation or for trial.").

"[I]f the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." In re MTI Tech. Corp. Sec. Litig. II, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002). Thus it is "established law . . . that there is work product in the identity of witnesses interviewed or otherwise relied upon by plaintiffs." Id. at *3. First Nat'l Supermarkets, 112 F.R.D. at 152 ("[w]hen the terms of the interrogatory are not cast in terms of identification of persons with knowledge, but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable.")

Magistrate Judge Dollinger's decision in Seven Hanover-Assoc. LLC is highly instructive. In that case, the court rejected defendants' attempts to compel the disclosure of a letter and several enclosed documents that had been sent by plaintiffs' counsel to a legal representative of a company that was one of the defendant's clients. The letter at issue requested information about the defendant from the unidentified client. The court expressly found that the identities of the defendant's client, and the legal representative to whom plaintiffs' letter was sent, were both protected by the work-product doctrine and need not be disclosed to the defendants. In support of his finding, Judge Dollinger held:

17

> The choice of whom to approach with a suggestion reflected in the
> letter and enclosures constitutes the purely tactical choices that are
> at the heart of the work-product rule. Necessarily, then, the letter
> and enclosures are presumptively protected from disclosure.
>
> We further note that although plaintiffs have declined to disclose
> the identity of the recipient of the letter and enclosures, that
> information would reveal a key aspect of the very tactical decision
> that is protected by the work-product rule. Hence disclosure of that
> fact is not required; indeed, to do otherwise would defeat the
> purpose of the work-product protection that is being invoked. See,
> S.D.N.Y. Civil Rule 26.2(a)(2).

2005 WL 3358597 (S.D.N.Y. Dec. 7, 2005). (Emphasis added.)

The Seven Hanover-Assoc. court also rejected defendant's argument that the

demanded information must be turned over because defendants were entitled to information

about the identities of "all potential witnesses in the case." Judge Dollinger responded that

defendant was "free to ask for names of persons with knowledge of the facts, but it is not

entitled, through plaintiffs, to the identification of who among such knowledgeable individuals

have been interviewed by plaintiffs' attorney." Id. at *1, n.1. (Emphasis added.)

The Seven Hanover-Assoc. court also considered, and rejected, defendants'

attempt to demonstrate "substantial need" for the information, and inability to obtain the

"substantial equivalent" of the letter and its enclosed documents through alternative means. In

support of its holding, the court observed:

> The letter and draft agreement reflect litigation tactics and would
> not add substance to any of the defendant's counterclaims. The
> other enclosures are documents previously provided to, or
> otherwise in the possession of, the defendant, and hence their
> production now would disclose only the evaluation that plaintiffs'
> counsel made about the importance of certain documents from
> among the vast quantity produced in this litigation, and that choice
> plainly implicates core attorney work product.

18

Id. at *1.  (Emphasis added) citing Spork v. Peil, 759 F.2d at 312, 318 (3d Cir. 1985).

NW's Interrogatory Nos. 1 and 4 request information that falls squarely within the protections of Fed. R. Civ. P. 26(b)(3) and highlight the same concerns identified and addressed by Judge Dollinger.  NW has not demonstrated (as discussed infra) a substantial need to discover witnesses' identities with whom Plaintiffs' counsel communicated regarding this litigation. Instead, the Interrogatories threaten to reveal Plaintiffs' counsel's tactical decisions, including their evaluations concerning the import of documents and other information their investigation uncovered.

**B.      Interrogatory No. 1 Does Not Seek Relevant
        Information and Is Unduly Burdensome and Harassing**

Interrogatory No. 1 also improperly demands information about persons with whom counsel has communicated, but who are not intended to be called as witnesses at trial. NW provides no explanation why such information is relevant to its defense, and identifies no substantial need to know the identities of confidential sources of information.

In U.S. v. Int'l Longshoremen's Assoc., AFL-CIO, 2006 WL 2014093 at *3, Magistrate Judge Pohorelsky upheld the plaintiff's relevancy objections in rejecting defendants' motion to compel disclosure of the identities of various persons -- referred to by the court as the labor union's "dissidents" -- with whom the Government's counsel spoke with during the course of its investigation.  In support of its decision, the court held:

> To the extent that dissidents are witnesses whom the plaintiff may
> call at trial, their identities must of course be disclosed.  Otherwise,
> however, disclosure of the identities of, and the nature of the
> contacts with, dissidents does not appear to be reasonably
> calculated to lead to evidence admissible at trial and carries a

19

> pronounced risk of mischief. Accordingly, the plaintiff need not
> produce any such information.

Id. (Emphasis added.)

