UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
TZVI WEISS, *et al.*,                                        :
:
               Plaintiffs,                 :
:   CV 05-4622 (CPS) (KAM)
       - against -                                        :
:
NATIONAL WESTMINSTER BANK PLC,                               :
:
               Defendant.                  :
:
------------------------------------------------------------ X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF NATIONAL WESTMINSTER BANK PLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

Of Counsel:

    Jonathan I. Blackman
    Lawrence B. Friedman
    Sanjay S. Mody
    Kirsten L. O'Connell

# TABLE OF CONTENTS

|   | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |

POINT I

PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE PROTECTED AGAINST NATWEST'S DISCOVERY REQUESTS BY THE WORK PRODUCT DOCTRINE .......... 2

A. Plaintiffs Cannot Avoid Disclosure Of The Facts Requested In NatWest's Interrogatories .......... 2

B. Plaintiffs Cannot Rely On The Work Product Doctrine To Withhold Production Of The Documents NatWest Has Requested .......... 4

    1. Plaintiffs Have Failed To Demonstrate That The Work Product Doctrine Applies To Their Documents .......... 5

    2. Even If The Requested Documents Qualify For Work Product Protection, NatWest Is Entitled To Their Production .......... 6

    3. In Any Event, Plaintiffs Have Waived Any Applicable Work Product Protection By Placing The Requested Information At Issue In This Case .......... 8

    4. The Parties Agreed To Brief Plaintiffs' Work Product Doctrine Objections Before Exchanging Privilege Logs .......... 9

POINT II

PLAINTIFFS ARE NOT ENTITLED TO DEFER THEIR RESPONSE TO INTERROGATORY NO. 4 .......... 9

A. Plaintiffs Concede There Is No Basis For Withholding The Identity Of The Persons Or Entities That Perpetrated The Relevant Attacks .......... 9

B. Plaintiffs Should Not Be Permitted To Avoid Responding To The Balance of Interrogatory No. 4, Which Seeks The Disclosure Of Facts Presently Known To Plaintiffs' Counsel .......... 10

|   |   |   |
|---|---|---|
| C. | Interrogatory No. 4 Is Carefully Tailored To Obtain Information On Those Areas In Which Plaintiffs' Complaint Is Deficient............................................................................ | 12 |
| CONCLUSION ................................................................................................................ | | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

Fed. R. Civ. P. 33(c) .................................................................................................... 10

**Cases**

B. Braun Med. Inc. v. Abbott Labs.,
155 F.R.D. 525 (E.D. Pa. 1994) .................................................................................. 9

Comm. Of Mass. v. First Nat'l Supermarkets, Inc.,
112 F.R.D. 149 (D. Mass. 1986) ................................................................................. 3

Convergent Bus. Sys., Inc. v. Diamond Reporting, Inc.,
No. CV-88-2329,
1989 WL 92038 (E.D.N.Y. Aug. 3, 1989) ................................................................. 10

Garnier v. Ill. Tool Works, Inc.,
04 CV-1825 (NGG) (KAM),
2006 U.S. Dist. LEXIS 28370 (E.D.N.Y. May 4, 2006) ............................................. 6

Granite Partners, L.P. v. Bear, Stearns & Co. Inc.,
184 F.R.D. 49 (S.D.N.Y. 1999) .................................................................................. 8

In re Savitt/Adler Litig.,
176 F.R.D. 44  (N.D.N.Y. 1997) ................................................................................. 3

Moses v. Halstead,
236 F.R.D. 667 (D. Kan. 2006) ................................................................................. 13

Omega Eng'g, Inc. v. Omega, S.A.,
98 Civ. 2464 (AVC),
2001 U.S. Dist. LEXIS 2016 (D. Conn. Feb. 6, 2001) ............................................... 5

Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,
No. C 01-20418 JW,
2005 U.S. Dist. LEXIS (N.D. Cal. June 21, 2005) ..................................................... 3

Redvanly v. Nynex Corp.,
152 F.R.D. 460 (S.D.N.Y. 1993) ................................................................................ 6

