UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
TZVI WEISS, et al.,                                      :
                                                         :
                        Plaintiffs,                      :
                                                         :
        -against-                                        :   CV 05-4622 (CPS) (KAM)
                                                         :
NATIONAL WESTMINSTER, PLC,                               :
                                                         :
                        Defendant.                       :
------------------------------------------------------- x
```

## UNREPORTED DECISIONS CITED IN THE
## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## NATIONAL WESTMINSTER BANK PLC'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Attorneys for Defendant
National Westminster Bank Plc

Of Counsel:

Jonathan I. Blackman
Lawrence B. Friedman
Sanjay S. Mody
Kirsten L. O'Connell

INDEX OF UNREPORTED DECISIONS CITED IN
THE REPLY MEMORANDUM OF LAW IN SUPPORT OF
NATIONAL WESTMINSTER BANK PLC'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

Convergent Bus. Sys., Inc. v. Diamond Reporting, Inc.,
No. CV-88-2329,
1989 WL 92038 (E.D.N.Y. Aug. 3, 1989)

Garnier v. Ill. Tool Works, Inc.,
04 CV-1825 (NGG) (KAM),
2006 U.S. Dist. LEXIS 28370 (E.D.N.Y. May 4, 2006)

Omega Eng'g, Inc. v. Omega, S.A.,
98 Civ. 2464 (AVC),
2001 U.S. Dist. LEXIS 2016 (D. Conn. Feb. 6, 2001

Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,
No. C 01-20418 JW,
2005 U.S. Dist. LEXIS 43648 (N.D. Cal. June 21, 2005)

Shannon v. New York City Transit Authority,
00 Civ. 5079 (RWS),
2001 U.S. Dist. LEXIS 3162 (S.D.N.Y. Mar. 22, 2001)

Shibley v. Gould,
Case No. 91-1420-FGT,
1994 U.S. Dist. LEXIS 4082 (D. Kan. Mar. 29, 1994)

Sicurelli v. Jeneric/Pentron, Inc.,
03-CV-4934 (SLT) (KAM),
2006 U.S. Dist. LEXIS 29813 (E.D.N.Y. May 16, 2006)

Westlaw.

Not Reported in F.Supp.                                                                                 Page 1

Not Reported in F.Supp., 1989 WL 92038 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**C**
Convergent Business Systems, Inc. v. Diamond Reporting, Inc.E.D.N.Y.,1989.Only the Westlaw citation is currently available.
United States District Court, E.D. New York.
CONVERGENT BUSINESS SYSTEMS, INC.,
Plaintiff,
v.
DIAMOND REPORTING, INC. and Carl Sackheim, Defendants.
**No. CV-88-2329 (ILG).**

Aug. 3, 1989.

MEMORANDUM AND ORDER
CAROL   BAGLEY   AMON,   United   States Magistrate.
**\*1** By letter dated May 24, 1989, plaintiff moves to compel responses to certain contention interrogatories posed to the defendants.[FN1] These interrogatories track the allegations of defendants' antitrust claims and seek all facts and documents in support of the various allegations. Plaintiff maintains that defendants' responses were improper, evasive and incomplete. Defendants counter that the interrogatories seek information protected by the attorney-client and work product privileges, are duplicative of information already provided and are unduly burdensome and oppressive (Defendants' Letter of June 12, 1989).

For the reasons set forth herein, plaintiff's motion to compel is granted.

*Discussion*

There is nothing improper *per se* about the form of contention interrogatory posed by the plaintiff in this case. *See In re Convergent Technologies Sec. Litig*, 108 F.R.D. 328, 332 (N.D.Cal.1985). Seeking the facts and documents which support a particular allegation in a complaint violates neither

the attorney-client or work product privileges as defendants contend. *See D B King v E.F. Hutton & Co.,* 117 F.R.D. 2, 5 (D.D.C.1987); *Wallace v. General Elec. Co.,* No. 87-1236, slip op. at 6 (E.D.Pa. March 30, 1988). *F T C. v. Shaffner,* 626 F.2d 32, 37 (7th Cir., 1980).

Defendants' further assertion that contention interrogatories are inappropriate where the complaint is detailed is likewise unavailing. Information in a complaint is not a substitute for answers to interrogatories which unlike the allegations of a complaint can be used as affirmative evidence at trial and for impeachment and cross-examination purposes. *D B. King,* 117 F.R.D. at 6; *Convergent Technologies,* 108 F.R.D. at 338.

Defendants also claim that plaintiff is already in possession of the requested information as a result of the depositions of the Sackheims and defendants' prior document production. Defendants, however, have failed to support this contention.

As the court in *Schotthofer v Hagstrom Constr. Co,* 23 F.R.D. 666, 668 (S.D.Ill.1958) held, it is up to the objecting party to advise the court with some particularity to what extent the interrogatories are a duplication of matters already covered in the deposition. Rather than having already obtained the basis for defendants' allegations at depositions, plaintiff was specifically precluded from obtaining this information by objections interposed by defendants' counsel.[FN2]

I further note that a general statement that information can be found in a mass of documents is an unsatisfactory response under Fed.R.Civ.P. 37(a) . *Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc,* 64 F.R.D. 459, 462-463 (S.D.N.Y.1974). The purpose of discovery is to narrow and frame the issues between the parties. A broad reference to over 900 pages to testimony and forty-five exhibits is simply not an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                         Page 2

Not Reported in F.Supp., 1989 WL 92038 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

adequate response under the federal discovery rules. *Id.* at 462.

**\*2** The final argument defendants advance in opposition to the present motion is the claim that responding to the interrogatories would be expensive, overly burdensome and oppressive. Once again, defendants have failed to support this claim.

In objecting to the use of interrogatories by an opposing party, it is never enough to simply complain that the interrogatories are unduly burdensome or oppressive. *Wallace,* No. 87-1236, slip op. at 1. The party must show specifically in what manner each question is overly broad or burdensome. *Id.* at 3. It is similarly insufficient to broadly assert that the number of interrogatories is too great or to claim that to answer would require expending valuable resources in the form of time, labor and money. *See Wirtz v. Capital Air Service, Inc.,* 42 F.R.D. 641, 643 (D.Kan.1967). The defendants must prove how and why providing the requested answers would be oppressive. *Radzik v. Chicagoland Recreational Vehicle Dealers Ass'n, Inc.,* 15 Fed.Rules Serv.2d 1606, 1607 (N.D.Ill.1972). They have made no such showing here.

In *Bowen v The News,* 1969 Trade Cas. (CCH) ¶ 72768 (S.D.N.Y.1969), where the plaintiffs sought to strike the interrogatories of defendants in an antitrust case, the court held that the defendant was entitled to know with some degree of precision the factual content of the charges levied against them. The court added that a certain amount of burdensome labor is to be expected in complex antitrust cases, and where the party is simply being asked to substantiate the claims that they alleged, they must accept that burden. *Id.* at ¶ 72770.

For the foregoing reasons, plaintiff's motion to compel responses to Interrogatories 5, 7, 9, 10, 12, 14, 16, 17, 20, 24, 25, 26, 29, 30, 31, 32 and 37 is granted.

SO ORDERED.

FN1. The specific Interrogatories are 5, 5a, 5b, 5c, 7, 9, 10a, 10b, 12a, 14a, 14c, 14d, 14e, 14g, 16, 17a, 20a, 20g, 24a, 25a, 25b, 26, 29c, 29d, 29e, 30, 31, 32d and 37.

FN2. Although the questions addressed to defendant at deposition could have been more artfully worded they did not seek information covered by the attorney-client privilege as defendants' counsel maintained during the course of the deposition.

E.D.N.Y.,1989.
Convergent Business Systems, Inc. v. Diamond Reporting, Inc.
Not Reported in F.Supp., 1989 WL 92038 (E.D.N.Y.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2006 US DIST. LEXIS 28370



Analysis
As of: Dec 15, 2006

JAY A. GARNIER, Plaintiff, -against- ILLINOIS TOOL WORKS, INC., et al., Defendants.

04-CV-1825 (NGG)(KAM)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2006 U.S. Dist. LEXIS 28370*

**May 4, 2006, Decided**

**PRIOR HISTORY:** *Garnier v. Ill. Tool Works, Inc., 2006 U.S. Dist. LEXIS 22361 (E.D.N.Y., Apr. 24, 2006)*

**COUNSEL:** [*1] For Jay A. Garnier, Plaintiff: Charles E. Joseph, Joseph & Herzfeld, LLP, New York, NY.

For Illinois Tool Works Inc., doing business as Hobart Corporation, Don Stairs, Paul Todoro, Robert Todoro, Michael Meyer, Defendants: Michael R. DiChiara, Grotta, Glassman & Hoffman, Roseland, NJ; Jed L. Marcus, Grotta, Glassman & Hoffman, P.C., Roseland, NJ; Michael Raymond DiChiara, Corporation Counsel of the City of New York, Law Department, New York, NY.

**JUDGES:** KIYO A. MATSUMOTO, United States Magistrate Judge.

**OPINION BY:** KIYO A. MATSUMOTO

**OPINION:**

**OPINION & ORDER**

MATSUMOTO, United States Magistrate Judge:

In the above-referenced employment discrimination action, referred to the undersigned for general pretrial supervision pursuant to *28 U.S.C. § 636(b)*, plaintiff seeks to compel production of a certification made by defendants' employee, Clarence Crawford, Branch Manager of defendants' Birmingham, Alabama facility, which was obtained by defendants' counsel following the commencement of this litigation and which purportedly concerns "plaintiff's employment and allegations of discrimination and harassment." (See Doc. No. 62, Letter from Charles Joseph, Esq. [*2] to the undersigned dated Mar. 15, 2006 ("Pl. 3/15/06 Ltr."), Ex. A, Defendants' Privilege Log, at 1.) Defendants have agreed to make Mr. Crawford available for an interview or deposition by plaintiff's counsel. (See Doc. No. 65, Letter from Jed Marcus, Esq. dated Mar. 22, 2006.) Plaintiff claims that due to his limited resources, it is not "financially viable" to depose Mr. Crawford. (Doc. No. 78, Letter from Charles Joseph, Esq. dated Apr. 12, 2006, at 1.) Defendants, who have furnished a copy of the Mr. Crawford's certification for *in camera* review, oppose plaintiff's request on grounds that any statement made by Mr. Crawford to defendants' counsel is protected by the work product doctrine. (Doc. No. 65 and Doc. No. 74, Letters from Jed Marcus, Esq. dated Mar. 22 and Apr. 7, 2006, respectively.) For the reasons set forth below, plaintiff's request for an order compelling production of Mr. Crawford's certification is denied.

**DISCUSSION**

The work product doctrine provides qualified protection from discovery of "documents and tangible things . . . prepared in anticipation of litigation" unless the party seeking discovery demonstrates a "substantial need of the materials [*3] in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Fed. R. Civ. P. 26(b)(3)*. The purpose of this doctrine is to protect from disclosure materials reflecting "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

"[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *In re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982, 561 F. Supp 1247, 1257 (E D.N.Y 1982)*. The burden of establishing all three elements of the work product privilege rests with the party invoking the privilege. *In re Grand Jury Subpoena, 599 F.2d 504, 510 (2d Cir 1979)*.

Here, the three elements of the tripartite test set forth above are satisfied. First, the Crawford certification constitutes a document. [*4] Second, it was prepared following the commencement of this litigation, and upon the directive of defendants' litigation counsel. (See Letter of Jed Marcus, Esq. dated Mar. 22, 2006, at 2.) Third, it was prepared for defendants by one of their employees.

"Even where the applicability of the work product doctrine has been established, factual material may be ordered produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" *In re Omeprazole Patent Litig., 2005 U.S Dist. LEXIS 6112, No M-21-81, 2005 WL 818821, at *9 (S.D N Y Feb 18, 2005)* (quoting *Upjohn Co v. United States, 449 U S 383, 400, 101 S Ct. 677, 66 L. Ed. 2d 584 (1981)*); *In re Grand Jury Proceedings, 219 F.3d 175, 190-191 (2d Cir. 2000)* ("A party seeking discovery of attorney work-product must show "substantial need," for fact work-product. As for work-product that shows 'mental impressions, conclusions, opinions, or legal theories of an attorney, . . . at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.") (internal citations and quotation marks omitted).

"Substantial need is not evaluated in a vacuum, and in order to overcome [*5] work product protection, [plaintiff] must demonstrate that [he] cannot obtain the substantial equivalent of the information [he] seeks." *E.E O.C v. Carrols Corp , 215 F R.D. 46, 52 (N.D.N.Y 2003)* (citing *Pillsbury, 888 F.2d 8, 12*). That does not mean that a party seeking the document must show an absolute impossibility, but rather that it is significantly more difficult, time-consuming or expensive to obtain the information from another source. *SEC v. Thrasher, 1995 U.S. Dist LEXIS 1355, 92 Civ. 6987, 1995 WL 46681, at *9 (S D N Y. Feb. 7, 1995)*.

The Court has reviewed, *in camera,* the Crawford certification and has determined that although its disclosure to plaintiff will not reveal defense counsel's mental impressions, conclusions, opinions, legal theories or thought processes, plaintiff has not demonstrated that he is unable to obtain the substantial equivalent of the information contained in the Crawford certification

through other discovery devices. While the Court is sympathetic to plaintiff's financial condition, plaintiff has not demonstrated why he is unable to conduct a deposition of Mr. Crawford upon written questions [*6] pursuant to *Fed R Civ P 31*, or why he cannot take Mr. Crawford's oral deposition via telephone and arrange for a sound recording pursuant to *Fed. R. Civ P. 30(b)*.

It is true that those devices may be more expensive than the production of Mr. Crawford's certification; however, the devices do provide an alternative means for plaintiff to obtain the substantial equivalent and, perhaps more, without undue hardship and without impinging upon defendants' work product. See *Carrols, 215 F R D. at 52* (substantial need not shown where information contained in questionnaires mailed by the E E.O.C. to defendant employer's employees could be obtained through other discovery devices); *In re Int'l Sys & Controls Corp., 693 F 2d 1235, 1241 (5th Cir 1982)* (noting that although expense may be considered in determining undue hardship, "in the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product") (citation omitted); *Tribune Co. v Purcigliotti, 1998 U.S Dist. LEXIS 5155, 93 Civ. 7222, 1998 WL 175933 at *4 (S.D.N.Y Apr. 14, 1998)* ("'Substantial [*7] need' cannot be shown where persons with equivalent information are available for deposition.") (citing *Pillsbury, 888 F 2d at 12*); Atlantic Richfield Co. v. Current Controls, 1997 U.S. Dist. LEXIS 13082, No. 93-CV-0950, 1997 WL 538876, at *3 (W.D.N.Y. Aug. 21, 1997) (noting that the party seeking facts in a privileged document may obtain those facts through other means of discovery, such as through depositions); *Pine Top Ins. Co , v. Alexander & Alexander Services, Inc , 1991 U.S. Dist. LEXIS 14610, No. 85 Civ 9860, 1991 WL 221061, at *2 (S.D N.Y. Oct 7, 1991)* ("The undue hardship test is generally not satisfied merely by the expense of obtaining the materials."); *Castle v. Sangamo Weston, Inc., 744 F 2d 1464, 1466-67 (11th Cir. 1984)* (trial court abused its discretion when it compelled production of otherwise privileged documents where party had not demonstrated that it could not obtain the information it sought by deposing witnesses whose statements were contained in the documents); *Gay v P.K. Lindsay Co , 666 F 2d 710, 713 (1st Cir. 1981)* ("[I]t seems well-settled that there is in general no justification for discovery of the statement [*8] of a person contained in work product materials when the person is available to be deposed."). Accordingly, plaintiff's motion to compel production of Mr. Crawford's certification is denied.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to compel Mr. Crawford's certification is denied.

