

# OSEN & ASSOCIATE, LLC

**ATTORNEYS AT LAW**
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400 FACSIMILE 201.265.0303
WWW.OSEN.US

January 21, 2007

**VIA ECF AND EXPRESS MAIL**

Honorable Kiyo A. Matsumoto
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>   Re:  *Strauss v. Credit Lyonnais, S.A.*, 06 CV 702 (CPS)(KAM)
>   *Weiss v. National Westminster Bank, Plc.*, 05 CV 4622 (CPS)(KAM)
>
>   **Response to Defense Counsel's January 19, 2007 Letter to Chambers**

Dear Judge Matsumoto:

    We represent the Plaintiffs in the two above-referenced cases and write in response to Mr. Blackman's January 19, 2007 letter. We did not receive a copy of Mr. Blackman's letter until 6 pm EST on Friday night and are troubled that defense counsel once again chose to directly involve Your Honor in routine discovery disagreements, rather than comply with its meet-and-confer obligations as required under this District's Local Rules. Below we: (1) clarify and correct Mr. Blackman's characterization of our positions; and (2) request that the Court convene an in-person, transcribed Local Rule 37.3(c) conference, in order to avoid any further confusion.

    Following our January 18, 2007 letter requesting clarification of Your Honor's January 12, 2007 minute Order, and Your Honor's responsive January 18 minute Order, at approximately 11:30 a.m. on Friday morning we e-mailed defense counsel a letter (the "First January 19 Letter"), a copy of which will be provided to Your Honor under separate cover as Exhibit "A."[1] The First January 19 letter:

(1) provides defense counsel the names of the eleven prisoners in Israeli custody we explored deposing;

(2) provides names and contact information for those Israeli Prison Service ("IPS") officials Plaintiffs dealt with in connection with the exploration referenced above;

---

[1] Exhibit "A" is provided under separate cover because both the First January 18 Letter and its appendix were filed as "Highly Confidential" pursuant to the Protective Order in these cases.

(3)   provides (under separate cover) documents in Plaintiffs' possession concerning the eleven named individuals;

(4)   confirms that, as is our obligation, we will produce any additional relevant documents we received concerning the eleven individuals;

(5)   confirms that we have not received any documents from the IPS; and

(6)   advises defense counsel that should any prisoner depositions proceed, they may need to be cross-noticed in the Arab Bank plc cases pending before Judge Gershon.

Importantly, the First January 19 Letter does *not* represent it is - - and cannot be reasonably interpreted to be - - our final response to the January 12 or January 18 minute Orders' requirements. Instead, the First January 19 Letter only addresses the *discrete* issue of prisoner and IPS related issues. As I indicated to opposing counsel, Plaintiffs do not read the January 18 minute Orders to be dispositive of Defendants' pending motions to compel responses to their previously-denoted "Interrogatory No. 1" requests for the identity of individuals who provided or participated in obtaining the documents listed in Defendants' document requests.

Virtually contemporaneous with our receipt of Mr. Blackman's premature letter to Your Honor, we, in fact, sent defense counsel an additional letter on Friday evening (the "Second January 19 Letter", attached hereto as Exhibit "B"). The Second January 19 Letter, *inter alia*:

(a)   sets forth our position regarding defense counsel's entitlement to the identities of "all" Israeli officials under Fed. R. Civ. P. 26's relevancy standards, together with work-product issues, and observes that work-product issues are briefed and await argument and adjudication;

(b)   confirms that, notwithstanding defense counsel's accusations, in accordance with the January 18 minute Orders, we intended to respond fully regarding further document production, subject to additional consultation among Plaintiffs' counsel on issues set forth below;

(c)   describes in detail the status and volume of Plaintiffs' document production;

(d)   explains that Plaintiffs must review the records they produced in the Arab Bank case for relevancy purposes, and further explains that Plaintiffs cannot immediately produce records in our possession that have been: (i) provided by Arab Bank; or (ii) provided by other plaintiffs' counsel in related actions against that bank, due to the presence of a Protective Order for those cases; and

(e)   responds that Plaintiffs did not notify defense counsel of the possibility of depositions in Israeli prisons in order to "scare" defense counsel as they contend,

but, as represented to Your Honor on January 12, 2007, was done as a courtesy given the inherent and obvious logistical difficulties attendant to depositions in prisons overseas.

With Your Honor now having the benefit of the entire correspondence between the parties, we respectfully submit Mr. Blackman's letter to the Court is the latest example of a pattern of conduct seeking to involve the Court before Plaintiffs even have an opportunity to fully address discovery disputes. We also believe that review of the Second January 19 Letter demonstrates that Plaintiffs:

(I) obviously intend to timely provide Defendants with relevant, non-privileged discovery as they are obliged to under Rule 26, but need not and should not provide information irrelevant to the parties' claims or defenses, let alone work-product. This obviously includes requests "for the identity of individuals who have provided or participated in obtaining the documents" – as set forth in Defendants' pending motions to compel, which have been extensively briefed by the parties; and

(II) have provided defense counsel with a detailed and timely update as to the status of further document production, including highlighting specific, complex logistical and confidentiality issues triggered by the Arab Bank litigation. As stated in the First January 19 Letter, we will communicate further specifics to defense counsel this Tuesday.

Accordingly, we respectfully submit that, unless Your Honor regards the January 18, 2007 minute Orders as a ruling on Defendants' pending motions to compel, the timing, volume and logistics of routine document production should be discussed –and whenever possible – resolved by the parties through *civil*, good faith dialogue. There is no need to resort to satellite motion practice-by-letter.

