

# OSEN & ASSOCIATE, LLC

**ATTORNEYS AT LAW**
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400  FACSIMILE 201.265.0303
WWW.OSEN.US

December 17, 2007

**BY ECF**

Honorable Kiyo A. Matsumoto
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:**  ***Strauss, et al. v. Credit Lyonnais, S.A.*, 06 CV 702 (CPS)(KAM)**
> ***Weiss, et al. v. National Westminster Bank, Plc.*, 05 CV 4622 (CPS)(KAM)**
> ***Faudem, et al. v. Credit Lyonnais, S.A.*, 07 CV 1774 (CPS)(KAM)**
> ***Faudem, et al. v. National Westminster Bank, Plc.*, 07 CV 1775 (CPS)(KAM)**

Dear Judge Matsumoto:

We represent plaintiffs in the above-referenced actions (referred to collectively herein as the "*Strauss/Weiss/Faudem* plaintiffs"). As directed by the Court's November 27, 2007 Order, attached are the *Strauss/Weiss/Faudem* plaintiffs' proposed orders for these cases, coordinating them with the *Wolf v. Credit Lyonnais, S.A.*, and *Applebaum v. National Westminster Bank, Plc* cases (hereinafter: "*Wolf*" and "*Applebaum*") also pending before this Court. As Your Honor is aware, undersigned counsel does not represent the *Wolf* or *Applebaum* plaintiffs. Despite good faith meet and confer sessions with both defense counsel and *Wolf/Applebaum* plaintiffs' counsel, we were unfortunately unable to arrive at universally agreed-upon coordination orders, although all parties do agree on certain points. Below, we set forth why we believe the *Strauss/Weiss/Faudem* plaintiffs' proposal is balanced, sensible, protects all parties' interests and should therefore be entered.

As Your Honor is aware, the *Strauss* and *Weiss* complaints were filed more than a year before the *Wolf* and *Applebaum* cases. Indeed, by the time those later complaints were filed (duplicating, almost verbatim, our claims and allegations), the *Strauss* and *Weiss* plaintiffs, at considerable time and expense, had already succeeded in sustaining their respective complaints following extensive motion practice under Fed. R. Civ. P. 12(b)(6), and had fully briefed their opposition to defendants' objections to production on the grounds of English and French bank secrecy. In short, the *Wolf* and *Applebaum* cases are classic examples of copycat "tag-along" actions with their consequent free-rider problems.

Our goal is to address this concern proactively at the outset rather than return to the court every time labor, work product or cost sharing issues arise in the future. Our submissions

attempt to balance the efficiencies of coordination with the divergence of both the procedural postures of the cases and the litigation strategies of the parties. Thus, to the extent the plaintiffs agree to cooperate and share in the costs of litigating these claims, our proposed orders permit them to do so. To the extent, however, they elect not to participate in each others' strategies and efforts, our draft orders provide for coordination, but allow all parties to preserve some measure of independence with respect to their tactical and strategic goals in prosecuting (or defending) the litigations, including making independent judgments as to what level of cost or expense they will agree to assume. Particularly in the mass tort context, federal courts recognize that expense issues, and the problems of "free riders," are real, and thus deserve this sort of careful treatment.[1]

To be clear, we are not insisting that the *Wolf* and *Applebaum* plaintiffs contribute to a common-case expense fund, nor are we taxing the Court with evaluating what an appropriate budget should be for prosecuting each of the cases. Instead, our proposed orders simply preserve reasonable autonomy and decision making for all parties, while at the same time preserving confidentiality designations as reflected in the prior Protective Orders entered in *Weiss* and *Strauss*.

We are mindful of Your Honor's stated preference for the two plaintiff groups to try and arrive at common case management orders that would (hopefully) be acceptable to defendants. To that end, we engaged in several good-faith discussions with both defendants and the *Wolf/Applebaum* plaintiffs' counsel, and provided them all with the opportunity to review and comment on draft versions of the attached proposed Orders. In those discussions we explained that the draft orders' provisions had two principal goals, namely: (1) to reflect the materially distinct procedural postures of the two groups of cases; and (2) to afford both plaintiff groups a present and future ability (but not obligation) to share in costs and division of labor as the cases progress. However, other than stating in broad terms a willingness to split costs for certain expert witnesses and translations, *Wolf/Applebaum* counsel (who have submitted their own draft Orders and adopted defendants' subsequent drafts) declined to address specifically testifying experts, non-testifying experts, proprietary data, investigative opinion and fact work product, or documents (including documents our plaintiffs have produced, or documents that the defendants have produced). For example, if we were hypothetically to retain a consulting expert in the form

---

[1]      *See In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 659 (E.D. Pa. 2003) ("In addition to case-management matters and the taking of discovery, designated counsel conferred a benefit on the tag-along actions through their preparation and argument of the class certification motions. In the favorable rulings of this Court and the Court of Appeals on the class action motions, the tag-along plaintiffs obtained the benefit of the *imprimatur* of those courts on the theory of the case formulated by class plaintiffs and adopted in the tag-along actions."); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 309-311 (1st Cir. 1995) (existence of plaintiffs' counsel steering committee required individually retained plaintiffs' attorneys "not merely to go along for a free ride but to earn their keep"). *Compare Bd. of Ed. Of Evanston T'ship Dist. No. 202 v. Admiral Heating and Ventilation, Inc.*, 525 F. Supp. 165, 167 (N.D. Ill. 1981) (liaison counsel should not act substantively for a party that has not employed him, nor should court expect counsel to do so); *Acevedo-Garcia v. Vera-Monroig, Inc.*, 204 F.R.D. 26, 30 (D.P.R. 2003) (In mass tort civil rights discrimination case, ordering severance of actions into four trials under Rule 21 and 42, and observing "[t]he consideration alleged by Defendants as to the fact that they would have to present evidence at four different occasions is of secondary importance.").

of a forensic accountant to evaluate account records, or if we obtained extrinsic evidence useful on cross examination, counsel for the *Wolf/Applebaum* plaintiffs appear to expect they can use testimony elicited, or documents obtained, without contributing to the cost of retaining the consultant, or obtaining the evidence. This would be patently unjust, and, absent addressing these issues in the Orders, leaves too much for future disputes that the Court would surely be asked to resolve.

