

# OSEN & ASSOCIATE, LLC

ATTORNEYS AT LAW
700 KINDERKAMACK ROAD, ORADELL, NEW JERSEY 07649
TELEPHONE 201.265.6400  FACSIMILE 201.265.0303
WWW.OSEN.US

December 18, 2007

**BY ECF and FEDEX**

Honorable Kiyo A. Matsumoto
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Strauss, et al. v. Crédit Lyonnais, S.A.*, 06-cv-702 (CPS)(KAM)
      *Weiss, et al. v. National Westminster Bank, Plc.*, 05-cv-4622 (CPS)(KAM)
      *Faudem, et al. v. Crédit Lyonnais, S.A.*, 07-cv-1774 (CPS)(KAM)
      *Faudem, et al. v. National Westminster Bank, Plc.*, 07-cv-1775 (CPS)(KAM)

Dear Judge Matsumoto:

   We represent plaintiffs in the above-referenced actions (referred to collectively herein as the "*Strauss/Weiss/Faudem* plaintiffs"), and write in response to Mr. Friedman's letter of even date. We are providing with this letter slightly modified versions of the proposed Orders that we submitted yesterday. Given the differing positions of the parties, it is confusing to refer to them as "proposed stipulations and orders". We have restyled the document as a proposed order, and inserted language that makes it clear which items were agreed upon by the parties previously. In addition, we are also providing the Court with a "redlined" version that reveals the differences in our proposal versus the Orders jointly proposed by defendants and the *Wolf/Appelbaum* plaintiffs that accompanied Mr. Friedman's letter. We would respectfully request that the Court disregard the prior proposed orders submitted yesterday and treat the enclosed as the operative *Strauss/Weiss/Faudem* proposals.

   We appreciate that Mr. Friedman does not wish to be injected into disagreements between two camps of plaintiffs' counsel. To be certain, our proposed Orders in large measure reflect differences between the two plaintiffs groups regarding appropriate case management and coordination and we respectfully direct the Court's attention to the letter we submitted yesterday for its discussion of cost-sharing and "free rider" issues.[1]

---

[1]   We also note parenthetically that the late Judge Casey entered a case management order in a mass tort cases concerning the events of September 11, 2001 that reflects recognition of cost-sharing and free rider issues, and require agreement concerning cost-sharing for document repositories, translations, and investigative work product. *See In re September 11, 2001 Attacks Litigation*, 03-MDL-1370, Case Management Order #3 at ¶¶ 19-21 (Docket No. 248, June 16, 2003). Indeed, in that case (as well as *In re September 11, 2001 Litigation*, 21-MC-97; 21-MC-101 (AK) (S.D.N.Y) pending before Judge Hellerstein), the court even approved litigation liability assessments

However, the unusual procedural posture of these cases *also* stems from defendant Crédit Lyonnais's decision to raise French foreign bank secrecy law in both sets of cases, notwithstanding Your Honor's detailed May 25, 2007 decision that rejected this objection (and CL's request that plaintiffs be compelled generally to seek discovery under the Hague Convention). Whether CL's latest motions for protective orders flow from legitimate concerns that it will be criminally prosecuted or civilly sanctioned by French authorities[2] or instead reflects a tactical litigation decision is of no moment; the fact is that CL's decision not to provide the *Wolf* plaintiffs documents already provided to the *Strauss* plaintiffs mandates the careful treatment set forth in our proposed Orders. To be clear, we do not believe any of CL's objections are well grounded, and although we are certain Your Honor will carefully consider all of the parties' submissions, we think it likely the Court will abide by its earlier decision. However, we obviously cannot predict with certainty what conclusions the Court will reach, and do not believe the *Wolf* plaintiffs stand on identical footing to our clients.[3] In light of that reality, we must assume that the *Wolf* plaintiffs may not ultimately succeed in obtaining documents our clients already possess, and we therefore crafted the Order in part to address that possibility.

We must also point out a material inaccuracy in Mr. Friedman's letter relevant to this issue. His letter states that if the Court upholds CL's objections, both the *Wolf* and *Strauss* plaintiffs will need to proceed under the Hague Convention to obtain further discovery, suggesting that the only issue at hand is whether discovery should proceed under the Hague Convention. However, CL's protective order motion seeks far more drastic relief. It requests that the Court grant CL a "**protective order permitting CL not to provide the discovery that plaintiffs seek of information covered by French bank secrecy laws.**"[4] In short CL seeks to

---

determined by a plaintiffs' executive committee. In the instant cases, given that there are only two sets of cases and not nearly as many lawyers as was the case in the September 11 litigations, there is no reason for such a complex (and inherently contentious) arrangement; our proposed orders permit but do not compel cost-sharing, and respect different tactical, strategic, and economic concerns of both plaintiff teams.

[2] We do take note of Mr. Friedman's statement at page 4 of his letter that "if the Court rules against CL, the bank will promptly provide its *Strauss* document production to the *Wolf* plaintiffs." The statement at least reasonably suggests that CL may not truly fear criminal prosecution if it ultimately decides to heed a U.S. court's direction to produce materials and disregard French directives.

[3] As we have previously observed in prior correspondence to the Court, CL did not seek relief under Fed. R. Civ. P. 59 or 60 following your Honor's earlier decision, and claims it is not seeking reconsideration of the earlier *Strauss* order now. Indeed, Local Rule 6.3 required that any such motion be made 10 days after the order denying CL's motion was entered, and that time period has long since expired. Instead, CL's objection is directed to the *Strauss/Faudem* plaintiffs Rule 30(b)(6) deposition notices and attached document requests. As such (and as will be detailed more fully in our opposition to CL's motion we have agreed to submit by January 8, 2008), we believe the "law of the case" doctrine may preclude this renewed argument directed to a second group of discovery requests. Moreover, we do not see how the *Wolf* plaintiffs are entitled to raise a similar argument.

