## CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC

PARIS

BRUSSELS

LONDON

MOSCOW

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

Writer's Direct Dial: (212) 225-2840
E-Mail: lfriedman@cgsh.com

FRANKFURT

COLOGNE

ROME

MILAN

HONG KONG

BEIJING

August 28, 2008

BY ECF AND HAND

Hon. Marilyn D. Go, U.S.M.J.
United States Courthouse
225 Cadman Plaza East, Room 1214S
Brooklyn, NY 11201

Re: Weiss v. National Westminster Bank Plc, 05-cv-4622 (CPS) (MDG)
Applebaum v. National Westminster Bank Plc, 07-cv-916 (CPS) (MDG)

Dear Magistrate Judge Go:

This firm represents defendant National Westminster Bank Plc ("NatWest") in the above-referenced lawsuits, which are scheduled for a status conference before Your Honor on Tuesday, September 9. I am writing pursuant to Your Honor's Individual Practices and Local Rule 37.3 to request that the Court grant NatWest a protective order against plaintiffs' overbroad requests for documents relating to seven entities – CBSP, IIRO a/k/a Islamic International Relief Organization, Friends of Al Aqsa, Al Taqwa Limited, ASP a/k/a Association de Secours Palestinien, Asat Trust Reg. (Lichtenstein) and Sanabil Association for Relief and Development. Plaintiffs have failed to establish that any such documents, to the extent they exist, would be relevant to any issue in these cases, or would justify the burden in searching for them that plaintiffs seek to impose.

In these actions, plaintiffs contend that NatWest is liable under the Anti-Terrorism Act (the "ATA") for injuries plaintiffs and their family members sustained in Israel in attacks that plaintiffs allege were perpetrated by HAMAS terrorists between 2002 and 2004. In particular, plaintiffs contend that NatWest is liable for their injuries because it allegedly knew that its former depositor, an English charity known as Interpal that funds humanitarian aid projects in the Palestinian territories, transferred funds Interpal had deposited into its NatWest accounts to charities in the Palestinian territories known as *zakat* committees in order to finance HAMAS terrorism, including the attacks in which plaintiffs were injured. Plaintiffs allege that Interpal and certain of these *zakat* committees are not true charities at all, but instead are fronts for financing HAMAS terrorists.

Plaintiffs allege – as they must under the ATA – that NatWest <u>knew</u> that funds transferred from Interpal's NatWest accounts to certain of these *zakat* committees would be used to finance HAMAS terrorism. For reasons I will explain to the Court separately, plaintiffs

Hon. Marilyn D. Go, p. 2

cannot possibly sustain this allegation. There is no evidence whatever that NatWest knew Interpal was financing HAMAS terrorism. To the contrary, Interpal was at the time, and remains today, a lawfully registered English charity, and the U.K. Charity Commission, established under U.K. law as the registrar and regulator of charities, twice concluded, in 1996 and 2003, that there is no basis for charging Interpal with any wrongdoing. Notably, in 2003 the Charity Commission investigated Interpal and decided that it could continue to operate as a lawful registered charity <u>after</u> the U.S. government had deemed Interpal a Specially Designated Global Terrorist, a designation that the U.K. has not adopted. And neither U.K. law enforcement authorities nor NatWest's regulators ever concluded that Interpal was financing HAMAS terrorism, nor that NatWest should close Interpal's accounts.

The reason NatWest requires a protective order is that plaintiffs are now demanding that NatWest search its files for and produce documents concerning the seven entities identified above, even though plaintiffs have failed to (a) allege any connection between NatWest and these entities, and (b) demonstrate why the extensive searches and productions already made by NatWest – including substantial account and transaction records identifying every entity that sent money to or received money from Interpal – are not sufficient. The requested documents plainly are outside the scope of permissible discovery.

Throughout discovery to date, plaintiffs have attempted to discover information relating to an ever-shifting list of entities. Their initial requests sought documents relating to 48 entities that plaintiffs alleged to be HAMAS front organizations.[1] In April, plaintiffs presented a narrowed list of 29 entities, 11 of which were not included on plaintiffs' original list, asserting that all "are directly relevant based on the document production to date." But plaintiffs provided no support for that assertion. Despite this failure, and in an effort to reach a compromise, NatWest agreed to and did search for documents relating to 11 of the 29 entities, as well as two additional entities for which plaintiffs had raised allegations in the complaint.[2] Now, apparently unsatisfied with that result, plaintiffs have insisted that NatWest perform a broader search for yet another list of 23 entities and individuals, 11 of which had not appeared on any previous search list,[3] and seven of which, as identified above, are at issue here.[4]

Plaintiffs' latest request is improper for several reasons. As noted above, plaintiffs have not identified any connection whatever between these seven entities and

---

[1] Plaintiffs' argument during a recent meet and confer that Magistrate Judge Matsumoto previously ruled that all of plaintiffs' document requests are proper ignores the indisputable fact that the rulings on which plaintiffs rely expressly state that they are only addressing document requests other than plaintiffs' Request Number 10, the one in which plaintiffs were then requesting documents concerning these types of entities. Weiss v. National Westminster Bank Plc, 242 F.R.D. 33, 38 (E.D.N.Y. 2007) ("At issue are Document Requests Nos. 1-3, 11 and 12 . . . .").

