

## OSEN LLC
ATTORNEYS AT LAW

700 Kinderkamack Road, Oradell, NJ 07649
Telephone 201.265.6400 Facsimile 201.265.0303
www.osen.us

September 22, 2008

**VIA ECF**

Honorable Marilyn D. Go
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Weiss, et al. v. National Westminster Bank Plc,* **05-cv-4622 (CPS)(MDG)**
             *Applebaum, et al. v. National Westminster Bank Plc,* **07-cv-916 (CPS)(MDG)**
             *Strauss, et al. v. Crédit Lyonnais, S.A.,* **06-cv-702 (CPS)(MDG)**
             *Wolf, et al. v. Crédit Lyonnais, S.A.,* **07-cv-914 (CPS)(MDG)**

Dear Judge Go:

      We write on Plaintiffs' collective behalf in response to defendants National Westminster Bank, Plc ("NatWest") and Crédit Lyonnais's ("CL") (collectively, "Defendants") opposition to Plaintiffs' September 4, 2008 cross-motions to compel Defendants to produce documents and other responsive information for certain entities or individuals.[1]

      In the interest of conserving the Court's limited time, Plaintiffs will not address Defendants' extended recapitulation of their view of Judge Matsumoto's prior orders and the procedural history of these matters. We instead present several key points:[2]

---

[1]    As Your Honor is also aware, the Defendants have also filed opposition letter-briefs to two other motions to compel that Plaintiffs have filed, namely expansion of the Relevant Period for production, and production of materials concerning U.S. and Israeli watchlists. Plaintiffs incorporate herein by reference their reply letter briefs regarding those two motions.

[2]    Plaintiffs understood Your Honor to state at the last conference that further "amplification" from counsel on this issue would not be productive; nevertheless, Defendants chose to do so. Plaintiffs' counsel are, of course, prepared to again address this issue at the conference should the Court so desire. We do, however, wish to point out that the parties' course of dealing after issuance of the March 13, 2008 Order amply demonstrates that Defendants understood Plaintiffs to be seeking more than certain wire transfers for Interpal and CBSP. Specifically, following that Order's issuance, Plaintiffs requested, and Defendants agreed, to search their respective financial security units for responsive documents for records other than wire transfer records.

1. Because the fundamental issues of this case are never far removed from these discussions, we must note again that Defendants continue to misstate the elements of Plaintiffs' claims, their evidentiary burden and Judge Sifton's holdings. We are confident that the Court can assess the applicable legal standards set forth by Judge Sifton[3] without need for Plaintiffs' counsel to repeatedly correct Defendants' misstatements but will be prepared to do so again at the conference if the Court wishes.

2. Defendants have invented a new objection, claiming that Plaintiffs' motions to compel concern entities not listed in the original Requests No. 10 (attached hereto as Exhibits A and B). Defendants know perfectly well that following the March 13, 2008 status conference the parties conferred extensively in an effort to avoid motion practice on Defendants' burdensomeness objections. As part of that process – and in keeping with the fact that the original Requests No. 10 were proffered before any documents were produced by Defendants – Plaintiffs submitted a revised list of entities to defense counsel. The lists (referred to as "Schedule B" in correspondence and attached hereto as Exhibits C (NatWest) and D (CL)) removed some entities previously identified in Requests No. 10 and added additional entities that appeared more relevant in view of the document production to date. By *mutual agreement* the list of entities on Exhibit B became the *operative list*, *replacing* the original Requests No. 10. When Defendants made it clear that they were prepared to search for some but not all of the entities listed on Exhibit B, Plaintiffs offered a *further* revised list (referenced in correspondence as "Schedule A-1" and attached hereto as Exhibit E).[4] In short, *every* entity that is the subject of motion practice before this Court was identified in prior lists provided to defense counsel, and those entities were discussed extensively in multiple letters, e-mail exchanges and conference calls – all of which can be documented.

3. Defendants mislead the Court as to the nature of their actual prior document production. Defendants claim that "NatWest has searched for and produced all of the documents in its possession that concern not only Interpal, but also the 14 specific *zakat* committees and other entities and persons plaintiffs have identified in their pleadings and interrogatory responses

---

[3] *Compare, e.g., Weiss v. National Westminster Bank Plc*, 453 F. Supp. 2d 609, 625 (E.D.N.Y. 2006) ("The requirement that the defendant have specifically intended to further terrorist activities *finds no basis in the statute's language* which requires only that the defendant "knowingly provide material support or resources to a foreign terrorist organization" *but makes no mention of any specific intent*.") (Emphasis added.); *see also id.* at 629 ("However, because the statute on its face allows for liability where a defendant provides or collects funds 'with the intention that such funds be used *or* with the knowledge that such funds are to be used for terrorist purposes' *it is not necessary for plaintiffs to allege that defendant intended to transmit or receive the funds for terrorist purposes*.") (Emphasis added.); *with* Defendants' Sept. 18, 2008 letter opposing Plaintiffs' cross-motions to compel at 11 ("Instead, under the ATA, plaintiffs can pursue claims against defendants only to the extent they can prove that a bank knew its customer's transfers would be used to finance *terrorist acts* (under Section 2339B), that the bank intended these funds would be used in order to commit a *terrorist act* (under Section 2339C) and that the transfers proximately caused the attacks that are alleged to give rise to plaintiffs injuries (under both sections).") (Italics supplied, underlining in original).

