EXHIBIT 174 TO DECLARATION OF VALERIE SCHUSTER

FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MOSES STRAUSS, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 06-cv-702 (DLI); |
| | : | |
| -against- | : | |
| | : | |
| CRÉDIT LYONNAIS, S.A., | : | |
| Defendant. | : | |
| | : | |
| BERNICE WOLF, *et al.,*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 07-cv-914 (DLI) |
| -against- | : | |
| | : | |
| CRÉDIT LYONNAIS, S.A., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT'S CONTENTION INTERROGATORIES**

Plaintiffs respond pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure to Defendant's Contention Interrogatories (the "Interrogatories"), dated January 28, 2011, as follows:

**RESERVATION OF RIGHTS**

1.      To the extent Plaintiffs answer any of the Interrogatories, they do so without conceding the materiality, admissibility or relevance of any such answers.

2.      Plaintiffs reserve all objections to the use of their responses. All such objections may be interposed by Plaintiffs at the time of trial or as otherwise required by the rules or orders of the Court.

3.     Plaintiffs reserve the right to amend, supplement or withdraw their answers and objections.

4.     Insofar as an answer by Plaintiffs may be deemed to be a waiver of any privilege or right, such waiver shall be deemed to be a limited waiver with respect to that particular answer only.

## GENERAL OBJECTIONS

Each of Plaintiffs' answers is subject to the following General Objections, and each such General Objection is incorporated by reference in Plaintiffs' answers to each of the Interrogatories as if fully set forth therein, unless such answer specifically states that it is made notwithstanding such objections (in which case such objections are reserved but not relied upon to withhold information):

1.     Plaintiffs object to all definitions, instructions and requests that purport to impose obligations beyond those required or permitted by Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3 of the Eastern District of New York.

2.     Plaintiffs object to the Interrogatories to the extent they seek information neither relevant nor calculated to lead to the discovery of admissible evidence.

3.     Plaintiffs object to the Interrogatories to the extent they are vague, ambiguous, overly broad or unduly burdensome. Specifically, to the extent that particular Interrogatories request "an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence" for central and complex issues in dispute, those Interrogatories are overly broad and unduly burdensome.  Contention interrogatories, "insofar as they seek every fact, every piece of evidence, every witness, and every application of law to fact rather than, for example, certain principal or material facts, pieces of evidence, witnesses and legal applications-supporting the identified allegations, are overly broad and unduly burdensome." *Ritchie Risk-Linked Strategies*

*Trading (Ireland), Ltd. v. Coventry First LLC*, No. 09 Civ. 1086 (VM)(DF), 2010 WL 5174749, *2 (S.D.N.Y. Dec. 7, 2010).   Contention interrogatories are intended to narrow the issues in dispute for trial or summary judgment, *Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294 PKL, 1999 WL 672902, at *1 (S.D.N.Y. Aug. 27, 1999), and many of these Interrogatories are instead clearly designed, improperly, to "[be] a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery." *Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222, 1997 WL 540810, at *1 (S.D.N.Y. Sept. 3, 1997). (internal citation omitted).

## RESPONSES TO CONTENTION INTERROGATORIES

1.   If you contend that Crédit Lyonnais knowingly provided material support or resources to HAMAS with the <u>scienter</u> necessary to render Crédit Lyonnais liable for damages to plaintiffs pursuant to 18 U.S.C. § 2333(a) as a result of Crédit Lyonnais's violation of 18 U.S.C. § 2339B(a)(1), identify with specificity the bases for your contentions, including without limitation identification of the <u>scienter</u> standard you are applying to support your contentions and an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Pursuant to General Objection No. 3, Plaintiffs object to Interrogatory No. 1 to the extent that this interrogatory requests "an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence" for Plaintiffs' contention that Crédit Lyonnais "knowingly provided material support or resources to HAMAS with the <u>scienter</u> necessary to render Crédit Lyonnais liable for damages to Plaintiffs pursuant to 18 U.S.C. § 2333(a) as a result of Crédit Lyonnais's violation of 18 U.S.C. § 2339B(a)(1)," because it is overly broad and unduly burdensome.  The issue of Crédit Lyonnais' scienter at the time it transferred funds to HAMAS-controlled organizations in the Palestinian Territories was a principal subject of the overwhelming majority of the depositions of fact witnesses in this case.  As such, this interrogatory inevitably calls for a regurgitation of "all factual information obtained in discovery."

Subject to and without waiving the foregoing Reservation of Rights and the General

Objections, Plaintiffs state that, by knowingly providing financial services to HAMAS, CL

provided material support to a designated Foreign Terrorist Organization under the Antiterrorism

and Effective Death Penalty Act of 1996 in violation of 18 U.S.C. § 2339B(a)(1), and that CL is

civilly liable for damages to Plaintiffs for their injuries pursuant to 18 U.S.C. § 2333(a).

The scienter standard for 18 U.S.C. § 2333(a) requires that CL demonstrated a "conscious

and deliberate disregard of the interest of others, in the face of a known risk." *Goldberg v. UBS

AG*, 660 F. Supp. 2d 410, 428 (E.D.N.Y. 2009) (citing *Boim v. Holy Land Foundation for Relief

and Development* ("*Boim III*"), 549 F.3d 685, 692 (7th Cir. 2008). The scienter standard for 18

U.S.C. § 2339B(a)(1) requires that CL "knowingly provide[ ] material support or resources to a

designated foreign terrorist organization." *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 586

(E.D.N.Y. 2005).

CL's conduct meets both scienter standards. Evidence to support this contention can be

found in the documents and testimony set forth in Ex. A.

2.      If you contend that Crédit Lyonnais knowingly provided material support or resources to
HAMAS with the scienter necessary to render Crédit Lyonnais liable for damages to plaintiffs
pursuant to 18 U.S.C. § 2333(a) as a result of Crédit Lyonnais's violation of 18 U.S.C. § 2339C,
identify with specificity the bases for your contentions, including without limitation
identification of the scienter standard you are applying to support your contentions and an
itemization of each and every fact and legal ground, including without limitation each and every
document, witness, deposition testimony citation and any other evidence, that you rely upon for
your contentions.

Pursuant to General Objection No. 3, Plaintiffs object to Interrogatory No. 2 to the extent

that this interrogatory requests "an itemization of each and every fact and legal ground, including

without limitation each and every document, witness, deposition testimony citation and any other

evidence" for Plaintiffs' contention that Crédit Lyonnais "knowingly provided material support

or resources to HAMAS with the <u>scienter</u> necessary to render Crédit Lyonnais liable for damages

4

to Plaintiffs pursuant to 18 U.S.C. § 2333(a) as a result of Crédit Lyonnais's violation of 18 U.S.C. § 2339C," because it is overly broad and unduly burdensome. The issue of Crédit Lyonnais' culpable state of mind at the time it transferred funds to HAMAS-controlled organizations in the Palestinian Territories was a principal subject of virtually all of the depositions of fact witnesses in this case. As such, this interrogatory inevitably calls for a regurgitation of "all factual information obtained in discovery."

Subject to and without waiving the foregoing Reservation of Rights and the General Objections, Plaintiffs further state that, by knowingly providing financial services to HAMAS, CL violated 18 U.S.C. § 2339C, and is liable for damages to Plaintiffs pursuant to 18 U.S.C. § 2333(a). The scienter standard for 18 U.S.C. § 2339C requires that CL had the "knowledge or intent that the resources given to terrorists are to be used in the commission of terrorist acts." *Linde*, 384 F. Supp. 2d at 586 n.9. That section does *not* require "the specific intent to aid or encourage the particular attacks that injured plaintiffs." *Id*. *See also Strauss v. Crédit Lyonnais S.A.*, No. CV-06-0702, 2006 WL 2862704, at *17 (E.D.N.Y. Oct. 5, 2006) ("However, because the statute on its face allows for liability where a defendant provides or collects funds 'with the intention that such funds be used or with the knowledge that such funds are to be used for terrorist purposes' it is not necessary for plaintiffs to allege that defendant intended to transmit or receive the funds for terrorist purposes.") The scienter requirement for 18 U.S.C. § 2333(a) is set out in response to contention Interrogatory No.1.

CL's conduct meets both scienter standards. Evidence to support this contention can be found in the documents and testimony set forth in Ex. A.

3. If you contend that Crédit Lyonnais is liable for damages to plaintiffs pursuant to 18 U.S.C. § 2333(a) on any ground other than as the result of Crédit Lyonnais's violation of 18 U.S.C. § 2339B(a)(1) and/or 18 U.S.C. § 2339C, identify with specificity the bases for your contentions, including without limitation identification of the scienter standard you are applying

5

to support your contentions and an itemization of each and every fact and legal ground, including without limitation each document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Subject to and without waiving the foregoing Reservation of Rights and the General Objections, Plaintiffs state that they preserve all claims previously dismissed by the Court including all claims based on common law theories of aiding and abetting and accessorial liability on appeal. However, for purposes of trial, Plaintiffs do not intend to assert that Crédit Lyonnais is liable on any theory not recognized by the Court's prior rulings in this litigation.

