CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial· (212) 225-2840
E-Mail· lfriedman@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
ALLAN G. SPERLING
MAX GITTER
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
JONATHAN I. BLACKMAN
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR

CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER
DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
ANA DEMEL
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
YVETTE P. TEOFAN
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDREE P. GRANFIELD
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND

DAVID I. GOTTLIEB
LEONARD C. JACOBY
SANDRA L. FLOW
DANA G. FLEISCHMAN
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE McLAUGHLIN
BRION S. PEACE
CHANTAL E. KORDULA
BENET J. O'REILLY
RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUBKIN
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
RESIDENT COUNSEL

October 20, 2008

**BY ECF AND HAND**

Hon. Marilyn D. Go, U.S.M.J.
United States Courthouse
225 Cadman Plaza East, Room 1214S
Brooklyn, NY 11201

Re:  Weiss v. National Westminster Bank Plc, 05-cv-4622 (CPS) (MDG)
 Applebaum v. National Westminster Bank Plc, 07-cv-916 (CPS) (MDG)

Dear Magistrate Judge Go:

I am responding on behalf of defendant National Westminster Bank Plc ("NatWest") to the Court's request in its October 15 Minute Order for submissions on the applicability of In re County of Erie, __ F.3d __, 07-5702-op (RJM), 2008 WL 4554920 (2d Cir. Oct. 14, 2008), to the issue raised in plaintiffs' August 27 letter motion for an order compelling the production of documents protected by the attorney-client privilege.

Erie confirms that, as NatWest has previously noted, plaintiffs' August 27 letter fundamentally misstates what constitutes an "at issue" waiver of privilege. Plaintiffs' core assertion that NatWest's privileged communications are subject to an "at issue" waiver and must be produced because, as plaintiffs contended, these communications "'inhere in the controversy itself,'" Plaintiffs' letter at 3, applies a legal standard that Erie expressly rejects. Indeed, in their August 27 letter motion, plaintiffs quoted the very phrase "inhere in the controversy itself" from the district court decision in Pritchard v. County of Erie, No. 04-CV-00534C (JTC), 2007 WL 3232096 (W.D.N.Y. Oct. 31, 2007), that the Second Circuit last week ordered be vacated.

The Second Circuit's Erie decision expressly states, consistent with NatWest's September 4 response to plaintiffs' letter motion, that an "at issue" waiver only occurs when a

Hon. Marilyn D. Go, p. 2

"party must *rely* on privileged advice from his counsel to make his claim or defense." Erie, 2008 WL 4554920, at *6 (emphasis in original). See NatWest letter at 2 ("The caselaw plaintiffs rely upon demonstrates that an 'at issue' or implied waiver will be found only where . . . the party claiming privilege is also asserting a defense of reliance upon counsel, or otherwise arguing it had a good faith basis for its conduct based on consultations with counsel . . . .").

Specifically, Erie expressly rejects the three-prong test set forth in Hearn v. Rhay, 68 F.R.D. 574, 580 (E.D. Wash. 1975), upon which plaintiffs rely in their motion as the governing test for determining whether an "at issue" waiver of privileged communications has occurred. The Hearn test asks "whether: (1) the assertion of the privilege was a result of some affirmative act, such as filing suit or pleading in response to a claim; (2) through the affirmative act, the asserting party has put the protected information at issue by making it relevant to the case; and (3) the application of the privilege would have denied the opposing party access to information vital to the defense." Hearn, 68 F.R.D. at 581. In expressly rejecting the Hearn test, the Second Circuit ruled that it "cuts too broadly . . . . According to Hearn, an assertion of privilege by one who pleads a claim or affirmative defense 'put[s] the protected information at issue by making it relevant to the case.' Hearn, 68 F.R.D. at 581. But privileged information may be in some sense *relevant* in any lawsuit." Erie, 2008 WL 4554920, at *6.

Limiting the reach of an "at issue" waiver, the Second Circuit ruled in Erie that "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue. The Hearn test presumes that the information is relevant and should be disclosed and would open a great number of privileged communications to claims of at-issue waiver. Nowhere in the Hearn test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver." Id. Thus, in Erie the Second Circuit adopted the rule that an "at issue" waiver only occurs in those instances where "a party must *rely* on privileged advice from his counsel to make his claim or defense." Id. (emphasis in original).[1]

Erie therefore eviscerates completely plaintiffs' waiver argument in their August 27 letter motion. Plaintiffs argue that the "at-issue communications with counsel directly concern NatWest's state of mind during a crucial time period, and NatWest's conduct in relation thereto." Pls.' Letter at 3. But as Erie now confirms, plaintiffs' argument does not support an "at issue" waiver. NatWest has not asserted a defense of reliance upon the legal advice that is reflected in the privileged communications plaintiffs now demand. Instead, the aspect of NatWest's state of mind that is relevant and "at issue" is not its understanding of the law, but rather whether what NatWest knew and intended as a matter of fact. See NatWest letter at 1-2. Stated simply, NatWest is not relying upon privileged advice from counsel to make its defenses. Instead, it is relying on the fact that its actions were lawful. Hence, under Erie, NatWest has not

---

[1] Erie "decline[s] to specify or speculate as to what degree of reliance is required because Petitioners here do not rely upon the advice of counsel in the assertion of their defense of this action." Erie, 2008 WL 4554920, at *6. No such inquiry is necessary here, because as NatWest confirmed in its September 4 letter and reiterates in this letter, it does not rely upon the advice of counsel to make its defense.

Hon. Marilyn D. Go, p. 3

waived the protection of the attorney-client privilege with respect to any of the communications at issue.[2]

Respectfully,

Lawrence B. Friedman /PAS

Lawrence B. Friedman

cc:   All counsel of record in all cases

---

[2]  Plaintiffs' other arguments for waiver of the attorney-client privilege, which are essentially variations of its "at issue" waiver argument, are similarly unavailing. First, NatWest's affirmative assertions in its dismissal motion in <u>Weiss</u> involved neither legal advice nor NatWest's understanding of the law, and therefore do not place the advice of counsel at issue. NatWest letter at 3. Second, NatWest's redaction of the non-privileged portions of certain communications is not an attempt to use the attorney-client privilege as a "sword" and "shield," as NatWest is not relying upon attorney-client communications as a "sword." <u>Id.</u>