SAYLES | WERBNER

October 20, 2008

**VIA ELECTRONIC FILING**
Honorable Marilyn D. Go
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      RE:    *Weiss, et al. v. National Westminster Bank, PLC* – Case No. CV-05-4622;
               *Applebaum, et al. v. National Westminster Bank, PLC* – Case No. CV – 07-0916.

Dear Magistrate Judge Go:

      We write on behalf of all Plaintiffs in accordance with Your Honor's October 15, 2008 Order to address the Second Circuit's recent decision in *In re County of Erie*, __ F.3d __, 2008 WL 4554920 (2nd Cir. Oct. 14, 2008), and its impact upon the issues raised by Plaintiffs' August 27 Letter Motion to Compel Production (the "Motion to Compel") of certain documents included on privilege logs produced by Defendant National Westminster Bank ("NatWest"). As explained below, although the Second Circuit has modified the "at-issue" exception inquiry set forth in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), nothing in *Erie* stands at odds with Plaintiffs' entitlement to the limited document production sought in our motion to compel.

      Fundamentally, the circumstances concerning "at-issue" waiver are entirely different between the instant cases and those in *Erie*. The *Erie* plaintiffs were pursuing a putative class action arising out of alleged Fourth Amendment violations stemming from Erie County Jail's strip-search policy. *Erie*, 2008 WL 4554920, at *1-2. Although the Second Circuit criticized the *Hearn* test as overbroad because "nowhere in the *Hearn* test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver", *id.* at *6, the Circuit specifically declined to specify or speculate as to what degree of reliance was required. The Circuit's declension flowed from the fact that the defendants' qualified immunity defense (pointed to by plaintiffs and the District Court as triggering the "at issue" exception and *Hearn* inquiry) simply did not involve any subjective assessment of the defendants' state of mind. Instead, and as observed by the *Erie* Panel, it involved a purely objective assessment of the law to determine whether the defendants' conduct was legal, or alternatively whether plaintiffs' rights were clearly established (by looking to the law extant at the time of the alleged Constitutional violation). Any legal advice rendered by Erie County attorneys was simply irrelevant to the analysis. Importantly, the court concluded its decision by stating that the plaintiffs would be granted leave to reargue waiver of attorney-client privilege should the defendants rely upon an advice of counsel or good faith defense at trial. *Id.* at * 7.

Honorable Marilyn A. Go
October 20, 2008

Here, in marked contrast to *Erie*, Plaintiffs' 18 U.S.C. §2333(a) claims, predicated on violations of, *inter alia*, §2339B, and NatWest's defenses thereto, explicitly turn upon state of mind considerations. Section 2339B requires Plaintiffs to demonstrate that NatWest knowingly (or with willful blindness) provided material support to a Foreign Terrorist Organization. This Court acknowledged these circumstances in last month's hearing, stating: "I think this is certainly an important case, as you all recognize, and critical to the plaintiff's claim – third claim in the NatWest case is the extent of NatWest's knowledge."[1]

Moreover, NatWest's argument in response to Plaintiffs' Motion to Compel largely rested on its incorrect assertion that the only thing at issue was what NatWest knew as a "matter of fact" (in contrast to legal advice received) regarding "Interpal's" financing of "HAMAS terrorism" or "terrorist acts." *See, e.g.*, NatWest's Sept. 4, 2008 Opposition to Motion to Compel at 2. This assertion was wrong. The "at-issue" exception voids work product protection as well as attorney-client privilege.[2] What is at issue is not merely Interpal's connection to HAMAS, but NatWest's knowledge regarding HAMAS generally. And the inquiry is not limited to HAMAS's "terrorist acts", but HAMAS in any of its guises, whether "military" or "social services."[3] Indeed, NatWest's opposition to the Motion to Compel speaks volumes as to why waiver is appropriate. To the extent NatWest's employees relied on counsel's advice to artificially and improperly limit their inquiries concerning Interpal (or any other HAMAS-affiliated organization) to only the question of whether the funds transfers supported "terrorist acts", rather than HAMAS in any form, NatWest's supposed good faith in relying on such advice (perhaps under the theory that it was only bound by allegedly more lenient foreign law regarding HAMAS's "military" versus "social wings"), is plainly implicated.

Thus, although *Erie* re-confirms the significance of the reliance element in an "at-issue" waiver analysis, it does not pose any barrier to Plaintiffs' requested relief, nor does it sweep aside other precedent that Plaintiffs have presented. Specifically, given the centrality of the state-of-mind element of Plaintiffs' claims, Judge Buchwald's recent decision in *Chin v. Rogoff* remains viable and on point. Like the instant cases, the claims in *Chin* turned in large measure on whether attorneys advised their client to take certain actions, and on what advice the client relied in ultimately reaching its decision. *Chin v. Rogoff & Co., P.C.*, No. 05 Civ. 8360 (NRB), 2008 WL 2073934, at *6 (S.D.N.Y. May 8, 2008). Judge Buchwald held that the causal connection between the advice and the decision could only be assessed by "invading the privilege" and examining the attorney advice, even if the at-issue decision was made on some other basis. In other words, though the attorneys claimed their advice was not at issue, the

---

[1] *See* September 9, 2008 Conference Before Judge Go, p. 86:19-22, attached as Exhibit "A".

