```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

TZVI WEISS, et al.,

                    Plaintiffs,        ORDER

          - against -                  CV 05-4622 (CPS)(MDG)

NATIONAL WESTMINISTER BANK, PLC,

                    Defendant,

- - - - - - - - - - - - - - - - - - -X

NATAN APPLEBAUM, et al.,

                    Plaintiffs,

          - against -
                                       CV 07-916 (CPS)(MDG)
NATIONAL WESTMINISTER BANK, PLC,

                    Defendant.
- - - - - - - - - - - - - - - - - - -X
```

GO, United States Magistrate Judge:

    Plaintiffs are the survivors and heirs of victims of terrorist attacks in Israel. In both of these two related actions, plaintiffs allege that defendant National Westminister Bank, PLC ("NatWest") is civilly liable under section 2333(a) of the Anti-Terrorism Act of 1992, 18 U.S.C. § 2333(a), for providing material support to the Islamic Resistance Movement ("HAMAS"), an organization that has been designated a Foreign Terrorist Organization by the United States government. Specifically, plaintiffs claim that NatWest provided banking services to the Palestinian Relief and Development Fund

("Interpal") and other organizations, which financially supported the terrorism-related activities of HAMAS, knowing that those organizations were engaged in such unlawful acts.  The pertinent background facts are recounted at length in the prior decisions of Judge Charles P. Sifton and then Magistrate Judge Kiyo Matsumoto and will not be repeated herein.

The plaintiffs have moved to compel production of communications between NatWest's employees and in-house counsel, which NatWest has either withheld or produced in redacted form on the basis of attorney-client privilege.  The plaintiffs claim NatWest has impliedly waived all applicable privileges because the subject of the communications are critically relevant to the issues in this litigation and disclosure is required in the absence of other sources of direct proof of those issues.  Pls.' Aug. 27, 2008 Letter Mot. 2, ct. doc. 155 in Weiss action, ct. doc. 47 in Applebaum action.  At oral argument on this motion on September 9, 2008, this court directed NatWest to submit for in camera review copies of some of the privileged communications, along with other documentation to support its claim that the information contained therein were contained in other documents previously disclosed to plaintiffs.  After the court conducted a review of these documents and before scheduling a further hearing, the Second Circuit issued its decision in In re County of Erie, -- F.3d --, 2008 WL 4554920 (2d Cir. Oct. 14, 2008), which clarified the contours of the at-issue or implied waiver

upon which plaintiffs rely herein. At the court's direction, the parties have filed additional submissions.

## DISCUSSION

Under Rule 26(b) of the Federal Rules of Civil Procedure "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The party seeking to block discovery on the basis of privilege, including the attorney-client privilege, has "'the burden of establishing the existence of [the] privilege in all of its elements.'" In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citation omitted).

The purpose of the privilege is simple: to "encourag[e] full and truthful communication between an attorney and his client." In re von Bulow, 828 F.2d 94, 100 (2d Cir. 1987) (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). This, in turn, "promote[s] broader public interests in the observance of law and the administration of justice." Id. As the Supreme Court explained in Upjohn, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Id. Accordingly, "rules that result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution." Erie, 2008 WL 4554920, at *5. At the same time, the privilege must be narrowly applied since it inevitably operates to frustrate the search for

truth. See In re Grand Jury Proceedings, 219 F.3d at 182 ("Since the privilege 'stands in derogation of the public's right to every man's evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle'").

Recognizing that "it [is] unfair to permit a party to make use of privileged information as a sword with the public, and then as a shield in the courtroom," a court may find an implied waiver of the privilege under certain circumstances. von Bulow, 828 F.2d at 101 (citations omitted). These include instances when a party "partially disclose[s] privileged communications or affirmatively rel[ies] on privileged communications to support its claim or defense and then [seeks to] shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d at 182 (citing Hearn v. Rhay, 68 F.R.D. 574, 581-83 (E.D. Wash. 1975)). Although an "'advice-of-counsel' defense has been properly described as a 'quintessential example' of an implied waiver of the privilege," there must be "some showing by the party arguing for a waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense." Erie, 2008 WL 4554920, at *5 (citations omitted).

In their motions, plaintiffs seek to discover what are primarily a series of emails between NatWest employees and its attorneys from around August 22 to September 5, 2003 which

NatWest withheld as privileged.[1]  As more particularly recounted in Judge Sifton's decision, the disputed emails were sent during an especially sensitive period in which the U.K. Charity Commission ("Charity Commission") relied on a then recent United States designation of Interpal as a Specially Designated Global Terrorist ("SDGT") and froze Interpal's accounts at NatWest. Weiss v. Nat'l Westminister Bank PLC, 453 F. Supp. 2d 609, 617 (E.D.N.Y. 2006).  After further investigation, however, the Charity Commission unfroze the accounts.  Id.

