```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK


------------------------------X
                              :
WEISS, et al.,                :
                              :    CV-05-4622 (CPS)(MDG)
            Plaintiff.        :
                              :    December 22, 2008
                              :
         V.                   :    Brooklyn, New York
                              :
NATIONAL WESTMINSTER BANK,    :
et al.,                       :
            Defendant.        :
------------------------------X


         TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
            BEFORE THE HONORABLE MARILYN D. GO
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:         JOSHUA GLATTER, ESQ.
                           GARY OSEN, ESQ.
                           AARON SCHLANGER, ESQ.
                           STEVEN STEINGARD, ESQ.
                           JAMES BONNER, ESQ.
                           ANDREW FRIEDMAN, ESQ.

For the Defendant:         LAWRENCE FRIEDMAN, ESQ.
                           YORA PARK, ESQ.
                           EMILY PICCONE, ESQ.


Court Transcriber:         ARIA TRANSCRIPTIONS
                           c/o Elizabeth Barron
                           31 Terrace Drive, 1st Floor
                           Nyack, New York 10960
                           (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1            THE COURT:  Weiss versus Nat West Bank, Applebaum
 2   versus Nat West Bank, Strauss versus Cardigliene and Wolf
 3   versus Cardigliene.
 4            Will counsel present please state their names for
 5   the record?
 6            MR. GLATTER:  Good morning, your Honor, Josh
 7   Glatter, Osen LLC, on behalf of the Weiss plaintiffs and
 8   Strauss plaintiffs.
 9            MR. OSEN:  Good afternoon, your Honor.  Gary Osen,
10   Osen LLC, for the Weiss and Strauss plaintiffs.
11            MR. STEINGARD:  Your Honor, Steven Steingard,
12   Kohn, Swift & Graf, on behalf of the Weiss and Strauss
13   plaintiffs.
14            MR. BONNER:  Jim Bonner, Schaloff (ph), Stone,
15   Bonner & Rocco (ph), for the Applebaum plaintiffs, your
16   Honor.
17            MR. A. FRIEDMAN:  Andrew Friedman for Weiss
18   plaintiffs (ui).
19            MR. SCHLANGER:  Aaron Schlanger, Osen LLC, for the
20   Weiss and Strauss plaintiffs.
21            MR. L. FRIEDMAN:  Lawrence Friedman from Cleary
22   Gottlieb, on behalf of Nat West and Cardigliene.  With me
23   are my colleagues, Yora Park (ph) and Emily Piccone (ph).
24            THE COURT:  I thought it would be useful just to
25   go over this proposed scheduling order and also to field any
```

```
 1  issues that may have arisen since our last conference.
 2  Maybe we should start with the latter question first.
 3           MR. L. FRIEDMAN:  I'm not aware of any issues.
 4           THE COURT:  Okay.
 5           MR. L. FRIEDMAN:  We just had our most recent meet
 6  and confer last Wednesday night, and things seem to be
 7  moving along.  Since we last were before your Honor, I think
 8  we've been to Paris twice for depositions.  I believe there
 9  is no conflict to report at the moment.  We'll let you know
10  if there is.
11           THE COURT:  Well, if you're happy, I'm even
12  happier.
13           So there are more requests under the Hague
14  Convention coming down the pipeline.
15           MR. L. FRIEDMAN:  There's one pending, I think,
16  your Honor, and there's another one coming down.
17           THE COURT:  Right, okay.  I actually, strangely
18  enough, will be changing law clerks next month.  I'm not on
19  a regular hiring schedule but I'll put that on the list to
20  do, so we won't lose track or I won't lose the signed
21  request on my desk.
22           Fact discovery:  You've proposed a May 8$^{th}$
23  deadline, not related to damages.  Are you on schedule for
24  that?
