```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK



----------------------------X
                            :
MOSES STRAUSS, et al.,      :    07-CV-916 (DGT)(MDG)
                            :    05-CV-4622 (DGT)(MDG)
              Plaintiff,    :
                            :    July 22, 2011
                            :
              V.            :    Brooklyn, New York
                            :
CREDIT LYONNAIS, S.A.,      :
                            :
              Defendant.    :
----------------------------X


        TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
         BEFORE THE HONORABLE MARILYN D. GO
            UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JOSHUA GLATTER, ESQ.
                            JOEL ISRAEL, ESQ.




For the Defendant:          LAWRENCE FRIEDMAN, ESQ.
                            EMILY PIKONY EXTIS, ESQ.


Audio Operator:


Court Transcriber:          ARIA TRANSCRIPTIONS
                            c/o Elizabeth Barron
                            375 Salt Point Turnpike, #5D
                            Poughkeepsie, NY 12603
                            (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE COURT:  Weiss v. National Westminster Bank,

2     Docket Number 05-CV-4622; Applebaum v. Nat. West., Docket

3     number 07-CV-916.

4          Will counsel appearing please state their names

5     for the record.  For the plaintiff?

6          MR. GLATTER:  Good morning, your Honor.  Joshua

7     Glatter, Osen LLC on behalf of the Weiss plaintiffs.

8          MR. ISRAEL:   Your Honor, this is Joel Israel from

9     Sales Werdner (ph) here on behalf of the Applebaum

10    plaintiffs.

11         MR. FRIEDMAN:  Your Honor, Lawrence Friedman,

12    Ovram Luft, and Emily Piccone Extis on behalf of Nat. West.

13         THE COURT:  Good morning everybody.  This is

14    essentially a scheduling conference, so let me ask you what

15    you propose.

16         MR. FRIEDMAN:  Yes, your Honor.  We are pleased to

17    report that the parties have exchanged responses to

18    contention interrogatories and we've held one meet and

19    confer on questions that each side has raised with respect

20    to the adequacy of the other's responses.  I'm also pleased

21    to report that the points of controversy are far less

22    extensive than they were in the Strauss and Wolff cases.

23    The parties are scheduled to have a second meet and confer

24    next week, in which we hope to finalize what interrogatory

25    responses, if any, need to be the subject of motion practice

1    and which can merely be addressed with supplemental

2    responses.

3           We have agreed to propose to your Honor that no

4    later than August 3 we'll submit a letter to your Honor with

5    the proposed briefing schedule, if, as I suspect, there will

6    be at least one or two responses that will be the subject of

7    motion practice.  So we would propose to your Honor a

8    schedule for letter writing on that subject.  If not, if

9    there are no disputes, then we would propose another date to

10   speak to your Honor about the next stage in the proceeding,

11   which I think would be similar to what we did in the Strauss

12   and Wolff cases.  We would have a schedule for the

13   submission of pre-motion conference letters to Judge

14   Irizarry for summary judgment.

15          That's where we are.  So the proposal we're making

16   for your Honor's approval is for your Honor to set August 3

17   as the date for the parties to either submit a briefing

18   schedule on motions to compel with respect to contention

19   interrogatories, or to inform the Court that they will be no

20   such motions, in which event we'll ask the Court to convene

21   another telephone conference to discuss the next step bring

22   matters to Judge Irizarry.

23          THE COURT:  Well, do we really need a conference

24   for that?

25          MR. FRIEDMAN: I suspect not.  So why don't I amend

1    the proposal with my adversaries' approval to say on August

2    3 we'll either have a briefing schedule or motions to

3    compel, or we will suggest to your Honor a schedule for the

4    submission of pre-motion conference letters to Judge

5    Irizarry.

6              THE COURT:  Mr. Glatter?

7              MR. GLATTER:  I suspect it will be the former, but

8    I'm pleased to inform your Honor that I think it will be far

9    less extensive than it was in Strauss in Wolff.

10             MR. ISRAEL:  Your Honor, this is Joel Israel.  I

11   agree with everything Mr. Friedman said and, fine, not

12   having an additional telephonic conference.

13             THE COURT:  Well, fine.  To the extent that

14   anybody wants to have a conference, even if we don't have to

15   go through motion practice, any other discovery issues here,

16   you can feel free to ask for a conference.

17             MR. FRIEDMAN:  Thank you, your Honor.

18             MR. GLATTER:  Thank you, your Honor.

19             THE COURT:  Before we move on to the Strauss

20   cases, the Strauss Applebaum case, I want to just confirm

21   with the parties that to the extent we make any changes in

22   the protective order in those two cases, you would consent

23   to the similar comparable amendments to the Weiss and Wolff

24   cases.

25             MR. FRIEDMAN:  Weiss and Applebaum cases.

1          THE COURT:  I'm sorry.  Weiss and Applebaum.  I'm

2   getting them mixed up.  Yes.

3          MR. FRIEDMAN:  Your Honor, from Nat. West.'s

4   perspective, I can tentatively say yes, but I hope your

5   Honor will indulge me that I've not raised that with my

6   client and I should before agreeing to it.

7          THE COURT:  Well, why don't you put that in your

8   letter too.

9          MR. FRIEDMAN:  Okay.

10          THE COURT:  As to whether you'll either advise me

11   that you'll consent to whatever we come up with in the

12   Strauss Wolff cases -- I'm getting totally confused no.

13          MR. FRIEDMAN:   That's right.  Nat. West. will

14   agree that the modifications that are made in Strauss and

15   Wolff will apply to Weiss and Applebaum.

16          Your Honor, if I may.  Will I know before August 3

17   what those changes are or --

18          THE COURT:  Well, that's why we sent you a notice

19   saying that we will discuss that today.

20          MR. FRIEDMAN:  Okay.  Right.  Obviously, my

21   ability to do it depends on whether --

22          THE COURT:  Right.

23          MR. FRIEDMAN:  -- I'm giving them a concrete

24   proposal or something that is still being considered by your

25   Honor.

