# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

Writer's Direct Dial +1 212 225 2840
E-Mail lfriedman@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO

September 28, 2011

BY ECF

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: Applebaum, et al. v. National Westminster Bank, Plc, 07-cv-916 (DLI) (MDG)
> Weiss, et al. v. National Westminster Bank, Plc, 05-cv-4622 (DLI) (MDG)

Dear Judge Irizarry:

Defendant National Westminster Bank Plc ("NatWest") respectfully requests that Your Honor permit it to move for summary judgment, as the Court permitted Crédit Lyonnais, S.A. ("CL") to do in plaintiffs' parallel Strauss and Wolf lawsuits against CL. NatWest proposes to serve its motion 45 days after plaintiffs comply with Magistrate Judge Go's September 16 Order compelling additional discovery. NatWest will demonstrate that the admissible evidence does not permit a reasonable juror to find that plaintiffs have satisfied any of the same three indispensable elements of their claims that CL has addressed in its motion – scienter, proximate causation/Article III standing and that Hamas perpetrated the attacks at issue.

1. The subject matter of these lawsuits. Akin to the Strauss and Wolf lawsuits, plaintiffs allege here that NatWest, one of the United Kingdom's leading banks, knowingly provided material support and financing in violation of the civil provisions of the U.S. Anti-Terrorism Act (the "ATA"), 18 U.S.C. §§ 2333(a), 2339B and 2339C, for 15 terrorist attacks that occurred in Israel and the Palestinian Territories between 2002 and 2004, and by which plaintiffs claim to have been injured.[1] Plaintiffs base this allegation on NatWest's provision of routine banking services in the U.K. to a lawful, registered U.K. charity, the Palestinian Relief and Development Fund, or "Interpal." According to Interpal's public statements and the findings

---

[1] By agreement of the parties and with the Court's approval, these lawsuits have been bifurcated for purposes of discovery and trial between liability and damages issues.

issued by several U.K. law enforcement and regulatory authorities when they repeatedly rejected the same allegations about Interpal that plaintiffs make here, Interpal solicits donations in the U.K. to fund humanitarian projects in the Palestinian Territories. Interpal deposited certain of these donations into its NatWest accounts in London, and periodically instructed NatWest to transfer these funds to local charities in the Palestinian Territories. Plaintiffs allege that Interpal is not a true charity, and instead finances Hamas terrorism – an allegation that U.K. law enforcement and regulatory authorities have repeatedly rejected – including the 15 attacks that resulted in plaintiffs' injuries, by transferring the donations it receives in the U.K. to entities that plaintiffs contend are <u>alter egos</u> of and/or controlled by Hamas. Finally, plaintiffs seek to attribute responsibility for these attacks and plaintiffs' injuries to NatWest by alleging – as the ATA requires – that NatWest knew, or was willfully blind to whether Interpal was funding Hamas or Hamas terrorism, and that Interpal's transfers from those accounts proximately caused the 15 attacks at issue.

  2. <u>Plaintiffs cannot prove the scienter element of their claims</u>. The ATA requires plaintiffs to prove that NatWest acted with "malice" and an "evil motive" by "knowingly provid[ing] material support or resources" to Hamas, which in turn requires plaintiffs to prove that NatWest knew Interpal was funding Hamas and intended that Interpal's funds transfers would be used to carry out terrorist attacks. <u>Kaplan v. Al Jazeera</u>, 2011 WL 2314783, at *4 (S.D.N.Y. June 7, 2011); <u>Goldberg v. UBS AG</u>, 660 F. Supp. 2d 410, 427-28 (E.D.N.Y. 2009). Plaintiffs also contend they can establish NatWest's liability by proving it was "willfully blind" to whether Interpal was funding Hamas or Hamas terrorism, a standard that requires plaintiffs to prove NatWest subjectively believed it was highly probable that Interpal was engaged in that misconduct, and then took deliberate actions "to avoid learning of that fact." <u>Global-Tech Appliances, Inc. v. SEB S.A.</u>, 131 S. Ct. 2060, 2070 (2011).

