

Treasury Legal Advisers

**HM Treasury**
1 Horse Guards Road
London SW1A 2HQ

Direct Line: (020) 7270 5612
Stephen.Cromie@hmtreasury.gsi.gov.uk

6 December 2011

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201 USA

Dear Judge Irizarry

**Re: Applebaum, et al. v. National Westminster Bank, Plc, 07-cv-916 (DLI) (MDG)**

**Weiss, et al. v. National Westminster Bank, Plc, 05-cv-4622 (DLI) (MDG)**

The attached statement of interest is being submitted in the above-referenced lawsuits on behalf of Her Majesty's Treasury.

Yours sincerely,

**STEPHEN CROMIE**
**Legal Adviser**




UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TZVI WEISS, et al.,

                        Plaintiffs,               Case No. 05-cv-4622 (DLI) (MDG)

                    - against –

NATIONAL WESTMINSTER BANK PLC,

                      Defendant.

------------------------------------------------------------X
NATAN APPLEBAUM, et al.,

                        Plaintiffs,

                    - against –               Case No. 07-cv-916 (DLI) (MDG)

NATIONAL WESTMINSTER BANK PLC,

                      Defendant.

------------------------------------------------------------X

## STATEMENT OF INTEREST OF HER MAJESTY'S TREASURY

**I, Nicholas Joicey, of Her Majesty's Treasury, 1 Horse Guards Road, London SW1A 2HQ, hereby state as follows**:

1. I am the Director for International Finance at Her Majesty's Treasury ("**the Treasury**"). I am authorised to make this statement on behalf of the Treasury.

2. The Treasury is the United Kingdom's Economics and Finance Ministry. Its responsibilities include the implementation and administration of international financial sanctions in effect in the United Kingdom, domestic designations under the Terrorist Asset-Freezing etc. Act 2010 and licensing exemptions to financial sanctions.

1

## Measures to counter terrorist financing

3. **Financial sanctions**: the United Kingdom is strongly committed to preventing terrorism and the financing of terrorism. The UK has a well-developed financial sanctions regime, pursuant to which the Government has power to designate individuals or entities that it believes to be involved in terrorism; and which imposes asset freezes on individuals or entities so designated, either by the UK or by the EU. The UK's terrorist asset freezing regime has been assessed by the Financial Action Task Force as being fully compliant with FATF Special Recommendation III.

4. Such sanctions were first imposed pursuant to the Terrorism (United Nations Measures) Order 2001 ("the 2001 Order"), which gave effect in the UK to U.N. Security Council Resolution 1373, made on 28 September 2001. The 2001 Order made it an offence to provide funds to any person who committed, facilitated or participated in the commission of acts of terrorism. It gave the Treasury power to identify by notice anyone whom it had reasonable grounds to suspect of being such a person.

5. The statute currently applicable is the Terrorist Asset-Freezing etc Act 2010 ("the 2010 Act"). The 2010 Act freezes the funds of any person whom the EU has designated and of any person whom the Treasury has designated on the basis that the Treasury reasonably believes the person is involved in terrorist activity. The effect of a designation is to prohibit any dealing with funds held, owned or controlled by a designated person. It is an offence to provide funds to a designated person knowing, or having reasonable cause to suspect, that it is designated.

6. The Treasury's Asset Freezing Unit publishes notices of designation-related decisions. Hamas has been designated by the EU, and has therefore been designated under the 2010 Act and its predecessor legislation (since 2003).

7. **Proscription of terrorist groups:** legislation directed to the proscribing of what are now referred to as terrorist groups goes back at least to the Prevention of Violence (Temporary Provisions) Act 1939. The statute currently applicable is the Terrorism Act 2000 ("the 2000 Act"), which provides a mechanism for the proscription of organisations believed to be involved in terrorism.

8. Under the 2000 Act, it is a criminal offence to be a member of, or provide active support for, a proscribed group. The offences under the 2000 Act include possessing, providing, inviting others to provide, or receiving money or other property where the person knows or has reasonable cause to suspect that the money or property will or may be used for the purposes of terrorism. It is also an

2

offence to enter into or become concerned in an arrangement as the result of which money or other property is made available for the purposes of terrorism, and to conceal or launder terrorist property. In this context, "the purposes of terrorism" includes action for the benefit of a proscribed organisation, and "terrorist property" includes the resources of a proscribed organisation.

9. The 2000 Act allows a court to order the forfeiture of any money or other property which had been used for the purposes of terrorism, or which was intended to be used for the purposes of terrorism, following a conviction for a terrorist finance offence. The court's forfeiture powers extend to cases where there are convictions for other specified terrorism offences and offences with a terrorism connection.

