SAYLES | WERBNER

May 7, 2012

**VIA ELECTRONIC FILING**
Honorable Marilyn D. Go
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> RE:   *Weiss, et al. v. National Westminster Bank, PLC* – Case No. CV-05-4622;
> *Applebaum, et al. v. National Westminster Bank, PLC* – Case No. CV-07-091;
> *Wolf, et al. v. Crèdit Lyonnais, S.A.* – Case No. CV-07-0914;
> *Strauss, et al. v. Crèdit Lyonnais, S.A.* – Case No. CV-06-00702.

Dear Magistrate Judge Go:

We write on behalf of all Plaintiffs in response to the May 1, 2012 letter motion to compel filed on behalf of Defendants Credit Lyonnais and National Westminster Bank (collectively, "Defendants"). In spite of a more-than-three-year process of the liability-witness Plaintiffs providing hundreds of authorizations, opening up their medical records to unlimited scrutiny by defense counsel, and offering to provide official wage records for three years prior to their respective attacks through the present, Defendants now ask the Court to permit them to cross well over the bounds of privacy and relevancy by intruding further into their backgrounds through methods entirely unnecessary to providing Defendants with a complete record. Though a plaintiff implicitly accedes to certain personal disclosures by filing a civil lawsuit, Defendants unbounded request for substantively unlimited IRS, SSA, and employment authorizations goes well beyond the scope of Rule 26, and should be rejected. The demand for SSA records also should be rejected as an improper request for collateral source materials.

**I.     Current Scope of the Liability-Witness Plaintiffs' Production**

Beginning in early 2009, all Plaintiffs completed 25-page "Profile Forms" that included information on each Plaintiff's claim such as employment information for all those seeking lost-wage compensation as well as descriptions of their physical and emotional injuries and treatment sought for same. Some Plaintiffs went beyond completing the extensive form: liability-witness Jack Baxter, for example, provided an additional 81 pages of records and information about his damages. The stated and agreed-upon purpose of the Profile Forms was to streamline the discovery process and reduce the burden on Plaintiffs; but as explained herein, Defendants' motion would eliminate that purpose and efficiency and unduly inconvenience Plaintiffs without conferring any net benefit to this process.

Honorable Marilyn D. Go
May 7, 2012
Page 2

Immediately after completing Profile Forms, the liability-witness Plaintiffs began providing notarized medical authorizations for those providers indicated in their profile forms, even though *all* Plaintiffs already had produced thousands of medical records years ago near the outset of the litigation. This authorization process has continued for the past three years, and Plaintiffs have willingly completed hundreds of forms even where duplicative of records already produced and even where authorizations had already been sent to the relevant provider. Moreover, the liability-witness Plaintiffs also agreed to a process whereby they provided blanket authorizations for "Kupat Cholim," the official Israeli records repository, to send all Israeli medical records pertaining to those Plaintiffs, even though duplicative of requests already made to specific Israeli providers and even though the authorizations yielded irrelevant records of an exceedingly personal nature dating back several decades. In the interests of ensuring they were providing full disclosure of their injuries, Plaintiffs have agreed to these processes despite their personally invasive nature. Thus, the result of the Profile Forms has been the exact opposite of its stated purpose. Those liability-witness Plaintiffs with lost-wage claims also have offered to obtain and provide the only relevant information shedding light on those claims – copies of W-2s and related information on past and present wages – however Defendants rejected that proposal because they baselessly do not trust Plaintiffs to provide accurate information.

## II.   The Impropriety of Defendants' Demands

A.   **IRS Authorizations**. Only in a September 12, 2011 letter to Plaintiffs did Defendants first request the completion of IRS and SSA authorizations. With regard to IRS returns, requests for invasive financial records such as tax returns require a showing by the party seeking the records demonstrating both relevance and a compelling need because the information is not otherwise readily available from a less intrusive source. *See, e.g., Dunkin' Donuts Franchised Rests. LLC v. Grand Central Donuts, Inc*, 2009 WL 973363, at *2 (E.D.N.Y. Apr. 9, 2009) (J. Go). The "compelling need" element typically is met where the requesting party already has sought to obtain the information through less intrusive means, such as a deposition where questions as to claims of lost income can be posed. *See, e.g., Raba v. Suozzi*, 2007 WL 81932, at *2 (E.D.N.Y. Jan. 9, 2007).

Here, Plaintiffs have offered to provide W-2s or other official proof of wages from three years prior to their respective attacks through the present, providing Defendants with a complete picture of the pertinent financial information dating back up to 14 years. This plainly is a less intrusive means of Defendants obtaining the information than an unrestricted authorization. Defendants claim the latter is "narrowly tailored" when in fact it would go well beyond wages, providing Defendants with such irrelevant and exceedingly private information as Plaintiffs' investments and charitable contributions. Just as there was a limit on the scope of discovery Plaintiffs could obtain from the two Defendant banks, the same applies in reverse. Regardless of the protective order in this case, Defendants resisted producing documents pertaining to what it deemed to be irrelevant and private customer and other information, and Plaintiffs seek only reciprocal treatment. Plaintiffs are willing to provide wage documentation, prior to their depositions and on a basis as expeditious as the authorizations would provide, thus all Defendants are left with is to contend that Plaintiffs' process will be "incomplete" based on vague allegations of one Plaintiff providing partial information. Plaintiffs' offer to obtain

official records far exceeds the two-part standard in this District as enunciated above, and
Defendants are not entitled to further invade Plaintiffs' privacy for extraneous information.

