# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

Writer's Direct Dial:  +1 212 225 2840
E-Mail:  lfriedman@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

November 28, 2012

BY ECF

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: Strauss, et al. v. Crédit Lyonnais, S.A., 06-cv-702 (DLI) (MDG)
      Wolf, et al. v. Crédit Lyonnais, S.A., 07-cv-914 (DLI) (MDG)
      Weiss, et al. v. National Westminster Bank Plc, 05-cv-4622 (DLI) (MDG)
      Applebaum, et al. v. National Westminster Bank Plc, 07-cv-916 (DLI) (MDG)

Dear Judge Irizarry:

   I am writing on behalf of defendants CL and NatWest[1] to reply to plaintiffs' November 21 response ("Pl. Ltr.") to my November 13 letters, in which I detailed why Judge Weinstein's recent grant of summary judgment to Arab Bank in the Gill case further supports granting CL and NatWest the same relief here. Plaintiffs' November 21 letter misrepresents Judge Weinstein's rulings, relies on repeated straw man mischaracterizations of defendants' contentions and conjures immaterial distinctions between the defective evidence on which Mr. Gill relied and the defective evidence on which plaintiffs rely here.

   **1. Plaintiffs have failed to refute that Gill supports granting summary judgment to CL and NatWest on the proximate causation element of plaintiffs' claims.**

   Plaintiffs ignore Gill's teaching, consistent with similar precedents, that an ATA plaintiff must prove that his injuries "foreseeably follow from [the defendant's] deliberate actions."  See CL Ltr. at 3; NatWest Ltr. at 3. Plaintiffs likewise ignore that this foreseeability requirement stems from the ATA's deliberate borrowing from the Clayton Act's and RICO's

---

[1] All capitalized terms not defined in this letter are as defined in CL's November 13 letter to the Court (Dkt No. 216 in 07-cv-914) (DLI) (MDG) ("CL Ltr.") and/or NatWest's November 13 letter to the Court (Dkt No. 177 in 07-cv-916 (DLI) (MDG) ("NatWest Ltr.").

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE.

Hon. Dora L. Irizarry, U.S.D.J., p. 2

civil liability provisions the strictly construed "by reason of" standard of proximate causation, which Judge Rakoff ruled in Rothstein v. UBS AG, 772 F. Supp. 2d 511, 513 (S.D.N.Y. 2011) requires proof of proximate causation "narrowly defined," meaning proof that the challenged conduct led "directly" to the plaintiff's injuries and was a "substantial factor in the sequence of responsible causation," and that it was "reasonably foreseeable" that the conduct is "likely to result in violent criminal acts." See CL Br. at 18, 25-29; NatWest Br. at 21-22, 28-32.

Plaintiffs' failure to address this strict foreseeability requirement is not surprising, because they have presented no evidence that any of the 15 Attacks was the reasonably foreseeable consequence of any act or omission by CL or NatWest, or that either bank intended, or was reckless with respect to whether, their provision of routine banking services to their respective customers CBSP and Interpal would result in plaintiffs' injuries. See CL Ltr. at 3; NatWest Ltr. at 3.[2] Instead, plaintiffs' letter focuses on rebutting straw man arguments CL and NatWest have never made,[3] and harps on inapposite facts related to Arab Bank's alleged conduct.

Similarly, plaintiffs all but ignore Gill's holding that, based on the same evidence plaintiffs have presented here, no reasonable jury could conclude that the 13 Charities are alter egos of Hamas, thus dispensing with the only purportedly proximate causal link plaintiffs have asserted between Hamas and the banks' provision of routine banking services to their respective customers, CBSP and Interpal. See Gill at *27; CL Br. at 20-24; CL Reply at 11-12; NatWest Br. at 23-27; NatWest Reply at 17. Notably, plaintiffs do not argue that they can make a stronger showing here than was made in Gill, or that Judge Weinstein misapplied the relevant law.[4] Rather, they resurrect from their opposition briefs the straw man argument that whether plaintiffs fail to satisfy the proximate causation element of their claims is predicated on the exclusion of plaintiffs' causation experts, Levitt and Spitzen. See Pl. Ltr. at 5-6. But as both CL and NatWest have established, and as Gill confirms, plaintiffs cannot prove that the 13 Charities are controlled by or alter egos of Hamas, and thus cannot satisfy the proximate causation element of their claims, whether or not Levitt's and Spitzen's opinions are received in evidence. Gill at **9, 27; CL Br. at 20-24; CL Reply at 11-12; NatWest Br. at 23-27; NatWest Reply at 17. Thus, contrary to plaintiffs' argument, Pl. Ltr. at 6, there would be nothing "legally incoherent" in Your Honor ruling – as Judge Weinstein has ruled – that these purported experts' opinions are admissible but also of low probative value, and that because these opinions do not prove the 13 Charities were alter egos of Hamas, they cannot satisfy the ATA's proximate causation

