## CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | ONE LIBERTY PLAZA | |
|---|---|---|
| WASHINGTON, DC | NEW YORK, NY 10006-1470 | ROME |
| PARIS | (212) 225-2000 | MILAN |
| BRUSSELS | FACSIMILE (212) 225-3999 | HONG KONG |
| LONDON | WWW.CLEARYGOTTLIEB.COM | BEIJING |
| FRANKFURT | | BUENOS AIRES |
| COLOGNE | Writer's Direct Dial  +1 212 225 2840 | SÃO PAULO |
| MOSCOW | E-Mail lfriedman@cgsh.com | ABU DHABI |
| | | SEOUL |

December 3, 2012

BY ECF

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Strauss, et al. v. Crédit Lyonnais, S.A., 06-cv-702 (DLI) (MDG)
              Wolf, et al. v. Crédit Lyonnais, S.A., 07-cv-914 (DLI) (MDG)
              Weiss, et al. v. National Westminster Bank Plc, 05-cv-4622 (DLI) (MDG)
              Applebaum, et al. v. National Westminster Bank Plc, 07-cv-916 (DLI) (MDG)

Dear Judge Irizarry:

        CL and NatWest[1] object to plaintiffs' sur-reply letter of last Friday concerning Judge Weinstein's Gill ruling, and we urge the Court to strike that letter. Alternatively, the Court should note the following examples of plaintiffs' most egregious misstatements.

        1. <u>Proximate causation</u>. Contrary to plaintiffs' claim (Sur-reply at 1), there is nothing "vague" about Judge Weinstein's explicit and unambiguous holding that "[c]onnections between Hamas, [Arab] Bank, and third parties such as . . . Palestinian charities have little force" and that Mr. Gill had "fail[ed] to provide sufficient information to establish . . . that the charities were alter egos of Hamas." Gill at *27. Equally false is plaintiffs' statement that CL and NatWest "surmis[e]" that Judge Weinstein found Levitt's and Spitzen's opinions to be of low probative value. Sur-reply at 1. Rather, Judge Weinstein expressly stated that Levitt's proposed testimony was of "borderline" probity, that Spitzen was "another one of these borderline experts," and that "I'm going to admit it but I'll have to consider probative force when I get the motion for summary judgment or the lack of it." October 3, 2012 Hr'g Tr. at 34:24-25, 39:23-40:2. Finally, plaintiffs' argument that it would be "incorrect and legally incoherent" for a court

---

[1] All capitalized terms not defined in this letter are as defined in CL's November 13 letter to the Court (Dkt No. 216 in 07-cv-914) (DLI) (MDG) ("CL Ltr.") and/or NatWest's November 13 letter to the Court (Dkt No. 177 in 07-cv-916) (DLI) (MDG) ("NatWest Ltr.").

to rule that expert testimony is admissible but still does not present a triable issue of fact (Pl. Sur-reply at 1-2) is plainly wrong and is not supported by the precedent they cite, which states only that whether expert evidence, even if admissible, is sufficient to present a jury question "should be guided by the well-established standards governing judgment as a matter of law." In re Joint E. & S. Dist. Asbestos Litig., 52 F.3d 1124, 1133 (2d Cir. 1995).

    2. Scienter. Contrary to plaintiffs' argument, "mere recklessness" is not defendants' "invention," but rather a minimal level of scienter that Judge Weinstein in Gill, Judge Gershon in Linde and the Seventh Circuit in Boim all have ruled cannot sustain an ATA claim. See CL Café Hillel Br. at 24-25. The level of "recklessness" that the ATA requires is disputed only because plaintiffs rely on a definition that is inconsistent with these rulings. As we have shown, no reasonable juror could find that CL or NatWest was "reckless" as Gill, Linde and Boim define that term.

