

1800 M STREET, NW  SUITE 1000
WASHINGTON, DC  20036-5802
202.778.1800   202.822.8106 fax   www.zuckerman.com

AITAN D. GOELMAN
Partner
(202) 778-1996
agoelman@zuckerman.com

February 7, 2013

**VIA ECF**

Honorable Dora L. Irizarry
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   *Strauss, et al. v. Crédit Lyonnais, S.A.*, 06-cv-702 (DLI)(MDG)
           *Wolf, et al. v. Crédit Lyonnais, S.A.*, 07-cv-914 (DLI)(MDG)
           *Weiss, et al. v. National Westminster Bank, Plc*, 05-cv-4622 (DLI)(MDG)
           *Applebaum, et al. v. National Westminster Bank, Plc*, 07-cv-916 (DLI)(MDG)

Dear Judge Irizarry:

    We write on behalf of all Plaintiffs in connection with the above-referenced lawsuits. Defendants Credit Lyonnais, S.A. ("CL") and National Westminster Bank plc ("NatWest") (together "Defendants") have moved for summary judgment in both cases, and such motions have been fully briefed and are awaiting disposition. In connection with their motions, Defendants have argued, *inter alia*, that Plaintiffs' experts Arieh Dan Spitzen, Dr. Matthew Levitt, Evan Kohlmann, and Roni Shaked offer inadmissible expert opinions and thus must be stricken under Fed. R. Evid. 701-703, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny.

    We attach for the Court's consideration a February 6, 2013 Opinion and Order (the "*Linde* Order") issued by Judge Nina Gershon in *Linde et al v. Arab Bank plc*, No. 04-cv-2799 (NG)(VVP) (ECF No. 917) addressing a number of the parties' motions to exclude putative expert witnesses. In her *Linde* Order, Judge Gershon admitted Messrs. Spitzen, Levitt, Shaked, and Kohlmann's expert opinions, opinions which substantively echo the reports these experts submitted in the above-captioned cases.

    *Linde* involves many of the same Plaintiffs as the matters before this court, the same terrorist attacks that gave rise to Plaintiffs' claims, the same terrorist organization (Hamas) and the same organizations (including zakat committees and other charitable, social services, and

WASHINGTON, DC     NEW YORK     TAMPA     BALTIMORE
3996246.1



Honorable Dora L. Irizarry
February 7, 2013
Page 2

fundraising organizations) that Plaintiffs allege are part of, connected to, agents of, or affiliated with, Hamas. Judge Gershon considered and rejected virtually identical arguments as those made by CL and NatWest in support of their efforts to exclude Messrs. Spitzen, Levitt, Shaked, and Kohlmann.[1]

With respect to Mr. Spitzen, Judge Gershon ruled admissible his conclusions that the social and charitable organizations at issue were "alter egos" of Hamas, holding:

> Mr. Spitzen's professional experience and independent research qualify him to offer the opinions he provides in this case. . . . Despite the Bank's argument that Mr. Spitzen's methodology was developed for the purposes of this litigation and has not been tested or used by other experts, careful review of Mr. Spitzen's report supports the reliability of his analysis. . . . He describes eighteen criteria, derived from his professional experience, academic studies, and other documents, including materials published by Hamas and its sympathizers, that he used when evaluating the level of Hamas's control of a specific organization. This resembles other experts' methodologies. . . . The eighteen factors simply help him to make plain and transparent the considerations he evaluated in reaching his conclusions.

> Nor is Mr. Spitzen a mere conduit for inadmissible evidence. He has applied his expertise and methodology to evidence that might otherwise be excludable hearsay. In *Mejia*, where the Second Circuit faulted the district court's admission of expert testimony, the expert did not "explain how he had pieced together bits of information from different sources and reached a studied conclusion that he then gave to the jury." *Id.* at 198. Here, in contrast, Mr. Spitzen's report demonstrates that he has applied his expertise to analyze the underlying evidence. He pulls together information from discrete sources, including sources that may be independently admissible, and cross-references it against other supportive or contradictory information in reaching his conclusions. . . . Moreover, the type of material Mr. Spitzen relies upon reasonably forms the basis for the opinions of other experts in the field.

---

[1] *See, e.g.,* CL Mem, of Law in Support of Motion for Summary Judgment at 30-34 (seeking to exclude Mr. Spitzen and Dr. Levitt) 36-47 (seeking to exclude Messrs. Shaked and Kohlmann); CL Reply Br. at 15 (Levitt and Spitzen); 16-18 (Kohlmann and Shaked); NatWest Mem of Law in Support of Motion for Summary Judgment at 32-36 (Levitt and Spitzen); 37-36 (Shaked and Kohlmann); NatWest Reply Br. at 17 (Levitt and Spitzen); 19-20 (Shaked and Kohlmann).



