## CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

Writer's Direct Dial· +1 212 225 2840
E-Mail: lfriedman@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

February 11, 2013

BY ECF

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: Strauss, et al. v. Crédit Lyonnais, S.A., 06-cv-702 (DLI) (MDG)
> Wolf, et al. v. Crédit Lyonnais, S.A., 07-cv-914 (DLI) (MDG)
> Weiss v. National Westminster Bank Plc, 05-cv-4622 (DLI) (MDG)
> Applebaum v. National Westminster Bank Plc, 07-cv-916 (DLI) (MDG)

Dear Judge Irizarry:

On behalf of defendants Crédit Lyonnais, S.A. ("CL") and National Westminster Bank plc ("NatWest"), I am responding to Plaintiffs' February 7, 2013 letter, which argues that Judge Gershon's February 6, 2013 Daubert rulings in Linde et al v. Arab Bank plc, No. 04-cv-2799 (NG)(VVP) (ECF No. 917) (the "Linde Order"), support the denial of CL's and NatWest's pending summary judgment motions in the above-referenced lawsuits, merely because Judge Gershon rejected Arab Bank's Daubert motions directed to four of the same purported expert opinions – from Messrs. Levitt, Spitzen, Kohlmann and Shaked – on which Plaintiffs rely here, and which CL and NatWest contend are inadmissible.

Plaintiffs are wrong. First, as Plaintiffs ignore, CL and NatWest are entitled to summary judgment even if their Daubert-based challenges to these four opinions were denied, because even in that event Plaintiffs still could not satisfy at least the indispensable scienter and proximate causation elements of their claims. Second, as Plaintiffs also ignore, the Linde Order excludes critical portions of the Levitt and Spitzen opinions, without which Plaintiffs cannot rely on those opinions to satisfy the proximate causation element of their claims. Third, CL and NatWest have established many fatal flaws in these opinions that the Linde Order does not address at all, any one of which renders these opinions completely inadmissible. Fourth, to the extent the Linde Order does address CL's and NatWest's showing that these four opinions are inadmissible, its analysis, and therefore its conclusions, are deeply flawed, and Your Honor should not repeat the Linde Order's errors.

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE

Hon. Dora L. Irizarry, U.S.D.J., p. 2

These conclusions are best illustrated by considering each of the three indispensable elements of Plaintiffs' claims that they cannot satisfy, thus entitling CL and NatWest to summary judgment.

**1. As Plaintiffs' February 7 letter ignores, the Linde Order does not affect Plaintiffs' inability to prove that CL and NatWest acted with the level of scienter that the Anti-Terrorism Act requires.** CL and NatWest have amply demonstrated – in their briefs[1] and most recently in their letters to the Court concerning Judge Weinstein's recent grant of summary judgment to Arab Bank in Gill v. Arab Bank, plc, No. 11-cv-3706, 2012 WL 5395746 (E.D.N.Y. Nov. 6, 2012) (Wolf ECF Nos. 216, 218 and 222; Applebaum ECF Nos. 177, 178 and 182) – that they are entitled to summary judgment because Plaintiffs cannot satisfy the indispensable scienter element of their claims, a subject that the Linde Order does not address at all. The Court may grant CL's and NatWest's summary judgment motions for this reason alone, without addressing the Linde Order at all.

**2. The Linde Order does not detract from the reasons why Plaintiffs cannot prove that CL's and NatWest's conduct proximately caused the attacks by which Plaintiffs were injured.** It is undisputed that Plaintiffs are attempting to satisfy the indispensable proximate causation element of their claims solely by attempting to prove that the 13 Charities that received funds from CL's and NatWest's customers, CBSP and Interpal, were alter egos of or controlled by Hamas, which Plaintiffs allege perpetrated the attacks by which they were injured. See CL Br. at 19-20; Pl. CL Opp. at 31; NatWest Br. at 22-23; Pl. NatWest Opp. at 38. It is also undisputed that, in attempting to prove this alter ego status, Plaintiffs rely entirely on opinions by Levitt and Spitzen that are identical in all material respects to the opinions on which Plaintiffs rely in the Linde cases. But there are at least five reasons why the Linde Order's ruling that the Levitt and Spitzen opinions at issue in that case are admissible does not detract from CL's and NatWest's showing here that Plaintiffs cannot satisfy the indispensable proximate causation element of their claims.

