## CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, DC
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

Writer's Direct Dial· +1 212 225 2840
E-Mail· lfriedman@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

February 19, 2013

BY ECF

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Strauss, et al. v. Crédit Lyonnais, S.A., 06-cv-702 (DLI) (MDG)
Wolf, et al. v. Crédit Lyonnais, S.A., 07-cv-914 (DLI) (MDG)
Weiss v. National Westminster Bank Plc, 05-cv-4622 (DLI) (MDG)
Applebaum v. National Westminster Bank Plc, 07-cv-916 (DLI) (MDG)

Dear Judge Irizarry:

   I am replying on behalf of defendants CL and NatWest to plaintiffs' February 15 response to my letter of earlier that day, in which I detailed the reasons why the Second Circuit Court of Appeals' February 14 Rothstein III opinion further supports granting CL's and NatWest's summary judgment motions.[1]

   Try as they might, plaintiffs cannot change the facts that the Rothstein III opinion (1) expressly endorses Judge Rakoff's prior articulation of the ATA's proximate causation test that, as CL and NatWest have shown, plaintiffs cannot satisfy, and (2) rejects plaintiffs' argument in opposition to CL's and NatWest's pending motions – an argument plaintiffs now unsuccessfully attempt to disavow – that a different and more relaxed causation test governs here, simply because, as plaintiffs put it in their prior briefs, these cases concern the "terrorism funding context." Pl. CL Opp. at 33; Pl. NatWest Opp. at 39.[2] Plaintiffs' February 15 letter therefore resorts to mischaracterizing Rothstein III and disregarding plaintiffs' own prior reliance

---

[1] All capitalized terms not defined in this letter are as defined in CL's and NatWest's February 15 letter to the Court (Dkt Nos. 227 in 07-cv-914 (DLI) (MDG) and 188 in 07-cv-916 (DLI) (MDG)).

[2] See Dkt Nos. 199 in 07-cv-914 (DLK) (MDG) ("Pl. CL Opp.") and 165 in 07-cv-916 (DLK) (MDG) ("Pl. NatWest Opp.").

CLEARY GOTTLIEB STEEN & HAMILTON LLP OR AN AFFILIATED ENTITY HAS AN OFFICE IN EACH OF THE CITIES LISTED ABOVE.

Hon. Dora L. Irizarry, U.S.D.J., p. 2

on attacking Judge Rakoff's articulation of the ATA's proximate causation test as a "lonely outlier." Pl. CL Opp. at 32; Pl. NatWest Opp. at 39.

Plaintiffs cannot overcome CL's and NatWest's showing that Rothstein III supports granting them summary judgment for at least five reasons.

First, plaintiffs' attempt to distinguish their claims against CL and NatWest from the Rothstein plaintiffs' claims against UBS is unavailing. In Rothstein, the plaintiff victims of Hamas and Hizbollah terror attacks sued UBS under the ATA based on UBS's purported transfer of U.S. dollars to Iran, a U.S.-designated state sponsor of terrorism, in direct violation of OFAC regulations, and the allegation that this currency enabled Iran to provide funding directly to Hamas and Hizbollah to commit terror attacks. Rothstein III, at 4-8. In affirming Judge Rakoff's dismissal of the Rothstein complaint on proximate causation grounds, the Court of Appeals held that the plaintiffs had failed to make any non-conclusory allegations that UBS participated in the terrorist attacks that injured them, that the funds UBS transferred to Iran were in turn provided to Hizbollah or Hamas, or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the currency received from UBS. See Rothstein III, at 24-25.

