```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    ---------------------------------------X
                                            :
4    STRAUSS,                               :
                                            :  06-CV-702(DLI)
5                 Plaintiff,                :
           v.                               :
6                                           :  March 5, 2013
     CREDIT LYONNAIS,                       :  Brooklyn, New York
7                                           :
                  Defendant.                :
8    ---------------------------------------X
9    WOLF,                                  :
                                            :  07-CV-914(DLI)
10                Plaintiff,                :
           v.                               :
11                                          :
     CREDIT LYONNAIS,                       :
12                                          :
                  Defendant.                :
13   ---------------------------------------X
14                                          :
     WEISS, et al,                          :
15                                          :  05-CV-4622(DLI)
                  Plaintiffs,               :
16         v.                               :
                                            :
17   NATIONAL WESTMINSTER BANK, et al,      :
                                            :
18                Defendants.               :
                                            :
19   ---------------------------------------X
                                            :
20   APPLEBAUM,                             :
                                            :  07-CV-916(DLI)
21                Plaintiff,                :
           v.                               :
22                                          :
     NATIONAL WESTMINSTER BANK, et al.,     :
23                                          :
                  Defendants.               :
24   ---------------------------------------X
25
             TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
                 BEFORE THE HONORABLE MARILYN D. GO
                   UNITED STATES MAGISTRATE JUDGE
```

```
 1                                                                    2

 2
         APPEARANCES:
 3
         For Strauss and Weiss:      GARY M. OSEN, ESQ.
 4                                    Osen, LLC
                                      2 University Plaza, Suite 201
 5                                    Hackensack, NJ 07601

 6
         For Applebaum and Wolf:     JOEL ISRAEL, ESQ.
 7                                    Sayles Werbner
                                      4400 Renaissance Tower
 8                                    1201 Elm Street
                                      Dallas TX 75270
 9
         For the Defendants:         LAWRENCE B. FRIEDMAN
10                                    Cleary Gottlieb Steen & Hamilton LLP
                                      One Liberty Plaza
11                                    New York, NY 10006

12

13

14

15

16

17
         Court Transcriber:          MARY GRECO
18                                    TypeWrite Word Processing Service
                                      211 N. Milton Road
19                                    Saratoga Springs, NY 12866

20

21

22

23

24

25


         Proceedings recorded by electronic sound recording,
         transcript produced by transcription service
```

3

1          THE COURT:  Strauss v. Credit Lyonnais, docket

2     number 2006-CV-702; Wolf v. Credit Lyonnais, docket number

3     2007-CV-914; Weiss v. National Westminster Bank, docket number

4     2005-CV-4622; Applebaum v. National Westminster Bank, docket

5     number 2007-CV-916.  Will counsel present please state their

6     names for the record.  For the Strauss and Weiss plaintiffs?

7          MR. OSEN:  For the Strauss and Weiss plaintiffs,

8     Your Honor, Gary Osen from Osen, LLC.

9          THE COURT:  The Applebaum and Wolf plaintiffs?

10          MR. ISRAEL:  Your Honor, Joel Israel from Sayles

11     Werbner.

12          THE COURT:  And for the defendants in all four

13     cases?

14          MR. FRIEDMAN:  Lawrence Friedman, Cleary, Gottlieb,

15     Steen and Hamilton.

16          THE COURT:  Okay.  I've taken a look at the papers

17     and I agree with the defendants that the employment records

18     may provide relevant evidence as to the abilities of the

19     plaintiffs.  I mean notwithstanding the fact that they haven't

20     sought lost wages or that they're claiming a diminishment of

21     their abilities to perform work, there may be information in

22     the files of their employers that may have bearing on their

23     claims of emotional injuries and their ability to engage in

24     life functions.

25          So I mean given the passage of time I think that

4

1   what the defendant is seeking is reasonable temporally two

2   years from before the attack for baseline information and then

3   information through the present.

4          What I would like to do though is talk about

5   narrowing exactly what sorts of information would be

6   discoverable.

7          MR. FRIEDMAN:  If I can make an attempt at that,

8   Your Honor?  Our rationale is not to get salary information,

9   withholding tax information, or anything like that.  What we'd

10  like to get is information from the files that will indicate

11  the precise positions that each of these individuals held,

12  although I do have the titles from them that they held.  But

13  what I'd most be interested in is anything in these files that

14  describe the work that they did in these positions and

15  anything that describes any complaints about their inability

16  to do the work or any limitations in doing the work, and

17  anything relating to any evaluations of their job performance.

