UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————
TZVI WEISS, et al.,                          :
                                             :
                    Plaintiffs,              :
                                             :
         -against-                           :        Case No. 05-CV-4622 (DLI) (MDG)
                                             :
NATIONAL WESTMINSTER                         :
BANK PLC,                                    :
                    Defendant.               :
———————————————————————      :
NATAN APPLEBAUM, et al.,                     :
                                             :
                    Plaintiffs,              :
                                             :
         -against-                           :        Case No. 07-CV-916 (DLI) (MDG)
                                             :
NATIONAL WESTMINSTER                         :
BANK PLC,                                    :
                    Defendant.               :
———————————————————————      :


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
NATIONAL WESTMINSTER BANK PLC'S MOTION FOR AN ORDER DISMISSING
<u>PLAINTIFFS' CLAIMS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.   NATWEST WAIVED ITS RIGHT TO CHALLENGE
     GENERAL PERSONAL JURISDICTION. ...................................................................... 3

     A.   The Motion is Barred Under Fed. R. Civ. P. 12(g)-(h). .............................................. 3

     B.   *Daimler* Did Not Resurrect NatWest's Personal Jurisdiction Defense. ...................... 6

II.  NATWEST IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION. ........................ 10

     A.   Personal Jurisdiction Exists Under Fed. R. Civ. P. 4(k)(1)(C). .................................. 10

     B.   Personal Jurisdiction Exists Under Fed. R. Civ. P. 4(k)(1)(A) and CPLR
          § 302(a)(1). ................................................................................................................ 15

     C.   Specific Jurisdiction Also Lies Under CPLR § 302(a)(3). ......................................... 16

     D.   NatWest's Additional Arguments That It Is Not Subject to
          Specific Personal Jurisdiction Are Meritless. ............................................................ 17

III. NATWEST'S ARGUMENT THAT IT IS ENTITLED
     TO SUMMARY JUDGMENT IS MERITLESS. .......................................................... 23

     A.   Because the Second Circuit Vacated This Court's Summary
          Judgment Order, No Part of That Order is Law of the Case. ..................................... 23

     B.   As a Result of the Second Circuit's Decision, All Evidence of *Scienter*
          From Any Time Period May Be Shown to the Jury. ................................................... 24

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE NO(S).**

*Ahern v. Neve*, 285 F. Supp. 2d 317 (E.D.N.Y. 2003) ................................................................... 6

*Am. Fidelity Assurance Co. v. Bank of N.Y. Mellon*, WL 4471606
   (W.D. Okla. Sept. 10, 2014) ................................................................................................. 8

*AstraZeneca AB v. Mylan Pharms., Inc.*, WL 5780213 (D. Del., Nov. 5, 2014) .......................... 8

*Azrelyant v. B. Manischewitz Co.*, 2000 WL 264345 (E.D.N.Y. Jan. 13, 2000) ......................... 5

*Bennett v. City of Holyoke*, 362 F.3d 1 (1st Cir. 2004).................................................................. 9

*Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685 (7th Cir. 2008) ........................... 17

*Burrell v. United States*, 467 F.3d 160 (2d Cir. 2006).................................................................. 24

*Chatman-Bey v. Thornburgh*, 864 F.2d 804 (D.C. Cir. 1988)........................................................ 4

*Chevron v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) ...................................................... 18

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998) ............................................................................... 2

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ........................... 3-4

*Cohain D.D.S. v. Klimley*, 2010 WL 3701362 (S.D.N.Y. Sept. 20, 2010)..................................... 5

*Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293 (7th Cir. 1993)............................................................. 5

*Datskow v. Teledyne, Inc.* ............................................................................................... *passim*

*Datskow v. Teledyne, Inc., Cont'l Prods. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990).................... 5

*Del Ponte v. Universal City Dev. Partners, Ltd.*, 2008 WL 169358 (S.D.N.Y. Jan. 16, 2008) ..... 2

*Democratic Repub. of Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062
   (D.C Cir. 2007) ................................................................................................................... 4

*Dorsey v. Continental Casualty Co.*, 730 F.2d 675 (11th Cir.1984) ............................................ 23

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76 (D.R.I. 2001)....... 10

*Fontanetta v. Am. Bd. of Internal Medicine*, 421 F.2d 355 (2d Cir. 1970).................................. 22

*Gilmore v. Palestinian Interim Self Gov't Auth.*, 8 F. Supp. 3d 9 (D.D.C. 2014) .......................... 7

*Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009)....................................................... 14

*Goldberg v. UBS AG*, 690 F. Supp. 2d (E.D.N.Y. 2010)................................................. 14, 15, 17

*GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, --- F. Supp. 2d ---, 2014 WL 4100445
   (N.D. Ill., Aug. 20, 2014)..................................................................................................... 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011)....................... *passim*

*Gucci America*, 768 F.3d 122 (2d Cir. 2014) ......................................................................... 6, 8-10

*Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999) ........................................................... 5

*Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87 (2d Cir. 2009).................................. 7

*Holzsager v. Valley Hosp.*, 646 F.2d 792 (2d Cir. 1981)............................................................. 7, 9

*IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604 (M.D.N.C. 2012) ............................ 6

*In re Complaint of Rationis Enters., Inc. of Panama*, 210 F. Supp. 2d  421 (S.D.N.Y. 2002)....... 6

*In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30 (2d Cir. 2014) ......................... 8

*J. McIntyre Mach. v. Nicastro*, 131 S. Ct. 2780 (2011)................................................................ 13

*Johnson v. Board of Ed.*, 457 U.S. 52 (1982) .............................................................................. 23

*Krishanti v. Rajaratnam*, 2014 WL 1669873 (D.N.J. Apr. 28, 2014) ............................................ 9

*LaChapelle v. Torres*, 1 F. Supp. 3d 163 (S.D.N.Y. 2014) .......................................................... 18

*Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012) .............................................. 16, 18, 21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) .............. *passim*

*Ling Nan Zheng v. Liberty Apparel Co., Inc.*,  556 F. Supp.2d 284 (S.D.N.Y. 2008).................. 23

*Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585 (2d Cir. 1991)......................... 23

*Mahar v. U.S. Xpress Enters., Inc*., 688 F. Supp. 2d 95 (N.D.N.Y. 2010).................................... 6

*Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293 (2d Cir. 2002)...................................................... 6

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ................................ 11

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939)............................................... 7

*Nextt Solutions, LLC v. XOS Techs., Inc.*, 2014 WL 6674619 (N.D. Ind. Nov. 25, 2014)............. 8

*Penn. Lumbermens Mut. Ins. Co. v. Forman's of Orchard St., Inc.*, 1998 WL 241963,
        (S.D.N.Y. May 14, 1998)........................................................................................................ 5

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) .......................................................................... 20

*Sahu v. Union Carbide Corp.*, 262 F.R.D. 308 (S.D.N.Y. 2009) .................................................. 23

*Schwartz v. Chan*, 142 F. Supp. 2d 325 (E.D.N.Y. 2001) ............................................................ 23

*Seiferth v. Helicopteros Atuneros Inc.*, 472 F.3d 266 (5th Cir. 2006) ........................................... 22

*Sokolow v. Palestine Liberation Org.*, 2011 WL 1345086 (S.D.N.Y. Mar. 30, 2011)................. 10

*Sonera Holding B.V. v. Cukurova Holding, A.S.*, 750 F.3d 221 (2d Cir. 2014) .............................. 8

*State v. Samaritan Asset Mgmt Services* 874 N.Y.S.2d 698 (Sup. Ct. N.Y. Cnty. 2008)........ 22-23

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp.2d 414 (E.D.N.Y. 2013) ...................................... 20

*Subway Int'l B.V. v. Bletas*, 512 Fed. App'x 82, 83 (2d Cir. 2013)............................................... 5

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)................................................... 22

*Tiffany (NJ) LLC v. China Merchants Bank,* --- Fed. App'x ---, 2014 WL 4627662
        (2d Cir. Sept. 23, 2014)........................................................................................................... 8

*Toumazou v. Turkish Repub. of N. Cyprus*, --- F. Supp. 3d ---, 2014 WL 5034621
(D.D.C. Oct. 9, 2014) ................................................................................................ 8

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998) ................ 4

*U.S. v. Brow*, 2012 WL 947589 (E.D.N.Y. Mar. 20 2012) ............................................ 5

*U.S. v. Guzman*, 419 F.3d 27 (1st Cir. 2005) ................................................................ 9

*U.S. v. Sanders*, 340 Fed. App'x 878 (4th Cir. 2009) .................................................... 8

*United States v. Al-Kassar*, 660 F.3d 108 (2d Cir. 2011) ........................................... 13

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ................................................... 13

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ............................................................ 11, 13

*Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006) ............. 3

*Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33 (E.D.N.Y. 2007) ................. 2, 6

*Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014) .......... 1, 21, 23, 24

*Wultz v. Islamic Repub. of Iran*, 762 F. Supp. 2d 18 (D.D.C. 2011) ......................... 11

*Wultz v. Islamic Republic of Iran,* 755 F. Supp. 2d 1 (D.D.C. 2010) ......................... 21

## Other Authorities

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure  (3d ed.) ......... 4, 13, 15

New York State Banking Department Annual Report 2004, Schedule C –
Closed Institutions, available at www.dfs.ny.gov/reportpub/areport04.pdf ......... 2

State of New York, Superintendent of Banks, Annual Report 2002, Schedule B, Part 2,
Detail of Supervised Banking Institutions and Licensed Lenders as of Dec. 31, 2002,
available at http://www.dfs.ny.gov/reportpub/report02/Schedules/B/PDF/b-part2.pdf ........ 2

State of New York, Superintendent of Banks, Annual Report 2003, Schedule B, Part 2,
Detail of Supervised Banking Institutions and Licensed Lenders as of Dec. 31, 2003,
available at http://www.dfs.ny.gov/reportpub/areport03.pdf ................................. 2

*Treasury Designates Al-Salah Society Key Support Node for Hamas,*
Aug. 7, 2007 U.S. Treasury Dept., Press Release, available at
http://www.treasury.gov/press-center/press-releases/Pages/hp531.aspx
(last accessed Dec. 12, 2014) ................................................................................ 12

*U.S. Designates Five Charities Funding Hamas and Six Senior Hamas Leaders as Terrorist
Entities* (Aug 22, 2003 U.S. Treasury Dept press release, available at
http://www.treasury.gov/press-center/press-releases/Pages/js672.aspx
(last accessed December 10, 2014). ....................................................................... 20

## Statutes and Rules

18 U.S.C. §2331 *et seq.* ................................................................................... *passim*

CPLR §302 .......................................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................................................ *passim*

Fed. R. Civ. P. 4(k) ............................................................................................................. *passim*

.

## PRELIMINARY STATEMENT

Defendant National Westminster Bank Plc ("NatWest" or the "Bank") has responded to the Second Circuit's remand of this case[1] by filing a motion ("Motion") contending that it is not subject to this Court's general or specific personal jurisdiction, and that, even if the Court determines otherwise, it is entitled to summary judgment on all claims related to NatWest's conduct before the wholly arbitrary date of August 15, 2003.

NatWest's motion must be denied in its entirety.[2]   The Bank forfeited its right to challenge general personal jurisdiction nine years ago when it chose not to raise the defense in its pre-answer Fed. R. Civ. P. 12(b)(6) motion, and thereafter actively litigated these cases for nearly a decade.  The Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), does not revive the defense; that decision merely reaffirmed the "essentially at home" standard first articulated by the Court over three years ago in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011).  Likewise, NatWest is subject to specific personal jurisdiction in this Court under Federal Rule of Civil Procedure 4(k)(1)(C) and the New York long-arm statute, NY CPLR § 302(a)(1) and § 302(a)(3). NatWest **_concedes_** that it processed at least 185 U.S. dollar-denominated wire transfers through a correspondent bank account in New York on behalf of the so-called charity Interpal—the same transfers (totaling millions of dollars) that form the basis of Plaintiffs' claims.  (*See* Mot. at 5 & n.5.)  And public filings by the New York State Department of Financial Services (formerly the New York State Banking Division) indicate that, at least until April 2004, NatWest maintained a branch office at

---

[1] *See Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014).

[2] Plaintiffs respectfully adopt and incorporate by reference herein the opposition briefs and post-briefing letters filed in *Strauss et al. v. Crédit Lyonnais, S.A.*, No. 06-CV-702 (DLI)(MDG) and *Wolf et al. v. Crédit Lyonnais, S.A.*, No. 07-CV-914 (DLI)(MDG), in opposition to Defendant Crédit Lyonnais' Motion For an Order Dismissing Plaintiffs' Claims, or, Alternatively, For Summary Judgment.

101 Park Avenue in New York.[3] The totality of NatWest's contacts with New York sufficiently relate to Plaintiffs' claims.[4]

NatWest's suggestion that it did not and could not have contested personal jurisdiction prior to filing this Motion re-writes history. In November 2006, *eight* years before *Daimler*, NatWest *did* expressly contest personal jurisdiction. While opposing Plaintiffs' motion to compel discovery, NatWest flatly denied that it conducted any business, or committed any misconduct, in the United States.[5] At that time, Judge Matsumoto rejected the Bank's belated challenge, finding that "*the court deems that defense waived and, accordingly, will not consider the issue of personal jurisdiction in this decision. See* Fed. R. Civ. P. 12(h)(1)." *Weiss v. Nat'l Westminster Bank, PLC,* 242 F.R.D. 33, 36 n.5 (E.D.N.Y. 2007) (emphasis added). The Bank's waiver of personal jurisdiction is the law of the case.

NatWest's alternative summary judgment argument is similarly misguided. It rests on: (1) the false premise that the Second Circuit only vacated this Court's summary judgment order by piecemeal; and (2) a baseless assertion that the Second Circuit also silently found that no

---

[3] *See* State of New York, Superintendent of Banks, Annual Report 2002, Schedule B, Part 2, Detail of Supervised Banking Institutions and Licensed Lenders as of Dec. 31, 2002, available at http://www.dfs.ny.gov/reportpub/report02/Schedules/B/PDF/b-part2.pdf; State of New York, Superintendent of Banks, Annual Report 2003, Schedule B, Part 2, Detail of Supervised Banking Institutions and Licensed Lenders as of Dec. 31, 2003, available at http://www.dfs.ny.gov/reportpub/areport03.pdf; New York State Banking Department Annual Report 2004, Schedule C – Closed Institutions, available at www.dfs.ny.gov/reportpub/areport04.pdf (last visited Dec. 12, 2014).

[4] *Chew v. Dietrich,* 143 F.3d 24, 29 (2d Cir. 1998) (where a defendant's contacts with a jurisdiction are substantial, defendant may be subject to specific personal jurisdiction even if conduct in forum is merely related to claim). *Accord Del Ponte v. Universal City Dev. Partners, Ltd.,* No. 07-CV-2360 (KMK)(LMS), 2008 WL 169358, at *10 (S.D.N.Y. Jan. 16, 2008) (if a defendant has substantial contacts with the forum, even if not sufficient to establish general jurisdiction, a court "may accept a more attenuated relation between the defendant's contacts and the plaintiff's cause of action").

[5] *See* NatWest's Mem. of Law in Opp. to Pls.' Mot. For an Order Overruling Objections to Pls.' First Set of Requests for Admissions and Related Interrogatories and Pls.' First Request for the Production of Documents dated November 16, 2006 (*Weiss* ECF No. 83) at 1 (describing NatWest as "an English bank with no branches or offices in the United States that does not conduct business in the United States"), 20 ("In fact, NatWest does not conduct business in the United States, its customer's accounts are located in England, and plaintiffs do not allege that the bank committed any misconduct here.") (emphasis in original).

reasonable jury could infer that NatWest possessed the requisite *scienter* prior to August 15,

2003.  The Second Circuit self-evidently did no such thing.

## ARGUMENT

### I.   NATWEST WAIVED ITS RIGHT TO CHALLENGE GENERAL PERSONAL JURISDICTION.

#### A.   The Motion is Barred Under Fed. R. Civ. P. 12(g)-(h).

Plaintiffs first sued NatWest under §2333(a) of the Anti-Terrorism Act (the "ATA", 18

U.S.C. §2331 *et seq.*) on September 29, 2005, and served the Bank with process in October

2005.  *See Weiss* ECF Nos. 1, 3, 7, 8.  The original and every succeeding amended *Weiss*

Complaint expressly alleged:

> NatWest is subject to personal jurisdiction in the United States pursuant to Fed. R. Civ. P. 4(k) because, among other things, *it continuously and systematically does business in the United States.* The defendant is also subject to personal jurisdiction in the United States pursuant to 18 U.S.C. § 2339B(d)(1)(D) *because it has committed tortious acts within the United States by transferring funds through the United States for the benefit of HAMAS, and has purposefully availed itself of United States jurisdiction in the course of committing the wrongful acts alleged herein.*

(*Weiss* ECF No. 1 (Complaint dated Sept. 29, 2005), ¶4 (emphasis added); *see also Applebaum*

ECF No. 1 (Complaint dated Mar. 2, 2007), ¶4.)  The first sentence alleges general jurisdiction,

and the second alleges specific jurisdiction.  On December 19, 2005, NatWest filed a pre-answer

Rule 12(b) motion that did not contest personal jurisdiction in any respect.  (*See Weiss* ECF Nos.

