UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

TZVI WEISS, et al.,                          :
                                             :
                          Plaintiffs,        :      Case No. 05-cv-4622 (DLI) (MDG)
                                             :
            - against –                      :
                                             :
NATIONAL WESTMINSTER BANK PLC,               :
                                             :
                          Defendant.         :
                                             :
--------------------------------------------------------------X
NATAN APPLEBAUM, et al.,                      :
                                             :
                          Plaintiffs,        :
                                             :
            - against –                      :
                                             :      Case No. 07-cv-916 (DLI) (MDG)
NATIONAL WESTMINSTER BANK PLC,               :
                                             :
                                             :      **Oral Argument Requested**
                          Defendant.         :
                                             :
                                             :
--------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW OF DEFENDANT NATIONAL WESTMINSTER BANK PLC IN SUPPORT OF ITS MOTION FOR AN ORDER DISMISSING PLAINTIFFS' CLAIMS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant National Westminster Bank Plc

January 12, 2015

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................... ii

I.   NATWEST HAS NOT WAIVED ITS PERSONAL JURISDICTION DEFENSE................. 1

II.  THE COURT AT MOST CAN ASSERT SPECIFIC PERSONAL JURISDICTION OVER
     NATWEST ONLY WITH RESPECT TO THOSE OF PLAINTIFFS' CLAIMS THAT
     "ARISE OUT OF" THE NEW YORK TRANSFERS ........................................................... 2

III. NATWEST IS ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS THAT "ARISE
     OUT OF" THE NEW YORK TRANSFERS – THE ONLY CLAIMS AS TO WHICH THE
     COURT CAN ASSERT SPECIFIC JURISDICTION – BECAUSE PLAINTIFFS CANNOT
     PROVE EITHER THE PROXIMATE CAUSATION OR SCIENTER ELEMENTS OF
     THOSE CLAIMS.................................................................................................................. 7

     A. Plaintiffs Cannot Prove That The New York Transfers Caused Their Injuries................ 7

     B. Plaintiffs Cannot Show That NatWest Made The New York Transfers With The
        Requisite <u>Scienter</u> ........................................................................................................ 9

CONCLUSION......................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

CPLR § 302(a)(1) ................................................................................................ 3, 5

CPLR § 302(a)(3) ................................................................................................ 7

Fed. R. Civ. P. 12 ............................................................................................... 1

New York Banking Law § 200 .......................................................................... 1

**Cases**

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) ........................................................................................... 3

Daimler AG v. Bauman,
134 S. Ct. 746 (2014) ......................................................................................... 1

Fontanetta v. American Board of Internal Medicine,
421 F.2d 355 (2d Cir. 1970) .............................................................................. 5

Gliklad v. Bank Hapoalim B.M.,
No. 155195/2014 (N.Y. Sup. Ct. Aug. 4, 2014) ............................................... 1

Gucci America, Inc. v. Bank of China,
768 F.3d 122 (2d Cir. 2014) .............................................................................. 2

Hawknet, Ltd. v. Overseas Shipping Agencies,
590 F.3d 87 (2d Cir. 2009) ................................................................................ 1

Herendeen v. Champion Int'l Corp.,
525 F.2d 130 (2d Cir. 1975) .............................................................................. 6

Holzager v. Valley Hosp.,
646 F.2d 792 (2d Cir. 1981) .............................................................................. 1

In re Roman Catholic Diocese of Albany, N.Y., Inc.,
745 F.3d 30 (2d Cir. 2014) ................................................................................ 2

Licci v. Lebanese Canadian Bank, SAL,
732 F.3d 161 (2d Cir. 2013) .............................................................................. 5

PDK Labs, Inc. v. Friedlander,
103 F.3d 1105 (2d Cir. 1997) ............................................................................ 3

Rothstein v. UBS AG,
  708 F.3d 82 (2d Cir. 2013)............................................................................................ 8

Seiferth v. Helicopteros Atuneros, Inc.,
  472 F.3d 266 (5th Cir. 2006) ..................................................................................... 3-4

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
  450 F.3d 100 (2d Cir. 2006)......................................................................................... 3

Sonera Holding B.V. v. Cukurova Holding, A.S.,
  750 F.3d 221 (2d Cir. 2014)......................................................................................... 2

State v. Samaritan Asset Management Services, Inc.,
  874 N.Y.S.2d 698 (Sup. Ct. N.Y. Cnty. 2008) .................................................... 5

Sunward Elecs., Inc. v. McDonald,
  362 F.3d 17 (2d Cir. 2004)........................................................................................... 3

U.S. v. Yousef,
  327 F.3d 56 (2d. Cir. 2003)......................................................................................... 7

United States ex rel. Miller v. Bill Harbert Int'l Constr.,
  865 F. Supp. 2d 1 (D.D.C. 2011)............................................................................... 9

Walden v. Fiore,
  134 S. Ct. 1115 (2014).................................................................................................. 4

Weiss v. Nat'l Westminster Bank Plc,
  453 F. Supp. 2d 609 (E.D.N.Y. 2006) ................................................................ 8, 9

Weiss v. Nat'l Westminster Bank Plc,
  936 F. Supp. 2d 100 (E.D.N.Y. 2013) .............................................................. 9, 10

## I. NATWEST HAS NOT WAIVED ITS PERSONAL JURISDICTION DEFENSE[1]

Plaintiffs do not dispute that NatWest was subject to the Court's general personal jurisdiction under the law as it stood before the Supreme Court decided Daimler AG v. Bauman, 134 S. Ct. 746 (2014), and they do not seriously dispute that, under the law as it now stands (i.e., post-Daimler), NatWest is no longer subject to general personal jurisdiction. See NatWest Br. 1-3.[2] Thus, under Rule 12, NatWest could not have waived its personal jurisdiction defense, because that defense was not available before Daimler.

