14-4083-cv
*Brown v. Lockheed Martin Corp.*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: October 8, 2015      Decided:  February 18, 2016)

No. 14-4083

————————

CINDY S. BROWN, as Personal Representative
to the Estate of Walter E. Brown,

*Plaintiff-Appellant*,

–v.–

LOCKHEED MARTIN CORP., individually
and as successor-in-interest to Martin-Marietta Corp.,

*Defendant–Appellee.**

————————

B e f o r e :

PARKER, LYNCH, and CARNEY, *Circuit Judges*.

————————

Acting as personal representative of her late father's estate, Plaintiff-
Appellant Cindy S. Brown appeals from a final judgment of the United States
District Court for the District of Connecticut (Thompson, *J.*) dismissing for want

——————————————

* The Clerk of Court is respectfully directed to amend the case caption to conform to the
above.

1   of personal jurisdiction her claims against Defendant-Appellee Lockheed Martin
2   Corporation.  Brown—who resides in Alabama, as did her late father—seeks to
3   recover in tort from Lockheed and others for her father's injuries related to his
4   past asbestos exposure in locations outside of Connecticut.  Lockheed—which is
5   incorporated and maintains its principal place of business in Maryland—leases
6   some space and employs some workers in Connecticut.  In accordance with
7   Connecticut law, it registered to do business and appointed an agent to accept
8   service in the state.  Brown contends that by its registration and appointment of
9   an agent, Lockheed consented to the exercise of general jurisdiction over it by
10   Connecticut courts and that due process constraints have no bearing on the
11   exercise of jurisdiction so conferred.  Brown also contends that Lockheed's
12   contacts with Connecticut in any event suffice to support the exercise of general
13   jurisdiction over Lockheed by Connecticut courts.  We decide that Lockheed did
14   not consent to the exercise of general jurisdiction over it.  Apart from the effect of
15   its registration, we conclude further that, under *Goodyear Dunlop Tires Operations,*
16   *S.A. v. Brown*, 131 S. Ct. 2846 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746
17   (2014), Lockheed's contacts with Connecticut were not sufficient to support a
18   Connecticut court's exercise of general personal jurisdiction over the company.
19   We therefore AFFIRM the judgment of the District Court dismissing Brown's
20   claims.

————————

22   LISA W. SHIRLEY (Jessica M. Dean, *on the brief*), Simon
23   Greenstone Panatier Bartlett, PC, Dallas, Texas, *for* Cindy S.
24   Brown.

26   DAN HIMMELFARB, Mayer Brown LLP, Washington, DC (Guy
27   P. Glazier, Brian T. Clark, Glazier Yee LLP, Los Angeles, CA;
28   Matthew J. Zamaloff, Cetrulo LLP, Boston, MA, *on the brief*), *for*
29   Lockheed Martin Corp.

————————

CARNEY, *Circuit Judge*:

We confront here a nettlesome and increasingly contentious question about the import of a foreign corporation's registration to conduct business and appointment of an agent for service of process in a state for the exercise of personal jurisdiction by that state's courts over the registered corporation.  Here, the state is Connecticut, and the terms of its registration and appointment statutes are unclear as to whether they purport to confer on the state's courts the power to exercise general jurisdiction over duly registered foreign corporations. Such jurisdiction would give Connecticut courts the power to adjudicate any matter concerning any registered corporation, no matter where the matter arose and no matter how limited the state's interest in the dispute.[1]

The question arises in this context:  As personal representative of her father's estate, Plaintiff-Appellant Cindy S. Brown appeals from a final judgment of the United States District Court for the District of Connecticut (Thompson, *J.*) dismissing for want of personal jurisdiction the tort claims that Brown's late

[1] A state has such general jurisdiction over its residents; an out-of-state plaintiff may sue a resident even for conduct that occurred elsewhere.  In contrast, a state may exercise specific jurisdiction even over non-residents when the state has a particular interest in or connection to the dispute, as for example where the suit arises from the non-resident's actions in the state.

father asserts against Defendant-Appellee Lockheed Martin Corporation

("Lockheed"). *See Brown v. CBS Corp.*, 19 F. Supp. 3d 390 (D. Conn. 2014).  Brown

seeks to recover in tort from Lockheed and others for injuries suffered by her

father as a result of asbestos exposure sustained by him during his work as an

Air Force airplane mechanic in locations in Europe and around the United States,

but not in Connecticut.  Lockheed, a major aerospace company with a worldwide

presence, is both incorporated and maintains its principal place of business in

Maryland.  In 1995, it registered to do business in Connecticut and appointed an

agent for service, in compliance with Connecticut law.  Between 2008 and 2012, it

leased space in four locations in Connecticut, and employed between

approximately 30 and 70 workers in the state.

Conceding the absence of any basis for the exercise of specific jurisdiction

over Lockheed by Connecticut courts (and, derivatively, by the federal district

court in Connecticut), Brown contends that Lockheed consented to having those

courts in Connecticut exercise general jurisdiction over it by registering—years

earlier—to do business in the state and appointing an agent to receive service of

process there.  Brown also contends that, even apart from its registration in the

state, the Supreme Court's recent decisions in *Daimler AG v. Bauman*, 134 S. Ct.

4

746 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), support the demand for the District Court's exercise of general jurisdiction over Lockheed in Connecticut because the company's contacts with Connecticut were "continuous and systematic" enough to place it "essentially at home" in the state. *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851).

Lockheed resists. It argues primarily that, although by registering to do business it may have consented to the state's exercise of *specific* jurisdiction over it, the company did not consent to the exercise of *general* jurisdiction there. It further stresses that, even if its registration and appointment of an agent for service of process could be taken as some form of consent, the exercise of general jurisdiction over it by Connecticut state courts would offend the Fourteenth Amendment's guarantee of due process, in light of the gross disproportion between its few Connecticut contacts and its very substantial activity worldwide.

The District Court dismissed the suit against Lockheed. Looking to two Connecticut Appellate Court decisions, it ruled that, although those decisions suggest that Lockheed's registration under the Connecticut statutes might permit it to exercise general personal jurisdiction over Lockheed, the registration

1    statute's power is bounded by federal due process principles developed in

2    *Daimler* and *Goodyear*.  In the District Court's estimation, those principles

3    preclude the court's exercise of general jurisdiction over the company when the

4    company's contacts with the state are so limited.  *See Brown*, 19 F. Supp. 3d at

5    394, 396–400.

6           We reach the same conclusion—that the District Court did not have

7    general jurisdiction over Lockheed—albeit by a somewhat different route.  First,

8    applying the due process principles of *Daimler* and *Goodyear*, we comfortably

9    conclude that Lockheed's contacts with Connecticut, while perhaps "continuous

10   and systematic," fall well below the high level needed to place the corporation

11   "essentially at home" in the state.  Second, upon our examination of the

12   applicable Connecticut law, we conclude that by registering to transact business

13   and appointing an agent under the Connecticut statutes—which do not speak

14   clearly on this point—Lockheed did not consent to the state courts' exercise of

15   general jurisdiction over it.  A more sweeping interpretation would raise

16   constitutional concerns prudently avoided absent a clearer statement by the state

17   legislature or the Connecticut Supreme Court.

1   We therefore AFFIRM the judgment of the District Court dismissing

2   Brown's claims for want of personal jurisdiction.

3   **BACKGROUND**

4   The basic facts are uncontested.

5   From approximately 1950 through 1970, Cindy Brown's father, Walter E.

6   Brown, served as an airplane mechanic in the United States Air Force, working at

7   various bases in Europe and in the United States (i.e., in Alabama, Delaware,

8   Georgia, Illinois, New Mexico, and Michigan).[2]  His work during those years

9   brought him into close contact with asbestos, a fibrous type of mineral once

10   widely used in insulation products and exposure to which is now understood to

11   be associated with serious health problems.

12   Walter Brown was subsequently diagnosed with malignant mesothelioma,

13   a cancer that his daughter describes as "uniquely caused" by exposure to

14   asbestos.  Appellant's Br. at 2.  Seeking recompense for his injuries, in June 2012

15   Mr. Brown—then a resident of Alabama—sued Lockheed and thirteen other

16   companies in the United States District Court for the Southern District of

---

[2] In that period, Brown worked briefly at a factory school operated by Pratt & Whitney Corporation in Putnam, Connecticut.  With respect to Lockheed, however, Brown does not allege that any of his damaging exposure from the company's products occurred in Connecticut.

