UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
TZVI WEISS, et al.,                          :
                                             :
                              Plaintiffs,    :
                                             :          **OPINION AND ORDER**
                                             :          05-cv-4622 (DLI) (MDG)
               -against-                      :
                                             :
                                             :
NATIONAL WESTMINSTER BANK PLC,               :
                                             :
                              Defendant.     :
                                             :
-------------------------------------------------------- x
NATAN APPLEBAUM, et al.,                      :
                                             :
                              Plaintiffs,    :
                                             :          07-cv-916 (DLI) (MDG)
                                             :
               -against-                      :
                                             :
                                             :
NATIONAL WESTMINSTER BANK PLC,               :
                                             :
                              Defendant.     :
                                             :
-------------------------------------------------------- x

**DORA L. IRIZARRY, U.S. District Judge:**

This is a consolidated action pursuant to the civil liability provision of the Antiterrorism

Act of 1992 ("ATA"), 18 U.S.C. § 2333(a) ("§ 2333(a)"). Plaintiffs, approximately 200

individuals and estates of people who are deceased (collectively, "Plaintiffs"), seek to recover

damages from Defendant National Westminster Bank PLC ("Defendant") in connection with 15

attacks in Israel and Palestine allegedly perpetrated by Hamas. (*See generally* Fifth Am. Compl.,

("*Weiss* FAC"), *Weiss* Dkt. Entry No. 141; Compl. ("*Applebaum* Compl."), *Applebaum* Dkt.

Entry No. 1).[1] Specifically, Plaintiffs allege that Defendant is civilly liable pursuant to the

---

[1] Citations to the "*Weiss* Dkt." are to docket 05-cv-4622. Citations to the "*Applebaum* Dkt." are to 07-cv-916.

ATA's treble damages provision for: (1) aiding and abetting the murder, attempted murder, and serious physical injury of American nationals outside the United States in violation of 18 U.S.C. § 2332; (2) knowingly providing material support or resources to a Foreign Terrorist Organization ("FTO") in violation of 18 U.S.C. § 2339B; and (3) willfully and unlawfully collecting and transmitting funds with the knowledge that such funds would be used for terrorist purposes in violation of 18 U.S.C. § 2339C. (*Weiss* FAC ¶¶ 579-97; *Applebaum* Compl. ¶¶ 426-44.) Defendant moves for dismissal of this action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment pursuant to Rule 56. (*See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem."), *Weiss* Dkt. Entry No. 327.) Plaintiffs oppose. (*See* Pls.' Mem. of Law in Opp'n to Mot. to Dismiss ("Pls.' Opp'n"), *Weiss* Dkt. Entry No. 329.) For the reasons set forth below, Defendant's motion is denied in its entirety.

## BACKGROUND[2]

### I.     The Parties

Plaintiffs' claims arise from 15 attacks that occurred in Israel and Palestine between approximately 2002 and 2004, which allegedly were perpetrated by Hamas.[3] *See Weiss v. Nat'l*

---

Where the same document has been filed on both dockets, the Court cites to the *Weiss* Docket only, as it is the lead case.

[2]   The Court assumes familiarity with the facts underlying this action, which are summarized more fully in the Court's March 28, 2013 Opinion and Order on Defendant's motion for summary judgment. *See Weiss v. Nat'l Westminster Bank PLC* ("*Weiss II*"), 936 F. Supp. 2d 100 (E.D.N.Y. 2013), *vacated* 768 F.3d 202 (2d Cir. 2014). The facts recounted herein are drawn from the statement of facts set forth in that Opinion and Order, affidavits and/or testimony submitted in connection with the motions for summary judgment that were the subject of that Order, the pleadings, and certain materials submitted by the parties in connection with the instant motion. *See Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996) ("Matters outside the pleadings, however, may also be considered in resolving a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) without converting it into one for summary judgment.") (citing *Visual Sciences, Inc. v. Integrated Comms., Inc.*, 660 F.2d 56, 58 (2d Cir. 1981)).

[3]   Hamas is an acronym for "Harakat al-Muqawama al-Islamiyya," also known as the "Islamic Resistance Movement." (*Weiss* FAC. ¶ 1 n.1.)

*Westminster Bank PLC* ("*Weiss II*"), 936 F. Supp. 2d 100, 103 (E.D.N.Y. 2013). Plaintiffs comprise approximately 200 United States nationals who were injured in those attacks, the estates of persons killed in those attacks, and/or family members of persons killed or injured in those attacks. *Id.*

Defendant is a financial institution incorporated and headquartered in the United Kingdom. *Id.* At the time of the events giving rise to this action, Defendant allegedly conducted business in the United States through an office in Houston, Texas and certain "agencies" in Connecticut and New York, including a branch location in New York City. (Defendant's "New York Branch").[4] *Id.* Defendant purportedly used its New York Branch as an intermediary bank to execute U.S. Dollar denominated transactions requested by its customers. (*See* Dep. Tr. of Neil Trantum ("Trantum Dep.") at 90:4-5, Ex. 97 to the Decl. of Valerie Schuster in Supp. of Def.'s Mot. for Summary Judgment, *Weiss* Dkt. Entry No. 267; *see also* Tr. of Oct. 8, 2015 Oral Argument ("Tr.") at 4:19-7:8 ("When the customers asked for funds to be denominated in dollars, it was necessary to go through this correspondent banking track because [Defendant] didn't deal in dollars directly, it dealt in dollars through its New York [B]ranch."))

Among other customers, Defendant maintained bank accounts in London for Interpal, a/k/a the Palestine Relief & Development Fund, a/k/a Palestinians Relief & Development Fund ("Interpal"), a non-profit organization registered in the United Kingdom and self-described as providing humanitarian aid to various charitable organizations throughout Jordan, Lebanon, and the Palestinian territories. *See Weiss II*, 936 F. Supp. 2d at 104. During the time Interpal had accounts with Defendant, it transferred money to certain charitable organizations (each a "Charity," and collectively the "Charities") that Plaintiffs contend actually were front

---

[4] The parties do not clearly elucidate the corporate relationship between Defendant and its New York location. Accordingly, the Court uses the term "New York Branch" as a matter of convenience only.

organizations for Hamas.  *See Id.* at 104, 111.  Plaintiffs allege that Defendant aided Hamas by maintaining Interpal's accounts and sending money to the Charities on Interpal's behalf, despite knowing that Interpal supported Hamas.  *See Id.* at 111.  While a number of the transfers Defendant made to the Charities on behalf of Interpal never went through the United States, the parties agree that Defendant executed 196 such transfers through its New York Branch (or otherwise through correspondent bank accounts that Defendant maintained in New York) (collectively, the "New York Transfers"), each in response to a specific request by Interpal to send funds in U.S. Dollars.  (*See* Oct. 16, 2015 Osen Ltr., *Weiss* Dkt. Entry No. 335.)  Each New York Transfer was initiated by Defendant and routed through a correspondent bank account in New York, then was directed for the benefit of the respective Charity to a separate correspondent account maintained by that Charity's bank in New York.  (*See* Def.'s Mem. at 5-6; *see also* Tr. at 4:23-5:13.)

## II.    Procedural History

In September 2005 and March 2007, respectively, the *Weiss* and *Applebaum* Plaintiffs brought separate actions against Defendant in this Court.  The initial complaints, and every amended complaint thereafter, alleged that Defendant is subject both to general personal jurisdiction ("general jurisdiction") and specific personal jurisdiction ("specific jurisdiction") in the United States.  (*See Weiss* FAC ¶ 4; *Applebaum* Compl. ¶ 4.)  The *Weiss* Plaintiffs served Defendant with process at its agencies and/or offices in New York, Texas, and Connecticut in September and October 2005.  (*Weiss* Dkt Entries Nos. 3, 7, 8.)  Thereafter, Defendant moved for dismissal of the *Weiss* action pursuant to Rule 12(b)(6), declining to contest personal jurisdiction at that time.  (*See* Mot. to Dismiss, *Weiss* Dkt. Entry No. 38.)  The late Honorable Charles P. Sifton, then presiding, denied the motion to dismiss with respect to Plaintiffs' claims

that Defendant provided material support to an FTO and knowingly transmitted funds that financed terrorism, but dismissed Plaintiffs' aiding and abetting claim, with leave to amend. *Weiss v. Nat'l Westminster Bank PLC* ("*Weiss I*"), 453 F. Supp. 2d 609 (E.D.N.Y. 2006). In the *Applebaum* action, Defendant voluntarily accepted service, (*see Applebaum* Dkt. Entry No. 6), and thereafter filed a motion to dismiss. (*Applebaum* Dkt. Entry No. 13.) The parties subsequently resolved that motion by stipulation, absent any objection by Defendant as to personal jurisdiction. (*See Applebaum* Dkt. Entry Nos. 26, 28.) By order dated December 27, 2007, the Court formally consolidated the *Weiss* and *Applebaum* actions.

