```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    STRAUSS, et al.,                   :
                                        :  06-CV-00702 (DLI)
5                   Plaintiffs,         :
                                        :
6              v.                       :
                                        :  225 Cadman Plaza East
7    CREDIT LYONNAIS, S.A.,             :  Brooklyn, New York
                                        :
8                   Defendant.          :  May 17, 2016
     ------------------------------------X
9    WEISS, et al.,                     :
                                        :
10                  Plaintiffs,         :
                                        :
11             v.                       :  05-CV-04622 (DLI)
                                        :
12   NATIONAL WESTMINSTER BANK,         :
                                        :
13                  Defendant.          :
     ------------------------------------X
14   APPLEBAUM, et al.,                 :
                                        :
15                  Plaintiffs,         :
                                        :
16             v.                       :  07-CV-00916 (DLI)
                                        :
17   NATIONAL WESTMINSTER BANK, PLC,    :
                                        :
18                  Defendant.          :
     ------------------------------------X
19   WOLF, et al.,                      :
                                        :
20                  Plaintiffs,         :
                                        :
21             v.                       :  07-CV-00914 (DLI)
                                        :
22   CREDIT LYONNAIS, S.A.,             :
                                        :
23                  Defendant.          :
     ------------------------------------X
24

25                     [Continued on next page.]


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
```

```
 1                                                                2

 2

 3                   TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE

 4                 BEFORE THE HONORABLE MARILYN D. GO
                      UNITED STATES MAGISTRATE JUDGE
 5
         APPEARANCES:
 6
         For the Plaintiffs:        GARY M. OSEN, ESQ.
 7                                  ARI UNGER, ESQ.
                                    AARON SCHLANGER, ESQ.
 8                                  Osen, LLC
                                    2 University Plaza, #201
 9                                  Hackensack, New Jersey 07601

10                                  MARK WERBNER, ESQ.
                                    Sayles Werbner
11                                  1201 Elm Street
                                    4400 Renaissance Tower
12                                  Dallas, Texas 75270

13                                  NODEL J. NUDELMAN, ESQ.
                                    Heideman Nudelman & Kalik, P.C.
14                                  Fifth Floor
                                    1146 19th Street NW
15                                  Washington, D.C. 20036

16       For the Defendants:        ANDREW DAVID FRIEDMAN, ESQ.
                                    Wechsler, Harwood, Halebian &
17                                    Feffer, LLP
                                    488 Madison Avenue, 8th Floor
18                                  New York, New York 10022

19                                  AVI E. LUFT, ESQ.
                                    LAWRENCE B. FRIEDMAN, ESQ.
20                                  MARK STEPHEN GRUBE, ESQ.
                                    MARK MCDONALD, ESQ.
21                                  MOLLY B. CALKINS, ESQ.
                                    Cleary Gottlieb Steen &
22                                    Hamilton, LLP
                                    The Liberty Plaza
23                                  New York, New York 10006

24       Court Transcriber:         RUTH ANN HAGER, C.E.T.**D-641
                                    TypeWrite Word Processing Service
25                                  211 N. Milton Road
                                    Saratoga Springs, New York  12866
```

3

1    (Proceedings began at 11:08 a.m.)

2            THE CLERK:  Weiss v. National Westminster Bank,

3    Docket No. 05-CV-04622; Applebaum v. National Westminster

4    Bank, 07-CV-00915; Strauss v. Credit Lyonnais, 06-CV-00702;

5    and Wolf v. Credit Lyonnais, 07-CV-00914.

6            Counsel, please state your names for the record.

7            THE COURT:  Beginning with the Weiss plaintiffs.

8            MR. OSEN:  Gary Osen, Osen, LLC, for the Weiss

9    plaintiffs.

10            THE COURT:  And also for the --

11            MR. OSEN:  And joining me are my colleagues Ari

12   Unger, Aaron Schlanger, Sean Norton and Steve Steingard.

13            THE COURT:  Okay.  And you also represent the

14   plaintiffs in Wolf?

15            MR. OSEN:  Strauss, Your Honor.

16            THE COURT:  Strauss.  Okay.

17            And for the Strauss plaintiffs and Applebaum

18   plaintiffs.

