# Exhibit 18

OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601          345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001
T. 201.265.6400   F. 201.265.0303                              T. 646.380.0470  F. 646.380.0471

April 20, 2015

**VIA ECF**

Hon. Brian M. Cogan
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Linde v. Arab Bank, PLC*, 04-CV-2799 (BMC)(VVP) and related cases
              **Motion for Partial Reconsideration of the April 8, 2015 Order**

Dear Judge Cogan:

      Pursuant to Loc. Civ. R. 6.3, and Fed. R. Civ. P. 59(e), the *Linde* and *Litle* Plaintiffs respectfully request that the Court partially reconsider its April 8, 2015 Order's[1] grant of Fed. R. Civ. P. 50 relief concerning the January 29, 2004 Bus No. 19 suicide bombing (the "Bus No. 19 Attack"). Rule 6.3 relief is appropriate because the April 8 Order appears to have understandably misconstrued a key trial exhibit regarding Hamas's responsibility for the Bus 19 Attack that "... might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

      As Plaintiffs explain in detail below, the Court granted Rule 50 relief based in part upon the assumption that the trial evidence demonstrated that Muhammad Nashash, who recruited the Bus No. 19 suicide bomber, was convicted of acting on behalf of the Al Aqsa Martyrs Brigade ("AAMB"), not Hamas. In fact, Plaintiffs' expert, Mr. Shaked, merely testified on cross-examination that the original Hebrew version of the Nashash sentencing *stated* that Nashash had acted on behalf of AAMB. The true facts are: (a) Nashash was convicted of acting on behalf of Hamas; (b) the Hebrew document introduced into evidence at trial mistakenly referred to Nashash's affiliation with AAMB; (c) Nashash's indictments indisputably establish that the Hebrew sentencing protocol was mistaken in referring to AAMB; (d) Shaked never stated that Nashash was not affiliated with Hamas; and (e) Shaked's testimony on direct and redirect and the exhibits introduced at trial suffice to support the jury's finding that Hamas substantially contributed to the Bus No. 19 Attack.

---

[1]    The "April 8 Order", reported *at Linde v. Arab Bank PLC*, __ F. Supp. 3d ___, 2015 WL 1565470 (E.D.N.Y. Apr. 8, 2015).

Hon. Brian M. Cogan, U.S.D.J.
April 20, 2015
Page 2 of 8

**The Bus 19 Attack Evidence and the April 8 Order's Holding**

The April 8 Order states:

> With respect to the January 29, 2004 suicide bombing on Bus No. 19, Mr. Shaked explained that the suicide bomber, Ali Ja'ara, <u>approached two individuals, Nufal Adawin and Muhammad Nashash, and indicated that he wanted to carry out a suicide attack. They prepared an explosive device and planned an attack</u>. Adawin was later convicted of various terror-related crimes, including membership in Hamas. But the initial attack was never carried out, because Ja'ara encountered a checkpoint on the way to his target and was forced to turn back. Sometime later, Ja'ara approached operatives from the AAMB and reiterated his desire to carry out a suicide attack. <u>Cross-examination revealed that Nashash was, in fact, convicted of membership in another Palestinian terrorist group, the AAMB. [FN6]</u> Mr. Shaked acknowledged that the AAMB, not Hamas, provided Ja'ara with the bomb and drove him to his target, where he boarded a bus and detonated it. <u>Ja'ara identified himself as an AAMB operative in his will</u>. Four AAMB operatives were convicted for the Bus No. 19 attack. The ISA report on which plaintiffs heavily relied stated that the AAMB claimed responsibility for the Bus No. 19 attack.

> > FN6 <u>Due to an apparent translation error, the copy of Nashash's conviction that plaintiffs originally submitted stated that Nashash was convicted of membership in Hamas. Mr. Shaked conceded, upon reviewing the document from the stand, that Nashash was actually convicted of membership in the AAMB.</u>

*Id.* at *4 (emphasis added).

The April 8 Order thereafter awarded Rule 50 relief to Defendant for this Attack, holding:

> Hamas certainly bears some moral responsibility for the bombing of Bus No. 19. But that is not enough, in light of the uncontroverted evidence that the AAMB built and supplied the bomb, <u>that the bomber himself wrote in his will that he was working on behalf of the AAMB</u>, and that several AAMB operatives were convicted for planning the attack. Ultimately, attribution of the attack to Hamas is not a question of moral responsibility, but one of whether Hamas's involvement in bringing about the attack was sufficient for a reasonable jury to find by a preponderance of the evidence that Hamas committed the attack. <u>The evidence demonstrated that the AAMB used its resources to carry out the Bus No. 19 attack, including building the actual bomb used. If Hamas did not use its resources to carry out the attack in which plaintiffs were injured, then defendant's support in augmenting those resources could not have been a substantial factor in causing that attack.</u>

*Id.* at *34 (emphasis added).

Hon. Brian M. Cogan, U.S.D.J.
April 20, 2015
Page 3 of 8

The April 8 Order's reasoning relies in part on concluding that the jury should not have credited Mr. Shaked's assertions regarding Muhammad al-Nashash's affiliation with Hamas because, according to the Order, Nashash (who recruited the suicide bomber) was convicted of being an AAMB operative, not a Hamas operative. However, Mr. Shaked *never* concluded or conceded that Nashash acted on behalf of AAMB, but only acknowledged that the sentencing/conviction document admitted into evidence (PX4045) *stated* that Nashash was an AAMB member. But, as clarified below, the "apparent translation error" in PX4045 referenced in the April 8 Order actually reflects a transcription error in the original Hebrew language version of PX4045. Although, as set forth below, defense counsel made use of the anomaly during cross-examination, the jury had the benefit of Mr. Shaked's testimony on re-direct as well as a full translation of PX4045. Both pieces of evidence – the re-direct testimony and the document – taken as a whole – permitted the jury to credit Mr. Shaked's opinions on attribution, and thus conclude that Plaintiffs had established Hamas' responsibility for the Bus No. 19 Attack by a preponderance of the evidence.

## Nashash's Indictments Demonstrate He Was Convicted of Association With Hamas, Not AAMB

Attached hereto as Exhibits A and B are certified translations of the original and amended indictments for Muhammad Nashash.[2] As the Court will observe, the terrorist organization referenced in *each* document is Hamas, including Hamas's *Izz al Din Al Qassam* Brigades. The amended indictment was issued because it served as the basis for Nashash's subsequent plea bargain. PX4045 (which includes the verdict, sentencing and "Reasons for Sentencing") rejected the terms of the plea bargain as it pertained to Nashash's proposed prison sentence, and increased it, for reasons explained *infra*. In the portion of the document explaining the need for a harsher

---

[2]    Because the translation error (of the transcription error in the original Hebrew) was first raised by Defendant during trial, these documents are not in the record and were not on Plaintiffs' trial exhibit lists. The issue of Nashash's role was addressed on re-direct, but when issuing its April 8 Order, the Court could not have known that the error was with the exhibit itself and not the translation. However, the Court can take judicial notice of the indictment(s) under Fed. R. Evid. 201 simply as a means of comparing the language in the document with that in the subsequent conviction/sentencing document, PX4045, to confirm that the jury did not err when it credited Mr. Shaked's opinions regarding Hamas's responsibility for the attack notwithstanding PX4045's reference to the AAMB. *See* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). Cf. *United States v. Knauer*, 635 F. Supp. 2d 203, 206 n.2 (E.D.N.Y. 2009) (allowing judicial notice of documents after trial and for the first time on appeal); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 fn 18 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011) (taking judicial notice of newspaper at post-trial conference); *United States v. Lovett*, 2015 WL 417600, at *5 (taking post-trial judicial notice of location to establish venue) (citations omitted); *Domus, Inc. v. Davis-Giovinazzo Const. Co., Inc.*, 2011 WL 3666485 (E.D. Pa. Aug. 22, 2011) (taking post-trial judicial notice of articles of conversion and articles of merger filed with the Pennsylvania Department of State and of the fact that defendant was successor in interest to predecessor bank, citing *Weaver v. Conrail, Inc.*, 2010 WL 2773382, at *10 (E.D. Pa. Jul. 13, 2010) for principle that a court may take judicial notice of public records). *See also Liang v. City of New York,*, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (considering complaint reports, follow-up reports to the complaint, and arrest reports "but only to establish their existence and legal effect, or to determine what statements they contained[,] not for the truth of the matter asserted" (emphasis added, alterations and internal quotation marks omitted); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order to determine what statements [the document] contained—but again not for the truth of the matters asserted." ) (Emphasis added).

