# Exhibit 33

צבא                    הגנה                         לישראל

בבית   המשפט   הצבאי        תיק ביה"מ :    03/‏3385
בבית                   אל          תיק תביעה :    380/03
בפני                 הרכב          תיק פ.א. :    6891/01 מתי"מ י-ם
                                            6554/01 ציון
                                            10283/01 ציון
                                            1512/02 מוריה
                                            9638/02 ראשל"צ
                                            5601/02 ראשל"צ
                                            2881/02 גלילות
                                            3975/02 לוד
                                            9913/02 רחובות
                                            1197/02 שלם
                                            19284/02 ירקון
                                            21011/02 ירקון
                                            1425/03 בנימין

**במשפט שבין התובע הצבאי - המאשים**

**- נ ג ד -**

עבדאללה עיאלב עבדאללה ברגותי (גימל) (המכונה "כאמל", "המהנדס")
ת.ז. (פיקטיבי) 030300028 (דרכון ירדני E-891198), יליד 15.10.72, תושב בית-רימא
עצור מיום 05.03.03

**- ה נ א ש ם -**

**כ ת ב - א י ש ו ם**

**הנאשם הנ"ל מואשם בזאת בביצוע העבירות הבאות:**

**פרט ראשון:**

**מהות העבירה:** ניסיון לייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש מאי 2001 או בסמוך לכך, ייצר כלי יריה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו :
הנאשם הנ"ל, במועד האמור, בית ביתר רימא או בסמוך לכך, נפגש עם אכרם צאלח אכרם אחסין (ברגותי) וביקש מהאחרון כי יכיר לו פעילים צבאיים. אכרם אחסין ביקש עם כי הנאשם יגיע אליו לביתו. לאחר שהנאשם הגיע לביתו של אכרם אחסין, האחרון מסר לידי הנאשם מטען חבלה.
הנאשם לקח את המטען עמו ובסופרמרקט של הנאשם בבית רימא פירק את מטען חבלה. הנאשם ניסה להצית את חומר הנפץ שהוציא ממטען החבלה ונכח לדעת כי מדובר בחומר נפץ טוב. הנאשם ייצר מנגנון הפעלה למטען חבלה הנ"ל משעון מעורר, אך לא הצליח להפעיל את המטען הנ"ל באמצעות מנגנון ההפעלה הנ"ל.

HIGHLY CONFIDENTIAL                    ROTH 00350

**פרט שני:**

**מהות העבירה:** חברות בהתאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(א) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מחודש מאי 2001 ועד ליום מעצרו, היה חבר או פעל כחבר בהתאחדות בלתי מותרת, דהיינו :
הנאשם הנ"ל, במהלך התקופה האמורה, היה חבר ב"גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, שהוא התאחדות בלתי מותרת.
הנאשם, במסגרת פעילותו בזרוע הצבאית של ארגון החמאס, היה אחראי על ייצור מטעני החבלה ואימון אנשים אחרים בייצור מטעני חבלה. לאור "הצלחתו" בתפקיד האמור הנאשם "זכה" לכינוי "המהנדס".
בחודש מאי 2001, בבית רימא או בסמוך לכך, הנאשם פנה אל בלאל יעקוב אחמד ברגותי (עותמאן), פעיל צבאי בארגון החמאס, וביקש כי האחרון יצרף את הנאשם לשורות הזרוע הצבאית של הארגון. הנאשם מסר לבלאל ברגותי כי יכול לייצר מטעני חבלה עבור ארגון החמאס. בלאל ברגותי הפגיש את הנאשם בשכם עם איימן חלאווה, פעיל צבאי בכיר בארגון החמאס, אשר גייס את הנאשם לייצר מטעני חבלה ל"גדודי עז א-דין אל קסאם".
בסוף שנת 2001, ברמאללה או בסמוך לכך, הנאשם נפגש עם אברהים ג'מיל ע'ע'אני חאמד, המכונה "צלאח 1" או "השיח'", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה. הנאשם הסכים להצעתו של אברהים חאמד לפעול תחת פיקודו של האחרון ולייצר מטעני חבלה לצורך ביצוע פיגועים נגד המטרות הישראליות. אברהים חאמד העניק לנאשם כינוי פתי"עי "כאמלי". בהמשך, הנאשם פעל כפי שסוכם בינו לבין אברהים חאמד.
במהלך פעילותו של הנאשם תחת פיקודו של אברהים חאמד, הנאשם עמד בקשר עם הנ"ל באמצעות האשרים, אשר העבירו על-ידי סיד עיכרים חדר שייך-קאסם, המכונה "צלאח 2". בתמורה לפעילותו בארגון החמאס, הנאשם קיבל סיוע כספי מאברהים חאמד, אשר העובר לנאשם על-ידי "צלאח 2". סך הכל, הנאשם קיבל מאברהים חאמד כספים בסכום של **117,000 דולר ארה"ב**.
כמו כן, הנאשם קיבל סיוע כספי בסך 500 דולר מידי מרואן ברגותי, ראש "התנזים" של הפתי"ח.

**פרט שלישי:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במהלך החודשים מאי - יוני 2001 או בסמוך לכך, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים; דהיינו :
הנאשם הנ"ל, במהלך התקופה האמורה, בשכם או בסמוך לכך, ב-3 הזדמנויות שונות, נפגש עם איימן חלאווה, פעיל צבאי בכיר בארגון החמאס.
במהלך הפגישות הנ"ל, איימן חלאווה לימד את הנאשם לייצר חומר נפץ המכונה "אום אלעבד" (TATP), מטעני חבלה, מנגנוני ההפעלה למטעני חבלה (כולל מנגנונים אלחוטיים), רימוני-יד וחגורות נפץ. איימן חלאווה לימד את הנאשם להסוות את מטעני החבלה לאבן ולפחית שתייה. איימן חלאווה לימד את הנאשם לייצר רעל מתפוחי אדמה, אשר אותו מכניסים אל מטעני החבלה על מנת להפכם למטעני חבלה כימיים.
בסוף כל אחד מהאימונים הנ"ל, הנאשם קיבל מאיין חלאווה דף, עליו היו רשומים הוראות לייצור מטעני החבלה, אותם למד הנאשם לייצר.

HIGHLY CONFIDENTIAL

ROTH 00351

**פרט רביעי:**

**מהות העבירה:** קשירת קשר לעבור עבירה שדינה מעל לשלוש שנות מאסר, עבירה לפי סעיף 22 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968 וסעיף 67א(ד) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש דצמבר 2000 או בסמוך לכך, קשר עם אדם אחר לכפות אדם בכוח או באיומים או לפתותו באמצעות תרמית ללכת מן המקום שהוא נמצא בו, וזאת כדי לסחוט או לאיים, דהיינו:
הנאשם הנ״ל, במועד האמור, קשר עם אריימן חלאווה, מפקדו של הנאשם בארגון החמאס, להשתתף בחטיפת חיילי צה״ל. על הנאשם הוטל להכין דירה, אשר בה יוחזק חיילי צה״ל לאחר ייחטטו על-ידי פעילי ארגון החמאס.
במסגרת ההכנות לקראת החטיפה, הנאשם הכין חדר בביתו בבית-רימא לצורך החזקתם של חיילי צה״ל החטופים.

**פרט חמישי:**

**מהות העבירה:** סחר בציוד מלחמתי, עביר לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש יוני 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בשכם או בסמוך לכך, קיבל מידי איימן חלאווה, פעיל צבאי בכיר בארגון החמאס, 15 ק״ג של חומר נפץ מסוג ״אום אלעבד״ (TATP) ואקדח 9 מ״מ עם מחסנית ו-14 כדורים. הנאשם העביר את חומר הנפץ ואת האקדח לבית רימא והסתירם שם.
לאחר כשבוע, איימן חלאווה העביר אל הנאשם 20 ליטר של מי חמצן, אשר משמשים לייצור חומר הנפץ מסוג ״אום אלעבד״ (TATP). גם את מי החמצן הנ״ל, הנאשם הסתיר בבית רימא.

**פרט שישי:**

**מהות העבירה:** ייצור חפץ נפיץ, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות הביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש יוני 2001 או בסמוך לכך, ייצר כלי ירייה, תחמושת פצצה, רימון יד, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה לו על-ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ״ל, במועד האמור, בבית רימא או בסמוך לכך, במחסן אשר אותו הוא שכר, הקים מעבדה לייצור חומרי נפץ ומטעני חבלה.
הנאשם העביר למעבדה הנ״ל 15 ק״ג של חומר הנפץ מסוג ״אום אלעבד״ (TATP), 20 ליטר של מי חמצן וכן מספר מנגנונים אלחוטיים להפעלת מטעני החבלה.
במעבדת החבלה הנ״ל הנאשם ייצר שני מטעני חבלה המסוווים לאבנים.
את מטען החבלה הראשון הנאשם העביר לידי איימן חלאווה, פעיל צבאי בכיר בארגון החמאס, דרך נקודת משלוח בסלפית. ביחד עם מטען החבלה הנ״ל, הנאשם העביר דף עם הנחיות להפעלת מטען החבלה הנ״ל.
את מטען החבלה השני הנאשם העביר באופו אישי לבלאל יעקוב ברגותי, פעיל צבאי בכיר בארגון החמאס.

ת.א. 380/03

HIGHLY CONFIDENTIAL

ROTH 00352

**פרט שביעי:**

**מהות העבירה:** מתן מקלט, עבירה לפי סעיף 57 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עזר או נתן מקלט לכל אדם שעבר עבירה על תחיקת הביטחון או עסק או שהיה עסוק בכל פעולה שמטרתה לפגוע בשלום הציבור, שלום כוחות צה"ל וחייליו וקיום הסדר הציבורי או שיש יסוד סביר לחשוד כי עשה כן, בין על-ידי מתן ידיעות, מחסה, מזון, משקה, כסף, בגדים, נשק, תחמושת, אספקה, מספוא, אמצעי תובלה, נפט או דלק מסוג כל שהוא ובין בדרך אחרת, דהיינו : הנאשם הנ"ל, במועד האמור, ביתתו בבית רימא או בסמוך לכך, במשך לילה אחד, הסתיר את ראמי סלימאן, אשר היה מבוקש לכוחות הביטחון הישראליים. הנאשם שוחח עם ראמי סלימאן והסתבר כי האחרון היה זה, אשר קיבל את מטען החבלה המוסווה לאבן, המתואר בפרט האישום השישי.

בבוקר, הנאשם הסיע את המבוקש הנ"ל לסלפית.

**פרט שמיני:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס' 243), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במועד האמור בפרט האישום הקודם או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי, ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו : הנאשם הנ"ל, במועד האמור, בבית רימא או בסמוך לכך, מסר לראמי סלימאן, האמור בפרט האישום הקודם, את אקדח 14 יחד עם 150 כדורים. בתמורה, הנאשם קיבל מהאדם הנ"ל אקדח 7.

**פרט תשיעי:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש יוני 2001 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו : הנאשם הנ"ל, במועד האמור, בשכם או בסמוך לכך, נפגש עם אימן חלאווה, פעיל צבאי בכיר בארגון החמאס, שהוא התאחדות בלתי מותרת. אימן חלאווה מסר לנאשם סכום של 100 דולר ארה"ב. על-פי בקשתו של אימן חלאווה, הנאשם העביר את הכסף הנ"ל לידי המבוקש המתואר בפרט האישום השביעי.

**פרט עשירי : (פ.א. 6554/01 ציון)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.07.01 או במועד הסמוך לכך, ניסה בכוונה לגרום למותו של אחר, דהיינו :

1. בתחילת חודש יולי 2001, בשכם או בסמוך לכך, הנאשם נפגש עם אימן חלאווה, פעיל צבאי בכיר בארגון החמאס. אימן חלאווה מסר לנאשם כי יש לו אדם המוכן לבצע פיגוע התאבדות בתוך ישראל.

2. על-פי בקשתו של אימן חלאווה, הנאשם פנה אל בלאל יעקוב ברגותי (עותמאן), פעיל צבאי בכיר בארגון החמאס, וביקש מהאחרון למצוא אדם אשר יוכל להכניס מחבל מתאבד אל תוך

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00353

מדינת ישראל על מנת שהאחרון יבצע שם פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3.   בלאל ברגותי גייס למטרה האמורה את מחמד ואאל מחמד דגלס. מחמד דגלס גייס למטרה האמורה את אחלאם עארף אחמד תמימי, סטודנטית באוניברסיטת ביר זית, פעילה ב״יודעי עז א-דין אל קסאם״, הזרוע הצבאית של ארגון החמאס.

4.   לאחר שהנאשם דיווח לאיימן חלאווה על גיוס האנשים הנ״ל, אימן חלאווה ביקש כי קודם יומסר הנאשם לידי האנשים הנ״ל מטען חבלה קטן, וזאת על שינסה תחילה לבצע פיגוע בישראל באמצעות מטען חבלה קטן, לפני שניתן יהיה לסמוך עליהם ולמסור להם את המחבל המתאבד.

5.   יום למחרת, ברמאללה או בסמוך לכך, הנאשם קיבל מטען חבלה קטן, אשר נשלח אליו על-ידי איימן חלאווה משכם באמצעות שליח.

6.   ביום 27.07.01, אחלאם תמימי ערכה סיור בירושלים, אשר אותה הכירה היטב, ביחד עם אחיינה, פרחי מוניר מחמוד תמימי, על מנת לאתר מקום שבו יונח מטען החבלה. במהלך הסיור ביקרה אחלאם תמימי בחנות הסופרמרקט ״קו אופי״ הנמצא בבניין ״המשביר לצרכן״ ברחוב קינג ג'ורג'. למחרת היום, מחמד דגלס נפש באוניברסיטת ביר זית עם אחלאם תמימי והאחרונה הודיעה לו כי איתרה מקום בירושלים לביצוע פיגוע תופת באמצעות מטען חבלה.

7.   הדיווח הנ״ל הועבר באמצעות בלאל ברגותי אל הנאשם. כמו כן, בלאל ברגותי המליץ לנאשם כי מטען החבלה יוסתר בתוך פחית מיץ.

8.   בעקבות האמור, הנאשם הכניס את מטען החבלה הנ״ל אל תוך פחית בירה והרכיב מנגנון הפעלתו. הנאשם מסר את מטען החבלה הנ״ל לידי בלאל ברגותי על מנת שהאחרון ימסור אותו לידי האנשים מטען גייס, וזאת על מנת שיבצעו באמצעותו פיגוע בכוונה לגרום למותם של אנשים רבים ככל הניתן.

9.   בלאל ברגותי מסר את מטען החבלה הנ״ל למחמד דגלס והאחרון, ביום 30.07.01, מסר אותו לידי אחלאם ת'מימי.

10.   באותו היום, בסביבות השעה 11:45, אחלאם תמימי הגיעה לחנות הסופרמרקט ״קו אופי״ בירושלים, המתוארת לעיל, כשבתיקה נמצא מטען החבלה אותו קיבלה מה נאשם.

11.   אחלאם תמימי הניחה את פחית הבירה שבתוכה הוסתר מטען החבלה הנ״ל במדף של פחיות, בקדמת המדף בחנות הסופרמרקט הנ״ל, וזאת על מנת שכשמטען החבלה יתפוצץ הוא יגרום למותם של האנשים שיהיו בקרבת המקום. אחלאם תמימי הפעילה את מטען החבלה האמור ועזבה את חנות הנ״ל.

12.   בסביבות השעה 13:10, באותו היום, מטען החבלה המתואר לעיל התפוצץ בחנות הסופרמרקט האמורה. כתוצאה מפיצוץ מטען החבלה נגרם רב לרכוש בחנות הנ״ל, ורק בנס איש לא נפגע.

<u>**פרט אחד-עשר:**</u>   (פ.א. 6554/01 ציון)

<u>**מהות העבירה:**</u> היזק בזדון לרכוש, עבירה לפי סעיף 353 לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש״ל-1970 וסעיף 14(א) לצו בדבר ככלי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ״ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 30.07.01 או בסמוך לכך, הרס רכוש או פגע בו בזדון ושלא כדין, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום הקודם, במעשים המתוארים בפרט האישום הקודם, גרם נזק לכבד לחנות הסופרמרקט ״קו אופי״ הנמצא בבניין ״המשביר לצרכן״ ברחוב קינג ג'ורג', אשר בו הופעל מטען חבלה, כפי שתואר בפרט האישום הקודם.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00354

**פרט שנים-עשר:**   (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. לאחר ביצוע הפיגוע בסופרמרקט בירושלים, המתוארו בפרט האישים העשירי, הנאשם יצר קשר עם איימן חלאווה, פעיל צבאי בכיר בארגון החמאס, ובהתאם לתכנון האמור בפרט האישים העשירי, ביקש כי איימן חלאווה יעביר לנאשם מטען חבלה גדול ואת המחבל המתאבד לצורך הוצאה לפועל של פיגוע התאבדות המתוכנן.

2. בתחילת חודש אוגוסט 2001, ברמאללה או בסמוך לכך, הנאשם קיבל מאיימן חלאווה, באמצעות שליח, מטען חבלה גדול, אשר היה מורכב משני בקבוקי שמפו מלאים בחומר נפץ.

3. על-פי בקשתו של בלאל יעקוב ברגותי, הנאשם הכניס את מטען החבלה הנ"ל אל תוך גיטרה, אותה הביא בלאל ברגותי. בנוסף למטעו החבלה הנ"ל, הנאשם הכניס אל תוך הגיטרה הנ"ל שתי שקיות ניילון מלאות בחומר נפץ. כמו כן, הנאשם הדביק בתוך הגיטרה ברגים באמצעות דבק. את הפתח של הגיטרה הנאשם סגר באמצעות זכוכית כך שלא ניתן יהיה לראות מה יש בתוכה. אל מטעו החבלה הנ"ל, הנאשם חיבר מנגנון הפעלה.

4. הנאשם הכניס את הגיטרה הנ"ל אל תוך נרתיק גיטרה שחור. הנאשם הוציא חוט עם כפתור הפעלה של מטעו החבלה אל מחוץ לנרתיק, כך שניתן יהיה להפעיל את מטעו החבלה בלי לפתוח את הנרתיק של הגיטרה.

5. הנאשם דיווח אודות הכנת מטעו החבלה אל איימן חלאווה וביקש מהאחרון כי ישלח אליו את המחבל המתאבד.

6. לאחר מספר ימים המחבל המתאבד עז א-דין שהיל אחמד מצרי (להן: המחבל המתאבד), אשר נשלח על-ידי איימן חלאווה הגיע לרמאללה. בלאל ברגותי פגש את המחבל המתאבד וביחד עם מחמוד ואאל מחמד דגלס הלין אותו ברמאללה.

7. הנאשם העביר את הגיטרה הממולכדת הנ"ל לידי בלאל ברגותי על מנת שהאחרון ימסור אותה לידי המחבל המתאבד וזאת על מנת שהאחרון יבצע באמצעותה פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל הניתן.

8. ביום 08.08.2001, על-פי הוראתו של מחמד ואאל מחמד דגלס (האמור בפרט האישים העשירי, על-פי הוראתו עורף אחמד תמימי (האמור בפרט האישים העשירי) לירושלים על מנת לאתר מקום שבו יבוצע פיגוע תופת, אשר אותו תכנן הנאשם ביחד עם חבריו הנ"ל ואשר לצורך הוצאתו לפועל גויסו מחמד דגלס ואחלאם תמימי הנ"ל. אחלאם תמימי הבחינה כי אמנם ישנה נוכחות גדולה של כוחות הביטחון בירושלים, אך אף אחד לא בדק אותה כי היא לבשה גופיה קצרה מתוך ניסיון להיראות כיהודיה. אחלאם תמימי הגיעה למסקנה כי ניתן לצאת לרמאללה ולבצע פיגוע במרכז ירוש לים.

9. באותו היום, בלאל ברגותי הדריך את המחבל המתאבד איך מפעילים את מטעו החבלה הנ"ל, אשר ייוצר על-יד הנאשם.

10. ביום 09.08.2001, נסע מחמד דגלס הנ"ל פגיש את אחלאם תמימי עם המחבל המתאבד, אשר נשא את הגיטרה הממולכדת. המחבל המתאבד הסתפר לקראת ביצוע הפיגוע המתוכנן ולבש בגדים, אשר היו אמורים לגרום לו להיראות כיהודי. לאחר מכן, אחלאם תמימי והמחבל המתאבד יצאו לביצוע הפיגוע המתוכן.

11. לאחר שאחלאם תמימי והמחבל המתאבד נכנסו לירושלים, אחלאם תמימי הורתה למחבל המתאבד לשאת את הגיטרה שהיתה בתוך נרתיק שחור, המתואר לעיל, על הגב על מנת לא

6

ת.ת. 380/03.

HIGHLY CONFIDENTIAL                                                                      ROTH 00355

לעורר את חשדם של כוחות הביטחון הישראליים. אחלאם תמימי אף הורידה את הג'קט שלבשה ונותרה בגו פיה קצרה.

12. אחלאם תמימי הובילה את המחבל המתאבד לצומת הרחובות יפו וקינג ג'ורג' בירושלים, שהוא צומת מרכזי והומה אדם. אחלאם תמימי תדרכה את המחבל המתאבד להפעיל את מטען חבלה במרכז הצומת האמורה כשאנשים רבים חוצים אותו וכך לפגוע בכמות גדולה ככל הניתן של האזרחים ונוסעי המכוניות העומדות ברמזור ולגרום למותם. אחלאם תמימי ציינה בפני המחבל המתאבד כי הינו רשאי לבחור גם במקום אחר לביצוע הפיגוע המתוכנן, אולם זה צריך להיות ברחוב קינג ג'ורג' שהוא מלא אנשים.

13. אחלאם תמימי השאירה את המחבל המתאבד במקום האמור ופנתה לכיוון שער שכם של העיר העתיקה על מנת לחזור לרמה ללה.

14. בסמוך לשעה 13:55, המחבל המתאבד, עז א-דין שהיל אחמד מצרי, נכנס למסעדה "סבארו" הנמצאת בפינת הרחובות יפו וקינג ג'ורג', אשר היתה הומת אדם בשעה זו. שם המחבל המתאבד הפעיל את מטען חבלה, אותו הכין הנאשם כפי שתואר לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל ה אפשר.

15. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו חמישה-עשר בני אדם, כפי שיתואר בפרטי האישום הבאים.

16. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתואר בפרטי האישום הבאים.

17. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לרכוש, הן למסעדת "סבארו", הן למכוניות ומבנים שהיו בסמוך.

18. במעשיו, המתוארים לעיל, גרם הנאשם בכוונה למותה של **פרידה מנדלסון ז"ל**, בת 62 במותה, אשר נהרגה כתוצאה מהתפוצצות מטען החבלה כאמור לעיל.

