# Exhibit 44

Case 1:05-cv-04622-DLI-RML   Document 363-44   Filed 02/24/17   Page 2 of 27 PageID #: 16380

תארין כ"א בתמוז, תשס"ה
31 יולי, 2005

תיק מס': 3807/02

ב י ת ה מ ש פ ט ה צ ב א י י ה ו ד ה

בפני כב' האב"ד: סא"ל שלומי כוכב
שופט: רס"ן מנחם ליברמן
שופט: סרן שלמה כ"ץ

התביעה הצבאית
(באמצעות קמ"ש רותי צביאל)

נגד

הנאשם: פהמי עיד רמדאן משאהרה ת.ז 31530967/ שב"ס- נוכח

אב"ד פותח את הישיבה ומזהה את הנאשם.

## ג ז ר ד י ן

כב' השופט סרן שלמה כ"ץ:

היום 31.7.05  הוכרע דינו של הנאשם על ידינו  והורשע בעבירות כמפורט להלן :

א.   עבירה  של  חברות בהתארגנות בלתי מותרת, עבירה לפי סעיף 85(1) לתקנות ההגנה (שעת חרום), 1945, בכך שהחל מתחילת שנת 2002 ועד ליום מעצרו, היה חבר או פעל התאחדות בלתי מותרת, הזרוע הצבאית של ארגון החמאס, שהיא

ב.   19 עבירות של גרימת מוות בכוונה , עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה ושומרון) (מס' 378) תשל"ל- 1970 וסעיף 14 לצו בדבר כללי האחריות לעבירה ממרמד אל רול, אשר התפוצץ ביום 18.6.02 באוטובוס של המחבל המתאבד, בכך שנטל חלק בשילוחו של המחבל המתאבד 19 אנשים ופצע 57 אנשים נוספים. הנאשם הוא זה אשר הכשיר את רכבו באמצעות ביטוח וטסט ונסע לסייר באתרים אשר יתאימו לפיגוע המתוכנן. בנוסף קנה הנאשם עבור המתאבד כרטיסיה בכדי שלא יראה כחשוד עת הוא עולה לאוטובוס בתחנה. ביום הפיגוע אסף הנאשם ברכבו את המחבל המתאבד והביאו למקום הפיגוע.

ג.   עבירה של נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51(א) לצו בדבר הוראות בטחון (יהודה ושומרון) (מס' 378) תשל"ל-1970 וסעיפים 14(א) ו- 19 לצו בדבר כללי האחריות לעבירה (יהודה ושומרון) תשכ"ח – 1968, בכך שבעשיתו אלו אשר תוארו לעיל ניסה לגרום למותם של כל האנשים אשר היו בסביבתו של אותו מחבל מתאבד, בפועל נפצעו 57 אנשים.

עניינו של תיק זה הוא בפיגוע באוטובוס אשר היה בדרכו לצומת פת בירושלים. כתוצאה מפיגוע זה נהרגו תשעה עשר אנשים.

א.   ברוך גראונר ז"ל.
ב.   רפאל ברגר ז"ל.
ג.   מיכל ביאזי ז"ל.
ד.   בועז אלוף ז"ל.
ה.   אלפ אירית חיילה ז"ל.
ו.   הלנה פלגוב ז"ל.
ז.   ליאה ברוך ז"ל.
ח.   שירי נגארי ז"ל.
ט.   טטיאנה ברסלבסקי ז"ל.
י.   גיזל (גילה) נקב ז"ל.
יא.  ליאת יגן ז"ל.
יב.  רחמים צדיקיהו ז"ל.
יג.  שני אביב צדק ז"ל.



נאמן למקור

רס"ן אלינור ברזני
קצינת העיר נתניה

-1-

L_C180930

## APOSTILLE
### (CONVENTION DE LA HAYE 5 DU OCTOBER 1961)

| | | | |
|---|---|---|---|
| 1. | STATE OF ISRAEL | | מדינת ישראל .1 |
| 2. | THIS PUBLIC DOCUMENT HAS BEEN SIGNED BY MR./MS | ברזני אלינור BARAZANI ELINOR | מסמך ציבורי זה נחתם ביד מר/גב' .2 |
| 3. | ACTING IN THE CAPACITY OF NATANIA CITY OFFICER FOR MILITARY MATTERS | | המכהן בתור קצינת העיר נתניה .3 |
| 4. | BEARS THE SEAL/STAMP OF THE MINISTRY OF | צבא ההגנה לישראל ISRAELI DEFFENCE | נושא את החותם/חותמת של משרד .4 |
| 5. | CERTIFIED AT THE MINISTRY OF FOREIGN AFFAIRS | | אושר במשרד החוץ .5 |
| 6. | THE | 22/9/2011 | ביום .6 |
| 7. | BY | | על-ידי .7 |
| 8. | NO 526754. | LIDAR RAHIMA לידר רחימה החטיבה הקונסולרית CONSULAR BUREAU | מס' 526754 .8 |
| 9. | SEAL/STAMP | | חותם/חותמת .9 |
| 10. | SIGNATURE, JERUSALEM | | חתימה, ירושלים .10 |

התאריך: כ"ד תמוז, תשׁ"ה
31 יולי, 2005

תיק מס': 3807/02

<div dir="rtl">

1  יד. גלילה בונגלה ז"ל.
2  טו. מנדל ברזון ז"ל.
3  טז. הלנה איזון ז"ל.
4  יז. איימן כבהא ז"ל.
5  יח. משה גוטליב ז"ל.
6  יט. ראיסה דיקשטיין ז"ל.
7
8
9  כן נפצעו באותו פיגוע נפשע חמישים ושבעה בני אדם ונגרם נזק רב לרכוש.

10  היד רועדת למקרא תוצאות הפיגוע, ורשימת הקורבנות עומדת לה כזעקה אילמת לחומרת
11  תוצאות מעשי הנאשם.
12  התובעת המלומדת ביקשה כי נשית על הנאשם עונש של 19 מאסרי עולם מצטברים, כל מאסר
13  עולם בעבור נפש אחת שנלקחה מאיתנו באותו פיגוע, וכן מאסר עולם נוסף בגין העבירות
14  הנוספות אותן עבר. התובעת טענה בפנינו כי יש לראות בנאשם שותף מלא בפיגוע, בשל מעשיו
15  אשר בילעם אולי לא היה יוצא הפיגוע אל הפועל. באמור לעיל אין ספק כי תרומתו של הנאשם
16  לביצוע הפיגוע אינה פחותה משל שאר השותפים.
17
18  הנאשם טען בפנינו טענות שונות ובהם טענות לגבי ניהול המשפט ודרך התנהלות סנגורו.
19  הוברר לנאשם כי טענות אלו עומדות לו בחלקי הערעור אשר הנו זכאי לו על פי דין. בכל מקרה
20  ולמרות שהוסברה לנאשם מהות ההליכים העומדים בענייננו, לא מצא לנכון ללמד על עצמו סנגוריה
21  ובקש כי נקל עימו מסיבותינו הוא.
22
23  משכך עומדים פני הדברים, המלאכה העומדת בפנינו ברורה ונהירה. משחשבתנהף הנאשם בנטילת
24  נפש אחת, אין מקומו בחברת בני אנוש, ואתנו דיני לחיות מורחק לצמיתות מהחברה. כל שכן
25  שעסקינן בתשע עשרה נפשות. על כך, מידה כנגד מידה יש להשיב לו, ובעבור כל נפש תהא
26  הרחקתו מהחברה לצמיתות.
27  אשר על כן אנו משיתים על הנאשם 19 מאסרי עולם אשר ירוצו במצטבר. על יתר העבירות
28  הנוספות לא נותר לנו אלא להשית על הנאשם עונש מאסר עולם נוסף אשר ירוצה אף הוא
29  במצטבר.
30
31  כב' האב"ד סא"ל שלמה כוכב: אני מסכים.
32
33  כב' השופט רס"ן מנחם ליברמן: אני מסכים.
34
35  סופר של דבר – הננו גוזרים לנאשם 20 מאסרי עולם מצטברים זה לזה.
36
37
38  זכות ערעור תוך שלושים יום מהיום.
39  ניתן והודע היום 31/07/05, בפומבי ובמעמד הצדדים.
40
41
42
43
44  שופט            אב"ד            שופט
45
46

</div>

נאמן למקור

4584482
רס"ן אלינור ברזני
קצינת העיר נתניה

-2-

תאריך: 31.7.05                                               תיק מס': 3807/02

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה

בפני כב' האב"ד: סא"ל שלומי כובב
שופט: רס"ן מנחם ליברמן
שופט: סרן שלמה כ"ץ

התביעה הצבאית

נגד

הנאשם: פהמי עיד רמדאן משאהרה  ת.ז. 31530967 / שב"ס - נוכח
(באמצעות ב"כ עו"ד תאופיק בסול)

**נאמן למקור**

ה כ ר ע ת   ד י ן

כב' השופט סרן שלמה כ"ץ:

עניינו של תיק זה בפיגוע המצער שקרה בקו "אגד" 32 א, סמוך לצומת פת, בו נהרגו 19 נפשות ונפצעו חמישים ושבעה איש נוספים.

הצדדים הסכימו ביניהם כי אין מחלוקת לעניין קיום הפיגוע עצמו, והגישו בהסכמה את חומר הראיות לגבי עדי התביעה 5 - 6  אשר סומנו על ידינו ת/1- ת/9 בהתאמה. עוד הוגשו בהסכמה בהסכמה עדויותיהם של עדי התביעה 4,7  ו-8 וסומנו בהתאמה ת/17 – ת/19.
יתר העדים נשמעו ובהם הנאשם.

