UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TZVI WEISS, et al.,

                Plaintiffs,

    - against -

NATIONAL WESTMINSTER BANK PLC,

                Defendant.
-----------------------------------------------------------------X
NATAN APPLEBAUM, et al.,

                Plaintiffs,

    - against -

NATIONAL WESTMINSTER BANK PLC,

                Defendant.
-----------------------------------------------------------------X

Case No. 05-CV-4622 (DLI) (RML)

Case No. 07-CV-916 (DLI) (RML)

**Oral Argument Requested**

## REPLY MEMORANDUM OF LAW OF DEFENDANT NATIONAL WESTMINSTER BANK PLC IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant
National Westminster Bank Plc

February 24, 2017

# **TABLE OF CONTENTS**

                                                                                                               **Page**

TABLE OF AUTHORITIES............................................................................................ii

I.      NO REASONABLE JUROR COULD FIND THAT PLAINTIFFS HAVE PROVEN THE PROXIMATE CAUSATION ELEMENT OF THEIR CLAIMS............................. 1

II.     NO REASONABLE JUROR COULD FIND THAT PLAINTIFFS HAVE PROVEN THAT HAMAS PERPETRATED THE ATTACKS AT ISSUE ...................................... 5

        A.     Shaked's and Kohlmann's Proposed Testimony Is Inadmissible........................... 5

        B.     The Documents And Other Evidence On Which Plaintiffs And Their Purported Experts Rely Are Inadmissible ............................................................................. 6

        C.     Plaintiffs Are Collaterally Estopped From Claiming That Hamas Perpetrated The January 29, 2004 And September 24, 2004 Attacks...................................... 10

CONCLUSION............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Rules and Statutes**

Fed. R. Civ. P. 44 .............................................................................................. 10

Fed. R. Evid. 803(8)(A)(iii) ................................................................................ 9

Fed. R. Evid. 803(22)(C) .................................................................................... 5

**Cases**

*Almog v. Arab Bank, PLC,*
471 F. Supp. 2d 257 (E.D.N.Y. 2007) .............................................................. 7

*Austin v. Fischer,*
453 F. App'x 80 (2d Cir. 2011) ....................................................................... 10

*Boguslavsky v. Kaplan,*
159 F. 3d 715 (2d Cir. 1998) ........................................................................... 10

*Gelb v. Royal Globe Ins. Co.,*
798 F. 2d 38 (2d Cir. 1986) ............................................................................. 10

*Gill v. Arab Bank, PLC,*
893 F. Supp. 2d 542 (E.D.N.Y. 2012) ........................................................... 7, 8

*Hullaby v. State,*
911 S.W.2d 921 (Tex. Ct. App. 1995) .............................................................. 9

*In re Sept. 11 Litig.,*
621 F. Supp. 2d 131 (S.D.N.Y. 2009) ............................................................... 7

*In re Terrorist Attacks on Sept. 11, 2001,*
714 F.3d 118 (2d Cir. 2013) ................................................................. 1, 2, 3, 4

*Lakah v. UBS AG,*
2014 WL 5475294 (S.D.N.Y. Oct. 30, 2014) .................................................. 10

*Linde v. Arab Bank,*
97 F. Supp. 3d 287 (E.D.N.Y. 2015) ................................................................. 5


|  | Page(s) |
|---|---|
| *Linde v. Arab Bank*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005) | 5 |
| *Paone v. Broadcom Corp.*, 2015 WL 4988279 (E.D.N.Y. Aug. 19, 2015) | 10 |
| *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) | 1 |
| *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) | *passim* |
| *United States v. Angleton*, 269 F. Supp. 2d 878 (S.D. Tex. 2003) | 8 |
| *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011) | 5 |
| *United States v. Hinkson*, 611 F.3d 1098 (9th Cir. 2010) | 9 |
| *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) | 5 |
| *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006) | 2, 5 |

**Other Authorities**

| | |
|---|---|
| 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 804.05 (Joseph M. McLaughlin ed., 2d ed. 2016) | 8 |
| U.S. Dep't of Treasury, *Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008), https://www.treasury.gov/press-center/press-releases/Pages/hp1043.aspx | 4 |

