UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
TZIV WEISS, et al.,                             :
                                                :
                            Plaintiffs,         :
                                                :          **OPINION AND ORDER**
                                                :          05-CV-4622 (DLI) (RML)
              -against-                          :
                                                :
                                                :
NATIONAL WESTMINSTER BANK PLC,                  :
                                                :
                            Defendant.          :
                                                :
-------------------------------------------------------- x
NATAN APPLEBAUM, et al.,                        :
                                                :
                            Plaintiffs,         :
                                                :          07-cv-916 (DLI) (RML)
                                                :
              -against-                          :
                                                :
                                                :
NATIONAL WESTMINSTER BANK PLC,                  :
                                                :
                            Defendant.          :
                                                :
-------------------------------------------------------- x

**DORA L. IRIZARRY, Chief United States District Judge:**

Approximately 200 individuals and estates of deceased persons (collectively, "Plaintiffs"),

brought this consolidated action against defendant National Westminster Bank Plc ("NatWest" or

"Defendant"), seeking to recover damages from terrorist attacks in Israel and the Palestine

Territories pursuant to the civil liability provision of the Antiterrorism Act of 1992 ("ATA"), 18

U.S.C. § 2333(a) ("Section 2333(a)").

On December 7, 2011, Defendant moved for summary judgment pursuant to Rule 56 of

the Federal Rules of Civil Procedure (*Weiss* Dkt. Entry No. 264),[1] which Plaintiffs opposed (*Weiss*

---

[1]     Citations to the "*Weiss* Docket" are to docket 05-CV-4622.  Citations to the "*Applebaum* Docket" are to

Dkt. Entry No. 271).  Defendant moved on three grounds, the first of which was that no reasonable jury could find that Defendant acted with the requisite scienter under the ATA.  On March 28, 2013, the Court granted Defendant's motion, reaching only the scienter element.  (*See* Opinion & Order, *Weiss* Dkt. Entry No. 310.)[2]

On September 22, 2014, the Second Circuit reversed the Court's grant of summary judgment to Defendant and remanded the case "for further proceedings, including consideration of NatWest's other asserted grounds for summary judgment."  *Weiss v. Nat' Westminster Bank Plc,* 768 F.3d 202, 212 (2d Cir. 2014).

On June 17, 2016, Plaintiffs amended their complaint, adding claims arising from three additional attacks, the Ben Yehuda Street Bombings on December 1, 2001, the Part Junction Bus #32A Bombing on June 18, 2002, and the March 7, 2002 suicide attack on Atzmona (collectively, the "SoL Attacks").  (*See* Amended Complaint "Am. Compl.," *Weiss* Dkt. Entry No. 345 and Amended Complaint "Applebaum Am. Compl.," *Applebaum* Dkt. Entry No. 218.)

On August 2 and 12, 2016, the Court granted Defendant permission to file this renewed motion for summary judgment with respect to the ATA elements that the Court did not reach in its March 28, 2013 Opinion & Order, as well as Defendant's motion for summary judgment with respect to Plaintiffs' claims based on the SoL Attacks.

On February 24, 2017, pursuant to the Court's bundle rule, Defendant filed this motion for summary judgment (*See* Motion for Summary Judgment, "Mot.," *Weiss* Dkt. Entry No. 358), Plaintiffs opposed (*See* Memorandum in Opposition, "Opp.," *Weiss* Dkt. Entry No. 362), and Defendant replied (*See* Reply in Support re Motion for Summary Judgment, "Reply," *Weiss* Dkt.

---

docket 07-CV-916.  Where documents have been filed on both dockets, the Court cites to the *Weiss* Docket only, as the lead case.
[2]     This Order is written for the parties and familiarity with the underlying facts and circumstances of this action is assumed.  For a full recitation of the facts, see the 2013 Opinion & Order.

Entry No. 365).

**LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Grp., Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

**DISCUSSION**

**I.     Proximate Causation**

**A.  Proximate Causation under the ATA and Second Circuit Case Law**

Defendant asserts that Plaintiffs have failed to raise a triable issue of fact of proximate causation because there is insufficient evidence that Defendant's provision of routine banking services to its customer Interpal proximately caused the terrorist attacks by which Plaintiffs were

injured.  (Mot. at 1-2.)  Specifically, Defendant contends that Plaintiffs admittedly have no evidence that any of the funds that Defendant transferred at Interpal's request actually were used to perpetrate any of the attacks, and, therefore, Plaintiffs cannot establish indirect causation.  (*Id.* at 3.)  Defendant further contends that merely transferring money to the 13 Charities is not sufficient to show direct causation without establishing that the 13 Charities are legally the same as Hamas, such that the transfers to the 13 Charities were in fact direct transfers to Hamas itself. (*Id.*)  Defendant also maintains that the evidence upon which Plaintiffs rely to show that the 13 Charities and Hamas are one and the same is inadequate for that purpose as a matter of law under Second Circuit precedent.  (*Id.*)  Plaintiffs counter that, given the amount and proximity of the funds transferred by Defendant to Hamas-controlled organizations, Defendant cannot establish as a matter of law that the funds did not aid in the attacks.  (Opp. at 5.)

