# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, D.C.
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

D: +1 212 225 2490
jblackman@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

February 23, 2018

BY ECF

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: Weiss, et al. v. National Westminster Bank, Plc, 05-cv-4622 (DLI) (RML)
      Applebaum, et al. v. National Westminster Bank, Plc, 07-cv-916 (DLI) (RML)

Dear Chief Judge Irizarry:

  I am writing on behalf of defendant National Westminster Bank PLC ("NatWest") pursuant to Rule IV(a)(3) of Your Honor's Individual Motion Practices and Rules to seek a pre-motion conference concerning NatWest's request for leave to file a renewed motion for summary judgment based on the Second Circuit's decision less than two weeks ago in *Linde v. Arab Bank PLC*, -- F.3d --, 2018 WL 797454 (2d. Cir. Feb. 9, 2018). *Linde* expressly rejects the argument on which plaintiffs are basing their claims, which is that they can satisfy their burden to prove the defendant committed an "act of international terrorism" for purposes of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), solely with evidence that the defendant violated the ATA's predicate material support statute, 18 U.S.C. § 2339B. *See* Opinion and Order at 6, 21 (Mar. 28, 2013), *Weiss* ECF No. 310 (the "2013 Opinion"), *vacated on other grounds*, *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014). Accordingly, NatWest should be permitted to seek summary judgment based on this intervening change of controlling law.[1] Plaintiffs' counsel have informed us that they will oppose this request.

  A. **Background**. In the 2013 Opinion, Your Honor granted NatWest summary judgment on the ground that plaintiffs failed to raise a genuine dispute regarding NatWest's scienter, including because "there is no evidence that the employees at NatWest actually suspected Interpal of terror financing." 2013 Op. at 34. On appeal, plaintiffs argued that the Court erred in requiring plaintiffs to prove NatWest's knowledge that it was supporting Hamas's

---

[1] On February 13, 2018, the parties jointly requested an adjournment of the Joint Pre-Trial Order ("JPTO") deadline from February 15 to March 8 "to allow the parties to consider their submissions and review their JPTOs in light of [*Linde*]," *Weiss* ECF No. 387, which was granted by Magistrate Judge Levy on February 14.

Hon. Dora L. Irizarry, U.S.D.J., p. 2

terrorist activities, and "incorrectly disregarded evidence of NatWest's knowledge that it was providing material support for the 'charitable' or 'social' activities of Hamas." Pls.' Opening Brief at 28-29, Case No. 13-1618-cv (2d Cir. Aug. 2, 2013), Dkt. No. 40. The Second Circuit agreed with plaintiffs and reversed, holding that § 2339B did not require that plaintiffs prove NatWest's knowledge of Interpal's support for the "*terrorist activities* of the terrorist organization," which plaintiffs conceded they could not prove, but required only that plaintiffs prove NatWest's knowledge of Interpal's "support *to a terrorist organization*," as to which the Second Circuit held there was a genuine factual dispute. *Weiss*, 768 F.3d at 205 (emphasis in original). The Second Circuit, however, expressly "d[id] not address whether NatWest fulfilled th[e] definitional requirement" of § 2331(1), *id.* at 207 n.6, which this Court had held would be satisfied by a showing that the defendant violated § 2339B, *see* 2013 Op. at 21; *see also* 18 U.S.C. § 2331(1) (defining "act of international terrorism").

In *Linde*, the Second Circuit vacated a jury verdict finding Arab Bank liable under the ATA for providing material support to Hamas in violation of § 2339B, ruling that it was error for the district court to have instructed the jury that proof that Arab Bank violated § 2339B "necessarily proved the bank's commission of an act of international terrorism," as that term is defined in § 2331(1). 2018 WL 797454, at *5, 8. Instead, the Second Circuit ruled, *in addition* to proving Arab Bank violated § 2339B, plaintiffs were *separately* required to prove that Arab Bank's conduct "involve[d] violence or endanger[ed] human life" and "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government." *Id.* The Second Circuit also ruled that this charging error was not harmless because, although the jury's findings of fact that Arab Bank knowingly provided material support in the form of financial services to Hamas in violation of § 2339B were not subject to dispute on appeal, those facts were insufficient to prove the separate § 2331(1) elements as a matter of law. *See id.* at *10 (noting facts found by jury were "not the equivalent of a finding that Arab Bank committed an act of international terrorism as defined in § 2331(1)").[2]

