# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, D.C.
PARIS
BRUSSELS
LONDON
FRANKFURT
COLOGNE
MOSCOW

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

D: +1 212 225 2490
jblackman@cgsh.com

ROME
MILAN
HONG KONG
BEIJING
BUENOS AIRES
SÃO PAULO
ABU DHABI
SEOUL

March 5, 2018

BY ECF

Hon. Dora L. Irizarry, U.S.D.J.
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

>  Re:  Weiss, et al. v. National Westminster Bank, Plc, 05-cv-4622 (DLI) (RML)
>    Applebaum, et al. v. National Westminster Bank, Plc, 07-cv-916 (DLI) (RML)

Dear Chief Judge Irizarry:

      I write on behalf of defendant National Westminster Bank PLC ("NatWest") to reply to plaintiffs' March 2, 2018 letter ("Pls.' Letter") opposing NatWest's request for a pre-motion conference concerning NatWest's proposed motion for summary judgment, which will be based on the new standards that now govern plaintiffs' claims under the Second Circuit's ruling last month in *Linde v. Arab Bank PLC*, -- F.3d --, 2018 WL 797454 (2d. Cir. Feb. 9, 2018). Plaintiffs' letter does not dispute NatWest's showing that there is no evidence on which plaintiffs can prove what *Linde* now requires them to prove in order to prevail in these cases. Under these circumstances, to deny NatWest's proposed motion without briefing would waste the parties', the jury's and Your Honor's time, because after any trial the Court would need to enter judgment as a matter of law for NatWest. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 49 (2d Cir. 2000). The Court should therefore permit NatWest to file its summary judgment motion.

      Plaintiffs' letter does not dispute NatWest's showing that it is entitled to summary judgment on plaintiffs' primary liability claims because plaintiffs cannot prove, as *Linde* now requires, that NatWest *itself* committed an "act of international terrorism":

- Plaintiffs previously argued, and the Court accepted, that a violation of 18 U.S.C. § 2339B would itself be sufficient to satisfy the "act of international terrorism" requirements of 18 U.S.C. § 2331(1). *See* Opinion and Order at 21 (Mar. 28, 2013), *Weiss* ECF No. 310 ("2013 SJ Op."); Letter from Lawrence B. Friedman to Chief Judge Irizarry at 1 (Feb. 23, 2018), *Weiss* ECF No. 388 ("NatWest Feb. 23 Letter").

- *Linde* rejected that argument. *See* 2018 WL 797454, at *5, 8; NatWest Feb. 23 Letter at 1-2.

Hon. Dora L. Irizarry, U.S.D.J., p. 2

- *Linde* held that, *in addition* to proving the defendant violated a predicate criminal statute such as § 2339B, a plaintiff must *separately* prove that the defendant's conduct "involve[d] violence or endanger[ed] human life" and "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government." *See* 2018 WL 797454, at *5, 8 (quoting § 2331(1)); NatWest Feb. 23 Letter at 2.

- In *Linde*, the court ruled that there was a jury question as to whether Arab Bank's conduct satisfied these requirements by pointing to evidence in that case that showed Arab Bank *itself* knowingly held accounts for known terrorist leaders and processed wire transfers that "were explicitly identified as payments for suicide bombings." *See* 2018 WL 797454, at *5, 8; *Linde v. Arab Bank*, 97 F. Supp. 3d 287, 303-329 (E.D.N.Y. 2015) (describing evidence in more detail); NatWest Feb. 23 Letter at 3 & n.3.

- By contrast, in these cases, plaintiffs have conceded, and both this Court and the Second Circuit have concluded, that there is no evidence connecting NatWest to Hamas's terrorist activities. *See Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 205 (2d Cir. 2014); 2013 SJ Op. at 34; NatWest Feb. 23 Letter at 1-3.

These conclusions are dispositive, and require the entry of judgment in favor of NatWest. Rather than contest them, plaintiffs argue that, because the Second Circuit in *Linde* found there to be a jury question on the "act of international terrorism" requirements, the Court should automatically do the same here. *See* Pls.' Letter at 1-2. This argument is baseless. The Second Circuit's conclusion that a reasonable juror could find that Arab Bank committed an act of international terrorism does not suggest a reasonable juror could find that *NatWest* committed an act of international terrorism based on the very different evidence in these cases. *See* NatWest Feb. 23 Letter at 3. Nor did the Second Circuit hold that the § 2331(1) requirements present a question for the jury in *every* ATA case. On the contrary, as plaintiffs ignore, *Linde* held that the provision of routine financial services to an FTO, even knowingly and in violation of § 2339B, which the Second Circuit previously noted is the most plaintiffs can prove here, is insufficient *as a matter of law* to prove the separate "act of international terrorism" requirements. *See Linde*, 2018 WL 797454, at *10; NatWest Feb. 23 Letter at 2. Plaintiffs do not claim that they can cite evidence showing a genuine dispute as to whether NatWest's conduct satisfies the § 2331(1) requirements, and they previously conceded they have no such evidence. The Court therefore should permit NatWest to seek summary judgment on plaintiffs' primary liability claims.

