# Exhibit 14

**Neil Trantum**

**Vol. 1**

**07/13/2010**

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

Action No: 05cv4622(DGT)(MDG)

- - - - - - - - - - - - - - - - - - - - -

TZVI WEISS, et al,
Plaintiffs,

against

NATIONAL WESTMINSTER BANK, PLC.,
Defendant.

- - - - - - - - - - - - - - - - - - - - - - -

NATAN APPLEBAUM, et al.,

Plaintiffs,

against

NATIONAL WESTMINSTER BANK, PLC.,

Defendant.

VIDEOTAPED DEPOSITION OF NEIL TRANTUM

Tuesday 13 July 2010

At: 10:00 am

Taken at:

Cleary, Gottlieb, Steen & Hamilton LLP
55 Basinghall Street, London
United Kingdom

HIGHLY CONFIDENTIAL 2

Page 2

A P P E A R A N C E S

For Plaintiff Tzvi Weiss:

STEPHEN SCHWARTZ, ESQ.
Kohn, Swift & Graf PC
One South Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107-3304
Tel: 419 246 0528

For Plaintiff Natan Applebaum:

MARK WERBNER
Sayles & Werbner
4400 Renaissance Tower
1201 Elm St.
Dallas, Texas 75270
Tel: 214 939 8763

For Plaintiff Tzvi Weiss:

AITAN GOELMAN
Zuckerman Spaeder LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036-5807
Tel: 202 778 1996

For the Plaintiffs:

STEPHEN LOBEL and HANNAH GRAV

Finers, Stephens & Innocent LLP

For Defendant National Westminster Bank, PLC:

JONATHAN I. BLACKMAN ESQ. and SUE. H. RHEE
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470
Tel: 212 225 2000

HIGHLY CONFIDENTIAL 3

Page 3

Also Present:

EXAMINER: ADRIAN HUGHES

COURT REPORTER:

AILSA WILLIAMS
European Deposition Services
59 Chesson Rd
London, W14 9QS

Telephone: 44 (020) 7385 0077

VIDEOGRAPHER: DAVID ROSS

Page 4

NEIL TRANTUM .. ... ... ... ... ... ... ... ... ... ... ..7

DIRECT EXAMINATION BY MR. . ... ... ... ... ... ... ... ..7
GOELMAN:

INDEX OF EXHIBITS

Trantum 1 NW212124 ... ... ... ... ... ... ... ... ... .54

Trantum 2 NW008356-366 ... ... ... ... ... ... ... ... .57

Trantum 3 NW191801-806 ... ... ... ... ... ... ... ... .63

Trantum 4 NW012952 ... ... ... ... ... ... ... ... ... .75

Trantum 5 NW008374-380 ... ... ... ... ... ... ... ... .78

Trantum 6 NW008412-420 ... ... ... ... ... ... ... ... .82

Trantum 7 NW088194-97 . ... ... ... ... ... ... ... ... .93

Trantum 8 NW051130-36 . ... ... ... ... ... ... ... ... 101

Trantum 9 NW000149-164 ... ... ... ... ... ... ... ... 113

Trantum 10 NW014025-36 ... ... ... ... ... ... ... ... 118

Trantum 11 NW012925-38 ... ... ... ... ... ... ... ... 118

Trantum 12 NW196915-932 ... ... ... ... ... ... ... ... 128

Trantum 13 NW190202-205 ... ... ... ... ... ... ... ... 132

Trantum 14 NW180856-57 ... ... ... ... ... ... ... ... 135

Trantum 15 NW180811-815 ... ... ... ... ... ... ... ... 135

Page 141

MR. BLACKMAN: Objection, form of the question. Vague as to what "legitimate" means. You can answer.

A. The reputational risk would be more about if you left it open; that would be the more likely reputational risk you would be concerned about.

Q. This says "the reputational risk of closure"?

A. This is very unusual. I was not aware of this, but the fact is that I am not aware of this coming up hardly at all.

Q. So in your experience reputational risk militates in favor of closure, not in favor of keeping an account open?

A. What I am saying is when you are considering whether to close an account, the reputational risk is normally around keeping it open, not what is the reputational risk if you close it. There are some instances where that happens, like Huntington Life Sciences, for instance, whichever way you go you have got a reputational risk.

Q. What is Huntingdon Life Sciences?

A. Knew you were going to ask that.

Q. Sorry.

A. They do experiments on animals.

Page 142

Q. It is an animal cruelty issue?

A. Yes. So if you keep the account open because they are not doing anything wrong, you have got all the demonstrators trying to get other people to boycott banking with you, et cetera, et cetera, whereas, if you close it, the customer has not done anything wrong, he is within the law, but is it ethically right, and a whole bunch of other customers saying: "We don't want to bank with you." You cannot win whichever way you go, unless you have got, you know, a policy that you are public about.

Q. So in terms of terror financing, were you ever part of or ever aware of any discussions in the bank about a reputational risk of "If we close this account because of potential terrorist financing we could be risking reputational damage"?

A. To be really clear here, we would never have had that discussion. If we thought terrorist finance was going on, it would have just been closed. It would not have been: "Let's have a think about what the risks are from a reputational point of view."

Q. Why is that?

A. Because, you know, the terrorist finance, you cannot be doing it anyway, knowingly, and the risks if you do end up doing it are just catastrophic and you

Page 143

would not want to be involved in it, ethically or reputationally.

Q. Okay. So in addition to you would not have done it, you also don't ever remember it being questioned in a terrorist financing case where -- I am sorry, I have to finish my question -- in a case where there is potential terrorist financing, you never remember there being an issue of what are the reputational risks of closure?

MR. BLACKMAN: Object to the form of the question because you stuck in, quite deliberately, the word "potential". The witness' testimony was about knowing about terror financing. You have now switched it to "potential", and that is a very different thing, as you well know. So I object to the form of the question, it lacks foundation, it is deliberately misleading. You may answer.

A. I think Mr. Blackman made the point I was going to make. If you have got a higher degree of suspicion that it is close to being more positive, then you would not want to be involved. Where your suspicion is very tenuous, then it is more difficult.

Q. Okay. Well, is it a legitimate concern -- is reputational risk of closure a legitimate concern if your suspicion is tenuous, as opposed to a higher degree

Page 144

of certainty?

A. I want to make sure I have got that the right way, what you are asking me.

Q. You distinguished between -- I think Mr. Blackman made the point I was going to make. You said: "If you have got a higher degree of suspicion that is close to being more positive, then you would not want to be involved. Where your suspicion is very tenuous, then it is more difficult". That is what you just testified to. My question is, is reputational risk of closing the account and being accused of some kind of bias, is that a legitimate concern in the second of those two categories, where it is more tenuous?

A. It may be, given certain factors. You know, I think you would have to look at it on a case by case basis. What I don't want to do is make a generalization here. Because these type of things can be very different, one case to another, so I think you would have to look at the case on its merits, the risks involved.

Q. Let me move away from the "would" question. And I think you may have kind of answered this. I just want to get a kind of clear answer. During your tenure at the bank, whether it was called NatWest or RBS, was there ever an occasion where