# Exhibit 3

NEW YORK STATE DEPARTMENT
OF FINANCIAL SERVICES

| |
|---|
| In the Matter of<br><br>THE ROYAL BANK OF SCOTLAND PLC,<br>New York Branch |

## CONSENT ORDER UNDER
## NEW YORK BANKING LAW § 44

WHEREAS, The Royal Bank of Scotland plc ("RBS" or "the Bank"), a wholly owned subsidiary of The Royal Bank of Scotland Group plc ("RBSG"), is a major international banking and financial services institution, with assets totaling $1.85 trillion, that is licensed by the Department of Financial Services ("DFS" or "the Department") to operate as a foreign bank branch in New York;

WHEREAS, from at least 2002 to 2011, RBS conducted more than 3,500 transactions valued at approximately $523 million through New York correspondent banks involving Sudanese and Iranian customers and beneficiaries, including a number of entities on the

Specially Designated Nationals ("SDN") list of the Office of Foreign Assets Control ("OFAC"), which RBS has self-identified and voluntarily disclosed to DFS;[1]

WHEREAS, to enable its sanctioned customers and beneficiaries to gain access to the U.S. financial system with anonymity, RBS established and implemented a procedure for processing U.S. dollar payments whereby information that could be used to identify sanctioned parties to a given transaction would be omitted from payment messages sent to correspondent banks in New York;

WHEREAS, to ensure the efficiency and accuracy of this procedure, RBS provided employees in payment processing centers in the United Kingdom written instructions containing a step by step guide on how to create and route U.S. dollar payment messages involving sanctioned entities through the United States to avoid detection. These instructions stated in relevant part:

> IMPORTANT: FOR <u>ALL</u> US DOLLAR PAYMENTS TO A COUNTRY SUBJECT TO US SANCTIONS, A PAYMENT MESSAGE CANNOT CONTAIN ANY OF THE FOLLOWING: 1. The sanctioned country name. 2. Any name designated on the Office of Foreign Asset Control (OFAC) restricted list, which can encompass a bank name, remitter or beneficiary... [2]

WHEREAS, these instructions were included in RBS's Business Support Manual and made available to all relevant employees, posted on RBS's Intranet and periodically disseminated to RBS's International Banking Center payment processors;

---

[1] To a lesser extent, RBS also processed U.S. dollar transactions for sanctioned clients from Burma, Cuba, and Libya.
[2] Nearly identical written instructions existed for processing U.S. dollar payments for Libyan state-owned banks.

WHEREAS, senior RBS employees, including RBS's Group Head of Anti-Money Laundering, as well as the Head of Operational Risk, Global Transaction Services, and the Head of Global Banking Services for Europe, Middle East and Africa, were fully aware of and in some instances even provided such instructions to employees;[3]

WHEREAS, despite official bank policies to the contrary adopted in July 2006, RBS continued to process transactions through New York in a non-transparent manner using these and other means;

WHEREAS, RBS's conduct was at odds with U.S. national security and foreign policy and raised serious safety and soundness concerns for regulators, including the obstruction of governmental administration, failure to report crimes and misconduct, offering false instruments for filing, and falsifying business records.[4]

WHEREAS, beginning in 2010, RBS initiated an internal investigation focused on these practices and voluntarily disclosed its findings to relevant authorities, including the Department, the Federal Reserve Bank of Boston, and its primary regulator, the UK Financial Services Authority;

WHEREAS, RBS cooperated with the Department by conducting a historical review and identifying in writing transactions that appeared to violate OFAC sanctions regulations or that involved apparent non-transparency;

---

[3] For example, on at least one occasion, the Head of Operational Risk warned all Payment Processing Center Heads via email to: "Please take care when making [payments] ... to ensure that there is no wording within the message that could potentially lead to the payment being stopped e.g. reference to a sanctioned country i.e. Sudan, Iraq."

[4] See P.L. § 195.05; 3 N.Y.C.R.R. § 300.1; P.L. § 175.35; and P.L. § 175.10.

WHEREAS, the Department recognizes RBS's cooperation with the Department's investigation, the disciplinary action taken by the Bank, including against individual wrongdoers,[5] and the remedial measures put in place to address weaknesses in the Bank's anti-money laundering and economic sanctions compliance programs;

NOW, THEREFORE, the Parties are willing to resolve the matters cited herein as follows:

**SETTLEMENT PROVISIONS**

**Monetary Payment:**

1. RBS shall make payment of a civil monetary payment to the Department pursuant to Banking Law § 44 in the amount of $50 million U.S. dollars ($50,000,000). RBS shall pay the entire amount within ten (10) days of executing the Consent Order.

**Breach of the Consent Order:**

2. In the event that the Department believes RBS to be materially in breach of the Consent Order ("Breach"), the Department will provide written notice to RBS of the Breach and RBS must, within ten (10) business days from the date of receipt of said notice, or on a later date if so determined in the sole discretion of the Department, appear before the Department to demonstrate that no Breach has occurred or, to the extent pertinent, that the Breach is not material or has been cured.

---

[5] The Bank's Disciplinary Review Committee dismissed four current employees, including the Head of Asia, Middle East & Africa, Global Banking Services; the Senior Relationship Manager – Middle East; the Relationship Manager – Shipping; and the Head of the Money Laundering Prevention Unit, Corporate Markets. In addition, eight employees were subject to bonus clawbacks.

3. The Parties understand and agree that RBS's failure to make the required demonstration within the specified period is presumptive evidence of RBS's Breach. Upon a finding of Breach, the Department has all the remedies available to it under New York Banking and Financial Services Laws and may use any and all evidence available to the Department for all ensuing hearings, notices, orders and other remedies that may be available under the Banking and Financial Services Laws.

**Waiver of Rights:**

4. The Parties further understand and agree that no provision of the Consent Order is subject to review in any court or tribunal outside the Department.

**Parties Bound by the Consent Order:**

5. It is further understood that the Consent Order is binding on the Department and RBS, as well as their successors and assigns that are within the supervision of the Department, but it specifically does not bind any federal or other state agencies or any law enforcement authority.

6. No further action will be taken by the Department against RBS for the conduct set forth in the Consent Order, provided that RBS complies with the terms of the Consent Order.

7. Notwithstanding any other provision contained in the Consent Order, however, the Department may undertake action against RBS for transactions or conduct that RBS did not disclose to the Department in the written materials that RBS submitted to the Department in connection with this matter.

**Notices:**

8. All communications regarding this Order shall be sent to:

Jean Walsh
Acting Executive Deputy Superintendent
Banking Division
New York State Department of Financial Services
One State Street
New York, NY 10004

Regina Stone
Deputy Superintendent of Foreign and Wholesale Banks
Banking Division
New York State Department of Financial Services
One State Street
New York, NY 10004

RBS plc
36 St Andrew Square
Edinburgh, EH2 2YB
United Kingdom

**Miscellaneous:**

9. Each provision of the Consent Order will remain effective and enforceable until stayed, modified, terminated or suspended in writing by the Department.

10. No promise, assurance, representation, or understanding other than those contained in the Consent Order has been made to induce any party to agree to the provisions of the Consent Order.

IN WITNESS WHEREOF, the parties hereto have caused this Consent Order to be executed as of this 11th, day of December, 2013

For and on behalf of
ROYAL BANK OF SCOTLAND plc

By: _____
Chris Campbell
RBS' Duly Authorized Representative

NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES

By: _____
Benjamin M. Lawsky
Superintendent