UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
TZVI WEISS, *et al.*,  :
                              Plaintiffs, :   Case No. 05-CV-4622 (DLI) (RML)
        - against -  :
 :
NATIONAL WESTMINSTER BANK PLC,  :
                             Defendant. :
------------------------------------------------------------ X
NATAN APPLEBAUM, *et al.*,  :
                              Plaintiffs, :   Case No. 07-CV-916 (DLI) (RML)
        - against -  :
 :
NATIONAL WESTMINSTER BANK PLC,  :
                             Defendant. :
------------------------------------------------------------ X

**PLAINTIFFS' OBJECTIONS TO DEFENDANT
NATIONAL WESTMINSTER BANK PLC'S PROPOSED BILL OF COSTS**

Plaintiffs in the above captioned actions, through their undersigned attorneys, respectfully object to the proposed Bill of Costs filed by Defendant National Westminster Bank PLC ("Defendant") on May 28, 2021 because it seeks a total of $36,281.61 for the costs of deposition transcripts that were not "used by the court in ruling on [Defendant's] motion for summary judgment." In the alternative, Plaintiffs object to costs totaling $25,111.03 for deposition transcripts that Defendant did not submit in support of its renewed motion for summary judgment, in addition to $6,763.50 in other deposition-related expenses that are not recoverable under 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and Local Civil Rule 54.1.

**Applicable Legal Standard**

1.    An award of costs to the prevailing party "'is the normal rule obtaining in civil litigation'." *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001) (quoting *Mercy v. County of*

*Suffolk*, 748 F.2d 52, 54 (2d Cir. 1984)). "[T]he decision of whether to award costs . . . under Fed. R. Civ. P. 54(d) 'is committed to the sound discretion of the district court.'" *Cosgrove v. Sears, Roebuck, & Co.*, 191 F.3d 98, 102 (2d Cir. 1999) (quoting *ARP Films, Inc. v. Marvel Ent't Grp., Inc.*, 952 F.2d 643, 651 (2d Cir. 1991)). "[T]he 'burden is on the prevailing party to establish . . . that the taxation of costs is justified.'" *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 2014 U.S. Dist. LEXIS 67120, at *6 (S.D.N.Y. May 15, 2014) (quoting *John G. v. Board of Educ. of Mount Vernon Public Schools*, 891 F. Supp 122, 123 (S.D.N.Y. 1995)); *Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, 2008 U.S. Dist. LEXIS 91674, at *41 (E.D.N.Y. Sept. 30, 2008) (same).

  2. Section 1920 of Title 28 authorizes "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in [a] case" to be taxed as costs. 28 U.S.C. § 1920(2). More specifically, Local Civil Rule 54.1(c)(2) authorizes the taxation of "the original transcript of a deposition, plus one copy" as costs if "the deposition was used or received in evidence at the trial . . . [or] *used by the Court* in ruling on a motion for summary judgment or other dispositive substantive motion. E.D.N.Y. Local Civil Rule 54.1(c)(2) (emphasis added). While the court need not cite to a deposition transcript in order to be deemed to have "used" it for purposes of Local Rule 54, the transcript must at least have been "submitted in conjunction with [the] motion for summary judgment." *Whitfield,* 241 F.3d at 271. *See also Catalano v. Lynbrook Glass & Architectural Metals Corp.*, 2009 WL 4342507, *3 (E.D.N.Y. Dec. 1, 2009) ("'Depositions are considered 'used' if they were submitted as part of the summary judgment motion and considered by the Court in reaching its decision.'") (quoting *Arias-Zeballos v. Tan*, 2009 WL 3335330, *1 (S.D.N.Y. Oct. 14, 2009)). As explained below, nine of the 13 deposition transcripts for which Defendant seeks costs *were not submitted* to the courts as part of the motion upon which Defendant prevailed in these actions.