The "risk of mischief" is far greater here than it was in the Government's

corruption case at issue in Int'l Longshoremen's Assoc.. Obviously, most of the parties who

cooperated with Plaintiffs' counsel regarding the means by which HAMAS has financed its

horrific campaign of terror for the past decade or so do not want their identities to be made

public, or to even be disclosed confidentially to a party alleged to have a relationship with

Specially Designated Global Terrorists. Defendant has not shown any need to know the

identities of any such persons who have "participated" in counsel's investigation. Interrogatory

No. 1, is a naked attempt to intimidate and discourage third-parties from continuing to provide

confidential information to Plaintiffs and their counsel in connection with their continuing

investigation of this case.

## POINT III

### NW HAS NOT ESTABLISHED A LEGAL BASIS FOR THE ENTRY OF AN ORDER OVERRULING ALL OBJECTIONS TO THE PRODUCTION OF INFORMATION AND DOCUMENTS PROTECTED BY THE ATTORNEY WORK-PRODUCT DOCTRINE

**A.     Plaintiffs Properly Asserted Objections
to NW's Discovery Requests Pursuant
to the Attorney Work-Product Doctrine**

The attorney work-product doctrine generally protects against disclosure of

information and materials "prepared in anticipation of litigation or for trial by, or for, another

party or by, or for, that other party's representative." See Fed. R. Civ. P. 26(b)(3). The doctrine

was established in order "to preserve a zone of privacy in which a lawyer can prepare and

20

develop legal theories and strategy 'with an eye towards litigation,' free from unnecessary

intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)

quoting Hickman v. Taylor, 329 U.S. 495, 510-11,(1947).[10]

        Work product immunity extends to the work product of all representatives of a

party, including attorneys, co-counsel, litigation consultants and investigators. See Fed. R. Civ.

P. 26(b)(3) (covering material "prepared in anticipation of litigation or for trial by or for another

party or by or for that other party's representative (including the other party's attorney,

consultant, surety, indemnitor, insurer, or agent) . . ."); United States v. Nobles, 422 U.S. 225,

238-239 (1975) (recognizing that "attorneys often must rely on the assistance of investigators and

other agents in the compilation of materials in preparation for trial.") Construction Industry

Services Corp. v. The Hanover Insurance Co., 206 F.R.D. 43, 49 (E.D.N.Y. 2001) citing U.S. v.

Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995). In fact, all documents prepared on Plaintiffs' behalf

in anticipation of litigation and trial by Plaintiffs' counsel and consultants, and by all others

sharing a common interest in the litigation with the Plaintiffs, are covered by the work-product

doctrine.[11]

_____

[10]    See also United States v. Am. Tel. and Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980) (the goal of the work-product privilege is "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent."); In re Visa Check/MasterMoney Antitrust Litig., 190 F.R.D. 309, 314 (E.D.N.Y. 2000) (purpose of work-product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him.").

[11]    See U.S. v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (coverage extends to the work-product of all other "parties with common interests and goals with respect to their litigation efforts or strategies."); Lugosch v. Congel, 219 F.R.D. 220, 237 (N.D.N.Y. 2003) (The common interest rule covers work-product documents that "[embody] a cooperative and common enterprise" between parties.); Construction Industry Services, 206 F.R.D. 43 at 49, (documents
(continued...)

**B.     NW Has Not Established a Substantial Need
For Documents and Information Protected by
the Work-Product Doctrine, or an Inability
to Obtain Relevant Information By Other Means**

Because the work-product doctrine protects against "invading the privacy of an

attorney's course of preparation [which] is so well recognized and so essential to an orderly

working of our system of legal procedure, a burden rests on the one that would invade that

privacy to establish adequate reasons to justify production through a subpoena or court order."

Hickman v. Taylor, 329 U.S. 495, 512 (1947).

Under Fed. R. Civ. P. 26(b)(3), a party may obtain discovery of factual work

product "only upon a showing that the party seeking discovery has a substantial need of the

materials in the preparation of the case and that the party is unable without undue hardship to

obtain *the substantial equivalent* of the materials by other means."  (Emphasis supplied).  When

determining whether to compel a party to disclose materials otherwise covered by the work-

product doctrine, Federal courts distinguish between ordinary work-product that includes "raw

factual material," and opinion work-product, which includes "counsel's mental impressions,

conclusions, opinions, or legal theories."  Hollinger Int'l Inc. v. Hollinger, Inc., 230 F.R.D. 508,

511 (N.D. Ill. 2005).  The party seeking "ordinary" work-product materials must demonstrate

both a "substantial need" for the materials, and an undue burden in obtaining the information

contained in such materials by alternate means.  We respectfully submit that NW has not even