Roberts v. Heim,
130 F.R.D. 424 (N.D. Cal. 1989) .......................................................................... 12, 13

Shannon v. New York City Transit Authority,
00 Civ. 5079 (RWS),
2001 U.S. Dist. LEXIS 3162 (S.D.N.Y. Mar. 22, 2001) ...................................................... 11

Shibley v. Gould,
Case No. 91-1420-FGT,
1994 U.S. Dist. LEXIS 4082 (D. Kan. Mar. 29, 1994)....................................................... 3

Sicurelli v. Jeneric/Pentron, Inc.,
03-CV-4934 (SLT) (KAM),
2006 U.S. Dist. LEXIS 29813 (E.D.N.Y. May 16, 2006) ................................................. 2, 5, 8

United States v. Adlman,
134 F.3d 1194 (2d Cir. 1998)............................................................................................ 5

Defendant National Westminster Bank Plc ("NatWest") respectfully submits this reply memorandum in further support of its motion for an order pursuant to Rule 37(a) of the Federal Rules of Civil Procedure compelling plaintiffs to produce documents in response to NatWest's requests and to provide answers to NatWest's interrogatories.

## PRELIMINARY STATEMENT

Despite asserting that they have "every incentive" to produce documents relating to the alleged liability of NatWest in this action, plaintiffs admit that, in fact, the only liability-related documents they have "produced" thus far are the few documents attached to their own requests for admission, which are contained in Exhibit A to their opposition brief.[1] Other than the documents they chose to attach to their requests for admission, which were themselves never produced in response to NatWest's Rule 34 requests, plaintiffs have not provided any discovery relating to the alleged role of NatWest in the events leading to plaintiffs' injuries. Instead, plaintiffs have made every attempt to avoid such production by asserting baseless objections to NatWest's interrogatories and document requests.

Plaintiffs' argument that documents covered by NatWest's document requests are protected work product – while in the same breath they assert that they have not yet "identified" any documents that may be covered by the work product doctrine – is meritless. Plaintiffs have not satisfied their burden of demonstrating that the work product doctrine affords them any protection from discovery in this instance. Moreover, NatWest's substantial need for the documents at issue would require their production even if plaintiffs could establish the work

---

[1] Plaintiffs' counsel conceded that this was the case during the telephonic status conference held before the Court on November 17, 2006.

product doctrine does apply. Further, plaintiffs have waived any potential work product protection by putting any covered information at issue in this action.

Plaintiffs' attempt to defer their response to NatWest's interrogatories until they have received further discovery from NatWest also fails. NatWest is simply unable to obtain the essential information sought in the interrogatories by any alternative means, and the interrogatories are narrowly tailored to obtain that information.

Accordingly, the Court should require plaintiffs to produce the documents NatWest seeks and to answer NatWest's interrogatories in full.

## ARGUMENT

### POINT I

### PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE PROTECTED AGAINST NATWEST'S DISCOVERY REQUESTS BY THE WORK PRODUCT DOCTRINE

Plaintiffs cannot avail themselves of the work product doctrine's protection with respect to NatWest's interrogatories because the information NatWest seeks is not "a document or a tangible thing." Nor can plaintiffs rely on the work product doctrine to avoid production of the documents NatWest has requested for these reasons: (i) plaintiffs have failed to establish that the work product doctrine applies to these documents; (ii) NatWest's demonstrated need for these documents would in any case require their production; and (iii) plaintiffs have waived any work product protection by placing the requested information at issue in this action.