**SO ORDERED.**

2006 U.S. Dist. LEXIS 28370, *

Dated: May 4, 2006
Brooklyn, NY

/s/

KIYO A. MATSUMOTO
United States Magistrate Judge

LEXSEE 2001 US DIST. LEXIS 2016



Positive
As of: Dec 15, 2006

**OMEGA ENGINEERING, INC., Plaintiff, v. OMEGA, S.A., Defendant.**

**Civil No. 3:98cv2464(AVC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2001 U.S. Dist. LEXIS 2016*

**February 6, 2001, Decided**

**SUBSEQUENT HISTORY:** Magistrate's recommendation at, Costs and fees proceeding at *Omega Eng'g, Inc v. Omega, SA, 2004 U.S. Dist. LEXIS 27908* (D. Conn., Mar. 24, 2004)

**DISPOSITION:** [*1] OEI's motion to compel (document no. 39) GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff in an action for damages and injunctive relief for breach an agreement for the use of trademarks, moved to compel discovery responses from defendant, asserting that the responses defendant had filed were incomplete and deficient, some were unsigned, and that objections raised were unjustified.

**OVERVIEW:** The agreement between the parties governed the worldwide use of any trademark consisting of or containing the word OMEGA or the Greek letter U. Because the agreement was effective worldwide, a wide scope for discovery was necessary. In general, defendant had failed to comply with the rules concerning objections and assertions of privilege and had submitted responses without verified signatures. The court determined an award of fees and costs to plaintiff was appropriate.

**OUTCOME:** Plaintiff's motion to compel was granted to the extent defendant had not already complied with discovery. Defendant's objections for privilege required a specific log as set forth by local rule. Defendant's objections for overbreadth, vagueness or on relevance grounds

were largely unjustified, and it was obligated to respond promptly to interrogatories it had previously ignored.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
[HN1] See *Fed. R. Civ. P 37(a)(2)(B)*.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > General Overview*
[HN2] See *Fed. R. Civ. P. 37(a)(3)*.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN3] See *Fed. R. Civ. P 26(b)(1)*.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Relevance*
*Evidence > Relevance > General Overview*
[HN4] Information that is reasonably calculated to lead to the discovery of admissible evidence is considered

relevant for the purposes of discovery. The term "reasonably calculated" as used in *Fed. R. Civ. P. 26* means any possibility that the information sought may be relevant to the subject matter of the action. A party may not object to a discovery request on the grounds that the information sought will be inadmissible at trial so long as the material requested could lead to other information that may be relevant to the subject matter of the action.

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
*Civil Procedure > Discovery > Relevance*
*Civil Procedure > Discovery > Undue Burdens*
[HN5] A party may object to a discovery request if it is overly broad or unduly burdensome. To assert a proper objection on this basis, however, one must do more than simply intone the familiar litany that the interrogatories are burdensome, oppressive or overly broad. Instead, the objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. The objecting party may not leave it to the court to sift each interrogatory to determine the usefulness of the answer sought. To the contrary, the detail in the complaint defines the liberal guidelines for determining the relevance of the discovery requests, and the burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections.

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Discovery > General Overview*
*Evidence > Privileges > Attorney-Client Privilege > Scope*
[HN6] A party may also object to a discovery request where the information sought is subject to the attorney-client privilege or the work-product doctrine. *Fed. R. Civ. P. 26(b)(5)*. The party asserting the privilege and resisting discovery has the burden of establishing that privilege. Blanket assertions of privilege have been held insufficient to satisfy this burden. Instead, a party must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged or protected.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
[HN7] Pursuant to U.S. Dist. Ct., D. Conn., R. 9(d)(1), a party claiming privilege in response to a document request shall, for each document to which the privilege applies, provide a log indicating: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; and (5) each recipient of the document.

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
*Contracts Law > Negotiable Instruments > Enforcement > Joint & Several Instruments*
[HN8] See *Fed. R. Civ. P. 33(b)(2)*.

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
[HN9] Answers to interrogatories not signed by the party making them constitutes a violation of the discovery rules.

*Civil Procedure > Discovery > Disclosures > Sanctions*
*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Misconduct*
[HN10] Interrogatories should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under *Fed. R. Civ. P. 37(a)*.

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN11] Where an agreement is worldwide in scope, a party's world-wide activities which are allegedly in violation of the agreement, are reasonably calculated to lead to the discovery of admissible evidence within the liberal meaning of the Federal Rules of Civil Procedure.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Misconduct*
[HN12] See *Fed. R. Civ. P. 37(a)(4)(A)*.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Misconduct*
[HN13] *Fed. R. Civ. P. 37(a)(4)(A)* does not require a court to find bad faith before awarding reasonable attorney's fees. Instead, the court may order the losing party

to pay reasonable expenses so long as such an award complies with the requirements of Rule 37(a).

**COUNSEL:** For OMEGA ENGINEERING, INC., plaintiff: Peter W. Peterson, Robert Curcio, DeLio & Peterson, New Haven, CT.

For OMEGA, SA, defendant: Arthur T. Fattibene, Paul A. Fattibene, Southport, CT.

For OMEGA, SA, defendant: Jess M. Collen, Collen Law Associates, Ossining, NY.

**JUDGES:** Alfred V. Covello, Chief, U.S.D.J.

**OPINION BY:** Alfred V. Covello

**OPINION:**

### RULING AND ORDER ON THE PLAINTIFF'S MOTION TO COMPEL

This is an action for damages and injunctive relief brought by the plaintiff, Omega Engineering, Inc. ("OEI") pursuant to common law tenets concerning breach of contract. OEI's complaint alleges that the defendant, Omega, S.A. ("OSA"), breached an agreement entered into by the parties with respect to the use of "any trademark consisting of or containing the word OMEGA or the Greek letter U . . . ." OEI brings the within motion, pursuant to *Fed. R. Civ. P. 37*, n1 requesting the court to compel OSA to "provide full and complete answers to [OEI's] interrogatories" and to produce all materials sought in connection with its document requests. In addition, OEI asks the court to award it costs incurred in the preparation of the instant [*2] motion. As set 2forth in more detail below, OEI's motion (document no. 39) is GRANTED.

n1 [HN1] Rule 37(a)(2)(B) provides, in pertinent part, that: "if . . . a party fails to answer an interrogatory submitted under Rule 33, or . . . in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested . . . , the discovering party may move for an order compelling an answer, or . . . an order compelling inspection in accordance with the request." *Fed. R. Civ. P. 37(a)(2)(B)*. [HN2] Rule 37(a)(3) provides that: "for the purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." *Fed. R. Civ. P. 37(a)(3)*.

### FACTS

In 1994, OEI entered into an agreement with OSA, which, at the outset, states that

both parties . . . are desirous of coming to an arrangement for the avoidance of future interference worldwide between their respective fields of commercial operation under their [*3] rights in respect of trademarks consisting of or including the word OMEGA an/or the Greek letter U or containing elements colourably resembling either of thos [sic] two elements. n2

Under the contract, "[OEI] agreed to withdraw certain [trademark] oppositions against [OSA,]" and both parties agreed to amend certain definitions of goods in their respective trademark applications.

n2 For the sake of convenience, the court refers the agreement's description of these marks as the "OMEGA marks."

Among other things, the agreement prohibits OEI from using, registering, or applying to register any trademark containing the OMEGA marks with respect to "computer controlled measuring, timing and display apparatus, unless intended for science or industry." Similarly, the agreement prohibits OSA from using, registering, or applying to register any trademark containing the OMEGA marks with respect to "apparatus industrially and/or scientifically employed for measuring or controlling variable parameters such [*4] as temperature, pressure, force, load, vibration, electrical conductivity, liquid level, acidity, humidity, strain and flow." The agreement also requires OSA not to object to OEI's use or registration of any trademark containing the OMEGA marks with respect to these same apparatus. By its terms, the agreement is effective in all countries of the world.

On December 17, 1998, OEI filed this action in federal court alleging that OSA had breached the 1994 agreement by:

1) objecting "to the use or registration by [OEI] of [OEI's] trademarks consisting of the [OMEGA marks]" with respect to "apparatus industrially and/or scientifically employed for measuring or controlling variable parameters[;]" and

2) "filing, prosecuting and maintaining . . . opposition and cancellation actions

against [OEI's] trademark application and registrations[ ]"

On September 27, 1999, OSA answered the complaint, asserting some fourteen affirmative defenses.

On July 10, 2000, the court granted in part and denied in part OEI's motion to strike OSA's affirmative defenses; eleven of the fourteen affirmative defenses survived the court's ruling.

Between August 10, 1999 and February 14, 2000, OEI [*5] propounded on OSA three sets of interrogatories and three sets of document requests.

On July 7, 2000, OEI filed the within motion, pursuant to *Fed. R. Civ. P. 37*, seeking an order compelling OSA to: 1) provide full and complete answers to OEI's interrogatories, and 2) produce all materials requested in OEI's requests for production of documents.

## DISCUSSION

OEI argues, in general, that OSA's responses to its discovery requests are incomplete and deficient. OSA, on the other hand, contends that its responses are complete, and that OEI's requests are irrelevant, overly broad, or protected by a privilege.

[HN3] *Rule 26(b)(1) of the Federal Rules of Civil Procedure* states, in pertinent part, that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." *Fed. R. Civ. P. 26(b)(1)*. [HN4] Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See *Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir.1991)*. The term "reasonably calculated" as used in Rule 26 means "any possibility that the [*6] information sought may be relevant to the subject matter of the action." *Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988)*. A party may not object to a discovery request on the grounds that the information sought will be inadmissible at trial so long as the material requested could lead to other information that may be relevant to the subject matter of the action. See id.

[HN5] A party may object to a request if it is "overly broad" or "unduly burdensome." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2174, at 297 (2d ed. 1994). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984)*. Instead, the objecting party must "show specifically how, despite the broad and

liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting [*7] affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted). The objecting party may not leave it to the court to "sift each interrogatory to determine the usefulness of the answer sought." Id. To the contrary, the detail in the complaint defines the liberal guidelines for determining the relevance of the discovery requests, and the burden is on the party resisting discovery to clarify and explain its objections and to provide support for those objections. Id.

[HN6] A party may also object to a discovery request where the information sought is subject to the attorney-client privilege or the work-product doctrine. See *Fed. R. Civ. P. 26(b)(5)*. "The party asserting the privilege and resisting discovery has the burden of establishing that privilege." *Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996)*. "Blanket assertions" of privilege have been held insufficient to satisfy this burden. See *Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996)* Instead, a party "must supply opposing counsel with sufficient information to assess the applicability [*8] of the privilege or protection, without revealing information which is privileged or protected." Id. Finally, [HN7] pursuant to D. Conn. L. Civ. R. 9(d)(1), a party claiming privilege in response to a document request shall, for each document to which the privilege applies, provide a log indicating: 1) the type of document; 2) the general subject matter of the document; 3) the date of the document; 4) the author of the document; and 5) each recipient of the document. See D. Conn. L. Civ. R. 9(d)(1).

## A. Verification of Interrogatories

OEI first argues that OSA has failed to have one of its officers or agents verify its responses to OEI's interrogatories. OSA responds that "verification was never reasonably in dispute[.]" The court is unclear how this could be so given the motion before it. In addition, the court notes that over four months after OEI filed this motion complaining about the lack of verification, OSA still had not produced signatures for two out of three sets of interrogatories. [HN8] Rule 33 explicitly states that "answers [to interrogatories] are to be signed by the person making them[.]" *Fed. R. Civ. P. 33(b)(2)*; see *Nagler v. Admiral Corp., 167 F. Supp. 413, 415 (S.D.N.Y. 1958)* [*9] (noting that [HN9] answers to interrogatories not signed by the party making them constitutes a violation of the discovery rules). Accordingly, the court orders OSA to sign its responses to OEI's interrogatories in compliance with Rule 33(b)(2) within 21 days of this order.

2001 U.S. Dist. LEXIS 2016, *

## B. Interrogatories Nos. 4-6

As indicated by OEI's reply brief, since the filing of the within motion, OSA has provided more complete answers to these interrogatories. Accordingly, the court does not address OEI's arguments relating to these requests.

## C. Interrogatories Nos. 7 and 8

These interrogatories ask OSA to: 1) identify each person who participated in the preparation of the answers to any interrogatory that has been propounded on it by OEI, and 2) identify the "custodian and location of each of the documents from which the answers to these interrogatories have been obtained or which have been requested in [OEI's] current or future" document requests. OSA has objected on the ground that these interrogatories are "overly broad, vague and ambiguous." In its opposition, OSA states that its complaint with respect to these interrogatories stems from the fact that they seek the requested information [*10] as related to "current or future requests."

The court notes, at the outset, that OSA's objections are not properly supported. See *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v Phillips Petroleum Co, 105 F.R.D 16, 42 (S.D.N.Y. 1984).* Also, rather than answer these interrogatories insofar as they relate to sets of interrogatories and document requests that had already been propounded on OSA, OSA inappropriately chose not to respond at all. See *Fed. R. Civ. P. 33(b)(2)* (noting that objecting party "shall answer to the extent the interrogatory is not objectionable."). Further, the court notes that the Federal Rules Advisory Committee has expressly disapproved of employing such gamesmanship in discovery requests:

> [HN10]
> Interrogatories . . . should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under [Rule 37(a)].