However, we also respectfully (and regrettably) submit that given defense counsel's continued aggressiveness in connection with the Local Rule 37.3(a) meet-and-confer process, combined with its barely disguised insinuations regarding Plaintiffs' counsel's conduct -- whether in connection with possible prisoner depositions or the discovery process generally - the Court should convene an in-person, transcribed Rule 37.3(c) status conference, rather than extend what has devolved into a letter-writing campaign. Convening an in-person conference will help clarify the record, document the parties' positions on these issues, and permit the Court to pose any further questions to counsel necessary to craft any appropriate relief. By this letter we request that Your Honor convene such conference at your convenience.

We thank the Court for its consideration.

Respectfully yours,

Gary M. Osen

Enclosure

cc: All counsel (via electronic mail and ECF).

# Exhibit A

DELIVERED BY EXPRESS MAIL
[CONTAINS HIGHLY
CONFIDENTIAL MATERIALS]

# Exhibit B



## OSEN & ASSOCIATE, LLC

ATTORNEYS AT LAW
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400  FACSIMILE 201.265.0303
WWW.OSEN.US

January 19, 2007

**VIA ELECTRONIC MAIL**

Lawrence Friedman, Esq.
Jonathan Blackman, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Place
New York, New York 10006

RE:   *Strauss, et al. v. Crédit Lyonnais, S.A., 06 CV 702 (CPS)(KAM)*
      *Weiss, et al. v. National Westminster, Plc, 05 CV 4622(CPS)(KAM)*

**Follow up to telephone conversation of even date**

Dear Messrs. Friedman and Blackman:

I write to follow-up on your telephone call to me earlier today.

As a preliminary matter, notwithstanding the emotionally-charged nature of these cases, and the serious allegations against your clients, it still behooves you to address points of disagreement with Plaintiffs' counsel in a courteous and respectful manner. That includes allowing me to respond to what I perceive as misapprehensions and errors on your part, rather than bellowing at me that I may not speak until you are done speaking. That is both juvenile and unproductive. It is also contrary to the letter and spirit of our meet-and-confer obligations. In the past, you chose to write directly to the Court in contravention of the Local Rule's meet-and-confer obligations; telephoning me and proceeding to dictate to me when I am permitted to speak is equally unacceptable. Although you doubtlessly perceive the conversation differently, I am hopeful that we can set aside past practice and approach these sorts of issues in a cooperative fashion that will not require me or my co-counsel to terminate future discussions.

With that predicate, this letter is my attempt to clarify our position on certain discrete items discussed (to at least some extent) on the call.

First, we disagree with your suggestion that we are obligated to reveal to you the identities of every Israeli official (if any) we have communicated with in the course of our continuing investigation. It is axiomatic that Plaintiffs' (indeed any parties') discovery obligations require only that the parties disclose relevant information as relevancy is defined under Fed. R. Civ. P. 26. As I stated to you on the call, the work-product issue is fully briefed and awaiting argument and adjudication by Judge Matsumoto.

Second, your accusation that we have not complied with Judge Matsumoto's January 18, 2007 Minute Order is meritless. That Order requires simply that: (1) we provide you with those materials we are logistically able to today; and (2) we also apprise you of the remaining universe of documents today. Given that you contacted me at 12:30 p.m. EST today, I find it (to put it mildly) odd that you would suggest we are not in compliance with yesterday's Order. Moreover, given my

Lawrence Friedman
Jonathan Blackman
January 17, 2007
Page 2 of 2

explanation today of the logistical difficulties we are experiencing in making certain that we are representing the count correctly, professional courtesy suggests that you accede to our reasonable request that you permit us until next Tuesday to follow-up with you.

Third, as you know, to date Plaintiffs have produced to you a total of 5,898 documents We can also advise you that in the related Arab Bank cases, my clients have, to date, produced approximately 8,980 pages of liability documents, and approximately 3,700 pages of damages documents. Many, although not all, of the documents we've produced in the Arab Bank case were sent to you in our earlier production. As I stated on the call, it is not our intention to perform a "document dump", inundating you with reams of material irrelevant to the cases. To that end, we are presently reviewing the materials we produced in the Arab Bank case in order to assess if the materials are relevant for these cases. We are also reviewing a smaller subset of materials that may be specifically germane to these cases. We hope to complete that review and produce that subset in the next 10 days.

Fourth, we have also been provided with thousands of pages of documents by defendant Arab Bank as well as numerous documents produced by other plaintiffs' counsel in related cases. Although we do not believe many of the documents are relevant for your clients, we have no issue in principle in producing all of these documents to you. However, as you are likely aware, the Arab Bank cases, like these cases, are under the aegis of a protective order, a copy of which is enclosed herewith. *Inter alia*, that protective order prevents us from unilaterally producing these materials to you. Paragraphs "4", "5", "12", "13" and "14" of the Protective Order establish specific procedures for disclosure of Confidential or Highly Confidential material to persons or entities who are not parties to the litigation, and, at a minimum, obligate us to discuss the issue with Arab Bank's counsel and other plaintiffs' counsel in advance of production.

Finally, I take strong exception to your suggestion that we wrote to you regarding possible prisoner depositions because it would "scare" you or your clients. Cleary Gottlieb is an large general practice law firm with a criminal defense practice; I trust your criminal defense lawyers are quite familiar with prisons the world over, and also understand that dealing with any prison bureaucracy inherently presents logistical and scheduling challenges, whether it is meeting with a client before the evening "count" at the Eastern District's MCC facility, or arranging for a deposition in an Israeli prison.

With the proviso that I expect and insist that all conversations be civil and professional, my colleagues and I remain prepared to discuss these matters with you with the aim of facilitating an efficient, fair, and cooperative discovery process. As noted above, I will contact you Tuesday.

Sincerely,

Gary M. Osen /s/

cc: All counsel