Moreover, this "free rider" problem extends beyond experts, proprietary data or investigative opinion. *Wolf/Applebaum* plaintiffs' counsel have also proposed that they file their brief in opposition to defendant's motion for a protective order in the *Wolf* case only after the *Strauss/Faudem* plaintiffs file their brief, stating that they would likely "adopt and incorporate by reference" our arguments. Consistent with our past experience, *Wolf/Applebaum* counsel appear to believe that they are entitled to "piggyback" off *Strauss/Weiss/Faudem* counsels' labors and analysis, from the considerable pre- and post-filing investigative work product to ongoing efforts involved in myriad aspects of prosecuting these cases.[2]

Our proposed orders also comport with, and are clearly not prejudicial to, defendants' interests. The need for compartmentalization of aspects of these cases stems, in part, from

---

[2]    *In re Linerboard*, cited in n.1 above, demonstrates why the *Wolf/Applebaum* plaintiffs' approach is inequitable and unreasonable. In *Linerboard*, class counsel sought an order that sequestered funds out of recoveries achieved by opt-out plaintiffs who thereafter brought independent tag-along suits. In granting the motion, the court held that class counsel had conferred a common benefit upon the tag-along plaintiffs, detailing at length the complex issues class counsel had successfully briefed and argued, to the benefit of the tag-alongs. *Id.*, 292 F. Supp. 2d at 659-661. Importantly, the *Linerboard* court recognized that the considerations which informed its common benefit analysis were not unique to the class action context, noting:

> That the party in a situation like the present neither purported to sue for a class nor formally established by litigation a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements of the kind for which the petitioner in this case appealed to the chancellor's discretion.... Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. *But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.*

*Id.* at 654-55 (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939) (emphasis added)).

Here, the *Strauss/Weiss/Faudem* plaintiffs are making a modest and reasonable request that the *Wolf/Applebaum* plaintiffs not be permitted, absent cost-sharing, to piggyback upon the labors of others. The legal and factual issues in these cases are extraordinarily complex, often international in dimension. This results in considerable expense and consumes countless hours of attorney, paralegal, consultant and expert time. Absent our work product, *Wolf/Applebaum* counsel would either have to research and brief the issues themselves, or pay to outsource the briefing to another law firm. There is no logical reason why we should serve that role for the *Wolf/Applebaum* plaintiffs without at least reimbursement and some modicum of compensation. Indeed, we respectfully submit that, if the Court adopts our proposed Orders, that will help avoid the sort of heated collateral motion practice that occurred in *Linerboard*.

Honorable Kiyo A. Matsumoto
**December 17, 2007**
**Page 4 of 4**

defendant CL's tactical decision to seek a protective order with respect to the *Wolf* plaintiffs for materials CL produced earlier in *Strauss*. In the event that Your Honor concludes that the *Wolf* plaintiffs are not entitled to documents, any case management order must logically reflect that distinction.[3] Defendants' counsel raised some concerns that our approach to depositions might results in some duplication of questioning by plaintiffs. That, however, is a consequence of defendant's motion for a protective order.[4] Moreover, our proposed orders delineate a defined (default) period of time for depositions, including reserving time for any cross-examination by defendants.

In short, we submit that the attached proposed orders reflect a careful and considered balance between coordination of the *Strauss/Weiss/Faudem* cases with the related tag along actions and the autonomy that the cases deserve, with particular care devoted to avoiding later collateral motion practice with respect to complex "free rider" issues.

We thank the Court for its consideration. Should Your Honor or Chambers have any questions, please do not hesitate to contact us.

Respectfully yours,

Joshua D. Glatter

cc:    All Counsel

---

[3]    If Crédit Lyonnais succeeds in whole or in part in its motion against the *Wolf* plaintiffs, but is unsuccessful in any respect in its *Strauss/Faudem* arguments, it would be demonstrably unfair to delay *Strauss/Faudem*-initiated depositions until the conclusion of Hague Convention procedures pursued by other plaintiffs. Other than possibly having to produce deponents a second time for deposition to different counsel (who, presumably, have their own sense of what documents or information they should present or elicit in testimony) little prejudice would result to Crédit Lyonnais. Indeed, had the *Wolf/Applebaum* plaintiffs filed their case in another District, we respectfully submit that defendants' concerns would be largely irrelevant. Here, ample coordination is possible without sacrificing any party's autonomy, or creating undue hardship or burden.

[4]    In addition, future discovery requests from *Strauss/Faudem* plaintiffs will undoubtedly reflect information set forth in these Confidential and Highly Confidential documents that the *Wolf* plaintiffs have no guarantee of receiving, and which the *Strauss/Faudem* plaintiffs cannot produce absent Crédit Lyonnais's consent or a Court order. This is also the case for deposition testimony (including documents introduced as exhibits).