[4] Memorandum of Law in Support of Defendant Crédit Lyonnais, S.A.'s Motion For A Protective Order (in *Strauss*) at 3. (Emphasis added.) This is also mirrored in point "II" of each brief CL filed requesting a protective order in *Wolf* and *Faudem*, which is entitled "CL IS ENTITLED TO A PROTECTIVE ORDER PERMITTING IT NOT TO PRODUCE DOCUMENTS COVERED BY FRENCH BANK SECRECY LAWS", and formally requests an order under Rule 26(c)(1) blocking production, claiming this Court's earlier order in *Strauss* was mistaken.

block further discovery responses (including document production, testimony, requests for admission, or interrogatory responses) *ab initio* to the extent such discovery violates French bank secrecy law. CL's motion also seeks to prevent the *Wolf* plaintiffs from ever obtaining documents CL *already* produced to the *Strauss* plaintiffs to the extent those records are covered by French bank secrecy. Put simply, CL wants to force all discovery through the Hague Convention, but only for requests outside the scope of its Rule 26(c)(1) application to be excused from discovery implicating bank secrecy objections. The *Strauss* plaintiffs regard the motion as borderline frivolous as to their claims, particularly in view of the fact that CL has already produced documents to the *Strauss* plaintiffs.

Furthermore, *even if* the only issue was whether future discovery should proceed via the Hague Convention, and CL was not seeking a protective order seeking to block further production (or duplicate productions to the *Wolf* plaintiffs), and *even in the unlikely event* the Court ruled that all parties should proceed through the Hague Convention, that still does not counsel in favor of CL depositions in *Wolf* and *Strauss* proceeding on an identical schedule. That is because, again, the *Strauss/Faudem* plaintiffs *already* possess documents produced by CL, and can thus commence depositions (regardless of what procedures govern them) far earlier than the *Wolf* plaintiffs. CL instead suggests <u>that discovery be delayed some unknown period of time</u> until the *Wolf* plaintiffs – tag-along copycat plaintiffs who waited over a year to cut-and-paste the allegations in the *Strauss* complaint – first obtain documents through cumbersome Hague Convention procedures. That is inequitable, unreasonable, and massively inefficient.[5]

At bottom, CL's proposal (as now supported by *Wolf* plaintiffs' counsel) does not truly seek informal "coordination" among related sets of mass tort cases, but instead suggests a muddled, unworkable "consolidation" of discovery under Rule 42(a), particularly given CL's clear position with respect to its motion for a protective order. Mr. Friedman's characterization of our proposal as "anti-coordination" is, simply stated, neither accurate nor fair.[6]

---

Because defendant has agreed in principle to an amendment of the *Strauss* complaint which adds in the *Faudem* plaintiffs, as a technical matter its motion in *Faudem* is moot with respect to documents CL <u>previously</u> produced, but remains alive in what will now be an amended *Strauss/Faudem* complaint for plaintiffs' <u>future</u> discovery requests, including the aforementioned Rule 30(b)(6) notices.

[5]  Although CL has suggested that the *Wolf* plaintiffs can subpoena those documents CL produced to the *Strauss* plaintiffs, it only will allow the *Strauss* plaintiffs to produce such documents in the event that its protective order motion is otherwise denied.

[6]  For example, Mr. Friedman grumbles that our proposed structure of depositions will result in inefficient or protracted questioning. However he suggests no alternative that will address our legitimate cost-sharing and "free rider" concerns (and although he understandably does not comment on that issue, he does not suggest they are not legitimate). Moreover, given a possibility (no matter how remote) that the *Wolf* plaintiffs may never obtain documents from CL, suggesting that the deposition can be fully consolidated is illogical. Instead, any issues concerning duplicative or repetitive testimony can be addressed when parties seek to designate any deposition testimony for trial. That is even more the case for further written discovery requests or motion practice; the *Strauss/Faudem* plaintiffs may employ confidential material in future requests or submissions, and thus can only attempt to coordinate with the *Wolf* plaintiffs; consolidated requests are a present impossibility, and there is no reason for the *Strauss/Faudem* plaintiffs to delay prosecution of their claims.

We also take note of Mr. Friedman's criticism of the second sentence of paragraph 6 of our proposed Orders (concerning application of privilege for communications concerning the litigation among plaintiffs regardless of counsel's presence). We had included that sentence in an effort to address nuances of common interest privilege among plaintiffs.[7] However, as demonstrated in the attached revised proposed Orders (discussed in the following paragraph), we have simply removed that sentence. All parties are, of course, free to assert good faith claims of privilege or protection during the course of the litigation.

We thank the Court for its consideration, and look forward to addressing these matters with Your Honor tomorrow afternoon at 3:30. Should Your Honor or Chambers have any questions, please do not hesitate to contact us.

Respectfully yours,

Joshua D. Glatter

Encls.

cc: All Counsel

---

[7] *See, e.g., Pucket v. Hot Springs School Dist. No. 23-2*, 239 F.R.D. 572, 583 (D.S.D. 2006) (common interest doctrine applied to protect from discovery communications made outside presence of attorney, to the extent that communications involved either work product or the giving or solicitation of legal advice); *Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co.*, 460 F. Supp. 2d 915, 918 (S.D. Ind. 2006) (conversations conducted among co-plaintiffs outside presence of counsel may be protected under common-interest privilege to extent such conversations reflect attorney's legal advice or mental impressions).