[2] Those additional two entities were also included in plaintiffs' Requests Number 8 ("Union of Good" a/k/a Coalition of Benevolence a/k/a I'Tilafu Al-Khayr) and Number 9 (Yussef al-Qaradawi a/k/a Yousuf Al-Qardawi a/k/a Yousef Al-Qaradhawi a/k/a Yussuf Al-Kardawi). NatWest has also agreed to search for documents relating to a third entity, WAMY a/k/a World Assembly of Muslim Youth.

[3] By agreement, NatWest searched for documents relating to the 13 entities in its Group Security and Fraud, Risk Management, Payment Operations and Retail departments, the locales where any such documents are most likely to be found. NatWest understands any additional searches the Court may require would also be limited to these departments. Were plaintiffs to insist on a broader search, that would increase the burden on NatWest exponentially and unjustifiably, given the remoteness of the information in question and the unlikelihood that responsive documents would be found elsewhere.

[4] By agreement, NatWest's motion concerns only these seven entities. We understand that plaintiffs may counter-move to compel discovery of documents concerning additional entities or individuals.

Hon. Marilyn D. Go, p. 3

plaintiffs' claims. Nor do plaintiffs' pleadings allege a connection between these seven entities and NatWest or Interpal. Notably, plaintiffs failed to identify any of these entities in response to NatWest's contention interrogatory number 4, which requires plaintiffs to disclose in detail "the factual bases for plaintiffs' allegations concerning (i) the identity of persons and/or entities that perpetrated the attacks that caused plaintiffs' injuries; (ii) how and in what forms and by what means such persons and/or entities received material support and/or resources from NatWest, and (iii) how and by what means such material support and/or resources proximately caused plaintiffs' injuries."[5] Instead, in their interrogatory response, plaintiffs identified only nine of the *zakat* committees or persons purportedly associated with them. As discussed above, NatWest has already searched for documents concerning all nine of those entities. In addition, NatWest has already searched and produced all documents in its files relating to Interpal; thus, to the extent documents concerning an entity also concern Interpal, NatWest has already produced those documents.

It bears emphasis that NatWest has already informed plaintiffs that, subject to the burden in doing so, it would consider searching for documents concerning additional entities to the extent plaintiffs identify those entities in supplemental interrogatory responses as having been involved in the conduct on which plaintiffs base their claims. But plaintiffs have conspicuously and tellingly refused to do so. This failure demonstrates that plaintiffs have not shown that these entities are relevant to plaintiffs' claims, and that plaintiffs' constantly morphing document requests are merely a fishing expedition.

Accordingly, plaintiffs' requests are overbroad, and NatWest is entitled to a protective order against them, to the extent they seek documents relating to the seven entities identified above.[6] Fed. R. Civ. P. 26(b)(1); see also ADL, LLC v. Tirakian, CV 06-5076, 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007) (MDG) (limiting "extremely broad" document requests to documents relating to the issue in the action); Dunkin' Donuts Franchised Restaurants, LLC v. 1700 Church Avenue Corp., CV 07-2446, 2008 WL 1840760, at *5 (E.D.N.Y. April 3, 2008) (MDG) (stating there is "no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"). Having already searched for, or agreed to search for documents relating to entities plaintiffs have alleged are relevant to their claims, NatWest should not be required to undertake the substantial and unjustifiable burden of searching for documents relating to entities plaintiffs have repeatedly failed to identify as relevant.

Respectfully,

Lawrence B. Friedman /KLO
Lawrence B. Friedman

cc: All counsel of record in all cases

---

[5] Magistrate Judge Matsumoto approved this interrogatory over plaintiffs' objection, and ordered plaintiffs "to disclose the facts and documents that support their allegations." Weiss, 242 F.R.D. at 65.

[6] Plaintiffs have stated, with respect to CBSP, IIRO, Friends of Al Aqsa, Al Taqwa Limited, ASP and Sanabil Association for Relief and Development, "[f]ive of these entities have been designated SDGTs by the U.S. government and are demonstrably relevant to plaintiffs['] allegations." This is a non-sequitur. Designation by the U.S. government alone provides no meaningful nexus to NatWest.