[4] Defendants' claim that "the parties have never had a pre-motion meet and confer meeting with respect to these entities" is disingenuous. Although Schedule A-1 was originally proffered in connection with NatWest, not CL, both the Schedule B and Schedule A-1 lists were discussed *extensively* prior to the filing of these discovery motions in connection with *both* Defendants.

…" One of those zakat committees is the Jenin Zakat Committee (the "JZC"), an alleged HAMAS front organization specifically identified in Plaintiffs' Complaint. *See Weiss* Fifth Amended Complaint ¶ 504. In June 2006 Plaintiffs served Requests for Admissions upon NatWest (attached hereto as Exhibit F) that were addressed in Judge Matsumoto's bank secrecy ruling. One of the Requests sought authentication of a wire transfer document processed by NatWest on behalf of Human Appeal International to the JZC. Notwithstanding the Court's ruling, NatWest has neither responded substantively to the request, nor has it produced documentation regarding the JZC transaction at issue or any other wire transfers it may have processed for the JZC or any other of the "14 specific *zakat* committees" on behalf of any entity other than Interpal. Instead, NatWest responded that the "document does not relate to a transaction involving Interpal, and therefore information relating to that document is not relevant and not reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added.) In short, when defense counsel states that "NatWest has searched for and produced *all* of the documents in its possession," that statement masks the fact that NatWest arrogated to itself the right to determine what the definition of "*all*" is.

4. The central premise of Defendants' argument remains their legally unsupported assertion that entities not identified in Plaintiffs' Complaints, or set forth in Plaintiffs' early responses to certain quasi-contention interrogatories, are not relevant. In fact, case law demonstrates precisely the opposite. As held in *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, "**Discovery is not limited to the issues raised in the pleadings**." 236 F.R.D. 177, 183 (S.D.N.Y. 2006) (emphasis added) citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).[5] *See also PSEG Power New York, Inc., v. Alberici Constructors, Inc.*, 2007 WL 2687670, at *7 (N.D.N.Y. Sept. 7, 2007) ("To be relevant, the request for information must be 'germane' to the subject matter of the claim, defenses or counterclaims, though not necessarily limited by such pleadings, and is not controlled by whether it will be admissible at trial.") (Emphasis added, citations omitted.); *Weist v. E.I. Dupont De Nemours & Co.*, 2008 WL 920146, at *3 (W.D.N.Y. Mar. 31, 2008) (citing *Oppenheimer*); *U.S. ex rel Woodruff v. Hawaii Pacific Health*, 2008 WL 192980, at *6 (D. Hawaii Jan. 23, 2008) ("Discovery is not limited to the issues raised only in the pleadings, but rather it is designed to define and clarify the issues.")

---

[5] Contrary to Defendants' efforts to distort the holding in *Dunkin' Donuts Franchised Rest., LLC v. 1700 Church Ave. Co.*, 2008 WL 1840760 (E.D.N.Y. Apr. 3, 2008), as the Court well knows, that decision clearly does not stand for the proposition that discovery's boundaries are fixed by the facts alleged in a Rule 8 Complaint. In *Dunkin' Donuts* the defendants were alleged to have breached various franchise agreements with Dunkin' Donuts and thereafter improperly used plaintiffs' trademarks after the termination of the relevant agreements. The defendants sought broad discovery of all of the plaintiffs' internal business plans. Because Dunkin' Donuts' internal business plans did not "have bearing on the issue whether [plaintiffs] acted in good faith in their dealings with defendants" *id.* at *2, Your Honor concluded that defendants' affirmative defense that Dunkin' Donuts had breached their specific franchise agreement in bad faith did not entitle them to general discovery of the plaintiffs' business plans. The Court correctly observed that broader discovery should be evaluated "according to the reasonable needs of the action, ... depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." *Id.* at *1, citing Advisory Committee Notes to 2000 Amendments. The subject matter of these actions is unquestionably Defendants' material support to HAMAS. Plaintiffs have limited their requests to a discrete *subset* of notorious HAMAS entities and individuals, many of whom have been officially designated by the U.S. and other governments. These requests bear directly upon the subject matter of the action and meet this standard of evaluation.

(citing, *inter alia*, *Oppenheimer*)). *Compare In re PE Corp Sec Litig.*, 221 F.R.D. 20, 24 (D. Conn. 2003) (permitting plaintiffs to take broad discovery of facts related to defendant's relationship with third-party offering because such information concerned plaintiffs' claims under Fed. R. Civ. P. 26, and rejecting defendant's argument that demanded materials were too generic to specific conduct pled in Complaint concerning false and misleading nature of registration statement).

5. This entire six-month dispute – ironically commenced to *avoid* motion practice – began with an assertion by Defendants of undue "burden". There is no reason why the Court should allow Defendants a further opportunity to drag this seemingly endless dispute out with further arguments or proffers of burden not already made in Defendants' voluminous submissions.

Accordingly, for these reasons and those detailed in Plaintiffs' opening submissions, Plaintiffs respectfully request that the Court grant Plaintiffs' motions together with such other and further relief as may be just under the circumstances.

Respectfully submitted,

Joshua D. Glatter

Encls.

cc: All Counsel