4.    If you contend that Crédit Lyonnais knew that HAMAS is a "designated terrorist organization," and/or that it knew HAMAS has engaged or engages in terrorist activity or terrorism, as those terms are defined in 18 U.S.C. § 2339B, identify with specificity the bases for your contentions, including without limitation an itemization of the date(s) as of which you contend Crédit Lyonnais had such knowledge and each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Subject to and without waiving the foregoing Reservation of Rights and the General Objections, Plaintiffs state that CL knew that HAMAS is a "designated terrorist organization" from at least October 8, 1997, when the United States Department of State designated HAMAS a "Foreign Terrorist Organization," and that CL knew that HAMAS engaged in terrorist activity and terrorism from at least the early to mid 1990's, when HAMAS engaged in its first widely publicized campaign of suicide bombings targeting Israeli civilians. Evidence supporting Plaintiffs' contentions can be found in the testimony and documents set forth in Ex. B.

5.    If you contend that Crédit Lyonnais knew that CBSP was providing funds to HAMAS by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation any other evidence, that you rely upon for your contentions.

The issue of Crédit Lyonnais' awareness that its customer CBSP was transferring money to HAMAS from CBSP's accounts at CL was a principal subject of the overwhelming majority

of the depositions of fact witnesses in this case.  As such, pursuant to General Objection No. 3, this interrogatory inevitably calls for a regurgitation of "all factual information obtained in discovery."  Moreover, the interrogatory is vague to the extent that CL does not provide a legal definition of "knowledge."

Subject to and without waiving the foregoing Reservation of Rights and the General and Specific Objections, Plaintiffs state that CL possessed actual knowledge or "conscious and deliberate disregard of the interest of others, in the face of a known risk" that CBSP was providing funds to HAMAS by means of transfers from its account at CL.  Evidence of this knowledge can be found in the documents and testimony set forth in Ex. A.

6.     If you contend that Crédit Lyonnais was willfully blind with respect to whether CBSP was providing funds to HAMAS by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including without limitation identification of the legal standard you are applying to support your contentions and an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

The issue of Crédit Lyonnais' awareness that its customer CBSP was transferring money to HAMAS from CBSP's accounts at CL was a principal subject of the overwhelming majority of the depositions of fact witnesses in this case.  As such, pursuant to General Objection No. 3, this interrogatory inevitably calls for a regurgitation of "all factual information obtained in discovery."  Moreover, the interrogatory is vague to the extent that CL does not provide a legal definition of "willfully blind."

Subject to and without waiving the foregoing Reservation of Rights and the General Objections, Plaintiffs state that, to the extent that CL did not actually know that CBSP was providing funds to HAMAS by means of transfers from its account at CL, this was due to CL's willful blindness (or recklessness with regard) to that fact.  Evidence supporting this contention can be found in the documents and testimony set forth in Ex. A.

7

7.     If you contend that Crédit Lyonnais knew that CBSP was providing funds for one or more acts of terrorism by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including without limitation an itemization of every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the foregoing Reservation of Rights and the General Objections, Plaintiffs also object to Interrogatory No. 7 as impermissibly vague, ambiguous, and overly burdensome since it asks about CL's knowledge that CBSP was providing funds for "one or more acts of terrorism" and nowhere defines "act of terrorism." As such this interrogatory impermissibly seeks contentions as to pure law. Subject to and without waiving the forgoing specific and general objections, and the reservation of rights, Plaintiffs state that they contend that *any* violation of 18 U.S.C. § 2339B is an act of international terrorism, *see, e.g. Goldberg v. UBS AG,* 690 F. Supp. 2d 92, 113-14 (E.D.N.Y. 2010), and that by knowingly providing financial services to HAMAS, the Defendant provided material support to a designated Foreign Terrorist Organization under the Antiterrorism and Effective Death Penalty Act of 1996, in violation of 18 U.S.C. § 2339B(a)(1).

To the extent that this interrogatory asks if Plaintiffs contend that CL knew that CBSP was providing funds for a specific terrorist *attack* or attacks through the transfers from its accounts at CL, Plaintiffs do not so contend.

8.     If you contend that Crédit Lyonnais was willfully blind with respect to whether CBSP was providing funds for one or more acts of terrorism by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including identification of the legal standard you are applying to support your contentions and without limitation an itemization of every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the foregoing Reservation of Rights and General Objections, Plaintiffs also object to Interrogatory 8 as impermissibly vague, ambiguous, and overly burdensome since it

asks about CL's willful blindness to whether CBSP was providing funds for "one or more acts of terrorism" and nowhere defines "act of terrorism." As such this Interrogatory impermissibly seeks contentions as to pure law. Subject to and without waiving the foregoing Reservation of Rights and the specific and General Objections, Plaintiffs state that they contend that *any* violation of 18 U.S.C. § 2339B is itself an act of international terrorism, *see, e.g. Goldberg,* 690 F. Supp. 2d at 113-14*,* and that by providing financial services to HAMAS and being willfully blind (or reckless with regard) to that fact, the Defendant provided material support to a designated Foreign Terrorist Organization under the Antiterrorism and Effective Death Penalty Act of 1996, in violation of § 2339B(a)(1).

To the extent that this interrogatory asks if Plaintiffs contend that CL was willfully blind (or reckless with regard) as to whether CBSP was providing funds for a specific terrorist *attack* or attacks through the transfers from its accounts at CL, Plaintiffs do not so contend.

9.    If you contend that plaintiffs have standing to seek relief from Crédit Lyonnais for the injuries they allegedly sustained, for each such plaintiff identify with specificity the bases for your contentions, including without limitation identification of the bases for your contention that such plaintiffs injuries are "fairly traceable," as that term is used in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006), to the challenged actions of Crédit Lyonnais and that Crédit Lyonnais's alleged actions "materially increase[d] the probability," as that term is used in *Huddy v. F.C.C.*, 236 F.3d 720, 722-23 (D.C. Cir. 2001), that such plaintiff would be injured, and an itemization of each and every fact and legal ground, including without limitation, each and every document, witness deposition testimony citation and any other evidence, that you rely upon for contentions.

In addition to the foregoing Reservation of Rights and General Objections, Plaintiffs also object to Interrogatory 9 to the extent that the terms: (1) "fairly traceable," as it is used in *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006); and (2) "material[] increase [in] probability," as it is used in *Huddy v. F.C.C.*, 236 F.3d 720, 722-23 (D.C. Cir. 2001), are both efforts to illustrate the general principle of causation, a requirement for constitutional standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) and neither articulation is the

9

causation standard that is applicable to this action.  *See Strauss*, 2006 WL 2862704, at *18 ("[t]aking into account the legislative history of these statutes and the purpose behind them, however, it is clear that proximate cause may be established by a showing only that defendant provided material support to, or collected funds for a terrorist organization which brought about Plaintiffs' injuries.  Congress intended these provisions to impose, 'liability at any point along the causal chain of terrorism.' S.Rep. No. 102-342 at 22.").  *Accord Boim* ("*Boim III*"), 549 F.3d at 698-700  *Goldberg v. UBS, AG,* 660 F. Supp. 2d at 429 *Linde v. Arab Bank, PLC,* 384 F. Supp. 2d  at 583.

Subject to and without waiving the forgoing specific and General Objections, Plaintiffs do, however, contend that their injuries were proximately caused by Defendant's actions.  In enacting the material support statute "Congress made an express finding of fact that, 'foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct.'" *Strauss,* 2006 WL 2862704, at *18. Plaintiffs have met the operative causation standard in this action.  As set forth in the responses to Interrogatories 11 and 13 below (and incorporated herein), Plaintiffs' evidence clearly demonstrates that Crédit Lyonnais provided material support to HAMAS, a Foreign Terrorist Organization, and the Plaintiffs were injured in attacks perpetrated by HAMAS. Moreover, Plaintiffs submit that it is entirely foreseeable that providing material support to HAMAS over a period of more than ten years, and transferring approximately $3,000,000 to HAMAS-affiliated entities during that time (*see* Reports of Wayne D. Geisser dated November 19, 2009, and August 19, 2010), materially increased the risk that Plaintiffs would be injured by HAMAS.

10.    If you contend that the injuries allegedly sustained by one or more plaintiffs were caused "by reason of" any act or omission by Crédit Lyonnais, as that term is used in 18 U.S.C. §

2333(a), identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Subject to and without waiving the foregoing Reservation of Rights and General Objections, Plaintiffs state that the phrase "by reason of," as it appears in 18 U.S.C. § 2333(a), ("[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism"), encompasses support for the Foreign Terrorist Organization(s) responsible for the "act of international terrorism" in question.  *See Strauss*, 2006 WL 2862704, at *17-18, citing *Linde*, 384 F. Supp. 2d at 585  ("holding that in order to prevail on claims under 2333(a) it was sufficient for plaintiffs to show that 'the Bank provided these services to the particular group responsible for the attacks giving rise to their injuries.'") Plaintiffs contend that their injuries were caused by reason of acts of international terrorism perpetrated by HAMAS, *see Linde*, 384 F. Supp. 2d. at 581, and because CL provided material support to HAMAS, their injuries were caused "by reason of" acts or omissions by CL which, because they are violative of 18 U.S.C. §§2339B and 2339C, are themselves acts of international terrorism.   Responses to Interrogatories 11 and 13 below (incorporated by reference herein) identify evidence supporting Plaintiffs' contentions that CL provided support to HAMAS in violation of § 2339B independently constituting acts of international terrorism, and that HAMAS in turn is responsible for acts of international terrorism in which Plaintiffs were injured and their loved ones killed.