[2] *See, e.g.*, *Stern v. O'Quinn*, 2008 WL 4555335 (S.D. Fl. Aug. 29, 2008) (implied waiver where the defendant planned to rely upon facts elicited through private investigation conducted at defense counsel's behest).

[3] *See Weiss v. National Westminster Bank Plc*, 453 F. Supp. 2d 609, 625 (E.D.N.Y. 2006) ("The requirement that the defendant have specifically intended to further terrorist activities *finds no basis in the statute's language* which requires only that the defendant 'knowingly provide material support or resources to a foreign terrorist organization' *but makes no mention of any specific intent.*") (emphasis added); *see also id.* at 629 ("However, because the statute on its face allows for liability where a defendant provides or collects funds 'with the intention that such funds be used *or* with the knowledge that such funds are to be used for terrorist purposes' *it is not necessary for plaintiffs to allege that defendant intended to transmit or receive the funds for terrorist purposes*.") (emphasis added).

Honorable Marilyn A. Go
October 20, 2008

question of *whether* the attorney advised the client to take certain action was sufficient to effectuate waiver. *Id.* The court rejected the protesting lawyers claim that their clients' decision was purely the result of the clients' accountant's advice (thus rendering the lawyer's advice immaterial) and instead, correctly, held that the "... plaintiffs' damages stem from their signing a release of the indemnity, <u>and whether or not any attorneys at Akin Gump actually "calculated" Chin or Bradbury's individual returns is *totally separate from the larger issue of **whether** they advised plaintiffs to sign the release*</u>." *Id.* (emphasis added.)  Here, by analogy, what NatWest employees knew about HAMAS or merely Interpal, is distinct from the issue of *whether* or not counsel advised the employees that the *only* thing which was relevant was whether Interpal's (or other HAMAS-related entities') funds went to "terrorist acts", as opposed to HAMAS in *any* shape or form.

What NatWest employees knew about HAMAS and Interpal, and, minimally, NatWest's puzzling decision to keep Interpal's accounts open *after* the United States' August 2003 designation of Interpal as a Specially Designated Global Terrorist, is causally connected to the advice and information they received, including from in-house counsel, and whether the attorneys advised them to take certain action or not. Though counsel for NatWest initially advised the Court in the September 9, 2008 hearing that the information contained within the at-issue privileged documents also existed in "hundreds and hundreds of memos, emails, [and] communications" between NatWest employees, the Court now has in its possession those e-mails authored by Messrs. Woodley, Hoseason, and Foster to assess counsel's claim. Any information included in those communications is excepted from privilege, and the question of *whether* NatWest's attorneys advised it to take certain critical actions still effectuates waiver.[4] Unlike in *Erie*, where employee knowledge was not necessary to determine whether the Fourth Amendment was violated, here, NatWest's knowledge of HAMAS is paramount under the ATA, and assessment of the discussions that occurred during the crucial August and September 2003 time period is essential. To the extent NatWest intends to promote its investigation of HAMAS and Interpal to demonstrate it knew of no wrongdoing, this also prompts the at-issue waiver and nothing in *Erie* suggests otherwise.

Finally, *Erie* in no way diminishes the "sword and shield" principle that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *Erie*, 2008 WL 4554920, at *4 (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2nd Cir. 2000)). As discussed in Plaintiffs' August 27 letter in support of their Motion to Compel, NatWest's selective production of self-serving statements from its attorneys to demonstrate its actions in freezing the Interpal account, while simultaneously claiming privilege as to others, is an additional basis on which waiver has been effectuated and production is mandated.

In conclusion, although the *Erie* decision rejects certain interpretations of the *Hearn* inquiry, the Second Circuit reminds trial courts and litigants that "whether fairness requires

---

[4] Moreover, to the extent the communications simply communicated fact, absent any legal advice, such facts cannot be shielded under the attorney-client privilege. *See, e.g. Henry v. Champlain Indus., Inc.*, 212 F.R.D. 73, 91 (N.D.N.Y. 2003) ("That is, the privileges do not protect the client's knowledge of the relevant facts, whether they were learned from counsel or facts learned from an attorney from independent sources.")

Honorable Marilyn A. Go
October 20, 2008

disclosure has been decided on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* at *5. And, as noted above, the Circuit has not established any sort of "bright line" test as to the degree of reliance required to trigger waiver. In this case, with knowledge directly at issue, the waiver analysis still mandates production. Accordingly, for the reasons set forth above, as well as those in Plaintiffs' August 27 letter and at oral argument, Plaintiffs respectfully request that the Court order production of the requested documents as modified by the Court's rulings at the hearing on the Motion.

                      Respectfully submitted,

                      */s/ Mark S. Werbner*

                      Mark S. Werbner

Attachment

132352.v1                      4