Plaintiffs do not dispute that the communications are privileged but argue that NatWest has waived or forfeited the privilege because an integral part of its defense against the claim of unlawful material support rests on NatWest's denial that it knew of Interpal's terrorism-related activities or status.[2]

---

[1] At the prodding of the court in order to facilitate in camera review, plaintiffs at the September 9th hearing agreed to narrow the scope of their request, seeking only those privileged communications involving Terry Woodley, Stephen Foster and Michael Hoseason.  As described by NatWest in its in camera submission, Mr. Woodley was "Assistant Manager of the commercial office responsible for Interpal's accounts;" Mr. Foster was "then the Head of Anti-Money Laundering Compliance in the Group Risk Management department;" and Mr. Hoseason was "then part of the Group Investigations & Fraud department."  NatWest's Sept. 19, 2008 In Camera Letter 2 (on file with the court).

[2] Plaintiffs also argue that NatWest has impliedly waived its applicable privileges as to all attorney-client communications regarding Interpal because it has "selectively disclosed" some such communications, particularly those which may cast NatWest in a positive light, while withholding similar communications "that may [have] contextualize[d] those statements and discuss[ed] corresponding obligations under U.S. law."  Pls.' Aug. 27, 2008 Letter Mot. 3.  Such a claim is not supported by the law or the record.  Plaintiffs are correct that selective disclosure may be
(continued...)

According to plaintiffs, those communications "are relevant and crucial with respect to actions NatWest took or considered taking with respect to Interpal in the context of the U.S. and U.K. governmental actions," and hence speak to NatWest's state of mind. See Pls.' Aug. 27, 2008 Letter Mot. 1.

Critically, plaintiffs make no showing that NatWest has relied on any of the emails at issue in asserting its lack of knowledge defense. Instead, much of what plaintiffs claim support a finding of implied waiver is based on conjecture: that, to the extent NatWest might rely on communications with counsel to establish its lack of knowledge defense, it would do so

---

[2]/(...continued)
a basis for effectuating an implied waiver. See United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes"); Granite Partners v. Bear Stearns & Co., Inc., 184 F.R.D. 49, 54 (S.D.N.Y. 1999) ("waiver may be invoked where 'a litigant makes selective use of privileged materials, for example, by releasing only those portions of the material that are favorable to his position, while withholding unfavorable portions'"). However, since parties are required to disclose communications between counsel and client which are not privileged, the production of partially redacted documents does not, in itself, constitute a waiver of any applicable privilege. See Expert Choice, Inc. v. Gartner, Inc., No. 3:03CV02234(CFD)(TPS), 2007 WL 951662, at *5 (D. Conn. Mar. 27, 2007) ("It is not proper to withhold an entire document from discovery on grounds that a portion of it may be privileged"). Plaintiffs do not point to any document produced where privileged matter was disclosed. Cf. Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp., No. 00 Civ. 9212(DF), 2002 WL 31729693, at *13 (S.D.N.Y. Dec. 5, 2002) (waiver found where unredacted portion of produced document contained work product). Nor has this court from its in camera review of the documents found support for plaintiffs' contention that NatWest has employed the privilege as a "shield and a sword" by selectively disclosing documents to create a false image of itself.

through the emails now withheld by NatWest because they were sent during a period in which Interpal's status with governmental authorities was in flux. At most, this speaks to relevance, not reliance. See ct. doc. 180 at 2. However, as the Second Circuit pointedly observed in Erie, because "privileged information may be in some sense _relevant_ in any lawsuit," relevance cannot serve as proxy for the requisite showing of a party's reliance "on privileged advice from his counsel [in] mak[ing] [a] claim or defense." 2008 WL 4554920, at *6. Rather than pointing to instances where NatWest relied on the withheld emails in asserting its lack of knowledge defense, plaintiffs merely note that the Erie court "declined to specify or speculate as to what degree of reliance is required," 2008 WL 4554920, at *6. Pls.' Oct. 20, 2008 Letter 1, ct. doc. 180 in Weiss action, ct. doc. 70 in Applebaum action. While that is correct, plaintiffs have not shown <u>on any level</u> how NatWest has relied on the emails at issue in asserting its state of mind defense.

Moreover, from further review of the defendant's pleadings and other submissions herein, particularly the arguments defendant made in support of its motion to dismiss, the court has not found any intimation by NatWest that it relied on legal advice or the attorney-client communications sought by plaintiffs in asserting its defense that it had no knowledge Interpal engaged in the kind of unlawful activities proscribed under United States anti-terrorism laws. A key component of NatWest's defense is that it relied, in part, on the findings of the

Charity Commission, which, after an investigation, cleared Interpal of any wrongdoing. That, however, is a far cry from NatWest claiming, which is has not, that its actions were lawful because it relied on its attorneys' interpretations of those findings.