25           MR. L. FRIEDMAN:  That's with respect to the
```

```
 1   Credit Leone (ph) cases.  The plaintiffs had asked that
 2   we --
 3           THE COURT:  Right.
 4           MR. L. FRIEDMAN:  Sequence back discovery so that
 5   they could finish up with the Credit Leone side of the case.
 6           THE COURT:  Yes, okay.  Let me --
 7           MR. L. FRIEDMAN:  I think we're on schedule.
 8           THE COURT:  You're on schedule, okay.  So
 9   everything is on schedule for -- let me just start with the
10   Strauss/Wolf cases.  Is there any need for any adjustments
11   to the proposed schedule there.
12           MR. GLATTER:  The only thing I would say, your
13   Honor, is that obviously, schedules of this kind are always
14   subject to whatever facts crop up.  For example, there is a
15   witness from Credit Leone e who is currently unavailable for
16   deposition due to health concerns, and conceivably could be
17   scheduled sometime in March or May or whatever his health,
18   et cetera will allow, and also, conceivably, some other
19   discovery related to that person might be generated from the
20   deposition, et cetera.  So with the caveat that it's a plan,
21   not a certainty, at the moment, we're on schedule.
22           MR. L. FRIEDMAN:  I agree with that.
23           THE COURT:  Is this witness who is currently
24   unavailable an important witness?
25           MR. GLATTER:  Well, ultimately, you don't know
```

```
 1  that, obviously, until the deposition takes place, but the
 2  person in question is, if I remember correctly, the sole
 3  remaining person from the financial security unit who dates
 4  back to, if not the original issues in the case, at least
 5  back to 1997 or thereabouts.
 6            MR. L. FRIEDMAN:  I don't view him as particularly
 7  important but we do want to make him available as quickly as
 8  we can.  He's convalescing from surgery and therefore is not
 9  expected back at work for the next month or so, as far as I
10  know.  But Mr. Osen and I have spoken about it and we're
11  agreed that if this witness cannot be made available by the
12  deadline, he will be made available thereafter.  I don't
13  think he's the kind of witness that is going to generate a
14  lot of or any follow-on discovery, but we'll see.
15            THE COURT:  Is there any anticipated -- do you
16  anticipate his return to work?
17            MR. L. FRIEDMAN:  Oh, absolutely, absolutely.
18            THE COURT:  Alright, fine.
19            MR. L. FRIEDMAN:  I checked that.  The nature of
20  the surgery that he had is very serious but it is expected
21  that he will be returning to work when his convalescence is
22  complete.
23            THE COURT:  Okay.  Are you planning to depose all
24  the plaintiffs then?
25            MR. L. FRIEDMAN:  I'm not planning to depose all
```

```
 1   the plaintiffs in the liability phase but if I can just
 2   address that, and Mr. Osen or Mr. Glatter will correct me if
 3   I go wrong.
 4              One of the motivations behind our argument to
 5   divide the schedule between liability and discovery --
 6   liability and damages is to expedite liability discovery by
 7   keeping the damages issues secondary and only if they are
 8   ripe.  Also, the plaintiffs have informed us that none of
 9   them has personal knowledge about the alleged liability of
10   the defendants.  Obviously, some of them have personal
11   knowledge about the attacks that give rise to the cases.
12              The short answer to your Honor's question is that
13   plaintiffs told us that there will be some number of
14   plaintiffs who they will present as liability witnesses, to
15   set the stage, the background for the liability allegations,
16   and they wish for us to depose those witnesses, those
17   plaintiffs only once as to both liability and damages
18   issues.  So as soon as those people are identified to us, we
19   will work on scheduling their depositions.
20              If the case makes it to the damages phase, then
21   obviously there will be additional plaintiffs who I need to
22   depose.  I hope that I do not need to depose and I do not
23   plan to depose all plaintiffs.  To avoid that, we've
24   negotiated a plaintiff profile form, which your Honor sees
25   referred to --
```

1     THE COURT:  Yeah, I see that.
2     MR. L. FRIEDMAN:  -- as being due by May 15th.
3  This is a very comprehensive form that we collaborated on,
4  plaintiffs and defense counsel.  I'm hoping that that will
5  expedite and obviate as many depositions as possible.  But
6  again, I can't make any promises until I see what
7  information I get.