```
1              THE COURT:  I don't want to be considering it as

2    of August 3, so I hope you will have something concrete to

3    discuss with your clients by then.  So you'll advise me at

4    that time too --

5              MR. FRIEDMAN:  Yes, I will.

6              THE COURT:  -- regarding whether or not we need to

7    go through motion practice or an amendment to the protective

8    order, since I'd like to get these issues cleared up before

9    you file your pre-motion letters.

10             MR. FRIEDMAN:   Yes, I will do that on August 3 as

11   well, your Honor.

12             THE COURT:  Okay.  So now we'll move on to the

13   Credit Lyonnais cases, Strauss, Wolff.

14             I don't see a tremendous amount of disagreement.

15   I read Mr. Glatter's letters as expressing a reluctance to

16   have to parse through what falls within the category of

17   protective information and what doesn't.

18             Is that a fair read, Mr. Glatter?

19             MR. GLATTER:  Your Honor, that's correct.  Just

20   hopefully clear in our letters, our fundamental position is

21   whatever modifications the Court adopts via to redacting

22   procedures or be it to determining that certain items just

23   simply shouldn't be designated as highly confidential or

24   not.  We believe that it's fair and appropriate to ask

25   defendant to once the initial papers and exhibits to any
```

1  motions are submitted under seal, to thereafter handle the

2  job of redacting as your Honor deems appropriate under any

3  revised protective order that you issue.

4      I think it's also fair to say that the other

5  issues identified in my letters were intended as really food

6  for thought for the Court in terms of what the scope of any

7  future, or rather, amended protective order ought to be, but

8  that bottom line is from logistic standpoint.  Your Honor

9  has it exactly right.

10     THE COURT:  Well, we did look at the proposed

11 redactions.  I think they give us a basis for a better

12 understanding of how I view redactions ought to be made.  I

13 think by and large the redactions proposed are appropriate.

14 Perhaps, my problems with some of the redactions are similar

15 to yours, Mr. Glatter.  Although, I do agree with Mr.

16 Friedman's response that the disclosure of certain customers

17 was appropriate precisely because they were listed in the

18 last amended complaint of the plaintiff or in some other

19 public filings.

20     So that being said, let me just raise four points

21 that we noticed regarding redactions that we'd like some

22 clarification on from the defendant.

23     With respect to redactions relating to Elwafa

24 (ph), there is no question that there have been public

25 filings concerning the blockage of the Elwafa wire transfer.

1    More specifically, in your letter filed on April 13, 2009,

2    Document 205, you did discuss the fact that there was a

3    blockage.

4            MR. FRIEDMAN:  Your Honor, when you say "public

5    filings," I'm not sure what your Honor is referring to.

6            THE COURT:  Unsealed filings.

7            MR. FRIEDMAN:  I'm surprised to hear that that

8    letter would not be under seal for the reason that the

9    actual -- when your Honor said "filings," the filings that

10   the New York Branch of Credit Lyonnais made with respect to

11   the Elwafa blockage are confidential as a matter of law.

12   The bank is not permitted to disclose them.  So the actual

13   filing with Fin. Cen. and the New York State Banking

14   Department and the rest of it is something that is

15   confidential as a matter of law is not to be disclosed. If a

16   letter to the Court discussing this was put into the public

17   court file, it shouldn't been because we have intended to

18   keep that subject under seal because it's a requirement of

19   US law not to discuss what you report to the federal

20   government and others for obvious reasons.

21           THE COURT:  Well, the letter discussed the

22   blockage and not any filings with governmental authorities.

23   I'm just wondering if this consideration is what prompted

24   you to file the document unsealed.

25           MR. FRIEDMAN:  I'm just calling it up on my