  Because there is no direct evidence to support a <u>scienter</u> finding here, plaintiffs allege principally that NatWest knew Interpal's funds transfers were being used to finance Hamas or Hamas terrorism based upon circumstantial inferences plaintiffs argue should be drawn from NatWest's observations of the operation of Interpal's accounts. But the admissible evidence concerning these observations precludes a juror from reasonably inferring that the bank knew Interpal was funding Hamas or Hamas terrorism. Further, NatWest's actions based on its observations are the very antithesis of "willful blindness." That is because NatWest <u>did</u> at times suspect that Interpal might be engaged in funding Hamas terrorism, and as a result the bank made no fewer than <u>five</u> detailed disclosures to U.K. law enforcement authorities and regulators about its suspicions, reporting facts the bank would be expected to have hidden if, as plaintiffs contend, it maliciously intended to aid Hamas. Then, after extensive investigations, prompted by NatWest's disclosures and accusations made by others, those U.K. law enforcement authorities and regulators repeatedly rejected allegations that Interpal was engaged in such misconduct, and also expressly assured NatWest that it could continue to provide banking services to Interpal absent learning that Interpal was funding Hamas.

  For the period after August 22, 2003, plaintiffs contend NatWest knew Interpal was funding Hamas or Hamas terrorism because it knew that the U.S. Treasury Department's

Office of Foreign Assets Control ("OFAC") had so concluded for the purpose of OFAC's own U.S. asset freezing regulations. But NatWest also knew the U.K. government expressly disagreed with OFAC's conclusion, and NatWest relied upon its own government's conclusions and assurances in deciding to maintain Interpal's accounts. That scenario precludes plaintiffs' attempt to vest NatWest with knowledge that OFAC's contrary conclusion was the correct one. Further, it is indisputable that, as a matter of U.S. law, OFAC's regulations and decisions do not apply to NatWest's provision of banking services to a U.K. customer in the U.K., and accordingly they cannot define the content of NatWest's knowledge in this context.

   3. <u>Plaintiffs cannot prove their proximate causation or standing allegations</u>. Plaintiffs rely for these allegations on the same evidence they have cited against CL. As CL has shown in support of its summary judgment motion, plaintiffs cannot prove the required proximate causal relationship between the banks' funds transfers on behalf of their customers and Hamas's alleged commission of the terrorist attacks at issue. Plaintiffs actually concede they cannot show that <u>any</u> of these funds were used for, or in any way facilitated any of the 15 attacks at issue. Plaintiffs contend instead that (a) the Palestinian charities that received these funds were <u>alter egos</u> of and/or controlled by Hamas, and (b) this fact alone suffices to prove these transfers proximately caused the attacks because, pursuant to what plaintiffs refer to as their "fungibility" theory, the banks should have foreseen that transfers to any of these charities for any purpose would either fund the attacks or would free other funds to become available for that purpose. But plaintiffs have failed as a matter of law to show that <u>any</u> of these charities were <u>alter egos</u> of and/or controlled by Hamas (and in any event the two "expert" opinions plaintiffs rely on for this purpose are inadmissible under <u>Daubert</u> and several Second Circuit precedents). Further, plaintiffs' "fungibility" theory cannot establish the necessary proximate causal relationship between the banks' conduct and the attacks, as Judge Rakoff recently ruled in <u>Rothstein v. UBS AG</u>, 722 F. Supp. 2d 511 (S.D.N.Y. 2011).

   4. <u>Plaintiffs cannot prove that Hamas perpetrated the attacks</u>. Plaintiffs also rely for this allegation on the same evidence they have cited against CL. As CL has shown in support of its summary judgment motion, plaintiffs cannot prove this element because all three of the "expert" opinions and all of the rank hearsay documents that constitute plaintiffs' sole evidence for this element are inadmissible under <u>Daubert</u> and several Second Circuit precedents.

   Accordingly, the Court should permit NatWest to move for summary judgment. Further, due to the complexity of these matters and because NatWest must as part of its motion also address the <u>Daubert</u>-based exclusion of seven of plaintiffs' "expert" witnesses, NatWest respectfully requests that the Court allow 50 pages for the parties' initial briefs and 20 pages for NatWest's reply, the same as the Court allowed in the <u>Strauss</u> and <u>Wolf</u> cases.

                   Respectfully,

                   Lawrence B. Friedman

cc: All counsel of record