10. The military wing of Hamas is a proscribed organisation under the 2000 Act.

11. **Reporting suspicious activity**: the UK also has laws to prevent terrorist financing by requiring persons to report any suspicious client/customer activity that might indicate (inter alia) terrorist financing, of which they become aware during the course of their business or employment. The National Terrorist Financial Investigation Unit ("NTFIU") (a part of Special Branch in the Metropolitan Police) and the Serious and Organised Crime Agency ("SOCA") (created in 2006 following the merger of the National Criminal Intelligence Service ["NCIS"] and other law enforcement agencies) investigate such 'suspicious activity reports'. In addition, the Financial Services Authority (the regulator for the financial services industry in the UK) requires banks and other financial institutions to have effective controls for detecting money laundering and terrorist financing.

12. **FATF**: the UK is a member of the Financial Action Task Force, or "FATF," an international body that develops policies to combat terrorist financing for consideration by member states when formulating relevant domestic legislation. The Treasury has power under the Counter-Terrorism Act 2008 to regulate or prohibit transactions by the financial sector in relation to a particular country, or persons in or incorporated in that country, where FATF has called for measures to be taken against that country because of the risk it presents of money laundering or terrorist financing.

## Interpal

13. The Palestinians Relief and Development Fund ("Interpal") is a registered charity in the United Kingdom. Interpal was investigated by the UK Charity Commission in 1996, 2003 and 2009, but those investigations did not result in any criminal action being taken against Interpal or lead to the Treasury designating or the Home Office proscribing it. Accordingly it is in the same position under

the UK anti-terrorism and sanctions legislation described above as is any other entity that has not been designated or proscribed. Nor have charges that it has provided funds to a designated or proscribed person ever been brought under such legislation.

14. Accordingly, there is, and has been, no bar under English law to the Defendant providing banking services to Interpal. The Defendant in making its own business decisions was entitled to rely on the conclusions reached by the Charity Commission in relation to the charity.

## Extraterritorial application of US law

15. The sovereign right of each nation to prescribe laws and adjudicate claims regarding persons within its territory is basic to international law. Where more than one state claims jurisdiction, each should do so in a way that is compatible with the exercise of jurisdiction by the others.

16. The primary bases for assertion of jurisdiction accepted under international law are: (i) substantial conduct within a state's territory; (ii) nationality or domicile of the defendant and (iii), more controversially, conduct outside the state's territory having a substantial effect inside its territory. Where extraterritorial jurisdiction is asserted, as in (iii), it is subject to the guiding principle that it must be exercised reasonably and proportionately, and should not intervene in the territorial jurisdiction of other states[1].

17. For the courts of a state to seek to assert jurisdiction more widely than this risks conflict between different states' courts, may undermine cooperation between regulators and/or courts, and subjects those over whom the jurisdiction is exercised to onerous, uncertain and conflicting rulings. All these dangers are present in this case.

18. The Defendant[2] is a UK company and its relationship with Interpal, a UK-registered charity, was conducted in the UK and governed by English law. In its conduct of that relationship, the Defendant has not been accused of any breach of English law.

19. None of the bases of jurisdiction mentioned above which would justify the US court imposing US law upon the Defendant appears to be satisfied in this case.

---

[1] See, for the propositions stated in these two paragraphs, Restatement (Third) of the Foreign Relations Law of the United States (1987), paragraphs 402-3; and Brownlie, Principles of International Law, 7th edition, page 311-2.

[2] As a result of financial support provided during the financial crisis of 2008/9, the Treasury owns approximately 68 per cent. of the voting share capital and 83 per cent of the total share capital of Royal Bank of Scotland Group plc (plus one enhanced dividend access share). The Defendant is a member of that group.

Such an imposition of US law to penalise the Defendant for providing banking services to Interpal would not be reasonable or proportionate. Nor, given the UK's comprehensive regime to counter terrorist financing, described above, could an extraterritorial assertion of US jurisdiction be justified on the basis of remedying gaps in another state's systems of regulation.

20. The Treasury is concerned that, despite this, the Defendant's conduct should be alleged to be a violation of US law giving rise to liability in the US courts. In the Treasury's view, the issue of the Defendant's liability should be assessed solely in accordance with English law.

Executed on 5 December 2011

*[signature]*

**Nicholas Joicey**
Her Majesty's Treasury,
1 Horse Guards Road
London SW1A 2HQ
United Kingdom