   B.   **SSA Authorizations**. Defendants' demand for SSA authorizations is even further
afield of relevant information pertaining to Plaintiffs' lost-wage claims. The wage information
will be provided as described above, and the hundreds of medical authorizations and thousands
of pages of medical records obviate the need, much less a compelling one, for any duplicative
and invasive disability forms. Equally important, as Plaintiffs have reminded defense counsel as
early as an October 6, 2008 letter, Defendants' request improperly seeks information from a
collateral source provider, putting it outside the scope of proper discovery. *See, e.g., In State
Street Bank & Trust Co. ERISA Litig.*, 579 F.Supp.2d 512, 517 (S.D.N.Y. 2008).

   Federal courts "regularly apply" the collateral source rule to allow plaintiffs "to recover
damages from a tortfeasor though the plaintiff has already received compensation for its injuries
from a third-party and even when such an award would lead to double recovery." *Id*; citing
*Cunningham v. Rederiet Vindeggen A/S,* 333 F.2d 308, 316 (2nd Cir.1964); *see also Hartnett v.
Reiss S.S. Co.,* 421 F.2d 1011, 1016 (2nd Cir.1970) ("The general rule in the federal courts is that
the collateral source rule is applied....").[1]  For instance, in the context of benefits paid to
employees, the Supreme Court has recognized that like social security, benefits received "are not
directly attributable to the contribution of the employer, so they cannot be considered in
mitigation of the damages caused by the employer." *Eichel v. New York Cent. R.R. Co.*, 375
U.S. 253, 254 (1963). Because collateral source records consequently lack any relevance to
Plaintiffs' ATA claims, Magistrate Judge Pohorelsky denied Arab Bank plc's request for
production from these same Plaintiffs in 2007, and the records are no more relevant here.

   C.   **Employment Authorizations**. Defendants' rationale for needing to invade
Plaintiffs' employment records is even more specious, and in fact has shifted between the
parties' meet-and-confers and Defendants' letter to the Court. Defense counsel originally
insisted that they needed these authorizations in order to verify Plaintiffs' physical injuries.
Having now abandoned that untenable and absurd rationale, Defendants now argue that these
unfettered authorizations are necessary with respect to wage information. But this new
manufactured rationale fares no better than Defendants' original suggestion. Any wage
information is duplicative of that provided by W-2s or similar documentation as referenced
above; instead, complete employment files, like IRS Form 1099, would unnecessarily invade
Plaintiffs' privacy rights. This is not a Title VII employment case, where annual reviews or
disciplinary notes would shed any light on the triable issues, much less sufficiently to overcome
the harassing nature of the requests and compelling-need standard that Defendants must satisfy.

   Predictably, the case law on which Defendants rely provides no support to their position,
and none of them even addresses the substantial privacy issues that Plaintiffs raise. In *Robinson*

---

[1] The collateral source rule has been widely applied as a matter of federal law in cases such as this one involving
federal causes of action. *See, e.g., Thyssen, Inc. v. SIS Eurounity,* 21 F.3d 533, 537-38 (2nd Cir. 1994) (collateral
source rule applies in admiralty cases); *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525,535 (9th Cir. 1962)
(collateral source rule applies in a Jones Act case); *Perry v. Metro-North Commuter R.R.,* 716 F. Supp. 61, 62 (D.
Conn. 1989) (collateral source rule applies in Federal Employers Liability Act cases).

Honorable Marilyn D. Go
May 7, 2012
Page 4

*v. U.S.*, there is no evidence that the plaintiff had already provided his pre-existing medical records, much less exhaustively as Plaintiffs here have done, and there was a good-faith belief by the defendant in that case that the plaintiff had a preexisting back injury that was exacerbated by the slip-and-fall on the job about which the plaintiff was suing. 205 F.R.D. 104, 106-7 (W.D.N.Y. 2001). Here, Defendants want a blanket employment release for all Plaintiffs with no indication of arguable relevance as to any injury. The court in *Robinson* also did not establish that employment records are discoverable if there is a lost wage claim. Instead, the defendant argued that "if" the plaintiff had a lost wage claim, it should be entitled to prior employment records, but the plaintiff responded that it was not asserting a lost wage claim at that time, so the court did not order production on the basis of lost wages. *Id.* at 106. And the plaintiff in *Robinson*, given the lack of a lost wage claim, had of course not offered to provide the W-2 information himself as Plaintiffs here have done.

In *Bonta v. Accor North America, Inc.*, the plaintiff alleged lost wages, lost benefits, and lost career opportunities, and the court did order authorizations where: (1) there was no indication the plaintiff had offered to provide wage information; (2) the issue was decided under New York negligence law; and (3) the lost benefits claim opened the door to social security issues. 2010 WL 2869535, at *2-3 (W.D.N.Y. July 20, 2010). Finally, *Khan v. Delta Airlines* dealt with a forum non-conveniens dismissal based on a plaintiff falling after arriving on a Delta flight in Toronto. 2010 WL 3210717 (E.D.N.Y. Aug. 12, 2010) (J. Cogan). One factor the court considered in its forum analysis was the location of evidence, including records in Canada, and Judge Cogan simply noted that among other evidence the "plaintiff is seeking compensation for loss of income, which will require both parties to obtain his employment records to ascertain damages." *Id.* at *8. No categorical rule applicable to this case was delineated, particularly where the information is otherwise ascertainable by less intrusive means.

## III.   Conclusion

In accordance with this Court's ruling in *Dunkin' Donuts*, Plaintiffs have attempted for three years to provide Defendants with all medical records they seek and now have proactively offered less intrusive methods by which Defendants can discover the financial information they seek. The fact that Defendants mistrust Plaintiffs or want to obtain more information themselves does not entitle them to overbroad, harassing discovery. Accordingly, Defendants' request for authorizations should be denied.

Respectfully submitted,

Joel Israel
jisrael@swtriallaw.com
(214) 939-8763

cc:      All Counsel of Record

149867.v2