---

[2] Plaintiffs' own experts' admissions demonstrate they have presented no evidence of any foreseeable connection between the charities that received fund transfers from CL's and NatWest's respective customers and any terror attacks. See CL Br. at 27-28; NatWest Br. at 29-30.

[3] CL and NatWest do not accuse plaintiffs of arguing that "the ATA eliminates a causation requirement" or that plaintiffs must "trac[e] money to a specific attack." See Pl. Ltr. at 3. See also 07-cv-914 (DLI) (MDG), Dkt No. 184 ("CL Café Hillel Br."), at 31 n. 21; NatWest Reply at 18-19. What they do contend is that the ATA has a proximate causation requirement that plaintiffs have not satisfied.

[4] Likewise, plaintiffs all but ignore Gill's endorsement of the control standard articulated by then-Judge Roberts in Nat'l Council of Resistance of Iran v. Dep't of State, the same precedent and the same standard on which CL and NatWest rely in this regard. CL Ltr. at 2; NatWest Ltr. at 2; CL Br. at 21-22; CL Reply at 11-12; NatWest Br. at 24-25; NatWest Reply at 17.

Hon. Dora L. Irizarry, U.S.D.J., p. 3

requirement. See October 3, 2012 Hr'g Tr., Gill v. Arab Bank, Plc, 11-cv-3706 (JBW) (VVP) at 34:24-25, 39:23-40:2; Gill at *27.

Nor are plaintiffs aided by their argument that, because Judge Weinstein ruled in Gill that there was insufficient evidence of a temporal connection between Arab Bank's transfer of funds of a sufficient magnitude to Hamas or its leaders and the attack that injured Mr. Gill in 2008 to establish proximate causation, plaintiffs here can establish proximate causation merely by proving temporal proximity between transfers of a sufficient magnitude from the accounts of CBSP and Interpal and the 15 Attacks. Pl. Ltr. at 4. The strict ATA proximate causation standards cited above belie that argument. Moreover, that argument's factual premise is fatally flawed because here, unlike in Gill, there is no allegation, let alone any evidence, of any transfers ever having been made to Hamas or its leaders at all. Instead, plaintiffs rely exclusively on transfers to the 13 Charities that plaintiffs allege – but have not offered sufficient evidence to prove – were alter egos of Hamas.[5] Thus, whether or not any of the transfers at issue here was close in time to any of the 15 Attacks, the reason plaintiffs cannot satisfy the proximate causation element of their claims is they cannot prove the alter ego status on which they solely rely, and thus cannot prove any funds were provided to Hamas, let alone that these transfers led "directly" or "foreseeably" to, or were a "substantial factor" in any attacks at all.

**2. Plaintiffs have failed to refute that Gill supports granting summary judgment to CL and NatWest on the scienter element of plaintiffs' claims.**

Plaintiffs' focus on whether "recklessness" is sufficient to sustain their claims, Pl. Ltr. at 7-8, begs the question as to what constitutes "recklessness" under the ATA, and the inescapable conclusion that, as defendants have shown, no reasonable juror could find such "recklessness" here.