    With respect to CL's conduct, plaintiffs' sur-reply advances a new falsehood, that a reasonable juror could find CL's reporting of its suspicion concerning CBSP to TRACFIN was not limited to money laundering because, according to plaintiffs, "French banks, including CL, were specifically instructed by their primary regulator to file TRACFIN declarations where they suspected terror financing." Sur-reply at 3. Plaintiffs know that is false, because they have conceded that (a) the Bank of France letter they cite instructed banks to report to TRACFIN funds they suspected were "derived from" terrorism, which refers to laundering the proceeds of terrorism, not terror financing, which concerns funds directed to supporting terrorism, and (b) TRACFIN's jurisdiction was not formally expanded to include terror financing before a statutory amendment in 2004, years after CL's TRACFIN filings concerning CBSP. See CL Reply at 8.

    Equally false is plaintiffs' assertion that "there is no contemporaneous evidence that CL suspected only 'generic' money laundering by CBSP." Sur-reply at 3, n.3 (emphasis in original). That could be true only if one accepted – as no reasonable juror could – plaintiffs' absurd contortions of the unambiguous words of CL's abundant contemporaneous documentation, including its TRACFIN filings, confirming that CL suspected CBSP solely of money laundering. See CL Reply at 5-9. Plaintiffs have yet to offer any facts, rather than wordplay, that contradict this conclusion.

    With respect to NatWest's conduct, plaintiffs' claim that NatWest's knowledge of OFAC's designation of Interpal for the purpose of U.S. asset freezing regulations is sufficient to prove NatWest's scienter – despite NatWest's contemporaneous knowledge that UK authorities had investigated Interpal, found no evidence that Interpal funded Hamas terrorism and therefore not only disagreed with OFAC's conclusion, but also advised NatWest it could maintain Interpal's accounts (Sur-reply at 4) – does not gain cogency by repetition. See NatWest Br. at 7-14; NatWest Reply at 12-16. Moreover, that NatWest discussed with Interpal the withdrawal of Interpal's dollar funds from a UK bank account does not demonstrate that NatWest "conspired" with Interpal to avoid OFAC sanctions that NatWest understood did not apply in the UK, as the UK authorities confirmed.[2]

---

[2] Plaintiffs' continued attempt to draw a parallel between the inapposite facts in Gill regarding the return of funds by Arab Bank to the designated "senior Hamas leader" Osama Hamdan and the banks' return of funds to CBSP and Interpal (Pl. Sur-reply at 3) is irrelevant, as neither CBSP nor Interpal has ever been alleged, much less proven, to be

Hon. Dora L. Irizarry, U.S.D.J., p. 3

      3. <u>Attribution of the 15 Attacks to Hamas</u>. Plaintiffs' assertion that "Kohlmann and Shaked have been repeatedly qualified as expert witnesses by other courts" (Pl. Sur-reply at 4), is at least highly misleading, if not utterly false, because (a) neither has ever been qualified over an objection to offer the type of attribution opinion he proposes to offer here, (b) to the contrary, <u>Paracha</u> expressly precluded Kohlmann, and <u>Parsons</u> expressly precluded Levitt, from doing so, and (c) no court has ever qualified Kohlmann as an expert specifically on Hamas, a subject about which he has no expertise. <u>See</u> CL Br. at 38, 42-43; CL Reply at 16-17 and nn.23-25; NatWest Br. at 40, 43-45; NatWest Reply at 20. Finally, as to plaintiffs' continued false denial that Judge Weinstein expressed skepticism concerning Kohlmann's and Shaked's proposed testimony, the transcript of the Court's words speaks for itself. June 28, 2012 Hr'g Tr., at 19:21-22:5.

                                                  Respectfully,

                                                  Lawrence B. Friedman

cc: All counsel of record

---

controlled by or an <u>alter ego</u> of Hamas. <u>See</u> CL Café Hillel Br. at 27-29; NatWest Br. at 23 n. 19; <u>Weiss v. National Westminster Bank Plc</u>, 453 F. Supp. 2d 609, 623 (E.D.N.Y. 2006).