Honorable Dora L. Irizarry
February 7, 2013
Page 3

*Linde* Order at *6-8

    Judge Gershon reached materially similar conclusions regarding Dr. Levitt, holding "Dr. Levitt is clearly qualified to testify as an expert in terrorist organizations, including Hamas, its history and organization, and the structure of the social wing of Hamas (including zakat committees), which are precisely the subjects at issue here. His methodology has been recognized as the 'gold standard in the field of international terrorism.'" *Id.* at *9 (citation omitted). Judge Gershon further explained "[w]hile defendant argues that Dr. Levitt's lack of field research demonstrates the unreliability of his methodology, his report is highly documented. . . . That he has not done substantial field work in the Palestinian Territories and reads, but does not speak, Arabic are not sound arguments for excluding his testimony as they go only to the weight of the testimony, and may be addressed through cross-examination." *Id.* at *9-10.

    Judge Gershon also rejected Arab Bank's challenges, which echoed in all material respects those made by CL and NatWest, to Messrs. Shaked and Kohlmann, Plaintiffs' attribution experts, and concluded that their expert opinion that Hamas was responsible for the attacks in question was fully *Daubert*-compliant. With respect to Mr. Shaked, Judge Gershon wrote:

> Mr. Shaked is qualified to offer his opinions regarding the attribution of terror attacks to Hamas in this case, and defendant has not demonstrated, as it claims, that Mr. Shaked's opinions must be precluded for bias.
>
> The Bank relies on *United States v. Mejia*, 545 F.3d at 197, to argue that Mr. Shaked's testimony (and that of Mr. Kohlmann, whose expert opinion is discussed below) is simply a vehicle for introducing improper hearsay to the jury. Rather than supporting the Bank's position, however, *Mejia* expressly approved the type of expert attribution evidence that Mr. Shaked (and Mr. Kohlmann) proffer: 'An appropriate (admissible) example of such expertise would have been an expert's explanation of how the graffiti near a body indicated that the murderer was a member of [a gang] . . . . *Id.* at 195. Mr. Shaked (and Mr. Kohlmann) properly apply their expertise to what would otherwise be inadmissible hearsay to analyze evidence in a manner contemplated by Rule 703.
>
> While Mr. Shaked acknowledges that he cannot identify any authority which uses the precise methodology that he uses, defendant's suggestion that the methodology is unreliable is unfounded. Mr. Shaked's method involves interviews with senior Hamas



Honorable Dora L. Irizarry
February 7, 2013
Page 4

>leaders as well as Palestinian and Israeli security experts; substantial review of publicly accessible documents and websites related to Hamas; examination of terrorist confessions, prerecorded videotaped "wills" from suicide bombers, and Hamas posters and leaflets; attendance at Hamas funerals and public meetings; and jailhouse interviews with convicted Hamas operatives, including would-be suicide bombers who had either been arrested pre-attack, or who were wounded but not killed in the attack. Mr. Shaked specifically explains how he distinguished between Hamas"s credible claims of responsibility and claims by other organizations that, in his view, lacked credibility; indeed, where a claim of responsibility was made for "purposes of false boastfulness," he explained that he did not address it in his report at all. In the same manner as Mr. Spitzen, Mr. Shaked's report makes transparent the methodology he used to create it. Defendant's arguments as to the unreliability of Mr. Shaked's opinions go only to the weight, not the admissibility, of the evidence.

*Id.* at *20-21.

Similarly, Judge Gershon determined that Mr. Kohlmann "is qualified to offer his opinions regarding the attribution of terror attacks to Hamas," observing that "[i]t is not fatal to his testimony that his research was conducted solely on the Internet." *Id.* at *21. Judge Gershon further explained that Mr. Kohlmann synthesized the materials he reviewed and pulled "together common themes in reaching his conclusions. Any challenges to his methodology are more appropriately raised on cross-examination, as the evidence meets the test of admissibility. Mr. Kohlmann's testimony, including his expert analysis of materials that might otherwise be inadmissible hearsay, will help the jury understand the terror attacks at issue in this case." *Id.* at *21-22.

Judge Gershon's opinion marks the second time in six months that a judge of this District has rejected the rationale behind the arguments made by CL and NatWest in their attacks on Plaintiff's experts. As the Court knows, in *Gill v. Arab Bank plc*, Judge Weinstein also found Mr. Spitzen and Dr. Levitt's testimony to be *Daubert*-compliant. *See Gill v. Arab Bank plc*, ___ F. Supp. 2d. ___, 2012 WL 5177592 at *6-7 (E.D.N.Y. Oct. 19, 2012). While Messrs. Shaked and Kohlmann were not proffered as expert witnesses in that case, Judge Weinstein found the plaintiff's attribution experts qualified under *Daubert* after Arab Bank made very similar arguments as those made by CL and NatWest in the instant cases.



**ZUCKERMAN SPAEDER LLP**

Honorable Dora L. Irizarry
February 7, 2013
Page 5

      Accordingly, for the reasons set forth above, as well as those expressed in Plaintiffs' prior briefing and correspondence opposing Defendants' summary judgment motions, and the Café Hillel Plaintiffs' brief in support of their motion for summary judgment against CL, the Court should deny each Defendant's motion for summary judgment, award the Café Hillel Plaintiffs summary judgment against CL, and schedule a pre-trial conference, together with such other and further relief as may be appropriate.

                                              Respectfully submitted,

                                              Aitan D. Goelman