**A. As Judge Weinstein's Gill ruling confirms, Plaintiffs cannot satisfy the proximate causation element of their claims here even if the Levitt and Spitzen opinions on which Plaintiffs have relied in each of Gill, Linde and these cases were admissible.** As Your Honor knows from the parties' letters of November and December 2012 concerning Judge Weinstein's Gill ruling, Judge Weinstein granted Arab Bank's motion for summary judgment, dismissing claims that are identical in their legal underpinnings to Plaintiffs' claims here (and were presented by the same counsel who represent Plaintiffs here), because Mr. Gill could not satisfy the indispensable proximate causation element of his claim, in part for reasons that support the same conclusion in these cases. Gill, 2012 WL 5395746, at *9, 27. Importantly, Judge Weinstein dismissed Mr. Gill's claims – a dismissal from which Mr. Gill conspicuously did not appeal – despite also finding that the Spitzen and Levitt opinions on which Mr. Gill relied in order to satisfy the proximate causation element of his claims were admissible, although, in Judge Weinstein's words, of "borderline" probity. October 3 Tr. at 34:24-25, 39:23-40:2. In particular, Judge Weinstein concluded that, even if Levitt's and Spitzen's opinions were admissible, Mr. Gill had failed to present a triable fact that the charities at issue were alter egos

---

[1] See 07-cv-914 (DLI) (MDG), ECF Nos. 196 ("CL Br."), 202 ("CL Reply"); see also 07-cv-916 (DLI) (MDG), ECF Nos. 162 ("NatWest Br."), 160 ("NatWest Reply").

of or controlled by Hamas. Importantly, in so ruling, Judge Weinstein applied the same legal test for determining alter ego and control status that CL and NatWest have shown Plaintiffs here cannot satisfy. See CL Br. at 21; CL Reply at 11-12; NatWest Br. at 24-25; NatWest Reply at 17. For reasons CL and NatWest have detailed in their letters addressing Gill, the same result should follow here.

Accordingly, even if Your Honor agreed with the Linde Order and found that Levitt's and Spitzen's opinions are admissible, Gill confirms that Plaintiffs still could not satisfy the indispensable proximate causation element of their claims, and the Court would need to grant CL's and NatWest's pending summary judgment motions.

B. **As Plaintiffs' February 7 letter ignores, the Linde Order excludes portions of Levitt's and Spitzen's opinions that, if also excluded here, would preclude Plaintiffs from proving the proximate causation element of their claims.** Plaintiffs' February 7 letter conspicuously omits to mention that the Linde Order excludes core elements of Levitt's and Spitzen's opinions that purport to address "the state of mind, intent or motive of a government, a charitable entity, or a person." See Linde Order at 8, 10. Thus, if Your Honor were to follow the Linde Order, Your Honor would need to exclude Levitt's and Spitzen's opinions on these subjects as well. In that event, Plaintiffs could not rely on these witnesses' conclusions, which they offer without citing any supporting evidence, that the activities undertaken by the 13 Charities that received funds from CL's and NatWest's customers were intended at least in part to aid Hamas, and that Hamas intends for its charitable activity to aid its terrorist agenda. See CL Br. at 31; NatWest Br. at 34. Absent these broad ipse dixit opinions, which the Linde Order precludes, Levitt and Spitzen offer little, if anything, that links the 13 Charities to any terrorist attacks by Hamas (let alone the 15 attacks at issue), an omission that is fatal to Plaintiffs' proximate causation contentions. See CL Br. at 19, 27-28; NatWest Br. at 22, 29-30.