Similarly, in these lawsuits – but rather than at the dismissal stage, instead at the summary judgment stage, where plaintiffs' burden is the considerably higher one that requires them to proffer concrete evidence on which a reasonable juror could find for them, cf. Gill v. Arab Bank, plc, 2012 WL 4960358, at *13-14, 44-45 (E.D.N.Y. Oct. 17, 2012); Gill v. Arab Bank, plc, 2012 WL 5395746, at *2-3 (E.D.N.Y. Nov. 6, 2012) – plaintiffs have failed to show that they can satisfy the proximate causation requirement of their ATA claims under the test that Rothstein III endorses. As CL and NatWest have established, plaintiffs have proffered no evidence, let alone the "abundance of" or "voluminous" evidence they claim (Pl. Ltr. at 1, 3), that CL or NatWest actually provided funds directly to Hamas. Nor do they even allege that any of the funds transferred from CL's and NatWest's respective customer's accounts to Palestinian charities were used to finance any of the terror attacks in which plaintiffs were injured, or that any of these attacks could not have been funded absent those transfers. See CL Br. at 19-20, 27-28; NatWest Br. at 22-23, 30-31. Rather, plaintiffs' evidence shows only that CL's customer CBSP and NatWest's customer Interpal transferred funds to the 13 Charities, which plaintiffs claim "were at the relevant time alter egos of and/or controlled by Hamas." See CL Br. at 19-20; NatWest Br. at 22-23. But as CL and NatWest have shown, no reasonable juror could find on the basis of the evidence plaintiffs have proffered that the 13 Charities were the alter egos of or controlled by Hamas under the governing legal test for determining that status, as set forth in Judge Sifton's dismissal opinions in these lawsuits, which in turn is based on then-Circuit Judge Roberts's decision in Nat'l Council of Resistance of Iran v. Dep't of State, 373 F.3d 152 (D.C. Cir. 2004). See CL Br. at 20-24; NatWest Br. at 23-27. Specifically, plaintiffs here have failed to proffer any evidence that satisfies the essential factors for establishing alter ego or control status – such as commingling of funds, disregard of corporate formalities, or sharing of offices or property – and the one factor that plaintiffs have focused on, shared leadership between the 13 Charities and Hamas, is legally insufficient on its own to establish an alter ego or control relationship. CL Br. at 22-24; CL Reply at 11-12 and 12 n.17; NatWest Br. at 25-27; NatWest Reply at 17.

Hon. Dora L. Irizarry, U.S.D.J., p. 3

Indeed, the proximate causal linkage that plaintiffs allege in these cases is even more attenuated than the linkage that was alleged in the Rothstein case. Unlike in Rothstein, where it was alleged that UBS had directly violated OFAC's regulations by providing U.S. dollars to a designated state sponsor of terrorism and, further, that Iran had funded Hamas and Hizbollah to directly support terrorist attacks (Rothstein III, at 4-8), here, by contrast:

- As plaintiffs concede, the 13 Charities to which CL and NatWest transferred funds pursuant to their customers' instructions in fact provided the charitable services they claimed to provide, the 13 Charities were in several instances also funded by the United States government, and none had been designated as terrorist organizations by the United States, the European Union or France when these transfers occurred, see CL Br. at 19-24, CL 56.1 at ¶¶ 303-06, 353-57, NatWest Br. at 22-27, NatWest 56.1 at ¶¶ 289-92;[3]

- Plaintiffs' experts' own admissions establish it was not "reasonably foreseeable" that any donations to the 13 Charities would likely result in any terrorist attacks by Hamas, let alone the attacks at issue, including because the 13 Charities performed the very charitable services they undertook to provide with donations from abroad, Hamas did not publicize its purported association with any of these charities, and it was "less common" and "more rare" for any funds donated to such charities to be diverted for the purposes of terrorism, CL Br. at 27, NatWest Br. at 29-30;

- There is no allegation in these cases, let alone any evidence, that any donations to the 13 Charities enabled Hamas to commit the attacks on which plaintiffs' claims are based, or indeed any other terrorist attacks, much less that Hamas could not have funded attacks absent CL's and NatWest's transfers to the 13 Charities, cf. Rothstein III, at 25; and

- Although OFAC ultimately designated CL's customer CBSP and NatWest's customer Interpal as SDGTs for purposes of OFAC's asset-freezing regulations in the U.S., those designations indisputably did not apply at all to CL's provision of routine banking services to CBSP in France or NatWest's provision of routine banking services to Interpal in the U.K.; further, each bank's home government declined to make the same designations and, to the contrary, has permitted each bank's customer to continue to function to this day as an entirely lawful, unsanctioned entity, see CL Br. at 12-14, CL Café Hillel Br. at 6-12; NatWest Br. at 11-13. [4]

---

[3] See Nos. 197 in 07-cv-914 (DLI) (MDG) ("CL 56.1"), 163 in 07-cv-916 (DLI) (MDG) ("NatWest 56.1").