18         Now, while those limitations would be agreeable

19  because that's really why I'm focused on this, I do have a

20  concern about how to implement those limitations because what

21  the plaintiffs have preferred that we do is get authorizations

22  from and then go after the employers themselves.  If we're

23  going to put these kinds of limitations --

24         THE COURT:  I don't quite understand what that

25  means.

1          MR. FRIEDMAN:  My point is, Your Honor, that it

2    would be more difficult for us to interact with the employers

3    with these limitations in mind than it would be for the

4    plaintiffs themselves to do so.  And I base that on our

5    experience with the physicians where we have received from the

6    plaintiffs authorizations to go to the physicians, present the

7    authorizations, and then get the records from the physicians.

8    And as none of us like, it's taking a very long time because

9    the physicians don't have a vested interest.  And I've asked

10   the plaintiffs to help prod their physicians along and

11   sometimes it works and sometimes it doesn't.

12          Here, if we're going to put substantive limitations

13   on what in the personnel files is produced, which I'm happy to

14   do along the lines that I just said, I would suggest that we

15   proceed in a different format and a different methodology than

16   we've been proceeding thus far because these employers don't

17   know me, don't know where I'm coming from, and don't know

18   about the case, but they do know these four plaintiffs.  And

19   in fact, two of the four plaintiffs have just had one employer

20   throughout the relevant period, the third has had two

21   employers, and the fourth has had about half a dozen

22   employers.  So I would ask in the interest of expedience

23   because we are trying to take the depositions, which means we

24   want to have these documents as promptly as possible, I would

25   suggest that while the substantive limitations are fine, that

6

1   instead of proceeding by the methodology of my getting

2   authorizations to go to these employers and get these

3   documents and try to reason with them about the limitations

4   and explaining that and whatnot, that we ask plaintiffs'

5   counsel, because we are dealing only with four individuals

6   with a very limited number of past and present employers, that

7   they will implement Your Honor's ruling and they will, with

8   their clients, go to these no more than ten employers, or 11

9   employers and get the documentation for us as quickly as

10  possible.

11          I had a discussion with Mr. Osen and Mr. Israel and

12  others yesterday in which we agreed to try to get all of these

13  depositions done in the next 45 days, which is what plaintiffs

14  had proposed.  I'm willing to go forward with those without

15  all the medical records because I know that's the practical

16  thing to do.  And if I have to go back and speak to people

17  again when I do get all the medical records, that's fine.  But

18  on this subject, because it has been languishing and because

19  it's a very finite population of employers and documents, I

20  would ask that plaintiffs' counsel be instructed to implement

21  Your Honor's ruling with the limitations that I've suggested

22  and then do their very best to get these documents to us asap

23  so that we can conduct these depositions in the next month and

24  a half.