15-18.)  That motion was fully briefed, argued and decided by September 2006.  *See Weiss v.*

*Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006).   Nor was personal

jurisdiction contested in *Applebaum*.  (*See Applebaum* ECF No. 13.)

When a defendant omits a personal jurisdiction challenge from a pre-answer Rule 12(b)

motion to dismiss, the defense is waived pursuant to Fed. R. Civ. P. 12(h)(1) (A).  *City of New*

*York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133-34 (2d Cir. 2011).[6]   In addition, Rule

12(g)(2) *mandates* that parties who fail to include a defense of personal jurisdiction in a Rule

12(b) motion "must not" file a later motion based on that defense. "Personal jurisdiction, unlike

subject-matter jurisdiction, can . . . be purposely waived or inadvertently forfeited. 'Because the

requirement of personal jurisdiction represents first of all an individual right, it can, like other

such rights, be waived.'"   *City of New York*, 645 F.3d at 133 (citations omitted).[7]   A pre-answer

Rule 12(b) motion that fails to contest personal jurisdiction results in a binding, irrevocable

waiver *even if it is certain* that the defendant could have successfully challenged personal

jurisdiction.   *See Chatman-Bey v. Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988).   Here,

NatWest's failure to contest personal jurisdiction when it filed its Rule 12(b) motion waived its

right to contest the issue in *any* respect pursuant to Rule 12(h)(1)'s plain terms.

NatWest also forfeited its personal jurisdiction defenses when it actively participated in

this lawsuit after it lost its motion to dismiss and filed its Answer denying Plaintiffs'

jurisdictional allegations.[8]   Even *after* properly asserting a personal jurisdiction defense, a

---

[6] *See also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998) (Rule 12(h)(1) "advises a litigant to exercise great diligence in challenging personal jurisdiction . . . or service of process. If he wishes to raise [either] of these defenses he must do so at the time he makes his first significant defensive move . . . .") (citation omitted) (alteration and omissions in original).

[7] *See also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1391 (3d ed.) ("[A]ny time a defendant makes a pre-answer Rule 12 motion, he or she must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b). ... Not only is the defendant prevented from making it the subject of a second preliminary motion, but ... the defendant may not even assert the defense in the answer.").

[8] *See Democratic Repub. of Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062, 1064 (D.C Cir. 2007) (courts have applied Rule 12(h)'s "rationale—that defendants should raise such preliminary matters before the court's and parties' time is consumed in struggle over the substance of the suit—where a defendant has engaged in extensive post-default litigation without suggesting an infirmity in personal jurisdiction").

defendant who litigates the merits of a lawsuit forfeits the defense.[9]   Here, after denying the

jurisdictional allegations, NatWest:

- moved to dismiss Plaintiffs' original Complaint and served Answers to four subsequent *Weiss* Amended Complaints without contesting personal jurisdiction, notwithstanding that each of the Complaints specifically alleged that NatWest is subject to personal jurisdiction in the United States because it "continuously and systematically does business in the United States" and "has committed tortious acts within the United States;" (*Weiss* ECF Nos. 1, 28, 75, 103, 135, 141);[10]

- fully litigated fact and expert witness discovery between 2006 and 2013;

- obtained extensive merits and damages discovery from Plaintiffs that included private medical information;

- actively prosecuted and defended numerous motions to compel discovery over eight years; and

- moved for summary judgment[11] and prevailed on certain grounds.

Far less active participation in litigation, over far shorter periods of time than NatWest

engaged in here, has resulted in forfeiture.[12]

---

[9] *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-62 (2d Cir. 1999) (foreign defendant forfeited personal jurisdiction defense by participating in extensive pretrial proceedings and forgoing numerous opportunities to move to dismiss during four-year interval that followed its inclusion of personal jurisdiction defense in its answer). *Accord Subway Int'l B.V. v. Bletas*, 512 Fed. App'x 82, 83 (2d Cir. 2013) ("It is well settled that lack of personal jurisdiction is a defense that can be waived by failure to assert it seasonably or by submission through conduct.").

[10] *See also U.S. v. Brow*, No. 01-cv-4797 (NGG) (JMA), 2012 WL 947589, at *4 (E.D.N.Y. Mar. 20 2012) ("Brow has Answered, Counterclaimed, and otherwise participated in this litigation for ten years. Through this long participation, he has waived any objection he might have had to the service of process and the court's personal jurisdiction."); *Penn. Lumbermens Mut. Ins Co. v. Forman's of Orchard St., Inc.*, No. 96 Civ. 0508 (DC), 1998 WL 241963, at *2-3 (S.D.N.Y. May 14, 1998) (personal jurisdiction defense waived despite inclusion in answer when defendant participated in extensive post-answer proceedings and made dispositive motion without further raising the jurisdiction defense).

[11] The Bank's Rule 56 motion alone establishes forfeiture. *See Azrelyant v. B. Manischewitz Co.*, No-98-cv-2502 ILG, 2000 WL 264345, at *5 (E.D.N.Y. Jan. 13, 2000) ("Manischewitz, by virtue of its many appearances in this Court, and by moving for summary judgment, has waived any defense it may have had based on personal jurisdiction.").

[12] *See, e.g., Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (waiver of personal jurisdiction defense where defendants fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction); *Datskow v. Teledyne, Inc., Cont'l Prods. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) (waiver where defendant participated in scheduling conference); *Cohain D.D.S. v. Klimley*, No. 08 Civ. 5047 (PGG), 2010 WL 3701362, at *18-19 (S.D.N.Y. Sept. 20, 2010) (waiver where defendant waited eighteen months after

### B.   *Daimler* Did Not Resurrect NatWest's Personal Jurisdiction Defense.

NatWest tries to avoid Rule 12's mandatory waiver by asserting that no jurisdictional defense was available prior to *Daimler*. (*See* Mot. at 4-5, 18.)  But the record is clear that in 2006, NatWest clearly believed it *could* plausibly challenge general personal jurisdiction even under pre-*Goodyear* standards *and* did so. In November 2006, the Bank stated that it was an English bank with no U.S. branches or offices (*see Weiss* ECF No. 83, at 1) and further claimed:

> Plaintiffs argue, in effect, that Nat West should not be heard to complain about any hardship it suffers as a result of its compliance with their discovery requests because the bank chose to conduct business in the United States and therefore must bear the consequences. . . . In fact, NatWest does <u>not</u> conduct business in the United States, its customer's accounts are located in England, and plaintiffs do not allege that the bank committed any misconduct here.[13]

Judge Matsumoto expressly rejected the Bank's effort to assert a personal jurisdiction defense, holding:

> Although defendant has not asserted lack of personal jurisdiction as an affirmative defense (*see* doc. no. 80, Answer to Amended Complaint, dated 11/22/06), defendant states in its opposition to plaintiffs' motion to compel that NatWest is "an English bank with no branches or offices in the United States . . . [and] does not conduct business in the United States." (Def's Opp. at 1.) *Because defendant did not raise lack of personal jurisdiction as an affirmative defense in its Answer, the court deems that defense waived and, accordingly, will not consider the issue of personal jurisdiction in this decision. See Fed. R. Civ. P. 12(h)(1).*[14]

---

filing answer asserting personal jurisdiction defense before filing Rule 12(b) motion); *Mahar v. U.S. Xpress Enters., Inc.*, 688 F. Supp. 2d 95, 103-104 (N.D.N.Y. 2010) (waiver where defendant waited 33 months to raise defense during which time defendant filed motions, attended court conferences, participated in discovery, and was deposed); *Ahern v. Neve*, 285 F. Supp. 2d 317, 321 (E.D.N.Y. 2003) (waiver where defendant waited two years to raise defense); *In re Complaint of Rationis Enters., Inc. of Panama*, 210 F. Supp. 2d 421, 426–427 (S.D.N.Y. 2002) (waiver where defendant waited nearly two years to raise defense while participating in "full discovery").

[13] *Weiss* ECF No. 83, at 20. *See also Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) (to preserve personal jurisdiction defense "a defendant need only state the defense in its first responsive filing and *need not articulate the defense with any rigorous degree of specificity*") (emphasis added).

[14] *Weiss*, 242 F.R.D. at 36 n.5 (emphasis added).  No case cited by the Bank, *including* the Second Circuit's *Gucci America*, 768 F.3d 122 (2d Cir. 2014), decision, directly holds or inferentially suggests that a defendant choosing to concede general jurisdiction may, years later, contest specific jurisdiction. "The general rule is that where a party moves to dismiss based on improper venue alone, the party waives *any* personal jurisdiction defense that it *may* have." *IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604, 615 n.6 (M.D.N.C. 2012) (emphasis added).