Plaintiffs' argument that NatWest waived this defense by "active[ly] participat[ing] in the lawsuit" before Daimler is nonsense. A defendant cannot waive a defense – by active participation or otherwise – that was not available to it at the time. See Hawknet, Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91-92 (2d Cir. 2009); Holzager v. Valley Hosp., 646 F.2d 792, 795-96 (2d Cir. 1981). NatWest diligently enforced its newly-announced due process rights "as soon as their cognizability [was] made apparent," Holzager, 646 F.2d at 796, which is all that is required to raise a personal jurisdiction defense based on an intervening change of law.[3] The caselaw plaintiffs cite stands merely for the uncontroversial proposition that a

---

[1]  Capitalized terms in this brief have the same meaning as in NatWest's initial brief, which is cited as "NatWest Br." Plaintiffs' opposition brief is cited as "Pl. Br."

[2]  Plaintiffs are not entitled to "full jurisdictional discovery" before the Court can address the issue of general jurisdiction. Pl. Br. at 9 n.19. Plaintiffs' own complaints allege that NatWest is headquartered and incorporated in the United Kingdom. See, e.g., Weiss Fifth Am. Compl. ¶ 439. These facts alone establish that NatWest is not subject to general jurisdiction under Daimler. Further, the only issue that plaintiffs identify for discovery is NatWest's "licensing in New York," which they erroneously contend "might independently operate as consent to jurisdiction." Pl. Br. at 9 n.19. To the contrary, foreign banks such as NatWest register with state banking authorities under Section 200 of New York Banking Law, pursuant to which they consent only to "the exercise of specific jurisdiction, not general." Gliklad v. Bank Hapoalim B.M., No. 155195/2014, at *5 (N.Y. Sup. Ct. Aug. 4, 2014) (copy attached as Addendum A).

[3]  Plaintiffs' related contention that NatWest previously attempted to assert a personal jurisdiction defense in opposing a discovery motion is both spurious and irrelevant. Pl. Br. at 2, 6. NatWest did not argue that the Court lacked personal jurisdiction over it; rather, it merely stated that its limited contact with the United States was relevant to deciding whether to compel it to produce documents in violation of applicable foreign law. NatWest's Mem. of Law at 14-24, Dec. 18, 2006, Weiss ECF No. 83. In any event, Judge Matsumoto's observation that NatWest had not raised a personal jurisdiction defense in its Answer has no bearing on whether NatWest is now entitled to raise such a defense based on the intervening change of law announced in Daimler. Judge Matsumoto

personal jurisdiction defense is ordinarily waivable.  See Pl. Br. at 3-5.

Plaintiffs' further argument – that Goodyear, not Daimler, changed the standard for general personal jurisdiction, see Pl. Br. at 7 – ignores the Second Circuit's explicit ruling in Gucci America that, "prior to Daimler, controlling precedent in this Circuit made it clear that a foreign bank [there, Bank of China ("BOC")] with a branch in New York was properly subject to general personal jurisdiction here."  Gucci America, Inc. v. Bank of China, 768 F.3d 122, 136 (2d Cir. 2014) (emphasis in original).  Gucci America thus conclusively refutes plaintiffs' contention that NatWest waived its general jurisdiction defense by not raising it after Goodyear but before Daimler.[4]  Plaintiffs attempt to distinguish Gucci America based on BOC's non-party status, see Pl. Br. at 9, but there is no reason why that distinction should make any difference. Indeed, Gucci America expressly rejected that distinction, explaining that "a defendant does not waive a personal jurisdiction argument—even if he does not make it in the district court—if the 'argument that the court lacked jurisdiction over [the] defendant would have been directly contrary to controlling precedent in this Circuit.'" 768 F.3d at 135-36 (emphasis added) (citation omitted).  The Second Circuit's holding – that the jurisdictional defense on which BOC relied was not waived because it did not exist before Daimler – controls here.[5]

## II. THE COURT AT MOST CAN ASSERT SPECIFIC PERSONAL JURISDICTION OVER NATWEST ONLY WITH RESPECT TO THOSE OF PLAINTIFFS' CLAIMS THAT "ARISE OUT OF" THE NEW YORK TRANSFERS

Because the Court cannot assert general jurisdiction over NatWest after Daimler,

---

obviously did not consider that point five years before Daimler was issued, and there is thus no "law of the case" on that question.

[4] Indeed, Goodyear was decided before one of the district court orders on appeal in Gucci America.  Thus, if plaintiffs were correct that Goodyear established the defense NatWest is asserting here, the Second Circuit would have found that BOC had waived the same defense by failing to raise it after Goodyear.