1  Alabama.  After the suit elicited a motion to dismiss on statute of limitations

2  grounds, he sought to voluntarily dismiss the case.  The District Court granted

3  his request.[3]

4      Mr. Brown then turned to the Connecticut Superior Court, where in

5  October 2012 he filed a complaint against Lockheed and other defendants on

6  allegations that reprised those contained in his Alabama federal court complaint.

7  In response, Lockheed (citing its status as a federal contractor in the relevant

8  period) removed the action to the federal district court in Connecticut.  *See* 28

9  U.S.C. § 1442(a).  The company then moved under Federal Rule of Civil

10  Procedure 12(b)(2) to dismiss the suit for want of personal jurisdiction.

11      Walter Brown died on October 14, 2012.  His death certificate identifies the

12  cause of death as mesothelioma.  His daughter Cindy, the personal representative

13  of his estate, replaced Mr. Brown as plaintiff.[4]

14      After the parties conducted jurisdictional discovery regarding Lockheed's

15  contacts with Connecticut, Lockheed renewed its Rule 12(b)(2) motion, and in

---

[3] In dismissing the complaint, the court commented that Brown "concedes that his motion is driven, at least in part, by the desire 'to avoid any possibility of an adverse ruling' on [the statute of limitations] issue."  J.A. at 112.

[4] For convenience, we will use "Brown" to refer to Walter Brown in matters occurring when he was alive, and to refer to his daughter as the estate's representative in matters after her father's death.

8

1   May 2014, the District Court dismissed the case.  Applying Connecticut law, the

2   court concluded that Lockheed was subject to the Connecticut long-arm statute

3   by virtue of its registration to do business in the state, but that the effective reach

4   of the statute is curbed by federal due process principles.  Under those

5   principles, the court ruled, Lockheed's contacts were not substantial enough to

6   support the court's exercise of general jurisdiction over it.

7        This appeal followed.[5]

## DISCUSSION

9        We review *de novo* a district court's decision to dismiss a complaint for lack

10  of personal jurisdiction.  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158,

11  163 (2d Cir. 2010).

12       In the absence of a federal statute specifically directing otherwise, and

13  subject to limitations imposed by the United States Constitution, we look to the

14  law of the forum state to determine whether a federal district court has personal

15  jurisdiction over a foreign corporation.  *See* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a

16  summons . . . establishes personal jurisdiction over a defendant [] who is subject

17  to the jurisdiction of a court of general jurisdiction in the state where the district

---

[5] Because claims against other defendants remained, Brown sought and the District Court granted partial final judgment against Lockheed under Federal Rule of Civil Procedure 54(b), enabling this Court's prompt review.

court is located . . . ."); *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)

(stating federal court applies forum state's personal jurisdiction rules in federal

question case "if the federal statute does not specifically provide for national

service of process" (internal quotation marks omitted)); *Arrowsmith v. United*

*Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc) (Friendly, *J.*) ("[T]he

amenability of a foreign corporation to suit in a federal court in a diversity action

is determined in accordance with the law of the state where the court sits, with

'federal law' entering the picture only for the purpose of deciding whether a

state's assertion of jurisdiction contravenes a constitutional guarantee.").

As reflected above, a court may exercise two types of personal jurisdiction

over a corporate defendant properly served with process.  These are specific (also

called "case-linked") jurisdiction and general (or "all-purpose") jurisdiction.

Specific jurisdiction is available when the cause of action sued upon arises out of

the defendant's activities in a state.  General jurisdiction, in contrast, permits a

court to adjudicate any cause of action against the corporate defendant, wherever

arising, and whoever the plaintiff.  *See Chloé*, 616 F.3d at 164; *see generally* Lea

Brilmayer, et al., *A General Look at General Jurisdiction*, 66 TEX. L. REV. 721 (1988).

Because her father's injuries did not arise from Lockheed's activities in

1    Connecticut, to withstand Lockheed's motion to dismiss for want of personal

2    jurisdiction, Brown must establish that a Connecticut court may exercise *general*

3    jurisdiction over Lockheed.

4         Unlike subject matter jurisdiction, "the requirement of personal

5    jurisdiction represents first of all an individual right, [and therefore] it can, like

6    other such rights, be waived."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de*

7    *Guinee*, 456 U.S. 694, 703 (1982) ("*Bauxites*").  A defendant may also forfeit its

8    objections to personal jurisdiction by failing to raise them timely in the answer or

9    in an initial motion.  *See* Fed. R. Civ. P. 12(h)(1).  Forfeiture of an objection may

10   be imposed by a court as a sanction against a defendant for noncompliance with

11   jurisdictional discovery orders.  *See Bauxites*, 456 U.S. at 708–09.  Also, unlike

12   subject matter jurisdiction, a party may simply consent to a court's exercise of

13   personal jurisdiction:  for example, an entity may contract or stipulate with

14   another to permit proceedings in a state's courts, notwithstanding the

15   remoteness from the state of its operations and organization.  *E.g.*, *Nat'l Equip.*

16   *Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) (noting that "parties to a contract

17   may agree in advance to submit to the jurisdiction of a given court"); *Petrowski v.*

1   *Hawkeye-Sec. Ins. Co.*, 350 U.S. 495, 495–96 (1956) (*per curiam*) (relying on parties'

2   stipulation to sustain exercise of personal jurisdiction).

3   Whether specific or general, however, the exercise of personal jurisdiction

4   over a defendant is informed and limited by the U.S. Constitution's guarantee of

5   due process, which requires that any jurisdictional exercise be consistent with

6   "traditional notions of fair play and substantial justice." *International Shoe Co. v.*

7   *Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  In

8   particular, constitutional due process principles generally restrict the power of a

9   state to endow its courts with personal jurisdiction over foreign corporate

10  parties—that is, entities neither organized under the state's laws nor operating

11  principally within its bounds—with regard to matters not arising within the

12  state.  *See Goodyear,* 131 S. Ct. at 2850.

13  Brown's arguments in pressing for the District Court's exercise of general

14  jurisdiction over Lockheed are twofold.  First, she maintains that a corporation

15  that registers to do business and appoints an agent to receive service in

16  Connecticut has, as a matter of Connecticut law and by application of Supreme

17  Court precedent in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue*

18  *Mining & Milling Co.*, 243 U.S. 93 (1917) ("*Pennsylvania Fire*"), "consented" to the

12

1 exercise of general jurisdiction over it by that state's courts.  Second, Brown

2 urges us to conclude that, even if we determine that Lockheed's registration does

3 not amount to such consent under Connecticut law, the company's contacts with

4 the state are so "continuous and systematic" that exercising general jurisdiction

5 over Lockheed in the state offends no constitutional principle because Lockheed

6 can fairly be described as "essentially at home" in Connecticut.  *Daimler*, 134 S.

7 Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851).  If she is correct, the federal

8 courts within the District of Connecticut would accordingly have coextensive

9 jurisdiction over Lockheed, since their jurisdiction derives from that of the state

10 courts.  *See* Fed. R. Civ. P. 4(k)(1)(A).

11   For the reasons discussed below, we are not persuaded by either of

12 Brown's arguments.  We caution, too, that to accord a broader effect of the

13 Connecticut registration and agent-appointment statute would implicate Due

14 Process and other constitutional concerns—concerns made more acute in the

15 absence of a defendant corporation's explicit consent to the state's powers.

16 Given these constitutional concerns, we find it prudent—in the absence of a

17 controlling interpretation by the Connecticut Supreme Court, or a clearer

18 legislative mandate than Connecticut law now provides—to decline to construe

the state's registration and agent-appointment statutes as embodying actual

consent by every registered corporation to the state's exercise of general

jurisdiction over it.

In an early exploration of the subject in our Circuit, Judge Friendly

highlighted the federal constitutional boundaries of states' jurisdictional powers:

> There is nothing to compel a state to exercise jurisdiction over a
> foreign corporation unless it chooses to do so, and the extent to
> which it so chooses is a matter for the law of the state as made
> by its legislature.  If the state has purported to exercise
> jurisdiction over the foreign corporation, then the question may
> arise whether such attempt violates the due process clause or
> the interstate commerce clause of the federal constitution.  This
> is a federal question and, of course, the state authorities are not
> controlling.  But it is a question which is not reached for
> decision until it is found that the State statute is broad enough
> to assert jurisdiction over the defendant in a particular
> situation.