Extensive merits discovery between the parties ensued. On March 22, 2012, Defendant moved for summary judgment dismissing the consolidated action, but again declined to raise a defense of lack of personal jurisdiction. (*See Weiss* Dkt. Entry No. 264.) By Opinion and Order dated March 28, 2013, the Court granted summary judgment in favor of Defendant on each claim and dismissed the action in its entirety, finding that Plaintiffs had failed to establish that a genuine issue of material fact existed as to the required *scienter* element of their claims. *Weiss II*, 936 F. Supp. 2d at 120. Plaintiffs subsequently appealed the dismissal to the Second Circuit Court of Appeals. On September 22, 2014, the Second Circuit vacated this Court's decision and remanded the consolidated action for further proceedings, ruling that there were triable issues of fact as to whether Defendant's knowledge in transferring funds on behalf of Interpal satisfied the statutory *scienter* requirements under § 2333(a). *Weiss v. Nat'l Westminster Bank PLC* ("*Weiss III*"), 768 F.3d 202 (2d Cir. 2014.)

Upon remand, Defendant notified the Court that, in light of the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), it intended to assert a personal jurisdiction defense for the first time in these proceedings. (*See* Oct. 17, 2014 Friedman Ltr., *Weiss* Dkt.

Entry No. 316.)  Decided in January 2014, *Daimler* addressed the extent to which a forum State may exercise general jurisdiction over a foreign corporation.  Revisiting its past personal jurisdiction jurisprudence, the Supreme Court clarified that a corporation is subject to general jurisdiction in a forum State only where its contacts are "so continuous and systematic," judged against the corporation's nationwide and worldwide activities, that it is "essentially at home" in that State. *Daimler*, 134 S. Ct. at 761 & n.20 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted).  Aside from the "exceptional case," the Supreme Court explained, a corporation is at home and subject to general jurisdiction *only* in a State that represents its formal place of incorporation or principal place of business. *See Id.* & nn.19-20.  The Supreme Court emphasized that the "exceptional case" exists only in rare and compelling circumstances like those in *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), where a foreign corporation maintained a surrogate headquarters in Ohio during a period of wartime occupation in its native Philippines. *See Id.* at 755-56 & nn.8, 19.

Citing *Daimler*, (*see* Feb. 6, 2014 Friedman Ltr.), Defendant filed the instant motion to dismiss this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In the alternative, Defendant contends that it is entitled to summary judgment dismissing Plaintiffs' claims because, at most, it is subject to personal jurisdiction in New York only with respect to the 196 transfers it executed on behalf of Interpal using correspondent accounts in New York. (*See* Def.'s Mem. at 18-24.)  Renewing arguments from its prior summary judgment motion, Defendant contends that no reasonable juror could find that it possessed the requisite *scienter* to establish liability under the ATA when making those New York Transfers, nor could a reasonable juror find that its activities as of the date of those transfers proximately caused Plaintiffs' injuries.

Plaintiffs oppose the instant motion, arguing as a threshold matter that Defendant waived a personal jurisdiction defense by failing to raise one in its prior motions to dismiss the *Weiss* and *Applebaum* actions, then actively litigating this case for several years. (*See* Pl.s' Opp'n at 3-10.) Plaintiffs further argue that, even if the Court declines to find that Defendant waived its personal jurisdiction defense, it still may exercise specific jurisdiction over Defendant based on its contacts with New York and the broader United States, including most significantly the New York Transfers. (*See Id.* at 12-25.)

On October 8, 2015, oral argument was held on Defendant's motion. (*See generally* Tr.) Following argument, at the Court's request, the parties provided additional information concerning the extent of the transfers Defendant made to the Charities on behalf of Interpal, and the portion or percentage of those transfers that went through New York or the broader United States. (*See Weiss* Dkt. Entry Nos. 335, 336.) This decision followed.

## DISCUSSION

## I.     Waiver

Taken together, Rules 12(g)(2) and 12(h)(1) of the Federal Rules of Civil Procedure provide that a party that moves to dismiss an action, but omits an available personal jurisdiction defense, forfeits that defense. Even a party that complies with those rules may forfeit the right to contest personal jurisdiction if it unduly delays in asserting that right, or acts inconsistently with it. *See, e.g.*, *Insur. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-04 (1982); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-62 (2d Cir. 1999). However, an exception exists where a defendant seeks to assert a personal jurisdiction defense that previously was not available, as it is well recognized that "a party cannot be deemed to have waived

objections or defenses which were not known to be available at the time they could first have been made." *Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981).

Here, Plaintiffs argue that Defendant waived its personal jurisdiction defense by omitting that defense from its prior motions to dismiss the *Weiss* and *Applebaum* actions, then actively litigating this case over the course of several years. (*See* Pl.s' Opp'n at 3-10.) However, Plaintiffs' argument is foreclosed by *Gucci America, Inc. v. Weixing Li* ("*Gucci II*"), 768 F.3d 122 (2d Cir. 2014). In *Gucci II*, non-party Bank of China appealed from an order of the district court compelling it to comply with an asset freeze injunction and certain disclosures. For purposes of that order, the district court assumed that Bank of China was subject to general jurisdiction in New York because it maintained branch locations there. *See Gucci Am. Inc., v. Weixing Li* ("*Gucci I*"), 2011 WL 6156936, at *4 n.6 (S.D.N.Y. Aug. 23, 2011), *vacated* 768 F.3d 122. While the appeal was pending, the Supreme Court decided *Daimler*, prompting Bank of China to assert an objection that it was not subject to general jurisdiction in New York. That objection ordinarily would have been waived because it was not raised in the district court. However, the Second Circuit declined to find waiver, explaining that Bank of China's personal jurisdiction objection was not available until *Daimler* cast doubt upon, if not outright abrogated, controlling precedent in this Circuit holding that a foreign bank with a branch in New York was subject to general jurisdiction here. *See Id.* at 135-36 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 93-95 (2d Cir. 2000)) (emphasis in original).

The same conclusion is compelled in this case. Under controlling precedent in this Circuit prior to *Daimler*, Defendant was subject to general jurisdiction in New York because it had a New York Branch through which it routinely conducted business. *Gucci II* expressly acknowledged that, in the wake of *Daimler*, contact of such a nature with a forum State, absent

more, is insufficient to sustain general jurisdiction over a foreign corporation. *See Gucci II*, 768 F.3d at 134-35. Accordingly, just as the *Daimler* ruling permitted Bank of China to raise its personal jurisdiction objection in *Gucci II*, it similarly permits Defendant to assert its personal jurisdiction defense at this juncture. It follows that Defendant did not waive that defense, having asserted it promptly after *Daimler* first made it available.