19            MR. WERBNER:  Your Honor, Mark Werbner for Applebaum

20   and Wolf.  Those are the two cases and I'm here with

21   Mr. Nudelman.

22            THE COURT:  Okay.

23            MR. FRIEDMAN:  Your Honor, Lawrence Friedman, Cleary

24   Gottlieb Steen & Hamilton on behalf of Credit Lyonnais and

25   National Westminster Bank, and with me are my colleagues Avi

4

1  Luft, Mark Grube, Mark McDonald and Molly Calkins.

2          THE COURT:  Good morning, everybody.

3          So I'd just note before we went on the record the

4  parties thought it would be -- it would simplify matters just

5  to talk about discovery in all of the cases together and I

6  had mistakenly still before I examined the docket sheet that

7  Weiss and Applebaum had proceeded on a slightly different

8  track because the case had originally been dismissed.  But it

9  looks as if we're basically at the same point in discovery in

10 both cases and we need damages discovery.  Is that correct?

11         UNIDENTIFIED VOICE:  Well, we don't need damages

12 discovery, Your Honor, because the cases have been bifurcated

13 as between liability and damages, but we have other procedures

14 that we need to engage in before scheduling a liability trial

15 and plaintiffs' counsel and I have spoken a couple of times

16 and I'll refer to Mr. Osen to lay out the menu of what we

17 think needs to be done next and we can set a schedule for

18 that.

19         MR. OSEN:  So, Your Honor, there are a couple of

20 things.  First of all, from the defense side, and obviously

21 Mr. Friedman can speak to it, with respect to the Credit

22 Lyonnais case the defendant had filed previously a motion for

23 reconsideration which was vacated during the pendency of other

24 motions and in our discussions Mr. Friedman has indicated a

25 desire to renew that motion.

5

1          So one of the things that we'll be presenting is a

2    briefing schedule.  I think we have to do it to Chief Judge --

3    I don't remember her role, but I think we have to submit a

4    letter or --

5              THE COURT:  I suspect she would want a pre-motion

6    letter.

7              UNIDENTIFIED VOICE:  Well, it's already past that.

8    Your Honor, if I may --

9              MR. OSEN:  Sure.

10              UNIDENTIFIED VOICE:  -- Mr. Osen.  There were two

11    motions pending when we brought the Daimler-based [ph.]

12    motion.

13              THE COURT:  Um-hum.

14              UNIDENTIFIED VOICE:  That Judge Irizarry --

15              THE COURT:  Oh, okay.

16              UNIDENTIFIED VOICE:  -- Chief Judge Irizarry

17    recently [indiscernible].  One was a motion for

18    reconsideration of Chief Judge Irizarry's original summary

19    judgment ruling which was fully briefed in 2013 and Chief

20    Judge Irizarry took that off calendar when we made the Daimler

21    motion subject to it being reinstated if the Daimler motion

22    was denied as, in fact, it has been.

23          There is also a -- Chief Judge Irizarry also gave us

24    permission to move for summary judgment with respect to five

25    new attacks that had been added to the Credit Lyonnais case,

1  which -- three of which -- or two of which are being added to

2  the Nat West case.  Your Honor may recall that Congress

3  amended the statute of limitations under the Anti-Terrorism

4  Act and there were five attacks that were previously dismissed

5  from the case that were reinstated.

6          So we had those two motions pending when Daimler was

7  handed down.  Judge Irizarry allowed us to make the Daimler

8  motion since denied.  So those two motions need to be restored

9  to the calendar.

10          And then there is the Nat West motion for summary

11  judgment on the two issues that Judge Irizarry did not reach

12  and, therefore, the Second Circuit remanded when it reversed

13  her decision on the scienter element of the summary judgment

14  motion, remanded that to her for further proceedings.

15          Mr. Osen and his colleagues and I spoke last week.

16  There were also amendments to the pleadings that plaintiffs

17  will tell you that they want to make to add new plaintiffs and

18  add certain attacks to the Nat West cases.  And also, there

19  are additional documents that they want to produce to us, all

20  of which we need to take a look at and decide whether we want

21  to object to the untimeliness of those documents and whatnot.

22  So there are about half a dozen things that we need to do and

23  what I propose is Your Honor would like me to apprise you in

24  more detail of what those area or it might be more efficient

25  if we agreed to outside of the courthouse a briefing schedule,

1  a filing schedule for all of these amendments and pleadings,

2  submissions of new evidence and motions and submit them to

3  Your Honor for approval.

4        THE COURT:  Okay.  Okay.  I don't conceptually have

5  a problem with that, but Judge Irizarry did file her order at

6  the end of March, so -- and I -- and we had adjourned this

7  conference to give you time to confer.  I was actually

8  surprised not to get a proposed order because you would have

9  obviously known better what additional discovery was needed

10  and now you -- I had forgotten about the motions that

11  [indiscernible].