Hon. Brian M. Cogan, U.S.D.J.
April 20, 2015
Page 4 of 8

sentence, the document contains a transcription error, inadvertently referencing "Al Aqsa Martyrs Brigades" rather than "*Izz al-Din Qassam* Brigades." *See* PX4045 at L_C180761.[3]

PX4045 convicts Nashash (Charge B) with "Affiliation and activity in an illegal association, in accordance with regulation 85(1)(A) in the Defense Regulations." This corresponds to the Amended Indictment's "Item four" which charged him with being "a member in the *Izz al-Din al-Qassam* Brigades, which is an illegal association" and lists the other members of the Hamas cell, including Nawfal Adawin, the other Hamas operative identified by Mr. Shaked in connection with the Bus No. 19 Attack, thus making clear that the reference to AAMB in the subsequent "Reasons for Sentencing" was an error.

**Mr. Shaked Did Not Concede That Nashash Was An AAMB Member, But Instead Merely Acknowledged The Language Set Forth in the Sentencing Language in PX4045**

On August 27, 2014, Mr. Shaked testified during his cross-examination:

Q. Okay. And this is the verdict and sentencing for Muhammad Nashash, the person you claim is a part of Hamas, in connection with the Bus 19 bombing, correct?

A. Yes.

\*\*\*

THE WITNESS: Could I explain something small, if I may?

Q. You'll have an opportunity to explain when your lawyer asks the questions. Let me ask you a couple questions, please. Thank you. On page -- page 11 of the translation of Mr. Nashash's sentencing, the Israeli court says --

MR. INGERMAN: Your Honor, I would like to show this to the jury, please.

Q. It says the defendant, which is Mr. Nashash, was convicted of the crime of membership in an unlawful association, and that since the end of March, 2003, and through the time of his arrest, he was a member of the al-Aqsa Martyrs Brigade. Do you see that, sir?

A. I see that.

---

[3]     One can only speculate as to the cause of the misidentification in the original text of the "Reasons for Sentencing" portion of the document. In any event, the error was transcribed in the Hebrew document, then erroneously *corrected* by the English translator to state "*Izz ad-Din al-Qassam* Brigades" (perhaps because the next paragraph refers to the Defendant introducing Ja'ara to Nawfal Adawin and Ja'ara asking to be allowed to carry out an attack in the name of Hamas). In any event, at trial, Defendant requested that the translation of PX4045 be corrected to reinstate (and accurately reflect) the original verbiage in the Hebrew. Since the translation *was* incorrect and the indictments were not available to demonstrate the error, the English translation of PX4045 was "corrected."

Hon. Brian M. Cogan, U.S.D.J.
April 20, 2015
Page 5 of 8

Q. And you understand, do you not, that Muhammad Nashash, who was involved in the Bus 19 bombing, January 24th, 2004, is a member of the al-Aqsa Martyrs Brigade from Fatah and not Hamas. You understand that, don't you?

A. From this document, I do understand that.

MR. INGERMAN: Let's go back to slide 51, Shawn, if we can.[4]

Q. You have, on the slide that you demonstrated to the jury, Muhammad Nashash as a Hamas operative; is that right?

A .That's correct.

Q. And he was convicted by the Israeli courts of being a member of the al-Aqsa Martyrs Brigade, correct?

A. As I saw in the conviction, that is, indeed, correct.

Q. So there's a mistake in your slide, right?

A. May I explain?

Q. Was Mr. Nashash convicted of being a member of the al-Aqsa Martyrs Brigade?

A. Yes. According to the conviction papers, yes.

Trial Tr. ("TT") at 1286:16-1288:11 (emphasis added).

Mr. Shaked's multiple references to "the conviction papers" thus communicated Mr. Shaked's opinion that the fact that PX4045 referenced AAMB did *not* undermine his conclusions that Nashash acted on Hamas's behalf, and that Hamas bore responsibility for the Bus 19 Attack. On re-direct examination, Mr. Shaked explained why Nashash acted as a Hamas operative at *all* relevant times:

Q. This is the one that you talked to the bank about where something was written across this person, Nashash, and you asked to explain. Do you recall that dialogue back and forth?

A. I recall that.

Q And the bank told you to wait until I was up here, so what was your explanation as to putting Hamas associated with Nashash?

---

[4]    A copy of Slide 51 is attached hereto as Exhibit C.

Hon. Brian M. Cogan, U.S.D.J.
April 20, 2015
Page 6 of 8

A. Because Nashash was the person who made the connection between Ali Ja'ara and Nufal who was from Hamas because <u>Nashash acted on behalf of Hamas with Nufal to dispatch Ja'ara to carry out the attacks in Jerusalem.</u>

TT1339:21-1340:7 (emphasis added).

Mr. Shaked thereafter further clarified that he maintained his opinions *notwithstanding* the fact that PX4045 referenced AAMB:

Q. Now, let's go to the next slide. This is 4045. This is the conviction of Nashash. Now, in this particular document, in this excerpt from the conviction record, let's go through this and focus for a minute. First of all, the defendant, that would be Nashash, introduced Ali Ja'ara. Was that the suicide bomber?

A. Yes. Ali Ja'ara is the suicide bomber.

Q. And this is telling us that Nashash actually introduced the suicide bomber to Adawin, the Hamas representative. Is that how you read it?

A. Yes, I also read it like this.

Q. <u>And does this, likewise, indicate that the suicide bomber specifically asked to be allowed to carry out the attack in the name of Hamas?</u>

A. Yes, indeed, this is what it says in the second line; that the terrorist Ali Ja'ara had asked to carry out the attack on behalf of Hamas.

Q. Now go to the next slide, please. This is continuing in Exhibit 4045. This is an excerpt that I have underlined. It states, "It should also be recalled that the attacker, that would be the suicide bomber, whom Nashash agreed to connect with the terrorists who sent him to the attack, did, indeed, carry out an attack two weeks later." Did I read that correctly?

A. Yes, indeed, that's right.

Q. Now, finally, with respect to your slide -- we won't go back to it for the sake of time -- but with respect to your slide, <u>are you still of the opinion that your slide, at least in terms of your entire investigation, is 100 percent completely accurate</u>?

A. <u>I do confirm that.</u>

TT1342:1-7 (emphasis added).

**The Jury Was Entitled to Credit Mr. Shaked's Opinions And Conclude That Hamas Was Responsible for the Bus 19 Attack**

Plaintiffs were only obliged to establish Hamas's responsibility for the Bus No. 19 Attack by a preponderance of the evidence, and questions regarding whether or not to credit Mr. Shaked's testimony were issues for the factfinder.[5] Mr. Shaked never disputed AAMB's responsibility for the Attack, but instead testified as to how Hamas, and specific Hamas operatives (including Nashash), played a critical roles in enabling Ja'ara to plan for and perpetrate the Attack.

We respectfully submit that PX4045 also *supports* the jury's finding. The Israeli Court, in rejecting the terms of Nashash's plea bargain, concluded:

> To us, the fact that the attacker stopped in the Palestinian territories and not inside Israel, does not bear much significance. It is not important whether it was an IDF roadblock or a Palestinian Authority roadblock that made the suicide bomber postpone the execution of the attack. The measure of courage, determination, or caution of the suicide bombers does not need to become a consideration in favor of easing the punishment of the dispatchers. What is important – and grave – is the fact that the attacker was launched, like a bullet out of a rifle's muzzle, and from there on the result depended on coincidental circumstances. (PX4045 at L_C180762, emphasis added).

Correspondingly, Mr. Shaked opined:

> I would like to first of all emphasize that this is not a joint venture of those two organizations. It's only a shared claim of responsibility. Because after the planning of the attack and after the fact that it was intercepted for security reasons that I have mentioned earlier, the Fatah people have located this Ja'ara and saw him as the potential suicide bomber. It was very, very easy, therefore, to mobilize him for the mission, because he had already undergone the preparations in Hamas. Ali Ja'ara was the ripe fruit in the hands of the al-Aqsa Martyr Brigade; therefore, from the minute he was found, and, therefore, later dispatched, they didn't need too much preparation. They simply found the right moment, they fitted him with explosive belt, transported him to Jerusalem to carry out the attack. This is why I see here a double responsibility, a shared, a joint responsibility, both Fatah, a joint responsibility for this attack, because without this basic important preparation carried out by Hamas, I doubt whether this terror attack would have been executed. And it was executed because the suicide bomber was already prepared to carry out the attack....

TT 1239-1240 (emphasis added).

---

[5]   *See Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 447 n.20 (E.D.N.Y. 2013) (denying summary judgment with respect to Bus 19 Attack, "[f]or the January 29, 2004 attack in Jerusalem, where there is a judgment linking Hamas to the attack, Defendant argues that Hamas was not responsible because there is evidence that another group carried out the attack.... At most, the contradictory evidence raises a triable issue of fact.")