## פרט שלושה-עשר   (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **לאלי שימשיאשוילי-מסוגניסר ז"ל**, בת 33 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00356

<u>פרט ארבעה-עשר:</u>   (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תש"ל-1970 וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **תמר שימשיאשווילי-מסנגיסר** ז"ל, בת 8 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט חמישה-עשר:</u>   (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תש"ל-1970 וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **תהילה מעוז** ז"ל, בת 20 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט שישה-עשר:</u>   (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תש"ל-1970 וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **מיכל רזיאל** ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>פרט שבעה-עשר:</u>   (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51)א( לצו בדבר הוראות ביטחון )יהודה והשומרון( )מס' 378(, תש"ל-1970 וסעיף 14)א( לצו בדבר כללי האחריות לעבירה )יהודה והשומרון( )מס' 225(, תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **מלכה רוט** ז"ל, בת 15 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

ת.ת. 380/03

HIGHLY CONFIDENTIAL                                                                 ROTH 00357

<u>**פרט שמונה-עשר:**</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה:**</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **יוכבד ששון** ז"ל, בת 10 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>**פרט תשעה-עשר:**</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה:**</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **מרדכי רפאל סחיווסחוודר** ז"ל, בן 44 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>**פרט עשרים:**</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה:**</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **צירה סחיווסחוודר** ז"ל, בת 41 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>**פרט עשרים ואחד:**</u>   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה:**</u> גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **רעיה סחיווסחוודר** ז"ל, בת 14 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00358

<u>**פרט עשרים ושניים**</u>:   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה**</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **אברהם יצחק סחיווסחורדר ז"ל**, בן 4 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>**פרט עשרים ושלושה**</u>:   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה**</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **חמדה סחיווסחורדר ז"ל**, בת שנתיים במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>**פרט עשרים וארבעה**</u>:   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה**</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **ג'ודית ליליאן גרינבוים ז"ל**, בת 31 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

<u>**פרט עשרים וחמישה**</u>:   (פ.א. 6891/01 מת"מ י-ם)

<u>**מהות העבירה**</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותו של **גיורא בלאס ז"ל**, בן 69 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00359

**פרט עשרים ושישה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, גרם בכוונה למותה של **צבי גולומבק ז"ל**, בן 26 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען חבלה במסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר.

**פרט עשרים ושבעה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום השנים-עשר, ניסה לגרום בכוונה למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התפוצץ עם מטען חבלה במסעדה "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, כפי שתואר בפרט האישום השנים-עשר. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה נפצעו יותר מ-127 בני אדם שהיו באיזור מקום ההתפוצצות.

**פרט עשרים ושמונה:** (פ.א. 6891/01 מת"מ י-ם)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הן מחוצה לו, ביום 09.08.01 או בסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השנים-עשר, במעשיו המתוארים בפרט האישום השנים-עשר, גרם נזק כבד למסעדת "סבארו" בפינת הרחובות יפו וקינג ג'ורג' בירושלים, אשר בו הופעל מטען חבלה, כפי שתואר בפרט האישום השנים-עשר, וכן לבניינים הסמוכים ולכלי הרכב שעברו במקום בזמן הפיצוץ.

**פרט עשרים ותשעה:**

**מהות העבירה:** עבירות ברשיונות ומסמכים שהוצאו על-פי תחיקת הביטחון, עבירה לפי סעיף 60(ג) ו-(ז) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"י-1970.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, החל מהמחצית השניה של שנת 2001 ועד ליום מעצרו או בסמוך לכך, שינה או תיקן לאחר לשנות כל מסמך שהוצא על פי תחיקת הביטחון וחזיונו ברשותו ממסמך שהוצא על פי תחיקת הביטחון שאינו ערוך על שמו, מתוך כוונה להטעות, דהיינו :
הנאשם הנ"ל, במחצית השניה של שנת 2001, ברמאללה או בסמוך לכך, קיבל מידי סיד עכרים חדר שייך-קאסם, המכונה "יצלאם 2", שתי תעודות זהות - האחת על שמו של עראפת טאהר ברנוחי, והשניה על שמו של אשרף אלאחמד. בשתי תעודות הזהות הנ"ל הוכנסו תמונותיו של הנאשם.
במהלך התקופה האמורה לעיל, הנאשם עשה שימוש בתעודת הזהות המזויפת על שמו של עראפת טאהר ברנוחי בעת שעבר בדיקות על-ידי חייל צה"ל ברמאללה ובסמוך אליה, וזאת מתוך כוונה להטעות את חיילי צה"ל.

ת.ת. 380/03

HIGHLY CONFIDENTIAL                                                                ROTH 00360

**פרט שלושים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, שוחח עם אברהים גמיל עיאש׳ ואני חאמד, המכונה ״צלאח 1״ או ״השיח׳״, ראש ״גדודי עז א-דין אל קסאם״ באיזור רמאללה. אברהים חאמד ביקש כי הנאשם ירכוש עבורו תמ״ק עוזי. הנאשם פנה אל אחמד טאלב מוצטפא ברגותי (המכונה ״אל פראנסי״), אחד מראשי הארגון ״גדודי חללי אלאקצא״ באיזור רמאללה, וביקש לרכוש ממנו תמ״ק עוזי. אחמד ברגותי הפגיש את הנאשם עם מהנד אבו חלאווה, פעיל צבאי בכיר ב״גדודי חללי אלאקצא״, והנאשם רכש מידי האחרון תמ״ק עוזי.
לאחר כשבועיים, הנאשם העביר את תמ״ק עוזי הנ״ל לידי סיד ע/כרים חדר שייך-קאסם, המכונה ״צלאח 2״, אשר העבירו לידי אברהים חאמד.

**פרט שלושים ואחד:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו בדבר איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, פנה אל אחמד טאלב מוצטפא ברגותי (המכונה ״אל פראנסי״), אחד מראשי הארגון ״גדודי חללי אלאקצא״ באיזור רמאללה, וביקש לרכוש ממנו תמ״ק MP-5. אחמד ברגותי הפגיש את הנאשם עם מהנד אבו חלאווה, פעיל צבאי בכיר ב״גדודי חללי אלאקצא״, והנאשם רכש מידי האחרון תמ״ק MP-5.

**פרט שלושים ושניים:**

**מהות העבירה:** החזקת כלי-יריה, עבירה לפי סעיף 53(א)(1) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, החל ממועד האמור בפרט האישום הקודם ועד ליום מעצרו, החזיק ברשותו כלי-יריה, תחמושת, פצצה, רימון יד או חפץ נפיץ או מבעיר, כלי או חפץ או דבר המתכונן או מסוגל לגרום מוות או חבלה חמורה, ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו, דהיינו:
הנאשם הנ״ל, במהלך התקופה האמורה, ברמאללה או בסמוך לכך, החזיק בתמ״ק MP-5, המתואר בפרט האישום הקודם, וכן אקדח.
הנאשם החזיק בכלי הנשק הנ״ל ללא תעודת היתר שהוענקה על ידי מפקד צבאי או מטעמו.

**פרט שלושים ושלושה:**

**מהות העבירה:** ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, החל מהמחצית השניה של שנת 2001 ועד ליום מעצרו, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו:
חומרי נפץ, במהלך התקופה האמורה, ברמאללה ובסמוך אליה, הקים מספר מעבדות לייצור חומרי נפץ ומטעני חבלה. הנאשם נהג להחליף את המיקום של המעבדות הנ״ל כל כמה חודשים וזאת על מנת שלא תיחשף פעילותו על-ידי כוחות הביטחון הישראליים.
אל המעבדות הנ״ל, הנאשם וחבריו נהגו להעביר חומרים כימיים שונים המשמשים לייצור חומרי נפץ. חומרי הנפץ הנ״ל נרכשו הן על-ידי הנאשם עצמו, הן על-ידי חבריו לארגון החמאס. חומרי הנפץ הנ״ל נרכשו בכספים של ארגון החמאס.

ת.ת. 380/03

HIGHLY CONFIDENTIAL                                                                    ROTH 00361

הנאשם ייצר מהחומרים הכימיים הנ"ל עשרות קילוגרמים של חומר נפץ, בעיקר מהסוג "אום אלפעבד" (TATP). מחומרי הנפץ, אותם ייצר, הנאשם הכין מספר רב של מטעני חבלה מסוגים שונים, וזאת בנוסף למטעני חבלה אותם הכין כפי שתואר בפרטי האישום הקודמים וכפי שיתואר בפרטי האישום הבאים.

הנאשם ייצר את מטעני החבלה הנ"ל במטרה שפעילי ארגון החמאס יבצעו באמצעותם פיגועים נגד מטרות ישראליות. הנאשם הדרך את פעילי ארגון החמאס איך להפעיל את מטעני החבלה הנ"ל.

בנוסף לאמור לעיל, הנאשם ניסה לייצר רימונוני-יד ומטען וכן תכנן לרכיב מטען חבלה על רכב צעצוע המופעל באמצעות שלט רחוק.

במהלך התקופות האמורה, הנאשם אף קיבל הוראות לייצור טילי "קסאם", אך החליט כי אין ביכולתו לייצר את הטילים.

## פרט שלושים וארבעה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, במחצית השניה של שנת 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, לימד את סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל בארגון החמאס, אשר שימש כאיש קשר בין הנאשם לבין מפקדו בארגון החמאס, לייצר חומרי נפץ ומטעני חבלה.

## פרט שלושים וחמישה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימש כמעבדת חומרי נפץ, העביר אימון צבאי למחמד חסן אחמד ערמאן (מכונה "אבו מועאז"), פעיל צבאי בארגון החמאס.
במהלך האימון האמור הנאשם לימד את מחמד ערמאן לייצר חומר נפץ מהסוג הנקרא "אום אלפעבד" (TATP), מעלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנונוי הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.
בסוף האימון הנאשם העביר למחמד ערמאן תיק עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני חבלה וכן דף עם ההוראות לייצורם.
החומרים לצורך האימון הצבאי הנ"ל נרכשו על-ידי אברהים גמיל ע/עיאני חאמד, ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה.
הנאשם הציג את עצמו בפני מחמד ערמאן בכינוי "המהנדס". במהלך האימון הצבאי הנ"ל, הנאשם ומחמד ערמאן היו רעולי פנים.

## פרט שלושים ושישה:

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, כיומיים לאחר המועד האמור בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:
הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימוש כמעבדת חומרי נפץ, העביר אימון צבאי לשני אנשים, אשר הובאו לדירה על-ידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

HIGHLY CONFIDENTIAL

ROTH 00362

במהלך האימון האמור הנאשם לימד את שני האנשים הנ"ל לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.

בסוף האימון הנאשם העביר לשני האנשים הנ"ל שני תיקים עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דפים עם הוראות לייצורם.

**פרט שלושים ושבעה:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש נובמבר 2001, בסמוך לאחר שביצע את המיוחס לו בפרט האישום הקודם, או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו:

הנאשם הנ"ל, במועד האמור, בדירה ברמאללה, אשר שימשה כמעבדת חומרי נפץ, העביר אימון צבאי למוראד חליל ע/תאק עמירה, אשר הובא לדירה על-ידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

במהלך האימון האמור הנאשם לימד את מוראד עמירה לייצר חומר נפץ הנקרא "אום אלעבד" (TATP), מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי. כמו כן, הנאשם העביר למוראד עמירה אימון תיאורטי ומעשי בפירוק והרכבת הרובה של תמ"ק עוזי ואקדח 14.

בסוף האימון הנאשם העביר למוראד עמירה תיק עם חומרים שונים המשמשים לייצור חומרי הנפץ ומטעני החבלה וכן דפים עם ההוראות לייצורם.

בסוף האימון הנ"ל, הנאשם העניק למוראד עמירה כינוי "עבדאללה 5", וזאת מכיוון שזה היה האדם החמישי, אותו לימד לייצר את חומרי הנפץ ומטעני החבלה.

**פרט שלושים ושמונה:** (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, במהלך חודש נובמבר 2001 או בסמוך לכך, ברמאללה או בסמוך לכך, ייצר חומר נפץ מסוג "אום אלעבד" (TATP).

2. מחומר הנפץ שייצר הנ"ל, הנאשם ייצר שלושת מטעני חבלה. את מטען החבלה הראשון הנאשם הכניס אל תוך מארז מחשב. את מטעני החבלה השני הנאשם הכניס אל תוך תיק בד שחור. את מטעני החבלה השלישי הנאשם הכין בצורה של חגורת נפץ. בנוסף לחומר הנפץ הנאשם הכניס למטעני החבלה רסס, המורכב ממסמרים ואומים. בשלושת מטעני החבלה הנ"ל הנאשם הרכיב את מנגנוני ההפעלה. כאשר מטעני החבלה שהותכנו בתוך מטען החבלה שהוסתר בתוך תיק בד שחור הופעל באמצעות שעון עצר. בשלושת מטעני החבלה הנ"ל הנאשם הוסיף אומים ומסמרים על מנת להבעיר את עוצמת הפגיעה של מטעני החבלה. כמו כן, הנאשם הכניס לשלושת מטעני החבלה חומר רעיל, גם זאת על מנת להפוך את המטענים לקטלניים יותר.

3. הנאשם ייצר את מטעני החבלה הנ"ל לבקשתו של סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס. "צלאח 2" פנה אל הנאשם על-פי בקשתו של אברהים גימיל ע/עיאט חאמד, המכונה "צלאח 1" או "שיח'", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00363

.4   הנאשם מסר את שלושת מטעני החבלה הנ"ל לי"צלאח 2" על מנת שהאחרון ידאג
להעבירם לפעילי ארגון החמאס, אשר יבצעו באמצעות מטעני החבלה הללו פיגועי תופת
בכוונה לגרום למותם של אנשים רבים ככל הניתן.

.5   "צלאח 2" ואברהים חאמד, בעצמם או באמצעות אנשים אחרים, העבירו את מטעני
החבלה הנ"ל לידי אוסאמה מחמוד בחר ונביל מחמוד חלביה וכן הטמינו את מטען החבלה,
אשר הוסתר בתיק בד שחור, בתוך רכב מסוג אופל קדט, מ.ר. 4774987.

.6   ביום 01.12.01, בסמוך לשעה 23:36, בכניסה מכיכר ציון לרחוב בן יהודה בירושלים או
בסמוך לכך, מחבל מתאבד אוסאמה מחמוד בחר הפעיל את מטען החבלה, אשר יוצר
על-ידי הנאשם והוסתר בתוך מארז מחשב כאמור לעיל, וזאת בכוונה לגרום למותם של
אנשים רבים ככל האפשר. מטען החבלה הנ"ל התפוצץ.

.7   באותו היום, בסמוך לשעה הנ"ל, בצומת הרחובות בן-יהודה - לונץ בירושלים או בסמוך
לכך (מרחק של מטרים ספורים ממקום פיצוץ המטען הראשון), מחבל מתאבד נביל
מחמוד חלביה הפעיל את מטען החבלה, אשר יוצר על-ידי הנאשם בצורה של חגורת נפץ
כאמור לעיל, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מטען החבלה
הנ"ל התפוצץ.

.8   באותו היום, מספר דקות לאחר שינוי המחבלים המתאבדים הנ"ל הפעילו את מטעני
החבלה הנ"ל, הופעל מטען החבלה שיוצר על-ידי הנאשם והוסתר בתוך תיק בד שחור
כאמור לעיל. מטען החבלה השלישי הופעל ברכב מסוג אופל קדט, מ.ר. 4774987, אשר
חנה ברחוב הרב קוק בסמוך לפינת רחוב יפו בירושלים (מרחק של כמה עשרות מטרים
ממקום פיצוצם של שני מטעני החבלה הנ"ל). מטען החבלה הנ"ל הופעל בכוונה לגרום
למותם של אנשים רבים ככל האפשר.

.9   כתוצאה מפיצוץ שלושת מטעני החבלה הנ"ל, אשר פוצצו על-ידי כפי שתואר לעיל, נהרגו
עשרה ונפצעו כ-191 בני אדם, כפי שיפורט בפרטי האישום הבאים.

.10   במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **יוסף עאזרה ז"ל**, בן 18
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה במרכז ירושלים כפי שתואר לעיל.

## פרט שלושים ותשעה:   (פ.א. 10283/01 ציון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במעשיו האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו
המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **אסף אביטן ז"ל**, בן 15
במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים
ושמונה.

ת.פ. 380/03

HIGHLY CONFIDENTIAL

ROTH 00364

<u>פרט ארבעים:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **גיא וקנין ז״ל**, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ החבלה שהופעלו   כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ואחד :</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **יוני קורגנוב ז״ל**, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושניים :</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **יעקב ישראל דנינו ז״ל**, בן 17 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו   כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושלושה:</u>  (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **מיכאל דהאן ז״ל**, בן 20 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

ת.פ. 380/03

HIGHLY CONFIDENTIAL

ROTH 00365

<u>פרט ארבעים וארבעה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **גולן תורג'מן** ז"ל, בן 15 במותו, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים וחמישה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **אדם וינשטיין** ז"ל, בן 14 שנה במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו   כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושישה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **משה ידיד-לוי** ז"ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט ארבעים ושבעה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם בכוונה למותו של **ניר חפצדי** ז"ל, בן 19 במותו, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו  כפי שתואר בפרט האישום השלושים ושמונה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00366

<u>פרט ארבעים ושמונה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשייל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכייח-1968.

<u>פרטי העבירה:</u> הנאשם הנייל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנייל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, ניסה לגרום למותם של אזרחים רבים ככל האפשר. כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השלושים ושמונה, נפצעו **191 בני אדם.**

<u>פרט ארבעים ותשעה:</u>   (פ.א. 10283/01 ציון)

<u>מהות העבירה:</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשייל-1970) וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכייח-1968.

<u>פרטי העבירה:</u> הנאשם הנייל, הן באיזור והן מחוצה לו, ביום 01.12.01 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנייל, במועד האמור, במקום האמור בפרט האישום השלושים ושמונה, במעשיו המתוארים בפרט האישום השלושים ושמונה, גרם נזק כבד לבתים ולבתי עסק הנמצאים באיזור הרחובות בי-יהודה, לוני, יפו, הרב קוק וכלכי רכב אשר היו במקום, אשר בו הופעלו שלושה מטעני החבלה, כפי שתואר בפרט האישום השלושים ושמונה.

<u>פרט חמישים:</u>

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשייל-1970.

<u>פרטי העבירה:</u> הנאשם הנייל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו :
הנאשם הנייל, במועד האמור, ברמאללה או בסמוך לכך, על-פי בקשתו של מרואן ברגותי, ראש "התנזים" של הפתייח, ייצר שני מטעני חבלה. מרואן ברגותי ביקש מהנאשם לייצר עבורו שני מטעני חבלה על מנת לעשות בהם שימוש אם כוחות צהייל ייכנסו לרמאללה.

<u>פרט חמישים ואחד:</u>

<u>מהות העבירה:</u> ייצור חפץ מבעיר, עבירה לפי סעיף 53(א)(3) לצו בדבר הוראות בטחון (יהודה והשומרון) (מסי 378), תשייל-1970.

<u>פרטי העבירה:</u> הנאשם הנייל, באיזור, בסוף שנת 2001 או בסמוך לכך, ייצר כלי-יריה, תחמושת, פצצה, חפץ נפיץ או מבעיר, ללא תעודת היתר שהוענקה בידי מפקד צבאי או מטעמו, דהיינו :
הנאשם הנייל, במועד האמור, ברמאללה או בסמוך לכך, ייצר שלושה מטעני חבלה, אשר היו מוטמנים בקרטונים של מיץ, וכן ארבעה מטעני חבלה, אשר היו מוטמנים לאבנים.
מטעני החבלה הנייל הועברו על-ידי סיד עכברם חדר שייך-קאסם, המכונה "צלאח 2" לידי אברהם גימיל לעגינאני חאמד, המכונה "צלאח 1", שהוא ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

18

HIGHLY CONFIDENTIAL                                                      ROTH 00367

**פרט חמישים ושניים:**

**מהות העבירה:** סחר בציוד מלחמתי, עבירה לפי סעיף 2 לצו איסור סחר בציוד מלחמתי (יהודה והשומרון) (מס׳ 243), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בתחילת שנת 2002 או בסמוך לכך, סחר או עסק בצורה אחרת בציוד מלחמתי ללא היתר חתום על-ידי מפקד האיזור או מטעמו, דהיינו: הנאשם הנ״ל, במועד האמור, ברמאללה או בסמוך לכך, רכש מידי אחמד טאלב מוצטפא ברגותי (הממונה ״אל פראנסי״), אחד מראשי הארגון ״גדודי חללי אלאקצא״, רוסי״ר קלצ׳ניקוב עם שתי מחסניות מלאות בכדורים וכן אקדח 14 עם מחסנית מלאה בכדורים. הנאשם ביצע את האמור לעיל על-פי בקשתו של מחמד טאהר מחמוד ברגותי, פעיל צבאי בארגון החמאס. לאחר רכישת כלי הנשק הנ״ל, הנאשם מסרם לידי מחמד טאהר ברגותי הנ״ל.

**פרט חמישים ושלושה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ״ל, באיזור, בחודש פברואר 2001 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו: הנאשם הנ״ל, במועד האמור, נפגש ברמאללה עם אדם פלוני. הנאשם נפגש עם האדם הנ״ל על-פי בקשתו של אברהים ג׳מיל ע׳עיאני אחמד, הממונה ״צלאח 1״ או ״חשיח״, ראש ״גדודי עז א-דין אל קסאם״, הזרוע הצבאית של ארגון החמאס, באיזור רמאללה. אברהים אחמד מסר לנאשם כי האדם הנ״ל צריך לצאת לביצוע פיגוע התאבדות וביקש כי הנאשם יבדוק אם האדם הנ״ל איתן בדעתו לבצע פיגוע התאבדות. הנאשם הסכים ושוחח עם האדם הנ״ל. הנאשם התרשם כי האדם הנ״ל איתן בדעתו וזאת לאור העובדה כי האדם הנ״ל מבקש, באמצעות ביצוע פיגוע התאבדות, לסחר את שם אביו, שנשארו בשיתוף הפעולה עם כוחות הביטחון הישראליים. הנאשם מסר את מסקנותיו הנ״ל לאברהים אחמד, אשר השיב כי לא יוציא את האדם הנ״ל לביצוע פיגוע התאבדות, שכן אינו מוכן שאדם יבצע פיגוע התאבדות רק על מנת לטהר את שמו.

**פרט חמישים וארבעה: (פ.א. 1512/02 מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״י-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. בתחילת חודש מרץ 2002, ברמאללה או בסמוך לכך, הנאשם נפגש עם האחראי עליו בארגון החמאס, אברהים ג׳מיל ע׳עיאני אחמד, המכונה ״צלאח 1״ או ״חשיח״. אברהים אחמד ביקש כי הנאשם ייצר חגורת נפץ עבור מחבל מתאבד, על מנת שהאחרון יבצע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל הניתן.

2. הנאשם הסכים לבקשתו של אברהים אחמד. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ״ל הורכבה מחגורת מבד דמוי עור, עליה הודבקו ברגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם מנגנון הפעלה לחגורת הנפץ הנ״ל.

3. לאחר שהנאשם סיים להכין את חגורת הנפץ הנ״ל, הנאשם העביר סיד ע׳כרים חדר שינד-קאסם, המכונה ״צלאח 2״, אל אברהים אחמד, וזאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן.

HIGHLY CONFIDENTIAL

ת.ת. 380/03

ROTH 00368

4. אברהים חאמד פנה גם אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאז") וביקש כי האחרון יפנה אל ואאל מחמוד מחמוד-עלי קאסם, המכונה "אבו סעד", ויבקש ממנו לאתר מקום מתאים לביצוע פיגוע ההתאבדות.

5. מחמד ערמאן נפגש עם "אבו סעד" וביקש לאתר מקום מתאים לביצוע פיגוע ההתאבדות. לאחר מספר ימים "אבו סעד" פנה אל מחמד ערמאן ומסר כי איתר מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן והוא - בית-קפה "מומנטו", הנמצא ברחוב עזה בירושלים. "אבו סעד", ביחד עם וסאם סעיד מוסא עבאסי ומחמד אסחאק עודה, ביצעו סיורים באיזור בית-קפה "מומנטו" לצורך תכנון פיגוע ההתאבדות. הנאשם דיווח ל"שיחיי" אודות המקום שאותר על-ידי "אבו סעד" וחבריו.