משקל הראיות

אכן נכונה היא מסקנת התביעה כי משהוגשו עדויותיהם של עדי התביעה 4- 8 בהסכמה, הרי שאין מתלוננים על קבילות אותן עדויות או אמיתות תוכנן. די להזכיר לעניין זה את ע' אי/ייש 407/91 סלאא' חסן נעים משרקה נ' תוב"צ.
זאת ועוד,  בית המשפט הצבאי לערעורים אף פסק כי במקרה והוגשו בהסכמה ראיות הסותרות זו את זו  הרי שהההסכמה היא לתוכן הראיה הממלילה, שכן אחרת היה שומר לעצמו הסניגור הממלומד את הזכות לתקוף עדות זו בחקירה נגדית או בכל דרך אחרת המנויה בדיני על פי דין.  ראה לעניין זה  עד"י אי/ייש 114/01 מאזן מחמד עיד אבו הלאל נ' תוב"צ.

הודאות הנאשם

הודאותיו של הנאשם במשטרה הובאו בפנינו על ידי העדת גובה האמרות עת/ 1 ועל ידי עת/2 אשר העיד על נסיבותם ביצוע דו"ח  השחזור. הם נתקרו נגדית על ידי ההגנה. בסיום עדותם הוגשו ההודאות, ללא התנגדות של ההגנה. עדותם של שני השוטרים היתיה מהימנה עלינו. מן העדויות יש ללמוד כי האמרות משקפות במדיוק את אשר מסר הנאשם. גביית האמרות נעשתה במהלך הרגיל של הדברים, ללא ראיה לאירוע חריג כלשהו, או לאמצעי פסול שהופעל על הנאשם.

רס"ן אלינער ברזני
קצינת העיר-נתניה
4584482

-1-

L_C180933

תאריך : 31.7.05                          תיק מס׳: 3807/02

משעברו הודאות החוץ של הנאשם את מבחן הקבילות והתקבלו על ידינו, יש בכך
כדי להצהיר כי הודאות אלו נגבו ללא לחץ חיצוני. לכך יש להוסיף כי בהודאות
אלו סיבך הנאשם לא רק את עצמו אלא גם את אחיו רמדאן, ויש פרטים רבים
הבאים ללמד כי ההודאה אף עומדת במבחן הסובייקטיבי אשר נקבע בפסיקה,
לפיהם אין בה בכדי ללמד על נסיון חפללה עצמית מלאכותית גרידא.
מצאנו כי בהודאות הנאשם מוזכרות עובדות חיצוניות אובייקטיביות המשתלבות
עם עדות עדי התובעיעה האחרים, אשר יש בהן להניח את דעתנו כי אכן הודאות אלו
עומדות במבחן הקבילות, וראויות לאימון.  די אם נזכיר לעניין זה את אופן זיהוי
המתאבד באמצעות פחית קולה וביסקוויט, אופן נשיאת חגורת הנפץ על ידי המחבל
המתאבד, שעות המפגש עם המחבל המתאבד  והתוואי ודרכי הסעתו למקום הפיגוע
של אותו בן בליעל.

ראוי להפנות כאן לקטע מן הסיכומים הבהירים והממצים של התובעת קמ״ש רות
צביאל, אותו מצאנו לאמץ :

"הודאת הנאשם (ת/10) בה מגולל הוא את סיפור בחירת מקום הפיגוע והובלת המחבל
המתאבד הינה רצופה, הגיונית ומפורטת. הנאשם מתאר את פעולותיו מרגע שגוייס על ידי
אחיו לפעילות צבאית בחמא״ס ולהוצאה לפועל של פיגוע התאבדות ועד לתוכניותיו ביחד
עם אחיו לאחר ביצוע הפיגוע. הנאשם מתאר בהודאתו ארבעה סיורים מכינים אותם ערך
בטרם נבחר מקום ביצוע הפיגוע, המצביעים על התפתחוות התכנון – בתחילה רק נסע
הנאשם בדרך גילה, אחר כך הבחין בתחנת האוטובוס בכניסה לבית צפפא בינד מתאים,
בחמאש  נסע  באוטובוס  העובר  בתחנה  זו  ולבסוף  ביקר  במקום  ביחד  עם  אחיו  רמדאן  והראה
לו את היעד אותו מצא. ניכר שהנאשם מדבר מנסיונו ולו אך ביקום ליטול לעצמו אחריות
על מציאת היעד לפיגוע, ספק אם היה נדרש לתיאור מפורט כל כך של חיפושיו, על כל
שלביהם.

הודאת הנאשם משולבת בפרטים רבים המצביעים על המניע והמחשבה מאחורי פעולותיהם
של הנאשם ואחיו רמדאן, כך למשל, הנאשם מציין כי דאג לרשיונות ולביטוח לרכבו בטרם
השתמש בו לביצוע הפיגוע (ת/10, עמ׳ 1, ש׳ 24-21). הנאשם מציין כי בעת שערך סיור
ראשון באזור שכונת גילה נסע ביחד עם אשתו ובתו על מנת להקטין את החשש בו בעת
ביצוע הסיור (שם, עמ׳ 1, ש׳ 26 – עמ׳ 2, ש׳ 2). הנאשם מציין כי בחרו באזור בית צפפא
משום שבמקום נמצאים תושבים וסוחרים ערבים, דבר אשר יפחית את החשד במחבל המתאבד (שם,
עמ׳ 1, ש׳ 25-26; עמ׳ 2, ש׳ 5-7). הנאשם ציין כי בסיור המקדים בו נסע באוטובוס רכש
כרטיסיה וניקב בה חור, על מנת שכשיסיע המחבל  המתאבד באוטובוס ישתמש בכרטיסיה
וכך יעורר פחות חשד (שם, עמ׳ 2, ש׳ 16-20).

בקלטת השחזור נראה הנאשם כשהוא מצביע על הדרך בה הוביל את  המחבל המתאבד
לינעד וחוזר שוב על רוב פרטי הודאתו הכתובה. ניתן לראות בשחזור כי הנאשם
מוסר את הפרטים מרצונו, לאחר שהובחר לו כי אין הוא חייב לעשות כן. ניתן לראות כי
השחזור התנהל על פי מי מנוחזת. הנאשם נשאל שאלות והשיב להן בחופשיות. אופן הדיבור
של הנאשם, שפת גופו ופרטי ההודאה המצביעים כולם על כך שמדובר בהודעת אמת. למשל,

נאמן למקור

רס״ן אליעזר ברדני
קצינת העיר נתניה

-2-

L_C180934

תאריך: 31.7.05                 תיק מס': 3807/02

הנאשם ציין כי המחבל המתאבד התאונן בפניו כי חגורת הנפץ כבדה וקשה לו ללכת עמה. 1

ניכר כי מידע זה נובע מאדם אשר נכח במקום האירוע וספק אם היה עולה במוחו של אדם 2

אשר בדה הודאתו מלבו. בתום השחזור הוצגה הקלטת בפני הנאשם והוא אישר את שראה 3

בשחזור. הנאשם נשאל אם ברצונו להוסיף דבר מה לעדותו או לתקנה או והשיב בשלילה. 4

5

בהודאתו לא סיבך הנאשם רק את עצמו, אלא גם את אחיו רמדאן. עובדה זו מקטינה את 6

החשש שהנאשם ביקש ליטול על עצמו מעשה שלא ביצע ובדה הודאתו מלבו, שכן לו ביקש 7

לעשות כן, חדעת נותנת כי לא היה מערב בהודאת שוא זו אף את אחיו. 8

9

<u>המבחן החיצוני</u> 10

11

הודאת הנאשם משתלבת היטב עם ראיות חיצוניות: 12

13

• הנאשם מציין כי זיהה את המחבל המתאבד לפי כך שהחזיק בידו פחית קוקה קולה 14

וביסקוויט. זיהוי זה תואם לאופן בו זיהה עת/5 את האדם אשר מסר לו את חגורת 15

הנפץ וכן את המחבל המתאבד. זאת מאומת אף לפי עדותו של עת/6, אשר היה זה 16

שהסביר לעת/5 על אופן המפגש. 17

• עת/5 סיפר כי המחבל המתאבד לבש את חגורת הנפץ מתחת לבגדיו. אף הנאשם 18

ציין בעדותו כי המחבל המתאבד נשא חגורת נפץ וכי זו היתה מוסתנת מתחת 19

לבגדיו: 20

• עת/5 סיפר בעדותו שהסיע את המחבל לוואדי נאר, שם ראה את המחבל המתאבד 21

נכנס למכונית מסוג "פיאט אונו" שחורה. הנאשם בהודאותיו ציין כי הוא מחזיק 22

במכונית "פיאט אונו" שחורה וכי אסף את המחבל המתאבד באמצעות מכונית זו 23

מוואדי נאר. 24

• עדות הנאשם ועת/5 תואמות אף לגבי השעה בקירוב בה אסף הנאשם את המחבל 25

המתאבד. עת/5 מציין כי התעוררו בשעה שש וחצי בבוקר ומיד יצא מביתו בם.פ. 26

עאידה (הממוקם דרומית לגילה) לעבר ואדי נאר. עוד מציין כי מיד לאחר שהוריד 27

את המחבל המתאבד הגיע רכב ה"אונו". אף הנאשם מציין הן בהודאתו והן בכתב 28

ידו כי בסמוך לשעה זו אסף את המחבל המתאבד. 29

• עת/5 מציין כי המחבל המתין לנאשם בוואדי נאר זמן קצר ואחד כך הגיע הנאשם. 30

אף לפי עדות הנאשם המחבל המתאבד המתין לו לפני שהגיע. 31

• הנאשם תיאר כיצד הוריד את המחבל לבית צפאפה והורה למחבל המתאבד לעלות 32

על אוטובוס הנוסע לכיוון צומת פת. המחבל המתאבד אכן התפוצץ באוטובוס 33

לכיוון צומת פת, מיד לאחר שעלה על האוטובוס בתחנה הסמוכה לבית צפאפה. 34

• הפיגוע בוצע באמצעות חגורת נפץ אותה נשא המחבל המתאבד." 35

לאור כל זאת, מצאנו ליתן משקל מלא להתודאותיו של הנאשם במשטרה כי יש 36

לקבוע כי קיימות תוספות ראייתיות חיצוניות להודאות אלו , במידה שדי בה לשם 37

ביסוס הרשעה. 38

39

נאמן למקור

- 3 -

תיק מס׳: 3807/02                                                      תאריך: 31.7.05