NatWest respectfully submits this reply memorandum of law in support of its renewed motion for summary judgment.[1]

## I. NO REASONABLE JUROR COULD FIND THAT PLAINTIFFS HAVE PROVEN THE PROXIMATE CAUSATION ELEMENT OF THEIR CLAIMS

NatWest demonstrated in its opening brief that the standard for proving proximate causation in these cases depends on whether plaintiffs allege that NatWest provided funds "<u>directly</u> to" Hamas, the FTO that allegedly perpetrated the attacks at issue, or that NatWest transferred funds to an entity that was <u>not</u> Hamas, in which event plaintiffs must prove that those funds "<u>actually [were] transferred</u> [by that entity] to [Hamas] and <u>aided</u> in the" attacks at issue, which the case law treats as a form of <u>indirect</u> causation. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013) ("*Al Rajhi*") (emphasis added); *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013); NW Supp. SJ Br. at 2-6.[2] Plaintiffs' opposition brief is conspicuously silent on this point; it never acknowledges the differing standards,[3] and instead misleadingly conflates elements of each standard to disguise plaintiffs' inability to meet either.

Plaintiffs have already conceded that they are alleging <u>solely</u> that NatWest provided funds <u>directly</u> to Hamas, and cannot satisfy the test for <u>indirect</u> causation because there is no evidence that the funds NatWest transferred to the 13 Charities were actually transferred onward to Hamas and aided in the attacks. NW Supp. SJ Br. at 10 (citing NW 56.1 St. ¶¶ 248-274; NW

---

[1] All capitalized terms not defined in this reply brief have the same meaning as in NatWest's initial brief ("NW Supp. SJ Br."). Plaintiffs' opposition is cited as "Opp. Br."

[2] Contrary to plaintiffs' assertion, NatWest does not contend that *Al Rajhi* changed the causation standard, Opp. Br. at 2; rather, *Al Rajhi* confirmed that *Rothstein*—which this Court, before *Al Rajhi* was decided, interpreted as being limited to suits alleging transfers to state sponsors of terrorism, *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 433 (E.D.N.Y. 2013)—in fact applies to cases, including these lawsuits against NatWest, which involve transfers to an entity other than an FTO (including an entity that may be affiliated or associated with the FTO) that allegedly perpetrated a terror attack. *See Al Rajhi*, 714 F.3d at 123.

[3] In an attempt to muddy the waters, plaintiffs cite a non-binding district court opinion discussing the <u>scienter</u> element of the ATA as an articulation of the proximate causation standard, rather than *Rothstein* or *Al Rajhi*, which make plain that the direct/indirect distinction is material. *See* Opp. Br. at 3.

Supp. 56.1 ¶ 5); *Al Rajhi*, 714 F.3d at 124.[4] But plaintiffs' claim of <u>direct</u> transfer to Hamas rests solely on their argument that the 13 Charities are the same as Hamas, rather than Hamas's affiliates, co-conspirators, fundraisers or supporters. Thus, the question for the Court to address is whether a reasonable juror could find that plaintiffs can prove that NatWest transferred funds directly to Hamas because the 13 Charities are legally the same as Hamas. Because no reasonable juror could find that the 13 Charities <u>are</u> Hamas, plaintiffs cannot prove the proximate causation element of their ATA claims, and NatWest is entitled to summary judgment.