Section 2333(a) provides for recovery by individuals injured "by reason of" international terrorism.  18 U.S.C. § 2333(a).  The Second Circuit has held that the phrase "by reason of" requires that plaintiffs show that their damages were proximately caused by defendant.  *See Rothstein v. UBS AG*, 708 F. 3d 82, 95 (2d Cir. 2013) ("We are not persuaded that Congress intended to permit recovery under § 2333 on a showing of less than proximate cause . . . .").  In its holding, the court rejected the plaintiffs' contention that the "'by reason of' language chosen by Congress in creating a civil right of action under the ATA was intended to permit recovery on a showing of less than proximate cause, as the term is ordinarily used."  *Id.*  As the term is "ordinarily used," proximate cause requires a showing that Defendant's actions were "a substantial factor in the sequence of responsible causation," and that the injury was "reasonably foreseeable or anticipated as a natural consequence."  *Lerner v. Fleet Bank, N.A.*, 318 F. 3d 113, 123 (2d Cir. 2003).

Two months later, in *Al Rajhi Bank,* the Second Circuit revisited proximate causation under the ATA, reaffirming *Rothstein.* *See In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 118 (2d Cir. 2013) ("*Al Rajhi Bank*") ("*Rothstein* holds that proximate cause is required to state a claim under § 2333"). The court found, as it did in *Rothstein*, that plaintiffs' allegations were insufficient for the purposes of establishing proximate causation. *Id.* at 124.

In *Rothstein*, the Second Circuit held that plaintiffs failed to establish proximate cause based on the allegation that defendant provided Iran with hundreds of millions of dollars in cash knowing that Iran: (1) promoted terrorism to injure and intimidate Jewish residents of Israel; (2) provided Hamas and Hizbollah with millions of dollars to fund terrorist attacks; and (3) conditioned that funding on an agreement by those organizations to conduct terrorist attacks on Israel and its residents. *Rothstein*, 708 F. 3d at 92.

In *Al Rajhi Bank*, the Second Circuit held that plaintiffs failed to establish proximate cause based on the allegation that defendants provided funding to charities known to support terrorism, that, in turn, provided funding to al Qaeda and other terrorist organizations. 714 F.3d at 124. The court held that plaintiffs' allegations "fell short" of establishing proximate cause because plaintiffs did not allege that defendants: (1) participated in the terrorist attacks; (2) provided money directly to al Qaeda; or (3) donated money to the charities that actually was transferred to al Qaeda and aided the terrorist attacks. *Id.* The court held that it was "not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda – as alleged by plaintiffs – proximately caused the September 11, 2001 attacks or plaintiffs' injuries. *Id.*

### B. Proximate Cause and Routine Banking

Here, Plaintiffs argue that there is nothing "routine" about knowingly providing banking services to fund terrorism. The district court in *Al Rajhi Bank* remarked that "[p]roviding routine

banking services, *without having knowledge of the terrorist activities*, cannot subject [bank] to liability." 349 F. Supp.2d at 835 (emphasis added). In its remand order, the Second Circuit found that there was "a triable issue of fact as to whether NatWest's knowledge and behavior in response satisfied the statutory scienter requirements" and whether "NatWest had actual knowledge that, or exhibited deliberate indifference to whether, Interpal provided material support to a terrorist organization." *Weiss*, 768 F.3d at 206, 212. The court in *Linde v. Arab Bank, PLC* agreed that a bank cannot "routinely" provide banking services, if they provide those services with knowledge of their assistance in funding terrorist activities. *See* 384 F. Supp.2d 571, 588 (E.D.N.Y. 2005) ("Although the Bank would like this court to find, as did the court in *In re Terrorist Attacks* [*Al Rajhi Bank*], that it is engaged in 'routine banking services,' here, given plaintiffs' allegations regarding the knowing and intentional nature of the Bank's activities, there is nothing 'routine' about the services the Bank is alleged to provide.").

However, the Second Circuit did not address whether banking services were no longer "routine" if the bank had knowledge of the ultimate use of the funds. Instead, the Second Circuit, in *Al Rajhi Bank*, cited the District of D.C.'s use of the phrase. *See Burnett v. Al Baraka inv. & Dev. Corp.,* 274 F. Supp.2d 86, 109 (D.D.C. 2003) ("Plaintiffs offer no support, and we have found none, for the proposition that a bank is liable for injuries done with money that passes through its hands in the form of deposits, withdrawals, check clearing services, *or any other routine banking service*.") (emphasis added). As such, the 2006 ruling of the Honorable Charles P. Sifton, U.S. District Judge of this Court,[3] on the scope of "routine banking business" stands. *See Weiss v. Nat'l Westminster Bank PLC,* 453 F. Supp.2d 609, 625 (E.D.N.Y. 2006) ("However, defendant misconstrues the *Terrorist Attacks* decision. In holding that there could be no liability on the basis

---

[3] Judge Sifton is since deceased, and this case assigned to this Court.

of 'routine banking business' that court did not mean that the provision of basic banking services could never give rise to bank liability.  Rather the court relied on the routine nature of the banking services to conclude that the defendant bank had no knowledge of the client's terrorist activities. Where the Bank knows that the groups to which it provides services are engaged in terrorist activities even the provision of basic banking services may qualify as material support.") (internal quotations and citations omitted).