   **B.** <u>**NatWest's proposed summary judgment motion**</u>. In its proposed motion, NatWest will demonstrate that, as a matter of law, plaintiffs cannot prove that NatWest's conduct satisfies § 2331(1)'s definitional requirements as construed in *Linde*. First, as the Second Circuit previously recognized and as plaintiffs have conceded, plaintiffs' proof on the "act of international terrorism" requirements in these cases consists *solely* of evidence that NatWest allegedly provided knowing and material support to Hamas in violation of § 2339B by providing financial services to its customer Interpal, a UK charity that allegedly supports Hamas, including processing wire transfers on behalf of Interpal to the 13 Charities that allegedly are <u>alter egos</u> of or controlled by Hamas. *See Weiss*, 768 F.3d at 210 (noting the evidence supports "a finding that NatWest had knowledge that, or exhibited deliberate indifference to whether, Interpal financed Hamas's *non-political* and *non-violent* activities") (emphasis in original). But as the Second Circuit ruled in *Linde*, such evidence, without more, is insufficient *as a matter of law* to prove

---

[2] The Second Circuit's separate holding that a reasonable juror could find Arab Bank liable under an aiding and abetting theory under the Justice Against Sponsors of Terrorism Act is not relevant to NatWest's contemplated motion because Judge Sifton dismissed plaintiffs' aiding and abetting claim in these lawsuits long ago. *See Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006). Even if the Court were to permit plaintiffs to reinstate their aiding and abetting claim, NatWest would be entitled to summary judgment on that claim too.

Hon. Dora L. Irizarry, U.S.D.J., p. 3

the separate requirements of § 2331(1). 2018 WL 797454, at *9.

<u>Second</u>, while on the record in *Linde* the Second Circuit concluded that the evidence in that case might permit a reasonable juror to find that Arab Bank committed an "act of international terrorism," 2018 WL 797454, at *9, no such evidence exists here. Critically, in *Linde*, the court pointed to evidence that, in summary, showed that Arab Bank knowingly held accounts for known terrorist leaders and processed wire transfers that "were explicitly identified as payments for suicide bombings." *Id.* at *5.[3] The Second Circuit concluded that, unlike providing financial services in support of Hamas's non-violent activities, a reasonable juror could find that this conduct "involved violence" or "endangered human life" and also exhibited an apparent intent to terrorize the Israeli government or population.[4]

Here, by contrast, there is no evidence connecting NatWest to Hamas's terrorist activities and on which a reasonable juror could find that NatWest's conduct meets § 2331(1)'s requirements. Instead, as plaintiffs have conceded, and both this Court and the Second Circuit have previously concluded, the evidence on which plaintiffs rely does *not* show that NatWest knew it was supporting Hamas's terrorist activities. *E.g.*, *Weiss*, 768 F.3d at 210. Nor is there any evidence that the 13 Charities to which NatWest wired funds, all of which were expressly earmarked for charitable or other non-violent purposes, participated in any of the attacks at issue. At most, plaintiffs' expert opined only that, as a general matter, Hamas sometimes diverted money from "its" charities for attacks, but he conceded that this was "rare" – and even that opinion is based on information that indisputably was unknown to NatWest during the relevant period. *Linde* therefore requires that NatWest be granted summary judgment.

**C.     Conclusion**. For these reasons, the Court should permit NatWest to move for summary judgment dismissing these cases. NatWest also respectfully requests that the Court stay the deadline to file the JPTO while its motion is pending, at a minimum because the Court's ruling will significantly impact the parties' trial evidence and objections, if the Court does not dismiss these cases entirely.

---

[3] The district court's post-trial opinion recites the underlying facts in more detail. *See Linde v. Arab Bank*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015). Those facts include, <u>inter alia</u>, that Arab Bank (1) made "24 payments to the families of suicide bombers from Hamas," including those responsible for attacks at issue, *id.* at 304; (2) processed nine transfers totaling $123,000 to the individual who confessed responsibility for one of the attacks, *id.* at 303; (3) received at least two transfers totaling $54,000 on behalf of one of its customers who was the "mastermind" of that attack, and who confessed to using such funds in purchasing weapons, *id.* at 317, 321, 329; (4) maintained an account for Sheikh Yassin, Hamas's founder, who Arab Bank employees knew was a "terrorist leader of a terrorist group," *id.* at 305; and (4) wrote a letter saying it "strive[s] for the success" of one of its charity customers that Arab Bank knew was making payments for "suicide operations," *id.* at 307. No such evidence exists with respect to NatWest.

[4] *Compare id.* at *9 ("providing financial services to a known terrorist organization" does not necessarily "involve violence or endanger life" or "manifest the apparent intent required by § 2331(1)(B)"); *with id.* (noting that, under circumstances not present here, "conduct that violates a material support statute can also satisfy the § 2331(1) definitional requirements," citing, "most obviously," a "suicide bomber for Hamas in Israel" can "provide material support to that terrorist organization while also committing an act of terrorism himself").

Hon. Dora L. Irizarry, U.S.D.J., p. 4

Respectfully,

Jonathan I. Blackman

cc: Magistrate Judge Robert M. Levy (via ECF)
All counsel of record (via ECF)