Perhaps recognizing that their primary liability claim cannot survive *Linde*, plaintiffs argue that they are entitled to trial on an aiding and abetting claim. That theory also fails for multiple reasons.

As an initial matter, Judge Sifton *dismissed* that claim. Plaintiffs completely disregard that he did so not only because at the time (pre-JASTA) there was no aiding and abetting liability available under the ATA, but also because plaintiffs had failed to plead facts showing "substantial assistance" to Hamas terrorist activity, *see Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 621 (E.D.N.Y. 2006), which is a required element of an aiding and abetting claim under *Linde*. Plaintiffs could move to reconsider that dismissal or to amend their complaint under Rule 15, but they have not sought leave to do either, and absent such amendment, they cannot seek a jury instruction on such a claim.

Hon. Dora L. Irizarry, U.S.D.J., p. 3

      In any case, any such amendment would be futile. *See, e.g., MacDraw, Inc. v. CIT Group Equipment Financing Inc.*, 157 F.3d 956, 962-63 (2d Cir. 1998 (affirming denial of plaintiff's request to reassert previously dismissed claim under Rule 15(b) as "futile"). *Linde* held that JASTA does not require plaintiffs to prove NatWest itself committed an act of international terrorism for purposes of aiding and abetting, but that such a claim does require plaintiffs to prove that NatWest "knowingly and substantially assist[ed] the principal violation," *Linde*, 2018 WL 797454, at *10, here, the "act[s] of international terrorism" by Hamas. *Id.* at *12. Apparently recognizing that they cannot show that NatWest knowingly and substantially assisted terrorism, plaintiffs misstate that it is enough for them to prove that NatWest was "generally aware" that it "played a significant role supporting Hamas or that acts of terrorism would foreseeably result from [its] support." Pls.' Letter at 2-3 (citing, *inter alia, Weiss*, 768 F.3d at 212).[1] *Linde* explicitly *rejected* that scienter standard for purposes of aiding and abetting. *See Linde*, 2018 WL 797454, at *11 (knowledge required for violation of § 2339B, i.e., "knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities" is *insufficient* for aiding and abetting). *Linde* held that aiding-and-abetting liability under JASTA requires plaintiffs to prove the defendant was "'aware' that, by assisting the principal, it was *assuming a 'role' in terrorist activities*." *Id.* at *10 (emphasis added). Unlike in *Linde*, here there is no evidence of such awareness by NatWest. *Compare Linde*, 2018 WL 797454, at *11 (noting "some record evidence" could permit jury "to infer the requisite awareness," including evidence that "transfers being requested therein were payments for suicide bombings") *with Weiss*, 768 F.3d at 205 (noting lack of evidence of NatWest's knowledge of Interpal's support for "terrorist activities"). *See also* NatWest Feb. 23 Letter at 2-3.

      For these reasons, the Court should schedule a pre-motion conference or direct the parties to agree on a briefing schedule for NatWest's proposed motion. The Court also should stay the deadline to file the JPTO, which is due on March 8. Contrary to plaintiffs' argument that "*Linde* does not significantly impact the parties' trial evidence and objections," Pls.' Letter at 3, *Linde* now requires plaintiffs to prove facts they previously claimed they could not, and did not need to, prove. At minimum, the Court's ruling on NatWest's proposed motion will provide the parties with clarity as to what claims, if any, will be tried.[2]

                                       Respectfully,

                                       Jonathan I. Blackman

cc:     Magistrate Judge Robert M. Levy (via ECF)
          All counsel of record (via ECF)

---

[1] Similarly, plaintiffs argue that *Linde* requires "proof only that an aider and abettor 'was generally aware of his role as part of an overall illegal or tortious activity at the time that he provides assistance.'" Pls.' Letter at 2 (citation omitted). However, the "overall illegal or tortious activity" at issue in *Linde* and here is *terrorism*, not just allegedly transferring funds to Hamas charities, which is all plaintiffs claim they can prove NatWest did here.

[2] Plaintiffs' concession that JASTA does not apply to all plaintiffs' claims, *see* Pls.' Letter at 3, underscores that the Court's decision on NatWest's proposed motion will significantly impact any trial, assuming there is any trial at all.