**No Deposition Costs Are Taxable Because No Deposition Testimony**
**Was Used in Resolving Defendant's Renewed Motion for Summary Judgment**

3. Defendant's first motion for summary judgment in the above-captioned actions was granted on March 28, 2013. *See Weiss v. Nat'l Westminster Bank PLC*, 936 F. Supp. 2d 100 (E.D.N.Y. 2013). This Court concluded that Plaintiffs had not established a triable issue of material fact existed regarding Defendant's scienter, the only ground that this Court reached in its decision. *Id.* at 120. However, that decision was reversed by the Second Circuit on September 22, 2014. *See Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014). The Second Circuit determined that under the proper legal standard Plaintiffs had established a triable issue of material fact existed regarding Defendant's scienter. *Id.* at 205.

4. On September 30, 2017, this Court largely denied Defendant's first renewed motion for summary judgment by Defendant addressed, *inter alia*, to the grounds this Court had not reached in its 2013 decision. *See Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 643, 651 (E.D.N.Y. 2017). This Court found that genuine issues of material fact existed regarding whether: (a) the 13 Charities were alter egos of, or controlled by, the Hamas terrorist organization;[1] and (b) Defendant was the proximate cause of Plaintiffs' injuries.[2]

5. Subsequent to the denial of Defendant's first renewed judgment motion, in February 2018 the Second Circuit in *Linde v. Arab Bank, PLC*, 882 F.3d 314, 325 (2d Cir. 2018) changed the law concerning whether proving the definitional elements of an "act of international terrorism" defined by 18 U.S.C. § 2331 was separately required for primary liability. Prior to *Linde*, courts in this Circuit had consistently held that violations of a predicate criminal statute

---

[1] *Id.* at 644 ("Considering the factors described by Judge Sifton and the record developed in this case thus far, a reasonable jury could find that the 13 Charities are Hamas alter egos.").

[2] *Id.* at 651.

3

such as 18 U.S.C. § 2339B intrinsically satisfied the definitional requirements of an "act of international terrorism" set forth in 18 U.S.C. § 2331. *See, e.g., Linde*, 882 F.3d at 325 n.9 (citing *Linde* district court charge, "[a] violation of 18 U.S.C. § 2339B is itself an act of international terrorism"); *Strauss v. Crédit Lyonnais, S.A.*, 925 F. Supp. 2d at 426 ("Violations of Sections 2339B and 2339C are considered to be 'acts of international terrorism' under Section 2333(a)."); *Weiss v. Nat'l Westminster Bank PLC*, 936 F. Supp. 2d 100, 113 (E.D.N.Y. 2013) (same); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 427 (E.D.N.Y. 2009) (finding violation of 18 U.S.C. § 2339B satisfied "act of international terrorism").

6. In *Linde*, the Second Circuit held that a violation of 18 U.S.C. § 2339B did not necessarily equate to an "act of international terrorism." *Linde,* 882 F.3d at 325. Instead, the Second Circuit instructed that a plaintiff must separately establish each element set forth in 18 U.S.C. § 2331, including that the defendant's act "must also involve violence or endanger human life … and be intended to intimidate or coerce a civilian population or to influence or affect a government." *Id.* at 326. After *Linde* was decided, Defendant's counsel sought leave from this Court to file a renewed motion for "summary judgment based on this intervening change of controlling law." *See* Declaration of James P. Bonner executed on June 15, 2021 ("Bonner Decl.") at ¶ 4 and Ex. 1. In granting Defendant's request, the District Court expressly "cautioned [Defendant] that its summary judgment motion must address only the narrow issue of how Linde v. Arab Bank, PLC [882 F.3d 314] supports its position. The Court will not entertain tangential issues or reconsider matters over which Linde v. Arab Bank is not controlling." *See* Bonner Decl. at ¶ 5 and Ex. 2.

7. Because the only issue presented on the 2018 Motion was a narrow *legal* one, the District Court did not search the record to redetermine whether genuine issues of material fact

4

precluded summary judgment. Thus, the 2018 Motion was not a typical motion for summary judgment as to which the Second Circuit has held that: "[a] district court that rules on a motion for summary judgment must 'use' a filed deposition transcript to determine whether there is any genuine issue as to any material fact." *Whitfield*, 241 F.3d at 272. *See also id*. at 271 ("[T]he filing of a deposition transcript necessarily means a court will 'use' it, since summary judgment may be granted only 'if the pleadings, *depositions*, answers to interrogatories, and admissions *on file*, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'") (emphasis in *Whitfield*). In this case, it is clear that neither this Court nor the Second Circuit "used" any of the deposition transcripts itemized in Defendant's Bill of Costs.