---

[11](...continued)
prepared in anticipation of litigation by plaintiffs' consultant protected by work-product
privilege); Phillips Electronics North America Corp. v. Universal Electronics Inc., 892 F. Supp.
108 (D. Del. 1995) (pre-litigation investigations, tests, or analyses obtained because of prospect
of litigation found to be protected by the work-product privilege).

met this standard. But when a party seeks production of opinion work-product, it must make a "far stronger showing of necessity and unavailability." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 399 (1981); <u>U.S. v. Adelman</u>, 134 F.3d at 1204 (moving party must, at a minimum, make a "highly persuasive showing" of need and unavailability); <u>Long Term Capital</u>, at \*8 ("[t]he rule is clear that, at a minimum, such material is to be protected unless a highly persuasive showing is made.").

This Court has held that "even where a showing of hardship has been made, however, <u>the court 'shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'"</u> <u>Rouson v. Eichoff</u>, 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) (Matsumoto, M. J.) at \*8 quoting <u>U.S. v. Adelman</u>, 134 F.3d at 1197.

Here, NW demonstrates no "substantial need" for work-product protected documents. Instead, NW complains in "boiler plate" fashion that the Complaint does not provide it with notice of its own knowledge. Thus, NW claims a need for protected attorney work-product because Plaintiffs themselves are not likely to have personal knowledge of the relationships between NW, its customer Interpal, the Union of Good and the various HAMAS controlled entities.

NW has not shown how its needs are any different from those of every other defendant in many civil actions. For example, NW cannot show how it is in a different position than a manufacturer named as a defendant in a products liability action. In products liability actions, as in most other tort cases, the plaintiffs themselves are not likely to have personal knowledge about what caused the alleged defect in the product, why the defect is alleged to be a

23

cause of the incident in which they were physically injured, the manufacturer's knowledge of the

defective condition, or details about the defendant's relationships with any other parties alleged

to be part of the chain of causation such as the retailer or owner of the allegedly defective

product. The fact that Plaintiffs' injuries arise out of terrorist attacks, rather than defective

product, does not suggest the strict protection afforded to attorney work-product is per se less

applicable.

NW also fails to demonstrate that it is unduly burdensome for it to obtain

documents and information concerning NW's alleged role in connection with plaintiffs' injuries,

the alleged transactions between NW's customer Interpal and the alleged terrorist groups (Def.

Br. at 1), and the relationships among the alleged terrorist groups," through discovery requests

and depositions of the Plaintiffs, third parties and Plaintiffs' testifying experts. In fact, NW

appears to have not bothered to review the documents produced by Plaintiffs, nor has it

subpoenaed third parties for documents or deposition, before asserting that only attorney fact and

opinion work-product can satisfy its discovery needs.

Plaintiffs have agreed to produce all non-privileged documents regarding every

aspect of their claims, and commenced a rolling production of such documents to defendant.

Moreover, NW clearly has in its own possession information it seeks from Plaintiffs' counsel --

i.e., NW's involvement in the various financial transactions between NW's customer Interpal and

the alleged terrorist groups. Thus, NW has not, and cannot, demonstrate that it has a substantial

need for opinion and fact work-product concerning allegations related to NW's liability and

proximate causation, nor has it explained its failure to first attempt to obtain documents through

alternative avenues.

24

C.   **Plaintiffs Have Not Waived Their Work-Product Protections**

The protections afforded by the work-product doctrine may be waived. <u>See</u> <u>United States v. Nobles</u>, 422 U.S. 225, 239, 95 S. Ct. 2160, 45 L.Ed.2d 141 (1975). However, the courts are divided as to which party has the burden of establishing that the protection has, or has not been, waived. <u>Compare</u> <u>Seven Hanover Assoc. LLC v. Jones Lang LaSalle Americas, Inc.</u>, 2005 WL 3358597 at *2 (S.D.N.Y. Dec. 7, 2005) (citing <u>In re Horowitz</u>, 482 F.2d 72, 80 (2d Cir. 1973)) (the burden of proving a waiver of privilege is on party seeking to compel production with <u>von Bulow v. von Bulow</u>, 811 F.2d 136, 144 (2d Cir. 1987), <u>cert.</u> <u>denied</u>, 481 U.S. 1015 (1987); and <u>Granite Partners v. Bear, Stearns & Co.</u>, 184 F.R.D. 49, 52 (S.D.N.Y. 1999) (burden to establish no waiver rests upon the party claiming protection). Regardless of which party bears the burden, as demonstrated below, my claim of waiver is specious.