A.  **Plaintiffs Cannot Avoid Disclosure Of The Facts Requested In NatWest's Interrogatories**

The work product doctrine applies to "documents and tangible things." Sicurelli v. Jeneric/Pentron, Inc., 03-CV-4934 (SLT) (KAM), 2006 U.S. Dist. LEXIS 29813, at *5 (E.D.N.Y. May 16, 2006). As NatWest argued in its opening brief, the doctrine therefore does

2

not apply to NatWest's interrogatories, which seek "facts, not documents or tangible objects, and the proper form of response is a narrative answer, not a reference to documents or objects where the answers might be found." In re Savitt/Adler Litig., 176 F.R.D. 44, 48 (N.D.N.Y. 1997); Memorandum of Law in Support of National Westminster Bank Plc's Motion to Compel Production of Documents and Answers to Interrogatories at 7, dated October 18, 2006 ("Def. Br."); see also Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc., No. C 01-20418 JW, 2005 U.S. Dist. LEXIS 43648, at *16 (N.D. Cal. June 21, 2005) ("It is generally accepted that the 'work product doctrine does not protect against the disclosure of facts or the identity of persons from whom the facts are learned.'") (citing Hoffman v. United Telecomms., Inc., 117 F.R.D. 440, 444 (D. Kan. 1987)).

NatWest's Interrogatory No. 1 requests the identity of individuals who have provided or participated in obtaining the documents listed in NatWest's document requests. Instead of responding to this interrogatory, plaintiffs offer the strawman argument that NatWest has sought the identity of witnesses interviewed by counsel, and that "there is work product in the identity of witnesses interviewed." Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Compel the Production of Documents and Answers to Interrogatories at 17, dated November 16, 2006 ("Pl. Br."). But the very precedents plaintiffs rely upon confirm that while a party may not need to disclose who its counsel has interviewed, its adversary is "entitled to discovery from another party of the identity and location of persons having knowledge of any discoverable matter." Shibley v. Gould, Case No. 91-1420-FGT, 1994 U.S. Dist. LEXIS 4082, at *5 (D. Kan. Mar. 29, 1994); see also Comm. Of Mass. v. First Nat'l Supermarkets, Inc., 112 F.R.D. 149, 152 (D. Mass. 1986) (finding that parties are "entitled to discover the '. . . . identity and location of persons having knowledge of any discoverable

3

matter'" and that "it has been repeatedly held that such information is not work product"); Pl. Br. at 17.

Here, NatWest has not asked who plaintiffs' counsel has interviewed, but rather who they know to possess relevant information, whether these persons were interviewed or not. It is clear that plaintiffs are "hiding the ball" on this subject: their initial disclosures identify, as persons with information supporting their claims, only plaintiffs themselves and persons at NatWest and Interpal. However, plaintiffs' complaint contains allegations of connections between NatWest's customer Interpal and various alleged Palestinian terrorist fronts, and connections between these organizations and HAMAS, that could not possibly have been learned from any of these sources.[2] Rather, based upon plaintiffs' statements in Court, it appears that the information on which these allegations are based comes from Israeli government (or possibly non-governmental) sources that have made this information available to plaintiffs. Plaintiffs should have disclosed the identities of these persons and sources in their initial disclosures, and it is precisely because they failed to do so that NatWest then propounded Interrogatory No. 1. Plaintiffs cannot now continue to withhold the identities of these persons.[3]

**B.  Plaintiffs Cannot Rely On The Work Product Doctrine To Withhold Production Of The Documents NatWest Has Requested**

Plaintiffs attempt to have it both ways in their opposition brief by claiming that they have "not yet identified," and accordingly are not withholding, any documents protected by

---

[2]  See Plaintiffs' Fed. R. Civ. P. 26(a)(1) Mandatory Initial Disclosures dated June 16, 2006 ("Plaintiffs' Initial Disclosures"), attached hereto as Exhibit A to the Declaration of Jonathan I. Blackman, dated December 19, 2006.

[3]  Even were plaintiffs able to establish that the work product doctrine applies to NatWest's interrogatories, plaintiffs would still be required to respond because NatWest has demonstrated that it has a substantial need for the requested information and cannot without undue hardship obtain the substantial equivalent by any other means. See Part I.B.2 infra.

4

the work product doctrine, Pl. Br. at 3, 3 n.3, 27, but then dedicating seven pages of their opposition brief to the argument that they have "properly" objected to NatWest's document requests based on the work product doctrine. Pl. Br. at 20-26. Plaintiffs are wrong.