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2177, at 317 (2d ed. 1994) (quoting Advisory Committee Notes). Interrogatories [*11] Nos. 7 and 8 represent the most standard of discovery requests in that they simply seek: 1) the names of individuals who participated in the preparation of the interrogatory answers; and 2) the identity of any document used for that same purpose. In light of the above, the court hereby orders OSA to respond to these

interrogatories to the extent they relate to discovery requests that have been propounded on OSA by OEI. Also, the court orders OSA to supplement its response to these interrogatories, in compliance with *Fed R Civ. P 26(e)*, to the extent that answers to future discovery requests make its response to Interrogatories Nos. 7 and 8 incomplete. See *Fed. R. Civ. P 26(e).*

## D. Interrogatory No. 9

This interrogatory seeks the identity, description and location of documents "in the possession or control of [OSA] that are relevant to any statements in [OEI's] complaint that are disputed by the [OSA]." OSA objects, on the grounds that the interrogatory is "overly broad and unduly burdensome, vague and ambiguous, and/or seeks information which is protected by the attorney-client privilege and/or work product doctrine[.]" The mere incantation of these words [*12] is insufficient to carry OSA's burden with regard to this objection. See *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v Phillips Petroleum Co, 105 F.R.D. 16, 42 (S.D.N.Y. 1984).* Accordingly, OSA is ordered to respond. In the event that the information sought through this interrogatory is protected by the attorney-client privilege or the work-product doctrine, OSA is ordered to supply OEI with "sufficient information to assess the applicability of [that] privilege or protection, without revealing information which is privileged or protected." *Burns v. Imagine Films Entertainment, Inc, 164 F R.D. 589, 593-94 (W.D.N Y. 1996)*

## E. Interrogatory No. 10.

This interrogatory asks OSA to explain "for each affirmative defense . . . the basis of the defense, including facts supporting the defense, . . . the reasons such facts . . . support such defense, and the person(s) most knowledgeable about the facts and reasons supporting such defense." OSA objects on the grounds that the interrogatory is "vague and over broad, particularly to the extent that it refers to 'the defense', while the question is prefaced by a request for 'each affirmative [*13] defense' and seeks . . . the basis of 'the defense.'" Subject to this objection, OSA provided a limited response that improperly incorporated unspecified answers to earlier interrogatories. See *Trabon Eng'g Corp v. Eaton Mfg Co., 37 F R.D. 51, 60 (N D Ohio 1964)* (observing that answers to interrogatories that refer to other answers are insufficient).

Again, the court disapproves of OSA's overly strict interpretation of this very basic discovery request. In addition, it concludes that OSA's limited response is inadequate and hereby orders OSA to provide the factual basis (as opposed to the legal basis) for each affirmative defense it has asserted. See *Harlem River Consumers*

*Coop., Inc v Associated Grocers of Harlem, Inc., 64 F R D 459, 461-62 (S D N Y 1974)* (noting that parties are entitled to know the factual content of opponent's claims with a reasonable degree of precision). The court further concludes that OEI's privilege objection is not properly supported. See *Burns v. Imagine Films Entertainment, Inc , 164 F.R D. 589, 593 (W.D N.Y. 1996).* To the extent OSA contends that any of the information sought by this interrogatory is protected [*14] by the attorney-client privilege or the work-product doctrine, OSA is ordered to supply OEI with "sufficient information to assess the applicability of [that] privilege or protection, without revealing information which is privileged or protected." See *id. at 593-94.*

### F. Interrogatories Nos. 11-14

These interrogatories seek: 1) the identity of "all apparatus industrially or scientifically employed for measuring . . variable parameters" which contain the OMEGA marks and which have been "sold by [OSA], anywhere in the world," since the agreement between the parties was signed in 1994; 2) the identity of all pending applications and registrations for any trademarks containing the OMEGA marks, that are "owned by, filed by, issued to, obtained by or renewed by [OSA] since [OSA] signed the 1994 agreement, anywhere in the world;" and 3) the identity of all industrial and/or scientific timers under any trademark containing the OMEGA marks "sold by [OSA,] anywhere in the world," since OSA signed the 1994 agreement. OSA objects to all four requests, contending that they are "irrelevant [and] overly broad . . . insofar as they relate to 'anywhere in the [*15] world.'"

The court notes, however, that the 1994 agreement, which is the basis of this action, explicitly states that its terms are effective "in all countries of the world." [HN11] Because the agreement is worldwide in scope, OSA's world-wide activities, which are allegedly in violation of the agreement, are reasonably calculated to lead to the discovery of admissible evidence within the liberal meaning of the federal rules. See *Morse/Diesel, Inc v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D N Y. 1988)* (noting that "reasonably calculated" in Rule 26(b)(1) means "any possibility that the information sought may be relevant to the subject matter of the action"). Further, these interrogatories, far from being irrelevant, ask for information directly bearing on OSA's alleged breach of the 1994 agreement. Indeed, the language of the interrogatories is taken almost verbatim from the 1994 agreement, which serves as the basis of this action. The court struggles to think of a request more "reasonably calculated to lead to the discovery of admissible evidence." Accordingly, OSA shall respond to In-

terrogatories Nos. 11-14 in their current form, without any further narrowing [*16] of their scope.

### G. Document Request No. 28

Through this request, OEI seeks all documents and things identified in OSA's response to Interrogatory No. 10. OSA responds to this request by referring to its objection to Interrogatory No. 10, which states that the request is unduly burdensome or that the information sought is protected by the existence of a privilege See Section E, supra.

As with OSA's objection to Interrogatory No. 10, the court concludes that OSA has not carried its burden of demonstrating that this document request is unduly burdensome or overly broad. *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F R.D. 16, 42 (S D N.Y. 1984).* The court also concludes that OSA has not properly supported its privilege objection. See *Burns v. Imagine Films Entertainment, Inc., 164 F R D. 589, 594 (W.D N.Y. 1996)* To the extent any material responsive to this or other document requests is protected by the attorney-client privilege or the work-product doctrine, OSA shall provide OEI with a log indicating: (1) the type of document; (2) the general subject matter of the document; (3) the date of the [*17] document; (4) the author of the document; and (5) each recipient of the document. See D. Conn. L. Civ. R. 9(d)(1); see also *Fed. R. Civ P. 26(b)(5).* Accordingly, OSA is ordered to produce all documents, not otherwise privileged, that are responsive to this request.

### H. Document Requests Nos. 29-38

OSA offers the exact same objection to each of these requests. It argues that they are "irrelevant, overly broad and not reasonably calculated to lead to the discovery of admissible evidence" because they refer to apparatus sold by OSA, or trademark applications owned/filed by OSA "anywhere in the world." Again, the 1994 agreement that serves as the basis for this action is world-wide in scope. Consequently, OSA's world-wide activities allegedly in violation of that agreement are "reasonably calculated to lead to the discovery of admissible evidence." See *Morse/Diesel, Inc v Fidelity & Deposit Co., 122 F R D. 447, 449 (S.D.N.Y. 1988).* Aside from its problem with the geographic scope, OSA has provided no other basis for its objection. See *Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593-94 (W D.N.Y 1996).* Accordingly, the court [*18] orders OSA to produce documents responsive to Document Requests Nos. 29-38 in their current form, without any further narrowing of their scope.

### I. Document Requests 1-5, 10-12, 13-15, 17-19, 21, 24-27

As indicated by OEI's reply brief, since the filing of the within motion, OSA has provided more complete responses to these requests. Accordingly, the court does not address OEI's arguments relating to these requests.

**J. Expenses and Costs**

OEI also argues that the court should award it costs incurred in connection with the preparation of the within motion because OSA's objections were not justified.

[HN12] *Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure states that:*

> if [a motion to compel] is granted . . . the court shall, after affording an opportunity to be heard, require the party whose conduct . . . necessitated the motion . . . to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that . . the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust.

*Fed. R. Civ. P. 37(a)(4)(A).* [HN13] [*19] This rule does not require the court to find bad faith before awarding reasonable attorney's fees. See *Messier v. Southbury Training Sch., 1998 U.S. Dist. LEXIS 20315,* No. 3:94-CV-1706, 1998 WL 841641, at *5 (Dec. 2, 1998.). Instead, the Court may order the losing party to pay reasonable expenses so long as such an award complies with the requirements of Rule 37(a). See id.

An award of expenses is warranted in this case as the court concludes that OSA's objections were largely unjustified. For instance, in response to a majority of OEI's requests, OSA merely recited the same "form" objection stating that the requests were either: 1) "irrelevant," "overly broad," or "not reasonably calculated to lead to the discovery of admissible evidence;" or 2) subject to the attorney-client privilege or work-product doctrine. When asserting either of these objections, OSA failed to provide any evidentiary basis for its response. See Resps. to Interrogs. Nos. 7-9 and 11-14; Resps. to Reqs. for Docs. Nos. 1-5, 10-12, 17-19, 21, 24, 26, 30-38. n3 Also, as noted earlier, many of OEI's requests objected to on relevance grounds were directly related to OSA's alleged breach of the 1994 agreement, which is [*20] at the heart of this dispute. Finally, the court concludes that OSA's use of strained and overly technical interpretations of OEI's interrogatories to avoid its obligation under the broad discovery rules resulted in OEI's incurring unnecessary expense. See, e.g., Resps. to Interrogs. Nos. 7, 8, and 10. Accordingly, the court will make an award of fees and costs following the parties' submission on this issue as detailed immediately below.

> n3 While in some cases, OSA cited the requests' allegedly broad scope -- "anywhere in the world" -- as the reason for its objection, the court concludes that this basis was not justified given the breadth of the 1994 agreement at issue in this case. See Sections F and H, supra.

**CONCLUSION**

Based on the foregoing, OEI's motion to compel (document no. 39) is GRANTED. The court orders that:

> 1) OSA shall provide full and complete responses to interrogatories nos. 7-14 and document requests nos. 28-38 within 21 days of this order;
>
> 2) OSA shall provide [*21] OEI with a privilege log, in compliance with D. Conn. L. Civ. R. 9(d)(1), for all documents that it contends are subject to the attorney-client privilege or the work-product doctrine within 21 days of this order;
>
> 3) OSA shall sign its responses to OEI's interrogatories in compliance with Rule 33(b)(2) within 21 days of this order;
>
> 4) OEI shall serve a copy of this Ruling and Order on OSA forthwith; and
>
> 5) OEI shall serve and file by, February 21, 2001, affidavits which set forth with specificity the expenses it incurred in preparing its motion to compel. OSA shall have 21 days from the date of service of OEI's affidavits to file any opposition.

It is so ordered this 6th day of February, 2001 at Hartford, Connecticut.

Alfred V. Covello, Chief U.S.D.J.

2 of 4 DOCUMENTS



Analysis
As of: Dec 18, 2006

**Plumbers & Pipefitters Local 572 Pension fund et al., Plaintiff(s), v. Cisco Systems, Inc. et al., Defendant(s).**

**NO. C 01-20418 JW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

*2005 U.S. Dist. LEXIS 43648*

**June 21, 2005, Decided**
**June 21, 2005, Filed**

**PRIOR HISTORY:** *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., 2004 U.S. Dist. LEXIS 27008 (N.D. Cal., May 27, 2004)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, pension funds, sued defendants, a company, officers, directors, and accountants, alleging violations of § 10(b) of the Exchange Act, *15 U.S.C.S. § 78j(b)*, 17 C.F.R. § 240.10-5 (Rule 10b-5), § 20(a) of the Exchange Act, *15 U.S.C.S. § 78t(a)*, and § 20A of the Exchange Act, *15 U.S.C.S. § 78t-1*. A special master granted defendants' motion to compel certain discovery. The funds moved to vacate the special master's discovery order.

**OVERVIEW:** The funds alleged that defendants provided false and misleading statements that artificially inflated the company's stock price. The funds asserted that the requested information was protected by the work product doctrine and violated the protection of whistleblowers. The court found that defendants had made the requisite showing of substantial need and undue hardship to overcome the qualified protection from the discovery of a list of persons interviewed because the funds had listed over 1200 potential witnesses in their initial disclosures. The work product doctrine did not

shield the discovery of documents or people with knowledge of the facts relevant to the funds' claim. There was nothing unusual about a discovery request that asked the funds to produce or identify documents that related to or supported allegations made in their complaint. The funds had not made a showing that the documents requested were prepared "in anticipation of litigation," which would trigger the protection of the work product doctrine. Whistleblower protection was inapplicable to the funds' sources which consisted of customers, suppliers and other third parties.

**OUTCOME:** The court denied the funds' motion to vacate a special master's discovery order.

**LexisNexis(R) Headnotes**

*Civil Procedure > Judicial Officers > Masters > General Overview*
[HN1] Ordinarily, a district court reviews all objections to a special master's findings of fact de novo unless the parties stipulate with the court's consent that the master's findings will be reviewed for clear error. *Fed. R. Civ. P. 53(g)(3)(A)*. The district court also reviews de novo all objections to conclusions of law made or recommended

2005 U.S. Dist. LEXIS 43648, *

by a master. *Fed. R. Civ. P. 53(g)(4)*.

### *Civil Procedure > Judicial Officers > Magistrates > Pretrial Orders*

[HN2] Under *28 U.S.C.S. § 636(a)*, a district judge may overrule a magistrate judge's order if it is clearly erroneous or contrary to law. *28 U.S.C.S. § 636(a)*; *Fed. R. Civ. P. 72*. Moreover, pre-trial objections to matters concerning discovery are generally not considered to be dispositive since they do not resolve the case on the merits. A magistrate judge's factual determinations are subject to the "clearly erroneous" standard. Under this standard, factual findings are not clearly erroneous unless the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. On the other hand, a magistrate judge's conclusions of law are subject to the "contrary to law" standard, which amounts to a de novo review. Mixed questions of law and fact are also subject to de novo review.

### *Civil Procedure > Discovery > Privileged Matters > Work Product > Scope*

[HN3] The party seeking to invoke the work product doctrine bears the initial burden of establishing that the request at issue was prepared in anticipation of litigation. However, the party seeking discovery of otherwise protected work bears the ultimate burden of proving that there is a substantial need for the materials that cannot be obtained without undue hardship. *Fed. R. Civ. P. 26(b)(3)*. The "work product doctrine" was established in order to protect mental impressions, conclusions, opinions, or legal theories of opposing attorneys and to prevent parties from borrowing the wits of their adversaries. While the work product doctrine does not protect underlying factual matters that are contained in a document which is not itself discoverable, it affords a qualified protection from discovery all trial preparation materials prepared "in anticipation of litigation." *Fed. R. Civ. P. 26(b)(3)*. If the party invoking the protection establishes the applicability of the work product doctrine, the qualified protection can be overcome by a showing that the party seeking the discovery has substantial need of the materials, and that the party is unable, without undue hardship, to obtain the substantial equivalent of the material by other means. *Fed. R. Civ. P. 26(b)(3)*.

### *Civil Procedure > Discovery > Privileged Matters >*

### *Work Product > Scope*

[HN4] It is generally accepted that the work product doctrine does not protect against the disclosure of facts or the identity of persons from whom the facts are learned. Specifically, parties may be compelled to disclose the identity of persons having knowledge, but may not be forced to disclose which of these individuals have in fact been interviewed. When the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable. If the identity of interviewed witnesses is disclosed, the opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy.