11.    If you contend that one or more of the persons or entities to which CBSP transferred funds from the accounts it maintained with Crédit Lyonnais were at the time of such transfers *alter egos* of and/or controlled by HAMAS, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the foregoing Reservation of Rights and General Objections, Plaintiffs also object to Interrogatory 11 because it constitutes a demand for a recitation of facts and information that have already been shared with Defendant during the course of discovery. As composed, responding to this interrogatory would require Plaintiffs to, inter alia, restate literally hundreds of pages of expert written and deposition testimony and exhibits thereto, including the expert reports of Arieh Spitzen and Dr. Matthew Levitt. As such this interrogatory is also overly burdensome, oppressive, and harassing. Contention interrogatories "should not simply [be] a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery." *Tribune Co.,* 1997 WL 540810, at *1. (internal citation omitted).

Subject to and without waiving the foregoing Reservation of Rights and the Specific and General Objections, Plaintiffs state that the following counterparties, each of which CL transferred money to on behalf of its customer CBSP, were at the relevant time alter egos of and/or controlled by HAMAS:  Al-Mujama al-Islami- Gaza (the Islamic Center-Gaza); ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Tulkarem Zakat Committee (Lajnat al-Zakaa Tulkarem); Ramallah-al Bireh Zakat Committee (Lajnat al-Zakaa Ramallah wal-Bireh); Al-Islah Charitable Society-Ramallah & Al-Bireh (Jam'iyat al-Islah al-Khiriya al-Ajithamiya Ramallah wal-Bireh); ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

The testimony, reports, and exhibits of Plaintiffs' experts, particularly those of Dr.
Matthew Levitt and Arieh Spitzen, comprehensively address the subject of this interrogatory.
Evidence supporting Plaintiffs' contention can be found in evidence produced by Plaintiffs
during discovery conducted in this matter to date, including but not limited to the testimony and
evidence cited below:

- Expert Report of Dr. Matthew Levitt at 32-33; 37; 49-50; 54-57; 57-61; 61-63; 63-64; 64-68; 68-71; 71-73; 73-76; 76-79; 79-82; 85; 85-86, and all documents cited therein;

- Expert Report of Arieh Spitzen at 22-27; 28-35; 36-47; 48-59; 60-67; 68-71; 72-83; 84-94; 95-101; 102-110; 111-117; 118-125; 126-132; 133-138; 139-143, and all documents cited therein.

12.     If you contend that any of the funds CBSP transferred from the accounts it
maintained with Crédit Lyonnais was used in any way to finance one or more of the attacks by
reason of which you contend one or more plaintiffs was injured, identify with specificity the
bases for your contentions, including without limitation an itemization of each and every fact and
legal ground, including without limitation each and every document, witness, deposition
testimony citation and any other evidence, that you rely upon for your contentions.

Subject to and without waiving the foregoing Reservation of Rights and the General
Objections, Plaintiffs state that they do not contend that any of the funds CBSP transferred from
the accounts it maintained with Crédit Lyonnais to HAMAS was used specifically to finance any
of the terrorist attacks that injured Plaintiffs and/or killed their loved ones.  Plaintiffs state further
that they have no burden to so prove.  *See Strauss*, 2006 WL 2862704, at *18 ("[b]ecause money
is fungible, it is not generally possible to say that a particular dollar caused a particular act or
paid for a particular gun.  If plaintiffs were required to make such a showing, 2333(a)
enforcement would be [so] difficult that the stated purpose would be eviscerated. Rather, where
the provision of funds to a terrorist organization is a substantial factor in carrying out terrorist
acts, it is thus the proximate cause of the terrorist attacks engaged in the organization.").  *See
also Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 585 (E.D.N.Y. 2005) ( holding that in order
to prevail on claims under 2333(a) it was sufficient for Plaintiffs to show that the "Bank provided

13

these services to the particular group responsible for the attacks giving rise to their injuries."). As set forth in, *inter alia*, the reports of Dr. Matthew Levitt and Arieh Spitzen, *see* Response to Contention Interrogatory 11 above, aid provided to groups that are part of the HAMAS Da'wa, including those groups to whom CL transferred money, is integral to HAMAS' activities, including its acts of terrorism against innocent civilians. Thus, the funds that CL transferred on behalf of its customer CBSP, as well as the funds that CL returned to CBSP itself after CBSP was designated a Specially Designated Global Terrorist, contributed to HAMAS' activities, including its suicide bombings and other acts of terrorism against innocent civilians. Plaintiffs, however, have no knowledge of whether these particular funds were "used to finance" the particular terrorist acts that injured Plaintiffs and/or killed their loved ones.

13.     If you contend that HAMAS perpetrated or is otherwise responsible for the commission of one or more of the attacks by reason of which you contend one or more plaintiffs was injured, for each such attack identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation, Israeli court verdict, military court verdict and any other evidence, that you rely upon for your contentions.

In addition to the foregoing Reservation of Rights and General Objections, Plaintiffs also object to Interrogatory 13 because it constitutes a demand for a recitation of facts and information that have already been shared with Defendant during the course of discovery. Contention interrogatories "should not simply [be] a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery." *Tribune Co.,* 1997 WL 540810, at *1 (internal citation omitted). The testimony, reports, and exhibits of Plaintiffs' experts, particularly those of Ronni Shaked, Evan F. Kohlmann, and Shaul Naim, comprehensively address the subject of this interrogatory.

Subject to and without waiving the foregoing Reservation of Rights and the specific and General Objections, Plaintiffs state that HAMAS is responsible for the commission of each of

14

the acts of terrorism that injured Plaintiffs and/or killed their loved ones.  Evidence supporting this contention can be found in evidence produced by Plaintiffs during discovery conducted in this matter to date, including but not limited to the testimony and evidence cited below:

- Expert Report of Ronni Shaked at 6-12; 13-14; 15-16; 27-41; 42-50; 51-56; 57-64; 65-70; 76-81; 82-87; 88-94; 95-98; 99-106; 107-117; 118-120; 121-124; 125-136 and all documents cited therein;

- Expert Report of Evan F. Kohlmann at. 28-29; 29-30; 30-33; 33-34; 34-35; 36-44, and all documents cited therein;

- Expert Report of Shaul Naim at 13-20 and all documents cited therein;

- Such fact witnesses as set forth in the *Wolf* Plaintiffs' September 15, 2008 Second Supplemental Rule 26 disclosures, in particular Section II (8), (9), and (12) and the *Strauss* Plaintiffs' October 14, 2009 Third Supplemental Rule 26 disclosures, in particular section (h), (i), and (j), regarding persons with relevant knowledge, as Plaintiffs so designate pursuant to Fed. R. Civ. P. 26 (a)(3) prior to trial.

14.    If you contend that any designation or sanctioning by the Office of Foreign Assets Control of the United States Treasury Department of CBSP or any of the persons or entities to which CBSP transferred funds from the accounts it maintained with Crédit Lyonnais is relevant to any of plaintiffs' claims, for each such designation or sanctioning identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for you contentions.

Plaintiffs object to this interrogatory on grounds that it is not a proper interrogatory because the question of whether certain evidence is "relevant" is a matter of evidentiary judgment that will depend on the trial presentation and, implicitly, trial strategy. As such the interrogatory is vague, ambiguous, and overly burdensome.  Plaintiffs further object to this interrogatory because as styled it is addressed to pure questions of law, and as such is improper.

15.    If you contend that any designation or sanctioning by any agency, instrumentality or officer of the government of Israel or the Israeli military of CBSP or any of the persons or entities to which CBSP transferred funds from the accounts it maintained with Crédit Lyonnais is relevant to any of plaintiffs' claims, for each such designation or sanctioning identify with specificity the bases for your contentions, including without limitation, an itemization of each

and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Plaintiffs object to this interrogatory on the grounds set forth in response to interrogatory #14.

16.    If you contend that any of the opinions expressed in the expert report submitted by Frances McLeod, dated March 19, 2010, is relevant to any of plaintiffs' claims, identify with specificity the opinions you contend are relevant and the bases for your contentions that those opinions are relevant, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Plaintiffs object to this interrogatory on the grounds set forth in response to interrogatory #14.

17.    If you contend that Crédit Lyonnais knew that the ████████████████        had any relationship with HAMAS as of ██████████████████████████████████████ as that term is defined in definition H in plaintiffs' Fifth Set of Interrogatories dated July 15, 2009, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the foregoing Reservation of Rights and General Objections, Plaintiffs object to Interrogatory 17 to the extent that this interrogatory requests "an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence" for Plaintiffs' contention that Crédit Lyonnais "knew that the ████████████████████ had any relationship with HAMAS as of ██████████████████   As styled, this interrogatory is overly broad and unduly burdensome.  Plaintiffs also object to Interrogatory 17 as impermissibly vague in asking about CL's knowledge of "any relationship" between ████████████████████ and HAMAS.  Plaintiffs' position with regard to ████████ as set forth in greater detail in the Response to Interrogatory 19, is that, from at least

1993, that organization was part of the HAMAS' *Da'wa* in the Palestinian Territories as described in the Expert Reports of Dr. Mathew Levitt and Arieh Spitzen.