Lastly, from a waiver standpoint, the findings of the Charity Commission are analytically distinct from the interpretation of those findings by NatWest's attorneys. In attempting to employ the Charity Commission's findings to contend that it had no knowledge of terrorism-related acts on the part of Interpal or any other HAMAS-related entity, NatWest had to establish that it "actually did rely on [the Charity Commission's findings] and[,] . . . as a matter of law, it was entitled to so rely based on all the facts known to it." Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc., 111 F.R.D. 76, 82 (S.D.N.Y. 1986). The "[i]nformation on the former question can be obtained from [NatWest], and the latter question is to be determined by proceedings in this court, not by the opinion of [NatWest's] lawyers." Id. (emphasis added).

Even though Judge Sifton rejected defendant's attempt to rely on the Charity Commission findings as a basis for NatWest's lack of knowledge defense in moving to dismiss, he eschewed any reference to what NatWest's attorney might have thought about those findings. See Weiss, 453 F. Supp. 2d at 630. Rather, Judge Sifton found that because "the Charity Commission's report d[id] not establish as a matter of law and beyond dispute that

-8-

Interpal was not a terrorist organization," defendant's reliance was unjustified in light of other facts available to and known by NatWest – in particular, Interpal's continued designation as a terrorist organization by the United States government.  Id. Clearly, the opinions, if any, of NatWest's attorneys as to the validity of the Charity Commission's findings in light of the competing United States designation, did not factor into Judge Sifton's ruling; they were simply irrelevant to it.  Accordingly, plaintiffs cannot complain that they have been unfairly disadvantaged by being denied access to NatWest's attorney-client communications.

The case relied on by plaintiffs, Chin v. Rogoff & Company, P.C., No. 05 Civ. 8360(NRB), 2008 WL 2073934, at *1 (S.D.N.Y. May 8, 2008), is inapposite.  Chin involved a claim of accounting malpractice in which the plaintiff was assessed back taxes and fines by state authorities as a result of shoddy tax advice given him by the defendants – an accounting firm and its principal.  In discovery, the plaintiff disclosed he had received legal advice from counsel that called into question the plaintiff's decision to rely on the advice of his accountant in proceeding with the business transaction.  As the Chin court observed, such a fact, if true, could serve to break the chain of causation between the accountant's allegedly faulty advice and the plaintiff's subsequent decision to proceed with the transaction.  Because "reliance and causation" were "dispositive issues" dependent on the extent to which the legal advice the plaintiff had received

conflicted with his accountant's advice, the court found the existence of an at-issue waiver. Unlike Chin, NatWest's defense that it lacked knowledge of Interpal's alleged terrorist ties and aims, depends not on the content of legal advice it received concerning Interpal, but on whether its reliance on the findings of the Charity Commission was justified given the facts available or reasonably available to NatWest during the relevant periods alleged by plaintiffs. See Chase Manhattan Bank, N.A. v. Drysdale Sec. Corp., 587 F. Supp. 57, 58 (S.D.N.Y. 1984) (finding no at-issue waiver by plaintiff even though justifiable reliance was an element of its securities fraud claim since the privileged communications were not "essential to establish . . . what a reasonably prudent bank should have know and should have done under the circumstances"). The reliance at issue is NatWest's reliance on the Charity Commission findings, not the advice of counsel. Even if NatWest did seek advice from its attorneys concerning the Charity Commission's findings, the efficacy of its defense of lack of knowledge turns on what it knew rather than on the bona fides of the opinions of its counsel.[3]

---

[3] However, insofar as counsel acquires information which may constitute a source of NatWest's knowledge regarding Interpal, such information is discoverable. In this regard, this court observes that some of the documents that NatWest submitted for in camera review to support its contention that the factual information in withheld documents has been disclosed elsewhere indicates that NatWest's attorneys may have been the first ones to receive notice of Interpal's designation as a terrorist organization by the United States government. Information concerning when and how such notice was received is not privileged, even if it had first filtered through NatWest's
(continued...)

CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel on the basis of at-issue waiver is denied. This denial is without prejudice to plaintiffs for renewal of the motion should defendant rely upon advice-of-counsel in asserting a good-faith defense later in this case. <u>Erie</u>, 2008 WL 4554920, at *7.

**SO ORDERED.**

Dated: Brooklyn, New York
December 3, 2008

                                               /s/
                                               MARILYN D. GO
                                               UNITED STATES MAGISTRATE JUDGE

---

[3]/(...continued)
attorneys before reaching other employees. <u>Ayala</u>, 111 F.R.D. at 80 ("[F]acts which an attorney obtains from independent sources and then conveys to his client" are not protected under the privilege) (citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 508 (1947)) (additional citations omitted); <u>B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of N.Y., Inc.</u>, 168 F.R.D. 161, 165 (S.D.N.Y. 1996) (attorney-client privilege does not protect facts that "came to be known through [a party's] communications with counsel who had obtained knowledge of those facts through an investigation into the underlying dispute").