8     THE COURT:  If you're going to be designating
9  plaintiffs for the liability phase of the trial, then
10 shouldn't their profile forms be completed earlier than May
11 15th?
12    MR. GLATTER:  Well, that's the -- that is the
13 deadline, and I think we should be in a position to be able
14 to complete the profile forms by that date, your Honor, for
15 those selected individuals that we would be presenting in
16 the liability only phase.
17    THE COURT:  You're not going to complete their
18 depositions by May 8th if you produce their profiles by May
19 15th.
20    MR. L. FRIEDMAN:  Right.  Your Honor, that was
21 alluded to in Mr. Schlanger's cover letter, where he stated
22 that -- the last clause of the first paragraph of that
23 letter, where it says, "Subject to possible adjustments, the
24 parties are continuing to discuss relating to the scheduling
25 of depositions of individual plaintiffs who may be

```
 1  designated as liability trial witnesses."
 2              THE COURT:  I didn't suspect it was that but okay.
 3              MR. L. FRIEDMAN:  Mr. Glatter and Mr. Osen and I
 4  have agreed that once they give us the list, depending on
 5  how long it is, we'll take their depositions when we can,
 6  but it may be outside the deadline for other liability
 7  witnesses.
 8              MR. GLATTER:  Right.  That's correct.  That was
 9  precisely the point I was getting to, your Honor.
10              THE COURT:  All I'm suggesting is, in order to try
11  to keep a tighter deadline on the completion of liability
12  discovery, is that it may make sense for you to stagger the
13  production of completed profile forms and to focus on the
14  profile forms of the plaintiffs you're going to designate,
15  and perhaps even to just produce them on a rolling basis, as
16  you determine the plaintiffs you want to designate.
17              That way -- there are two benefits to that:  One
18  is, to the extent that the defendants, the two defendants
19  will be unhappy with the information set forth in the
20  profile form, those issues can be aired sooner rather than
21  later.  And whatever rulings come of it will provide
22  guidance on the completion of the other profile forms.
23              And secondly, it will enable the completion of the
24  depositions of the liability plaintiffs sooner rather than
25  later.
```

```
 1              MR. GLATTER:  Josh Glatter for the Strauss
 2   plaintiffs.  Your Honor, I agree with that.  I think it's
 3   just -- as Mr. Friedman has alluded, it's initially a
 4   function of our, meaning plaintiffs' side, and coordinating
 5   with them.
 6              THE COURT:  I understand.  But I'm just
 7   encouraging you to get that done sooner rather than later.
 8   Without precluding you from adding people to the list of
 9   plaintiffs you're going to designate as liability witnesses,
10   it may make sense to come up with a list sooner rather than
11   later and to produce their profile forms, completed profile
12   forms sooner rather than later.  Then if there are any
13   problems with the form or the way that you're completing the
14   form, then we can address that early on, before you complete
15   the forms for all the plaintiffs.
16              MR. GLATTER:  Yes.  Again, we'll endeavor to meet
17   and confer with defendants to make sure that it's a sensible
18   schedule on that score.
19              THE COURT:  Okay, so --
20              MR. L. FRIEDMAN:  We agree, your Honor.
21              THE COURT:  Okay, it's just an encouragement.  I
22   don't want to put a deadline but there's nothing wrong with
23   staggering the production.  Somehow, deadlines frequently
24   function exactly as that and everything gets produced at
25   that time.  This isn't the sort of case where I know the
```

1  attorneys are doing that but we do get a lot of discovery
2  done in this courthouse the week before a conference.