1    computer, if I may, your Honor.

2              The way your Honor is describing the letter, which

3    I don't have complete recall of, I'm surprised that it's

4    something that would have been filed in the public record

5    precisely as I said.  In fact, I have here on -- if your

6    Honor doesn't mind, let me just --

7              THE COURT:  Much of the letter had nothing to do

8    with the blockage.  Most of it concerned

9    Mr. Mon Beron (ph).

10             MR. FRIEDMAN:  Right.  I now see that.  I have it

11   on my screen.

12             THE COURT:  So if you go down to page 4 near the

13   bottom, there is some discussion of --

14             MR. FRIEDMAN:  I see that, your Honor, and it's

15   referring to Osen's argument.

16             THE COURT:  Right.

17             MR. FRIEDMAN:  Yes, I see that.  There is a

18   reference here to the block of the transfer by CBSP to

19   Alwafa (ph).

20             THE COURT:  Right.  Alwafa, I'm sorry.

21             MR. FRIEDMAN:  It goes on to say he's referring to

22   the fact that in his branch in New York froze and reported

23   to OFAC, the dollar denominated transfer et cetera, et

24   cetera.

25             So your Honor is right.  If this is in the public

 1    record, then that information is there.

 2           If I may, I think it would be a bit of the "tail

 3    wagging the dog: to have that be the basis for saying this

 4    should not be redacted because that document should be under

 5    seal.  I recognize in looking at it that it doesn't say

 6    that, but there was certainly no intention on our part to

 7    put into the public record this information.  Based upon my

 8    understanding of the regulations, OFAC and others would be

 9    unhappy if that is a matter of public record.  The fact that

10    it got through once and maybe other times, I submit should

11    not be a basis for saying it should not be redacted going

12    forward when obviously that's our intention.

13           THE COURT:  Is there objection to now sealing that

14    document, Mr. Glatter and Mr. Israel?

15           MR. GLATTER:  This is Mr. Glatter.  On behalf of

16    the Strauss plaintiffs, no, we don't have any objection.  As

17    we've noted in our prior letters we, frankly, never

18    objected, other than our reservation of rights to anything

19    that the defendant has chosen to file under seal in the

20    past.

21           THE COURT:  All right.  Okay.

22           MR. ISRAEL:  Your Honor, Joel Israel.  I concur.

23           THE COURT:  All right.  We will grant your request

24    to seal Document 205.

25           MR. FRIEDMAN:   Thank you, your Honor.

1              THE COURT:  Now, there were several redactions

2     regarding the TRACFIN in declaration.  Now, in Judge Sifton

3     and Matsumoto's orders there is discussion that Credit

4     Lyonnais discussed in a press release that it had filed a

5     TRACFIN declaration.  So the fact that the declaration as

6     filed is publicly disclosed.

7              Right now, in the proposed the more specific

8     language concerning confidential information, you talk about

9     the contents of the declaration filed with TRACFIN.  So it

10    would strike us that a discussion that you did file a

11    TRACFIN report or a discussion to TRACFIN documents may be

12    appropriate.  More specifically, you redacted from the

13    plaintiffs' discussion in a letter filed on June 6 that you

14    redacted a discussion -- a reference to TRACFIN's 2001

15    annual report, and you didn't redact the actual report that

16    was attached to the plaintiffs' letter.  I don't know if

17    this is an oversight or some inconsistency.

18              MR. FRIEDMAN:   No, it wasn't, your Honor.  It was

19    my best effort -- I know exactly what your Honor is

20    referring to.  It was my best effort to draw a line that

21    made sense.  I'm trying to do what I can to steer the right

22    course between what I understand to be the requirements of

23    French Law and the Court's interest in having as much

24    information in the public record as possible.

25              Just as I am sitting here in my office now with