First, contrary to plaintiffs' contention, Judge Weinstein agreed in Gill with CL's and NatWest's showing in support of their summary judgment motions that "mere recklessness" in the sense of negligence or even gross negligence is not sufficient to satisfy the ATA's scienter requirement, Gill at *12 – as Judge Gershon ruled in Linde and the Seventh Circuit ruled in Boim, see CL Reply Br. at 10 – and instead that "recklessness" under the ATA requires affirmative proof of a bank's conscious, deliberate disregard for a substantial risk that the services it is providing to its client would be used to perpetrate a terrorist attack, a standard that is identical to what courts refer to in other contexts as willful blindness. Accordingly, plaintiffs are wrong in contending that my November 13 letters misrepresent Gill to require "'deliberate indifference to'" a known risk, "'rising to the level of willful blindness.'" Pl. Ltr. at 7. To the contrary, Gill clearly states that to satisfy the ATA's recklessness requirement, a plaintiff must

---

[5] Nor do plaintiffs allege (nor have they proven) that either CL's French customer CBSP or NatWest's UK customer Interpal was controlled by or was an alter ego of Hamas. See CL Café Hillel Br. at 27-29; NatWest Br. at 23 n. 19; Weiss v. National Westminister Bank Plc, 453 F. Supp. 2d 609, 623 (E.D.N.Y. 2006) (holding that plaintiffs cannot rely on the provision of material support to Interpal and other organizations that plaintiffs did not allege were controlled by or operated on behalf of Hamas). Further, plaintiffs cannot prove either scienter or proximate causation based on CL's delivery to CBSP of its closing account balances after OFAC designated CBSP as an SDGT for purposes of OFAC's asset freezing regulations, see Pl. Ltr. at n.4, because (a) as a matter of law, plaintiffs cannot rely on OFAC's designation of CBSP as a proxy for proving CL's knowledge that CBSP was funding Hamas, and (b) as a matter of fact, there is no evidence as to what CBSP did with these funds, let alone that it provided them to Hamas. See CL Café Hillel Br. at 4-21, 26-30.

prove the defendant "consciously disregarded a substantial risk that the services it provided would end up in the hands of Hamas and be used to perpetrate a terrorist attack . . . ." Gill at *18. This "consciously disregarded" standard requires an affirmative decision by the bank not to address a known "substantial risk." Obviously, a bank cannot "consciously disregar[d]" a "substantial risk" without an affirmative decision to do so. This standard is therefore not only consistent with ATA precedents, but is identical to what courts refer to in other contexts as willful blindness. See CL Br. at 3-4; CL Reply at 10; NatWest Br. at 4; NatWest Reply at 12.[6]

Second, there is no evidence here that either CL or NatWest made any affirmative decision to disregard "a substantial risk that the services it provided would end up in the hands of Hamas and be used to perpetrate a terrorist attack." To the contrary, as each of CL and NatWest has shown, each bank (a) repeatedly took steps to address the risk that it had identified, and (b) repeatedly reported its suspicions concerning its customer to the relevant regulators and law enforcement authorities. Each bank hardly would have made those reports had it decided to "consciously disregar[d] a substantial risk that the services it provided would end up in the hands of Hamas and be used to perpetrate a terrorist attack;" the banks' actions in reporting their suspicions show exactly the opposite. See CL Br. at 6-10; CL Reply at 9-10; NatWest Br. at 7-11; NatWest Reply at 14-16. In essence, plaintiffs are attempting to rewrite the level of proof required for scienter because, as CL and NatWest have established, no reasonable juror could find either bank guilty of recklessness, as Gill defines it.

Nor should the Court be swayed by plaintiffs' repetition in their November 21 letter of the same blatant misrepresentations of the evidence on which plaintiffs relied in their briefs opposing the pending summary judgment motions. For example:

- It is indisputable that CL's only suspicion of its customer CBSP was that CBSP was engaged in money laundering, not terror financing, as demonstrated by CL's reporting of its suspicion to TRACFIN, which CL understood to be the French authority to which it was obligated to report a suspicion of money laundering, in contrast to a suspicion of terror financing, which CL understood should be reported to the police. CL Br. at 6-8. That plaintiffs claim not to believe CL's undisputed testimony to this effect is irrelevant.