Similarly, the Linde Order excludes another expert's opinions concerning charities that were not involved in the purported flow of funds from Arab Bank to alleged affiliates of Hamas. See Linde Order at 11-12. If that ruling were applied here, Your Honor would need to exclude Levitt's sweeping (and unsupported) statements regarding Palestinian charities' purported involvement with terrorism, because none of these statements concerns any of the 13 Charities at issue here. See, e.g., CL Br. at 31; NatWest Br. at 34.

Accordingly, in these respects, the Linde Order is fatal to Plaintiffs' reliance on the Levitt and Spitzen opinions to satisfy the proximate causation element of their claims.

C. **The Linde Order fails to address any of six flaws that are fatal to the admissibility of Levitt's and Spitzen's opinions.** Although, as noted above, CL and NatWest are entitled to summary judgment even if Levitt's and Spitzen's opinions were admitted, these opinions should be excluded because, as shown in CL's and NatWest's motions, they suffer from at least six flaws which the Linde Order does not address at all. These include the unassailable facts that: (i) Levitt's and Spitzen's conclusions concerning purported alter ego and control relationships between the 13 Charities and Hamas intrude on the proper functions of the Court and a jury, because experts cannot offer legal conclusions that are for the trier of fact to resolve based on admissible evidence and the Court's instructions concerning the governing law, see CL

Br. at 24, NatWest Br. at 27; (ii) Levitt's opinions do not even comply with what he described as his own methodology, because he failed to "conduc[t] primary field research – going out and interviewing people, meeting people, spending time in the region," or to vet his sources, CL Br. at 31-32, NatWest Br. at 34, a failure that is fatal to the admissibility of his opinions, see, e.g., Dolphin v. Synthes (USA) Ltd., 2011 WL 1345334, at **5-7 (S.D.N.Y. Mar. 25, 2011); (iii) Levitt's opinions are unreliable to the extent they are based on misquotations and mischaracterizations of the materials on which he relies, CL Br. at 31-32, NatWest Br. at 34; (iv) Levitt failed to consider alternative explanations and avoided sources that contradict his opinions, CL Br. at 32, NatWest Br. at 34; (v) Spitzen did not attribute objective weights to his 18 factors for deeming whether a charity is an alter ego of or controlled by Hamas, but instead gave the most weight to the factor for which he could cite the most evidence to support a finding of Hamas control and failed to ascribe any weight to the absence of any of his 18 factors, CL Br. at 33, NatWest Br. at 35; and (vi) in considering whether there was shared leadership between the 13 Charities and Hamas, which Spitzen testified was the most important factor in his self-styled test, he considered only those individuals associated with the 13 Charities who he concluded were affiliated with Hamas, ignored those who he concluded had no such affiliation, and did not consider whether the purported Hamas-affiliated individuals had any control over the charities' policies or operations, CL Br. at 33-34, NatWest Br. at 36.

D. <u>To the extent the Linde Order addresses the fatal flaws in Levitt's and Spitzen's opinions that CL and NatWest have established, its analysis is mistaken.</u> Although the Linde Order acknowledges that an expert may not simply aggregate hearsay and transmit that hearsay to the jury, Linde Order at 6 (citing United States v. Mejia, 545 F.3d 179, 197 (2d Cir. 2008)), it ignores that this is precisely what Levitt and Spitzen propose to do here. Contrary to Mejia's prohibition, they are "simply repeating hearsay evidence without applying any expertise whatsoever, a practice that . . . circumvent[s] the rules prohibiting hearsay." Mejia, 545 F.3d at 197-98 (internal quotation marks and citation omitted). That is why the court in Parsons v. Palestinian Auth., 715 F. Supp. 2d 27, 32-33 (D.D.C. 2010), aff'd in part, rev'd in part on other grounds, 651 F.3d 118 (D.C. Cir. 2011), excluded Levitt's proposed testimony in that case, noting that "[e]xpert opinions may be based on hearsay, but they may not be a conduit for the introduction of factual assertions that are not based on personal knowledge."