[4] See No. 184 in 07-cv-914 (DLI) (MDG) ("CL Café Hillel Br."). Plaintiffs also cannot rely on CL's and NatWest's provision of routine banking services to their respective customers as being actionable in itself because, as Judge Sifton stated in his dismissal opinion in the NatWest cases, plaintiffs have not alleged that these customers were alter egos of or controlled by Hamas. Weiss v. National Westminster Bank PLC, 453 F. Supp. 2d 609, 623 (E.D.N.Y. 2006) (holding that transfers to organizations that were alleged to have provided support to Hamas were insufficient to establish liability under the ATA because "[m]erely providing financial support and supporting the

Second, contrary to plaintiffs' misleading assertion, Pl. Ltr. at 1, CL and NatWest have not "gloss[ed] over" Judge Rakoff's distinction in his Rothstein I opinion between that case and his understanding of plaintiffs' lawsuit against CL, based on his reading of Judge Sifton's dismissal opinion concerning plaintiffs' claims against CL.[5] Nor have defendants claimed, as plaintiffs mistakenly suggest, that Judge Rakoff "misapprehended" the nature of these cases in making that distinction. Pl. Ltr. at 1 n.1. Rather, as CL and NatWest specifically demonstrated in their respective summary judgment briefs, Judge Rakoff in Rothstein I distinguished plaintiffs' lawsuit against CL as involving allegations of "direct involvement between the defendant banks and the terrorist organizations or 'fronts' those organizations directly controlled," Rothstein I at 294, based solely on Judge Sifton's description of plaintiffs' allegations in his opinion granting in part and denying in part CL's dismissal motion. CL Br. at 26 n.19; NatWest Br. at 29 n.24. But unlike at the dismissal motion stage, where Judge Sifton needed to accept as true plaintiffs' allegations of a direct relationship between CL and terrorist organizations, with discovery now complete, plaintiffs have confirmed that they are seeking to prove instead that CL's and NatWest's purported knowing provision of support to Hamas was indirect, as was true of the Rothstein plaintiffs' allegations, solely based on transfers by CL's and NatWest's respective customers to the 13 Charities. See CL Br. at 19-20; NatWest Br. at 22-23. Further, as CL and NatWest have shown, plaintiffs' allegation that the 13 Charities were alter egos of or controlled by Hamas is not supported by any evidence, as described above.

Third, plaintiffs' attempt to limit the applicability of Rothstein III by claiming that its "entire proximate causation analysis stemmed from the fact that [the Rothstein] plaintiffs argued that causation should be *presumed*, and then subject to rebuttal," Pl. Ltr. at 1 (emphasis in original), misrepresents the scope of the Court of Appeals' ruling. The Rothstein plaintiffs did make such a "presumption" argument and the Court of Appeals rejected it. But the Rothstein plaintiffs also argued that a lower standard of causation than traditional proximate causation should apply in ATA cases (as plaintiffs similarly argue here), and the Court of Appeals specifically rejected that argument as well, on the ground that it is inconsistent with the ATA's "by reason of" standard, which the Court concluded had a "well-understood meaning, as Congress had used it in creating private rights of action under RICO and the antitrust laws, and it had historically been interpreted as requiring proof of proximate cause." Rothstein III, at 21.