25          THE COURT:  Plaintiffs' counsel?

1        MR. OSEN:  Your Honor, Gary Osen again for the

2   Strauss and Weiss plaintiffs.

3        It's hard for me to respond to that for a number of

4   reasons but if you'll indulge me for a moment since we're

5   talking about four specific individuals, I can just tick off

6   the three who are in the Strauss and Weiss case.  We're

7   talking about Jacob Steinmetz, Deborah Steinmetz, and Sarri

8   Singer.

9        THE COURT:  Right.

10        MR. OSEN:  The first two I believe are the

11   individuals that Mr. Friedman refers to having one employer in

12   the relevant time period.  So in one respect, that's an easier

13   task, if you will, to try and accomplish whether it's done by

14   Mr. Friedman or by the plaintiff.

15        I do want to go back without re-arguing the motion,

16   or the motion and the back and forth on that, to just point

17   out that Mr. Steinmetz testified in his prior deposition that

18   his injuries from the attack had no effect, and that's

19   literally verbatim, the testimony, no effect on his employment

20   as an attorney.  In the case of Mrs. Steinmetz, who works at

21   the film archives library, her stated injuries are post

22   traumatic stress which occurs, according to her deposition,

23   basically in the car when she drives on the same road where

24   the shooting took place and occasionally on the road when she

25   hears news reports of other shootings taking place.  So in

8

1   terms of the futility of this exercise, we have always been
2   extremely dubious.
3          That having been said, we can certainly in those
4   instances at least have an address with a current employer
5   where we could seek records, although again honestly I don't
6   think the issue of the positions of those particular
7   plaintiffs is really at issue.  Their jobs are fairly well
8   described in the plaintiffs' profile forms and their prior
9   depositions.  But that being said, that's easier to do.  But
10  the results, which obviously we can't, you know, anticipate,
11  but whether we send a letter on behalf of the plaintiffs or
12  Mr. Friedman gets an authorization doesn't make a great deal
13  of difference to us.  With respect to -
14         MR. FRIEDMAN:  Gary, can I just address those two
15  before you leave them because --
16         MR. OSEN:  Sure.
17         MR. FRIEDMAN:  Okay.  I appreciate that.  I don't
18  think this should take a lot of work, frankly, because both of
19  the Steinmetzs work at the same place that they worked out
20  during the relevant period.  While we lawyers like to write
21  letters, hopefully they can go to their current employers with
22  your guidance or they can put you in touch with their current
23  employers and while accounting for the time difference, I
24  would hope this could be done over the phone so that we could
25  get this done more quickly.  We've all been working in good

9

1   faith for the last year to try to get these kinds of records

2   through letters and whatnot and it takes a long time.  So I

3   have every confidence that if there's a more expeditious way

4   for you to do it, you will.

5           MR. OSEN:  Well, for us it's not an issue of whether

6   it's done by phone or, you know, the mechanical standpoint.

7   Presumably you would want us to document what the request was

8   and that it conforms to whatever the Court orders.  That's the

9   only reason we speak of it in writing.

10          MR. FRIEDMAN:  Yeah, we can do that.

11          MR. OSEN:  We don't have an objection to asking for

12  it, it's just depending on what the response is, we don't want

13  to be put in the position of being accused of noncompliance

14  because the way it was worded or the conversation ex parte if

15  you will that was made by one employer or the other did not

16  yield the kind of information we hoped for.

17          THE COURT:  Okay.  Well, perhaps if their positions

18  haven't changed, do you need information regarding job

19  responsibilities, Mr. Friedman?

20          MR. FRIEDMAN:  Well, Your Honor, I don't think Mr.

21  Osen said their positions haven't changed.  Their positions

22  have changed.

23          THE COURT:  They worked, okay, for the same --

24          MR. FRIEDMAN:  Their employers have not.

25          THE COURT:  Okay.  So I would think that they would,

1  if they were just to talk to their employers, you know, be

2  able to flesh out the positions held and to the extent there

3  are any documents regarding their job responsibilities you'll

4  get them.  I mean --

5         MR. FRIEDMAN:  And their performance and any

6  notations about any limitations on their performance.  The

7  transcript will show the categories that I outlined before.

8         THE COURT:  Evaluations, you know, each employer

9  tends to have different categories of documents so there has

10  to be some catchall general description.

11         MR. FRIEDMAN:  Right.

12         THE COURT:  And just evaluations really, anything --

13         MR. FRIEDMAN:  Right.

14         THE COURT:  -- relating to their specific job, it

15  might all be just everything in one file, complaints or

16  disciplinary actions, right?

17         MR. FRIEDMAN:  I don't even know, Your Honor,

18  sitting here today whether ordinarily these employees would be

19  entitled to see those files on their own requests.

20  [Inaudible] amongst my titles is not Israeli labor lawyer.  So

21  all we can do is ask for them if that's what the Court

22  directs, but what comes of it, I don't know.

23         THE COURT:  Okay.  Well, why don't you try in the

24  first instance.