Moreover, even if a jurisdictional defense had been unavailable in 2006, it became available no later than 2011, when the Supreme Court held for the first time that the Fourteenth Amendment's Due Process Clause does not permit a state to exercise general personal jurisdiction over a foreign subsidiary of a U.S. corporation unless the subsidiary's contacts with the state are such that the state is "one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853-54. In *Daimler,* the Court later explained, "A*s the Court made plain in Goodyear and **repeats** here*, general jurisdiction requires affiliations 'so "continuous and systematic" as to render [the foreign corporation] essentially at home in the forum State,' 564 U.S., at ——, 131 S. Ct., at 2851, *i.e.,* comparable to a domestic enterprise in that State." *Daimler*, 134 S. Ct. at 758 n.11 (citation to *Goodyear* in original) (emphasis added). Indeed, the *Daimler* Court expressly framed its task as conducting "the inquiry under *Goodyear*," *id.* at 761, and characterized *Goodyear* as the "pathmarking" opinion.  *Id.* at 760, n.16. Yet, notwithstanding the availability in 2011 of *Goodyear*'s "essentially at home" standard for general jurisdiction, NatWest continued actively litigating these cases for three years (including seeking summary judgment) before filing its current Motion.  By so doing, the Bank a*gain* waived any defense based on personal jurisdiction.  NatWest moved for summary judgment on March 22, 2012—almost a full year after *Goodyea*r was issued—and did not cite *Goodyear* or raise a personal jurisdiction defense in its Rule 56 motion papers, rendering the Bank's waiver especially acute.[15]

---

[15] *See Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981) (potentially revived Rule 12 defense must be asserted "as soon as [its] cognizability is made apparent"); *Gilmore v. Palestinian Interim Self Gov't Auth.,* 8 F. Supp. 3d 9, 13 (D.D.C. 2014) (in civil ATA case, finding that defendant had waived personal jurisdiction defenses based on *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939), which held that newly available defense is subject to waiver "by failure to assert it seasonably . . . or by submission [to the court's jurisdiction] through conduct."). Although NatWest cites *Holzager* and *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87 (2d Cir. 2009) in support of its Motion, neither decision helps the Bank.  Both *Holzager* and *Hawknet* involved clear reversal of longstanding precedent, whereas *Daimler* at most only restated and elaborated further upon

NatWest nonetheless argues that language in the Second Circuit's recent decision in *Gucci America shows* that its personal jurisdiction defenses have been resuscitated. Specifically, NatWest cites *Gucci America*'s comment that "[p]rior to *Daimler*, controlling precedent in this Circuit made it clear that a foreign bank with a branch in New York *was* properly subject to general personal jurisdiction here." (*See* Mot. at 4.) NatWest is wrong, for two reasons.[16]

*First*, two separate Second Circuit decisions issued ***prior*** to *Gucci America* unambiguously held that *Daimler* merely *reaffirmed Goodyear*'s "essentially at home" standard. *See In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) (*Daimler* "reaffirmed" *Goodyear*'s general jurisdiction standards); *Sonera Holding B.V. v. Cukurova Holding, A.S.*, 750 F.3d 221, 222 (2d Cir. 2014) (*Daimler* "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in that state."). Unsurprisingly, courts outside this Circuit also acknowledge that *Daimler* reaffirmed *Goodyear* and effected no change in the law.[17]

---

*Goodyear*'s 2011 holdings. Concurring Justice Sotomayor's characterization of *Daimler* as establishing a new rule does not trump the majority's assertion that it was simply "repeat[ing]" the "essentially at home" standard established by the "pathmarking" *Goodyear* opinion. *See U.S. v. Sanders*, 340 Fed. App'x 878, 879 (4th Cir. 2009) (concurring opinion of Justice not joined by majority of Justices entitled to no precedential value).

[16] In addition to the two reasons set forth above, NatWest is wrong because it interprets the comment in *Gucci America* far too broadly. The comment only suggests that the mere presence *simpliciter* of a bank branch, absent *further* analysis, no longer suffices to *per se* establish general jurisdiction. Nor does the decision (or a companion decision, *Tiffany (NJ) LLC v. China Merchants Bank*, --- Fed. App'x ---, 2014 WL 4627662, at *3 (2d Cir. Sept. 23, 2014)), address whether, following *Goodyear*'s issuance in 2011, a *party* had the defense available to it under Rule 12(h)'s standards.

[17] *See, e.g., Nextt Solutions, LLC v. XOS Techs., Inc.*, 2014 WL 6674619 (N.D. Ind. Nov. 25, 2014) ("The *Daimler* court reiterated [*Goodyear's*] 'at home' standard"); *Am. Fidelity Assurance Co. v. Bank of N.Y. Mellon*, No. CIV-11-1284-D, 2014 WL 4471606 (W.D. Okla. Sept. 10, 2014) (rejecting argument that *Daimler* revived personal jurisdiction defense because "the standard Defendant relies upon was not pronounced by the Supreme Court in *Daimler*, but was pronounced more than two years earlier in *Goodyear* . . . *Daimler did not announce a new constitutional rule or overrule prior precedent*.") (emphasis added). *See also AstraZeneca AB v. Mylan Pharms., Inc.*, No. 14-696-GMS2014 WL 5780213, at *3 (D. Del., Nov. 5, 2014) (*Daimler* elaborates upon *Goodyear*'s "essentially at home" standard); *Toumazou v. Turkish Repub. of N. Cyprus*, --- F. Supp. 3d ---, 2014 WL 5034621 (D.D.C. Oct. 9, 2014) ("[A]s the Court made plain in *Goodyear*, and repeated in *Daimler*, 'general jurisdiction

*Second*, in *Gucci America* the panel held that a *nonparty* (Bank of China), drawn into the case in order to freeze defendants' assets and to provide discovery concerning the defendants' conduct, had not waived its defense. The Panel explained why:

> To the extent that plaintiffs attempt to ground their waiver argument on Federal Rule of Civil Procedure 12(h), *we note that the waiver provisions of that rule are inapplicable* because the Bank is not a "party" that could fail to assert its personal jurisdiction defense in an answer or a motion to dismiss.

*Gucci America*, 768 F.3d at 136 n.14 (emphasis added).   Although Bank of China's nonparty status did not alter the applicability of personal jurisdiction law, it *did* affect Rule 12(h)(1)'s applicability and its clear provision for procedural waiver. Here, in contrast, those waiver provisions apply squarely to party NatWest. *Goodyear* minimally provided a colorable argument that NatWest did not have sufficient contact to New York or the United States to render it "essentially at home" (indeed, the same argument NatWest had already made in 2006 in denying Plaintiffs' jurisdictional allegations). No more is needed to make a defense available and to trigger waiver by the failure to assert it.[18]

Rule 12(h)'s waiver provision is designed to ensure that jurisdictional defenses are raised early enough to permit jurisdictional discovery[19] in advance of potentially wasteful merits

---

requires affiliations so continuous and systematic as to render [the foreign entity] essentially *at home* in the forum State.'") (citation omitted); *Krishanti v. Rajaratnam*, No. 2:09-cv-05395(JLL)(JAD), 2014 WL 1669873, at *6 (D.N.J. Apr. 28, 2014) (*Goodyear* "clarified" that appropriate test is whether corporation's affiliations are sufficiently continuous and systematic as to render them "essentially at home" in the forum; *Daimler* "reaffirmed" *Goodyear*'s test); *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, --- F. Supp. 2d ---, 2014 WL 4100445, at *4-5 (N.D. Ill., Aug. 20, 2014) (*Goodyear* "expressly articulated" the "at home" standard; *Daimler* "confirms and clarifies" that standard).

[18] *See Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004) (absence of precedent "directly" on point did not excuse failure to assert waivable defense, where defense was not absolutely "foredoomed," and distinguishing *Holzsager*); *U.S. v. Guzman*, 419 F.3d 27, 30-31 (1st Cir. 2005) ("raise or waive" rule's exception only applies if it is "unequivocally apparent" that raising a defense would have been futile; exception did not apply where legal issue was "very much in play" at the time objection could have been raised).

[19] Because NatWest did not assert *any* jurisdictional defense at the start of this lawsuit or even in 2011 after *Goodyear* was issued, Plaintiffs have never had the full jurisdictional discovery to which they would have been otherwise entitled.  Nor have Plaintiffs had such discovery concerning NatWest's licensing in New York or elsewhere in the United States, which might independently operate as consent to jurisdiction. *See Gucci America*,

discovery and motion practice (including voluminous Rule 56 motions) that, in this case, required Plaintiffs and the Court to expend enormous time and resources resolving. Instead, *nine years* after NatWest filed its Rule 12 motion; *three years* after *Goodyear* was issued; and *two years* after the parties briefed extensive motions for summary judgment, NatWest's opportunistic afterthought jurisdictional argument comes far too late.