[5] Plaintiffs also misplace reliance on In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30 (2d Cir. 2014) and Sonera Holding B.V. v. Cukurova Holding, A.S., 750 F.3d 221 (2d Cir. 2014).  See Pl. Br. at 8.  Neither addresses whether a litigant waived a jurisdictional defense by not raising it after Goodyear and before Daimler.

plaintiffs can invoke only the Court's <u>specific</u> jurisdiction. Thus, plaintiffs can pursue only those

claims that "arise out of" NatWest's relevant forum contacts – the wire transfers to New York

correspondent banks that NatWest processed on behalf of Interpal, all of which occurred before

August 15, 2003 (the "New York Transfers"). Plaintiffs cannot pursue claims that "arise out of"

wire transfers that never touched New York. <u>See</u> NatWest Br. at 7-13. In response to NatWest's

showing that plaintiffs' claims that arise from the New York Transfers must be dismissed

because plaintiffs cannot prove the indispensable proximate causation and <u>scienter</u> elements of

those claims, <u>see</u> <u>id.</u> at 14-24; <u>infra</u> pp. 7-10, plaintiffs improperly attempt to broaden the scope

of the Court's specific jurisdiction over NatWest by aggregating NatWest's <u>non</u>-forum contacts

with its forum contacts, and they also grossly misapply other basic jurisdictional principles. <u>See</u>

Pl. Br. at 12-25. But the Court must apply the Constitutional rule that it can exercise specific

jurisdiction over NatWest only if – and only to the extent that – plaintiffs' claims "arise out of"

NatWest's forum contacts, here the New York Transfers, and <u>only</u> those forum contacts are

relevant to the Court's specific jurisdiction. Otherwise the distinction between general and

specific jurisdiction would be eviscerated. In particular, as plaintiffs cannot dispute:

- Constitutional due process limits specific personal jurisdiction over NatWest to "litigation [that] results from alleged injuries that '<u>arise out of or relate to</u>' [its forum] activities." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (internal citations omitted) (emphasis added). Plaintiffs' claims "arise out of" NatWest's New York transactions only if they bear a "'substantial relationship'" to those transactions. <u>PDK Labs, Inc. v. Friedlander</u>, 103 F.3d 1105, 1109 (2d Cir. 1997) (citation omitted).

- New York's long-arm statute, CPLR § 302(a)(1), similarly limits specific personal jurisdiction over NatWest to claims that "arise from" its business transactions in New York. <u>Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC</u>, 450 F.3d 100, 103 (2d Cir. 2006).

- "[P]laintiff[s] must establish the court's jurisdiction with respect to <u>each</u> claim asserted." <u>Sunward Elecs., Inc. v. McDonald</u>, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis in original). "This result flows logically from the distinction between general and specific jurisdiction . . . . If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over

any claim that does not arise out of or result from the defendant's forum contacts."
Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274-75 (5th Cir. 2006).
See NatWest Br. at 7-9.

Plaintiffs concede that their "claims [against NatWest] are rooted in transfers NatWest made on behalf of Interpal to Hamas-controlled organizations in the West Bank and Gaza Stip [sic]." Pl. Br. at 12. Moreover, plaintiffs have not identified any contacts by NatWest with the New York forum from which plaintiffs' claims arise other than the New York Transfers. Hence, this Court can exercise specific personal jurisdiction over NatWest only with respect to those of plaintiffs' claims that "arise out of" those New York Transfers, and it should dismiss those of plaintiffs' claims that do not arise from the New York Transfers for lack of personal jurisdiction.[6] Moreover, as shown in Part III below, because plaintiffs cannot prove the indispensable proximate causation or scienter elements of their claims that do arise from the New York Transfers, the Court should dismiss those claims too as a matter of law.[7]

The Court should reject plaintiffs' contention that it can assert specific jurisdiction with respect to claims arising from transfers that did not contact New York, or can aggregate those transfers with the New York Transfers and assert specific jurisdiction over claims that "arise out of" non-New York transfers, based on the fiction that there is only one "collection of

---

[6] Plaintiffs' reference to NatWest's "systematic continuous contacts" with states other than New York is a red herring. See Pl. Br. at 11. Plaintiffs do not allege that their claims arise from these contacts, and thus they are entirely irrelevant. Moreover, plaintiffs' suggestion that the Court should consider NatWest's "systematic continuous contacts" with New York when evaluating specific personal jurisdiction would eliminate the distinction between specific and general jurisdiction. See Walden v. Fiore, 134 S. Ct. 1115, 1121 n.6 (2014) ("'Specific' or 'case-linked' jurisdiction 'depends on an affiliatio[n] between the forum and the underlying controversy' . . . . This is in contrast to 'general' or 'all purpose' jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit.").

[7] Plaintiffs' assertions that NatWest "materially undercounted" the number of relevant New York wire transfers, and that the New York Transfers were themselves sufficient to fund all of the attacks at issue, are also irrelevant. See Pl. Br. at 12-13. Plaintiffs do not dispute that no New York Transfers were made after August 15, 2003, and that there is no evidence that any of the New York Transfers reached any of the 13 Charities. Thus, as shown in Part III below, plaintiffs cannot establish that any of the New York Transfers were made with the requisite scienter or proximately caused plaintiffs' injuries.

transactions." See Pl. Br. at 20.  The Constitutional principles quoted above do not permit the

exercise of jurisdiction over a claim that does not arise out of a forum contact because other

claims do arise from forum contacts.  That would render meaningless the distinction between

specific and general jurisdiction.  Rather, the Court must limit its assertion of specific

jurisdiction to claims that "arise out of" forum contacts alone, and assess its jurisdiction over

each claim individually.  That is precisely the approach adopted by the courts in Fontanetta v.