*Arrowsmith*, 320 F.2d at 222 (citations omitted) (quoting *Pulson v. American Rolling

Mill Co.*, 170 F.2d 193, 194 (1st Cir. 1948) (Goodrich, *J.*)).  Cautioned in part by

these constitutional concerns, we conclude that the ambiguous Connecticut

statute at issue here was not "broad enough"—or clear enough—to raise those

questions.

## I.      General jurisdiction under *Goodyear* and *Daimler*

Because it is the more familiar analysis and because it sets the stage for

discussing the second issue, we first address Brown's argument that Lockheed is

subject to general jurisdiction in Connecticut by virtue of the totality of its

contacts with the state.  We conclude that, although they might have sufficed

under the more forgiving standard that prevailed in the past, Lockheed's

contacts fail to clear the high bar set by *Daimler* to a state's exercise of general

jurisdiction over a foreign corporation.[6]

### A.      The legal standard:  "essentially at home" in a state

*Daimler,* issued in 2014, concerned a suit brought by Argentinian residents

in California federal court against the German corporation Daimler, the

manufacturer of Mercedes-Benz automobiles.  The foreign national plaintiffs

sought damages from Daimler under federal statutory law on the theory that a

Daimler subsidiary in Argentina unlawfully aided the commission of horrific

human rights violations against them in that country.  They alleged that the

federal district court in California could exercise general jurisdiction over

---

[6] We use the phrase "foreign corporation" to mean an organization incorporated under the laws of a state other than the forum state.  *Accord* Conn. Gen. Stat. § 33-602(15).  With one brief exception, *see post* Part I.B, we do not discuss a state's assertion of jurisdiction over corporations organized under the laws of other countries.

1    Daimler because of the "substantial, continuous, and systematic" contacts in

2    California of a second Daimler subsidiary.  134 S. Ct. at 761.  The second

3    subsidiary was neither incorporated in California nor did it maintain its principal

4    place of business there, *id.* at 761, but it was alleged to operate "multiple

5    California-based facilities" and to be "the largest supplier of luxury vehicles to

6    the California market"—a market that allegedly accounted for "over 10% of all

7    sales of new vehicles in the United States."  *Id.* at 752.

8            For purposes of its jurisdictional analysis, the Court assumed that the

9    second subsidiary's activities rendered that entity "essentially at home" in

10   California, *id.* at 758, and that its activities could be fully attributed to Daimler, *id.*

11   at 760.  Even having made those assumptions, however, the Court rejected the

12   contention that Daimler was subject to general personal jurisdiction in the state.

13   It explained that the general jurisdiction inquiry "is not whether a foreign

14   corporation's in-forum contacts can be said to be in some sense continuous and

15   systematic," but rather, stressing the second part of the test earlier formulated in

16   *Goodyear*, "whether that corporation's affiliations with the State are *so* continuous

17   and systematic *as to render it essentially at home* in the forum."  *Id.* at 761 (emphasis

18   added; alterations and internal quotation marks omitted).  A corporation is

16

1    "essentially at home," the Court instructed, where it is incorporated or where it

2    has its principal place of business.  *Id.* at 760.  Only in the "exceptional" case will

3    another jurisdiction be entitled to exercise such sweeping powers as the use of its

4    adjudicatory authority to decide matters unrelated to its citizens or to affairs

5    within its borders.  *Id.* at 761 n.19.  As the Court explained earlier in *Goodyear*:  "A

6    corporation's 'continuous activity of some sorts within a state ' . . . 'is not enough

7    to support the demand that the corporation be amenable to suits unrelated to

8    that activity.'" 131 S. Ct. at 2856 (quoting *Int'l Shoe*, 326 U.S. at 318).

9           Although Brown urges that the test is not so restrictive, in our view

10   *Daimler* established that, except in a truly "exceptional" case, a corporate

11   defendant may be treated as "essentially at home" only where it is incorporated

12   or maintains its principal place of business—the "paradigm" cases.  *See In re*

13   *Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 39–41 (2d Cir. 2014)

14   (recognizing restrictions voiced by Supreme Court in *Daimler*).  And at least three

15   of our sister circuits have agreed with this reading of *Daimler*.  *See Kipp v. Ski*

16   *Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (noting *Goodyear* and *Daimler*'s

17   "stringent criteria"); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014)

18   ("*Daimler* makes clear the demanding nature of the standard for general personal

1   jurisdiction over a corporation."), *cert denied*, 135 S. Ct. 2310 (2015); *Monkton Ins.*

2   *Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting, in light of *Daimler*,

3   that it is "incredibly difficult to establish general jurisdiction in a forum other

4   than the place of incorporation or principal place of business").[7]

5       Brown thus bears a heavy burden when she asserts that Lockheed's

6   presence in Connecticut presents such an "exceptional" case.

7   **B.    Lockheed's activities in Connecticut**

8       After jurisdictional discovery, Brown assembled the following undisputed

9   facts about Lockheed's operations in Connecticut.

10      The company has had a physical presence in the Constitution State for

11  over three decades, since 1982.  It obtained a formal certificate to do business in

12  the state in 1995.  Significantly, it does not own property in the state, but it has

13  leased the same 9,000 square foot building in New London since at least 1997,

14  and has run operations at three other leased locations in the jurisdiction from

15  2008 through 2012 (the period identified by the District Court as the focus of

---

[7] Offsetting the apparent harshness of this rule's effects, the Court explained its expectation that its ruling, while restrictive of general jurisdiction, still left plaintiffs with an adjudicatory forum by recourse to specific jurisdiction of courts in states bearing a relationship to the cause of action.  *See Daimler*, 134 S. Ct. at 758 n.10.

1  jurisdictional discovery).[8]  Lockheed has employed between approximately 30

2  and 70 workers in the state in the years from 2008 through 2012.[9]  Over the same

3  period, Lockheed derived about $160 million in revenue for its Connecticut-

4  based work, and paid Connecticut taxes on that revenue.

5       Citing these facts and pointing also to its registration to transact business

6  (of which more, below), Brown argues that Lockheed's conduct in Connecticut

7  was both continuous and systematic, rendering it amenable to the general

8  jurisdiction of the state's courts.  As legal support, Brown relies primarily on this

9  Court's decision in *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000),

[8] We have held that "[i]n general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569–70 (2d Cir. 1996).  Although we established this rule pre-*Daimler*, when the "continuous and systematic" standard governed exercise of general jurisdiction, *see id.*, we see nothing in *Daimler* to suggest a different relevant time frame for our jurisdictional analysis here.  We make this observation, still, in light of Lockheed's $9 billion acquisition—well after the filing of the instant complaint—of a large Connecticut-based business, Sikorsky Aircraft.  *See* Mara Lee, *Lockheed Martin Finalizes Sikorsky Purchase*, HARTFORD COURANT (Nov. 6, 2015), http://www.courant.com/business/hc-sikorsky-lockheed-martin-20151106-story.html (last visited Jan. 25, 2016).  Sikorsky Aircraft operations have long been based in Connecticut and owned by United Technologies Corporation, also based in Connecticut.  Nonetheless, and without deciding the question (which the parties have not briefed), we see no reason to believe that the acquisition would alter our conclusion that this is not an "exceptional case" such as would merit setting aside *Daimler*'s paradigm cases.

[9] During 2008 through 2012, it also carried workers' compensation insurance on its Connecticut employees, and defended eight lawsuits in the state.

and the Supreme Court's 1984 decision in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).  Proceeding further in this vein, Brown asserts that "[c]ourts commonly find the existence of continuous and systemic contacts when there is evidence that the defendant has established an office or facility in the forum state," and identifies District Court decisions from around the country in support.[10]  Appellant's Br. at 25–26.  Looking as well at the "exceptional case" carve-out in *Daimler*, Brown argues further that, because Lockheed has had *some* kind of physical presence in Connecticut for "at least 30 years," Appellant's Br. at 27, its contacts place it among those "exceptional cases" in which a foreign corporation is "essentially at home" in a state other than its state of incorporation or principal place of business.