Other courts in this Circuit, relying on the Second Circuit's application of *Daimler* in *Gucci II*, have held similarly. *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 4634541, at *30-31 (S.D.N.Y. Aug. 4, 2015); *7 West 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539, at *5-7 (S.D.N.Y. Mar. 3l, 2015). Plaintiffs do not provide any valid reason why this Court should depart from those decisions, or ignore the clear guidance of *Gucci II*. At best, Plaintiffs argue that, if the Supreme Court narrowed the law on general jurisdiction, it did so three years before *Daimler* in *Goodyear*, 131 S. Ct. 2846, in which case Defendant waived its personal jurisdiction defense by waiting too long to assert it. (*See* Pl.s' Opp'n at 7-10.) Plaintiffs' argument finds limited support outside this Circuit. *See, e.g.*, *Am. Fidelity Assur. Co. v. Bank of N.Y. Mellon*, 2014 WL 4471606 (W.D. Okla. Sept. 10, 2014), *aff'd* 2016 WL 231474 (10th Cir. 2016); *Gilmore v. Palestinian Interim Self-Government Auth.*, 8 F. Supp. 3d 9 (D.D.C. June 23, 2014). However, the Court is not aware of any authority in this Circuit holding that *Goodyear*, rather than *Daimler*, narrowed the law on general jurisdiction. To the contrary, the issue was briefed in *Gucci II* and the Second Circuit ultimately held that *Daimler* effected the relevant change in the law.[5] *See Gucci II*, 768 F.3d at 135-36; *see also 7 West 57th St.*, 2015 WL 1514539, at *6-7 (rejecting argument that *Goodyear* altered the law on general jurisdiction, as "*Gucci America* unequivocally holds . . . that *Daimler* effected a change

---

[5] *See, e.g.,* Letter Brief of Bank of China et al., *Gucci Am., Inc. v. Bank of China*, 2014 WL 1873367, at *3 (2d Cir. Apr. 8, 2014).

in the law.")

The Second Circuit recently reaffirmed that holding in *Brown v. Lockheed Martin Corp.*, 2016 WL 641392, at *6-7 (2d Cir. Feb. 18, 2016). There, the Second Circuit explained that "*Goodyear* seemed to have left open the possibility that contacts of substance, deliberately undertaken and of some duration, could place a corporation 'at home' in many locations." *Id.* at *7. However, *Daimler* all but eliminated that possibility, "considerably alter[ing] the analytic landscape for general jurisdiction" by more narrowly holding that, aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction *only* in its place of incorporation or principal place of business. *Id.; see also Daimler*, 134 S. Ct. at 760 ("*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business") (emphasis in original). As Defendant relies on that newly articulated principle of law for its personal jurisdiction defense, it reasonably could not have raised that defense prior to *Daimler*.

Plaintiffs also erroneously contend that Defendant actually contested personal jurisdiction in this case as early as 2006, or at least could have, despite now asserting that its personal jurisdiction defense only became available after *Daimler*. (Pl.s' Opp'n at 6-7.) Plaintiffs base their argument on representations by Defendant that it does not conduct business in the United States, which Defendant made in: (1) a December 2006 submission to the magistrate judge; and (2) Defendant's November 2006 answer to the second amended complaint. (*See* Ex. A to the Oct. 16, 2015 Osen Ltr.) Upon review, the Court finds that neither filing reasonably can be construed as asserting an objection as to personal jurisdiction.

In particular, in its 2006 submission to the magistrate judge, Defendant emphasized its lack of business activity in the United States only in the context of arguing that it would be

unduly burdensome to disclose business records maintained in the United Kingdom.  (*See* Def.'s Opp'n to Pl.s' Discovery Motion, *Weiss* Dkt. Entry No. 83, at 20.)  Although the magistrate judge's order on the discovery motions at issue noted, in a footnote, that Defendant had waived a personal jurisdiction defense by not raising one in its answer, *see Weiss v. Nat'l Westminster Bank PLC*, 242 F.R.D. 33, 36 n.5 (E.D.N.Y. 2007), the Court declines to treat that ruling as the law of the case in light of the intervening change in the law effected by *Daimler*.  *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("We may depart from the law of the case for cogent or compelling reasons including an intervening change in law . . .") (internal quotation marks and citation omitted).

Plaintiffs' argument that Defendant could have asserted a personal jurisdiction defense earlier in this case fares no better.  The crux of Plaintiffs' argument is that, if Defendant really conducted no business whatsoever in the United States, as it represented in 2006, then Defendant had a valid basis to contest personal jurisdiction even under pre-*Daimler* precedent.  Nevertheless, as discussed, any argument by Defendant prior to *Daimler* that it was not subject to personal jurisdiction in New York would have been futile because Defendant had a branch in New York during the timeframe relevant to the Court's jurisdictional inquiry.  *See Gucci II*, 768 F.3d at 135-36; *see also Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 128 (2d Cir. 2008) ("In general jurisdiction cases, we examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to an including the date the suit was filed.")  The Court declines to find that Defendant, in failing to raise a futile argument, waived its personal jurisdiction defense.

Finally, Plaintiffs argue in passing that, even if an objection as to general jurisdiction was unavailable to Defendant prior to *Daimler*, Defendant still could have challenged the existence of

specific jurisdiction earlier in this case. However, any challenge to that effect would have been purely academic because, regardless of the outcome, Defendant still would have been subject to general jurisdiction in New York under existing law at the time. To the extent Defendant failed to contest specific jurisdiction at an earlier time, the Court is satisfied it was for that reason. Accordingly, the Court concludes that Defendant did not waive its personal jurisdiction defense.

## II.   Personal Jurisdiction

### A.    Legal Standard

Once personal jurisdiction has been challenged, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). On a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing that jurisdiction exists to satisfy that burden. *See Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). Where, as here, discovery regarding a defendant's forum contacts has been conducted but no evidentiary hearing has been held, the "plaintiff['s] *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant."[6] *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (alterations in original). The Court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Porina*, 521 F.3d at 126. However, the Court is not to "draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas*

---

[6] No jurisdictional discovery has been ordered in this matter. However, in the course of merits discovery, Plaintiffs sought and obtained extensive disclosure concerning the relevant jurisdictional facts. As such, the parties agree that further discovery directed to the jurisdictional facts would be unnecessary. (*See* Tr. at 15:22-16:1; *see also* Def.'s Mem. at 7 n.8.)

*Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotation marks and citation omitted), or "accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co*., Ltd., 148 F.3d 181, 185 (2d Cir. 1998) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To make a *prima facie* showing that personal jurisdiction exists, a plaintiff must demonstrate: "(1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction over the defendant; and (3) that [the court's] exercise of jurisdiction over the defendant is in accordance with constitutional due process principles." *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci I*"), 673 F.3d 50, 59-60 (2d Cir. 2012)). Here, because Defendant does not dispute that it properly was served with process, the Court's analysis primarily is a two-part inquiry to determine whether there is a statutory basis for jurisdiction, and, if so, whether due process is satisfied.

In conducting this analysis, the Court distinguishes between general and specific jurisdiction. General or "all-purpose" jurisdiction is "based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metro. Life*, 84 F.3d at 568 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984)). In contrast, specific or "case-linked" jurisdiction depends "on the relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014), and is said to exist where "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Metro. Life*, 84 F.3d at 567-68 (quoting *Helicopteros*, 466 U.S. at 414-16 & nn.8-9).

### B.     General Jurisdiction

A court may exercise general jurisdiction over a foreign corporation to hear any and all claims against it when the corporation's affiliations with the forum State are so continuous and systematic as to render it essentially at home there.  *Goodyear*, 131 S. Ct. at 2851 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  Here, it is undisputed that New York is neither Defendant's principal place of business nor its place of incorporation.  (*See Weiss* FAC ¶ 439; *Applebaum* Compl. ¶ 288.)  Therefore, Defendant is not at home in New York under either of the two paradigm bases for general jurisdiction discussed in *Daimler*.  *See Daimler*, 134 S. Ct. at 760.  It follows that exercising general jurisdiction over Defendant would not comport with the principles of due process articulated in *Daimler* unless this is an exceptional case, akin to *Perkins*, 342 U.S. 437, where Defendant's contacts with New York are so substantial and of such a nature as to render it essentially at home there.  *See Daimler*, 134 S. Ct. at 761 n.19.