12        UNIDENTIFIED VOICE:  I think in the next week or ten

13  days, Your Honor, but when I spoke with Mr. Osen immediately

14  after Judge Irizarry's order and he requested the postponed

15  adjournment, which was fine with me.  Apparently there were a

16  lot of consultations that needed to be had.  We are in

17  agreement as to what the steps are.  It's just a question of

18  proposing schedule -- schedules, Your Honor, which I think we

19  can do fairly quickly.

20        MR. OSEN:  Yeah, if it helps, Your Honor, I think

21  it -- I could very briefly sort of outline what the issues are

22  and then ultimately we'll submit a proposed briefing schedule

23  for all of them.

24        The first category involves what I'll call

25  administrative issues relating to existing plaintiffs where,

8

1    for example, people have died in the intervening years and so

2    we would amend for the estates or where a person was a minor

3    and has no longer -- reached majority.  So we would amend to

4    sort of clean up, for lack of a better term, those kind of

5    things.

6                    And then as Mister --

7                    THE COURT:  If you --

8                    MR. OSEN:  Sorry.

9                    THE COURT:  And certainly that can just be done by

10   stipulation, I would think.

11                   MR. OSEN:  Yes.

12                   THE COURT:  But since you're thinking about amending

13   the complaint anyway --

14                   MR. OSEN:  Right.

15                   THE COURT:  -- perhaps --

16                   MR. OSEN:  So that leads to the second category,

17   which is trying to create a sort of uniformity, for lack of a

18   better term, in terms of the plaintiffs and attacks in both

19   cases.  So, for example, the additional -- some of the

20   additional attacks that have been added to Credit Lyonnais

21   where there's no statute of limitations issued from our

22   standpoint would be added into Nat West.  That doesn't itself

23   necessarily require additional discovery, although obviously

24   the defendant is entitled to reserve its rights with respect

25   to whether it determines it needs an additional deposition or

9

1   an expert on that particular attack or what have you.  And we

2   can set that forth when we deal with the additional attacks,

3   which in Nat West consist of two that were added to Credit

4   Lyonnais and that's the Pat Junction attack and the Ben-Yehuda

5   bombing in December of 2001.

6          In addition, because so much time has lapsed since

7   we last saw you and there have been literally years of

8   intervening motions, so what we told the defendant in our meet

9   and confer is that we really want to go back and look through

10  and have begun the process of looking through the production

11  that was made in those cases and obviously we had the same

12  plaintiffs and the same attacks in the Arab Bank trial.  We

13  want to make sure that they have comprehensive up-to-date

14  discovery on our end.  We're not talking about third-party

15  discovery or discovery from the defendant, but materials that

16  have been obtained either chronologically subsequent to

17  disclose of discovery, things that are within our Rule 26

18  obligation to supplement and so forth.

19         I don't believe that any of that affects or I'd say

20  with one exception I don't believe it affects any of

21  Mr. Friedman's prospective motions, but we thought he was

22  entitled to see the totality of it before he -- so he could

23  make that independent judgment.

24         THE COURT:  So these are disclosures concerning the

25  plaintiffs or also additional information about the various

10

1    incidents --

2              MR. OSEN:  Well, the one example --

3              THE COURT:  -- [indiscernible] claims.

4              MR. OSEN: -- that came to mind, that's where it

5    started the thought process, was we had an issue in the Arab

6    Bank trial with respect to one of the attacks that was subject

7    to Rule 59 challenge.  And Judge Kogan had actually granted

8    relief to the defendant as to two of those attacks, one of

9    which is in the present actions and that's the Bus 19 bombing

10   of 2004.

11             And one of the issues that related to that attack

12   was the fact that there's a -- we contend -- I think the

13   record will show there's a typographical error in the

14   conviction of one of the assailants in that case.  And

15   therefore, in the post-trial proceedings we filed a motion for

16   reconsideration and we attached the original indictment upon

17   which the conviction was based.  That indictment makes clear

18   that the individual was charged as a Hamas assailant which, of

19   course, is relevant to these proceedings.

20             That attack is also the subject of Mr. Friedman's

21   motion for reconsideration and so that's the sort of document

22   I envision providing him before he makes his motion so he can

23   challenge it in whatever form he wishes, but he should have

24   the benefit of it.  It's on the docket, but -- in the other

25   case, and he may have it but we want to make sure anything

1   like that is in his possession.

2          THE COURT:  So that's as to one of the two attacks

3   that were dismissed by Judge Kogan?