Hon. Brian M. Cogan, U.S.D.J.
April 20, 2015
Page 8 of 8

**Conclusion**

As the April 8 Order observes, a court reviewing a Rule 50 motion "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." April 8 Order at *12 (citation omitted). To the extent that the April 8 Order is predicated, in part, on the view that Mr. Shaked's testimony concerning the Attack was erroneously based on a translation error (or an error in reviewing PX4045's AAMB reference), the Amended Indictment makes clear that it was not. As the April 8 Order correctly notes, Plaintiffs do not dispute that the suicide vest ultimately used in the Bus No. 19 Attack was provided by AAMB, but we respectfully submit that the jury was legally entitled to reach the same conclusions independently arrived at by both the Israeli Court (reflected in Nashash's sentencing) and Mr. Shaked. The jury reasonably concluded that Hamas's recruitment of the suicide bomber and all the steps taken by the Hamas cell to prepare him for his mission substantially contributed to the lethal result. The evidence at trial established that the suicide bomber wanted to be known as an *Izz ad-Din al-Qassam* Brigades "martyr" <u>despite</u> being a Palestinian Authority policeman and having close contacts with AAMB operatives. In sum, Ali Ja'ara's desire to die and murder on behalf <u>of Hamas</u> was the intended by-product of Hamas's extensive devotion of its resources (documented at trial) to lionize terrorists like Ja'ara through its websites, videotapes, posters and billboards and various other propaganda channels. Moreover, his preparation, training with the suicide vest and planning for the attack was facilitated by Hamas.[6]

For these reasons, we respectfully request that the Court reconsider this narrow aspect of its April 8 Order.

Respectfully submitted,

/s/ Gary M. Osen

Encls.

cc:    All Counsel

---

[6]    *See* PX4045 at L_C180671 ("At Ali's request, the Defendant and Nawfal filmed him at Nawfal's home. They prepared the background, which included a rifle, a Hamas flag, pictures of terrorists, and the explosive belt. Ali read his "will", which was addressed to his parents and was written by Nawfal documented Ja'ara's plan to conduct a suicide bombing).

# Exhibit A

**Global Arabic Translation Services**

الخدمات العالمية للترجمة العربية

26 Shainfein St., Kfar-Saba, Israel
+972 54 8349.337
www.GatsTranslations.com

## <u>CERTIFICATION</u>

I, Yaniv Berman, do hereby certify that as a qualified translator I am fully conversant with the English and Hebrew languages, and that to the best of my knowledge, the attached document, the Indictment of Muhammad Kayed Khalil al-Nashash, is a true and accurate translation of the original text from the Hebrew language into English.

Date: April 16, 2015

Yaniv Berman

Israel                                         Defense                                           Forces

| In the Military Court | Court file: | /04 |
| --- | --- | --- |
| | Prosecution file: | 2349/04 |
| J u d e a | | |
| Before a panel | P.A. File | Hebron3797-3800/04 |

### In a Case Between the Military Prosecutor – the Accuser

### -versus-

Muhammad Kayed Khalil al-Nashash ("Hamuda")

I.D. 907050298, born on 22 OCT 1979, a resident of Al-Izza Refugee Camp

Incarcerated since 1 September 2004

### The Accused

# Indictment

The aforementioned Accused is hereby charged with committing the following offenses:

Item one:

Nature of the offense: Throwing objects at a person or property, an offense under Section 53A(2) of the Order regarding Security Provisions (Judea and Samaria) (No. 378), 5730-1970.

Details of the offense: The aforementioned Accused, in the area, in the mid-1990s or thereabouts, threw an object, including a stone, at a person or property with the intention of harming a person or damaging property, namely:

The aforementioned Accused, on the said date, in the area of Rachel's Tomb or in the vicinity, during riots associated with the opening of the Western Wall tunnel, took part in a procession protesting the opening of the tunnel, during which he threw stones at IDF soldiers, who were at the location, with the intention of harming them.

Item two:

Nature of the offense: Conspiring to commit an offense the penalty for which is more than three years' imprisonment, an offense under Section 22 of the Order regarding Rules of Responsibility for an Offense (Judea and Samaria) (No. 225), 5728-1968 and under Section 51 of the Order regarding Security Provisions (Judea and Samaria) (No. 378), 5730-1970.

Details of the offense: The aforementioned Accused, in the area, in 2003 or thereabouts, conspired with another person deliberately to cause the death of another, namely:

The aforementioned Accused, during the aforementioned period, in Bethlehem or thereabouts, conspired with Muhammad Mustafa Muhammad Najjar, to booby trap a stolen vehicle next to the Open University so as to blow it up and cause the death of a policeman by the name of Ofer, who came to the area of the refugee camp with the aim of locating stolen vehicles. The Accused and his friend planned to place the explosive charge so that it would explode when the policeman approached the vehicle, thus causing his death

Item three:

Nature of the offense: Damaging the security of the area, an offense under Section 53(A)(4) of the Order regarding Security Provisions (Judea and Samaria) (No. 378), 5730-1970.

Details of the offense: The aforementioned Accused, in the area, in 2004 or on a date close to it, committed an act or omission that damages, harms, interferes with or endangers the security of the area or the security of IDF forces and its soldiers, or their activities, or the use or security of any of the following: a ship, aircraft, port, pier, platform, anchorage, airport, railroad, water course, road, path, steam engine, vehicle, any freight or other means of public transport, or public communications or any factory, institution or equipment used or capable of being used for the production, supply, storage, transfer, delivery, or distribution of water, fuel, gas or electricity or any property of the State of Israel or of the IDF, namely:

At the beginning of 2004, in Ramallah or in the vicinity, the Accused was approached by Ali Ju'ara, who worked with him in the Palestinian police. Ju'ara expressed his wish to carry out a suicide attack. Thereafter, on many occasions, Ali contacted the Accused and expressed his wish to commit suicide.

T.T. 366/04

After approximately two months, during which these contacts occurred, Ali asked from the Accused help in putting his wish into action. The Accused agreed to his request and contacted Nawfal Jihad Nawfal Adawin, and told him about Ali's wish. After some time, Nawfal consented to the Accused's request and replied that he would prepare the device and would send Ali to carry out the attack.

The Accused sold gold for cash and with the cash he and Nawfal bought a camera and a reel of photograph as well as materials for preparing the explosive charge for carrying out the attack. After buying the materials, the Accused and Nawfal assembled the explosive charge together and concealed it in a fire extinguisher. In addition to the explosive charge, the Accused and Nawfal prepared an explosives belt. The Accused went to Ali Ju'ara and met him in the police station. The Accused told Ali that there was someone ready to send him to a suicide attack that would lead to the deaths of as many Israelis as possible.

Ali replied to the Accused that he was ready to carry out the said attack, and the Accused took him to meet Nawfal and introduced the two. In the presence of the Accused, Nawfal showed Ali the explosive charge and explained to him how it worked and how to activate it. Ali asked the two to videotape him ahead of the attack, and also asked that the attack he was about to carry out would be executed in the name of Hamas, which is designated an illegal association. The Accused and Nawfal agreed to Ali's request, and two days later they met in Nawfal's house where the Accused and Nawfal arranged appropriate scenery for the shooting, composed of martyrs' pictures, a Hamas flag, a Kalashnikov assault rifle, and a Koran. Ali put a Hamas headband on his head and carried the bag with the explosive charge on his shoulders. He also wore the explosive belt, while in his hand he held the weapon and the Koran. Thus attired, Ali dictated a will to his parents, which had been written by Nawfal.

The Accused and his friend videotaped the Accused with the camera and recorded his words on a recording device. Ali went to return the weapon to the police station and the Accused and Nawfal hid the recorded and videotaped material, as well as the will Ali had read. Then, they waited for Ali in Nawfal's house in order to dispatch him to the suicide attack.

When Ali returned, Nawfal assembled the explosive charge on his body and primed it. Ali asked the Accused and Nawfal to take him to the area of the tunnels on Highway 60 and from there he would make his way to Jerusalem and carry out the attack inside Jerusalem.

When Ali's preparations were done, Nawfal and Ali set off in the direction of the tunnels to carry out the attack.

That same night, the Accused met with Nawfal and asked what had happened. Nawfal replied that Ali and himself were forced to return because there was a Palestinian Security Forces roadblock in their way.

Two weeks later, the Accused heard that Ali Ju'ara had carried out the suicide attack. The Accused and Nawfal retrieved Ali's footage and his will from their hiding place, and put them next to the door of a television station, so that Ali's picture would be shown on television. The Accused and Nawfal then left the place and notified the television station's staff by telephone that they had left the items of the perpetrator of the Jerusalem attack.