6. ביום שבת, 09.03.02, בסביבות השעה 20:00, ברמאללה או בסמוך לכך, מחמד ערמאן נפגש עם פואד אלחוראני ועם אברהים חאמד. אברהים חאמד ופואד אלחוראני עזבו את מקום המפגש למשך כחצי שעה על מנת שפואד אלחוראני ילבש חגורת נפץ. אברהים חאמד הלביש על פואד חוראני את חגורת הנפץ, אשר הוכנה על-ידי הנאשם, כאמור לעיל, לצורך ביצוע פיגוע התאבדות.

7. לאחר מכן, מחמד ערמאן, ביחד עם וליד אנג'אס, ליוו את פואד אלחוראני, אשר נשא על גופו את חגורת הנפץ הנ"ל, לתחנת מוניות "קלנדיה" ברמאללה והעלו את האחרון לרכב הסעות שנסע לבית חנינא. מחמד ערמאן, וליד אנג'אס ופואד אלחוראני נסעו ביחד לבית חנינא ברכב הסעות. מחמד ערמאן וליד אנג'אס הובילו את פואד אלחוראני למקום המפגש, אשר אותו קבע הנאשם עם "אבו סעד".

8. "אבו סעד" נפגש עם המחבל המתאבד, פואד אלחוראני, במקום האמור, ולאחר מכן, ביחד עם וסאם עבאסי, הסיע את המחבל המתאבד לירושלים. "אבו סעד" וסאם עבאסי הובילו את פואד אלחוראני לבית-קפה "מומנטו" הנמצא ברחוב עזה בירושלים.

9. בסמוך לשעה 22:30, ביום 09.03.02 או במועד הסמוך לכך, פואד אלחוראני אשר נשא על גופו את חגורת הנפץ, אותה יצר למטרה זו הנאשם, נכנס אל תוך בית-קפה "מומנטו", אשר היה באותה שעה הומה אדם, והפעיל את חגורת הנפץ הנ"ל בכוונה לגרום למותם של אנשים רבים ככל האפשר.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **אברהם רחמים ז"ל**, אשר נהרג כתוצאה מפיצוץ חגורת הנפץ בבית-קפה "מומנטו" כפי שתואר לעיל.

<u>פרט חמישים וחמישה:</u>   (פ.א. 1512/02 מוריה)

<u>מהות העבירה:</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

<u>פרטי העבירה:</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **ניר בורוכוב ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL                                                    ROTH 00369

**פרט חמישים ושישה:   (פ.א. 1512/02 מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **לימור בן שוהם ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**פרט חמישים ושבעה:   (פ.א. 1512/02 מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **דן אימוני ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**פרט חמישים ושמונה:   (פ.א. 1512/02 מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **דנית דגן ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

**פרט חמישים ותשעה:   (פ.א. 1512/02 מוריה)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **אורי פליקס ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

ת.ת. 380/03.

HIGHLY CONFIDENTIAL

ROTH 00370

<u>**פרט שישים:**</u>   (פ.א. 1512/02 מוריה)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, . גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **ברוך לינר ז״ל**, אשר נהרג כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>**פרט שישים ואחד:**</u>   (פ.א. 1512/02 מוריה)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **טלי אליהו ז״ל**, אשר נהרגה כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>**פרט שישים ושניים:**</u>   (פ.א. 1512/02 מוריה)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **לבנת דבש ז״ל**, אשר נהרגה כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>**פרט שישים ושלושה:**</u>   (פ.א. 1512/02 מוריה)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירות (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותה של **אורית אוזרוב ז״ל**, אשר נהרגה כתוצאה מפיצוץ מטען חבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00371

<u>**פרט שישים וארבעה:**</u>   (פ.א. 1512/02 מוריה)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם בכוונה למותו של **נתנאל כוכבי ז"ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה.

<u>**פרט שישים וחמישה:**</u>   (פ.א. 1512/02 מוריה)

<u>**מהות העבירה:**</u> ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר.

כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום החמישים וארבעה, נפצעו **65 בני אדם.**

<u>**פרט שישים ושישה:**</u>   (פ.א. 1512/02 מוריה)

<u>**מהות העבירה:**</u> היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 09.03.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד שלא כדין, דהיינו :

הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום החמישים וארבעה, במעשיו המתוארים בפרט האישום החמישים וארבעה, גרם נזק כבד לבית-קפה "מומנט" הנמצא ברחוב עזה בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום החמישים וארבעה.

<u>**פרט שישים ושבעה:**</u>   (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה:**</u> גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה:**</u> הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

1. הנאשם הנ"ל, בסוף חודש מרץ - חודש אפריל 2002, ברמאללה או בסמוך לכך, נפגש עם סייד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים גימל ע/עיאני חאמד, המכונה "צלאח 1" או "שיחי", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר חגורת נפץ ותיק נפץ לצורך ביצוע פיגוע התאבדות. הנאשם הסכים לייצר את שני מטעני החבלה

HIGHLY CONFIDENTIAL                                                                    ROTH 00372

וזאת על מנת שישתמשו בהם לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של
אנשים רבים ככל האפשר.

3. הנאשם ייצר, ברמאללה או בסמוך לכך, חגורת נפץ. חגורת הנפץ הנ"ל הורכבה מחגורה
מבד דמוי עור, עלי הודבקו ברגים ובקבוקי שמפו מלאים בחומר נפץ. הנאשם הרכיב גם
מנגנון הפעלה לחגורת הנפץ הנ"ל. חגורת הנפץ הנ"ל היתה דומה לזו שהנאשם ייצר עבור
הפיגוע בבית-קפה "מומנט" בירושלים, המתואר בפרט·האישום החמישים וארבעה.

4. כמו כן, הנאשם ייצר, ברמאללה או בסמוך לכך, מטען נפץ, אשר הורכב מבקבוקי שמפו
מלאים בחומר נפץ, אשר הוכנסו אל תוך תיק בצבע שחור. הנאשם הכניס אל תוך התיק
הנ"ל ברגים לצורך הגברת עוצמת הפגיעה של מטען החבלה. הנאשם הרכיב בתיק האמור
מנגנון הפעלה למטען החבלה, המורכב משעון עצר.

5. הנאשם מסר את חגורת הנפץ הנ"ל ביחד עם תיק הנפץ הנ"ל לידי "צלאח 2", על מנת
שהאחרון יעבירם לידי אברהים חאמד וזה יעבירם לידי המחבל המתאבד.

6. בחודש אפריל 2002 אברהים חאמד חסן אמאמד ערמאן (מכונה "אבו
מועאזי" ומסר לאחרון כי יש צורך לבצע פיגוע התאבדות בכוונה לגרום למותם של אנשים
רבים ככל האפשר. אברהים חאמד מסר למחמד ערמאן כי יש לו אדם שמוכן לבצע את
פיגוע ההתאבדות.

7. לאחר מספר ימים, ברמאללה או בסמוך לכך, אברהים חאמד הכיר למחמד ערמאן את
מחמד גמיל אחמד מועמר (להלן : המחבל המתאבד), אשר היה זה אמור לבצע את פיגוע
ההתאבדות המתוכנן. במהלך הפגישה סוכם כי לאחר מספר ימים אברהים חאמד יביא
את מחמד המתאבד לפגישה עם מחמד ערמאן ברמאללה והאחרון ייקח את המחבל
המתאבד לביצוע פיגוע ההתאבדות המתוכנן.

8. ביום 07.05.02, מחמד ערמאן נפגש עם המחבל המתאבד ברמאללה לפי הסיכום הנ"ל.
על-פי בקשתו של מחמד ערמאן, וליד יעגיוו /עאהדי אנג'אס ליווה את המחבל המתאבד
מרמאללה לצפא. בצפא השניים הנ"ל נפגשו עם מחמד ערמאן ונסעו ביחד לבית הנ"ל. שם
מחמד ערמאן מסר לידי המחבל המתאבד את חגורת הנפץ, אשר אותה ייצר הנאשם
כאמור לעיל ואשר הועברה לידי מחמד ערמאן על-ידי אברהים חאמד. מחמד ערמאן
הלביש את חגורת הנפץ הנ"ל על גופו של המחבל המתאבד וכן נתן לאחרון תיק עם מטען
חבלה נוסף, אשר גם אותו ייצר הנאשם כאמור לעיל ואשר הועבר לידי מחמד ערמאן
על-ידיי אברהים חאמד.

9. מחמד ערמאן הסיע ברכבו את המחבל המתאבד עם חגורת החבלה הנ"ל ועם חגורת הנפץ
הנ"ל מבית ענאן לבית איכסא.

10. בבית איכסא או בסמוך לכך, הנאשם והמחבל המתאבד פגשו בואאל מחמוד מחמד-עלי
קאסם, המכונה "אבו סעד", אשר לקח את המחבל המתאבד לביצוע הפיגוע המתוכנן.

11. באותו הערב, "אבו סעד" ביחד עם וסאם סעיד עבאסי, הסיעו את המחבל המתאבד
לראשון לציון ושם ליוו אותו עד למועדון "שפילד-קלאב" הנמצא ברחוב סחרוב 1 באיזור
התעשיה החדש, אשר אותר קודם לכן על-ידי "אבו סעד", מחמד אסחאק עודה, וסאם
עבאסי ועלאא א-דין מחמד עבאסי כמקום מתאים לביצוע פיגוע ההתאבדות. "אבו סעד"
ווסאם עבאסי הצניעו למחבל המתאבד על המועדון האמור והסבירו לו כי זה המקום שבו
עליו לבצע את פיגוע ההתאבדות המתוכנן.

12. בסמוך לשעה 22:50, ביום 07.05.02 או במועד הסמוך לכך, המחבל המתאבד נכנס
למועדון הנ"ל והפעיל את חגורת הנפץ ואת מטען החבלה הנוסף, אשר אותם ייצר הנאשם
למטרה זו, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

13. במעשיו המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותו של **רחמים קמחי ז"ל**, אשר
נהרג כתוצאה מפיצוץ מטעני החבלה כפי שתואר לעיל.

HIGHLY CONFIDENTIAL                                                              ROTH 00373

**פרט שישים ושמונה:** (פ.א. 5601/02 ראשל"ץ):

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **רפאל חיים ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שישים ותשעה:** (פ.א. 5601/02 ראשל"ץ):

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **ענת טרמפורוש ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים:** (פ.א. 5601/02 ראשל"ץ):

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **אברהם בייז ז"ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ואחד:** (פ.א. 5601/02 ראשל"ץ):

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **אתי בבלאר ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00374

**פרט שבעים ושניים:**   (פ.א. 5601/02 ראשל״ץ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **יצחק בבלאר ז״ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ושלושה:**   (פ.א. 5601/02 ראשל״ץ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **ישראל שיקאר ז״ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים וארבעה:**   (פ.א. 5601/02 ראשל״ץ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **שושנה מגמרי ז״ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים וחמישה:**   (פ.א. 5601/02 ראשל״ץ)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים בפרט האישום השישים ושבעה, גרם בכוונה למותו של **שארוק רסאן ז״ל**, אשר נהרג כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00375

**פרט שבעים ושישה:   (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותה של **נואה חינאווי ז"ל**, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ושבעה:   (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותו של **ניר לובטין ז"ל**, אשר נהרג כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ושמונה:   (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותה של **רגינה מלכה בוסלו ז"ל**, אשר נהרגה
כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

**פרט שבעים ותשעה:   (פ.א. 5601/02 ראשל"צ)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה
והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה
והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך,
גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ"ל, במועד האמור, במקום האמור בפרט האישום השישים ושבעה, במעשיו המתוארים
בפרט האישום השישים ושבעה, גרם בכוונה למותה של **דליה מסה ז"ל**, אשר נהרגה כתוצאה
מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

ת.פ. 380/03

HIGHLY CONFIDENTIAL                                                                 ROTH 00376

<u>**פרט שמונים**</u>:   (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה**</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, גרם בכוונה למותה של **פנינה חקרי ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>**פרט שמונים ואחד**</u>:   (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה**</u>: גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, גרם בכוונה למותה של **עדנה כהן ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטעני החבלה שהופעלו כפי שתואר בפרט האישום השישים ושבעה.

<u>**פרט שמונים ושניים**</u>:   (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה**</u>: ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, ניסה לגרום למותו של אחר, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, ניסה לגרום בכוונה למותם של אזרחים רבים ככל האפשר בפרט האישום השישים ושבעה, ניסה לגרום בכוונה למותם של אזרחים רבים ושבעה, נפצעו **59 בני אדם**.

<u>**פרט שמונים ושלושה**</u>:   (פ.א. 5601/02 ראשל"צ)

<u>**מהות העבירה**</u>: היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תשל"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

<u>**פרטי העבירה**</u>: הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 07.05.02 או במועד הסמוך לכך, הרס רכוש כאשר פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במועד האמור, במקום האמור, גרם נזק כבד למועדון "שפילד-קלאבי" הנמצא ברחוב סחרוב 1 בראשון לציון וכן לכל הבניין האמור, אשר בו הופעלו מטעני החבלה, כפי שתואר בפרט האישום השישים ושבעה.

28

HIGHLY CONFIDENTIAL   ROTH 00377

**פרט שמונים וארבעה:** (פ.א. 2881/02 גלילות)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 23.05.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש מאי 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שיך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "שיח'", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה אשר "ידבק" אל ברזל וזאת לצורך ביצוע פיגוע תופת. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר ניתן "להדביקו" לברזל באמצעות המגנטים, אותם הרכיב הנאשם על מטען החבלה, ואשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2" לצורך ההוצאה לפועל של פיגוע התופת המתוכנן. "צלאח 2" העביר את מטען החבלה לידי אברהים חאמד.

5. בחודש מאי 2002 אברהים חאמד נפגש עם מחמד חסן אחמד ערמאן (מכונה "אבו מועאזי") ומסר לחאמד כי ברצונו לבצע פיגוע תופת ולפוצץ מכלית דלק, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות האמור, מחמד ערמאן נפגש עם ואל מחמוד מחמוד-עלי קאסם, המכונה "אבו סעד", וסיפר לו אודות תכנונו של אברהים חאמד לבצע פיגוע תופת. "אבו סעד" אמר כי ידבוק את העניין ויראה מה ניתן לעשות.

6. לאחר מספר ימים, מחמד ערמאן נפגש שוב עם "אבו סעד". "אבו סעד" מסר כי הוא וחבריו איתרו מכלית דלק הנוסעת באופן קבוע לאתר "פי גלילות".

7. ביום 22.05.02 מחמד ערמאן נפגש עם אברהים חאמד ברמאללה ודיווח לאחרון אודות מכלית הדלק הנ"ל. אברהים חאמד ביקש להיפגש עם מחמד ערמאן בעוד מספר שעות באותו המקום.

8. לאחר מספר שעות השניים נפגשו שוב. אברהים חאמד מסר לידי מחמד ערמאן את מטען חבלה, אשר אותו ייצר הנאשם כאמור לעיל. כמו כן, אברהים חאמד מסר למחמד ערמאן מכשיר טלפון סלולרי, אשר ממנו יש להתקשר אל המכשיר המחובר למטען החבלה על מנת להפעילו.

9. מחמד ערמאן מסר את מטען החבלה הנ"ל לידי ע/עזיז ע/האדי אנג'אס, אשר העבירו לצפא. מחמד ערמאן הגיע לצפא ומשם נסע במכוניתו, ביחד עם ואלד אנג'אס, לבית איכסא.

10. מחמד ערמאן נפגש שם עם "אבו סעד" וביחד עם ואלד אנג'אס מסר לידי "אבו סעד" את מטען החבלה הנ"ל עם מכשיר טלפון סלולרי המחובר אליו וכן את מכשיר הטלפון הסלולרי הנוסף.

11. בשעות הבוקר המוקדמות למחרת, יום 23.05.02, "אבו סעד" נסע לחולון ביחד עם וסאם סעיד עבאסי, כשברשותם מטען חבלה הנ"ל. בחולון, "אבו סעד" הצמיד את מטען החבלה הנ"ל באמצעות מגנט אל חלקו הקדמי התחתון של מיכל הדלק המורכב על מכלית דלק, מ.ר. 2622700. מיכלית הדלק הנ"ל אותרה קודם לכן כיעד לביצוע פיגוע תופת על-ידי וסאם עבאסי ועלאא א-דין מחמוד עבאסי. "אבו סעד" המתין ברכבו עד

HIGHLY CONFIDENTIAL                                    ROTH 00378

שהגיע נתב מיכלית הדלק ולאחר מכן נסע אחרי מיכלית הדלק הנ"ל עד לאתר "פי גלילות". לאחר שי"אבו סעד" וידא כי מיכלית הדלק, אשר אליה חובר מטען החבלה הנ"ל, נכנסה אל תוך האתר "פי גלילותי", אבו סעד הפעיל את מטען החבלה הנ"ל, אשר אותו ייצר הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

12. מטען חחבלה הנ"ל התפוצץ וגרם נזק כבד למיכלית הדלק הנ"ל. רק בנס איש לא נפגע.

**פרט שמונים וחמישה:**   (פ.א. 3975/02 לוד)

**מהות העבירה:** ניסיון לגרימת מוות במכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תשל"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מסי 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 30.06.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותם של אחר, דהיינו :

1.   הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שיוך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2.   "צלאח 2" מסר לנאשם כי אברהים גימיל ע/עיאני חמאד, המכונה "צלאח 1" או "שיחי", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3.   בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4.   הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים גימיל ע/עיאני חמאד, המכונה "צלאח 1" או "שיחי", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5.   אברהים חאמד פנה אל מחמוד חסן אחמד ערמאן (מכונה "אבו מועאזי") והציע לבצע פיגוע תופת באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6.   מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעד", וביקש ממנו לבדוק אפשרות של ביצוע פיגוע תופת על פסי הרכבת בישראל. לאחר זמן מה, "אבו סעד" פנה אל מחמד ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. מחמד ערמאן דיווח על כך לאברהים חאמד.

7.   לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם אברהים חאמד, אשר מסר לו את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל.

8.   ביום 29.06.02 או בסמוך לכך, מחמד ערמאן העביר את מטען החבלה הנ"ל ביחד עם מכשירי הטלפון הסלולריים לידי "אבו סעד" והסביר לאחרון כיצד מפעילים את מטען החבלה הנ"ל.

9.   בשעות הערב באותו היום, "אבו סעד" ביחד עם וסאם סעיד עבאסי נסע ללוד והניח את מטען החבלה הנ"ל על פסי הרכבת בלוד במקום שאותר קודם לכן כמתאים לביצוע הפיגוע המתוכנן על-ידי וסאם עבאסי ועלאא א-דין מחמוד עבאסי. לאחר מכן, "אבו סעד" ווסאם עבאסי חזרו לירושלים.

ת.ת. 380/03.

HIGHLY CONFIDENTIAL                                                                    ROTH 00379

10. בשעות המוקדמות של הבוקר למחרת, 30.06.02, "אבו סעד" וסאם עבאסי נסעו ללוד. וסאם עבאסי התמקם ליד מטען החבלה שהונח כאמור לעיל על פסי הרכבת. בסמוך לשעה 07:00, ברגע שוסאם עבאסי הבחין ברכבת המתקרבת למקום האמור, הוא הודיע ל"אבו סעד", אשר הפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

11. מטען החבלה הנ"ל התפוצץ.

12. כתוצאה מפיצוץ מטען החבלה הנ"ל נפצעו 4 בני אדם. כמו כן נגרם נזק לקטר הרכבת ולמסילת הברזל.

**פרט שמונים ושישה:**   **(פ.א. 9913/02 רחובות)**

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 21.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בחודש יוני 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כריס חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/עיאני אחמד, המכונה "צלאח 1" או "שיח'", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המופעל באמצעות מכשיר טלפון סלולרי וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3. בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר מופעל באמצעות מכשיר טלפון סלולרי.

4. הנאשם מסר את מטען החבלה הנ"ל לידי "צלאח 2". "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים ג'מיל ע/עיאני אחמד, המכונה "צלאח 1" או "שיח'", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

5. אברהים אחמד פנה אל מחמוד חסן אחמד ערמאן (מכונה "אבו מועצב") והציע לבצע פיגוע תופת נוסף באמצעות הנחת מטען חבלה על פסי רכבת בתוך מדינת ישראל וזאת מתוך כוונה לגרום למותם של אנשים רבים ככל האפשר.

6. מחמד ערמאן פנה אל ואאל מחמוד מחמוד-עלי קאסם, המכונה "אבו סעד", וביקש ממנו למצוא מקום לביצוע פיגוע תופת נוסף על פסי הרכבת בישראל. לאחר זמן מה, "אבו סעד" פנה אל מחמד ערמאן ומסר לו כי מצא מקום מתאים לביצוע הפיגוע המתוכנן. מחמד ערמאן דיווח על כך לאברהים אחמד.

7. לאחר זמן מה, מחמד ערמאן נפגש ברמאללה עם אברהים אחמד, אשר מסר לו את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל לצורך ההוצאה לפועל של הפיגוע המתוכנן.

8. ביום 20.07.02, מחמד ערמאן מסר את מטען החבלה הנ"ל לוליד ע/עזיז ע/האדי אנג'אס וביקש מהאחרון להעבירו לצפא. לאחר מכן, מחמד ערמאן הגיע לצפא ונפגש שם עם וליד אנג'אס. משם, השניים נסעו ביחד לבית איכסא.

9. בבית איכסא, מחמד ערמאן וליד אנג'אס העבירו את מטען החבלה הנ"ל ביחד עם מכשירי הטלפון הסלולריים לידי "אבו סעד".

31

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00380

10.  באותו הלילה, "אבו סעד", ביחד עם וסאם סעיד עבאסי ועלאא א-דין מחמוד עבאסי, נסעו לאיזור רחובות והניחו את מטען החבלה הנ"ל על פסי הרכבת בסמוך ליציאה מרחובות, ליד כפר גבירול, מקום שנבחר קודם לכן על-ידי "אבו סעד" וסאם עבאסי. לאחר מכן השלושה חזרו לירושלים.

11.  למחרת, 21.07.02, בשעות הבוקר המוקדמות, "אבו סעד" וסאם עבאסי נסעו למקום שבו הונח מטען החבלה הנ"ל. בסמוך לשעה 07:30, "אבו סעד" הפעיל את מטען החבלה הנ"ל בכוונה לגרום למותם של אנשים רבים ככל האפשר, לאחר שוסאם עבאסי דיווח לו באמצעות מכשיר טלפון סלולרי כי רכבת מגיעה למקום שבו הונח מטען החבלה.

12.  מטען החבלה הנ"ל התפוצץ. כתוצאה מפיצוץ מטען החבלה נפצע אדם אחד. כמו כן, נגרם נזק לקטור הרכבת ולמסילת הברזל.

**פרט שמונים ושבעה :   (פ.א. 1197/02 שלם)**

**מהות העבירה:**  גרימת מות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :

1.  הנאשם הנ"ל, בחודש יולי 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2.  "צלאח 2" מסר לנאשם כי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "שיחי", מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר מטען חבלה המוסתר בתוך תיק זמן לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטען החבלה וזאת על מנת שישתמשו בו לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3.  בעקבות הבקשה האמורה, הנאשם ייצר מטען חבלה, אשר הורכב ממיכל שמפו גדול מלא בחומר נפץ, אשר הוסתר בתוך תיק שחור קשיח ממד (דומה לתיק ג'יימס בונד"). כמו כן, הנאשם מילא את התיק הנ"ל באומם לצורך הגברת עוצמת הפגיעה של המטען. על-פי בקשתו של "צלאח 2", הנאשם הרכיב למטען החבלה הנ"ל מנגנון הפעלה אלחוטי, כך שמטען החבלה היה מופעל באמצעות מכשיר טלפון סלולרי.