1   אמנם סתירה עמדה בפנינו בין עדותו של הנאשם בבית המשפט, בה טען כי
2   המדובבים כפו עליו ואיימו עליו לבוא בהודייה, לבין הודאותיו במשטרה. אולם
3   במקרה דנן לאחר ששקלנו את כל הנסיבות, אין לנו אלא להעדיף את גרסתו
4   בהודאותיו במשטרה. הסברנו של הנאשם בפנינו לגבי הסתירות בעדויותיו היו
5   לקויים, ולא עמדו בכדי לסתור את הודאותיו במשטרה. עדותו בבית המשפט לא
6   הייתה מהימנה עלינו, ולדוגמה נציין את גירסתו המופרכת לפיה ידע לתאר את
7   פרטי הפיגוע, לפי מה ששמע משיחה בין אמל עלאן לחליל ראקעו עת שהיו
8   שלושתם עצורים בתאים במגרש הרוסים. אלא שעדותו של חליל במשטרה הוגשה
9   בהסכמה, וההגנה כלל לא זימנה אותו לעדות כדי לתמוך בגירסת הנאשם, כי הוא
10  המקור לידיעות הנאשם על הפיגוע.
11  בשולי הדברים נציין כי היה על הנאשם לטעון נגד קבילות הודאותיו בתחילת ההליך
12  המשפטי במסגרת ״משפט זוטא״, ומשלא עשה כן  אין בידו עתה לעשות כן במהלך
13  עדותו בפנינו. כך שנשמטים להם טיעוניו של הנאשם הן במישור הפרוצדוראלי והן
14  במישור העניני.

15

16  **פרט האישום הראשון**                          נאמן למקור

17
18  בהתאם לפרט זה הואשם הנאשם בחברות בהתאחדות בלתי מותרת, בהיותו חבר
19  דין אל קאסם הזרוע הצבאית של החמאס. מצאנו לנכון להרשיע בפרט אישום זה
20  לאור האמור בהודאות הנאשם ובאמרתו בכתב ידו ת/10 ו- ת/11).

21

22  **פרטי האישום השני עד העשירים**

23
24  בהתאם לפרטי האישום הללו הואשם הנאשם בגרימת מותם בכוונה של נפגעי פיגוע
25  ההתאבדות בקו ״אגד״ 32א, בכך שביחד עם אחר  תכנן והוציא לפועל את הפיגוע
26  הנ״ל. בהתאם לפרטי כתב האישום הנאשם ביצע מספר סיורים  בירושלים בכדי
27  לאתר מקום לפיגוע המתוכנן. הנאשם על פי כתב האישום אף בדק את קו
28  האוטובוס המיועד, מתי מתמלא האוטובוס בנוסעים משכונת גילה, ומתי מתחילים
29  הנוסעים לרדת.  ביום הפיגוע הגיע הנאשם ברכבו ופגש במחבל המתאבד אשר נשא
30  על גופו חגורת נפץ, והסיעו לירושלים דרך ג׳בל מוכבר וצור בחר עד לבית צפפא.
31  הנאשם הוריד את המחבל המתאבד סמוך לתחנת האוטובוס, והפקיד בידיו
32  כרטיסית ״אגד״.  סופו של אותו פיגוע היה במותם של תשעה עשר הרוגים, פצועים
33  רבים ונזק רב לרכוש.  עיון בתמונ הראיות שבפנינו מראה כי הנאשם מפרט את
34  המיוחס לו בהודאותיו ובשחזור, את פרטי התכנון והובלת המחבל המתאבד (ראה
35  ת/10 ות/ 11 ).  כן מצאנו חיזוקים לכך בעדותו של עת/ 5  (ת/9).  כך נחה דעתנו
36  לעניין היסוד הפיזי של העבירה.
37  לעניין היסוד הנפשי הנדרש בגין עבירות אלו,  מקובלת עלינו עמדת התביעה כי
38  הלכת הצפיות יש בה בכדי ללמד על כוונתו של הנאשם במעשיו אלו כפי שפורטו
39  דלעיל.  הגיונית וטבעית היא המסקנה הבאה ללמד? כי הנאשם עשה את אשר עשה
40  בכדי להביא למותם של אנשים. לא נראה כי תוצאה אחרת ניתנת לפנייה מאדם
41  אשר סוקר אתרים פוטנציאלאים לפיגוע, ומסיע מחבל מתאבד כשהוא חגור בחגורת
42  נפץ לעבר תחנת האוטובוס. בהתאם לכך מורשע הנאשם בפרטי אישום אלו.

43

44  **פרטי האישום העשרים ואחד**

45
46  בהתאם לפרט אישום זה הואשם הנאשם בעבירה של נסיון לגרימת מוות בכוונה,
47  בנסיון להביא למותם של 57 הפצועים באותו פיגוע.  די בתשתית הראייתית  כפי
48  שהובאה בפרטי האישום הקודמים בכדי לבסס את אשמתו של הנאשם בפרט זה,
49  ולפיכך מרשיעים אנו אותו, גם בכך.

רס״ן אלינור ברזני
קצינת העיר נתניה
4584482

L_C180936

תיק מס׳: 3807/02                          תאריך: 31.7.05

<div dir="rtl">

1
2  <u>**פרט האישום העשרים ושניים**</u>
3
4  בהתאם לפרט אישום זה, האשם הנאשם  בעבירה של קשירת קשר לגרימת מוות
5  בכוונה, בכך שקשר ביחד עם אחרים להוציא לפועל  פיגוע התאבדות בספינה באילת
6  באמצעות מצלמת וידאו ממולכדת. לאור חוסר בחיזוק חיצוני לאמרות הנאשם, לא
7  מצאנו כי קיימת תשתית ראייתית מספיקה בכדי להרשיעו בפרט זה, ולפיכך
8  החלטנו לזכותו.
9
10  <u>**האב״ד סא״ל שלומי כוכב**</u>: אני מסכים.
11
12  <u>**השופט רס״ן מנחם ליברמן**</u>:  אני מסכים.
13
14
15  ניתן והודע היום, 31.7.05, בפומבי .
16
17
18                    שופט                    אב״ד                    שופט
19
20
21

</div>

נאמן למקור

4584482
רס״ן אלינור ב(רצא?)
קצינת העיר נתניה

L_C180937



143 RODNEY STREET

BROOKLYN, N.Y. 11211

TEL. (718) 384-8040

FAX: (718) 388-3516

# Certificate of Accurate Translation

Translated document: **L_C180930**   Source Language: **Hebrew**

Translation date: **August, 27, 2013**   Target Language: **English**

Description of Document:  **Sentence and Verdict  of Fahmi Id Ramdan Meshahrah**

Targem Translations, a language services provider in the New York metropolitan area with more than 50 years of professional experience, hereby certifies and states that the above mentioned document has been translated and edited by a team of highly skilled translators and editors who have the background and experience needed to perform the translation and editing. We further certify that, to the best of our knowledge, the translated English document is an accurate translation of the original Hebrew document and that reflects the content and meaning of the original Hebrew document.

Yours Sincerely

Wolf Markowitz, Manager
**Targem Translations**



PROFESSIONAL

TRANSLATIONS

OF FOREIGN

LANGUAGES

תיק מס׳: 3807/02

התאריך: כ״ד תמוז, תשס״ח
31 יולי, 2005

ב י ת ה מ ש פ ט ה צ ב א י   י ה ו ד ה

בפני כב׳ האב״ד: סא״ל שלומי כוכב
שופט: רס״ן מנחם ליברמן
שופט: סרן שלמה כ״ץ

התביעה הצבאית
(באמצעות קמ״ש רותי צביאל)

נגד

הנאשם: פהמי עיד רמדאן משאהרה ת.ז 31530967/ שב״ס- נוכח

אב״ד פותח את הישיבה ומזהה את הנאשם.

## ג ז ר   ד י ן

### כב׳ השופט סרן שלמה כ״ץ :

היום 31.7.05  הוכרע דינו של הנאשם על ידינו  והורשע בעבירות כמפורט להלן :

א.   עבירה של חברות בהתאגרגנות בלתי מותרת, עבירה לפי סעיף 85(1) לתקנות ההגנה
(שעת חרום), 1945, בכך שהחל מתחילת שנת 2002 ועד ליום מעצרו, היה חבר או פעל
כחבר בגדודי או א-דין על קסאם, הזרוע הצבאית של ארגון החמאס, שהיא
התאחדות בלתי מותרת.