<u>As a matter of law</u>, plaintiffs do not attempt to satisfy any identifiable legal test, such as Judge Sifton's agency test, *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 623 (E.D.N.Y. 2006), or an <u>alter ego</u> test, to establish that the 13 Charities <u>are</u> Hamas. Indeed, plaintiffs completely ignore *Al Rajhi*'s holding that the types of evidence on which plaintiffs rely are insufficient to establish that the 13 Charities <u>are</u> Hamas. Specifically, in *Al Rajhi*, the Second Circuit ruled that transfers to a charity alleged to be a "front" that provided al Qaeda with recruits, weapons and money, and employment to al Qaeda operatives, were not <u>direct</u> transfers to al Qaeda. NW Supp. SJ Br. at 2-6. Plaintiffs' attempt to distinguish *Al Rajhi* on the basis that the plaintiffs there made only "conclusory allegations," Opp. Br. at 2, 4, is misguided. *Al Rajhi* is clear: allegations that the defendants there "provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to al Qaeda . . . are insufficient for proximate causation purposes." 714 F.3d at 124. *Al Rajhi* refers to certain allegations as conclusory only with respect to the <u>indirect</u> causation standard, which plaintiffs do not purport to meet here. *See id.* ("[N]or are there factual allegations that the money allegedly

---

[4] Plaintiffs take issue with NatWest's use of the phrase "actually used to perpetrate" rather than "actually transferred to [Hamas] <u>and</u> aided in the [attack]" in stating the test for indirect causation. Opp Br. at 4-5. That is immaterial, because plaintiffs do not attempt to satisfy the indirect causation standard. *See* NW 56.1 St. ¶¶ 323-329 (plaintiffs' experts offer no opinions concerning transfers between the 13 Charities and Hamas).

2

donated by . . . defendants to the purported charities actually was transferred to al Qaeda and aided in the . . . attacks").[5]

As a matter of fact, the paltry evidence plaintiffs offer is legally inadequate to support their conclusory assertion that NatWest transferred funds to "counter-parties controlled by Hamas." Opp. Br. at 6. First, the core of plaintiffs' proof consists of the flawed reports of Messrs. Levitt and Spitzen, which plaintiffs mischaracterize as confirming that the 13 Charities were "controlled by Hamas." *Id.* at 7. That ignores NatWest's showing that Levitt offers no such opinion, but rather opines only that the 13 Charities fall somewhere on a broad spectrum of support for Hamas; he does not even purport to show that the 13 Charities are the same as Hamas, as required by *Al Rajhi*'s direct causation test. NW Supp. SJ Br. at 9. Spitzen's report fares no better. *See id.* at 8. Indeed, plaintiffs ignore the critical fact that the same factors on which their experts rely to claim that the 13 Charities are affiliated with Hamas were rejected by the *Al Rajhi* court as inadequate to show that a transfer to an al Qaeda "front" was a direct transfer to al Qaeda. *See id.* at 6-8 & 6 n.5 (listing, among other allegations, that the charities in *Al Rajhi* recruited for al Qaeda, provided "financial and logistical support" to al Qaeda and employed "senior al Qaeda operatives").

Second, plaintiffs misstate that "multiple governments" have found that the 13 Charities were part of Hamas. Opp. Br. at 7. That is false. When the U.S. government finds that entities are part of an FTO, the Secretary of State designates them as aliases of that FTO. *See* NW Supp. SJ Br. at 6 n.4. But the U.S. government has never designated any of the 13 Charities as aliases of Hamas. Instead, plaintiffs rely on a purported FBI memorandum largely consisting of

---

[5] Plaintiffs also attempt to distinguish *Al Rajhi* by suggesting it involved conclusory allegations of scienter. Opp. Br. at 5-6. But scienter is a separate element of plaintiffs' claims, and the Second Circuit assumed the scienter element of the plaintiffs' claims was satisfied, *see Al Rajhi*, 714 F.3d at 124 ("[D]efendants are alleged to have provided funding to purported charity organization known to support terrorism that, in turn, provided funding to al Qaeda . . . . [T]hese allegations are insufficient for proximate causation purposes . . . ." (emphasis added)).

3

unverified hearsay statements allegedly attributed to individuals within the Israeli government, which at most shows that the 13 Charities are Hamas fundraisers. Even if that were true, *Al Rajhi* confirms that fundraising for Hamas is insufficient to demonstrate that the 13 Charities <u>are</u> Hamas. 714 F.3d at 124. *See* NW 56.1 St. ¶¶ 345-348, 413-414. And contrary to plaintiffs' claims, there is no evidence that the governments of Germany or Israel ever determined that any of the 13 Charities were legally equivalent to Hamas during the relevant period.