### C. *Rothstein* and *Al Rajhi* are Distinguishable

While Defendant asserts that the Second Circuit's decisions in *Rothstein* and *Al Rajhi Bank* require this Court to decide in Defendant's favor here, both cases are distinguishable because they were dismissed based on plaintiffs' conclusory allegations.

In *Rothstein*, the plaintiff alleged that the defendant-financial institution provided United States currency to the Iranian government.  708 F.3d at 92.  The Iranian government has long been designated a state sponsor of terrorism by the United States government and provides material support to Hamas and Hezbollah.  *Id.* at 86.  The plaintiffs were injured and/or had family members injured or killed in Hamas or Hezbollah attacks.  *Id.* at 85.  To make a causation connection among the currency provided by the defendant to Iran, Iran's support of Hamas and Hezbollah, and the attacks at issue, the plaintiffs alleged that Hezbollah and Hamas "needed large sums of money to fund their operations; that those organizations, by reason of their nature and the existence of counterterrorism sanctions, could not freely use normal banking services such as checks or wire transfers; and that U.S. currency is a universally accepted form of payment."  *Id.* at 93.

The Second Circuit held that these allegations, along with conclusory allegations that the dollars the defendant provided to the Iranian government "would be used *to cause and facilitate terrorist attacks* by Iranian-sponsored terrorist organizations *such as* Hamas [and] Hizbollah,"

were not adequate to plead proximate causation. *Id.* at 97 (emphasis in original). This connection is more attenuated than in the instant case, where the money from Defendant was purportedly going directly to Hamas front-groups, rather than to a government that performs myriad legitimate functions in addition to allegedly funding terrorist organizations. *Cf. Id.* ("But the fact remains that Iran is a government, and as such it has many legitimate agencies, operations, and programs to fund."). Here, Hamas carried out the attacks during the same period of time within which the money was transferred, which distinguishes this case from *Rothstein*, where Iran did not carry out the attacks at issue.

These differences are meaningful because Congress specifically has found that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-32, § 301(a)(7), 110 Stat. 1214, 1247 (1996). The same thing cannot be said about a government. *See Rothstein v. UBS AG*, 772 F. Supp.2d 511, 516 (S.D.N.Y. 2011) ("[T]he Supreme Court's finding that FTOs are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct is specific to FTOs. Such a finding does not necessarily, or even probably, apply to state sponsors of terrorism."). Indeed, unlike here, in *Rothstein*, the Second Circuit explained that, "[t]he Complaint does not allege that [the defendant] was a participant in the terrorist attacks that injured plaintiffs. It does not allege that [the defendant] provided money to Hizbollah or Hamas. It does not allege that U.S. currency [the defendant] transferred to Iran was given to Hizbollah or Hamas." *Rothstein*, 708 F.3d at 97. Therefore, *Rothstein* does not require judgment as a matter of law in favor of Defendant here.

In *Al Rajhi*, the Second Circuit reiterated that Congress "did not intend to permit recovery under § 2333 on a showing of less than proximate cause." *Al Rajhi* 714 F.3d 118, 123 (2d Cir.

2013). Plaintiffs there alleged that defendants provided funding to charity organizations known to support terrorism that, in turn, provided funding to al Qaeda and other terrorist organizations. *Id.* at 124. The court held that those allegations were "insufficient for proximate causation purposes for the same reasons the allegations in *Rothstein* fell short," because plaintiffs did not allege that defendants participated in the September 11, 2001 attacks or that they provided money directly to al Qaeda. *Id.* Plaintiffs also did not allege that the money the defendants allegedly donated to the charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks. *Id.* Thus, the court held that the allegations were conclusory. *Id.*

Plaintiffs here do not engage in such conclusory allegations. Here, Plaintiffs sufficiently allege that Defendant provided funds to Hamas front-groups and Hamas carried out the attacks during the same period of time within which the money was transferred. The social services provided by Hamas and its front groups are integral to building popular support for its organization and goals, which then facilitates its ability to carry out violent attacks. *See Boim III*, 549 F. 3d at 698 ("Hamas's social welfare activities reinforce its terrorist activities both directly by providing economic assistance to the families of killed, wounded, and captured Hamas fighters and making it more costly for them to defect (they would lose the material benefits that Hamas provides them), and indirectly by enhancing Hamas's popularity among the Palestinian population and providing funds for indoctrinating schoolchildren."). Congress crafted the ATA to cut off *all* money to terrorist organizations, finding that they are fundamentally tainted, even if they also have non-violent public welfare operations. Thus, *Al Rajhi* does not require judgment as a matter of law in favor of Defendant either.