8. The only issue this Court and the Second Circuit considered in ruling on the 2018 Motion was that Plaintiffs had not established that the transfers Defendant made to the Hamas-controlled organizations independently satisfied the definitional requirements of 18 U.S.C. § 2331(1) or the "general awareness" prong of civil aiding and abetting under 18 U.S.C. § 2333(d)(2) because—as Plaintiffs freely acknowledged—the charities Defendant transferred funds to as instructed by Interpal "performed charitable work" and "plaintiffs admitted" that Interpal "did not indicate to [the bank] that the transfers were for any terroristic purpose…." *Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d 144, 162 (2d Cir. 2021). Plaintiffs' pertinent "admissions" were *not* set forth in any deposition testimony, but openly stated in the reports of Plaintiffs' experts Dr. Levitt and Mr. Spitzen, which repeatedly acknowledged that Hamas-controlled charities "'performed charitable work.'"[3] Similarly, Plaintiffs never asserted—at

---

[3] *See* Expert Report of Dr. Matthew Levitt ("Levitt Rep.") at 20-22, describing the "comprehensive services" – including, but not limited to, distribution of food, medical services and transportation services – supplied by the charities in Hamas' *da'wa*, including the charities). *See also* Levitt Rep. at 55 (*al-Mujama al-Islami* "developed to practice religious appeals and educational, cultural and sport activities"); *id.* at 56

5

summary judgment or on appeal—that Interpal "indicate[d] to National Westminster Bank that the transfers in question were for 'any terroristic purpose.'"[4] Thus, there is no question that the Second

---

("By providing basic social and religious services in the Gaza Strip, [*al-Mujama*] continued to grow"). *Id.* at 63 (Al Wafa Charitable Society – Gaza "provided medical care not only to the elderly, but also to the surrounding community generally. The medical center was the nucleus for the Al-Wafa Hospital in Gaza"). *Id.* at 64 (Islamic Charitable Society – Hebron "engages in charitable activities in Hebron including organizing food packages, managing schools and orphanages, and providing aid to widows"). *Id.* at 68 (the Tulkarem Zakat Committee "funds and organizes charitable activities in the Tulkarem area in the Northern West Bank"). *Id.* at 72 (the Nablus Zakat Committee "runs several social service branches, including a medical clinic at the al-Rawdah mosque, the al-Tadamun school, a kindergarten, an orphanage, the al-Ansar sports club, and a club for adults that functions as a community center and a home for the elderly"). *Id.* at 79 (Jenin Zakat Committee "engages in activities such as building and running hospitals and schools").