"Waiver of work product protection may result from a party's injection of an issue into the litigation that, in fairness, requires the party to disclose otherwise protected material." <u>Ruotolo v. City of New York</u>, 2005 WL 823015, at *2-3 (S.D.N.Y. Apr. 7, 2005) citing <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182 (2d Cir. 2000). <u>Accord</u> <u>In re Steinhardt Partners, L.P.</u>, 9 F.3d 230, 235 (2d Cir. 1993). In order to demonstrate that an "at-issue" waiver has occurred, NW must demonstrate that the following factors are present: (1) the assertion of the privilege was the result of some affirmative act, such as filing suit, by Plaintiffs; (2) through such affirmative act, Plaintiffs placed the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to [its] defense. <u>Id.</u> at *2-3 citing <u>Granite Partners</u>, 184 F.R.D. at 54; <u>Sicurelli</u>

25

v. Jeneric/Pentron, Inc., 03-CV-4934 (SLT) (KAM), 2006 WL 1329709 at *2 (E.D.N.Y. May 16, 2006).  The identified factors tilt in Plaintiffs' favor.

        While Plaintiffs' assertion of work-product protection is the direct result of their commencement of this action, thus satisfying the first factor, Plaintiffs clearly have not placed any protected documents or information "at issue" by making them relevant to an element of any claim or defense asserted in this case.  In all cases that have found an "at issue" waiver, the plaintiffs had sought to affirmatively use the protected documents as a sword, and the privilege as a shield.  Thus, in In re Grand Jury Proceedings John Doe Co., 350 F.3d 299, 300-301 (2d Cir. 2003), the Second Circuit held that "[t]he unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party's advancing a claim . . . while relying on its privilege to withhold from litigation adversary materials that the adversary might need to effectively contest or impeach the claim."  Id. at 303.

        Similarly, Granite Partners, L.P. v. Bear, Stearns & Co., 184 F.R.D. 49 (S.D.N.Y. 1999) held an "at issue" waiver because the plaintiffs in that case had aggressively used selected quotes from specific documents while claiming work-product protection to other passages in the same documents.  See Granite Partners, 184 F.R.D. 49, at 55.

        Plaintiffs' actions here do not rise to the level of an "at issue" waiver of the work product privilege.  Plaintiffs have not used any protected documents in a manner satisfying the "at issue" waiver test employed in Sicurelli (see Def. Br. at 13) or in Judge Sweet's decision in Granite Partners.  Plaintiffs have never "put the protected information at issue by making it relevant to the case."  Moreover, application of the immunity will not deny NW access to any

26

information vital to its defense.  (See Def. Br. at 20.)  Accordingly, NW fails to demonstrate an "at-issue" waiver.

## POINT IV

## NW'S MOTION FOR AN ORDER COMPELLING PRODUCTION OF UNIDENTIFIED DOCUMENTS IS PREMATURE AND SHOULD BE DENIED WITHOUT PREJUDICE

NW's motion to compel the production of unidentified documents that might be withheld from disclosure pursuant to the work-product doctrine clearly puts the "cart before the horse."  NW has been explicitly advised that Plaintiffs have not yet identified, and thus are not currently withholding, any documents responsive to NW's Requests claimed to be protected from disclosure under the attorney work-product doctrine.  Thus, NW's request for an Order overruling Plaintiffs' work-product objections, and compelling the production of any documents, is premature.  Accordingly, NW's motion should be denied, without prejudice to its possible renewal in the future.

## CONCLUSION

For the foregoing reasons, NW's motion should be denied in its entirety.

Dated: New York, New York
        November 16, 2006

Respectfully submitted,

**GLANCY BINKOW & GOLDBERG LLP**

By: _____\S_____
        Andrew D. Friedman (AF6222)
        Of Counsel
430 Park Avenue, Suite # 702
New York, New York 10022
Tel:    (212) 308-6300
Fax:    (212) 308-6570

27

**OSEN & ASSOCIATE, LLC**
Gary M. Osen (GO-5790)
Joshua D. Glatter (JG-0184)
Peter Raven-Hansen, Of Counsel
700 Kinderkamack Road
Oradell, New Jersey 07649
Tel:    (201) 265-6400
Fax:    (201) 265-0303

**KOHN, SWIFT & GRAF, P.C.**
Robert A. Swift
Steven M. Steingard
One South Broad Street
Suite #2100
Philadelphia, Pennsylvania 19107
Tel:    (215) 238-1700
Fax:    (215) 238-1968

**Attorneys for Plaintiffs**