    1.    Plaintiffs Have Failed To Demonstrate That The Work Product Doctrine Applies To Their Documents

It is well-settled that the party asserting the work product doctrine bears the burden of establishing that the doctrine applies. See, e.g., Sicurelli, 2006 U.S. Dist. LEXIS 29813, at *5 (citation omitted); Def. Br. at 8. It is also well-settled that the doctrine applies only to those documents prepared in anticipation of litigation by a party or a party's representatives, and not those "that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998); see also Sicurelli, 2006 U.S. Dist. LEXIS 29813, at *5. The doctrine does not apply simply because a party claims that it should, Omega Eng'g, Inc. v. Omega, S.A., 98 Civ. 2464 (AVC), 2001 U.S. Dist. LEXIS 2016, at **11-12 (D. Conn. Feb. 6, 2001), which is all plaintiffs have done here. See Pl. Br. at 20-21; see also Def. Br. at 8-9.

Plaintiffs tellingly fail to provide any factual support for their claim to work product protection. They fail to provide any information regarding the documents they claim are protected, including information on how or when the documents were prepared. Nor do they indicate who prepared these documents or how that party is allegedly connected to, much less shares a "common interest" with, plaintiffs. Pl. Br. at 21. Each such failure individually, and certainly all of them collectively, prevents plaintiffs from satisfying their burden of demonstrating that the work product doctrine applies to the documents NatWest has requested.

The reason for this failure is obvious: the documents plaintiffs are withholding are not documents that they or their counsel prepared, but instead are documents given to them by

5

persons in the Israeli government or otherwise that were not prepared because of litigation, but instead obtained by the Israeli government for its own political, intelligence or law enforcement purposes. Plaintiffs have in fact attached examples of these documents – purported fund transfers from Interpal's account to other organizations – to their requests for admission. See Plaintiffs' First Set Of Requests For Admissions And Related Interrogatories, dated July 5, 2006 ("Plaintiffs' Requests For Admissions") (the purported fund transfers are attached to the Plaintiffs' Requests For Admissions as documents bates-stamped NWPL000001-NWPL000025). But plaintiffs cannot selectively decide which of the documents given to them by such persons (or any other persons for that matter) should be produced. These third-party documents are, on their face, not prepared by plaintiffs or their representatives in anticipation of litigation. Accordingly, they must be produced.[4]

    2.    Even If The Requested Documents Qualify For Work Product Protection, NatWest Is Entitled To Their Production

Even were plaintiffs able to establish that the work product doctrine applies, NatWest would still be entitled to the document production it has requested. It is well settled that protected documents must be produced where, as here, a defendant has a substantial need for the documents and is unable without undue hardship to obtain the substantial equivalent by any other means. See, e.g., Garnier v. Ill. Tool Works, Inc., 04 CV-1825 (NGG) (KAM), 2006 U.S. Dist. LEXIS 28370, at *4 (E.D.N.Y. May 4, 2006); Redvanly v. Nynex Corp., 152 F.R.D. 460, 468-469 (S.D.N.Y. 1993); see also Def. Br. at 11-13.

Here, NatWest has sought the production of documents concerning its alleged connection with plaintiffs' injuries, and the alleged relationships and transactions between its

---

[4]     Plaintiffs do not contend that these documents were prepared by retained consulting experts or the like; if the examples attached to their requests for admissions are any indication, they are simply third-party business records.

6

customer Interpal and the alleged terrorist groups. See Def. Br. at 4-5. This information is indisputably critical to a determination of NatWest's alleged liability in this matter and is unavailable to NatWest by alternative avenues. See Def. Br. at 11-13. Deposing the individual plaintiffs would not provide the necessary information because none of the plaintiffs has direct knowledge of NatWest's alleged role in their injuries. Nor is it feasible for NatWest to attempt to depose the alleged terrorist groups, and it is simply ludicrous for plaintiffs to suggest otherwise.