### *Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*

[HN5] While it may be true that the identities of those interviewed are relevant to the action and may lead to discoverable evidence, that alone does not make an otherwise protected work product discoverable without a showing of substantial need and undue hardship.

### *Civil Procedure > Discovery > Privileged Matters > Work Product > Scope*

[HN6] With regard to the work product doctrine, parties may not specifically demand the identities of witnesses interviewed or relied upon by counsel.

### *Civil Procedure > Discovery > Privileged Matters > Work Product > Scope*

[HN7] The work product doctrine does not shield the discovery of documents or people with knowledge of the facts relevant to a plaintiff's claim.

### *Civil Procedure > Discovery > Privileged Matters > Work Product > Fact Work Product*

[HN8] With regard to the work product doctrine, underlying fact documents cannot be shielded from discovery. While individual fact documents may itself be discoverable, circumstances exist where the selection and compilation of documents by counsel in preparation for pretrial discovery may reveal an attorney's thought processes and fall within the protection of the work product doctrine.

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*

[HN9] With regard to the work product doctrine, it is not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.

*Evidence > Privileges > Government Privileges > Official Information Privilege > Informer Privilege*

[HN10] What is usually referred to as the informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*

[HN11] Whistleblowers may need protection from retaliation. Court take into consideration the interests of unidentified whistleblowing employees when confronted with a motion to compel. "Whistleblowers" are either former or current employees who provides information in an investigation against their employer. Retaliation against current whistleblowing employees may include loss of job or demotion while former whistleblowing employees may be subjected to harassment by new employers or dampen their job-searching efforts. In seeking whistleblower protection to shield the disclosure of whistleblower employees, plaintiffs bear the burden of justifying this objection.

**COUNSEL:** [*1] For Plumbers & Pipefitters Local 572 Pension fund, Plaintiff: Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA.; Daniel C. Girard, Girard Gibbs LLP, San Francisco, CA.; Darren J. Robbins, William S. Lerach, Jessica Tally, Jonah Goldstein, Lucas Olts, Matthew Paul Montgomery, Spencer A. Burkholz, Daniel S. Drosman, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.; Eric J. Belfi, Labaton Sucharow & Rudoff LLP, New York, NY.; Frederick W. Gerkens, III, John Halebian, Thomas J. Harrison, Wechsler Harwood Halebian & Feffer, LLP, New York, NY.; Frederick T. Kuykendall, Fredric G. Levin, J. Papantonio Papantonio, Joe Scarborough, Timothy M. O'Brien, Peter Lawrence Kaufman, Robert E. Smith, JR, Troy Alan Rafferty, Levin Papantonio Thomas Mitchell Echsner, Pensacola, FL.; George E.

Barrett, Barrett, Johnston & Parsley, Nashville, TN.; James G. Stranch, III, Branstetter Stranch & Jennings, PLLC, Nashville, TN.; Robert A. Jigarjian, Green Welling LLP, San Francisco, CA.; Connie M. Cheung, Lesley E. Weaver, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.; Melvyn I. Weiss, Attorney at Law, New York, NY.; Brian J. Robbins, Robbins Umeda & Fink LLP, San [*2] Diego, CA.; Willem F. Jonckheer, Schubert & Reed LLP, San Francisco, CA.

For Sunita Reddy, Plaintiff: Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA.; Eric J. Belfi, Labaton Sucharow & Rudoff LLP, New York, NY.; Stuart L. Berman, Schiffrin & Barroway, LLP, Radnor, PA.; Willem F. Jonckheer, Schubert & Reed LLP, San Francisco, CA.; Connie M. Cheung, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.; Matthew Paul Montgomery, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.

For William H. Batallas, Plaintiff: Brian J. Robbins, Robbins Umeda & Fink LLP, San Diego, CA.; Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA.; Eric J. Belfi, Labaton Sucharow & Rudoff LLP, New York, NY.; Connie M. Cheung, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.; Jessica Tally, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.; Matthew Paul Montgomery, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.

For Diversified Investors Growth Income Portfolio Fund, Diversified Investors Equity Growth Portfolio Fund, Investerungsfireningen BankInvest Telemedia Aktier, Carolina First Bank, Plaintiff: [*3] Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA.; Eric J. Belfi, Labaton Sucharow & Rudoff LLP, New York, NY.; Connie M. Cheung, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.; Jessica Tally, Matthew Paul Montgomery, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.; Robert A. Jigarjian, Green Welling LLP, San Francisco, CA.

For Robert Radway, Plaintiffs: Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA.; Eric J. Belfi, Labaton Sucharow & Rudoff LLP, New York, NY.; Connie M. Cheung, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.; Matthew

Paul Montgomery, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.; Robert A. Jigarjian, Green Welling LLP, San Francisco, CA.

For Radiant Advisors LL, Plaintiff: Corey D. Holzer, Holzer Holzer & Cannon LLC, Atlanta, GA.; Eric J. Belfi, Labaton Sucharow & Rudoff LLP, New York, NY.; Lionel Z. Glancy, Glancy & Binkow LLP, Los Angeles, CA.; Connie M. Cheung, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.; Jessica Tally, Matthew Paul Montgomery, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA.

For Ian Rogers, [*4] Consol Plaintiff: James Nixon Daniel, Beggs & Lane, Pensacola, FL.

For Cisco Systems, Inc., Defendant: Alice L. Jensen, Jennifer Corinne Bretan, Kathryn Fritz, Dean S. Kristy, Felix Lee, Kevin P. Muck, Fenwick & West LLP, San Francisco, CA.; Christopher Alan Garcia.; Dan Keith Webb, Ethan Richard York, J. Erik Connolly, Robert L. Michels, Robert Yale Sperling, Ronald S Betman, Winston & Strawn LLP, Chicago, IL.; Krista M. Enns, Winston & Strawn LLP, San Francisco, CA.

For John T. Chambers, Larry R. Carter, Judith L. Estrin, Carl Redfield, Michelangelo Volpi, Steven M. West, Edward R. Kozel, Donald T. Valentine, Donald J. Listwin, Defendants: Christopher Alan Garcia.; Jennifer Corinne Bretan, Alice L. Jensen, Dean S. Kristy, Felix Lee, Kevin P. Muck, Fenwick & West LLP, San Francisco, CA.; Ethan Richard York, Winston & Strawn LLP, Chicago, IL.

For Gary J. Daichendt, Defendant: Ethan Richard York, Winston & Strawn LLP, Chicago, IL.; Alice L. Jensen, Dean S. Kristy, Felix Lee, Kevin P. Muck, Fenwick & West LLP, San Francisco, CA.

For Charles H. Giancarlo, Mario Mazzola, Defendants: Dean S. Kristy, Felix Lee, Kevin P. Muck, Fenwick & West LLP, San Francisco, CA.

For [*5] Carol A. Bartz, Robert L. Puette, Defendants: Alice L. Jensen, Dean S. Kristy, Felix Lee, Kevin P. Muck, Fenwick & West LLP, San Francisco, CA.

For James F. Gibbons, Defendant: Felix Lee, Kevin P. Muck, Fenwick & West LLP, San Francisco, CA.

For Price Waterhousecoopers LLP, Defendant: Bruce C. Gibney, Christopher R. Leclerc, Daniel T. Rockey, George H. Brown, Norman J. Blears, Heller Ehrman LLP, Menlo Park, Ca.; Michael L. Rugen, Carol Lynn Thompson, Heller Ehrman LLP, San Francisco, CA.; Ruth Marian Bond, Esq., San Francisco City Attorney's Office, San Francisco, CA.

For Warren Fermaglich, Movant: Mark Gordon, Weiss & Yourman, Los Angeles, CA.; Patrice L. Bishop, Stull, Stull & Brody, Los Angeles, CA.

For John Wirfel, Channa Fermaglich, Movants: Mark Gordon, Weiss & Yourman, Los Angeles, CA.

For Solectron Corporation, Movant: Donald P. Gagliardi, Bergeson, LLP, San Jose, CA.

**JUDGES:** JAMES WARE, United States District Judge.

**OPINION BY:** JAMES WARE

**OPINION:**

### ORDER DENYING PLAINTIFFS' MOTION TO VACATE DISCOVERY ORDER ISSUED BY THE SPECIAL MASTER

#### I. INTRODUCTION

Lead Plaintiffs Plumbers & Pipefitters National Pension Fund ("Plumbers"), Central States, Southeast [*6] and Southwest Area Pension Fund ("Central States"), Carpenters Pension Fund of Illinois ("Carpenters"), and Alexander Nehring (collectively "Plaintiffs"), move to vacate Special Master Edward Infante's Order Granting Defendant's Motion to Compel Interrogatory Answers and Documents. Pursuant to Local Rule 7-1(b), this Court deemed the matter submitted on May 4, 2005. However, after further review of the parties' papers, this Court deemed it beneficial to have oral arguments on the motion. The motion was heard on June 13, 2005. For the reasons set forth below, Plaintiffs' Motion to Vacate Special Master's Order is DENIED.

#### II. BACKGROUND

Plaintiffs allege that Cisco and its top officers and directors, and its accountants issued a serious of false and misleading public statements regarding Cisco's

accounting, financial results, business and prospects, all in violation the federal securities laws. Plaintiffs allege that the false and misleading statements artificially inflated Cisco's stock price throughout the Class Period to $ 82 per share. Plaintiffs allege that while the stock price was inflated, the Individual Defendants dumped over $ 609 million of their personal Cisco [*7] stock, which was 73% of their holdings. After the Individual Defendants sold their stock, on February 6, 2001, Cisco announced its financial results for the fiscal 2001 second quarter, which allegedly caused Cisco's stock to fall 17% on a volume of 279 million shares. The Complaint alleges all Defendants violated § 10(b) of the Exchange Act, *15 U.S.C. § 78j(b)*, and SEC *Rule 10b-5* promulgated thereunder; that Defendants Cisco and Chambers violated § 20(a) of the Exchange Act, *15 U.S.C. § 78t(a)*, and that all the Individual Defendants violated § 20A of the Exchange Act, *15 U.S.C. § 78t-1*.

The First Amended Complaint ("FAC") filed on December 6, 2002, alleged that "over 100 persons, including former Cisco employees... and Cisco customers, providers and suppliers" furnished information for the facts contained in the FAC. (FAC P 60(d).) On November 25, 2003, this Court issued an order appointing Magistrate Judge Edward A. Infante as Special Discovery Master. Pursuant to the Order, the parties submitted a joint stipulation, which they agreed that "all orders issued by the Special Master shall have the same force and [*8] effect as if issued by a Magistrate Judge of this Court." (Stip. and Order Appointing Special Disc. Master at 4.)

During the course of discovery, Defendants served Larry Carter's First Set of Interrogatories and First Set of Request for Documents, and also Cisco System's Second Set of Requests for Documents. Plaintiffs made timely objections to the requested discovery. Subsequently, on February 3, 2005, the Defendants filed a Motion to Compel Plaintiffs to produce documents and answer interrogatories. On March 10, 2005, after oral arguments on the Motion to Compel, Special Master Infante issued an order granting Defendants' motion (the "Order"), and Plaintiffs were served with the Order on March 14, 2005. Plaintiffs filed their objections on March 28, 2005, seeking to vacate the Special Master's Order Granting Defendants' Motion to Compel on the ground that the compelled disclosure violates the work product doctrine and the protection of whistleblowers, thus "clearly erroneous and contrary to law." Thus, Plaintiffs seek to vacate the Order with respect to the following:

1. With respect to Larry Carter's Interrogatory No. 1, which seeks the "identi[ty] [of] all PERSON(s) [*9] [interviewed by plaintiffs' counsel during the course of counsel's investigations],";

2. With respect to Larry Carter's Interrogatories Nos. 2-8 and 10-13, which were modified by the Special Master to seek the identity of all persons who plaintiffs "contend have information supporting" certain allegations and the identity of all documents that "support" certain allegations;

3. With respect to Larry Carter's Interrogatory No. 9, which seeks the identity of the "ISP referenced" in plaintiffs' Complaint;

4. With respect to Larry Carter's Document Request No. 1, which seeks production of all documents provided to plaintiffs by the persons interviewed by plaintiffs' counsel;

5. With respect to Larry Carter's Document Request No. 2, which seeks production of all documents provided to plaintiffs by the persons interviewed by plaintiffs' counsel, plaintiffs';

6. With respect to Larry Carter's Document Requests Nos. 3-13, which seek production of "all documents supporting" certain allegations;

7. With respect to Cisco System, Inc.'s Document Requests Nos. 41-51, which seek production of "all documents regarding, referring to, relating to, or supporting" certain [*10] allegations;

(Pls.' Proposed Order Vacating Special Disc. Master Order.)

The Court notes that the Plaintiffs' proposed order contains language of the Special Master's Order as

interpreted by the Plaintiffs.

## III. STANDARDS

[HN1] Ordinarily, the district court reviews all objections to a special master's findings of fact *de novo* "unless the parties stipulate with the court's consent that the master's findings will be reviewed for clear error." *Fed. R. Civ. P. 53(g)(3)(A)*. The district court also reviews *de novo* all "objections to conclusions of law made or recommended by a master." *Fed. R. Civ. P. 53(g)(4)*. However, the parties in this case stipulated that "[a]ll orders issued by the Special Master shall have the *same force and effect as if issued by a Magistrate Judge of this Court.*" (Stip and Order Appointing Magistrate Judge Infante as Special Discovery Master P 3) (emphasis added). Thus, as stipulated, the proper standard of review for findings of fact by the Special Master is equivalent to a United States Magistrate Judge. See *28 • U.S.C. § 636(b)(2)* [*11] *(West 2005)*.

[HN2] Under *28 U.S.C § 636(a)*, a District Judge may overrule a Magistrate Judge's order if it is "clearly erroneous or contrary to law." *§ 636(a)*; *Fed. R. Civ. P. 72*. Moreover, pre-trial objections to matters concerning discovery are generally not considered to be dispositive since they do not resolve the case on the merits. See *Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990)*. A magistrate judge's factual determinations are subject to the "clearly erroneous" standard. *Maisonville v. F2 Am., Inc., 902 F 2d 746, 748 (9th Cir. 1990)*. Under this standard, factual findings are not clearly erroneous unless the "'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)* (citation omitted). On the other hand, a Magistrate Judge's conclusions of law are subject to the "contrary to law" standard, which amounts to a *de novo* review. *In re MTI Tech. Corp. Sec. Litig. II, 2002 U S. Dist. LEXIS 13015, 2002 WL 32344347 (C.D. Cal. June 13, 2002)* [*12] (citations omitted); see also *Anderson, 470 U.S. at 573* (citations omitted). Mixed questions of law and fact are also subject to *de novo* review. Id.