Subject to and without waiving the foregoing Reservation of Rights and the Specific and General Objections, Plaintiffs state that, as of the date of the ▮▮▮▮▮▮▮▮▮▮, CL knew, was willfully blind (or reckless in regard ) to that fact that ▮▮▮▮▮ was an organization affiliated with HAMAS. Evidence to support this contention can be found in the documents and testimony set forth in Ex. C.

18.    If you contend that Crédit Lyonnais was willfully blind with respect to whether that the ▮▮▮▮▮▮▮▮▮▮▮▮▮ had any relationship with HAMAS as of ▮▮▮▮▮▮▮ the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as that term is defined in definition H in plaintiffs' Fifth Set of Interrogatories, dated July 15, 2009, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the foregoing Reservation of Rights and General Objections, Plaintiffs repeat all specific objections set forth to Interrogatory 17 (which are incorporated herein). Subject to and without waiving the foregoing Reservation of Rights and the General and Specific Objections, Plaintiffs state that, as of the date of the ▮▮▮▮▮▮▮▮▮▮▮ o the extent that CL lacked actual knowledge that ▮▮▮▮▮ was an organization affiliated with HAMAS, it was willfully blind or in reckless disregard of that fact. Evidence to support this contention can be found in the documents and testimony set forth in Ex. C.

19.    If you contend that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had any relationship with HAMAS as of ▮▮▮▮▮▮▮▮▮▮▮▮ as that term is defined in definition H in plaintiffs' Fifth Set of Interrogatories dated July 15, 2009, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the foregoing Reservation of Rights and General Objections, Plaintiffs also object to Interrogatory 19 because it constitutes a demand for a recitation of facts and

information that have already been shared with Defendant during the course of discovery. Subject to and without waiving the foregoing Reservation of Rights and the Specific and General Objections, Plaintiffs state that the ███████████████ was part of HAMAS' *Da'wa* infrastructure as of the date of ███████████████. Evidence supporting this contention can be found in evidence produced by Plaintiffs during discovery conducted in this matter to date, including but not limited to the testimony and evidence cited below:

- Expert Report of Arieh Spitzen at 68-71 and exhibits cited therein.
- Expert Report of Dr. Matthew Levitt at 32-33; 37; 49; 50; 54; 63-64 and exhibits cited therein.
- Documents set forth in Ex. D.

20.    If you contend that any of the information contained in Annex B to the expert report of Yaron Lipshes dated November 26, 2009 and supplemented on June 1, 2010 is incorrect in any respect, identify with specificity the information you contend is incorrect and the bases for your contentions that this information is incorrect, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Subject to and without waiving the foregoing Reservation of Rights and the General Objections, Plaintiffs state that the revised Annex B to the expert report of Yaron Lipshes is incorrect in the following respects:

- At page 5, Mr. Lipshes indicates a transaction date of ███████████ while documents CL 002624-26 indicate that the transaction date was ███████████
- At page 28, Mr. Lipshes indicates a transaction date of ███████████ while document CL 002621 indicates a transaction date of ███████████
- At page 28, Mr. Lipshes indicates a transaction date of ███████████ while document CL 002550 indicates a transaction date of ███████████

18

- At page 30, Mr. Lipshes indicates that the beneficiary name is ███████████ while document CL003526 indicates that the accurate name of the beneficiary is ███████████

- At page 47, Mr. Lipshes indicates that the beneficiary of the ███████ transaction was ███████████ while document CL003195 indicates that the accurate name of the beneficiary is ███████████

- At page 47, Mr. Lipshes indicates that the beneficiary of the ███████ ransaction was ███████████ while document CL003047 indicates that the accurate name of the beneficiary is ███████████

- At page 74, Mr. Lipshes indicates that the transaction date is ███████████ while document CL002355-56 indicates a transaction date of ███████████

21.    If you contend that any of the information contained in Annex D to the expert report of Moshe Azoulay dated December 8, 2009 and supplemented on June 1, 2010 is incorrect in any respect, identify with specificity the information you contend is incorrect and the bases for your contentions that this information is incorrect, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

Subject to and without waiving the foregoing Reservation of Rights and the General

Objections, Plaintiffs state that Annex D to the expert report of Moshe Azoulay dated December

8, 2009 and supplemented on June 1, 2010 is incorrect in the following respects.  Note that

corrections to the English names of entities are based on the latest version of

http://www.mod.gov.il/pages/general/pdfs/teror.pdf, last modified on March 31, 2011.

- In Row 5, the accurate English name for the entity listed as ███████████ is "███████████

- In Row 6, "Al-Islah Charitable Society" should read "Jamaiat al-islah."

19

- In Row 10, the accurate English name for the entity listed as ███████████ ████ is ███████████████████

- Rows 11 and 12 actually refer to the same entity.  The ████████████████ is part of the ████████████████ The accurate English name for the entity listed as ████████████████ is ████████████████████

- In Row 13, the accurate English name for the entity listed as ████████ s ████████ ████████████████████  The date of the Israeli declaration that it is a terrorist organization was January 17, 1998.  The date of declaration by IDF Governor was May 19, 1998.

- In Row 17, the accurate English name for the entity listed as ████████████ ████████ is ████████████████████ The date of that entity's last transfer was ████████████

- In Row 18, the accurate English name for the entity listed as "Orphelin Care Society Bethlehem" is "Orphan Care Society Bethlehem."

- In Row 23, the address of the entity listed as ████████████ is ████████ ████████████████

- In Row 24, the accurate English name for the entity listed as ████████████ ████ is ████████████████ Plaintiffs have been unable to verify the March 19, 2008 date of confiscation.

- In Row 32, the accurate English name for the entity listed as ████████████ ████████████ is ████████████████████

Date:  April 11, 2011

By:    /s/ Aitan D. Goelman_____

ZUCKERMAN SPAEDER LLP
Aitan D. Goelman
Semra A. Mesulam
1800 M Street, Suite 1000
Washington, D.C. 20036

OSEN LLC
Gary M. Osen
Aaron Schlanger
Ari Ungar
700 Kinderkamack Road
Oradell, New Jersey 07649
(201) 265-6400

KOHN, SWIFT & GRAF, P.C.
Steven M. Steingard
Stephen H. Schwartz
Neil L. Glazer
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Attorneys for *Strauss* Plaintiffs

SAYLES WERBNER
Mark S. Werbner
Joel Israel
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
1146 19th Street, NW, 5th Floor
Washington, DC 20036

21

(202) 463-1818

SHALOV STONE BONNER & ROCCO LLP
James P. Bonner
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 239-4340

Attorneys for *Wolf* Plaintiffs

## CERTIFICATE OF SERVICE

I, Semra A. Mesulam, hereby certify that true and correct copies of Plaintiffs' Responses

to Defendant's Contention Interrogatories, were served via electronic mail on this 11th day of

April, 2011, on the following:


Lawrence B. Friedman, Esq. (lfriedman@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006


/s/ Semra A. Mesulam
Semra A. Mesulam

23

EXHIBIT 175 TO DECLARATION OF VALERIE SCHUSTER

FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOSES STRAUSS, *et al.*,        : | |
|          : | |
|          Plaintiffs,       : | |
|          : | Case No. 06-cv-702 (DLI) (MDG) |
|    -against-          : | |
|          : | |
| CRÉDIT LYONNAIS, S.A.,       : | |
|          : | |
|          Defendant.     : | |
|          : | |
| WOLF, *et al.*,          : | |
|          : | |
|          Plaintiffs,       : | |
|          : | Case No. 07-cv-914 (DLI) (MDG) |
|    -against-          : | |
|          : | |
| CRÉDIT LYONNAIS, S.A.,       : | |
|          : | |
|          Defendant.     : | |
|          : | |

## PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT'S CONTENTION INTERROGATORIES AND RESPONSES AND OBJECTIONS TO DEFENDANT'S SUPPLEMENTAL CONTENTION INTERROGATORIES

    In accordance with the Court's Minute Order dated June 17, 2011 (the "June 17 Order") Plaintiffs make these supplemental responses to certain of Defendant's Contention Interrogatories dated January 28, 2011, and Defendant's Supplemental Contention Interrogatories dated June 22, 2011 (referred to herein collectively as the "Interrogatories"), as follows:

## RESERVATION OF RIGHTS AND OBJECTIONS

These responses are made subject to, and without waiver of, the reservation of rights and general and specific objections set forth in Plaintiffs' Responses and Objections to Defendant's Contention Interrogatories, dated April, 11, 2011.