3          MR. GLATTER:  No.  Just to be clear, we understand
4  that in part, the plaintiff profile form is designed to be a
5  tool that will streamline depositions of the plaintiffs
6  regardless of whether you characterize an inquiry as
7  liability versus damages.  And even for those plaintiffs
8  that will be done, it needs to be provided in sufficiently
9  advanced time, so that it's a useful exercise.
10         THE COURT:  Okay.
11         MR. GLATTER:  So we agree, your Honor.
12         THE COURT:  Okay.  With respect to expert
13 discovery, have you been talking about experts that you'll
14 be utilizing?
15         MR. L. FRIEDMAN:  Not with each other.  We have
16 our schedule to identify our experts and to give the first
17 round of reports in June and in August.
18         THE COURT:  Do you think it might make sense,
19 before you even designate the experts, to give notice of the
20 types of experts, so that you won't be scrambling to get an
21 expert after you get the reports from the other side?
22         MR. GLATTER:  Subject to additional comments from
23 my colleagues, my own sense is that it probably is more
24 useful at this point for us to continue focusing on the fact
25 discovery to really get a sense as to what types of experts

```
 1  we think we'll need, because it's always difficult in
 2  general to anticipate what type of a rebuttal expert may be
 3  needed or where the other side is coming from.  So to date,
 4  it hasn't really been a principal focus for us, other than
 5  in I think a general sense of certain types of experts that
 6  are endemic to terrorism and terrafinance cases, so it
 7  hasn't been a principal focus of ours.
 8              THE COURT:  Well, all I'm suggesting is that
 9  without having to designate who your -- right now -- I'll
10  take a step back -- your schedule basically gives you 45
11  days to come up with a rebuttal expert and the report of the
12  rebuttal expert.  And I'm wondering if you perhaps could
13  think about what experts you're going to, what type of
14  experts you're going to retain and if it's useful for you to
15  know what type of expert your adversary will be retaining
16  other than in rebuttal, so that you'll have some extra time
17  to find a rebuttal expert and to have that expert produce a
18  report.
19              MR. GLATTER:  Speaking for the Weiss plaintiffs,
20  we would have no objection to setting up a meet and confer
21  session with defense counsel to talk generally about the --
22              THE COURT:  Okay.
23              MR. GLATTER:  In other words, not a specific
24  expert but a category of expert --
25              THE COURT:  Yes, yes.
```

```
 1              MR. GLATTER:  -- that's likely to come up, so that
 2   we can build that in, and it's just a function of carving
 3   out the time for the confer session.
 4              THE COURT:  Okay.
 5              MR. L. FRIEDMAN:  As I understand your Honor's
 6   suggestion, it would be that the parties would exchange
 7   information on the topics of expert testimony.
 8              THE COURT:  Right, right.
 9              MR. L. FRIEDMAN:  I'm happy to discuss that with
10   plaintiffs' counsel.
11              THE COURT:  Okay, so I'll just drop a footnote to
12   the proposed schedule that you are to meet and confer as far
13   in advance as possible on the topics of the experts and, if
14   necessary, the particular types of expertise you're looking
15   at.  Usually, the topics should suffice but sometimes not.
16              MR. GLATTER:  No, and it may very well be that if
17   there's a particular category of expert that is that
18   controversial for expert vetting reasons, we may be able to
19   address it with your Honor in advance, from a cost savings
20   perspective.  But again, it depends obviously on the -- I
21   think there are a number of categories of experts.  For
22   example, issues of banking that are probably no surprise
23   that both sides will want to designate people to address
24   that topic and to clarify certain technical issues for the
25   issue, but we'll have a better sense of that once we meet
```

```
 1  and confer and see what our thinking is.
 2              THE COURT:  Okay.  Well, I would view any disputes
 3  really more to be evidentiary issues rather than discovery
 4  issues.  You can designate whoever you want and then make
 5  your argument to the trial court that that expert shouldn't
 6  be permitted to testify.