```
 1   Mr. Extit, I can tell you that before we did these
 2   redactions, we recognized the fact that any conscious reader
 3   of these documents would be able to reverse engineer and
 4   say: Hmm, they're submitting the annual report of TRACFIN;
 5   that must be where they filed the report.  I am aware of
 6   that, and I don't want to misuse plaintiffs' phrase of, "No
 7   good deed going unpunished," but I'm doing the best I can to
 8   steer a middle course.  If I erred on the side of
 9   disclosure, I think that should be a point in our favor
10   not --
11           THE COURT:  No, that's fine.  But it makes sense
12   that you would disclose the annual report and then redact
13   discussion and the plaintiffs' letter.
14           MR. FRIEDMAN:   But, your Honor, the annual
15   report, obviously, is a public document and I thought it
16   would be a bit arrogant of me to redact a public document.
17           THE COURT:  All right.  I'm fine with that.  Not
18   only would it be arrogant, it would be contrary to the
19   protective order that's partly in place and contrary to
20   what's being proposed.
21           MR. FRIEDMAN:  Now, with respect to the disclosure
22   of the TRACFIN filing in Judge Sifton's decision -- I don't
23   have it in front of me nor do I have the Credit Lyonnais
24   press release in front of me.  If it's not an imposition,
25   your Honor, I suspect has Judge Sifton's decision.  Does it
```

1   refer to the TRACFIN filing by the name "TRACFIN"?

2          THE COURT:  Yes.  Yes.  Actually, I don't have

3   that in front of me, but perhaps we can discuss that in a

4   minute.  We're grabbing it.

5          MR. FRIEDMAN:  The more important point, your

6   Honor, is obviously the contents of the TRACFIN declaration.

7   Again, as I said in my letters, I think the point that's

8   conclusive on that is that your Honor represented to the

9   French Ministry of Justice --

10         THE COURT:  I agree.  I will do whatever I can to

11  protect the contents of the declaration.  But our reading of

12  the plaintiffs' letter is that there is simply a

13  reference --

14         MR. FRIEDMAN:  Your Honor, if Judge Sifton's

15  decision refers to the fact that it's TRACFIN and,  frankly

16  more importantly, if Credit Lyonnais press release

17  specifically identifies that it's TRACFIN, then just what

18  are plain vanilla references to the fact that it was a

19  filing with TRACFIN, we don't need to redact.  But again --

20         THE COURT:  Why don't you go back and look at the

21  redactions that you propose in the plaintiffs' June 6 letter

22  and the redactions on page 2 and 3 concerning that as well

23  as.  I think those are the two main places.  Just review

24  your redactions there.

25         MR. FRIEDMAN:  I'll do that, your Honor.

1          MR. GLATTER:  Your Honor, I do have the press

2    release.  I don't know if you need me to at least clarify

3    what I see in the specific press release in another filing.

4    I'm happy to do so, if you'd like.

5          THE COURT:  I recall reading it not that long ago.

6    It's attached to your complaint, isn't it, your last amended

7    complaint?

8          MR. GLATTER:  Yes.  The press release, the January

9    6, 2006 press release, was appended to our complaint, which

10   at least the English translation I have states that in view

11   of unusual activity occurring in the association's main

12   account, Credit Lyonnais reported such activity as required

13   by law.  At least looking at the January 6 press release

14   itself, I don't see within in there a specific reference to

15   TRACFIN.  My recollection, however, is that in addition to

16   Judge Sifton's decision partially denying defendant's motion

17   to dismiss, that Judge Matsumoto in I believe both of her

18   decision concerning bank secrecy referenced the TRACFIN

19   filing specifically.

20          THE COURT:  Yes.

21          MR. GLATTER:  Finally, your Honor, as was in

22   footnote 7 of my July 12 letter to the Court, the defendant

23   appended to its motion to dismiss an article that appeared

24   on the same day, on January 6, 2006, an Argence (ph) French

25   Press, which quoted a Credit Lyonnais spokesperson.  That

1    article does specifically reference TRACFIN and some other

2    details about the CVSP closure, which are summarized in my

3    letter.

4              MR. FRIEDMAN:   Yes.  I see it in Judge

5    Matsumoto's decision, your Honor.

6              THE COURT:  Yes.

7              MR. FRIEDMAN:   To me that is sufficient.

8              THE COURT:  Okay.

9              MR. FRIEDMAN:  And I think we should revisit our

10   redaction where all we're doing -- or all someone is doing

11   is referring to the fact that a filing was made with

12   TRACFIN.  We should not redact that, but we should limit the

13   redactions to the contents of the TRACFIN declaration.

14             THE COURT:  Yes, okay.  I'd appreciate that.  I

15   was just pointing this out as an example.

16             MR. FRIEDMAN:  I stand corrected on that.

17             THE COURT:  The last category of redactions

18   touches upon what I had alluded to in passing about perhaps

19   a disclosure in general about the nature of an account may

20   not necessarily violate your obligations.  You had, in

21   several instances, redacted discussion regarding a spike in

22   CVSP's donations after terrorist attacks.  I still stand by

23   my view that there is no disclosure of specific amounts,

24   dates, or persons involved, customers, the recipients, the

25   sender, that that should be publicly disclosed.