- Plaintiffs' renewed misrepresentation of Robert Audren's testimony concerning the basis for and nature of his suspicion of CBSP, Pl. Ltr. at 8, fares no better than when plaintiffs introduced this same misrepresentation in their opposition brief. Audren's written statement and deposition testimony could not be clearer that his attention was drawn to CBSP because of deposits into its accounts, not the transfers from its accounts, which he testified he considered to be "perfectly coherent with the stated purpose" of CBSP, which was to support the welfare and solidarity of Palestinians. See CL Reply at 5-6. Further, Audren testified that he used the word "Islamist" to describe these charities as "practically synonymous with Muslim," and without any terrorism-related connotation. See id.

---

[6] See Linde v. Arab Bank, Plc, 384 F. Supp. 2d 571, 585 n. 8 (E.D.N.Y. 2005); Boim v. Holy Land Found. for Relief and Dev., 549 F.3d 685, 694 (7th Cir. 2008); see also Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2070 (2011).

- Plaintiffs' insistence that each bank's knowledge of OFAC's SDGT designation of its customer for purposes of OFAC's asset freezing regulations demonstrates that each bank knew its customer was funding Hamas, Pl. Ltr. at 9, attempts impermissibly to vest each bank with knowledge based on United States regulatory designations that, as a matter of law, indisputably did not apply to either bank's dealings with its customer outside the United States, and in the face of each bank's undisputed testimony that neither subjectively believed these designations applied to its dealings with its customers or were true, especially after each bank's home government declined to make the same designations and, to the contrary, permitted each bank's customer to continue to function to this day as an entirely lawful, unsanctioned entity. See CL Br. at 12-14; CL Café Hillel Br. at 6-12; NatWest Br. at 12-13.

- Plaintiffs' attempted analogy to the Gill decision's discussion of Arab Bank's transfers of funds to Osama Hamdan, Pl. Ltr. at 8-9, fails because, unlike Hamdan, who was named an SDGT as a senior leader of Hamas, none of the 13 Charities had been designated by the U.S., the UK, France or the EU at the time of the relevant transfers to them.

- Plaintiffs' assertion that NatWest "consulted with Interpal on how to best evade the U.S. sanctions against it," Pl. Ltr. at 9, grossly misrepresents the undisputed evidence,[7] as does their statement that the UK Charity Commission "discounted allegations of Interpal's support for terrorism as coming from a 'Jewish' source." Pl. Ltr. at 10; see Dkt No. 156-2 Exs. 16-17 in 07-cv-916 (DLI) (MDG).

- Plaintiffs' claim that NatWest "fatally" relies on the UK government's purported view of "Hamas's social organizations as being not part of Hamas," Pl. Ltr. at 10, is circular and nonsensical. Plaintiffs do not and cannot dispute that the UK government outlaws supporting Hamas, including through charitable activities. See NatWest Reply at 13 n.20. The UK government simply does not consider the 13 Charities to be part of Hamas. Even under plaintiffs' view that a designation by OFAC constitutes conclusive proof, because the U.S. government considers any charity controlled by Hamas to be indistinguishable from Hamas, the fact that the U.S. government had not designated any of the 13 Charities as being part of Hamas during the period when Interpal transferred funds to them proves the 13 Charities were not controlled by Hamas in the view of the U.S. government as well. See NatWest Br. at 30. Thus, even under plaintiffs' misguided interpretation of the ATA, they cannot plausibly contend that donations to these charities are "legally indistinguishable under the ATA from donations to Hamas's terrorist wing." Pl. Ltr. at 10.

- Although plaintiffs now concede they cannot defeat summary judgment by relying solely on inferences that a bank witness testified falsely, they still have not identified any "independent, affirmative evidence" that CL or NatWest believed its customer was

---

[7] There is no evidence that NatWest assisted Interpal in evading U.S. sanctions. Plaintiffs' allegation refers to Interpal's request as to whether it could open an account at NatWest that did not contain its name, which, as plaintiffs concede, the bank never permitted. See Pl. NatWest Opp. at 16; Dkt. No. 168 in 07-cv-916 (DLI) (MDG) ¶ 237.

funding Hamas or that any witnesses made false statements that "contradict independent, affirmative, contemporaneous evidence" of the banks' scienter.  Pl. Ltr. at 11-12.