Here, Levitt's and Spitzen's reports do not synthesize hearsay in order to reach an expert opinion, but rather they merely summarize and repeat that hearsay. See CL Br. at 30; NatWest Br. at 32-33. The Linde Order's broad statement that Spitzen "pull[ed] together information from discrete sources . . . and cross-reference[d] it against other supportive or contradictory information in reaching his conclusions," Linde Order at 6, is not an accurate description of what either Spitzen or Levitt have done in their respective expert reports. See CL Br. at 30; NatWest Br. at 32-33. In fact, neither cited any information that runs contrary to their conclusions.

E. <u>The Linde Order is not authority for the admissibility of the Levitt opinions on which Plaintiffs rely here, because it defines the scope of his permitted testimony much more narrowly than the opinions for which Plaintiffs rely on Levitt here.</u> The Linde Order qualifies Levitt to offer opinions as an expert "in terrorist organizations, including Hamas, its history and organization, and the structure of the social wing of Hamas (including zakat committees)."

Linde Order at 9. That is also the only subject on which Levitt was permitted to testify in <u>United States v. Damrah</u>, 412 F.3d 618, 625 (6th Cir. 2005), on which the Linde Order relies. <u>See</u> Linde Order at 7. By contrast, here Plaintiffs are relying on Levitt to opine that the 13 Charities were "controlled by, affiliated with, fundraise for, serve as alter egos or departments of, or otherwise support Hamas." <u>See</u> CL Br. at 23; NatWest Br. at 26 (citations omitted). That scope is much broader than the scope that the Linde Order endorses. Accordingly, contrary to Plaintiffs' argument in their February 7 letter to Your Honor, the Linde Order provides no support for the admissibility of Levitt's more expansive opinions on which Plaintiffs rely here. And CL and NatWest have amply shown the many reasons why Levitt may not offer those opinions, and why, for this reason among others, Plaintiffs cannot satisfy the proximate causation element of their claims. See CL Br. at 24, 30-32; NatWest Br. at 27-28, 32-24.

       **3. The Linde Order does not detract from the reasons why Plaintiffs cannot prove that Hamas perpetrated the attacks by which plaintiffs were injured**. As Plaintiffs' February 7 letter ignores, the Linde Order fails to address most of the flaws in the Shaked and Kohlmann opinions on which Plaintiffs rely in an attempt to prove that Hamas perpetrated the attacks at issue – the third indispensable element of Plaintiffs' claims that they cannot satisfy – and which CL and NatWest have shown are fatal to the admissibility of those opinions. To the extent the Linde Order does address the fatal flaws in the Shaked and Kohlmann opinions that CL and NatWest have established, its conclusions are mistaken and unfounded. Accordingly, the Linde Order does not detract from CL's and NatWest's showing that Plaintiffs cannot satisfy this indispensable element of their claims.

       A. <u>The Linde Order fails to address any of four flaws that are fatal to the admissibility of Shaked's opinions</u>. First, the Linde Order does not address at all CL's and NatWest's showing that Shaked's conclusion that Hamas perpetrated the attacks at issue is an improper subject for expert testimony. In relying on that conclusion, Plaintiffs are improperly attempting to avoid the traditional, and the only permissible route of proving responsibility for a criminal act, which is through competent witnesses and admissible evidence, rather than an expert's "say so." Plaintiffs expressly and impermissibly invoke Shaked's repeated conclusion – which in turn is based solely on hearsay – that this hearsay "leaves no doubt" that Hamas perpetrated these attacks. <u>See</u> CL Br. at 36-37; CL Reply at 16-17; NatWest Br. at 38-39; NatWest Reply at 20. But that is precisely the type of opinion that the Second Circuit has ruled even a qualified expert cannot provide, serving as a "chronicler of the recent past" by "transform[ing] into the hub of the case, displacing the jury by connecting and combining" the evidence "into a coherent, discernible, internally consistent picture of the defendant's guilt." <u>Mejia</u>, 545 F.3d at 190-91. While an expert may "speak to the operation, symbols, jargon, and internal structure of criminal organizations," Shaked's conclusions that Hamas perpetrated specific attacks is a determination of criminal responsibility that <u>Mejia</u> forbids. <u>Mejia</u>, 545 F.3d at 190; <u>see</u> <u>United States v. Paracha</u>, 2006 WL 12768, at **18, 21 (S.D.N.Y. Jan. 3, 2006).