Fourth, Your Honor should reject plaintiffs' attempt to disown their prior argument, like the Rothstein plaintiffs' argument, that Your Honor should construe the ATA to require a more relaxed causation standard than traditional proximate causation, an argument Rothstein III explicitly rejects. Pl. Ltr. at 2. Because plaintiffs know they cannot satisfy the traditional proximate causation test as Judge Rakoff had defined it, they previously argued that Judge Rakoff's test was a "lonely outlier" and that, in enacting the ATA, Congress purportedly had chosen a "less legalistic" standard, which plaintiffs contended was motivated by an "unmistakable legislative purpose 'to loosen constraints on recovery'" that "counsel[s] against mechanical and restrictive formulations of causation." Relying on this rhetoric, plaintiffs explicitly condemned Judge Rakoff's reasoning in Rothstein I and Rothstein II. Pl. CL Opp. at

---

terrorist objective of an FTO does not suffice to show that an organization is so dominated and controlled so as to have lost its independent identity.").

[5] Strauss v. Crédit Lyonnais, 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006).

32-33, 33 n. 49. But Rothstein III endorses Judge Rakoff's reasoning and explicitly confirms that, contrary to plaintiffs' argument here, the "by reason of" standard has the "well-understood meaning" that was given to it when Congress previously adopted it in the civil liability provisions of the RICO statute and the Clayton Act. Rothstein III, at 21. Further, as CL and NatWest have shown, the Court of Appeals' prior rulings construing this standard establish that it requires proof that the "alleged violation led directly to the plaintiff's injuries," that the defendant's conduct was "a substantial factor in the sequence of responsible causation," and that the injury is "reasonably foreseeable or anticipated as a natural consequence."[6]

Judge Weinstein's articulation of the proximate causation standard in Gill, which plaintiffs oddly embrace in their February 15 letter, is both entirely consistent with this precedent and is unhelpful to plaintiffs. As we have explained in our previous letters to Your Honor,[7] Judge Weinstein applied this standard to grant summary judgment to Arab Bank in Gill on proximate causation grounds, concluding that the evidence Mr. Gill presented concerning the Palestinian charities in question (the expert reports of Messrs. Levitt and Spitzen), the same evidence plaintiffs in these lawsuits rely on for that same purpose, was insufficient to establish "that the charities were alter egos of Hamas" pursuant to the Sifton-Roberts test for determining control. See Gill, 2012 WL 5395746, at *9, 27.

Fifth, contrary to plaintiffs' baseless contention, CL and NatWest are not arguing for a "proximate cause plus" test. Pl. Ltr. at 3. Rather, CL and NatWest rely on the proximate causation test articulated by the Court of Appeals it its prior decisions addressing the "by reason of" standard in the context of civil claims under RICO and the Clayton Act, which Rothstein III confirms is the test that governs plaintiffs' claims under the ATA.[8] Rothstein III also makes clear that plaintiffs' plea for a "proximate cause light" test is meritless.

In light of the foregoing, and the reasons stated in my February 15 letter, Rothstein III confirms that Your Honor should grant summary judgment to CL and NatWest.

Respectfully,

Lawrence B. Friedman

cc: All counsel of record

---

[6] McBrearty v. Vanguard Grp., Inc., 353 F. App'x 640, 641-42 (2d Cir. 2009) (quoting Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006)); Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003) (citation omitted).

[7] Dkt Nos. 216, 218 and 222 in 07-cv-914 (DLI) (MDG) and 177 in 07-cv-916 (DLI) (MDG).

[8] Plaintiffs' statement that the standard set forth in Kaplan v. Al-Jazeera, 2011 WL 2314783 (S.D.N.Y. June 7, 2011), was never adopted in Rothstein III (Pl. Ltr. at 3) is incomprehensible, because Kaplan specifically cites to Rothstein I's and Rothstein II's interpretation of the "by reason of" language in the ATA, which Rothstein III now confirms is the law of this Circuit. See Kaplan, 2011 WL 2314783, at *7. To the extent plaintiffs are referring to Kaplan's articulation of the requirement under the ATA "that [the defendant]'s conduct is likely to result in violent criminal acts," see id., that reflects hornbook proximate causation analysis. See Gill, 2012 WL 5395746, at *11 (noting that "[f]oreseeability is a touchstone for proximate cause analysis," that "[i]ntentions matter" and that harms must "foreseeably follow" from the "deliberate actions" of the defendants).