25         MR. ISRAEL:  Your Honor, if I could, this is Joel

11

1   Israel for the Wolf Applebaum plaintiffs.  We just have Erik
2   Schechter who's at issue here and he's the one that Mr.
3   Friedman referenced as having six employers, which is right.
4   He moved to the US in 2010 and went through about a six to
5   nine month span where he worked at US Weekly and El Magazine
6   and Monocle, which is another publication company.  You know,
7   we can try and contact him.  I frankly don't know if he did
8   freelance work with them for a few months, what that's going
9   to -- if that's going to bear any fruit.  If there's something
10  -- if there's a limitation we can place on it beyond all six.
11  There were several where he worked for several years and maybe
12  that's more likely to be fruitful.
13          THE COURT:  Would you be willing to stop at 2010
14  subject to further discovery after his deposition, Mr.
15  Friedman?
16          MR. FRIEDMAN:  Yes, Your Honor.  And actually, Mr.
17  Israel, if I may, we only requested Mr. Schechter's reports
18  for the time prior to the attack when he was [inaudible] and
19  he worked, according to the records, as a writer under Spector
20  and Associates thereafter.  You may have more information than
21  has been disclosed to us about his having worked for other
22  publications.  If so, we'd like those.  But my understanding
23  was that he only worked for two employers.
24          MR. ISRAEL:  That's right.  The others were
25  freelancing just writing articles.

12

1          THE COURT:  Oh no.  Yes.  Well, you wouldn't be able

2  to --

3          MR. FRIEDMAN:  Yeah, I wouldn't expect there to be -

4  -

5          THE COURT:  Yes, they're not employers.  He's self-

6  employed.  And obviously, he would be the best source of

7  information --

8          MR. FRIEDMAN:  Right.

9          THE COURT:  -- in his freelance work.  So we'll

10  limit the scope of Mr. Schechter to employment prior to his

11  move to the United States in 2010.

12          MR. FRIEDMAN:  Well no, Your Honor.  If I may,

13  according to the records we have, and Mr. Israel may tell me

14  I'm wrong, he did have an employer after he came to the U.S.

15  At least that's what his records indicate.  He may have done

16  freelance work also, but he did have an employer.  But I'd

17  like to talk about that with Mr. Israel and we can agree on

18  exactly what the universe is.

19          MR. ISRAEL:  Yeah, Your Honor, I can clarify.  He

20  has had an employer full time since February of 2011.

21          THE COURT:  Okay.

22          MR. FRIEDMAN:  Well then I would like to have that

23  information, Your Honor, for the reasons Your Honor stated in

24  making the ruling.

25          THE COURT:  Okay.  Right, right.  Okay, okay.

13

1   That's right.  I'm sorry.  Your request was for records

2   regarding the positions he held prior to the attack.

3          MR. FRIEDMAN:  Prior and --

4          THE COURT:  And through whenever he left that employ

5   and then from 2011 to the present.

6          MR. FRIEDMAN:  Well actually, Your Honor, Mr.

7   Schechter was injured in an attack in 2004.

8          THE COURT:  Yes.

9          MR. FRIEDMAN:  So I'm trying to do a before and

10  after obviously --

11         THE COURT:  Yes.

12         MR. FRIEDMAN:  -- comparison.

13         THE COURT:  Yes, yes.

14         MR. FRIEDMAN:  So I would need the types of

15  information I listed earlier --

16         THE COURT:  Yes.

17         MR. FRIEDMAN:  -- before and then after.

18         THE COURT:  Yes.  No, I'm just clarifying that you

19  had asked for records with respect to Mr. Schechter relating

20  to the positions he held.

21         MR. FRIEDMAN:  Yes.

22         THE COURT:  You know, at the time of the attack as

23  well as after 2010, from 2010.  Okay.  And then Ms. Singer?

24         MR. OSEN:  Yes, Your Honor.  This again breaks down

25  into a different category.  Ms. Singer in the post attack

14

1    period had two what I described as full time jobs, one with

2    One Family Fund, which is a not for profit that helps terror

3    victim families, and also worked at Touro College here in New

4    York.  So certainly Touro College I would think would be

5    responsive at least.  It's a more established employer.  One

6    Family, we can certainly reach out to.

7           With respect to the period immediately preceding and

8    following the attack she worked in a seminary as an

9    administrator.  Again, we can request those records.  She also

10   worked part time during the same period for a tour company,

11   but again, that I think we're -- I don't know what Mr.

12   Friedman's position is, but I think that's going to be

13   unlikely to be a fruitful task.

14          MR. FRIEDMAN:  But Gary, I would still like you to

15   check the tour company because that was her first -- that was

16   after the attack.  And I agree with you odds are they won't

17   have anything, but we should check.