## II.   NATWEST IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION.

Even if NatWest had not waived its right to challenge personal jurisdiction, jurisdiction over the Bank exists pursuant to Federal Rule of Civil Procedure 4(k)(1)(C) and 4(k)(1)(A), and NY CPLR § 302(a)(1) and § 302(a)(3).

### A.   Personal Jurisdiction Exists Under Fed. R. Civ. P. 4(k) (1)(C).

Rule 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant when authorized by a federal statute." Fed. R. Civ. P. 4(k) (1)(C). The statute at issue in this case, 18 U.S.C § 2334(a), is a nationwide service of process statute, explicitly providing such authorization.[20]   *See Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 87-88 (D.R.I. 2001). Consequently, once a defendant is properly served, personal jurisdiction exists and need only satisfy the liberal constitutional due process requirements of the Fifth Amendment. *See Sokolow v. Palestine Liberation Org.*, No. 04 CV 00397 (GBD), 2011 WL 1345086, at *2 (S.D.N.Y. Mar. 30, 2011).

---

768 F.3d at 136 n.15. Thus, in the unlikely event the Court permits NatWest to raise this argument, it should be decided on a complete record only *after* Plaintiffs have had the full jurisdictional discovery to which they are entitled. Plaintiffs would need to reconstruct all of the Bank's U.S. and New York contacts as they existed prior to the time Plaintiffs' claims arose, when the claims arose, and when the Complaints were filed—including probing complex issues relating to successor-entity continuity and agency, including after the Royal Bank of Scotland acquired NatWest in 2000. This is *precisely* the sort of expensive, burdensome activity Rule 12(g)-(h) guards against.

[20] Section 2334(a) states: "Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent." 18 U.S.C. § 2334(a).

Due process requires "minimum contacts" with the forum—in this case, the entire United States—and that the exercise of jurisdiction be "reasonable." *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *Wultz v. Islamic Repub. of Iran*, 762 F. Supp. 2d 18, 25 (D.D.C. 2011). The minimum contacts requirement is satisfied when personal jurisdiction is exercised over a defendant "in a suit arising out of or related to the defendant's contacts with the forum." *Metro. Life*, 84 F.3d at 567-68. Thus, the minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citations omitted). With respect to reasonableness, courts consider whether asserting jurisdiction comports with notions of "fair play and substantial justice" and look to factors including the burden on the defendants, the interest of the forum, the interests of the plaintiffs, judicial efficiency, and the furtherance of substantive social policies. *See Metro. Life*, 84 F.3d at 568. In this case, there is no dispute that NatWest was properly served. As demonstrated below, NatWest has ample contacts with the United States for this Court reasonably to exercise jurisdiction.

### 1. NatWest Has the Minimum Contacts With the United States Required by Due Process.

NatWest plainly has sufficient minimum contacts with the United States. As alleged in the Complaints, NatWest maintained systematic, continuous contacts with the United States, conducting business at a number of domestic locations. These locations included 101 Park Avenue, in New York City; 600 Travis Street, in Houston, Texas; and 600 Steamboat Road, in Greenwich, Connecticut—which NatWest's annual report formerly identified as a "principal office[]."[21] (*Weiss* ECF No. 141 ¶¶ 440-441; *Applebaum* ECF No. 1 ¶ 289.)

---

[21] In its Answer, NatWest admitted that it maintained an office in Texas until September 2003, but generally denied Plaintiffs' allegations with respect to the New York and Connecticut offices. (*See Weiss* ECF No. 144 ¶¶ 440-441.)

Plaintiffs' claims relate *directly* to NatWest's contacts with the United States via New York. The gravamen of Plaintiffs' claims is that NatWest violated the ATA by knowingly providing financial services to the Foreign Terrorist Organization (FTO) Hamas through a "charity" known as Interpal (designated as a Specially Designated Global Terrorist ("SDGT") by the United States in 2003), which collects and raises funds used to finance Hamas and its terrorist activities, including the attacks that were committed between 2000 and 2004 and caused Plaintiffs' injuries. Plaintiffs' claims are rooted in transfers NatWest made on behalf of Interpal to Hamas-controlled organizations in the West Bank and Gaza Stip. NatWest *concedes* that many of these transfers are connected to New York. According to NatWest, it made 185 wire transfers on Interpal's behalf through correspondent bank accounts in New York to the New York correspondents of the banks in the Palestinian Territories at which the relevant Hamas-controlled organizations maintained accounts. (*See* Mot. at 5 & n. 5.)

NatWest, however, seems to have materially *undercounted* the Bank's New York contacts. In truth, NatWest appears to have facilitated **233** transfers on Interpal's behalf through correspondent bank accounts in New York. The value of these New York transfers totaled over **$6.2 million**.[22] (*See* Schuster Decl. Ex. 146 (*Weiss* ECF No. 267).) These transfers comprise more than one-third of the **593** transfers totaling over **$16 million** that NatWest sent to Hamas for Interpal between 1996 and 2005. (*Id.*) These transactions *alone* were sufficient to fund *all*

---

That there is dispute over these basic facts further supports Plaintiffs' position that NatWest waived its personal jurisdiction arguments by failing to raise them in time to permit full jurisdictional discovery. (*See supra* n.19.)

[22] This total includes transfers to the thirteen Hamas-controlled organizations at issue as well as seven transfers totaling approximately $12,000 to Osama A.H. El Kurd, the son of the well-known Hamas leader Ahmed El Kurd, who served as director of the Hamas-controlled Al Salah Society. On August 7, 2007, the United States designated Ahmed El Kurd and the Al Salah Society as SDGTs. *See Treasury Designates Al-Salah Society Key Support Node for Hamas*, Aug. 7, 2007 U.S. Treasury Dept., Press Release, available at http://www.treasury.gov/press-center/press-releases/Pages/hp531.aspx (last accessed Dec. 12, 2014).

the attacks at issue (even though, as discussed below, Plaintiffs need not establish causal connections between transactions and their injuries).[23]

Thus, the financial services forming the core of Plaintiffs' claims occurred in the United States, and largely in New York. There was nothing "random, fortuitous, or attenuated" about NatWest's contacts with the United States. *See Walden*, 135 S. Ct. at 1121-1123. NatWest's hundreds of transfers totaling millions of dollars are precisely the kind of "deliberate and recurring activity" the Second Circuit has found sufficient to support the constitutional exercise of specific personal jurisdiction over a foreign bank in a terrorism finance case. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170-73 (2d Cir. 2013) (holding that a Lebanese bank's use of a New York correspondent account to process dozens of wire transfers on behalf of a customer in furtherance of Hizballah's terrorist goals is sufficient for a federal court in New York to exercise specific personal jurisdiction over the bank). Plaintiffs' claims are plainly related to NatWest's U.S. contacts, and easily satisfy the "minimum contacts" required by the Fifth Amendment.[24]

---

[23] *See, e.g.,* Exs. 3 & 66 to the Decl. of Joel Israel in Support of Pls.' Opp. to Def.'s Mot. for Summary Judgment dated January 30, 2012 (*Weiss* ECF No. 272).

[24] This is particularly the case given that personal jurisdiction here is governed by the Fifth Amendment, which, while focusing on the same factors considered under the Fourteenth Amendment, are "often applied with more flexibility." Wright & Miller, *supra* note 7, §1068.1. That principle applies with particular force in the terrorism contexts, given the federal interests at stake. *See, e.g., United States v. Yousef*, 327 F.3d 56, 112 (2d Cir. 2003) (upholding, over Fifth Amendment challenge, exercise of personal jurisdiction over individuals who bombed Philippines Airline flight en route from Manila to Japan, despite no U.S. national being injured, because bombing was "test run" as part of larger conspiracy to inflict injury on U.S. and U.S. nationals.); *United States v. Al-Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (rejecting due process challenge to prosecuting individuals who conspired to sell arms with understanding that they would be used to harm U.S. nationals and threaten U.S. interests). *See generally J. McIntyre Mach. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011) ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has power to subject the defendant to judgment concerning that conduct.").

## 2.     Assertion of Personal Jurisdiction Over NatWest Is Reasonable.

It is also entirely reasonable to assert personal jurisdiction over NatWest. All Plaintiffs

(or their relatives and survivors) are U.S. nationals, and many live in the United States, including

several who reside in or near New York. The actual litigating burden on NatWest, given its

longtime connections with the United States, is minimal. Perhaps most significantly, the United

States has a strong interest in adjudicating cases designed to stop the flow of funds to foreign

terrorist organizations, and it enacted the ATA specifically to advance that interest. As Judge

Sifton explained in *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 421 (E.D.N.Y. 2009), the ATA

was specifically designed to create a "procedurally privileged U.S. forum" in order to overcome

the jurisdictional hurdles faced by U.S. nationals seeking redress for injuries incurred by reason

of terrorist acts abroad.[25]     It beggars belief that Congress, having outfitted the ATA with

remarkable procedural protections to give American victims of acts of terrorism abroad a safe

domestic forum, did not intend for courts to exercise specific jurisdiction in circumstances such

as those presented here.