American Board of Internal Medicine, 421 F.2d 355 (2d Cir. 1970), and State v. Samaritan Asset

Management Services, Inc., 874 N.Y.S.2d 698 (Sup. Ct. N.Y. Cnty. 2008), which hold that,

when claims are based on separate transactions by a defendant both inside and outside New

York, the court's specific jurisdiction is limited solely to the claims based on the New York

contacts.[8] See NatWest Br. at 12-14.  Indeed, in Fontanetta, the court had at least some factual

basis to aggregate forum and non-forum contacts because the Pennsylvania oral examination on

which the plaintiff's claim was based could not have occurred but for the New York written

examination on which the plaintiff tried to base specific jurisdiction, yet still the court did not do

so.  Fontanetta, 421 F.2d at 356.  Here, by contrast, the transactions that plaintiffs ask this Court

to aggregate are not dependent upon one another at all.[9]

Moreover, plaintiffs' attempt to aggregate claims based on non-forum contacts with those

based on forum contacts runs afoul of the meaning of a "claim," as it is understood generally and

---

[8]  The Licci decisions on which plaintiffs rely – in which all of the challenged transfers transited New York – do not hold otherwise.  The Second Circuit held only that CPLR § 302(a)(1) does not require every element of a claim to arise out of New York contact.  It did not dispense with the Constitutional requirement that every claim must arise out of the forum contacts when the only basis for personal jurisdiction is specific jurisdiction.  See Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 169 (2d Cir. 2013).  Thus, even if NatWest had purposely availed itself of this forum with respect to the wire transfers that passed through New York, Licci would provide no grounds to assert personal jurisdiction over claims arising out of separate transfers that did not pass through New York.

[9]  Plaintiffs disingenuously assert that Samaritan holds as it does because the plaintiff's claim was under New York's Martin Act.  Pl. Br. at 22.  To the contrary, the Samaritan court confirmed that there were "insufficient contacts with the State of New York to either maintain jurisdiction over the defendants or to allege violations of the Martin Act and/or the Executive Law."  874 N.Y.S.2d at 704 (emphasis added).

under res judicata principles.  Each of the transfers is a distinct transaction that is not dependent on other transfers, and a finding that NatWest is liable for one would not "impair or destroy" a finding that it is not liable for another, even as to the same plaintiff.  See Herendeen v. Champion Int'l Corp., 525 F.2d 130, 134-35 (2d Cir. 1975) (holding plaintiff had asserted two "independent" claims though the same injury was at issue, because two distinct "wrongful acts of defendants" were alleged; a finding that certain of defendants' acts rendered them liable for that injury would not impair an earlier judgment that their different acts did not).  A claim arising from the New York Transfers would be considered separate and distinct from a claim arising from non-New York transfers for res judicata purposes; it cannot be treated as the same claim for personal jurisdiction purposes.  See NatWest Br. at 9-12.

The Court should also reject plaintiffs' contention that it can assert specific jurisdiction over claims that arise from non-forum transfers because the transfers are merely "evidence" of plaintiffs' claims and "not all evidence supporting a plaintiff's cause of action need have a New York connection to support jurisdiction."  Pl. Br. at 21.  That is mere wordplay, and is contradicted by plaintiffs' own description of their claims.  The transfers are not "evidence"; they are the sole conduct on which plaintiffs' claims purport to be based.  Indeed, as plaintiffs concede, the transfers are the "gravamen of [their] claims"; they are the very acts by which NatWest allegedly violated the ATA.  Pl. Br. at 12 ("Plaintiffs' claims are rooted in transfers NatWest made on behalf of Interpal . . . ."), id. at 19 ("Plaintiffs maintain that NatWest violated its statutory duties under the ATA by transferring money on behalf of Interpal.") (emphasis added).[10]

---

[10]  The fact that "the ATA was specifically designed to create a 'procedurally privileged U.S. forum'" for domestic victims of international terror, Pl. Br. at 14, does not alter the constitutional requirement that specific jurisdiction may only be maintained over claims that "arise from" a defendant's forum contacts.  Further, the passive personality, protective and objective territorial principles cited by plaintiffs, see Pl. Br. at 15 n.26, relate only to

Finally, CPLR § 302(a)(3), which authorizes jurisdiction over an out-of-state defendant who commits a tortious act causing injury in New York, <u>see</u> Pl. Br. at 16-17, does not apply here as the relevant injuries occurred in Israel or the Palestinian Territories. <u>See</u> NatWest Br. at 8.

## III. NATWEST IS ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS THAT "ARISE OUT OF" THE NEW YORK TRANSFERS – THE ONLY CLAIMS AS TO WHICH THE COURT CAN ASSERT SPECIFIC JURISDICTION – BECAUSE PLAINTIFFS CANNOT PROVE EITHER THE PROXIMATE CAUSATION OR SCIENTER ELEMENTS OF THOSE CLAIMS

As a substantive matter, plaintiffs cannot prove either the proximate causation or <u>scienter</u> elements of their claims that "arise out of" the New York Transfers, the only claims over which the Court can assert jurisdiction. Each of these failures of proof independently entitles NatWest to judgment as a matter of law.