Brown had a stronger, if not ultimately persuasive, argument on this score in 2012, when suit was filed.  At that time, the Court's 2011 decision in *Goodyear* seemed to have left open the possibility that contacts of substance, deliberately undertaken and of some duration, could place a corporation "at home" in many

---

[10] Brown cites *Erb v. Roadway Express, Inc.*, No. 05-0011, 2005 WL 1215955 (M.D. Pa. Apr. 19, 2005); *Inversiones Inmobiliarias el Bosque, S.A. v. Transtainer Corp.*, No. 03-0962, 2004 WL 325615 (E.D. La. Feb. 18, 2004); *Sys. Material Handling Co. v. Greenstein*, 84 F. Supp. 2d 1203 (D. Kan. 2000); *WMW Mach., Inc. v. Werkzeugmaschinenhandel GmbH IM Aufbau*, 960 F. Supp. 734 (S.D.N.Y. 1997); *United States v. Nippon Paper Indus. Co.*, 944 F. Supp. 55 (D. Mass. 1996), *rev'd on other grounds*, 109 F.3d 1 (1st Cir. 1997); *Lane v. Vacation Charters, Ltd.*, 750 F. Supp. 120 (S.D.N.Y. 1990).

1    locations.  But *Daimler*, decided in 2014, considerably altered the analytic

2    landscape for general jurisdiction and left little room for these arguments.

3    Emphasizing that "[i]t is one thing to hold a corporation answerable for

4    operations in the forum State, quite another to expose it to suit on claims having

5    no connection whatever to the forum State," *Daimler*, 134 S. Ct. at 761 n.19

6    (citation omitted), the Court cautioned that a corporation "that operates in many

7    places can scarcely be deemed at home in all of them."  *Id.* at 762 n.20.  And so,

8    when a corporation is neither incorporated nor maintains its principal place of

9    business in a state, mere contacts, no matter how "systematic and continuous,"

10   are extraordinarily unlikely to add up to an "exceptional case."

11         Indeed, the *Daimler* Court cited only its decision in *Perkins v. Benguet*

12   *Consolidated Mining Co.*, 342 U.S. 437 (1952), as an example of an "exceptional

13   case."  *Daimler*, 134 S. Ct. at 761 n.19.  In *Perkins*, the defendant company's

14   principal place of business was—temporarily, because of wartime

15   circumstances—in Ohio, where it was sued.  *See Perkins*, 342 U.S. at 419–20.  The

16   Court deemed the place of service in those unusual circumstances "a surrogate

17   for the place of incorporation or head office."  *Daimler*, 134 S. Ct. at 756 n.8

18   (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate:*

1    *A Suggested Analysis*, 79 HARV. L. REV. 1121, 1144 (1966)).  On that basis alone, it

2    permitted the Ohio court's exercise of general jurisdiction over the company.

3    Lockheed's contacts with Connecticut fall far short of establishing a "surrogate

4    principal place of business" such as the Court found in *Perkins*.

5         *Wiwa* and the cited district court decisions preceded both *Goodyear* and

6    *Daimler*, and thus offer little support today for Brown's position.  Further, the

7    *Daimler* Court instructed that in assessing the extent of a corporation's contacts in

8    a state for general jurisdiction purposes, we must assess the company's local

9    activity not in isolation, but *in the context of the company's overall activity*:  the

10   general jurisdiction inquiry "does not focus solely on the magnitude of the

11   defendant's in-state contacts," but "calls for an appraisal of a corporation's

12   activities in their entirety, nationwide and worldwide."  *Daimler*, 134 S. Ct. at 762

13   n.20 (alterations and internal quotation marks omitted).

14        Applying that directive, we see that Lockheed's business in Connecticut,

15   while not insubstantial, constitutes only a very small part of its portfolio.  For

16   example, in each of the years from 2008 through 2012, when suit was filed, its

17   Connecticut-based employees represented less than 0.05% of Lockheed's full

18   workforce.  The $160 million in gross revenue that Lockheed derived from its

1    Connecticut operations over five years never exceeded 0.107% of the company's

2    total annual revenue.  These shares are far less than those associated with the

3    subsidiary and attributed to the German parent for the purposes of the Supreme

4    Court's analysis in *Daimler*.  See *id.* at 752 (noting subsidiary's California sales

5    made up 2.4% of Daimler's worldwide sales).

6         Brown observes that in *Daimler,* the Supreme Court "addressed personal

7    jurisdiction in an international context that is not present in this case," intimating

8    that the *Daimler* analysis should not govern this case.  Appellant's Br. at 29.  It is

9    true that the ruling was made in the context of a foreign-country corporation and

10    a United States-based subsidiary as well as non-citizen plaintiffs.  But the Court

11    in *Daimler* simply did not limit its jurisdictional ruling as Brown suggests:  for

12    example, it made explicit reference to "sister-state" corporations and drew no

13    distinction in its reasoning between those and foreign-country corporations.  *See,*

14    *e.g.,* 134 S. Ct. at 754 ("[A] court may assert general jurisdiction over foreign

15    (*sister-state* or foreign-country) corporations . . . when their affiliations with the

16    State are so continuous and systematic as to render them essentially at home in

17    the forum State."  (internal quotation marks omitted) (emphasis added)); *id.* at

18    773 n.12 (Sotomayor, J., concurring in the judgment) ("[T]he principle announced

1    by the majority would apply equally to preclude general jurisdiction over a U.S.

2    company that is incorporated and has its principal place of business in another

3    U.S. State.").  And post-*Daimler*, we so held.  *See In re Roman Catholic Diocese*, 745

4    F.3d at 40–41 (observing that, in *Daimler*, "[t]he Supreme Court explicitly

5    rejected . . . an expansion of general jurisdiction" that would result in "*foreign-*

6    *state*" and foreign-country corporations [being] found 'at home' essentially

7    anywhere, based on the briefest and most trivial of contacts" (emphasis added)).

8    We perceive no sound basis for restricting *Daimler*'s (or *Goodyear*'s*)* teachings to

9    suits brought by international plaintiffs against international corporate

10    defendants.

11        Finally, Brown argues that, notwithstanding the principles articulated in

12    *Daimler*, Connecticut courts may exercise general jurisdiction over Lockheed

13    because such an exercise would be consistent with the "reasonableness factors"

14    set forth in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*,

15    480 U.S. 102 (1987).  But *Asahi* concerned specific, not general jurisdiction.  *See*

16    *Daimler*, 134 S. Ct. at 762 n.20 (observing that the "multipronged reasonableness

17    check . . . articulated in *Asahi* . . . [was not] a free-floating test.  Instead, the check

18    was to be essayed when *specific* jurisdiction is at issue." (emphasis in original)).

1    As the *Daimler* Court observed in rejecting the same argument, "[w]hen a

2    corporation is genuinely at home in the forum State . . . [the *Asahi*] second-step

3    inquiry would be superfluous."  *Id.*  Accordingly, this argument has no purchase

4    here.

5           In short:  Lockheed's contacts with Connecticut fall far short of the

6    relationship that Due Process requires, under *Daimler* and *Goodyear,* to permit the

7    exercise of general jurisdiction over Lockheed by Connecticut courts.  Indeed,

8    given that it is common for corporations to have presences in multiple states

9    exceeding that of Lockheed in Connecticut, general jurisdiction would be quite

10   the *opposite* of "exceptional" if such contacts were held sufficient to render the

11   corporation "at home" in the state.

12   **II.     The import of Lockheed's registration in Connecticut**

13          In 1995, Lockheed registered to do business in Connecticut.  It appointed

14   an agent for service of process, and its agent was served with process in this suit

15   on October 11, 2012.  Brown contends that, by these actions, Lockheed consented

16   to the jurisdiction of Connecticut courts for all purposes, including this suit.

17          Connecticut courts have left no doubt (as the District Court emphasized

18   and as Judge Friendly admonished, above) that the state's trial courts may

1    exercise jurisdiction over a foreign defendant "only if the defendant's intrastate

2    activities meet the requirements *both* of [the state's long-arm] statute and of the

3    due process clause of the federal constitution."  *Brown*, 19 F. Supp. 3d at 393

4    (quoting *Thomason v. Chem. Bank*, 234 Conn. 281, 285–86 (1995) (emphasis added)

5    (alteration in original)).  We thus determine first whether the state law permits

6    the trial court's exercise of jurisdiction over the defendants; "[o]nly if personal

7    jurisdiction has attached under state law do we reach the constitutional question

8    of whether due process is offended thereby."  *U.S. Trust Co. v. Bohart*, 197 Conn.