The Court has little difficulty concluding that the facts here do not present an exceptional case.  Defendant's alleged contacts with New York are nowhere near as substantial as those in *Perkins*, where the defendant corporation maintained a surrogate headquarters in Ohio, the forum State.  *Id*.  By contrast, Defendant in this case merely had a New York Branch, which it used just for that discrete element of its worldwide operations that required clearing U.S. Dollar transfers.  *See Brown*, 2016 WL 641392, at *8 (for purposes of a general jurisdiction analysis, a corporation's in-forum conduct must be assessed "in the context of the company's overall activity" throughout the United States and the world) (citing *Daimler*, 134 S. Ct. at 762 n.20) (emphasis omitted).  In fact, such contacts with New York are even more attenuated than those maintained by Bank of China in *Gucci II*, which the Second Circuit deemed insufficient to permit the exercise of general jurisdiction.  *See Gucci II*, 768 F.3d at 135.

Moreover, Defendant's New York contacts fall far short of the contacts maintained with Connecticut by Lockheed Martin ("Lockheed"), the corporate defendant that was the subject of the Second Circuit's recent decision in *Brown*. For example, Lockheed continuously maintained a physical presence in Connecticut for over 30 years, ran operations out of as many as four leased locations in the State, employed up to 70 workers there, and derived about $160 million in revenue from its Connecticut-based work during the relevant timeframe.[7] *Brown*, 2016 WL 641392, at *6-7. Nevertheless, the Second Circuit held that those facts still did not rise to an exceptional case that would support general jurisdiction over Lockheed in a forum where it neither was headquartered nor incorporated. *Id.* at *7-9. In reaching its decision, the Second Circuit emphasized that a corporation's "mere contacts" with such a forum, "no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Id.* at *8 (internal quotation marks omitted). Given the fact that neither *Gucci II* nor *Brown* amounted to an exceptional case, the instant case clearly is not exceptional either. Accordingly, in light of *Daimler*, there is no basis for the Court to exercise general jurisdiction over Defendant in New York.

### C. Specific Jurisdiction Under Rule 4(k)(1)(A)

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure permits a federal court to "exercise personal jurisdiction to the extent of the applicable [State] statutes." *Peterson v. Islamic Republic of Iran*, 2013 WL 1155576, at *11 (S.D.N.Y. Mar. 13, 2013), *aff'd* 758 F.3d

---

[7] Lockheed also was formally registered to do business in Connecticut. Notably, the Second Circuit declined to interpret the Connecticut business registration statute as requiring foreign corporations to consent to general jurisdiction as a condition of registration. *Brown*, 2016 WL 641392, at *9-18. The Second Circuit further observed that, even if the statute required such consent, it is questionable whether such consent validly could confer general jurisdiction over a foreign corporation after *Daimler*. *Id.* at *18. Here, even if Defendant's New York Branch was registered in New York under § 200 of the Banking Law, the Court declines to find that Defendant consented to general jurisdiction in New York by virtue of such registration. *See 7 West 57th St.*, 2015 WL 1514539, at *11 ("The plain language of this provision limits any consent to personal jurisdiction by registered banks to *specific* personal jurisdiction.") (emphasis in original).

185 (2d Cir. 2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Under this rule, a federal court may look to the long-arm statute of the State in which it sits to establish a statutory basis for the exercise of personal jurisdiction over a defendant. Here, Plaintiffs invoke provisions of New York's long-arm statute, alleging that Defendant is subject to specific jurisdiction under New York Civil Practice Law and Rules ("C.P.L.R.") §§ 302(a)(1) and (a)(3). (*See* Pl.s' Opp'n at 15-17.) Because the Court concludes that C.P.L.R. § 302(a)(1) ("§ 302(a)(1)") permits the exercise of specific jurisdiction over Defendant, it does not consider whether jurisdiction also exists under § 302(a)(3).

### 1. CPLR § 302(a)(1)

Pursuant to § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary that "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). This provision confers jurisdiction over a defendant if two requirements are met. First, the defendant must have transacted business in New York. Known as the "purposeful availment" prong of § 302(a)(1), this requirement calls for a showing that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within New York . . . thereby invoking the benefits and protections of its laws." *Id.* at 61 (internal quotation marks and citations omitted). The second requirement, known as the "nexus" prong of § 302(a)(1), holds that there must be an "articulable nexus" or "substantial relationship" between the plaintiff's claim and the defendant's transaction in New York. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)).

In *Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 20 N.Y.3d 327 (2012), the New York State Court of Appeals ("Court of Appeals") answered questions certified from the Second Circuit concerning the reach of § 302(a)(1) in the context of an action, like the instant one,

alleging that a foreign bank violated the ATA by knowingly transferring funds that supported an FTO.  Notably, the defendant bank in *Licci II* "did not operate branches or offices, or maintain employees, in the United States."  *Id.* at 332.  Nevertheless, the Court of Appeals held that the bank transacted business in New York by executing dozens of wire transfers through a correspondent bank account in New York on behalf of an entity that allegedly served as the financial arm of an FTO.  As the Court of Appeals explained:  "[A] foreign bank's repeated use of a correspondent account in New York on behalf of a client—in effect, a course of dealing— show[s] purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States."  *Id.* at 339 (internal quotations marks and citation omitted).

The Court of Appeals further explained that the nexus prong of § 302(a)(1) does not demand a causal connection between the defendant's New York transaction the plaintiff's claim, but instead requires only a "relatedness . . . such that the latter is not completely unmoored from the former."  *Id.* at 339.  This "relatively permissive" nexus is satisfied where "at least one element [of the plaintiff's claim] arises from the [defendant's] New York contacts."  *Id.* at 339, 341. The Court of Appeals held that this requisite nexus was established in *Licci II* because the defendant bank, in utilizing a correspondent account in New York allegedly to send money to a terrorist organization, purportedly violated the very statutes under which the plaintiffs sued.  *Id.* at 340.  Furthermore, the bank did not direct those funds through New York "once or twice by mistake," but deliberately and repeatedly used a New York account allegedly to support the same terrorist organization accused of perpetrating the attacks in which the plaintiffs were injured.  *Id.* at 340-41.

Turning to the instant action, Defendant's relevant New York conduct is even more

substantial and sustained than that of the foreign bank in the *Licci* cases (collectively, "*Licci*"). Whereas the bank in *Licci* maintained only a correspondent account as its sole point of contact in New York, Defendant had a New York Branch. Defendant routinely conducted business in New York through a correspondent account it maintained at that branch, utilizing that account to clear U.S. Dollar transfers requested by its customers. In doing so, Defendant necessarily availed itself of the benefits and protections accorded to such transactions when carried out using New York's dependable banking system, under the auspices of New York banking and commercial laws. *See Licci II*, 20 N.Y.3d at 339-40. These facts satisfy the purposeful availment prong of § 302(a)(1).

With respect to the nexus prong of § 302(a)(1), the relevant facts further demonstrate a close relatedness between Plaintiffs' claims in this action and Defendant's New York conduct. Most significantly, in executing the New York Transfers, Defendant allegedly used New York's banking system to effect the very financial support of Hamas that is the basis for Plaintiffs' claims. While the New York Transfers represent only a subset of the total transfers Defendant made to the Charities on behalf of Interpal, they integrally constitute part of Defendant's alleged support of Hamas and its terrorist activities, including the attacks in which Plaintiffs were injured. As such, the New York Transfers unquestionably are among the financial services underlying Plaintiffs' claims.

That nexus would be too attenuated if, contrary to the facts alleged here, Defendant routed transfers through New York just "once or twice by mistake," or executed the New York Transfers at a time far removed from the attacks that caused Plaintiffs' injuries. *Licci II*, 20 N.Y.3d at 340. However, 196 separate times, Defendant deliberately routed a transfer through New York in response to a specific request by Interpal to transmit funds in U.S. Dollars. Those

transfers by no means were *de minimis*, representing as much as $4,345,342.35 in total funds allegedly transferred to the Charities.  (*See* Oct. 16, 2015 Osen Ltr.)  Furthermore, the first New York Transfer occurred in 1996, while the last New York Transfer purportedly occurred on August 15, 2003.  (*See* Def.'s Mem. at 5, 18.)  As such, those transfers not only overlapped with the attacks in 2002 through 2004 that caused Plaintiffs' injuries, but also occurred at a time when Defendant allegedly knew that funds it transferred on behalf of Interpal were being used to support a terrorist organization.  (*See, e.g., Weiss* FAC ¶¶ 550-561; *Applebaum* Compl. ¶¶ 398-407.)