4          MR. OSEN:  Correct.

5          THE COURT:  Okay.

6          MR. OSEN:  And it's in -- it's actually in all four,

7   I believe, of the pending cases here.

8          THE COURT:  Okay.  Is there an overlap in the

9   plaintiffs?

10         MR. OSEN:  Everyone who is in Credit Lyonnais and

11  Nat West was in Arab Bank, but not everyone who is in Arab

12  Bank is in these four pending cases.

13         THE COURT:  Okay.  Okay.  So there's no need for a

14  collateral estoppel motion that could come into --

15         UNIDENTIFIED VOICE:  Well, there may be, Your Honor,

16  with respect to this very issue.  Judge Kogan ruled that the

17  evidence was insufficient to establish Hamas' responsibility

18  for this attack.  We may take the position that that ruling

19  is -- collateral estops these plaintiffs from pressing ahead

20  with that attack in these cases and, if I understand what

21  Mr. Osen is referring to, they believe they have evidence that

22  might counter that and it's something that will need to be

23  worked out.

24         THE COURT:  Okay.

25         UNIDENTIFIED VOICE:  Over time.

1        MR. OSEN:  In the -- I'm sorry.

2        THE COURT:  You told me that by adding the two

3   additional attacks in the Weiss case that you won't need

4   additional discovery of the defendants?

5        MR. OSEN:  No.  The only issue is because of the

6   convoluted and lengthy history of these cases and their

7   overlap, some of our experts already opined on some of the

8   attacks previously, but because of the procedural sort of

9   staging of the cases there may be a gap for one attack where

10  they -- the defendant has not had the opportunity to depose

11  one of our experts on the -- that specific attack.  So even

12  though there's expert report they've had on the same attack,

13  they may seek to have a sort of narrow deposition on that

14  question.

15       UNIDENTIFIED VOICE:  If I may, as Mr. Osen said, he

16  told me last week that for one of these two added attacks

17  there's another expert opinion and they may either object to

18  that completely as untimely or if I don't -- I may need to

19  take a short deposition of that expert.

20       With respect to the additional documents that

21  Mr. Osen is referring to given to us as we discussed and

22  agreed, he will give me those documents and give me an

23  opportunity to review them and I will then have to consider

24  whether I object to the production of those documents and

25  discovery -- fact and expert discovery is ended three -- and

1    ended four -- three years ago.

2         But if I don't make that objection or if I do object

3    and that objection is overruled, I may need to take additional

4    discovery based on those documents.  Mr. Osen assures me he

5    doesn't think so, but time will tell.

6         MR. OSEN:  Well, I've got to speak to that.  I can

7    only talk to the question of whether they specifically relate

8    to the subject matter of his prior motion.  So, for example,

9    you know, we will produce as part of discovery the subsequent

10   consent order is entered into by these defendants with respect

11   to violations of trading with the Enemy Act and violations of

12   U.S. sanctions law and so forth.

13        Whether that material changes anything from their

14   standpoint in terms of their motions, I doubt it, so we don't

15   intend to proffer them for summary judgment purposes, but to

16   me that's a sort of separate issue process-wise from whether

17   there'll be admissible at trial or not.  That's something they

18   can address.  If it's on our ultimate exhibit list, they can

19   move and eliminate at that point.

20        I'm at this point, Your Honor, just focused on what

21   effects a pending motion practice and wanting the defendants

22   to have the benefit of whatever materials we have that's been

23   acquired since we last convened years ago so they can assess

24   whether they have to address any of that in their, you know,

25   anticipated motions.

14

1      UNIDENTIFIED VOICE:  I appreciate that and I

2  understand that.  I don't know what you were referring to

3  about sanctions violations something [ph.] that -- we can talk

4  about that offline.  But it may be that my first response to

5  one or more of these documents is they would affect the

6  motions but the threshold issue is whether you're allowed to

7  put them in the record now because of the time that has passed

8  and I suggest we cross that bridge when we come to it when I

9  see the documents.  And the schedule that we can give to Your

10  Honor after today, one of the milestones in the schedule can

11  be a date for Mr. Osen to make these documents available to

12  us.

13      MR. OSEN:  That's fine.

14      UNIDENTIFIED VOICE:  And then after he produces

15  these documents, after he amends his pleadings in the way he's

16  described, I think, Mr. Osen, you admitted that there -- new

17  plaintiffs you're going to add to the complaints as well.