Item four:

Nature of the offense: Membership of and activity in an illegal association, an offense under Section 85(1)(A) of the Defense (Emergency) Regulations, 1945.

Details of the offense: The aforementioned Accused, in the area, on 23 March 2004 and until the time of his arrest or thereabouts was a member of or acted as a member in the Izz al-Din al-Qassam Brigades, which is an illegal association, namely:

The aforementioned Accused, during the said period, in the Al-Izza Refugee Camp or thereabouts, was a member of the Izz al-Din al-Qassam Brigades of the Hamas organization, which is an illegal association. The Accused was recruited to the organization by Nawfal Jihad Nawfal Adawin. Together with the accused in the cell were Muhammad Jawda, Wael Adawin, Mu'az Abd al-Jabr Tarbush, Muhammad Sami al-Izza, and Muhammad Fuad Adawin.

Item five:

Nature of the offense: Performing a service for an illegal association, an offense under Section 85(1)(C) of the Defense (Emergency) Regulations, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or on a date close to it, did work of any sort or performed any kind of service for the Hamas organization, which is an illegal association, namely:
The aforementioned Accused, on the said date, in the Al-Izza Refugee Camp or in its vicinity, together with members of his cell, on a

number of different occasions, wrote slogans and hung posters and photographs of Ahmad Yassin and Abd al-Aziz Rantisi in the name of Hamas's Izz al-Din al-Qassam Brigades, which is an illegal association.

2

T.T. 366/04

Item six:

Nature of offense: Trading in military equipment, an offense under Section 2 of the Order regarding Prohibition of Commerce in War Materiel (Judea and Samaria) (Number 243), 1968.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, traded in or engaged in military equipment in some manner, without signed authorization from the regional commander or his stead, namely:

The aforementioned Accused, during said period, in the Al-Izza Refugee Camp or near it, asked the aforementioned Nawfal Adawin for two pipe bombs. Nawfal gave the Accused the requested devices. Using the devices, the Accused carried out the following two items of indictment.

Item Seven:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to any person or damage to any property, namely:
The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, threw one of the devices at military vehicles traveling on the road, with the intent to kill or harm the passengers or their property. The device exploded.

Item eight:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to a person or damage to any property, namely:
The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, on the night of the day after what was described in the previous item of indictment, threw the second device at military vehicles traveling on the road, with the intent to kill or harm the passengers or their property. The device exploded.

Item nine:

Nature of offense: Manufacture of an incendiary device, an offence under Section 53(a)(3)+(b) of the Order regarding Security Regulations (Judea and Samaria) (Number 378), 1970.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, manufactured a shooting device, ammunition, bomb, hand grenade or explosive or incendiary device, without a permit provided by the regional military commander or on his behalf, or not in accordance with the conditions of the permit, namely:

The aforementioned Accused, during the aforementioned period, in the Al-Izza Refugee Camp or nearby, prepared two Molotov cocktails, with the intent to throw them at IDF soldiers and injure them. Using the Molotov cocktails, the Accused carried out the next two items of indictment.

Item ten:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to any person or damage to any property, namely:
The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, threw one of the Molotov Cocktails he had prepared as stated in the details of the previous item of indictment, at military vehicles. The bottle ignited near the military jeep.

Item eleven:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to a person or damage to any property, namely:
The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, threw the second of the Molotov cocktails he had prepared as stated in the details of the previous item of indictment, at military vehicles. The bottle ignited on the road.

T.T. 366/04

Item twelve:

Nature of offense: Conspiring to commit an offense the penalty for which is more than three years in prison, an offence under Section 22 of the Order regarding Rules of Responsibility for an Offense (Judea and Samaria) (Number 225), 1968, and under Section 51 of the Order regarding Security Regulations (Judea and Samaria) (Number 378), 1970.

Details of the offense: The aforesaid Accused, in the area, during 2004 or around that time, conspired with another person to cause the death of another, namely:

The aforesaid Accused, during the aforesaid period, in the Bethlehem area or nearby, conspired with Nawfal Jihad Nawfal Adawin to carry out a shooting attack against Israeli citizens with the intent to cause their deaths. When the Accused asked, Nawfal responded that he would bring the weapon from the Hamas organization.

Prosecution witnesses:

Sergeant Major Nissim Argaman, Military ID 44861, LHK Judea (the officer who took the Accused's statement on 02 September 2004)

First Sergeant Yaakov Barazni, Military ID 99106, LHK Judea (the officer who took the Accused's statement on 09 September 2004)

Nawfal Jihad Nawfal Adawin, ID 920662152 (detainee)

Muhammad Ibrahim Muhammad Jawda, ID 907048847 (detainee)

Sagiv Lichtman, Second Lieutenant

Military Prosecutor

4

T.T. 366/04

לישראל                              הגנה

**צבא**

| בבית | המשפט | הצבאי | | תיק ביהמ"ש : | 04/ |
|------|-------|-------|---|--------------|-----|
| | | | | תיק תביעה : | 2349/04 |

| בפני | הרכב | ה | ו | ז | ה | ' | תיק פ.א. : | 3797-3800/04חברון |

<u>במשפט שבין התובע הצבאי – המאשים</u>

- נ ג ד -

מחמד כאיד חליל אל-נשאש("חמודה")
ת.ז. 907050298, יליד 22.10.79, תושב מ.פ.אלעזה
עצור מיום 1.9.04

<u>הנאשם</u>

# כתב-אישום

### <u>הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:</u>

## פרט ראשון:

**מהות העבירה**: זריקת חפצים לעבר אדם או רכוש, עבירה לפי סעיף 53א(2) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל1970-.

**פרטי העבירה**: הנאשם הנ"ל, באיזור, במחצית שנות ה90'או בסמוך לכך, זרק חפץ, זרק חפץ, לרבות אבן, לעבר אדם או רכוש, בקוונה לפגוע באדם או ברכוש, דהיינו:

הנאשם הנ"ל, במועד האמור, באיזור קבר רחל, או בסמוך לכך, במהלך המהומות אשר נגעו לפתיחת מנהרת הכותל, השתתף בתהלוכה כנגד פתיחת המנהרה, ובמהלכה זרק אבנים לעבר חייל צה"ל אשר היו במקום, וזאת בכוונה לפגוע בם.

## פרט שני:

**מהות העבירה**: קשירת קשר לביצוע עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ו1968-, ולפי סעיף 51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל1970-.

**פרטי העבירה**: הנאשם הנ"ל, באיזור, בשנת 2003 או בסמוך לכך, קשר קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, בבית לחם או בסמוך לכך, קשר יחד עם מחמד מצטפא מחמד נג'אר, למלכד רכב גנוב ליד האוניברסיטה הפתוחה, וזאת כדי לפוצצו ולהביא בכך למותו של שוטר בשם עופר, המגיע לאזור מחנה הפליטיםבבמטרה לאתר רכבים גנובים. הנאשם וחברו תכננו להניח את המטען באופן שיתפוצץ בעת שהשוטר יתקרב לרכב ויביא בכך למותו.

## פרט שלישי:

**מהות העבירה**: פגיעה בבטחון האיזור, עבירה לפי סעיף 53(א)(4) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל1970-.

**פרטי העבירה**: הנאשם הנ"ל, באיזור, בשנת 2004 או במועד הסמוך לכך, עשה מעשה או מחדל שיש בהם פגיעה, היזק, הפרעה או סכנה לבטחון האיזור או לבטחון כוחות צה"ל וחייליו, או לפעולתם, שימושם או בטחונם של כל אחד מאלה: אניה, אווירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך עפר, קטר, כלי רכב, כל משא או כל אמצעי אחר של הובלה ציבורית, או תקשורת ציבורית או כל מפעל, מוסד, או ציוד המשמש או מסוגל לשמש לייצורם, הספקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

בראשית שנת 2004, ברמאללה או בסמוך לכך, פנה אל הנאשם עלי ג'ערה, אשר עבד עמו במשטרה הפלסטינית, והביע את רצונו לבצע פיגוע התאבדות. לאחר מכן, במספר רב של הזדמנויות, פנה עלי אל הנאשם והביע את רצונו להתאבד.

ת. 366/04

לאחר כחודשיים במהלכם אירעו הפניות כאמור, ביקש עלי סיוון מן הנאשם בהוצאת רצונו אל
הפועל. הנאשם נעתר לבקשתו ופנה אל נופל גייהאד נופל עדאווין, וסיפר לו על רצונו של עלי.
לאחר זמן, נעתר נופל לבקשת הנאשם והשיב שהוא יכין את המטען, וישלח את עלי לבצע את
הפיגוע.