4.  הנאשם מסר את מטען החבלה הנ"ל וכן שלושה מיכלי שמפו נוספים, מלאים בחומר נפץ, לידי "צלאח 2".

5.  "צלאח 2" העביר את מטען החבלה הנ"ל לידי אברהים ג'מיל ע/ע'אני חאמד, המכונה "צלאח 1" או "שיחי", ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

6.  אברהים חאמד פנה אל מחמד חסן אחמד ערמאן (מכונה "אבו מועאז") וביקש לאתר מקום בירושלים שבו ניתן לבצע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמד ערמאן פנה אל ואאל מחמוד מחמד-עלי קאסם, המכונה "אבו סעד", וביקש מהאחרון לאתר מקום מתאים לביצוע פיגוע תופת.

7.  לאחר מספר ימים, "אבו סעד" מסר למחמד ערמאן כי איתר מקום מתאים לביצוע פיגוע המוני והוא האוניברסיטה העברית בירושלים, קמפוס הר-הצופים. מחמד ערמאן דיווח אודות המקום שאיתר לאברהים חאמד.

ת.ת. 380/03

HIGHLY CONFIDENTIAL                                        ROTH 00381

8. לצורך ביצוע פיגוע התופת המתוכנן, אברהים חאמד מסר למחדאם ערמאן את מטען החבלה, אשר אותו ייצר הנאשם כאמור לעיל. מחמד ערמאן הוסיף אל מטען החבלה האמור את שלושת בקבוקי שמפו, המלאים בחומר נפץ, אותם קיבל "צלאח 2" מהנאשם.

9. לאחר מכן, מחמד ערמאן נסע ביחד עם וליד ע/עזיז ע/האדי אנג'אס לבית איכסא במטרה להעביר את מטען החבלה הנ"ל ל"אבו סעד" על מנת שאחרון ביחד עם חבריו יבצע באמצעותו את פיגוע התופת המתוכנן.

10. בבית איכסא מחמד ערמאן וליד אנג'אס נפגשו עם "אבו סעד". השניים מסרו לידי "אבו סעד" את מטען החבלה הנ"ל יחד עם שני מכשירי טלפון סלולריים, כאשר מכשיר אחד היה מחובר למטען החבלה ושימש כמנגנון הפעלה.

11. ביום 28.07.02, "אבו סעד", ביחד עם מחמד אסחאק עודה, העבירו את מטען החבלה הנ"ל לירושלים. "אבו סעד" ומחמד עודה הכניסו את מטען החבלה הנ"ל אל תוך קמפוס הר-הצופים של האוניברסיטה העברית בירושלים. מחמד עודה הכיר היטב את המקום מכיוון שעבד שם בעבר ואף עשה שימוש בכרטיס עובד, אשר עדיין נשאר ברשותו, כדי להכנס אל תוך הקמפוס האמור. מחמד עודה הניח את מטען החבלה הנ"ל בתוך הקפיטריה הנמצאת בבניין ע"ש פרנק סינטרה בקמפוס הנ"ל. לאחר מכן, "אבו סעד" ומחמד עודה ניסו להפעיל את מטען החבלה הנ"ל באמצעות מכשיר טלפון סלולרי, אך מטען החבלה לא התפוצץ עקב תקלה שבו. לאחר מכן, מחמד עודה חזר אל המקום שבו הניח את מטען החבלה הנ"ל, אסף את מטען החבלה וביחד עם "אבו סעד" נסע לבית איכסא.

12. לאחר מכן, ביום 29.07.02, מחמד ערמאן וליד אנג'אס נפגשו שוב עם "אבו סעד". "אבו סעד" החזיר למחמד ערמאן את מטען החבלה הנ"ל. "אבו סעד" מסר כי הוא וחבריו הניחו את מטען החבלה הנ"ל באוניברסיטה העברית בירושלים, בקמפוס הר-הצופים, בכוונה לפוצצו ולגרום למותם של אנשים רבים בכל האפשר, אך מטען החבלה הנ"ל לא התפוצץ. מחמד ערמאן וליד אנג'אס העבירו את מטען החבלה הנ"ל לחרבתא בני חארס.

13. מחמד ערמאן תיקן את מטען החבלה הנ"ל, לאחר שבדק אותו וגילה כי יש בעיה עם חוטי החשמל.

14. יום למחרת, ביום 30.07.02, מחמד ערמאן נפגש שוב עם וליד אנג'אס וביחד עם האחרון העביר את מטען החבלה הנ"ל לבית איכסא.

15. בבית איכסא, מחמד ערמאן, וליד אנג'אס נפגשו עם "אבו סעד". מחמד ערמאן מסר לידי "אבו סעד" את מטען החבלה הנ"ל.

16. באותו הלילה, "אבו סעד" ומחמד אסחאק עודה לקחו את מטען החבלה הנ"ל לירושלים והסתירו אותו בין העצים גבן הבוטני בקמפוס הר-הצופים של האוניברסיטה העברית.

17. למחרת, ביום 31.07.02, "אבו סעד" ומחמד עודה נסעו שוב לקמפוס הר-הצופים של האוניברסיטה העברית. בעת ש"אבו סעד" המתין בחוץ, מחמד עודה נכנס אל תוך הקמפוס, אסף את מטען החבלה הנ"ל והניח בקפיטריה הנמצאת בבניין ע"ש פרנק סינטרה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים. לאחר שמחמד עודה, בסמוך לשעה 13:30, עזב את שטח הקמפוס והצטרף אל "אבו סעד", "אבו סעד" הפעיל את מטען החבלה הנ"ל, אשר יוצר על-ידי הנאשם, באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים בכל האפשר. "אבו סעד" ומחמד בחרו בחרו לבצע את הפיגוע דווקא בסמוך לשעה 13:00 מאחר שלפי המידע שאסף מחמד עודה בקפיטריה הנ"ל בשעה האמורה יש ריכוז גדול של בני אדם.

18. במעשים המתוארים לעיל, הנאשם הנ"ל גרם בכוונה למותה של **דפנה שפרוך ז"ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה באוניברסיטה העברית, כפי שתואר לעיל.

HIGHLY CONFIDENTIAL

ROTH 00382

**פרט שמונים ושמונה:**   (פ.א. 1197/02 שלם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **מרלה אן בנט ז״ל,** אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**פרט שמונים ותשעה:**   (פ.א. 1197/02 שלם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **דינה קרטר ז״ל,** אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים:**   (פ.א. 1197/02 שלם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **בנימין תומאס בלוטשטיין ז״ל,** אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים ואחד:**   (פ.א. 1197/02 שלם)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **רויטל בראשי ז״ל,** אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00383

**פרט תשעים ושניים:  (פ.א. 1197/02 שלם)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשל״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **דוד (דיאגו) לדובסקי ז״ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים ושלושה:  (פ.א. 1197/02 שלם)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשל״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **לינא שפירא ז״ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים וארבעה: (פ.א. 1197/02 שלם)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשל״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **ג׳ניס רות קולטר ז״ל**, אשר נהרגה כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים וחמישה: (פ.א. 1197/02 שלם)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תשל״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם בכוונה למותו של **דוד גריץ ז״ל**, אשר נהרג כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00384

**פרט תשעים ושישה:** (פ.א. 1197/02 שלם)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט האישום השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, ניסה לגרום למותם של אזרחים רבים ככל האפשר. כתוצאה מפיצוץ מטען החבלה שהופעל כפי שתואר בפרט האישום השמונים ושבעה, נפצעו **81 בני אדם.**

**פרט תשעים ושבעה:** (פ.א. 1197/02 שלם)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 31.07.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו :
הנאשם הנ״ל, במועד האמור, במקום האמור בפרט השמונים ושבעה, במעשיו המתוארים בפרט האישום השמונים ושבעה, גרם נזק כבד לבניין ע״ש פרנק סינטרה בקמפוס הר-הצופים של האוניברסיטה העברית בירושלים, אשר בו הופעל מטען החבלה, כפי שתואר בפרט האישום השמונים ושבעה.

**פרט תשעים ושמונה:** (פ.א. 9638/02 ראשל״ץ)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס׳ 378), תש״ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס׳ 225), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, בין באיזור ובין מחוצה לו, ביום 07.08.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו :

1.  הנאשם הנ״ל, בתחילת חודש אוגוסט 2002, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שייך-קאסם, המכונה ״צלאח 2״, פעיל צבאי בארגון החמאס.

2.  ״צלאח 2״ מסר לנאשם כי אברהים ג׳מיל ע/עיאני חאמד, המכונה ״צלאח 1״ או ״שיח׳״, מפקד הזרוע הצבאית של ארגון החמאס באיזור רמאללה, מבקש מהנאשם לייצר שני מטעני חבלה המוסתרים בתוך הקופסאות של ביסקוויטים - אחד המופעל באמצעות מכשיר טלפון סלולרי, והשני המופעל שלט רחוק, וזאת לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את מטעני החבלה וזאת על מנת שישמשו בהם לצורך ביצוע פיגוע תופת בכוונה לגרום למותם של אנשים רבים ככל האפשר.

3.  בעקבות הבקשה האמורה, הנאשם ייצר שני מטעני חבלה, אשר הוסתרו בתוך קופסאות של ביסקוויטים. לאחד ממטעני החבלה הנאשם חיבר מנגנון הפעלה המורכב ממכשיר טלפון סלולרי, ואילו למטעני החבלה השני הנאשם הרכיב מנגנון הפעלה כך שהמטען יופעל באמצעות שלט רחוק.

4.  הנאשם מסר את מטעני החבלה הנ״ל לידי ״צלאח 2״. ״צלאח 2״ העביר את מטעני החבלה הנ״ל לידי אברהים ג׳מיל ע/עיאני חאמד, המכונה ״צלאח 1״ או ״שיח׳״, ראש הזרוע הצבאית של ארגון החמאס באיזור רמאללה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00385

5. בראשית חודש אוגוסט 2002, מחמד חסן אחמד ערמאן (מכונה "אבו מועאז") נפגש עם ואאל מחמוד מחמוד-עלי קאסם, המכונה "אבו סעדי", אשר ביקש לקבל מטען חבלה. "אבו סעדי" הסביר כי בכוונתו להניח את מטען החבלה מתחת לרכב ולפוצצו בכוונה לגרום למותם של אזרחים ישראליים רבים ככל האפשר.

6. מחמד ערמאן פנה אל אברהים חאמד וביקש לקבל מטען חבלה לצורך ביצוע הפיגוע המתוכנן. לאחר מספר ימים, ברמאללה או בסמוך לכך, אברהים חאמד העביר לידי מחמד ערמאן מטען חבלה, אותו ייצר הנאשם, כאמור לעיל, אשר היה מופעל באמצעות מכשיר טלפון סלולרי.

7. באותו היום, 06.08.02, מחמד ערמאן, ביחד עם וליד ע/עזיז וע/האדי אנג'אס נסעו לבית איכסא כאשר ברשותם מטען חבלה הנ"ל. בבית איכסא, השניים נפגשו עם "אבו סעדי" והעבירו לידיו את מטען חבלה הנ"ל.

8. ביום למחרת, 07.08.02, "אבו סעדי" ווסאם סעיד עבאסי הצמידו את מטען החבלה הנ"ל למכלית דלק, מ.ר. 3388300, שהתנה בשכונת פסגת זאב בירושלים או בסמוך לכך. לאחר מספר שעות, בסמוך לשעה 13:50, "אבו סעדי" הפעיל את מטען חבלה הנ"ל באמצעות מכשיר טלפון סלולרי, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המטען שהוטמן במכלית הדלק האמורה התפוצץ, וזאת כאשר מכלית הדלק היתה במוסך ברחוב שמוטקין 23 בראשון לציון.

9. כתוצאה מפיצוץ מטען חבלה הנ"ל נגרם נזק למכלית הדלק ורק בנס לא נפגע איש.

**פרט תשיעים ותשעה:   (פ.א. 19284/02 ירקון)**

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון) (מס' 225), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור הנ"ל והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002 או בסמוך לכך, ברמאללה או בסמוך לכך, נפגש עם סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס.

2. "צלאח 2" ביקש מהנאשם לייצר שתי חגורות נפץ וזאת לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. הנאשם הסכים לייצר את חגורות הנפץ וזאת על מנת שישתמשו בהן לצורך ביצוע פיגוע התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר. בעקבות הבקשה האמורה, הנאשם ייצר שתי חגורות נפץ.

3. הנאשם מסר את חגורות הנפץ הנ"ל לידי "צלאח 2", אשר דאג להעבירן באמצעות חסנין רומאנה אל מחמוד חמאד מחמוד שריטח, פעיל צבאי בארגון החמאס, וזאת לצורך הוצאה לפועל של פיגוע התאבדות המתוכנן.

4. בסוף חודש יולי 2002, חסנין רומאנה התקשר אל מחמוד שריטח וביקש כי לתאם פגישה בין איאד עדמ צובאח רדאד, המכונה "עומר", לבין אדם המכונה "אבו חאלד". חסנין רומאנה הסביר כי הפגישה האמורה נועדה לצורך הוצאה לפועל של פיגוע התאבדות, אשר אותו היה אמור לבצע המכונה "עומר" הנ"ל. מחמוד שריטח התקשר אל "עומר" ומסר לאחרון איפה וכיצד עליו לפגוש את אבו חאלד. כעבור יומיים, "עומר" הודיע כי אבו חאלד לא הגיע לפגישה שנקבעה.

5. מיד לאחר השיחה הנ"ל, מחמוד שריטח חזר לרמאללה ונפגש עם חסנין רומאנה ודיווח לאחרון כי הפגישה המתוכננת לא יצאה אל הפועל. בתום הפגישה הנ"ל, מחמוד שריטח התקשר אל אשרף זעייר, המכונה "אבו ש דיף".

HIGHLY CONFIDENTIAL

ROTH 00386

6. לאחר מספר ימים, מחמוד שריתח נפגש שוב עם חסנין רומאנה, אשר ביקש כי לתאם פגישה נוספת בין "עומר" לאבו חאלד.

7. כעבור כשבוע ימים, חסנין רומאנה ביקש כי במקרה שאבו חאלד לא יגיע לפגישה האמורה, מחמוד שריתח ייקח אחריות על "עומר" ועל המחבל המתאבד השני, ראפת רדאד.

8. לאחר השיחה הנ"ל, מחמוד שריתח עקב אחרי "עומר" וראה כי "עומר" ממתין במקום הפגשו וכי אבו חאלד לא הגיע. כעבור רבע שעה של המתנה מחמוד שריתח ניגש אל "עומר" והודיע לאחרון כי מרגע זה הנאשם יהיה אחראי עליו.

9. "עומר" מסר כי יש לו בן דוד, ראפת מוקדי, אשר גם הוא רוצה לבצע פיגוע התאבדות. "עומר" ביקש לבצע פיגוע התאבדות ביחד עם בן-דודו ה נ"ל.

10. לאחר מספר ימים, מחמוד שריתח נפגש ברמאללה עם "אבו שריף" והורה לאחרון למצוא מקום בתוך מדינת ישראל המתאים לביצוע פיגוע התאבדות. מחמוד שריתח הבהיר ל"אבו שריף" כי יהיה עליו להוביל למקום שאותו יאתר שני מחבלים מתאבדים על מנת שיבצעו שם פיגוע תוך כוונה בכוונה לגרום למותם של אנשים רבים ככל האפשר. "אבו שריף" הסכים, אך טען כי ייקח זמן לאתר מקום ניתן לבצע פיגוע התאבדות כפול. במהלך השיחה הנ"ל, "אבו שריף" דיווח כי שכר דירה בדחיית אל-ב ריד.

11. "עומר" מסר למחמוד שריתח כי נודע לו מראפת מוקדי על אולם שמחות גדול "וייט הול" הנמצא באור-יהודה. "עומר" הציע כי הוא וראפת מוקדי יבצעו את פיגוע ההתאבדות באולם השמחות הנ"ל, כאשר תחילה שניהם יירו בכלי נשק לעבר האנשים שיהיו בתוך אולם השמחות ולאחר מכן יפוצצו את מטעני הנפץ שיישאו על גופם, וכל זאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. מחמוד שריתח הסכים לרעיון הנ"ל ושלח את "אבו שריף" לבדוק את אולם השמחות הנ"ל. "אבו שריף" נסע לאולם השמחות הנ"ל ודיווח כי לא ניתן לבצע שם את הפיגוע המתוכנן בגלל מספר גדול של מאבטחים שנמצאים במקום.

12. מחמוד שריתח דיווח לחסנין רומאנה לגבי פעילותו שבוצעה לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. מחמוד שריתח ביקש מחסנין רומאנה לקבל שתי חגורות נפץ ושני כלי נשק קטנים, כל זאת לצורך ההוצאה לפועל של פיגוע ההתאבדות המתוכנן. חסנין רומאנה הבטיח להשיג לדאוג לחגורות הנפץ ולכלי הנשק.

13. לאחר מספר ימים מחמוד שריתח ו"אבו שריף" קיבלו שתי חגורות הנפץ, אותן ייצר הנאשם כאמור לעיל, וכן שני מקלעים "עוזי" עם מחסניות מלאות בכדו רים.

14. לאחר מכן, מחמוד שריתח נפגש עם "עומר" ומסר לאחרון כי חגורות הנפץ מוכנות והוא יכול לצאת לביצוע פיגוע התאבדות המתוכנן ביחד עם בן-דודו, ראפת מוקדי. "עומר" השיב כי הוא עצמו מוכן לבצע את פיגוע ההתאבדות המתוכנן, מכיוון שאחותו שוחה בארה"ב והוא מבקש להמתין לשובה לאיזור.

15. מחמוד שריתח פנה שוב ל"אבו שריף" וביקש לפעול דחוף לאיתור מקום מתאים לביצוע פיגוע ההתאבדות המתוכנן. לאחר מספר ימים, "אבו שריף" דיווח כי איתר מקום בתל-אביב שהוא מתאים לביצוע פיגוע ההתאבדות המתוכ נן.

16. ביום 17.09.02 או בסמוך לכך, מחמוד שריתח נפגש בדירת המסתור בא-ראם עם "עומר" והסביר לאחרון כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריתח נשאר בדירה הנ"ל, ביחד עם "עומר" עד ליום 18.09.02.

17. ביום 19.09.02, "עומר" יצא מרמאללה לביצוע פיגוע ההתאבדות המתוכנן כשהוא נושא על גופו את אחת מחגורות הנפץ, אשר ייצר הנאשם כאמור לעיל.

38

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00387

18. ״אבו שריף״ הסיע את ״עומר״ ברכבו לתל-אביב. בהגיעם לתל-אביב, ״אבו שריף״ הנחה את ״עומר״ להתפוצץ שבו נמצאים אנשים רבים וזאת על מנת שהפיצוץ יגרום למותם של אנשים רבים ככל הני תן.

19. בסמוך לשעה 12:55, ביום 19.09.02, או במועד הסמוך לכך, ״עומר״ עלה לאוטובוס בקו 4 של ״דן״, מ.ר. 9105201, ברחוב אלנבי 94 בתל-אביב. מיד כשהאוטובוס הנ״ל התחיל בנסיעה, ״עומר״ הפעיל את חגורת הנפץ, אותה ייצר הנאשם, שנשא על גופו וגרם לפיצוץ עז, וזאת בכוונה לגרום למותם של אנשים רבים ככל האפשר. המחבל המתאבד, איאד נעים צובחי רדאד המכונה ״עומר״, נהרג כתוצאה מפיצוץ מטען החבלה ה נ״ל.

20. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור, נהרגו שישה בני אדם, כפי שיתוארו בפרטי האישום ה באים.

21. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרמו חבלות ופציעות לאנשים רבים נוספים, כפי שיתוארו בפרטי האישום הבאים.

22. כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה האמור נגרם נזק רב לאוטובוס הנ״ל, לכלי רכב שהיו בסמוך למקום הפיצוץ, וכן לחנויות הס מוכות.

23. במעשיו המתוארים לעיל, הנאשם גרם בכוונה למותו של **יוסי ממיסטלוב ז״ל**, בן 39 במותו, אשר נהרג כתוצאה מהתפוצצות מטען החבלה כאמור לעיל.

**פרט מאה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **עופר זינגר ז״ל**, בן 29 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו ״דן״ 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה ואחד:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש״ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ״ח-1968.

**פרטי העבירה:** הנאשם הנ״ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו: הנאשם הנ״ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **רוזנה סינו ז״ל**, בת 63 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו ״דן״ 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

39

ת.ת. 380/03

**פרט מאה ושניים:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו : הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותה של **יפה שם-טוב ז"ל**, בת 49 במותה, אשר נהרגה כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה ושלושה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו : הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **סלומון הנגיג ז"ל**, בן 79 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה וארבעה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** גרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, גרם בכוונה למותו של אחר, דהיינו : הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם בכוונה למותו של **יונתן ג'סנר ז"ל**, בן 19 במותו, אשר נהרג כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

**פרט מאה וחמישה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מס' 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו : הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, ניסה לגרום למותם של כל האנשים אשר היו בסביבתו של המחבל המתאבד, אשר התמודד עם מטען החבלה באוטובוס, מ.ר. 9105201, קו "דן" 4 ברחוב אלנבי בתל-אביב, כפי שתואר בפרט האישום התשעים ותשעה.

כתוצאה מהתפוצצות המחבל המתאבד עם מטען החבלה **נפצעו כ-84 בני אדם** שהיו באוטובוס הנ"ל ובסמוך אליו בעת הפיצוץ.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00389

**פרט מאה ושישה:** (פ.א. 19284/02 ירקון)

**מהות העבירה:** היזק בזדון לרכוש, עבירה לפי סעיף 53ג לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיף 14(א) לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 19.09.02 או במועד הסמוך לכך, הרס רכוש או פגע בו במזיד ושלא כדין, דהיינו:
הנאשם הנ"ל, במעשיו המתוארים בפרט האישום התשעים ותשעה, גרם במזיד ושלא כדין נזק כבד לאוטובוס, מ.ר. 9105201, שנסע בקו 4 של "דן" ברחוב אלנבי בתל-אביב וכן גרם נזק כללי רכב נוספים ולחנויות ובתי עסק שהיו בקרבת מקום הפיגוע המתואר בפרט האישום התשעים ותשעה, ואשר נפגעו כתוצאה מפיצוץ מטען החבלה, אותו ייצר הנאשם.

**פרט מאה ושבעה:** (פ.א. 21011/02 ירקון)

**מהות העבירה:** ניסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות ביטחון (יהודה והשומרון) (מסי 378), תש"ל-1970 וסעיפים 14(א) ו-19 לצו בדבר כללי האחריות לעבירה (יהודה והשומרון), תשכ"ח-1968.

**פרטי העבירה:** הנאשם הנ"ל, הן באיזור והן מחוצה לו, ביום 11.10.02 או במועד הסמוך לכך, ניסה לגרום בכוונה למותו של אחר, דהיינו:

1. הנאשם הנ"ל, בתחילת חודש ספטמבר 2002, ברמאללה או בסמוך לכך, ייצר שתי חגורות נפץ לצורך ביצוע פיגועי התאבדות בכוונה לגרום למותם של אנשים רבים ככל האפשר, וזאת כפי שתוואר בפרט האישום התשעים ותשעה.

2. הנאשם העביר את שתי חגורות הנפץ לידי סיד ע/כרים חדר שייך-קאסם, המכונה "צלאח 2", פעיל צבאי בארגון החמאס, אשר דאג להעבירן למחמוד חמאד מחמוד שריתח, כפי שתוואר בפרט האישום התשעים ותשעה.