ב.   19 עבירות של גרימת מוות בכוונה , עבירה לפי סעיף 51א) לצו בדבר הוראות בטחון
(יהודה ושומרון) (מס׳ 378) תשל״ – 1970 וסעיף 14 לצו בדבר כללי האחריות לעבירה
ממחוז אל דלל, אשר התפוצץ ביום 18.6.02  באוטובוס אשר נסע לכיוון צומת פת, הרג
19 אנשים ופצע 57 אנשים נוספים. הנאשם הוא זה אשר הכשיר את רכבו באמצעות
עבור המתאבד כרטיסיה בכדי שלא יראה כחשוד עת הוא עולה לאוטובוס בתחנה.
ביום הפיגוע אסף הנאשם ברכבו את המחבל המתאבד והביאו למקום הפיגוע.

ג.   עבירה של נסיון לגרימת מוות בכוונה, עבירה לפי סעיף 51א) לצו בדבר הוראות
האחריות לעבירה (יהודה ושומרון) (מס׳ 378) תשל״-1970 וסעיפים 14(א)א) )ו- 19 לצו בדבר כללי
לעניל ניסה לגרום למותם של כל האנשים אשר היה בסביבתו של אותו מחבל מתאבד
בפועל נפצעו 57 אנשים.

עניינו של תיק זה הוא הפיגוע באוטובוס אשר היה בדרכו לצומת פת בירושלים. כתוצאה מפיגוע
זה נהרגו תשעה עשר אנשים :




א.   ברוך גראונר ז״ל.
ב.   רפאל ברגר ז״ל.
ג.   מיכל ביחזי ז״ל.
ד.   בועז אלוף ז״ל.
ה.   אלפו אירית חיילת ז״ל.
ו.   הלנה פלגוב ז״ל.
ז.   לאה ברוך ז״ל.
ח.   שירי נגארי ז״ל.
ט.   טטיאנה ברסלבסקי ז״ל.
י.   גיזל (גילה) נגב ז״ל.
יא.  ליזאת גנן ז״ל.
יב.  רחמנים צדיקיהו ז״ל.
יג.  שני אבי צדק ז״ל.

נאמן למקור

רס״ן אלינור ברוני
קצינת העיר נתניה

4584482

-1-

# APOSTILLE
## (CONVENTION DE LA HAYE 5 DU OCTOBER 1961)

| | | | | |
|---|---|---|---|---|
| 1. | STATE OF ISRAEL | | מדינת ישראל | .1 |
| 2. | THIS PUBLIC DOCUMENT HAS BEEN SIGNED BY MR./MS | ברזני אלינור<br>BARAZANI ELINOR | מסמך ציבורי זה נחתם בידי מר/גב׳ | .2 |
| 3. | ACTING IN THE CAPACITY OF NATANIA CITY OFFICER FOR MILITARY MATTERS | | המכהן בתור קצינת העיר נתניה | .3 |
| 4. | BEARS THE SEAL/STAMP OF THE MINISTRY OF | צבא התגנה לישראל<br>ISRAELI DEFFENCE | נושא את החותם/חותמת של משרד | .4 |
| 5. | CERTIFIED AT THE MINISTRY OF FOREIGN AFFAIRS | | אושר במשרד החוץ | .5 |
| 6. | THE | 22/9/2011 | ביום | .6 |
| 7. | BY | לידר רחימוב<br>LIDAR RAHIMA | על-ידי | .7 |
| 8. | NO 526754. | CONSULAR BUREAU | מס׳ 526754 | .8 |
| 9. | SEAL/STAMP | | חותם/חותמת | .9 |
| 10. | SIGNATURE, JERUSALEM | | חתימה, ירושלים | .10 |

L_C180931

בית המשפט המחוזי בתל אביב יפו, תנ״ח, תשס״ח
31 יולי, 2005

| | |
|---|---|
| יד. גלילה בוגלח ז״ל. | 1 |
| טו. מנדל ברזון ז״ל. | 2 |
| טז. הלנה איוון ז״ל. | 3 |
| יז. איימן כבהא ז״ל. | 4 |
| יח. משה גוטליב ז״ל. | 5 |
| יט. ראיסה דיקשטיין ז״ל. | 6 |
| | 7 |

8 כן נפצעו באותו פיגוע נפשע חמישים ושבעה בני אדם  ונגרם נזק רב לרכוש.

10 היד רועדת למקרא ותוצאות הפיגוע, ורשימת הקורבנות עומדת לה כזעקה אילמת לחומרת
11 תוצאות מעשי הנאשם.
12 התובעת המלומדת ביקשה  כי נשית על הנאשם עונש של 19 מאסרי עולם מצטברים, כל מאסר
13 עולם בעבור נפש אחת שנלקחה מאיתנו באותו פיגוע, וכן מאסר עולם נוסף בגין העבירות
14 הנוספות אותן עבר. התובעת טענה בפנינו כי יש לראות בנאשם שותף מלא בפיגוע, בשל מעשיו
15 אשר גילתם אולי לא היה יוצא הפיגוע אל הפועל. באמור לעיל אין ספק כי  תרומתו של הנאשם
16 לביצוע הפיגוע אינה פחותה משל שאר השותפים.
17

18 הנאשם טען בפנינו טענות שונות ובהם טענות לגבי דרך ניהול המשפט ודרך התנהלות סנגורו.
19 הובהר לנאשם כי טענות אלו עומדות לו בתלית הערעור אשר הנו זכאי לו על פי דין.  בכל מקרה
20 למרות שהוסברה לנאשם מהות התהליכים העומדים בעניינו, לא מצא לנכון ללמד על עצמו סנגוריה
21 ולבקש כי נקל עימו מסיבותיו הוא.
22

23 משך עומדים פני הדברים, המלאכה העומדת בפנינו ברורה ונהירה. משהשתתף הנאשם בנטילת
24 נפש אחת,  אין מקומו בחברת בני אנוש, ואחת דינו להיות מורחק לצמיתותה מחברה. כל שכן
25 שעסקינן  בתשע עשרה נשרות נפשות. על כך, מידה כנגד מידה  יש לחשיב לו, ובעבור כל נפש תחה
26 הרחקתו מהחברה לצמיתות.
27 אשר על כן אנו משיתים על הנאשם  19 מאסרי עולם אשר ירוצו במצטבר.  על יתר העבירות
28 הנוספות לא נותר לנו אלא להשית על הנאשם עונש מאסר עולם נוסף אשר ירוצה אף הוא
29 במצטבר.

31 כב׳ האב״ד סא״ל שלמה כוכב: אני מסכים.
32

33 כב׳ השופט רס״ן מנחם ליברמן: אני מסכים.
34

35 סופו של דבר – הננו גוזרים לנאשם 20 מאסרי עולם מצטברים זה לזה.
36
37

38 זכות ערעור תוך שלושים יום מהיום.
39 ניתן והודע היום ה-31/07/05, בפומבי ובמעמד הצדדים.
40

_____      _____      _____
שופט                  אב״ד                 שופט

נאמן למקור
4584482
רס״ן אלינור ברזני
קצינת העיר נתניה

L_C180932

תאריך: 31.7.05                                          תיק מס': 3807/02

ב י ת   ה מ ש פ ט   ה צ ב א י   י ה ו ד ה

בפני כב' האב"ד: סא"ל שלומי כוכב
שופט: רס"ן מנחם ליברמן
שופט: סרן שלמה כ"ץ

התביעה הצבאית

נגד

הנאשם: פהמי עיד רמדאן משאהרה   ת.ז. 31530967 / שב"ס – נובח
(באמצעות ב"כ עו"ד תאופיק בסול)

נאמן למקור

ה כ ר ע ת   ד י ן

כב' השופט סרן שלמה כ"ץ:

עניינו של תיק זה בפיגוע המצער שקרה בקו "אגד" 32 א, סמוך לצומת פת, בו נהרגו
19 נפשות ונפצעו חמישים ושבעה אנשים נוספים.

הצדדים הסכימו ביניהם כי אין מחלוקת לעניין קיום הפיגוע עצמו, והגיעו להסכמה
את חומר הראיות לגבי עדי התביעה 5- 6 אשר סומנו על ידינו ת/1- ת/4 בהתאמה.
עוד הוגשו בהסכמה עדויותיהם של עדי התביעה 4,7 ו-8 וסומנו בהתאמה ת/17 –
ת/19.
יתר העדים נשמעו ובהם הנאשם.

משקל הראיות

אכן נכונה היא מסקנת התביעה כי משהוגשו עדויותיהם של עדי התביעה 4- 8
בהסכמה, הרי שאין מחלוקת על קבילות  אותן עדויות וגם אמיתות תוכן. די להזכיר
לעניין זה את כי איו"ש 407/91 סלאח חסן נעים משרקה נ' תוב"צ.
זאת ועוד , בידן המשפט הצבאי לערעורים אף פסק כי במקרה והנוגע להסכמה
ראיות הסותרות זו את זו הרי שההסכמה היא לתוכן הראיה המפלילה, שכן אחרת
היה שומר לעצמו הסניגור הממלומד את הזכות לתקוף עדות זו בחקירה נגדית או
בכל דרך אחרת הממונה בידיו על פי דין. ראה לעניין זה עד"יי איו"ש 114/01 מאזן
מחמד עיד אבו הלאל נ' תוב"צ .