<u>Third</u>, plaintiffs rely on the U.S. Treasury's findings in its SDGT designation of Interpal that Interpal was a Hamas fundraiser. Opp. Br. at 6-7. But they conspicuously omit *Al Rajhi*'s confirmation that an entity's status as a fundraiser for an FTO does not establish that the entity <u>is</u> the FTO, and that the U.S. Treasury made a similar finding in designating Al Rajhi Bank's customer Al Haramain as an SDGT.[6] Because *Al Rajhi* confirms it is not enough to show that NatWest "provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to" Hamas, 714 F.3d at 124, Interpal's SDGT designation evidences only that NatWest provided banking services to a Hamas fundraiser, like the defendant in *Al Rajhi*, and not that NatWest dealt <u>directly</u> with Hamas, as plaintiffs must prove.

<u>Fourth</u>, plaintiffs' reliance on the Holy Land Foundation verdict is misplaced. *See* Opp. Br. at 7. Plaintiffs cannot rely on evidence presented in another case (and not this case) to defeat summary judgment here. Also, the verdict is inapposite because it occurred in a <u>criminal</u> case in which proximate causation was <u>not</u> at issue, and the jury was instructed it could convict the

---

[6] Thirteen branch offices of Al Haramain were designated as SDGTs between 2002 and 2004, and the entire organization was so designated in 2008. *See, e.g.*, U.S. Dep't of Treasury, *Treasury Designates Al Haramain Islamic Foundation* (June 19, 2008), https://www.treasury.gov/press-center/press-releases/Pages/hp1043.aspx. Contrary to plaintiffs' contention that Al Haramain was only designated as an SDGT after Al Rajhi Bank ceased providing it with services, Opp. Br. at 4, the plaintiffs in *Al Rajhi* alleged in a 2003 filing that "Al Rajhi continues to maintain Al Haramain's accounts despite Al Haramain's designation on March 11, 2002 as [a] terrorist organization[] . . . for its diversion of 'charitable funds' to al Qaeda and international terrorism prior to September 11, through its Somalia and Bosnia-Herzegovina branches." Pls.' Resp. to Al Rajhi Bank's Rule 12(e) Req. to Pls. ¶ 44, *Burnett v. Al Baraka Inv. & Dev. Corp.*, No. 1:02CV01616(JR) (D.D.C. Aug, 27, 2003), ECF No. 266.

4

defendants for the <u>attempted</u> provision of material support to Hamas, which did not require proof that the charities <u>are</u> Hamas. *See United States v. El-Mezain*, 664 F.3d 467, 527-31 (5th Cir. 2011).[7]

<u>Finally</u>, plaintiffs invoke recent amendments to the ATA, in the Justice Against Sponsors of Terrorism Act ("JASTA"), again to muddy the waters with respect to the ATA's proximate causation requirement. Opp. Br. at 3, 8-9. JASTA creates a secondary liability claim under the civil provision of the ATA in certain cases, but is irrelevant here because Judge Sifton ruled that plaintiffs failed to plead a secondary liability claim, assuming that such a claim could be pleaded, *Weiss*, 453 F. Supp. 2d at 621. That ruling is law of the case.

Accordingly, the Court should grant NatWest summary judgment because there is no triable issue of fact that the 13 Charities <u>are</u> Hamas.[8]

## II. NO REASONABLE JUROR COULD FIND THAT PLAINTIFFS HAVE PROVEN THAT HAMAS PERPETRATED THE ATTACKS AT ISSUE

### A. Shaked's and Kohlmann's Proposed Testimony Is Inadmissible

In *Strauss*, this Court ruled that the substance of Ronni Shaked's and Evan Kohlmann's opinions that Hamas perpetrated the attacks at issue is inadmissible because "attribution testimony cannot be used as an excuse to introduce and summarize straightforward factual evidence that has not been admitted . . . ." 925 F. Supp. 2d at 444-46; *see also United States v. Mejia*, 545 F.3d 179, 195 (2d Cir. 2008). Nonetheless, plaintiffs here attempt to prove that Hamas perpetrated these attacks by relying on precisely the same inadmissible expert testimony,