### D.     Hamas Alter Egos

Defendant asserts that, to show proximate causation, Plaintiffs must establish that the 13

Charities that received the transfers are, as a matter of law, equivalent to transfers to Hamas itself. (Mot. at 7.) Defendant argues that there is no evidence on which a reasonable juror could make such a finding because Plaintiffs rely solely on insufficient expert testimony. (*Id.*) Plaintiffs contend that their proposed experts, Dr. Mathew Levitt and Arieh Spitzen, rely upon substantial evidence confirming that the Defendant counter-parties to which Interpal sent funds were controlled by Hamas. (Opp. at 7.) Assuming, *arguendo*, that, to show proximate causation, Plaintiffs must establish that at least some of the 13 Charities are alter egos of Hamas or under Hamas' control, Plaintiffs have met their burden for purposes of Defendant's summary judgment motion.

In his September 27, 2006 decision granting in part and denying in part Defendant's motion to dismiss, Judge Sifton adopted the holding in *National Council of Resistance of Iran v. Department of State*, 373 F.3d 152 (D.C. Cir. 2004), where then-United States Circuit Judge John G. Roberts, Jr., writing for a panel of the D.C. Circuit, addressed the question of when an entity is considered an "alias" of an FTO for purposes of the statute granting the Secretary of State power to designate FTOs. *Weiss v. Nat'l Westminster Bank PLC,* 453 F. Supp.2d 609, 622 (E.D.N.Y. 2006). Specifically, the D.C. Circuit held that:

> [O]rdinary principles of agency law are fairly encompassed by the alias concept under AEDPA. When one entity so dominates and controls another that they must be considered principal and agent, it is appropriate, under AEDPA, to look past their separate juridical identities and to treat them as aliases. . . . Just as it is silly to suppose that Congress empowered the Secretary to designate a terrorist organization only for such periods of time as it took such organization to give itself a new name, and then let it happily resume the same status it would have enjoyed had it never been designated, so too is it implausible to think that Congress permitted the Secretary to designate an FTO to cut off its support in and from the United States, but did not authorize the Secretary to prevent that FTO from marshaling all the same support via juridically separate agents subject to its control.

*Nat'l Council of Resistance of Iran*, 373 F. 3d at 157-58 (internal citation, quotation marks and alteration omitted). In adopting the D.C. Circuit's alter ego concept, Judge Sifton explained that "[f]actors to be considered include whether the organizations share leadership, whether they commingle finances, publications, offices, and personnel, and whether one operates as a division of the other." *Weiss,* 453 F. Supp.2d at 623.

In apparent disregard of the law of the case, Defendant argues that Plaintiffs' experts rely on "insufficient" facts, even though these facts parallel the factors outlined by Judge Sifton. (Mot. at 7-8.) These facts include the shared personnel and overlapping leadership between Hamas and the 13 Charities. (*Id.*) Plaintiffs' experts detail the findings of multiple government agencies, including the German Ministry of Interior, the Israeli Minister of Defense, and the U.S. Department of Treasury, that the 13 Charities were Hamas-controlled. (Opp. at 7.) Furthermore, Plaintiffs' experts discuss how the 13 Charities operated as the social network of Hamas. As the Honorable Brian M. Cogan, U.S. District Judge of this Court, described in *Linde v. Arab Bank*, Dr. Levitt and Spitzen present "a cornucopia of circumstantial evidence to support a jury finding that defendant knew or was willfully blind to the charities' Hamas affiliations." 97 F. Supp.3d 287, 335 (E.D.N.Y. 2015).

Considering the factors described by Judge Sifton and the record developed in this case thus far, a reasonable jury could find that the 13 Charities are Hamas alter egos.

## II. Hamas' Responsibility for the Attacks

Defendant asserts that Plaintiffs failed to present any admissible evidence from which a reasonable juror could find that Hamas perpetrated the attacks at issue. (Mot. at 12.) Defendant argues that Plaintiffs' experts Ronni Shaked, Evan Kohlmann, and Shaul Naim rely on hearsay to form their opinions. (*Id.*) For the reasons set forth below, the court finds that certain portions of

the proposed testimony of Shaked and Kohlmann are inadmissible. However, Plaintiffs have presented sufficient independently admissible evidence to create a genuine issue of material fact as to whether Hamas perpetrated sixteen of the eighteen attacks.