*See also* Expert Report of Arieh Spitzen ("Spitzen Rep.") at 44-45 ("The *da'wa* infrastructure of *al-Mujama al-Islami* is an extensive social platform that encompasses numerous aspects of daily life, including education (through a network of schools, including kindergartens), religious education in the mosques (given by graduates of the Islamic University of Gaza), free health services, an alternative system of courts based on Islamic law, religious ceremonies during the festivals, humanitarian aid to the needy and programs for women. As part of its attempts to assist women, *al-Mujama al-Islami* established the Young Women's Muslim Association"). *Id.* at 56 ("Over its years of operation, *al-Jam'iya al-Islamiya* established and operated a *da'wa* infrastructure that paralleled and was an alternative to the inadequate infrastructure that the Palestinian Authority made available to the population in Gaza. The *al-Jam'iya al-Islamiya* infrastructure included coordination and organization of a wide range of *da'wa* activities, including: education and recreation; health; religious activities; support for needy families, orphans and martyrs; a network of dozens of kindergartens; summer camps; sports club; a computer center; medical clinics; arranging large wedding celebrations"). *Id.* at 64 ("*Al-Salah* coordinates and organizes a wide range of *da'wa* activities, including: education, health, provision of aid to the needy"). *Id.* at 69 ("*Al-Wafa's* administration, its center for the elderly and the *al-Wafa* Hospital are located in the *al-Shaja'iya* neighborhood of Gaza City."). *Id.* at 78 ("The [Islamic Charitable Society – Hebron] is active in the fields of education (it operates orphanages, kindergartens, schools for boys and girls, holds summer camps, supports student societies)"). *Id.* at 89 ("The [Jenin Zakat] Committee's operations in the areas of health and insurance, education, services for children and employment have increased the prestige of Hamas in the area"). *Id.* at 99 ("The operations of the [Nablus Zakat] Committee in the fields of social welfare, education, religious studies and health have contributed to the prestige of Hamas in the area"). *Id.* at 107 ("*Al-Tadamun's da'wa* activities focused on the areas of social welfare, education and leisure, health, and other special activities"). *Id.* at 114-115 ("The Tulkarem Zakat Committee is a part of Hamas's civilian infrastructure, and as such is involved in a wide range of activities, including: financial aid; provision of clothing and food for the needy; support for prisoners and the families of those killed, with emphasis on transferring funds to the families of terror operatives; subsidized medical care at the Committee's hospital and medical clinic; and educational services for children at the al-Asra School, the kindergarten that it runs and at Quran memorization centers"). *Id.* at 123 (*Ramallah al-Bireh* Zakat Committee supports orphans and operates medical centers). *Id.* at 130 (*Al-Islah* Charitable Society distributed aid to the needy, assisted students with educational scholarships, and ran summer camps). *Id.* at 136 (*Beit Fajar* Zakat Committee's "activities in the fields of social welfare, education, religious study, and health contributed to Hamas's prestige in the region"). *Id.* at 141 (Jerusalem Central Zakat Committee "distributes charity to the needy and to orphans, and is involved in education throughout Jerusalem").

[4] *Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d at 166 (2d Cir. 2021).

6

Circuit did not use the transcripts of Plaintiffs' experts' depositions to make that finding. In fact, the Second Circuit's decision specifically notes repeatedly that Plaintiffs had acknowledged in their 56.1 responses that the Hamas-controlled organizations that received fund transfers from Defendant actually performed charitable activities. *See Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d at 157 (quoting *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 232 (E.D.N.Y. 2019)). Similarly, Plaintiffs never asserted—at summary judgment or on appeal—that Interpal "indicate[d] to National Westminster Bank that the transfers in question were for 'any terroristic purpose.'"[5]

9.  Plaintiffs therefore object categorically to all of the costs sought in the Bill of Costs because none of the deposition transcripts were "used" by the District Court or the Second Circuit in ruling in Defendant's favor on the 2018 Motion—which was decided solely on the basis of a change in law.

**Alternatively, $31,874.53 In Deposition Expenses Are Not Taxable**

10. Even were the Court to exercise its discretion to allow Defendant to recover the costs of all deposition transcripts *submitted* in connection with the 2018 Motion—notwithstanding that neither this Court nor the Second Circuit used those transcripts—Defendant only would be entitled to recover costs related to four of the 13 deposition transcripts itemized in the Bill of Costs.[6] Plaintiffs specifically object to taxation of the following depositions—no portion of which was cited by the parties in connection with the 2018 Motion: May 20, 2010 Deposition of Fleur Baugh; June 24, 2008 Deposition of Belinda Lane; June 14, 2011 Deposition of Clive Walker;

---

[5] *Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d at 166 (2d Cir. 2021).