Plaintiffs unsuccessfully attempt to avoid the conclusion that production should be ordered by claiming first that this matter is comparable to a products liability lawsuit, and second that NatWest is already in possession of the requested, yet somehow protected, information. See Pl. Br. at 23-24. Plaintiffs' products liability analogy is risible. In a products liability case, the manufacturer knows about the design and manufacture of its own product, and can depose both other persons in the chain of sale and the plaintiffs themselves to reconstruct how the alleged design or manufacturing defect caused the accident. Here, by contrast, NatWest has no way of finding, much less of taking discovery from, the alleged terrorist organizations that allegedly received funds from NatWest's client Interpal, or unraveling their purported links to the HAMAS terrorists who allegedly injured the plaintiffs. Nor do the individual plaintiffs themselves have this information. The only source of this information is what plaintiffs (or their counsel) have obtained from third parties.

Second, plaintiffs' allegation that NatWest "clearly has in its own possession" the allegedly protected information that NatWest requested is groundless. See Pl. Br. at 24. NatWest does not have access to information regarding the alleged financing of the terrorist

7

groups or their alleged connections with HAMAS, which is critical to NatWest's defense. See Def. Br. at 12-13.

### 3. In Any Event, Plaintiffs Have Waived Any Applicable Work Product Protection By Placing The Requested Information At Issue In This Case

The work product doctrine is waived where, as here, plaintiffs have put the protected information at issue, and application of the protection would "[deny] the opposing party access to information vital to [its] defense." Sicurelli, 2006 U.S. Dist. LEXIS 29813, at *11; Def. Br. at 13-14. This waiver is grounded in considerations of basic fairness, to prevent a party from preventing discovery that is necessary to an adverse party's defense. See, e.g., Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 184 F.R.D. 49, 54 (S.D.N.Y. 1999) (finding that the "fairness doctrine aims to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information") (citations omitted).

Plaintiffs concede that their assertion of the work product doctrine is the direct result of their filing this action. They attempt to argue, however, that waiver only occurs when a party quotes from specific documents while claiming those same documents are protected. See Pl. Br. at 26-27. This exceedingly narrow interpretation of what it means to put the information "at issue" ignores the fundamental fairness principle upon which the waiver doctrine is based. See, e.g., Granite Partners, L.P., 184 F.R.D. at 54 ("The work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege."). Here, plaintiffs have relied upon the allegedly protected information regarding the connections between fund transfers from Interpal's account at NatWest and various alleged HAMAS front organizations, and the role of these organizations in the events that led to plaintiffs' injuries, as the very basis for their claims. To withhold this information from NatWest

8

would deprive NatWest of its ability to defend itself in this action – the very type of unfairness that the waiver doctrine is meant to prevent.

    4.    The Parties Agreed To Brief Plaintiffs' Work Product
<u>Doctrine Objections Before Exchanging Privilege Logs</u>

Finally, plaintiffs cannot avoid an order compelling the requested document production by hiding behind the fact that they have not yet produced a privilege log. Pl. Br. at 27. The parties agreed that plaintiffs' work product objections would be addressed before privilege logs were exchanged, and plaintiffs cannot now seek to delay the issuance of an order simply because they now realize that the work product doctrine provides them with no protection against responding to NatWest's discovery requests.

## POINT II

## PLAINTIFFS ARE NOT ENTITLED TO DEFER
## THEIR RESPONSE TO INTERROGATORY NO. 4

A.    **Plaintiffs Concede There Is No Basis For Withholding The Identity
Of The Persons Or Entities That Perpetrated The Relevant Attacks**

As a preliminary matter, plaintiffs fail completely to address the fact that the first subpart of Interrogatory No. 4, calling for the "identity of the persons and/or entities that perpetrated the attacks that caused Plaintiffs' injuries," does not constitute a contention interrogatory. <u>See</u> Def. Br. at 15; <u>see also</u> <u>B. Braun Med. Inc. v. Abbott Labs.</u>, 155 F.R.D. 525, 527 (E.D. Pa. 1994) (holding that interrogatories calling for the identification of documents or persons "are not contention interrogatories and may not be deferred"). Indeed, in objecting that Interrogatory No. 4 "demands that [p]laintiffs 'explain in detail the factual bases' for their allegations," plaintiffs refer to only the second and third subparts of Interrogatory No. 4, dealing with the material support and proximate cause components of their allegations. Pl. Br. at 10. In so doing, plaintiffs effectively concede there is no basis for withholding the identities of the

9

perpetrators of the relevant attacks, and plaintiffs should be required to respond to the first subpart of Interrogatory No. 4 immediately.