## IV. DISCUSSION

As a preliminary matter, Plaintiffs' objections to the Order are timely because they were filed "[w]ithin 10 days after being served with a copy of the magistrate judge's order." *Fed. R. Civ. P. 72*. Although Defendants argue that Plaintiffs' objections were untimely pursuant to *Rule 6(b)* because the appeal was filed after the deadline for compliance had expired, *Rule 6(b)* gives the Court wide discretion to enlarge these time limits. See *Fed. R. Civ. P. 6(b)*. Thus, this Court elects to evaluate Plaintiffs' motion on the merits.

Plaintiffs have objected to Special Master Infante's Order Granting Defendants' Motion to Compel on the ground that it was clearly erroneous or contrary to law. In particular, Plaintiffs argue that the Order compels the discovery of protected work product, which also jeopardizes the identities of the "whistleblowers."

## A. The Work Product Doctrine

[HN3] The party seeking [*13] to invoke the work product doctrine bears the initial burden of establishing that the request at issue was prepared in anticipation of litigation. *United States v. 22.80 Acres of Land, 107 F.R.D. 20, 22 (N.C. Cal. 1985)*. However, the party seeking discovery of otherwise protected work bears the ultimate burden of proving that there is a substantial need for the materials that cannot be obtained without undue hardship. *Rule 26(b)(3)*; see also *Hickman v. Taylor, 329 U.S. 495, 511-12, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*. Thus, the Supreme Court in Hickman established the "work product doctrine" in order to protect "mental impressions, conclusions, opinions, or legal theories of[opposing] attorneys" and to "prevent parties from borrowing the wits of their adversaries." *Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*; *United States ex rel. Bagley v. TRW, Inc. 212 F.R.D. 554, 559 (C.D. Cal. 2003)* (citing text). While the work product doctrine does not protect underlying factual matters that are contained in a document which is not itself discoverable, it affords a *qualified* protection from discovery all trial preparation materials prepared "in anticipation [*14] of litigation." *Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947)*; *Fed. R. Civ. P. 26(b)(3)*. If the party invoking the protection establishes the applicability of the work product doctrine, the qualified protection can be overcome by "a showing that the party seeking the discovery has substantial need of the materials," and that "the party is unable, without undue hardship, to obtain the substantial equivalent of the material by other means." *Fed. R. Civ P. 26(b)(3)*.

### 1. Interrogatories

Plaintiffs argue that the Order compels the discovery of protected work product by requiring Plaintiffs to answer interrogatories that require them to specify the identity of persons counsel selected to interview to support various allegations in their Complaint. Defendants counter that the Order only "requires Plaintiffs to identify the fact witnesses they chose to highlight in the FAC." (Cisco Def. Opp'n at 14.)

Whether the identities of the persons and the documents sought by the interrogatories are protected by the work product doctrine is unclear. While there are some generally accepted principles, [*15] there seems to be a split among the district courts on the specific issue before the Court. Moreover, both parties cite non-binding case law in support of their respective positions. n1

n1 Compare *In re Aetna Inc. Sec. Litig., 1999 U.S. Dist. LEXIS 8038, 1999 WL 354527 (E.D. Pa. 1999)* (granting defendants' motion to compel response to interrogatories seeking the identity of persons described in the complaint, where plaintiffs' objected on work product grounds and provided a list of 750 individuals with discoverable information); *In re Theragenics Corp. Sec. Litig., 205 F.R.D. 631 (N.D. Ga.2002)* (finding Aetna persuasive and granting defendants' motion to compel answers to interrogatories seeking the identities of persons the plaintiffs relied on in making allegations in the complaint); *In re Northpoint Communications Group, Inc., Securities Litigation, 221 F.Supp.2d 1090 (N.D. Cal. 2002)* (holding that when a plaintiff relied upon confidential witnesses to obtain information to meet heightened pleading requirements, the plaintiff must disclose the identities of those witnesses upon proper interrogatory); *Miller v. Ventro Corp., 2004 U.S. Dist. LEXIS 6913, 2004 WL 868202 (N.D. Cal. 2004)* (holding that a list of twenty-two confidential witnesses does not constitute work product, and even if it did, the need for information outweighs any minimal protection); with *In re MTI Technology Corp. Sec. Litig. II, 2002 U.S. Dist. LEXIS 13015, 2002 U.S. (C.D. Cal. 2002)* (finding Aetna unpersuasive and holding that the identity of the witnesses interviewed by the attorneys and linked to specific allegations in the complaint was protected by the

work product doctrine, and 71 potential witnesses was a manageable number); *In re Ashworth, Inc., Sec. Litig., 213 F.R.D. 385 (S.D. Cal. 2002)* (finding MTI persuasive and denied a motion to compel identification of witnesses who provided information that formed the basis for any allegations in the complaint based on the work product doctrine).

[*16]

[HN4] It is generally accepted that the "work product doctrine does not protect against the disclosure of facts or the identity of persons from whom the facts are learned." *Hoffman v. United Telecommunications, Inc., 117 F.R.D. 440, 444 (D.Kan., 1987)*. Specifically, parties may be compelled to disclose the identity of persons having knowledge, but may not be forced to disclose which of these individuals have in fact been interviewed. *Laxalt v. McClatchy, 116 F.R.D. 438, 443 (D. Nev. 1987)*. "When the terms of the interrogatory are not cast in terms of identification of persons with knowledge but rather in terms of the identification of persons interviewed by counsel, the work-product doctrine may be applicable." *Mass. v. First Nat'l Supermarkets, Inc., 112 F.R.D 149, 152 (D. Mass. 1986)*. The Court is persuaded by the rationale underlying this distinction; that is, "if the identity of interviewed witnesses is disclosed, the opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." *In re MTI Tech. Corp. Sec. Litig. II. 2002 U.S. Dist. LEXIS 13015, 2002 WL 32344347 (C.D. Cal. June 13, 2002)*. [*17]

The Court has read and considered both In re Aetna Inc. Securities Litigation and Miller v. Ventro, two cases which Defendants heavily relied in supporting their argument against a finding of the applicability of the work product doctrine. In holding that the identities of individuals interviewed were not work product, both courts expressed that the information sought is "relevant to the subject matter involved in the pending action" and is "reasonably calculated to lead to the discovery of admissible evidence." *In re Aetna Inc. Sec. Litig., 1999 U.S. Dist. LEXIS 8038, 1999 WL 354527, 2 (E.D. Pa. May 26, 1999)*; *Miller v. Ventro Corp., 2004 U.S. Dist. LEXIS 6913, 2004 WL 868202, 2 (N.D. Cal. April 21, 2004)* ("the identities of those individuals are highly relevant and reasonably calculated to lead to discoverable evidence."). [HN5] While it may be true that the

identities of those interviewed are relevant to the action and may lead to discoverable evidence, that alone does not make an otherwise protected work product discoverable without a showing of substantial need and undue hardship. Essentially, In re Aetna and Miller ignore the possibility that a "discussion of factual matters may reveal [*18] counsel's tactical or strategic thoughts," which is at the heart of the work product doctrine. See *Mass v. First Nat'l Supermarkets, Inc., 112 F.R.D 149.*

In applying the rationale articulated in *In re MTI Tech. Corp.* and *In re Ashworth*, with respect to Interrogatory No. 1, the Court finds that the request to "IDENTIFY all PERSON(S) referenced at page 50, lines 3-7 of the COMPLAINT" constitutes work product. Investigatory interviews that lead up the litigation clearly satisfy the "in the anticipation of litigation" requirement. However minimally the work product protection is implicated here, responses to Interrogatory No. 1 would allow Defendants to infer the importance of these witnesses, revealing Plaintiffs' legal theories and conclusion. Lines 3-7 of the Complaint state:

> These facts and the facts set forth in section (d) of other statements herein are based on the investigation of plaintiffs' counsel, which included interviews with over 100 persons, including former Cisco employees who were employed by Cisco during the Class Period in the sales, finance, manufacturing and other various divisions, and Cisco customers, providers, and suppliers and [*19] information in the public domain.

(Complaint at 50:3-7.) Examining the plain language used in the interrogatory, along with line 3-7 of page 50 of the Complaint, the Court agrees with the Plaintiffs that the interrogatory requests them to list "all persons that they interviewed during the course of their investigation." (Mot. to Vacate at 1.) The only persons referenced in the Complaint were persons that were interviewed. Defendants have chosen to frame their interrogatory in a way that specifically asks for the identification of persons interviewed by Plaintiffs' counsel, which is contrary to law. See *MTI Tech. Corp., 2002 U.S. Dist. LEXIS 13015, 2002 WL 32344347* (holding that [HN6] parties may not specifically demand the identities of witnesses interviewed or relied upon by counsel).

However, notwithstanding a finding of work product protection, under the circumstances of this case, the Court also finds that the Defendants have made the requisite showing of substantial need and undue hardship to overcome the qualified protection from the discovery of a list of persons interviewed. Due to the approaching September 30 discovery cut-off date and the long list of potential witnesses, the need [*20] for the information outweighs the minimal work product protection. See *Miller, 2004 U.S. Dist. LEXIS 6913, 2004 WL 868202* (holding that due to the timing of the case (discovery cut-off date is in approximately 4 months) and to the list of 200 potential witnesses, need for the information is established)). As noted by Defendants, In re Ashworth and In re MTI Tech. Corp. emphasized the number of potential universe of witnesses set forth in Plaintiffs' initial disclosures as a factor in determining substantial need and undue hardship. See *In re Ashworth, 213 F.R.D. at 389-90* (Unlike In re Aetna, where plaintiffs' initial disclosures listed 750 names, the 100 potential witnesses identified in this case, who are current or former employees or sales representatives of the defendant is manageable); *In re MTI Tech. Corp., 2002 U.S. Dist. LEXIS 13015, 2002 WL 32344347, at * 4* (plaintiffs' initial disclosures only identified 71 witnesses). In this case, Plaintiffs produced a list of over 1200 potential witnesses in their Rule 26 initial disclosure, which far exceeds the 750 names provided in In re Aetna. Sifting through the 496 names listed under the "Current or Former Employees of [*21] Cisco" section alone is clearly burdensome, and only hinders the development of facts to enable the Defendants to prepare a defense against Plaintiffs' claims. Accordingly, Plaintiffs are required to respond to Interrogatory No. 1.

With respect to the amended Interrogatories Nos. 2-13 which request Plaintiffs to "IDENTIFY all PERSON(S) (and all DOCUMENTS) who [Plaintiffs] contend to have information supporting" particular allegations, the Court finds that these are proper. As amended, Interrogatories Nos. 2-13 are in accordance with the general principle that [HN7] the work product doctrine does not shield the discovery of documents or people with knowledge of the facts relevant to Plaintiffs' claim. *In re Convergent Tech. Sec. Litig., 108 F.R.D. 328, 340-41 (D.C. Cal. 1985).* While the response to these interrogatories may include names of persons interviewed, it does not specifically request a list of persons interviewed by Plaintiffs' counsel. Thus, Plaintiffs are required to respond to Interrogatories Nos.

2-13.

## 2. Production of Documents

Plaintiffs also argue that the Order compelling them to produce (or identify) documents they used in preparing their [*22] Complaint would violate the work product doctrine because it "would reveal information about the attorney's mental processes in preparing the case." (Mtn. to Vacate at 15.) Defendants, however, argue that the request for production of documents "merely requires Plaintiffs to produce (or identify) documents that support or relate to various allegations made in the FAC." (Cisco Def. Resp. at 7.)

As mentioned previously, [HN8] underlying fact documents cannot be shielded from discovery. While individual fact documents may itself be discoverable, circumstances exist where the "selection and compilation of documents by counsel... in preparation for pretrial discovery" may reveal an attorney's thought processes and fall within the protection of the work product doctrine. *Sporck v. Peil, 759 F.2d 312 (3rd Cir. 1985)* (holding that grouping and selection of documents counsel used to prepare witness for deposition was protected by the work product doctrine); *James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 144 (D. Del. 1982)* (holding that a document binder compiled by counsel undiscoverable).

After reviewing the request for production of documents, the Court agrees [*23] with Defendants that the "Order requires Plaintiffs to produce documents actually referenced in the FAC or which otherwise constitute evidence supporting or relating to those allegations." (Cisco Def. Resp. at 9.) There is nothing unusual about a discovery request asking Plaintiffs to produce or identify documents relating to or supporting allegations made in their FAC. Moreover, this is not a situation where Plaintiffs are requested to produce a compilation of documents, but only documents referenced in their FAC. Therefore, Defendants are entitled to know the factual basis of Plaintiffs' claims in order to prepare for trial.

Plaintiffs also contend that the discovery requested is either publicly available to Defendants or already in Defendants' possession, and therefore, Plaintiffs have no obligation to produce requested documents. The Court, of course, does not expect Plaintiffs to produce documents to which they currently do not have access or have in their possession. However, the Court can see no justifiable reason why Plaintiffs should not produce, or at least identify, documents that support Plaintiffs' allegations in the FAC, whether they are in Defendants' possession or [*24] in the public domain. See, e.g., *St. Paul Reinsurance Co. V. Commercial Fin. Corp., 198 F.R.D. 508, 513 (N.D. Iowa 2000)* ([HN9] "It is not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record."). As the Order stated, Plaintiffs need not produce documents that have already been produced by Defendants, but only identify them by bates number. (Order at 2.) Finally, Defendants are correct in noting that Plaintiffs have not made a showing that the documents requested were prepared "in anticipation of litigation," triggering the protection of the work product doctrine. Thus, Plaintiffs are required to comply with the document requests.

## B. Whistleblower Protection

Since the Court has found that Plaintiffs' sources must be identified, it is appropriate for the Court to address Plaintiffs' assertion that such identification would violate the protections afforded to whistleblowers and informants. See infra. Specifically, Plaintiffs contend that whistleblowers face a risk of retaliation when coming forward against either a former or current employee. Although Plaintiffs recognize that informant [*25] privilege is typically reserved for governmental actions, n2 Plaintiffs nevertheless contend that the informant privilege is equally applicable in this private securities class action that serves a quasi-governmental role to prevent the disclosure of an informant's identity. (See Mtn. to Vacate at 14.) Although Plaintiffs are correct in that the enforcement of securities law has a quasi-governmental role, the Court rejects the applicability of the informant privilege. Plaintiffs have not cited any case law supporting the contention that informant privilege should be applied to civil cases. Since the whistleblower protection, as discussed below, is inapplicable to Plaintiffs' sources who consists of customers, suppliers and other third parties, their identities must be revealed.

n2 All of Plaintiffs' cases in support of the applicability of the informant's privilege arose in the context of criminal investigations. (See Plf. Obj. at 14). See 8 Wright, Miller, et al., Federal

Practice and Procedure, Civil 2d § 2019 (2d. 1994) ([HN10] "What is usually referred to as the informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.")