## RESPONSES TO CONTENTION INTERROGATORIES

1.    If you contend that Crédit Lyonnais knowingly provided material support or resources to HAMAS with the <u>scienter</u> necessary to render Crédit Lyonnais liable for damages to plaintiffs pursuant to 18 U.S.C. § 2333(a) as a result of Crédit Lyonnais's violation of 18 U.S.C. § 2339B(a)(1), identify with specificity the bases for your contentions, including without limitation identification of the <u>scienter</u> standard you are applying to support your contentions and an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited.  As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).)  Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

2

The evidence demonstrates that CL, from at least 1997, had very substantial concerns about its customer CBSP, and that these concerns were exacerbated in late 2000. It was then that, after the failure of the Camp David summit between Israel and the Palestinians, the Second Intifada broke out and a wave of terrorist attacks was unleashed against Israeli civilians. Robert Audren, the CL compliance officer following CBSP most closely, noticed a steep jump in contributions to CBSP's accounts at CL, and in transfers to Islamist organizations in the West Bank and Gaza. In January 2001, Mr. Audren brought the CBSP file before CL's Committee for the Prevention of Money Laundering ("CPML"), which decided to file a Declaration of Suspicion with TracFin, the French Financial Intelligence Unit ("FIU"), and to put the accounts "under control" thereafter.

The number and size of CBSP's contributions, and its transfers to the Palestinian territories, continued to grow in 2001. On ████████████ CL's New York branch trapped and ultimately froze an attempt to transfer ██████████████████████████████████ ████ because of the close similarity in names between ████████ and Al Wafa Humanitarian Organization ("Al Wafa"), which was on both the American OFAC list and European list as a terrorist organization. CL's U.S. branch subsequently filed a Suspicious Activity Report ("SAR") with FinCen, the American FIU, listing "Terrorism" as the reason for the blockage.

This blockage was significant and unusual for several reasons. First, it was the largest blockage of an attempted transaction to a listed party that anyone at the bank could remember. Second, although in the cases of other frozen transfers, the bank's records reveal attempts, sometimes repeated, by the customer or branch involved to persuade U.S. authorities that the blockage was in error and the funds should be released, there is no record of any such attempt in this case, despite the fact that CL knew that historically, its customers generally expended more

3

efforts to obtain the release of frozen funds when the attempted transfers that were blocked involved larger sums.  Third, although prior to the blockage CBSP had routinely made transfers denominated in U.S. dollars to its beneficiaries in Gaza and the West Bank, after the ▮▮▮▮ blockage, CBSP never again attempted a U.S. dollar transfer to the Palestinian territories, making all future transfer requests to the West Bank and Gaza in non-dollar currencies.  Fourth, approximately two months after its attempt to transfer ▮▮▮▮ in U.S. dollars to ▮▮▮▮ was frozen in the United States, CBSP attempted to send an almost identical sum to the same beneficiary, this time denominated in Euros.  CL, whose branches in France at the time had no computerized system to screen attempted transactions against terrorism lists, but which was purportedly closely monitoring CBSP's accounts, processed the transfer without comment, despite having earlier blocked an almost identical transfer to the same beneficiary.

Approximately one month after the filing of the terrorism SAR with the American FIU, Mr. Audren again brought the CBSP file before the CPML.  The CPML decided to file a second Declaration of Suspicion with TracFin, the French FIU, and ordered CBSP's accounts closed.  On March 8, 2002, the CPML met again, and granted CBSP's request for a delay in the closure of its accounts until the end of the year.[1]  Later in 2002, Mr. Audren was interviewed by French police investigating CBSP, and he informed them of increased activity in CBSP's accounts at CL "due to the fact that wire transfers to banks situated in Palestine or Jordan were being made in favor of probably Islamist associations."  On August 22, 2003, three days after a HAMAS suicide bomber boarded a Jerusalem bus and killed 21 people, including several Plaintiffs, one of whom was only two years old, the United States designated CBSP and several other HAMAS fundraisers as Specially Designated Global Terrorists ("SDGT").  In a press release publicized

---

[1]     After that date, CL refused to process CBSP requests to transfer money to Gaza or the West Bank, even where there was no apparent deficiency in the transfer request and the bank itself stamped the transfer request "good to process."

along with the designations, OFAC characterized CBSP as one of the "charities that provide support to HAMAS and form part of its funding network in Europe," and as one of two "primary fundraisers for HAMAS in France and Switzerland," noting that CBSP "has collected large amounts of money from mosques and Islamic centers, which it then transfers to sub-organizations of HAMAS." United States Department of the Treasury Press Release, August 22, 2003. When CL learned of CBSP's designation, it finally effectuated the CPML's December 2001 decision to close CBSP's accounts, and voluntarily sent CBSP approximately €266,950, the balance of the money in its accounts.

2.      If you contend that Crédit Lyonnais knowingly provided material support or resources to HAMAS with the <u>scienter</u> necessary to render Crédit Lyonnais liable for damages to plaintiffs pursuant to 18 U.S.C. § 2333(a) as a result of Crédit Lyonnais's violation of 18 U.S.C. § 2339C, identify with specificity the bases for your contentions, including without limitation identification of the <u>scienter</u> standard you are applying to support your contentions and an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited. As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Notwithstanding and

without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs

supplement their April 11, 2011 response to this Interrogatory as follows:

Please see response and supplemental response to Interrogatory 1.

4.       If you contend that Crédit Lyonnais knew that HAMAS is a "designated terrorist organization," and/or that it knew HAMAS has engaged or engages in terrorist activity or terrorism, as those terms are defined in 18 U.S.C. § 2339B, identify with specificity the bases for your contentions, including without limitation an itemization of the date(s) as of which you contend Crédit Lyonnais had such knowledge and each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in

Plaintiffs' Responses and Objections dated April 11, 2011, in accordance with the June 17 Order,

Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

As a bank with U.S. branches, CL was obligated to, and did, monitor terrorist

designations made by the United States Government.  The United States Department of State

designated HAMAS as a "Foreign Terrorist Organization" on October 8, 1997, and, as Ray Lacy,

CL America's Chief Compliance Officer, testified, he learned of that designation at the time that

it was made.  Thus CL knew (or would have had to go to considerable effort to avoid knowing)

that HAMAS was a "designated terrorist organization" from at least 1995, when the United

States designated HAMAS as a Specially Designated Terrorist ("SDT") and again, on October 8,

1997, when the United States Department of State designated HAMAS a Foreign Terrorist

Organization.

Moreover, CL knew (or would have had to go to considerable effort to avoid knowing)

that HAMAS had engaged or engages in terrorism from at least the early to mid 1990's, when

HAMAS engaged in its first widely publicized campaign of suicide bombings and other terrorist

attacks targeting civilians in Israel.  These attacks generated headlines all over the world,

including in France, and various CL witnesses testified that they understood HAMAS to be

6

responsible for attacks against civilians in Israel, knowledge that they attributed to reports in the media.

A similar wave of suicide bombings and other terrorist attacks targeting civilians in Israel erupted in late 2000, after the failure of peace negotiations between Israel and the Palestinian Authority.  Many of these attacks, including the majority of the most spectacular ones, were perpetrated by HAMAS, which publicized and claimed credit for its role in the attacks, a role that was widely reported around the world, including in France.  As with the earlier eruption of HAMAS terrorism, several CL witnesses testified learning about this wave of terrorist attacks through reports in the media.

5.      If you contend that Crédit Lyonnais knew that CBSP was providing funds to HAMAS by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited.  As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  Notwithstanding and

7

without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

Please see response and supplemental response to Interrogatory 1. Additionally, and as delineated in response and supplemental response to Interrogatory No. 1, Plaintiffs state that the evidence demonstrates that CL either: (1) knew (or would have had to go to considerable effort to avoid knowing) that CBSP was providing funds to HAMAS by means of transfers from its accounts at CL; (2) suspected that CBSP was providing funds to HAMAS by means of transfers from its CL accounts but deliberately avoided confirming such suspicions; or (3) knew there was an appreciable risk that CBSP was providing funds to HAMAS by means of transfers from its CL accounts, but, in conscious and deliberate disregard of the interest of others, continued to facilitate transactions for CBSP in the face of these known risks.

6. If you contend that Crédit Lyonnais was willfully blind with respect to whether CBSP was providing funds to HAMAS by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including without limitation identification of the legal standard you are applying to support your contentions and an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited. As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including,

without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

Please see response and supplemental response to Interrogatories 1 and 5. Additionally, to the extent that CL did not actually know that CBSP was providing funds to HAMAS by means of transfers of its accounts at CL, this was due to CL's deliberate failure to confirm that the transfers it performed on behalf of CBSP to Islamist organizations in Gaza and the West Bank were going to HAMAS-controlled organizations. If CL had performed even cursory research on CBSP's counterparties, it would have learned of their affiliations with HAMAS, as described in Plaintiffs' response to Contention Interrogatory 11 dated April 11, 2011. Moreover, CL was aware of the precipitous increase in transfers to the West Bank and Gaza after the outbreak of the Second Intifada, and of the fact that the Palestinian territories were high-risk jurisdictions for terrorism. CL was also aware, at least as of October 2001, that the use of ostensibly charitable Islamic organizations to provide funding to terrorist groups was a recognized typology that the Financial Action Task Force ("FATF") had warned required additional diligence and scrutiny on the part of banks. Assuming without conceding that, even with all these warning signs, CL refrained from conducting any additional research into CBSP's Palestinian counterparties or CBSP itself, this constitutes a willful disregard of a known risk and an intentional decision by CL to avert its eyes from the obvious danger posed by its execution of these transfers.