 7              MR. GLATTER:  I agree.  There have been a few
 8  limited instances I've seen, for example, where a
 9  particularly type of expert, that no matter who's
10  designated, it's raising issues that are purely for example
11  a matter of law, that sometimes a court will address that up
12  front and center or come up with some guidelines as to what
13  kind of testimony is or isn't appropriate that will, even if
14  that expert is designated, may help streamline and make more
15  efficient discovery attendant to it.  But again, in the
16  abstract, it's always hard to do that until you know who
17  you're talking about and what opinions they intend to offer.
18              THE COURT:  Okay.  I have, on rare occasions,
19  opined on the admissibility of evidence at trial, if it will
20  in fact impact the scope of discovery, but I am generally
21  hesitant to do so.
22              MR. GLATTER:  Noted, your Honor.
23              THE COURT:  Okay.  I think that's it then.  Should
24  we set a tentative next conference date?
25              MR. GLATTER:  Sure.
```

1       THE COURT: That will be subject to adjustment as
2  issues arise. Before we do that, are there any other issues
3  you wanted to discuss with me that's on the schedule?
4       MR. GLATTER: Your Honor, just one I guess sort of
5  housekeeping, procedural question. In terms of where we go
6  from here, having now presented the proposed scheduling
7  orders, it's a function to I guess no longer make them
8  proposed but entering scheduling orders.
9       THE COURT: Yes. It's my intent to read every
10 word more carefully than I have. I've only tried to absorb
11 the intent of the submissions, and I will sign some sort of
12 scheduling order. Based on what we've discussed, I don't
13 think there's any reason why I won't just sign this one.
14      The only thing I would say is I don't sign loose
15 signatures with nothing on the page other than my signature.
16 So we will reformat it or I will just squeeze my name at the
17 bottom of the second page and then add something about
18 meeting and conferring regarding the types of expert, topics
19 of expert before June 15th.
20      MR. L. FRIEDMAN: In terms of the next date, your
21 Honor, I know that we're trying to set up depositions in New
22 York in January and February. I've discussed this with my
23 adversary but I would suggest maybe we schedule to come back
24 in early March or at least have a telephone conference in
25 early March, unless we need your Honor before then.

1    THE COURT:  Okay.  Does that make sense?
2    UNIDENTIFIED SPEAKER:  Can we just agree to
3 contact chambers at some point after the New Year and figure
4 our your availability and what the schedule of depositions
5 will be, rather than make you move a date, as we did on the
6 last occasion.
7    THE COURT:  If you give me enough warning, it's
8 alright.  It doesn't matter.  I trust that you will come
9 with me with (ui), so that's fine.  When will you be able to
10 call chambers to schedule the next conference, so I can let
11 my secretary know to call one of you?
12    MR. L. FRIEDMAN:  You don't want to set a control
13 date now?
14    MR. GLATTER:  We can set it down as a holding
15 date.
16    MR. L. FRIEDMAN:  Why don't we set down a control
17 date for the week of March 2, your Honor?
18    THE COURT:  Okay.  The 5th at 10:30?
19    MR. GLATTER:  10:30 is fine for us, your Honor.
20    THE COURT:  If you want it -- if you're scheduling
21 it around depositions, I can have it either earlier or
22 later.
23    MR. L. FRIEDMAN:  No, that's fine.
24    THE COURT:  10:30 is fine, okay.
25    MR. L. FRIEDMAN:  Thank you, your Honor.

```
 1              THE COURT:  Feel free to change it to a telephone
 2   conference, if it ends up being a conference of this sort
 3   again.
 4              MR. L. FRIEDMAN:  Thank you, your Honor.
 5              MR. GLATTER:  Yes, your Honor.  Thank you.
 6              * * * * * * * * * * * * *
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18      I certify that the foregoing is a correct transcript
19   from the electronic sound recording of the proceedings in
20   the above-entitled matter.
21
22
23   [signature]
24
25   ELIZABETH BARRON                          January 14, 2009
```