```
 1            Perhaps what might be the best way to deal with
 2   that is I will put in our amended protective order that so
 3   long as any discussion about accounts doesn't disclose
 4   specific amounts, dates, parties involved, as well as who
 5   are non-public persons involved, as well as very specific
 6   account information that is delineated in the protective
 7   order that there should not be redactions.
 8            MR. FRIEDMAN:  I can't object to that, your Honor.
 9            THE COURT:  Okay.  Let's just talk about the
10   specifics of the protective order.
11            Do you have the o ne that was filed that's
12   currently in effect in front of you?
13            MR. FRIEDMAN:   I don't, but through technology
14   can call it up right away.
15            THE COURT:  Okay.
16            MR. GLATTER:  I believe that's March 10, 2006.
17            THE COURT:  Yes, Document 7 very early on in this
18   case.
19            MR. FRIEDMAN:  I have it in front of me.
20            THE COURT:  Okay.  I see, essentially, your
21   specific descriptions as being put somewhere at the
22   beginning and would be substituted for what's in paragraph
23   1(a), those various subsections.  I gather from your
24   statements one or two conferences ago little "I" would not
25   need to be part of this protective order.
```

1           Is that correct, Mr. Friedman?

2           MR. FRIEDMAN:  Right.

3           THE COURT:  That's trade secrets and/or other

4    proprietary and sensitive commercial or financial

5    information.

6           MR. FRIEDMAN:  Correct.

7           THE COURT:  Okay.  Then your letter would cover

8    double little "I".

9           MR. FRIEDMAN:  My seven categories would fit into

10   double little "I".

11          THE COURT:  Right.  I would assume that we would

12   keep triple little "I"?

13          MR. FRIEDMAN:  I would.

14          THE COURT:  Right? Okay.

15          MR. FRIEDMAN:  And plaintiffs would.

16          THE COURT:  That way we don't have to come back

17   and amend the protective order again.

18          This confidential protective order separates out

19   two categories between confidential and highly confidential.

20   Does it make sense to do that anymore?

21          MR. FRIEDMAN:  If we're limiting it to these seven

22   categories plus what's in Roman F3, I would think not.  I'm

23   just looking at the order and see that what we're concerned

24   about is court filings, and this provides for court filings

25   to be under seal whether it's confidential or highly

1   confidential.  So I think we can yell it back to just one

2   level.

3              THE COURT:  Okay.

4              MR. GLATTER:  Your Honor, this is Mr. Glatter.

5   Just as a logistics point.  The only technical concern I

6   have is that the definition of "highly confidential" also

7   encompasses certain categories of material germane to

8   plaintiffs, specifically, medical records and what's

9   described in paragraph 1(c) as material of a highly personal

10  nature, some of which may be covered under HIPAA or similar

11  statutes.  It specifically references plaintiffs addresses,

12  phone numbers, social security numbers, passport ID numbers,

13  et cetera.  So I would hope -- I think we need to make sure

14  if we're going to collapse the designation protocol, that at

15  least it's clear how they're being collapsed and that

16  preserves that enhanced protection for that sort of material

17  for plaintiffs.

18             THE COURT:  Well, I think a possible solution, and

19  I'll as both of you to think about it, is to use the one

20  category.  Paragraph 4, which talks about disclosure of

21  confidential information, should apply generally because I

22  think you've basically been permitting all the persons

23  identified in paragraph 4 to have contact with that

24  information.  Right?  Or should we just eliminate that and

25  stick with category five, disclosure of highly confidential

1  in fact?

2         MR. FRIEDMAN:  I'm just scrolling through this,

3  your Honor, and I don't see a difference --

4         THE COURT:  Not much difference between them.

5         MR. FRIEDMAN:  -- between the population to which

6  confidential information to be disclosed and highly

7  confidential information.

8         THE COURT:  Okay.

9         MR. GLATTER:  Yes.  I'm looking over it.  I think

10  that's at paragraphs 4 and 5 of the order, correct?

11         THE COURT:  Right.

12         MR. FRIEDMAN:  Yes.

13         MR. GLATTER:  At least based on a very quick skim,

14  I believe I agree with Mr. Friedman that it may be an

15  artificial distinction in terms of the universe of folks

16  that this material can be turned over to.  If that's the

17  case, then it's just sort of a -- it was put in there

18  initially as a "belt and suspenders."  I don't think it's an

19  issue, at least on our end.

20         THE COURT:  Okay.

21         MR. GLATTER:  Anything I'm overlooking here?

22         MR. FRIEDMAN:  No.

23         THE COURT:  That was my view.  Basically, you

24  should just eliminate the two categories and use one.

25         The last issue is really the procedure for making

1   sure that matters are protected and unduly burdening the

2   plaintiff who have a slightly different view as to

3   redactions or fearful that they may not share the same view

4   as to what is protected.

5          As I mentioned earlier, because of the bundling

6   rule I think we might be able to accomplish the concerns of

7   both sides by having the plaintiff initially, when it sends

8   filings, serves papers on the defendant, to indicate what it

9   believes is information that would be subject to protection

10  under the protective order and then give the defendant a

11  right to designate some additional protections.  Ultimately,

12  perhaps, the defendant shall be the party filing these

13  documents.  I think you can work out the procedure.   But

14  the only issue I have is to make sure that with the last

15  submission with respect to a motion, that if it's a

16  plaintiffs' document that the defendant respond in a fairly

17  short period of time.

18          MR. FRIEDMAN:  Your Honor, I think it is.  I

19  believe that the last filing with the plaintiffs' reply

20  brief on their summary judgment motion.

21          THE COURT:  Right.  So that's the only issue.

22  It's the turnaround time on that filing.

23          MR. GLATTER:  Your Honor, this is Mr. Glatter.  I

24  think it's probably not a terribly dangerous forecast to

25  make that it's likely that plaintiffs, both in any of their

1    affirmative motions for summary judgment or in opposition,

2    will likely be citing or referencing testimony or attaching

3    documents or quoting from documents that would -- I would be

4    very surprised if defendant didn't view them as falling into