**3. Plaintiffs have failed to refute that the evidence on which they rely to prove Hamas's responsibility for the 15 Attacks suffers from the same fatal defects as the comparable evidence excluded in Gill.**

**a. Nothing in Gill suggests that Shaked's and Kohlmann's opinions are admissible**

Judge Weinstein's ruling permitting testimony from the three experts Mr. Gill presented to establish Hamas's responsibility for the attack in which he was injured does not suggest that the hearsay-aggregating opinions of Shaked and Kohlmann on which plaintiffs rely here are admissible.  To the contrary, an examination of the three expert reports Mr. Gill presented further underscores the reasons why Shaked's and Kohlmann's proposed testimony is not admissible.  First, unlike Shaked, a newspaper reporter, and Kohlmann, a compiler of largely Al Qaeda terrorist propaganda from the internet, neither of whom has any training or experience in determining responsibility for a terrorist attack, the Gill attribution experts included (i) a military intelligence officer who served in the Israel Defense Forces for 28 years and whose duties included heading the investigations of over 1,000 terrorist attacks, including hundreds that were attributed to Hamas (Gil Erez), (ii) the Head of the Intelligence Department in the Southern District of the Israeli Security Agency (the "ISA"), who was responsible for the department's intelligence function (Plaintiff's Highly Confidential Witness), and (iii) a former director of the Jihad and Terrorism Studies Project at the Middle East Media Research Institute, who holds a Ph.D. in Islamic Studies from Princeton University and is a private terror consultant to the ISA (Dr. Eli Alshech).  Further, while the Gill experts applied their expertise and accepted methodologies to provide background opinions and to synthesize evidence to determine responsibility for the attack on Mr. Gill, Shaked and Kohlmann do nothing of the sort, and instead are purporting to serve as hearsay delivery vehicles, in violation of controlling law, by simply paraphrasing or reproducing verbatim the statements they attribute to Hamas that Judge Weinstein ruled were inadmissible.  See CL Br. at 37-38, 42-43; NatWest Br. at 39-40, 43-44.  Compare 11-cv-3706, Dkt. Nos. 79-2 (Erez report), 84-3 (Alshech report) and 161-2 (Highly Confidential Witness report) with 07-cv-916, Dkt. Nos. 151-15, Ex. 179 (Shaked report) and 151-16, Ex. 210 (Kohlmann report).[8]  Thus, plaintiffs' attempt to cast Kohlmann and Shaked as

---

[8] For instance, the process of determining responsibility for a terrorist attack was described by one of the Gill experts as follows: "Many elements took part in these post-attack investigations, including field intelligence collection officers, other collection gathering officers, staff officers and researchers.  The nature of the attacks, the findings on the ground, and the existing and accumulation of information following the execution of the attack all contributed to my ability to attribute individual and group responsibility for particular attacks . . . ."  11-cv-3706 (JBW), Dkt. No. 161-2 (Highly Confidential Witness report), at 2.  Neither Kohlmann nor Shaked performed any such analysis.  Another Gill expert, who analyzed Hamas's internet claims of responsibility, "test[ed] his general hypothesis [that] Hamas's claims are creditworthy . . . [by] analyz[ing] a set of 16 claims of responsibility that Hamas issued for other attacks, cross checking them both against other group's claims, and secondary sources . . . ."  See 11-cv-3706 (JBW), Dkt. No. 145 (Memorandum in Opposition to Motion In Limine to Exclude Dr. Eli Alshech), at 8.  This is a type of "comparative analysis" that Kohlmann admits he did not perform.  See CL Br. at 44; NatWest Br. at 45.

Hon. Dora L. Irizarry, U.S.D.J., p. 7

somehow "more qualified" than their supposed "counterparts" in <u>Gill</u> is absurd. <u>See</u> Pl. Ltr. at 13.[9]

### b. Plaintiffs have failed to distinguish their non-expert attribution evidence from the same types of evidence that <u>Gill</u> excludes

Faced with Judge Weinstein's exclusion in <u>Gill</u> of the same types of Hamas assertions of responsibility on which plaintiffs rely here, plaintiffs merely repeat the same arguments they presented in their opposition briefs one year ago, which CL and NatWest demonstrated are without merit. <u>Compare</u> Pl. Ltr. at 14-15 <u>and</u> Pl. CL Opp. at 48-50, CL Reply at 18-20. In sum:

- <u>Israeli convictions are not admissible under FRE 803(22)</u>. We are aware of no precedent, and plaintiffs have cited none, allowing a civil defendant's liability to be established with a hearsay criminal conviction of a third party that had no pre-existing legal relationship with the civil defendant, especially where, as here, the conviction resulted from proceedings that did not satisfy the due process requirements for its receipt by a U.S. court. <u>See, e.g.</u>, CL Br. at 47-48; Pl. CL Opp. at 48-49; CL Reply at 19-20.