       The Linde Order misconstrues and misapplies the Second Circuit's <u>Mejia</u> ruling, stating that it "expressly approved the type of expert attribution evidence" that Shaked offers. Linde Order at 20. To the contrary, the Linde Order refers only to the portion of <u>Mejia</u> that allowed the testimony of a qualified expert in the practices of criminal gangs to explain how the appearance of graffiti near a murder victim indicates that the murderer was a member of such a gang. But that type of testimony concerning the "symbols" or "jargon" of a gang is very

different from the opinions that Shaked proposes to offer, in which he purports to assign criminal responsibility for the attacks at issue to Hamas. Further, the forensic analysis that Mejia permits bears no relation to the summary of hearsay that Shaked has employed in his report. See id. at 20; CL Reply at 17 n.24. As the Linde Order omits, Mejia explicitly states that the question of responsibility for a criminal act is "a fact that must be proven by competent evidence," and not by the "shortcut" of an "expert pronounce[ment] of guilt." See CL Br. at 36; NatWest Br. at 38 (citing Mejia).

Second, the Linde Order also does not address at all CL's and NatWest's showing that Shaked's proposed testimony is an improper summary of inadmissible hearsay. As noted above, although the Linde Order acknowledges in the context of considering Spitzen's opinions that an expert may not simply aggregate hearsay and transmit that hearsay to the jury, Linde Order at 6, citing Mejia, 545 F.3d at 197, it ignores that this is precisely what Shaked proposes to do here. Contrary to Mejia's prohibition, he "is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that . . . circumvent[s] the rules prohibiting hearsay." Id. at 197-98 (internal quotation marks and citation omitted). See also Paracha, 2006 WL 12768, at **21-24. That is also why, as noted above, the Parsons court excluded Levitt's proposed testimony in that case, similar to Shaked's proposed testimony here, that certain attacks were "'claimed by or attributed to'" a terrorist group. As the Parsons court held, "to say the attack was 'claimed by'" that group "is not to say that it was actually committed by" that group and, in any event, "[e]xpert opinions may be based on hearsay, but they may not be a conduit for the introduction of factual assertions that are not based on personal knowledge." See CL Br. at 37-38; NatWest Br. at 39 (citing and quoting Parsons).

Moreover, as CL and NatWest have also shown, but as the Linde Order completely ignores, Shaked's proposed testimony is impermissible because his summarizing of rank hearsay will preclude CL and NatWest from adequately testing his opinions through cross-examination. See CL Br. at 37-38; CL Reply at 16-17; NatWest Br. at 39-40; NatWest Reply at 20.

In sum, Shaked's proposed summarizing of hearsay evidence and his acceptance of that evidence as true reduces him to a mere hearsay delivery vehicle, which FRE 703, Mejia and Parsons all forbid. See CL Br. at 37-38; NatWest Br. at 39-40. Again, the Linde Order does not address this fatal flaw in Shaked's opinions at all.

Third, the Linde Order also does not address at all CL's and NatWest's showing that Shaked is not qualified to opine about who is responsible for perpetrating a terrorist attack. The Linde Order's list of Shaked's qualifications in other disciplines ignores his admission, in response to CL's and NatWest's deposition questions, that neither his education nor his experience provides him with any distinctive knowledge or skill for identifying the perpetrator of a terrorist attack. See CL Br. at 38-39; CL Reply at 17; NatWest Br. at 40. And the Linde Order's reliance on Shaked's testimony in other cases is ill-founded, because in none of these cases was he ever qualified over an objection to offer the type of attribution opinion that he proposes to offer here. To the contrary, the Paracha ruling expressly precluded Kohlmann, and the Parsons ruling expressly precluded Levitt, from doing so. See CL Br. at 37-38, 42-43; NatWest Br. at 39-40, 43-44.