18          MR. OSEN:  We're prepared to make inquiries of all

19   four which would subsume the period immediately preceding the

20   attack, the seminary, the tour company and the other two, the

21   charity as well as --

22          THE COURT:  The college.

23          MR. OSEN:  The college.  But again, Your Honor, our

24   concern is more of a practical one.  Obviously with these

25   kinds of employers and these kinds of records we can make the

15

1   request.  Whether it's in the case of the Steinmetzs going to

2   their current employer or having either the plaintiff or

3   ourselves contact the former employers, we don't want the

4   process here which is, to put it mildly, unlikely to yield

5   useful information or relevant information to derail the

6   process of completing the depositions and preparing for trial.

7          THE COURT:  Yes, I agree.  Well, I --

8          MR. Schwartz:  My apologies.  This is Stephen

9   Schwartz.  I have to get off.  We're having a fire alarm here

10  in our building.  My colleague will finish it.

11         THE COURT:  Okay.  All right.  Good luck.

12         MR. SCHWARTZ:  Here the siren in the background.

13         THE COURT:  I hope you get out safely.

14         MR. SCHWARTZ:  Sorry about this.

15         THE COURT:  Okay.  I would think that as long as you

16  made a good faith effort the defendants will be satisfied.

17         MR. FRIEDMAN:  Yes.  We will speak with Mr. Osen and

18  Mr. Israel to check on their progress and in the remote event

19  that we have any disagreement we'll come back to Your Honor,

20  but I don't expect that to happen.

21         THE COURT:  And I do agree that it is more important

22  to get the depositions completed.

23         MR. FRIEDMAN:  Right.

24         THE COURT:  And in that regard, I do have two other

25  matters I want to discuss with everybody.  One is setting a

16

1    final damages discovery schedule.  I think it is Judge

2    Irizarry's preference that damages discovery proceed while

3    pending preparations to get ready for trial and --

4              MR. FRIEDMAN:  Well, Your Honor, just to make sure

5    we're on the same page, the parties had previously stipulated

6    and the Court ordered bifurcation.

7              THE COURT:  Yes, yes.

8              MR. FRIEDMAN:  So the notion was that especially

9    because we have over 200 plaintiffs that there would be, under

10   the terms of the Court's order approving the stipulation,

11   there is to be damage discovery only if there's an adverse

12   liability verdict.  So we've done the damages discovery as

13   best we can with respect to the 11 designated plaintiffs, but

14   we haven't done any discovery with respect to those 11 with

15   respect to their care givers.  And we haven't even started the

16   damages discovery with respect to the other 190 plus

17   plaintiffs pursuant to the schedule that was approved by the

18   Court whereby all of that would occur only if necessary if

19   there were an adverse liability verdict.  It's an enormous

20   undertaking and I think the parties agreed and the Court

21   approved the schedule that parties should not undertake that

22   massive, massive expense and work unless it becomes ripe

23   because there's an adverse liability verdict.  So I refer back

24   to the Court's prior scheduling order which provides a

25   timetable for the damages discovery other than with respect to

17

1   these 11 designated plaintiffs to take place only after an

2   adverse liability verdict.

3            THE COURT:  Was that entered in both cases?

4            MR. FRIEDMAN:  It was entered in all four cases.

5            THE COURT:  I mean both sets of cases?  Okay.

6            MR. FRIEDMAN:  It was entered in all four cases.

7            THE COURT:  Okay.  And what was the time frame for

8   the damages discovery?

9            MR. FRIEDMAN:  I can pull out the order and --

10           THE COURT:  Okay.  I apologize.

11           MR. FRIEDMAN:  -- email it to the Court.

12           THE COURT:  Okay.  We looked for it and I'm sure you

13  are certainly more on top of all the filings.

14           MR. FRIEDMAN:  I will pull that out this afternoon

15  and circulate it to the Court with copies to Mr. Osen and Mr.

16  Israel.

17           THE COURT:  Okay.  Do you have a rough idea of --

18           MR. FRIEDMAN:  I think it was -- I'm confident I'll

19  be corrected if anyone's recollection differs, but my best

20  recollection is that it provides that in the event of an

21  adverse liability verdict, that the damages discovery will be

22  conducted over the next six months.

23           MR. ISRAEL:  Your Honor, I'm looking at it now.  It

24  will begin within 20 days of a verdict for plaintiffs on

25  liability and then the damages trial would begin within 180

18

1   and 365 days after the conclusion of the liability trial.