Thus, in *Licci IV*, the Second Circuit held that even though the defendant bank was based

in Lebanon, all plaintiffs resided in Israel, and the deaths and injuries for which plaintiffs sought

redress occurred outside the United States, the district court's assertion of personal jurisdiction

over the defendant was reasonable. *See Licci IV*, 732 F.3d at 173-74. The Court based its

conclusion on precisely the same considerations present here. There, as here, plaintiffs' claims

---

[25] For example, the ATA's extraordinary *forum non conveniens* provision prohibits courts from dismissing cases unless a foreign forum can provide "substantially the same" remedy as a U.S. court and is "significantly more convenient and appropriate." 18 U.S.C. § 2334(d). Given the ATA's treble damages remedy, this standard is, by congressional design, effectively impossible to meet. *Cf. Goldberg*, 660 F. Supp. 2d at 422 (ATA's legislative history and statutory language reveal Congress's intent to provide U.S. nationals "broad remedies in *a procedurally privileged U.S. forum"* and "§ 2334 in particular was designed to *protect plaintiffs' access to that forum*") (emphasis added); *Goldberg v. UBS AG*, 690 F. Supp. 2d at 92, 103 n.17 (E.D.N.Y. 2010) (ATA's legislative history "shows that Congress intentionally changed FNC analysis to *encourage suits in U.S. courts by those injured in terrorist attacks occurring abroad.*") (emphasis added).

were related to the defendant bank's use of a correspondent bank account in New York to support a terrorist organization, and any burden on the defendant was outweighed by the undeniable interest of both the United States and New York "in monitoring banks and banking activity to ensure that [the] system is not used as an instrument in support of terrorism, money laundering, or other nefarious ends." *Id.* at 174.[26]  Tellingly, in this case NatWest does not (because it cannot) articulate a single compelling reason why it would ***not*** comport with traditional notions of fair play and substantial justice to require it to answer for its activities in this court.

### B.   Personal Jurisdiction Exists Under Fed. R. Civ. P. 4(k)(1)(A) and CPLR § 302(a)(1).

Rule 4(k)(1)(A) alternatively provides for jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).  New York's long arm statute, CPLR § 302(a), thus also provides for personal jurisdiction over NatWest. CPLR § 302(a)(1) authorizes a court to exercise personal jurisdiction over "a cause of action arising from" the acts of "any nondomiciliary . . . who in person or through an agent . . . transacts any business within the state . . . ."  In order to be subject to personal jurisdiction under this provision:  (1) a defendant must transact business

---

[26] The principles of passive personality jurisdiction, objective territorial jurisdiction, and protective jurisdiction serve to provide personal jurisdiction in a U.S. court whenever a defendant commits a terrorist attack against an American, especially if the alternative is to force the American victim to seek a remedy in a foreign forum under foreign law. *See Goldberg*, 690 F. Supp. 2d at 108-11.  No principle of minimum contacts forbids Congress from treating the attack on an American as a contact. *See* Federal Courts Study Committee Implementation Act, S. Rep. No. 102-342, at 45 (1992) ("*[t]his section extends the same jurisdictional structure that undergirds the reach of American criminal law to the civil remedies that it defines*").  The U.S. Government's formal designations of Hamas fundraisers such as Interpal reflect the fact that Hamas targets U.S. nationals for violence. *See* 4 Wright & Miller, supra note 7, §1068.1 (personal jurisdiction is based on combination of factors, including federal interest in furthering fundamental social policies, forum's interest in adjudicating dispute, and a plaintiff's interest in obtaining relief, and where "*Congress has undertaken to enact a nationwide service statute applicable to a certain class of disputes, that statute should be afforded substantial weight as a legislative articulation of federal social policy.*") (Emphasis added.) *See also id.* (due process permits exercising jurisdiction where "federal interest in furthering fundamental objectives or policies rises to a constitutional level, or implicates other especially weighty or uniquely federal concerns").

within the state of New York, and (2) a plaintiff's cause of action muse arise from that transaction of business. *See* CPLR § 302(a)(1). Responding to questions certified to it by the Second Circuit, the New York Court of Appeals has held with respect to the first prong that "a foreign bank's repeated use of a correspondent account in New York on behalf of a client—in effect, a 'course of dealing' . . . —show[s] purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States," and satisfies CPLR § 302(a)(1)'s transaction of business requirement. *See Licci v. Lebanese Canadian Bank* ("*Licci III*"), 20 N.Y.3d 327, 339 (2012). With respect to the second prong, *Licci III* also held that a defendant's "repeated use of [a] correspondent account shows not only transaction of business, but an articulable nexus or substantial relationship between the transaction and the alleged breaches of statutory duties" that satisfies 302(a)(1)'s "arising from" requirement. *Id.* at 340.

Here, NatWest concedes processing *at least* 185 U.S. dollar-denominated wire transfers on behalf of its customer Interpal through its correspondent accounts in New York. (*See* Mot. at 5 & n. 5.) This repeated and purposeful use of a New York correspondent account plainly satisfies the jurisdictional requirements of CPLR § 302(a)(1).

C.    **Specific Jurisdiction Also Lies Under CPLR § 302(a)(3).**

Specific personal jurisdiction also lies under CPLR § 302(a)(3). CPLR § 302(a)(3) authorizes jurisdiction over a defendant who commits a tortious act outside New York that causes injuries in New York, when a defendant "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, *or* (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or

international commerce." CPLR § 302(a)(3)(i)-(ii) (emphasis added).

Here, Plaintiffs (or their relatives and representatives) are victims of terrorist attacks perpetrated by Hamas. Several Plaintiffs are New York residents and their injuries have thus been felt in New York. Plaintiffs allege that NatWest unlawfully transmitted funds on Interpal's behalf to Hamas-controlled organizations in the West Bank and Gaza Strip, facilitating, *inter alia*, the attacks that caused Plaintiffs' injuries. NatWest regularly did business in New York and derived substantial revenue from international and/or interstate commerce. NatWest clearly should have expected its acts to have foreseeable consequences in the U.S., including New York.[27] Accordingly, specific jurisdiction over NatWest lies under CPLR § 302(a)(3).

### D. NatWest's Additional Arguments That It Is Not Subject to Specific Personal Jurisdiction Are Meritless.

Despite the fact that specific personal jurisdiction lies under Rule 4(k)(1)(C), Rule 4(k)(1)(A), and New York's long-arm statute, CPLR § 302(a), NatWest nevertheless asserts that exercising specific personal jurisdiction over it would be improper for two reasons. First, NatWest argues that Plaintiffs cannot plausibly allege that the New York transfers at issue proximately caused the fifteen terrorist attacks in which they were injured. (*See* Mot. at 14-17.) Second, NatWest contends that Plaintiffs' claims that are not based on wire transfers that passed through New York do not "arise from" NatWest's contacts with the forum. (*See id.* at 7-13.) Both arguments are meritless.

### 1. NatWest's Causation Argument Is Meritless.

NatWest argues that Plaintiffs cannot demonstrate that NatWest's U.S. transactions "factually or proximately caused the attacks by which plaintiffs claim to have been injured."

---

[27] *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 693-94 (7th Cir. 2008) (persons providing material support to Hamas would know that many U.S. nationals live in or frequently visit Israel); *Goldberg*, 690 F. Supp. 2d at 108 n.25 (citing *Boim*).

(Mot. at 14.)  Accordingly, NatWest insists Plaintiffs' claims do not "arise from" the New York transfers, depriving this Court of jurisdiction.  (*See id.*)

The New York Court of Appeals' and the Second Circuit's jurisdictional causation holdings in *Licci III* and *Licci IV*, respectively, demolish NatWest's argument.  In the *Licci* cases, the Lebanese Canadian Bank ("LCB") was accused of maintaining accounts overseas for a nominal charity (the Shahid Foundation) that raised and collected funds for a Foreign Terrorist Organization (Hizballah).  Plaintiffs alleged that LCB processed "dozens" of transactions through a correspondent account in New York for Hizballah's benefit in violation of federal law, including the ATA.  LCB challenged the district court's assertion of personal jurisdiction.  In *Licci IV*, the Second Circuit (relying upon the New York Court of Appeals' decision in *Licci III*) held that the "arising from" prong of CPLR § 302(a)(1) "does *not* require a causal link between the defendant's New York business activity and a plaintiff's injury." *Licci IV*, 732 F.3d at 168 (emphasis added).  Instead, that prong requires only "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Id.* at 168-69. *Licci IV* further explained that § 302(a)(1) does not require every element of a cause of action to be related to a defendant's New York contacts.  Rather, if "at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Id.* at 169.[28]

---

[28] *Accord Chevron v. Donziger*, 974 F. Supp. 2d 362, 624 (S.D.N.Y. 2014) (jurisdiction under CPLR § 302(a) (1) requires demonstrating an "articulable nexus" or "substantial relationship" between claims asserted and New York actions, but does not require causal link between activity and injury; "[i]t is enough that 'at least one element [of the cause of action] arises from the New York contacts'"); *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 177 (S.D.N.Y. 2014) ("articulable nexus" standard does not require establishing causal link between defendant's New York business activity and plaintiff's injury).