### A. Plaintiffs Cannot Prove That The New York Transfers Caused Their Injuries

Plaintiffs do not dispute that the ATA requires them to prove that NatWest's conduct factually and proximately caused their injuries. <u>See</u> NatWest Br. at 14-15.[11] Based on the causal chain plaintiffs have alleged – that their "claims are rooted in transfers NatWest made on behalf of Interpal <u>to Hamas-controlled organizations in the West Bank and Gaza Stip</u> [sic]," Pl. Br. at 12 (emphasis added) – and the limited scope of the Court's specific jurisdiction, plaintiffs must therefore prove that the funds that NatWest transferred to correspondent banks in New York

---

subject matter jurisdiction, not <u>personal</u> jurisdiction, and merely codify the circumstances recognized by customary international law in which a State can regulate claims based on conduct that occurred outside that State. <u>See, e.g.,</u> <u>U.S. v. Yousef</u>, 327 F.3d 56, 91 n.24 (2d. Cir. 2003).

[11] Even if plaintiffs were correct that they need not show any causal link between NatWest's forum contacts and their injuries in order to establish specific jurisdiction, <u>see</u> Pl. Br. at 17-18, that would not relieve plaintiffs of their substantive burden to establish all of the elements of those claims, including proximate causation. In any event, plaintiffs concede that to establish personal jurisdiction they must show a "relatedness" between the defendant's forum contacts and their injuries, <u>see id.</u>, which they cannot do in the absence of evidence that the funds that are the subject of the New York Transfers actually reached any of the alleged Hamas <u>alter egos</u>. <u>See</u> NatWest Br. at 15-16. The <u>Licci</u> decisions are not to the contrary, because in that case plaintiffs had not yet had discovery, and so the courts were required to accept as true allegations that the funds that passed through New York actually went to Hizbollah. Here, plaintiffs have had years of discovery and thus must allege specific facts showing that the funds NatWest transferred through New York actually reached Hamas. <u>See</u> NatWest Br. at 16 n.16.

were subsequently transferred onward to the 13 Charities that plaintiffs contend are <u>alter egos</u> of Hamas. <u>See also</u> NatWest Br. at 15 n.15. But plaintiffs concede that they have presented <u>no</u> evidence that <u>any</u> of these funds were actually transferred onward to <u>any</u> of these charities. Thus, plaintiffs cannot prove a critical link in the causal chain on which they rely, and NatWest is entitled to judgment on this ground alone.[12]

Plaintiffs attempt to fill this void in their proof with mere rhetoric. First, plaintiffs argue that "[t]he analyses of Plaintiffs' expert indicates that each of the [New York Transfers] <u>had</u> <u>listed as</u> its beneficiary" one of the 13 Charities or the son of a Hamas leader. <u>See</u> Pl. Br. at 19-20 (emphasis added). But the fact that an entity was "<u>listed</u>" does not prove that it actually received any funds. Second, plaintiffs' argument that the ATA "does not require a plaintiff to plead or prove any further funds tracing" because transfers to FTOs such as Hamas are prohibited and money is fungible, <u>see id.</u> at 20, assumes that plaintiffs have proffered evidence that the funds transiting New York actually reached a designated FTO, <u>i.e.</u>, Hamas or one of its <u>alter egos</u>. They have not. Thus, and contrary to plaintiffs' assertions, <u>Rothstein v. UBS AG</u>, 708 F.3d 82, 97 (2d Cir. 2013) – which affirms a dismissal on proximate causation grounds where, as plaintiffs here put it, the plaintiffs there "could only speculate that Iran had, thereafter, transferred funds to FTOs," Pl. Br. at 20 – is directly on point. Third, plaintiffs argue that "NatWest's provision of financial services to Interpal . . . itself violates the ATA." <u>Id.</u> Judge Sifton rejected this argument years ago based on a plain reading of Section 2339B, which proscribes material support to FTOs such as Hamas, <u>not</u> to SDGTs such as Interpal. <u>See Weiss</u> <u>v. Nat'l Westminster Bank Plc</u>, 453 F. Supp. 2d 609, 623 (E.D.N.Y. 2006).

---

[12] Even if plaintiffs had proffered evidence that the New York Transfers ultimately resulted in onward transfers to the 13 Charities, plaintiffs <u>still</u> would be unable to show that any such transfers were a "but for" cause of their injuries or that their injuries were a foreseeable consequence of such transfers, and thus NatWest would still be entitled to judgment. <u>See</u> NatWest Br. at 16-17. Plaintiffs do not rebut either point.

## B. Plaintiffs Cannot Show That NatWest Made The New York Transfers With The Requisite <u>Scienter</u>

Because <u>Daimler</u> limits plaintiffs to invoking the Court's specific jurisdiction, they must

prove that NatWest had the requisite <u>scienter</u> as of August 15, 2003, the date of the last New

York Transfer. <u>See</u> NatWest Br. at 18-24; <u>Weiss</u>, 453 F. Supp. 2d at 626 n.12. Absent proof that

NatWest had the requisite <u>scienter</u> when it made the New York Transfers, there is no claim. But

there is no evidence that NatWest had the requisite <u>scienter</u> <u>as of that early date</u>. The Second

Circuit's narrow reversal of this Court's prior ruling that there is no triable issue of <u>scienter</u> at all,

thus entitling NatWest to summary judgment on that ground, <u>Weiss v. Nat'l Westminster Bank</u>