9    34, 39 (1985) (Peters, *C.J.*).  Important here, Connecticut recognizes that personal

10   jurisdiction "may be created through consent or waiver."  *Id.* (citing *Bauxites*, 456

11   U.S. at 703–04).

12        Brown relies primarily on a 2009 decision of the Connecticut Appellate

13   Court and the Supreme Court's 1917 ruling in *Pennsylvania Fire* to establish her

14   position that, by registering and maintaining an agent for service of process in

15   the state, Lockheed actually consented to the exercise of general personal

16   jurisdiction over it.  She further argues that the constitutional due process

17   guarantee has been satisfied by Lockheed's consent.  For its part, Lockheed

18   denies that by registering to do business in Connecticut it submitted to the

1   general jurisdiction of the Connecticut courts.  It asserts, further, that—as far as

2   reported cases reveal—no Connecticut court has ever exercised general

3   jurisdiction over an out-of-state corporation on a matter brought by an out-of-

4   state plaintiff who attempts to assert a cause of action arising out-of-state.

5        For the reasons discussed below, we conclude that Lockheed has the better

6   of the argument.

7        **A.    Registration as a basis for general jurisdiction:  some background**

8        In *Pennoyer v. Neff*, 95 U.S. 714 (1878), the Supreme Court established that a

9   state's jurisdiction reached only as far as its geographic boundaries.  *See id.* at 722

10  ("[N]o State can exercise direct jurisdiction and authority over persons or

11  property without its territory.").  Following this principle, "in the absence of a

12  waiver[,] the presence of the defendant within the state was a necessary

13  prerequisite to a court's asserting personal jurisdiction over him."  4 Wright,

14  Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1064 (4th ed. 2010).

15       The need for a defendant's physical presence in a state fit awkwardly,

16  however, with 19th century ideas about corporations.  Corporations, of course,

17  are intangible and artificial entities that exist only because of their recognition by

18  the law of a particular jurisdiction—usually, in the United States, a state.  In the

27

19th century, the Supreme Court accordingly took the view that a corporation was "present" only in its state of incorporation.  *See Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519, 588 (1839) ("[A] corporation can have no legal existence out of the boundaries of the sovereignty by which it is created.  It exists only in contemplation of law, and by force of the law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence.").  As a leading treatise explains, "[T]he then prevalent notion of territorial jurisdiction simply would not permit the assertion of jurisdiction in states in which a corporation was engaged in business, no matter how extensive that business might be."  Wright, Miller & Kane, *supra*, § 1066; *see also* Charles W. "Rocky" Rhodes, *Nineteenth Century Personal Jurisdiction Doctrine in a Twenty-First Century World*, 64 FLA. L. REV. 387, 436 (2012) ("Corporate registration and appointment statutes first appeared in the mid-nineteenth century in response to the common law understanding that a corporation had no existence outside its state of incorporation.").

Business registration statutes such as Connecticut's were enacted primarily to allow states to exercise jurisdiction over corporations that, although not formed under its laws, were transacting business within a state's borders and

28

thus potentially giving rise to state citizens' claims against them.  *See Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 408–09 (1929) ("The purpose of state statutes requiring the appointment by foreign corporations of agents upon whom process may be served is primarily to subject them to the jurisdiction of local courts *in controversies growing out of transactions within the state*." (emphasis added)); *Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 215 (1921) ("The purpose in requiring the appointment of such an agent is primarily to secure local jurisdiction *in respect of business transacted within the State*." (emphasis added)).  The jurisdiction thus created—subject to satisfaction of certain procedural and other requirements—is now generally known as "specific" personal jurisdiction.

Business registration statutes therefore conditioned a corporation's authority to do business in a state on its maintenance of an appointed agent within the state to accept service.  Pointing to the acceptance of service by an in-state agent appointed by the corporation, a state could tenably argue that the corporation had voluntarily consented to jurisdiction there and that, notwithstanding *Earle*, it was "present" in the state because it maintained an agent there.  *See, e.g.*, Meir Feder, *Goodyear, "Home," and the Uncertain Future of*

29

1    *Doing Business Jurisdiction*, 63 S.C. L. Rᴇᴠ. 671, 682 (2012) (noting "courts

2    developed several overlapping theories to harmonize [] assertions of jurisdiction

3    with the *Pennoyer* framework," including that "a corporation that was

4    sufficiently active in the forum state was thereby 'present' . . . or could be

5    deemed to have implicitly consented to jurisdiction there"); von Mehren &

6    Trautman, *supra*, at 1142 (recognizing that "the formulas current before

7    *International Shoe* [] emphasized consent, presence, and doing business" (footnote

8    omitted)).

9         The Supreme Court upheld the exercise of jurisdiction under the business

10   registration statutes on a consent analysis similar to, but narrower than, that now

11   put forward by Brown.[11]  At the time when corporations first began to operate in

12   multiple jurisdictions, the prevailing view was that a corporation had no

13   inherent right to do business in a foreign state since it was not a "citizen" of that

14   state within the meaning of the Privileges and Immunities Clause in Article IV.

15   *See* Wright, Miller & Kane, *supra*, § 1066.  A state could thus "impose as a

---

[11] The Supreme Court also upheld registration statutes as a basis for exercising jurisdiction over non-resident corporations on a theory that a foreign corporation was "present," or "doing business" within the state.  *See, e.g., Int'l Harvester Co. of Am. v. Kentucky*, 234 U.S. 579, 589 (1914) ("We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business . . . .").

1    condition upon which a foreign corporation shall be permitted to do business . . .

2    that in any litigation *arising out of its transactions in the State*, it will accept as

3    sufficient the service of process on its agents or persons specifically designated."

4    *St. Clair v. Cox*, 106 U.S. 350, 356 (1882) (emphasis added); *see also Lafayette Ins. Co.*

5    *v. French*, 59 U.S. (18 How.) 404, 407 (1855) ("A corporation created by Indiana

6    can transact business in Ohio only with the consent . . . of the latter State.  This

7    consent may be accompanied by such conditions as Ohio may think fit to

8    impose . . . ." (citation omitted)).

9          A corporation's "consent" through registration has thus always been

10    something of a fiction, born of the necessity of exercising jurisdiction over

11    corporations outside of their state of incorporation:  Consent was perhaps more

12    of a promise, fairly extracted, to appear in state court on actions by a state's

13    citizens arising from the corporation's operations in the jurisdiction.  *See St. Clair*,

14    106 U.S. at 356 (upholding registration statute because a state may "*impose . . .*

15    *condition*[s]" on the privilege of "do[ing] business within her limits" (emphasis

16    added)); *Lafayette*, 59 U.S. (18 How.) at 407 ("It cannot be deemed unreasonable

17    that the State of Ohio should endeavor to secure to its citizens a remedy . . . nor

18    that proper means should be used to *compel* foreign corporations . . . to answer

1    [in Ohio] *for the breach of their contracts . . . there made and to be performed*."

2    (emphasis added)).[12]

3    **B.    The Connecticut registration statute and related provisions**

4    The current Connecticut registration statute generally requires that

5    "foreign corporation[s]" desiring to "transact business" in the state obtain a

6    certificate of authority from the Secretary of State to do so.  Conn. Gen. Stat.

7    § 33-920.  In a separate provision, Connecticut law requires that a foreign

8    corporation authorized to transact business "continuously maintain . . . [a]

9    registered office . . . and [] a registered agent" in the state, and provides that the

10   company may elect to have the Secretary of State of Connecticut serve as that

---

[12] With similar concerns and aims, states also provided a legal mechanism to serve a corporation doing business in a state but which had *not* appointed an in-state agent, in violation of that state's registration and agent-appointment statutes.  For example, a state might permit a plaintiff instead to serve the secretary of state, and deem the corporation to have impliedly consented to such service.  *See Simon v. S. Ry. Co.*, 236 U.S. 115, 117 (1915) (construing Louisiana statute which gave such service on secretary of state "the same validity as if such corporation had been personally served" (internal quotation marks omitted)).  The Supreme Court held this service upon an involuntarily designated agent to be effective only for causes of action arising out of the corporation's business in that state—i.e., only to acquire specific jurisdiction.  *See id*. at 130–32; *see also Old Wayne Mut. Life Ass'n v. McDonough,* 204 U.S. 8, 22 (1907) ("[B]y going into Pennsylvania, without first complying with its statute, the defendant association may be held to have assented to the service upon the insurance commissioner of process in a suit . . . in respect of business transacted by it in that commonwealth, [but] such assent cannot properly be implied where . . . the business was not transacted in Pennsylvania.").

agent.  *Id.* § 33-926.  A corporation that transacts business in Connecticut without a certificate of authority may not bring suit in the state, and will be liable for a monthly fine and related penalties in addition to the fees and taxes that it would have had to pay had it properly registered.  *Id.* § 33-921(a), (d).