Defendant nevertheless argues that the nexus required by § 302(a)(1) is foreclosed because Plaintiffs have not proven with respect to any New York Transfer that the beneficiary Charity actually received and took possession of the underlying funds.  (*See* Def.'s Mem. at 15-16.)  However, it is not Plaintiffs' burden to adduce any such proof at this stage.  Rather, Plaintiffs need only plead facts that, if credited, would establish jurisdiction over Defendant.  *See Metro. Life*, 84 F.3d at 567.  Plaintiffs have done so, having alleged on the basis of the relevant electronic transfer records that each New York Transfer was directed to a beneficiary Charity, was routed by Defendant through a correspondent account in New York, and reached a separate correspondent account in New York maintained by the beneficiary Charity's bank.

Finally, a court analyzing jurisdiction under § 302(a)(1) must consider not only the quantity of a defendant's contacts in New York, but also the quality of those contacts when viewed in the totality of the circumstances.  *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007); *Farkas v. Farkas*, 36 A.D.3d 852, 853 (2d Dep't 2007).  Here, Defendant had a New York Branch where it maintained a correspondent account to facilitate the clearing of U.S. Dollar transfers requested by its customers.  Whatever efficiency and cost savings Defendant gained as

a result allowed Defendant to retain relationships with customers that had a need to deal in U.S. currency, a contingent that from time to time included Interpal. Most importantly, Defendant executed the 196 New York Transfers, repeatedly and deliberately using New York's banking system to effect the alleged financial support of Hamas that is the basis for Plaintiffs' claims. Given the quality of those contacts and their close connection to New York, the Court concludes that § 302(a)(1) permits the exercise of jurisdiction over Defendant.

## 2. Scope Of Jurisdiction Under § 302(a)(1)

A plaintiff must establish personal jurisdiction with respect to each claim asserted. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Invoking this principle, Defendant argues that each Plaintiff in this action asserts a claim under the ATA separately and individually, and that jurisdiction must be established uniquely for each one of these claims. (*See* Def.'s Reply in Further Supp. of Mot. to Dismiss ("Def.s Reply"), *Weiss* Dkt Entry No. 330.) Plaintiffs argue otherwise, essentially contending that they assert a "claim" under the ATA, and that a single New York contact that would support the exercise of specific jurisdiction is sufficient to confer jurisdiction over that entire claim.

Because Plaintiffs allege injuries in connection with 15 different attacks, each associated with a distinct class of Plaintiffs, the Court disagrees that all of their claims can be aggregated into a single, unitary claim under the ATA for purposes of establishing specific jurisdiction. Even so, the Court concludes that Defendant is subject to jurisdiction under § 302(a)(1) with respect to claims made in connection with all 15 attacks. To explain why, it is useful to consider the result if Plaintiffs had pursued their claims in 15 separate actions, each premised upon a single attack. As previously noted, the first New York Transfer was in 1996 and the last transfer purportedly occurred on August 15, 2003. (*See* Def.'s Mem. at 5, 18.) Given the timing of those

transfers and the substantial amount underlying them, Plaintiffs in all 15 actions legitimately could rely upon the New York Transfers as among the financial services and material support allegedly provided by Defendant in violation of the ATA.

That conceivably would not be the case if, for instance, one of the attacks for which Plaintiffs sought recovery occurred in 1991, five years before the first New York Transfer. Under such circumstances, the nexus between claims arising from the 1991 attack and a series of transfers that did not even begin to occur until five years later theoretically would be too attenuated to support jurisdiction under § 302(a)(1). *See, e.g.*, *Standard Chartered Bank* v. *Ahmad Hamad Al Gosaibi & Bros. Co.*, No. 653506/2011, 2013 N.Y. Slip. Op. 32312(U), at *3-5 (Sup. Ct. N.Y. Cnty. Sept. 24, 2013) (nexus required under § 302(a)(1) not satisfied where 2009 default could not have arisen from business the defendant transacted in New York in 2010 and thereafter). However, those are not the facts here. Even assuming that Plaintiffs had pursued their claims in 15 separate actions, the New York Transfers would embody purportedly unlawful conduct relevant to establishing Defendant's liability in each action. As such, the claims in each action could be said to arise, at least in part, from the New York Transfers, in which case § 302(a)(1) would confer jurisdiction over Defendant in each action. *See Licci II*, 20 N.Y.3d at 341.

Nevertheless, Defendant contends that the scope of jurisdiction the Court may exercise in this action, where Plaintiffs assert their claims collectively, is narrower and does not permit adjudication of all of Plaintiffs' claims. Defendant's position rests on the fact that the New York Transfers are not the only transfers underlying Plaintiffs' claims. Rather, aside from those 196 transfers, Defendant executed approximately 300 other transfers to the Charities on behalf of Interpal during the relevant timeframe, none of which was routed through New York or the

United States.  (*See* Oct. 16, 2015 Osen Ltr.)  Defendant contends that, if the Court were to adjudicate all of Plaintiffs' claims arising from all of the relevant transfers, it necessarily would be exercising specific jurisdiction not only with respect to the New York Transfers, but also with respect to numerous other transfers that never touched New York or the United States.  (*See* Def.'s Mem. at 8-10) ("This Court cannot treat [Defendant's] prior wire transfers that touched New York as providing a basis for asserting personal jurisdiction over [Defendant] in New York for claims based on subsequent transfers that never touched the United States.")  According to Defendant, exercising jurisdiction over the latter category of transfers is impermissible in a "specific jurisdiction universe" because those transfers, which were not routed through New York, have no connection to Defendant's New York conduct.

Defendant's argument is fundamentally flawed, however, as it erroneously assumes that the Court's adjudicatory power over Defendant is defined according to which individual *transfers* satisfy the jurisdictional requirements of § 302(a)(1), rather than which *claims* satisfy those requirements.  In fact, the two are distinct.  Plaintiffs' claims are that Defendant violated the ATA, causing injury, by providing material support to an FTO and knowingly financing terrorism.  *See* 18 U.S.C. §§ 2339B and 2339C.  Those claims do not necessarily correspond one-to-one with particular transfers, but instead rest upon the millions of dollars Defendant allegedly transferred to Hamas front organizations in close temporal proximity to the 15 attacks in which Plaintiffs were injured.  Because the New York Transfers were a substantial part of that allegedly unlawful conduct, the Court may exercise jurisdiction with respect to claims made in connection with all 15 attacks.

This is true notwithstanding the fact that those claims also may arise from other transfers Defendant did not route through New York, including ones performed after the last of the New

York Transfers was executed in August 2003.[8] There is no requirement under § 302(a)(1) that a plaintiff's claim must arise *exclusively* from New York conduct. To the contrary, as long as there is a relatedness between a plaintiff's claim and the defendant's New York transaction, § 302(a)(1) confers jurisdiction even if some, or all, of the acts constituting the breach sued upon occurred outside New York. *See Hoffritz for Cutlery, Inc. v. Amajac Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985) (applying § 302(a)(1) and rejecting the district court's "finding of no jurisdiction over defendants merely on the basis that the acts alleged in the complaint did not take place in New York."); *Hedlund v. Products from Sweden, Inc.*, 698 F. Supp. 1087, 1091-93 (S.D.N.Y.1988) (finding defendant subject to jurisdiction in New York under § 302(a)(1) with respect to a claim of tortious interference that arose from conduct in Sweden). Thus, even if Defendant's conduct outside New York substantially gave rise to Plaintiffs' claims, Plaintiffs' claims still are within the permissible scope of jurisdiction under § 302(a)(1) because they are all "sufficiently related to the business transacted [in New York] that it would not be unfair . . . to subject [Defendant] to suit in New York." *Hoffritz*, 763 F.2d at 59.