18      MR. OSEN:  Well, by definition when we add the Nat

19  West and new attacks --

20      THE COURT:  Right, right.

21      MR. OSEN:  -- they'll have plaintiffs associated

22  with --

23      UNIDENTIFIED VOICE:  And I told Mr. Osen I have no

24  objection to the addition of those new plaintiffs subject to

25  his representations made that none of them were new plaintiffs

15

1  in the liability trial, which means we don't have to depose

2  them now.  And then when all the facts are done, Your Honor,

3  we can again lay this all out on the schedule.  We will

4  proceed with the three motions, two of which were suspended in

5  the Daimler motion and then the Nat West motion.  And again, I

6  think Mr. Osen and his colleagues can get on the phone very

7  quickly and work out a schedule for all of these matters.

8          MR. OSEN:  So there -- one more motion to add, log

9  to the fire, and we've advised defense counsel of this, is

10  that we do intend to file a motion to consolidate the two

11  cases for trial, which the defendant will oppose, and we'll

12  have a briefing schedule for that as well.

13          THE COURT:  Okay.  It might be premature if you're

14  going to have the dispositive motions to brief, but it's

15  certainly something if it's worth bringing to Judge Irizarry's

16  attention now because it's always good to focus on -- to know

17  what's looming in the background as you determine --

18          MR. OSEN:  Well, the issues that are subject to

19  reconsideration and so forth and summary judgment do not deal

20  with the defendants' conduct, that is, the scienter aspect of

21  it.  So whatever affects the ability of claims going forward,

22  such as whether Hamas committed the attacks, admissible

23  evidence of that or approximate cause would apply equally in

24  both cases, so we think it makes sense to raise it at this

25  juncture.

1          UNIDENTIFIED VOICE:  And we can agree on a briefing

2     schedule, but we will oppose the consolidation of the highly

3     prejudicial defendants to have to defend themselves in the

4     same trial and any savings in time would be most minimal.

5     These cases -- we then request some time to having to

6     consolidate, but we will agree to a schedule on the briefing.

7          THE COURT:  All right.  I think you will have to put

8     that in a pre-motion letter with Judge -- addressed to Judge

9     Irizarry, so you can time that letter in conjunction with your

10    other letter happily advising her that she has three more

11    motions to decide.

12         MR. OSEN:  Probably figured once there were three, a

13    fourth one would not materially change the --

14         THE COURT:  Right.  Well --

15         MR. OSEN:  -- [indiscernible].

16         THE COURT:  I think it's good to put it on the

17    table.  She may not decide it first.  Obviously it makes sense

18    for her to decide the other motions first.

19         UNIDENTIFIED VOICE:  So I think plaintiffs' counsel

20    and I can strive to get a proposed scheduling order in to Your

21    Honor before we all break for the Memorial Day weekend, if

22    that suits the Court for the end of next week?

23         THE COURT:  Yes.

24         MR. OSEN:  Yeah, I think that's --

25         THE COURT:  So the 26th?

17

1          UNIDENTIFIED VOICE:  Sure.

2          UNIDENTIFIED VOICE:  Think it would be the 27th,

3    Your Honor.

4          THE COURT:  The 27th is the Friday, so --

5          UNIDENTIFIED VOICE:  Yeah.  So we'll get --

6          THE COURT:  -- it's an -- do you need the extra day?

7          UNIDENTIFIED VOICE:  No, we can --

8          THE COURT:  You said ten days, so --

9          MR. OSEN:  I think the 26th.

10         UNIDENTIFIED VOICE:  We can aim for the 26th.

11         MR. OSEN:  We'll achieve that.

12         THE COURT:  If you file it on the 27th, don't bother

13   sending me a letter.  I'll be here on the 27th.  I set

14   aspirational goals sometimes.

15         UNIDENTIFIED VOICE:  Thank you, Your Honor.

16         THE COURT:  Now, at a conference a long time ago I

17   had expressed some concern about total bifurcation of

18   discovery and delay of discovery.  I -- on damages it's hard

19   for me to see -- well, to say competently that cases, you

20   know -- certainly Nat West won't go to trial, but I haven't --

21   you know, [indiscernible] motion papers and at this point I

22   would like you to think about ways of collecting more

23   information on damages and it's changing it so that you'll be

24   in a position should the case go to trial on liability.  You

25   know, you'll be better focused on what ultimately -- where

18

1   ultimately you're going to go and then more significantly I

2   think some damages discovery is usually because I do think

3   this might be a good time to talk about settlement again.

4           UNIDENTIFIED VOICE:  Well, Your Honor, on settlement

5   we need to have proposed --

6           THE COURT:  Okay.  You want to go off the record on

7   this?  I mean, we can record this, but we'll seal this part of

8   it.

9           UNIDENTIFIED VOICE:  I think we have to go off

10  record.