הנאשם מכר זהב תמורת כסף, ובכסף קנו הוא ונופל מצלמה וסרט צילום, וכן חומרים להכנת
מטען החבלה, לצורך ביצוע הפיגוע. לאחר קניית החומרים, הנאשם ונופל הרכיבו יחד מטען
חבלה, והסליקו אותו בתוך מטף כיבוי אש. בנוסף למטען החבלה, הכינו הנאשם ונופל חגורת נפץ.
הנאשם הלך לעלי גיוערה, ופגש אותו בתחנת המשטרה. הנאשם סיפר לעלי כי יש אדם המוכן
להוציאו לפינוע התאבדות, אשר יביא למותם של ישראלים רבים ככל האפשר.

עלי השיב לנאשם שהוא מכון לבצע פיגוע כאמור, והנאשם לקח אותו למפגש עם נופל והכיר בין
השניים. בנוכחות הנאשם, נופל הראה לעלי את המטען והסביר לו את אופן פעולתו ואת דרך
הפעלתו. עלי ביקש מן השניים כי יצלמו אותו טרם ביצוע הפיגוע, ועוד ביקש כי הפיגוע שיבצע,
יבוצע בשם ארגון חמא"ס שהוא התאחדות בלתי מותרת. הנאשם ונופל נערכו לבקשת עלי, ולאחר
יומיים נפגשו בביתו של נופל, שם סידרו הנאשם ונופל תפאורה מתאימה לצילום, המורכבת
מתמונות "שהידים", דגל חמא"ס, רובה מסוג רוס"ר קלאצ'ניקוב וספר קוראן. עלי ענד על ראשו
סרט של ארגון חמא"ס ונשא על כתפיו את התיק עם מטען החבלה וכן עטה את חגורת הנפץ,
ובידיו החזיק את הנשק ואת ספר הקוראן. בהיותו כך, הקריא עלי צוואה להוריו שנכתבה על ידי
נופל.

הנאשם וחברו צילמו את הנאשם במצלמה והקליטו את דבריו באמצעות מכשיר הקלטה.
עלי הלך לחחזיר את הנשק לתחנת המשטרה, והנאשם ונופל הסליקו את החומר המוקלט
והמצולם, וכן את הצוואה אותה הקריא עלי, ולאחר מכן המתינו לעלי בביתו של נופל, על-מנת
להוציאו לבצע את פיגוע ההתאבדות.

עם חזרתו של עלי, הרכיב נופל את המטען על גופו והכינו להפעלה. עלי ביקש מהנאשם ומנופל,
שייקחוהו לאזור המנהרות על כביש 60, ומשם הוא ימצא את דרכו לירושלים ויבצע את הפיגוע
בתוככי ירושלים.

לאחר סיום הכנתו של עלי, יצאו נופל ועלי לכיוון המנהרות, לצורך ביצוע הפיגוע.
באותו לילה, פגש הנאשם את נופל, ושאלו לאשר אירע. נופל השיב שהוא ועלי נאלצו לחזור, משום
שהיה מחסום של כוחות הבטחון הפלסטינים בדרכם.

כעבור שבועיים, שמע הנאשם כי עלי גיערה ביצע פיגוע התאבדות. הנאשם ונופל הוציאו את
צילומיו של עלי ואת צוואתו ממקום מסתורו, והניחו אותם ליד דלתה של תחנת טלוויזיה, וזאת
על מנת שתמונתו של עלי תוצג בטלוויזיה. לאחר מכן התרחקו הנאשם ונופל מהמקום והודיעו
בטלפון לאנשי תחנת הטלוויזיה, כי הניחו את החפצים של מבצע הפיגוע בירושלים.

## פרט רביעי:

**מהות העבירה:** חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות
ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, מיום 23.3.04 ועד לעת מעצרו או בסמוך לכך, היה חבר או
פעל כחבר בארגון "גדודי עז א-דין אל קסאם" שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במהלך התקופה האמורה, במ.פ.אלעזה או בסמוך לכך, היה חבר בגדודי עז א-דין
אל קסאם של ארגון חמא"ס, שהוא התאחדות בלתי מותרת. הנאשם גוייס לארגון על-ידי נופל
גייהאד נופל עדאווין. יחד עם הנאשם היו בחוליה מחמד גיודה, ואל עדאווין, מועאז ע/ג'בר
תרבוש, מחמד סאמי אלעזה ומחמד פואד עדאווין.

## פרט חמישי:

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לנקנות
ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או במועד הסמוך לכך, עשה עבודה כל שהיא
או ביצע שירות כל שהוא בשביל הארגון "חמא"סי" שהוא התאחדות בלתי מותרת, דהיינו:
הנאשם הנ"ל, במועד האמור, במ.פ.אלעזה או בסמוך לכך, יחד עם חברי חוליתו, במספר
הזדמנויות שונות, כתב סיסמאות והדביק כרוזים ותמונות של אחמד יאסין וע/עזיז רנטיסי, בשם
ארגון גדודי עז א-דין אל קסאם של החמא"ס, שהוא התאחדות בלתי מותרת.

ת.פ. 04/366

<u>פרט ששי</u>:

<u>מהות העבירה</u>: סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח1968-.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, במ.פ.אלעזה או בסמוך לכך, ביקש מנופל עדאווין האמור 2 מטעני צינור. נופל נתן לנאשם את המטענים המבוקשים. באמצעות המטענים ביצע הנאשם את האמור בשני פרטי האישום הבאים.

<u>פרט שביעי</u>:

<u>מהות העבירה</u>: זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו:

הנאשם הנ"ל, במועד האמור, באיזור בית לחם או בסמוך לכך, זרק את אחד המטענים לעבר כלי רכב צבאיים שהיו בנסיעה בכביש, וזאת במטרה להביא למותם של נוסעיהם או לפגיעה בם או ברכושם. המטען התפוצץ.

<u>פרט שמיני</u>:

<u>מהות העבירה</u>: זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, באזור בית לחם או בסמוך לכך, בלילה שלמחרת האמור בפרט האישום הקודם, זרק את המטען השני לעבר כלי רכב צבאיים שהיו בנסיעה בכביש, וזאת במטרה להביא למותם של נוסעיהם או לפגיעה בם או ברכושם. המטען התפוצץ.

<u>פרט תשיעי</u>:

<u>מהות העבירה</u>: ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3)+(ב) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל1970-.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, ייצר כלי יריה, תחמושת, פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר, שהוענקה על ידי מפקד או מטעמו, או שלא בהתאם לתנאיה של אותה תעודת היתר, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, במ.פ.אלעזה או בסמוך לכך, הכין שני בקבוקי תבערה, במטרה לידותם לעבר חיילי צה"ל, ולפגוע בהם. באמצעות בקבוקי התבערה, ביצע הנאשם את האמור בפרטי האישום הבאים.

<u>פרט עשירי</u>:

<u>מהות העבירה</u>: זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו:

הנאשם הנ"ל, במועד האמור, באזור בית לחם או בסמוך לכך, זרק את אחד מבקבוקי התבערה אותם הכין כאמור בפרט האישום הקודם, לעבר כלי רכב צבאיים. הבקבוק התלקח בסמוך לג'יפ הצבאי.

<u>פרט אחד עשר</u>:

<u>מהות העבירה</u>: זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, באזור בית לחם או בסמוך לכך, זרק את בקבוק התבערה השני אותו הכין כאמור בפרט האישום הקודם, לעבר כלי רכב צבאיים. הבקבוק התלקח על הכביש.

ת.ח. 366/04

<u>פרט שנים עשר</u>:

<u>מהות העבירה</u>: קשירת קשר לביצוע עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968, ולפי סעיף 51 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970.

<u>פרטי העבירה</u>: הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, קשר קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, באזור בית לחם או בסמוך לכך, קשר יחד עם נופל ג'יהאד נופל עדאווין, לבצע פיגוע ירי לעבר אזרחים ישראלים, בכוונה להביא למותם. לשאלת הנאשם, השיב נופל כי יביא את הנשק מארגון חמא"ס.

<u>עדי התביעה</u>:

1. רס"ב נסים ארגמן, מ.א.44861, לח"ק יהודה (גובה אמרת הנאשם מיום 2.9.04).
2. רס"מ יעקב ברזני, מ.א.99106, לח"ק יהודה (גובה אמרת הנאשם מיום 9.9.04).
3. נופל ג'יהאד נופל עדאווין, ת.ז.920662152(עצור).
4. מחמד אבהים מחמד ג'ודה, ת.ז.907048847(עצור).