3. לאחר ביצוע הפיגוע המתואר בפרט האישום התשעים ותשעה, מחמוד שריתח החליט להוציא לפועל פיגוע התאבדות נוסף באמצעות חגורת הנפץ, אשר ייצר אותה למטרה זו הנאשם.

4. לצורך קידום תכניתו הנ"ל, מחמוד שריתח גייס את ראפת מוקדי לביצוע פיגוע ההתאבדות המתוכנן.

5. מחמוד שריתח נפגש גם עם אשרף מוניר זעייר, המכונה "באו שריף", והורה לאחרון לצורך מקום מתאים לביצוע פיגוע התאבדות המתוכנן. לאחר מספר ימים, "אבו שריף" דיווח כי איתר שני מקומות בתל-אביב המתאימים לביצוע פיגוע ההתאבדות המתוכנן.

6. ביום 11.10.02 "אבו שריף" הביא את ראפת מוקדי מכפר ערבה לדירת המסתור בא-ראם. מחמוד שריתח הסביר לראפת מוקדי כיצד לובשים וכיצד מפעילים את חגורת הנפץ. מחמוד שריתח הלביש על גופו של ראפת מוקדי את חגורת הנפץ, אשר ייצר אותה הנאשם.

7. "אבו שריף" הסיע את ראפת מוקדי לתל-אביב על מנת שהאחרון יבצע שם את פיגוע ההתאבדות המתוכנן.

8. בסמוך לשעה 20:15, ביום 11.10.02, "אבו שריף" הוריד את ראפת מוקדי בטיילת החוף בתל-אביב והנחה את האחרון לפוצץ את חגורת הנפץ, שהוא נשא על גופו, במסעדה שיש בה אנשים רבים.

9. ראפת מוקדי ניסה להיכנס למסעדה "יוטבתה" הנמצאת ברחוב הרברט סמואל (טיילת תל-אביב), אך המאבטח שהיה במקום הבחין בו, חשד כי מדובר במחבל מתאבד ומנע את

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00390

כניסתו פנימה. ראפת מוקדי ניסה להימלט מהמקום, אך נתפס לאחר מרדף ובסיוע של מאבטחים נוספים שהגיעו למקום.

10. במעשיו המתוארים לעיל, הנאשם הנ"ל ניסה לגרום בכוונה למותם של אנשים רבים ככל האפשר.

**פרט מאה ושמונה:**

**מהות העבירה:** אימונים צבאיים שלא בהיתר, עבירה לפי תקנה 62 לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בחודש פברואר 2003 או בסמוך לכך, התאמן, אימן או אומן אימון צבאי בנשק או במלאכת תרגילים, תנועות או מערכות פעולה צבאיים, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר אימון צבאי לאדם, תושב שכם, אשר נשלח אליו על-ידי אברהים ג'מיל ע'ע'אני חאמד, המכונה "צלאח 1" או "השיח'", ראש "גדודי עז א-דין אל קסאם" באיזור רמאללה.

במהלך האימון האמור הנאשם לימד את האדם הנ"ל לייצר מטעני חבלה, מעגלים חשמליים לצורך הפעלת מטעני חבלה, וכן מגנוני הפעלה למטעני חבלה המורכבים משעון, שלט רחוק ומכשיר טלפון סלולרי.

במהלך האימון הצבאי הנ"ל, הנאשם והאדם הנ"ל היו רעולי פנים.

**פרט מאה ותשעה:**

**מהות העבירה:** ביצוע שירות עבור התאחדות בלתי מותרת, עבירה לפי תקנה 85(1)(ג) לתקנות ההגנה (שעת חירום), 1945.

**פרטי העבירה:** הנאשם הנ"ל, באיזור, בתחילת שנת 2003 או בסמוך לכך, עשה עבודה כל שהיא או ביצע שירות כל שהוא בשביל התאחדות בלתי מותרת, דהיינו: הנאשם הנ"ל, במועד האמור, ברמאללה או בסמוך לכך, העביר לידי אברהים ג'מיל ע'ע'אני חאמד, המכונה "צלאח 1" או "השיח'", ראש "גדודי עז א-דין אל קסאם", הזרוע הצבאית של ארגון החמאס, באיזור רמאללה, דיסקטים למחשב ועליהם הוראות לייצור חומרי נפץ ומטעני חבלה.

אברהים חאמד ביקש מהנאשם לקבל את הדיסקטים הנ"ל לצורך העברתם לפעילי הארגון ג'יהאד אסלאמי פלסטיני, אשר ביקשו ללמוד לייצר חומרי נפץ ומטעני חבלה.

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00391

**עדי התביעה:**

1. רס"ר יצחק יעקובוף, מ.א. 1008358, לחי"ק יהודה. [גובה אמרות הנאשם מיום 12.03.03, 13.03.03, 30.03.03, 15.05.03 ומיום 22.05.03 ומגיש תמונות שהוצגו בפני הנאשם ביום 30.03.03 + ציור בכתב-ידו של הנאשם]

2. רס"ר משה לוי, מ.א. 953117, לחי"ק יהודה. [גובה אמרת הנאשם מיום 12.05.03]

3. פרוטוקול דיון הארכת המעצר של הנאשם מיום 12.05.03.

4. אשרף מוניר זעייר, ת.ז. 035660679. (עצור)

5. ראפת רשיד עבדאללה מוקדי, ת.ז. 907945026. (עצור)

6. מחמוד חמאד מחמוד שריתח, ת.ז. 900718750. (עצור) (ת.ת. 976/02)

7. מחמד טאהר מחמוד ברגותי, ת.ז. 859121287. (עצור) (ת.ת. 241/03)

8. אכרם צאלח אחמד א-חסין (ברגותי), ת.ז. 988965372. (עצור) (ת.ת. 210/03)

9. וסאם סעיד מוסא עבאסי, ת.ז. 033714403. (אסיר)

10. ואאל מחמוד מחמד-עלי קאסם, ת.ז. 028192755. (אסיר)

11. מחמד אסחאק עודה, ת.ז. 026291302. (אסיר)

12. עלאא א-דין מחמד עבאסי, ת.ז. 029194818. (אסיר)

13. וליד עעוזי עהאדי אנגאס, ת.ז. 906448105. (עצור) (ת.ת. 889/02)

14. מחמד חסן אחמד ערמאן, ת.ז. 901056259. (עצור) (ת.ת. 888/02)

15. מחמד ואל מחמד דעילאס, ת.ז. 905167375. (אסיר) (ת.ת. 846/01)

16. אחלאם שרף אחמד תמימי, דרכון ירדני G052933. (עצורה) (ת.ת. 815/01)

17. בלאל יעקב אחמד (עתימאן) ברגותי, ת.ז. 902826262. (אסיר) (ת.ת. 344/02)

18. אחמד טאלב מוצטפא ברגותי, ת.ז. 994466860. (עצור) (ת.ת. 444/02)

19. מוראד חליל ע/חאק עמירה, ת.ז. 980743066. (עצור) (ת.ת. 946/02)

**רשימת העדים הטכניים מתיקי הפ.א. הבאים תימסר על-ידי התביעה, במידת הצורך, במהלך המשפט:**

1. 6554/01 ציון
2. 6891/01 מ מת"ימ י-ם
3. 10283/01 ציון
4. 1512/02 מוריה
5. 5601/02 ראש לצ"י
6. 2881/02 גלילות
7. 3975/02 לוד
8. 9913/02 ר חובות
9. 1197/02 שלם
10. 9638/02 ראשל"יצ
11. 19284/02 ירקון
12. 21011/02 ירקון

מיכאל קושניק    סרן
תובע    צבאי

תאריך: 29.05.2003
סימוכין: 38 0-03

43

ת.ת. 380/03

HIGHLY CONFIDENTIAL

ROTH 00392



143 RODNEY STREET
BROOKLYN, N.Y. 11211
TEL. (718) 384-8040
FAX: (718) 388-3516

## CERTIFIED TRANSLATION

I, Miriam Braver, Project Manager at Targem Translations, Inc., located at 143 Rodney Street in Brooklyn, New York, a language services firm with a track record of providing expert language services to the legal community of more than 50 years, do hereby certify that our team of translators, editors and proofreaders, are professionally trained and vastly experienced in providing professional legal translations for submission in U.S. courts, from Hebrew into English and vice versa; and they have professionally translated document **"Abdalla Barghuthi's indictment/ROTH00350-92"** from Hebrew into English, faithfully, accurately and completely, to the best of their expertise and experience.

Date: July 17, 2014

Miriam Braver

PROFESSIONAL
TRANSLATIONS
OF FOREIGN
LANGUAGES



WEISS
Notary Public, State of New York
Registration No.: 01WE6293785
Qualified in Kings County
My Commission Expires December 16, 2017

Israel Defense Forces

| | | |
|---|---|---|
| In the Military Court | Court case: | *3380*/03 |
| in Beit El | Prosecution case: | 380/03 |
| Before a panel | Detailed incident case: | 6891/01 Jerusalem Special Duties Department |
| | | 6554/01 Zion |
| | | 10283/01 Zion |
| | | 1512/02 Moriah |
| | | 9638/02 Rishon LeZion |
| | | 5601/02 Rishon LeZion |
| | | 2881/02 Glilot |
| | | 3975/02 Lod |
| | | 9913/02 Rehovot |
| | | 1197/02 Shalem |
| | | 19284/02 Yarkon |
| | | 21011/02 Yarkon |
| | | 1425/03 Binyamin |

### In the trial between the Military Prosecutor – the Prosecutor

### -v.-

Abdallah Ghaleb Abdallah Barghouti (Jamal) (known as "Kamal", "the Engineer")

Identity No. (fictitious): 030300028 (Jordanian passport E-891198), born October 15, 1972, a resiident of Beit Rima. Detained since March 5, 2003

### - The Defendant -

# Indictment

**The above mentioned Defendant is hereby accused of committing the following offenses:**

**First count:**

**Nature of the offense**: Attempt to manufacture an explosive object, an offense under Section 53(A)(3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in May 2001 or thereabouts, manufactured a firearm, ammunition, bomb, hand grenade, explosive or incendiary object, without a permit certificate having been issued to him by or for a military commander, as follows:

The above mentioned Defendant, at the above mentioned time, [in] Beit Rima or thereabouts, met Akaram Salah Akram Ahsin (Barghouthi) and asked the latter to introduce military operatives to him. Akram Ahsin asked the Defendant to come to his home. After the Defendant came to the home of Akram Ahsin, the latter provided the Defendant with an explosive device.

The Defendant took the explosive device with him and dismantled it in the Defendant's supermarket in Beit Rima. The Defendant attempted to ignite the explosive material that he had extracted from the explosive device and learned that it was good explosive material. The Defendant created an activation mechanism for the above mentioned explosive device using an alarm clock, but was unable to activate the above mentioned explosive device using the above mentioned activation mechanism.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00350

**Second count**:

**Nature of the offense**: Membership in an illegal organization, an offense under Regulation 85(1)(A) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, from May 2001 until the day of his arrest, was a member or acted as a member in an illegal organization, as follows:

The above mentioned Defendant, during the period set forth, was a member of the "Izz a-Din al-Qasem Brigades", the military arm of the Hamas Organization, which is an illegal organization.

The Defendant, within the framework of his activity in the military arm of the Hamas Organization, was responsible for manufacturing explosive devices and training of other people in the manufacture of explosive devices. In view of his "success" in the said role, the Defendant "earned" the nickname "the Engineer".

In May 2001, in Beit Rima or thereabouts, the Defendant contacted Bilal Ya'akub Ahmed Barghouti (Utman), a military operative in the Hamas organization, and asked the latter to enlist the Defendant into the ranks of the military arm of the organization. The Defendant informed Bilal Barghouti that he could manufacture explosive devices for the Hamas Organization. Bilal Barghouti had the Defendant meet Ayman Halawa in Nablus, a senior military operative of the Hamas Organization, who enlisted the defendant into the "Izz a-Din al-Qasem Brigades".

In late 2001, in Ramallah or thereabouts, the Defendant met Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "the Sheikh", the head of the "Izz a-Din al-Qasem Brigades" in the Ramallah area. The Defendant agreed to the proposal of Ibrahim Hamed to act under the command of the latter and manufacture explosive devices for the purpose of carrying out attacks against the Israeli targets. Ibrahim Hamed gave the Defendant the terrorist nickname "Kamal". Later, the Defendant acted as had been agreed between him and Ibrahim Hamed.

Throughout the activity of the Defendant under the command of Ibrahim Hamed, the Defendant was in contact with the above mentioned individual through notes, which were transferred by Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2". In exchange for his activity in the Hamas Organization, the Defendant received financial support from Ibrahim Hamed, which was transferred to the defendant by Salah 2. In total, the Defendant received from Ibrahim Hamed a sum of **117,000 U.S. dollars.** In addition, the defendant received financial support to the value of 500 U.S. dollars from Marwan Barghouti, the head of the Fatah "Tanzim".

**Third count**:

**Nature of the offense**: Military training without a permit, an offense under Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, during the months of May-June 2001 or thereabouts, provided or received military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, during the period set forth, in Nablus or thereabouts, on 3 different occasions, met with Ayman Halawa, a senior military operative of the Hamas Organization.

During the above mentioned meetings, Ayman Halawa taught the Defendant how to make the "Um Alabed" (TATP) explosive, explosive devices, the activation mechanisms for the explosive devices (including wireless mechanisms), hand grenades and explosive belts.

Ayman Halawa taught the Defendant how to camouflage the explosive devices as stones and as beverage cans.

Ayman Halawa taught the Defendant how to make poison from potatoes, to be inserted into the explosive device and turn them into chemical charges.

At the end of each of these training sessions, the Defendant received a sheet from Ayman Halawa listing instructions for making explosive devices, which the Defendant learned to manufacture.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00351

**Fourth count**:

**Nature of the offense**: Conspiring to commit an offense for which the penalty exceeds three years' imprisonment, an offense under Section 22 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968 and Section 67A(D) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The aforementioned Defendant, in the Area, in December 2000 or thereabouts, conspired with another person to coerce another person by force or threats or lure him by trickery to leave his location, in order to blackmail or threaten, as follows:

The above mentioned Defendant, at the time set forth, conspired with Ayman Halawa, the Defendant's commander in the Hamas Organization, to participate in the abduction of IDF soldiers. The Defendant was ordered to prepare an apartment in which IDF soldiers would be held after their abduction by Hamas Organization activists.

Within the preparations for the abduction, the Defendant prepared a room in his home in Beit Rima for the purpose of holding abducted IDF soldiers.

**Fifth count**:

**Nature of the offense**: Trading in war materiel, an offense under Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in June 2001 or thereabouts, traded in or otherwise dealt in war materiel, without a permit signed by or for the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, received from Ayman Halawa, a senior military operative in the Hamas organization, 15 kg of explosives of the "Um Alabid" (TATP) type and a 9 mm pistol with a magazine and 14 cartridges. The Defendant transferred the explosives and the pistol to Beit Rima and hid them there.

About a week later, Ayman Halawa transferred to the Defendant 20 liters of hydrogen peroxide, which is used for making explosives of the "Um Alabid" (TATP) type. The Defendant hid this hydrogen peroxide in Beit Rima too.

**Sixth count**:

**Nature of the offense**: Manufacturing an explosive object, an offense under Section 53(A)(3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in June 2001 or thereabouts, manufactured a firearm, ammunition, bomb, hand grenade, explosive or incendiary object, without a permit certificate having been issued to him by or for a military commander, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, in a storeroom that he had rented, established a laboratory for manufacturing explosives and explosive devices.

The Defendant transferred to the above mentioned laboratory 15 kg of explosives of the "Um Alabid" (TATP) type, 20 liters of hydrogen peroxide and a number of wireless mechanisms for the detonation of the explosive devices.

In the above mentioned bomb laboratory, he made two explosive devices camouflaged as stones.

The Defendant transferred the first explosive device to Ayman Halawa, a senior military activist in the Hamas Organization, through a dead drop point in Salfit. Along with the above mentioned explosive device, the Defendant forwarded a sheet with the directions for operating above mentioned explosive device

The Defendant transferred the second explosive device personally to Bilal Ya'akub Barghouti, a senior military operative in the Hamas Organization.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00352

**Seventh count**:

**Nature of the offense**: Giving shelter, an offense under Section 57 of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in June 2001 or thereabouts, assisted or gave shelter to any person who had committed an offense against security legislation or was or had been engaged in any activity aimed at harming public welfare, the welfare of the Israel Defense Forces troops and soldiers and the maintenance of public order or concerning whom there are reasonable grounds to suspect that he did so, whether by giving information, shelter, food, beverage, money, clothes , weapons, ammunition, supplies, fodder, means of transport, petroleum or fuel of any type and kind whatsoever, or in any other way, as follows:

The above mentioned Defendant, at the time set forth, in his home in Beit Rima or thereabouts, for the duration of one night, hid Rami Saliman, who was wanted by the Israeli security forces. The Defendant talked to Rami Saliman and it turned out that the latter was the one who had received the explosive device that had been camouflaged as a stone, described in the sixth count of the indictment.

In the morning, the Defendant transported the above mentioned wanted person to Salfit.

**Eighth count**:

Trading in war materiel, an offense under Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, at the time set forth in the previous count of the indictment or thereabouts, traded in or otherwise dealt in war materiel, without a permit signed by or for the commander of the Area, as follows:

The above mentioned Defendant, at the time set forth, in Beit Rima or thereabouts, delivered to Rami Saliman, mentioned in the previous count of the indictment, the "14" pistol along with 150 cartridges. In exchange, the Defendant received a "7" pistol from the above mentioned person.

**Ninth count**:

**Nature of the offense:** Performance of a service for an illegal organization, an offense under Regulation 85(1)(C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, in June 2001 or thereabouts, performed some work or service for an illegal organization, as follows:

The above mentioned Defendant, at the time set forth, in Nablus or thereabouts, met with Ayman Halawa, a senior military operative in the Hamas Organization, which is an illegal organization. Ayman Halawa gave the Defendant a sum of 100 U.S. dollars. At the request of Ayman Halawa, the Defendant transferred the above mentioned money to the wanted person described in the seventh count of the indictment.

**Tenth count**: **(Detailed Incident 6554/01 Zion)**

**Nature of the offense:** Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 30, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.      In early July 2001, in Nablus or thereabouts, the Defendant met with Ayman Halawa, a senior military operative of the Hamas Organization. Ayman Halawa informed the Defendant that he had a person who was prepared to carry out a suicide attack inside Israel.

2.      At the request of Ayman Halawa, the Defendant contacted Bilal Ya'akub Barghouti (Utman), a senior military operative in the Hamas organization, and asked the latter to find a person who would be able to bring a suicide terrorist into

Prosecution Case 380/03

4

the State of Israel in order for the latter to carry out a suicide attack there, with the intent of causing the deaths of as many people as possible.

3.   For the purpose set forth, Bilal Barghouti enlisted Muhammad Wa'el Muhammad Daghlas. For the purpose set forth Muhammad Daghlas enlisted Ahlam Aref Ahmed Tamimi, a student at Bir Zeit University, who was an operative in the "Izz a-Din al-Qasem Brigades", the military arm of the Hamas organization.

4.   After the Defendant reported to Ayman Halawa of the enlistment of the above mentioned people, Ayman Halawa asked for the Defendant to first deliver a small explosive device to the above mentioned people, in order for them to attempt first to carry out an attack in Israel using a small explosive device, before they could be trusted and be given the suicide terrorist.

5.   On the following day, in Ramallah or thereabouts, the Defendant received a small explosive device, which had been sent to him by Ayman Halawa from Nablus via courier.

6.   On July 27, 2001, Ahlam Tamimi carried out a reconnaissance of Jerusalem, with which she was very familiar, along with her nephew, Faraj Munir Mahmud Tamimi, in order to locate a place to lay the explosive device. During the reconnaissance, Ahlam Tamimi visited the "Co Op" supermarket in the "Hamashbir Lazarchan" building on King George Street. On the following day, Muhammad Daghlas met with Ahlam Tamimi at Bir Zeit University and the latter informed him that she had found a place in Jerusalem to carry out a bombing attack using an explosive device.

7.   The above mentioned report was forwarded to the Defendant by Bilal Barghouti. In addition, Bilal Barghouti recommended to the Defendant for the explosive device to be concealed inside a can of juice.

8.   Following the foregoing, the Defendant placed the above mentioned explosive device into a can of beer and attached an activation mechanism. The Defendant delivered the above mentioned explosive device to Bilal Barghouti in order for the latter to deliver it to the people whom he had enlisted, in order for them to use it to carry out an attack with the aim of causing the deaths of as many people as possible.

9.   Bilal Barghouti gave the above mentioned explosive device to Muhammad Daghlas, and the latter, on July 30, 2001, gave it to Ahlam Tamimi.

10.  On that day, at about 11:45 a.m., Ahlam Tamimi arrived at the "Co Op" supermarket in Jerusalem, described above, while carrying the explosive device that she had received from the Defendant in her bag .

11.  Ahlam Tamimi placed the can of beer in which the above mentioned explosive device was hidden on a shelf of cans, at the front of the shelf in the above mentioned supermarket, so that once the explosive device would detonate, it would cause the deaths of the people nearby. Ahlam Tamimi activated the above mentioned explosive device and left the above mentioned store.

12.  At about 1:10 p.m. on that day, the explosive device described above detonated in the said supermarket store. As a result of the detonation of the explosive device, a large amount of damage was caused in the above mentioned store, and only miraculously nobody was hurt.

**Eleventh count**: **(Detailed Incident 6554/01 Zion)**

**Nature of the offense**: Malicious damage to property, an offense under Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 30, 2001, or thereabouts, destroyed or maliciously and unlawfully damaged property as follows:
The above mentioned defendant, at the time set forth, in the place set forth in the previous count of the indictment, in his actions described in the previous count of the indictment, caused heavy damage to the "Co Op" supermarket located in the "Hamashbir Lazarchan" building on King George St., in which the explosive device was detonated as described in the previous count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00354

**Twelfth count**: (**Detailed Incident 6891/01 Jerusalem Special Duties Unit**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:

1.      After carrying out the attack in the supermarket in Jerusalem, described in the tenth count of the indictment, the Defendant made contact with Ayman Halawa, a senior military operative in the Hamas Organization, and according to the plan set forth in the tenth count of the indictment, asked Ayman Halawa to hand over a large explosive device and the suicide terrorist to the Defendant for the purpose of executing the planned suicide attack.

2.      In early August 2001, in Ramallah or thereabouts, the Defendant received from Ayman Halawa, by courier, a large explosive device, which consisted of two shampoo bottles filled with explosives.

3.      According to the request of Bilal Ya'akub Barghouti, the defendant inserted the above mentioned explosive device into a guitar, which Bilal Barghouti had brought. In addition to the above mentioned explosive device, the defendant inserted two plastic bags filled with explosives into the above mentioned guitar. In addition, the Defendant affixed screws inside the guitar using glue. The Defendant sealed the guitar's opening using glass so that its contents could not be seen. The Defendant connected an activation mechanism to the above mentioned explosive device.

4.      The Defendant put the above mentioned guitar inside a black guitar case. The Defendant extracted a wire with the activation button of the explosive device out of the case, so that the explosive device could be activated without opening the guitar case.

5.      The Defendant reported the preparation of the explosive device to Ayman Halawa and asked the latter to send the suicide terrorist to him.

6.      A few days later, the suicide terrorist Izz al-Din Shuhayl Ahmad Masri  (hereinafter: the Suicide terrorist), who was dispatched by Ayman Halawa, arrived in Ramallah. Bilal Barghouti met with the Suicide terrorist and together with with Muhammad Wa'el Muhammad Daghlas, provided him with accommodation in Ramallah.