הודאות הנאשם

הודאותיו של הנאשם במשטרה הובאו בפנינו על ידי העדת גובה האמרות עת/ 1 ועל
ידי עת/2 אשר העיד על נסיבות ביצוע השחזור. הם נתקן גרסת נגדית על ידי
ההגנה. בסיום עדות הוגשו התודאות, ללא התנגדות של ההגנה. עדותם של שני
השוטרים היתה מהימנה עלינו. מן העדויות יש ללמוד כי האמרות משקפות
במדויק את אשר מסר הנאשם. גביית האמרות נעשתה במהלך הרגיל של הדברים ,
ללא ראיה לאירוע חריג כלשהו, או לאמצעי פסול שהופעל על הנאשם.

רס"ן אליעזר ברונו
קצינת העיר נתניה

L_C180933

1. משעברו ההודאות החוץ של הנאשם את מבחן הקבילות והתקבלו על ידינו, יש בכך
2. בכדי להחזיר כי ההודאות אלו נגבו ללא לחץ חיצוני. לכך יש להוסיף כי בהודאות
3. אלו סיבך הנאשם לא רק את עצמו אלא גם את אחיו אחמד, ויש פרטים רבים
4. הבאים ללמד כי  ההודאה אף עומדת במבחן הסובייקטיבי אשר נקבע בפסיקה,
5. לפיהם אין בה בכדי ללמד על נסיון הפללה עצמית מלאכותי גרידא.
6. מצאנו כי בהודאות הנאשם מוזכרות עובדות חיצוניות אובייקטיביות המשתלבות
7. עם עדות עדי התובעה האחרים, אשר יש בהן להניח את דעתנו כי אכן ההודאות אלו
8. עומדות במבחן הקבילות, וראויות לאימון.  די אם נזכיר לעניין זה את אופן זיהוי
9. המתאבד באמצעות פתיחת קולר ובסקנוייס, אופן נשיאת חגורת הנפץ על ידי המחבל
10. המתאבד, שעות המפגש עם המחבל המתאבד ותהלוכי ודרכי הסעתו למקום הפיגוע
11. של אותו בן בליעל.
12.
13. ראו להתפנות כאן לקטע מן הסיכומים הבחירים והנמצאים של התובעת קמ״ש רות
14. צביאל, אותו מצאנו לאמץ :
15.
16. "הודאת הנאשם (ת/10) בה מגולל הוא את סיפור מקום הפיגוע והובלת המחבל
17. המתאבד הינה רצופה, הגיונית ומפורטת, הנאשם מתאר את פעולותיו מדגש שגויס על ידי
18. אחיו לפעולות צבאית בחמא״ס ולהוצאה לפועל של פיגוע התאבדות ועד לתוכניותיו ביחד
19. עם אחיו לאחר ביצוע הפיגוע. הנאשם מתאר בהודאתו ארבעה סיורים מכינים אותם ערך
20. בטרם נבחר מקום ביצוע הפיגוע, המצביעים על התפתחות התכנון – בתחילה רק נסע
21. הנאשם בדרך גילה, אחר כך הבחין בתחנת האוטובוס בכניסה לבית צפפא כיעד מתאים,
22. בהמשך נסע באוטובוס הנוסע הלובר בתחנה זו ולבסוף ביקר במקום ביחד עם אחיו אחמד וההראה
23. לו את היעד אותו מצא. ניכר שהנאשם מדבר מניתינו ולא אן ביקש ליטול לעצמו אחריות
24. על מציאת היעד לפיגוע, ספק אם היה נדרש לתיאור מפורט כל כך של חיפושיו, על כל
25. שלביהם.
26.
27. הודאת הנאשם משולבת פרטים רבים המצביעים על המניע והמחשבה מאחורי פעולותיהם
28. של הנאשם ואחיו אחמד. כך למשל, הנאשם מציין כי דאג לרשיונות ולביטוח לרכב בטרם
29. השתמש בו לביצוע הפיגוע (ת/10, עמ' 1, ש' 21-24). הנאשם מציין כי בעת שערך סיור
30. ראשון באזור שכונת גילה נסע ביחד עם אשתו וכנו על מנת להקטין את החשש בו בעת
31. ביצוע הסיור (שם, עמ' 1, ש' 26 – עמ' 2, ש' 2). הנאשם מציין כי בחרו באזור בית צפפא
32. משום שבמקום נמצאים תושבים ערבים, דבר אשר יפחית את החשד במחבל המתאבד (שם,
33. עמ' 1, ש' 25-26; עמ' 2, ש' 5-7). הנאשם ציין כי בסירו המקדים בו נסע באוטובוס רכש
34. כרטיסיה וניקב בה זוד, על מנת שכשייסע המחבל  המתאבד באוטובוס ישתמש בכרטיסיה
35. וכך יעורר פחות חשד (שם, עמ' 2, ש' 16-20).
36.
37. בקלסות השתחזור נראה הנאשם כשהוא מצביע על הדרך בה הוביל את המחבל המתאבד
38. ליעוד וחוזר שוב על רוב פרטי הודאתו הכתובה. ניתן לראות בבירור בשחזור כי הנאשם
39. מוסר את הפרטים מרצונו, לאחר שהובהר לו כי אין הוא חייב לעשותו כן. ניתן לראות כי
40. השחזור התנהל על פי מי מנוחזור. הנאשם נשאל שאלות והשיב לנ בחופשיות. אופן הדיבור
41. של הנאשם, שפת גופו ופרטי ההודאה המצביעים כולם על כך שמדובר בהודאת אמת. למשל,

**נאמן למקור**

4585482
רס״ן אליעזר בדחי
קצינת העיר נתניה

L_C180934

1 הנאשם ציין כי המחבל חמתאבד התאונן בפניו כי חגורת הנפץ כבדה וקשה לו ללכת עמה.
2 ניכר כי מידע זה נובע מאדם אחר נכח במקום האירוע וספק אם היה עולה במוחו של אדם
3 אשר בדה הודאתו מלבו. בתום השחזור הוצגה הקלטת בפני הנאשם והוא אישר את שראה
4 בשחזור. הנאשם נשאל אם ברצונו להוסיף דבר מה לעדותו או לתקנה והשיב בשלילה.
5
6 בהודאתו לא סיבך הנאשם רק את עצמו, אלא גם את אחיו רמדאן. עובדה זו מקטינה את
7 החשש שהנאשם ביקש ליטול על עצמו מעשה שלא ביצע ובדה הודאתו מלבו, שכן לו ביקש
8 לעשות כן, הדעת נותנת כי לא היה מערב בהודאת שווא זו אף את אחיו.
9
10 <u>המבחן החיצוני</u>
11
12 הודאת הנאשם משתלבת היטב עם ראיות חיצוניות:
13
14 •  הנאשם מציין כי זיהה את המחבל המתאבד לפי כך שהחזיק בידו פחית קוקה קולה
15 וביסקוויט. זיהוי זה תואם לאופן בו זיהה עת/5 את האדם אשר מסר לו את חגורת
16 הנפץ וכן את המחבל המתאבד. זאת מאומת אף לפי עדותו של עת/6, אשר היה זה
17 שהסביר לעת/5 על אופן המפגש.
18 •  עת/5 סיפר כי המחבל המתאבד לבש את חגורת הנפץ מתחת לבגדיו. אף הנאשם
19 ציין בעדותו כי המחבל המתאבד נשא חגורת נפץ וכי זו היתה מוטמנת מתחת
20 לבגדיו:
21 •  עת/5 סיפר בעדותו שהסיע את המחבל לואדי נאר, שם ראה את המחבל המתאבד
22 נכנס למכונית מסוג "פיאט אונו" שחורה, הנאשם בהודאותיו ציין כי הוא מחזיק
23 במכונית "פיאט אונו" שחורה וכי אסף את המחבל המתאבד באמצעות מכונית זו
24 מואדי נאר.
25 •  עדות הנאשם ועת/5 תואמות אף לגבי השעה בקירוב בה אסף הנאשם את המחבל
26 המתאבד. עת/5 מציין כי התעורר בשעה שש וחצי בבוקר ומיד יצא מביתו בכפר
27 עאריבה (תחמק'ם דרומית לגילה) לעבר ואדי נאר. עוד מציין כי מיד לאחר שהוריד
28 את המחבל המתאבד הגיע רכב ח"אונו". אף הנאשם מציין הן בהודאתו הן בכתב
29 ידו כי בסמוך לשעה זו אסף את המחבל המתאבד.
30 •  עת/5 מציין כי המחבל המתין לנאשם בואדי נאר ואחר כך הגיע הנאשם.
31 אף לפי עדות הנאשם המחבל והמתאבד המתין לו לפני שהגיע.
32 •  הנאשם תיאר כיצד הוריד את המחבל בבית צפאפה והורה למחבל המתאבד לעלות
33 על אוטובוס הנוסע לכיוון צומת פת. המחבל המתאבד אכן התפוצץ באוטובוס
34 לכיוון צומת פת, מיד לאחר שעלה על האוטובוס בתחנה הסמוכה לבית צפאפה.
35 •  הפיגוע בוצע באמצעות חגורת נפץ אותה נשא המחבל המתאבד."
36 לאור כל זאת, מצאנו ליתן משקל מלא להודאותיו של הנאשם במשטרה. כך יש
37 לקבוע כי קיימות תוספות ראייתיות חיצוניות להודאות אלו, במידה שדי בה לשם
38 ביסוס הרשעה.
39

נאמן למקור

רשיין אלינוד מבנה
קצינת העיר נתניה.