---

[7] Moreover, any evidence of Hamas control drawn from the Holy Land Foundation trial is inadmissible hearsay because it was not "admitted to prove any fact essential to the judgment." *See* Fed. R. Evid. 803(22)(C). The *Linde v. Arab Bank* opinions on which plaintiffs rely, 97 F. Supp. 3d 287 (E.D.N.Y. 2015); 384 F. Supp. 2d 571 (E.D.N.Y. 2005), Opp. Br. at 7, are not binding on this Court, fail to consider *Al Rajhi*, and are subject to a pending appeal. Indeed, *Arab Bank*'s reference to plaintiffs' proffer concerning the 13 Charities as evidencing their "Hamas affiliations," 97 F. Supp. 3d at 335, says nothing about whether the 13 Charities <u>are</u> Hamas.

[8] Plaintiffs did not respond to NatWest's showing that Section 2339C of the ATA cannot be applied retroactively, and thus plaintiffs may not assert Section 2339C claims that arose before Section 2339C was enacted. NW Supp. SJ Br. at 25.

consisting of Shaked's and Kohlmann's summaries of inadmissible hearsay, and their opinions that, based on this hearsay, Hamas perpetrated the attacks. *See* Opp. Br. at 15-23. Plaintiffs disingenuously claim that *Strauss* permits Shaked to offer attribution testimony with "a proper evidentiary foundation," Opp. Br. at 22, but *Strauss* cites Shaked's failure to provide such a "proper foundation" as the reason for excluding his attribution opinions, not as a loophole for offering the same testimony here. 925 F. Supp. 2d at 445-46.

### B. The Documents And Other Evidence On Which Plaintiffs And Their Purported Experts Rely Are Inadmissible[9]

Military Court Convictions. As CL has shown in its renewed motion for partial reconsideration in *Strauss*,[10] the Israeli military court convictions on which plaintiffs rely for 14 of the attacks are inadmissible, because plaintiffs have not proven that the proceedings that produced those convictions complied with due process. To the contrary, plaintiffs' own expert testified that Israeli military courts during the relevant period did not comply with due process in practice. NW Supp. 56.1 ¶ 63.[11] Plaintiffs do not contest that CL's showing applies equally here, where the record concerning these military court convictions is the same as in *Strauss*.

Hamas Claims of Responsibility. *Strauss* holds that claims of responsibility posted on websites allegedly affiliated with Hamas and on which plaintiffs' purported experts rely, Opp. Br. at 15-19; NW Supp. 56.1 ¶¶ 54-61, 89, 93-94, 97, are inadmissible hearsay because terrorists

---

[9] Plaintiffs do not challenge NatWest's showing that none of the fact witnesses plaintiffs identified to testify at trial has any personal knowledge about who perpetrated any attacks. Pls.' Resp. to NW's Supp. 56.1 St. ¶¶ 98-104. *See* NW Supp. SJ Br. at 12 n.11.

[10] *See Strauss v. Credit Lyonnais, S.A.*, No. 06-Civ-702(DLI)(RML), ECF No. 422 at 4-16, ECF No. 425 at 1-4.

[11] The Court should also reject plaintiffs' untimely attempt to rely on a military court conviction—which plaintiffs now cite for the first time, nearly five years after they opposed NatWest's first summary judgment motion—that allegedly followed an Israeli military court indictment that plaintiffs seek to rely on as evidence that Hamas committed the March 7, 2003 attack. *See* Opp. Br. at 10 n.12. Moreover, plaintiffs' submission is incomplete—the document they present omits the first page of the purported conviction. Schlanger Decl. Ex. 19. Finally, contrary to plaintiffs' suggestion, *see* Opp. Br. at 10 n.12, NatWest did not concede the existence of this conviction, and at most acknowledged that Shaked purported to rely on a military court conviction in relation to this attack, *see* NW 56.1 St. ¶ 619.