### A. Shaked

Plaintiffs submit a report from Ronni Shaked, in which Shaked analyzes various materials, including newspaper articles, claims of responsibility by Hamas through its reputed websites, interviews of purported Hamas members, Hamas propaganda literature, Israeli government press releases, and Israeli civilian and military court records. Based upon these materials, Shaked concludes that Hamas is responsible for each of the attacks at issue here. Defendant asserts that Shaked's opinions are inadmissible to prove that Hamas was responsible for the attacks under *United States v. Mejia*, 545 F. 3d 179 (2d Cir. 2008). (Mot. at 12-13.)

Under *Mejia*, much of Shaked's testimony is inadmissible because it does not require expert knowledge. In *Mejia*, the Second Circuit held that testimony by a government expert that the "unspecified deaths of eighteen to twenty-three persons have been homicides committed by members of" a certain gang was outside the scope of appropriate expert testimony pursuant to Federal Rule of Evidence 702, because it repeated evidence that was understandable to a layperson. 545 F. 3d at 195-96. However, the court held that the expert could testify about how evidence admitted through a lay witness connected the murders to the gang. *Id.* at 195. For example, the expert could provide an "explanation of how the graffiti near a body indicated that the murderer was a member of [the gang]," or "testimony that the gang used a particular method to kill enemies and that as a result of his review of the autopsy reports (which would have been in evidence before the jury), he had concluded that [the gang] committed those murders." *Id*.

Shaked may use his expertise to provide context to a jury, but he cannot, under *Mejia*, use

attribution testimony to introduce and summarize straightforward factual evidence that has not been admitted, such as a webpage that says "Hamas carried out a suicide bombing." While Shaked can put factual evidence in context to help Plaintiffs establish that Hamas is responsible for an attack, he cannot be used to establish basic facts in the first place. *See Mejia*, 545 F. 3d at 196 ("Expert testimony might have been helpful in establishing the relationship between these facts and [the gang], but it was not helpful in establishing the facts themselves."). Thus, Plaintiffs cannot use Shaked's opinions to establish a genuine issue of material fact as to Hamas' responsibility for the attacks at issue without first building a proper foundation.

### B. Kohlmann

Defendant objects to Kohlmann's testimony to the extent that it recites hearsay. (Mot. at 15.) The Court finds that part of Kohlmann's proposed testimony is inadmissible.

Kohlmann is permitted to give background on Hamas, including a description of its use of propaganda and its websites. These topics are appropriate subjects of an expert opinion, and are similar to testimony that Kohlmann has been allowed to give in the past. *See United States v. Paracha,* 2006 WL 12768, *21-22 (S.D.N.Y. Jan. 3, 2006), *aff'd,* 313 F. App'x 347 (2d Cir. 2008); *United States v. Kassir,* 2009 WL 910767, *7 (S.D.N.Y. Apr. 2, 2009) (holding that Kohlmann's "testimony on the origins, history, structure, leadership and various operational methods of al Qaeda and other terrorist groups is sufficiently reliable.").

However, the parts of Kohlmann's testimony that are nothing more than a recitation of inadmissible secondary evidence is inadmissible. This tactic of simply "repeating hearsay evidence without applying any expertise whatsoever" has been rejected by the Second Circuit, and therefore must be rejected here. *Mejia*, 545 F. 3d at 197.

Accordingly, Kohlmann may testify as an expert about Hamas' background and use of

propaganda, but his summaries of the attacks and repetition of evidence that Hamas was responsible for those attacks, without using any expertise, is not admissible and cannot be relied upon by this Court in deciding the summary judgment motion.

### C. Other Evidence

Plaintiffs contend that they have brought forth uncontradicted admissible evidence demonstrating that Hamas committed the relevant terrorist attacks apart from the expert reports. (Opp. at 10-25.) Defendant contends that the evidence Plaintiffs have set forth is inadmissible hearsay. (Reply at 6-10.)

The Court holds that there is sufficient admissible evidence for a reasonable jury to determine that Hamas committed sixteen of the eighteen attacks. Shaked and Kohlmann, relied at least in part, upon judgments of Israeli courts assigning responsibility to Hamas or its operatives, official Israeli government investigative reports concluding that Hamas or its operatives were responsible for the attack, and/or Shaked's own eye-witness accounts. These materials can be authenticated and are admissible.

A judgment of conviction is admissible in a civil case as an exception to the hearsay rule, if: (1) it was entered after trial or guilty plea; (2) the conviction was for a crime punishable by death or imprisonment for more than one year; and (3) the evidence is admitted to prove any fact essential to the judgment. Fed. R. Evid. 803(22). The parties do not dispute that: (1) the convictions are for crimes punishable by death or more than one year of imprisonment; (2) the evidence is admitted to prove an essential fact; and (3) this exception can be "applied to admit evidence of foreign criminal judgments." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.24[2], at 803-146 (Joseph M. McLaughlin ed., 2d ed. 2012). Moreover, as foreign public documents, they can be self-authenticated, and Defendant has not challenged the

authenticity of the judgments at issue here. *See* Fed. R. Evid. 902(3); *Raphaely Int'l, Inc. v. Waterman S.S. Corp.*, 972 F.2d 498, 502 (2d Cir. 1992).