[6] Only the following four deposition transcripts were cited by the parties in connection with the 2018 Motion: June 25, 2008 Deposition of Belinda Lane; June 23, 2008 Deposition of Ian Wickens; June 2, 2011 Deposition of Dr. Matthew Levitt; and May 13, 2011 Deposition of Arieh Spitzen. *See* Bonner Decl. at ¶ 6. Defendant seeks costs totaling $11,170.58 for these four transcripts. *See id.*

7

May 20, 2011 Deposition of Jonathan Burchfield; May 21, 2009 Deposition of Olha Leeming; June 8, 2011 Deposition of Gary Walters; June 17, 2011 Deposition of Wayne Geisser; May 3, 2011 Deposition of Ronni Shaked; and May 26, 2011 Deposition of Shaul Naim (collectively, the "Unsubmitted Deposition Transcripts"). *See* Bonner Decl. at ¶ 7. Plaintiffs therefore request that the **$25,111.03** that Defendant claims as costs in connection with the Unsubmitted Deposition Transcripts be denied. *See id.*

11.     Plaintiffs object to the inclusion in the Bill of Costs of unnecessary fees incurred for expedited deposition transcripts for the four depositions that were submitted in connection with the 2018 Motion. Expedited transcripts qualify under 28 U.S.C. § 1920 as "necessarily obtained for use in the case" "only if an impending deadline for [a dispositive] motion necessitates such expedition." *Ferrostaal, Inc. v. M/V TUPUNGATO*, No. 03 CIV. 4885 (MGC), 2008 U.S. Dist. LEXIS 54788, at *2 (S.D.N.Y. July 16, 2008); *see also India.com, Inc. v. Dalal*, 2010 WL 2758567, at *3 (S.D.N.Y. July 13, 2010) (reducing the costs for deposition transcripts that had been expedited unnecessarily). Likewise, costs related to rough drafts or ASCII versions of transcripts are rarely recoverable. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 03 civ. 1548 (GBD) (AJP), 2008 U.S. Dist. LEXIS 82085, at *69 (S.D.N.Y. Oct. 17, 2008). Defendant has made no showing of necessity for expedited transcripts, rough drafts, or ASCII drafts. Plaintiffs therefore request that the Court *further reduce* the taxable costs by an *additional* **$1,546.50**, which is the total amount Defendant paid for expedited deposition transcripts, rough drafts, and ASCII drafts for the four deposition transcripts that were submitted to this Court and the Second Circuit. *See* Bonner Decl. at ¶ 10 and Ex. 3, Column 6.[7]

---

[7] The total amount of costs related to expedited transcription, rough drafts, and ASCII drafts for the Unsubmitted Deposition Transcripts is $1,138.90. *See* Bonner Decl. at ¶ 10 and Ex. 3. In the event that the

12. Plaintiffs further object to the inclusion in the Bill of Costs of the cost of RealTime court reporting services, which are not taxable under Local Rule 54.1 unless they are "necessary, as opposed to merely convenient or helpful." *See Colon,* 2014 U.S. Dist. LEXIS 67120, at *7 (deducting RealTime costs); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, No. 01-cv-11448 (JGK), 2011 U.S. Dist. LEXIS 1567, at *5-6 (S.D.N.Y. Jan. 6, 2011) (same); *Astrazeneca AB v. Lek Pharmaceutical & Chemical Co. (In re Omeprazole Patent Litig.)*, 2012 U.S. Dist. LEXIS 160057, at *20 (S.D.N.Y. Nov. 7, 2012) ("The Court has previously rejected requests to tax costs for LiveNote services, and the same reasoning applies to Real Time costs."). Thus, Plaintiffs request that the Court *further reduce* the taxable costs by an *additional* **$1,440.00**, which is the total amount of RealTime costs Defendant seeks for the four deposition transcripts that were submitted to this Court and the Second Circuit. *See* Bonner Decl. at ¶ 11 and Ex. 3, Column 5.[8]

13. Plaintiffs object to Defendant's inclusion of costs for court reporter appearances and delivery fees, which are not taxable under Local Rule 54.1. *See, e.g., Astrazeneca*, 2012 U.S. Dist. LEXIS 160057, at *20 ("[C]ourts in this District have determined that court reporter appearance fees and ASCII fees are not taxable.") (collecting authorities); *Yin v. Japan Society, Inc.*, 99 Civ. 4806 (HB), 2000 U.S. Dist. LEXIS 8828 at *7-8 (S.D.N.Y. June 27, 2000) (deducting "appearance fee" and "delivery fee" from deposition transcript costs). Plaintiffs therefore request that the Court *further reduce* Defendant's taxable costs by an *additional* **$402.00**, which is the total amount of court reporter appearances and delivery fees Defendant seeks for the five deposition

---

costs of the Unsubmitted Deposition Transcripts were allowed, the total reduction for expedited deposition transcripts, rough drafts, and ASCII drafts of these transcripts would be $2,685.40. *See id*.