B.  **Plaintiffs Should Not Be Permitted To Avoid Responding To The Balance of Interrogatory No. 4, Which Seeks The Disclosure Of Facts Presently Known To Plaintiffs' Counsel**

Leaving aside their inflated rhetoric, plaintiffs advance three arguments for why the Court should defer their response to Interrogatory No. 4 until after they obtain additional discovery from NatWest. All of these arguments are without merit.

First, plaintiffs bizarrely claim, without further explanation, that Interrogatory No. 4 "will absolutely, and improperly, require [p]laintiffs to disclose their counsel's legal theories and opinions." Pl. Br. at 10. This argument ignores the fact that the plain language of Rule 33 itself provides that "[a]n interrogatory . . . is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(c); see also Convergent Bus. Sys., Inc. v. Diamond Reporting, Inc., No. CV-88-2329, 1989 WL 92038, at *1 (E.D.N.Y. Aug. 3, 1989) (holding that "[s]eeking the facts and documents which support a particular allegation in a complaint [through a contention interrogatory] violates neither the attorney-client or work product privileges").

Second, plaintiffs contend that, without the benefit of discovery from NatWest, they will be unable to respond to Interrogatory No. 4, because "the narrative of information sought at the outset of discovery concerns allegations regarding the defendant's own knowledge of the facts." Pl. Br. at 12 (emphasis supplied); see also id. at 13, 14 (arguing that NatWest has "control over, or adequate access to . . . much of the evidence to their alleged misconduct"). This argument is patently false. Interrogatory No. 4 calls on plaintiffs to provide information

10

relating to, among other things, the identity of the perpetrators of the attacks that caused their injuries and how the material support or resources those perpetrators allegedly received from NatWest proximately caused their injuries. NatWest's knowledge is manifestly irrelevant to each of these inquiries, and plaintiffs cannot be permitted to avoid responding to Interrogatory No. 4 on the purported ground that they require discovery from NatWest.

Third, plaintiffs assert perfunctorily that NatWest "fails to provide any justification . . . for its professed need for early responses to contention interrogatories." Pl. Br. at 14. To the contrary, as NatWest explained in its opening brief, compelling responses to Interrogatory No. 4 makes eminent sense, because plaintiffs themselves have no personal knowledge of the facts sought in Interrogatory No. 4 and NatWest has no alternative discovery method by which to obtain those facts. See Def. Br. at 16-17. Indeed, plaintiffs themselves have identified no other witnesses that NatWest can reasonably depose to obtain the information requested in Interrogatory No. 4. See Plaintiffs' Initial Disclosures; compare Shannon v. New York City Transit Authority, 00 Civ. 5079 (RWS), 2001 U.S. Dist. LEXIS 3162, at *9 (S.D.N.Y. Mar. 22, 2001) (determining that contention interrogatories are premature because, in part, "the matters about which the contention interrogatories inquire are properly the subject of depositions"). Surely plaintiffs are not suggesting that NatWest's discovery must be limited to trying to obtain information from the alleged foreign terrorist organizations and alleged charitable "fronts" named in the complaint, when plaintiffs have obtained information regarding these organizations from persons in Israel and this information is at the heart of their liability claims.