[*26]

The Court recognizes that [HN11] whistleblowers may need protection from retaliation. See e.g., *Mgmt. Info. Tech., Inc. v. Alyeska Pipeline Serv. Co., 151 F.R.D. 478 (D.C. 1993)* (taking into consideration the interests of unidentified whistleblowing employees when confronted with motion to compel). "Whistleblowers" are either former or current employees who provides information in an investigation against their employer. See *Hodgson v. Charles Martin Inspectors of Petroleum, 459 F.2d 303 (5th Cir. 1972)*. The Court is aware that retaliation against current whistleblowing employees may include loss of job or demotion while former whistleblowing employees may be subjected to harassment by new employers or dampen their job-searching efforts. Id. In seeking whistleblower protection to shield the disclosure of whistleblower employees, Plaintiffs bear the burden of justifying this objection. *Miller, 2004 U.S. Dist. LEXIS 6913, 2004 WL 868202, at * 9.*

Based on the Motion to Vacate and Reply submitted by Plaintiffs, the Court finds that Plaintiffs have not provided any evidence indicating that there is a real fear of retaliation from Cisco. As Defendants noted, "Plaintiffs [*27] have never provided a declaration or any other evidence even hinting that any witness has the slightest concern about retaliation," nor did Plaintiffs even refer to any witnesses as "confidential." (Cisco Def. Resp. at 20.) Furthermore, the Court is unaware of any request to enter a protective order to limit the disclosure of these witnesses' identities, which weighs against Plaintiffs' whistleblower argument. Since Plaintiffs have failed to make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," their whistleblower arguments fail.

In sum, the Court finds that the relevance of the witnesses testimony is their knowledge of the underlying facts. Thus, any examination of identified individuals shall only include what if anything they knew, and how they came to know it, but not the substance of their discussions with Plaintiffs' counsels or counsels' representatives.

**V. CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Vacate Special Master's Discovery Order.

Dated: June 21, 2005

JAMES WARE

United States District Judge

3 of 3 DOCUMENTS



Positive
As of: Dec 15, 2006

## CURTIS SHANNON, Plaintiff -against- NEW YORK CITY TRANSIT AUTHORITY and MANHATTAN and BRONX SURFACE TRANSIT OPERATING AUTHORITY, Defendants.

### 00 Civ. 5079 (RWS)

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### *2001 U.S. Dist. LEXIS 3162*

### March 17, 2001, Decided
### March 22, 2001, Filed

**DISPOSITION:** [*1] Plaintiff's motion to compel granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendant transit authorities, alleging unlawful disability-based discrimination in violation of the Americans with Disabilities Act of 1990 and the New York State Executive Law. Before the court was plaintiff's motion to compel defendants to respond to certain discovery requests, pursuant to *Fed. R. Civ. P. 37.*

**OVERVIEW:** The first discovery request directed defendants to identify all lawsuits, administrative actions, and alternative dispute resolution proceedings where violations of the Americans with Disabilities Act were alleged. The court found that the request was relevant to issues of intent, motivation, and knowledge under *Fed. R. Evid. 404(b)* Nonetheless, as worded, the court found that the interrogatory was overly broad and exceeded the bounds of relevance in some respects. Therefore, the court limited the interrogatory. The second discovery request sought copies of complaints, petitions, and grievances with allegations similar to plaintiff's. Again, the court found that the request was relevant and not unduly burdensome, but was appropriately narrowed to some degree. Plaintiff's final request sought intervention regarding several "contention interrogatories." The court found that, under the circumstances, these interrogatories were premature. Plaintiff's motion to compel responses to those interrogatories was denied with leave to renew after further discovery had occurred, including depositions.

**OUTCOME:** Plaintiff's motion to compel was granted in part and denied in part. Plaintiff's first two requests were relevant and not unduly burdensome, but were appropriately narrowed to some degree. Plaintiff's request seeking intervention regarding several contention interrogatories was denied as premature.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > General Overview*
[HN1] Answers and objections to discovery requests are as a rule to be served to together.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Privileged Matters > General Overview*
[HN2] Discovery may be had regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the

Case 1:05-cv-04622-DLI-RML   Document 87-2   Filed 12/19/06   Page 31 of 43 PageID #: 2307

Page 2
2001 U.S. Dist. LEXIS 3162, *

claim or defense of any other party. *Fed. R. Civ. P. 26(b)(1).*

*Civil Procedure > Discovery > Undue Burdens*
[HN3] A defendant cannot evade its discovery responsibility by simply intoning the familiar litany that the interrogatories are burdensome, oppressive or overly broad. The burden is on the party resisting discovery to explain its objections and to provide support therefore.

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Discriminatory Conduct*
*Labor & Employment Law > Discrimination > Disability Discrimination > Employment Practices > Discharges & Failures to Hire*
*Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Circumstantial Evidence*
[HN4] An employer's discriminatory conduct towards other employees is relevant to the issues of intent, motivation, and knowledge in an employment discrimination suit, *Fed. R. Evid. 404(b).* Evidence of ages and disability status of employees terminated by employer shortly before plaintiff terminated is relevant as circumstantial evidence of employer's intent, motivation, and knowledge.

*Evidence > Relevance > Prior Acts, Crimes & Wrongs*
[HN5] Evidence of discriminatory conduct towards other employees is relevant to establishing intent to create hostile environment.

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
[HN6] U.S. Dist. Ct., S.D. N.Y., R. 33.3(c).

**COUNSEL:** For CURTIS SHANNON, plaintiff: Irene Donna Thomas, New York, NY.

For NEW YORK CITY TRANSIT AUTHORITY, MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, defendants: Kenneth Howard Schiffrin, Brooklyn, NY.

For NEW YORK CITY TRANSIT AUTHORITY, defendant: Martin B. Schnabel, Brooklyn, NY.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION:**

MEMO OPINION

Sweet, D.J.

By Notice of Motion filed February 14, 2001, Plaintiff Curtis Shannon ("Shannon") sought an order compelling the Defendants, New York City Transit Authority and Manhattan and Bronx Surface Transit Operating Authority (collectively, the "Transit Authority") to respond to certain discovery requests, pursuant to *Federal Rule of Civil Procedure 37.* Submissions were received, and the matter was marked fully submitted on February 28, 2001.

Before turning to the merits, it is necessary to address Shannon's contention that the Transit Authority waived its right to object to the discovery requests at issue herein. This contention is based on the fact that Shannon's counsel, after orally agreeing to an extension of time for the Transit Authority to serve responses to the discovery requests, followed up with a letter to counsel for the Transit Authority stating that Shannon had not "waived any of the rights he possessed because of the late submission." Letter from Irene Donna Thomas to Kimberly Westcott of December 27, 2000. The Transit Authority [*2] subsequently served both answers and objections within the agreed-upon period for it to file its responses. [HN1] Answers and objections to discovery requests are as a rule to be served together. Under these circumstances, there was no waiver by the Transit Authority of its right to raise objections to Shannon's discovery requests.

The first discovery request as to which Shannon seeks relief is Interrogatory no. 7, which directs the Transit Authority to:

> Identify all lawsuits, administrative actions, and alternative dispute resolution proceedings where violations of the Americans with Disabilities Act were alleged against the defendants. Please state the following:
>
> a. The name of the court, agency, or neutral third-party;
>
> b. An identifying number and/or heading for the action;
>
> c. The date the action commenced; and
>
> d. The disposition.

In this action, Shannon alleges unlawful disability-based discrimination in violation of the Americans with Disabilities Act of 1990, *42 U.S.C. § 12101* (the "ADA"), and the New York State Executive Law.

In its response, the Transit Authority objected that this interrogatory was over broad, unnecessarily [*3] burdensome, and irrelevant to plaintiff's claims. n1

Under the Federal Rules, [HN2] discovery may be had:

> regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.

*Fed R Civ. P 26(b)(1).*

n1 The Transit Authority also objected that this interrogatory exceeds the scope of Local Rule 33 3, read in conjunction with *Federal Rule of Civil Procedure 33*. However, the Transit Authority has failed to explain the nature of this objection in connection with the instant motion.

[HN3] A "defendant cannot evade its discovery responsibility by simply intoning [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise D'Assurance v. Phillips Petroleum Co , 105 F R.D. 16, 42 (S.D.N.Y 1984);* see *Leumi Fin. Corp. v Hartford Accident and Indemnity Co., 295 F Supp 539,* [*4] *(S D.N.Y. 1969)* (same). The burden is on the party resisting discovery to explain its objections and to provide support therefore. See *Compagnie Francaise, 105 F R.D. at 42-43*

The Transit Authority has now amplified its objection by contending that, first, Interrogatory no. 7 is irrelevant to the potential issues in this case -- which the Transit Authority identifies as "whether plaintiff has a disability and whether his removal from the operation of buses was illegal and discriminatory" -- and second, that the request is overly burdensome given that the Transit Authority employs approximately 47,000 persons and transports millions of passengers each week on its buses and subways.

Interrogatory no. 7 seeks information regarding other proceedings in which claims of ADA discrimination were raised against the Transit Authority. [HN4] An employer's discriminatory conduct towards other em-

ployees is relevant to the issues of intent, motivation, and knowledge in an employment discrimination suit. See *Fed. R. Evid. 404(b); Epstein v. Kalvin Miller Int'l, 121 F. Supp. 2d 742, 747-49 (S D N Y. 2000)* (evidence of ages and disability status of employees terminated [*5] by employer shortly before plaintiff terminated relevant as circumstantial evidence of employer's intent, motivation, and knowledge); cf. *Waterson v. Plank Road Motel Corp , 43 F. Supp. 2d 284,* (S.D.N.Y. 1999) ([HN5] evidence of discriminatory conduct towards other employees relevant to establishing intent to create hostile environment). Thus, the Transit Authority's objection on relevance grounds is misplaced, at least in part

As for the burden issue, the Transit Authority has failed to provide sufficient specifics as to why the request, at least insofar as it is directed at proceedings involving employees, is overly burdensome. Rather, the only basis provided is an unsworn representation by counsel regarding the numbers of Transit Authority employees and passengers. Even taking these representations at face value, it is notable that no information has been provided regarding such matters as the available record-keeping systems or the estimated number of cases involved. Cf., e g., *Katt v New York City Police Dept , 1997 U S Dist LEXIS 10014, No. 95 Civ. 8283, 1997 WL 394593,* at *2-*3 (S.D.N.Y. July 14, 1997) (ordering random sample of sexual harassment complaints brought against [*6] NYPD officers rather than production of 131 files relating to such complaints identified by defendants to ameliorate discovery burden).

Nonetheless, as worded, Interrogatory no. 7 is both overly broad and exceeds the bounds of relevance in some respects. Therefore, the Transit Authority is directed: (1) to identify, for the five-year period preceding Shannon's resignation/termination, n2 all lawsuits, administrative actions, and alternative dispute resolution proceedings commenced by employees of the defendants alleging violations of the Americans with Disabilities Act; and (2) to state with respect to the aforementioned proceedings (a) the name of the court, agency, or neutral third-party; (b) an identifying number and/or heading for the action; (c) the date the action commenced; and (d) the disposition.

n2 The parties disagree as to how Shannon's employment ended.

The second discovery request as to which Shannon seeks relief is Document Request no. 3, which directs the Transit Authority to:

Produce [*7] copies of complaints, petitions, grievances, etc. by persons other than the plaintiff in any action or proceeding filed against defendants in which the allegations are similar to those of this suit.

The objections made by the Transit Authority and the arguments raised by Shannon are equivalent to those just addressed in the context of Interrogatory no. 7. Here again, the discovery request is relevant and has not been shown to be unduly burdensome, at least in part, but is appropriately narrowed to some degree. Therefore, the Transit Authority is directed to produce, for the five-year period preceding Shannon's resignation/termination, copies of complaints, petitions, or grievances by Transit Authority employees other than the plaintiff in any action or proceeding filed against the defendants alleging disability-based discrimination.

If, after the Defendants have responded as directed to the aforementioned discovery requests, Shannon believes that discovery beyond the five-year period described above is needed, then he may renew his motion in that regard.

Finally, Shannon seeks intervention regarding several "contention interrogatories." This interrogatories direct the Transit [*8] Authority as follows: "to identify defendants' opinions and contentions about its defenses that relate to facts or to the application of law to facts in this case"; "if defendants content that plaintiff does not have a disability as defined by the Americans with Disabilities Act . . . state the factual basis for this contention"; "if defendants contend that plaintiff is unable to perform the essential functions of the job previously held by plaintiff, state the factual basis for the contention"; and, "if the defendants contend that the treatment received by plaintiff was justified or legally excused in any way, state the factual basis for the contention."

The Transit Authority objects that these interrogatories are premature, under Local Civil Rule 33.3, and constitute an improper attempt to shift the burden of proof to the defendants. Shannon maintains that these interrogatories are warranted because the Transit Authority's answer to the complaint fails to state its alleged, legitimate, non-discriminatory reasons for its adverse employment action, and therefore Shannon will be forced without justification to expend valuable resources pursuing discovery as to this issue.

Local Rule [*9] 33.3 provides in relevant part:

[HN6]
At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing

party may be served unless the court has ordered otherwise.

Local Civ. R. 33 3(c).

The Transit Authority represents without contradiction that the only discovery which has occurred to date is document discovery. As of the filing of the instant motion, no depositions had been conducted. The Transit Authority's answer is, to be sure, very general, as it states in relevant part that "the complaint fails to state a claim," Answer P 22, and "Defendants' actions were taken in good faith at all times for legitimate reasons, were in accordance with federal and state law and were lawful and proper," Answer P 27. However, the matters about which the contention interrogatories inquire are properly the subject of depositions, at least in the first instance. Thus, while there is no categorical prohibition on serving contention interrogatories at a time other than thirty days before the discovery cut-off date, see *Maryland Casualty Co. v W R. Grace & Co -Conn., 1995 U S. Dist LEXIS 9337, No. 88 Civ 4337, 1995 WL 404829, [*10]* at *1 (S.D.N.Y. July 6, 1995), as the court may order otherwise, under the circumstances these interrogatories are premature. Shannon's motion to compel responses to these interrogatories is denied with leave to renew after further discovery has occurred, including depositions. n3

n3 No opinion is expressed at this time regarding any contentions raised as to the propriety of the contention interrogatories.

Therefore, for the reasons set forth above, the motion to compel is granted in part and denied in part. The Transit Authority is directed to provide the discovery ordered herein within thirty days of entry of this opinion. n4

n4 Discovery in this action is presently scheduled to close on April 1, 2001. A revised scheduling order will be issued extending the discovery period.

It is so ordered.

**New York, N. Y.**
**March 17, 2001 [*11]**

**ROBERT W. SWEET**

**U.S.D.J.**

LEXSEE 1994 US DIST LEXIS 4082

Caution
As of: Dec 15, 2006

**AYLA H. SCHBLEY, Plaintiff, v. LARRY GOULD, et al., Defendants.**

**Case No. 91-1420-FGT**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*1994 U.S. Dist. LEXIS 4082*

**March 29, 1994, Decided**
**March 29, 1994, Filed**

**DISPOSITION:** [*1] Granted in part and Denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a motion with the trial court to compel defendants to comply with discovery requests.