7.      If you contend that Crédit Lyonnais knew that CBSP was providing funds for one or more acts of terrorism by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including without limitation an itemization of every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

9

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited.  As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

Please see response and supplemental response to Interrogatories 1 and 5.  Additionally, to the extent that Defendant seeks through Interrogatory No. 7 to artificially separate and distinguish the provision of funds to a Foreign Terrorist Organization from the provision of funds for the commission of a specific act of terrorism, Plaintiffs note the Supreme Court's decision in *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2725 (2010):

> "Material support" is a valuable resource by definition. Such support frees up other resources within the organization that may be put to violent ends. It also importantly helps lend legitimacy to foreign terrorist groups—legitimacy that makes it easier for those groups to persist, to recruit members, and to raise funds—all of which facilitate more terrorist attacks. "Terrorist organizations do not maintain organizational 'firewalls' that would prevent or deter . . . sharing and commingling of support and benefits." McKune Affidavit, App. 135, ¶11. "[I]nvestigators have revealed how terrorist groups systematically conceal their activities behind charitable, social, and political fronts." M. Levitt, Hamas: Politics, Charity, and Terrorism in the Service of Jihad 2–3 (2006). "Indeed, some

10

designated foreign terrorist organizations use social and political components to recruit personnel to carry out terrorist operations, and to provide support to criminal terrorists and their families in aid of such operations." McKune Affidavit, App. 135, ¶11; Levitt, supra, at 2 ("Muddying the waters between its political activism, good works, and terrorist attacks, Hamas is able to use its overt political and charitable organizations as a financial and logistical support network for its terrorist operations").

8.    If you contend that Crédit Lyonnais was willfully blind with respect to whether CBSP was providing funds for one or more acts of terrorism by means of CBSP's transfers from the accounts it maintained with Crédit Lyonnais, identify with specificity the bases for your contentions, including identification of the legal standard you are applying to support your contentions and without limitation an itemization of every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited. As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

Please see response and supplemental response to Interrogatories 1 and 6.

11.    If you contend that one or more of the persons or entities to which CBSP transferred funds from the accounts it maintained with Crédit Lyonnais were at the time of such transfers *alter egos* of and/or controlled by HAMAS, identify with specificity the bases for your

11

contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why each person or entity that CBSP transferred money to from its accounts at CL was, at the time such transfers were made, alter egos of and/or controlled by HAMAS. As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

In addition to the evidence cited in Plaintiffs' April 11, 2011 response to this Interrogatory, Plaintiffs also identify the expert report of Wayne Geisser dated November 19, 2009 together with its attached schedules and exhibits, and underlying transactional data set forth therein, and the supplemental expert report of Wayne Geisser dated August 19, 2010, together with its attached schedules and exhibits, and underlying transactional data set forth therein. Plaintiffs' original response to this Interrogatory set forth their contentions as to whom or which persons or entities they contend to be HAMAS alter-egos, or controlled by HAMAS, and Plaintiffs supplement that response to confirm that it is also their contention that such

12

persons/entities were alter-egos or controlled by HAMAS at the time the transfers occurred. The cited portions of Dr. Levitt and Mr. Spitzen's report (including the materials and information cited in detail therein), demonstrate why Plaintiffs contend that these persons or entities were HAMAS alter-egos or controlled by HAMAS, including providing detailed discussions of the persons or entities' history, activities, leadership, U.S. and foreign designations, materials seized or obtained therein, and relationship with other persons or entities which are connected to HAMAS and terrorism. Mr. Geisser's reports detail, summarize and document transactional activity from CBSP's accounts with CL to the identified CBSP counterparties.

13.   If you contend that HAMAS perpetrated or is otherwise responsible for the commission of one or more of the attacks by reason of which you contend one or more plaintiffs was injured, for each such attack identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation, Israeli court verdict, military court verdict and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, and written and oral expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why HAMAS perpetrated or is otherwise responsible for the commission of on or more of the attacks that injured Plaintiffs. As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial. See Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Plaintiffs also object that this Interrogatory remains vague and ambiguous, because it fails to provide a clear definition of

13

"perpetrated" and "responsible" (including any explanation of whether the Interrogatory's use of such terms is the same as the use of such terminology by any expert witness proffered by Plaintiffs), and thus, inter alia, the Interrogatory is vague as to whether "responsibility" encompasses only direct responsibility for an attack, whether it encompasses scenarios in which other terrorist organizations may also be deemed to be responsible for an attack, or includes an analysis of HAMAS' provision of social and other services that, as a general matter, increase the likelihood of fostering violent acts constituting acts of international terrorism. Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

In addition to the evidence cited in Plaintiffs' April 11, 2011 response to this Interrogatory, Plaintiffs also incorporate and adopt by reference the evidence and responses cited in their original and supplemental responses to Interrogatory 11 above, as well as their supplemental responses to Interrogatories 14 and 15 below. Plaintiffs' original response to this Interrogatory contended that HAMAS was responsible in whole or in part for each attack giving rise to their injuries. The cited portions of Mr. Shaked's report provide a detailed analysis of each attack and analyze various discrete categories of evidence and information demonstrating HAMAS' responsibility for each attack. The cited portions of Mr. Kohlmann's report provide detailed analysis of whether HAMAS issued particular types of official claims of responsibility for the attack. At deposition, Mr. Kohlmann provided testimony explaining how he defines an official claim of responsibility, why, in his opinion, such claims are credible, and how he defines credibility. *See* deposition testimony of Evan Kohlmann from December 2 and 3, 2010, *passim*. Dr. Levitt and Mr. Spitzen's report offer opinions on HAMAS' structure, organization, *modus operandi*, and activities, including HAMAS' military, political, recruitment, financing, and social

14

services activities, HAMAS' history, and HAMAS' leadership.  Dr. Levitt and Mr. Spitzen have

also offered opinions (including citing extensive supporting evidence) regarding how certain

entities both within and without the Palestinian Territories that present themselves as charitable

organizations or social service organizations are in fact HAMAS alter egos, controlled persons,

affiliates, or supporters, and have analyzed such entities history, activities, leadership, U.S. and

foreign designations, materials seized or obtained therein, and relationship with other persons or

entities which are connected to HAMAS and terrorism.  Mr. Geisser's reports detail, summarize

and document transactional activity from CBSP's accounts with CL to the identified CBSP

counterparties controlled by or alter egos of HAMAS.

      14.    If you intend to rely on any designation or sanctioning by the Office of Foreign Assets Control of the United States Treasury Department of CBSP or any of the persons or entities to which CBSP transferred funds from the accounts it maintained with Credit Lyonnais to prove the <u>scienter</u> element of any of your claims, set forth the basis for your relying on such designation or sanction.

      Plaintiffs object that Interrogatory 14 as amended remains unduly burdensome because

read literally it would require Plaintiffs to identify all foundational evidence, primary and

secondary evidence (including much of the evidence set forth in Exhibits A and B to Plaintiffs'

April 11, 2011 responses), credibility disputes, documentary evidence, as well as percipient and

expert witness testimony in order to provide a comprehensive narrative and advocacy argument

explicating how U.S. designations and sanctions could be, in some sense, relied upon by

Plaintiffs in connection with any applicable *mens rea* element of their claims, including how

such materials might address explanations, hypotheses, and arguments offered by Defendant in

support of its defenses, or the credibility of various fact and expert witnesses' testimony,

opinions, inferences, or assumptions.  As such, it will not help limit the issues for trial or

dispositive motion practice.  Moreover, the information called for by this Interrogatory can be

obtained through more efficient, less burdensome means, including summary judgment briefing, motion in limine practice, or a final pre-trial exhibit list. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Finally, Plaintiffs object to Supplemental Interrogatory 14 to the extent it fails to comply with the instructions set forth in the June 17 Order.  Subject to and without waiver of these objections, Plaintiffs respond to Supplemental Interrogatory 14 as follows:

Plaintiffs may rely on U.S. designations of CBSP and/or its counterparties and co-conspirators (including without limitation HAMAS, the ███████████████████ and the Union of Good) to demonstrate scienter with regard to the following areas:

- Whether or not CL had notice of HAMAS' status as a terrorist, including but not limited to its status as a Foreign Terrorist Organization, Specially Designated Terrorist, or Specially Designated Global Terrorist.

- Whether or not CL had notice of CBSP's status as a terrorist, including but not limited to its status as a Specially Designated Global Terrorist.

- Whether or not CL had notice of CBSP's counter-parties' and co-conspirators' status as terrorists, including but not limited to any counter-party or co-conspirators status as a Specially Designated Global Terrorist, or agent, affiliate, alter ago, conspirator, or aider and abettor of a Foreign Terrorist Organization.