5    one or several of the categories of information setting

6    aside those discrete areas that this morning your Honor has

7    carved out because of the prior disclosures.

8            So I think I hear your Honor heading with this,

9    which at least from plaintiffs' standpoint we're in accord

10   with, is we certainly don't have any issue of pointing out

11   to the defendant that in our view it appears that a good

12   deal of material in a filing would likely fall under the

13   categories as defendant sees them.  We just ask that the

14   defendant then assume the burden of redacting it

15   accordingly.

16           MR. FRIEDMAN:  Your Honor, what Mr. Glatter just

17   said is to my ears the opposite of what your Honor said when

18   he's trying to recapture what he suggested to your Honor,

19   but what I understood your Honor just to be rejecting.

20           What I understood your Honor to be saying is that

21   everybody undertakes the burden of redacting their own

22   documents and we consult, so that before anything is filed

23   we have agreement.  To the extent we have disagreement,

24   which I doubt will happen, we bring it to the Court; but, I

25   don't think it's fair to do what Mr. Glatter just said,

which is to foist on us the burden of redacting their

document.

MR. GLATTER:  Your Honor, my only brief response

in that regard is that fundamentally I think what we're

saying is at the end of the day, we're not going to quarrel

with the defendant as to what the scope is that it chooses

to redact, at least, to its own documents.  What we want to

avoid from a logistic standpoint is a scenario where we have

to engage in an extended meet and confer process or debate

as to whether or not particular materials fall within or

without a particular category outside of these very discrete

areas that your Honor has identified for us earlier in this

call.  I'm somewhat surprised that Mr. Friedman quarrels

with what I'm proposing because it gives the defendant a

fair degree of license to redact as it sees fit.

MR. FRIEDMAN:  Your Honor, I guess when he

switches from Larry to Mr. Friedman, I should worry, but I'd

understood your Honor to be suggesting that everybody takes

care of their "own laundry."  To the extent they disagree,

they talk about it.

But I think what Mr. Glatter is proposing is that,

for example, in their opposition to our summary judgment

motion, they'll give us a clean copy as they usually would,

and we mark it up for what we think should be redacted.  I'd

like him to take the burden in the first instance of

1   expediting the process by indicating what he thinks should

2   be redacted.  I will do the same with my papers, and to

3   continue the metaphor, it will "all come out in the wash"

4   and there will be an agreed, redacted version that will be

5   publicly filed.

6           THE COURT:  Well, the only difference I'm hearing

7   is who goes through the physical act of making the

8   redactions.

9           MR. FRIEDMAN:  To their own papers.

10          THE COURT:  Of their own papers.

11          MR. FRIEDMAN:  I think that is the disagreement.

12  I had understood your Honor's suggestion to be that each

13  side in the first instance would take care of their own

14  papers, and that's what I believe is fair.  I know in Mr.

15  Glatter's letters to the Court he suggested let Credit

16  Lyonnais do it all, and I just don't think that's fair.

17          MR. GLATTER:  Your Honor, I don't want to belabor

18  the point, other than Mr. Friedman or Larry is free to call

19  me Joshua or Mr. Glatter anytime.  It's all good with me.

20          What I understood your Honor to be saying and if I

21  misunderstood it, then I apologize, is that certainly the

22  party has an obligation, although it may be self-evident

23  from the papers, to point out to the defendant or to either

24  side that there is material in there that at some level

25  falls within the scope of the protective order as amended.

1   I can certainly envision a scenario where we might have to

2   confer with respect to, for example, whether or not some

3   reference to a TRACFIN filing, the TRACFIN filing, for some

4   reason permits continued redaction notwithstanding your

5   Honor's observations and order today.

6          But that's a little bit different from having to

7   have a squabble about whether or not, for example -- let's

8   assume hypothetically -- the defendant attaches plaintiffs

9   responses to contention interrogatory to his summary

10  judgment papers and the response notes -- I'm actually

11  looking at the portion that wasn't redacted in what Mr.

12  Friedman submitted earlier -- noted that (ui) brought the

13  file, and that there was a large an unexplained increase in

14  the number and amounts of deposits into CVSP's primary

15  account in October and November 2000, and there's

16  perception, et cetera, et cetera.  That was actually not

17  redacted in the material in the versions that defendant

18  submitted to your Honor last week.

19          THE COURT:  Well, I think whatever we agree on

20  with respect to these contention interrogatories will hold.

21  So you can basically take that document and use it as

22  redacted.

23          MR. GLATTER:  Right.

24          THE COURT:  So you don't need to revisit any of

25  the documents that have been redacted that have been filed

1    with respect to the motions to compel further responses to

2    the contention interrogatories.  Mr. Friedman will make some

3    of the changes, as I have asked him to take a look at.

4    Otherwise, those documents shall be redacted the way they've

5    been redacted as proposed by the defendant.

6            MR. GLATTER:  May I make then, perhaps, an

7    alternative suggestion to the Court and to defense counsel.

8            Setting aside the physical act of getting the

9    redacting tape out, perhaps what makes sense is that the

10   plaintiffs identify -- because of the bundling rule, the

11   defendant will have an opportunity to see our papers and to

12   then advise us as to the scope of material it believes must

13   be redacted, based on the modified protective order.

14           MR. FRIEDMAN:  Your Honor, that's the same thing

15   he suggested before and I understand it, your Honor is going

16   to issue an amended protective order that will lay out the

17   categories.  So what I hear Mr. Glatter doing is keep going

18   back to his same proposal.  I think that what your Honor

19   suggested, regardless of what your Honor suggested,

20   everybody should take care of their own papers.  Everybody

21   should suggest what they think should be redacted in their

22   own papers.  If the other side disagrees, they can get on

23   the phone and talk about it before a public filing is made.

24   This is not very complicated and --

25           THE COURT:  Wait.