- <u>Suicide bombers' video "wills" are not admissible under FRE 803(3)</u>. As CL and NatWest have already shown, that exception would only allow these "wills" to be admitted against the declarant, and not the banks here. <u>See, e.g.</u>, CL Reply at 19.

- <u>Confessions and reports referring to them are not admissible under FRE 803(8)</u>. As already shown, and as Judge Weinstein affirmed, these documents are inadmissible hearsay. <u>See, e.g.</u>, CL Reply at 20.

- <u>Hamas claims of responsibility are not declarations against interest under FRE 804(b)(3)</u>. Judge Weinstein ruled, and CL and NatWest have repeatedly

---

[9] Plaintiffs' false assertion in their November 21 letter that Judge Weinstein never expressed skepticism concerning Shaked or Kohlmann, Pl. Ltr. at 14, is belied by Judge Weinstein's repeated questioning of the admissibility of Hamas's statements as against Arab Bank and, after plaintiffs' counsel explained that Kohlmann would be proffered to testify regarding these statements, Judge Weinstein's statement that Mr. Gill had a "very substantial . . . evidentiary issue. You trying to use it against the Arab Bank." June 28, 2012 Hr'g Tr., <u>Gill v. Arab Bank, Plc</u>, 11-cv-3706 (JBW) (VVP) at 19:21-22:5; <u>see also</u> <u>Gill v. Arab Bank, Plc</u>, 2012 WL 4960358, at **45-47 (E.D.N.Y. Oct. 17, 2012) (excerpting discussion and emphasizing questions regarding the admissibility of Hamas statements against Arab Bank).

Further, plaintiffs' claim that "terrorism experts routinely . . . rely on precisely the types of materials considered by Messrs. Kohlmann and . . . Shaked," Pl. Ltr. at 13, improperly conflates testimony that is simply a conduit for hearsay, which is impermissible, with proper testimony concerning the <u>background</u> of a terrorist group, such as in the <u>Damrah</u> ruling on which plaintiffs rely. <u>See</u> CL Reply at 15 and n. 21 (discussing <u>Damrah</u>); <u>see also</u> CL Br. at 37-38 (discussing <u>Estate of Parsons v. Palestinian Auth</u>).

shown, that this hearsay exception is inapplicable here. See, e.g., CL Reply at 19.[10]

Plaintiffs' sole new argument – that Gill indicates only that the absence of temporal proximity between an event and the alleged evidence of it will cause that evidence to lack probative value, Pl. Ltr. at 15-16 – undermines plaintiffs' position here, because it is undisputed that there was a significant temporal gap between the 15 Attacks and when Kohlmann later gathered the evidence on which he relies to attribute those attacks to Hamas. See CL Br. at 44-45; NatWest Br. at 45-46.

Accordingly, Judge Weinstein's grant of summary judgment to Arab Bank in Gill supports granting CL and NatWest the same relief.

                              Respectfully,

                              Lawrence B. Friedman

cc: All counsel of record

---

[10] Plaintiffs attempt to support their argument that Judge Weinstein's ruling was incorrect by citing three precedents, all of which Judge Weinstein considered. See Pl. Ltr. at 14-15 and n. 14. They are inapposite and unhelpful to plaintiffs; none contradicts Judge Weinstein's holding that Hamas claims of responsibility were not statements against interest because these claims were untrustworthy. See Gill, at **23-24; United States v. Mills, 704 F.2d 1553, 1562 (11th Cir. 1983); United States v. Mussare, III, 405 F.3d 161, 168-69 (3d Cir. 2005); United States v. Berrios, 676 F.3d 118, 129 (3d Cir. 2012).