Fourth, the Linde Order also does not address at all CL's and NatWest's showing that Shaked's opinions are not based on a Daubert-compliant methodology. As noted above, Shaked's opinions rest simply on his summary of hearsay sources with no genuine expert analysis whatsoever. The Linde Order's analysis of Shaked's methodology fails to consider that: (i) by his own admission, Shaked has not personally investigated any of these attacks, examined any forensic evidence concerning them or otherwise done what a competent forensic analyst would do; (ii) to the extent Shaked employs any "methodology," it cannot be tested or subjected to peer review and it has never been accepted in any relevant expert community; (iii) he did not perform any analysis of the reliability of the Hamas claims on which he relies, nor is he competent to do so, and instead he simply accepted Hamas's claims of responsibility as stated, which is insufficient to establish that Hamas perpetrated the attacks at issue, see Linde Order at 9 (citing Parsons); (iv) he could not describe the "probability" standard he applied to conclude "with a very high degree of probability" that Hamas perpetrated the 15 attacks; and (v) he selectively cites documents to support his conclusions without addressing the portions of those documents that contradict his conclusions, he puts forth several conclusions that are not supported by the documents he cites at all, and he credits certain information without ever evaluating its veracity. See CL Br. at 39-42; NatWest Br. at 40-41.

Accordingly, the Linde Order's crediting of Shaked's methodology as "transparent," Linde Order at 20, misses the point – however "transparent" Shaked's methodology may be, it does not comply with Daubert's substantive requirements.

B. **The Linde Order fails to address any of four flaws that are fatal to the admissibility of Kohlmann's opinions.** First, the Linde Order does not address at all CL's and NatWest's showing that, as noted above with respect to Shaked's opinions, the sole subject of Kohlmann's opinions – his purported expert pronouncement of Hamas's responsibility for the attacks at issue – is not a proper subject for expert testimony. That is precisely why Kohlmann's testimony was limited in Paracha, where the court allowed him to testify only about the origins and structure of Al Qaeda, but not about the "alleged activities" of specific alleged co-conspirators, because, as the Paracha court ruled, that "is properly admitted through fact witnesses, not an expert." See CL Br. 42-43; CL Reply at 17 n.24; NatWest Br. at 43-44; NatWest Reply at 20. And for the same reasons noted above regarding Shaked, the Linde Order's limited discussion of Mejia fails to properly apply its holding to Kohlmann's proposed testimony here.

Second, the Linde Order does not address at all CL's and NatWest's showing that, for the same reasons stated above regarding Shaked, Kohlmann's mere collection and reproduction of hearsay evidence he has identified on internet websites that he attributes to Hamas make him precisely the type of impermissible hearsay delivery vehicle that Mejia and Parsons forbid. See CL Br. at 43; NatWest Br. at 44.

Third, the Linde Order does not address at all Kohlmann's admissions, in response to CL's and NatWest's deposition questions, that confirm he is not qualified to offer the types of opinions he proposes to offer here. After reciting some of Kohlmann's educational and work history, the Linde Order summarily states that Kohlmann is "qualified to offer his opinions regarding the attribution of terror attacks to Hamas. . . ." Linde Order at 21. That ruling is contradicted by Kohlmann's own admissions here:

- Kohlmann admitted that his education and experience do not provide him with any distinctive knowledge, education or skill to determine who has committed a terrorist attack. CL Br. at 43; NatWest Br. at 44. Not surprisingly, it is indisputable that Kohlmann has never before been proffered – let alone received – as an expert in determining whether Hamas (or anyone else) perpetrated an attack. CL Reply at 17. Therefore, the prior instances in which Kohlmann's opinions have been received – which the Linde Order cites in his favor, Linde Order at 21 – are irrelevant to the admissibility of his opinions here. See Linde Order at 21.

- Kohlmann admitted that his prior work has focused on Al Qaeda and groups affiliated with Arab Afghans, and accordingly no court has ever qualified him as an expert specifically on Hamas, a subject about which he has no expertise. CL Br. at 44; CL Reply at 17-18 & n.25; NatWest Br. at 45.