2         THE COURT:  Okay.  It's not certainly unrealistic.

3   I guess my concern is at least with respect to the procurement

4   of records that given the problems you've had, you've

5   experienced with respect to the 11 that six months may be too

6   short a time.

7         MR. FRIEDMAN:  Well, if the plaintiffs want to

8   gather the records, I have no objection to that to help

9   expedite the process, but I think the motivation of all the

10  parties to enter into this bifurcation was to avoid what will

11  end up being hundreds of depositions of care givers and

12  plaintiffs, so --

13        THE COURT:  Well, the depositions I understand.

14        MR. FRIEDMAN:  I have no objection --

15        THE COURT:  The documenting, at least where to get

16  the records and it's not going to get any easier particularly

17  for the injured plaintiffs, the ones who sustained physical

18  injuries.  If they're still getting treatment, you know, then

19  they may have gotten treatment from many, many places.

20        MR. OSEN:  Your Honor, Gary Osen again.  Just so

21  that Your Honor understands sort of the landscape, in the

22  course of discovery in the case, the plaintiffs have been

23  producing and have produced on a rolling basis large

24  quantities of medical records for all injured plaintiffs.

25        THE COURT:  Right.  That's what I thought.  That's

1   what I recall we had talked about in the past.  So --

2           MR. OSEN:  Right.  So Your Honor, the issue comes

3   into play and has, excuse me, with respect to the 11 so-called

4   liability plaintiffs, that defense counsel, as is their right,

5   in reviewing those medical records and particularly those

6   produced through the Israeli National Insurance Program see

7   particular doctors or providers and ask for additional records

8   or try to follow up to see if there are additional records.

9   And that is the process that has been so time consuming and

10  frustrating, et cetera because sort of the bulk records that

11  the plaintiffs have obtained through the hospitals and

12  insurance providers, those have been produced but there are,

13  from Mr. Friedman's standpoint, in an effort to be as thorough

14  as possible and have his opportunity to evaluate the records

15  fully, there have been inevitably numerous follow-ups and

16  requests for additional medical authorization forms to get

17  additional records.  So --

18          MR. FRIEDMAN:  Right.  Your Honor --

19          MR. OSEN:  -- we're not starting from scratch but

20  Mr. Friedman's point is well taken in terms of the labor

21  involved in preparing to the level of depositions and the

22  comfort level that would allow defendant to undertake that

23  kind of process.

24          MR. FRIEDMAN:  Your Honor, if I could put a little

25  more flesh on that.  It goes a little bit beyond that.  Mr.

20

1  Osen is right that they have been producing over the years

2  bulk records, but what we have found, and I think all parties

3  recognize this, is that there are two very substantial things

4  and very expensive and time consuming things that need to be

5  done with those records.  Number one, they need to be reviewed

6  by counsel and then secondly, as Mr. Rosen said, the care

7  givers that are identified in these bulk records need to

8  receive authorizations.  So we provide form authorizations to

9  each of the plaintiffs for them to sign that we can then

10  submit to the care givers so that they can produce the

11  records.  So what hasn't happened is any of that.  Pursuant to

12  the bifurcation order, what we've done is an exhaustive job

13  with respect to the 11 plaintiffs pursuant to the parties'

14  agreement that in order to enable us to depose them only once

15  on both liability and damages issues, even though damages

16  issues are not yet ripe, we would do that thorough work and

17  that's what we've been doing with respect to the 11.  But we

18  have not even gone through the bulk files with respect to 190

19  plus, and therefore, we haven't identified the care givers for

20  which we need authorizations.  We haven't gotten the

21  authorizations from plaintiffs.  We haven't sent them out to

22  the care givers and we haven't gotten the files.  And doing

23  that with 190 plus plaintiffs would be an enormous expense

24  that the bifurcation order was designed to avoid, the thinking

25  being that --

1          THE COURT:  No, I understand.  I think what we're

2 faced with is that Judge Irizarry would like to get this case

3 ready for trial and she agrees with bifurcation, but she would

4 like some sort of assurance that the damages trial would

5 proceed sooner rather than later.

6          MR. FRIEDMAN:  Well, if I --

7          THE COURT:  I would think if we get to that point we

8 might be in a better position to talk about settlement, and

9 that's also on my agenda too.

10          MR. FRIEDMAN:  If I may, Your Honor, let me send you

11 the bifurcation order.