Both the Second Circuit and the Court of Appeals found that LCB's alleged conduct satisfied this "relatedness" requirement. Explaining that the plaintiffs' claims were grounded in the allegation that "LCB violated various statutory duties by using its correspondent account to funnel money to Shahid and Hizballah," and that LCB's allegedly culpable conduct stemmed from the use of a New York correspondent account, both the Second Circuit and the Court of Appeals concluded that the plaintiffs' claims were sufficiently related to LCB's New York business activity to satisfy CPLR § 302(a) (1)'s "arising from" requirement. *Id.* at 168-69. And the Second Circuit indicated no constitutional infirmity with exercising jurisdiction under such circumstances. *See id.* at 169-174.[29]

The same is true here. Plaintiffs maintain that NatWest violated its statutory duties under the ATA by transferring money on behalf of Interpal—itself an SDGT—to support Hamas's terrorist activities. No fewer than 185 of those transfers passed through NatWest's correspondent account in New York. (*See* Mot. at 5 & n. 5.) Just as the *Licci* plaintiffs' claims were sufficiently related to LCB's New York business activity to satisfy both CPLR § 302(a) (1) and constitutional due process, so too are the claims of the NatWest Plaintiffs.

Additionally, NatWest's argument that Plaintiffs cannot establish that the funds transfers it processed for Interpal actually reached the thirteen Hamas-controlled organizations at issue is readily dismissed. The analyses of Plaintiffs' expert indicates that each of the U.S. dollar-denominated transactions that NatWest processed on behalf of Interpal had listed as its

---

[29] *See Licci IV*, 732 F.3d at 170 ("[D]espite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare. It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have 'purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being haled into court there,' . . . , or the assertion of specific jurisdiction would somehow otherwise 'offend traditional notions of fair play and substantial justice'. . . . Indeed, we have been pointed to no such decisions in this Circuit.").

beneficiary one of the thirteen Hamas-controlled organizations at issue or Osama A. H. El Kurd, the son of Hamas leader Ahmed El Kurd who, as noted *supra* note 22, was designated an SDGT in 2007 for his role as the Al Salah Society's director (one of the thirteen organizations at issue in this lawsuit). (*See* Schuster Decl. Ex. 146 (*Weiss* ECF No. 267).)  The ATA does not require a plaintiff to plead or prove any further funds tracing. *See Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp.2d 414, 433 (E.D.N.Y. 2013) (holding that ATA plaintiffs need not trace specific dollars because "[s]uch a task would be impossible and would make the ATA practically dead letter because '[m]oney is fungible'"). *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), which NatWest cites (*see* Mot. at 15-16) in support of its argument, is not to the contrary.  The plaintiffs in *Rothstein* could only plead illegal transfers to Iran, and could only speculate that Iran had, thereafter, transferred funds to FTOs.  Additionally, setting aside the thirteen Hamas-controlled organizations to which Interpal passed funds, Interpal is itself an integral part of Hamas' enterprise.[30]  Thus, NatWest's provision of financial services to Interpal—including engaging in dollar-clearing activities through New York—itself violates the ATA.

### 2.    NatWest's Transfers That Did Not Make Contact with New York Are Not Subject to Dismissal.

NatWest wrongly asserts that Plaintiffs can only pursue their claims to the extent those claims are based on transfers that passed through New York.  On the contrary, *all* of Plaintiffs' claims turn on the *same* core conduct: whether NatWest knowingly provided material support to Hamas and thus committed an act of international terrorism rendering it liable to each Plaintiff. The evidence of that improper conduct is a collection of transactions—some of which did, and

---

[30] An August 22, 2003 press release by the Treasury Department states that Interpal "is the conduit through which money flows to HAMAS from other charities" and explains that Interpal's fundraising role includes "supervising activities of charities, developing new charities in targeted areas, instructing how funds should be transferred from one charity to another, and even determining public relations policy." *U.S. Designates Five Charities Funding Hamas and Six Senior Hamas Leaders as Terrorist Entities*, Aug 22, 2003 U.S. Treasury Dept. Press Release, available at http://www.treasury.gov/press-center/press-releases/Pages/js672.aspx (last accessed Dec. 12, 2014).

some of which did not, pass through New York. It is nonsensical to suggest, especially in the context of an expressly extraterritorial statute,[31] that transfers reflecting the knowing or deliberately indifferent provision of material support to a Foreign Terrorist Organization and its agents can be sliced and diced so that they allow for personal jurisdiction over some transfers yet not others. NatWest confuses claims with evidence. The transactions themselves are not discrete claims over which a court must have personal jurisdiction; rather, they are *evidence* of key *elements* of Plaintiffs' claims, and the number, pattern, timing, and structuring of *all* of the transactions are all highly relevant to demonstrate the illegality of NatWest's conduct, including providing vital evidence of NatWest's scienter. The law is clear that not all *evidence* supporting a plaintiff's causes of action need have a New York connection to support jurisdiction. *See Licci IV*, 732 F.3d at 169 ("302(a)(1) 'does not require that every element of the cause of action pleaded must be related to the New York contacts; rather where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute.'") (*quoting Licci III*, 20 N.Y.3d at 341).[32]

Two cases relied upon by NatWest—*Seiferth v. Helicopteros Atuneros Inc.*, 472 F.3d 266, 274 (5th Cir. 2006), and *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)— confirm that this Court need not engage in the tedious and absurd task of attempting to divide Plaintiffs' case transaction by transaction. In *Seiferth*, the Fifth Circuit explained that it had to

---

[31] *See Weiss*, 768 F.3d at 207 & n.5.

[32] In *Wultz v Islamic Repub. of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010), the court concluded that the alleged jurisdictional fact that Bank of China (BOC) knowingly performed a wire transfer for the FTO Palestinian Islamic Jihad through "one of its U.S. branches supports a finding of specific personal jurisdiction." *Id.* at 34. *Wultz* did not insist that *all* transfers for PIJ had to occur in the U.S., or assert that allegations of what BOC learned or knew outside of the U.S. regarding its customer were irrelevant for jurisdictional or liability purposes. To the contrary, the court held that given BOC's extensive U.S. contacts, it was "reasonable to presume that BOC is fully aware of U.S. law concerning financial institutions*, including provisions of the ATA criminalizing material support to terrorist organizations   Likewise, BOC should be aware that any party subject to a civil claim under § 2333 may be hauled into any U S. District Court, per the provision of nationwide service of proces*s. § 2334(a)." *Id.* at 34 (emphasis added).

21

consider separately Seiferth's four causes of action—defective design, failure to warn, negligence, and negligence *per se*—for personal jurisdiction purposes.   But the court was discussing separately considering Plaintiff's *claims*, not the evidence in support of those claims. In no way did the court suggest that it would be appropriate separately to examine each piece of evidence underlying, for example, Seiferth's negligence claim, permitting the evidence with a connection to the forum to be included in the case and requiring the evidence without a connection to be excluded. *Seiferth*, 472 F.3d at 274.   The same is true for *Sunward*.   In *Sunward* the Second Circuit explained that "[a] plaintiff must establish the court's jurisdiction with respect to *each claim* asserted"; but again, that statement was with respect to causes of action, not each piece of underlying evidence. *Sunward Elecs.*, *Inc.*, 362 F.2d at 24.

     *Fontanetta v. Am. Bd. of Internal Medicine*, 421 F.2d 355 (2d Cir. 1970), and *State v. Samaritan Asset Mgmt Services* 874 N.Y.S.2d 698 (Sup. Ct. N.Y. Cnty. 2008)*,* also cited by NatWest, are not to the contrary.   In *Fontanetta*, the Second Circuit declined to assert personal jurisdiction over the American Board of Internal Medicine based on CPLR § 302(a)(1) because none of the plaintiff's claims arose out of any transaction of business by the defendant Board in New York.   Although the Board had administered written examinations in New York, plaintiff's claim had nothing to do with those examinations, but rather was premised solely on a separate oral examination given outside of the state. *Fontanetta*, 421 F.2d at 358-59. *Samaritan*, a decision of the Supreme Court for New York County, involved the Martin Act, a statute that is expressly limited to "securities transactions occurring 'within and from' the State of New York." *Samaritan*, 874 N.Y.S.2d 702-04.   Thus in that case the language of the statute called for separating transactions based on their New York contacts; the ATA contains no such limitation.