<u>Plc</u>, 936 F. Supp. 2d 100, 105-20 (E.D.N.Y. 2013), rests <u>solely</u> on <u>four facts</u> that the panel

concluded could support a reasonable finding of <u>scienter</u>, and leaves intact this Court's

conclusion that a reasonable juror could not find <u>scienter</u> based on any other facts. <u>Critically,</u>

<u>each occurred after August 15, 2003, and thus after the last New York Transfer. See, e.g.,</u>

<u>Weiss</u>, No. 13-1618-cv, slip op. at 12-15. Moreover, plaintiffs have offered no reason – and

there is no reason – for this Court to change its prior ruling that there is no evidence of

NatWest's <u>scienter</u> as of August 15, 2003, whether or not that ruling is technically "law of the

case," which plaintiffs dispute. Pl. Br. at 23. <u>See United States ex rel. Miller v. Bill Harbert Int'l</u>

<u>Constr.</u>, 865 F. Supp. 2d 1, 6 (D.D.C. 2011) ("[T]he Circuit Court's use of 'vacatur' in this

instance does not foreclose the survival of certain prior factual determinations, provided they

were not infected by the underlying errors identified by the Circuit Court.").

Further, the text of the Second Circuit's opinion contradicts plaintiffs' contention that the

four post-August 15, 2003 facts on which the opinion relies are not exhaustive, and instead are

merely "examples" of facts from which a reasonable juror could find <u>scienter</u>. <u>See</u> Pl. Br. at 24.

The opinion lists the four facts it identifies under the heading "Evidence Supporting a Finding

that NatWest Knew Interpal Provided Material Support to Hamas," <u>Weiss</u>, No. 13-1618-cv, slip

op. at 15; it does not characterize these facts as "<u>examples</u> of evidence."  Additionally, the

opinion states that "[t]his evidence was sufficient to create a triable issue of fact as to whether

NatWest's knowledge and behavior in response satisfied the statutory scienter requirements," <u>id.</u>

at 17 – <u>not</u> "this evidence <u>and other evidence</u>" or NatWest's "behavior in response <u>to these and</u>

<u>other facts</u>."  Moreover, plaintiffs have not identified a single additional item of evidence that

could support a finding that NatWest acted with the requisite <u>scienter</u> on or before August 15,

2003, because there is none.[13]

Finally, there is no rational basis for plaintiffs' suggestion that the testimony of Michael

Hoseason, standing alone, could support a finding of <u>scienter</u> as of August 15, 2003.  Hoseason's

testimony concerned the standard he believed NatWest would apply in determining whether to

close an account potentially connected to terror financing.  Thus, as plaintiffs concede, his

testimony is relevant only to NatWest's evaluation of <u>other</u> "piece[s] of evidence." Pl. Br. at 25.

But the only such evidence the Second Circuit identified as relevant to NatWest's <u>scienter</u>

concerns matters occurring <u>after</u> August 15, 2003, and thus <u>after</u> the last New York Transfer.[14]

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' claims, or alternatively the

Court should grant NatWest summary judgment.

---

[13]  Despite plaintiffs' extensive arguments on appeal that the "Cryptome Report" also could support a finding of <u>scienter</u>, the Second Circuit did not disagree with this Court's ruling that the Cryptome Report is merely an unauthenticated, "unsubstantiated allegation" that does not raise a triable factual issue. <u>Weiss</u>, 936 F. Supp. 2d at 107.  Nor did it disagree with this Court's ruling that NatWest's suspicious activity reports concerning Interpal before August 15, 2003 do not "equate to knowledge or even legitimate suspicion of terror financing because employees were trained to file SARs any time a transaction ... raised red flags, regardless of their subjective beliefs." <u>Id.</u> at 115.

[14]  Plaintiffs also concede that the "topic of conversation in [the email chain cited by the Second Circuit] is the U.S. SDGT designation of Interpal," which occurred on August 21, 2003. <u>See</u> Pl. Br. at 25 n.36.  Thus, no reasonable juror could conclude based on this email chain that NatWest acted with <u>scienter</u> as of August 15, 2003.

Dated:  January 12, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____

Lawrence B. Friedman, A Member of the Firm
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant National Westminster Bank Plc

11

# ADDENDUM A

FILED: NEW YORK COUNTY CLERK 08/11/2014 09:08 AM

NYSCEF DOC. NO. 62

INDEX NO. 155195/2014

RECEIVED NYSCEF: 08/11/2014

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: MELVIN L. SCHWEITZER
                                  *Justice*

PART 45

ALEXANDER GLIKLAD

-v-

BANK HAPOLIM B.M.

INDEX NO. 155195/2014

MOTION DATE _____

MOTION SEQ. NO. 001

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits  _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is by plaintiff to compel a response to a post-judgment subpoena and a turnover of funds is DENIED.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: August 4, 2014

MELVIN L. SCHWEITZER

1. CHECK ONE: ..................................................... ☑ CASE DISPOSED          ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ..........................MOTION IS: ☐ GRANTED  ☑ DENIED   ☐ GRANTED IN PART   ☐ OTHER

3. CHECK IF APPROPRIATE: ................................................. ☐ SETTLE ORDER          ☐ SUBMIT ORDER

☐ DO NOT POST     ☐ FIDUCIARY APPOINTMENT     ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 45

------------------------------------------------------------------------x

ALEXANDER GLIKLAD,                                          :
                                                            :
                                 Plaintiff,        ·        :        Index No. 155195/2014
                                                            :
                  -against-                                 :        DECISION AND ORDER
                                                            :
BANK HAPOALIM B.M.,                                         :        Motion Sequence Nos. 001, 002
                                                            :
                                 Respondent.                :
------------------------------------------------------------------------x

**MELVIN L. SCHWEITZER, J.:**

Alexander Gliklad (Mr. Gliklad) submitted a petition to compel Bank Hapoalim B.M.