Section 33-929, "Service of process on foreign corporations," is part of Connecticut's long-arm statute.  As relevant here, it provides:

> The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation.

*Id.* § 33-929(a).  A corporation that transacts business in Connecticut *without* a certificate of authority is expressly made subject to suit in the state for "any cause of action arising out of such business."  *Id.* § 33-929(e).  The statute further advises that *every* foreign corporation is subject to suit in Connecticut by certain persons on certain matters, as follows:

> by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:  (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise . . . ; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable

33

expectation that such goods are to be used or consumed in this state . . . ; or (4) out of tortious conduct in this state . . . .

*Id*. § 33-929(f).  After addressing in subsection (g) certain situations in which it permits service to be made on a corporation at its principal office, § 33-929 closes with subsection (h), which advises "This section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation."  *Id*. § 33-929(h).

The statute thus provides for service of process on foreign corporations, and appears designed to confer what can fairly be characterized as specific jurisdiction in primarily two provisions:  § 33-929(e) (unregistered corporation "subject to suit" in the state with respect to causes of action "arising out of" its business in the state) and § 33-929(f) (corporations "subject to suit in the state" on listed causes of action related to in-state matters).  Section 33-929 nowhere expressly provides that foreign corporations that register to transact business in the state shall be subject to the "general jurisdiction" of the Connecticut courts or directs that Connecticut courts may exercise their power over registered corporations on any cause asserted by any person.  Indeed, it appears to limit the ability of *out-of-state* plaintiffs to proceed against foreign corporations registered in Connecticut even with respect to certain listed matters bearing a connection to

1    Connecticut.  *See id*. § 33-929(f) (allowing suit only by residents of Connecticut

2    and "person[s] having a usual place of business in this state").

3        What it does provide is that the registered agent of a foreign corporation

4    "is the [] agent for service of process, notice or demand *required or permitted by law*

5    *to be served* on the foreign corporation."  *Id*. § 33-929(a) (emphasis added).  To our

6    reading, this provision neither issues an open invitation nor expressly limits the

7    matters as to which process may be served.  Nor does it speak to the relationship

8    between process so served and the state courts' jurisdiction.[13]  The statute simply

9    does not describe what process may be "permitted by law."

10       **C.      Connecticut judicial interpretations of the statute**

11       The Connecticut Supreme Court has yet to give a definitive interpretation

12   of the jurisdictional import of Connecticut's registration and agent-appointment

13   statutes.

14       But several years before the United States Supreme Court's decision in

15   *Daimler*, the Connecticut Appellate Court accorded a surprisingly broad

16   interpretation to the state's registration statute, one that unmistakably raises due

---

[13] Under Federal Rule of Civil Procedure 4(k), "Territorial Limits of Effective Service," service of process does not by itself confer personal jurisdiction over a defendant:  "In [g]eneral," the defendant must also be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," unless otherwise authorized by federal statute or certain other joinder provisions are satisfied.  Fed. R. Civ. P. 4(k)(1).

35

process and (as Judges Friendly and Goodrich noted) other federal constitutional concerns.  In *Talenti v. Morgan & Brother Manhattan Storage Co.*, 968 A.2d 933 (Conn. App. Ct. 2009), *certification denied*, 292 Conn. 908 (2009),[14] the Connecticut Appellate Court declared that registering to do business in the state means submitting to the general jurisdiction of the state courts:

> [W]hen a foreign corporation . . . obtain[s] a certificate of authority and . . . authoriz[es] a public official to accept service of process, it has consented to the exercise of jurisdiction over it by the courts of this state. *This consent is effective even though no other basis exists for the exercise of jurisdiction over the corporation.*  Such a corporation has purposely availed itself of the privilege of conducting activities within this state, thus invoking the benefits and protections of its laws. . . .  Therefore, the defendant has voluntarily consented to the personal jurisdiction of it by the courts of this state.

*Id.* at 940–41 (alterations, citations, footnotes, and internal quotation marks omitted; emphasis added).  It further concluded in a footnote that because "the defendant has consented to jurisdiction, the exercise of jurisdiction by the court does not violate due process" and "the court does not need to undertake an analysis of any constitutional due process issues."  *Id.* at 941 n.14.

The language of the *Talenti* court, while relying in part on commentary

---

[14] In Connecticut, "it is well established that the denial of a petition for certification to appeal does not signify that [the Connecticut Supreme Court] approves of or affirms the decision or judgment of the Appellate Court."  *Hylton v. Gunter*, 313 Conn. 472, 477 n.5 (2014) (internal quotation marks omitted).

1    drawn from an earlier Appellate Court decision,[15] appears to us to have been

2    significantly broader than the factual setting before it warranted:  among other

3    factors, the corporate defendant in *Talenti* was alleged to have a principal place of

4    business in Connecticut, and the corporation's vice-president had been served at

5    his home in Connecticut, either of which alone was sufficient under Connecticut

6    law to provide jurisdiction.  *See id*. at 941 (noting that "in an action against a

7    foreign corporation, service of process may be made on its vice president" and

8    that "[t]he court . . . acquired personal jurisdiction" in this manner).  Finally, the

9    cause of action at issue in *Talenti* appears to have arisen in

10   Connecticut—providing yet another basis for exercising specific jurisdiction over

11   the corporate defendant.  *See id.* at 935.  But at least one Connecticut trial court

12   has duly taken the Appellate Court (including its footnote) at its word, exercising

13   general jurisdiction over corporate defendants on the basis of their registration to

14   do business in the state, without further analysis.[16]

---

[15] In support, the *Talenti* court cited the earlier decision of the same intermediate appellate court in *Wallenta v. Avis Rent A Car System, Inc.*, 522 A.2d 820 (Conn. App. Ct. 1987).  But the *Wallenta* court made clear that its commentary was subject to "the next question to be resolved":  "whether the assertion of such personal jurisdiction offends due process."  *Id.* at 824.  The *Talenti* court's dismissal of the constitutional question was thus less than fully supported.

[16] *E.g.*, *Lake Road Tr., Ltd. v. ABB, Inc.*, No. 04-106016502, 2011 WL 1734458, at *6 (Conn. Super. Ct. Apr. 11, 2011) (commenting, when defendant had registered to do business in

### D.    A different reading, and federal constitutional concerns

The *Talenti* court's dicta have been questioned in light of federal due

process (and other) concerns by at least one federal district court in the state,

however.  *See WorldCare Ltd. v. World Ins. Co.*, 767 F. Supp. 2d 341 (D. Conn. 2011).

In our view, good reason supports the question.  Like that District Court, we are

inclined respectfully to believe that the Connecticut Appellate Court's comments

on the effect of registration do not apply outside of the facts there presented.  We

hazard that the Appellate Court erred in reading the registration and agent

appointment statutes as constituting corporate consent to the exercise of general

jurisdiction by the Connecticut state courts, and—more within this Court's

ordinary domain—that it also erred in casually dismissing related federal due

process concerns in a brief footnote.[17]

We hold these views for several reasons.  To begin with, although the

Connecticut registration statute does not expressly limit the matters as to which

---

Connecticut and appointed an agent for service:  "[S]ince the defendant consented to jurisdiction, the exercise of jurisdiction does not violate due process, [and] this court undertakes no analysis of constitutional due process issues").

[17] We undertake the task of interpreting Connecticut law carefully, of course, respectfully mindful that the Connecticut Supreme Court has the last word on issues of state law, and aware of the certification procedures that are available to us to seek that last word.  Because the questions that we address have such significant federal constitutional boundaries, however, we have determined not to certify the state statutory question in this case.

1   an authorized agent may accept service of process, neither does it contain

2   express language alerting the potential registrant that by complying with the

3   statute and appointing an agent it would be agreeing to submit to the general

4   jurisdiction of the state courts.  Rather, reading the entirety of §§ 33-926 and

5   33-929, we think it entirely possible that the Connecticut state legislature

6   envisioned that foreign corporations that registered to do business in the state

7   would be submitting to jurisdiction over only matters arising from the corporate

8   transaction of business within the state, not all matters no matter where arising.