The Court is not persuaded that a different result is compelled by *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355 (2d Cir. 1970), a case Defendant heavily relies upon even though it was decided 45 years ago without the benefit of clear precedent from the New York courts regarding how § 302(a)(1) should be applied. *See Hoffritz*, 763 F.2d at 61. *Fontanetta* involved a physician who sought certification as an internist from the American

---

[8] For this reason, the Court rejects Defendant's argument that Plaintiffs should be required to prove their claims based on the state of affairs, and what Defendant knew, as of the date of the last New York Transfer. (*See* Def.'s Mem. at 16-17.) That argument is premised on the fallacy that the Court only may exercise jurisdiction over the individual New York Transfers, which uniquely give rise to specific claims that are not premised on any other transfers. That is not the case, however, as all of Plaintiffs' claims arise more broadly from the many transfers Defendant made to the Charities during the relevant timeframe, of which the New York Transfers were a part. Moreover, the Court unequivocally rejects Defendant's unsupported contention that personal jurisdiction limits the evidence Plaintiffs may use to prove their claims, confining it just to what existed at the time of the last New York Transfer.

Board of Internal Medicine, which required passing both an oral and written exam. *See Fontanetta*, 421 F.2d at 356. The physician passed the written exam in New York in 1963, but twice failed the oral exam—once in Philadelphia, Pennsylvania in 1965, and once in St. Louis, Missouri in 1967. *Id.* After he failed the oral exam for a second time, the physician brought suit in New York to compel the Board to disclose the reasons why he had failed the two oral exams, and to issue the requested certification. *Id.* Applying § 302(a)(1), the Second Circuit held that the physician's claim, which concerned only the oral exam, was not sufficiently related to the written exam to sustain jurisdiction in New York. *Id.* at 357-58. As the Second Circuit later explained in *Hoffritz*: "We held [in *Fontanetta*] that the substantive differences between the two kinds of examination, together with the separation both in time and geographic location of the oral examination from the written examination, rendered unrealistic a view of the two as one unit." *Hoffritz*, 763 F.2d at 61.

Here, while the transfers at issue vary in time and location to a degree, substantively they constitute a single course of conduct by Defendant that purportedly entailed violations of the same statute in the same manner with respect to all of Plaintiffs' claims. Moreover, whereas in *Fontanetta* the plaintiff's claim did not relate to the written examination, the Court already has determined that all of Plaintiffs' claims in this action relate to the New York Transfers. *See Id.* at 61-62 (similarly distinguishing *Fontanetta* and holding that jurisdiction existed under § 302(a)(1) with respect to a claim "sufficiently connected to defendants' transaction of business in New York.") As such, the Court's finding that it may exercise jurisdiction with respect to all of Plaintiffs' claims is not inconsistent with *Fontanetta*.

Defendant's reliance on *State v. Samaritan Asset Management Services, Inc.*, 22 Misc.3d 669 (Sup. Ct. N.Y. Cnty. 2008), similarly is unavailing. There, the New York Attorney General

brought a securities fraud action against the defendants under the State's Martin Act, N.Y. Gen. Bus. Law § 352 *et. seq.* The court dismissed the action in part, holding that it could exercise personal jurisdiction with respect to trades the defendants executed through New York brokers, but not with respect to trades executed through a trust company located in Phoenix, Arizona. *Id.* at 676-77. However, that holding substantially was a consequence of the territorial limitations of the Martin Act, which applies exclusively to acts "within and from" New York. *See Id.* at 674, 676-77. No such limitation binds the Court here. To the contrary, the ATA expressly is directed at terrorist activities that "occur primarily outside the territorial jurisdiction of the United States." 18 U.S.C. § 2331(1). Indeed, the very purpose of the ATA was to "provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United States nationals." *In re September 11 Litig.*, 751 F.3d 86, 93 (2d Cir. 2014) (quoting H.R. 2222, 102d Cong. (1992)) (internal quotation marks omitted). While these are concepts of territorial jurisdiction, not personal jurisdiction, they distinguish *Samaritan* and render it inapposite here.

### D.    Jurisdiction Under Rule 4(k)(1)(C)

Plaintiffs argue that Rule 4(k)(1)(C) of the Federal Rules of Civil Procedure provides an additional statutory basis for the Court to exercise personal jurisdiction over Defendant. The Court agrees. Under Rule 4(k)(1)(C), personal jurisdiction may be established through proper service of process upon a defendant pursuant to a federal statute that contains its own service provision. *See* Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."); *see also* 4B Wright & Miller et al., Federal Practice & Procedure § 1125 (4th ed.) As relevant here, the ATA expressly authorizes nationwide service of process, thereby establishing personal

jurisdiction over a defendant properly served under the statute.[9]

Here, Defendant does not dispute that it properly was served with process in New York, Texas, and Connecticut in connection with the *Weiss* action, and voluntarily accepted service in connection with the *Applebaum* action. (*See Weiss* Dkt Entry Nos. 3, 7, 8; *Applebaum* Dkt. Entry No. 6.) As such, Rule 4(k)(1)(C) provides an additional basis for this Court to exercise personal jurisdiction over Defendant, to the extent permitted by due process.[10] *See In re Terrorist Attacks*, 349 F. Supp. 2d at 806 (exercise of personal jurisdiction pursuant to Rule 4(k)(1)(C) still requires demonstration that defendant has sufficient "minimum contacts" to satisfy traditional due process inquiry); *see also Wultz I*, 755 F. Supp. 2d at 32 ("Nationwide service of process does not dispense with the requirement that an exercise of personal jurisdiction comport with the Due Process Clause.")

### E. Constitutional Due Process

Having concluded that there is a statutory basis to exercise personal jurisdiction over Defendant, the Court must consider whether exercising such jurisdiction would comport with the due process protections provided by the United States Constitution. As articulated by the Supreme Court in *International Shoe*, the touchstone due process principle requires that the defendant "have certain minimum contacts [with the forum state] such that maintenance of the

---

[9] *See* 18 U.S.C. § 2334 (providing for nationwide service of process "where[ever] the defendant resides, is found, or has an agent"); *Licci I*, 673 F.3d at 59 n.8 (2d Cir. 2012) (acknowledging the ATA's nationwide service of process provision as a possible basis for personal jurisdiction); *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *3 (M.D. Fla. Mar. 31, 2011); *Sokolow v. Palestine Liberation Org.*, 2011 WL 1345086, at *2 (S.D.N.Y. Mar. 30, 2011); *Wultz v. Islamic Republic of Iran* ("*Wultz I*"), 755 F. Supp. 2d 1, 31-32 (D.D.C. 2010); *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 806-07 (S.D.N.Y. 2005); *see also IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (federal statute authorizing nationwide service of process may be used to establish personal jurisdiction).

[10] In *Wultz v. Republic of Iran* ("*Wultz II*"), 762 F. Supp. 2d 18, 25-29 (D.D.C. 2011), the district court held that the ATA's nationwide service of process provision cannot be invoked to establish personal jurisdiction unless the first clause of that provision, concerning proper venue under the statute, also is satisfied. Here, Defendant has waived any argument that venue is improper by failing to raise that issue. In any event, given that the ATA provides for venue in any district where any plaintiff resides or where the defendant is served, the Court would find that venue is proper in this district even if Defendant had asserted a challenge. *See* 18 U.S.C. § 2334(a).

suit does not offend traditional notions of fair play and substantial justice." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 732 F.3d 161, 169 (2d Cir. 2013) (quoting *Int'l Shoe*, 326 U.S. at 316) (alterations in original). Assuming the threshold showing of "minimum contacts" is satisfied, the Court also must consider whether its exercise of jurisdiction would be reasonable under the circumstances. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985); *see also Licci III*, 732 F.3d at 173-74.

Notably, after the Court of Appeals determined in *Licci II* that the defendant bank was subject to jurisdiction in New York under § 302(a)(1), the Second Circuit in *Licci III* considered whether exercising such jurisdiction would comport with due process. In concluding that due process was satisfied, the Second Circuit observed that it would be "rare" and "unusual" for a court to determine that the exercise of personal jurisdiction over a defendant was permitted by § 302(a)(1), but prohibited under principles of due process. *Licci III*, 732 F.3d at 170. In fact, the Second Circuit noted that it was aware of no such decisions within this Circuit. *Id.* Therefore, given the Court's prior determination that § 302(a)(1) permits the exercise of jurisdiction over Defendant, it would be unusual, and even unprecedented, for the Court to find that due process is not satisfied here.