11          THE COURT:  Okay.

12          UNIDENTIFIED VOICE:  We have proposed to plaintiffs'

13  counsel that they make a new settlement demand, each of Credit

14  Lyonnais and Nat West.  I'll remind the Court that when we

15  discussed settlement in 2013 Nat West was not a party because

16  the case at that point had been dismissed and had not yet been

17  reinstated by the Second Circuit.

18          As Your Honor knows, when we talked about settlement

19  just with Credit Lyonnais in 2013, the gap did close -- did

20  shrink somewhat.  Not a lot, but somewhat.  They made demands.

21  They made a plaintiff-by-plaintiff demand and the bank

22  responded.  We went for two rounds.  We've asked them to make

23  another demand.  There's a major event that has occurred.

24          THE COURT:  Yes.  The Arab Bank case.

25          UNIDENTIFIED VOICE:  The Arab Bank case.  And I

1   don't have any definitive information about the terms of that

2   settlement other than what I read in the press, but the press

3   reports are that the plaintiffs achieved a settlement

4   involving payment of a billion dollars.

5          Well, if that's the case, there has to be a dollar-

6   for-dollar offset for whatever is recovered by each of these

7   plaintiffs from Arab Bank and I would have expected that the

8   plaintiffs would be willing to make a revised settlement

9   demand of both banks.  Both Credit Lyonnais and Nat West have

10  invited revised settlement demand, which I would expect to be

11  lower than it was in 2013 if what I understand from the press

12  there has been or will soon be this very substantial billion-

13  dollar recovery by plaintiffs.  Again, specific amounts were

14  listed for each plaintiff.  To the extent each of those

15  plaintiffs has recovered or is scheduled to recover funds from

16  Arab Bank against those amounts that there has to be an

17  offset.

18         Obviously, everyone agrees you can't be compensated

19  twice for the same injury, so I'm hoping that -- I was hoping

20  until last week that I would get a revised settlement demand

21  from each.  I was told there would be a revised settlement

22  demand for Credit Lyonnais and that the plaintiffs -- well,

23  I'll leave it at that for now.

24         I did get a communication this morning about the

25  possible proposal with respect to Nat West, but that's where

20

1  we stand.  I've made clear to both -- to both plaintiff groups

2  that both Credit Lyonnais and Nat West invite or revised

3  demands reflecting the impact of the Arab Bank settlement.

4           MR. OSEN:  I don't think it will surprise the Court

5  to learn that we take a very different view of the impact of

6  not just the Arab Bank trial, but also the Sokolov case --

7           THE COURT:  Yes.  There's -- that was --

8           MR. OSEN:  -- the damages awarded in those cases

9  that admittedly involving verdict rather than settlement.  We

10 did indicate to Mr. Friedman that we will endeavor to put

11 together what we hope is a creative proposal with respect to

12 Nat West.  Obviously we have both based on what you've heard

13 and what you've seen previously low expectations of success in

14 that regard, but we're certainly willing to try.  We don't see

15 any advantage or benefit to the parties in wasting time,

16 especially with what looks to be another round of extended

17 briefing on other issues, so we'll put together something for

18 the defendant Nat West since they haven't participated

19 previously in these kinds of discussions and, you know,

20 hopefully that client is briefed on and has the benefit of not

21 just the press reports but the Sokolov verdict as well to

22 focus their minds on the proposal that we'll be making in the

23 next ten days or so.

24           THE COURT:  Well, I think I -- it is useful to

25 consider the fact that there are settlements -- one verdict

21

1   and some default judgments, too.  I mean, I don't know how

2   likely it is.  I don't know if there's an overlap.

3          MR. OSEN:  I'm sorry, between -- overlap in

4   the plaintiffs --

5          THE COURT:  Yes, there were a couple of default

6   judgments in some terrorism-backed cases.  Are any of the

7   plaintiffs involved?

8          MR. OSEN:  Some of our plaintiffs in these actions

9   are -- actually received a verdict in Sokolov.

10          THE COURT:  Yes.

11          MR. OSEN:  And obviously everyone in the four cases,

12   the plaintiffs were in the Arab Bank trial as well, so I think

13   we have a fairly good idea what the range of damages are and

14   also obviously what the settlement numbers are likely to be.

15          So in short, we'll be conferring with the defendant

16   Nat West and will make a proffer to them I think within the

17   next ten days.

18          THE COURT:  Okay.  So whatever your view of a

19   settlement value of the claims in these four cases, I would

20   think that you have to account for a setoff of any recovery.