שגיב ליכטמן,          סגן
תובע                    צבאי

# Exhibit B

**Global Arabic Translation Services**

الخدمات العالمية للترجمة العربية

26 Shainfein St., Kfar-Saba, Israel
+972 54 8349.337
www.GatsTranslations.com

## <u>CERTIFICATION</u>

I, Yaniv Berman, do hereby certify that as a qualified translator I am fully conversant with the English and Hebrew languages, and that to the best of my knowledge, the attached document, the Amended Indictment of Muhammad Kayed Khalil al-Nashash , is a true and accurate translation of the original text from the Hebrew language into English.

Date: April 16, 2015

Yaniv Berman

| Israel | Defense | | Forces |
|---|---|---|---|

In the Military Court

J u d e a

Before a panel

| Court file: | 4083 /04 |
|---|---|
| Prosecution file: | 2349/04 |
| P.A. File | Hebron3797-3800/04 |

In a Case Between the Military Prosecutor – the Accuser

-versus-

Muhammad Kayed Khalil al-Nashash ("Hamuda")

I.D. 907050298, born on 22 OCT 1979, a resident of Al-Izza Refugee Camp

Incarcerated since 1 September 2004

The Accused

## Indictment

*[Handwritten:] Amended, as part of a plea bargain. 3/15/2006 [a few illegible words] Legal Officer. Military prosecutor.*

The aforementioned Accused is hereby charged with committing the following offenses:

Item one:

Nature of the offense: Throwing objects at a person or property, an offense under Section 53A(2) of the Order regarding Security Provisions (Judea and Samaria) (No. 378), 5730-1970.

Details of the offense: The aforementioned Accused, in the area, in the mid-1990s or thereabouts, threw an object, including a stone, at a person or property with the intention of harming a person or damaging property, namely:

The aforementioned Accused, on the said date, in the area of Rachel's Tomb or in the vicinity, during riots associated with the opening of the Western Wall tunnel, took part in a procession protesting the opening of the tunnel, during which he threw stones at IDF soldiers, who were at the location, with the intention of harming them.

Item two:

Nature of the offense: Conspiring to commit an offense the penalty for which is more than three years' imprisonment, an offense under Section 22 of the Order regarding Rules of Responsibility for an Offense (Judea and Samaria) (No. 225), 5728-1968 and under Section 51 of the Order regarding Security Provisions (Judea and Samaria) (No. 378), 5730-1970.

Details of the offense: The aforementioned Accused, in the area, in 2003 or thereabouts, conspired with another person deliberately to cause the death of another, namely:

The aforementioned Accused, during the aforementioned period, in Bethlehem or thereabouts, conspired with Muhammad Mustafa Muhammad Najjar, to booby trap a stolen vehicle next to the Open University so as to blow it up and cause the death of a policeman by the name of Ofer, who came to the area of the refugee camp with the aim of locating stolen vehicles. The Accused and his friend planned to place the explosive charge so that it would explode when the policeman approached the vehicle, thus causing his death.

Item three:

Nature of the offense: Damaging the security of the area, an offense under Section 53(A)(4) of the Order regarding Security Provisions (Judea and Samaria) (No. 378), 5730-1970.

Details of the offense: The aforementioned Accused, in the area, in 2004 or on a date close to it, committed an act or omission that damages, harms, interferes with or endangers the security of the area or the security of IDF forces and its soldiers, or their activities, or the use or security of any of the following: a ship, aircraft, port, pier, platform, anchorage, airport, railroad, water course, road, path, steam engine, vehicle, any freight or other means of public transport, or public communications or any factory, institution or equipment used or capable of being used for the production, supply, storage, transfer, delivery, or distribution of water, fuel, gas or electricity or any property of the State of Israel or of the IDF, namely:

At the beginning of 2004, in Ramallah or in the vicinity, the Accused was approached by Ali Ju'ara, who worked with him in the Palestinian police. Ju'ara expressed his wish to carry out a suicide attack. Thereafter, on many occasions, Ali contacted the Accused and expressed his wish to commit suicide. After approximately two months, during which these contacts occurred, Ali asked from the Accused help in putting his wish into action. The accused agreed to his request and contacted Nawfal Jihad Nawfal Adawin, and told him about Ali's wish.

1

Date:              13 October 2004
Reference:         2349-04Muhammad

After some time, Nawfal consented to the Accused's request and replied that he would prepare the device and would send Ali to carry out the attack.

The Accused sold gold for cash and with the cash he and Nawfal bought a camera and a reel of photograph as well as materials for preparing the explosive charge for carrying out the attack. After buying the materials, the Accused and Nawfal assembled the explosive charge together and concealed it in a fire extinguisher. In addition to the explosive charge, the Accused and Nawfal prepared an explosives belt. The Accused went to Ali Ju'ara and met him in the police station. The Accused told Ali that there was someone ready to send him to a suicide attack that would lead to the deaths of as many Israelis as possible.

Ali replied to the Accused that he was ready to carry out the said attack, and the Accused took him to meet Nawfal and introduced the two. In the presence of the Accused, Nawfal showed Ali the explosive charge and explained to him how it worked and how to activate it. Ali asked the two to videotape him ahead of the attack, and also asked that the attack he was about to carry out would be executed in the name of Hamas, which is designated an illegal association. The Accused and Nawfal agreed to Ali's request, and two days later they met in Nawfal's house where the Accused and Nawfal arranged appropriate scenery for the shooting, composed of martyrs' pictures, a Hamas flag, a Kalashnikov assault rifle, and a Koran. Ali put a Hamas headband on his head and carried the bag with the explosive charge on his shoulders. He also wore the explosive belt, while in his hand he held the weapon and the Koran. Thus attired, Ali dictated a will to his parents, which had been written by Nawfal.

The Accused and his friend videotaped the Accused with the camera and recorded his words on a recording device. Ali went to return the weapon to the police station and the Accused and Nawfal hid the recorded and videotaped material, as well as the will Ali had read. Then, they waited for Ali in Nawfal's house in order to dispatch him to the suicide attack.

When Ali returned, Nawfal assembled the explosive charge on his body and primed it. Ali asked the Accused and Nawfal to take him to the area of the tunnels on Highway 60 and from there he would make his way to Jerusalem and carry out the attack inside Jerusalem.

When Ali's preparations were done, Nawfal and Ali set off in the direction of the tunnels to carry out the attack.

That same night, the Accused met with Nawfal and asked what had happened. Nawfal replied that Ali and himself were forced to return because there was a Palestinian Security Forces roadblock in their way.

Two weeks later, the Accused heard that Ali Ju'ara had carried out the suicide attack. The Accused and Nawfal retrieved Ali's footage and his will from their hiding place, and put them next to the door of a television station, so that Ali's picture would be shown on television. The Accused and Nawfal then left the place and notified the television station's staff by telephone that they had left the items of the perpetrator of the Jerusalem attack.

Item four:

Nature of the offense: Membership of and activity in an illegal association, an offense under Section 85(1)(A) of the Defense (Emergency) Regulations, 1945.

Details of the offense: The aforementioned Accused, in the area, on 23 March 2004 and until the time of his arrest or thereabouts was a member of or acted as a member in the Izz al-Din al-Qassam Brigades, which is an illegal association, namely:

The aforementioned Accused, during the said period, in the Al-Izza Refugee Camp or thereabouts, was a member of the Izz al-Din al-Qassam Brigades of the Hamas organization, which is an illegal association. The Accused was recruited to the organization by Nawfal Jihad Nawfal Adawin. Together with the accused in the cell were Muhammad Jawda, Wael Adawin, Mu'az Abd al-Jabr Tarbush, Muhammad Sami al-Izza, and Muhammad Fuad Adawin.

Item five:

Nature of the offense: Performing a service for an illegal association, an offense under Section 85(1)(C) of the Defense (Emergency) Regulations, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or on a date close to it, did work of any sort or performed any kind of service for the Hamas organization, which is an illegal association, namely: The aforementioned Accused, on the said date, in the Al-Izza Refugee Camp or in its vicinity, together with members of his cell, on a number of different occasions, wrote slogans and hung posters and photographs of Ahmad Yassin and Abd al-Aziz Rantisi in the name of Hamas's Izz al-Din al-Qassam Brigades, which is an illegal association.

2

Date:                        13 October 2004

Reference:                    2349-04Muhammad

Item six:

Nature of offense: Trading in military equipment, an offense under Section 2 of the Order regarding Prohibition of Commerce in War Materiel (Judea and Samaria) (Number 243), 1968.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, traded in or engaged in military equipment in some manner, without signed authorization from the regional commander or his stead, namely:

The aforementioned Accused, during said period, in the Al-Izza Refugee Camp or near it, asked the aforementioned Nawfal Adawin for two pipe bombs. Nawfal gave the Accused the requested devices. Using the devices, the Accused carried out the following two items of indictment.