7.      The Defendant transferred the above mentioned booby trapped guitar to Bilal Barghouti in order for the latter to deliver it to the Suicide terrorist, so the latter could use it to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

8.      On August 8, 2001, at the instruction of Muhammad Wa'el Muhammad Daghlas (mentioned in the tenth count of the indictment), Ahlam Aref Ahmed Tamimi (mentioned in the tenth count of the indictment) traveled to Jerusalem in order to find a place for carrying out the bombing attack, which the Defendant had planned out with his above mentioned colleagues and for the execution of which the above mentioned Muhammad Daghlas and Ahlam Tamimi were enlisted. Ahlam Tamimi noticed that there was a large presence of security forces in Jerusalem, but nobody inspected her because she was wearing a short vest in an attempt to look Jewish. Ahlam Tamimi reached the conclusion that it would be possible to depart from Ramallah and carry out an attack in central Jerusalem.

9.      On the same day, Bilal Barghouti instructed the Suicide terrorist on how to activate the above mentioned explosive device, which had been made by the Defendant.

10.     On August 9, 2001, Muhammad Daghlas introduced Ahlam Tamimi to the Suicide terrorist, who was carrying the booby trapped guitar. The Suicide terrorist had a haircut before carrying out the planned attack and wore  clothes that were supposed to make him look like a Jew. Thereafter, Ahlam Tamimi and the Suicide terrorist departed to carry out the planned attack.

11.     After Ahlam Tamimi and the Suicide terrorist entered Jerusalem, Ahlam Tamimi instructed the Suicide terrorist to carry the guitar that was inside a black bag that was described above on his back in order not

Prosecution Case 380/03

to arouse the suspicion of the Israeli security forces. Ahlam Tamimi also took off the jacket she was wearing and remained in a tank top.

12.    Ahlam Tamimi led the Suicide terrorist to the junction of Jaffa Street and King George Street in Jerusalem, which is a central and crowded junction. Ahlam Tamimi briefed the Suicide terrorist on activating the explosive device in the center of the said junction while many people are crossing, to harm as many civilians and passengers in vehicles waiting at the traffic light as possible, and cause their deaths. Ahlam Tamimi told the Suicide terrorist that he was allowed to choose another place for carrying out the planned attack too, but that had to be in King George Street, which was full of people.

13.    Ahlam Tamimi left the Suicide terrorist in the place set forth and headed towards the Nablus Gate of the old city in order to return to Ramallah.

14.    At about 1:55 p.m., the Suicide terrorist, Izz al-Din Shuhayl Ahmad Masri , entered the Sbarro restaurant at the corner of Jaffa and King George Streets, which was crowded at the time. There, the Suicide terrorist detonated the explosive device, which the Defendant had prepared as described above, with the intent of causing the deaths of as many people as possible.

15.    As a result of the Suicide terrorist's explosion with the said explosive device, fifteen people were killed, as will be described in the next counts of the indictment.

16.    As a result of the Suicide terrorist's explosion with the said explosive device, many other people sustained injuries, as will be described in the next counts of the indictment.

17.    As a result of the Suicide terrorist's explosion with the said explosive device, extensive damage to property, in the "Sbarro" restaurant and to automobiles and buildings nearby, was caused.

18.    In his actions, described above, the Defendant caused the intentional death of **Frieda Mendelson of blessed memory**, age 62 at the time of her death, who was killed as a result of the explosion of the explosive device as set forth above.

**Thirteenth count: (Detailed Incident 6891/01 Jerusalem Special Duties Department)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Lali Shimashvili-Mesengiser of blessed memory**, age 33 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL    ROTH 00356

**Fourteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Tamar Shimashvili-Mesengiser of blessed memory**, age 8 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Fifteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Tehila Maoz of blessed memory**, age 20 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Sixteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Michal Raziel of blessed memory**, age 15 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Seventeenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Malka Roth of blessed memory**, age 15 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00357

**Eighteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Yocheved Sasson of blessed memory**, age 10 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Nineteenth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Mordechai Rafael Schijveschuurder of blessed memory**, age 44 at the time of his death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Twentieth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Tzira Schijveschuurder of blessed memory**, age 41 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Twenty first count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Raya Schijveschuurder of blessed memory**, age 14 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

9

HIGHLY CONFIDENTIAL

ROTH 00358

**Twenty second count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Avraham Yitzhak Schijveschuurder of blessed memory**, age 4 at the time of his death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Twenty third count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Hemda Schijveschuurder of blessed memory**, age 2 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Twenty fourth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Judith Lilian Greenbaum of blessed memory**, age 31 at the time of her death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Twenty fifth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Giora Balash of blessed memory**, age 69 at the time of his death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00359

**Twenty sixth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No.225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, caused the intentional death of **Zvi Golombek of blessed memory**, age 26 at the time of his death, who was killed as a result of the explosion of the Suicide terrorist with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.

**Twenty seventh count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 9, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the twelfth count of the indictment, attempted to cause the intentional death of all of the people who were in the vicinity of the Suicide terrorist, who exploded with the explosive device at the "Sbarro" restaurant at the corner of Jaffa Street and King George Street in Jerusalem, as described in the twelfth count of the indictment.
As a result of the explosion of the Suicide terrorist with the explosive device, more than 127 people who were in the area of the explosion site were injured.

**Twenty eighth count**: (Detailed Incident 6891/01 Jerusalem Special Duties Department)

**Nature of the offense**: Malicious damage to property, an offense under Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on August 9, 2001 or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the twelfth count of the indictment, in his actions described in the twelfth count of the indictment, caused heavy damage to the "Sbarro" Restaurant in the corner of Jaffa Street and King George Street in Jerusalem, at which the explosive device was detonated as described in the twelfth count of the indictment, as well as nearby buildings and vehicles passing by the site at the time of the explosion.

**Twenty ninth count**:

**Nature of the offense**: Offenses involving licenses and documents issued under the security legislation, an offense under Section 60(C) and (G) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, from the second half of 2001 until the day of his arrest or thereabouts, altered or let another person alter any document that has was issued under the security legislation and possessed a document that was issued under the security legislation that was not made out to his title, with the intent of deceiving others, as follows:
The above mentioned Defendant, in the second half of 2001, in Ramallah or thereabouts, received from Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", two identity cards – one bearing the name of Arafat Taher Barghouti, and the other bearing the name of Ashraf Alahmed. The Defendant's photographs were inserted into both of the aforementioned identity cards. During the period set forth above, the Defendant made use of the forged identity card bearing the name of Arafat Taher Barghouti when he was inspected by IDF soldiers in Ramallah and thereabouts, with the intent of misleading IDF soldiers.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                                  ROTH 00360

**Thirtieth count**:

**Nature of the offense**: Trading in war materiel, an offense under Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in the second half of 2001 or thereabouts, traded in or otherwise dealt in war materiel, without a permit signed by or for the commander of the Area, as follows:
The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, talked to Ibrahim Jamil Abed al-Ghani Hamed, known as "Salah 1" or "the Sheikh", the head of the "Izz a-Din al-Qasem Brigades" in the Ramallah area. Ibrahim Hamed asked the Defendant to purchase an Uzi submachine gun for him. The Defendant contacted Ahmed Taleb Mustafa Barghouti (known as "Al Faransi"), one of the leaders of the "Al Aqsa Martyrs Brigades" organization in the Ramallah area, and asked to purchase an Uzi submachine gun from him. Ahmed Barghouti had the Defendant meet Muhanad Abu Halawa, a senior military operative in the "Al Aqsa Martyrs Brigades", and the Defendant purchased an Uzi submachine gun from the latter. About two weeks later, the Defendant transferred the above mentioned Uzi submachine gun to Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", who transferred it to Ibrahim Hamed.

**Thirty first count**:

**Nature of the offense**: Trading in war materiel, an offense under Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in mid-2001 or thereabouts, traded in or otherwise dealt in war materiel, without a permit signed by or for the commander of the Area, as follows:
The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, applied to Ahmed Taleb Mustafa Barghouti (known as "Al Faransi"), one of the heads of the "Al Aqsa Martyrs Brigades" organization in the Ramallah area, and asked to purchase an MP-5 submachine gun from him. Ahmed Barghouti had the Defendant meet Muhanad Abu Halawa, a senior military operative in the "Al Aqsa Martyrs Brigades", and the Defendant purchased an MP-5 submachine gun from the latter.

**Thirty second count**:

**Nature of the offense**: Possession of a firearm, an offense under Section 53(A)(1) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The aforesaid Defendant, in the Area, from the time set forth in the previous count of the indictment until the day of his arrest, possessed a firearm, ammunition, a hand grenade or explosive or incendiary object, a tool, object or item designed or capable of causing death or severe injury, without a permit certificate issued by the military commander or on his behalf, as follows:
The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, possessed an MP-5 submachine gun, described in the previous count of the indictment, and a pistol.
The Defendant kept the above mentioned weapons without a permit certificate issued by the military commander or on his behalf.

**Thirty third count**:

**Nature of the offense**: Manufacturing an incendiary object, an offense under Section 53(A)(3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, from the second half of 2001 or thereabouts, manufactured a firearm, ammunition, bomb, an explosive or incendiary object, without a permit certificate issued by the military commander or on his behalf, as follows:
The above mentioned Defendant, during the period set forth, in Ramallah or thereabouts, established a number of laboratories for manufacturing explosives and explosive devices. The Defendant regularly relocated the above mentioned laboratory every few months to prevent it being discovered by the Israeli security forces.
The Defendant and his colleagues would transfer various chemical substances used in the manufacture of explosives to the above mentioned laboratories. The above mentioned explosives were purchased both by the Defendant himself, and by his fellow members of the Hamas Organization. The above mentioned explosives were purchased with Hamas Organization money.

Prosecution Case 380/03

Using the above mentioned chemical substances, the Defendant manufactured tens of kilograms of explosives, primarily of the "Um Alabed" (TATP) type. From the explosives that he manufactured, the Defendant prepared a large number of explosive

HIGHLY CONFIDENTIAL

ROTH 00361

devices of different types, in addition to the explosive devices which he [sic] as described in the previous counts of the indictment and as will be described in the following counts of the indictment.

The Defendant manufactured the above mentioned explosive devices with the aim that operatives of the Hamas Organization would use them to carry out attacks against Israeli targets. The Defendant briefed the operatives of the Hamas Organization on the activation of the above mentioned explosive devices.

In addition to the foregoing, the Defendant attempted to manufacture hand grenades and an explosive device and also planned to assemble an explosive device on a toy vehicle operated by remote control.

During the said period, the Defendant also received instructions to manufacture "Qasem" rockets, but decided that he was unable to manufacture the rockets.

**Thirty fourth count**:

**Nature of the offense**: Military training without a permit, an offense under Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, during the second half of 2001 or thereabouts, practiced, gave or received military training in the use of weaponry or in the art of military exercises, movements or operations, as follows: The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, taught Sayd Abed Karim Khader Sheikh Qasem, known as "Salah 2", an operative in the Hamas Organization, who served as a contact person between the Defendant and his commander in the Hamas Organization, to manufacture explosives and explosive devices.

**Thirty fifth count**:

**Nature of the offense**: Military training without a permit, an offense under Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in November 2001 or thereabouts, practiced, gave or received military training in the use of weaponry or in the art of military exercises, movements or operations, as follows: The above mentioned Defendant, at the time set forth, in an apartment in Ramallah, which served as an explosives laboratory, provided military training to Muhammad Hassan Ahmed Arman (known as: "Abu Mu'az"), a military operative in the Hamas Organization.

During the said training, the Defendant taught Muhammad Arman to manufacture an explosive called "Um Alabed" (TATP), electric circuits for activating explosive devices and activation mechanisms for explosive devices consisting of a clock, a remote control and a cellular telephone handset.

At the end of the training, the Defendant transferred a bag to  Muhammad Arman with various materials used for manufacturing explosives and explosive devices and a sheet of instructions for manufacturing them.

The materials for the above mentioned military training were purchased by Ibrahim Jamil Abed al-Ghani Hamed, head of the "Izz a-Din al-Qasem Brigades" in the Ramallah Area.

The Defendant introduced himself to Muhammad Arman with the alias "the Engineer". During the above mentioned military training, the Defendant and Muhammad Arman were masked.

**Thirty sixth count**:

**Nature of the offense**: Military training without a permit, an offense under Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, during November 2001, about two days after the time set forth in the previous count of the indictment, or thereabouts, practiced, gave or received military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in the apartment in Ramallah, which served as an explosives laboratory, provided military training to two people, who had been brought to the apartment by Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

Prosecution Case 380/03

13

During the said training, the Defendant taught the two above mentioned people to manufacture an explosive called "Um Alabed" (TATP), electric circuits for activating explosive devices, and activation devices for explosive devices consisting of a clock, a

remote control and a cellular telephone handset.

At the end of the training, the Defendant handed two bags, with various materials used for manufacturing the explosives and explosive devices as well as instruction sheets for manufacturing them, to the two aforementioned people.

**Thirty seventh count**:

**Nature of the offense**: Military training without a permit, an offense under Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in November 2001, shortly after he carried out that which was attributed to him in the previous count of the indictment, or thereabouts, practiced, gave or received military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:

The above mentioned Defendant, at the time set forth, in the apartment in Ramallah, which was used as an explosives laboratory, provided military training to Murad Khalil Abed Hak Amira, who was brought to the apartment by Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

During the said training, the Defendant taught Murad Amira to manufacture explosives called "Um Alabed" (TATP), electric circuits for activating explosive devices and activation mechanisms for explosive devices consisting of a clock, a remote control and a cellular telephone handset. In addition, the Defendant gave Murad Amira theoretical and practical training in the stripping and assembly of an Uzi submachine gun and a "14" pistol.

At the end of the training, the Defendant transferred a bag to Murad Amira with various materials used for the manufacturing of explosives and explosive devices and instruction sheets for manufacturing them.

At the end of the said training, the Defendant gave Murad Amira the alias "Abdallah 5", because he was the fifth person whom he had taught to manufacture the explosives and explosive devices.

**Thirty eighth count: (Detailed incident 10283/01 Zion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, during November 2001 or thereabouts, in Ramallah or thereabouts, manufactured explosives of the "Um Alabed" (TATP) type.

2.  Using the aforementioned explosives, the Defendant manufactured three explosive devices. The Defendant inserted the first explosive device into a computer case. The second explosive device was inserted by the Defendant into a black fabric bag. The Defendant prepared the third explosive device in the form of an explosive belt. In addition to the explosives, the Defendant placed fragments consisting of nails and nuts into the explosive devices. The Defendant set up activation mechanisms for the three above mentioned explosive devices. The explosive devices which were assembled as the explosive belt and in the computer case were activated by pressing the activation button, while the explosive device concealed inside a black fabric bag was activated by a stopwatch. The Defendant added nuts and nails to these three explosive devices to increase the destructive effect of the explosive devices. In addition, the Defendant inserted toxic material into the three explosive devices, which was also for the purpose of increasing the lethality of the explosive devices.

3.  The Defendant manufactured the aforementioned explosive devices at the request of Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization. "Salah 2" contacted to the Defendant at the request of Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "Sheikh", commander of the Hamas Organization's military arm in the Ramallah area.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00363

4.  The Defendant delivered the three above mentioned explosive devices to "Salah 2" in order for the latter to have them transferred to operatives of the Hamas Organization, who would use these explosive devices to carry out bombing attacks with the intent of causing the deaths of as many people as possible.

5.  "Salah 2" and Ibrahim Hamed, in person or through others, transferred the above mentioned explosive devices to Osama Muhammad Bahar and Nabil Mahmud Halabiya and planted the explosive device which was hidden in a black fabric bag in an Opel Kadett vehicle, license No. 4774987.

6.  On December 1, 2001, at about 11:36 p.m., at the entrance from Zion Square to Ben Yehuda Street in Jerusalem or thereabouts, suicide terrorist Osama Muhammad Bahar activated the explosive device, which was manufactured by the Defendant and concealed in a computer case as set forth above, with the intent of causing the deaths of as many people as possible. The above mentioned explosive device was detonated.

7.  That same day, at about the time as above, at the junction of Ben-Yehuda Street and Luntz Street in Jerusalem or thereabouts (a few meters away from where the first explosive device detonated), suicide terrorist Nabil Mahmud Halabiya activated the explosive device, which was manufactured by the Defendant in the form of an explosive belt as set forth above, with the intent of causing the deaths of as many people as possible. The above mentioned explosive device was detonated.

8.  On the same day, a few minutes after the two above mentioned suicide terrorists activated the above mentioned explosive devices, the explosive device that was manufactured by the Defendant and hidden inside a black fabric bag as set forth above was detonated. The third explosive device was detonated in an Opel Kadett vehicle, license No. 4774987, which was parked on Harav Kook Street near the corner of Jaffa Street in Jerusalem (a few dozen meters away from the detonation sites of the two explosive devices mentioned above). The above mentioned explosive device was activated with the intent of causing the deaths of as many people as possible.

9.  As a result of the detonation of the three explosive devices, which were detonated by [sic] as described above, ten people were killed and approximately 191 people were injured, as will be elaborated in the following counts of the indictment.

10. In his actions described above, the above mentioned Defendant caused the intentional death of **Yosef El-Ezra of blessed memory,** age 18 at the time of his death, who was killed as a result of the detonation of the explosive devices in central Jerusalem as described above.

**Thirty ninth count**: (**Detailed Incident 10283/01 Zion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Assaf Avitan of blessed memory,** age 15 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00364

**Fortieth count**: (**Detailed Incident 10283/01 Zion**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Guy Vaknin of blessed memory,** age 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

**Forty first count**: (**Detailed Incident 10283/01 Zion**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Yoni Korganov of blessed memory,** age 20 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

**Forty second count**: (**Detailed Incident 10283/01 Zion**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Yaakov Israel Danino of blessed memory,** age 17 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

**Forty third count**: (**Detailed Incident 10283/01 Zion**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Michael Dahan of blessed memory,** age 20 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00365

**Forty fourth count**: **(Detailed Incident 10283/01 Zion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Golan Turgeman of blessed memory,** age 15 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

**Forty fifth count**: **(Detailed Incident 10283/01 Zion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Adam Weinstein of blessed memory,** age 14 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

**Forty sixth count**: **(Detailed Incident 10283/01 Zion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Moshe Yedid-Levy of blessed memory,** age 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

**Forty seventh count**: **(Detailed Incident 10283/01 Zion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused the intentional death of **Nir Haftzadi of blessed memory,** age 19 at the time of his death, who was killed as a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00366

**Forty eighth count**: (**Detailed Incident 10283/01 Zion**)

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on December 1, 2001 or thereabouts, attempted to cause the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, attempted to cause the intentional deaths of as many civilians as possible. As a result of the detonation of the explosive devices that were activated as described in the thirty eighth count of the indictment, **191 people** were injured.

**Forty ninth count**: (**Detailed Incident 10283/01 Zion**)

**Nature of the offense**: Malicious damage to property, an offense under Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on December 1, 2001 or thereabouts, destroyed or maliciously and unlawfully damaged property as follows:
The above mentioned Defendant, at the time set forth, in the place previously mentioned in the thirty eighth count of the indictment, in his actions described in the thirty eighth count of the indictment, caused serious damage to houses and to business establishments in the area of Ben Yehuda Street, Luntz Street, Jaffa Street and Harav Kook Street and vehicles at the site, where the three explosive devices were activated as described in the thirty eighth count of the indictment.

**Fiftieth count**:

**Nature of the offense**: Manufacturing an incendiary object, an offense under Section 53(A)(3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, from late 2001 or thereabouts, manufactured a firearm, ammunition, bomb, an explosive or incendiary object, without a permit certificate issued by or for a military commander, as follows:
The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, at the request of Marwan Barghouti, the head of the "Tanzim" of the Fatah, manufactured two explosive devices. Marwan Barghouti asked the Defendant to manufacture two explosive devices for him in order to use them if IDF forces would enter Ramallah.

**Fifty first count**:

**Nature of the offense**: Manufacturing an incendiary object, an offense under Section 53(A)(3) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970.

**Details of the offense**: The above mentioned Defendant, in the Area, in late 2001 or thereabouts, manufactured a firearm, ammunition, bomb, an explosive or incendiary object, without a permit certificate issued by or for a military commander, as follows:
The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, manufactured three explosive devices, which were concealed inside juice cartons, as well as four explosive devices camouflaged as stones.
The above mentioned explosive devices were transferred by Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", to Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1", who was the head of the military arm of the Hamas Organization in the Ramallah area.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00367

**Fifty second count**:

**Nature of the offense**: Trading in war materiel, an offense under Section 2 of the Rules of Prohibition of Trading in War Materiel (Judea and Samaria) (No. 243), 5728-1968.

**Details of the offense**: The above mentioned Defendant, in the Area, in early 2002 or thereabouts, traded in or otherwise dealt in war materiel, without a permit signed by or for the commander of the Area, as follows:
The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, purchased from Ahmed Taleb Mustafa Barghouti (known as "Al Faransi"), one of the heads of the "AlAqsa Martyrs Brigades" organization, a Kalashnikov assault rifle with two magazines filled with cartridges and a "14" pistol with a magazine full of cartridges.
The Defendant carried out the foregoing at the request of Muhammad Taher Mahmud Barghouti, a military operative in the Hamas Organization.
After purchasing the above mentioned weapons, the Defendant delivered them to the above mentioned Muhammad Taher Barghouti.

**Fifty third count**:

**Nature of the offense:** Performance of a service for an illegal organization, an offense under Regulation 85(1)(C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, in February 2001 or thereabouts, performed some work or service for an illegal organization, as follows:
The above mentioned Defendant, at the time set forth, met with an unknown person in Ramallah. The Defendant met with the above mentioned person at the request of Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "the Sheikh", head of the "Izz a-Din al-Qasem Brigades", the military arm of the Hamas Organization in the Ramallah area. Ibrahim Hamad informed the Defendant that the above mentioned person needed to depart to carry out a suicide attack and asked the Defendant to check whether the above mentioned person was resolute on carrying out a suicide attack.
The Defendant agreed and talked to the above mentioned person. The Defendant got the impression that the above mentioned person was determined, in view of the fact that the above mentioned person requested, through carrying out the suicide attack, to clear his father's name, who was suspected of collaborating with the Israeli security forces.
The Defendant gave his above mentioned conclusions to Ibrahim Hamed, who responded that he would not be dispatching the aforementioned person to carry out a suicide attack, as he was not prepared for a person to carry out a suicide attack only in order to clear his name.

**Fifty fourth count**: **(Detailed incident 1512/02 Moriah)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:

1.    In early March 2002, in Ramallah or thereabouts, the Defendant met with his supervisor in the Hamas Organization, Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "the Sheikh". Ibrahim Hamed asked the Defendant to make an explosive belt for a suicide terrorist, in order for the latter to carry out a suicide attack with the intent of causing the deaths of as many people as possible.

2.    The Defendant agreed to the request of Ibrahim Hamed. The Defendant manufactured, in Ramallah or thereabouts, an explosive belt. The above mentioned explosive belt was made of an imitation leather fabric belt, on which screws and shampoo bottles filled with explosives were affixed. The Defendant also set up an activation mechanism for the above mentioned explosive belt.

3.    After the Defendant completed the preparation of the above mentioned explosive belt, the Defendant transferred it, via Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", to Ibrahim Hamed, for the purpose of executing the planned suicide attack.

Prosecution Case 380/03

19

4.     Ibrahim Hamed also contacted Muhammad Hassan Ahmed Arman (known as: "Abu Mu'az") and asked for the latter to contact Wa'el Mahmud Muhammad-Ali Qasem, known as "Abu Sa'ad", to ask him to find a suitable place to carry out the suicide attack.