-3-

L_C180935

תאריך: 31.7.05                                        תיק מסי: 3807/02

1 אמנם סתירה עמדה בפנינו בין עדותו של הנאשם בבית המשפט, בה טען כי
2 המדוברבים כפו עליו ואיימו עליו לבוא בהודייה, לבין הודאותיו במשטרה. אולם
3 במקרה דנן לאחר ששקלנו את כל הנסיבות, אין לנו אלא להעדיף את גרסתו
4 בהודאותיו במשטרה. הסבריו של הנאשם בפנינו לגבי הסתירות בעדותו היו
5 לקויים, ולא עמדו בבדי לסתור את הודאותיו במשטרה. עדותו בבית המשפט לא
6 הייתה מהימנה עלינו, ולדוגמא נציין את גירסתו המופרכת לפיה ידע לתאר את
7 פרטי הפיגוע, לפי מה ששמע משיחה בין אמל עלאן לחליל בראקעת עת שהיו
8 שלושתם עצורים בתאים במגרש הרוסים. אלא שעדותו של חליל במשטרה הוגשה
9 בהסכמה, וההגנה כלל לא זימנה אותו לעדות כדי לתמוך בגירסת הנאשם, כי הוא
10 המקור לידיעות הנאשם על הפיגוע.

11 בשולי הדברים נציין כי היה על הנאשם לטעון נגד קבילות הודאותיו בתחילת ההליך
12 המשפטי במסגרת "משפט זוטא", ומשלא עשה כן אין בידו עתה לעשות כן במהלך
13 עדותו בפנינו. כך שנשמטים להם טיעוניו של הנאשם הן במישור הפרוצדוראלי והן
14 במישור העניייני.

<u>פרט האישום הראשון</u>                                         [חותמת: נאמן למקור]

[חותמת עגולה]

18 בהתאם לפרט זה הואשם הנאשם בחברות בהתאחדות בלתי מותרת, בכך ...
19 דין אל קאסם הזרוע הצבאית של החמאס. מצאנו לנכון להרשיע בפרט אישום זה
20 לאור האמור בהודעת הנאשם ובאמרתו בכתב ידו ת/10 ו- ת/11).

22 <u>פרטי האישום השני עד העשירים</u>

24 בהתאם לפרטי האישום הללו מואשם הנאשם בגרימת מוות בכוונה של נפגעי פיגוע
25 ההתאבדות בקו "אגד" 32א, בכך שביחד עם אחר תכנן והוציא לפועל את הפיגוע
26 הנ"ל. בהתאם לפרטי כתב האישום הנאשם ביצע מספר סיורים בירושלים בכדי
27 לאתר מקום לפיגוע המתוכנן. הנאשם על פי כתב האישום משכונת גילה, ומתי מתחילים
28 האוטובוס המגיע, מתי מתמלא האוטובוס בנוסעים משכונת גילה, ומתי מתחילים
29 הנוסעים לרדת. ביום הפיגוע הגיע הנאשם ברכבו ופגש במחבל המתאבד אשר נשא
30 על גופו חגורת נפץ, והסיעו לירושלים דרך גיבל מוכבר וצור בחר עד לבית פאפא.
31 הנאשם הוריד את המחבל המתאבד סמוך לתחנת האוטובוס, והפקיד בידיו
32 כרטיסית "אגד". סופו של אותו פיגוע היה במותם של תשעה עשר הרוגים, פצועים
33 רבים ונזק רב לרכוש. עיון בחומר הראיות שבפנינו מראה כי הנאשם מפרט את
34 המיוחס לו בהודאתו ובשחזור, את פרטי תכנון והוצאת המחבל המתאבד (ראה
35 ת/10 ות/ 11 ). כן מצאנו חיזוקים לכך בעדותו של עת/ 5  (ת/9). כך נחה דעתנו
36 לעניין היסוד הפיזי של העבירה.

37 לעניין היסוד הנפשי הנדרש בגין עבירות אלו, מקובלת עלינו עמדת התביעה כי
38 הלכת הצפיות יש בה בכדי ללמד על כוונתו של הנאשם במעשיו אלו כפי שפורטו
39 דלעיל. הגיונית וטבעית היא המסקנה הבאה ללמדך כי הנאשם עשה את אשר עשה
40 בכדי להביא למותם של אנשים. לא נראה כי תוצאה אחרת ניתנת לצפייה מאדם
41 אשר סוקר אתרים פוטנציאליים לפיגוע, ומסיע מחבל מתאבד כשהוא חגור בחגורת
42 נפץ לעבר תחנת האוטובוס. בהתאם לכך מורשע הנאשם בפרטי אישום אלו.

44 <u>פרט האישום העשירים ואחד</u>

46 בהתאם לפרט אישום זה הואשם הנאשם בעבירה של נסיון לגרימת מוות בכוונה,
47 בנסיון להביא למותם של 57 הפצועים באותו פיגוע. די בתשתית הראייתית כפי
48 שהובאה בפרט האישום הקודמים בכדי לבסס את אשמתו של הנאשם בפרט זה,
49 ולפיכך מרשיעים אנו אותו, גם בכך.

[חתימה]

4584482
רס"ן אלינור ברזני
קצינת העיר נתניה

-4-

L_C180936

תיק מס׳: 3807/02                                                      תאריך: 31.7.05

<div dir="rtl">

**פרט האישום העשרים ושניים**

בהתאם לפרט אישום זה, הואשם הנאשם בעבירה של קשירת קשר לגרימת מוות בכוונה, בכך שקשר ביחד עם אחרים להוציא לפועל פיגוע התאבדות בספינה באילת באמצעות מצלמת וידאו ממולכדת. לאור חוסר בחיזוק חיצוני לאמרות הנאשם, לא מצאנו כי קיימת תשתית ראייתית מספיקה בכדי להרשיעו בפרט זה, ולפיכך החלטנו לזכותו.

**האב״ד סא״ל שלומי כוכב:** אני מסכים.

**השופט רס״ן מנחם ליברמן:** אני מסכים.

ניתן והודע היום, 31.7.05, בפומבי.

</div>

שופט                           אב״ד                           שופט

נאמן למקור

4584482
רס״ן אלינור בן דב
קצינת העיר נתניה

L_C180937

Date: 24 Tammuz 5765                                                                        Case no. 3807/02
July 31, 2005

1          **Military Court — Judea**
2
3      **Appearing Before Presiding Judge: Brig. General Shlomi Kochav**
4      **Judge: Major Menachem Lieberman**
5      **Judge: Captain Shlomo Katz**
6
7      **The Military Prosecution**
8      (Represented by Legal Officer Ruti Tzvi'el)
9
10                                                     vs.
11
12     **Defendant: Fahmi Id Ramdan Meshahrah, ID no. 31530967/ Prison Service — present**
13
14     **The Presiding Judge opens the session and identifies the defendant.**
15
16                                              <u>**Sentence**</u>
17
18     <u>**Judge Captain Shlomo Katz:**</u>
19
20     Today, July 31, 2005, the case of the defendant was decided by us. He is convicted of the following crimes:
21
22     1.   Membership in an illegal organization, in violation of Section 85(1) in the Defense (Emergency) Regulations
23          1945, in that, since the beginning of 2002 and until the day of his arrest, he was a member or acted as a
24          member of the Izz ad-Din al-Qassam Brigades, the military wing of Hamas, which is an illegal organization.
25     2.   19 counts of intentionally causing another's death, in violation of Section 51(a) of the Security Orders (Judea
26          and Samaria) (378) 1970, and Section 14 of the Order Regarding the Rules of Criminal Liability (Judea and
27          Samaria) 1968, in that he took part in dispatching the suicide bomber Muhammad al-Ghoul who blew himself
28          up on June 18, 2002 in a public bus traveling towards Patt Junction, killing 19 people and wounding 57 others.
29          The defendant is the one who prepared his automobile, by arranging its insurance and passing the vehicular
30          test, and then scouted for places suitable for the planned attack. In addition, the defendant bought the suicide
31          bomber an "Egged" [multi-trip prepaid] bus ticket so that he would not appear suspicious when he boarded the
32          bus at the stop. On the day of the attack, the defendant picked up the suicide bomber in his automobile and
33          brought him to the place of the attack.
34     3.   The crime of attempting to cause another's death intentionally, in violation of Section 51(a) of the Security
35          Orders (Judea and Samaria) (378) 1970, and Sections 14 and 19 of the Order Regarding the Rules of Criminal
36          Liability (Judea and Samaria) 1968, in that in his actions described above he attempted to cause the death of
37          all the people who were in the vicinity of the suicide bomber. In actual fact 57 were wounded.
38
39
40     The subject of this case is the attack on a bus on its way to Patt Junction in Jerusalem. As a result of the attack 19
41     people were killed:
42
43          1.   Baruch Gruani
44          2.   Raphael Berger
45          3.   Michal Biazi
46          4.   Boaz Aluf
47          5.   Alfo Orit Hayla
48          6.   Yelena Plagov
49          7.   Leah Baruch
50          8.   Shiri Negari
51          9.   Tatiana Braslavski
52          10.  Jezel (Gila) Nakav
53          11.  Liat Yagen
54          12.  Rahamim Zidkiyahu
55          13.  Shani Avi-Tzedek