6

are incentivized to claim responsibility for acts they did not commit and have done so in the past, and thus these claims are not statements against interest under FRE 804(b)(3). *Strauss*, 925 F. Supp. 2d at 449; *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012).[12] That ruling disposed of plaintiffs' claims arising from the September 24, 2004 attack, as to which the Court found that plaintiffs' attribution evidence—Hamas claims of responsibility and a videotape—is inadmissible. *Id.* at 449-50.

For the same reasons, *Strauss* also bars plaintiffs from relying on video "wills" and confessions of purported Hamas suicide bombers.[13] In *Strauss*, plaintiffs relied on video "wills," Israeli court documents and government records, and Hamas claims of responsibility, but the Court held that plaintiffs' claims could proceed based solely on "judgments in Israeli courts assigning responsibility to Hamas or its operatives, official Israeli government investigative reports concluding that Hamas or its operatives were responsible for the attack and/or Shaked's own eye-witness accounts." 925 F. Supp. 2d at 447. Thus, the Court distinguished these three types of evidence, which the Court deemed admissible, from video "wills" and confessions, which the Court found to be inadmissible. *Id.* at 446-47.[14]

---

[12] *Strauss* does not qualify its holding as applying only to "certain terrorist attacks" or requiring an assessment of "circumstantial evidence," as plaintiffs now suggest, Opp. Br. at 16-21. Moreover, plaintiffs' absurd new argument that Hamas claims of responsibility are admissible as business records is baseless. No proper business records foundation has been laid, and even if it were, FRE 803(6)(E) allows business records to be admitted only if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." The Court squarely ruled in *Strauss*, however, that Hamas claims of responsibility are unreliable due to the "perverse" incentives of terrorists to falsely claim responsibility for attacks. 925 F. Supp. 2d at 449.

[13] Plaintiffs' misguided argument that *Strauss*'s rationale "does not apply to an individual suicide terrorist" but rather only to organizations, Opp. Br. at 16 n.21, ignores that *Strauss* made no such distinction, and that families of Hamas "martyrs" often receive payments that create incentives for individuals to claim responsibility. *See, e.g., Almog v. Arab Bank, PLC*, 471 F. Supp. 2d 257, 291 (E.D.N.Y. 2007).

[14] Such hearsay evidence is also inadmissible under FRE 803(3) because the "perverse" incentives of terrorists undermine its probativeness "of the declarant's then-existing state of mind." *See Gill*, 893 F. Supp. 2d at 569; *In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 160 (S.D.N.Y. 2009). The case law on which plaintiffs rely is inapposite because none of it addresses the application of FRE 803(3) in situations where the declarant had an incentive to make the statement. *See* Opp. Br. at 15-17. For the same reasons, plaintiffs cannot apply to suicide bombers, who plainly intend to die, the rationale of FRE 804(b)(2) for statements made under belief of impending death that "men

7

Finally, the Court should reject plaintiffs' assertion that Shaked's and Kohlmann's testimony, which the Court excluded in *Strauss*, provides a basis for the Court to reconsider its decision to exclude Hamas claims of responsibility. *See* Opp. Br. at 15-21.[15] The claims here are no different from the claims excluded in *Strauss*: they are not statements against interest because "Hamas actively seeks publicity for its claims of responsibility for attacks against Israelis as part of its propaganda." 925 F. Supp. 2d at 449; *see also Gill*, 893 F. Supp. 2d at 569. Plaintiffs' repetition of their prior attempts to bolster the veracity of Hamas's claims does not change the fact that they are inadmissible hearsay.[16]

<u>Israeli Government Reports</u>. The portions of the annual survey reports on which plaintiffs rely are inadmissible under *Strauss*. *See* 925 F. Supp. 2d at 448-49. For each of the attacks, these documents simply recite conclusory statements about the identity and actions of the alleged perpetrators without citing to any investigative steps that were taken or evidence that was gathered. Likewise, the "uncertain provenance" of the reports' statements also render them