Defendant argues that the Israeli judgments are inadmissible in this case because Plaintiffs have not proven that the proceedings that produced the convictions complied with due process. (Reply at 6.) This Court disagrees. Israeli military courts comport with minimum due process standards. Israeli military trials typically are open to the public; defendants are entitled to representation by an attorney; the same rules of evidence as in Israeli civilian courts apply; defendants are entitled to challenge confessions on the grounds of coercion; witnesses are subject to cross-examination; defendants enjoy the privilege against self-incrimination; and, if defendants enter a guilty plea, the judge must explain the consequences of the plea to the defendant before accepting the plea. *Strauss v. Credit Lyonnais*, 925 F. Supp.2d 414, 448 (E.D.N.Y. 2013). Any criticisms of the due process afforded defendants in Israeli military courts and their ability to come to a reliable verdict affects the weight of the evidence, not admissibility, particularly where it appears on this record that the accused were afforded more than a modicum of due process. *Id.*

Accordingly, Plaintiffs have sufficient admissible evidence to create a genuine issue of material fact as to Hamas' responsibility for the attacks on the following dates, at the following places: (1) March 27, 2002, Park Hotel, Netanya; (2) May 7, 2002, Sheffield Club, Rishon LeZion; (3) July 31, 2002, Hebrew University Cafeteria; (4) January 29, 2003, Route 60; (5) March 5, 2003, Bus 37, Haifa; (6) March 7, 2003, Kiryat Arba; (7) May 18, 2003, Bus 6, French Hill, Jerusalem; (8) June 11, 2003, Bus 14A, Jaffa Road, Jerusalem; (9) June 20, 2003, Route 60; (10) August 19, 2003, Bus 2, Jerusalem; (11) September 9, 2003, Café Hillel, Jerusalem; (12) December 1, 2001, Ben Yehuda Street, Jerusalem; (13) January 18, 2002, Bus 32A, Patt Junction, Jerusalem. (*See* Plaintiff's Response to Defendant's Supplemental Statement of Additional

Material Facts, and Supplemental Counter-Statement of Additional Material Facts, *Weiss* Dkt. Entry No. 364 ("Pl. Supplemental 56.1") ¶ 128-29.)

Hamas' responsibility for some of the attacks substantiated by a military court conviction, as well as the April 30, 2003 suicide bombing of Mike's Place in Tel Aviv (for which there is no conviction), are supported by conclusions of public Israeli government reports that are admissible as hearsay exceptions. *See* Fed. R. Evid. 803(8) (public records containing "factual findings from a legally authorized investigation" are admissible); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp.2d 141, 159 (D. Conn. 2009) (admitting conclusions of official foreign investigation as hearsay exception). Defendant argues that these documents simply recite conclusory statements without citing to any investigative steps that were taken or evidence that was gathered. (Reply at 8.) However, these documents, including the 2003 ISA Report and the 2007 ISA Report, can be self-authenticated as foreign public documents. *See* Fed. R. Evid. 902(3). In addition, Defendant gives no reason why these reports are unreliable. *See Bridgeway Corp. v. Citibank*, 201 F. 3d 134, 143-44 (2d Cir. 2000) (affirming admissibility of factual findings in government report where nothing in the record "indicates any motive for misrepresenting the facts" in the report). Accordingly, there is sufficient admissible evidence indicating that Hamas is responsible for the attacks, supported by the foreign reports. *See Estate of Parsons v. Palestinian Auth.*, 651 F. 3d 118, 121-26 (D.C. Cir. 2011) (holding that there is a triable issue of responsibility for attack based upon statement to Palestinian interrogators by person who planted bomb, an FBI report and a memo in Palestinian Authorities' investigative files assigning blame for attack).

For the October 22, 2003 shooting attack in Tel Rumeida, Shaked states that he witnessed firsthand the aftermath of the attack and saw evidence that Hamas was responsible. (*See* Shaked Report at 127.) This eyewitness account is admissible to show that Hamas perpetrated the attack.

Plaintiffs have not provided sufficient admissible evidence of Hamas' responsibility for the September 24 Attack. The evidence Plaintiffs rely on consists solely on Hamas claims of responsibility, which Plaintiffs assert are credible because there is no evidence that Hamas asserts false claims of responsibility. (Opp. at 17-18.)