[8] The total amount of RealTime costs for the Unsubmitted Deposition Transcripts is $3,243.00. *See* Bonner Decl. at ¶ 11 and Ex. 3. In the event that the costs of Unsubmitted Deposition Transcripts were allowed, the total amount of RealTime costs subject to disallowance would be $4,683.00. *See id*.

9

transcripts that were submitted to this Court and the Second Circuit. *See* Bonner Decl. at ¶ 12 and Ex. 3, Column 7.[9]

14.   Plaintiffs object to Defendant's inclusion of costs for videotaping of depositions. While the cost of videotaping depositions is "not *per se* disallowed" under Local Rule 54.1, "[t]he proper inquiry when determining if the cost of a deposition transcript is allowable is whether at the time the deposition was taken, it was reasonably expected that the transcript would be used for trial preparation." *Goldstein v. Robert Half Int'l*, 2010 U.S. Dist. LEXIS 156090, at *6 (S.D.N.Y. June 29, 2010) (internal quotation omitted). *See also Astrazeneca*, 2012 U.S. Dist. LEXIS 160057, at *19 ("Video fees have been deemed taxable where there was an expectation among the parties that the video of the testimony might be presented at trial.") (collecting authorities, internal quotation omitted). Because Defendant did not submit any video depositions to this Court as part of the 2018 Motion (*see* Bonner Decl. at ¶ 12) and because its Bill of Costs provides no evidence concerning the parties' expectations regarding the use of video depositions, Plaintiffs request that the Court *further reduce* Defendant's taxable costs by an *additional* **$1,302.50**, which is the total amount Defendant seeks for videotaping of the four depositions that were submitted to this Court and the Second Circuit. *See* Bonner Decl. at ¶ 13 and Ex. 3, Column 3; *Goldstein,* 2010 U.S. Dist. LEXIS 156090, at *8 (denying cost of videos of depositions where defendant "did not submit the video depositions to the Court as part of its motion for summary judgment" and its bill of costs contained only "its conclusory statement that the video deposition was necessarily obtained for use in the case to justify taxing this cost"); *Astrazeneca*, 2012 U.S. Dist. LEXIS 160057, at *20 (denying recovery for video fees where applicant "made no effort to establish with any specificity

---

[9]  The Bill of Costs includes appearance and delivery fees for the Unsubmitted Deposition Transcripts totaling $1,236.20. *See* Bonner Decl. at ¶ 12 and Ex. 3, Column 7. In the event that the costs of Unsubmitted Deposition Transcripts were allowed, the total amount of appearance and delivery fees subject to disallowance would be $1,638.20. *See id*.

10

that the parties reasonably believed that video testimony would be used at trial for the depositions for which it charges video fees").[10] *See also 10 Moore's Federal Practice 3d* § 54.103(3)(c) (2021) ("Ordinarily, a party may not recover the costs of both transcription and videorecording in the absence of a showing that both were necessarily obtained for use in the case. However, if a transcript of a videorecorded deposition is reasonably necessary (e.g., if a party used the deposition at trial or at a hearing on a motion for summary judgment), the cost of both videorecording and transcription may be awarded."); *Citigroup Global Mkts v. Abbar*, 63 F. Supp. 3d 360, 362 (S.D.N.Y. 2014) ("To allow [a party] to recover for the video copies as well as the paper copies [of deposition transcripts] would be duplicative."). Defendant has offered no justification for why it should be entitled to recover the cost of both written transcriptions and videorecordings.