As noted in NatWest's opening brief, plaintiffs' complaint provides little information concerning the factual bases for plaintiffs' allegations against NatWest, and their

11

response to Interrogatory No. 4 will meaningfully clarify the issues in the case. See Def. Br. at 17-18; Pl. Br. at 13 (admitting that contention interrogatories are permitted in the preliminary stages of discovery when "there is good reason to believe that answers to [the] well-tailored questions will contribute meaningfully to clarifying the issues in the case") (citation omitted). Accordingly, the Court should direct plaintiffs to respond immediately to Interrogatory No. 4.

C. **Interrogatory No. 4 Is Carefully Tailored To Obtain Information On Those Areas In Which Plaintiffs' Complaint Is Deficient**

Plaintiffs argue that Interrogatory No. 4 is overbroad and unduly burdensome because it "demands a narrative account of [p]laintiffs' evidence and materials for establishing both: (1) [NatWest's] liability under the 'material support' provision of Section 2333, and (2) the element of causation tying [NatWest's] conduct to [p]laintiffs' injuries." Pl. Br. at 15. To the contrary, Interrogatory No. 4 is carefully tailored to obtain information regarding plaintiffs' allegations in precisely those areas in which plaintiffs' complaint is most deficient: (i) the identity of the perpetrators of the alleged attacks; (ii) the material support allegedly received by those perpetrators from NatWest; and (iii) how that material support proximately caused plaintiffs' injuries. See Def. Br. at 18. Plaintiffs presumably had good faith factual bases for making these allegations in their complaint; Interrogatory No. 4 simply calls for plaintiffs to disclose them.

Plaintiffs rely on Roberts v. Heim, 130 F.R.D. 424 (N.D. Cal. 1989), which states that "an interrogatory which asks a plaintiff to 'state all facts upon which you base your contention that defendant was in attendance at the meeting of January 10, 1989,'" is reasonable while "an interrogatory which . . . asks a plaintiff to 'state all facts upon which you base your contention that defendant is liable in this action,'" is not. Id. at 427; Pl. Br. at 15. However, Roberts also states that:

12

> The difficulty is that there is a substantial middle ground between these extremes and, therefore, <u>each interrogatory has to be judged in terms of its scope and in terms of the overall context of the case at the time it is asked</u>.

Roberts, 130 F.R.D. at 427 (emphasis supplied). Here, Interrogatory No. 4 does not require plaintiffs to "state all facts" establishing that NatWest is allegedly liable, but instead clearly falls into this "middle ground" requiring an evaluation of the "overall context of the case."

As described above, plaintiffs have provided no alternative means for NatWest to obtain this information, because plaintiffs have identified no knowledgeable witnesses who NatWest can depose. Indeed, the only "liability" documents plaintiffs have provided so far consist of documents "produced" to NatWest in the form of purported transaction records attached to plaintiffs' requests for admission. See p. 6, supra; see also Pl. Br. at 3 n.3, Exhibit A. It is ludicrous for plaintiffs to suggest that this constitutes a proper production of documents related to plaintiffs' material support or proximate cause allegations.

Thus, in the context of this case – where plaintiffs themselves cannot be meaningfully deposed, plaintiffs have identified no other knowledgeable witnesses, and plaintiffs have produced no liability documents – it is critical that plaintiffs be compelled to respond to Interrogatory No. 4. Absent such a response, NatWest will be severely hampered in its ability to conduct effective or meaningful discovery. See Def. Br. at 18.[5]

---

[5] Even if the Court were to conclude that Interrogatory No. 4 is overly broad or unduly burdensome, it should nevertheless direct plaintiffs to answer the interrogatory, limiting their response to the "'material' or 'principal' facts that support [their allegations]." See Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).

13

## CONCLUSION

For the foregoing reasons, the Court should grant NatWest's motion in full.

Dated: New York, New York
December 19, 2006

        Respectfully submitted,

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        By: _____
           Jonathan I. Blackman (JB 3846)
           Lawrence B. Friedman (LF 9978)
           Members of the Firm

        One Liberty Plaza
        New York, New York 10006
        (212) 225-2000

        Attorneys for Defendant
        National Westminster Bank Plc

Of Counsel:

    Sanjay S. Mody
    Kirsten L. O'Connell