**OVERVIEW:** Plaintiff filed motions to compel discovery. The trial court denied in part and approved in part. It found that the first set of discovery requests, which concerned plaintiff's interrogatories was clearly unreasonable and unduly burdensome. The second set of plaintiff's discovery request did not match the motion to compel and the court was unable to determine what documents and admissions were sought. Plaintiff's third set of discovery requests was improper because the request did not comply with the requirement that requests for admission must be direct, simple and limited to singular relevant facts so that statements could be admitted or denied without explanation. The court also found that a interrogatory request, which requested criminal conviction information, was outside the scope of *Fed. R. Evid. 609*. The court ordered defendants to provide documentation of budgetary evidence if the defendants claimed that budgetary concerns were a factor in their defense.

**OUTCOME:** The court denied plaintiff's request to compel discovery on requested information that was outside the rules of discovery and the rules of evidence and ordered defendant to provide documentation in support of its defense that budgetary reasons were a factor.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*
[HN1] A party is entitled to discovery from another party of the identity and location of persons having knowledge of any discoverable matter. However, the work product rule does protect against inquiry of the identity of persons contacted and/or interviewed during an investigation of the incident in anticipation of litigation or for trial.

*Civil Procedure > Discovery > Methods > Admissions > General Overview*
*Evidence > Relevance > General Overview*
[HN2] The law is that each request for admission must be direct, simple and limited to singular relevant facts so that it can be admitted or denied without explanation.

**JUDGES:** REID

**OPINION BY:** JOHN THOMAS REID

**OPINION:**

ORDER

On February 16, 1994, plaintiff filed a motion to compel (Doc. 120-121). Defendants filed their responses on February 24, 1994 (Doc. 123, 124). No reply brief

1994 U.S. Dist. LEXIS 4082, *

was filed. Plaintiff submitted three sets of discovery requests. The court will deal with each of them in turn.

The first request for admission and follow-up interrogatories and request for production pertains to whether the court has jurisdiction over the parties and the subject matter. Defendants Doyle and Gray ("Doyle defendants") and defendants Gould, Slechta, Hoy, Fundis, Murphy, Bartholomew, Gray, Kasior, Petree, Luhman, Younger and Forsythe ("Gould defendants") have denied this request for admission. The court finds that interrogatories 1-3, following each of the requests for admissions, to be clearly unreasonable and unduly burdensome, except that plaintiff is entitled to an explanation of the basis for defendants' denials of subject matter and personal jurisdiction. Defendants shall provide this information to the plaintiff on or before April 18, 1994.

The second and third requests for admissions seek to have defendants admit or deny whether the factual allegations [*2] made by the plaintiff in his complaint, and in specific paragraphs of the complaint, are true. Such requests are totally without merit. That is the very purpose of the answer. In addition, such requests for admissions are improper in that they are not limited to singular relevant facts. Interrogatories which ask the defendant to set forth all information pertaining to their denial of these requests for admission is clearly unreasonable and unduly burdensome. Furthermore, asking for all material or information, even if not permitted under the rules of evidence, is clearly unwarranted. Therefore, defendants need not provide any further information in regards to interrogatories 1-3. The court would also note that the final pretrial order, filed February 15, 1994, supersedes the pleadings and controls the subsequent course of the litigation. *Dechand v. Ins. Co of the State of Pennsylvania, 732 F Supp. 1120, 1121 (D. Kan 1990); Hullman v Board of Trustees of Pratt Community College, 732 F. Supp. 91, 93 (D. Kan 1990),* aff'd, *950 F.2d 665 (10th Cir. 1991)*

Plaintiff also sought the production [*3] of any documents identified in the above interrogatories and any other documents which defendants might consider using in this case. Plaintiff contends that the Gould defendants have not turned over any documents; the Gould defendants claim that they have. The court will require defendants to provide to plaintiff any documents which are listed in the final pretrial order and any other documents in their possession which they might use at trial. Plaintiff shall notify defendants of any documents listed in the final pretrial order which are not in their possession; defendants shall then have 15 days to provide those documents. As to any other documents which defendants may use at trial, defendants shall provide those documents on or before May 2, 1994. Failure to provide those documents could result in the inability to admit those docu-

ments at trial. The cost of making any copies of the documents in question will be paid for by the plaintiff

The court will next take up the second set of discovery requests submitted by the plaintiff. The requests set forth on pages 11-13 of the motion to compel do not match up with the requests set forth in Exhibit #2. Pages 11-13 of the motion contains [*4] three requests for admissions, four interrogatories, and one request for production. However, exhibit #2 contains two requests for admissions and three interrogatories. None of them match at all. Plaintiff, after setting forth the discovery requests on pages 11-13, then discusses on pages 13-15 the discovery requests in exhibit #2. The Gould defendants only discuss the discovery requests contained on pages 11-13 of plaintiff's motion to compel. Therefore, the court is at a total loss to determine what are the second set of discovery requests. For this reason, the motion to compel as to the second set of discovery requests is denied.

The court will nonetheless briefly comment on interrogatory number three contained in Exhibit 2 of plaintiff's motion. That interrogatory seeks from the defendants whether they have had any communication with a list of 54 persons, and the substance of those communications. The letter from plaintiff's counsel pertaining to this interrogatory (found on page 15 of Doc. 121) states as follows:

> "Your 'answer' to Interrogatory No. 3 is utterly appalling in its contempt of the Rules. The interrogatory is easy to answer if the defendants will just read the [*5] same and truthfully respond . . . We demand full disclosure. You've furnished nothing. Whether you or anyone in your behalf has communicated with any of the listed individuals; the nature of the communication; who was present . . . that is likewise simple and straight forward and should be answered."

[HN1] A party is entitled to discovery from another party of the identity and location of persons having knowledge of any discoverable matter. However, the work product rule does protect against inquiry of the identity of persons contacted and/or interviewed during an investigation of the incident in anticipation of litigation or for trial. *Laxalt v. McClatchy, 116 F.R D 438, 443 (D. Nev 1987); Commonwealth of Massachusetts v. First National Supermarkets, Inc., 112 F.R D 149, 152-53 (D. Mass. 1986), Board of Education of Evanston Tp. v. Admiral Heating and Ventilating Inc., 104 F R.D. 23, 32 (N D. Ill 1984).* It is therefore clear that the informa-

1994 U.S. Dist. LEXIS 4082, *

tion sought in interrogatory number three is protected by the work product rule.

Therefore, defendants' objections to interrogatory number three were [*6] not "utterly appalling in its contempt of the Rules," they were in fact entirely appropriate under the Rules. The court would caution plaintiff's counsel in his use of such inflammatory rhetoric. In addition, the court would note that since the interrogatory contains 54 subparagraphs, it counts as 27 interrogatories. Thus, even if the interrogatory were valid, it, in combination with the other interrogatories, would clearly exceed the 30 interrogatories permitted by D. Kan. Rule 210(d). Plaintiff's counsel needs to be more discriminating in his use of interrogatories.

The court will now take up plaintiff's third set of discovery requests. Plaintiff has submitted four requests for admissions. Defendants have denied all four requests. Plaintiff then requests in interrogatory numbers one, two and three that defendants explain in detail the basis for the denial of any of the four requests for admissions. The court finds that the requests for admissions are clearly improper. [HN2] The law is and has always been absolutely clear that each request for admission must be direct, simple and limited to singular relevant facts so that it can be admitted or denied without explanation. *Dubin v E F. Hutton Group, Inc , 125 F.R.D. 372, 375 (S D N.Y. 1989);* [*7] see *United States v. New Wrinkle, Inc., 16 F.R.D. 35, 37 (S D Ohio 1954); Knowlton v Atchison, T & S F Ry. Co , 11 F.R.D. 62, 66 (W.D. Mo 1951)* However, none of the requests for admissions are limited to a single fact; instead, the first three seek admissions or denials of the entire body of plaintiff's complaint. The court further finds that interrogatory numbers one, two and three are clearly unreasonable and unduly burdensome and have the same defects as those set forth in the first set of discovery requests.

Interrogatory number four seeks information regarding the convictions of any of the defendants of any offense other than minor traffic offenses. No time limit is placed on the request. The interrogatory seeks information that is clearly outside the scope of *Fed.R.Evid. 609.* The motion to compel is therefore denied as to this interrogatory.

Interrogatory number five seeks the social security number of each witness and whether each witness has been convicted of a crime or misdemeanor. The request again goes beyond the scope of *Fed.R Evid. 609* insofar as criminal records are concerned. Plaintiff fails to provide [*8] any reason for needing social security num-

bers. While the scope of discovery is broad, it is not unlimited. Since plaintiff has failed to indicate how the information sought is relevant, and the court fails to see the relevance of this information, the court will not require defendants to produce this information. *Miller v Doctor's General Hospital, 76 F R D 136, 139 (W.D Okla 1977)* In addition, defendant cannot request information from the defendants that can just as easily be obtained by the plaintiff. Plaintiff cannot use discovery as a device for the other side to conduct their discovery for them.

Defendants need not respond to request for production number one since it is tied into the above interrogatories. In request for production number two, plaintiff seeks the personnel files of all defendants and witnesses listed by the defendants who have ever been employed at Fort Hays, investigative files pertaining to the plaintiff, and student handbooks in effect during the period of plaintiff's employment with Fort Hays. Defendants object because they do not have possession or control over those documents. Plaintiff should have directed such inquiry [*9] to Fort Hays State University by a Rule 45 subpoena duces tecum. The motion to compel is thus denied as to this request.

The court finds that request for production number three is a proper request. If any of the defendants are claiming that budgetary reasons were a factor in any defense or claim they make, they should provide any documentation that they may have in support of that contention. Defendants should provide any such documents on or before April 18, 1994.

Request for production number four is denied for the same reason as request for production number two. As to request for production number five, defendants deny having any such documents. If any such documents are held by Fort Hays State University, then Rule 45 should be utilized. Request for production number six is denied for the same reason as requests for production numbers two and four.

IT IS THEREFORE ORDERED that the motion to compel is granted in part and denied in part, as set forth above.

Copies of this order shall be mailed to counsel of record for the parties.

Dated at Wichita, Kansas, on March 29, 1994.

JOHN THOMAS REID, United States Magistrate Judge

LEXSEE 2006 US DIST LEXIS 29813



Analysis
As of: Dec 15, 2006

ROBERT SICURELLI et al., Plaintiffs, -against- JENERIC/PENTRON INC. et al.,
Defendants.

03-CV-4934 (SLT) (KAM)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW
YORK

*2006 U.S. Dist. LEXIS 29813*

**May 16, 2006, Decided**

**PRIOR HISTORY:** *Sicurelli v Jeneric / Pentron, Inc.,*
*2005 U.S Dist. LEXIS 38943 (E.D N Y , Dec. 30, 2005)*

**COUNSEL:** [*1]  For Dr. Robert Sicurelli, Dr., Dr.
Samuel Masyr, Dr., Plaintiffs: Bradford James Badke,
Michael S. Burling, Ropes & Gray LLP, New York, NY;
Gloria Fuentes, Ropes & Gray, New York, NY.

For Jeneric/Pentron Inc., Defendant: Andrew C. Ryan,
Cantor Colburn, LLP, South Bloomfield, CT; William J.
Cass, Cantor Colburn, LLP, Bloomfield, CT; Charles D.
Donohue, Drinker Biddle & Reath LLP, New York, NY;
Gloria Fuentes, Ropes & Gray, New York, NY.

For Pentron Clinical Technologies, LLC, Pentron Corpo-
ration, Inc., Defendants: Charles D. Donohue, Drinker
Biddle & Reath LLP, New York, NY.

For Jeneric/Pentron Inc., Counter Claimant: Charles D.
Donohue, Drinker Biddle & Reath LLP, New York, NY.

For Dr. Samuel Masyr, Dr., Dr. Robert Sicurelli, Dr.,
Counter Defendants: Michael S. Burling, Ropes & Gray
LLP, New York, NY; Gloria Fuentes, Ropes & Gray,
New York, NY.

For Coltene/Whaledent, Inc., Cross Claimant: Michael F.
Sarney, Katten Munchin Rosenman LLP, New York,
NY.

For Pentron Clinical Technologies, LLC, Pentron Corpo-
ration, Inc., Cross Defendants: Charles D. Donohue,
Drinker Biddle & Reath LLP, New York, NY.

For Jeneric/Pentron Inc., Cross Defendant: Andrew C.
Ryan, [*2] Cantor Colburn, LLP, South Bloomfield,
CT. Charles D. Donohue, Drinker Biddle & Reath LLP,
New York, NY.

**JUDGES:** KIYO A. MATSUMOTO, United States
Magistrate Judge.

**OPINION BY:** KIYO A. MATSUMOTO

**OPINION:**

**MEMORANDUM & ORDER**

MATSUMOTO, United States Magistrate Judge:

This patent infringement action has been referred to
the undersigned for general pretrial supervision. Pres-
ently before the Court is the motion of Jeneric/Pentron,
Inc., Pentron Clinical Technologies, LLC and Pentron
Corporation, Inc. (collectively, "Jeneric/Pentron") to
compel the production of certain documents, in plaintiffs'
possession. The documents were subpoenaed by Jen-
eric/Pentron from Hi-Rel Laboratories, Inc. ("Hi-Rel"),
an entity which purportedly conducted scanning electron
microscopy ("SEM") tests of Jeneric/Pentron's dental
posts which are the subject of this litigation. Specifically,
in addition to all documents and things considered by
plaintiffs' expert, Dr. Anthony Storace, in formulating his
opinion and expert report, Jeneric/Pentron seeks produc-
tion of "any and all documents and things, including . . .
photographs . . . exchanged between [plaintiffs' litigation
counsel] Ropes & Gray and Hi-Rel  .  [*3]  .  [,]" and

any and all documents that mention, refer or relate to the instant law suit or any of the parties thereto. (Doc. No. 183, Affirmation of Michael Burling, Esq. dated Apr. 3, 2006 ("Burling Aff."), Ex. D, Subpoena to Hi-Rel, Schedule A, PP4-6.)

Plaintiffs do not oppose the production of all materials considered by Dr. Storace in formulating his opinion and expert report. Instead, plaintiffs assert the work product privilege as to other documents relating to Hi-Rel's testing, specifically, testing commissioned by plaintiffs both prior to and following the commencement of this litigation. (See generally, Doc. No. 182, Plaintiffs' Memorandum of Law in Opposition to Motion to Compel ("Pls. Opp'n MOL").) Plaintiffs also dispute Jeneric/Pentron's contention that all materials prepared by or otherwise exchanged between plaintiffs and Hi-Rel, regardless of whether such materials were considered by Dr. Storace, should be produced because they have been placed "at issue." (Id. at 6-10.) Dr. Storace has declared under oath:

> I have no knowledge of the testing conducted by Hi-Rel with Dr. Sicurelli and Ropes & Gray, and I did not consider it in forming my opinions in [*4] this case. No person at Hi-Rel made reference in my dealings with them to any previous work having been performed for Dr. Sicurelli, Dr. Masyr, or Ropes & Gray. I have produced all materials that I considered in forming my opinions in the above-captioned matter.