- Whether CL actually knew that HAMAS was a terrorist organization, or engaged in acts of international terrorism, terrorist activity, terrorism, or the financing of terrorism.

- Whether CL knew there was a high probability that CBSP or CBSP's counter-parties were connected to HAMAS, but deliberately decided not to confirm that fact.

- Whether CL knew that HAMAS had been designated as a terrorist organization, and deliberately disregarded that fact while continuing to provide financial services to CBSP knowing that that the services would assist HAMAS.

- Whether CL consciously disregarded substantial unjustifiable risks with respect to CBSP and its counter-parties, and whether such risks were of a nature and degree that, considering the nature and purpose of CL's conduct and the circumstances known to it, they involved a gross deviation from the standards of conduct that a law-abiding person or entity would have observed in CL's situation.

16

- Whether CL was generally aware of its role as part of HAMAS' illegal activity, and whether CL knowingly and substantially assisted HAMAS' illegal conduct.

Specifically, the evidence shows that, at all relevant times, CL was aware (or would have had to go to considerable effort to avoid becoming aware) of and had access to the lists of terrorists and terrorist organizations generated by OFAC and other United States Government agencies. CL was aware of and had access to the websites of OFAC and other relevant United States Government agencies, and even had subscriptions to news services that specialized in providing updates of OFAC actions relevant to financial institutions. As such, CL was aware of not merely the fact of designations made by OFAC and other United States Government agencies, but the rationale behind these designations.

For example, when OFAC designated CBSP and other charitable fronts active in raising funds for HAMAS in the West as Specially Designated Global Terrorists on August 22, 2003, it issued a press release describing the reasons for these designations. This press release characterized CBSP as HAMAS' "primary" fundraiser in France. CL learned of OFAC's designation of CBSP as an SDGT shortly after the designation. Nevertheless, CL sent CBSP checks totaling €266,950, the balance of the money in its accounts, approximately one week later.

15.    If you intend to rely on any designation or sanctioning by any agency, instrumentality or office of the government of Israel or the Israeli military of CBSP or any of the persons or entities to which CBSP transferred funds from the accounts it maintained with Credit Lyonnais to prove the <u>scienter</u> element of any of your claims, set forth the basis for your relying on such designations or sanctioning.

Plaintiffs object that Interrogatory 15 as amended remains unduly burdensome because read literally it would require Plaintiffs to identify all foundational evidence, primary and secondary evidence (including much of the evidence set forth in Exhibits A and B to Plaintiffs' April 11, 2011 responses), credibility disputes, documentary evidence, as well as percipient and

17

expert witness testimony in order to provide a comprehensive narrative and advocacy argument explicating why Israeli designations and sanctions could, in some sense, be relied upon by Plaintiffs in connection with any applicable *mens rea* elements of their claims, including how such designations might address explanations, hypotheses, and arguments offered by Defendant in support of its defenses, or the credibility of various fact and expert witnesses' testimony (including CL's case in chief putative expert witnesses Moshe Azoulay and Yaron Lipshes), opinions, inferences, or assumptions.  As such, it will not help limit the issues for trial or dispositive motion practice.  Moreover, the information by this Interrogatory can be obtained through more efficient, less burdensome means, including summary judgment briefing, motion in limine practice, or a final pre-trial exhibit list.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  Finally, Plaintiffs object to amended Interrogatory 15 to the extent it fails to comply with the instructions set forth in the June 17 Order.  Subject to and without waiver of these objections, Plaintiffs respond to Interrogatory 15 as follows:

Plaintiffs may rely on Israeli designations of CBSP and/or its counterparties and co-conspirators (including without limitation HAMAS, the ███████████████████████ ████████████████████████ and the Union of Good) to demonstrate scienter with regard to the following areas:

- Whether or not CL had notice of HAMAS' status as a terrorist, including but not limited to its status as a Foreign Terrorist Organization.

- Whether or not CL had notice of CBSP's status as a terrorist.

- Whether or not CL had notice of CBSP's counter-parties and co-conspirators status as terrorists.

- Whether CL actually knew that HAMAS was a terrorist organization, or engaged in acts of international terrorism, terrorist activity, terrorism, or the financing of terrorism.

18

- Whether CL knew there was a high probability that CBSP or CBSP's counter-parties were connected to HAMAS, but deliberately decided not to confirm that fact.

- Whether CL knew that HAMAS had been designated as a terrorist organization, and deliberately disregarded that fact while continuing to provide financial services to CBSP knowing that that the services would assist HAMAS.

- Whether CL consciously disregarded substantial unjustifiable risks with respect to CBSP and its counter-parties, and whether such risks were of a nature and degree that, considering the nature and purpose of CL's conduct and the circumstances known to it, involved a gross deviation from the standards of conduct that a law-abiding person or entity would have observe in CL's situation.

- Whether CL consciously or recklessly disregarded concerning CBSP and its counter-parties available information in the geographic area of benefit where CBSP sent funds, notwithstanding the high probability that CBSP was connected to terrorism and HAMAS, and CL's recognition of substantial, unjustified risks posed by CBSP and its counter-parties.

- Whether CL was generally aware of its role as part of HAMAS' illegal activity, and whether CL knowingly and substantially assisted HAMAS' illegal conduct.

Specifically, the evidence will be that the Government of Israel designated CBSP as an "unlawful organization" in May 1997 and as a "terrorist organization" in January 1998 because of evidence that CBSP raised funds for HAMAS.  Israel also designated many of CBSP's co-conspirators and counterparties (including ▇▇▇▇▇ at various times while CL was continuing to execute transfers to these groups.  Given CL's knowledge of the eruption of the Second Intifada beginning in late 2000, including the wave of terrorist attacks targeting Israeli civilians, as well as CL's acknowledged recognition that the Palestinian territories were a high-risk jurisdiction for precisely these types of attacks, and CL's recognition that CBSP was engaged in sending money to Islamist organizations in the West Bank and Gaza, the FATF typology by which putative charitable organizations were used to raise money for terrorist groups, and the precipitous rise in these transfers after the outbreak of the Intifada, CL at the very least knew of the high likelihood that the Government of Israel's terrorist designations were an important source of information.

19

However, if the testimony of the bank's witnesses is credited, CL made no attempt to discover if CBSP or any of its counterparties had been designated by Israel.  In fact, according to the bank's witnesses, even after CL's New York branch froze the ███████████ attempted transfer to ██████ and its filing of a terrorism SAR with U.S. authorities, the bank made no effort to find out if the Israeli Government had declared █████ to be a terrorist organization. This is despite the testimony by senior members of the bank's compliance team that they would have considered a designation by Israeli authorities to be a significant fact in determining whether CBSP was supporting terrorism.

16.    If you intend to rely on any of the opinions expressed in the expert report submitted by Frances McLeod, dated March 19, 2010, identify those opinions and set forth the basis of your relying on them.

Plaintiffs object that Interrogatory 16 as amended remains vague, ambiguous, and unduly burdensome.  As amended this Interrogatory appears to still improperly require Plaintiffs to identify all foundational evidence, primary and secondary evidence (including much of the evidence set forth in Exhibits A and B to Plaintiffs' April 11, 2011 responses), credibility disputes, documentary evidence, as well as percipient and expert witness testimony in order to provide a comprehensive narrative and advocacy argument explicating various ways that Ms. McLeod's opinions and testimony may, in some manner, relate to various elements of Plaintiffs' claims.  As such, it will not help limit the issues for trial or dispositive motion practice. Moreover, the information by this Interrogatory can be obtained through more efficient, less burdensome means, including summary judgment motion practice, or motion in limine practice. Finally, Plaintiffs object to amended Interrogatory 14 to the extent it fails to comply with the instructions set forth in the June 17 Order.  Specifically, the June 17 Order notes that "[s]ince defendant already has a copy of Ms. McLeod's report and an opportunity to question her at deposition, the general relevance of her report presumably is apparent.  However, plaintiffs must

20

identify the elements of their case to which Ms. McLeod's report relates." Defendant's reformulated Interrogatory 16, instead of asking Plaintiffs merely to "identify the elements" of their case to which the report relates, asks Plaintiffs to "identify any of the opinions" of Ms. McLeod that Plaintiffs intend to rely upon, and to "set forth the basis" of such reliance. Subject to, and without waiver of, these objections, Plaintiffs respond to Interrogatory 16 as follows:

As a preliminary matter, Plaintiffs dispute any suggestion (as most recently expressed by Defendant's counsel at a June 7, 2011 status conference) that Ms. McLeod's report constitutes (explicitly or implicitly) "negligence opinions." The fact that the report sets forth the author's opinions concerning whether or not CL's conduct in various respects constitutes gross deviations from expected or accepted practices does not, therefore, result in Ms. McLeod's opinions constituting "negligence." The report (correctly) offers no opinions with respect to the Defendant's state of mind, but simply opines upon the objective record. Whether or not a particular gross deviation suggests intent, knowledge, willful blindness, reckless disregard, gross negligence, simple negligence, or excusable neglect is a comprehensive inquiry that, *inter alia*, raises issues of credibility determinations and context.