```
1           MR. GLATTER:  Your Honor, if I could --
2           THE COURT:  Yes.  Mr. Glatter, I hear you
3   proposing that you will be ultimately making the redactions.
4   What you're stepping back from is -- I mean will you make,
5   when you serve your papers, your initial indications as to
6   what you think are confidential?
7           MR. GLATTER:  I mean I suppose we can try to do
8   that, but again we're still -- before Mr. Friedman
9   interrupted me, what I was trying to say is that, obviously,
10  from the plaintiffs' standpoint we don't engage in the
11  subjective determination as to whether particular
12  information or references to information or references to
13  testimony falls within particular categories.  That kind of
14  puts us in a situation of standing in the shoes of defendant
15  and trying to assess whether or not it falls within either a
16  narrow or broad construction of a particular category.
17           So what I had proposed is that the defendant can -
18  - that was why it was fair and reasonable for the defendant
19  to say:  Okay. We've seen the papers that are going to be
20  filed under the bundle rule; this is the material that we
21  believe should be redacted.  If there is some dispute -- and
22  it's only a fairly narrow category of information that would
23  be disputed -- we'll advise them of that and meet and
24  confer.  This way, the defendant has the right to sit in
25  the driver's seat and to identify for itself based on its
```

1   own French Bank secrecy concerns as to what it prefers to

2   keep under redaction, rather than putting us to the task of

3   essentially subbrogating to their position and evaluating it

4   from their perspective.

5           MR. FRIEDMAN:  Your Honor, is going -- this is --

6   I just don't -- your Honor is going to issue an order with

7   specific categories of what should be redacted.  We're going

8   to be in the same situation we are today, except we're going

9   to have different categories.

10          Mr. Glatter is now telling your Honor: I'm not

11  going to be able to interpret and apply that order and I

12  need the defendant's guidance to do so.  Well, that means

13  there's something wrong with the order.  I don't think

14  there's going to be something wrong with the order.  Your

15  Honor has told us that your Honor is going to amend the

16  order and provide specific categories.  Each party should,

17  in the first instance, apply those categories and not look

18  to the other party, in the first instance, to tell them how

19  to do it.

20          In the second instance, if they think I've over

21  redacted, if I think they've under redacted in our

22  respective proposals to one another, that's fine.  But I

23  don't understand why the plaintiff should be permitted to

24  abdicate its responsibility to apply the order and why it

25  should all be foisted on me.   That's not how it works.

1          MR. GLATTER:  Your Honor, I don't think it's fair

2     to categorize that as abdicating the order.  It's a question

3     of since the interests that are being advanced here with

4     respect to protecting this sort of information are those of

5     the defendant on the basis of foreign law, which I presume

6     your Honor will document in an amended order.  I would also

7     note --

8          THE COURT:  No, I'm not actually.  I will --

9          MR. GLATTER:  Okay.

10         THE COURT:  We have reviewed (ui) submissions, but

11    no.  Much as I would love to be able to write at length

12    about this fascinating topic, I'm not going to.  I'm going

13    to issue a protective order and I might throw in some

14    "whereas" clauses, but you're not going to get a decision on

15    the need for a protective order.

16         MR. FRIEDMAN:  I infer from what your Honor said

17    earlier that your Honor will specify several categories,

18    perhaps seven or so, with modifications to the way I phrase

19    them in line with what your Honor said earlier.  Each side

20    will apply that order to its own papers and we'll talk about

21    any differences we have, but it's not to be done

22    unilaterally by one party.  Everybody is responsible for

23    their own "knitting."  That's the way we've always done it;

24    that's the way it should be here.

25         THE COURT:  I agree, Mr. Glatter.  I think in the

1    first instance, you'll provide a redacted copy of your

2    submissions, but I don't require you to "read the tea

3    leaves" and to try to figure out what the defendant will

4    otherwise want redacted.

5             MR. GLATTER:   Fine, your Honor.

6             THE COURT:   Both sides are obliged to comply with

7    the productive order, just as I would not expect the

8    defendant not to follow the protective order, should we ever

9    get to the phase where we will be dealing with the

10   plaintiffs' personal information.

11             Once you get the redacted copies,

12   Mr. Friedman, you will add to whatever you think is

13   appropriate, so advise Mr. Glatter.  If Mr. Glatter feels

14   that he has a problem with any of the redactions suggested,

15   you will try to confer if there is a need to confer.

16   Otherwise, you'll send it to me and you will then tell me,

17   Mr. Friedman, what category you think this information falls

18   under.   All right?

19             MR. FRIEDMAN:   That's fine, your Honor.

20             MR. GLATTER:   Your Honor, just one on a logistics

21   note then.  If I understand, then the redacted version of

22   let's say plaintiffs' opposition to defendant's motion for

23   summary judgment, that would be provided contemporaneously

24   at that time, but prior to filing under Judge Irizarry's

25   bundle rule?

1          THE COURT:  Right.

2          MR. GLATTER:  In other words, the parties aren't

3  going to wait until all papers are in, evaluate them once

4  the bundle is together, and at that time say here's what

5  each side thinks should be redacted or not.  I guess I

6  should have been clearer -- I thought that the latter might

7  have been where your Honor was heading towards, but I take

8  it that that's not the case.

9          THE COURT:  No.

10          MR. FRIEDMAN:  Mr. Glatter, if I may, I think

11  we're both going to desire not to impose upon ourselves the

12  burden of doing it absolutely contemporaneously.  It should

13  be done as promptly as possible thereafter.  But because we

14  each have a tendency to go right up against the deadline for

15  serving papers, I think we can give it a couple of days.

16          MR. GLATTER:  I have no problem with that.  The

17  bundling rule obviously facilitates that.  I agree a hundred

18  percent.

19          THE COURT:  Right.  Okay.  So the redacted version

20  should come within a day or two of the

21  service --

22          MR. GLATTER:  Correct.

23          THE COURT:  -- of the unredacted papers?

24          MR. GLATTER:  Correct.

25          THE COURT:  Any proposed changes should be