- Kohlmann admitted that he did not perform in this case the type of "comparative analysis" that he has described as his expertise, which he purportedly performed in other cases (see Paracha, 2006 WL 12768, at *20), and according to which he purportedly "compare[s] and contrast[s] particular sources in question with other analogous sources…." See CL Br. at 44; CL Reply at 17-18; NatWest Br. at 45.

In light of Kohlmann's admissions, he is not qualified to offer the opinions that Plaintiffs are relying on here.

Fourth, the Linde Order's conclusion that Kohlmann's methodology is reliable because he purportedly "synthesizes . . . material and pulls together common themes in reaching his conclusions," Linde Order at 22, is mistaken, especially in light of Kohlmann's admissions in his deposition testimony in these cases. First, as noted above, Kohlmann admitted that his opinions here are not based on the type of "comparative analysis" in which he purports to specialize. Rather, they are based solely on his summarizing and reproduction of the contents of internet websites he attributes to Hamas, and his acceptance of those contents as accurate. See CL Br. at 45; NatWest Br. at 46. Further, and perhaps most fatally to the admissibility of his opinions, Kohlmann is unaware of what Hamas's actual role in any of the attacks actually may have been, and therefore his opinions are based entirely on "what Hamas claims to have done." CL Br. at 45; CL Reply at 17-18; NatWest Br. at 46. But as the Parsons court emphasized, "to say that the attack was 'claimed by'" a group "is not to say that it was actually committed by" that group. CL Br. at 45; NatWest Br. at 46; see also Linde Order at 9 (citing Parsons).

Accordingly, contrary to Plaintiffs' contention, the Linde Order does not rescue the Shaked and Kohlmann opinions on which Plaintiffs rely in an attempt to prove that Hamas perpetrated the attacks at issue – the third indispensable element of Plaintiffs' claims that they cannot satisfy – and therefore it does not detract from CL's and NatWest's showing that they are entitled to summary judgment on this ground too.

\*           \*           \*

Finally, the Court should not be misled by Plaintiffs' mischaracterization at the end of their February 7 letter that the Linde Order joins Judge Weinstein's Gill ruling as

Hon. Dora L. Irizarry, U.S.D.J., p. 9

"mark[ing] the second time in six months that a judge of this District has rejected the rationale behind the arguments made by CL and NatWest in their attacks on Plaintiff's [sic] experts." Feb. 7 letter at 4. As noted above, but as Plaintiffs oddly disregard, Judge Weinstein's Gill ruling granted Arab Bank's motion for summary judgment, dismissing claims that are identical in their legal underpinnings to Plaintiffs' claims here. Moreover, as also noted above, Judge Weinstein concluded that Mr. Gill could not satisfy the indispensable proximate causation element of his claim in part for reasons that support the same conclusion here, despite also finding that the Spitzen and Levitt opinions on which Mr. Gill relied were admissible. Accordingly, adhering to Gill supports granting summary judgment to CL and NatWest.

Furthermore, for reasons we have already explained in our letters of last November and December addressing Gill, Your Honor should also reject the contention Plaintiffs renew in their February 7 letter that Mr. Gill's new experts (not including Shaked or Kohlmann) concerning Hamas' purported responsibility for the attack at issue in that case, whose opinions Judge Weinstein found to be admissible under Daubert, are analogous to the Shaked and Kohlmann opinions on which Plaintiffs rely in these cases. To the contrary, as CL and NatWest have previously shown, the Gill experts grounded their reports in detailed forensic evidence, not the hearsay and other incompetent evidence that Plaintiffs wish for Shaked and Kohlmann to transmit to a jury. Moreover, Judge Weinstein also expressly excluded on hearsay grounds Mr. Gill's attempt to rely on Hamas claims of responsibility and confessions of accused terrorists, which are the principal support for Shaked's and Kohlmann's opinions here.

Accordingly, Plaintiffs' reliance on Gill in their February 7 letter stands reality on its head; rather, Gill, as well as the Linde Order, are consistent with granting summary judgment to CL and NatWest, sparing the parties and the Court the burdens of trials in which no reasonable juror could find that Plaintiffs have proven their claims.

Respectfully,

Lawrence B. Friedman

cc: All counsel of record