12          THE COURT:  Well, we'll be able to find it.

13          MR. FRIEDMAN:  Okay.  And --

14          THE COURT:  I understand, but --

15          MR. FRIEDMAN:  If there is to be any departure from

16 that, I can't speak for plaintiffs, but I would like to be

17 heard because we're talking about an enormous amount of

18 additional resources being dedicated to this on a schedule

19 that's different from what the parties previously agreed to

20 and what the Court ordered.

21          THE COURT:  I think you were getting a little too

22 excited as I was speaking, but I think she would like some

23 assurance that the damages trial would proceed in reasonably a

24 prompt fashion.

25          MR. FRIEDMAN:  Right.

1          THE COURT:  And so based on what I've heard you

2    saying about the 11 plaintiffs, there will be a lag time even

3    for the first five other plaintiffs when they go to trial,

4    right?  How much lead time do you need?  With respect to the

5    11 that you're ready to complete discovery on, I assume they

6    will be prepared to go to trial, but they have a group of

7    relatives who would have to be deposed, right?

8          MR. FRIEDMAN:  There would be, Your Honor.  Just to

9    make sure we're all clear, we are deposing these 11 plaintiffs

10   not because their case is going to be tried separately, it's

11   because the plaintiffs have suggested that these people will

12   testify in a liability trial.

13         THE COURT:  Yes.  No, I understand, I understand.

14         MR. FRIEDMAN:  But then in the event there is a

15   liability verdict in favor of the 200 plaintiffs, we then need

16   to do the work necessary to have damages discovery with

17   respect to the remaining 190 plus plaintiffs.

18         THE COURT:  No, I understand.  But what I'm trying

19   to suggest to you and perhaps you'll talk about it amongst

20   yourselves, is we'll talk about how to get the cases ready for

21   trial and we may have to just tweak the prior order so that

22   there will be cases that will be ready for trial sooner rather

23   than later.

24         MR. FRIEDMAN:  The point I wanted to make, Your

25   Honor, is that --

1           THE COURT:  You're not going to try all 200 of them

2    at the same time.

3           MR. FRIEDMAN:  That is what the plaintiffs propose

4    to do, Your Honor.  That's the key.

5           THE COURT:  Okay.

6           MR. FRIEDMAN:  That is precisely the key.  That is

7    what the plaintiffs have proposed.  So we're talking about one

8    liability trial for Credit Lyonnais, one liability trial for

9    Nat West, one damages trial for Credit Lyonnais, and one

10   damages trial for Nat West.  That's what the order provides

11   for.  So yes, I think it is the case that, as I understand it,

12   that plaintiffs propose to try all 200 plaintiffs at once, and

13   that is the issue.

14          THE COURT:  Okay.  Maybe that's something we need to

15   revisit, and I'll confer with Judge Irizarry about that.

16          MR. FRIEDMAN:  Thank you, Your Honor.

17          THE COURT:  I'll give you a chance to talk about it

18   amongst yourselves.  Maybe what makes sense is for us to have

19   a conference and I'll set a date after I briefly explore this

20   last issue of settlement at this juncture, but we'll set a

21   date for our next conference to see what's a good way of

22   proceeding so that the damages trial can be held sooner rather

23   than later.

24          I have to say perhaps I've been relying on the fact

25   that the parties have been generally able to work out issues

24

 1  amongst themselves.  And I do take a look at the proposed

 2  scheduling order though I can't say I have an independent

 3  recollection of any of those that I've signed in the past.  It

 4  would be very difficult I would think to have a damages trial

 5  for 200 some plaintiffs even if -- I know in the Strauss case

 6  there were 40 some plaintiffs who were actually injured and

 7  another not quite ten who were killed.  So, and then I guess

 8  the remaining plaintiffs in the caption are the survivors.

 9           Anyway, it had not occurred to me the trial would be

10  held for all of them at the same time.  Perhaps that was my

11  oversight in approving the schedule.  But why don't you first

12  talk about it amongst yourselves.  And I'm going to go off the

13  record now and we'll ever so briefly talk about settlement.

14  We'll narrow it and we'll see where we go from there.  And

15  then we'll set another date for a further discovery conference

16  or scheduling conference on how to proceed in discovery.

17                    *  *  *  *  *  *

18

19

20

21

22

23

24

25

25

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                          _____

6                                    Mary Greco

7   Dated:   March 6, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25