Finally, it is worth noting that NatWest's argument ignores the fact that personal jurisdiction does *not* require the Court to resolve merits issues, but instead only address the *threshold* question of whether it is fair and reasonable to require the Bank to litigate the merits in a U.S. court.   Stated differently, jurisdiction over NatWest, *not* jurisdiction over particular NatWest transactions, is all that concerns the jurisdictional analysis.

## III.   NATWEST'S ARGUMENT THAT IT IS ENTITLED TO SUMMARY JUDGMENT IS MERITLESS.

### A.   Because the Second Circuit Vacated This Court's Summary Judgment Order, No Part of That Order is Law of the Case.

In *Weiss,* the Second Circuit unconditionally held that "[t]he judgment of the District Court is . . . VACATED and the case REMANDED with instructions to consider Defendant's other arguments on summary judgment." *Weiss*, 768 F.3d at 212 (emphasis in original).   It is axiomatic that where, as here, an earlier order is vacated, "the doctrine of the law of the case no longer applies." *Schwartz v. Chan*, 142 F. Supp. 2d 325, 330 (E.D.N.Y. 2001) (vacating court's earlier decision on damages because judgment awarding those damages was vacated) (*citing Johnson v. Board of Ed.,* 457 U.S. 52, 53–54 (1982)).[33]   Thus, because this Court's entire prior Order was vacated by the Second Circuit, *no* part of that Order is law of the case.[34]

---

[33] *See also Dorsey v. Continental Casualty Co.*, 730 F.2d 675, 678 (11th Cir.1984) ("Where a judgment is vacated for a new determination, findings previously made that are integral to that judgment are likewise vacated and are thus not subject to the law of the case doctrine."); *Sahu v. Union Carbide Corp.,* 262 F.R.D. 308, 313 n.2 (S.D.N.Y. 2009); *Ling Nan Zheng v. Liberty Apparel Co., Inc.,* 556 F. Supp.2d 284, 294 (S.D.N.Y. 2008).

[34] *Liona Corp. v. PCH Assocs. (In re PCH Assocs.),* 949 F.2d 585 (2d Cir. 1991), cited by NatWest (*see* Mot. at 23), is inapposite.   In *PCH Assocs.*, after initially observing that the law of the case is only a discretionary rule of practice, the Circuit observed that because the Bankruptcy Judge had concluded that the relationship between the litigants did not constitute a joint venture, had been affirmed on that point by the District Judge, and the Circuit had been silent on that issue, the prior holding remained the law of the case.   *Id.* at 592-93.   In contrast, as demonstrated above and below, in *Weiss* the Second Circuit was not silent, but in fact made specific observations regarding pre-August 2003 evidence, and evidence not limited to any particular point in time.   Nor is *Burrell v. United States*, 467 F.3d 160 (2d Cir. 2006), also cited by the Bank, on point.   *Burrell* makes the unremarkable point that on remand a district court is required to follow the decision of the appellate court as to issues explicitly or implicitly decided on appeal.   The Bank's suggestion that the Second Circuit implicitly decided that pre-August 2003 evidence was irrelevant regarding *scienter* is demonstrably false.

**B.** **As a Result of the Second Circuit's Decision, All Evidence of *Scienter* From Any Time Period May Be Shown to the Jury.**

The Second Circuit observed in *Weiss* that "NatWest maintained accounts for Interpal from 1994, the year Interpal was founded, until 2007," and further stated that "NatWest provided banking services to Interpal's predecessor, the Palestine & Lebanon Relief Fund, beginning in 1987." *Weiss*, 768 F.3d at 205 n.4. Underscoring the relevance of evidence from this *entire* period, the Second Circuit added that "[d]uring that time, NatWest recorded unusual activity in a permanent database and reported certain suspicious activity to British authorities." *Id.* at 205. But NatWest nevertheless maintains that *nothing* prior to August 15, 2003 is relevant to its *scienter,* reasoning that because none of the evidence discussed by the Second Circuit as supporting an inference of *scienter* predates August 15, 2003, the Circuit "rejected" the possibility that a jury could infer *scienter* in the earlier period. (*See* Mot. at 20.)

NatWest ignores that *Weiss* held straight-forwardly that "Plaintiffs have presented sufficient evidence to create a triable issue of fact as to whether NatWest fulfilled § 2339B(a)(1)'s scienter requirement." *Id.* at 211. The *examples* of evidence cited by the Second Circuit did not exhaustively inventory *all* probative *scienter* evidence. It was enough for the Second Circuit to identify *any* evidence creating a genuine dispute of material fact under the correct legal standard in order to vacate the summary judgment order; it does not have to identify all such evidence. Indeed, because the summary judgment standard with regard to *scienter* is "lenient," *id.*, the Second Circuit had no reason to detail the entire evidentiary record or establish the illusory temporal boundaries that NatWest claims are in the decision.

Nevertheless, the Second Circuit's list *does include* evidence regarding earlier years. It refers to the testimony of Michael Hoseason, the head of NatWest's Group Security and Fraud Office from 2000 to 2004—the same Group that was responsible for reviewing suspicious

24

activities and reporting suspicions of terror financing to British authorities. As the Second Circuit expounded upon in detail, Mr. Hoseason testified that in the absence of "absolute certainty" and "clear evidence" that funds were being "utilized to buy bullets," NatWest would continue to do business with a customer suspected of terror financing. *See id.* at 212. Mr. Hoseason's testimony was not tethered to *any* particular date and spoke generally to the Bank's conveniently unrealistic internal threshold, and the Second Circuit deemed this evidence of deliberate indifference sufficient to create a triable issue of fact. *Id.*[35] Mr. Hoseason's admission casts doubt upon every single piece of evidence that passed through Mr. Hoseason's department, all decisions made therein, and all reports NatWest filed with its regulator, and is evidence that provides a jury a basis to infer that NatWest had the requisite *scienter before* the first attack at issue occurred in 2002, and that it continued unchanged *after* the last attack at issue occurred in September 2004.[36] Accordingly, NatWest's contention that the Second Circuit drew hard lines with respect to time periods is fiction; the court left to the jury the question of when the Bank knew or willfully disregarded the fact that its customer was an agent of Hamas providing material support to Hamas-controlled organizations.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that NatWest's untimely motion be denied in its entirety.

---

[35] *See, e.g., Applebaum* ECF No. 157, Plaintiffs' 56.1 Statement of Material Facts at ¶¶ 12, 14, 33, 50, 55, 57-69, 80, 88, 108, 112-114, 116.

[36] Likewise, the Second Circuit cited emails from Amanda Holt, head of the NatWest department responsible for terrorism-related matters, in which she discussed the department's awareness that the Bank maintained accounts for individuals connected to Hamas. *See id.* at 212. Although the specific topic of conversation in those emails is the U.S. SDGT designation of Interpal, the discussion in the email thread is *not* expressly limited to the Bank's post-designation awareness, and a jury could easily infer that NatWest knew of Interpal's connections to Hamas as far back *as the 1990s.*

Dated: December 12, 2014

Respectfully submitted,

By: /s/ Gary M. Osen
OSEN LLC
Gary M. Osen
Joshua D. Glatter
Peter Raven-Hansen, *Of Counsel*
Aaron Schlanger
Ari Ungar
2 University Place, Suite 201
Hackensack, NJ 07601
(201) 265-6400

345 Seventh Avenue, 21st Floor
New York, NY 10001 / USA
(646) 380-0470

TURNER & ASSOCIATES, P.A.
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

ZUCKERMAN SPAEDER LLP
Shawn P. Naunton
Margaret E. Lynaugh
1185 Avenue of the Americas, 31st Floor
New York, NY 10036
(212) 704-9600

KOHN, SWIFT & GRAF, P.C.
Steven M. Steingard
Stephen H. Schwartz
Neil L. Glazer
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

Attorneys for the *Weiss* Plaintiffs

-and-

26

SAYLES WERBNER
Mark S. Werbner
Joel Israel
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman
Noel J. Nudelman
1146 19th Street, NW, 5th Floor
Washington, DC 20036
(202) 463-1818

STONE BONNER & ROCCO LLP
James P. Bonner
260 Madison Avenue, 17th Floor
New York, NY 10016
(212) 239-4340

Attorneys for the *Applebaum* Plaintiffs