(Bank Hapoalim) to respond to a Subpoena *Duces Tecum* seeking documents concerning the

bank accounts of Judgment Debtor Michael Cherney a/k/a Michael Chernoi (Mr. Cherney) and

to compel the turnover of all money and other assets held by Bank Hapoalim belonging to or in

which Mr. Cherney has an interest.  Bank Hapoalim has moved for dismissal of the petition.

### Background

On April 11, 2014, this Court granted summary judgment to Mr. Gliklad regarding

enforcement of a one-page promissory note signed by Mr. Cherney. On April 15, 2014, a

judgment of over $505 million dollars was entered against Mr. Cherney.  Mr. Gliklad proceeded

to serve a Restraining Notice and Subpoena *Duces Tecum* on Bank Hapoalim's New York

branch, enjoining the transfer of any funds maintained by Mr. Cherney at Bank Hapoalim and

requesting documents relating to all accounts maintained by Mr. Cherney at Bank Hapoalim,

regardless of location. On May 6, 2014, Bank Hapoalim responded via letter that while it would

produce documents to the extent they were held at its New York branch, it would not restrain

assets or produce documents held at any other Bank Hapoalim location.

On May 13, 2014 Bank Hapoalim produced two New York Clearinghouse wire transfers, dated October 17, 2012 and November 1, 2012, which showed transfers of funds from Mr. Cherney's bank in Cyprus to his account at Bank Hapoalim's Israel branch in Tel Aviv. Both transfers originated from Alpha Bank Cyprus limited in Cyprus. The funds then moved through Deutsche Bank in New York City, to Bank Hapoalim in New York City, and finally to Bank Hapoalim's central branch in Tel Aviv. Mr. Cherney was listed as both the originator and the beneficiary of both transfers and both transfers noted that Mr. Cherney transferred his own funds. Together, the two transfers total $16 million dollars.

On May 27, 2014 Mr. Gliklad submitted a petition to compel a response from Bank Hapoalim to his subpoena and to turnover any and all funds in Mr. Cherney's account at its Tel Aviv branch. Bank Hapoalim then submitted a motion to dismiss the petition on the grounds that (1) it is not subject to general or specific personal jurisdiction in New York, (2) that service upon its New York branch is insufficient to reach documents and assets in its Tel Aviv branch under the separate entity rule, and (3) that it cannot comply with the subpoena and turnover demand without violating Israeli privacy laws.

## Discussion

### General Jurisdiction

In support of the assertion of general jurisdiction over Bank Hapoalim, Mr. Gliklad cites *Koehler v Bank of Bermuda Ltd*, in which the Court of Appeals of New York held that " a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee." *Koehler* 12 NY3d 533, 541 (2009). Mr. Gliklad argues that service upon Bank Hapoalim's branch in New York is enough to confer jurisdiction over Bank Hapoalim in Israel for the purpose of

2

reaching Mr. Cherney's assets. Mr. Gliklad further contends that this has been the law in New York for some time, citing several First Department decisions holding that a turnover order can reach out of state property.

Bank Hapoalim asserts that the Supreme Court's decision in *Daimler AG v Bauman* has limited the instances in which general jurisdiction may be asserted over a foreign corporation in the United States. The court held that general jurisdiction is available only where the corporation is "fairly regarded as at home," and labeled a corporation's place of incorporation and principal place of business as "paradigm bases for general jurisdiction." *Daimler* 134 Sup Ct 746, 760 (2014). Beyond these two locations, a foreign corporation may also be considered at home where "its affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler* at 761.

Mr. Gliklad argues that neither the holding nor the rationale of *Daimler* have any bearing on this case. The court finds that it does. As in *Daimler*, this case is concerned with the assertion of jurisdiction over a foreign entity based on its activities in the United States. Although *Daimler* may have only mentioned subsidiaries, there is no rationale to suggest that its reasoning should not be applied to a foreign bank with a branch in New York. In fact, the *Daimler* decision appears to address the concerns of the dissent in *Koehler* that "if any court with power over the garnishee can order the garnishee to change the asset's location, significant disruption in the process of deciding whose rights are superior seems inevitable. And the business of banking itself, for a bank with offices in several states or countries, will also be disrupted." *Koehler* at 542 (Smith, J., dissenting).

In assessing the capability of asserting general jurisdiction over Bank Hapoalim, the court finds that Bank Hapoalim does not meet the two paradigm bases for general jurisdiction

3

articulated in *Daimler*. Bank Hapoalim is incorporated in Israel and its principal place of business is in Tel Aviv. The only remaining possibility for asserting general jurisdiction here is if Bank Hapoalim's activities in New York are so continuous and systematic as to render it at home in New York.