9   *See United States v. DiCristina*, 726 F.3d 92, 96 (2d Cir. 2013) (noting we should not

10   construe individual sections of a statute in "isolation," but "look to the

11   provisions of the whole law" (internal quotation marks omitted)).  After all, the

12   state-related matters are the types of matters listed in the statute as being subject

13   to the jurisdiction of the state courts, and those are the types of matters for which

14   states have traditionally sought to ensure their citizens a forum.  *See ante* 28–31.

15       Moreover, if the mere maintenance of a registered agent to accept service

16   under § 33-926 effected an agreement to submit to general jurisdiction, it seems

17   to us that the specific jurisdiction provisions of the long-arm statute, § 33-929 (for

18   registered corporations), wouldn't be needed except with regard to *un*registered

1   corporations:  Registered corporations would be subject to jurisdiction with

2   regard to all matters simply by virtue of process duly served on its appointed

3   agent.  And the restrictions imposed by § 33-929(f) on the class of plaintiffs

4   entitled to avail themselves of the long-arm statute would seem to be

5   meaningless, since for registered corporations the agent's mere availability to

6   receive process would suffice.[18]

7        Finally, as noted above, the statute provides that authority given the

8   appointed agent to accept service need go only so far as accepting service of

9   "process, notice or demand" that is "required or permitted by law" to be served

10  on the foreign corporation.  This phrase suggests some limitation in accordance

11  with law:  we see no basis for excluding constitutional due process limitations

12  from an inquiry into what is "permitted by law."

13       The inclusion of this phrase ("permitted by law") and the omission of any

14  specific reference to "general jurisdiction," to our reading, differentiates

15  Connecticut's registration statute from others that have been definitively

16  construed to convey a foreign corporation's consent to general jurisdiction.  For

17  example, the Pennsylvania statute so construed by the Third Circuit provided in

---

[18] The management of actions against unregistered corporations is addressed in § 33-929(e), which provides specific jurisdiction over those noncompliant entities.

1     relevant part that "qualification as a foreign corporation under the laws of this

2     Commonwealth" shall "constitute a sufficient basis of jurisdiction to enable the

3     tribunals of this Commonwealth to exercise *general personal jurisdiction* over such

4     person." *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991) (quoting 42 Pa.

5     Cons. Stat. Ann. § 5301 (Purdon 1990) (emphasis added)).  The Connecticut

6     statute, in contrast, gives no notice to a corporation registering to do business in

7     the state that the registration might have the sweeping effect that the *Talenti* court

8     envisioned.

9          Thus, when Lockheed registered to transact business in Connecticut in

10     1995, the statute was neither explicit about the scope of jurisdiction conferred,

11     nor had there issued an authoritative state judicial decision construing the

12     statute:  We have been directed to no basis on which the corporation should have

13     understood that, by registering and appointing an agent, it could be haled into

14     Connecticut court on non-Connecticut based actions.  On the contrary, the history

15     of such statutes suggests that assent only to specific jurisdiction is what the

16     statute required.[19]

---

[19] Nor in our view would the sweeping *Talenti* interpretation, issued some fourteen years after Lockheed registered, have provided reason for an informed company to terminate its registration in the state.  As noted, its commentary is largely dicta; it does not reflect a detailed legislative analysis; it is not the decision of the state's highest court;

41

1    In any event, we can say that the analysis that now governs general

2    jurisdiction over foreign corporations—the Supreme Court's analysis having

3    moved from the "minimum contacts" review described in *International Shoe* to

4    the more demanding "essentially at home" test enunciated in *Goodyear* and

5    *Daimler*—suggests that federal due process rights likely constrain an

6    interpretation that transforms a run-of-the-mill registration and appointment

7    statute into a corporate "consent"—perhaps unwitting—to the exercise of general

8    jurisdiction by state courts, particularly in circumstances where the state's

9    interests seem limited.[20]

10    **E.    *Pennsylvania Fire***

11    In urging her position to the contrary—that her construction of

---

and it does not seriously address any of the due process or other constitutional concerns that finding such a broad "consent" implicit in registration and appointment might raise.

[20] We do not believe that the Supreme Court's passing comment in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988), about the effect in Ohio of appointment of an agent, undermines our conclusion.  *Bendix* involved an Ohio law tolling the statute of limitations against foreign corporations that designate no agent for service of process within the state.  The Court held that the law violated the Commerce Clause.  As a predicate to its analysis, the Court accepted without discussion the proposition that "[t]o be present in Ohio, a foreign corporation must appoint an agent for service of process, which operates as consent to the general jurisdiction of the Ohio courts."  *Id*. at 889.  After the Court's decision, however, the Sixth Circuit held that, notwithstanding "dicta from *Bendix*," Ohio did not interpret the relevant provisions of the Ohio Code to operate as consent to general jurisdiction.  *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 328–29 (6th Cir. 1993).  We therefore give no special weight to the mention.

42

1    Connecticut law raises no potential or unresolved constitutional issues—Brown

2    relies heavily on the Supreme Court's 1917 decision in *Pennsylvania Fire Insurance*

3    *Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917).  There, a

4    Pennsylvania company insured buildings located in Colorado under a policy

5    issued in Colorado to the Arizona corporation that owned the property.  Seeking

6    to recover on the policy for losses suffered on the Colorado property, the Arizona

7    corporation brought suit against the insurer in Missouri, where the insurer had

8    obtained a license to conduct business.  In effectuating its registration to do

9    business there, the insurer had filed with the Missouri insurance superintendent

10   "a power of attorney consenting that service of process upon the superintendent

11   [of insurance] should be deemed personal service upon the company so long as it

12   should have any liabilities outstanding in the state."  *Id.* at 94.  The Missouri high

13   court construed this statutory power of attorney to render the Arizona company's

14   service on the superintendent effective against the insurer for causes of action

15   arising outside the state as well as those arising within.  *Id.* at 95.

16       The Supreme Court agreed.  Writing for the Court, Justice Holmes rejected

17   the insurer's argument that due process concerns prevented the state court's

18   exercise of personal jurisdiction over it.  He explained:

43

The defendant had executed a power of attorney that made service on the superintendent the equivalent of personal service. . . .  If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt.  It did appoint an agent in language that rationally might be held to go to that length.  The language has been held to go to that length, and the construction did not deprive the defendant of due process of law even if it took the defendant by surprise, which we have no warrant to assert. . . .

. . . [W]hen a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts.

*Id.* at 95–96 (citation omitted).

The Missouri Supreme Court having held that the statute applied as plaintiff suggested, Justice Holmes accepted the interpretation and independently noted no offense to due process in the state courts' exercise of personal jurisdiction over the company.  *Id.*

Brown contends that, despite the doctrinal developments that followed it, *Pennsylvania Fire* establishes general jurisdiction in state courts for all corporations that register to do business and appoint an agent in a state.  *Daimler*, she claims, has no due process implications when a party has consented to jurisdiction.  Urging in this vein that *Daimler* has no bearing on *Pennsylvania Fire*, she notes that *Daimler* mentions "consent" only once, when it describes the

Court's general jurisdiction decision in *Perkins* as "the textbook case of general jurisdiction appropriately exercised over a foreign corporation that *has not consented to suit in the forum*."  *Daimler*, 134 S. Ct. at 755–56 (internal quotation marks omitted) (emphasis added).