### 1. Minimum Contacts

Where, as here, a court's specific jurisdiction is invoked, "minimum contacts" sufficient to satisfy due process exist if "the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci III*, 732 F.3d at 170 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).)) Courts typically conduct this inquiry under two separate prongs: (1) the "purposeful availment" prong, "whereby the court determines whether the entity deliberately directed its

conduct at the forum"; and (2) the "relatedness" prong, "whereby the court determines whether the controversy at issue arose out of or related to the entity's in-forum conduct." *Gucci Am., Inc. v. Weixing Li* ("*Gucci III*"), 2015 WL 5707135, at *7 (S.D.N.Y. Sept. 29, 2015) (citing *Chew v. Dietrich*, 143 F.3d 24, 27-29 (2d Cir. 1998)).

Because this action arises under the ATA, a nationwide service of process statute, the appropriate "minimum contacts" inquiry is whether Defendant has sufficient contacts with the United States as a whole.[11]   Nevertheless, aside from offices and/or agencies Defendant purportedly maintained in Connecticut and Texas, essentially all of the contacts relevant to the Court's due process inquiry involve Defendant's conduct in New York.   Moreover, having already determined that Defendant's New York conduct satisfies the purposeful availment prong of § 302(a)(1), the Court has little difficulty concluding that it similarly demonstrates purposeful availment sufficient to establish "minimum contacts" with the United States.  *See Licci III*, 732 F.3d at 170.  There is nothing remotely "random, isolated, or fortuitous" about that conduct that would call into question whether it was purposefully directed at the United States.  *Id.* at 171 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  Defendant had a New York Branch and systematically utilized a correspondent account at that branch as a clearing channel for U.S. Dollar transfers requested by its customers.

Most notably, Defendant deliberately used New York's banking system to execute the New York Transfers.   Given that "dozens" of similar transfers routed through a New York correspondent account were sufficient to establish purposeful availment in *Licci III*, the New

---

[11]  *See LIBOR*, 2015 WL 4634541, at *18; *Wultz II*, 762 F. Supp. 2d at 25; *In re Terrorist Attacks*, 349 F. Supp. 2d at 806 (Where jurisdiction is asserted under the ATA's service provision, the "relevant inquiry under such circumstances is whether the defendant has minimum contacts with the United States as a whole [to satisfy Fifth Amendment due process requirements], rather than . . . with the particular state in which the federal court sits.") (quoting *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 153 F. Supp. 2d 76, 87 (D.R.I. 2001)) (alterations in original).  *But see Gucci II*, 768 F.3d at 142 n.21 (noting that the Second Circuit has not yet decided whether the "national contacts" approach is proper for determining personal jurisdiction in cases arising under federal statutes that authorize nationwide service.)

York Transfers demonstrate such availment *a fortiori* because they represent almost 200 transactions totaling over $4 million carried out through Defendant's own branch in New York (or otherwise through correspondent accounts Defendant maintained in New York.) As such, there is no question that Defendant purposefully availed itself of the "privilege of conducting business in [New York]," thereby subjecting itself to suit in the United States with respect to any and all claims substantially related to such conduct. *Licci III*, 732 F.3d at 171 (quoting *Bank Brussels Lambert*, 305 F.3d at 127); *see also Gucci III*, 2015 WL 5707135, at *8.

Turning to the question of relatedness, the Second Circuit held in *Licci III* that the defendant bank's use of an in-forum correspondent account to execute the very wire transfers that were the basis for the plaintiffs' claims satisfied "minimum contacts." As the Second Circuit explained:

> [W]e by no means suggest that a foreign defendant's 'mere maintenance' of a correspondent account in the United States is sufficient to support the constitutional exercise of personal jurisdiction over the account-holder in connection with any controversy. In this case, the correspondent account at issue is alleged to have been used as an instrument to achieve the very wrong alleged. We conclude that in connection with this particular jurisdictional controversy—a lawsuit seeking redress for the allegedly unlawful provision of banking services of which the wire transfers are a part—allegations of [the defendant's] repeated, intentional execution of U.S.-dollar-denominated wire transfers on behalf of Shahid, in order to further Hizballah's terrorist goals, are sufficient [to sustain jurisdiction].

*Licci III*, 732 F.3d at 171. The same conclusion is compelled here, where the New York Transfers are among the allegedly unlawful financial services Defendant provided to Interpal for which Plaintiffs seek redress in this action.

Defendant attempts to distinguish *Licci III* on the ground that all of the wire transfers at issue in that case were routed through New York, whereas in this case only 196 of the approximately 496 transfers at issue went through New York. However, in *Licci III*, the Second

Circuit did not hold, or even suggest, that due process was satisfied because the transfers at issue were routed *exclusively* through New York.  That fact was not even made explicit in the Second Circuit's opinion.  Rather, per the Second Circuit's express holding, "minimum contacts" were established by the defendant bank's *repeated* and *deliberate* use of a New York correspondent account to effect the financial services underlying the plaintiffs' claims.  *See Id.* at 171-73; *Wultz I*, 755 F. Supp. 2d at 34 (suggesting that a single wire transfer knowingly performed in the U.S. for the benefit of a terrorist organization could support a finding of specific jurisdiction in the ATA context); *see also Burger King*, 471 U.S. at 475 n.18 ("So long as it creates a substantial connection with the forum, even a single act can support jurisdiction.") (internal quotation marks and citation omitted).  The facts alleged here demonstrate the same repeated and deliberate conduct by Defendant.

Furthermore, such conduct allegedly resulted in the provision of over $4 million to the Charities, which thereafter purportedly was delivered into the hands of Hamas during the same timeframe that Hamas carried out the attacks in which Plaintiffs were injured.  *Contra 7 West 57th St.*, 2015 WL 1514539, at *10 ("minimum contacts" not satisfied in LIBOR fixing case because defendant bank's conduct in New York had no alleged connection with plaintiff's injury and did not even occur during the relevant timeframe).  Plaintiffs further allege that Defendant executed the New York Transfers at a time when it knew, or at least suspected, that it was supporting a terrorist organization by transferring money from Interpal to the Charities.  *Cf. Wultz I*, 755 F. Supp. 2d at 34 ("Where a bank has knowledge that it is funding terrorists . . . contacts created by such funding can support such a finding [of specific jurisdiction].") (citing *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 488-90 (S.D.N.Y. 2010)).[12]

---

[12]  In its March 28, 2013 summary judgment Order, the Court ruled that the evidence in the record was insufficient to establish that, at any time between 1994 and 2007, Defendant had the requisite *scienter* to support liability under

For the reasons discussed by the Court when analyzing the scope of jurisdiction under § 302(a)(1), *supra*, the Court further concludes that Defendant's New York conduct established "minimum contacts" as to which all of Plaintiffs' claims substantially relate. As such, the Court finds that it may exercise jurisdiction over Defendant with respect to all of those claims without offending due process. *See Walden*, 134 S. Ct. at 1121 ("minimum contacts" satisfied if "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State."). Furthermore, as acknowledged by the Second Circuit, there is authority for the "general proposition that use of a forum's banking system as part of an allegedly wrongful course of conduct may expose the user to suits seeking redress in that forum when that use is an integral part of the wrongful conduct." *Licci III*, 732 F.3d at 172 n.7. Here, Defendant is a sophisticated financial institution that had a New York Branch and routinely conducted business in the United States through an account it maintained at that branch. As such, it reasonably can be presumed that Defendant was "fully aware of U.S. law concerning financial institutions, including provisions of the ATA criminalizing material support to terrorist organizations." *Wultz I*, 755 F. Supp. 2d at 34. Assuming the truth of Plaintiffs' allegations, Defendant reasonably could have foreseen that repeatedly availing itself of New York and its laws to execute the New York Transfers would subject it to jurisdiction in the United States with respect to the overall course of conduct of which those transfers were a part.