21          MR. OSEN:  We per -- I can't speak for Mr. Werbner.

22   We personally don't in terms of settlement.  We do certainly

23   in terms of verdict.  Any verdict that is in force against the

24   defendant obviously as an offset as you can only collect once.

25   To the extent that we are dealing with claims that are

22

1   catastrophic injury trebled by statute, I can say without

2   getting into the details that there's no meaningful setoff

3   from our view to any client in the settlement context.

4         UNIDENTIFIED VOICE:  Your Honor, as I said to

5   Mr. Osen last week when he made that distinction in the

6   telephone conversation with me, that doesn't make any sense to

7   me.  I understand what he's saying that in a catastrophic

8   injury case or a death case the sky's the limit as to what

9   they will ask the jury for and, therefore, a settlement they

10  received from Arab Bank should not be an offset.

11        But coming back to the real world, they presented to

12  us and to Your Honor in 2013 specific amounts on a plaintiff-

13  by-plaintiff basis.  That is what the plaintiffs represented

14  at the time would be fair compensation to them for their

15  injuries.  Now anything they have received in the interim

16  should be offset against that; otherwise, it does not reflect

17  well on the credibility of what they proposed in 2013.

18        So I think we're all agreed that you can only be

19  compensated for an injury once.  The plaintiffs asked for

20  compensation in 2013.  They gave amounts.  If there are

21  amounts that have been collected against that in an honest

22  settlement process there should be offsets.  And this notion

23  that there is an offset for a verdict but not for a

24  settlement, with due respect that smacks of a certain amount

25  of gamesmanship looking towards what a jury might award later

23

1   on.  My clients, Credit Lyonnais engaged in -- we've made

2   settlement negotiations based on the amounts he presented.

3   Those amounts should now be reduced if this is an honest

4   settlement process.

5           I'll also note, Your Honor, that while Mr. Osen has

6   said and I appreciate his telling us that there will be a

7   settlement proposal made with respect to Nat West, he did not

8   refer to Credit Lyonnais and I don't understand why there

9   would not be another settlement proposal made with respect to

10  Credit Lyonnais.

11          MR. WERBNER:  I don't --

12          THE COURT:  Wait.  Yeah, go ahead.  I -- you've

13  been --

14          MR. WERBNER:  Well --

15          THE COURT:  -- strangely quiet so far, Mr. Werbner,

16  so I'll give you a chance to talk.

17          MR. WERBNER:  Thank you, Your Honor.  I just haven't

18  been in a case where the defendant gets to sort of dictate

19  what's a reasonable settlement and who's acting in good faith

20  and what they must do because of what they did in a certain

21  prior year.  And there's all kinds of things that go into

22  strategies toward a settlement.  And if the Court directs us

23  to engage in settlement, it will be done in good faith.  That

24  happens all the time.

25          But for the defendant to say, you gave us a number,

24

1   you know, two or three years ago and now we want you to give

2   us a lower number because we think that the settlement

3   would -- needs to be fair in this way, that's just not how the

4   process works.  And I think that I'm not commenting for very

5   specific reasons on what the settlement was or what's been

6   paid or what will be paid or what the amounts are.  But if

7   these people were demanding because of the catastrophic nature

8   of their losses, daughters killed, husbands killed, you know,

9   10, 12, 15 million dollars, and asking juries for amounts in

10  excess of that, the fact hypothetically that a person received

11  a million dollars doesn't mean after that offset is applied

12  there isn't a huge amount in controversy.

13           So even if there is a credit given the defendant

14  down the road, we still have fundamental differences about the

15  liability facts and about what a jury would award to those

16  particular families who suffered those losses.  So --

17           THE COURT:  Well, okay.  Now, I -- thanks for

18  summing it up, but anyway, I view settlement in each case as a

19  process that's -- it's a process and certainly can build upon

20  what's in the past.  But as you all know when nobody signs on

21  the dotted line, then you start afresh.  I think it's

22  unrealistic for the plaintiffs to rely on the Sokolov verdicts

23  because each case is different.

24           I'm not quite as familiar with the facts in the

25  Sokolov case, so I really can't make any opinion.  I know in

1   the Arab Bank case the defendant wavered considerably under

2   the earlier preclusion order that was in place and, you know,

3   the risks are much greater in these two cases.  I say two

4   cases.  Actually, four cases, but we're dealing with Nat West

5   and Credit Lyonnais, so it -- it is always I think to the --

6   the benefit of the plaintiffs -- to the benefit of the

7   plaintiffs to look at settlement as you yourselves have

8   recognized.  You know, we are years off from any trial on

9   damages and I don't think it's in the interests of any

10  plaintiff to wait five years.  And maybe you'll get a verdict

11  as big as Sokolov, but that's -- maybe not.  I think there's a

12  good chance that it will be lower.  It just depends on the

13  jury; depends on how the evidence presents.  The conduct of

14  the bank is different and it's foolish not to take this

15  opportunity to reassess.