Item Seven:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to any person or damage to any property, namely:

The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, threw one of the devices at military vehicles traveling on the road, with the intent to kill or harm the passengers or their property. The device exploded.

Item eight:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to a person or damage to any property, namely:

The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, on the night of the day after what was described in the previous item of indictment, threw the second device at military vehicles traveling on the road, with the intent to kill or harm the passengers or their property. The device exploded.

Item nine:

Nature of offense: Manufacture of an incendiary device, an offence under Section 53(a)(3)+(b) of the Order regarding Security Regulations (Judea and Samaria) (Number 378), 1970.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, manufactured a shooting device, ammunition, bomb, hand grenade or explosive or incendiary device, without a permit provided by the regional military commander or on his behalf, or not in accordance with the conditions of the permit, namely:

The aforementioned Accused, during the aforementioned period, in the Al-Izza Refugee Camp or nearby, prepared two Molotov cocktails, with the intent to throw them at IDF soldiers and injure them. Using the Molotov cocktails, the Accused carried out the next two items of indictment.

Item ten:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to any person or damage to any property, namely:

The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, threw one of the Molotov Cocktails he had prepared as stated in the details of the previous item of indictment, at military vehicles. The bottle ignited near the military jeep.

Item eleven:

Nature of offense: Throwing an incendiary device, an offense under Order 58(b) of Defense (Emergency) Orders, 1945.

Details of the offense: The aforementioned Accused, in the area, in 2004 or around that time, threw or placed a bomb, hand grenade or explosive or incendiary device with the intent to cause death or injury to a person or damage to any property, namely:

The aforementioned Accused, during the aforementioned period, in the Bethlehem area or nearby, threw the second of the Molotov cocktails he had prepared as stated in the details of the previous item of indictment, at military vehicles. The bottle ignited on the road.

3

Date:               13 October 2004

Reference:          2349-04Muhammad

Item twelve:

Nature of offense: Conspiring to commit an offense the penalty for which is more than three years in prison, an offence under Section 22 of the Order regarding Rules of Responsibility for an Offense (Judea and Samaria) (Number 225), 1968, and under Section 51 of the Order regarding Security Regulations (Judea and Samaria) (Number 378), 1970.

Details of the offense: The aforesaid Accused, in the area, during 2004 or around that time, conspired with another person to cause the death of another, namely:

The aforesaid Accused, during the aforesaid period, in the Bethlehem area or nearby, conspired with Nawfal Jihad Nawfal Adawin to carry out a shooting attack against Israeli citizens with the intent to cause their deaths. When the Accused asked, Nawfal responded that he would bring the weapon from the Hamas organization.

Prosecution witnesses:

Sergeant Major Nissim Argaman, Military ID 44861, LHK Judea (the officer who took the Accused's statement on 02 September 2004)

First Sergeant Yaakov Barazni, Military ID 99106, LHK Judea (the officer who took the Accused's statement on 09 September 2004)

Nawfal Jihad Nawfal Adawin, ID 920662152 (detainee)

Muhammad Ibrahim Muhammad Jawda, ID 907048847 (detainee)

Sagiv Lichtman, Second Lieutenant

Military Prosecutor

[signature]

4

Date:              13 October 2004
Reference:         2349-04Muhammad

לישראל

| צבא | | | המשפט | | הצבאי | הגנה | | צבא |
|---|---|---|---|---|---|---|---|---|
| בביון | ה | ו | ה | ד | ה | | תיק ביהמ"ש: | 34/ |
| ע | | | | | הרכב | | תיק תביעה: | 2349/04 |
| בפני | | | | | | | תיק פ.א.: | 3797-3800/04חברון |

## במשפט שבין | צובע הצבאי – המאשים

### -נגד-

**מוחמד כא'ד חליל אל-נשאש("חמודה")**
ת.ז. 907050298, יליד 22.10.79, תושב מ.פ.אלעזה
עצור מיום 1.9.04

### הנאשם

# כתב-אישום

### הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:

**פרט ראשון:**
**מהות העבירה:** זריקת חפצים לעבר אדם או רכוש, עבירה לפי סעיף 53א(2) לצו בדבר הוראות בטחון [יהודה והשומרון] (מס' 378), תשי"1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במוצאות שנות 90' או בסמוך לכך, זרק חפץ, לרבות אבן, לעבר אדם או רכוש, בכוונה לפגוע באדם או ברכוש, דהיינו:

הנאשם הנ"ל, במועד האמור, באזור קבר רחל, או בסמוך לכך, במהלך המהומות אשר נגעו לפתיחת מנהרת הכותל, השתתף בתהלוכה כנגד פתיחת המנהרה, ובנהלכה זרק אבנים לעבר חיילי צה"ל אשר היו במקום, וזאת בכוונה לפגוע בם.

**פרט שני:**
**מהות העבירה:** קשירת קשר לביצוע עבירה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה [יהודה והשומרון] (מס' 225), תשכ"1968-, ולפי סעיף 51 לצו בדבר הוראות ביטחון [יהודה והשומרון] (מס' 378), תשי"1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2003 או בסמוך לכך, קשר קשר עם אדם אחר לגרום בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, בבית/לחם או בסמוך לכך, קשר יחד עם מוחמד מצטפא מוחמד נג'אר, למכלד רכב נגנב ליד האוניברסיטה הפתוחה, וזאת כדי לפוצצו ולהביא בכך למותו של שוטר בשם עופר, המניע לאזור מחנה הפליטים/במצרה לאחר רכבים גנובים. הנאשם וחברו תכננו להניח את המטען באופן שיתפוצץ בעת שהשוטר יתקרב לרכב ויביא בכך למותו.

**פרט שלישי:**
**מהות העבירה:** פגיעה בבטחון האיזור, עבירה לפי סעיף 53א(4) לצו בדבר הוראות בטחון [יהודה והשומרון] (מס' 378), תשי"1970-.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או במועד הסמוך לכך, עשה מעשה או מחדל שיהי בהם פגיעה, היזק, הפרעה או סכנה לבטחון האיזור או לבטחון כוחות צה"ל וחייליו, או לסילוחם. שימושם או בטחונם של כל אחד מאלה: אניה, אווירון, נמל, רציף, מזח, מעגן, שדה תעופה, מסילת ברזל, נתיב מים, דרך, דרך עפר, קטר, כלי רכב, כל משא או כל אמצער אחר של הובלה צ'בורית, או תקשורת צ'בורית או כל מפעל, מוסד, או צ'וד המשמש או מסוגל לשמש לייצורם, הסקתם, החסנתם, העברתם, מסירתם או הפצתם של מים, דלק, גז או חשמל או כל רכוש של מדינת ישראל או של צה"ל, דהיינו:

בראשית שנת 2004, ברמאללה או בסמוך לכך, פנה אל הנאשם עלי גערה, אשר עבד עמו במשטרה הפלסטינית, והביע את רצונו לבצע פיגוע התאבדות. לאחר מכן, במספר רב של הזדמנויות, פנה עלי אל הנאשם והביע את רצונו להתאבד.

לאחר כחודשיים במהלכם אירעו הפנייות כאמור, ביקש עלי סיוע מן הנאשם בהוצאת רצונו אל הפועל. ז נאשם נעתר לבקשתו ופנה אל נופל גיהאד נופל עדאווין, וסיפר לו על רצונו של עלי.

1

תאריך: 13.10.04

סימוכין: 22349-04מוחמד

לאחר זמן, נעתר נופל לבקשת הנאשם והשיב שהוא יכין את המטען, וישלח את עלי לבצע את הפיגוע.

הנאשם מכר זהב תמורת כסף, ובכסף קנו הוא ונופל מצלמה וסרט צילום, וכן חומרים להכנת מטען חבלה, לצורך ביצוע הפיגוע. לאחר קניית החומרים, הנאשם ונופל הרכיבו יחד מטען חבלה, והסליקו אותו בתוך מטר כיבוי אש. בנוסף למטען החבלה, הכינו הנאשם ונופל חגורת נפץ.

הנאשם הלך לעלי גיועמה, ופגש אותו בתחנת המשטרה. הנאשם סיפר לעלי כי יש אדם המוכן להוציא לפועל את הפיגוע התאבדות, אשר רבו למותם של ישראלים רבים ככל האפשר.