5.     Muhammad Arman met "Abu Sa'ad" and asked to find a place in Israel that would be suitable for carrying out the suicide attack. After a few days, "Abu Sa'ad" contacted Muhammad Arman and stated that he had found a place that was suitable for carrying out the planned suicide attack, which was the "Moment" Café, located on Gaza Street in Jerusalem. "Abu Sa'ad", along with Wisam Sa'id Mussa Abbasi and Muhammad Ashak Odeh, carried out a reconnaissance of the "Moment" Café several times, to plan the suicide attack. The Defendant reported to the "Sheikh" of the place that had been found by "Abu Sa'ad" and his colleagues.

6.     On Saturday, March 9, 2002, at about 8:00 p.m., in Ramallah or thereabouts, Muhammad Arman met with Fuad Al-Hurani and Ibrahim Hamed. Ibrahim Hamed and Fuad Al-Hurani left the meeting place for about half an hour in order for Fuad Al-Hurani to put on an explosive belt. Ibrahim Hamed put the explosive belt on Fuad Hurani [sic], which was prepared by the Defendant, as set forth above, for the purpose of carrying out a suicide attack.

7.     Thereafter, Muhammad Arman, along with Walid Anjas, accompanied Fuad Al-Hurani, who was carrying the above mentioned explosive belt on his person, to the "Kalandia" taxi stand in Ramallah and had the latter board a passenger vehicle that was traveling to Beit Hanina. Muhammad Arman, Walid Anjas and Fuad Al-Hurani traveled together to Beit Hanina in a passenger transport vehicle. Muhammad Arman and Walid Anjas transported Fuad Al-Hurani to the meeting place, which the Defendant had established with "Abu Sa'ad".

8.     "Abu Sa'ad" met with the suicide terrorist, Fuad Al-Hurani, in the place set forth, and thereafter, along with Wisam Abbasi, transported the suicide terrorist to Jerusalem. "Abu Sa'ad" and Wisam Abbasi led Fuad Al-Hurani to the "Moment" Café, located on Gaza Street in Jerusalem.

9.     At about 10:30 p.m., on March 9, 2002 or thereabouts, Fuad Al-Hurani, who was carrying on his person the explosive belt that the Defendant had manufactured for this purpose, entered the "Moment" Café, which was crowded at that time, and activated the above mentioned explosive belt with the aim of causing the deaths of as many people as possible.

10.    In his actions described above, the above mentioned Defendant caused the intentional death of **the late Avraham Rachamim**, who was killed as a result of the detonation of the explosive belt at the "Moment" café as described above.

**Fifty fifth count**: **(Detailed Incident 1512/02 Moriah)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Nir Borochov**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                          ROTH 00369

**Fifty sixth count**: (Detailed Incident 1512/02 Moria)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Limor Ben Shoham**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

**Fifty seventh count**: **(Detailed Incident 1512/02 Moriah)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Dan Aimoni**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

**Fifty eighth count**: **(Detailed Incident 1512/02 Moriah)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Danit Dagan**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

**Fifty ninth count**: **(Detailed Incident 1512/02 Moriah)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Uri Felix**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00370

**Sixtieth count**: (**Detailed Incident 1512/02 Moriah**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Baruch Lerner**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

**Sixty first count**: (**Detailed Incident 1512/02 Moriah**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Tali Eliyahu**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

**Sixty second count**: (**Detailed Incident 1512/02 Moriah**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Livnat Dvash**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

**Sixty third count**: (**Detailed Incident 1512/02 Moriah**)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Orit Ozerov**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00371

**Sixty fourth count**: **(Detailed Incident 1512/02 Moriah)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused the intentional death of **the late Natanel Cochavi**, who was killed as a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment.

**Sixty fifth count**: **(Detailed Incident 1512/02 Moriah)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on March 9, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, attempted to cause the death of as many civilians as possible.
As a result of the detonation of the explosive device that was detonated as described in the fifty fourth count of the indictment, **65 people were injured**.

**Sixty sixth count**: **(Detailed Incident 1512/02 Moriah)**

**Nature of the offense**: Malicious damage to property, an offense under Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The aforementioned Defendant, both within the Area and elsewhere, on March 9, 2002 or thereabouts, destroyed or maliciously damaged property, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the fifty fourth count of the indictment, in his actions described in the fifty fourth count of the indictment, caused heavy damage to the "Moment" Café that is located on Gaza Street in Jerusalem, in which the explosive device was detonated as described in the fifty fourth count of the indictment.

**Sixty seventh count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:

1.      The above mentioned Defendant, in late March – April 2002, in Ramallah or thereabouts, met Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

2.      "Salah 2" informed the Defendant that Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "the Sheikh", head of the military arm of the Hamas Organization in the Ramallah area, was asking the Defendant to manufacture an explosive belt and an explosive bag for the purpose of carrying out a suicide attack. The Defendant agreed to manufacture the two explosive devices

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                                ROTH 00372

in order to use them for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible.

3. The Defendant manufactured, in Ramallah or thereabouts, an explosive belt. The above mentioned explosive belt was made using imitation leather fabric, to which screws and shampoo bottles filled with explosives were affixed. The Defendant also attached the activation mechanism to the above mentioned explosive belt. The above mentioned explosive belt was similar to the one that the Defendant had manufactured for the attack at the "Moment" Café in Jerusalem, which is described in the fifty fourth count of the indictment.

4. In addition, the Defendant made, in Ramallah or thereabouts, an explosive device, which was made of shampoo bottles filled with explosives, which were put into a black bag. The Defendant put into the above mentioned bag screws for increasing the damaging effect of the explosive device. The Defendant attached to the above mentioned bag an activation mechanism for the explosive device, which consisted of a stopwatch.

5. The Defendant delivered the above mentioned explosive belt with the above mentioned explosive bag to "Salah 2", in order for the latter to transfer them to Ibrahim Hamed, who would transfer them to the suicide terrorist.

6. In April 2002, Ibrahim Hamed approached Muhammad Hassan Ahmed Arman (known as "Abu Mu'az"), and informed the latter that there was a need to carry out a suicide attack with the intent of causing the deaths of as many people as possible. Ibrahim Hamad informed Muhammad Arman that he had a person prepared to carry out the suicide attack.

7. A few days later, in Ramallah or thereabouts, Ibrahim Hamed introduced Muhammad Arman to Muhammad Jamal Ahmed Muammar (hereinafter: the Suicide terrorist), who was supposed to carry out the planned suicide attack. During the meeting it was concluded that after a few days, Ibrahim Hamed would bring the Suicide terrorist to a meeting with Muhammad Arman in Ramallah and the latter would take the Suicide terrorist to carry out the planned suicide attack.

8. On May 7, 2002, Muhammad Arman met the Suicide terrorist in Ramallah in accordance with the above mentioned understanding. At the request of Muhammad Arman, Walid Abd al-Aziz Abd al-Hadi Anjas accompanied the Suicide terrorist from Ramallah to Safa. In Safa, the two met with Muhammad Arman and traveled together to Beit Anan. There, Muhammad Arman delivered the explosive belt to the Suicide terrorist, which the Defendant had manufactured as set forth above and which had been transferred to Muhammad Arman by Ibrahim Hamed. Muhammad Arman attached the above mentioned explosive belt to the body of the Suicide terrorist and gave the latter a bag containing an additional explosive device, which the Defendant had also manufactured as set forth above, and which had been transferred to Muhammad Arman by Ibrahim Hamed.

9. Muhammad Arman drove the Suicide terrorist with the above mentioned explosive device and with the above mentioned explosive belt in his vehicle from Beit Anan to Beit Iksa.

10. In Beit Iksa or thereabouts, the Defendant and the Suicide terrorist met Wa'el Mahmud Muhammad Ali Qasem, known as "Abu Sa'ad'", who took the Suicide terrorist to carry out the planned attack.

11. That evening, "Abu Sa'ad", along with Wisam Said Abbasi, drove the Suicide terrorist to Rishon LeZion and there accompanied him to the "Sheffield Club" located at 1 Sacharov Street in the new industrial zone, which had been located earlier by "Abu Sa'ad", Muhammad Ashak Odeh, Wisam Abbasi and Alaa A-Din Mahmud Abbasi as a suitable place for the suicide attack. "Abu Sa'ad" and Wisam Abbasi pointed out the said club to the Suicide terrorist and explained to him that this was the place where he is to carry out the planned suicide attack.

12. At about 10:50 p.m., on May 7, 2002 or thereabouts, the Suicide terrorist entered the above mentioned club and activated the explosive belt and the additional explosive device, which the Defendant had manufactured for this purpose, with the aim of causing the deaths of as many people as possible.

13. In his actions described above, the above mentioned Defendant caused the intentional death of **the late Rachamim Kimhi**, who was killed as a result of the detonation of the explosive devices as described above.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                      ROTH 00373

**Sixty eighth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Rafael Chaim**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Sixty ninth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Anat Teremporush**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventieth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Avraham Biaz**, who was killed as a result of detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventy first count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Eti Bablar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00374

**Seventy second count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Yitzhak Bablar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventy third count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Israel Shikar**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventy fourth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Shoshana Magmari**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventy fifth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Sharuk Rassan**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00375

**Seventy sixth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Nava Hinawi**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventy seventh count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Nir Lobatin**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventy eighth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Regina Malka Boslan**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Seventy ninth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Daliah Massah**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                             ROTH 00376

**Eightieth count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Pnina Hikri**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Eighty first count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused the intentional death of **the late Edna Cohen**, who was killed as a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment.

**Eighty second count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 7, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, attempted to cause the deaths of as many civilians as possible.
As a result of the detonation of the explosive devices that were activated as described in the sixty seventh count of the indictment, **59 people** were injured.

**Eighty third count**: **(Detailed Incident 5601/02 Rishon LeZion)**

**Nature of the offense**: Malicious damage to property, an offense under Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The aforementioned Defendant, both within the Area and elsewhere, on May 7, 2002 or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:
The above mentioned Defendant, at the time set forth in the sixty seventh count of the indictment, in his actions described in the sixty seventh count of the indictment, caused heavy damage to the "Sheffield Club" that is located at 1 Sacharov Street in Rishon LeZion and to the entire said building, in which the explosive devices were detonated as described in the sixty seventh count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                 ROTH 00377

**Eighty fourth count**: **(Detailed Incident 2881/02 Glilot)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on May 23, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned defendant, in May 2002, in Ramallah or thereabouts, met Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

2.  "Salah 2" informed the Defendant that Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "Sheikh", head of the military arm of the Hamas Organization in the Ramallah area, was asking the Defendant to manufacture an explosive device that would "stick" to iron, for the purpose of carrying out a bombing attack. The Defendant agreed to manufacture the explosive device, in order for it to be used for carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3.  Following the said request, the Defendant manufactured an explosive device that could be "stuck" onto iron using magnets, which the Defendant attached to the explosive device, and which was activated using a cellular telephone handset.

4.  The Defendant delivered the above mentioned explosive device to "Salah 2" for the purpose of carrying out the planned suicide bombing attack. "Salah 2" transferred the explosive device to Ibrahim Hamed.

5.  In May 2002, Ibrahim Hamed met Muhammad Hassan Ahmed Arman (known as "Abu Mu'az") and informed the latter that he wanted to carry out a bombing attack and detonate a fuel tanker, with the intent of causing the deaths of as many people as possible. Following the foregoing, Muhammad Arman met with Wa'el Mahmud Muhammad-Ali Qasem, known as "Abu Sa'ad", and told him about Ibrahim Hamed's plan to carry out a bombing attack. "Abu Sa'ad" said that he would look into the matter and see what could be done.

6.  A number of days later, Muhammad Arman met with "Abu Sa'ad" again. "Abu Sa'ad" said that he and his colleagues had found a fuel tanker that regularly traveled to the "Pi Glilot" site.

7.  On May 22, 2002, Muhammad Arman met with Ibrahim Hamad in Ramallah and reported to the latter about the above mentioned fuel tanker. Ibrahim Hamed asked to meet with Muhammad Arman in a few hours' time at the same place.

8.  After a few hours, the two met again. Ibrahim Hamed delivered to Muhammad Arman the explosive device that the Defendant had manufactured as set forth above. In addition, Ibrahim Hamed delivered to Muhammad Arman a cellular telephone handset to use to call the handset connected to the explosive device in order to detonate it.

9.  Muhammad Arman delivered the above mentioned explosive device to Walid Abd al-Aziz Abd al-Hadi Anjas, who transferred it to Safa. Muhammad Arman arrived in Safa and from there traveled in his automobile, with Walid Anjas, to Beit Iksa.

10. There, Muhammad Arman met with "Abu Sa'ad" and together with Walid Anjas delivered the above mentioned explosive device with a cellular telephone handset connected to it, as well as the additional cellular telephone handset, to "Abu Sa'ad" .

11. In the early hours of the morning on the following day, May 23, 2002, "Abu Sa'ad" traveled to Holon with Wisam Sa'id Abbasi, while they were in possession of the above mentioned explosive device. In Holon, "Abu Sa'ad" attached the above mentioned explosive device using a magnet to the bottom front part of the fuel tank mounted on a fuel tanker, license No. 2622700. The above mentioned fuel tanker had been located earlier by Wisam Abasi and Alaa A-Din Mahmud Abbasi as a target for a bombing attack. "Abu Sa'ad" waited in his vehicle until

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                           ROTH 00378

the fuel tanker's driver arrived and then followed the fuel tanker on the road up to the 'Pi Glilot' site. After "Abu Sa'ad" ensured that the fuel tanker, to which the aforementioned explosive device had been affixed, entered the 'Pi Glilot' site, Abu Sa'ad activated the aforementioned explosive device, which was manufactured by the Defendant, using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

12.     The aforementioned explosive device detonated, causing heavy damage to the aforementioned fuel tanker. Only miraculously nobody was hurt.

**Eighty fifth count: (Detailed Incident 3975/02 Lod)**

**Nature of the offense:** Attempting to cause intentional death, an offense pursuant to Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The above mentioned Defendant, whether within the area or elsewhere, on June 30, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.      The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met with Sayd Abed Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

2.      "Salah 2" informed the Defendant that Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "Sheikh", the commander of the military arm of the Hamas Organization in the Ramallah area, was asking the Defendant to manufacture an explosive device that would be activated using a cellular telephone handset for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3.      Following the request set forth, the Defendant manufactured an explosive device, to be activated using a cellular telephone handset.

4.      The Defendant delivered the above mentioned explosive device to "Salah 2". "Salah 2" transferred the above mentioned explosive device to Ibrahim Jamil Abd al-Ghani Hamad, known as "Salah 1" or "Sheikh", the head of the military arm of the Hamas Organization in the Ramallah area.

5.      Ibrahim Hamed contacted Muhammad Hassan Ahmed Arman (known as "Abu Mu'az") and suggested to carry out a bombing attack by laying an explosive device on a railway track inside the State of Israel, with the intent of causing the deaths of as many people as possible.

6.      Muhammad Arman contacted Wa'el Mahmud Muhammad Ali Qasem, known as "Abu Sa'ad", and asked him to check the possibility of carrying out a bombing attack on the railway tracks in Israel. After some time, "Abu Sa'ad" applied to Muhammad Arman and informed him that he had found a suitable place for carrying out the planned attack. Muhammad Arman reported this to Ibrahim Hamed.

7.      After some time, Muhammad Arman met in Ramallah Ibrahim Hamed, who delivered the explosive device to him, which the Defendant had manufactured as set forth above.

8.      On June 29, 2002 or thereabouts, Muhammad Arman transferred the above mentioned explosive device with the cellular telephone handsets to "Abu Sa'ad", and explained to the latter how to activate the above mentioned explosive device.

9.      In the evening hours of that day, "Abu Sa'ad" along with Wisam Sa'id Abbasi, traveled to Lod and laid the above mentioned explosive device on the railway tracks in Lod in a place that had been identified earlier as suitable for carrying out the planned attack by Wisam Abbasi and Alaa A-Din Mahmud Abbasi. Thereafter, "Abu Sa'ad" and Wisam Abbasi returned to Jerusalem.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00379

10.     In the early hours of the following morning, June 30, 2012, "Abu Sa'ad" and Wisam Abbasi  traveled to Lod. Wisam Abbasi  positioned himself next to the explosive device that had been laid as set forth above on the railway track. At about 7:00 a.m., once Wisam Abbasi  noticed a train approaching the said site, he informed "Abu Sa'ad", who activated the above mentioned explosive device using a cellular telephone handset, with the intent of causing the deaths of as many people as possible.

11.     The above mentioned explosive device detonated.

12.     As a result of the detonation of the above mentioned explosive device, 4 people were injured. In addition, damage was sustained by the train's locomotive and by the railway.

**Eighty sixth count**: **(Detailed Incident 9913/02 Rehovot)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 21, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.     The above mentioned Defendant, in June 2002, in Ramallah or thereabouts, met Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

2.     "Salah 2" informed the Defendant that Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "Sheikh", commander of the military arm of the Hamas Organization in the Ramallah area, had asked the Defendant to manufacture an explosive device that is activated by a cellular telephone handset, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, in order for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3.     Following the said request, the Defendant manufactured an explosive device which is activated using a cellular telephone handset.

4.     The Defendant delivered the above mentioned explosive device to "Salah 2". "Salah 2" transferred the above mentioned explosive device to Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "Sheikh", head of the military arm of the Hamas Organization in the Ramallah area.

5.     Ibrahim Hamad contacted Muhammad Hassan Ahmed Arman (known as "Abu Mu'az") and suggested that an additional bombing attack be carried out by laying an explosive device on the railway track inside the State of Israel, with the intent of causing the deaths of as many people as possible.

6.     Muhammad Arman contacted Wa'el Mahmud Muhammad-Ali Qasem, known as "Abu Sa'ad", and asked him to locate a place for an additional bombing attack on the railway track in Israel. After some time, "Abu Sa'ad" applied to Muhammad Arman and told him that he had found a suitable place for carrying out the planned attack. Muhammad Arman reported this to Ibrahim Hamed.

7.     After some time, Muhammad Arman met with Ibrahim Hamed in Ramallah, who delivered him the explosive device, which the Defendant had manufactured as set forth above for the purpose of executing the planned attack.

8.     On July 20, 2002, Muhammad Arman gave the above mentioned explosive device to Walid Abd al-Aziz Abd al-Hadi Anjas and asked the latter to transfer it to Safa. Thereafter, Muhammad Arman arrived in Safa and met with Walid Anjas there . From there, the two traveled together to Beit Iksa.

9.     In Beit Iksa, Muhammad Arman and Walid Anjas transferred the above mentioned explosive device along with the cellular telephone handsets to "Abu Sa'ad".

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                           ROTH 00380

10. That night, "Abu Sa'ad", along with Wisam Sa'id Abbasi and Alaa A-Din Mahmud Abbasi, traveled to the Rehovot area and laid the above mentioned explosive device on the railway track near the exit from Rehovot, next to Kfar Gvirol, a location selected earlier by "Abu Sa'ad" and Wisam Abbasi . Afterwards, the three returned to Jerusalem.

11. On the following day, July 21, 2002, in the early hours of the morning, "Abu Sa'ad" and Wisam Abbasi traveled to the site where the above mentioned explosive device had been laid. At about 7:30 a.m., "Abu Sa'ad" activated the above mentioned explosive device with the aim of causing the deaths of as many people as possible, after Wisam Abbasi had reported to him by cellular telephone handset that a train was approaching the site at which the explosive device had been laid.

12. The above mentioned explosive device detonated. As a result of the detonation of the explosive device, one person was injured. In addition, damage was caused to the locomotive of the train and to the railway track.

**Eighty seventh count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:

1. The above mentioned Defendant, in July 2002, in Ramallah or thereabouts, met Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

2. "Salah 2" informed the Defendant that Ibrahim Jamil Abd al-Ghni Hamed, known as "Salah 1" or "Sheikh", commander of the military arm of the Hamas Organization in the Ramallah area, had asked the Defendant to manufacture an explosive device hidden in a bag, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive device, for it to be used to carry out a bombing attack with the intent of causing the deaths of as many people as possible.

3. Following the said request, the Defendant manufactured an explosive device, which was made using a large shampoo container filled with explosives, which had been concealed inside a rigid black fabric bag (similar to a briefcase). In addition, the Defendant filled the above mentioned bag with nuts for the purpose of increasing the destructive power of the device. According to the request of "Salah 2", the Defendant attached a wireless activation mechanism to the above mentioned explosive device, so that the explosive device would be activated using a cellular telephone handset.

4. The Defendant delivered the above mentioned explosive device and three additional shampoo containers, filled with explosives, to "Salah 2".

5. "Salah 2" transferred the above mentioned explosive device to Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah1" or "Sheikh", head of the military arm of the Hamas Organization in the Ramallah area.

6. Ibrahim Hamed approached Muhammad Hassan Ahmed Arman (known as "Abu Mu'az") and asked to find a place in Jerusalem in which a bombing attack could be carried out with the intent of causing the deaths of as many people as possible. Muhammad Arman approached Wa'el Mahmud Muhammad-Ali Qasem, known as "Abu Sa'ad", and asked the latter to find a suitable place for carrying out a bombing attack.

7. After a few days, "Abu Sa'ad" informed Muhammad Arman that he had found a suitable place to carry out a mass attack, which was the Hebrew University in Jerusalem, the Mount Scopus campus. Muhammad Arman reported the site that had been found to Ibrahim Hamed.

Prosecution Case 380/03

32

HIGHLY CONFIDENTIAL

ROTH 00381

8.  For the purpose of carrying out the planned bombing attack, Ibrahim Hamad delivered the explosive device, which the Defendant had manufactured as set forth above to Muhammad Arman. Muhammad Arman added to the said explosive device three bottles of shampoo filled with explosives, which "Salah 2" had received from the Defendant.

9.  Thereafter, Muhammad Arman traveled along with Walid Abd al-Aziz Abd al-Hadi Anjas to Beit Iksa with the aim of transferring the above mentioned explosive device to "Abu Sa'ad" in order for the latter with his colleagues to carry out the planned bombing attack using them.

10.  In Beit Iska, Muhammad Arman and Walid Anjas met "Abu Sa'ad". The two delivered to "Abu Sa'ad" the above mentioned explosive device along with the two cellular telephone handsets, with one handset connected to the explosive device and serving as an activation mechanism.

11.  On July 28, 2002, "Abu Sa'ad", along with Muhammad Ashak Odeh, transferred the above mentioned explosive device to Jerusalem. "Abu Sa'ad" and Muhammad Odeh brought the above mentioned explosive device into the Mount Scopus campus of the Hebrew University in Jerusalem. Muhammad Odeh was very familiar with the site because he had worked there previously and also made use of an employee card, which he had retained, to enter the above mentioned campus. Muhammad Odeh laid the above mentioned explosive device inside the cafeteria located in the Frank Sinatra building of the above mentioned campus. Thereafter, "Abu Sa'ad" and Muhammad Odeh tried to activate the above mentioned explosive device using a cellular telephone, but the explosive device did not detonate due to a fault in it. Thereafter, Muhammad Odeh returned to the place at which he had laid the above mentioned explosive device, collected the explosive device, and traveled to Beit Iksa with "Abu Sa'ad".

12.  Thereafter, on July 29, 2002, Muhammad Arman and Walid Anjas met with "Abu Sa'ad" again. "Abu Sa'ad" returned the above mentioned explosive device to Muhammad Arman. "Abu Sa'ad" stated that he and his colleagues had laid the above mentioned explosive device in the Hebrew University in Jerusalem, the Mount Scopus Campus, with the intent of detonating it and causing the deaths of as many people as possible, but the above mentioned explosive device did not explode. Muhammad Arman and Walid Anjas transferred the above mentioned explosive device to Harbata Bni-Hareth.

13.  Muhammad Arman repaired the above mentioned explosive device after inspecting it and discovering that there was a problem with the electrical wires.

14.  On the following day, on July 30, 2002, Muhammad Arman met Walid Anjas again and with the latter transferred the above mentioned explosive device to Beit Iksa.