[stamp:] Correct copy [signature] [stamp:] Military Appeals Court — Judea and Samaria
[stamp:] District officer, Netanya. 9338 [signature] [stamp:] 4584482. Major Elinor Barazani, District Officer, Netanya
L_C180930                                    -1-

## APOSTILLE
### (CONVENTION DE LA HAYE 5 DU OCTOBER 1961)

| | | | |
|---|---|---|---|
| 1. | STATE OF ISRAEL | | מדינת ישראל .1 |
| 2. | THIS PUBLIC DOCUMENT HAS BEEN SIGNED BY MR./MS | ברזני אלינור BARAZANI ELINOR | מסמך ציבורי זה נחתם בידי .2 מר/גב' |
| 3. | ACTING IN THE CAPACITY OF NATANIA CITY OFFICER FOR MILITARY MATTERS | | המכהן בתור  קצינת העיר .3 נתניה |
| 4. | BEARS THE SEAL/STAMP OF THE MINISTRY OF | צבא הגנת לישראל ISRAELI DEFFENCE | נושא את החותם/חותמת של .4 משרד |
| 5. | CERTIFIED AT THE MINISTRY OF FOREIGN AFFAIRS | | אושר במשרד החוץ .5 |
| 6. | THE | 22/9/2011 | ביום .6 |
| 7. | BY | לידר רחימוב LIDAR RAHIMA | על-ידי .7 |
| 8. | NO 526754. | CONSULAR BUREAU החטיבה הקונסולרית | מס' 526754 .8 |
| 9. | SEAL/STAMP | | חותם/חותמת .9 |
| 10. | SIGNATURE, JERUSALEM | | חתימה, ירושלים .10 |

Date: 24 Tammuz 5765                                                     Case no. 3807/02
July 31, 2005

1      14.  Galila Bugala
2      15.  Mendel Bereson
3      16.  Elena Ivan
4      17.  Iman Kabha
5      18.  Moshe Gottlieb
6      19.  Raisa Dikstein
7
8   Also, in the same criminal attack, fifty-seven people were wounded and much damage was done to property.
9
10  One's hands shake while reading the results of this attack, and the list of victims stands as a silent outcry at the
11  awful results of the defendant's deeds.
12  The learned Prosecutor has requested us to impose upon the defendant 19 consecutive sentences of life
13  imprisonment, a separate sentence for each life taken from us in the attack, and also an additional life sentence for
14  the additional crimes he committed. The Prosecutor argued before us that the defendant should be seen as a full
15  accomplice in the attack, owing to his actions without which the attack might never have been carried out. In the
16  record hereinabove it is indubitable that the defendant contributed to the attack no less than any other accomplice.
17
18  The defendant made various arguments before us, including arguments about the conduct of the trial and his
19  counsel's conduct. It was made clear to the defendant that these arguments are admissible in the appeal process to
20  which he is entitled by law. In any event, despite the explanations given to him about the legal process surrounding
21  him, the defendant did not see fit to argue anything in his defense, nor that we should grant him any leniency for
22  reasons of his own.
23  Given this situation, the task before us is clear and evident. Since the defendant participated in the taking of a life,
24  he has no place among human beings, and the law demands that he be kept apart from society permanently. This is
25  all the more true since we are dealing with nineteen lives. Therefore he must be dealt with "measure for measure,"
26  and for each life his exile from society must be permanent.
27  Therefore we impose on the defendant 19 sentences of life imprisonment to run consecutively. For the additional
28  crimes he committed we have nothing left but to impose a further sentence of life imprisonment, also to run
29  consecutively.
30
31  **Brig. General Shlomi Kochav, Presiding Judge:** I concur.
32
33  **Major Menachem Lieberman, Judge:** I concur.
34
35  In summation: we impose on the defendant 20 **sentences of life imprisonment** to run consecutively.
36
37
38  **Right to appeal within 30 days of today.**
39  **Handed down and published today, July 31, 2005, in open court and in the presence of the parties.**
40
41  [signature]          [signature]          [signature]
42  Judge                Presiding Judge              Judge
43
44
45
46

[stamp:] Correct copy
[signature] [stamp:]
Military Appeals Court — Judea and Samaria      [stamp:] District officer, Netanya. 9338
[signature] [stamp:] 4584482. Major Elinor Barazani, District Officer, Netanya

-2-

L_C180932

Date: July 31, 2005                                                                           Case no. 3807/02

1   **Military Court — Judea**
2
3   **Appearing Before Presiding Judge: Brig. General Shlomi Kochav**
4   **Judge: Major Menachem Lieberman**
5   **Judge: Captain Shlomo Katz**
6
7   **The Military Prosecution**
8
9                                                          vs.
10
11  **The Defendant: Fahmi Id Ramdan Meshahrah, ID no. 31530967/Prison Service - Present**
12  (Represented by counsel, Attorney Tawfiq Basoul)
13
14
15                                                       **Verdict**
16
17  **Judge Captain Shlomo Katz:**
18
19
20  The subject of this case is the regretful attack that occurred on "Egged" bus line 32a, near Patt Junction, where 19
21  people were killed and 57 others were injured.
22
23  The parties have agreed among themselves that there is no contest as to whether the attack took place, and they
24  submitted by agreement the evidence involving prosecution witnesses 5-6 (referred to by us respectfully as T/1 and
25  T/9). Further, the testimonies of prosecution witnesses 4, 7, and 8 were submitted by agreement, and noted by us
26  respectfully as T/17-T/19.
27  The other witnesses have been heard, among them the defendant.
28
29  **The Weight of Evidence**
30
31  The prosecution's assertion is correct, that since the testimony of prosecution witnesses 4-8 was presented by
32  agreement, there is no dispute about the admissibility of their testimony or about the veracity of its content. It will
33  suffice in this connection to mention the case Judea-Samaria 407/91, **Salah Hassan Mesrakeh vs. The Military**
34  **Prosecution.**
35  Moreover, the Military Appeals Court has set a precedent that in a case where contradictory evidence is presented
36  by agreement, the agreement applies to the content of the incriminating evidence, for if not so the learned defense
37  counsel would have reserved the right to assail this evidence by cross-examination or by any other means available
38  to him by law. In this connection see Judea-Samaria 114/01, **Mazen Machmad Id abu-Hil'al vs. The Military**
39  **Prosecution.**
40  **Confessions by the Defendant**
41
42  The defendant's confessions to the police were delivered to us by testimony of the police officer who recorded
43  them, AT/1, and by AT/2 who testified concerning the conditions under which the reconstruction report was
44  executed. These were cross-examined by the defense. When their testimony was concluded the confessions were
45  admitted, without objection from the defense. The testimony of these two policemen was credible to us. From the
46  testimony one may conclude that the statements [as recorded] reflect precisely what the defendant stated. The
47  statements were elicited in the ordinary course of events, without evidence of any exceptional occurrence or of
48  unlawful means exerted upon the defendant.
49

[stamp:] Correct copy
[signature] [stamp:]
Military Appeals Court — Judea and Samaria        [stamp:] District officer, Netanya. 9338
[signature] [stamp:] 4584482. Major Elinor Barazani, District Officer, Netanya

-1-

L_C180933

Date: July 31, 2005                                                                                          Case no. 3807/02

1   Since the out-of-courtroom confessions of the defendant have passed the test of credibility and been accepted by
2   us, it may be declared that these confessions were elicited without coercion. It may be added that in these
3   confessions the defendant implicated not only himself but also his brother Ramdan, and there are details which
4   indicate that the confession also passes the subjective test established by precedent, such that the confession is not
5   to be seen as an artificial attempt to incriminate oneself.
6   We find in the defendant's confessions mention of external, objective facts which integrate with the testimony of
7   the other prosecution witnesses, sufficient to satisfy us that these confessions pass the admissibility test and are
8   trustworthy. It will suffice to mention, in this context, the identification of the suicide bomber by means of a Cola
9   can and a biscuit, the method of carrying the explosive belt by the suicide bomber, the hours of meeting with the
10  suicide bomber, and the route of travel and methods of transport to the location of the attack taken by this evildoer.
11
12  It is proper to give attention here to a passage from the clear and thorough summations by the prosecutor, Legal
13  Officer Ruti Tzvi'el, which we see fit to adopt:
14
15  "The confession by the defendant (T/10), in which he sets forth the story of choosing a site for the attack and
16  transporting the suicide bomber, is coherent, logical, and detailed. The defendant describes his activities from the
17  moment he was recruited by his brother into military activities with Hamas, to carrying out a suicide attack, and his
18  plans with his brother after executing the attack. The defendant describes, in his confession, four preparatory
19  scouting trips which he carried out before choosing the location for the attack, which testifies to the development
20  of planning — at first the defendant only traveled by way of Gilo, then he spied the bus stop at the entry to Beit
21  Safafa as a suitable target; afterwards he took the bus that goes by this stop, and finally visited the place together
22  with his brother Ramdan and showed him the target point that he had found. It is evident that the defendant is
23  speaking from his own experience, and, if he only wished to claim as his own the responsibility for finding the
24  location for the attack, it is doubtful that he would [feel] called upon to give such a detailed description of his
25  search, step by step.
26
27  The defendant's confession is woven with many details that point to the motivation and the thought behind the
28  actions of the defendant and his brother Ramdan. For example, the defendant states that he saw to licensing and
29  insuring his automobile before using it in the execution of the attack (T/10, p. 1, lines 21-24). The defendant states
30  that when he scouted the first time in the Gilo area, he drove together with his wife and his daughter, in order to
31  reduce suspicion of him while scouting (ibid., p. 1, line 26, p. 2, line 2). The defendant states that the Beit Safafa
32  area was chosen because in that area are many Arab residents, which would reduce suspicion of the suicide bomber
33  (ibid., p. 1 lines 25-26; p. 2, lines 5-7). The defendant states that during the preparatory scout-out, when he traveled
34  on the bus, he purchased an "Egged" bus ticket and used one punch in it, so that when the suicide bomber traveled
35  [on the bus] he could use the ticket and so arouse less suspicion (ibid., p. 2 lines 16-20).
36  In the video tape recording of the reconstruction [of the crime] the defendant can be seen pointing out the route
37  through which he transported the suicide bomber to his destination, while he repeats the details of his written
38  confession. It can be seen clearly in the reconstruction that the defendant is giving the details willingly, after he has
39  been informed that he is not obligated to do so. It may be seen that the reconstruction [session] is conducted
40  quietly. The defendant is asked questions, and answers them freely. His manner of speech, his body language, and
41  the details of his confession all indicate that the confession is true. For example,