---

are not apt to lie in the shadow of death," 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 804.05 (Joseph M. McLaughlin ed., 2d ed. 2016) (citations omitted). *See United States v. Angleton*, 269 F. Supp. 2d 878, 885 (S.D. Tex. 2003) ("The aspect of control involved in an intended death clearly diminishes the spontaneity that is a critical part of the dying declaration exception."). Also, in granting summary judgment in *Strauss* with respect to the September 24, 2004 attack, the Court ruled inadmissible a video purportedly related to that attack because it was made by "an unidentified third party, allegedly affiliated with Hamas," and plaintiffs had not provided "any admissible evidence establishing when the video was filmed." *Strauss*, 925 F. Supp. 2d at 450. These same infirmities apply to the video "wills" at issue here. Muhammed Farhat's video "will" contains no details about the attack whatsoever, and merely makes vague pronouncements about seeking revenge. Pls.' Resp. to NW's Supp. 56.1 St. ¶¶ 138–141.

[15] Plaintiffs' critique of the opinion offered by NatWest's expert, Brian Michael Jenkins, a leading terrorism expert, is misguided in several respects. Opp. Br. at 18-19. First, *Strauss* does not rely on Jenkins's opinion; rather, it relies on <u>plaintiffs'</u> experts to show that Hamas claims of responsibility are inadmissible. 925 F. Supp. 2d at 449. Second, plaintiffs argue that none of Jenkins's examples of false Hamas claims were made "via an official communiqué published on one of its websites," as opposed to utilizing other channels, but that is a distinction without a difference. Opp. Br. at 19.

[16] NatWest has demonstrated that, at a minimum, the Court should grant summary judgment to NatWest with respect to claims arising from the September 24, 2004 and March 7, 2002 attacks because, apart from inadmissible claims of responsibility, plaintiffs offer no evidence showing that Hamas perpetrated these attacks. NW Supp. SJ Br. at 21.

8

inadmissible.[17] Plaintiffs attempt to dismiss NatWest's showing as "quibbles" that "do not satisfy NatWest's burden," Opp. Br. at 14, but it is plaintiffs who bear the burden of proving that the reports contains "factual findings from a legally authorized investigation," and they have not done so. Fed. R. Evid. 803(8)(A)(iii).[18] Moreover, NatWest has demonstrated the inadmissibility of the purported ISA report from 2005 on which Shaked relies for the SoL Attacks, *see* NW Supp. SJ Br. at 19-20, as this document bears no marking indicating it is an official ISA source.

Shaked's Fact Testimony.[19] Contrary to plaintiffs' assertions, Opp. Br. at 22–23, Shaked cannot present non-verbal hearsay under the guise of eyewitness testimony concerning the October 22, 2003 attack. Evidence of an individual's attire, where that attire is relied upon as an assertion, constitutes inadmissible hearsay. *See, e.g., Hullaby v. State*, 911 S.W.2d 921, 931 (Tex. Ct. App. 1995); *see also United States v. Hinkson*, 611 F.3d 1098, 1113 (9th Cir. 2010). Plaintiffs attempt to distinguish *Hullaby* on the grounds that it involved expert testimony "regarding which gangs various witnesses identified or 'claimed' as their own" and therefore involved evidence "affirmatively presented as assertive conduct." Opp. Br. at 23. But that is precisely what plaintiffs are presenting here: they argue that Hamas terrorists wear green

---

[17] The additional cases plaintiffs cite in support of their argument that the ISA reports are admissible as public records under FRE 803(8)(A)(ii), Opp. Br. at 13, are inapposite because none involved questions or concerns about the provenance and trustworthiness of the documents at issue.

[18] The other purported Israeli government sources on which plaintiffs attempt to rely for three of the attacks simply repeat inadmissible claims of responsibility, Opp. Br. at 13, and therefore are also inadmissible hearsay (or inadmissible hearsay within hearsay) under *Strauss*. 925 F. Supp. 2d at 449 & n.22. The Israeli government's purported "findings" in these sources are no more than conclusory statements about the alleged perpetrators of the attacks and do not detail any investigative steps that were taken to determine responsibility for the attacks. In addition, certain of these sources are also inadmissible on other, independent grounds: Schlanger Decl. Ex. 5 does not include a certified translation, and Schlanger Decl. Ex. 24 bears no official ISA logo or other marking indicating it is an "official ISA announcement," as plaintiffs claim.