The claims of responsibility by Hamas, even assuming they could be authenticated, are hearsay. Plaintiffs assert that the statements are admissible as a hearsay exception because they are declarations against interest by unavailable witnesses pursuant to Rule 804(b)(3) of the Federal Rules of Evidence, and that there is no evidence that Hamas was motivated to assert a false claim of responsibility for the September 24 Attack. (Opp. at 19-20.) While admitting to a violent attack on innocents typically is detrimental to a declarant's interests, the interests and motives of terrorists are far from typical. "Under the perverse assumptions of terrorists, an armed attack on civilians reflects glory. Taking 'credit' for such an attack is deemed a benefit, not a detriment, and is not reliable under the circumstances." *Gill v. Arab Bank, PLC,* 893 F. Supp.2d 542, 569 (E.D.N.Y. 2012). As Plaintiffs' experts explain in detail, Hamas actively seeks publicity for its claims of responsibility for attacks against Israelis as part of its propaganda. Thus, in this instance, Hamas' claims of responsibility were not against its interest as an organization such that Hamas only would have made them if it believed them to be true.

Plaintiffs next feebly assert that the claims of responsibility are admissible under the business records exception. (Opp. at 20.) Under Federal Rule of Evidence 803(6), records kept in the course of a regularly conducted business activity, if it was the regular practice of that business to make the record, may be admitted as exceptions to hearsay, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. For the reasons stated above, the Court rejects Plaintiffs' argument.

Finally, the Court finds that Plaintiffs are collaterally estopped from arguing that Hamas committed the January 29, 2004 Bus No. 19 attack ("Bus No. 19 Attack") because Plaintiffs did not challenge a ruling in *Linde v. Arab Bank, PLC,* 97 F. Supp.3d 287, 330 (E.D.N.Y. 2015), which found that the Al-Aqsa Martyrs Brigade ("AAMB") – and not Hamas – was responsible for the Bus No. 19 Attack.

Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in a prior proceeding. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir. 1995). Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical; (2) the relevant issues actually were litigated and decided in the prior proceeding; (3) there must have been full and fair opportunity for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits. *Id.* at 368. Defendant argues, and Plaintiffs do not dispute, that: (1) the issues of both proceedings involve Hamas's responsibility for the Bus No. 19 Attack; (2) the same plaintiffs were involved in *Linde*; and (3) the issue actually was litigated to support a valid judgment on the merits.

Plaintiffs argue that Defendant waived collateral estoppel by failing to raise it in its July 1, 2016 answer. (Opp. at 23.) Federal Rule of Civil Procedure 8(c) requires parties to raise affirmative defenses, such as estoppel, in the pleadings. *Rose v. AmSouth Bank of Florida,* 391 F.3d 63, 65 (2d Cir. 2004). "[T]he purpose of requiring collateral estoppel to be pled as an affirmative defense 'is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate.'" *Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir. 2003) (quoting *Blonder–Tongue Labs. v. Univ. Of Ill. Found.,* 402 U.S. 313, 350 (1971)). The Second Circuit has recognized that "waiver of an unpleaded

defense may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party." *Rose,* 391 F.3d at 65.

Although Defendant did not add collateral estoppel to its amended answer of July 1, 2016, Plaintiffs were on notice of Defendant's collateral estoppel defense and Plaintiffs had the opportunity to respond. Plaintiffs do not argue, nor can they, that they were unfairly prejudiced by Defendant's failure to raise collateral estoppel in its amended answer. *See Curry v. Syracuse,* 316 F.3d at 331 (finding that the district court did not abuse its discretion in permitting a collateral estoppel defense that was raised for the first time in the reply memorandum to the summary judgment motion because plaintiff was given leave, and additional time, to file a sur-reply in which plaintiff opposed the application of collateral estoppel. The court reasoned, "if the primary purpose of requiring collateral estoppel to be pled as an affirmative defense is providing notice and an opportunity to respond, that purpose was served in the instant case.")

Plaintiffs next argue that, because their settlement in *Linde* "tabled" their motion for reconsideration of Judge Cogan's decision concerning Hamas's involvement in the Bus No. 19 Attack, Judge Cogan's ruling is "factually disputed" and "not now appealable." (Opp. at 24.)

The Court is not persuaded. Plaintiffs cite no case law supporting their position that a ruling subject to a motion for reconsideration has no preclusive effect. Plaintiffs voluntarily "tabled" the motion for reconsideration when they settled the *Linde* case, rather than wait for the adjudication of that motion. Plaintiffs cannot exploit the timing of settlement to avoid issue preclusion.