15. Finally, Plaintiffs object to Defendant's inclusion of costs for the synchronization of videos and printed deposition transcripts. These costs should be disallowed because the cost of videotaping the depositions should be disallowed; as well as because Defendant did not submit any video depositions to this Court as part of the 2018 Motion (*see* Bonner Decl. at ¶ 13), and has provided no evidence concerning the parties' expectations regarding the use of video depositions. In addition, Defendant has failed to offer any explanation as to why synchronization of any of the videos was necessary. *See, e.g., Weber v. Fujifilm Med. Sys. U.S.A., Inc.*, 2015 U.S. Dist. LEXIS 107478, at *16-18 (D. Conn. Aug. 13, 2015) (awarding costs for videotaping where the videos were used at trial, but denying costs of synchronizing videos with written transcripts where there was "no basis for the Court to determine whether synchronization was necessary for trial preparation and presentation or was merely for counsel's convenience"); *Gyllenhammer v.*

---

[10] The total amount of videotaping costs for the Unsubmitted Deposition Transcripts is $3,588.75. *See* Bonner Decl. at ¶ 13 and Ex. 3, Column 3. In the event that the costs of Unsubmitted Deposition Transcripts were allowed, the total amount of videotaping costs subject to disallowance would be $4,891.25. *See id*.

11

*American Nat'l Red Cross*, 2019 U.S. Dist. LEXIS 5132, at *4-5 (N.D.N.Y. Jan. 11, 2019) (denying cost of editing deposition video for presentation to the jury even though the cost of videotaping the deposition, which was played for the jury at trial, was allowed). Plaintiffs therefore request that the Court *further reduce* Defendant's taxable costs by an *additional* **$2,072.50**, which is the total amount Defendant seeks for video synching of the five depositions that were submitted to this Court and the Second Circuit. *See* Bonner Decl. at ¶ 14 and Ex. 3, Column 4.[11]

16.  Wherefore, Plaintiffs respectfully request that Defendant's Bill of Costs be denied in toto. In the alternative, if this Court should choose to allow the taxable costs of the four deposition transcripts submitted in connection with Defendant's 2018 Motion, those costs should be taxed in the amount of $4,407.08, not the $11,170.58 Defendant seeks. *See* Bonner Decl. at ¶ 15.

Date: June 15, 2021

**OSEN LLC**

By: \_\_\_/s/ Gary M. Osen\_\_\_
Ari Ungar
Peter Raven-Hansen, Of Counsel
Aaron Schlanger
2 University Plaza, Suite 402
Hackensack, NJ 07601
(201) 265-6400

**ZUCKERMAN SPAEDER LLP**
Shawn Naunton
485 Madison Avenue, 10th Floor
New York, NY 10022
(646) 746-8655

---

[11] Defendant seeks $5,266.25 for video synching of the Unsubmitted Deposition Transcripts. *See* Bonner Decl. at ¶ 14 and Ex. 3, Column 4. In the event that the costs of Unsubmitted Deposition Transcripts were allowed, the total amount of videotaping costs subject to disallowance would be $7,338.75. *See id*.

**KOHN, SWIFT & GRAF, P.C.**
Steven M. Steingard
Stephen H. Schwartz
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700

**TURNER & ASSOCIATES, P.A.**
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

**Attorneys for *Weiss* Plaintiffs**


**FLEISCHMAN BONNER & ROCCO LLP**

By:   /s/ James P. Bonner
Patrick L. Rocco
Susan M. Davies
81 Main Street, Suite 515
White Plains, NY 10601
(908) 516-2066

**HEIDEMAN NUDELMAN & KALIK, P.C.**
Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
1146 19th Street, NW
Fifth Floor
Washington, D.C. 20036
(202) 463-1818

**PERLES LAW FIRM, P.C.**
Steven R. Perles
Edward Macallister
1146 19th Street, NW, Fifth Floor
Washington, D.C. 20036
(202) 745-1300

**THE DAVID LAW FIRM, P.C.**
Jonathan David
10655 Six Pines Drive, Suite 260
Woodlands, Texas 77380
(281) 296-9090

**Attorneys for *Applebaum* Plaintiffs**