(Burling Aff., Ex. A, Declaration of Dr. Anthony Storace dated Mar. 30, 2006 ("Storace Decl."), PP8-9.)

For the reasons set forth below, the Court finds that (i) documents relating to plaintiffs' pre-litigation SEM testing, and plaintiffs' litigation counsel's SEM testing, of Jeneric/Pentron's dental posts are protected by the work product privilege; (ii) Jeneric/Pentron has not demonstrated the requisite "substantial need" for the privileged materials sufficient to overcome work product protection; and (iii) plaintiffs have not otherwise placed such materials "at issue" so as to have waived work product protection. Accordingly, Jeneric/Pentron's motion to compel is denied without prejudice.

## DISCUSSION

The work product doctrine provides qualified protection from discovery of "documents and tangible things . . . prepared in anticipation of litigation" unless the party seeking discovery demonstrates a "substantial [*5] need

of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Fed. R. Civ. P. 26(b)(3)*. The purpose of this doctrine is to protect from disclosure materials reflecting "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Id.

## A. Applicability of the Work Product Doctrine

"[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *In Re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)*. The burden of establishing all three elements of the work product privilege rests with the party invoking the privilege. *In re Grand Jury Subpoena Dated Dec. 19, 1978, 599 F.2d 504, 510 (2d Cir. 1979)*. There is no dispute regarding the first and third prongs of this tripartite [*6] test.

With respect to the second prong -- whether the document was prepared in anticipation of litigation -- this Court has previously determined that one of the SEM tests was "commissioned by and for plaintiffs in their anticipation of litigation against Jeneric," prior to the commencement of this litigation ("pre-litigation testing"). *Sicurelli v. Jeneric/Pentron, 2005 U.S. Dist. LEXIS 42233, at *22, No. 03-CV-4934, slip op. at 13-14 (E.D.N.Y. May 3, 2005)* ("May 2005 Order"). This Court ruled that the documents relating to that test were "developed by the plaintiffs in the context of the plaintiffs' potential litigation against Jeneric . . . and [were] protected from disclosure as plaintiffs' work product and may not be disclosed . . . without plaintiffs' consent." Id.; see also *Jeneric/Pentron, 2005 U.S. Dist. LEXIS 42227, at *16, No. 03-CV-4934, slip op. at 9 (E.D.N.Y. June 16, 2005)* ("Order on Reconsideration") (on reconsideration, holding that documents relating to the results of SEM testing of dental posts commissioned by plaintiffs were work product "because the record established that plaintiffs commissioned the test to aid them in their anticipated litigation").

Moreover, the Court finds that documents relating to the results of the [*7] SEM tests commissioned by plaintiffs' litigation counsel, Ropes & Gray, LLP, and conducted during the course of litigation, also qualify as work product. A review of plaintiffs' privilege log regarding "Withheld Documents Submitted by Third-Party Hi-Rel Laboratories, Inc.," indicates that plaintiffs' litigation counsel commissioned tests in connection with the instant action on September 9, 2004, nearly one year after the filing of the Summons and Complaint on Sep-

tember 26, 2003, and that Hi-Rel provided the results of its testing to plaintiffs' counsel on or about December 9, 2004. (See Doc. No. 178, Affirmation of William J. Cass, Esq. ("Cass Aff."), at Ex. A, Privilege Log.) Accordingly, plaintiffs have satisfied the elements necessary to establish the applicability of the work product privilege to the disputed documents.

## B. Substantial Need for the Protected Documents

"Even where the applicability of the work product doctrine has been established, factual material may be ordered produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" *In re Omeprazole Patent Litig., 2005 U S Dist. LEXIS 6112, No. M-21-81, 2005 WL 818821,* [*8] *at *9 (S D N Y Feb 18, 2005)* (quoting *Upjohn Co v. United States, 449 U S 383, 400, 101 S. Ct 677, 66 L. Ed. 2d 584 (1981)); In re Grand Jury Proceedings, 219 F.3d 175, 190-191 (2d Cir 2000)* ("A party seeking discovery of attorney work-product must show substantial need, for fact work-product. As for work-product that shows mental impressions, conclusions, opinions, or legal theories of an attorney, . . . at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.") (internal citations and quotation marks omitted).

"Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, [defendant] must demonstrate that it cannot obtain the substantial equivalent of the information it seeks." *E.E.O.C. v. Carrols Corp., 215 F.R.D. 46, 52 (N D N Y. 2003)* (citing *Horn & Hardart Co. v Pillsbury Co., 888 F 2d 8, 12 (2d Cir. 1989)).* That does not mean that a party seeking the document must show an absolute impossibility, but rather that it is significantly more difficult, time-consuming or expensive to obtain the information from another source. *Securities & Exch. Comm'n. v. Thrasher, 1995 U.S Dist LEXIS 1355, 92 Civ. 6987, 1995 WL 46681,* [*9] *at *9 (S D.N.Y. Feb. 7, 1995).*

Jeneric/Pentron has not demonstrated why it could not and cannot now obtain the substantial equivalent of the information contained in the protected documents. As the Court indicated in its May 3, 2005 order, Jeneric/Pentron could have conducted its own SEM tests of its dental posts and, indeed, could have commissioned Hi-Rel to do so, just as it could have deposed the Hi-Rel employee that conducted the tests. See *Tribune Co. v. Purcigliotti, 1998 U S. Dist LEXIS 5155, 93 Civ. 7222, 1998 WL 175933 at *4 (S D.N Y Apr 14, 1998)* ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition.") (citing *Pillsbury, 888 F 2d at 12); Atlantic Richfield Co. v. Current Controls, Inc., 1997 U.S. Dist. LEXIS 13082, No. 93-CV-0950, 1997 WL 538876, at *3 (W D.N Y Aug*

*21, 1997)* (noting that the party seeking facts in a privileged document may obtain those facts through other means of discovery); *ECDC Env't v New York Marine and Gen. Ins Co , 1998 U S. Dist. LEXIS 8808, 96 Civ. 6033, 1998 WL 614478, at *15-16 (S D.N.Y. June 4, 1998)* ("[B]ecause the work product privilege does not protect the facts in that document (the privilege [*10] protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories."). It is true that other discovery devices may be more expensive or burdensome than the production of the protected documents; however, the discovery devices do provide an alternative means for Jeneric/Pentron to obtain the substantial equivalent and, perhaps more, without undue hardship and without impinging upon plaintiffs' work product. See *In re Int'l Sys. & Controls Corp , 693 F 2d 1235, 1241 (5th Cir. 1982)* (noting that although expense may be considered in determining undue hardship, "in the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product") (citation omitted)

## C. "At Issue" Waiver

Jeneric/Pentron also contends that plaintiffs have waived any claim over the Hi-Rel documents by placing their tests of Jeneric/Pentron's dental posts "at issue." (See Doc. No. 197, Jeneric/Pentron's Memorandum of Law in Support of Motion to Compel ("Def. MOL"), at 5-8.) Specifically, Jeneric/Pentron asserts that because plaintiffs, their counsel and Dr. [*11] Storace each retained Hi-Rel to conduct tests on the allegedly infringing dental posts, plaintiffs have placed at issue all of Hi-Rel's tests relative to those dental posts.

Jeneric/Pentron correctly asserts that "waiver of work product protection may result from a party's injection of an issue into the litigation that, in fairness, requires the party to disclose otherwise protected material." *Ruotolo v. City of New York, 2005 U S Dist. LEXIS 5958, No. 03 Civ. 5045, 2005 WL 823015, at *2-3 (S.D N Y. Apr. 7, 2005)* (citing *In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir 2000)).* Courts have found that an "at-issue" waiver has occurred when the following factors are present:

(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied

2006 U.S. Dist. LEXIS 29813, *

the opposing party access to information
vital to [its] defense.

*Ruotolo, 2005 U.S. Dist. LEXIS 5958, 2005 WL 823015,
at \*2-3* (citing *Granite Partners v Bear, Stearns & Co.,
Inc., 184 F R D  49, 54 (S.D N.Y 1999)).* [\*12]

While plaintiffs' assertion of work product protec-
tion is the direct result of their commencement of this
action, thus satisfying the first factor, the Court is not
convinced that, with respect to the second factor, plain-
tiffs have placed the protected documents "at issue" by
making them relevant to this case. Whether plaintiffs
have placed their pre-litigation testing and the testing
commissioned by their counsel at issue depends upon
whether that information was considered by Dr. Storace
in formulating his expert opinion and report or whether
plaintiffs otherwise intend to rely on that information.

*Rule 26(a)(2)(B) of the Federal Rules of Civil Pro-
cedure*, which governs disclosures by expert witnesses,
mandates the disclosure of, among other things, "the data
or other information *considered* by the witness in form-
ing the opinions . . . ." (Emphasis added). "[T]he re-
quirement of disclosure applies not only to information
actually relied upon by a testifying expert, but also to
information that was not relied upon, but considered by
the expert . . . ." *Schwab v. Philip Morris USA, Inc., 2006
U S  Dist  LEXIS 11047, No. 04-CV-1945, 2006 WL
721368, at* [\*13]  *\*2 (E D N.Y. Mar 20, 2006)* (citing
*Construction Indus. Servs. Corp  v  Hanover Ins. Co.,
206 F R D. 43, 50 (E.D N Y. 2001)).*

The party resisting disclosure bears the burden of
showing that an expert did not consider certain docu-
ments in forming his opinion. See *Schwab, 2006 U S
Dist. LEXIS 11047, 2006 WL 721368, at \*3* (citation
omitted). "[T]his burden cannot generally be satisfied by
the expert's representations alone . . . . The burden is met
when the documents could not have been considered by
the expert in forming his opinion, as when they are re-
viewed by the expert only after he has testified. . . . It can
also be met when the party opposing disclosure presents
the court with affidavits and deposition testimony clearly
establishing that the testifying witness never read, re-
viewed, or considered the subject documents in forming
his opinions." Id. (citations and internal quotation marks
omitted).

The results of pre-litigation testing and testing con-
ducted by plaintiffs' counsel following the commence-
ment of this action are not at issue because they could
not have been considered by Dr. Storace in forming his
opinion. Dr. Storace's declaration reflects that he was
[\*14]  not aware of the existence of other tests until
March 2006, approximately five months following the

conclusion of his work with Hi-Rel and the preparation
of his report, in November 2005. Thus, Dr. Storace could
not have "considered" these tests for purposes of *Rule
26(a)(2)(B)* disclosure requirements. (See Storace Decl.
PP5-9; Cass Aff., Ex. D, Expert Report of Anthony
Storace dated Nov. 17, 2005.)

In its reply brief relative to this motion, Jen-
eric/Pentron asserts that Roger Devaney, the Hi-Rel em-
ployee who allegedly performed the tests ordered by Dr.
Storace, as well as the pre-litigation testing commis-
sioned by plaintiffs and later by plaintiffs' counsel in
September 2004, acted as an "agent" of Dr. Storace, or as
a non-testifying expert, whose knowledge about Jen-
eric/Pentron's posts was disclosed to Dr. Storace, and
thereby informed Dr. Storace's expert opinion. Jen-
eric/Pentron contends that "Roger Devaney's prior con-
sulting relationship with Plaintiff's [sic] counsel may
have influenced the sample preparation and photography
of the FibreKor samples used in Dr. Storace's report. It is
therefore critical for Pentron to examine the extent to
which the opinion of Dr. Storace [\*15]  may have been
based on or influenced by Roger Devaney's earlier tests
and/or experiments." (Doc. No. 184, Jeneric/Pentron's
Reply Brief in Support of Motion to Compel ("Def. Re-
ply MOL"), at 7.)

While Jeneric/Pentron correctly points out that a
non-testifying expert, who "is generally immune from
discovery[,]" *Schwab, 2006 U.S. Dist. LEXIS 11047,
2006 WL 721368, at \*2*, may be subject to the disclosure
requirements of *Rule 26(a)(2)(B)* if the non-testifying
expert's opinion or knowledge informed the testifying
expert's opinion, see *2006 U.S. Dist. LEXIS 11047, [WL]
at \*3*, here, the alleged influence of Mr. Devaney on Dr.
Storace's opinion and report is speculative. None of the
cases cited by Jeneric/Pentron stand for the proposition
that documents not seen, considered nor known about by
a testifying expert need be disclosed where such docu-
ments are otherwise privileged. There is no indication
that Roger Devaney's earlier tests or experiments influ-
enced the preparation and photography of Jen-
eric/Pentron's posts discussed in Dr. Storace's report.
Instead, the record reflects that Dr. Storace provided Mr.
Devaney with detailed instructions regarding how he
wanted the tests to be conducted and how the posts were
to be photographed.  [\*16]  There is no indication that
Mr. Devaney deviated from these instructions.

With respect to the third factor in determining if
there has been an "at issue" waiver -- whether application
of the work product privilege will deny defendants ac-
cess to information vital to their defense -- the Court is
not convinced that nondisclosure of the protected docu-
ments will deprive defendants of such "vital" informa-
tion. As previously mentioned, although the documents
themselves are privileged, the underlying facts contained

therein are not, and thus, Jeneric/Pentron may avail itself of other discovery devices to obtain those facts. See *Atlantic Richfield, 1997 U S Dist. LEXIS 13082, 1997 WL 538876, at *3.*

Accordingly, the Court does not find that the record before this Court requires plaintiffs to produce documents protected by the work product privilege. To the extent Jeneric/Pentron has not received any Hi-Rel documents related to Dr. Storace's requested tests, all such documents shall be produced within one week of the date of this order. Of course, if plaintiffs intend to rely on the protected documents, they shall be timely provided to all parties. At present, however, plaintiffs have not indicated that [*17] they will rely on the documents they now claim are privileged.

**D. Admissibility of Evidence**

The parties also dispute the admissibility of certain evidence which may be proffered at trial, including but not limited to Dr. Storace's report. (See Def. Reply MOL,

at 2-5; Doc. No. 187, Plaintiffs' Sur-Reply Brief in Opposition to Motion to Compel, at 1-7.) The Court declines to make any determination as to the admissibility of evidence at trial at this stage in the litigation. The parties may make any motions regarding the admissibility of evidence at trial before the trial court at the appropriate time.

**CONCLUSION**

For the foregoing reasons, Jeneric/Pentron's motion to compel is denied without prejudice.

**SO ORDERED.**
Dated: May 16, 2006

Brooklyn, New York

/s/

KIYO A. MATSUMOTO

United States Magistrate Judge