Plaintiffs also note as a preliminary matter that, at deposition, Ms. McLeod stated that, notwithstanding the fact that her report identifies and mentions various statutes and regulations that are generally relevant to anti-money laundering or counter-terror finance concepts, she was neither explicitly nor implicitly offering any legal opinions. *See* McLeod Oct. 21, 2010 Tr. at 80:11-81-19.

Ms. McLeod's report relates to the following elements of Plaintiffs' case:

- Evaluating, explaining, and analyzing CL's treatment of CBSP and its accounts in a manner that will be comprehensible to the Court and lay jurors;

- Describing, explaining, and defining various concepts and terms of art in the banking industry generally, and the banking compliance function specifically,

21

including without limitation concepts of money laundering, terrorist financing, Know Your Customer, Customer Due Diligence, internal and external suspicious activity reporting, electronic wire transfer transactions, and electronic payment messaging systems, including SWIFT;

- Describing, explaining, and opining upon various "standards setters" for banking compliance conduct, including differences between expected practices and aspirational "best" practices. Furthermore, to the extent CL contends that its conduct generally or specifically complied with a given set of practices (whether minimal or aspirational) evaluating the accuracy of such statements and (where Ms. McLeod disagrees with such representations), ascertaining the degree and extent of any deviation;

- Detailing appropriate methodologies applied by relevant communities of experts and professionals to evaluate financial institutions' identification, assessment, investigation, documentation, and decisions in connection with suspicions, identified risks, probable risks, and concomitant risk avoidance, reduction, transfer, and/or retention;

- Describing and explaining the risk management function of banks, and explaining difference between legal risks, regulatory risks, and reputational risks;

- Describing and explaining different methods of identifying potential money laundering and terror financing issues, including list-based systems, and risk-based approaches, and, in this context, evaluating Defendant's representations and explanations for its behavior, including its claim that it had no concerns regarding whether CBSP was connected to terrorism, as well as the parties' respective fact and expert witnesses' testimony, opinions, inferences, and conclusions;

- Considering what documents a bank in CL's position would be expected to generate, receive, collect and maintain;

- Evaluating whether, objectively (and thus without regard to CL's or any CL employees' subjective state of mind), CL's conduct in connection with CBSP reflects a deviation from expected practice, and, if so, whether such deviation is immaterial, subject to reasonable dispute and interpretation, or is instead, material, gross, and not subject to reasonable dispute;

- Describing and explaining various technology systems and solutions germane to anti money laundering and terror financing (including automatic filtering systems) including explanations and analyses of the Defendant's systems and solutions;

- Describing for lay jurors different types of banks and financial institutions;

- Evaluating whether, from a compliance standpoint, CL had notice of HAMAS' status as a terrorist, including but not limited to its status as a Foreign Terrorist

Organization, Specially Designated Terrorist, and Specially Designated Global Terrorist;

- Evaluating whether, from a compliance standpoint, CL had notice of CBSP's status as a terrorist, including but not limited to its status as a Specially Designated Global Terrorist;

- Evaluating whether, from a compliance standpoint, CL had notice of CBSP's counter-parties' and co-conspirators' status as terrorists, including but not limited to any counter-party's or co-conspirator's status as a Specially Designated Global Terrorist, or agent, affiliate, alter ago, conspirator, or aider and abettor of a Foreign Terrorist Organization;

- Offering opinions the jury and Court can consider together with other evidence in assessing what information was in the possession of or available to CL regarding the following subjects: HAMAS' status as a terrorist organization; HAMAS' involvement in acts of international terrorism, terrorist activity, terrorism, or the financing of terrorism; the likelihood that CBSP and its counterparties were connected to HAMAS and any action taken or avoided by the bank to confirm or fail to confirm that fact; the nature and degree of risks taken by the bank with respect to CBSP and its counterparties;

- Offering opinions the jury and Court can consider together with other evidence in assessing whether CL consciously disregarded substantial unjustifiable risks with respect to CBSP and its counter-parties, and whether such risks were of a nature and degree that, considering the nature and purpose of CL's conduct and the circumstances known to it, involved a gross deviation from the standards of conduct that a law-abiding person or entity would have observed in CL's situation;

- Offering opinions the jury and Court can consider together with other evidence in assessing whether CL was generally aware of its role as part of HAMAS' overall illegal activity, and whether CL knowingly and substantially assisted HAMAS' illegal conduct.

17.    If you contend that Crédit Lyonnais knew that the ████████████████ had any relationship with HAMAS as of January 3, 2002, the date of the ████████████ as that term is defined in definition H in plaintiffs' Fifth Set of Interrogatories dated July 15, 2009, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in

Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this

Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited. As such, this Interrogatory does not narrow the issues for trial or summary judgment, and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

Please see response and supplemental response to Interrogatories 1 and 5.

18.    If you contend that Crédit Lyonnais was willfully blind with respect to whether that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had any relationship with HAMAS as of January 3, 2002, the date of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as that term is defined in definition H in plaintiffs' Fifth Set of Interrogatories, dated July 15, 2009, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

In addition to the specific objections and response to this Interrogatory set forth in Plaintiffs' Responses and Objections dated April 11, 2011, Plaintiffs further observe that this Interrogatory remains grossly overbroad and burdensome, inasmuch as, read literally, it would require Plaintiffs to identify all foundation evidence, primary and secondary evidence, credibility disputes, documentary evidence, percipient fact witness and expert testimony in order to provide a comprehensive narrative and advocacy argument explicating why Plaintiffs can satisfy the applicable *mens rea* standards, and why Defendant's explanations to the contrary cannot be credited. As such, this Interrogatory does not narrow the issues for trial or summary judgment,

24

and the information requested can be obtained through less burdensome means (including, without limitation, summary judgment briefing, a final pretrial order, motion in limine practice, and exhibit lists prepared for trial. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Notwithstanding and without waiver of these objections, and in accordance with the June 17 Order, Plaintiffs supplement their April 11, 2011 response to this Interrogatory as follows:

Please see responses and supplemental responses to Interrogatories 1 and 6. Additionally, to the extent that CL did not actually know, as of January 3, 2002, that the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was, as described in Plaintiffs' response to Contention Interrogatory 11, dated April 11, 2011, an alter ego of HAMAS, this was due to CL's deliberate failure to conduct any research on ▮▮▮▮ when CL executed previous transfers to ▮▮▮▮ on behalf of CBSP. Notably, even after CL's New York branch initially trapped CBSP's attempt to send ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because of ▮▮▮▮▮ similarity to the name of an organization on the OFAC terrorism list, CL apparently made no attempt to learn anything about ▮▮▮▮▮ This is in stark contrast to the bank's practice of researching potentially false positives when other attempted transfers were blocked for similar reasons. In fact, even when CL New York's Chief Compliance Officer, after trapping the attempted transfer to ▮▮▮▮ specifically requested that CL's Chief of Compliance in Paris provide him with additional information about ▮▮▮▮ no such information was provided. This illustrates CL's deliberate failure to confirm that ▮▮▮▮ had a relationship with an Islamist terrorist group in the Palestinian territories, in particular, HAMAS.

19.    If you contend that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had any relationship with HAMAS as of January 3, 2002, the date of the '▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as that term is defined in definition H in plaintiffs' Fifth Set of Interrogatories dated July 15, 2009, identify with specificity the bases for your contentions, including without limitation an itemization of each and every fact and legal ground, including without limitation each and every document, witness, deposition testimony citation and any other evidence, that you rely upon for your contentions.

25

Subject to and without waiver of Plaintiffs' April 11, 2011 objections to this Interrogatory, in accordance with the June 17 Order, Plaintiffs' supplement their April 11, 2011 response to this Interrogatory as follows:

Please see Plaintiffs' response and supplemental response to Interrogatories 11 and 13. Plaintiffs further respond that Mr. Spitzen's report specifically offers opinions (including citation of extensive evidence) concerning the ███████████████████ relationship with HAMAS.

Date:  July 11, 2011

By:    /s/ Joshua D. Glatter

OSEN LLC
Gary M. Osen
Joshua D. Glatter
Aaron Schlanger
Ari Ungar
700 Kinderkamack Road
Oradell, New Jersey 07649
(201) 265-6400

ZUCKERMAN SPAEDER LLP
Aitan D. Goelman
Semra A. Mesulam
1800 M Street, Suite 1000
Washington, D.C. 20036

KOHN, SWIFT & GRAF, P.C.
Steven M. Steingard
Stephen H. Schwartz
Neil L. Glazer
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Attorneys for *Strauss* Plaintiffs

SAYLES WERBNER
Mark S. Werbner
Joel Israel
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
1146 19th Street, NW, 5th Floor
Washington, DC 20036
(202) 463-1818

STONE BONNER & ROCCO LLP
James P. Bonner
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 239-4340

Attorneys for *Wolf* Plaintiffs

## CERTIFICATE OF SERVICE

I, Aaron Schlanger, hereby certify that true and correct copies of Plaintiffs' Responses to

Defendant's Contention Interrogatories, were served via electronic mail on this 11th day of July,

2011, on the following:

Lawrence B. Friedman, Esq. (lfriedman@cgsh.com)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006


/s/ Aaron Schlanger
Aaron Schlanger