```
 1   submitted -- we'll, just set two days, two days, okay.

 2   Redactions by the preparing party will be provided within

 3   two days after service of the original document, and any

 4   additional proposed redactions or objections will be served

 5   within two days after that, two business days.

 6             MR. FRIEDMAN:  In each instance, your Honor,

 7   please, two business days.

 8             THE COURT:  Two business days.

 9             MR. GLATTER:  Yes, two business days.

10             THE COURT:  That's meaningless; isn't it,

11   gentleman?

12             MR. FRIEDMAN:  Not for me.

13             THE COURT:  Okay.

14             MR. GLATTER:  Your Honor, in the end when the

15   documents are actually filed with the Court, you still want

16   plaintiffs to file their own motion and related papers?

17             THE COURT:  Well, I guess that can be quite

18   cumbersome.  I think each moving party will file all the

19   documents.

20             MR. GLATTER:  Okay.

21             MR. FRIEDMAN:  Okay.

22             THE COURT:  I think that's a fair way to do it.

23   It will insure some sort of sense in the filings I think.

24             MR. GLATTER:  That's my understanding of how I've

25   practiced under the eastern district bundling rule before.
```

1          THE COURT:  Right.

2          MR. GLATTER:  The moving party submits the papers

3    on its motion.

4          MR. ISRAEL:  I suppose the only practical impact

5    that would have is on the schedule, the current deadline for

6    us to submit our reply brief on our summary judgment

7    December 16 and the deadline to file is December 19.  We're

8    only talking about an extra day or two at this point, but

9    presumably --

10          THE COURT:  Right.

11          MR. ISRAEL:  -- we would be filing now by I guess

12    by December 22.

13          THE COURT:  Okay.  One last thing is you will be

14    filing the redacted copies publicly and providing the Court

15    with unredacted copies, a set to be sealed and a set for the

16    Judge.

17          MR. GLATTER:  Correct.

18          THE COURT:  Or however many sets she requires.

19          Now, if it is your preference to have the sealed

20    complete documents available, let me propose to you what I

21    am going to require you to do with respect to the motion

22    papers for the contention interrogatories.  If you wish to

23    proceed down this route, I guess it's possible.  It actually

24    imposes more work on us, but we've already filed those

25    documents under seal with restricted access; meaning, that

1    the Court and the parties can access the sealed documents.

2              I'm going to ask all of you to file the redacted

3    copies once Mr. Friedman changes the redactions in

4    accordance with what we've discussed today, and to file

5    those redacted copies under the civil event notice.  You

6    would say, "Redacted copy of document 259 filed under seal."

7    You do have the ability to cross-reference previously filed

8    documents, as you know.

9              MR. FRIEDMAN:  Right.

10             THE COURT:  Do you understand what I'm saying?

11             MR. FRIEDMAN:  In other words, if hypothetically

12   the document was currently listed on the docket as Document

13   263 and today we're filing that same document, it will be

14   Document 300, which would be a redacted version of 263?

15             THE COURT:  Right.

16             MR. FRIEDMAN:  Got it.

17             MR. GLATTER:  So what I will do, your Honor, is I

18   will take back what I submitted to your Honor the week

19   before last.  I will re-redact it more minimally.  I'll show

20   it to my friends and once we're agreed on it, we will file

21   it.

22             THE COURT:  That's right.  Now, just to help you

23   out, the documents that we filed under seal began with

24   Document 257.  Basically, you would just, as I proposed,

25   you'd file the document under notice, copy of redacted

1    document such and such filed under seal.

2          Unfortunately, as you know, because of the page

3    limitations for any single filing, sometimes you're going to

4    have to file many attachments to the document.  Maybe with

5    respect to some of the documents with smaller exhibits, I

6    guess you could file the exhibits in one filing.  You can

7    see how we've filed it on the docket sheet.  I will let you

8    file as you see appropriate.

9          MR. FRIEDMAN:  Okay.

10         THE COURT:  Okay?

11         MR. GLATTER:  Am I correct -- sorry to prolong

12   this -- your Honor will be issuing a revised version of the

13   protective order?

14         THE COURT:  Yes, but I'd like both sides to take a

15   look at it.  If you have any other great ideas, perhaps you

16   can just send me or fax me a marked up copy.

17         MR. GLATTER:  Will do.

18         THE COURT:  All right.

19         MR. GLATTER:  Would it be helpful for your Honor

20   to have -- I don't know whose system it's on, but a Word

21   version of the March 2006 documents?

22         THE COURT:  Sure.  Why don't I -- after we go off

23   the record, I'll have you talk to my law clerk and you can

24   just email it to him.

25         MR. FRIEDMAN: Okay.  Josh and Joel, looking at the

1    documents, I think it's on one of your systems because it

2    has, I think, an Osen LLC document number on it 15067,

3    Version One.

4           THE COURT:  It's not a real serious issue.  I have

5    actually already pulled up the text in the PDF document

6    because you can do that.

7           MR. GLATTER:  Okay.  Then we won't bother your

8    Honor with --

9           THE COURT:  But if you can find it, that's always

10   appropriated because the formatting is never quite right --

11          MR. GLATTER:  Okay.

12          THE COURT:  -- when you pull it off PDF.

13          MR. FRIEDMAN:  One of my colleagues who has better

14   ability to kind of track -- I just want to make sure that

15   whatever we sent was, in fact, the operative version that

16   was actually entered rather than the risk of it being some

17   interim draft.  One of the people that best could ascertain

18   that is out today at a deposition, so I may have to follow

19   up on it early next week.

20          THE COURT:  That's fine.  We're not going to get

21   it out this weekend.

22          MR. FRIEDMAN:  Okay.

23          THE COURT:  Isn't tomorrow a work day?

24          MR. FRIEDMAN:  Always, your Honor.

25          THE COURT:  Okay.

1          MR. GLATTER:  No, your Honor.  Thank you very

2    much, your Honor.

3          THE COURT:  Keep cool.

4          MR. GLATTER:  Okay.

5          MR. FRIEDMAN:  Thank you, your Honor.  Have a good

6    weekend.

7          THE COURT:  You, too.

8                    * * * * * * * * *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct transcript

19 from the electronic sound recording of the proceedings in

20 the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                          August 2, 2011