Mr. Gliklad presents Bank Hapoalim's New York branch as being the center of its operations in the United States, where it actively conducts business. Even if this is taken to be true, there is no evidence to suggest that the activity at the New York branch is substantial enough to warrant general jurisdiction in New York over Bank Hapoalim. The court finds no reason to find that Bank Hapoalim is at home in New York. To allow the exercise of general jurisdiction in a state where a corporation only engages in a substantial and continuous course of business has been found to be "unacceptably grasping." *Daimler* at 761. While Bank Hapoalim's New York branch may in fact be the center of its operations in the United States, this says nothing with respect to an elevated level of continuous and systematic activity. Center of operations is an opaque concept, having no identifiable meaning in the circumstances. It may just mean that Bank Hapoalim has its only U.S. Vice President in New York. There is no center of operations test with respect to general jurisdiction post *Daimler*.

Despite all of this, Mr. Gliklad asserts that Bank Hapoalim's objection to general jurisdiction is undone by virtue of it having consented to the jurisdiction of the New York courts. Bank Hapoalim is licensed by the New York State Department of Financial Services to conduct business in New York, and has designated the New York Superintendent of Financial Services as its agent for service of process. These facts are put forward as evidence of Bank Hapoalim's consent to general jurisdiction in New York under New York Banking Law § 200. However, this court holds that Mr. Gliklad has misinterpreted the law with regard to what provides for the

4

exercise of general jurisdiction. New York Banking Law § 200 states that by appointing the superintendent of banking as agent for service of process a foreign bank may be subject to jurisdiction "in any action or proceeding against it on a cause of action arising out of a transaction with its New York agency or agencies or branch or branches…" N.Y. Bank Law § 200 (3). The court agrees with Bank Hapoalim's understanding of this law as providing for the exercise of specific jurisdiction, not general.

In light of the recent decision in *Daimler*, and the lack of evidence suggesting that Bank Hapoalim has "affiliations with the State [which] are so continuous and systematic as to render it essentially at home" in New York, the court finds that there is no basis for the exercise of general jurisdiction over Bank Hapoalim. While Mr. Gliklad expresses concern that this interpretation effectively precludes Bank Hapoalim from being subjected to general jurisdiction anywhere in the United States, this does not mean that Bank Hapoalim can never be tried in a United States court. Specific jurisdiction is still an available option in appropriate circumstances, which Bank Hapoalim itself recognizes.

Specific Jurisdiction

It is Mr. Gliklad's contention that specific jurisdiction is predicated on Bank Hapoalim's role as a garnishee of funds belonging to Mr. Cherney. Mr. Cherney's transfer of $16 million through Bank Hapoalim's New York branch is presented as providing sufficient contacts with the forum to sustain specific jurisdiction. Both of these transfers took place in late 2012, over a year and half before judgment was handed down in the underlying controversy between Mr. Gliklad and Mr. Cherney. To find a bank subject to specific jurisdiction based solely on its permitting one of its customers to take advantage of a regularly available banking service would permit the extension of jurisdiction to a degree that would most certainly violate notions of "fair

5

play and substantial justice." *Int'l Shoe Co. v Wash.*, 66 S.Ct. 154, 159 (1945). Without any suggestion that Mr. Cherney initiated these transfers for the specific intent of depriving Mr. Gliklad of the opportunity to receive payment on the promissory note, there is no basis for establishing specific jurisdiction over Bank Hapoalim.

Separate Entity Rule

Bank Hapoalim asserts that the petition should be dismissed due to inadequate service of process under New York law, specifically under the separate entity rule. It has long been the rule of New York that each branch of a bank is to be regarded as a separate entity "in no way concerned with accounts maintained by depositors in other branches or at the home office." *Cronan v Schilling*, 100 NYS2d 474, 476 (1950). *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v Adv. Employment Concepts*, 269 AD2d 101, 101 (1st Dept 2000); *Therm-X-Chemical & Oil Corp. v Extebank*, 84 AD2d 787, 787 (2d Dept 1981).

Mr. Gliklad argues that the holding in *Koehler* has abrogated the separate entity rule. There is no mention of the separate entity rule in the *Koehler* decision. As the separate entity rule appears to have played no part in the analysis of the *Koehler* court, the court finds no reason to interpret that it either endorsed or abrogated the rule. There is no reason to believe that the separate entity rule is no longer good law in New York. Mr. Gliklad's attempt to obtain the turnover of Mr. Cherney's funds located in Bank Hapoalim's Tel Aviv branch by serving its branch in New York fails.

International Comity

Based on the court's findings regarding personal jurisdiction, a decision on Bank Hapoalim's comity argument is unnecessary. However, a brief discussion inasmuch as it relates to jurisdiction concerns will provide further clarity for today's holding. In *Daimler*, the Supreme

6

Court notes that other nations do not share the same United States views on jurisdiction. Enforcing expansive views of jurisdiction on foreign governments "have in the past impeded negotiations of international agreements on the reciprocal recognition and enforcement of judgments." *Daimler* at 763. As applied in *Daimler*, considerations of international rapport reinforce this court's determination that subjecting Bank Hapoalim to general jurisdiction in New York would not comport with the due process demands of "fair play and substantial justice."

### Conclusion

ORDERED that Bank Hapoalim's motion to dismiss is granted; and it is further

ORDERED that Mr. Gliklad's petition to compel a response to a post-judgment subpoena and for the turnover of funds is denied.

Dated: August 4 , 2014

ENTER:

_____

J.S.C.

**MELVIN L. SCHWEITZER**

7