But we believe that *Pennsylvania Fire* is now simply too much at odds with the approach to general jurisdiction adopted in *Daimler* to govern as categorically as Brown suggests; in our view, the Supreme Court's analysis in recent decades, and in particular in *Daimler* and *Goodyear*, forecloses such an easy use of *Pennsylvania Fire* to establish general jurisdiction over a corporation based solely on the corporation's registration to do business and appointment of an agent under a state statute lacking explicit reference to any jurisdictional implications.[21]

Thus, in *Daimler*, the Supreme Court described the 19th century territorial approach to personal jurisdiction embodied in *Pennoyer* as having "yielded to a

_____

[21] Lending support to this approach, we observe that Supreme Court citations to *Pennsylvania Fire* since *International Shoe* are cursory and far between, as are the citations to the Court's pre-*International Shoe* decisions reaffirming *Pennsylvania Fire*.  *See, e.g., Olberding v. Ill. Cent. R.R. Co.*, 346 U.S. 338, 341–42 (1953) (deciding whether individual defendant had impliedly consented to venue and distinguishing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939)); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 & n.6 (1952); *cf. Forest Labs., Inc. v. Amneal Pharm. LLC*, No. 14-508, 2015 WL 880599, at *8–9 & n.9 (D. Del. Feb. 26, 2015) (collecting Supreme Court authority post *International Shoe* and concluding that it "suggests" only "by analogy" that the Court regards *Pennsylvania Fire* and progeny as good law), *report and recommendation adopted*, No. 14-508, 2015 WL 1467321 (D. Del. Mar. 30, 2015).

less rigid understanding" of personal jurisdiction, "spurred by 'changes in the

technology of transportation and communication, and the tremendous growth of

interstate business activity.'"  *Id*. at 753 (quoting *Burnham v. Superior Court of Cal.,*

*Cty. of Marin*, 495 U.S. 604, 617 (1990) (opinion of Scalia, J.)).  It cabined the

impact of two cases of the *Pennsylvania Fire* era,[22] relied on in *Perkins*, as "indeed

uph[olding] the exercise of general jurisdiction based on the presence of a local

office, which signaled that the corporation was 'doing business' in the forum,"

and warned that "unadorned citations to [] cases . . . decided in the era

dominated by *Pennoyer*'s territorial thinking should not attract heavy reliance

today."  *Id*. at 761 n.18 (internal cross reference omitted).  We interpret that

warning to embrace *Pennsylvania Fire*.

So here, we believe that the holding in *Pennsylvania Fire* cannot be divorced

from the outdated jurisprudential assumptions of its era.  The sweeping

interpretation that a state court gave to a routine registration statute and an

accompanying power of attorney that *Pennsylvania Fire* credited as a general

"consent" has yielded to the doctrinal refinement reflected in *Goodyear* and

*Daimler* and the Court's 21st century approach to general and specific jurisdiction

---

[22] *See Barrow S.S. Co. v. Kane,* 170 U.S. 100 (1898); *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259 (1917) (Cardozo, J.).

1   in light of expectations created by the continuing expansion of interstate and

2   global business.

3       **F.      Relationship between consent and general jurisdiction after**

4   ***Daimler***

5       Finally, were we to accept Brown's interpretation of Connecticut's business

6   registration statute, we would risk unravelling the jurisdictional structure

7   envisioned in *Daimler* and *Goodyear* based only on a slender inference of consent

8   pulled from routine bureaucratic measures that were largely designed for

9   another purpose entirely.

10      In *Daimler*, the Court criticized as "unacceptably grasping" plaintiffs'

11  request that it "approve the exercise of general jurisdiction in every State in

12  which a corporation engages in a substantial, continuous, and systematic course

13  of business." *Id*. at 761 (internal quotation marks omitted).  It explained, "If

14  Daimler's California activities sufficed to allow adjudication of this . . . case in

15  California, the same global reach would presumably be available in every other

16  State in which [the subsidiary's] sales are sizable." *Id.*  The Court rejected such

17  an "exorbitant exercise[] of all-purpose jurisdiction." *Id.*

18      Brown's interpretation of Connecticut's registration statute is expansive.  It

47

proposes that we infer from an ambiguous statute and the mere appointment of

an agent for service of process a corporation's consent to general jurisdiction,

creating precisely the result that the Court so roundly rejected in *Daimler*.  It

appears that every state in the union—and the District of Columbia, as well—has

enacted a business registration statute.  *See* Tanya J. Monestier, *Registration*

*Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 CARDOZO L. REV. 1343,

1363–65 & nn.109 & 111–12 (2015) (listing statutes).   States have long endeavored

to protect their citizens and levy taxes, among other goals, through this

mechanism.  If mere registration and the accompanying appointment of an in-

state agent—without an express consent to general jurisdiction—nonetheless

sufficed to confer general jurisdiction by implicit consent, every corporation

would be subject to general jurisdiction in every state in which it registered, and

*Daimler's* ruling would be robbed of meaning by a back-door thief.

In *Daimler*, the Court rejected the idea that a corporation was subject to

general jurisdiction in every state in which it conducted substantial business.

Brown's interpretation of the Connecticut statute could justify the exercise of

general jurisdiction over a corporation in a state in which the corporation had

done *no business at all*, so long as it had registered.  *See Consol. Dev. Corp. v.*

1   *Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (rejecting personal jurisdiction

2   over corporation based on corporation's appointment of agent for service of

3   process, because "casual presence of a corporate agent in the forum is not

4   enough to subject the corporation to suit where the cause of action is unrelated to

5   the agent's activities"); *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971)

6   ("Applying for the privilege of doing business is one thing, but the actual

7   exercise of that privilege is quite another.  The principles of due process require a

8   firmer foundation than mere compliance with state domestication statutes."

9   (citation omitted)).

10         Were the Connecticut statute drafted such that it could be fairly construed

11   as requiring foreign corporations to consent to general jurisdiction, we would be

12   confronted with a more difficult constitutional question about the validity of

13   such consent after *Daimler*.  Though a defendant may ordinarily, through free

14   and voluntary consent given (for example) in a commercial agreement, submit to

15   jurisdiction a court would otherwise be unable to exercise, we decline to decide

16   here whether consent to general jurisdiction via a registration statute would be

17   similarly effective notwithstanding *Daimler*'s strong admonition against the

18   expansive exercise of general jurisdiction.   Jurisdictions other than Connecticut

49

1   have enacted registration statutes that more plainly advise the registrant that

2   enrolling in the state as a foreign corporation and transacting business will vest

3   the local courts with general jurisdiction over the corporation.  *E.g.,* 42 Pa. Cons.

4   Stat. § 5301(a)(2)(i)-(ii).   The registration statute in the state of New York has

5   been definitively construed to accomplish that end, and legislation has been

6   introduced to ratify that construction of the statute.  *See* Monestier, *supra*, at

7   1344–45 & nn.2 & 4.  And some of our sister circuits have upheld states'

8   determinations that in their respective states, registration to do business

9   constitutes consent to the exercise of general jurisdiction, and that due process

10  requires no more:  That is, personal jurisdiction by consent of a corporate

11  defendant  is consistent with due process.  *See Bane*, 925 F.2d at 640 (1991

12  decision interpreting Pennsylvania statute that expressly stated that registration

13  "enable[s] the tribunals of [that] Commonwealth to exercise general personal

14  jurisdiction"); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199–1200 (8th Cir.

15  1990) (reading Minnesota registration law, as interpreted by that state's Supreme

16  Court, to confer general jurisdiction over common carrier).  These two decisions

17  reason that, because of its nature as a personal right, a defendant may consent to

18  personal jurisdiction without regard to what a due process analysis of its contacts

would yield.  S*ee Knowlton*, 900 F.2d at 1199 ("Consent is the other traditional

basis of jurisdiction, existing independently of long-arm statutes.").  Similarly, in

an approach emphasizing the amenability to waiver of personal jurisdiction as

an individual right, applicable to a defendant corporation without regard to the

due process analysis, the Supreme Court has upheld the assertion of personal

jurisdiction as a sanction for failure to comply with jurisdictional discovery,

holding such failures "may amount to a legal submission to the jurisdiction of

the court, whether voluntary or not."  *Bauxites*, 456 U.S. at 704–05.  From these

sources, it could be concluded that a carefully drawn state statute that expressly

required consent to general jurisdiction as a condition on a foreign corporation's

doing business in the state, at least in cases brought by state residents, might well

be constitutional.

But as the Supreme Court recognized in *Goodyear*, "A state court's assertion

of jurisdiction exposes defendants to the State's coercive power, and is therefore

subject to review for compatibility with the Fourteenth Amendment's Due

Process Clause."  131 S. Ct. at 2850 (citing *Int'l Shoe*, 326 U.S. at 316).  The reach of

that coercive power, even when exercised pursuant to a corporation's purported

"consent," may be limited by the Due Process clause.  We need not reach that

51

1    question here, however, because we conclude that the Connecticut business

2    registration statute did not require Lockheed to consent to general jurisdiction in

3    exchange for the right to do business in the state.

4                                          **CONCLUSION**

5           To summarize, in the absence of a clear legislative statement and a

6    definitive interpretation by the Connecticut Supreme Court and in light of

7    constitutional concerns, we construe Connecticut's registration statute and

8    appointment of agent provisions not to require registrant corporations that have

9    appointed agents for service of process to submit to the general jurisdiction of

10   Connecticut courts.  The judgment of the District Court is AFFIRMED.