---

§ 2333(a), *i.e.* that Defendant knew (or exhibited deliberate indifference to whether) Interpal provided material support to Hamas. In vacating the Court's Order, the Second Circuit held that Plaintiffs had presented sufficient evidence to create a triable issue of fact as to *scienter*. According to Defendant, all such evidence specifically identified by the Second Circuit concerned facts *after* August 15, 2003, the date when the last New York Transfer was executed. Therefore, Defendant argues that there is no evidence to support a conclusion that, at the time it made the New York Transfers, it knew that it was providing support to a terrorist organization. (Def.'s Mem. at 19-24.) Whatever relevance that argument may have to Plaintiffs' burden to prove *scienter* at trial, it is not dispositive as to the question of personal jurisdiction presently before the Court, particularly in light of: (1) the millions of dollars Defendant funneled through New York on Interpal's behalf for the benefit of the Charities in close proximity to the attacks at issue; (2) the fact that the Second Circuit, in its decision, actually did discuss evidence potentially relevant to a finding of *scienter* prior to August 2003; and (3) Plaintiffs' burden at this stage, which does not require them to *prove* any jurisdictional fact.

Nevertheless, Defendant asserts the same fallacy as it did with respect to § 302(a)(1), arguing that due process prohibits the Court from exercising "jurisdiction" over transfers that never went through New York or the United States. Defendant contends that this principle is exemplified in a decision recently reached by the Honorable Naomi R. Buchwald, United States District Judge for the Southern District of New York, in a multidistrict litigation concerning alleged manipulation of the London Interbank Offer Rate ("LIBOR"). (*See* Oct. 16, 2015 Friedman Ltr., *Weiss* Dkt. Entry No. 336; *see also* Tr. 11:3-18, 20:5-7.) In basic terms, LIBOR is a set of interest-rate benchmarks calculated on the basis of quotes from a panel of leading banks, each of which reports on a daily basis the rate at which it could borrow funds under certain stated conditions. *See LIBOR*, 2015 WL 4634541, at *2-3. The plaintiffs in the multidistrict litigation allege, *inter alia*, that the panel banks knowingly and persistently submitted falsely high or low quotes to manipulate LIBOR in a manner designed to fraudulently improve their respective positions in the market. As a threshold ruling, Judge Buchwald indicated that specific jurisdiction would not exist in New York with respect to any claim alleging fraud based upon a false LIBOR quote that neither was determined nor submitted in New York, nor otherwise requested by a trader located in New York. *See Id.* at *32.

Whatever basis in the facts and law that ruling had in *LIBOR*, no such basis can be found here. In that case, each purportedly false LIBOR submission at issue was alleged to have caused a distinct and identifiable harm that directly gave rise to a specific plaintiff's claim. The transfers at issue here are not comparable. Without rehashing the Court's entire analysis concerning the scope of jurisdiction under § 302(a)(1), *supra*, Plaintiffs' claims are that Defendant provided material support to an FTO and knowingly financed terrorism. Those claims rest upon the many transfers Defendant made to the Charities on behalf of Interpal in close

temporal proximity to the 15 attacks in which Plaintiffs were injured. Due process does not require that the Court secure a basis for jurisdiction over all of those transfers in order to adjudicate Plaintiffs' claims. Rather, as discussed, Plaintiffs must show that there is a substantial relationship between claims made in connection with all 15 attacks and Defendant's relevant New York conduct. *See Walden*, 134 S. Ct. at 1121. Based on its prior determination that Plaintiffs adequately have done so, *prima facie*, the Court may exercise jurisdiction with respect to all of their claims without offending due process.

## 2. Reasonableness

At the second stage of the due process analysis, the party challenging jurisdiction bears a heavy burden to make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert*, 305 F.3d at 129 (quoting *Metro. Life Ins. Co.*, 84 F.3d at 568). Where a defendant purposefully has directed its suit-related conduct at the forum State, as is the case here, "dismissals resulting from the application of the reasonableness test should be few and far between." *Metro. Life*, 84 F.3d at 575 (citing *Burger King*, 471 U.S. at 477). Among the factors typically considered by a court assessing the reasonableness of exercising jurisdiction are: (1) "the burden that the exercise of jurisdiction will impose on the [entity]"; (2) "the interests of the forum state in adjudicating the case"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of the controversy"; and (5) "the shared interest of the states in furthering substantive social policies." *Gucci III*, 2015 WL 5707135, at *9 (citing *Bank Brussels Lambert*, 305 F.3d at 129) (alterations in original). In addition, "[w]hen the entity that may be subject to personal jurisdiction is a foreign one, courts consider the *international* judicial system's interest in efficiency and the shared interests of the

*nations* in advancing substantive policies." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.* 480 U.S. 102, 115 (1987)) (emphasis in original).

Here, in challenging jurisdiction, Defendant does not directly address the individual reasonableness factors. Having considered those factors anyway, the Court concludes that they support the exercise of jurisdiction over Defendant. To begin with, Defendant has been litigating this action in this Court for the better part of ten years. Extensive discovery already has taken place, with the parties capably surmounting any obstacles presented by the fact that many of the pertinent witnesses and documents are located abroad. As such, Defendant cannot seriously contend that continuing to litigate this case in New York presents an unreasonable burden. *See Licci III*, 732 F.3d at 174 (observing that any such burden is eased by "the conveniences of modern communication and transportation"). Indeed, up until *Daimler* was decided, Defendant presumably had every expectation of litigating this matter to a resolution in New York.

Furthermore, the claims in this action are predicated on the overall course of conduct by which Defendant allegedly provided financial support to a terrorist organization. To the extent Defendant's use of New York's banking system was integral to that conduct, the Court also may take into account "the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used as an instrument in support of terrorism." *Id*. Finally, although not a controlling factor, it is appropriate to consider the federal policy underlying Congress' enactment of the ATA. *Cf.* 4 Wright & Miller, Federal Practice and Procedure § 1068.1 (4th ed.) ("[W]hen Congress has undertaken to enact a nationwide service statute applicable to a certain class of disputes, that statute should be afforded substantial weight as a legislative articulation of federal social policy.") As demonstrated by the legislative history and express language of the ATA, a clear statutory objective is "to give American nationals

broad remedies in a procedurally privileged U.S. forum." *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 422 (E.D.N.Y. 2009). That policy by no means overrides the due process to which Defendant is entitled. However, having already determined that Defendant established "minimum contacts" with the United States as a whole, the Court is further persuaded by that policy and the other reasonableness factors that exercising jurisdiction over Defendant is consistent with due process. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is denied.[13]

## III. Defendant's Motion for Summary Judgment

Defendant alternatively moves for summary judgment on the basis that the Court can exercise jurisdiction only with respect to the New York Transfers, and Plaintiffs cannot prove Defendant's liability in a case confined just to those 196 transfers. (*See* Def.'s Mem. at 15-25.) In other words, Plaintiffs purportedly cannot prevail on their claims because they cannot prove that as of August 15, 2003—the date of the last New York Transfer—Defendant acted with the requisite *scienter* and proximately caused Plaintiffs' injuries. However, the Court already has rejected Defendant's arguments seeking to limit the scope of jurisdiction in this manner, including the fallacy that the Court must secure jurisdiction over individual transfers rather than jurisdiction over Defendant itself. Accordingly, Defendant's motion for summary judgment is denied.

---

[13] In *Gucci II*, the Second Circuit directed the district court to consider, upon remand, whether the exercise of jurisdiction over Bank of China would comport with principles of international comity. *See Gucci II*, 768 F.3d at 138-39. However, in that case, there was an alleged conflict of law between Chinese banking laws and an asset-freeze injunction issued by the district court. *Id.* Here, Defendant does not address the issue of comity, nor is there any suggestion that merely continuing to exercise jurisdiction over Defendant, albeit on a theory of specific jurisdiction rather than general, would conflict with any foreign laws or otherwise infringe on the sovereign interests of a foreign state.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss this action, or in the alternative

for summary judgment, is denied in its entirety.

SO ORDERED.

Dated:  Brooklyn, New York
        March 31, 2016

                                        _____/s/_____
                                             DORA L. IRIZARRY
                                          United States District Judge