16          And so you're putting all your hopes on the nice

17  big, fat verdict you've gotten.  The defendant is relying on

18  the analysis of the plaintiffs early on before there was any

19  verdict and I mean, you have to be realistic, defendants, that

20  now the plaintiffs are in a very different position.  But

21  ultimately, the whole point of these cases is if there is

22  liability to compensate the plaintiffs and you would really be

23  doing your clients a great disservice on both sides by not

24  taking a step back and looking at whether or not it would be

25  in their interests to just change -- to come forward with some

1   sort of demand or offer that might interest the other side to

2   engage in more meaningful discussions.  You know, the Arab

3   Bank was -- had the added incentive of a nice, big finding of

4   liability, but that's not quite as clear in these cases here.

5            So I think you ought to reassess and I don't think

6   you should use the Sokolov verdict -- verdicts as the basis

7   for your settlement demands.  I assume whatever settlement is

8   reached in the Arab Bank case it will be clothed in

9   confidentiality, but, you know, we -- you know, I agree with

10  the plaintiffs to a certain extent talking about numbers is

11  not a precise science and it may be unfair to bind the

12  plaintiffs to what was their settlement demand years ago.

13  But, you know, the law has changed and the circumstances have

14  changed.  And, you know, as you know we -- the law and

15  causation and, you know, the tie between conduct and damages

16  is slowly narrowing.  Maybe not so slowly, but everybody

17  should just take a look and see if it benefits your client to

18  tell them to relent a little bit in their settlement

19  positions.

20           So maybe what makes sense is after you send the

21  schedules I'll take a look and maybe you should propose some

22  dates for a further conference to explore settlement.

23           MR. OSEN:  We can certainly at a time we're at 26th

24  the defendant will have the benefit of our Nat West proposal,

25  take them and assess the utility of proceeding further.

1            THE COURT:  Yeah, and plaintiffs, too.  You know, I

2   don't know what is to be gained by continuing this litigation

3   and the most the plaintiffs can hope for is that there will be

4   claims remaining after the motions are decided and then you're

5   going to put your clients to discovery about their injuries

6   and put them before a jury.  I -- maybe that's what they want

7   to do, but I would think that the majority of them, they do

8   not want to do that and they would like to bring closure.

9            MR. OSEN:  I can only speak for my clients, Your

10  Honor, but the vast majority of them are principally

11  interested in a liability verdict.  That's a matter of

12  principle for them.  They view what they do in these cases as

13  a matter of public policy as private attorneys general.  And

14  so while certainly they have other considerations as well,

15  that's not an insignificant factor for them.

16            THE COURT:  I would think that a settlement of some

17  magnitude may certainly satisfy their need for affirmation of

18  their position.  Anyway, that's -- it -- it's -- to me, it's

19  just a needless expenditure of time if we can get the parties

20  to settle.  I mean, both sides have to move substantially.

21            Anyway, we'll see what you come up with in your

22  proposed schedule and I'd like you to add a settlement

23  conference to that schedule, but call my chambers first on any

24  proposed date.

25            UNIDENTIFIED VOICE:  We will do that, Your Honor.

                                                                        28

1            THE COURT:  I'll have to disclose, of course,

2    needless to say, we will be in touch with Judge Kogan's

3    chambers.

4            UNIDENTIFIED VOICE:  I'm sorry, Your Honor?

5            THE COURT:  We will be in touch with Judge Kogan's

6    chambers to monitor the progress in the Arab Bank settlement.

7            UNIDENTIFIED VOICE:  And we should clear the date

8    for the settlement conference with Mr. Perchansky before

9    submitting it?

10           THE COURT:  Might as well or you can propose some

11   dates.  I --

12           UNIDENTIFIED VOICE:  Okay.

13           THE COURT:  Before I have some time in June, but you

14   know my dance card gets filled up quickly.

15           UNIDENTIFIED VOICE:  Thank you, Your Honor.

16           THE COURT:  Okay.

17           (Proceedings concluded at 11:50 a.m.)

18                     *  *  *  *  *  *

19

20

21

22

23

24

25

29

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6    _____

7    Ruth Ann Hager, C.E.T.**D-641

8    Dated:  May 17, 2016

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25