עלי השיב לנאשם שהוא מכון לבצע פיגוע כאמור, והנאשם לקח אותו למפגש עם נופל והכיר בין השניים. בנוכחות הנאשם, נופל הראה לעלי את המטען והסביר לו את אופן פעולתו ואת דרך הפעלתו. עלי ביקש מן השניים כי יצלמו אותו טרם ביצוע הפיגוע, ועוד ביקש כי הפיגוע שיבצע, יבוצע בשם ארגון חמא"ס שהוא התאחדות בלתי מותרת. הנאשם ונופל נעתרו לבקשת עלי, ולאחר יומיים ובנשם בביתו של נופל, שם סידרו הנאשם ונופל תפאורה מתאימה לצילום, המורכבת מתמונות "שהידים", דגל חמא"ס, רובה מסוגו רוס"ר קלאצ'ניקוב וספר קוראן. עלי עמד על ראשו סרט של ארגון חמא"ס ונשא על כתפיו את התיק עם מטען החבלה וכן עטה את חגורת הנפץ, ובידיו החזיק את הנשק ואת ספר הקוראן. בהיותו כך, הקריא עלי צוואה להוריו שנכתבה על ידי נופל.

הנאשם וחברו צילמו את הנאשם במצלמה והקליטו את דבריו באמצעות מכשיר הקלטה.

עלי הלך להחזיר את הנשק לחתנת המשטרה, והנאשם ונופל הסליקו את החומר המוקלט והמצולם. וכן את הצוואה אותה הקריא עלי, ולאחר מכן המתינו לעלי בביתו של נופל, על-מנת להוציא לבצע את פיגוע ההתאבדות.

עם חזרתו של עלי, הרכיב נופל את המטען על גופו והכינו להפעלה. עלי ביקש מהנאשם ומנופל, שייזכרו לאחור המנהרות על כביש 60, ומשם הוא ימצא את דרכו לירושלים ויבצע את הפיגוע בתוככי ירושלים.

לאחר סיום הכנתו של עלי, יצאו נופל ועלי לכיוון המנהרות, לצורך ביצוע הפיגוע.

באותו לילה, פגש הנאשם את נופל, ושאלו לאשר אירע. נופל השיב שהוא ועלי נאלצו לחזור, משום שהיה מחסום של כוחות הבטחון הפלסטיניים בדרכם.

כעבור שבועיים, שמע הנאשם כי עלי גיערה ביצע פיגוע התאבדות. הנאשם ונופל הוציאו את ציונמיו של עלי ואת צוואתו ממקום מסחורו, והניחו אותם ליד דלתת של תחנת טלוויזיה, וזאת על מנת שתמונותו של עלי תוצג בטלוויזיה. לאחר מכן התרחקו הנאשם ונופל מהמקום והודיעו בטלפון לאנשי תחנת הטלוויזיה, כי הניחו את החפצים של מבצע הפיגוע בירושלים.

## פרט רביעי:

**מהות העבירה:** חברות ופעילות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, מיום 23.3.04 ועד לעת מעצרו או בסמוך לכך, היה חבר או פעל כחבר בארגון "גדודי עז א-דין אל קסאם" שהוא התאחדות בלתי מותרת, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה, במ.פ.אלעזה או בסמוך לכך, היה חבר בגדודי עז א-דין אל קסאם של ארגון חמא"ס, שהוא התאחדות בלתי מותרת. הנאשם גויס לארגון על-ידי נופל גיהאד נופל עדאווין. יחד עם הנאשם היו בחוליה מחמד גידה, וואל עדאווין, מועאז ע/ביר תרבוש, מחמד סאמי אלעזה ומחמד פואד עדאווין.

## פרט חמישי:

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות החגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או במועד הסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל הארגון "חמא"ס" שהוא התאחדות בלתי מותרת, דהיינו: הנאשם הנ"ל, במועד האמור, במ.פ.אלעזה או בסמוך לכך, יחד עם חברי חולייתו, בנספר הזדמנויות שונות, כתב סיסמאות והדביק כרוזים ותמונות של אחמד יאסין וע/עזיו רנטיסי, בשם ארגון גדודי עז א-דין אל קסאם של החמא"ס, שהוא התאחדות בלתי מותרת.



2

### פרט ששי:

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה לעיל, במ.פ.אלעזה או בסמוך לכך, ביקש מנופל עדאוין ראמזי 2 מטעני ציונר. נופל נתן לנאשם את המטענים המבוקשים. באמצעות המטענים ביצע הנאשם את האמור בשני פרטי האישום הבאים.

### פרט שביעי:

**מהות העבירה:** זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו: הנאשם הנ"ל, במועד האמור, באזור בית לחם או בסמוך לכך, זרק את אחד המטענים לעבר כלי רכב צבאיים שהיו בנסיעה בכביש, וזאת במטרה להביא למותם של נוסעיהם או לפגיעה בם או בורכושם. המטען התפוצץ.

### פרט שמיני:

**מהות העבירה:** זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה לעיל, באזור בית לחם או בסמוך לכך, בלילה שלמחרת האמור בפרט האישום הקודם, זרק את המטען השני לעבר כלי רכב צבאיים שהיו בנסיעה בכביש, וזאת במטרה להביא למותם של נוסעיהם או לפגיעה בם או ברכושם. המטען התפוצץ.

### פרט תשיעי:

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3)+(ב) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, ייצר כלי ירייה, תחמושת, פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר, שהוענקה על ידי מפקד או מטעמו, או שלא בהתאם לתנאיה של אותה תעודת היתר, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה לעיל, במ.פ.אלעזה או בסמוך לכך, הכין שני בקבוקי תבערה, במטרה לידותם לעבר חיילי צה"ל, ולפגוע בהם. באמצעות בקבוקי התבערה, ביצע הנאשם את האמור בפרטי האישום הבאים.

### פרט עשירי:

**מהות העבירה:** זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד, או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו: הנאשם הנ"ל, במועד האמור, באזור בית לחם או בסמוך לכך, זרק את אחד מבקבוקי התבערה שהכין כאמור בפרט האישום הקודם, לעבר כלי רכב צבאיים. הבקבוק התלקח בסמוך לניפ הצבאי.

### פרט אחד עשר:

**מהות העבירה:** זריקת חפץ מבעיר, עבירה לפי תקנה 58(ב) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, זרק או הניח פצצה, רימון יד או חפץ נפיץ או מבעיר מתוך כוונה לגרום מוות או חבלה לכל אדם או נזק לכל רכוש, דהיינו: הנאשם הנ"ל, במהלך התקופה האמורה לעיל, באזור בית לחם או בסמוך לכך, זרק את בקבוק התבערה השני אות הכין כאמור בפרט האישום הקודם, לעבר כלי רכב צבאיים. הבקבוק התלקח על הכביש.

3

<u>פרט שנים עשר:</u>

<u>מהות העבירה:</u> קשירת קשר לביצוע עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22
יחד בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח1968-, ולפי סעיף 51 לצו
בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל1970-.

<u>פרטי העבירה:</u> הנאשם הנ"ל, באיזור, בשנת 2004 או בסמוך לכך, קשר קשר עם אדם אחר לגרום
בכוונה למותו של אחר, דהיינו:

הנאשם הנ"ל, במהלך התקופה האמורה לעיל, באזור בית לחם או בסמוך לכך, קשר יחד עם נופל
ג'יהאד נופל עדאווין, לבצע פיגוע ירי לעבר אזרחים ישראלים, בכוונה להביא למותם. לשאלת
הנאשם, השיב נופל כי יביא את הנשק מארגון חמא"ס.

<u>עדי התביעה:</u>

1.  רס"ב נסים ארגמן, מ.א.44861, לח"ק יהודה (גובה אמרת הנאשם מיום 2.9.04).
2.  רס"מי יעקב ברזוני, מ.א.99106, לח"ק יהודה (גובה אמרת הנאשם מיום 9.9.04).
3.  נופל ג'יהאד נופל עדאווין, ת.ז.9206622152(עצור).
4.  מוחמד אבהים מחמד ג'ודה, ת.ז.9007048847(עצור).

שגיב ליכטמן,   סגן
תובע   צבאי

תאריך :   13.10.04
סימוכין :   22349004מחמד

# Exhibit C

# January 29, 2004 - Bus 19 Bombing
## Jerusalem
## 11 Killed, 50+ Reported Injured

### Hamas's Role

### Al Aqsa Martyrs Brigades' (AAMB) Role



Nufal Adawin
*Hamas Operative in Bethlehem*
Approached by Bomber; Trained Bomber With Explosive Belt



Abd al-Rahman Maqdad
*AAMB Operative*
Prepared <u>Second</u> Explosive Belt



Ali Abu Hail
*AAMB Operative*
Explosive Expert



Muhammad Nashash
*Hamas Operative*
Prepared <u>First</u> Explosive Belt

Muhammad Ma'ali
*AAMB Operative*
Drove Bomber to Scene of Attack



Ali Ja'ara
Hamas Suicide Bomber

51