15.  In Beit Iksa, Muhammad Arman and Walid Anjas met "Abu Sa'ad". Muhammad Arman delivered the above mentioned explosive device to "Abu Sa'ad".

16.  That night, "Abu Sa'ad" and Muhammad Ashak Odeh took the above mentioned explosive device to Jerusalem and concealed it among the trees in the botanic garden in the Mount Scopus campus of the Hebrew University.

17.  On the following day, on July 31, 2002, "Abu Sa'ad" and Muhammad Odeh traveled again to the Mount Scopus campus of the Hebrew University. While "Abu Sa'ad" was waiting outside, Muhammad Odeh entered the campus, collected the above mentioned explosive device and laid it in the cafeteria located in the Frank Sinatra building in the Mount Scopus campus of the Hebrew University in Jerusalem. After Muhammad Odeha, left the campus area and joined "Abu Sa'ad", at about 1:30 p.m, "Abu Sa'ad" activated the above mentioned explosive device, which had been manufactured by the Defendant, using a cellular telephone handset, with the intent of causing the deaths of as many people as possible. "Abu Sa'ad" and Muhammad Odeh chose to carry out the attack at about 1:00 p.m. because according to the information that Muhammad Odeh had gathered, the above mentioned cafeteria was crowded with people at that time.

18.  In his actions described above, the above mentioned Defendant caused the intentional death of **Daphna Spruch of blessed memory**, who was killed as a result of the detonation of the explosive device at the Hebrew University, as described above.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                         ROTH 00382

**Eighty eighth count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **Marla Anne Bennett of blessed memory**, who was killed as a result of the detonation of the explosive device, activated as described in the eighty seventh count of the indictment.

**Eighty ninth count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **late Dina Carter of blessed memory**, who was killed as a result of the explosive device, activated as described in the eighty seventh count of the indictment.

**Ninetieth count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **Benjamin Thomas Blutstein of blessed memory**, who was killed as a result of the detonation of the explosive device, activated as described in the eighty seventh count of the indictment.

**Ninety first count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **Revital Barashi of blessed memory**, who was killed as a result of the detonation of the explosive device, activated as described in the eighty seventh count of the indictment.

Prosecution Case 380/03

**Ninety second count**: **(Detailed Incident 1197/02 Shalem)**

HIGHLY CONFIDENTIAL                                                                                  ROTH 00383

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **David (Diego) Ladowski of blessed memory**, who was killed as a result of the detonation of the explosive device, activated as described in the eighty seventh count of the indictment.

### Ninety third count: (Detailed Incident 1197/02 Shalem)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **Levina Shapira of blessed memory**, who was killed as a result of the detonation of the explosive device, activated as described in the eighty seventh count of the indictment.

### Ninety fourth count: (Detailed Incident 1197/02 Shalem)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **Janis Ruth Coulter of blessed memory**, who was killed as a result of the detonation of the explosive device, activated as described in the eighty seventh count of the indictment.

### Ninety fifth count: (Detailed Incident 1197/02 Shalem)

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, caused the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused the intentional death of **David Gritz of blessed memory**, who was killed as a result of the detonation of the explosive device, activated as described in the eighty seventh count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00384

**Ninety sixth count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on July 31, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, attempted to cause the intentional death of as many civilians as possible. As a result of the detonation of the explosive device that was activated as described in the eighty seventh count of the indictment, **81 people** were injured.

**Ninety seventh count**: **(Detailed Incident 1197/02 Shalem)**

**Nature of the offense**: Malicious damage to property, an offense under Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on July 31, 2002 or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, at the time set forth, in the place set forth in the eighty seventh count of the indictment, in his actions described in the eighty seventh count of the indictment, caused heavy damage to the Frank Sinatra Building in the Mount Scopus campus of the Hebrew University in Jerusalem, in which an explosive device was activated as described in the eighty seventh count of the indictment.

**Ninety eighth count**: **(Detailed Incident 9638/02 Rishon LeZion)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on August 7, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early August 2002, in Ramallah or thereabouts, met with Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

2.  "Salah 2" informed the Defendant that Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "Sheikh", commander of the military arm of the Hamas Organization in the Ramallah area, had asked the Defendant to manufacture two explosive devices concealed inside biscuit boxes – one activated by cellular telephone handset and the other activated by remote control, for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive devices, in order for these to be used for the purpose of carrying out a bombing attack with the intent of causing the deaths of as many people as possible.

3.  Following the said request, the Defendant manufactured two explosive devices, which were concealed inside biscuit boxes. The Defendant connected an activation mechanism to one of the explosive devices consisting of a cellular telephone handset, whereas to the other explosive device the Defendant attached an activation mechanism so that the device would be activated by remote control.

4.  The Defendant delivered the above mentioned explosive devices to "Salah 2". "Salah 2" transferred the above mentioned explosive device to Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "Sheikh", head of the military arm of the Hamas Organization in the Ramallah area.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                    ROTH 00385

5.  At the beginning of August 2002, Muhammad Hassan Ahmed Arman (known as: "Abu Mu'az") met with Wa'el Mahmud Muhammad-Ali Qasem, known as "Abu Sa'ad", who asked to receive an explosive device. "Abu Sa'ad" explained that he intended to lay the explosive device under a vehicle and detonate it with the intent of causing the deaths of as many Israeli civilians as possible.

6.  Muhammad Arman approached Ibrahim Hamed and asked to receive an explosive device for the purpose of carrying out the planned attack. A few days later, in Ramallah or thereabouts, Ibrahim Hamed transferred an explosive device, which the Defendant had manufactured, as set forth above, which was activated by a cellular telephone handset, to Muhammad Arman.

7.  On that day, August 6, 2002, Muhammad Arman, together with Walid Abd al-Aziz Abd al-Hadi Anjas, traveled to Beit Iksa while in possession of the above mentioned explosive device. In Beit Iksa, the two met with "Abu Sa'ad", and transferred the above mentioned explosive device to him.

8.  On the following day, August 7, 2002, "Abu Sa'ad" and Wisam Sa'id Abbasi attached the above mentioned explosive device to a fuel tanker, license No. 3388300, which was parked in the Pisgat Ze'ev neighborhood in Jerusalem or thereabouts. After a few hours, at about 1:50 p.m., "Abu Sa'ad" activated the above mentioned explosive device using a cellular telephone handset, with the intent of causing the deaths of as many people as possible. The device that was planted on the said fuel tanker exploded, while the tanker was in a garage at 23 Shmotkin Street in Rishon LeZion.

9.  As a result of the detonation of the above mentioned explosive device, damage was sustained by the fuel tanker and only miraculously nobody was hurt.

**Ninety ninth count:(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria) (No. 225), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002 or thereabouts, caused the intentional death of another person, as follows:

1.  The above mentioned Defendant, in early September 2002 or thereabouts, in Ramallah or thereabouts, met with Sayid Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization.

2.  "Salah 2" asked the Defendant to make two explosive belts for the purpose of carrying out a suicide attack with the intent of causing the deaths of as many people as possible. The Defendant agreed to manufacture the explosive belts, in order for them to be used to carry out a suicide attack with the intent of causing the deaths of as many people as possible. Following the said request, the Defendant manufactured two explosive belts.

3.  The Defendant delivered the above mentioned explosive belts to "Salah 2", who had them transferred through Hasnin Rumana to Mahmud Hamad Mahmud Sharitah, a military operative in the Hamas Organization, for the purpose of execution of the planned suicide attack.

4.  In late July 2004, Hasnin Rumana called Mahmud Sharitah and asked to arrange a meeting between Iad Naim Subahi Radad, known as "Omar", and a person known as "Abu Khaled". Hasnin Rumana explained that the said meeting was intended for the purpose of execution of a suicide attack, which the above mentioned "Omar" was supposed to carry out. Mahmud Sharitah called "Omar" and informed the latter where and how he must meet Abu Khaled. After two days, "Omar" announced that Abu Khaled did not arrive to the arranged meeting.

5.  Immediately after the above mentioned conversation, Mahmud Sharitah returned to Ramallah and met Hasnin Rumana and reported to the latter that the scheduled meeting had not taken place. At the end of the above mentioned meeting, Mahmud Sharitah called Ashraf Zaghair, known as "Abu Sharif".

Prosecution Case 380/03

6.  After a few days, Mahmud Sharitah met Hasnin Rumana again, who asked to arrange another meeting between "Omar" and Abu Khaled.

HIGHLY CONFIDENTIAL                                                                                    ROTH 00386

7.      After about a week, Hasnin Rumana requested that in the event that Abu Khaled does not arrive at the said meeting, Mahmud Sharitah would take responsibility for "Omar" and the second suicide terrorist, Rafat Radad.

8.      After the above mentioned conversation, Mahmud Sharitah followed "Omar" and observed that "Omar" was waiting at the meeting place and that Abu Khaled did not arrive. After 15 minutes of waiting, Mahmud Sharitah approached "Omar" and informed the latter that from that moment on, the Defendant would be responsible for him.

9.      "Omar" stated that he had a cousin, Rafat Muqadi , who is also willing to carry out a suicide attack. "Omar" requested to carry out a suicide attack together with his aforementioned cousin.

10.     A few days later, Mahmud Sharitah met with "Abu Sharif" in Ramallah and asked the latter to locate a place inside the State of Israel that would be suitable for carrying out a suicide attack. Mahmud Sharitah made it clear to "Abu Sharif" that he would have to lead two suicide terrorists to the place that he would find in order for them to carry out a bombing attack there with the aim of causing the deaths of as many people as possible. "Abu Sharif" agreed, but contended that it would take time to find a place where a double suicide attack could be carried out. During the above mentioned conversation, "Abu Sharif" reported that he had rented an apartment in Dahiat Al-Barid.

11.     "Omar" informed Mahmud Sharitah that he had learned from Rafat Muqadi  about a large function hall, "Whitehall", in Or Yehuda. "Omar" suggested that he and Rafat Muqadi  carry out the suicide attack in the above mentioned function hall, after first shooting using weapons at the occupants of the function hall and then detonating the explosive belts that they would be carrying on their people, with the intent of causing the deaths of as many people as possible. Mahmud Sharitah agreed to the above mentioned idea and sent "Abu Sharif" to inspect the above mentioned function hall. "Abu Sharif" traveled to the above mentioned function hall and reported that the planned attack could not be carried out there because of the large number of security guards posted at the site.

12.     Mahmud Sharitah reported to Hasnin Rumana of his activity for the purpose of execution of the planned suicide attack. Mahmud Sharitah asked Hasnin Rumana to receive two explosive belts and two small weapons, for the purpose of the execution of the planned suicide attack. Hasnin Rumana promised to take care of the explosive belts and the weapons.

13.     After a few days, Mahmud Sharitah and "Abu Sharif" received two explosive belts, which the Defendant had manufactured as set forth above, and two "Uzi" submachine guns with magazines filled with cartridges.

14.     Thereafter, Mahmud Sharitah met "Omar" and informed the latter that the explosive belts were ready and he could depart to carry out the planned suicide attack along with his cousin, Rafat Muqadi . "Omar" responded that he himself was prepared to carry out the suicide attack as soon as possible, but Rafat Muqadi  was not ready to carry out the planned suicide attack, because his sister was in the USA and he wanted to wait until she would return to the Area.

15.     Mahmud Sharitah approached "Abu Sharif" again and asked to act urgently to find a suitable place to carry out the planned suicide attack. After a few days, "Abu Sharif" reported that he had found a place in Tel Aviv that was suitable for carrying out the planned suicide attack.

16.     On September 17, 2002 or thereabouts, Mahmud Sharitah met with "Omar" in the safe house apartment in A-Ram and explained to the latter how to put on and how to activate the explosive belt. Mahmud Sharitah stayed in the above mentioned apartment with "Omar" until September 18, 2002.

17.     On September 19, 2002, "Omar" departed from Ramallah to carry out the planned suicide attack, while carrying on his person one of the suicide belts, which the Defendant had manufactured as set forth above.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00387

18.  "Abu Sharif" transported "Omar" in his vehicle to Tel Aviv. Upon arriving in Tel Aviv, "Abu Sharif" instructed "Omar" to detonate [in a place] [sic] where there were many people, so that the explosion would cause the deaths of as many people as possible.

19.  At about 12:55 p.m., on September 19, 2002 or thereabouts, "Omar" boarded "Dan" bus No. 4, license No. 9105201, at 94 Allenby Street in Tel Aviv. As soon as the above mentioned bus started to move, "Omar" activated the explosive belt, which the Defendant had manufactured, which he was carrying on his person and caused a strong explosion, with the intent of causing the deaths of as many people as possible. The suicide terrorist, Iyad Naim Subhi Raddad, known as "Omar", was killed as a result of the detonation of the above mentioned explosive device.

20.  As a result of the Suicide terrorist's detonation with the above mentioned explosive device, six people were killed, as described in the following counts of the indictment.

21.  As a result of the Suicide terrorist's detonation with the said explosive device, many other people were injured, as will be described in the following counts of the indictment.

22.  As a result of the Suicide terrorist's detonation with the said explosive device, extensive damage was sustained by the above mentioned bus, the vehicles that were near the site of the explosion and to nearby stores.

23.  In his actions described above, the Defendant caused the intentional death of **Yossi Mamistavlov of blessed memory**, age 39 at the time of his death, who was killed as a result of the explosion of the explosive device as set forth above.

**Hundredth count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the ninety ninth count of the indictment, caused the intentional death of **Ofer Zinger of blessed memory**, age 29 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, License No. 9105201, "Dan" line 4 on Allenby Street in Tel Aviv, as described in the ninety ninth count of the indictment.

**Hundred and first count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the ninety ninth count of the indictment, caused the intentional death of **Rosanna Siso of blessed memory**, age 63 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, License No. 9105201, "Dan" line 4 on Allenby Street in Tel Aviv, as described in the ninety ninth count of the indictment.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00388

**Hundred and second count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the ninety ninth count of the indictment, caused the intentional death of **Yaffa Shem-Tov of blessed memory**, age 49 at the time of her death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, License No. 9105201, "Dan" line 4 on Allenby Street in Tel Aviv, as described in the ninety ninth count of the indictment.

**Hundred and third count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the ninety ninth count of the indictment, caused the intentional death of **Solomon Hoenig of blessed memory**, age 79 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, License No. 9105201, "Dan" line 4 on Allenby Street in Tel Aviv, as described in the ninety ninth count of the indictment.

**Hundred and fourth count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002 or thereabouts, caused the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the ninety ninth count of the indictment, caused the intentional death of **Jonathan Jessner of blessed memory**, age 19 at the time of his death, who was killed as a result of the explosion of the suicide terrorist with the explosive device on the bus, License No. 9105201, "Dan" line 4 on Allenby Street in Tel Aviv, as described in the ninety ninth count of the indictment.

**Hundred and fifth count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Causing intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on September 19, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:
The above mentioned Defendant, in his actions described in the ninety ninth count of the indictment, attempted to cause the intentional death of all of the people who were in the vicinity of the suicide terrorist, who exploded with the explosive device on the bus, License No. 9105201, "Dan" line 4 on Allenby Street in Tel Aviv, as described in the ninety ninth count of the indictment.

As a result of the explosion of the suicide terrorist with the explosive device, **approximately 84 people** who were aboard and near the above mentioned bus at the time of the explosion **were injured**.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL

ROTH 00389

**Hundred and sixth count**: **(Detailed Incident 19284/02 Yarkon)**

**Nature of the offense**: Malicious damage to property, an offense under Section 53C of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Section 14(A) of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense:** The aforementioned Defendant, both within the Area and elsewhere, on September 19, 2002 or thereabouts, destroyed or maliciously and unlawfully damaged property, as follows:

The above mentioned Defendant, in his actions described in the ninety ninth count of the indictment, maliciously and unlawfully caused heavy damage to the bus, License No. 9105201, "Dan" line 4 on Allenby Street in Tel Aviv, and caused damage to additional vehicles and to stores and to businesses that were near the site of the attack described in the ninety ninth count of the indictment, which were damaged as a result of the detonation of the explosive device that the Defendant had manufactured.

**Hundred and seventh count**: **(Detailed incident 21011/02 Yarkon)**

**Nature of the offense**: Attempting to cause intentional death, an offense under Section 51(A) of the Security Provisions Order (Judea and Samaria) (No. 378), 5730-1970 and Sections 14(A) and 19 of the Order Regarding Rules of Liability for an Offense (Judea and Samaria), 5728-1968.

**Details of the offense**: The above mentioned Defendant, both in the Area and elsewhere, on October 11, 2002 or thereabouts, attempted to cause the intentional death of another person, as follows:

1.      The above mentioned Defendant, in early September 2002, in Ramallah or thereabouts, manufactured two explosive belts for the purpose of carrying out suicide attacks with the intent of causing the deaths of as many people as possible, as described in the ninety ninth count of the indictment.

2.      The Defendant transferred the two explosive belts to Sayd Abd al-Karim Khader Sheikh Qasem, known as "Salah 2", a military operative in the Hamas Organization, who had them transferred to Mahmud Hamad Mahmud Sharitah, as described in the ninety ninth count of the indictment.

3.      After carrying out the attack described in the ninety ninth count, Mahmud Sharitah decided to execute an additional suicide attack using the explosive belt, which the Defendant had manufactured for that purpose.

4.      For the purpose of advancing his above mentioned plan, Mahmud Sharitah enlisted Rafat Muqadi  to carry out the planned suicide attack.

5.      Mahmud Sharitah also met with Ashraf Munir Zaghair, known as "Bau {sic} Sharif", and instructed the latter to locate a suitable site for carrying out the planned suicide attack. After a few days, "Abu Sharif" reported that he had found two places in Tel Aviv that were suitable for carrying out the planned suicide attack.

6.      On October 11, 2002, "Abu Sharif" brought Rafat Muqadi  from the village Arabeh to the safe house in A-Ram. Mahmud Sharitah explained to Rafat Muqadi  how to put on and how to activate the explosive belt. Mahmud Sharitah attached to the body of Rafat Muqadi  the explosive belt, which the Defendant had manufactured.

7.      "Abu Sharif" transported Rafat Muqadi  to Tel Aviv in order for the latter to carry out the planned suicide attack there.

8.      At about 8:15 p.m., on October 11, 2002, "Abu Sharif" dropped off Rafat Muqadi  on the beach promenade in Tel Aviv and instructed the latter to detonate the explosive belt, which he was carrying on his person, in a restaurant that had many people in it.

9.      Rafat Muqadi  attempted to enter the "Yotvata" Restaurant located on Herbert Samuel Street (Tel Aviv promenade), but the security guard at the site noticed him, suspected that he was a suicide terrorist and prevented

HIGHLY CONFIDENTIAL                                                                                    ROTH 00390

him from entering. Rafat Muqadi  tried to flee from the site, but was caught after a pursuit and with the assistance of other security guards who arrived at the site.

10.      In his actions described above, the above mentioned Defendant attempted to cause the intentional deaths of as many people as possible.

**Hundred and eighth count**:

**Nature of the offense**: Military training without a permit, an offense under Regulation 62 of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense:** The aforementioned Defendant, in the Area, in February 2003 or thereabouts, practiced, gave or received military training in the use of weaponry or in the art of military exercises, movements or operations, as follows:
The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, administered military training to a person, a resident of Nablus, who had been sent to him by Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "the Sheikh", head of the "Izz a-Din al-Qasem Brigades", the military arm of the Hamas Organization in the Ramallah area.
During the said training, the Defendant taught the above mentioned person how to manufacture explosive devices, electric circuits for activating explosive devices and activation devices for explosive devices consisting of a clock, a remote control and a cellular telephone handset.
During the above mentioned military training, the Defendant and the above mentioned person were masked.

**Hundred and ninth count**:

**Nature of the offense:** Performance of a service for an illegal organization, an offense under Regulation 85(1)(C) of the Defense Regulations (Time of Emergency), 1945.

**Details of the offense**: The above mentioned Defendant, in the Area, in early 2003 or thereabouts, performed any work or performed any service for an illegal organization, as follows:
The above mentioned Defendant, at the time set forth, in Ramallah or thereabouts, conveyed to Ibrahim Jamil Abd al-Ghani Hamed, known as "Salah 1" or "the Sheikh", the head of the "Izz a-Din al-Qasem Brigades", the military arm of the Hamas Organization in the Ramallah area, computer diskettes containing instructions for manufacturing the explosives and the explosive devices.

Ibrahim Hamad asked the Defendant to receive the above mentioned diskettes in order to transfer them to the operatives of the Palestinian Islamic Jihad Organization, who had asked to learn how to manufacture explosives and explosive devices.

Prosecution Case 380/03

HIGHLY CONFIDENTIAL                                                                          ROTH 00391

## The Prosecution Witnesses:

1.  Master Sergeant Yitzhak Yaakoboff, Badge No. 1008358, Judea Investigations Office. [taker of the statements of the Defendant dated March 12, 2003, March 13, 2003, March 30, 2003, May 15, 2003 and May 22, 2003 and submitter of photographs that were presented before the Defendant on March 30, 2003 + a drawing in the handwriting of the Defendant]
2.  Master Sergeant Moshe Levi, Badge No. 953117, Judea Investigations Office. [taker of the statement of the Defendant on May 12, 2003]
3.  Transcript of the remand hearing of the Defendant dated May 12, 2003.
4.  Ashraf Munir Zaghair, Identity No. 035660679. (detainee)
5.  Rafat Rashid Abdallah Muqadi , Identity No. 907945026. (detainee)
6.  Mahmud Hamad Mahmud Sharitah, Identity No. 900718750. (detainee) (Prosecution Case 976/02)
7.  Mahmud Taher Mahmud Barghouti, Identity No. 859121287. (detainee) (Prosecution Case 241/03)
8.  Akram Salah Ahmed A-Hasin (Barghouti), Identity No. 988965372. (detainee) (Prosecution Case 210/03).
9.  Wisam Sa'id Mussa Abbasi, Identity No. 033714403. (prisoner)
10. Wa'el Mahmud Muhammad-Ali Qasem, Identity No. 028192755. (prisoner)
11. Muhammad Ashak Odeh, Identity No. 026291302. (prisoner)
12. Alaa A-Din Mahmud Abbasi, Identity No. 029194818. (prisoner)
13. Walid Abd al-Aziz Abd al-Hadi Anjas, Identity No. 906448105. (detainee) (Prosecution Case 889/02)
14. Muhammad Hasan Ahmed Arman, Identity No. 901056259. (detainee) (Prosecution Case 888/02)
15. Muhammad Wa'el Muhammad Daghlas, 905167375. (prisoner) (Prosecution Case 846/01)
16. Ahlam Aref Ahmed Tamimi, Jordanian Passport G052933. (detainee) (Prosecution Case 815/01)
17. Bilal Ya'akub Hamad (Utman) Barghouti, Identity No. 902826262. (prisoner) (Prosecution Case 344/04)
18. Ahmed Taleb Mustafa Barghouti, Identity No. 994466860. (detainee) (Prosecution Case 444/02)
19. Murad Khalil Abed Hak Amira, Identity No. 980743066. (detainee) (Prosecution Case 946/02)

The list of technical witnesses from the following detailed incident cases will be delivered to the prosecution, if necessary, during the trial:

1.  6554/01 Zion
2.  6891/01 Jerusalem Special Duties Department
3.  10283/01 Zion
4.  1512/02 Moriah
5.  5601/02 Rishon LeZion
6.  2881/02 Glilot
7.  3975/02 Lod
8.  9913/02 Rehovot
9.  1197/02 Shalem
10. 9638/02 Rishon LeZion
11. 19284/02 Yarkon
12. 21011/02 Yarkon

[Signature]
Michael Kotlik, Captain
Military Prosecutor

Date: May 29, 2003
Reference: 380-03

Prosecution Case 380/03

43

HIGHLY CONFIDENTIAL

ROTH 00392