[stamp:] Correct copy
[signature] [stamp:]
Military Appeals Court — Judea and Samaria      [stamp:] District officer, Netanya. 9338
[signature] [stamp:] 4584482. Major Elinor Barazani, District Officer, Netanya

-2-

L_C180934

Date: July 31, 2005                                                           Case no. 3807/02

1   The defendant stated that the suicide bomber complained to him that the explosive belt was heavy and made it hard
2   for him to walk. It is evident that this information comes from a man who was present at the event, and would not
3   be likely to be imagined by a man who was fabricating his confession. At the end of the reconstruction, the
4   recording was played for the defendant and he confirmed [that] what he saw [was accurate]. The defendant was
5   asked whether he wished to add anything to his testimony or to correct it, and he answered in the negative.
6   In his confession the defendant implicated not only himself but also his brother Ramdan. This fact reduces the
7   chance that the defendant was seeking to claim as his own an act which he did not commit and so invented his
8   confession; for if he wished to do so, it is reasonable that he would not involve his brother in this false confession.
9
10  The External Test
11
12  The defendant's confession fits well with external evidence:
13
14      •   The defendant states that he identified the suicide bomber by the Cola can and a biscuit in his hand. This
15          [means of] identification matches the method used by AT/5 to identify the man who delivered to him the
16          explosive belt, and also the suicide bomber. This is also established by the testimony of AT/6, who is the
17          one who explained to AT/5 how the meeting would be arranged.
18      •   AT/5 told how the suicide bomber wore the explosive belt under his clothes. The defendant, too, indicated
19          in his testimony that the suicide bomber carried the explosive belt and that it was concealed under his
20          clothes.
21      •   AT/5 told in his testimony that he transported the bomber to Wadi Nar, where he saw the suicide bomber
22          getting into a black "Fiat Uno." The defendant, in his confessions, stated that he owns a black Fiat Uno
23          and that he picked up the suicide bomber, using this automobile, from Wadi Nar.
24      •   The testimonies of the defendant and of AT/5 also match concerning the approximate time when he
25          picked up the suicide bomber. AT/5 states that he awoke at 6:30 a.m. and immediately left his house in
26          Aida Refugee Camp (located south of Gilo), headed towards Wadi Nar. He also states that immediately
27          after he dropped off the bomber the Uno vehicle arrived. The defendant, too, states in his confession and
28          in his own handwriting that close to this time he picked up the suicide bomber.
29      •   AT/5 states that the terrorist waited for the defendant at Wadi Nar for a short while, after which the
30          defendant arrived. According to the defendant's testimony, too, the suicide bomber was waiting for him
31          before he arrived.
32      •   The defendant described how he dropped off the terrorist at Beit Safafa and instructed the suicide bomber
33          to get on the bus traveling in the direction of Patt Junction. The suicide bomber did, in fact, blow himself
34          up on a bus headed towards Patt Junction, immediately after getting on the bus at the stop adjacent to Beit
35          Safafa.
36      •   The attack was executed by means of an explosive belt which the suicide bomber was carrying."
37  In the light of all this, we find it proper to give full weight to the defendant's confessions to the police. Likewise
38  one must conclude that additional evidence exists outside of these confessions, sufficient to serve as the basis for
39  conviction.

[stamp:] Correct copy
[signature] [stamp:]
Military Appeals Court — Judea and Samaria      [stamp:] District officer, Netanya. 9338
[signature] [stamp:] 4584482. Major Elinor Barazani, District Officer, Netanya

-3-

L_C180935

Date: July 31, 2005                                                                     Case no. 3807/02

1   It is true that we were faced with a contradiction between the testimony of the defendant in court — in which he
2   argued that the questioners coerced him and threatened him into confessing — and his confessions to the police.
3   But in the present case, after weighing all the circumstances, we are obliged to prefer the version that he presented
4   to the police. The defendant's explanations before us concerning the contradictions in his testimony were laconic
5   and did not amount to enough to refute his confessions to the police. His testimony in court was not credible to us;
6   for example let us point to his unlikely story that he was able to describe the details of the attack by repeating what
7   he had heard of a conversation between Amal Elan and Halil Beraqeh when all three of them were under arrest in
8   police cells. But the testimony of Halil to the police was presented by agreement, and the defense did not even call
9   him to testify in support of the defendant's story that he was the source of the defendant's knowledge of the attack.
10  As a side note, let us point out that the defendant ought to have argued against his confessions being admitted as a
11  mini-trial (also called "trial within a trial") at the beginning of the judicial process. Since he did not do this, he is
12  not able to do it now, in the course of his testimony before us. Thus the defendant's arguments fail to fit both
13  procedural norms and substantial norms.
14
15
16  **Count no. 1 of the Indictment**
17
18  In accordance with this count the defendant was charged with membership in an illegal organization, the Izz ad-
19  Din al-Qassam Brigades. We find it proper to convict him of this charge in the light of the defendant's statements
20  in his confession and his handwritten statements (T/10 and T/11).
21
22  **Counts no. 2 to no. 10 of the Indictment**
23
24  In accordance with these counts of the indictment, the defendant is charged with deliberately causing the deaths of
25  the victims of the suicide attack of "Egged" bus line 32a, in that together with another he planned and executed the
26  said attack. According to the details of the indictment, the defendant carried out a number of scouting trips in
27  Jerusalem in order to locate a site for the planned attack. The defendant, according to the indictment, also
28  examined the targeted bus line, when the bus would fill with passengers from the Gilo neighborhood and when the
29  passengers would begin get off. On the day of the attack the defendant arrived in his vehicle and met the suicide
30  bomber, who carried on his body an explosive belt, and transported him by way of Jebel Mukaber and Sur Bahir to
31  Beit Safafa. The defendant dropped off the suicide bomber near the bus stop and gave him an "Egged" bus ticket.
32  The attack ended with 19 killed, many wounded, and great property damage. Study of the evidence before us
33  shows that the defendant details the acts ascribed to him in his confessions and the reconstruction: the details of the
34  planning and the transport of the suicide bomber (see T/10 and T/11). We also find support for this in the
35  testimony of AT/5 (T/9). Therefore we are satisfied as to the physical basis of the crime.
36  As for the required mental basis for [incrimination for] such crimes, we find the prosecution's assertion acceptable,
37  that carrying out scouting expeditions is sufficient evidence of the defendant's intent in his acts as described
38  hereinabove. The conclusion is logical and natural that the defendant did what he did in order to cause the death of
39  other people. It does not appear that any other consequence would be viewed by a man who scouts out potential
40  sites for an attack, and transports a suicide bomber, who is wearing an explosive belt, in the direction of a bus stop.
41  In accordance with this, the defendant is convicted of these counts.
42
43
44  **Count no. 21 of the Indictment**
45
46  In accordance with this count, the defendant was charged with the crime of attempting intentionally to cause the
47  death of others, in his attempt to cause the death of the 57 who were wounded in the said attack. The evidentiary
48  basis adduced in the charges listed above is sufficient to establish the defendant's guilt in this charge, and therefore
49  we convict him of this, too.

[stamp:] Correct copy
[signature] [stamp:]
Military Appeals Court — Judea and Samaria       [stamp:] District officer, Netanya. 9338
[signature] [stamp:] 4584482. Major Elinor Barazani, District Officer, Netanya

-4-

Date: July 31, 2005                                                                 Case no. 3807/02

**Count no. 22 of the Indictment**

In accordance with this charge, the defendant was charged with conspiracy to cause death intentionally, in that he conspired together with others to execute a suicide attack on a ship at Eilat by means of a booby-trapped video camera. In view of the lack of objective support for the defendant's statements, we do not find sufficient evidentiary basis for conviction, and therefore we acquit the defendant.

**Brig. General Shlomi Kochav, Presiding Judge**: I concur.

**Major Menachem Lieberman, Judge**: I concur.

**Handed down and published today, July 31, 2005, in open court.**

[signature]              [signature]              [signature]
**Judge**                   **Presiding Judge**         **Judge**

[stamp:] Correct copy
[signature] [stamp:]
Military Appeals Court — Judea and Samaria      [stamp:] District officer, Netanya. 9338
[signature] [stamp:] 4584482. Major Elinor Barazani, District Officer, Netanya

-5-

L_C180937