[19] Plaintiffs' attempt to rely on Shaked's statements concerning arrests, convictions and confessions to show Hamas perpetrated the October 22, 2003 attack, Opp. Br. at 22, is unavailing because *Strauss* precludes Shaked from offering such testimony. 925 F. Supp. 2d at 446. Further, plaintiffs' reliance on a purported prior conviction of Aqanibi is an improper attempt to belatedly supplement the summary judgment record.

9

bandanas that are sufficient to assert their affiliation with Hamas. *Id.* at 23 n.28.[20]

### C. Plaintiffs Are Collaterally Estopped From Claiming That Hamas Perpetrated The January 29, 2004 And September 24, 2004 Attacks

Plaintiffs are collaterally estopped from re-litigating Hamas's responsibility for the January 29, 2004 and September 24, 2004 attacks because the *Arab Bank* court and this Court both ruled that plaintiffs failed to proffer sufficient evidence that Hamas committed these attacks. NW Supp. SJ Br. at 21 n.19, 24. It would be a waste of judicial resources to require that NatWest (and CL) re-litigate the same issue, against the same plaintiffs, where that issue has already been fully and fairly litigated and the court's resolution of that matter was final. *Boguslavsky v. Kaplan*, 159 F. 3d 715, 719-20 (2d Cir. 1998); *see also* NW Supp. SJ Br. at 24-25. Contrary to plaintiffs' assertion, NatWest need not have pled collateral estoppel in its July 1, 2016 answer[21] because plaintiffs had ample notice that they were collaterally estopped and an opportunity to respond.[22] In addition, irrespective of plaintiffs' motion for reconsideration in *Arab Bank*, Opp. Br. at 24, Judge Cogan's ruling is final for collateral estoppel purposes because there is "no really good reason for permitting [the issue] to be litigated again." *Paone v. Broadcom Corp.*, 2015 WL 4988279, at *10-11 (E.D.N.Y. Aug. 19, 2015).[23]

### CONCLUSION

The Court should grant NatWest summary judgment.

---

[20] NatWest demonstrated that plaintiffs' authentication expert, Shaul Naim, is not qualified to offer an authenticity opinion under FRE 702 and satisfies none of the tests for authentication under FRE 901 or 902, or Fed. R. Civ. P. 44. NW SJ Br. at 22-23. Plaintiffs do not contest this showing.

[21] *See e.g., Lakah v. UBS AG*, 2014 WL 5475294 (S.D.N.Y. Oct. 30, 2014). Further, the July 1, 2016 answer was only filed at that time because plaintiffs sought to amend their complaint, and NatWest consented.

[22] *See Austin v. Fischer*, 453 F. App'x 80, 82 (2d Cir. 2011) (while collateral estoppel "normally must be pled in a timely manner" the purpose "is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate") (citation omitted) (emphasis added).

[23] Plaintiffs rely on irrelevant case law for the proposition that filing a motion for reconsideration somehow affects the finality of Judge Cogan's decision for collateral estoppel purposes. One authority holds that collateral estoppel applies to issues "carefully considered in the first proceeding." *Gelb v. Royal Globe Ins. Co.*, 798 F. 2d 38, 45 (2d Cir. 1986). The issue of Hamas responsibility was carefully considered by Judge Cogan in *Arab Bank*.

Dated: New York, New York
       February 24, 2017

                Respectfully submitted,

                CLEARY GOTTLIEB STEEN & HAMILTON LLP

                By: _____
                      Lawrence B. Friedman, A Member of the Firm

                One Liberty Plaza
                New York, New York 10006
                (212) 225-2000

                Attorneys for Defendant
                National Westminster Bank Plc