Furthermore, Plaintiffs' argument that Judge Cogan's ruling is not final because it is not appealable contradicts controlling case law and thus fails. In *Lummus Co. v. Commonwealth Oil*

*Ref. Co.,* 297 F.2d 80, 89 (2d Cir. 1961), the Second Circuit, in examining whether a nonfinal decision under 28 U.S.C. § 1291 is subject to issue preclusion, reasoned:

> 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Id. See also Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2d Cir. 1992) ("As to the need for finality of decision, collateral estoppel, unlike appealability under 28 U.S.C. § 1291 (1988), does not require a judgment which ends the litigation and leaves nothing for the court to do but execute the judgment. Rather the concept of finality for collateral estoppel purposes includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.") (quoting *Zdanok v. Glidden Company, Durkee Famous Foods Division,* 327 F.2d 944, 955 (2d Cir. 1964)); *Kurlan v. C.I.R.,* 343 F.2d 625, n.1 (2d Cir. 1965) ("general expressions that only final judgments can ever have collateral estoppel effect are considerably overstated."); *Rosen v. Paul, Hastings, Janofsky & Walker LLP,* No. 05 CIV. 4211 (LAK), 2005 WL 1774126, at *5 (S.D.N.Y. July 28, 2005) (finding that collateral estoppel precluded plaintiff from arguing that the state court lacked jurisdiction to confirm an arbitration award merely because plaintiff had moved for reconsideration of the arbitration award in the arbitration forum).

Plaintiffs next argue that collateral estoppel should not apply because Plaintiffs' claims "changed dramatically when JASTA added 18 U.S.C. § 2333(d) to the ATA." (Opp. at 24-25.) Section 2333(d) adds a secondary liability provision to the ATA, which reads as follows:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist

organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

Plaintiffs argue that because Judge Cogan only ruled on whether Hamas *committed* the Bus No. 19 Attack, and not whether Hamas committed, planned, *or authorized* the Bus No. 19 Attack, collateral estoppel is not appropriate.

Plaintiffs misread the statute. Section 2333(d) creates a cause of action for injuries arising from terrorism committed, planned, or authorized by a foreign terrorist organization against any person who aids and abets or conspires with the person *who committed* the terrorist act. By the plain language of the statute, § 2333(d) does not create liability against a person who aids and abets or conspires with the person who merely authorized (rather than committed) the terrorist act, as Plaintiffs suggest.

Accordingly, summary judgment is granted in favor of the Defendant for the January 29, 2004 Bus No. 19 Attack and for the September 24 Attack, but there is sufficient admissible evidence for a jury to conclude that Hamas was responsible for the other sixteen attacks.

## III.  § 2339C Claims

Defendant argues that the third claims of relief in *Weiss* and *Applebaum* should be dismissed in part because § 2339C was enacted after the attacks occurring on December 1, 2001, March 7, 2002, March 27, 2002, May 7, 2002, and June 18, 2002, and it cannot be applied retroactively. (Mot. at 25.) Plaintiffs fail to address this argument. The Court agrees with Defendant.

Public Law 107-197 provided that all parts of § 2339C would take effect between June and July 2002. Pub. L. 107-197, Title II, § 203, June 25, 2002, 116 Stat. 727. "Statutes are disfavored

as retroactive when their application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Fernandez-Vargas v. Gonzales,* 548 U.S. 30, 37 (2006). "It has become a rule of general application that a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication." *Id.*

Congress has not explicitly made § 2339C retroactive, nor is a retroactive construction necessary. Thus, to the extent that Plaintiffs' claims are predicated on conduct by Defendant that allegedly violated § 2339C, those claims are dismissed. *See Owens v. BNP Paribas S.A.,* 2017 WL 394483, at *9 (D.D.C. Jan. 27, 2017) ("[T]o the extent that plaintiffs raise a claim for primary liability based on an underlying violation of § 2339C, this claim is also dismissed, as the enactment of § 2339C in 2002 post-dates the relevant conduct here leading up to the 1998 embassy bombings."). *See also Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685, 691 (7th Cir. 2008) (holding that, to state a § 2333 claim predicated on a violation of § 2339A, the defendant must have provided material support "between the effective date of section 2339A and [Plaintiff's] killing.").

## CONCLUSION

For the foregoing reasons, Defendant's summary judgment motion is denied to the extent that: (1) Second Circuit case law on proximate cause under the ATA does not require judgment as a matter of law in favor of Defendant; (2) there is sufficient admissible evidence for a reasonable jury to conclude that the 13 Charities are alter egos of Hamas or under Hamas' control; (3) Shaked may testify to put factual evidence already admitted into context to establish Hamas' responsibility for an attack, but not to establish the basic facts in the first instance; (4) Kohlmann may testify as an expert about Hamas' background and use of propaganda, but his summaries of the attacks and

recitation of the presented evidence, without using any expertise, is not admissible; (5) there is sufficient admissible evidence for a reasonable jury to conclude that Hamas committed sixteen of the eighteen attacks; (6) Israeli military court convictions are admissible; and (7) eyewitness accounts are admissible. Defendants' summary judgment motion is granted to the extent that: (1) Plaintiffs have not provided sufficient admissible evidence of Hamas' responsibility for the September 24 attack; (2) Hamas' claims of responsibility, standing alone, are not admissible; (3) Plaintiffs are collaterally estopped from arguing that Hamas committed the Bus No. 19 Attack; and (4) Plaintiffs' § 2339C claims are dismissed. Plaintiffs' remaining claims may proceed.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2017

_____/s/_____
DORA L. IRIZARRY
Chief Judge